Pages 1 - 39

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER, JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. CR 18-00577 CRB |
| | ) | |
| MICHAEL RICHARD LYNCH and | ) | |
| STEPHEN KEITH CHAMBERLAIN, | ) | |
| | ) | |
| Defendants. | ) | San Francisco, California |
| _____ | ) | |

Monday, February 4, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:          DAVID L. ANDERSON
                        United States Attorney
                        450 Golden Gate Avenue, 11th Floor
                        San Francisco, California  94102
                  BY:   **ADAM A. REEVES**
                        **ROBERT S. LEACH**
                        **WILLIAM FRENTZEN**
                        **ASSISTANT UNITED STATES ATTORNEYS**


For Defendant Chamberlain:
                        BIRD MARELLA BOXER WOLPER NESSIM
                         DROOKS LINCENBERG RHOW
                        1875 Century Park East
                        23rd Floor
                        Los Angeles, California  90067-2561
                  BY:   **GARY S. LINCENBERG, ESQ.**


Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
                  Official Reporter, U.S. District Court

       (Appearances continued, next page)

**APPEARANCES, CONTINUED**:

For Defendant Lynch:

                  STEPTOE & JOHNSON, LLP
                  1330 Connecticut Avenue, NW
                  Washington, D.C.  20036-1795
        BY:  **REID H. WEINGARTEN, ESQ.**
             **BRIAN M. HEBERLIG, ESQ.**

                  CLIFFORD CHANCE US LLP
                  31 West 52nd Street
                  New York, New York  10019-6131
        BY:  **CHRISTOPHER J. MORVILLO, ESQ.**

**Monday - February 4, 2019**                                        **4:18 p.m.**

**P R O C E E D I N G S**

    **THE CLERK:**  Calling Criminal Action CR-18-0577, USA versus Michael Richard Lynch and Stephen Keith Chamberlain.  Counsel, please state your appearances.

    **MR. REEVES:**  Adam Reeves, Robert Leach and William Frentzen for the United States.  Good afternoon, Your Honor.

    **THE COURT:**  Good afternoon.

    **MR. WEINGARTEN:**  Good afternoon, Your Honor.  It's Reid Weingarten, Chris Morvillo, Brian Heberlig, for Dr. Lynch.

    **MR. LINCENBERG:**  Good afternoon, Your Honor.  Gary Lincenberg specially appearing for Mr. Chamberlain, who is present in court.

    **THE COURT:**  Specially appearing.  What's that about?  What do you mean, you're specially appearing?

    **MR. LINCENBERG:**  Just trying to work out the remaining details, Your Honor.

    **THE COURT:**  Well, I don't want to pry, but it seems to me that in a criminal case -- he's here, so I -- see, he's here, you're not?  Let me just deal with that one.  I don't think it quite works like that.

    **MR. LINCENBERG:**  Well, Your Honor, obviously I'm here. And there's some issues to be worked out which, if the Court wanted to pry --

    **THE COURT:**  No, I don't want to pry.  And that's -- okay.

So in other words, your special appearance is not related to jurisdictional issues.

**MR. LINCENBERG:** Correct.

**THE COURT:** Okay, I'm sorry.

**MR. LINCENBERG:** Correct.

**THE COURT:** That's what I thought it was, and then I was trying to figure out whether we're going get into some jurisdictional issue. But if the arrangements are that -- if your special appearance is dictated by coming to appropriate terms with your client, that's fine. Okay, there's no problem with that at all. That happens all the time. Okay. Thank you.

So we have you here. We don't have Dr. Lynch here.

(Reporter interruption)

**THE COURT:** Yeah, defendant. Right. Sorry. So, let's deal with first, Mr. Chamberlain and then we'll deal with Dr. Lynch.

(Defendant Chamberlain present, not in custody)

My understanding is the -- Mr. Chamberlain is here as a result of an agreement with the government. Oh, I don't know; you're here as a result of the indictment. But that you came here voluntarily, and submitted yourself to the jurisdiction of the Court.

And I don't know whether or not any terms of your release have been worked out. But as I -- I think that, as -- well,

1  first of all, I think the government has made representations

2  on the Court's behalf that your voluntary appearance will

3  result in a -- what I will call a nominal bail, an agreement

4  with standard conditions that would permit you -- I guess I

5  still have it on my desk somewhere --

6      **MR. REEVES:**  We have agreed to release conditions,

7  Your Honor.

8      **THE COURT:**  All right.  So, do -- has that form been

9  executed?

10     **MR. REEVES:**  No.  I propose that we arraign

11 Mr. Chamberlain, and that we then set the release conditions,

12 which are identical to those for Mr. Hussain.

13     **THE COURT:**  Okay, I think that's fine.  I see no problem

14 with that.

15     (Document tendered)

16     **MR. REEVES:**  Thank you.

17     **THE COURT:**  So Mr. Chamberlain, you have been charged in a

18 grand jury indictment with a violation of 18 U.S.C. 1349,

19 conspiracy to commit wire fraud; 18 U.S.C. Section 1343, wire

20 fraud; and 18 U.S.C. Section 2, aiding and abetting.  As well

21 as several charges that there ought to be a forfeiture or

22 criminal forfeiture with respect to certain property.

23     I now turn to the United States to complete the

24 arraignment.

25     **MR. REEVES:**  Yes, Your Honor.

1      Mr. Chamberlain and one other co-defendant have been

2  charged in a 15-count indictment that specifically alleges that

3  in or about -- beginning in or about January, 2009, and

4  continuing through in or about October, 2011, the defendants,

5  including Mr. Chamberlain, together with others, including

6  former chief financial officer Sushovan Hussain, engaged in a

7  fraudulent scheme to deceive purchasers and sellers of Autonomy

8  securities about the performance -- about the true performance

9  of Autonomy's business, its financial performance and

10 condition, the nature and composition of its products, revenue

11 and expenses, and its prospects for growth.

12      I'll read one more paragraph of the indictment,

13 Your Honor, Paragraph 20.

14      (Off-the-Record discussion between counsel)

15      **MR. REEVES:**  It's a 14-count indictment, not a 15-count

16 indictment.  I stand corrected.

