UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

_____

| | |
|---|---|
| **United States of America,** ) | |
| ) | No. 3:18-cr-00577-CRB |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | San Francisco, California |
| **Michael Richard Lynch and** ) | December 8, 2022 |
| **Stephen Keith Chamberlain,** ) | 1:44 p.m. |
| ) | |
| Defendants. ) | |
| _____ ) | |

BEFORE:  THE HONORABLE CHARLES R. BREYER, JUDGE

REPORTER'S TRANSCRIPT OF ZOOM PROCEEDINGS

STATUS CONFERENCE

Official Court Reporter:
Cathy J. Taylor, RPR, CRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                        **A P P E A R A N C E S**

2

   For the Plaintiff:
3       UNITED STATE ATTORNEY'S OFFICE
        By:  **Mr. Adam A. Reeves, Esq.**
4            **Mr. Robert S. Leach, Esq.**
        1301 Clay Street, Suite 340S
5       Oakland, California  94612

6  For the Defendant Chamberlain:
        BIRD, MARRELA, BOXER, WOLPERT, NESSIM, DROOKS,
7       LINCENBERG & RHOW
        By:  **Mr. Gary S. Lincenberg, Esq.**
8            **Mr. Michael Charles Landman, Esq.**
        1875 Century Park East, 23rd Floor
9       Los Angeles, California  90067
        - and -
10      BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS
        LINCENBERG & RHOW
11      By:  **Mr. Ray Seilie, Esq.**
        355 South Grand Avenue, 35th Floor
12      Los Angeles, California  90071

13

14

15

16

17

18

19

20

21

22

23

24

25

                   UNITED STATES DISTRICT COURT

# P R O C E E D I N G S

1      THE COURTROOM DEPUTY:  Calling Criminal Action CR-18-0577, USA vs. Michael Richard Lynch and Stephen Keith Chamberlain.

     Counsel, please state your appearances.

      MR. REEVES:  Adam Reeves and Robert Leach for the United States.  Good afternoon, Your Honor.

      THE COURT:  Good afternoon.

      MR. LINCENBERG:  Good afternoon, Your Honor.  Gary Lincenberg, Ray Seilie, and Michael Landman for Mr. Chamberlain.

      THE COURT:  No.  Is Mr. -- is Dr. Lynch part of this, or not?

      MR. REEVES:  I don't think so today, Your Honor.

      THE COURT:  All right.  Okay.  Go ahead, Mr. Lincenberg.

      MR. REEVES:  Well, the case is on for status.

      THE COURT:  Why?

      MR. REEVES:  And I think there was one issue that Mr. Lincenberg wanted to raise for the Court with regard to the defendant's Rule 17 subpoenas.

      MR. LINCENBERG:  Thank you, Mr. Reeves.

     Mr. Seilie's going to raise the point.

      MR. SEILIE:  Your Honor, this is just a -- as you may recall, we -- we stipulated to the issuance of some Rule 17

subpoenas.  I think it was almost a year ago now.  And under
the terms of the proposed order, we asked that the Court
transmit three letters rogatory to the U.K. office who handles
foreign requests for discovery.  And we -- we want to
provide -- we were having a little bit of trouble with that          14:45:32
process and wanted to seek Your Honor's guidance.

        Essentially -- essentially, you know, I believe our
paralegal, Rachel Capata, was in touch with your clerk to
handle the logistics of transmitting the letters to the U.K.
Our understanding is that they have been sent.  Those letters         14:45:53
were sent both by snail mail and email, but every time we've
tried to talk to the U.K. authorities, they've told us that
they haven't received anything, and also, oh, by the way, we
usually only receive these requests from prosecutors.

        So, you know, we're -- we're at a little bit of a           14:46:11
standstill here, and, you know, trying to figure out what we
could -- see if Your Honor could -- if Your Honor might be
willing to communicate with the office directly and note that
Your Honor issued an order asking for these letters rogatory to
be delivered.                                                       14:46:34

        And, you know, we're open to other suggestions that --
that the Court might prefer, but essentially we -- we've -- we
wanted to report back to indicate that we are having trouble
with -- I think it's three of seven requests that we submitted
last year.  And so --                                               14:46:50

1          THE COURT:  So are the -- tell me a little bit more

2     about it.  Are the -- the -- what we'll call the noncompliant

3     collection, are they -- is it a governmental entity?  Is it a

4     private concern?  Is it a quasi or --

5          MR. SEILIE:  So --

6          THE COURT:  -- middle levity private concern?

7          So what -- what -- what's the story?

8          MR. SEILIE:  So they're essentially the equivalent of

9     subpoenas here.  That two of the targets -- or two of the

10    subjects are individuals who reside in the United Kingdom, and          14:47:23

11    one of them is an entity that's based in the United Kingdom.

