UNITED STATES DISTRICT COURT

              FOR THE NORTHERN DISTRICT OF CALIFORNIA


United States of America,      )
                               )
                  Plaintiff,   )  3:18-cr-00577-CRB
                               )
v.                             )  San Francisco, California
                               )  May 12, 2023
Michael Richard Lynch,         )  9:20 a.m.
                               )
                  Defendant.   )
_____)




          BEFORE:  THE HONORABLE CHARLES R. BREYER, JUDGE

              REPORTER'S TRANSCRIPT OF PROCEEDINGS

                       DETENTION HEARING
                  VIA REMOTE/HYBRID PLATFORM








Official Court Reporter:
Teri Veres, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 38
Phoenix, Arizona 85003-2151
(602) 322-7251


Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

                    UNITED STATES DISTRICT COURT

```
 1                           A P P E A R A N C E S

 2

 3    For the Plaintiff:

 4          DEPARTMENT OF JUSTICE-USAO
            Northern District of California
 5          By:  Robert S. Leach, AUSA
            450 Golden Gate Avenue
 6          Box 36055
            San Francisco, California  94102
 7
            UNITED STATES ATTORNEYS OFFICE
 8          Northern District of California
            BY:  Adam A. Reeves, AUSA
 9          1301 Clay Street
            Suite 340S
10          Oakland, California  94612

11    For the Defendant Lynch:

12          CLIFFORD CHANCE US LLP
            By:  Christopher J. Morvillo, Esq.
13          31 West 52nd Street
            New York, New York  10019-6131
14

15          STEPTOE & JOHNSON
            By:  Jonathan M. Baum, Esq.
16          One Market Plaza
            Steuart Tower
17          Suite 1070
            San Francisco, California  94015
18

19    For the Defendant Chamberlain (via remote platform):

20          BIRD MARELLA BOXER WOLPER NESSIM DROOKS LINCENBERG RHOW
            By:  Gary S. Lincenberg, Esq.
21          1875 Century Park East, 23rd Floor
            Los Angeles, California  90067-2561
22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2   (The proceedings started at 9:20 a.m.)
 3              COURTROOM DEPUTY:  Calling criminal action
 4   CR18-0577, USA versus Michael Richard Lynch.
 5              Counsel, please state your appearances for the
 6   record.
 7              MR. LEACH:  Good morning, Your Honor, Robert Leach
 8   and Adam Reeves on behalf of the United States.
 9              THE COURT:  Morning.
10              MR. MORVILLO:  Good morning, Your Honor, Christopher
11   Morvillo and Jonathan Baum for Michael Lynch, who's present in
12   the courtroom.
13              MS. FRIESEN:  Good morning, Your Honor, Pepper
14   Friesen for Pretrial Services.
15              THE COURT:  Morning.  I've been advised of a number
16   of things with respect to the satisfaction of the conditions
17   of bond, which seem satisfactory to me.  So let me go over a
18   couple of them so we don't -- so we have clarity on the issue.
19              First, with respect to the cash -- the cash
20   equivalent -- the cash and the cash equivalent deposit of
21   funds with the Clerk of the Court, which is to be 50 million
22   dollars, my understanding presently -- you can disabuse me of
23   this notion -- is it will be a combination of cash and the
24   cash will constitute, I think, like -- I think I was told
25   either 12 or 12 point something million dollars; is that
```

1    correct?

2            What is the amount?

3            MR. MORVILLO:  So, Your Honor --

4            THE COURT:  Approximately.  I mean, you don't have

5    to. . .

6            MR. MORVILLO:  There have been some documents

7    overnight.

8            THE COURT:  Go ahead, Mr. Morvillo.

9            MR. MORVILLO:  Thank you.  But just to answer your

10   question, the 12.5 million dollars, which was originally what

11   the Government and defense agreed was appropriate security

12   from a cash perspective, is what was posted for bond in the

13   United Kingdom, 10 million pounds.

14           We are in the process of getting that returned, but

15   there's a process there that the Court just doesn't return it

16   right away when you ask for it.  There's some orders that need

17   to be entered.  So that money probably won't be available for

18   a week or so.

19           Overnight I was able to arrange for a transfer into

20   my escrow account of 15 million dollars --

21           THE COURT:  Okay.

22           MR. MORVILLO:  -- and so we would propose to post

23   that cash in addition to --

24           THE COURT:  Yes.  I mean, that's fine.  I don't --

25   that's fine.  So, in other words, you would simply -- your

1   escrow account or your law firm's account would then be

2   reimbursed from the funds that come from the United Kingdom

3   because he satisfied the conditions of bail there?

