# EXHIBIT 1

Pages 1 - 33

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE LAUREL BEELER

BEFORE THE HONORABLE CHARLES R. BREYER

UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )
     vs.                           )  No. CR 18-0577 (LB) CRB
                                   )
MICHAEL RICHARD LYNCH,             )
                                   )  San Francisco, California
                Defendant.         )  Thursday
                                   )  May 11, 2023
                                   )  4:00 p.m.
_____)

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:          STEPHANIE HINDS
                        United States Attorney
                        450 Golden Gate Avenue
                        San Francisco, California  94102
                   BY:  **ROBERT S. LEACH**
                        **ADAM A. REEVES**
                        **ASSISTANT UNITED STATES ATTORNEYS**


For Defendant:          CLIFFORD CHANCE US LLP
                        31 West 52nd Street
                        New York, New York 10019
                   BY:  **CHRISTOPHER J. MORVILLO, ESQ.**


                        STEPTOE & JOHNSON
                        One Market Plaza
                        Steuart Tower
                        Suite 1070
                        San Francisco, California 94105
                   BY:  **JONATHAN M. BAUM, ESQ.**


*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
               Official Reporter - US District Court
               Computerized Transcription By Eclipse

| | |
|---|---|
1 | **Thursday - May 11, 2023**                                    **4:08 p.m.**

2                              **P R O C E E D I N G S**

3                                    ---o0o---

4          (Defendant present, in custody.)

5               **THE CLERK:**  Calling Criminal Action CR18-0577, USA

6     versus Michael Richard Lynch.

7          Counsel, please step forward and state your appearances

8     for the record.

9               **MR. LEACH:**  Good afternoon, Your Honor.  Robert Leach

10    on behalf of the United States.

11         I'm here with my colleague Adam Reeves.

12              **JUDGE BEELER:**  Good afternoon.

13              **MR. MORVILLO:**  Good afternoon, Your Honor.

14    Christopher Morvillo for Michael Lynch, and Jonathan Bauman

15    from Steptoe and Johnson.

16         Michael Lynch is present.

17              **JUDGE BEELER:**  All right.  Good afternoon.

18              **PRETRIAL SERVICES OFFICER:**  Good afternoon, Your

19    Honor.  Pepper Friesen for Pretrial Services.

20              **JUDGE BEELER:**  Okay.  As you all know, I'm going to do

21    the initial appearance, and then Judge Breyer is going to

22    handle the detention, the bail part it.

23         And so we -- at an initial appearance what we do is go

24    through what the charges are, tell you what the penalties are,

25    advise you of your important constitutional rights.  We set --

3

```
1   ordinarily we set the next dates, but because we'll -- I'll
2   declare the Court briefly in recess for Judge Breyer to come
3   out, he'll come out.  I'll hang out over there.  Then we'll
4   figure out what the next dates look like, especially if there
5   are any next dates before me.
6        I'm on criminal duty, just -- you probably know this, but
7   I'm on criminal duty this month and it's the function of the
8   magistrate judge on criminal duty to do the initial appearance,
9   and so that's why I'm here.
10       Okay.  So you're here today because you have been charged
11  by the Government with felony counts relating to fraud.  We
12  begin with advising you of your important constitutional
13  rights.
14       You have the right to an attorney in your case.  You're
15  entitled to consult with and be represented by an attorney at
16  all stages of your case, in court and out of court, including
17  during any questioning by the Government.
18       If someone can afford to hire a lawyer, they may hire a
19  lawyer of their own choosing, as I understand that you've done.
20  If someone can't afford to hire a lawyer, the Court appoints
21  one at no cost.
22       Do you understand your right to an attorney?
23            THE DEFENDANT:  Yes, I do.
24            JUDGE BEELER:  And I understand you are entering
25  general appearances in the case.
```

1          **MR. MORVILLO:**  Yes, Your Honor.

2          **JUDGE BEELER:**  You also have the right to remain

3    silent.  You don't have to talk to the Government about your

4    case.

5          If you've talked to the Government already, you don't have

6    to say anything else.  If you start to make a statement, you

7    can stop at any time.

8          If you decide that you do want to talk to the Government

9    about your case, you're entitled to talk to your lawyers first

10   and have your lawyers with you.

11         If you talk to the Government about your case, your

12   statements may be used against you.  That's your right to

13   remain silent.

14         Do you understand that right?

15         **THE DEFENDANT:**  Yes, I do.

16         **JUDGE BEELER:**  I will remind the Government pursuant

17   to the Due Process Protection Act of its obligations under

18   *Brady versus Maryland* and its progeny to disclose material that

19   is favorable to the Defendant and material either to the

20   Defendant's guilt or punishment.  The failure to do so in a

21   timely matter may result in dismissal of the indictment or

22   information, dismissal of individual charges, exclusion of

23   Government evidence or witnesses, or any other remedy that is

24   just under the circumstances.

25         All right.  So next part of it I will tell you what the

1   charges are, the penalties, and then we'll enter a not guilty

2   plea as to each count.   That's called arraignment.

