Jonathan M. Baum (SBN: 303469)
**Steptoe & Johnson LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe & Johnson LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Christopher Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No.: 3:18-cr-00577-CRB<br><br>Judge: Hon. Charles Breyer<br><br>**DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: November 1, 2023<br>Time: 1:30 pm<br>Court: Courtroom 6 – 17th Floor<br>Date Filed: September 29, 2023<br>Trial Date: March 18, 2024 |

# **TABLE OF CONTENTS**

I.   SUMMARY OF ARGUMENT ................................................................................................. 1

II.  BACKGROUND ................................................................................................................... 3

   A.   Overview of Count Seventeen................................................................................. 3

   B.   The Pleaded Schemes.............................................................................................. 4

      1.   2011–2012 Fund Transfer Scheme ............................................................ 4

      2.   2012 Books and Records Scheme .............................................................. 5

      3.   2012–2013 Data Scheme ........................................................................... 6

      4.   2016 and 2018 Invoke Scheme ................................................................. 9

III.  ARGUMENT ....................................................................................................................... 10

   A.   The Court Should Dismiss Count Seventeen Because It Alleges Multiple
      Conspiracies, Not a Single Conspiracy ................................................................. 10

      1.   The Nature of the Overt Acts Is Consistent with Four Distinct Conspiracies, Not
        One Overarching Conspiracy .................................................................... 11

      2.   Different Co-Conspirators Are Alleged to Have Participated in Unrelated Acts ....... 13

      3.   The Alleged Co-Conspirators Were Involved in Transactions of Different Qualities,
        Frequencies, and Durations...................................................................... 13

      4.   The Alleged Conspiracy Is Bisected by Three Years of Inactivity, from 2013 to
        2016, and Its Alleged Overt Acts Lack Shared Goals ............................. 14

      5.   The Proper Remedy Is Dismissal of Count Seventeen ............................. 18

   B.   The Court Should Dismiss Two Objects from Count Seventeen for Failure to State an
      Offense ................................................................................................................... 19

      1.   Count Seventeen Fails to Plead a Conspiracy to Obstruct a Proceeding under 18
        U.S.C. § 1505 .......................................................................................... 19

      2.   Count Seventeen Fails to Plead a Conspiracy to Commit Money Laundering Under
        18 U.S.C. § 1957 ..................................................................................... 23

IV.  CONCLUSION.................................................................................................................... 25

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

1

2                                    **TABLE OF AUTHORITIES**

3                                                                              **Page(s)**

4     **Cases**

5
      *Abitron Austria GmbH v. Hetronic Int'l Inc.*,
6          600 U.S. 412 (2023).............................................................................................22

7     *Arthur Andersen LLP v. United States*,
8          544 U.S. 696 (2005)...............................................................................................7

9     *Braverman v. United States*,
          317 U.S. 49 (1942)...............................................................................................16
10
11    *Gebardi v. United States*,
          287 U.S. 112 (1932).............................................................................................24
12
      *Kelly v. United States*,
13         140 S. Ct. 1565 (2020)....................................................................................2, 19

14    *Liu Meng-Lin v. Siemens AG*,
15         763 F.3d 175 (2d Cir. 2014)................................................................................21

16    *Morrison v. Nat'l Australia Bank Ltd.*,
          561 U.S. 247 (2010).............................................................................................21
17
18    *Russell v. United States*,
          369 U.S. 749 (1962).............................................................................................18
19
20    *Skiriotes v. Florida*,
          313 U.S. 69 (1941)...............................................................................................22

21    *United States v. Bessigano*,
22         No. 2:08-cr-110, 2008 WL 4833110 (N.D. Ind. Nov. 4, 2008).............................18

23    *United States v. Bhagat*,
          436 F.3d 1140 (9th Cir. 2006) ...............................................................20, 21, 23
24
25    *United States v. Bonds*,
          No. 07-cr-732, 2008 WL 618911 (N.D. Cal. Mar. 4, 2008)..................................18
26
      *United States v. Bonnar*,
27         No. 08-cr-197, 2008 U.S. Dist. LEXIS 88492 (W.D. Wash. Oct. 1, 2008)............18

28    *United States v. Bornman*,
          559 F.3d 150 (3d Cir. 2009)................................................................................15

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*United States v. Bowman*,
   260 U.S. 94 (1922)............................................................................22

*United States v. Broce*,
   488 U.S. 563 (1989)...............................................................1, 10, 16

*United States v. Caldwell*,
   589 F.3d 1323 (10th Cir. 2009) ......................................................14, 15

*United States v. Carman*,
   577 F.2d 556 (9th Cir. 1978) ................................................................18

*United States v. Crumpler*,
   636 F. Supp. 396 (N.D. Ind. 1986) ......................................................15

*United States v. Dortch*,
   5 F.3d 1056 (7th Cir. 1993) ............................................................13, 15

*United States v. Elkins*,
   885 F.2d 775 (11th Cir. 1989) ..............................................................19

*United States v. Figueroa*,
   No. 08-cr-749, 2010 WL 11463852 (E.D.N.Y. Mar. 2, 2010) ........13, 15

*United States v. Gabriel*,
   920 F. Supp. (S.D.N.Y. 1996)....................................................11, 12, 15

*United States v. Gordon*,
   844 F.2d 1397 (9th Cir. 1988) ......................................................2, 10, 15, 16

*United States v. Goss*,
   329 F.2d 180 (4th Cir. 1964) ................................................................15

*United States v. Hardy*,
   762 F. Supp. 1403 (D. Hawaii 1991) ........................................... *passim*

*United States v. Hitt*,
   249 F.3d 1010 (D.C. Cir. 2001) ............................................................17

*United States v. Hoskins*,
   902 F.3d 69 ..........................................................................................24

*United States v. Hussain*,
   No. 16-cr-462 ........................................................................................1

*United States v. Juodakis*,
   834 F.2d 1099 (1st Cir. 1987) ..............................................................15

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

*United States v. Laurins,*
   857 F.2d 529 (9th Cir. 1988) ...................................................................23

*United States v. Layton,*
   855 F.2d 1388 (9th Cir. 1988) ..................................................................22

*United States v. Manarite,*
   44 F.3d 1407 (9th Cir. 1995) ..............................................................2, 19

*United States v. Marcus Schloss & Co.,*
   710 F. Supp. 944 (S.D.N.Y. 1989).....................................................16, 17

*United States v. McDaniel,*
   No. 12-cr-28, 2013 WL 3993983 (N.D. Ga. Jan. 29, 2013) ....................20

*United States v. Melchor-Lopez,*
   627 F.2d 886 (9th Cir. 1980) ...................................................................13

*United States v. Pacilio,*
   No. 18-cr-48, 2020 WL 12919458 (N.D. Ill. Oct. 16, 2020).....................18

*United States v. Price,*
   951 F.2d 1028 (9th Cir. 1991) ............................................................20, 23

*United States v. Sertich,*
   95 F.3d 520 (7th Cir. 1996) .....................................................................15

*United States v. Sidorenko,*
   102 F. Supp. 3d 1124 (N.D. Cal. 2015) ...................................................22

*United States v. Sprecher,*
   783 F. Supp. 133 (S.D.N.Y. 1992).........................................................20

*United States v. Trevino,*
   7 F.4th 414 (6th Cir. 2021) ...............................................................2, 19

*United States v. Varelli,*
   407 F.2d 735 (7th Cir. 1969) ...................................................................17

*United States v. Wright,*
   704 F. Supp. 613 (D. Md. 1989).............................................................20

**Statutes**

15 U.S.C. § 78m...............................................................................................1, 3

18 U.S.C. § 1505 ......................................................................................... *passim*

18 U.S.C. § 1512 ......................................................................................... *passim*

Case No. 3:18-cr-00577-CRB

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

18 U.S.C. § 1513 ................................................................................20, 21

18 U.S.C. § 1515 ....................................................................................20

18 U.S.C. § 1956 ....................................................................................12

18 U.S.C. § 1957 .............................................................................. *passim*

U.S.S.G. § 3C1.1 .....................................................................................3

**Other Authorities**

U.S. Const. amend. VI ............................................................................18

Fed. R. Crim. P. 8(a) ..............................................................................12

Fed. R. Crim. P. 12(b) .........................................................................2, 10

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:

PLEASE TAKE NOTICE that on November 1, 2023, at 1:30 pm or as soon thereafter as counsel may be heard, in Courtroom 6, 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Michael Richard Lynch will and hereby does move the Court to dismiss Count Seventeen of the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(i) for joining two or more offenses in the same count (duplicity) and pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) for failure to state an offense under 18 U.S.C. § 371.

