# EXHIBIT H

1  ALEX G. TSE (CABN 152348)
   Acting United States Attorney

2  BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  ADAM A. REEVES (NYBN 2363877)
   ROBERT S. LEACH (CABN 196191)
5  WILLIAM FRENTZEN (LABN 24421)
   Assistant United States Attorneys

6
   450 Golden Gate Avenue, Box 36055
7  San Francisco, California 94102-3495
   Telephone: (415) 436-7534
8  Fax: (415) 436-7234
   Robert.Leach@usdoj.gov
9  Adam.Reeves@usdoj.gov
   William.Frentzen@usdoj.gov

10
   Attorneys for United States of America
11
                          UNITED STATES DISTRICT COURT
12
                        NORTHERN DISTRICT OF CALIFORNIA
13
                             SAN FRANCISCO DIVISION
14
15  IN RE GRAND JURY INVESTIGATION      )  Case No. CR 14-90491 MISC EMC
    NO. 2012R02242,                     )
                                        )  **UNDER SEAL**
16                                      )
                                        )  THE UNITED STATES' *EX PARTE*
17                                      )  APPLICATION FOR AN ORDER
                                        )  SUSPENDING THE RUNNING OF
18                                      )  THE STATUTE OF LIMITATIONS
                                        )  PURSUANT TO 18 U.S.C. § 3292
19  _____)

20        On January 29, 2016, the Court issued an Order Suspending the Running of the Statute of

21  Limitations Under 18 U.S.C. § 3292 in the above-referenced grand-jury investigation. The Court found

22  that an official request for evidence of offenses had been made to the Vatican City State and that it

23  reasonably appeared that such evidence was in the Vatican City State. The Court also found that an

24  official request for evidence of offenses had been made to Italy and that it reasonably appeared that such

25  evidence was in Italy. The Court ordered that the running of the statute of limitations be suspended

26

27

28  THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE RUNNING OF THE STATUTE OF LIMITATIONS
    PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC
                                        1

1 │ beginning on August 10, 2015 (the date on which the official request to the Vatican City State was

2 │ made) and beginning December 23, 2015 (the date on which the official request to Italy was made).[1]

3 │ On June 7, 2016, the Court issued a Second Order Suspending the Running of the Statute of

4 │ Limitations Under 18 U.S.C. § 3292. The Court found that an official request for evidence of offenses

5 │ had been made to the United Kingdom and that it reasonably appeared that such evidence was in the

6 │ United Kingdom. The Court ordered that the running of the statute of limitations be suspended

7 │ beginning on January 29, 2016 (the date on which the official request to the United Kingdom was

8 │ made).

9 │ The United States now respectfully applies for a third suspension order, based on an official

10 │ request for assistance to the United Kingdom on May 1, 2017. This application is supported by the July

11 │ 27, 2018 Declaration of AUSA Robert S. Leach (concurrently filed) and the legal authorities discussed

12 │ below. Because an official request has been made for evidence of offenses in the United Kingdom and

13 │ it reasonably appears that such evidence is in the United Kingdom, the Court should suspend the running

14 │ of the statute of limitations. In addition, because this application relates to an ongoing grand-jury

15 │ investigation, which is secret pursuant to Federal Rule of Criminal Procedure 6(e), the United States

16 │ respectfully requests that the Court seal this application, the concurrently filed declaration, and the

17 │ concurrently submitted [Proposed] Third Order Suspending the Running of the Statute of Limitations

18 │ Under 18 U.S.C. § 3292. *See* Criminal Local Rule 6-2(b).

19 │ **FACTUAL BACKGROUND**

20 │ **I.    The Investigation**

21 │ A grand jury in this district (Grand Jury 17-3) is conducting an investigation of former senior

22 │ officers of Autonomy Corporation plc ("Autonomy"), including former Chief Executive Officer Michael

23 │ Lynch, former Vice President of Finance Stephen Chamberlain, and former Chief Operating Officer and

24 │

25 │ _____
[1] The Court's January 29, 2016 Order Suspending the Running of the Statute of Limitations Under
18 U.S.C. § 3292 is attached as Exhibit 6 to the July 27, 2018 Declaration of AUSA Robert S. Leach in

26 │ Support of the United States' *Ex Parte* Application for an Order Suspending the Running of the Statute
of Limitations Pursuant to 18 U.S.C. § 3292 ("July 27, 2018 Leach Decl."). The Court's June 7, 2016

27 │ Second Order Suspending the Running of the Statute of Limitations Under 18 U.S.C. § 3292 is attached
as Exhibit 7.

