# EXHIBIT L



U.S. Department of Justice

Criminal Division
*Office of International Affairs*

JEC:CMP
182-

Washington, D.C. 20530

December 18, 2015

TO: Secretariat of State for the Holy See and Vatican City State

SUBJECT: Request for International Judicial Assistance in the Criminal Investigation of Autonomy Corporation

In accordance with the Note Verbale from the Secretariat of State of the Holy See and Vatican City State, dated October 8, 2015, the United States Department of Justice submits this Request for International Judicial Assistance. The United States Attorney for the Northern District of California (the prosecutor) is conducting an investigation into the activities of Autonomy Corporation plc ("Autonomy"), a software developer located in San Francisco, California, and the United Kingdom, which is suspected of defrauding Hewlett-Packard Company ("HP") into acquiring the outstanding shares of Autonomy in October 2011. Autonomy induced HP into acquiring Autonomy in part based on Autonomy's publicly reported financial results.

The prosecutor is investigating whether Autonomy misstated its publicly reported financial results by improperly recording revenue on software transactions when there was no final sale, when the purported purchaser lacked the ability or intent to pay, and when Autonomy retained effective control over the software sold. The prosecutor is investigating, among other things, whether Autonomy properly recorded revenue on the following transactions:

- A purported license agreement, dated March 31, 2010, whereby Autonomy purported to license software to Microtechnologies, LLC ("MicroTech"), an entity based in Virginia in the United States, for $11 million for resale to the *Biblioteca Apostolica Vaticana* ("BAV").

- A purported license agreement, dated March 31, 2010, whereby Autonomy purported to license software to Auxilium Tech S.R.L. ("Auxilium"), an Italian entity, for €2,500,000 for resale to BAV.

The prosecutor's investigation to date reveals that Autonomy was in discussions with BAV and an Italian entity, Postecom S.p.A., both before and after March 31, 2010, regarding a possible sale of Autonomy software to BAV to create a digital archive of materials in the Vatican Library. Those discussions included Monsignor Cesare Pasini and Mr. Luciano Ammenti. The prosecutor's investigation to date reveals that no agreement was reached to acquire Autonomy software.

The prosecutor therefore respectfully seeks business records, including agreements, correspondence, and emails, from BAV relating to its dealings with Autonomy, MicroTech (if any), Auxilium (if any), and Postecom, and testimony from Monsignor Cesare Pasini and Mr. Luciano Ammenti, which will enable the prosecutor to determine whether Autonomy appropriately recorded revenue on the transactions with MicroTech and Auxilium.

## CONFIDENTIALITY

The details of this U.S. criminal investigation are considered sensitive. Therefore, please treat this document, its contents, the fact that this request has been made and the results of its execution as confidential and do not disclose it publicly or share it with the subjects of the investigation. Also, please instruct all those who must be made aware of this request for

2

purposes of its execution that the request, its contents and subject matter are to be kept confidential and should not be shared with the subjects of the investigation nor disclosed publicly. Any transfer of information to others may seriously jeopardize the ongoing investigation.

## URGENCY

Please inform the executing authority that the U.S. authorities respectfully request that the records be produced no later than **April 30, 2016**.

## THE FACTS

Autonomy was a company incorporated in England and Wales with a registered office in Cambridge, United Kingdom. Its principal activities were software development and distribution. Autonomy maintained dual headquarters in San Francisco, California, and Cambridge, England, UK. Autonomy was a publicly traded company whose shares were listed on the London Stock Exchange and were bought, held, and sold by individuals and entities throughout the United States.

During the period 2009 through July 2011, Autonomy published financial results on a quarterly basis. It stated that its financial statements were prepared in accordance with International Financial Reporting Standards ("IFRS"). IFRS accounting requirements for revenue recognition are defined largely by International Accounting Standard 18 -- Revenue ("IAS 18"), which provides in relevant part as follows:

> 14. Revenue from the sale of goods shall be recognised when all the following conditions have been satisfied:
>
> (a) the entity has transferred to the buyer the significant risks and rewards of ownership of the goods;

3

(b) the entity retains neither continuing managerial involvement to the degree usually associated with ownership nor effective control over the goods sold;

(c) the amount of revenue can be measured reliably;

(d) it is probable that the economic benefits associated with the transaction will flow to the entity; and

(e) the costs incurred or to be incurred in respect of the transaction can be measured reliably.

Autonomy also stated or suggested that it followed Generally Accepted Accounting Principles in the United States for software revenue recognition.

Between 2009 and March 2010, Autonomy personnel, including its Chief Financial Officer Sushovan Hussain, Peter Menell, Julie Dolan, and Corrado Broli, were pursuing a transaction with BAV, whereby Autonomy software would be used to digitize and archive materials in the Vatican Library. In December 2009, Autonomy provided Monsignor Pasini and Mr. Ammenti draft proposals, but none were accepted.

