# EXHIBIT N



U.S. Department of Justice

Criminal Division
*Office of International Affairs*

JEC:CMP
182-

Washington, D.C. 20530

December 17, 2015

TO: The Central Authority of Italy

SUBJECT: Request for Assistance in the Criminal Investigation of Autonomy Corporation

The Central Authority of the United States requests the assistance of the Central Authority of Italy pursuant to the 2006 U.S.-Italy Mutual Legal Assistance Instrument ("Instrument"). The United States Attorney for the Northern District of California (the prosecutor) is conducting an investigation into the activities of Autonomy Corporation plc ("Autonomy"), a software developer located in San Francisco, California, and the United Kingdom, which is suspected of defrauding Hewlett-Packard Company (HP) into acquiring the outstanding shares of Autonomy in October 2011. Autonomy induced HP into acquiring Autonomy in part based on Autonomy's publicly reported financial results.

The prosecutor is investigating whether Autonomy misstated its publicly reported financial results by improperly recording revenue on software transactions when there was no final sale, when the purported purchaser lacked the ability or intent to pay, and when Autonomy retained effective control over the software sold. Specifically, the prosecutor is investigating whether Autonomy properly recorded revenue on the following transactions with the following Italian entities, all of which are located in Rome, Italy:

- A purported license agreement, dated December 31, 2009, whereby Autonomy purported to license software to Sales Consulting S.R.L. ("Sales Consulting") for €1,500,000 for resale to Poste Italiane ("Poste Italiane").

- A purported license agreement, dated March 31, 2010, whereby Autonomy purported to license

software to Auxilium Tech S.R.L. ("Auxilium") for €2,500,000 for resale to Biblioteca Apostolica Vaticana ("BAV"), which was in discussions with Postecom, S.p.A. ("Postecom") and Autonomy about a project to digitize and archive materials in the Vatican Library.

- A purported license agreement, dated September 30, 2010, whereby Autonomy purported to license software to Red Ventures S.R.L. ("Red Ventures") for €2,000,000 for resale to Poste Italiane.

The prosecutor therefore needs business records, including agreements, correspondence, and emails, from Sales Consulting, Auxilium, Red Ventures, Postecom, and Poste Italiane, which will enable the prosecutor to determine whether Autonomy appropriately recorded revenue on the transactions.

## CONFIDENTIALITY

The details of this U.S. criminal investigation are considered sensitive. Therefore, please treat this document, its contents, the fact that this request has been made and the results of its execution as confidential and do not disclose it publicly or share it with the subjects of the investigation. Also, please instruct all those who must be made aware of this request for purposes of its execution that the request, its contents and subject matter are to be kept confidential and should not be shared with the subjects of the investigation nor disclosed publicly. Any transfer of information to others may seriously jeopardize the ongoing investigation.

## URGENCY

Please inform the executing authority that the U.S. authorities respectfully request that the records be produced no later than **April 30, 2016**.

## THE FACTS

Autonomy was a company incorporated in England and Wales with a registered office in Cambridge, United Kingdom. Its principal activities were software development and distribution. Autonomy maintained dual headquarters in San Francisco, California, and Cambridge, England. Autonomy was a publicly traded company whose shares were listed on the London Stock Exchange and were bought, held, and sold by individuals and entities throughout the United States.

During the period 2009 through July 2011, Autonomy published financial results on a quarterly basis. It stated that its financial statements were prepared in accordance with International Financial Reporting Standards ("IFRS"). IFRS accounting requirements for revenue recognition are defined largely by International Accounting Standard 18 – Revenue ("IAS 18"), which provides in relevant part as follows:

> 14. Revenue from the sale of goods shall be recognised when all the following conditions have been satisfied:
>
> (a) the entity has transferred to the buyer the significant risks and rewards of ownership of the goods;
>
> (b) the entity retains neither continuing managerial involvement to the degree usually associated with ownership nor effective control over the goods sold;
>
> (c) the amount of revenue can be measured reliably;
>
> (d) it is probable that the economic benefits associated with the transaction will flow to the entity; and
>
> (e) the costs incurred or to be incurred in respect of the transaction can be measured reliably.

Autonomy also stated or suggested that it followed Generally Accepted Accounting Principles in the United States for software revenue recognition.

