# EXHIBIT O



U.S. Department of Justice

Criminal Division
Office of International Affairs

MDR:KJH:JEC:MHP
DOJ No. 182-53177

Washington, D.C. 20530

January 27, 2016

TO:      **The Central Authority of the Bailiwick of Guernsey**

SUBJECT: **Request for Assistance in the Investigation of Autonomy Corporation**

The Central Authority of the United States of America requests the assistance of the appropriate authorities in the Bailiwick of Guernsey pursuant to the Criminal Justice (International Cooperation) (Bailiwick of Guernsey) Law 2001 and other pertinent law of Guernsey. The United States Attorney for the Northern District of California ("the prosecutor") and the Federal Bureau of Investigation (collectively, "the U.S. Authorities") have been investigating violations of US criminal law involving a scheme to defraud Hewlett-Packard Company ("HP") based on Autonomy Corporation plc's ("Autonomy") materially misstated financial statements. US authorities are investigating whether Autonomy misstated its financial performance in annual and quarterly reports as a part of a scheme to defraud HP and others.

Autonomy was a publicly traded company in the United Kingdom until its sale in October 2011 to HP. As detailed below, the investigation to date reflects that individuals at Autonomy, including Chief Executive Officer Michael Richard Lynch ("Lynch"), knowingly released financial statements that contained material misstatements in an effort to increase the value of Autonomy and its shares prior to its acquisition by HP. U.S. Authorities have learned that Lynch

and his wife maintain accounts with a financial institution located in the Bailiwick of Guernsey that are believed to contain proceeds from the HP's acquisition of Autonomy. Accordingly, the U.S. authorities seek assistance from the appropriate authorities in Guernsey to obtain records for those accounts.

## CONFIDENTIALITY

The details of this criminal investigation are considered sensitive. Accordingly, please keep this request confidential in all respects, and do not share its contents, its subject matter, or the fact that the request has been made with any private persons (including the subjects of the investigation), or any government officials whose knowledge is not absolutely necessary for purposes of executing this request. In addition, please advise all who must be made aware of this request for assistance that the request, its contents, and its subject matter are to be kept confidential and should not be shared. If the request cannot be executed without public disclosure, the United States asks that the authorities of the United Kingdom notify the Central Authority of the United States before any action is taken towards execution.

## THE FACTS

Autonomy was a company incorporated in England and Wales with a registered office in Cambridge, United Kingdom. Its principal activities were software development and distribution. Autonomy maintained dual headquarters in San Francisco, California, and Cambridge, United Kingdom. Autonomy was a publicly traded company whose shares were listed on the London Stock Exchange and were bought, held, and sold by individuals and entities

2

throughout the United States, including the Northern District of California. Lynch co-founded Autonomy, served as its Chief Executive Officer until May 2012, and was a substantial shareholder.

From 2009 through July 2011, Autonomy published annual and quarterly reports including its financial results. Autonomy stated in its annual and quarterly reports that its financial statements were prepared in accordance with International Financial Reporting Standards ("IFRS"). Autonomy also stated or suggested that it followed Generally Accepted Accounting Principles ("GAAP") in the United States for software revenue recognition. For example, Autonomy stated on its website:

> for revenue recognition we voluntarily adhere to the principles set out in US GAAP SOP 97-2, which is far more detailed, prescriptive and conservative than IFRS, and that has made it the 'gold standard' for other software companies like Oracle and Microsoft.

Lynch reviewed Autonomy's quarterly reports. He also signed statements of responsibility with respect to Autonomy's 2009 and 2010 annual reports, as well as its reports for the quarters ending in June 2009, June 2010, and June 2011. Lynch also participated in calls with analysts who followed Autonomy's stock.

During the period from at least the first quarter of 2009 through October 2011, Lynch and others engaged in a scheme designed to falsely inflate the revenue that Autonomy had earned, and would report those false revenues in its annual and quarterly reports. As a result, Lynch and others were able to create the false appearance that the company was growing quickly, and

3

USAO 00003615

thereby inflate the price of Autonomy's stock. For example, in certain instances where Autonomy was unable to close a sale of software with a client by the end of a quarter, Autonomy claimed to have "sold" the software to a "value added reseller" (VAR) instead.[1] However, Autonomy had not satisfied certain IFRS requirements concerning its sale to the VAR, including that Autonomy had not transferred to the buyer the significant risks and rewards of ownership of the goods; it retained effective control over the goods sold; and it was not probable that the economic benefits associated with the transaction would flow to Autonomy. In fact, the VARs lacked the ability or intent to pay and had no independent use for the software.