17      Paragraph 20 in the indictment alleges as follows:  That

18 the objectives of the scheme to defraud were, among other

19 things, (a), to ensure that Autonomy reported that if it had

20 met or exceeded projected quarterly results for, among other

21 things, revenue, gross margin, net income, and earnings per

22 share, (b), to maintain and increase the defendants' positions

23 within the company, and to enrich themselves and others through

24 bonuses, salaries and options, and (c), to artificially

25 increase and maintain the share price of Autonomy securities

1    to, among other things, make Autonomy attractive to potential

2    purchasers.

3          Would you like me to read the maximum penalties?

4          **THE COURT:**  Yes, please.

5          **MR. REEVES:**  The maximum penalties for a conviction of

6    conspiracy in violation of U.S.C. 1349 and for wire fraud in

7    violation of 18 U.S.C. 1343 are a 20-year term of imprisonment;

8    a $250,000 fine or twice the gross gain or loss, whichever is

9    greater; a three-year term of supervised release; a $100

10   special assessment; and restitution and asset forfeiture in

11   amounts to be determined by the Court.

12         Thank you.

13         **THE COURT:**  Mr. Chamberlain, have you received a copy of

14   the indictment?

15         **DEFENDANT CHAMBERLAIN:**  Yes.  Yes, I have, Your Honor.

16         **THE COURT:**  And you understand the nature of the charges.

17   Do you wish to plead at this time?

18         **DEFENDANT CHAMBERLAIN:**  Yes.  Not guilty, Your Honor.

19         **THE COURT:**  Okay.  As to all counts.

20         **DEFENDANT CHAMBERLAIN:**  That's correct, yes.

21         **THE COURT:**  All right.  And let me caution you that you

22   need not make any statements in connection with any of the

23   matters that are subject to the grand jury indictment.

24         You are, of course, entitled to counsel.  You have able

25   counsel next to you.  But of course, if you can't afford

1    counsel, or if you choose other counsel -- first, if you can't

2    afford counsel, then counsel will be appointed by the Court.

3    But you can select counsel of your own choosing.  And I assume

4    that's what you will do in this matter.

5            **DEFENDANT CHAMBERLAIN:**  Yes, Your Honor.

6        **THE COURT:**  Okay.  Now, of course, this case comes with a

7    history.  Most cases do.  But this one has a pretty extensive

8    one, since we have already had a full jury trial of a

9    co-defendant.  And I think I need to have some discussion as to

10   what is appropriate in terms of time with respect to trial

11   preparation.  I'm assuming, of course, that the case is going

12   to go to trial.  No reason to believe it won't.  But I need to

13   set some dates so that the case moves on.

14       And before I discuss with your counsel prospective dates,

15   I want to find out what is happening with respect to Dr. Lynch.

16       **MR. LINCENBERG:**  Did the Court want to set conditions of

17   bond?

18       **THE COURT:**  Oh, yes, the standard -- where are they?

19       **MR. REEVES:**  The parties have agreed to release conditions

20   for Mr. Chamberlain that are identical to Mr. Hussain's.

21   Specifically, a $1,000 cash bond, and that travel be authorized

22   to the United Kingdom where Mr. Chamberlain resides, and to the

23   United States, and to any other country where there is an

24   extradition treaty with the United States.

25       **THE COURT:**  Okay.  Also the standard condition, isn't it,

1  that he will not commit -- he will not commit a federal, state

2  or local criminal offense.

3      **MR. REEVES:**  That's correct, Your Honor.  That he agrees

4  to appear at all proceedings as ordered by the Court; that he

5  not commit any other crimes, et cetera; that he not harass,

6  threaten, intimidate, injure, tamper with other parts of the

7  case; and that there be travel restrictions.  It would be those

8  four restrictions.

9      **MR. LINCENBERG:**  (Nods head)

10     **THE COURT:**  Okay.  With respect to those conditions, what

11 I'm particularly concerned about is, since you won't be

12 residing in the Northern District of California, is your

13 willingness to come to the Northern District to appear at all

14 court -- at any court proceeding in which you are directed to

15 appear.

16     Do you understand that?

17     **DEFENDANT CHAMBERLAIN:**  Yes, Your Honor.

18     **THE COURT:**  In other words, there will be -- you're an

19 attorney, aren't you?

20     **MR. LINCENBERG:**  No.

21     **DEFENDANT CHAMBERLAIN:**  No.

22     **THE COURT:**  No, you're not an attorney, okay.

23     **MR. REEVES:**  He's an accountant, Your Honor.

24     **THE COURT:**  An accountant, okay.  There will be, from time

25 to time, court proceedings.  Under our laws, you are entitled

1  to be present at all court proceedings.  There isn't going to

2  be a secret proceeding involving your case, with respect to

3  your not being present.

4      So it's important for the Court's consideration, moving

5  the case forward and setting dates and so forth, that I have

6  your agreement that upon notification either by the Court or by

7  your counsel that you are required to appear at a particular

8  date and time -- and I certainly will make sure that you get

9  adequate notice -- that you will appear.

10     Is that of concern to you?

11     **DEFENDANT CHAMBERLAIN:**  No.  Not at all, Your Honor.

12     **THE COURT:**  Okay.  Anything else?

13     **MR. REEVES:**  Not for the government, Your Honor.

14     **THE COURT:**  Okay, so I guess I -- I don't do arraignments,

15  but -- that may be obvious from the way I conducted this one.

16     But does Mr. Chamberlain sign a piece of paper or

17  something to that --

18     **MR. REEVES:**  We are going to prepare the bond right now.

19     **THE COURT:**  Yes.

20     **MR. REEVES:**  And he will sign it, and we'll give it to the

21  courtroom deputy.

22     **THE COURT:**  Okay.  So I now can go past this temporarily

23  and find out what is happening with Dr. Lynch.

24     **MR. LINCENBERG:**  Thank you, Your Honor.

25     **DEFENDANT CHAMBERLAIN:**  Thank you.

1      **MR. REEVES:**  Thank you.

2       (Document tendered)

3      **THE COURT:**  Mr. Weingarten?

4      **MR. WEINGARTEN:**  Good afternoon, Your Honor.

5      **THE COURT:**  Good afternoon.