12    But the reason the U.K. organization is -- government

13    organization is involved is because, you know, it's our

14    understanding, and we are advised by U.K. counsel regarding

15    this issue, that the process for getting this -- these          14:47:42

16    discovery requests transmitted to a foreign entity is to

17    basically have the Court communicate directly with the U.K.

18    Central Authority, which, you know, I believe Your Honor's

19    chambers has done already, and then have that authority

20    transmit those requests to the law enforcement entities in the          14:48:03

21    U.K. that would then handle the -- the production or the

22    service of those essentially subpoenas on the individuals.

23         And -- and the issue we're having is with the stage --

24    you know, we are under -- we have signed orders from -- from --

25    from the Court.  It is our understanding that those signed          14:48:26

1    orders have been sent to the U.K. Central Authority by the

2    Court.  The only issue here that we're having now is either

3    they literally just haven't -- like they claimed to not have

4    received them, but I've -- I've seen an email from your

5    chambers to the U.K. Central Authority suggesting that they          14:48:46

6    have received them.

7            And, you know, we're -- we're a little bit concerned

8    here that, you know, since this isn't a request from the

9    government, they don't really know how to deal with it and --

10   and they're just disregarding it.                                     14:48:59

11           So --

12           THE COURT:  So what --

13           MR. SEILIE:  -- that's the situation.

14           THE COURT:  Part of the problem, of course, is that

15   the United States Government, the Department of Justice, has         14:49:07

16   people assigned to embassies to expedite legal requests, I

17   think maybe exclusively, but emanating from law enforcement in

18   the United States.  Maybe; maybe not.  I don't know, because

19   I've never confronted this particular situation.  So the

20   question is -- and -- and you don't, as you wouldn't.  You're        14:49:33

21   private.  You know, there's no reason why you would.

22           So I see the United States Government being very

23   silent during all of this.  And what is it?  You don't want to

24   own it or you don't want to help, or what?  What's going on?

25           I mean, I think --                                           14:50:00

UNITED STATES DISTRICT COURT

1          MR. REEVES:  Well, Your Honor --

2          THE COURT:  -- a call might unstick a lot of this.

3   They're not asking for anything other than, you know, I guess

4   the service of the documents on the -- on the ultimate

5   recipient or the person who is -- who's being asked to produce          14:50:17

6   something.  So normally you pick up a phone.

7          If it were -- if the shoe were on the other fit --

8   foot, you would simply phone your liaison and say, what's

9   happening here?  Why can't -- can you get it done?

10         That's how that works.  Matter of fact, you'd phone          14:50:34

11  your old friend, Pete Axelrod, and -- and say, Pete, can you do

12  something about this?

13         Now, he's no longer --

14         MR. REEVES:  That's only if we had the good fortune

15  of --          14:50:48

16         THE COURT:  That's the idea.

17         MR. REEVES:  If it was a --

18         THE COURT:  That would be --

19         MR. REEVES:  -- French rogatory, yes, we could solve

20  it that way, Your Honor.          14:50:53

21         THE COURT:  Well, what -- what do you want to do?  I

22  don't want to -- you know, I don't want -- know one wants to

23  sit around and delay it further if it -- if it doesn't have to

24  be.  And I'm quite sure you're as cooperative as you can be,

25  but can you be a little bit more cooperative?  I guess, make a          14:51:08

1   telephone call or something.  I think that's what they're

2   asking you to do.

3            I don't know that the Court can do anything.  I mean,

4   I think the Court's -- you know, the Court is pretty

5   circumscribed by what we can do.  Like I don't think we can,          14:51:23

6   like, phone King Charles and ask him, could he please do

7   something about this.  That's just not going to work, and it's

8   not appropriate.  But I don't think it's inappropriate for the

9   government to do something --

10           MR. LANDMAN:  Your Honor --          14:51:41

11           THE COURT:  -- for this --

12           MR. LANDMAN:  Mr. Reeves, let me just jump in.

13           The government has tried to assist us.

14           MR. REEVES:  Yeah.

15           MR. LANDMAN:  And so there is no complaint being          14:51:50

16   registered --

17           THE COURT:  No, I understand, at all.

18           MR. LANDMAN:  -- with Mr. Reeves.

19           And I understood you did have the cell phone number

20   for King Charles, and we're just asking you to use it.          14:51:57

21           THE COURT:  I'm afraid -- I would, except for one

22   problem.  My understanding is that there is a history of having

23   that telephone number hacked.  And that -- is that an intrusive

24   act?