4               MR. MORVILLO:  That is right.

5               THE COURT:  Okay.

6               MR. MORVILLO:  The reason I make this point, Your

7   Honor --

8               THE COURT:  Yes, please.

9               MR. MORVILLO:  -- so you understand we can post that

10  cash today --

11              THE COURT:  Fine.

12              MR. MORVILLO:  -- as opposed to --

13              THE COURT:  So cash will be deposited in the amount

14  of --

15              MR. MORVILLO:  Fifteen million dollars.

16              THE COURT:  -- 15 million dollars.

17              Also, at some point today, my understanding is

18  shares of stock of this publicly-traded company will also be

19  posted with the Clerk of the Court with an executed --

20  executed by the defendant authorization for a transfer of

21  sale.

22              I'm not sure I got the words right, but it would

23  empower in the event of a -- in the event of a breach, which,

24  by the way, I don't anticipate -- in the event of a breach the

25  shares could be sold in satisfaction of the -- after -- after

1  due process -- after a process is determined.

2          MR. MORVILLO:  So that is also correct, Your Honor.

3          As we speak, an associate from my London office is

4  in the air with the certificates.  She lands today around 2:00

5  o'clock at SFO.  She will bring the certificates right to

6  court.

7          THE COURT:  Okay.

8          MR. MORVILLO:  The share certificates owned by

9  Mr. Lynch at today's market value are worth approximately 54

10  million dollars.

11          THE COURT:  Okay.

12          MR. MORVILLO:  And so those will be the subject of

13  the stock transfer agreement.

14          THE COURT:  That's fine, okay.  In my view, at some

15  point today, in the afternoon, the cash requirement will have

16  been met?

17          MR. MORVILLO:  Yes, yes.  Obviously, we have to post

18  the security and hand over the certificates.

19          THE COURT:  Yes, but that all goes to the Clerk of

20  the Court and the Clerk's Office will be open, obviously, for

21  that process; and if there is an issue as to that or anything,

22  you can certainly raise it with the Magistrate Judge, Judge

23  Beeler, and she's had far more experience in this matter than

24  this Court, will be able to intercede on everybody's behalf

25  and try to work out any issues at all and she's present --

```
 1              MR. MORVILLO:  And I know she's in the courtroom,
 2   yes, Your Honor, thank you.
 3              THE COURT:  She's present in court in person with
 4   us.  All right, I think that deals with that issue.
 5              The second issue -- I say second.  An issue is the
 6   custodial arrangement for the defendant and the Court has
 7   received from -- I believe from you, Mr. Morvillo, a document
 8   called Statement of Capabilities provided by a company called
 9   Keelson, K-e-e-l-s-o-n, Strategic.
10              My understanding is that this company is going to be
11   the -- is going to provide the security to ensure the
12   defendant's compliance with all terms and conditions of the --
13   of the release; is that correct?
14              MR. MORVILLO:  That is correct, Your Honor.
15              THE COURT:  Is there a representative from that firm
16   here?
17              MR. MORVILLO:  I was about to say that there is,
18   Jaime Marmolejo.
19              THE COURT:  Pardon me?
20              MR. MORVILLO:  Jaime Marmolejo is in the courtroom
21   from this company and would be prepared to answer questions
22   from the Court if it desires.
23              THE COURT:  I do desire questions.  So perhaps he
24   would come forward and we can inquire of him.
25              MR. MORVILLO:  You may want to spell your name for
```

1   the record.

2          MR. MARMOLEJO:  Good morning, sir.  Last name is

3   Marmolejo, M-a-r-m-o-l-e-j-o.

4          THE COURT:  And, sir, you are a representative of

5   the company known as Keelson Strategic?

6          MR. MARMOLEJO:  Yes, sir.

7          THE COURT:  And what is your position there?

8          MR. MARMOLEJO:  It's a program manager for the

9   company.

10         THE COURT:  Okay, and where is the company located?

11         MR. MARMOLEJO:  It's based out of Los Angeles but

12   they have -- they're based out of here, also, in San

13   Francisco, sir.

14         THE COURT:  And do they have an address here in San

15   Francisco?

16         MR. MARMOLEJO:  Um, I will be able to provide one

17   for you.

18         THE COURT:  What about in Los Angeles?

19         MR. MARMOLEJO:  I can get that for you, sir, yes.

20         THE COURT:  All right.  Well, so if you would, I

21   would appreciate that --

22         MR. MARMOLEJO:  Yes, sir.

23         THE COURT:  -- and submit that to the Government and

24   to the Court.

25              You -- as I understand it, the reason you're here is

1   that you are -- that is to say, your company is prepared to

2   offer services in connection with the defendant's housing and

3   transportation; is that correct?