3        You have been charged by a Grand Jury in the Northern

4   District of California with the following counts.

5        Count One, conspiracy to commit wire fraud.

6        In Counts Two through Fifteen with individual counts of

7   wire fraud.

8        In Count Sixteen with securities fraud.

9        Count Seventeen with conspiracy.

10       Just a sec.

11       (Brief pause.)

12       There's also a forfeiture allegation, which means that if

13  someone obtains money from their crimes, the Government can

14  take that money and proceeds derived from it and traceable to

15  it.

16       The penalties, I'm not saying this is what you'll get.

17  This is the maximum under the statute.   It turns on many

18  different things, but the maximum penalties for the fraud based

19  Counts One through Fifteen are up to 20 years in prison; a

20  $250,000 fine or twice the gross gain or loss, whichever is

21  greater; a three-year term of supervised release, which is like

22  a period of probation after any custody period; $100 special

23  assessment fee; restitution as implicated by the counts; and

24  there's also the forfeiture allegation that I mentioned.

25       Count Sixteen carries the same $250,000 fine; three years

1  of supervised release; $100 special assessment; and the other

2  consequences of restitution that I mentioned; and up to 25

3  years in prison.

4      Count Seventeen carries a maximum term of up to five years

5  in prison; $250,000 fine; three years of supervised release; a

6  $100 special assessment; and also restitution as implicated in

7  that count.

8      Do you understand generally what the charges are and what

9  the penalties might be?

10         **THE DEFENDANT:**  Yes.

11         **JUDGE BEELER:**  Counsel, do you waive a detailed

12  reading of the indictment?

13      Are you prepared to enter not guilty pleas as to each

14  count of the indictment and to deny the forfeiture allegation?

15         **MR. MORVILLO:**  Yes, Your Honor.  We waive a public

16  reading of the indictment and are prepared to enter a not

17  guilty plea.

18         **JUDGE BEELER:**  All right.  Not guilty pleas will be

19  entered as to each count.  The forfeiture allegation is denied.

20  The minute entry will reflect those things and that you have

21  been arraigned.

22      With that, the Court -- yes, Mr. Leach.

23         **MR. LEACH:**  Your Honor, if I may.

24      There's one other matter I think the Defendant should be

25  advised of because he's a citizen of the United Kingdom.

1          **JUDGE BEELER:**  The consular notification; right?

2          **MR. LEACH:**  Yeah.  I'm prepared to do it.

3          **JUDGE BEELER:**  That's fine.  You can do that.  Thank

4   you for reminding me.  I knew that, and I forgot it.

5          **MR. LEACH:**  I made a note, which is why I -- and my

6   agent has already provided this notice.

7       But a defendant who is not a United States citizen may

8   request an attorney for the Government or a federal law

9   enforcement official notify a consular officer from the

10  defendant's country of nationality that the defendant has been

11  arrested; but that even without the defendant's request, a

12  treaty or other international agreement may require consular

13  notification.

14         **JUDGE BEELER:**  All right.  Thanks.

15      You know, one of the things, I know it's in the rule, I've

16  actually taken the position that with the agent notification is

17  sufficient.  And I think it is as a matter of law, but it's

18  fine to make the extra record.  And so that's why generally it

19  hasn't been my practice to do it, but there's nothing wrong

20  with being careful.

21      Okay.  With that, I think that's the arraignment.

22      As I said, the court will briefly be in recess until Judge

23  Breyer joins us, unless there's anything else procedural from

24  your side of things.

25      I'll stay here just in case there are other court

```
1   appearances that affect me so I know what's happening.  Okay.

2           MR. LEACH:  Thank you, Your Honor.

3           MR. REEVES:  Thank you, Your Honor.

4           JUDGE BEELER:  Court is in recess.

5       (Whereupon there was a recess in the proceedings

6        from 4:14 p.m. until 4:20 p.m.)

7           THE CLERK:  All rise.  Honorable Judge Breyer

8   presiding.

9       Calling Criminal Action CR 18-0577, United States of

10  America versus Michael Richard Lynch.

11      Counsel for Judge Breyer, can you please state your

12  appearances.

13          MR. LEACH:  Good afternoon, Your Honor.  Robert Leach

14  on behalf of the United States.

15      I'm here with my colleague Adam Reeves.

16          JUDGE BREYER:  Good afternoon.

17          MR. REEVES:  Good afternoon.

18          MR. MORVILLO:  Good afternoon, Your Honor.

19  Christopher Morvillo for Michael Lynch, who is present in the

20  courtroom, from Clifford Chance.

21      And with me is Jonathan Bauman from Steptoe and Johnson.

22          JUDGE BREYER:  Hi.  How are you.  Nice to see you

23  again.

24          MR. MORVILLO:  Nice to see you, too, Judge.

25          JUDGE BREYER:  And the Defendant is present.
```

```
 1                MR. MORVILLO:  Yes.

 2                JUDGE BREYER:  In the custody of the United States

 3     Marshal; is that correct?

 4                MR. MORVILLO:  That's correct, Your Honor.

 5                JUDGE BREYER:  So the Defendant has been arraigned,

 6     and I have been advised that it's appropriate have a detention

 7     hearing, obviously.

 8           The question is, we could have one now, because I think as

 9     a matter of right, the parties are entitled to a detention

10     hearing at the first appearance of the Defendant, which this

11     is, or I can continue it until tomorrow morning at 9:00.

12           Is there a -- is there a preference from the Defendant in

13     that regard?

14                MR. MORVILLO:  We would prefer to go forward tonight,

15     if that's okay with Your Honor.

16                JUDGE BREYER:  Yes, of course it is.  Yeah.  And so

17     that's what I will do.

18           The reason I am holding the detention hearing rather than

19     a magistrate judge is because the Court is familiar with a

20     number of the issues dealing with the appearance of the

21     Defendant.

22           As you know, a number of years ago -- I think I even have

23     a copy of the order -- the Court signed an order in this matter

24     at the request of the Government in 2020 assuring the parties

25     that the Court would determine what are reasonable conditions
```