This motion is based upon the following Memorandum of Points and Authorities, the Declaration of Nicholas Silverman submitted herewith, oral argument, and the pleadings and exhibits on file with the Court.


Dated: September 29, 2023

Respectfully submitted,

*/s/ Reid Weingarten*
Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe & Johnson LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Jonathan M. Baum (SBN: 303469)
**Steptoe & Johnson LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Christopher J. Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    SUMMARY OF ARGUMENT

Count Seventeen represents a new chapter in the Hewlett-Packard and Autonomy saga. Although this Court presided over a 29-day jury trial in *United States v. Hussain*, No. 16-cr-462, Mr. Hussain was charged only with pre-acquisition misconduct and was not charged with or convicted of the far-ranging post-acquisition conspiracies alleged in Count Seventeen. According to Count Seventeen, immediately after the sale of Autonomy, Dr. Lynch and Mr. Chamberlain allegedly agreed in October 2011 to circumvent HP's internal accounting controls in violation of 15 U.S.C. § 78m; tamper with witnesses, victims, and informants in violation of 18 U.S.C. § 1512; obstruct (not yet existing or expected) proceedings in violation of 18 U.S.C. § 1505; and engage in monetary transactions in violation of 18 U.S.C. § 1957, and that this conspiratorial agreement lasted until November 2018.  SI ¶ 32.  Count Seventeen is factually and legally erroneous.  It should be dismissed, or in the alternative, the improperly pleaded objects should be dismissed.

Contained in a Superseding Indictment (SI) filed on the eve of opening statements in the U.K. civil action, Count Seventeen attempts to sweep in unrelated conduct and evade the statute of limitations, via a sprawling, multi-object "kitchen sink" encompassing plainly unrelated alleged schemes.  Count Seventeen purports to allege that a single October 2011 agreement encompasses Dr. Lynch's personal bank transfers (not involving Mr. Chamberlain), post-acquisition accounting decisions (not involving Dr. Lynch), the destruction and duplication of company data (in fact depriving the company of nothing and not involving Dr. Lynch or Mr. Chamberlain), disputes over company records relevant to then-threatened litigation and investigations, and—after a break of several years in which no acts are alleged to have occurred in furtherance of the October 2011 agreement—2016 and 2018 activities related to Dr. Lynch's post-Autonomy company and its affiliates, including purchasing shares of one affiliate from Mr. Hussain to help him pay for his legal fees.

A conspiracy is an agreement.  And although "[a] single agreement to commit several crimes" can be charged as one conspiracy, "multiple agreements to commit separate crimes

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    constitute multiple conspiracies," *e.g.*, *United States v. Broce*, 488 U.S. 563, 570–71 (1989), and

2    multiple conspiracies must be charged as separate counts, Fed. R. Crim. P. 12(b)(3)(B)(i).

3    Whether a charged conspiracy is in fact multiple conspiracies is determined by examining four

4    factors: (1) the nature of the alleged scheme; (2) the identities of the alleged scheme's

5    participants; (3) the quality, frequency, and duration of each conspirator's transactions; and (4)

6    the commonality of times and goals.  *United States v. Gordon*, 844 F.2d 1397, 1401 (9th Cir.

7    1988).  Here, all four factors weigh in favor of a finding of multiple conspiracies, *see infra*

8    § III.A.1–.4, and Count Seventeen should therefore be dismissed as duplicitous.

9         If the Court decides not to dismiss Count Seventeen, it should nonetheless dismiss the

10    Count insofar as it charges a conspiracy to obstruct a pending proceeding in violation of 18

11    U.S.C. § 1505 and a conspiracy to engage in prohibited monetary transactions in violation of 18

12    U.S.C. § 1957.  A single conspiratorial agreement can have multiple objects, but "each object

13    alleged must constitute a federal offense."  *United States v. Manarite*, 44 F.3d 1407, 1414 (9th

14    Cir. 1995); *see also United States v. Trevino*, 7 F.4th 414, 424 (6th Cir. 2021) ("[T]he

15    fundamental characteristic of a conspiracy is a joint commitment to an 'endeavor which, if

16    completed, would satisfy all of the elements of [the underlying substantive] criminal offense.'"

17    (quoting *Ocasio v. United States*, 578 U.S. 282, 286 (2016))).

18         Although 18 U.S.C. § 1505 and § 1957 are referenced in the boilerplate paragraph 32 of

19    the SI as objects of the conspiracy, the overt acts in paragraph 34 make clear that the conduct

20    allegedly agreed upon did not constitute a violation of those statutes.  Put differently, even if the

21    defendants agreed to transfer money and destroy and copy documents *precisely as alleged in

22    Count Seventeen*, that agreement does not constitute a conspiracy to violate 18 U.S.C. §§ 1505

23    and 1957.  That is so for two reasons.

24         First, § 1505 applies only to conduct that obstructs a "pending proceeding," but no

25    proceeding is alleged to have been pending at the time of the alleged agreement or consequent

26    conduct.  The conduct alleged in Count Seventeen, as a matter of law, could not have violated

27    § 1505, and therefore, an agreement to engage in that conduct would not constitute a conspiracy

28    to violate § 1505.  *See Kelly v. United States*, 140 S. Ct. 1565, 1571 n.1 (2020) ("If there was

2                                    Case No. 3:18-cr-00577-CRB

property fraud here, there was also conspiracy to commit it. But if not, not."). Second, the allegedly agreed-upon conduct occurred outside of the United States and the defendants are non-U.S. persons. Neither § 1505 nor § 1957 applies to the extraterritorial conduct of non-U.S. persons. Even if the defendants agreed to engage in that conduct, they were not conspiring to violate § 1505 or § 1957. Therefore, the Court should dismiss Count Seventeen insofar as it alleges a conspiracy to violate those statutes.

## II.    BACKGROUND

Count Seventeen alleges an agreement reached in October 2011 by Dr. Lynch and Mr. Chamberlain[1] to engage in a sprawling conspiracy to violate four distinct statutes over the course of seven years. Count Seventeen does not, however, identify the October 2011 agreement with any specificity, and the sole specific allegations—the alleged overt acts—are inconsistent with a single conspiracy.

### A.    Overview of Count Seventeen

Count Seventeen alleges a conspiracy to violate the following four statutes from October 2011 to November 2018: (a) circumventing a system of internal accounting controls of a registered issuer of securities (15 U.S.C. § 78m), (b) tampering with witnesses, victims, and informants (18 U.S.C. § 1512), (c) obstructing proceedings before departments, agencies, and committees (18 U.S.C. § 1505), and (d) engaging in monetary transactions (18 U.S.C. § 1957). SI ¶ 32. The SI conclusorily states that the "objectives" of the conspiracy were "to cover up, conceal, influence witnesses to, and otherwise obstruct investigations of the scheme to defraud" alleged in Counts One through Fifteen. SI ¶ 33.

The alleged overt acts make clear, however, that Dr. Lynch and others are accused of conspiring to obstruct proceedings that had not even been conceived at the time of the alleged conspiratorial agreement in October 2011; indeed, there were no government investigations into

---

[1] Mr. Hussain was not alleged to have been a party to this conspiracy, and the government neither charged him with the conspiracy nor argued that he was responsible for it by seeking a U.S.S.G. § 3C1.1 (Obstructing or Impeding the Administration of Justice) enhancement at Mr. Hussain's sentencing.

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Autonomy until at least late 2012.  The SI alleges that this conspiracy to cover up an alleged fraud continued for seven years—long after those allegations were made public—rendering void any purpose to prevent an investigation and allegedly culminating in a new purpose to obstruct proceedings that were underway.  There is no allegation that Dr. Lynch was in any way involved with, or even aware of, many of the overt acts, and no allegations of an actual agreement between the co-conspirators except for the boilerplate, conclusory language in ¶ 32.