28 │

USAO 00003292

1  General Counsel Andrew Kanter, for the following possible criminal offenses: 15 U.S.C. §§ 78j(b) &

2  78ff (securities fraud), 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343

3  (wire fraud), 18 U.S.C. § 1348 (securities fraud), and 18 U.S.C. § 1349 (attempt and conspiracy). *See*

4  July 27, 2018 Leach Decl. ¶ 2.

5        Autonomy was a software developer with dual headquarters in the United Kingdom and San

6  Francisco, California. *See* January 29, 2016 Declaration of AUSA Robert S. Leach in Support of the

7  United States' *Ex Parte* Application for an Order Suspending the Statute of Limitations Pursuant to 18

8  U.S.C. § 3292 ("Jan. 29, 2016 Leach Decl.") ¶ 4 (attached as Exhibit 1 to the July 27, 2018 Declaration).

9  Prior to October 2011, Autonomy was a publicly traded company whose shares were listed on the

10  London Stock Exchange. *Id.* Autonomy issued quarterly and annual financial statements that were

11  disseminated to the public by means of interstate and foreign wires. *Id.* In or about October 2011,

12  Hewlett-Packard Company, headquartered in Palo Alto, California, bought Autonomy for approximately

13  $11 billion. *Id.* HP acquired Autonomy by means of a cash offer by its wholly owned subsidiary,

14  Hewlett-Packard Vision B.V. ("HP Vision"), to buy the outstanding shares of Autonomy for £25.50

15  ($42.11) per share. Among other things, the grand jury is investigating whether executives at Autonomy

16  fraudulently inflated Autonomy's revenues in its financial statements and made false and misleading

17  statements to HP to induce it to buy Autonomy. *See* July 27, 2018 Leach Decl. ¶ 2.

18        Sushovan Hussain, Autonomy's former Chief Financial Officer, was indicted and found guilty of

19  numerous offenses relating to his work at Autonomy; to date, no indictment has been returned with

20  respect to Lynch, Chamberlain, and Kanter. *See* July 26, 2018 Leach Decl. ¶ 2.[2] The grand jury

21

22  [2] On November 10, 2016, a prior grand jury (Grand Jury 16-1) returned an indictment against
Hussain charging him with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C.
23  § 1349, and fourteen counts of wire fraud, in violation of 18 U.S.C. § 1343. *See* Indictment, *United
States v. Hussain*, CR 16-462 CRB (N.D. Cal. Nov. 10, 2016), ECF No. 1. According to the indictment,
24  Hussain engaged in a scheme to defraud purchasers and sellers of securities of Autonomy and HP about
the true performance of Autonomy's business, its financial condition, and its prospects for growth. *Id.*
25  On May 4, 2017, the grand jury returned a superseding indictment, adding a count of securities fraud, in
violation of 18 U.S.C. § 1348. *See* ECF No. 52. Hussain's case proceeded to trial, and on April 30,
26  2018, a petit jury found him guilty on each count. *See* ECF No. 394. Hussain's sentencing is scheduled
for October 24, 2018. *See* ECF No. 418. Grand Jury 16-1 expired on or about November 16, 2017. The
27  government has been presenting evidence to Grand Jury 17-3 since on or about March 15, 2018. *See*
July 27, 2018 Leach Decl. ¶ 2

28  THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE RUNNING OF THE STATUTE OF LIMITATIONS
PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC

3

1 continues to investigate the involvement of Lynch, Chamberlain, and Kanter in the scheme to defraud.

2 *Id.*

3 **II.    Prior Official Requests**

4         There have been several official requests to foreign governments for evidence in this matter.

5         On August 10, 2015, the Embassy of the United States of America to the Holy See delivered a

6 Diplomatic Note, No. 143-2015, to the Secretariat of State for the Holy See and the Vatican City State.[3]

7 *See* Jan. 29, 2016 Leach Decl. ¶ 25 & Ex. U.  The Diplomatic Note stated that "the United States

8 Attorney's Office (USAO) and the Federal Bureau of Investigation (FBI) are currently investigating the

9 financial reporting of Autonomy . . . . As part of the investigation, the USAO and FBI are requesting

10 information concerning a potential transaction in 2010 [between Autonomy and] the Vatican Apostolic