In or around February 2010, Autonomy contemplated partnering with Postecom, a subsidiary of Poste Italiane, to deliver an archiving system to BAV. Documents reflect that Autonomy had discussions and/or meetings with Giovanni Cuturi of Postecom regarding a potential partnership. In late March, Autonomy was provided a letter of intent between Postecom and BAV, which generally stated that Postecom had had preliminary discussions about possible involvement in the archiving project and intended complete verification activities necessary to complete a collaboration proposal; suggested that BAV was seeking financing for the project; and provided for a 50-day period during which BAV would not sign a competing proposal. The letter stated that it did not bind Postecom or BAV to sign a collaboration agreement.

Autonomy had no binding agreement with BAV or Postecom on or before March 31, 2010. Nonetheless, on or about April 1, 2010, Autonomy approached a representative of

4

USAO 00003444

MicroTech, seeking MicroTech's agreement to pay Autonomy $11 million for software, purportedly for resale to BAV. On or about April 1, 2010, MicroTech signed and returned an $11 million purchase order. The purchase order was backdated to March 31, 2010. Autonomy recorded $11 million in revenue on the MicroTech transaction for the quarter ended March 31, 2010, which revenue was included in Autonomy's publicly reported results and enabled Autonomy to meet expectations of analysts following Autonomy stock.

In addition, on or after April 11, 2010, Autonomy entered into a purported license agreement with Auxilium, whereby Auxilium agreed to pay €2,500,000 for the right to sublicense Autonomy software to BAV and to pay €125,000 in support and maintenance. The agreement was backdated to March 31, 2010. Autonomy recorded license revenue in respect of the Auxilium transaction, which revenue was included in Autonomy's publicly reported results.

MicroTech appears to have no relevant contact with BAV and took no efforts to sell Autonomy software to BAV. Auxilium made no payments to Autonomy. Auxilium does not appear to have made any sale of the listed software to BAV.

From April 2010 through 2011, Autonomy continued to attempt to consummate a sale of software to BAV or an intermediary, but no deal was reached. Documents reflect that Monsignor Pasini may have met personally with Hussain and the CEO of Autonomy, Mike Lynch.

The United States Department of Justice reiterates its prior assurance that Monsignor Pasini, Luciano Ammenti and the Holy See and Vatican City State are not the targets of this investigation.

## THE OFFENSES

18 U.S.C. § 371.    Conspiracy to commit offense

18 U.S.C. § 1341.   Fraud by wire, radio, or television.

18 U.S.C. § 1348.   Securities and commodities fraud.

5

USAO 00003445

18 U.S.C. § 1349.    Attempt and conspiracy.

## NEED FOR ASSISTANCE

The prosecutor is seeking documents from BAV to determine whether it was appropriate for Autonomy to record revenue; whether Autonomy's financial statements were misstated; and whether Autonomy's senior officers intended to misstate Autonomy's financial statements. The prosecutor needs documents from BAV to determine whether, with respect to the purported sales, Autonomy genuinely transferred the significant risks and rewards of ownership of the goods; whether Autonomy retained continuing managerial involvement to the degree usually associated with ownership or effective control over the goods sold; and whether it was probable that the economic benefits associated with the transaction would flow to Autonomy.

### Documents Needed

A.  Business Records

1.  For the period December 2009 to October 2011, please provide complete, certified copies of the following records of BAV:

   a. All agreements, memoranda of understanding, and/or letters of intent with Autonomy, Postecom, Poste Italiane, Auxilium, and/or any purported reseller of Autonomy software regarding the sale/acquisition of Autonomy Software.

   b. All communications (including emails and correspondence) with Autonomy relating to any sale/acquisition of Autonomy software.

   c. All communications (including emails and correspondence) with the following entities relating to Autonomy: Postecom, Poste Italiane, Auxilium, and/or any purported reseller of Autonomy software.

   d. All communications relating to Lynch, including communications relating any

6

possible or actual financial donations, contributions, or funding to any foundation to benefit BAV or the Vatican City State.

### Testimony Needed

We respectfully request that the Vatican Tribunal interview Monsignor Pasini and Mr. Armentti and ask the following questions:

1. What is your full name?
2. What is your date of birth?
3. Where do you reside?
4. What is your title?
5. How long have you held that role?
6. In 2009, were you working on a project to digitize and archive material in the Vatican Library?
7. Please describe the project.
8. Were you considering Autonomy as a software provider in connection with the project?
9. Why?
10. Were you considering other hardware or software providers?
11. Please describe your interactions with Autonomy in 2009. With respect to meetings, conference calls, or other interactions, please describe: the location, the participants, and the terms discussed.
12. In 2009, did Autonomy provide BAV any written proposals? What did they consist of?
13. How were those received?
14. Did BAV reach an agreement with Autonomy by end of year 2009?
15. Why not?