Autonomy's 2009 and 2010 financial results included revenue from transactions with certain "value added resellers" based in Italy. The following summarizes the transactions:

3

Sales Consulting/Poste Italiane

On or around December 31, 2009, Autonomy entered into a purported license agreement with Sales Consulting, whereby Sales Consulting agreed to pay €1,500,000 for the right to sublicense Autonomy software to Poste Italiane and an additional €225,000 for support and maintenance.  The software consisted of Content Management Software (TeamSite), Targeting and Engagement Software (Interwoven LiveSite), Content Intelligence Software (MetaTagger), and Content Provisioning Software (OpenDeploy).  Payment under the agreement was due beginning April 30, 2010.  Autonomy recorded €1,500,000 in license revenue for the quarter ended December 31, 2009.

Sales Consulting made no payments on the transaction by April 30, 2010, or at any other time.  Sales Consulting does not appear to have made any sale of the listed software to Poste Italiane, nor did Autonomy ever consummate a sale of such software to Poste Italiane.  Sales Consulting advised Autonomy in May 2010 that it had been placed into liquidation.

Auxilium/Postecom/BAV

Between 2009 and March 2010, Autonomy personnel were pursuing a transaction with BAV, whereby Autonomy software would be used to digitize and archive materials in the Vatican Library.  In or around February 2010, Autonomy contemplated partnering with Postecom, a subsidiary of Poste Italiane, to deliver an archiving system to BAV.  In late March, Autonomy was provided a letter of intent between Postecom and BAV, which generally stated that Postecom had had preliminary discussions about possible involvement in the archiving project and intended complete verification activities necessary to complete a collaboration proposal; suggested that BAV was seeking financing for the project; and provided for a 50-day period during which BAV would not sign a competing proposal.  The letter stated that it did not bind Postecom or BAV to sign a collaboration agreement.

Autonomy had no binding agreement with BAV or Postecom on or before March 31, 2010.  Nonetheless, on or after April 11, 2010, Autonomy entered into a purported license agreement with Auxilium, whereby Auxilium agreed to pay €2,500,000 for the right to sublicense Autonomy software to BAV and to pay €125,000 in support and maintenance.  The agreement was backdated to March 31, 2010.

4

Autonomy recorded license revenue in respect of the Auxilium transaction, which revenue was included in Autonomy's publicly reported results.

Auxilium made no payments to Autonomy. Auxilium does not appear to have made any sale of the listed software to BAV. From April 2010 through 2011, Autonomy continued to attempt to consummate a sale of software to BAV or an intermediary.

Red Ventures/Poste Italiane

On or around September 30, 2010, Autonomy entered into a purported license agreement with Red Ventures, whereby Red Ventures agreed to pay €2,000,000 for the right to sublicense Autonomy software to Poste Italiane and others and an additional €100,000 for support and maintenance. The software included Intelligent Data Operating Layer Server for use in a cyber-security project by Poste Italiane. Payment under the agreement was due beginning December 2010. Autonomy recorded €2,000,000 in license revenue for the quarter ended September 30, 2010.

Red Ventures made no payments. Red Ventures does not appear to have made any sale of the listed software to Poste Italiane, nor did Autonomy ever consummate a sale of such software to Poste Italiane.

## THE OFFENSES

18 U.S.C. § 371.     Conspiracy to commit offense

18 U.S.C. § 1341.    Fraud by wire, radio, or television

18 U.S.C. § 1348.    Securities and commodities fraud

18 U.S.C. § 1349.    Attempt and conspiracy

## PERSONS AND ENTITIES INVOLVED

1. SALES CONSULTING S.R.L.

   Place of Incorporation:  Italy

   Address:                 Via Nicolo Tartaglia 11,
                            00187 Rome, Italy