In addition to improperly recognizing revenue on certain "VAR" transactions in violation of the IFRS requirements, Autonomy also engaged in certain reciprocal transactions whereby it sold software to a customer at one price and purchased products or services from the same customer at a greater price – thus resulting in a "roundtrip" of cash that made Autonomy's revenue (and growth) greater than they really were. Finally, Autonomy also failed to disclose that it engaged in substantial sales of third-party computer hardware, without modification and unaccompanied by any Autonomy software. Omitting this information made Autonomy look like a quickly growing software company rather than a more slowly growing hardware company.

In or around December 2010 or January 2011, Lynch authorized an investment banker based in California to approach HP and others about the possibility of acquiring Autonomy. On or about August 18, 2011, HP and Hewlett-Packard Vision B.V. ("HP Vision"), an indirect

---

[1] A VAR is a company that adds features or services to an existing product and then resells it.

4

USAO 00003616

wholly-owned subsidiary of HP, entered into an Offer Agreement with Autonomy and publicly announced an offer to acquire the outstanding shares of Autonomy for £25.50 ($42.11) per share in cash. The offer directed that acceptances be delivered to Capita Registrars Limited, which acted as a receiving agent for the offer and handled payment of acquisition funds to Autonomy shareholders. Lynch was among those who accepted the offer. During the period August to October 2011, he tendered shares as part of the acquisition and received millions of dollars as a result. In that same period, Angela Maria Bacares ("Bacares"), Lynch's wife and at times an Autonomy employee, also tendered shares in her name and profited as a result of the acquisition.

During the course of their investigation, the U.S. Authorities have learned that, in 2008, Lynch and Bacares each established accounts with Merrill Lynch Portfolio Managers Limited. In or around July 2013, Merrill Lynch Portfolio Managers Limited was acquired by the Julius Baer group of companies. Specifically, custody of the assets in the accounts were transferred to Guernsey and held by Julius Baer International Limited and Julius Baer Portfolio Manager Limited, who are affiliated with Bank Julius Baer & Co. Ltd, located at Lefebvre Court, Lefebvre Street, P.O. Box 87, St. Peter Port, GB Guernsey GY1 4BS. U.S. Authorities have reason to believe that assets in the Merrill Lynch and Julius Baer accounts include proceeds that Lynch received from the sale of Autonomy. Lynch holds relationship number ▮▮▮1443 and Bacares holds relationship number ▮▮▮1772 with Julius Baer.

## THE OFFENSES

**18 U.S.C. § 371. Conspiracy to commit offense or to defraud United States.**
If two or more persons conspire either to commit any offense against the United States, or to

USAO 00003617

defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be . . . imprisoned not more than five years . . . .

### 18 U.S.C. § 1343. Fraud by wire, radio or television.

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be . . . imprisoned not more than 20 years . . . . If the violation occurs in relation to . . . or affects a financial institution, such person shall be . . . . imprisoned not more than 30 years . . . .

### 18 U.S.C. § 1348. Securities and commodities fraud.

Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud any person in connection with any commodity for future delivery, or any option on a commodity for future delivery, or any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 15 U.S.C 78*l*) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d); or

(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of any of any commodity for future delivery, or any option on a commodity for future delivery, or any security of an issuer with a class of securities registered under Section 12 of the Security Exchange Act of 1934 (15 U.S.C*l*) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d). such] security . . . shall be . . . imprisoned not more than 25 years . . . .

### 18 U.S.C. § 1349. Attempt and conspiracy.

Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

### PERSONS AND ENTITIES INVOLVED

1.  **MICHAEL RICHARD LYNCH**
    Alias:              Dr. Michael Lynch
                        Mike Lynch
    Date of Birth:      ▇▇▇▇ 1965
    Place of Birth:     United Kingdom

6

|  |  |
|---|---|
| Citizenship: | United Kingdom |
| Passport Number: | UK passport (▓▓▓4703) |
| Address: | ▓▓▓▓▓▓▓▓▓▓▓▓, London, England, SW3 4QG |
|  | ▓▓▓▓▓▓▓▓▓▓▓▓ Pettistree, Woodbridge IP13 0NN |