6      **MR. WEINGARTEN:**  So when I was last here, the Court gave

7   us some time over the holidays and instructed us to come back

8   with a status report.

9       The two headlines of the status report are first, as you

10  may recall, there's a civil trial about to start in London.

11  And the issue for us was whether or not we would seek a stay.

12  And we've chosen not to.

13      So the civil trial begins next month, and steady as she

14  goes, in London, on the civil trial between HP and Mike Lynch.

15      Number two --

16      **THE COURT:**  Begins when?  March?

17      **MR. WEINGARTEN:**  End of March.

18      **THE COURT:**  End of March.  Okay.

19      **MR. WEINGARTEN:**  And, and, you know, they do things

20  somewhat differently there.  There's some estimates that the

21  trial could be eight or nine months.

22      **THE COURT:**  Okay.

23      **MR. WEINGARTEN:**  Number two, we were in London a couple of

24  weeks ago to visit with the client, to sort of tie up loose

25  ends about this appearance.  He did not appear well.  We urged

him to go to the doctor.  He did.  He had emergency surgery.
The surgery was successful, but he is under constant care.

If the Court wishes to have more detail, we would like to respect his privacy, and present that information to the Court privately.

**THE COURT:**  Well, is his health such that he's prohibited from traveling?

**MR. WEINGARTEN:**  Yes.  For now.  We're hopeful -- we're hopeful that everything will be fine.  But certain- -- the doctor's certainly instructed him post-surgery -- and the surgery was last week -- that he was not to travel for at least three weeks.

**THE COURT:**  Okay.  Well, as to that, I think that what I need is a declaration which could be filed under seal, from his medical specialist, describing his medical condition.

**MR. WEINGARTEN:**  Sure.

**THE COURT:**  And in addition, also setting forth what in the doctor's opinion is the time that he will be able to travel to the United States for -- or San Francisco for a one-day appearance in this court.

**MR. WEINGARTEN:**  Sure.  And I'm hopeful that -- and our fingers are crossed -- that all will be well and this won't be an issue going forward.  But I just wanted to report to you.

**THE COURT:**  Well, of course.  It's obvious.  Yes, of course.

1       MR. WEINGARTEN:  And I'm happy to share with the Court

2   today the details.

3       THE COURT:  Well, I don't know that I need to know the

4   details today.  I think the doctor can --

5       MR. WEINGARTEN:  Sure.

6       THE COURT:  -- or doctors can submit that report.

7       MR. WEINGARTEN:  There's one other issue that I would like

8   --

9       THE COURT:  Is it your position -- are you telling me that

10  it is the medical -- that the medical condition is the

11  impediment to his coming to court now?

12      MR. WEINGARTEN:  I think it will be clear when I get to

13  this next -- I'm simply reporting what has happened since I

14  last saw you.

15      THE COURT:  Go ahead.

16      MR. WEINGARTEN:  Okay.  So I want to talk very, very

17  briefly about the E word, extradition.  And I want to preface

18  it with the following.

19      Mike Lynch has faith in the American justice system.  And

20  he wants to be vindicated here.  What is also true, with 30

21  seconds' worth of background -- historically, the Brits have

22  been very quick to extradite British people to the United

23  States if Uncle Sam asks them to do so.  That is changing.  The

24  Brits passed a law that talked about a forum bar, meaning that

25  in cases where even when the United States has jurisdiction, if

1    there are more ties to England, the courts in England are
2    capable under the law now saying no to the United States.   And
3    recently, they have done just that.

4         There are barristers in England that have said to our
5    client that his extradition case is one of the strongest
6    they've ever seen, from an English perspective.

7         Having said that, there's always been a presumption from
8    the moment we have engaged with the prosecutors here that if
9    charged, Mike would come, stand trial, and seek to be
10   vindicated.

11        What has changed is the Invoke/Darktrace investigation.
12   We are formal strangers to that, as the Court knows.   These are
13   independent companies with independent counsel.   But it's
14   relevant to us, because we see three things.

15        One, we see that it seems obvious that the government is
16   going to supersede here.   That the charges presently extant
17   will not be the charges that finally go to trial.   That's
18   number one.

19        And number two, it seems from our perspective -- and
20   obviously, it's a grand jury investigation.   We don't know what
21   they are doing; we don't know what their evidence is.   We -- we
22   know, we've had conversations with them.   And from our
23   perspective, the gravamen of this investigation is that
24   somehow, some way, our client's purchase of stock from these
25   companies to generate legal fees for the Keker law firm is

somehow hush money, somehow an obstruction of justice, somehow money laundering.

And let me say immediately, John Keker is a long-time friend of mine, he's one of my heroes.  I got him into this case.  I wanted his law firm to be paid for the work they did.  So if there's a hush-money obstruction going on here, I'm guilty of it, too.

We find these allegations, frankly, Your Honor, absurd.  We cannot believe that the U.S. Attorney's office here is entertaining the possibility that the payment of legal fees to the Keker law firm is the equivalent of an obstruction of justice.

And again, this is how we see it.  We don't know what's going on in the grand jury, but --

THE COURT:  Well, when you say how you see it, have you been privy to any of the filings in this case in connection with the -- in connection with the subpoenas?

MR. WEINGARTEN:  What is true, Your Honor, is every -- basically everything I know has come from the prosecutors when we advocated to them not to indict Mike Lynch.  That almost entirely informs my opinion.

THE COURT:  Are you telling me you haven't been privy to that?

MR. WEINGARTEN:  I personally have not.

THE COURT:  Well, I mean, you, personally.  You have three

1   lawyers out there.  I mean, I'm talking about have the defense

2   been privy to any of the information that's contained in the

3   filings in connection with the -- in connection with the

4   subpoenas which are presently being litigated to which you are

5   referring?

6        **MR. WEINGARTEN:**  I don't want to answer one way or another

7   until I consult with Mr. Morvillo.  Mr. Morvillo -- we have

8   become -- absolutely -- we've had conversations with --

9        **THE COURT:**  The reason I ask the question --

10       **MR. WEINGARTEN:**  Yes.