25           MR. REEVES:  I don't know.          14:52:18

```
1            THE COURT:  I don't want to be on the front -- front

2      page of the -- of The London Times.

3            MR. LINCENBERG:  At this stage our request is no more

4      than to ask the Court to reach out one more time.  Your -- your

5      clerk has done so, has provided us evidence that the clerk has          14:52:32

6      done so.

7            THE COURT:  Okay.

8            MR. LINCENBERG:  If you could simply --

9            THE COURT:  I will.

10           MR. LINCENBERG:  Appreciate it.                                    14:52:41

11           THE COURT:  I'll be glad to do that.  There's no

12     objection, I would assume, from --

13           MR. REEVES:  No objection.

14           THE COURT:  No.

15           MR. REEVES:  We want to see the Court's order                      14:52:47

16     enforced --

17           THE COURT:  Yes.

18           MR. REEVES:  -- Your Honor.

19           THE COURT:  That's fine.  So I will -- give me the

20     information.  Or if I don't have it already, you might send me          14:52:51

21     another copy of the document, and I will do so.

22           MR. LINCENBERG:  Thank you, Your Honor.

23           THE COURT:  I'll do it personally.  That's fine.

24           MR. LINCENBERG:  Thank you.

25           THE COURT:  I think I still speak the language; right?            14:53:03
```

1    I haven't forgotten it.  Yeah.  It's the King's English.

2            MR. REEVES:  Exactly.

3            THE COURT:  Exactly.

4            MR. LINCENBERG:  Before the France/England game on

5    Saturday, because they're all going to be mad there after that

6    game.

7            THE COURT:  Yeah, right.  Well, if they win, then I

8    can congratulate them or commensurate them.  They lasted longer

9    than we did, so there.

10           MR. LINCENBERG:  Right.

11           MR. REEVES:  Right.

12           THE COURT:  All right.  Okay.  Anything else?

13           MR. REEVES:  Only to adjourn the matter, Your Honor.

14   The parties had talked about an adjournment until

15   September 2023.  I do -- while that's a long adjournment, I do

16   think that we're making some progress in the U.K. around the

17   extradition.  We were recently informed by the government in

18   the U.K. that they anticipate a decision on Dr. Lynch's request

19   to appeal the extradition order sometime after January 11th.

20   And so I'm hopeful that at the next appearance we'll have more

21   concrete --

22           THE COURT:  Well, let's just -- I -- I get so nervous

23   about sending things over.  Why don't we just do it for June

24   sometime, have a status.  Okay?

25           MR. REEVES:  I'm scheduled to be in trial in June, but

1   May would be fine, Your Honor.

2           THE COURT:  All right.  Let's do May.

3           MR. LINCENBERG:  That's fine.

4           THE COURTROOM DEPUTY:  Okay.

5           THE COURT:  It'll be Zoom.  It'll be Zoom.                    14:54:28

6   Defendant's appearance is waived obviously.

7           THE COURTROOM DEPUTY:  May 31st at 1:30?

8           MR. REEVES:  May 31st at 1:30.  That sounds fine for

9   the government.

10          Thank you, Your Honor.                                       14:54:40

11          MR. LINCENBERG:  Thank you, Your Honor.

12          MR. REEVES:  We would ask that time be excluded.

13          THE COURT:  Yes, I will exclude time for the

14  complexity of the case.

15          MR. REEVES:  Thank you, Your Honor.                          14:54:49

16          MR. LINCENBERG:  Thank you.  Have a good afternoon.

17          THE COURT:  All right.  Thank you.  Have a good

18  holiday.  Okay.  Bye-bye.

19          (Proceedings conclude at 2:54 p.m.)

20                          ---oOo---

21

22

23

24

25

1

2

3

4

5                        **C E R T I F I C A T E**

6

7            I, CATHY J. TAYLOR, do hereby certify that I am duly

8    appointed and qualified to act as Official Court Reporter.

9            I FURTHER CERTIFY that the foregoing pages constitute

10   a full, true, and accurate transcript of all of that portion of

11   the proceedings contained herein, had in the above-entitled

12   cause on the date specified therein, and that said transcript

13   was prepared under my direction and control.

14            DATED this 16th day of December, 2022.

15

16

17                            s/Cathy J. Taylor_____

18                            Cathy J. Taylor, RPR, CRR, CRC

19

20

21

22

23

24

25

                         UNITED STATES DISTRICT COURT