4            MR. MARMOLEJO:  Correct, sir, yes.

5            THE COURT:  Okay.  Now, the Court -- I don't know

6   whether a place has been selected yet, Mr. Morvillo?

7            MR. MORVILLO:  We have secured an apartment for a

8   month, Your Honor.

9            THE COURT:  All right.  And where is that located?

10           MR. MORVILLO:  At 2710 Pine Street in San Francisco.

11           THE COURT:  2710 Pine Street, are you familiar with

12   that residence?

13           MR. MARMOLEJO:  Yes, sir.

14           THE COURT:  Okay, and have you seen it?

15           MR. MARMOLEJO:  Yes, sir.

16           THE COURT:  All right.  Does it have -- is there

17   more than one individual who resides there?  When I say "more

18   than one individual," is there more than one unit there or is

19   it a single unit?

20           MR. MARMOLEJO:  It's a -- it's single unit home.

21           THE COURT:  Okay, it's a home.

22           And are you familiar with entrances and exits to

23   that location?

24           MR. MARMOLEJO:  Yes, sir.

25           THE COURT:  So the Court will instruct you that we

1    need on a 24-hour, seven-day-a-week basis at least two

2    individuals at any given time to maintain security there.

3            Is your firm able to provide that service?

4            MR. MARMOLEJO:  Yes, sir.

5            THE COURT:  Okay.  Next, it is my expectation that

6    the defendant will be released today.  I think that's what --

7    is that -- am I being realistic or --

8            MR. MORVILLO:  You are being realistic, and that is

9    certainly in accordance with our hopes, Your Honor.

10           THE COURT:  Okay.  So you must be prepared to -- to

11   take custody of the defendant upon his -- immediately upon his

12   release by the United States Marshals.  Can you do that?

13           MR. MARMOLEJO:  Yes, sir.

14           THE COURT:  And I don't know that it would be

15   necessary for him to go back to Santa Rita -- I have to ask

16   the Marshals -- or whether he could be released from 450

17   Golden Gate Avenue.

18           THE MARSHAL:  Yes, Your Honor, he's going to have to

19   go back to the jail to be processed out.  He -- he was booked

20   last night so --

21           THE COURT:  I'm sorry?

22           COURTROOM DEPUTY:  Speak in the mic.

23           THE MARSHAL:  Yes, he's going to have to return back

24   to the jail to get processed out.  He was booked last night so

25   he's in jail clothes as we speak so. . .

1          THE COURT:  So he does have to be brought back to

2     Santa Rita?

3          THE MARSHAL:  Correct.

4          THE COURT:  All right.  So are you here -- going to

5     the gentleman from the security firm, you will pick him up at

6     Santa Rita?

7          MR. MORVILLO:  Actually, Your Honor, I'm not sure;

8     but I think after he leaves Santa Rita he may need to come

9     back here to get affixed with an ankle bracelet.

10         THE COURT:  Well, I think there's a way to work it

11     out, and here is what I propose and you can see whether it

12     works:  My proposal would be the security firm takes custody

13     of the -- of the defendant immediately upon his release from

14     Santa Rita and I need Pretrial Services -- he can be -- the

15     security -- Pretrial Services can meet the defendant at the

16     residence at a particular time and install the location

17     monitoring or GPS monitoring; is that correct?

18         MS. FRIESEN:  That's correct, Your Honor.

19         THE COURT:  So, in other words, he doesn't have to

20     be brought back here for the installation of the equipment.  I

21     think they would prefer to go to the residence, in any event,

22     to see whether it's operative there and whether it works

23     there.

24         Is that -- is that satisfactory to everybody or do

25     you want some other arrangement?

 1          MR. MORVILLO:  No, that's -- that's absolutely fine,

 2   Your Honor.

 3          THE COURT:  Okay.

 4          That's all right with Pretrial Services?

 5          MS. FRIESEN:  Yes.

 6          THE COURT:  So you have to be in communication with

 7   this gentleman, who is going to be -- and you're going to be

 8   in charge, right, of the transfer?

 9          MR. MARMOLEJO:  Yes, sir.

10          THE COURT:  Okay.  So you -- please provide

11   telephone numbers for you and any individuals who will be

12   guarding the defendant.  Please provide them to Pretrial

13   Services.  Will you do so?

14          MR. MARMOLEJO:  Yes, sir.

15          THE COURT:  Okay.  Next, travel documents.  One of

16   the conditions of the -- and that's fine, you can sit down.