1   of release in a pretrial detention setting.  That order, of

2   course, was executed at the time, I think, of the COVID

3   pandemic.  Nevertheless, the Court feels bound.

4        In any event, the Court would do what the Court always

5   does, which is determine whether or not in the first instance

6   the Defendant either, or both, is a risk of danger to the

7   community or presents a serious risk of flight.  That's the

8   determination under the Bail Reform Act.

9        The reason I am doing that is because, number one, I was

10  involved in -- to some extent, in the extradition proceedings,

11  a very limited extent.

12       Number two, the Court has already conducted a trial of

13  a -- of an individual in connection with the subject matter to

14  which the Defendant is presently accused of.

15       And, number three, the Court has from time to time called

16  this case in which the co-defendant, Mr. Chamberlain, has

17  appeared and counsel for -- for the Defendant has also

18  appeared.  Mr. Weingarten, in particular.

19       I don't know, Mr. Morvillo, whether you were here or not,

20  but I think at one time you were.

21            **MR. MORVILLO:**  I have been here several times, Your

22  Honor, yes.

23            **JUDGE BREYER:**  Yes.  All right.  And I'm sorry that I

24  don't --

25            **MR. MORVILLO:**  That's perfectly fine.

1          **JUDGE BREYER:**   I mean, it's not that you haven't made

2    an impression on me, but, in fact, actually, you haven't

3    because I don't think I entertained any discussion concerning

4    the matter.

5          But it was to apprise the Court in connection with the --

6    basically with the co-defendant to determine whether or not

7    there would be a single trial or not and when to proceed to

8    trial.

9          So I have become somewhat familiar with it.  I think more

10   so than any magistrate judge granting -- appearing sort of

11   *de novo* would know about it.  And so the Court has determined

12   that it will hold a detention hearing, which I'm prepared to do

13   at this time.

14         So I have -- I am aware that the Government has submitted

15   a proposed set of conditions.  I don't know whether it was

16   jointly agreed upon or not, but I have a proposed set of

17   conditions.  They are directed, I would say almost exclusively

18   to the issue of -- of appearance; that is, of risk of flight.

19         They do not address the issue of dangerousness to the

20   community.  I have no information that the Defendant is at all

21   a risk of danger to the community and none has been presented

22   to me or suggested to me, nor do I think I need to make any

23   further inquiry.

24         I simply accept the fact that as to that prong of the Bail

25   Reform Act, it has been satisfied; that he does not present a

 1 risk of danger to the community.

 2      Now, I want to inquire into a number of factors that I

 3 think are relevant to the question of whether he presents a

 4 serious risk of flight.

 5      Let me just go through them and, Mr. Morvillo -- or the

 6 Defendant obviously is free to speak, but I think he would

 7 probably prefer speaking through you; but if he doesn't, then

 8 he should let me know.

 9      But I want to inquire into a number of areas, see if you

10 can answer the question.  If you can't, you can certainly

11 consult with your client, if that would be helpful.

12           **MR. MORVILLO:**  Of course, Your Honor.

13           **JUDGE BREYER:**  First, I understand -- I believe that

14 the Defendant is not a citizen of the United States; is that

15 correct?

16           **MR. MORVILLO:**  That is correct.  He is a citizen of

17 the United Kingdom.

18           **JUDGE BREYER:**  Okay.  I believe that no member of his

19 family is a citizen -- presently a citizen of the United

20 States; is that correct?

21           **MR. MORVILLO:**  I believe that is also correct.  His

22 wife was at one point, but is no longer.

23           **JUDGE BREYER:**  All right.  I believe he's not a

24 resident of the United States; is that correct?

25           **MR. MORVILLO:**  That is correct, Your Honor.

1          **JUDGE BREYER:**  I also have no indication that he has

2    any real property located in the United States; is that

3    correct?

4          **MR. MORVILLO:**  That is correct, Your Honor.

5          **JUDGE BREYER:**  Okay.  I also understand that he

6    resides abroad, is that true; that he's not in the United

7    States?

8          **MR. MORVILLO:**  His residence is in the United Kingdom.

9          **JUDGE BREYER:**  Okay.  Now, I'd like to know in the

10   past four years has he come to the United States?

11         **MR. MORVILLO:**  No.  He has been under bail conditions

12   in the United Kingdom, Your Honor, in connection with the

13   extradition.