### B.   The Pleaded Schemes

The seventeen alleged overt acts in Count Seventeen break down into four distinct schemes based on their goals, methods, and actors: (1) Dr. Lynch placing the proceeds of his company's sale in personal bank accounts ("2011–2012 Fund Transfer Scheme"); (2) Mr. Chamberlain and others disagreeing with HP personnel regarding accounting and sales entries during the brief union of HP and Autonomy personnel ("2012 Books and Records Scheme"); (3) various incidents in which devices or data were subject to deletion, copying, or safe-keeping during two periods in 2012 and 2013 ("2012–2013 Data Scheme"); and (4) Dr. Lynch's development of his now-successful venture capital firm, Invoke Capital, and the hiring of Mr. Chamberlain by an Invoke affiliate, with Dr. Lynch later purchasing from Mr. Hussain shares of an Invoke affiliate to facilitate Mr. Hussain's ability to pay for legal counsel ("2016 and 2018 Invoke Scheme").  *Cf.* SI ¶ 33.

### 1.   2011–2012 Fund Transfer Scheme

Overt acts (a), (b), (c), (d), and (j) involve transfers of British pounds sterling by Dr. Lynch between accounts at various banks, with the first four transfers having taken place on or about October 7, 2011—just days after HP acquired Autonomy—and the fifth, smallest transfer having taken place on June 1, 2012.  The alleged transfers, which appear to be intended to relate to the conspiracy's money-laundering object, involved no domestic conduct or fund transfers to, from, or through the United States, nor any alleged actions by co-conspirators. In truth, the transfers were intended not to conceal or obstruct but instead reflect a rational decision to place assets in different financial institutions to diversify and mitigate risk.  The transfers were

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

transparent and made through well-known financial institutions, and there is no allegation that would explain how such transfers could further an alleged cover-up effort.

### 2. 2012 Books and Records Scheme

Overt acts (e) and (f)—which make no mention of Dr. Lynch—appear to relate to the allegation that Mr. Chamberlain and Mr. Hussain circumvented HP's internal accounting controls during their brief tenure with HP.  Overt act (e) alleges that on February 3, 2012, the two directed an HP finance employee to "falsely" record approximately $5.5 million in revenue to be included in HP's Q1 2012 financial statements.  The $5.5 million accrual—a routine accounting practice—was of such an immaterial size that there would have been no reason to falsely report this sum, and indeed, there was no contemporaneous dispute regarding whether the accrual was correctly recorded.

Overt act (f) alleges that in May 2012, Mr. Hussain instructed an HP executive to falsify an entry in what the SI calls a "revenue forecast."  The referenced "revenue forecast" was actually a set of entries in Autonomy's internal sales-management system, which was used by Autonomy's sales team to track leads, not to create forecasts for public reporting or other financial purposes.  There would have been no reason to falsify entries in that internal system.

The SI does not allege that either overt act (e) or (f) was intended to deceive HP regarding the state of Autonomy or otherwise cover up the alleged scheme to defraud.  Nor could it.  Autonomy *was* struggling post-acquisition, but this was due not to prior fraud, but rather to contemporaneous incompetence, infighting, and lack of leadership focus within HP—integration failures that were all too common within HP, and that made it nearly impossible for Autonomy to function.[2]  Before the deal had even closed, the HP CEO who had championed the Autonomy acquisition was fired and replaced, and the plan to pivot HP to software—in which Autonomy would serve as HP's valued entry point—was abandoned.  Instead, HP allowed internal turf

---

[2] HP had a long history of calamitous integration failures, taking massive write downs after acquiring Palm, EDS, and Compaq, for example.

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   battles, staff attrition, and competition between Autonomy and other HP divisions to eat away at

2   Autonomy's ability to succeed.

3            **3.      2012–2013 Data Scheme**

4            Shortly after HP's acquisition[3] of Autonomy, HP's share price fell by almost 50% in the

5   span of six months in mid-2012.  This precipitous decline triggered an impairment analysis,

6   which required HP to write down the value of its assets to an estimate closer to its decreased

7   market capitalization.  The drop in value was not caused by the acquisition of Autonomy.  To the

8   contrary, during the first year following the acquisition, including as late as August 2012, HP's

9   internal and external advisors—accounting for Autonomy's hardware sales and policies for

10  recognizing revenue from license sales to resellers—repeatedly advised HP that Autonomy was

11  worth equal to or more than what HP paid.  But HP had to write down the value of some of its

12  assets, and with HP's new CEO having recently abandoned software aspirations, the former

13  CEO's prize software acquisition was an ideal target.  Although several of HP's businesses were

14  doing much worse than Autonomy in 2012, targeting Autonomy would allow HP's management

15  to blame already-departed executives for the write down.  So that is what HP did.

16           To justify writing down $8.8 billion of Autonomy's book value barely a year after the

17  acquisition, HP purported to identify "serious accounting improprieties, misrepresentation[s] and

18  disclosure failures discovered by an internal investigation by HP and forensic review into

19  Autonomy's accounting practices prior to its acquisitions."  But HP had barely begun the

20  "investigation,"[4] had not in fact been misled by Autonomy, and had not quantified the effects of

21  any purported accounting irregularities.  The write down was not based on investigative findings;

22  instead, the investigative findings were based on the write down.  As one member of HP's

23

24  _____

25  [3] As is discussed in Dr. Lynch's Motion to Dismiss Counts One through Sixteen, Autonomy was
    acquired by a Dutch company, HP Vision B.V. (or "Bidco"), a subsidiary of Hewlett-Packard
26  Company. For simplicity's sake, this memorandum uses "HP" as a catchall term that includes
    both Bidco and the Hewlett-Packard Company.
27
    [4] The overwhelming majority of interviews conducted by HP's outside counsel were taken after,
28  not before, the write down announcement.

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

finance team wrote to HP's CFO in November 2012, *after* the write down announcement, "[w]e've never formally prepared anything to attribute the [accounting] irregularities to the amount of the write down." But that was flatly inconsistent with what HP told the public. In public, HP attributed over $5 billion solely to alleged fraud. In private, HP conceded that this attribution was not grounded in analysis and that the $5 billion figure was based in large part on unrealized synergies.

Overt acts (g), (h), (i), (m), and (n) involve data destruction, duplication, or transfer—some of which occurred before, and some of which occurred after, the November 2012 write down and announcement of a referral to the DOJ. Data deletion is "common in business" and not inherently or presumptively wrongful. *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005). Here, only one of the five overt acts allegedly violated HP's document retention policies,[5] and not one overt act alleges that any relevant data was lost.

Overt act (g) alleges that, in May 2012, an unknown "co-conspirator" caused the destruction of hard drives containing unknown files (neither the government nor Dr. Lynch knows specifically what) in HP's Cambridge office. There is no allegation that this destruction deviated from ordinary business operations. Neither Dr. Lynch nor Mr. Chamberlain was involved.

Overt act (h) alleges that, in May 2012, Autonomy's former general counsel instructed an HP IT employee to erase Mr. Chamberlain's laptop computer and any backup after Mr. Chamberlain had left the company. The data would have already been saved (not kept only in local storage), and preserved for potential litigation. Neither Dr. Lynch nor Mr. Chamberlain was involved.

Overt act (i) concerns the alleged attempted removal in May 2012 of Autonomy's former general counsel's laptop by a human resources administrator after the general counsel's

---

[5] *Compare* SI ¶¶ 34.g (no allegation of policy violation), 34.h (same), 34.i (same), 34.m (same), *with* SI ¶ 34.n (alleging that employee who used USB drive to work from home violated HP's policies and internal controls).

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

departure.  Consistent with the standard practice for decommissioned equipment of senior personnel, the administrator placed the laptop—which, consistent with the role of Autonomy's general counsel, included highly sensitive confidential data—in a secure locked drawer at HP. Neither Dr. Lynch nor Mr. Chamberlain was involved.