11 Library [BAV].  The Embassy respectfully asks if Monsignor Cesare Pasini, Prefect of the Vatican

12 Apostolic Library, would be willing to speak to investigators from the USAO and FBI about this

13 investigation." *Id.*  The Diplomatic Note attached a list of questions and documents the USAO and FBI

14 wished to discuss. *Id.*

15         On December 23, 2015, the Office of International Affairs of the Department of Justice ("OIA")

16 made an official request to the Central Authority of Italy for legal assistance in obtaining evidence,

17 pursuant to the 2006 U.S.-Italy Mutual Legal Assistance Instrument ("Instrument").  *See* Jan. 29, 2016

18 Leach Decl. ¶¶ 28 & 29 & Exs. X & Y.  The request sought business records, including agreements,

19 correspondence, and emails, from a number of Autonomy counter-parties (Sales Consulting, Auxilium,

20 Red Ventures, Postecom, and Poste) which would evidence whether Autonomy appropriately recorded

21 revenue on the transactions. *Id.*

22         On January 14, 2016, the Embassy of the United States of America to the Holy See delivered a

23 Diplomatic Note, No. 3-2016, to the Secretariat of State, enclosing a Request for International Judicial

24 Assistance from OIA. *See* Jan. 29, 2016 Leach Decl. ¶ 27 & Ex. U.  The Request sought the production

25 of records of BAV relating to Autonomy during the period December 2009 to October 2011. *Id.*

26

27 ───────────────
   [3]    There is no treaty between the Vatican City State and the United States providing for mutual
   legal assistance.

28 THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE RUNNING OF THE STATUTE OF LIMITATIONS
   PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC
                                                    4

1    On January 29, 2016, OIA submitted a Request for Assistance in the Investigation of Autonomy
2    Corporation to the Central Authority of the United Kingdom (the "UK MLAT"). *See* June 7, 2016
3    Declaration of AUSA Robert S. Leach in Support of the United States' *Ex Parte* Application for an
4    Order Suspending the Running of the Statute of Limitations Pursuant to 18 U.S.C. § 3292 ("June 7,
5    2016 Leach Decl.") ¶ 19 & Ex. M (attached as Exhibit 2). The UK MLAT indicated the request was
6    made pursuant to the 1994 Treaty of Mutual Legal Assistance in Criminal Matters between the United
7    States of America and the United Kingdom, as amended. The UK MLAT sought the production of
8    (1) business records from Capita Registrars Limited ("Capita"), a company in the United Kingdom that
9    was engaged to act as a "receiving agent" in connection with the HP acquisition and handle payment of
10   acquisition funds to Autonomy shareholders; (2) bank and business records from the Royal Bank of
11   Scotland plc ("RBS"), the bank that investigators believed Capita used to establish accounts for the HP
12   acquisition; (3) telephone records relating to phone numbers investigators believed Hussain used during
13   the time period of the alleged fraud scheme; and (4) bank and brokerage records from various financial
14   institutions and investment firms in the United Kingdom, which investigators believed the subjects used
15   to receive money and property. *Id.*

16   In addition to these official requests, the United States has gathered additional evidence from and
17   conducted numerous witness interviews in foreign countries. *See* July 27, 2018 Leach Decl. ¶ 5.

18   **III.    The May 1, 2017 Official Request for Evidence in the United Kingdom**

19   On May 1, 2017, OIA submitted a Supplemental Request for Assistance in the Investigation of
20   Autonomy Corporation to the Central Authority of the United Kingdom (the "Supplemental UK
21   MLAT"). *See* July 27, 2018 Leach Decl. ¶ 6 & Ex. 3. The Supplemental UK MLAT indicated the
22   request was made pursuant to the 1994 Treaty of Mutual Legal Assistance in Criminal Matters between
23   the United States of America and the United Kingdom, as amended. *Id.*

24   The Supplemental UK MLAT requested the production of (1) documents related to a "data
25   room" established by Autonomy's UK counsel Slaughter and May in connection with HP's due
26   diligence prior to acquisition of Autonomy and (2) documents prepared by Ernst & Young LLP in the
27

28   THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE RUNNING OF THE STATUTE OF LIMITATIONS
     PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC

USAO 00003295

1  United Kingdom in connection with an audit of the financial statements of Autonomy Systems Limited
2  ("ASL"), an Autonomy subsidiary. *Id.*

3          As detailed in the Supplemental UK MLAT, Autonomy engaged Slaughter and May, a UK law
4  firm, to advise it in connection with the potential HP acquisition. Slaughter and May established a
5  virtual "data room" to enable Autonomy to share documents with HP and its advisors. Between August
6  1, 2011, and the date of the acquisition (approximately October 3, 2011), Autonomy officers forwarded
7  documents to Slaughter and May to be uploaded into the data room. *See* July 27, 2018 Leach Decl. ¶ 6
8  & Ex. 3.