7

USAO 00003447

16. How did you perceive the negotiations with Autonomy at that time – for example, were you optimistic a deal would be done?

17. Did you continue discussions with Autonomy between January 2010 and March 2010? Please describe those discussions. With respect to meetings, conference calls, or other interactions, please describe: the location, the participants, and the terms discussed.

18. How did Postecom become involved in the project?

19. With whom at Postecom did you have significant interactions?

20. Did BAV reach a binding agreement with Autonomy or Postecom by the end of March 2010?

21. If not, why not?

22. How did you perceive the negotiations with Autonomy and Postecom at that time – for example, were you optimistic a deal would be done?

23. Are you familiar with a firm called MicroTech? Auxilium? What are they?

24. Please describe your communications, if any, with Autonomy and/or Postecom regarding MicroTech and/or Auxilium.

25. Was there any discussion with Autonomy or Postecom about the use of resellers, such as MicroTech or Auxilium?

26. Were you aware that Autonomy had sold software to MicroTech or Auxilium for resale to BAV? If so, when did you learn that?

27. Did you ever have any intention of purchasing software from MicroTech? Auxilium?

28. What role, if any, did MicroTech and Auxilium have in the project?

29. After March 31, 2010, please describe your interactions with Autonomy regarding the project? Who did you meet with when? Was any firm agreement reached? Why not?

30. To the extent not already stated, please describe your communications with the following: (a) Mike Lynch, (b) Sushovan Hussain, (c) Andy Kanter, (d) Corrado Broli, (e) Pete Menell, (f) Julie Dolan, and (g) Giovanni Cututi.

8

USAO 00003448

31. During negotiations with Autonomy, was there any discussion of Autonomy, or any officer or director including Mike Lynch, making a contribution to the Vatican or affiliated entity? Was there discussion of creation of a foundation? What did that involve?

32. Describe all communications relating to MicroTech.

33. Did BAV end up using another vendor for the project? Why?

### PROCEDURES TO BE FOLLOWED

#### Authentication of Official Records

Under United States law, foreign official records are usually admitted into evidence at trial only after the party offering them proves, through a qualified witness (who either gives testimony at trial or provides a certification), that:

1. the records are true and accurate copies of records maintained by a foreign government office or agency;

2. the foreign government office or agency is authorized by foreign law to maintain them; and

3. the foreign official providing the records is doing so in his or her official capacity.

The testimony of a qualified witness may be unnecessary to establish authenticity where a qualified witness provides a certification containing essentially the same information noted above. Therefore, please:

1. Have the custodian (or other person authorized by law) providing the records attach an attestation that the records are true and correct, maintained by a governmental office or agency as authorized by law, and provided in his or her official capacity. In the event that the custodian (or other authorized person) does not have a formal certificate, stamp, or seal of attestation bearing this information, have him or her complete and attach an Attestation of Authenticity of Official Records (Form A, attached);

2. Have an official whose signature and official position are known to the U.S. Embassy certify as to the genuineness of the signature and official position of the custodian (or other authorized person) attesting that the records are official

9

records provided in an official capacity. Please then permit an appropriate official of the U.S. Embassy to attach a Final Certification as to the genuineness of the signature and official position of the official certifying as to the genuineness of the signature and official position of the custodian (or other authorized person) attesting that the records are official records provided in an official capacity (Form B, attached); and

3. Transmit the records with attachments to the Office of International Affairs or as otherwise arranged by the appropriate authorities of the Vatican with the Office of International Affairs.

If the custodian (or other person authorized by law) ordered to provide official records fails, after a diligent search, to discover such records, the we request that the custodian, acting in his official capacity, complete and attach an Attestation of Absence of Official Records (Form C, attached). We further request that this attestation be authenticated as prescribed above.

Authentication of Business Records

Under United States law, foreign business records are usually admitted into evidence in a proceeding in the United States after the party offering them proves, through the testimony at trial of a qualified witness, that:

1. the records produced are true and accurate copies of original records in the custody of the business;

2. the business made or kept the originals in the ordinary course of business and as a regular business practice; and

3. the originals were made, at or near the time of the occurrence of the transactions they record, by a person who either had knowledge of those transactions or received the information from a person with such knowledge.