   Alternative Address:     Via Erminio Spalla, 53

5

|   |   |   |
|---|---|---|
|   |   | 00142 Rome, Italy |
|   | Officers: | Gianluca Zignani and Rubano Saverio |
| 2. | AUXILIUM TECH S.R.L. |   |
|   | Place of Incorporation: | Italy |
|   | Address: | via Giulio Vincenzo Bona, 85<br>00156 Rome, Italy<br>Telephone +39 06-96034 |
|   | Officers: | Luca Mastroianni and Claudio Anatasio |
| 3. | POSTECOM S.P.A. |   |
|   | Place of Incorporation: | Italy |
|   | Address: | Viale Europa 175<br>00144 Rome, Italy<br><br>Via Cordusio, 4<br>Milano, Italy 20123 |
|   | VAT Registration number: | 05838841004 |
|   | Officer: | Giovanni Cuturi |
|   | Other Contact: | Matteo Ferrara |
| 4. | RED VENTURES S.R.L |   |
|   | Place of Incorporation: | Italy |
|   | Address: | Via Francesco Sapori 83<br>00143 Rome, Italy |
|   | Officer: | Alfredo Riccio |
| 5. | POSTE ITALIANE |   |
|   | Place of Incorporation: | Italy |
|   | Address: | Viale Europa, 190 |

6

00144 Rome, Italy
Tel.: +39 06 5958.1
Fax: +39 06 5958.9100

NEED FOR ASSISTANCE

The prosecutor is seeking documents from the purported resellers and end users of Autonomy software to determine whether it was appropriate for Autonomy to record revenue; whether Autonomy's financial statements were misstated; and whether Autonomy's senior officers intended to misstate Autonomy's financial statements. The prosecutor needs documents from the purported resellers and end users to determine whether, with respect to the purported sales, Autonomy genuinely transferred the significant risks and rewards of ownership of the goods; whether Autonomy entity retained continuing managerial involvement to the degree usually associated with ownership or effective control over the goods sold; and whether it was probable that the economic benefits associated with the transaction would flow to Autonomy.

Business Records Needed

1. For the period December 2009 to October 2011, please provide complete, certified copies of the following records of Sales Consulting:

    a. Financial statements (including a balance sheet, income statement, and statement of cash flow) for the periods ended December 31, 2009, December 31, 2010, and December 31, 2011.

    b. All agreements with Poste Italiane and/or Autonomy.

    c. All communications (including emails and correspondence) with Autonomy relating to any sale to Sales Consulting and/or any resale of Autonomy software by Sales Consulting.

    d. All communications (including emails and correspondence) with Poste Italiane relating to any sale of Autonomy software.

    e. All documents reflecting efforts by Sales Consulting to resell Autonomy software.

2. For the period December 2009 to October 2011, please provide complete, certified copies of the following records of Auxilium:

7

    a. Financial statements (including a balance sheet, income statement, and statement of cash flow) for the periods ended December 31, 2009, December 31, 2010, and December 31, 2011.

    b. All agreements with BAV (or any other unit/agency of the Vatican City State and/or Holy See) and/or Autonomy.

    c. All communications (including e-mails and correspondence) with Autonomy relating to any sale of software to Auxilium and/or any resale of Autonomy software by Auxilium

    d. All communications (including e-mails and correspondence) with BAV (or any other unit/agency of the Vatican City State and/or Holy See) or Postecom relating to any sale of Autonomy software.

    e. All documents reflecting efforts by Auxilium to resell Autonomy software.

  3. For the period December 2009 to October 2011, please provide complete, certified copies of the following records of <u>Postecom</u>:

    a. All agreements with BAV (or any other unit/agency of the Vatican City State and/or Holy See) relating to Autonomy.

    b. All agreements with Autonomy.

    c. All communications (including e-mails and correspondence) with Autonomy relating to any sale of software to BAV (or any other unit/agency of the Vatican City State and/or Holy See).

    d. All communications (including e-mails and correspondence) with BAV (or any other unit/agency of the Vatican City State and/or Holy See) relating to any sale of Autonomy software.

    e. All documents reflecting efforts by Auxilium and/or Postecom to resell Autonomy software.

  4. For the period December 2009 to October 2011, please provide complete, certified copies of the following records of <u>Red Ventures</u>:

    a. Financial statements (including a balance sheet, income statement, and statement of cash flow) for the periods ended December 31, 2009, December 31, 2010, and December 31, 2011.

    b. All agreements with Poste Italiane and/or Autonomy.

8

    c. All communications (including e-mails and correspondence) with Autonomy relating to any sale of software to Poste Italiane and/or any resale of Autonomy software by Red Ventures.

    d. All communications (including e-mails and correspondence) with Poste Italiane relating to any sale of Autonomy software.

    e. All documents reflecting efforts by Red Ventures to resell Autonomy software.