2. **ANGELA MARIA BACARES**

|  |  |
|---|---|
| Alias: | Angela Lynch |
| Date of Birth: | ▓▓▓▓▓ 1967 |
| Place of Birth: | United States |
| Citizenship: | United Kingdom |
| Passport Number: | UK passport (▓▓▓8464) |
| Address: | ▓▓▓▓▓▓▓▓▓▓▓▓, London, England, SW3 4QG |

## DOCUMENTS NEEDED

I. **Bank Records**

Please provide complete certified records from BANK JULIUS BAER & CO. LTD (including, without limitation, JULIUS BAER INTERNATIONAL LIMITED, JULIUS BAER PORTFOLIO MANAGERS LIMITED, and any subsidiary or affiliate) relating to:

1. Account or relationship numbers ▓▓▓1443 held by Michael Richard Lynch and/or ▓▓▓1772 held by Angela Maria Bacares; and

2. any accounts traceable to account or relationship numbers ▓▓▓1443 and/or ▓▓▓1772 held by:

   a. Michael Richard Lynch; and
   b. Angela Maria Bacares.

Records should be for the period from January 1, 2008, to the present, and should include, but not be limited to:

- original signature cards;

7

- documentation of account opening;
- account ledger cards;
- periodic account statements;
- records (copied front and back) of all items deposited, withdrawn, or transferred;
- wire transfers;
- correspondence to, from, or on behalf of the account holder;
- shares and/or securities purchased and/or sold;
- copies of electronic recordings of any conversations;
- instructions relating to the receipt or transfer of any funds into or out of the account;
- powers of attorney and other banking authorizations; and
- memoranda related to the account.

Also, for the period of January 1, 2008, to the present, please provide all identifying information of any accounts held at BANK JULIUS BAER & CO. LTD or elsewhere held in the name of or for the benefit of Michael Richard Lynch and/or Angela Maria Bacares. The identifying information should include the bank name, bank address, account number, account holder(s), account signatories, account balance, and account opening documents.

## PROCEDURES TO BE FOLLOWED

### I.   Business/Bank Records

Under United States law, foreign business records are usually admitted into evidence in a proceeding in the United States after the party offering them proves, through the testimony at trial of a qualified witness, that:

1. the records produced are true and accurate copies of original records in the custody of the business;

2. the business made or kept the originals in the ordinary course of business and as a regular business practice; and

USAO 00003620

3.     the originals were made, at or near the time of the occurrence of the transactions they record, by a person who either had knowledge of those transactions or received the information from a person with such knowledge.

The testimony of a qualified witness may be unnecessary at trial in the United States where that witness makes or provides a written declaration in a foreign jurisdiction (i.e., the Bailiwick of Guernsey) that (1) contains essentially the same information noted in items 1-3 above and (2) subjects the witness to criminal penalties under the laws of the foreign jurisdiction if the declaration is false.

Please have the appropriate authorities in the Bailiwick of Guernsey do the following:

1.     require each bank/business official producing records to complete, and sign the attached Certificate of Authenticity of Business Records;

2.     attach the completed certificate to the corresponding records produced by the bank/business official and transmit the records with certificate, through or as directed by the Central Authority for the Bailiwick of Guernsey, to the Office of International Affairs, U.S. Department of Justice.

If the custodian ordered to provide business records fails, after a diligent search, to discover such records, please have that person provide a declaration to that effect by use of the attached Certificate of Absence of Business Records.

Please invite each bank/business official producing records to appear, if it should become necessary, at a date to be determined, at San Francisco, California, at the expense of the United States government, to testify at trial.

9

USAO 00003621

We thank you for your assistance with this matter and ask that you keep us apprised of all developments.

27 January 2016
Date

Kenneth J. Harris
Acting Deputy Director
Office of International Affairs
Criminal Division

10

USAO 00003622

# CERTIFICATE OF AUTHENTICITY OF BUSINESS RECORDS

I, _____, attest on penalty of criminal punishment for false statement or
         (Name)

false attestation that I am employed by _____ and that
                                        (Name of Business from which documents are produced)

my official title is _____. I further state that each of the
                              (Official Title)

records attached hereto is the original or a duplicate of the original records in the custody of

_____. I further state:
 (Name of Business from which documents are produced)

    A)    such records were made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;

    B)    such records were kept in the course of a regularly conducted business activity;

    C)    the business activity made the records as a regular practice; and

    D)    if any of such records is not the original, such record is a true and accurate duplicate of the original.

_____   _____
              (Signature)                                   (Date)

Sworn to or affirmed before me, _____,
                                                          (Name)

a _____, this _____ day of _____, 2015.

11

USAO 00003623