11       **THE COURT:**  -- is because I don't believe, though I can be

12   refreshed on this, that I've seen anything to suggest the -- to

13   suggest that the inquiry is focused on exactly what you've said

14   is your concern.

15       There are -- there are many concerns out there, and I'm

16   going to address them on the 13th in connection with the

17   subpoenas.  But -- you know, and this is not really the time to

18   try to air what is the justification or the direction of the

19   investigation.

20       You say:  Well, it's clear to you that they are going to

21   get a superseding indictment.  I have no idea.  You may be

22   right.  Wasn't clear to me.

23       But you may be absolutely correct.  And I don't pretend to

24   sit in the seat, knowing everything that the government

25   believes to have occurred in fashioning -- in fashioning their

1   particular prosecution strategy.  So I don't know.

2       But I do understand that -- well, I guess what I have to

3   ask you is:  Why is any of this relevant?

4       **MR. WEINGARTEN:**  And here's the answer.  And the answer

5   is: we allow for the possibility that there's a superseding

6   indictment, and we allow for the possibility that the

7   superseding indictment will contain charges that are not

8   extraditable.  And we allow for the possibility that the

9   decision whether or not to fight extradition would be different

10  once we see the superseding indictment.

11      So that -- when I was last here I made a -- I asked for

12  a -- a modest ask.  And I think I want to ask for another

13  modest ask.  And the modest ask is as follows:  Is that the

14  second the government says to us there's no superseding

15  indictment or there's a superseding indictment, we immediately

16  make a judgment on the extradition issue.  And then, for all

17  intents and purposes, we go forward.

18      And what I think -- I don't see the Court being

19  disadvantaged that way because --

20      **THE COURT:**  Well, disadvantaged.  Number one, I spent one

21  -- I've had one trial, which has taken a considerable period of

22  time.  That defendant, by the way, is awaiting sentencing, as

23  you're well aware.

24      **MR. WEINGARTEN:**  Yes, yes.

25      **THE COURT:**  Secondly, the disadvantage isn't personal to

the Court.  Of course not.  Because I -- I fill my day.  It's
not -- that's not a problem.  I don't even go by the hour.  It
just happens that I'm occupied.  So I'm not looking at it,
either financially or academically, interesting.

But I have a lot of cases out there.  There is a
Congressional statute that tells us that we must move forward
on criminal matters in an expeditious way.

**MR. WEINGARTEN:**  Of course.

**THE COURT:**  So I think -- I think, if what you are
proposing is simply -- as I hear it -- and I shouldn't
interrupt you because -- but I think I've heard you on this
issue, that I should wait for either a superseding indictment
or an indication by the government that they are not going to
supersede.

**MR. WEINGARTEN:**  Yes.

**THE COURT:**  The Court is not willing to do that, because
in the event they do supersede, --

**MR. LINCENBERG:**  Yes.

**THE COURT:**  -- you are entitled -- there are remedies.
They are entitled to further continuances.  You may be entitled
to further -- further proceedings relating to that.

As to extradition, I'm not quite sure I hear exactly what
your position is on that.  You are suggesting to me that there
may be very valid defenses that can be asserted with respect to
extradition, to which I say:  I haven't the slightest idea.

1      **MR. WEINGARTEN:**  Right.

2      **THE COURT:**  There may be and there may not be.  I don't

3   know.  I do think -- and I could be wrong in this, but you can

4   correct me -- that if he were to -- as an example, to waive

5   extradition, he would waive extradition on the present

6   indictment.  I don't think he waives as to a superseding

7   indictment.

8      **MR. WEINGARTEN:**  Does not.

9      **THE COURT:**  Am I wrong?

10      **MR. WEINGARTEN:**  No.

11      **THE COURT:**  I'm right.

12      **MR. WEINGARTEN:**  Yes.

13      **THE COURT:**  Okay.  I'm batting about 50 percent.  So

14   anyway, that would be the case.  So we preserve that right.

15   But I'm not here to encourage him to waive indictment or not.

16      And putting aside just for the moment his health concerns,

17   which are of concern --

18      **MR. WEINGARTEN:**  Of course.

19      **THE COURT:**  Putting those aside, it seems to me, from what

20   I understand in your case, you are quite correct that

21   extradition now takes a fairly lengthy time, or lengthier, to

22   put it in -- time to proceed.

23      So my view is that the United States Attorney's office, in

24   their judgment, because I think that's a question of

25   prosecution judgment -- not entirely, since there's a pending

1    case -- but in their judgment, they should move forward on the

2    extradition proceedings, in the event that your client has

3    chosen, at whatever date we'll look at, not to appear here

4    voluntarily.  He doesn't have to appear voluntarily.

5        But I'm not going to sit around and wait for him -- I'm

6    not going to wait for the government to decide whether or not

7    they're going to supersede.

8        Maybe that's the short answer.  I am going to give due

9    deference and consideration to his health conditions, because I

10   think that that's something well beyond his control.  And also

11   from a humanitarian point of view, they have to be considered.

12       **MR. WEINGARTEN:**  (Nods head)

13       **THE COURT:**  But it is my intention -- I want to be direct

14   with you.  My intention is to move as quickly as the process

15   would -- would permit in -- Mr. Weingarten.

16       **MR. WEINGARTEN:**  Can I just say, maybe I misunderstood.

17   Last time I was here, I got the understanding that the Court

18   was okay with the civil trial proceeding first in England.

19       **THE COURT:**  I still am.

20       **MR. WEINGARTEN:**  Okay.

21       **THE COURT:**  No, no, you have the right impression.

22       **MR. WEINGARTEN:**  Okay.

23       **THE COURT:**  But you see, there is this thing called

24   "multi-task."

25       **MR. WEINGARTEN:**  Okay.

1      **THE COURT:**  And it seems to me that -- that -- you know,

2   I'm not at all suggesting that I would set a trial date this

3   year.

4      What I'm suggesting is what I would do -- and I'm glad

5   Mr. Chamberlain is here, though I haven't heard his views on

6   the subject.  But subject to his views on the subject, I would

7   set a trial date, I would -- the setting of the trial date will

8   occur as quickly as I can do it.  That is, as soon as he's

9   here, I will set a trial date.  But that trial date will be a

10  function of everything else that's going on.