17   You don't have to stand any longer.

18          One of the conditions of release was that the

19   defendant surrender -- I guess it goes to Pretrial Services,

20   is that correct -- Pretrial Services all travel documents that

21   he has, and let me explain what I mean by that.

22          Obviously, any passports that he holds.

23          MR. MORVILLO:  And my understanding is that's

24   already been surrendered.

25          THE COURT:  Okay.  Any documents that would permit

UNITED STATES DISTRICT COURT

1    him entry into any country -- any country, period.

2           So, in other words, there may be some countries that

3    simply say, "If you have a Letter of Understanding, you may

4    come to our country."  Any country like such as that, he has

5    to surrender any documents that would entitle him --

6           MR. MORVILLO:  Any visas or --

7           THE COURT:  That's correct.

8           MR. MORVILLO:  -- anything like that.

9           Understood, Your Honor.  I do not believe there are

10   any such documents in existence but --

11          THE COURT:  And maybe they exist in some novel

12   somewhere, that word in my mind.  That's also a requirement.

13          MR. MORVILLO:  Understood.

14          THE COURT:  Mr. Leach, you have been remarkably

15   silent during all of these proceedings, for understandable

16   reasons.

17          MR. LEACH:  Today my tacit agreement's with

18   everywhere the Court has been going.

19          I did want to just put on the record we received the

20   Statement of Capabilities for Keelson Strategic this morning.

21   The Government has not had an opportunity to review that.  I

22   have no reason to think we would have an objection at this

23   point, but I just wanted to note the timing.

24          THE COURT:  Well, if any issues come up after you've

25   had a review or you receive information and so forth, please

```
 1  go to the Magistrate Judge and please advise counsel, okay --
 2            MR. LEACH:  Yes.
 3            THE COURT:  -- immediately upon it, because I don't
 4  particularly need to be in this loop.  I may need to be, but I
 5  would be pleased if I don't at this point.
 6            MR. MORVILLO:  I think we have the Court's
 7  instructions, Your Honor, and we can work them out with the
 8  Government and Pretrial Services.
 9            THE COURT:  Okay.  Now, I think the defendant must
10  sign the -- the bond.  Do we have -- do we have that, Ms. --
11            COURTROOM DEPUTY:  Are you going to read him all of
12  the conditions?
13            THE COURT:  Well, I read most of them last night.  I
14  don't need to read any further.  Counsel's aware of the
15  conditions.  They're actually in the proposal that they
16  submitted.  Other than what I've said, there's nothing -- I'm
17  not adding anything to it.
18            MR. MORVILLO:  Just so I'm clear, I have not seen
19  this yet, Your Honor.
20            THE COURT:  Well, take a look at it.
21            MR. MORVILLO:  The conditions you announced last
22  night in your order in court are in addition to those that the
23  parties have agreed to --
24            THE COURT:  Yes.
25            MR. MORVILLO:  -- and that is what this document is.
```

1          THE COURT:  Okay.  So take a look at it because
2    Mr. Lynch has to execute it.
3          Pretrial Services should --
4          MR. LEW:  Good morning, Your Honor, Allen Lew with
5    U.S. Pretrial Services.
6          THE COURT:  Yes.
7          MR. LEW:  Just for clarification, just so that we
8    comply with the Court's directive, I want to see would it be
9    satisfactory if we enroll Mr. Lynch in the GPS location
10   monitoring program tomorrow morning just because we just will
11   not know when Mr. Lynch will actually be physically released
12   from the jail this evening?
13         THE COURT:  Well, yes.  You can't do it this
14   afternoon, is that the problem?
15         MR. LEW:  It's unclear -- I can't speak to when
16   Mr. Lynch will be returned to --
17         THE COURT:  Well, he'll be returned -- when will he
18   be returned to Santa Rita?  Let's figure this out.  When's the
19   earliest he -- he'll be finished here in five minutes, ten
20   minutes.
21         THE MARSHAL:  The earliest he'll be returned, Your
22   Honor, is maybe noon.
23         THE COURT:  Oh, so he'll be returned sometime at
24   noon.  How long does the processing -- the so-called
25   processing out take?

```
 1              THE MARSHAL:  It could take a few hours, Your Honor.
 2   It's really up to Santa Rita and their schedule.
 3              THE COURT:  All right.  So in place the -- you can
 4   do it -- if you're available this afternoon you can do it, and
 5   if you're not available this afternoon you can do it tomorrow
 6   morning.  He will be in the custody of the guard service.
 7              MR. LEW:  Thank you, your Honor, and we will work
 8   that out with --
 9              THE COURT:  Yeah, work it out with defense counsel.
10   They're very cooperative.  They will be pleased to accommodate
11   you.
12              MR. MORVILLO:  Anything we can do.
13              THE COURT:  That's right and that is true.  That is
14   true.
15              All right.  Mr. Morvillo, I do want you to have the
16   opportunity to look at that.  Do you want to take five minutes
17   or --
18              MR. MORVILLO:  If -- if I -- thank you, your Honor.
19   I appreciate your accommodation.
20              THE COURT:  Mr. Morvillo, there's one change to
21   accommodate the wire transfer.  Why don't you look at it.
22              My law clerk will hand you the order and you can
23   examine it.
24              MR. MORVILLO:  Thank you, your Honor.
25              Thank you, your Honor, we've reviewed the bond and
```