14         **JUDGE BREYER:**  And the bail conditions have not

15   permitted him to travel?

16         **MR. MORVILLO:**  Correct.  He surrendered his travel

17   documents there.  He was subject to a bond, secured bond, and

18   weekly reporting to the police, which he complied with without

19   failure.

20         **JUDGE BREYER:**  All right.  So in terms of any ties to

21   the Northern District of California or the United States of

22   America, there are none, are there?

23         **MR. MORVILLO:**  Familial ties or no property ties, no;

24   but certainly he has --

25         **JUDGE BREYER:**  Sorry.  What ties would you identify as

1    ties to the United States or to the Northern District?

2          MR. MORVILLO:  He has acquaintances who live here,

3    friends who live here, Your Honor.

4          JUDGE BREYER:  He knows people here.

5          MR. MORVILLO:  Yes.

6          JUDGE BREYER:  Okay.  Other than that, are there any

7    other ties?

8          MR. MORVILLO:  Not that I'm aware of.

9          JUDGE BREYER:  Okay.  Now, I want to inquire into his

10   financial situation.  Can you give me an estimate as to what

11   his net worth is?

12         MR. MORVILLO:  I can.  I will preface it by saying

13   many of his assets are encumbered as a result of this matter,

14   but his approximate net worth is in the range of 400 to

15   $450 million.

16         JUDGE BREYER:  Okay.  And I note -- as to the assets,

17   the assets reflecting his net worth, where are they located?

18         MR. MORVILLO:  For the most part they are located in

19   the United Kingdom, but in addition, there are some accounts in

20   Switzerland from what I understand.

21         JUDGE BREYER:  Are there any in the United States?

22         MR. MORVILLO:  Not at the moment.

23         JUDGE BREYER:  Okay.  In terms of controlling the

24   assets, does he have exclusive control over those assets?

25         MR. MORVILLO:  I --

1      **JUDGE BREYER:**  Well, first of all, does he have

2    control over the assets?  And then I would ask the question:

3    Is that control exclusive?

4      **MR. MORVILLO:**  That's a complicated question to

5    answer, Your Honor.

6      **JUDGE BREYER:**  Let's hear the first one.

7      **MR. MORVILLO:**  He has title to the assets, I would

8    say, but he does not have the ability to move the assets given

9    certain restrictions that have been imposed on him by his

10   financial and banking institutions.

11      In addition, he is under an agreement with Hewlett Packard

12   in connection with the civil case that restricts his ability

13   to -- to access and move money.

14      **JUDGE BREYER:**  Well, the proposal that I received was

15   that he was to sign a personal recognizance bond of

16   $100 million.

17      **MR. MORVILLO:**  That's correct.

18      **JUDGE BREYER:**  Which would represent approximately, of

19   an estimate, one quarter of his net worth.

20      **MR. MORVILLO:**  That's correct.

21      **JUDGE BREYER:**  All right.  But are those assets, the

22   $100 million, are they encumbered?

23      **MR. MORVILLO:**  So the assets that are reflected in --

24   for purposes of security, Your Honor, constitute

25   10 million pounds, or approximately $12.5 million.  That is

1  currently posted with the UK court that's overseeing the

2  extradition; that, now that he has been extradited, will be

3  returned to him through my firm and will be available to be

4  posted as security here.

5         In addition to that, he holds share certificates in a

6  public company listed in the UK, but traded -- and traded in

7  the UK publicly that he is prepared to post that are not

8  encumbered.

9               **JUDGE BREYER:**  And that's the stock in --

10              **MR. MORVILLO:**  Dark Trace.

11              **JUDGE BREYER:**  And that's publicly traded?

12              **MR. MORVILLO:**  Yes, it is, Your Honor.

13              **JUDGE BREYER:**  And it's not otherwise encumbered.

14              **MR. MORVILLO:**  Correct.

15              **JUDGE BREYER:**  And he has control over those.

16              **MR. MORVILLO:**  He has control over those share

17  certificates, yes.

18              **JUDGE BREYER:**  And that -- and that --

19              **MR. MORVILLO:**  If I might, Your Honor.

20              **JUDGE BREYER:**  Go ahead.

21              **MR. MORVILLO:**  I'm sorry.  I didn't mean to interrupt.

22         My firm in London has taken custody of those share

23  certificates today, and we have them in our possession and can

24  deliver them to the registry of the court.