Overt act (m) alleges that in January 2013 and "thereafter" Dr. Lynch "refused to return books and records and other property belonging to HP."  SI ¶ 34.m.  To the extent that this accusation relates to electronic devices, it is simply mistaken; while HP's poor recordkeeping has sown confusion, Dr. Lynch returned all devices sought by HP that belonged to HP.  And with respect to documents, the SI is similarly mistaken.  Dr. Lynch retained copies of relevant documents for use in litigation, with his U.K. attorneys contemporaneously notifying HP in writing of that retention, and consequently producing the documents in litigation.

Overt act (n) alleges that in February 2013, a co-conspirator "stole" HP data on a USB drive.  Although the SI uses "stole," the data was copied, not removed.  No data was deleted, and HP retained all original data.  The "co-conspirator's" (who is mentioned in no other overt act) motive in providing the copied documents to Mr. Hussain appears to be pure: when she learned of HP's allegation that Autonomy had not disclosed to HP the hardware sales, she recalled that her USB drive contained documents disproving the allegation.  She showed the documents to Mr. Hussain, and subsequently provided the USB drive to Mr. Hussain's lawyers.  While the government claims this was in furtherance of obstruction, nothing could be further from the truth; the documents were provided to defend against false accusations, and Mr. Hussain and Dr. Lynch's attorneys disclosed the documents and their source to various government authorities— including the DOJ and SEC—soon after obtaining them, and produced them to HP.  Moreover, because the data was merely duplicated, HP retained possession at all times and was not impeded from accessing any data.

Overt act (l) relates to a meeting between HP's general counsel and Dr. Lynch that took place in June (not July, as written) 2012, approximately one month after Dr. Lynch's termination, and several months before any hint of a government proceeding.  HP's general counsel had asked Dr. Lynch to meet with him in London to discuss employment matters, and

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   Dr. Lynch voluntarily attended with his employment lawyer.  Dr. Lynch answered each question

2   truthfully and completely, to the best of his knowledge.

3           **4.      2016 and 2018 Invoke Scheme**

4           As Autonomy struggled under HP's yoke, many former Autonomy employees followed

5   Dr. Lynch to Invoke Capital, an exciting, and ultimately successful, startup venture capital firm.

6   Yet overt act (k), which pertains to the creation of Invoke and the employment of former

7   Autonomy personnel by Invoke and an affiliate, and overt act (o), which specifically relates to

8   the hiring of Mr. Chamberlain by an Invoke affiliate, insinuate that Invoke is a dedicated

9   witness-tampering organization.  In truth, Invoke is a legitimate venture capital firm that has

10  fostered a number of successful businesses, including a publicly traded British cybersecurity

11  company that has won numerous awards and received recognition, including being named to the

12  Financial Times' list of Europe's Fastest Growing Companies and the Deloitte Technology Fast

13  50, and which currently has a market capitalization of several billion dollars.

14          The 2016 portion of the alleged Invoke Scheme hinges on hiring qualified HP-Autonomy

15  employees when they became available.  Invoke affiliates choosing to hire Autonomy veterans

16  was no surprise.  Morale at HP-Autonomy had plummeted due to HP's mismanagement and

17  false accusations, and over one-hundred talented Autonomy employees departed.  And Invoke

18  and its affiliates were happy to have them—they were trained, battle-tested at Autonomy, and

19  skilled software executives.  They were paid market salaries, and obtained illiquid shares worth

20  little at the time (for example, shares of the Invoke affiliate that allegedly hired Mr. Chamberlain

21  were not publicly traded until 2021).

22          Overt acts (p) and (q) allege that Dr. Lynch purchased shares of a (different) Invoke

23  affiliate from Mr. Hussain in 2018.  The resulting proceeds were used entirely to pay down Mr.

24  Hussain's legal fees.  The government has stated that it did not intend to include these

25

26

27

28

**DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

1
2
allegations,[6] and their continued inclusion in the SI is both concerning and suggestive of an attempt to plead around the statute of limitations.

3    **III.    ARGUMENT**

4          **A.    The Court Should Dismiss Count Seventeen Because It Alleges Multiple Conspiracies, Not a Single Conspiracy**

5
6
The rule against duplicity prohibits indictments from "joining two or more offenses in the same count."  Fed. R. Crim. P. 12(b)(3)(B)(i) (classifying duplicity as a "defect in the indictment" that "must" be raised before trial).  Uncured duplicity compromises a defendant's rights as explained in Section I.A of Dr. Lynch's contemporaneously filed Motion to Dismiss Counts One Through Sixteen.

Whether a single count alleges one conspiracy or is duplicitous depends on whether the count in question alleges "one overall agreement" among the various parties to carry out the agreed-upon objects of the conspiracy.  *United States v. Gordon*, 844 F.2d 1397, 1401 (9th Cir. 1988) (quoting *United States v. Moran*, 759 F.2d 777, 784 (9th Cir. 1985)); *United States v. Broce*, 488 U.S. 563, 570–71 (1989) ("A single agreement to commit several crimes constitutes one conspiracy.  By the same reasoning, multiple agreements to commit separate crimes constitute multiple conspiracies.").  To determine whether one overall agreement is alleged, the Ninth Circuit has identified four factors: (1) the nature of the alleged scheme; (2) the identity of the alleged scheme's participants; (3) the quality, frequency, and duration of each conspirator's transactions; and (4) the commonality of times and goals.  *Gordon*, 844 F.2d at 1401 (citing *United States v. Arbelaez*, 719 F.2d 1453, 1457 (9th Cir. 1983) and vacating conviction upon finding that the count of conviction contained two conspiracies).

Count Seventeen is duplicitous under the four-factor *Gordon* test.  The allegations in Count Seventeen represent multiple schemes, not a single conspiracy consisting of a single agreement.  In order to evade statute of limitations obstacles, Count Seventeen attempts to unify

---

[6] *See* Apr. 2, 2019 Tr. at 14:19–21 (Apr. 5, 2019) (Dkt. 26) ("[T]here were multiple instances in which Hussain sold shares to Lynch, and the ones we understand went for legal fees I think were removed from the overt acts.").

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1
2
3
4
5
6

Dr. Lynch's personal banking transactions and disputes with HP regarding his termination that did not involve Mr. Chamberlain with Mr. Chamberlain's post-acquisition financial reporting that did not involve Dr. Lynch, along with other events that did not involve either of them.  Even if there were substantial overlap among participants, however, Count Seventeen is split into two halves by the clear break between the 2012-2013 allegations and unrelated events in 2016 and 2018.  Because Count Seventeen fails to allege a single conspiracy, it should be dismissed.

7
8

1.    The Nature of the Overt Acts Is Consistent with Four Distinct Conspiracies, Not One Overarching Conspiracy

9
10
11
12
13
14
15
16

The SI purports to allege a conspiracy to "cover up" and "conceal" a scheme to defraud and to "obstruct investigations" into that scheme to defraud.  SI ¶ 33.  The conspiracy's object offenses and the alleged overt acts, however, lack any unifying thread and purport to cover conduct both before and after the multiple investigations occurred.  Instead of a single conspiracy, the alleged overt acts break out into four distinct alleged schemes, only one of which even alludes to an investigation.  *See supra* § II.B (explaining the background of the 2011–2012 Fund Transfer Scheme; the 2012 Books and Records Scheme; the 2012–2013 Data Scheme; and the 2016 and 2018 Invoke Scheme).  These four distinct sets of allegations are wholly inconsistent with an overarching conspiracy to obstruct.

17
18
19
20
21
22
23
24
25

Where the nature of a scheme is more consistent with multiple conspiracies than one, courts have not hesitated to conclude that a count is duplicitous, notwithstanding a boilerplate allegation of a single conspiracy.  *See United States v. Hardy*, 762 F. Supp. 1403, 1409–10 (D. Hawaii 1991) (concluding that although the indictment made a conclusory allegation of a single conspiracy, the overt acts "indicate[d] the existence of" two "discrete, self-contained criminal transaction[s]"); *United States v. Gabriel*, 920 F. Supp. at 503, 506 (S.D.N.Y. 1996) (rejecting the indictment's "broad, conclusory" charge of a single conspiracy because the "particularized allegations" reflected two conspiracies to deceive different counterparties[7]).  Here—even taking

26
27
28

[7] Although the court in *Gabriel* indicated its conclusion that the count was likely duplicitous, it ultimately dismissed on statute of limitations grounds, holding that "on the face of the pleading, [the duplicitous count] remains time-barred."  *Id.* at 506.  Second Circuit precedent required a finding on the statute of limitations because the court could not dismiss a duplicitous indictment

11                    Case No. 3:18-cr-00577-CRB

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

the "particularized allegations" as true, which they are not—they break out into four distinct schemes, notwithstanding the "broad, conclusory language" purporting to allege a single conspiracy.