9          As also detailed in the Supplemental UK MLAT, Ernst & Young LLP, a UK accounting firm
10  was hired to audit the financial statements of ASL, as ASL was required to file accurate audited
11  financial statements in the United Kingdom. Ernst & Young performed extensive audit work, and by
12  December 2013, it had incurred approximately £1.6 million in fees. On or about January 31, 2014, ASL
13  issued its Report and Financial Statements for the 10 month-period ending October 31, 2011 (the ASL
14  Report), which restated ASL's previously-issued financial statements for the year ending December 31,
15  2010, principally relating to the recognition of revenue and costs. As a result of the restatement, ASL's
16  revenue for the year ending December 31, 2010, was substantially reduced. The financial results in the
17  Report reflected adjustments for transactions by other Autonomy subsidiaries, which contributed to
18  Autonomy's overall revenue in 2010 and the first two quarters of 2011. The ASL Report thus quantified
19  the magnitude by which Autonomy's published annual and quarterly reports were misstated. *See* July
20  27, 2018 Leach Decl. ¶ 6 & Ex. 3.

21          The ASL Report included a report by Ernst & Young, signed by one of its partners, David Hales,
22  in which Ernst & Young stated that it could not express an opinion on the financial statements. Ernst &
23  Young listed various reasons for its disclaimer of opinion, including "[i]f additional information and
24  evidence had been available to the [Board of Directors of ASL], including information that might be
25  identified from the ongoing investigations, further adjustments might have been required to the reported
26  results." Ernst & Young also stated "[n]otwithstanding our disclaimer of an opinion on the financial
27  statements, in our opinion the information given in the [ASL] Report for the financial year for which the
28  THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE RUNNING OF THE STATUTE OF LIMITATIONS
    PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC
                                                6

1 financial statements are prepared is consistent with the financial statements." *See* July 27, 2018 Leach

2 Decl. ¶ 6 & Ex. 3.

3     On or about December 13, 2017, the United Kingdom produced responsive documents from

4 Slaughter and May. *See* July 26, 2018 Leach Decl. ¶ 7 & Exs. 4 & 5. The United States has not yet

5 received documents in response to the request for Ernst & Young documents. *See id.*

6 **LEGAL ANALYSIS**

7     Title 18, United States Code, Section 3292 provides:

8         (a)(1) Upon application of the United States, filed before return of an
indictment, indicating that evidence of an offense is in a foreign country,

9     the district court before which a grand jury is empaneled to investigate the
offense shall suspend the running of the statute of limitations for the

10     offense if the court finds by a preponderance of the evidence that an
official request has been made for such evidence and that it reasonably

11     appears, or reasonably appeared at the time the request was made, that

12     such evidence is, or was, in such foreign country.

13         (2) The court shall rule upon such application not later than thirty days
after the filing of the application.

14

15         (b) Except as provided in subsection (c) of this section, a period of
suspension under this section shall begin on the date on which the official

16     request is made and end on the date on which the foreign court or
authority takes final action on the request.

17

18         (c) The total of all periods of suspension under this section with respect to
an offense—

19

           (1) shall not exceed three years; and

20

21            (2) shall not extend a period within which a criminal case must be
initiated for more than six months if all foreign authorities take

22            final action before such period would expire without regard to
this section.

23

24         (d) As used in this section, the term "official request" means a letter
rogatory, a request under a treaty or convention, or any other request for

25     evidence made by a court of the United States or an authority of the
United States having criminal law enforcement responsibility, to a court or

26     other authority of a foreign country.