The testimony of a qualified witness may be unnecessary at trial in the United States where that witness makes or provides a written declaration in a foreign jurisdiction that (1) contains essentially the same information noted in items 1 through 3 above, and (2) subjects the

10

USAO 00003450

witness to criminal penalties under the laws of the foreign jurisdiction if the declaration is false. Accordingly, please have the appropriate authorities in the Vatican City State do the following:

1. Require each bank/business official producing records to appear, complete, and sign a Certificate of Authenticity of Business Records (Form D, attached); and

2. Attach the completed certificate to the corresponding records produced by the business official; and

3. Transmit the records with attachments to the Office of International Affairs or as otherwise arranged by the appropriate authorities of the Vatican with the Office of International Affairs.

In addition, please invite each official producing records to appear, if it should become necessary, at a date to be determined, in the United States, at the expense of the United States government, to testify at trial. If the witness chooses not to appear in the United States, a formal deposition of the witness at some future date may be requested.

## NEED FOR PROCEDURE REQUESTED

The execution of the attached Certificate of Authenticity of Official Records is needed to receive the requested official records into evidence in accordance with the requirements of United States law. Ordinarily, foreign public records may be received into evidence if they purport to be executed or attested in an official capacity by a person authorized by the laws of the foreign country to make the execution or attestation and are accompanied by an apostille, pursuant to the Hague Convention, certifying the official position and the genuineness of the signature of the official who produced the records.

Ordinarily, business records may be received into evidence only if a competent representative of the business appears at trial as a witness and testifies as to the authenticity of the records and the manner in which they are prepared and maintained at the business. However, with respect to foreign business records, the appearance and testimony at trial of a representative

11

USAO 00003451

of a foreign business may not be required if the records (or true copies thereof) are accompanied by a written declaration such as the attached certificate. The statute permitting this procedure (Title 18, United States Code, Section 3505) requires an executed certificate.

Please accept the assurances of our highest esteem.

Jason E. Carter
Acting Deputy Director
Office of International Affairs
Criminal Division

USAO 00003452

FORM A

<u>ATTESTATION OF AUTHENTICITY OF OFFICIAL RECORDS</u>

I, _____, attest that my position with the Vatican City State is
(Name)

_____ and that in that position I am authorized by the laws of the Vatican City State to attest that the documents attached hereto and described below:

(1) are true copies of official records which are authorized by the laws of the Vatican City State

to be recorded or filed in _____, which is a
(Name of Public Office or Agency)
government office or agency.

(2) set forth matters that are required by the laws of the Vatican City State to be reported and recorded or filed.

Description of Documents:

(SEAL)                                     _____
                                            (Signature)

                                            _____
                                            (Date)

13

FORM B

## Final Certification

```
_____    )
       (Country)               )
                               )
_____    )
    (State, province, etc.)    )
                               )   ss:
_____    )
          (City)               )
                               )
_____    )
    (Name of consular post)    )
of the United States of America )
```

I certify that the annexed document is executed by the genuine signature and seal of the following named official who, in an official capacity, is empowered by the laws of the Vatican City State to execute that document: (typed name of official who executed the annexed document)

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

```
                    _____
                    (Signature of Consular Officer)
                    (Typed name of Consular Officer)
                    (Title of Consular Officer)
                    Consul of the United States of America

                    DATE:
```

14

USAO 00003454

FORM C

## ATTESTATION OF ABSENCE OF OFFICIAL RECORDS

I, _____ [NAME], attest that my position with the Holy See and Vatican City State is [OFFICIAL TITLE] and that in that position I am official custodian of records for the [RELEVANT AGENCY], which is required to record or report matters, or file with respect to matters, that are required by the laws of the Vatican City State to be regularly recorded, reported or filed by this agency/organization.

I further attest that I have made, or caused to be made, a diligent search for the following records:

*(set forth description of record(s) for which the search was conducted)*

and that no such record(s) is/are found to exist therein.

I certify that the records for which a search was conducted set forth matters which are required by the laws of the Vatican City State to be recorded or filed and reported, and such matters regularly are recorded or filed and reported by _____ [RELEVANT AGENCY]_____.

(SEAL)

_____
(Signature)

_____
(Date)

15

USAO 00003455

FORM D

## CERTIFICATE OF AUTHENTICITY OF BUSINESS RECORDS

I, _____ (Name), attest on penalty of criminal punishment for false statement or false attestation that I am employed by _____ (Name of Business from which documents are produced) and that my official title is _____ (Official Title). I further state that each of the records attached hereto is the original or a duplicate of the original of records in the custody of _____ (Name of Business from which documents are produced). I further state that:

    A)    such records were made at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;

    B)    such records were kept in the course of a regularly conducted business activity;

    C)    the business activity made the records as a regular practice; and

    D)    if any of such records is not the original, such record is a duplicate of the original.

_____   _____
(Signature)   (Date)

Sworn to or affirmed before me, _____ (Name), a _____ (notary public, judicial officer, etc.), this _____ day of _____, 20___.

16

USAO 00003456