  5. For the period December 2009 to October 2011, please provide complete, certified copies of the following records of <u>Poste Italiane</u>:

    a. All agreements with Sales Consulting, Red Ventures, and/or Autonomy.

    b. All communications (including e-mails and correspondence) with Autonomy relating to any sale of the following software to Poste Italiane: Content Management Software (TeamSite), Targeting and Engagement Software (Interwoven LiveSite), Content Intelligence Software (MetaTagger), and Content Provisioning Software (OpenDeploy); and Intelligent Data Operating Layer Server for use in a cyber-security project.

    c. All communications (including e-mails and correspondence) with Sales Consulting and/or Red Ventures relating to any sale and/or resale of Autonomy software.

<u>PROCEDURES TO BE FOLLOWED</u>

Please ask the examining magistrate to do the following:

  1. interview the appropriate business officials regarding any personal knowledge they have about the subject matter of the request, apart from the preparation and/or production of specified documents and provide a report of interview pursuant to articles 1(2)(e) and 14;

  2. require production of original or true copies of the specified documents from the business pursuant to articles 1(2)(c) and 13;

  3a. take sworn testimony from each person producing the documents regarding the following questions:

    i. Are you employed by or associated with the business? If so, in what capacity?

    ii. Is it the practice of the business to make and keep records?

  iii. Are you familiar with the business' practice of making and keeping records?

  iv. Are the documents that you produced records of the business?

  v. Were the documents <u>made</u> as part of regularly conducted business activity of the business?

  vi. Were the documents <u>made</u> at or near the time of the occurrence of the matters described in the documents, pursuant to a routine procedure for the conduct of the business?

  vii. Were the entries on the documents <u>made</u> by persons with knowledge of the matters recorded, or from information transmitted by persons with such knowledge?

  viii. Were the documents <u>kept</u> in the course of the regular activity of the business?

  ix. If the documents are not original records, are they duplicates of the original records?

  x. Are originals or duplicates of these records maintained in Italy?

3b. prepare a report -- separate from the reports of interviews discussed in paragraph 1 above -- that contains each person's responses to the above questions;

3c. have each person responding to the above questions review and sign the report if the responses reported are correct;

3d. if satisfied that, under the procedure followed, a false response to a question would subject the person to criminal penalty under Italian law, affix his or her seal (or stamp) upon the report of the responses and state somewhere in the body of the report that a false response to a question would subject the person to criminal penalty under Italian law;

3e. append the report of the responses of each person producing documents to the documents produced by that person; and

4. invite the business official(s) giving testimony and producing the documents to appear at some future date in San Francisco, at the expense of the United States government, to testify before the

grand jury and/or at trial. If any witness chooses not to appear in the United States, a formal deposition of the witness at some future date is requested pursuant to article 14.

NEED FOR PROCEDURE REQUESTED

The taking of sworn testimony from each business official producing records is needed to receive the requested business records into evidence in accordance with the requirements of United States law. Ordinarily, business records may be received into evidence only if a competent representative of the business appears at trial as a witness and testifies as to the authenticity of the records and the manner in which they are prepared and maintained at the business. However, with respect to foreign business records, the appearance and testimony at trial of a representative of a foreign business may not be required if the records (or true copies thereof) are accompanied by a written declaration such as the attached certificate. The statute permitting this procedure (Title 18, United States Code, Section 3505) requires an executed certificate.

CONCLUSION

Please coordinate execution of this request with the following U.S. representative at the U.S. Embassy in Rome, Italy:

   Cristina Posa
   U.S. Department of Justice Attaché
   +39-06-4674-2680 (office)
   +39-335-571-4591 (cell)
   +39-06-4674-2266 (fax)
   cristina.posa@usdoj.gov

We thank you for your assistance with this matter, and we ask that you keep us apprised of all developments. In particular, the United States asks that copies of all documents issued by Italian authorities to execute this request, including by the competent Court of Appeals and/or magistrates and police authorities to which execution may be delegated, be provided on an ongoing basis to Department of Justice Attaché Cristina Posa by fax or email.

Please accept the assurances of our highest esteem.

Jason E. Carter
Acting Deputy Director
Office of International Affairs
Criminal Division