11     **MR. WEINGARTEN:**  Okay.

12     **THE COURT:**  The civil trial that's going on.  The --

13  perhaps some health considerations, over time.  Also, of

14  course, the evidence.  You have to look at the evidence.  You

15  have to be prepared for trial.  So all that is in the future.

16     What is not in the distant future is the process of

17  setting a trial date.

18     **MR. WEINGARTEN:**  Can I try one more thing, if I may?

19     **THE COURT:**  Try as many as you want.

20     **MR. WEINGARTEN:**  Thanks.

21     Let's say hypothetically the Court said to the

22  prosecutors:  You have 90 days or 120 days to supercede.  And

23  obviously, you've done that in the past with prosecutors, I

24  assume.  Other judges have done that.

25     That period of time, civil case in London gets under way,

1    Mike Lynch is fully engaged in London.  The proceeding here is

2    not compromised one bit.  We learn, at the end of 90 days or

3    120 days, what the charges we're actually going to face are

4    going to be.

5         As I stand before you today, there's a presumption that

6    Mike Lynch is coming to the United States to stand trial and

7    seek to be vindicated.

8         But let's say that we see something in the superseding

9    indictment, and the barristers say:  This is crazy, he can't be

10   extradited for this, the courts in London will see it X, Y and

11   Z.  Shouldn't he make a decision as whether or not to fight

12   extradition, such an important decision, with the benefit of

13   the knowledge of what he's actually going to be charged with?

14   And if the prosecutors at the end of 90 days or 120 days say:

15   We're not superseding, voilà, we're here.

16        **THE COURT:**  Well, the answer to your question is:  Yes,

17   you're absolutely correct that judges have, from time to time

18   -- and I have -- said you either supersede it 90 days or

19   whatever it is, or we're proceeding on the current indictment.

20   But they say that -- at least I do -- in the context of a trial

21   date, an impending trial date, in which if there is an

22   superseding indictment, it's going to throw the trial date

23   completely off by virtue -- by virtue of the superseding

24   indictment.

25        In this case, that doesn't seem to be the case, since

1  we're talking about a trial date basically a year from now.

2      So, it could happen, because nobody's seen the charges.

3  You know, if they come in, if I set the trial for January 15th,

4  and they came in December 15th with the superseding indictment,

5  believe me, you'd hear from me.  I mean, you'd like to hear

6  from me at that point.

7      But I don't know whether that's going to happen.  I don't

8  know whether it's intended.  I don't know what the grand jury

9  has found or not found.  I don't know how the whole thing is

10  going to play out.

11      So, any other thoughts?

12      **MR. WEINGARTEN:**  Just the --

13      **THE COURT:**  Yeah.

14      **MR. WEINGARTEN:**  Just the Hobbsonian choice that we face

15  here.  We know it's in the indictment.  And you know, Mike

16  Lynch, if he's a British citizen, he has to make a decision yea

17  or nay.  We got that.  We understand that completely.  But it's

18  a critically important decision, and he's got a lot of people

19  in England telling him a variety of things, including really

20  smart barristers.

21      So all we're asking for is for him to have the opportunity

22  to make that decision, based on full information.

23      **THE COURT:**  Well, I understand that argument.  But I mean,

24  your argument about full information is that he should see the

25  superseding indictment, if there is one, before making that

1  decision.

2      And my view on that is that he shouldn't have -- is that

3  I'm not prepared to give him that luxury.  First of all, I must

4  tell you, I think my powers are quite limited in telling the

5  government what to do about superseding indictments.  There may

6  be extraordinary conditions.

7      And maybe you suggest this is one, but I don't think so.

8  I've never heard this argument in this context.  But I'm not

9  blaming you for being creative.  But I've never heard that as

10  to why I should direct the government to file a -- their

11  superseding indictment on or before a particular date.  So I'm

12  not going to do it.

13      Number two, I think it is almost exclusively within the

14  realm of the executive branch whether -- how to proceed on

15  charges.  And whenever I've stuck my toe into it, or finger, or

16  whatever one wants to call it, I have been reminded, and

17  properly so, that's not the function of the court.  So I'm not

18  going to set down those kinds of deadlines.

19      What I'm concerned about here, in addition to the fairness

20  of the proceeding, I'm also concerned about the progress of the

21  proceeding.  And -- because I do have one defendant awaiting

22  sentencing.  I have a second defendant who now appears in front

23  of me today.  And to be fair, to be honest, to be obvious, I

24  would rather not have three trials in this case.

25      There may be reasons, by the way, which, I have no idea

1    about severance.  I have no view on it, don't know the

2    evidence, don't know the arguments and so forth.  So, I'm

3    setting those aside.  But in the normal course, I would want to

4    try Mr. Chamberlain and Dr. Lynch at the same time.  There may

5    be reasons not to.  I don't know.

6         But one reason may or may not be that he is -- that he is

7    sitting in England, listening to his British barristers, who

8    I'm sure are outstanding -- though they're probably not as good

9    as the American barristers -- but -- and you won't dispute

10   that.  No.  At least, not on --

11        **MR. WEINGARTEN:**  Not in public.

12        **THE COURT:**  Okay.  So anyway, I don't know how that's

13   going to go.

14        But I think the appropriate thing -- I think I have to

15   hear from Mr. Chamberlain, from Mr. Lincenberg, on where they

16   are on this whole issue, if they have a view.

17        **MR. WEINGARTEN:**  Okay.

18        **THE COURT:**  And then I'll try to figure out what to do.

19        **MR. LINCENBERG:**  Honestly, Your Honor, I'm not sure what

20   view we have.  But if it gets into --

21        **THE COURT:**  Well, a view as to -- listen.  Not going ask

22   you your view as to extradition, so forth.  No.  I want your

23   view as to a trial.

24        In other words, I want to know when you think, in the

25   ordinary course, you will be prepared to go to trial in this

1    case.

2        **MR. LINCENBERG:**  Well, I'm not sure.  I think it probably

3    would be some time in 2020.  But the only -- the only comment I

4    had to the discussion that's taken place is that it sounds like

5    it's all relevant to the setting of dates.  That, for example,

6    if there's going to be a superseding indictment, whether or not

7    it affects Mr. Chamberlain or not, it sounds like it affects a

8    trial he might be a part of.