1   it's acceptable.

2           THE COURT:  Mr. Lynch, is that acceptable to you?

3           THE DEFENDANT:  If you could just give me a couple

4   more minutes --

5           THE COURT:  I'll give you as much time as you need.

6           In the meanwhile why don't we -- well, I don't want

7   to -- I have Mr. Lincenberg on the line who wants to address

8   the issue of scheduling, which I --

9           MR. MORVILLO:  I -- I have some -- some thoughts on

10  that as well, Your Honor.

11          THE COURT:  That's fine.

12          Okay.  So --

13          MR. MORVILLO:  Can I just raise one quick question

14  about the bond conditions?

15          THE COURT:  Yes.

16          MR. MORVILLO:  There's an exception from the home

17  confinement for legal meetings.

18          THE COURT:  Yes.

19          MR. MORVILLO:  How does that work technically?

20          Is that something we have to get permission from the

21  Court or Pretrial Services for?

22          THE COURT:  Pretrial Services.

23          MR. MORVILLO:  Okay.

24          THE COURT:  But you see, the difference, the legal

25  meetings, meetings with lawyers, must occur in the City and

1   County of San Francisco.

2              MR. MORVILLO:  Understood.

3              Okay, thank you.  Prepared to address the scheduling

4   issues, if you like.

5              THE COURT:  Well, I want -- I want Mr. Lincenberg to

6   be able to listen and participate.

7              MR. LICENBERG:  Your Honor, this is Mr. Lincenberg.

8              Can you hear me?

9              THE COURT:  Yes.

10             MR. LICENBERG:  I am only here if the Court needs

11  me.  I do not --

12             THE COURT:  I do need you because -- because the

13  next appearance will be with -- will involve you and your

14  client.

15             MR. MORVILLO:  I'm sorry, Your Honor.

16             THE COURT:  No, that's fine.  So I will sign that

17  once I've been advised the shares of stock and all of that has

18  been -- taken place.

19             MR. LEACH:  Your Honor, may I raise one more issue?

20             THE COURT:  Go ahead.

21             MR. LEACH:  There is a slight disconnect between

22  when Dr. Lynch is going to be released from Santa Rita and

23  application of the GPS monitoring, which the Government is a

24  little concerned about given we've yet to vet the security

25  company --

1          THE COURT:  Well, I don't understand why Pretrial

2  Services can't -- can't do it at 4:00 o'clock or 5:00 o'clock.

3  I mean --

4          UNIDENTIFIED SPEAKER:  I'll just state sometimes

5  they get out --

6          THE COURT:  Pardon?

7          UNIDENTIFIED SPEAKER:  Sometimes they get out at

8  11:00 o'clock.  So there's no guarantee they'll get out in

9  business hours.

10          THE COURT:  That's the problem, we don't control

11  that.

12          MR. MORVILLO:  Is it possible to do it now before he

13  goes back to Santa Rita?  No?

14          MR. LEW:  The challenge --

15          (Unidentified speaker interruption.)

16          MR. LEW:  The challenge, your Honor, we could send

17  the (inaudible.)  My concern is that since he is in the

18  building we might not be able to --

19          THE REPORTER:  Excuse me, who is talking?  Sorry for

20  the interruption, Judge.