25              **JUDGE BREYER:**  What is the value of his holdings as

```
 1   reflected in share certificates?

 2        MR. MORVILLO:  So some of the share certificates are

 3   his wife's and some of them are his.  In total, with today's

 4   market price, they are approximately $93 million.

 5        JUDGE BREYER:  Okay.  All right.

 6     Now, the Defendant was subject to extradition proceedings,

 7   obviously.  That's a matter of record.  And my understanding is

 8   that he contested extradition in the United Kingdom.  That is

 9   to say, he contested the extradition to the United States and

10   those extradition proceedings occurred in the United Kingdom;

11   is that right?

12        MR. MORVILLO:  Yes.  We prefer to say that he asserted

13   his rights under the treaty in the United Kingdom; but, yes,

14   effectively he contested extradition.

15        JUDGE BREYER:  Well, he's not here voluntarily.

16        MR. MORVILLO:  That is correct.  He's been extradited.

17        JUDGE BREYER:  He's been extradited.

18     And he's been extradited after a lengthy proceeding in --

19   well, I'll define what is meant by "lengthy."  It means

20   different things.

21     But my understanding is that these proceedings of

22   contesting the extradition were at least three years in

23   duration.

24        MR. MORVILLO:  I think that's -- I think that's right,

25   Your Honor, yes.
```

```
 1              JUDGE BREYER:  And they involved a number of appeals

 2   from adverse rulings on extradition; is that correct?

 3              MR. MORVILLO:  Just one appeal, Your Honor.

 4              JUDGE BREYER:  One appeal.  Several parts?

 5              MR. MORVILLO:  No.  I think there was -- there was one

 6   extradition decision.  There was some litigation relating to

 7   that decision, and then there was an appeal.  So one appeal.

 8   That was just decided three weeks ago.

 9              JUDGE BREYER:  Right.  I thought that there was some

10   question that the Home Secretary himself had to -- or Home

11   Secretary Office had to either agree to the extradition or not.

12   And then after that decision, in which the Home Secretary

13   agreed to the extradition, it then -- it then went to a court;

14   is that correct?

15              MR. MORVILLO:  So the process, as I understand it,

16   Your Honor, is that he was initially arrested on the

17   extradition request.  It was -- the Home Secretary of the

18   United Kingdom authorized that arrest.  It went to Westminster

19   Magistrate Court for extradition proceedings in the trial

20   court.  Those proceedings happened in 2021 -- 2020 through

21   2021.

22         There was some litigation over what happened as a result

23   of the decision there and whether that was self-executing or

24   whether the Home Secretary had to take further action.  That

25   was resolved.
```

1        Home Secretary ordered the extradition.  That triggered

2   his right to appeal, which he then pursued.  And that decision

3   was handed down about three weeks ago.

4           **JUDGE BREYER:**  Adverse to your client's interest.

5           **MR. MORVILLO:**  Correct.

6           **JUDGE BREYER:**  I also understand that there was some

7   litigation in the United Kingdom involving essentially the same

8   subject matter that's the subject of this indictment.

9           **MR. MORVILLO:**  There was a -- a civil trial --

10          **JUDGE BREYER:**  Civil.

11          **MR. MORVILLO:**  -- in England in 2019.

12          **JUDGE BREYER:**  And in preparation of that trial or at

13  some point during the proceedings, was the Defendant given

14  access to the proceedings that occurred here with respect to

15  the trial of Mr. Hussain?

16          **MR. MORVILLO:**  I do not believe that the transcripts

17  or the discovery in the Hussain trial was part of the

18  disclosure made by the plaintiffs in the UK case.  However,

19  there was significant overlap.

20          **JUDGE BREYER:**  Well, of course, the transcripts would

21  be public record.

22          **MR. MORVILLO:**  Yes.  The transcripts would be public

23  record, yes.

24          **JUDGE BREYER:**  And my question is whether or not

25  either counsel for Dr. Lynch had available to him the public

1    record of the proceedings in this Court, in this trial.

2            **MR. MORVILLO:**  Yes.

3            **JUDGE BREYER:**  Okay.  And my understanding,

4    furthermore, is that the Defendant testified for a considerable

5    period of time in that case in the United Kingdom.

6            **MR. MORVILLO:**  That is correct, Your Honor.

7            **JUDGE BREYER:**  And my further understanding is that

8    the Court in that case found Dr. Lynch to be liable to Hewlett

9    Packard; is that right?

10           **MR. MORVILLO:**  On a civil standard of proof, Your

11   Honor, yes.

12           **JUDGE BREYER:**  On the civil standard of proof.

13   Notwithstanding -- well, a civil standard of proof.

14       Okay.  So he has been found liable by the British court,

15   but no quantifiable -- no number has been assigned by the Court

16   as to what the extent of his liability is with respect to

17   damages.

18           **MR. MORVILLO:**  That's correct, Your Honor.  You have

19   beat me to the punch on that.

20       The liability phase has concluded.  And currently underway

21   is what they call the quantum phase, which is mid litigation

22   right now.

23           **JUDGE BREYER:**  All right.  Now, the fact that he has

24   no ties to the United States, the fact that he has no ties to

25   the Northern District of California, the fact that he has a net

1    worth of approximately $400 million, the fact that he has

2    fought extradition for three years, does the Government -- just

3    those facts alone, does the Government believe the Defendant to

4    be a serious risk of flight?

5              **MR. LEACH:**  Yes, Your Honor.

6              **JUDGE BREYER:**  All right.  So the question is -- and I

7    shall so find, that he is a serious risk of flight.  And that I

8    think is my first determination under the Bail Reform Act,

9    whether or not he simply could be released without any extra

10   conditions because if he -- if he were not a serious risk of

11   flight, he would -- he would be released.  The presumption is

12   that he should be released pretrial.