There is no logical connection between the 2011–2012 Fund Transfer Scheme and the other three alleged schemes. No named co-conspirators in the other three schemes are alleged to have been involved in or had reason to care where Dr. Lynch held his funds, and the funds transfers are not alleged to have furthered the purported effort to "cover up" or "conceal" in any way. *Cf.* SI ¶ 33. Notably, the SI does not allege that the funds transfers included intent to conceal—an element of 18 U.S.C. § 1956(a)—and instead alleges that they constituted a potential violation of 18 U.S.C. § 1957, which does not require intent to conceal. The concession that the alleged object offense was § 1957 and not § 1956(a) contradicts SI ¶ 33's claim that the transfers were part of a conspiracy to "conceal."

Moreover, even if one accepts the allegations on their face, there is a clear disconnect between the remaining three schemes. While the 2012 Books and Records Scheme and 2012–2013 Data Scheme relate to availability of information to HP—although in fact, no information was hidden and HP had all referenced data—the 2016 and 2018 Invoke Scheme does not. Instead, the 2016 and 2018 Invoke Scheme relates to the hiring of qualified former employees of HP-Autonomy. There is no allegation that Invoke hired only co-conspirator employees, paid co-conspirator employees more than they were worth, or asked co-conspirator employees to lie or conceal. And when Mr. Hussain needed money to pay for his counsel of choice, Dr. Lynch bought shares from him in this now-valuable company—transactions that the SI does not allege to have been pretextual and that the government has explicitly declined to rely on as overt acts at trial.

---

before trial. *Id.* at 504. No such precedent exists within the Ninth Circuit where it is established that despite boilerplate allegations, a court may dismiss duplicitous counts before trial. *Hardy*, 762 F. Supp. at 1408–09 (dismissing duplicitous count before trial because "Count 1 of the Superseding Indictment runs afoul of Fed. R. Crim. P. 8(a)'s proscription against charging two offenses in one count of an indictment").

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    The nature of these discrete allegations weighs in favor of a finding of multiple

2    conspiracies.

3              2.    Different Co-Conspirators Are Alleged to Have Participated in Unrelated
                      Acts

4

5    Allegations of overt acts sharing few overlapping co-conspirators weigh in favor of a

6    finding of multiple conspiracies.  *See, e.g.*, *United States v. Dortch*, 5 F.3d 1056, 1062 (7th Cir.

7    1993); *United States v. Figueroa*, No. 08-cr-749, 2010 WL 11463852, at *12 (E.D.N.Y. Mar. 2,

8    2010); *Hardy*, 762 F. Supp. at 1410.  Here, only two co-conspirators are identified in the SI: Dr.

9    Lynch and Mr. Chamberlain.  Of the seventeen overt acts, only one comes close to mentioning

10   both Dr. Lynch and Mr. Chamberlain together.  *See* SI ¶ 34.o.  Even this allegation does not

11   allege interaction between Dr. Lynch and Mr. Chamberlain, and no other overt act or fact pattern

12   claims that Dr. Lynch and Mr. Chamberlain interacted, collaborated, or otherwise agreed to do

13   anything.  Instead, the overt acts in the SI allege that they worked separately, suggesting multiple

14   conspiracies.

15           The only specifically alleged nexus between the alleged co-conspirators is that Mr.

16   Chamberlain chose to join an Invoke affiliate in 2016, three years after any of the non-Invoke

17   overt acts ceased.  The SI does not allege that Dr. Lynch directly or indirectly interacted with Mr.

18   Chamberlain in any way to affect his testimony or the provision of evidence or any other activity

19   related to a judicial proceeding.  Indeed, the SI does not allege any obstructive activities at all,

20   and it is black-letter law that "mere association . . . is not sufficient to make one a conspirator."

21   *E.g.*, *United States v. Melchor-Lopez*, 627 F.2d 886, 891 (9th Cir. 1980).  Because the SI does

22   not allege that the supposed co-conspirators participated in any unlawful portion of the alleged

23   schemes together, this factor therefore weighs in favor of multiple conspiracies.

24           **3.    The Alleged Co-Conspirators Were Involved in Transactions of
                      Different Qualities, Frequencies, and Durations**

25           The alleged co-conspirators' actions differ in frequency and quality.  Neither named co-

26   conspirator is alleged to have engaged in consistent activity from 2011–2018.  The sole

27

28

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

1  allegation of wrong-doing[8] against Mr. Chamberlain took place in early 2012 and relates to HP's

2  financial reporting. SI ¶ 34.e.  Notably, Mr. Chamberlain has no alleged involvement in the

3  2011–2012 Funds Transfers or the 2012–2013 Data schemes.  Indeed, Mr. Chamberlain is not

4  alleged to have been involved in any conduct at all between early 2012 and his joining an Invoke

5  affiliate in 2016.  Dr. Lynch, on the other hand, is referenced only in the two schemes in which

6  Mr. Chamberlain is omitted and in the 2016 and 2018 Invoke scheme.

7       The various unnamed co-conspirators appear only sporadically.  For example, the "co-

8  conspirator" that allegedly provided copies of HP documents to Mr. Hussain and Dr. Lynch[9] in

9  February 2013 had no other involvement in the alleged conspiracy or any of the other sixteen

10  overt acts.  The same can be said of the "co-conspirator" who "caused the destruction of hard

11  drives in HP's Cambridge office," but is not alleged to have otherwise participated in any overt

12  acts.  Because each co-conspirator participated in unrelated transactions, this factor weighs in

13  favor of multiple conspiracies.

14       **4.    The Alleged Conspiracy Is Bisected by Three Years of Inactivity, from 2013 to 2016, and Its Alleged Overt Acts Lack Shared Goals**

15       *a.    Temporal Disconnect*

16       "Although a lapse in time does not necessarily convert a single conspiracy into multiple

17  conspiracies, time in combination with other factors can 'sever the single continuous conspiracy

18  alleged in the indictment into two separate conspiracies.'" *United States v. Caldwell*, 589 F.3d

19  1323, 1330–31 (10th Cir. 2009) (quoting *United States v. Williamson*, 53 F.3d 1500, 1513–14

20  (10th Cir. 1995)).  Here, all allegedly obstructive conduct stopped by 2013, after the separation

21  of the alleged co-conspirators from HP.  In an apparent attempt to avoid the statute of limitations,

[8] Although SI ¶ 34.h references an instruction to erase "Chamberlain's laptop," he is not alleged to have been involved and he had already left Autonomy by May 2012.  Similarly, Mr. Chamberlain is not alleged to have engaged in any wrong-doing in connection with his employment by an Invoke affiliate, as referenced in SI ¶ 34.o.

[9] The allegation that Dr. Lynch received the referenced documents from the alleged co-conspirator is false.  Dr. Lynch's lawyers later obtained a copy of the documents, but neither they nor Dr. Lynch himself received the documents from the alleged co-conspirator, and all of the documents were both retained by HP and produced to HP in connection with litigation.

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

the SI tacks on two unrelated overt acts that took place over *three years* later: an Invoke affiliate's hiring of Mr. Chamberlain in 2016 and Dr. Lynch's purchase of shares of another Invoke affiliate in 2018.  Those overt acts, however, have no nexus to the earlier acts, and there is no allegation that they were intended to obstruct in any way (nor could there be, as is discussed below).  *See Gabriel*, 920 F. Supp. at 505-06 (holding alleged "acts in furtherance" of the conspiracy "[we]re legally insufficient to extend the scope and duration of the conspiracy" because they were, in fact, part of a second conspiracy); *see also United States v. Bornman*, 559 F.3d 150, 153 (3d Cir. 2009) ("[T]he government has failed to explain how either of those acts . . . could have been in furtherance of [the conspiratorial] agreement.").