27

28 THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE RUNNING OF THE STATUTE OF LIMITATIONS
PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC

7

USAO 00003297

1    A suspension of the running of the statute of limitations is appropriate when the district court
2  finds, by a preponderance of the evidence, "that (1) an official request has been made for the evidence
3  and (2) it reasonably appears or appeared at the time the request was made that the evidence of the crime
4  is or was in a foreign country." *United States v. Jenkins*, 633 F.3d 788, 797 (9th Cir. 2011).[4] The
5  Section 3292 preponderance standard is quite broad and may be satisfied by "'something of evidentiary
6  value . . . tending to prove it reasonably likely that evidence of the charged offenses is in a foreign
7  country.'" *Id.* at 798 (alteration in original) (quoting *United States v. Trainor*, 376 F.3d 1325, 1332-34
8  (11th Cir. 2004)). For example, in *Jenkins*, the Ninth Circuit held that a suspension order was
9  adequately supported by the sworn declaration of a person knowledgeable about the grand jury
10 investigation and the evidence already recovered "tending to indicate that further evidence of the
11 offenses was abroad." *Id.*

12    An application under Section 3292 must be made prior to the return of an indictment. *See United*
13 *States v. Miller*, 830 F.2d 1073, 1076 (9th Cir. 1987) ("The statute itself specifies the only relevant time
14 the application must be made: 'before return of an indictment.'"). The period of suspension begins on
15 the date on which the official request was made. *See* 18 U.S.C. § 3292(b). "The statute plainly
16 contemplates that the starting point for tolling the limitations period is the official request for evidence,
17 not the date the § 3292 motion is made or granted." *United States v. Bischel*, 61 F.3d 1429, 1434 (9th
18 Cir. 1995); *see also Jenkins*, 633 F.3d at 799 ("[T]he only temporal requirements of a § 3292 application
19 are (1) that the official request for evidence in a foreign country be made before the statute of limitations
20 expires and (2) that the application for suspension be submitted to the district court before the indictment
21 is filed.").

22    The period of suspension ends on "the date on which the foreign court or authority takes final
23 action on the request." 18 U.S.C. § 3292(b). A foreign country is not deemed to have taken "final

---

[4]    The government is not required to demonstrate a grand jury is actively investigating a particular
offense or has already heard evidence before a tolling order may be issued. *See United States v.*
*DeGeorge*, 380 F.3d 1203, 1213-14 (9th Cir. 2004). The phrase "the district court before which a grand
jury is impaneled to investigate the offense" in Section 3292 is a venue element specifying the particular
court that may issue the tolling order. *Id.*

THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE RUNNING OF THE STATUTE OF LIMITATIONS
PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC
8

1  action" on an official request until it has made a "dispositive response" – that is, "disposition, up or

2  down, of each of the items" in the official request. *Bischel*, 61 F.3d at 1434; *see Jenkins*, 633 F.3d at

3  800; *United States v. Hagege*, 437 F.3d 943, 955-56 (9th Cir. 2006).

4         Here, the statutory elements for issuance of an order under Section 3292 are satisfied, based on

5  the Supplemental UK MLAT. The Supplemental UK MLAT, like prior requests in this matter, is an

6  official request because it is "a request under a treaty or convention" and a "request for evidence made

7  by . . . an authority of the United States having criminal law enforcement responsibility, to . . . [an]

8  authority of a foreign country." In addition, it reasonably appears that evidence of the offenses –

9  documents from the law firm engaged to represent Autonomy in the HP acquisition and documents from

10 an outside auditor reviewing an Autonomy subsidiary's restatement of its historical financial statements

11 – is located in the United Kingdom. Finally, no indictment has been returned against Lynch,

12 Chamberlain, or Kanter. For these reasons, the Court should find that an official request has been made

13 to the United Kingdom for evidence of the offenses under investigation and that it reasonably appears

14 that such evidence is in the United Kingdom. The Court should further suspend the statute of limitations

15 for such offenses beginning May 1, 2017, the date of the official request.

16                                          **CONCLUSION**

17        Based on the foregoing, the United States respectfully requests that the Court grant the

18 application and enter the proposed order suspending the statute of limitations under 18 U.S.C. § 3292

19 beginning on May 1, 2017, based on the Supplemental UK MLAT. Further, because the grand jury

20 investigation is ongoing, and premature disclosure of its existence, nature, and focus could have an

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE RUNNING OF THE STATUTE OF LIMITATIONS
   PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC
                                              9

USAO 00003299

1 | adverse impact on it, the United States requests that the Court file this application, the accompanying

2 | declaration, and any order under seal until further order of the Court.

3 | Dated:  July 27, 2018                                                    Respectfully Submitted,

4 |                                                                                    ALEX G. TSE
                                                                                       Acting United States Attorney
5 |

6 |

7 |                                                                                    ROBERT S. LEACH
                                                                                       ADAM A. REEVES
8 |                                                                                    WILLIAM FRENTZEN
                                                                                       Assistant United States Attorneys
9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 | THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE RUNNING OF THE STATUTE OF LIMITATIONS
     PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC
                                                            10