9        **THE COURT:**  Right.

10       **MR. LINCENBERG:**  And so, you know, to the extent that

11   there was more information, it would help in the setting of

12   trial dates.

13       **THE COURT:**  Right.

14       **MR. LINCENBERG:**  (Shrugs shoulders)

15       **THE COURT:**  I understand that.  But I've expressed my

16   views as to that.  But you're expressing a view, if I

17   understand correctly, that you would not insist on the Speedy

18   Trial Act in -- in bringing this case to trial within 70 days.

19       **MR. LINCENBERG:**  Oh, that -- that's correct.

20       **THE COURT:**  Yeah.

21       **MR. LINCENBERG:**  This is a complex case that we're going

22   to be behind the ball on --

23       **THE COURT:**  So I don't have a situation where one

24   defendant is saying: I want my trial as soon as possible, and

25   the other defendant is saying: I don't even know whether I'm

1   going to show up for the trial.  I don't have that situation.

2        **MR. LINCENBERG:**  That's correct, Your Honor.

3        **THE COURT:**  Okay.  All right.  So that can help me -- that

4   was -- that's only my concern, because then I can put you in

5   the same time pot as Dr. Lynch.  Same period.

6        **MR. LINCENBERG:**  (Nods head)

7        **THE COURT:**  Okay.  Mr. Reeves.  You have some views on

8   this whole thing?

9        **MR. REEVES:**  Yes, I do.  I would like to begin with a

10  request that time be excluded as to --

11       **THE COURT:**  Yes, it's a complex case.  And of course, one

12  defendant has not appeared.

13       **MR. REEVES:**  Okay.  So thank you, Your Honor.

14       Second, I think rather than sort of predict or guess,

15  frankly, about whether there's additional charges or what

16  action a grand jury may or may not take, I would ask and

17  inquire why Dr. Lynch can't simply follow the same procedure

18  that Mr. Chamberlain has followed, agree to come voluntarily to

19  the United States when he's able to do so.

20       Counsel said that he would be able to travel in three

21  weeks.  Why can't we set the case for four weeks out, on March

22  4th, for Dr. Lynch to appear and be arraigned on the existing

23  indictment?  That's what we would ask for, please.

24       **THE COURT:**  Mr. Weingarten.

25       **MR. WEINGARTEN:**  Well, I mean, I don't want to overstay my

```
 1   welcome, and I don't want to repeat myself.  I mean, for

 2   Dr. Lynch, the decision whether or not to fight extradition is

 3   a real one.  And he's retained counsel to advise him.

 4        To us, everything turns -- the pivot upon which this

 5   decision turns for now, because I think we crossed the bridge

 6   before the Invoke/Darktrace investigation got under way, was

 7   we're here.  So now, again, the modest ask is to give us an

 8   opportunity to see what --

 9        THE COURT:  Here's what I'm missing.

10        MR. WEINGARTEN:  Yes.

11        THE COURT:  Maybe you can fill it in for me.

12        MR. WEINGARTEN:  Yes.

13        THE COURT:  I hear -- what Mr. Reeves is saying --

14        MR. LINCENBERG:  Yes.

15        THE COURT:  -- as I hear it is:  The decision on waiving

16   extradition --

17        MR. WEINGARTEN:  Yes.

18        THE COURT:  -- is made on the basis of the indictment as

19   it stands today.

20        MR. REEVES:  (Nods head)

21        MR. WEINGARTEN:  Yes.

22        THE COURT:  Okay.  That -- now, if people are telling him

23   that that indictment -- and that's what -- I heard a little bit

24   of what you said --

25        MR. WEINGARTEN:  Yes.
```

1     **THE COURT:**  -- is subject to -- the extradition is subject

2     to challenge --

3         **MR. WEINGARTEN:**  For sure.

4         **THE COURT:**  -- based upon that indictment.

5         **MR. WEINGARTEN:**  For sure.

6         **THE COURT:**  Okay.  He'll either have to decide to

7     challenge it, or not.

8         **MR. WEINGARTEN:**  But -- sorry.

9         **THE COURT:**  If he -- well, I understand why you might want

10    to know everything else that's out there.  But it's also clear

11    to me that if he were to waive indictment on those charges, he

12    doesn't waive indictment on any superseding indictment.

13        **MR. REEVES:**  Extradition --

14        **THE COURT:**  Yeah, pardon me.  Extradition on a superseding

15    indictment.  So he preserves -- he preserves those claims.

16        Now, he would give up -- and I'm not about to advise him,

17    but obviously he's going to give up whatever challenges he has

18    to the present extradition.  Defense of extradition.  But I

19    think he has to make that decision now.

20        And I think that it does make sense to continue this for

21    four weeks.  We'll pick a day.  He can travel on a Sunday or

22    any day that's convenient, and appear in court, and leave the

23    same day.  That's not -- that's not an issue.

24        **MR. WEINGARTEN:**  Okay, I -- I -- unrelated point.  I have

25    a trial that commences in Dallas on March 6th.  So what I would

1   like is to consult with his physicians and perhaps suggest a

2   different date, so that I could be here.

3       **THE COURT:**  Well, I want you here.

4       **MR. WEINGARTEN:**  Thank you.

5       **THE COURT:**  That's not a question.

6       **MR. REEVES:**  March 11th would also be fine.

7       **MR. WEINGARTEN:**  It would have -- for me to be here, it's

8   a long trial in Dallas.  For me to be here --

9       **THE COURT:**  Who's it in front of?

10      **MR. WEINGARTEN:**  Judge Lindsay.

11      **THE COURT:**  Judge Lindsay.

12      **MR. WEINGARTEN:**  Sam Lindsay.

13      **THE COURT:**  Federal judge?

14      **MR. WEINGARTEN:**  Yeah.

15      **THE COURT:**  Judge Lindsay.  I don't know Judge Lindsay.

16      I'm sure Judge Lindsay is a great judge, and may possibly

17  accommodate a brief appearance --

18      **MR. WEINGARTEN:**  Okay, we can try.