21          MR. LEW:  Oh, Allen Lew with US Pretrial.

22          THE COURT:  Go ahead, Mr. Lew.

23          MR. LEW:  We can install the equipment.  The concern

24  is, one, we won't be able to confirm it works because he's

25  still in custody; and, two, a more pressing concern is that he

```
 1  could go back to the jail and for whatever reason the jailers
 2  decide to remove the equipment and then we're back to square
 3  one.
 4          THE COURT:  Let me ask this question:  Is there any
 5  problem with your going over to the residence at some point
 6  today?  You need to install equipment in the residence, too;
 7  do you not?
 8          MR. LEW:  No, Your Honor, it's --
 9          THE COURT:  Oh, you don't?  See, I don't know how
10  this works.  How does this work?
11          MR. LEW:  It's strictly a transmitter receiver that
12  is applied to his ankle, and then he's given a battery
13  charger.  So there's no physical equipment that needs to be in
14  the home.
15          THE COURT:  Okay.  What does the Government suggest?
16  I don't want to keep him one more night.
17          MR. LEACH:  We have no interest in that, Your Honor,
18  either.  I -- my initial thought was to propose -- one of our
19  law enforcement agents were checking on that.
20          An alternative could be to release him to the
21  custody of Mr. Morvillo or someone from --
22          THE COURT:  I'm not releasing him to the custody of
23  an attorney and -- for the obvious reason it creates a
24  conflict of interest.  It creates a conflict.  A lawyer can't
25  be -- why any lawyer would want to put themselves in that
```

1  position.  The client says, "Let me go," and the lawyer says,

2  "No, no, no, I'm not going to let you go because I promised

3  the Court I wasn't going to let you go."

4         That's a conflict right there.  That's a conflict.

5         So what's your other idea?

6         MR. LEACH:  I don't have another idea, Judge.

7         THE COURT:  Okay, you don't have another idea.

8         Let's just -- okay, well I think -- Mr. Lew, do your

9  best job, whatever you can do, okay?  I have great faith in

10  the abilities of people to carry out these orders.

11         MR. MORVILLO:  Thank you, your Honor.

12         THE COURT:  I mean, maybe I'm naive but I think -- I

13  think it will work out.

14         Let's talk about scheduling.  Now, I -- yesterday I

15  suggested that we -- that we have a status conference this

16  coming Friday, a week from today.  I want -- obviously, I want

17  the parties present.  That is, I want Mr. Chamberlain present.

18  I want his counsel present.  I want Mr. Morvillo and

19  Mr. Lynch.  So they'll all be here at one time and we can have

20  a discussion as to how the case should proceed.

21         In particular, so you can think about it, I want to

22  -- I want to see if I can address the issue of severance, if

23  there is a Motion for Severance, early on; and the reason is

24  that that so affects the course of everybody's commitment in

25  terms of time and effort and scheduling and everything else.

1          Now, of course, you're not today in a position to

2     make those kinds of determinations.  So what I need to do

3     is -- and what I was proposed -- I was going to propose next

4     Friday was to see what type of scheduling we could all agree

5     upon to try to address that issue, unless you convince me,

6     "Look, you don't have to decide that now.  Let's decide X.

7     Let's decide Y.  Let's decide Z," or something else.

8          I don't know, that's just what occurred to me.

9          MR. MORVILLO:  So, Your Honor, I think both parties,

10    including Mr. Lincenberg as well, agree a pretrial conference

11    to address these issues is an important date to get on the

12    calendar.

13          I personally have a conflict next week.  I'm having

14    surgery on Tuesday, and I'm not going to be able to travel

15    back out here.  There's also a noticeable absence in the

16    courtroom of Mr. Weingarten, who is unable to travel for

17    several weeks due to a medical condition.

18          THE COURT:  I'll put it over -- if you'd like me to

19    put it over for a couple of weeks, I will do so.

20          MR. MORVILLO:  So there is currently scheduled a

21    pretrial conference on June 16th.  We were going to propose, I

22    think, June 27th as the date.  It's a little bit longer than a

23    couple of weeks, but that date works for everyone.

24          THE COURT:  Well, that's fine.

25          Does that work for the Government?

UNITED STATES DISTRICT COURT

1            MR. LEACH:  It does, Your Honor.

2            THE COURT:  Okay.  Now, that's fine.  So I will -- I

3    will vacate next Friday and set it for the day that you

4    suggest.

5            MR. MORVILLO:  June 27th, Tuesday.

6            THE COURT:  Yeah.  Before that time I would like

7    from the parties a proposed schedule for -- which will address

8    the issue of severance and any other issues that the parties

9    contemplate will be relevant in a pretrial setting.  So, you

10   know, that may very well include, as an example, to what

11   extent, if any -- and, by the way, I have no idea -- to what

12   extent, if any, do the proceedings which occurred in the

13   United Kingdom as it relates to the civil litigation and the

14   evidence that was produced in that litigation, to what extent,

15   if any, would that be admissible or relevant in these

16   proceedings.

17           MR. MORVILLO:  As you can probably imagine, we've

18   thought a great deal about that, Your Honor.

19           THE COURT:  And I've thought nothing about that.  I

20   know nothing about that.