13        Since he is a serious risk of flight, and the Court so

14   finds, the question is what sort of conditions can be imposed

15   that will ensure his presence and, in particular, what are the

16   least restrictive conditions consistent with the fact that he

17   is, as the Court finds, a serious risk of flight.

18        I believe there are conditions that can ensure, reasonably

19   ensure, his security.  But I have received this afternoon, just

20   before this hearing, a proposed set of conditions that were

21   submitted to me, which I find inadequate.  And I wish to

22   discuss with you the additional conditions or the modification

23   of these conditions which would be acceptable to the Court in

24   order for the Defendant to be released.

25        First, I believe that he should be confined to the

1   Northern District of California and not be permitted to travel

2   anywhere outside the district;

3        That he be confined, in fact, or in effect, to home

4   confinement or to a place of abode in which he can leave for

5   the purposes of medical visits, for court appearances, or for

6   meetings with counsel, all of which must occur within the

7   Northern District of California -- pardon me, all of which must

8   occur within the City and County of San Francisco.  That's --

9   that's number one.

10       Number two.  I believe that his confinement should be

11  monitored by a security firm; that an independent security firm

12  be hired by the Defendant, should he so choose, or of his

13  choice, in which the conditions of the security must be

14  approved by this Court.

15       I believe that he should also execute an agreement that

16  the security firm should be permitted to use reasonable force

17  to ensure the Defendant's compliance with all the terms and

18  conditions of the release.  And I believe that some deposit of

19  six months for the services of this security firm should be

20  arranged for and deposited with some third party.  I don't know

21  whether it be the Clerk's Office, U.S. Attorney's Office, or

22  the company itself.  That's a detail that would have to be

23  worked out.

24       I believe he should post -- he should sign the

25  $100 million personal recognizance promise secured by

1    $50 million in cash to be deposited by the Defendant with the

2    Clerk of the Court.

3        At this time I would not accept any securities.  However,

4    we can -- I'm amenable to reviewing these securities to

5    determine whether or not they are subject to easy liquidation

6    provided that he does not honor all the terms and conditions of

7    the pretrial release.

8        I would also impose the -- what I call the standard

9    conditions of release, and let me recite what they are.

10       The Defendant must appear at all proceedings as ordered by

11   the Court and must surrender for service of any sentence

12   implicated.

13       Defendant must not commit any federal, state or local

14   crime.

15       Defendant must not harass, threaten, intimidate, injure,

16   tamper with or retaliate against any witness, victim,

17   informant, juror, officer of the court or obstruct any criminal

18   investigation.

19       Defendant must submit to supervision by Pretrial Services

20   and must report immediately upon release and thereafter as

21   directed by Pretrial Services.

22       Defendant must surrender all travel documents of any kind

23   whatsoever, including any document which may be used to enter

24   or exit any country, genuine or not.  Defendant shall not apply

25   for or otherwise obtain any new travel documents, genuine or

 1    not.

 2         Defendant shall be fitted with an electronic monitoring

 3    device which cannot be removed.  Defendant's private security,

 4    Pretrial Services and the FBI shall be given access to

 5    Defendant's electronic monitoring data on a real-time basis.

 6         Defendant must not change residence or telephone number

 7    without the prior approval of Pretrial Services.

 8         Defendant must comply with the following location

 9    restrictions.  Defendant must not travel outside the City and

10    County of San Francisco.  Defendant shall remain at his

11    residence at all times except for religious services, any

12    medical, substance abuse or mental health treatment, attorney

13    visits, court appearances, court approved obligations, or other

14    activities approved in advance by the Court.

15         Defendant will give his express consent in writing to

16    temporary preventative detention and the use of reasonable

17    force by his private security to thwart any attempt to flee.

18         I think those are the restrictions.  It is my intention,

19    when I retire to Chambers, to write an order setting forth in

20    writing all of these restrictions.

21         And I will -- of course, if any party wishes to seek a

22    modification of the restrictions, they may do so at any time.

23    They may appear tomorrow.  If after some reflection and

24    discussion with the -- with the Defendant, you wish to appear

25    in front of me to seek any modification, I will entertain it,

 1    but I -- but until then this will be the order of the Court,

 2    and I will remand the Defendant to the custody of the United

 3    States Marshal.

 4         So I will -- I will also set, by the way, a hearing on the

 5    trial of this matter for next Friday, a week from tomorrow.

 6    Please contact counsel for Mr. Chamberlain.  And I want to be

 7    prepared -- I want the parties to be prepared to suggest a

 8    trial date, and I want to advise the parties that I am ready to

 9    try this case as soon as the parties want to try it.

10         I understand there's been an enormous amount of material

11    generated in connection with this case, but as we've discussed,

12    much of this material has been given to the Defendant already,

13    if not all of it.  I don't know.  I don't know what the -- how

14    the Government has complied with its discovery obligations.

15         I instruct the Government to provide Defense counsel with

16    all discoverable materials prior to next Friday so that -- so

17    that the discussion that we can have will be a meaningful

18    discussion on setting a trial date.