Setting aside the lack of any specific allegation that causing an Invoke affiliate to hire Mr. Chamberlain (at a below-market salary) or buying Invoke affiliate shares to generate funds for legal defense were connected to an overarching conspiracy to obstruct, the paucity of overt acts after early 2013 strongly supports a conclusion of multiple conspiracies.  The three-year and two-year gaps between 2013–2016 and 2016–2018 greatly exceed the lapses that have supported a multiple-conspiracies finding in other cases.  *See, e.g.*, *Dortch*, 5 F.3d at 1062 (three-month lapse supported finding of separate conspiracies); *Gordon*, 844 F.2d at 1401 (six-month gap between overt acts indicated the presence of multiple conspiracies); *United States v. Goss*, 329 F.2d 180, 181–83 (4th Cir. 1964) (acts were separated by four to seven months); *Figueroa*, 2010 WL 11463852, at *12 ("four-month lapse"); *Caldwell*, 589 F.3d at 1330–31 ( "[a]pproximately one year passed"); *United States v. Crumpler*, 636 F. Supp. 396, 399, 405 (N.D. Ind. 1986) (one-year gap); *Hardy*, 762 F. Supp. at 1408 (nineteen months); *United States v. Sertich*, 95 F.3d 520, 523 (7th Cir. 1996) ("two-year hiatus"); *see also United States v. Juodakis*, 834 F.2d 1099, 1103 (1st Cir. 1987) (reversing conviction after finding that defendant was not part of a particular conspiracy because "there had been a substantial hiatus (approximately a year, at a minimum) in operations and in defendant's direct participation [in the alleged conspiracy]").

Here, three years passed between the 2013 acts and the 2016 hiring of Mr. Chamberlain. During those three years, the U.K. Serious Fraud Office ("SFO") publicly announced it was investigating the allegations, the SFO closed its investigation due to insufficient evidence of

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

1   fraud, and HP filed a much-publicized lawsuit against Dr. Lynch leading to public attention and

2   later, a DOJ indictment.  It is simply implausible that in October 2011, Dr. Lynch, Mr.

3   Chamberlain, and the other co-conspirators agreed that they would endeavor to obstruct an

4   investigation and ensuing litigation that had not yet begun and later spanned multiple continents

5   and lasted nearly a decade, but then as part of the same conspiracy, took no obstructive acts after

6   2013 except having Dr. Lynch allegedly cause a company he is affiliated with hire

7   Mr. Chamberlain and provide Mr. Hussain with liquidity to cover his legal fees.

8                          b.      *Distinct Goals*

9          In addition to the distinction in time, there was also a distinction in goals both over time

10  and among alleged co-conspirators.  A conspiracy is a single agreement with a single set of

11  goals.  *See United States v. Broce*, 488 U.S. 563, 570–71 (1989) ("A single agreement to commit

12  several crimes constitutes one conspiracy. By the same reasoning, multiple agreements to

13  commit separate crimes constitute multiple conspiracies."); *Braverman v. United States*, 317

14  U.S. 49, 53 (1942) ("[T]he precise nature and extent of the conspiracy must be determined by

15  reference to the agreement which embraces and defines its objects.").  Here the goals vary over

16  time and among alleged co-conspirators.

17         Even accepting the indictment's allegations as true, they lack a unified set of goals

18  characteristic of a single agreement. The early activities are allegedly aimed at deceiving HP to

19  prevent public allegations.  The later activities do not evidence an intent to deceive HP at all, and

20  are apparently focused on a separate DOJ investigation that occurred after HP's allegations had

21  been made public.

22         In a similar case involving an indictment charging conspiracy to commit insider trading

23  and conceal the existence of that trading, the court held that obstructing an SEC investigation

24  was a separate conspiracy because there is "a quantum of difference" between the concealment

25  inherent in an undetected conspiracy and "a conspiracy to obstruct justice once the conspiracy is

26  detected and comes to an end."  *United States v. Marcus Schloss & Co.*, 710 F. Supp. 944, 949

27  (S.D.N.Y. 1989); *see also Gordon*, 844 F.2d at 1401 (holding that two conspiracies existed

28

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

1  because any conspiracy to obstruct a grand jury investigation occurred "pursuant to a separate

2  agreement, and after [the witness] was subpoenaed by the grand jury").

3  Here, any pre-write-down conspiracy to avoid detection came to an end on November 20,

4  2012, when HP publicly lodged its false allegations of fraud against Autonomy's prior

5  management.  After HP's public allegations of misconduct and referrals to law enforcement,

6  there was no longer any purpose "to cover up, conceal, . . . and otherwise obstruct

7  investigations" of the scheme now being publicly contested.  *See* SI ¶ 33.  Thus, in the "absence

8  of proof of an express original agreement on the part of the conspirators to commit and suborn

9  perjury before [a qualifying department or agency] if the conspiracy was detected," *Marcus*

10 *Schloss*, 710 F. Supp. at 950, the post-November 20, 2012 allegations cannot form part of the

11 same alleged pre-November 20, 2012 obstruction conspiracy.

12 In addition to the distinct goals during different time periods, the allegations also indicate

13 distinct goals among co-conspirators.  In order to qualify as objects of a single conspiracy, goals

14 must be shared and agreed upon by the co-conspirators.  *See United States v. Hitt*, 249 F.3d

15 1010, 1019 (D.C. Cir. 2001) (holding that diverting export-controlled machine parts within

16 China was not part of conspiracy to export parts from USA because the U.S. co-conspirators did

17 not "share[] the separate purpose . . . to divert [those tool] . . . [after] the export licenses were

18 issued"); *United States v. Varelli*, 407 F.2d 735, 744 (7th Cir. 1969) (holding that two hijackings

19 were separate conspiracies because one conspirator "did not contemplate a series of hijackings in

20 which all would partake" but rather "a single transaction with a single purpose").  Here,

21 Dr. Lynch transferring funds from one account to another in 2011–2012 was of no interest to any

22 co-conspirator and did not inure to their benefit.  Similarly, Mr. Chamberlain had no

23 involvement or interest in the formation of Invoke or Dr. Lynch's purchase of Mr. Hussain's

24 shares in an Invoke affiliate.  These acts seem to be tacked onto an unrelated alleged conspiracy

25 in order to combine disparate strands of alleged conduct and evade statute of limitations

26 protections.

27 Because there is a clear disconnect in both time and goals, this factor weighs in favor of a

28 finding of multiple conspiracies.

17                    Case No. 3:18-cr-00577-CRB
DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

1

### 5.    The Proper Remedy Is Dismissal of Count Seventeen

2

Because Dr. Lynch has raised the duplicity violation before trial, the Court should

3   dismiss Count Seventeen.  *See, e.g.*, *Hardy*, 762 F. Supp. at 1410 (dismissing duplicitous count

4   before trial); *see also United States v. Pacilio*, No. 18-cr-48, 2020 WL 12919458, at *4 (N.D. Ill.

5   Oct. 16, 2020) ("[T]he proper remedy is dismissal of the duplicitous count, allowing the

6   government to seek a clearer superseding indictment."); *United States v. Bessigano*, No. 2:08-cr-

7   110, 2008 WL 4833110, at *3 (N.D. Ind. Nov. 4, 2008) ("[B]ecause defendant properly raised

8   this issue before trial, the proper remedy is dismissal of the duplicitous count, rather than trying

9   to clarify the indictment via jury instructions.").  Dismissal of the duplicitous count is the most

10   efficient remedy and the only remedy that would "preserve the defendants' Fifth and Sixth

11   Amendment rights" to be tried only upon the single conspiracy agreed upon and charged by a

12   grand jury and to unanimity.  *Hardy*, 762 F. Supp. at 1410; *see also Russell v. United States*, 369

13   U.S. 749, 770 (1962) ("A grand jury, in order to [indict], must necessarily determine what [fact

14   establishes an element].  To allow the prosecutor, or the court, to make a subsequent guess as to

15   what was in the minds of the grand jury at the time they returned the indictment would deprive

16   the defendant of a basic protection which the guaranty of the intervention of a grand jury was

17   designed to secure.").  Any attempt to persevere with the same flawed indictment would

18   undoubtedly require special verdict form, *see United States v. Carman*, 577 F.2d 556, 568 (9th

19   Cir. 1978) (vacating conspiracy conviction because one of the object offenses was improperly

20   defined and court did not use special verdict form), and lengthy jury instructions for each object

21   offense.