19      **THE COURT:**  -- in San Francisco, either on a Friday or a

20  Monday.  I'm going to give you some flexibility.  I want -- I

21  want you to be here, either with or without your client, on

22  March 1, March 4th, March 8th or March 11th.

23      **MR. WEINGARTEN:**  Okay.

24      **THE COURT:**  And as far as his health concerns, if those

25  dates are agreeable -- you don't have to send me anything about

1   his health.  I accept your representation.  That's good enough

2   for me.

3        **MR. WEINGARTEN:**  Thank you.

4        **THE COURT:**  And -- you know.  But if it turns out that his

5   health care prevents him from going at that time, then I would

6   want a pretty detailed explanation of what's going on.

7        **MR. WEINGARTEN:**  Of course.

8        **THE COURT:**  Now, Mr. Lincenberg, what about you?

9        **MR. LINCENBERG:**  In terms of those dates?

10       **THE COURT:**  Yeah.  I want them both here together.

11       **MR. LINCENBERG:**  What --

12       **THE COURT:**  Or, if Mr. Lynch is not going to be here, I

13   want Mr. Chamberlain here.  Because we have got to get this

14   thing going.

15       (Off-the-Record discussion between counsel)

16       **MR. LINCENBERG:**  Your Honor, those dates are not all good

17   for me, but I think I could have my partner here, if need be.

18       **THE COURT:**  Good.  All I'm going to do -- what I'm going

19   to try to do is set a date, set a trial date, a motions date.

20   And I may say something about discovery, too.

21       I may give some requirements of the government about

22   furnishing information and so forth.  I don't know what you

23   presently have.  But there's a lot of discovery in this case.

24   A lot of it, I'm quite sure, is known to you.  But there may be

25   things unknown.  And I'm going to direct that a certain amount

1   of that --

2       **MR. LINCENBERG:**  Judge, can I make one request?  Is there

3   a time before March 1, like a couple of days in February?

4   Because I know March 1 --

5       **THE COURT:**  Sure.  If you do an earlier day, that's fine.

6       **MR. WEINGARTEN:**  Okay.

7       **THE COURT:**  Just agree amongst yourselves.  Okay?  No

8   surprises.  Everybody gets along, and gets dates -- doesn't

9   have to worry about the --

10      **MR. WEINGARTEN:**  Okay.

11      **THE COURT:**  -- the "Aha" factor.

12      **MR. REEVES:**  Your Honor, I think we're going to need time

13  excluded as to Mr. Chamberlain through a specific date.  If we

14  could have a minute to perhaps confer with counsel about a date

15  --

16      **THE COURT:**  Go right ahead.

17      **MR. REEVES:**  Thank you.

18      (Off-the-Record discussion between counsel)

19      **MR. WEINGARTEN:**  Perhaps if we look at February 27th, if

20  the Court has time then?

21      **THE COURT:**  February 27th.

22      **MR. REEVES:**  That would be fine for the government,

23  Your Honor.

24      **THE CLERK:**  We will be in trial.  So do you want to come

25  late in the afternoon, 4:00?

1      **MR. LINCENBERG:**  Sure.

2      **MR. REEVES:**  That's fine for the government.

3      **MR. LINCENBERG:**  That's fine with us.

4      **THE COURT:**  If you need to change it, call Ms. Scott.

5      **MR. WEINGARTEN:**  Okay.  Thank you.

6      **MR. LINCENBERG:**  Does Mr. Chamberlain need to be here for

7  that?

8      **MR. REEVES:**  (Inaudible)

9      **THE COURT:**  I want him here, if -- well, look.  Let's see,

10  do I need him here?  Mr. Lynch is not here.  I think the answer

11  is yes.

12      Well, I'm trying to figure out -- I need to hear -- I

13  need -- I need Mr. Chamberlain to be here when I give a trial

14  date.  Now, the question is:  Am I going to give a trial date

15  on -- if -- if Dr. Lynch isn't here, would I give a trial date?

16      And the reason I need to give a trial date, among other

17  things, is that all the lawyers get busy.

18      (Off-the-Record discussion between counsel)

19      **THE COURT:**  And then:  No, I can't do it next month, or I

20  can't do it six months from -- yes.

21      **MR. REEVES:**  Well, I think the parties can probably confer

22  about all of this, Your Honor.

23      **THE COURT:**  Why don't you work it out.

24      **MR. REEVES:**  Yeah.

25      **MR. LINCENBERG:**  Also, counsel had a good idea that if

1   Mister -- if Mr. Lynch is going to be here, that

2   Mr. Chamberlain should be here as well.

3         **MR. REEVES:**  Yes.

4         **THE COURT:**  I agree with that.

5         **MR. LINCENBERG:**  Otherwise --

6         **THE COURT:**  Otherwise, I don't want people going back and

7   forth and back and forth and back and forth.

8         **MR. LINCENBERG:**  Right.

9         **THE COURT:**  Yeah.

10        **MR. REEVES:**  So we will adjourn the case to February 27 --

11        **THE COURT:**  And I should also point out, because I think

12   it will be a concern, is that a lot of proceedings could be

13   done without the presence of the client, assuming he executes a

14   waiver, and is advised of it.  I'm not -- you know.

15        Obviously -- not talking about a trial, but I am talking

16   about a lot of motions work and so forth and so on, disputes

17   and so forth.  As far as I'm concerned, as long as they're

18   notified of it, and they decide -- and elect not to come, they

19   don't have to come.

20        **MR. LINCENBERG:**  And Your Honor, if the Court wants to do

21   that orally, right now, we'd be happy to do that.

22        **THE COURT:**  Well, I would like to get everybody here.

23        **MR. LINCENBERG:**  Okay, just in terms of a waiver of

24   appearance, but --

25        **THE COURT:**  (Inaudible)

1      **MR. LINCENBERG:**  Okay.  I don't want to change the

2   subject.  I have a small point, just to clarify --

3      **THE COURT:**  Let me take up Mr. Lincenberg's point.

4   Mr. Chamberlain, would you come up for just a moment, please?

5      (Request complied with by the defendant)

6      **THE COURT:**  I don't know whether you appreciated exactly

7   what I said, but let me just go through it one more time.