21           MR. MORVILLO:  We're happy to bring you up to speed.

22           THE COURT:  Okay.  So -- but that, again, is

23   something that I think we need to address and, of course,

24   severance and maybe there's some other issues.  I'm sure there

25   are.

```
1              MR. MORVILLO:  As Your Honor would assume, there
2    will be certainly pretrial litigation, motions against the
3    indictment, perhaps, with respect to discovery.  We'll meet
4    and confer with counsel, obviously, and deal with it.
5              THE COURT:  I would hope -- I would hope that in
6    terms of discovery that the Government is entirely
7    forthcoming, and their track record in front of me is
8    excellent in providing information that they have to the
9    defense.  This is not a hide-the-ball, adventuristic --
10             MR. MORVILLO:  If I said anything to suggest that --
11             THE COURT:  No, I know you didn't; but, I mean,
12   you're not from here.  You practice in a --
13             MR. MORVILLO:  It's a foreign jurisdiction.
14             THE COURT:  No, no, no, it's fine; but, I mean,
15   every district has its own culture and for a variety of
16   reasons the culture in this district, as I've observed in 25
17   years, is to be forthcoming, as forthcoming as possible in the
18   discovery.
19             There always are disputes, but there are good faith
20   disputes.  I don't anticipate any -- anything other than
21   complete cooperation by the Government.
22             MR. MORVILLO:  Nor do I.
23             THE COURT:  Yeah, okay.  So there we are.  Please
24   address as many of these issues as you can think about, submit
25   to the Court, if you will, ten days before the 27th -- that
```

would be the 17th, I guess, any -- they don't have to be

joint.  I mean, if you have your own different views, you have

your own different views; but submit sort of a case management

conference statement that will address that.

MR. MORVILLO:  Would you like that also to include a

proposed trial date, Your Honor, or --

THE COURT:  Sure, and let me just tell you so people

aren't thinking about some other day.  I'm prepared to try

this case this year, okay?  I don't know whether you're

prepared to try the case this year, and I'm not telling you

you should be, but I am prepared.  The Court is prepared to

try it this year.

So, you know, obviously, we have an individual

presumed to be innocent, who is essentially under house

arrest, and this -- all these conditions are to ensure his

presence at trial but not to punish him, though I have to

believe that one might view it as a form of punishment because

his liberty is substantially restricted; but it's restricted,

from the Court's point of view, with the purpose of ensuring

his presence.

What that means to the Court is that we should try

this case as quickly as possible consistent with the parties'