19         Obviously, if the Defendant remains in custody -- and

20    that's going to be his choice -- or even under the release

21    conditions, I would believe that he would want to be tried as

22    quickly as possible and try to resolve this as quickly as

23    possible.  And the Court will be ready, and I assure you the

24    Government will as well, to try this case as quickly as Defense

25    counsel wishes to proceed consistent with their obligations to

1    be prepared in order to try the case.

2        So that I think concludes the --

3            **MR. MORVILLO:**  Your Honor, may I be heard.

4            **JUDGE BREYER:**  Of course.  Of course, Mr. Morvillo.

5    You go right ahead.

6            **MR. MORVILLO:**  Thank you.

7        While the Court has made clear that it concludes that

8    Mr. Lynch is a flight risk --

9            **JUDGE BREYER:**  A serious risk of flight.

10           **MR. MORVILLO:**  Serious risk of flight, I understand.

11           **JUDGE BREYER:**  Along with the Government.

12           **MR. MORVILLO:**  Mr. Lynch has been under bail in

13   England for the last four years.  He has been a model bailee

14   there.  He has not had remotely close to the circumstances and

15   conditions placed upon him that the Court has just outlined.

16   If he were going to flee, he would have done it then.

17           **JUDGE BREYER:**  I don't know whether that's true at

18   all.  He had significant ties to the United Kingdom.  He lived

19   there.  His wife lived there.  He had property there.  He had

20   employment there.  He had a business there.  And there -- and

21   there, Mr. Morvillo, not to state the obvious, there was not

22   here.

23       And what he did -- and I don't quarrel with his exercise

24   of his -- of his rights under the extradition treaty, but there

25   is a big difference between people who contest extradition and

1   somebody who simply says:  All right.  I'm going to come here

2   immediately and adjudicate it.  Exactly what Mr. Hussain did.

3   He came here voluntarily and -- you know.

4        So I think that there are a set of conditions that one

5   would set in Great Britain very different from the set of

6   conditions that one would set in the United States.

7        **MR. MORVILLO:**  That being said, Your Honor, when the

8   final extradition order came down three weeks ago and this

9   transfer to the United States was a fait de accompli, he still

10  did not have tightened restrictions and, as a result, certainly

11  could have fled.  He did not.  He is here.  He is ready to face

12  the -- the Court here and the charges here.

13       We agree some restrictions are necessary.  We've

14  negotiated this package that was presented to you by the

15  Government over the course of the last two weeks.  We believe

16  that those are sufficient circumstances to guarantee his return

17  to court here, under circumstances where for the last four

18  years he has been a model bailee in the United Kingdom.

19       Obviously, circumstances are changed.  That's why the

20  conditions that we've agreed to here are more severe.

21       So I would -- I would respectfully suggest that the terms

22  that you have just outlined go way beyond what is reasonably

23  necessary to secure the Defendant's appearance here in court

24  under the Bail Reform Act.

25       I will also just add, just to make sure the Court is

 1    reminded.

 2              **JUDGE BREYER:**  Go ahead.

 3              **MR. MORVILLO:**  When the Court -- at the outset of the

 4    hearing the Court indicated that it had previously entered an

 5    order assuring that reasonable conditions of release would be

 6    available to Dr. Lynch if and when he were extradited.

 7         The background of that related not to COVID, but to an

 8    argument that was being made in connection with the extradition

 9    that pretrial detention of Mr. Lynch, given the serious medical

10    conditions that he faces, would be a violation of his human

11    rights.  And to meet that argument, the Government agreed to

12    conditions that it understood would -- would be reasonable to

13    assure Dr. Lynch's appearance in court.  It was in that context

14    that they came to the Court to seek the order that the Court

15    entered.

16         Subsequent to that, the Government made representations to

17    the UK Court that he would receive bail when he arrived in the

18    United States, and it was on the basis of those representations

19    that that issue in the extradition was resolved.

20              **JUDGE BREYER:**  Were the conditions of release

21    presented to the United Kingdom Court --

22              **MR. MORVILLO:**  They were, Your Honor.

23              **JUDGE BREYER:**  -- in the extradition proceedings?

24              **MR. MORVILLO:**  They were, Your Honor.

25              **MR. LEACH:**  Your Honor, if I may --

1          **JUDGE BREYER:**  By the way, let me just point out, as

2     you well know, Mr. Morvillo, the -- in the judicial system the

3     Article III Court is entirely an independent body --

4          **MR. MORVILLO:**  I am --

5          **JUDGE BREYER:**  -- from the Executive Branch of the

6     Government.

7          Now, I did review exactly what I wrote and I will read it.

8     It says:

9               "Good cause appearing therefore, the Court hereby

10         finds that based on the information currently

11         available to the Court and the Government -- whatever

12         information was available as of October 13th, 2020 --

13         in the event of Defendant's extradition to the United

14         States, there are conditions of release that can be

15         imposed pursuant to 18 U.S.C. 3142(c) which will

16         reasonably assure the appearance of the Defendant and

17         the safety of any other person in the community such

18         that pretrial detention shall not be required."

19         And that's what I've done.  In the Court's view, I have

20    set forth reasonable conditions that address a serious risk of

21    flight.

22         And to be candid with you, Mr. Morvillo, because that's

23    always a good idea, I don't -- I think it is nearly a certainty

24    that the Defendant will flee, in the Court's view.  I think

25    there is nothing to hold him to this Court.