22

In the alternative, the Court should order the government to elect the conspiracy on which

23   it will proceed and strike the remaining objects and overt acts as surplusage.  *See, e.g.*, *United*

24   *States v. Bonds*, No. 07-cr-732, 2008 WL 618911, at *2 (N.D. Cal. Mar. 4, 2008); *United States*

25   *v. Bonnar*, No. 08-cr-197, 2008 U.S. Dist. LEXIS 88492 at *6–7 (W.D. Wash. Oct. 1, 2008).

26

27

28

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    The Court Should Dismiss Two Objects from Count Seventeen for Failure to State an Offense**

Section 371 prohibits an agreement only if the agreed-upon conduct would constitute a federal crime.  A single conspiratorial agreement can have multiple objects, but "each object alleged must constitute a federal offense."  *United States v. Manarite*, 44 F.3d 1407, 1414 (9th Cir. 1995); *see also United States v. Trevino*, 7 F.4th 414, 424 (6th Cir. 2021) ("[T]he fundamental characteristic of a conspiracy is a joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of [the underlying substantive] criminal offense.'" (quoting *Ocasio,* 578 U.S. at 286 (alterations in original))).

Here, however, the overt acts in Count Seventeen reveal that even if an overarching agreement existed, it was an agreement to engage in conduct that does not qualify as a conspiracy to obstruct proceedings in violation of 18 U.S.C. § 1505 or a conspiracy to engage in monetary transactions in violation of 18 U.S.C. § 1957.  Because the allegedly agreed-upon conduct does not constitute a violation of the listed statutes, the agreement does not constitute conspiracy to violate those statutes.  *See, e.g.*, *Kelly v. United States*, 140 S. Ct. 1565, 1571 n.1 (2020) ("If there was property fraud here, there was also conspiracy to commit it. But if not, not."); *United States v. Elkins*, 885 F.2d 775, 781 (11th Cir. 1989) ("Because the object of the scheme to defraud the government alleged in the indictment is not sufficient to violate section 1343, that scheme does not constitute conspiracy to commit a substantive offense . . . .").  The Court should therefore dismiss those two objects of the conspiracy and strike the two statutes (18 U.S.C. § 1505 and 18 U.S.C. § 1957) from SI ¶ 32.

1.    Count Seventeen Fails to Plead a Conspiracy to Obstruct a Proceeding under 18 U.S.C. § 1505

Count Seventeen includes six overt acts that bear a potential relationship to "a conspiracy to obstruct proceedings before departments, agencies, and committees," in violation of 18 U.S.C. § 1505: overt acts (g) (destruction of hard drives), (h) (causing erasure of Chamberlain's laptop), (i) (attempted removal of laptop of another co-conspirator), (l) (false and misleading statements in an interview with counsel for HP), (m) (refusal to return property to HP), and (n) (theft of

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  HP's data).  *See* SI ¶¶ 32–34.  Even if those acts had been part of an agreement between Dr.

2  Lynch and Mr. Chamberlain, however, that agreement would not have qualified as a conspiracy

3  to violate § 1505.

4      Section 1505 requires "[1] that an agency of the United States government was

5  conducting a proceeding; [2] that the defendant was aware of that proceeding; and [3] that the

6  defendant intentionally interfered with, or obstructed the course of, that proceeding."  *United*

7  *States v. Bhagat*, 436 F.3d 1140, 1148 (9th Cir. 2006).  Instead of pleading an agreement to

8  engage in acts that "intentionally interfere[] with, or obstruct[] the course of" a pending U.S.

9  government proceeding, the SI pleads a series of acts that occurred outside of the United States

10 when no qualifying U.S. government proceeding was pending.  Therefore, even if the defendants

11 had agreed to commit the acts in the SI, they did not conspire to violate 18 U.S.C. § 1505.

12          a.    The Superseding Indictment Does Not Allege a Qualifying
                 "Pending Proceeding" Because There Was None

13 Under § 1505, the obstructed proceeding must have been pending at the time of the

14 obstructive act(s).  18 U.S.C. § 1505 ("Whoever corruptly . . . obstructs, or impedes or endeavors

15 to influence, obstruct, or impede the due and proper administration of the law under which any

16 *pending proceeding is being had* before any department or agency of the United States . . . .");

17 *United States v. Price*, 951 F.2d 1028, 1030–31 (9th Cir. 1991); *United States v. Sprecher*, 783 F.

18 Supp. 133, 163 (S.D.N.Y. 1992), *aff'd*, 988 F.2d 318 (2d Cir. 1993).[10]

19 In the absence of a qualifying "pending proceeding," *no* act can violate § 1505, and no

20 agreement can be a conspiracy to violate § 1505.  While Count Seventeen of the SI lists several

21 allegedly obstructive overt acts, it identifies no "pending proceeding," generically referring

22 outside of the overt acts paragraph to "investigations of the scheme to defraud" and "official

---

[10] The FBI, U.S. Attorney's Office, and grand jury do not qualify as a "department or agency of the United States."  *See, e.g.*, *United States v. McDaniel*, No. 12-CR-0028, 2013 WL 3993983, at *2 (N.D. Ga. Jan. 29, 2013) (FBI investigation is not a "proceeding" under § 1505); *United States v. Wright*, 704 F. Supp. 613 (D. Md. 1989); *cf.* 18 U.S.C. § 1515 (defining the term "official proceeding" to include "a Federal grand jury" for the purposes of 18 U.S.C. §§ 1512, 1513 but not § 1505).

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

proceedings." SI ¶ 33.  The absence of specifics in the SI is not a mere failure of form; rather, the government had no pending proceeding to name because there was no pending proceeding prior to at least late 2012, and the formal order authorizing the SEC's investigation into this matter—the only proceeding that could plausibly qualify under § 1505—is dated November 29, 2012.  *See* Decl. of Nicholas Silverman.  Even assuming that the SI pleaded Dr. Lynch's awareness of that investigation—which it does not[11]—not one of the purported overt acts in furtherance of the conspiracy both succeeded the initiation of that investigation and was intended to obstruct it.

      b.  *The Obstruction Statute Does Not Apply Extraterritorially*

     Count Seventeen alleges an agreement to engage in conduct that took place outside of the United States.  Because § 1505 does not apply to conduct outside of the United States, an agreement to engage in that conduct is not a conspiracy to violate § 1505.

     In evaluating whether the presumption against extraterritoriality is rebutted by § 1505, the Court applies the two-part *RJR Nabisco* test.  *See* Motion to Dismiss Counts One through Sixteen.  As to the first step, there is no "clear, affirmative indication" in the text of § 1505 that it applies extraterritorially.  *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2101 (2016).  To the contrary, whereas other sections within the same chapter of the U.S. Code specifically state that they apply extraterritorially, *see* 18 U.S.C. § 1512(h) ("There is extraterritorial Federal jurisdiction over an offense under this section."); 18 U.S.C. § 1513(d) ("There is extraterritorial Federal jurisdiction over an offense under this section."), § 1505 intentionally omits any such clause, evincing congressional intent to apply § 1505 only domestically.  *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010) (holding that § 10(b) of the Exchange Act lacks extraterritorial effect because, among other things, § 30(a) of the same act "contains what § 10(b)

---

[11] The defendant's "aware[ness]" of a pending proceeding is an essential element of a § 1505 charge.  *United States v. Bhagat*, 436 F.3d 1140, 1148 (9th Cir. 2006) (defendant must be "aware of th[e] proceeding").  Yet here, there is no allegation that in January 2013 (*see* overt act (m)) or February 2013 (*see* overt act (n)), Dr. Lynch or the other alleged co-conspirators were aware of any pending official proceeding; thus, they could not have had the intent required by the statute.