8      You have a right, as I indicated, to be here at all

9   proceedings.  In other words, anything that occurs in your

10  case, you're entitled to be here in open court, to observe, to

11  -- to counsel with your attorney, to take positions, all of

12  those things, you're entitled to be here.

13     You're also, with leave of the Court, that is, with my

14  permission, not required to be here for certain proceedings.

15  Because as long as your attorney, your representatives are

16  here, then that's something that I can deal with in terms of

17  whatever is discussed with them.

18     Now, what the process will be will be your counsel will

19  advise you that:  On such and such a date, there will be a

20  court hearing on such and such a matter.  Do you wish to be

21  here or do you not wish to be here?

22     And that will be your election, after you discuss it with

23  counsel.  And you are free not to be here.  No action will be

24  taken in connection with your failure to appear.

25     Do you understand that?

1    **DEFENDANT CHAMBERLAIN:**  Yes, I do, Your Honor.

2    **THE COURT:**  Okay.  And I think that that -- just as an

3    accommodation, it is less disruptive to your life if that

4    process is followed.

5    **MR. LINCENBERG:**  We appreciate that, Your Honor.

6    **THE COURT:**  Oh, that's okay.  That's all right.

7    **DEFENDANT CHAMBERLAIN:**  Thank you.

8    **THE COURT:**  The least I can do.

9    **MR. LINCENBERG:**  I wanted to make one quick correction.

10   **THE COURT:**  Yes, go right ahead.

11   **MR. LINCENBERG:**  The bond as it was prepared, the Hussain

12   bond was $1,000, unsecured.

13   **THE COURT:**  Yeah.

14   **MR. LINCENBERG:**  And as the bond was being prepared, it

15   was prepared differently.  The clerk initialed it out and

16   changed it to $1,000, unsecured.

17   Because it's now a messy bond form (Indicating), I just

18   wanted to state that for the record.

19   **THE COURT:**  Fine.  Messy.  It's messy.  This whole case is

20   messy.

21   **MR. REEVES:**  So long as it's accurate, and I think it is,

22   Your Honor.

23   One last detail.  In the event that Dr. Lynch does not

24   come, et cetera, on February 27th, and in the event then that

25   the case is adjourned further as to Mr. Chamberlain, I think

1    the government agrees it doesn't make sense for him to travel

2    at that time, and will inform the Court --

3            **THE COURT:**  No.

4        **MR. REEVES:**  -- that that would extend the case; it may

5    need to extend the exclusion of time under the Speedy Trial

6    Act.  This is a very complicated case.  I think it's important

7    to build a record about the appropriateness of the exclusion,

8    and the possibility that we would be excluding time from today,

9    through that appearance, to a future date set by the Court.

10       **MR. LINCENBERG:**  I think that makes sense.  Can I have one

11   minute to explain to my client --

12           **THE COURT:**  Yeah.

13       **MR. LINCENBERG:**  -- what all that means?

14       **MR. FRENTZEN:**  Before the explanation, if I could, I

15   believe -- and I'm going on memory here, Your Honor, but I

16   believe the Speedy Trial Act also has an exclusion for getting

17   co-defendants together in the same case.  And so I think that

18   would also be appropriate to put on the record.

19       Thank you.

20       **MR. REEVES:**  So I'm belt, and he's suspenders.

21       **MR. LINCENBERG:**  Let me just take one --

22       (Off-the-Record discussion between counsel and defendant)

23       **MR. LINCENBERG:**  I've consulted with my client, and my

24   client is certainly willing to exclude time, as Mr. Reeves has

25   --

1      **THE COURT:**  Thank you.  All right.

2      **MR. REEVES:**  Thank you, Your Honor.

3      **THE COURT:**  Thank you.

4      Mr. Weingarten.

5      **MR. WEINGARTEN:**  Just one quick point.  Since the case is

6  adjourned until the end of February, I assume no extradition

7  proceedings will commence.  I know the Court has limited power

8  on that subject as well.  But I would like it on the record.

9      **THE COURT:**  I can't -- I can't give that assurance,

10 because it's not within the Court to give that assurance.

11 However, I will tell you that it will be the Court's view that

12 extradition ought to proceed expeditiously, in the event that

13 your client does not appear.

14     **MR. WEINGARTEN:**  I -- I'm not surprised to hear that.

15     **THE COURT:**  Not surprised.  Oh, all right.

16     **MR. WEINGARTEN:**  But I'm worried about from now until

17 February 27.

18     **THE COURT:**  Well, that's something for you to talk to him

19 about it.  I can't -- I'm not going to broker a deal.  So just

20 sit down.  You know people in the U.S. Attorney's office?

21     **MR. WEINGARTEN:**  I do.  I watched the Super Bowl with one.

22     **THE COURT:**  So talk to Mr. Reeves, Mr. Frentzen,

23 Mr. Leach.  They're all fine lawyers.  And --

24     **MR. LINCENBERG:**  Okay.

25     **MR. REEVES:**  I do think that's the right remedy,

1   Your Honor.  And I am happy to confer with counsel about it, as

2   we have on this matter in the past.  But no, the government is

3   not going to make a representation one way or the other.

4           **THE COURT:**  Okay.

5           **MR. REEVES:**  Anything else?

6           **THE COURT:**  Well, that's usually my question.

7           **MR. REEVES:**  Okay.

8           (Off-the-Record discussion between the Court and Clerk)

9           (The Court signs document)

10          **THE COURT:**  Okay.  Anything else?

11          **MR. REEVES:**  Nothing for the government.

12          **THE COURT:**  Okay, thank you very much for coming in.

13          **MR. REEVES:**  Thank Your Honor.

14          **MR. FRENTZEN:**  Thank you, Your Honor.

15          **MR. WEINGARTEN:**  Thank you.

16          (Proceedings concluded)

1        CERTIFICATE OF REPORTER

2        I, BELLE BALL, Official Reporter for the United States

3    Court, Northern District of California, hereby certify that the

4    foregoing is a correct transcript from the record of

5    proceedings in the above-entitled matter.

6

7                        *Belle Ball*

8                        /s/ Belle Ball

9              Belle Ball, CSR 8785, CRR, RDR

10               Monday, February 4, 2019

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25