ability to prepare so that these restrictions one way or the

other can be addressed.  So I want that to be clear, and I

understand lawyers are busy.  They don't just have one case,

```
1   but this can be treated for all intents and purposes in my
2   view as sort of a quasi-custody case for speedy trial
3   purposes.
4           He's not in custody, but I have to exclude time
5   which, by the way, the Court will exclude time until the next
6   appearance, which is June 27th, due to the complexity of the
7   case and the availability of counsel to participate at the
8   hearing.
9           So -- but that it's not -- my exclusion of the
10  Speedy Trial Act is not a matter of rote.  It is -- it is to
11  be done when there is a justification for excluding time with
12  the understanding that Congress has directed these Courts to
13  hold trials as -- and the Constitution, not to forget about
14  that, as quickly as possible consistent with the ability to
15  prepare.
16          So I really do depend on counsel's candor saying,
17  you know, when do we think we can be ready.  You obviously
18  know a lot -- I don't know whether you do, Mr. Morvillo.  A
19  lot has been already litigated and provided to Mr. Lynch's
20  counsel one way or the other; and when I say "counsel," I mean
21  in the broad sense, British counsel as well as American
22  counsel.  I don't know if anything's been given to the
23  American counsel yet but. . .
24          MR. MORVILLO:  Nothing -- we have received no
25  discovery from the Government yet, Your Honor.
```

```
 1            Obviously, the challenge in terms of balancing the
 2   conditions of his release with his ability to prepare for
 3   trial is that Mr. Weingarten and myself live on the East Coast
 4   and so --
 5            THE COURT:  But Mr. Weingarten has ties to the West
 6   Coast.  Understand that, Mr. Morvillo.
 7            MR. MORVILLO:  He does.
 8            THE COURT:  He has very substantial ties.
 9            MR. MORVILLO:  Those ties are dissipating from what
10   I understand, Your Honor.
11            THE COURT:  Oh, I'm sorry about that.  I'm sorry
12   about that.
13            MR. MORVILLO:  I just -- I don't mean to be cryptic
14   about it but I believe --
15            THE COURT:  Well, anyway, whatever -- I appreciate
16   the fact that you're -- I appreciate the fact that you are on
17   the East Coast.  I understand that the original proposal was
18   to allow the defendant to travel to the East Coast in order to
19   meet with you and any other counsel, but that's not going to
20   happen.
21            So I think that in this case, Mr. Morvillo, I look
22   upon you as the principal counsel for Mr. Lynch, and I just
23   think you have to figure out how you make arrangements.  Trial
24   lawyers do it all the time.  It's easier to do it at the
25   outset so. . .
```

```
 1              MR. MORVILLO:  There's been a lot of developments
 2   over the last 24 hours, Your Honor.  So there's a lot to think
 3   about --
 4              THE COURT:  Yeah.
 5              MR. MORVILLO:  -- and process and we will be in a
 6   position to come back to you, as discussed, with a proposal.
 7              THE COURT:  Okay.
 8              COURTROOM DEPUTY:  Judge, should we set the hearing
 9   in the morning on June 27th --
10              THE COURT:  Yes.
11              COURTROOM DEPUTY:  -- or the afternoon?
12              THE COURT:  Let's do the morning.
13              MR. LEACH:  I'm sorry to interrupt --
14              THE COURT:  Let's do the afternoon.
15              COURTROOM DEPUTY:  At 1:30 or 2:00?
16              THE COURT:  1:30.  1:30, 2:00?
17              MR. REEVES:  I'm sorry, Your Honor.  I expect to be
18   in trial before Judge Gilliam that morning in Oakland until
19   1:30.  If it could possibly be at 2:30 in the afternoon.
20              THE COURT:  I don't want to do 2:30 because it may
21   go on.  Maybe Judge Gilliam could adjourn two minutes early.
22   After all, I'm higher on the letterhead than Judge Gilliam.
23              MR. REEVES:  I'll be careful not to say that.
24              THE COURT:  No, you can say that.  You could say
25   Court said he was higher on the letterhead and that has all
```

```
 1    sorts of enormous powers and, if necessary, I'll phone him.
 2              MR. REEVES:  Thank you, your Honor.  Any time in the
 3    afternoon would be fine.
 4              THE COURT:  Well, okay -- well, let's do 2:00.
 5    Let's do 2:00.
 6              COURTROOM DEPUTY:  2:00 o'clock, okay.
 7              THE COURT:  I just want to give enough time because
 8    we may have an extended discussion and, you know, nothing is
 9    by rote here.
10              COURTROOM DEPUTY:  And on the bond it says the
11    address is the Westin Hotel.
12              THE COURT:  Strike that.
13              COURTROOM DEPUTY:  Should I address --
14              MR. MORVILLO:  2710 Pine Street.
15              COURTROOM DEPUTY:  Thank you.
16              MR. LEW:  Your Honor, one last thing, I think, from
17    our office.  If there are any issues or concerns --
18              THE COURT:  Please take them up -- please take them
19    up with Judge Beeler.
20              MR. LEW:  Thank you.
21              THE COURT:  All right, anything else?
22              MR. MORVILLO:  May I just have a moment, Your Honor?
23              THE COURT:  Yes.
24              MR. MORVILLO:  Thank you.
25              COURTROOM DEPUTY:  So the signing of the bond, are
```

1   you going to stick around --

2           THE COURT:  Yeah, I'll be here.  I'll be here.

3           We'll figure it out.  We have the miracle of zoom.

4           Mr. Morvillo.

5           MR. MORVILLO:  Thank you, your Honor, we're good.

6           THE COURT:  Great.  Welcome to this district.  I

7   don't think I said that to you yesterday.  Yesterday would

8   have been inappropriate for me to say welcome to this

9   district, and I appreciate your courtesy.  It's -- it's --

10  it's appreciated.

11          MR. MORVILLO:  It did not go as I expected, Your

12  Honor, but I'm privileged to be here.

13          THE COURT:  All right, we're in recess.

14          MR. LEACH:  Thank you, your Honor.

15          THE COURT:  Thank you very much.

16  (Whereupon the proceedings concluded at 10:10 a.m.)

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

*REPORTER'S CERTIFICATION*

1

2

3         I, TERI VERES, do hereby certify that I am duly

4  appointed and qualified to act as Official Court Reporter for

5  the United States District Court for the District of Arizona.

6         I FURTHER CERTIFY that the foregoing pages

7  constitute a full, true, and accurate transcript of all of

8  that portion of the proceedings contained herein, had in the

9  above-entitled cause on the date specified therein, and that

10 said transcript was prepared under my direction and control.

11        DATED at Phoenix, Arizona, this 12th of

12 May, 2023.

13
                                   _____s/Teri Veres_____
14                                 TERI VERES, RMR, CRR

15

16

17

18

19

20

21

22

23

24

25