1          And as a -- as the proceedings develop, it will become

2     increasingly clear that -- what the evidence is against the

3     Defendant because he's being furnished the evidence.

4          Now, he has no ties to the United States.  He has no ties

5     to this district.  He has a vast amount of wealth, which can

6     sustain him should he choose not to remain in the United

7     States.

8          The only thing that faces him here -- that he faces here

9     is the prospect of either an acquittal, which certainly can

10    happen.  I'm not passing judgment as to what -- the degree of

11    his culpability.  I have no idea.  I don't know what the degree

12    of his culpability is.

13         I know that he is accused in the indictment of having

14    taken -- benefited from this transaction $804 million.  And you

15    advise me, and I think I appreciate the candor, that he has a

16    net worth of approximately $400 million.  So there's nothing to

17    keep him here other than his word.

18         And I would say that the Bail Reform Act is quite clear

19    that the Court can impose reasonable restrictions that will

20    ensure his presence.  It's an independent duty of this Court,

21    independent of the Government, to arrive at terms and

22    conditions that they believe will ensure the appearance of the

23    Defendant.

24         So whatever happened in Great Britain happened in Great

25    Britain, and I understand it.  And I understand the ties that

```
1    he has to that country.  No such ties exist here.

2         So if you'd like, I am -- I will set aside tomorrow

3    morning if you want to come back and address the Court.  I

4    don't like cutting lawyers off.  And I also believe that this

5    came as a surprise to you.  All right?

6              MR. MORVILLO:  It did, Your Honor.

7              JUDGE BREYER:  So, and I -- you know, I have been

8    around long enough to know that lawyers don't like surprises.

9         So if you want to think of more things to say to me

10   tomorrow morning at 9:00, I'll hear them.  I'll hear them.  And

11   I'll give you my opinion tonight so you'll see in writing

12   exactly what I have to say, and you can address that or

13   anything else you want to address.

14             MR. MORVILLO:  Your Honor, not to belabor the point.

15             JUDGE BREYER:  Go ahead.

16             MR. MORVILLO:  The reason why the conditions were

17   agreed to or the Government took the position that it did in

18   the extradition was because of Dr. Lynch's medical condition.

19             JUDGE BREYER:  Well, I have no information on

20   Dr. Lynch's medical condition.  If you want to give that to me,

21   I will be -- I will certainly consider it.

22        I was going to, and I will now, order a pretrial release

23   report.  I don't know whether you call it a bail report or

24   whatever they call it.  And that's exactly the sort of thing

25   that they take a look at.
```

```
 1        I want to assure you, given 24, 48, 72 hours, that
 2   San Francisco has a perfectly adequate medical -- medical
 3   facilities here, including the Zuckerberg Center at San
 4   Francisco General Hospital.  And you want doctors to see him or
 5   anything of that nature, obviously that can be arranged.
 6        MR. MORVILLO:  Your Honor, there are certain medical
 7   devices which he traveled with here that he needs to keep him
 8   alive.
 9        JUDGE BREYER:  Well --
10        MR. MORVILLO:  And so the --
11        JUDGE BREYER:  Well, then I'll have the Marshals
12   transfer him to San Francisco General Hospital.  They have a
13   custody wing there.  If that's what you want, I'll have him
14   transferred to San Francisco General Hospital forthwith.
15        MR. MORVILLO:  Your Honor, with respect.  We just
16   don't think that it's necessary to detain Dr. Lynch --
17        JUDGE BREYER:  Well, I do.
18        MR. MORVILLO:  -- overnight.
19        JUDGE BREYER:  I understand that.  I do.  And I'm the
20   judge, and that's my job.
21        My job is to make a determination as to whether or not --
22   how to address the issue of a serious risk of flight.  That's
23   my task.  That's what Congress said the Court has to do.
24   Obviously, subject to review.  And obviously subject to an
25   examination of the reasons why.
```

```
 1         So you want this on the calendar tomorrow?

 2              MR. MORVILLO:  Well, I --

 3              JUDGE BREYER:  I'm not releasing him tonight.  So, I

 4    mean, it's -- you're not waiving that argument.

 5              MR. MORVILLO:  Well, Your Honor, I would like to

 6    persuade you to release him tonight, but I would like to be

 7    back here tomorrow morning, yes.

 8              JUDGE BREYER:  All right.  So I'll put it on the

 9    calendar for 9:00 a.m. or 9:30?  What do you think?

10              THE CLERK:  9:00 a.m.

11              JUDGE BREYER:  9:00 a.m. tomorrow morning.  Marshals

12    are directed to produce the Defendant at that time.

13         I will be here a bit longer if we have to make any

14    arrangements with respect to San Francisco General Hospital.

15    I don't know.  Why don't you have a conversation --

16              MR. MORVILLO:  May I have a conversation with my

17    client, Your Honor?

18              JUDGE BREYER:  Of course you can.

19         All right.  We're in recess.  Thank you.

20         (Proceedings adjourned.)

21

22

23

24

25
```

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Debra L. Pas*

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Sunday, May 21, 2023