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   lacks: a clear statement of extraterritorial effect"); *see also, e.g.*, *Liu Meng-Lin v. Siemens AG*,

2   763 F.3d 175, 181 (2d Cir. 2014) (holding that "the antiretaliation provision [of the Dodd-Frank

3   Act], enjoying no . . . explicit grant of extraterritorial application, has none," in light of the fact

4   that "other sections of the Dodd–Frank Act that do have some extraterritorial application").

5        At the second step of the *RJR Nabisco* test, the Court asks whether "the conduct relevant

6   to the statute's focus occurred in the United States." 136 S. Ct. at 2101. Here, *all* of the

7   allegedly obstructive conduct occurred outside of the United States, and the SI therefore

8   impermissibly targets foreign conduct. It is not enough that a U.S. proceeding might be subject

9   to the effects of foreign conduct, because Step Two is concerned with the location of "conduct,"

10  not the effects of that conduct. *See Abitron Austria GmbH v. Hetronic Int'l Inc.*, 600 U.S. 412,

11  421–25 (2023) (holding that Lanham Act could not apply to non-U.S. conduct with effects in the

12  United States because step two turns on the location of the defendant's alleged conduct

13  (intellectual-property-infringing sales in Europe) and not the effects of that conduct (customer

14  confusion in the United States)).

15       Although *United States v. Bowman*, 260 U.S. 94, 98 (1922) held that the presumption

16  against extraterritoriality did not necessary apply to criminal statutes involving obstruction or

17  fraud by a U.S. citizen against the U.S. government, that holding does not apply here because Dr.

18  Lynch is not a U.S. citizen. *Bowman*'s holding hinged on the fact that the "three defendants

19  were . . . citizens of the United States" charged with a "crime against the government to which

20  they owe allegiance," and the Court declined to answer "what, if any, jurisdiction the District

21  Court below has to punish" the non-citizen defendant. *Id.* at 102–03. In the Ninth Circuit,

22  *Bowman*'s exception to the presumption against extraterritoriality has been applied only to U.S.

23  citizens. *See, e.g.*, *United States v. Sidorenko*, 102 F. Supp. 3d 1124, 1129–30 (N.D. Cal. 2015)

24  (characterizing *Bowman* as "hardly a ringing endorsement for the application of American

25  criminal laws to foreign actors," and declining to apply the wire fraud and bribery statutes to a

26  non-U.S. citizen acting abroad); *see also Skiriotes v. Florida*, 313 U.S. 69, 73–74 (1941)

27  (directing that *Bowman*'s exception "is to be construed as *applicable to citizens of the United*

28  *States* upon the high seas or in a foreign country") (emphasis added); *United States v. Layton*,

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

855 F.2d 1388, 1395 (9th Cir. 1988) ("When a statute describes a crime which is not logically dependent on its locality but which, instead, injures the government wherever the crime occurs, the statute will be applied to U.S. citizens who violate its provisions while outside United States territory.").

Here, Dr. Lynch is, as alleged, "a resident of the United Kingdom," SI ¶ 4, as well as a citizen of the United Kingdom.  Neither Mr. Chamberlain (*see* SI ¶ 5), nor any other co-conspirator in the purported obstruction, is alleged to be a U.S. resident or citizen.  Because no § 1505 charge could lie based on their actions, an agreement to engage in those actions does not constitute a conspiracy to violate § 1505.

*c.*   *Even as Alleged, Overt Act (m) Was Not Obstructive and Should Be Struck*

Overt act (m)—copying documents to a USB device (while leaving the originals as is)—is simply not obstructive and cannot further obstruction under § 1505 as a matter of law. Copying documents does not influence, obstruct, or impede the due and proper administration of the law.  Copying documents is different in kind from the Ninth Circuit's previous cases interpreting what qualifies as obstruction under § 1505: threatening a government employee (*United States v. Price*, 951 F.2d 1028, 1032 (9th Cir. 1991)), providing false information in response to a subpoena (*United States v. Laurins*, 857 F.2d 529, 536 (9th Cir. 1988)), and making false statements to investigators (*Bhagat*, 436 F.3d at 1149).  Because making copies is not obstructive, an agreement to make copies does not constitute a conspiracy to violate § 1505.

### 2.   Count Seventeen Fails to Plead a Conspiracy to Commit Money Laundering Under 18 U.S.C. § 1957

Count Seventeen alleges an agreement to conduct five monetary transactions, SI ¶¶ 34.a–.d, .j, but those monetary transactions would not violate 18 U.S.C. § 1957, and an agreement to engage in the transactions therefore would not constitute a conspiracy to violate § 1957.  Section 1957 only prohibits transactions that "take[] place in the United States," 18 U.S.C. § 1957(d)(1), or if outside the United States, where the defendant is a "United States person." 18 U.S.C. § 1957(d)(2).  Section 1957 expressly carves out and does not apply to a non-U.S. person outside

23                    Case No. 3:18-cr-00577-CRB

**DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

the United States, but that is all Count Seventeen alleges.  As a result, the conspiracy allegation fails.

Specifically, overt acts (a), (b), (c), and (d) allege that on October 7, 2011, Dr. Lynch executed four monetary transactions, each in the amount of 100,000,000 British pounds sterling. SI ¶ 34.a–.d.  Overt act (j) alleges that on June 1, 2012, Dr. Lynch executed an additional transaction in the amount of 20,000,000 British pounds sterling.  SI ¶ 34.j.  These transfers, by a U.K. person, acting in the U.K., and involving foreign currency held at foreign banks, cannot constitute a violation of § 1957 because they are not alleged to have "take[n] place in the United States" or to have been conducted by a "United States person." *Id*. § 1957(d)(1)–(2).  Because the conduct alleged could not constitute a crime even if completed, the money laundering object of the conspiracy must be dismissed.

Moreover, because § 1957(d) expressly precludes criminal liability for non-U.S. persons executing transfers outside of the United States, such non-U.S. persons cannot be charged with conspiring to commit that offense. *See United States v. Hoskins*, 902 F.3d 69, 96–97 (concluding that the government is barred from using a conspiracy statute to charge a foreign national when the underlying statute's territorial limitations do not reach the offense charged); *see also Gebardi v. United States*, 287 U.S. 112, 123 (1932).  In *Hoskins*, the court observed that "[b]ecause some provisions of the FCPA have extraterritorial application, 'the presumption against extraterritoriality operates to limit those provisions to their terms.'"  902 F.3d at 96 (quoting *RJR Nabisco*, 136 S. Ct. at 2102) (internal alterations omitted).  The court therefore concluded that when the defendant did not satisfy those "provisions" with "extraterritorial application," "[t]he government may not expand the extraterritorial reach of the FCPA by recourse to the conspiracy . . . statute[]." *Id.* at 97.  So too here.  Section 1957 states the terms under which it has extraterritorial jurisdiction.  With the SI having failed to meet those terms, the government may not expand the statute's reach by recourse to the conspiracy statute.

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

## IV.    CONCLUSION

2

For the reasons stated herein, Dr. Lynch respectfully requests that the Court dismiss Count

3

Seventeen of the Superseding Indictment.  In the alternative, the Court should dismiss Count

4

Seventeen insofar as it alleges a conspiracy to violate 18 U.S.C. § 1957 and § 1505.

5

Dated: September 29, 2023

6

Respectfully submitted,

7

8

*/s/ Reid Weingarten*
Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)

9

Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)

10

Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)

11

**Steptoe & Johnson LLP**

12

1114 Avenue of the Americas
New York, NY 10036

13

Telephone: (212) 506-3900

14

15

Jonathan M. Baum (SBN: 303469)
**Steptoe & Johnson LLP**

16

One Market Street
Steuart Tower, Suite 1070

17

San Francisco, CA 94105
Telephone: (510) 735-4558

18

jbaum@steptoe.com

19

Christopher J. Morvillo (Admitted Pro Hac Vice)

20

Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)

21

**Clifford Chance US LLP**

22

31 West 52nd Street
New York, NY 10019

23

Telephone: (212) 878-3437

24

christopher.morvillo@cliffordchance.com

25

*Attorneys for Defendant*
*Michael Richard Lynch*

26

27

28

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO DISMISS COUNT 17 OF THE
SUPERSEDING INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF