# EXHIBIT Q



**U.S. Department of Justice**

Criminal Division

VAA:WHG:JEC:EEM:jmf

*Office of International Affairs*  *Washington, D.C. 20530*

May 1, 2017

VIA E-MAIL AND FEDEX

Deborah Hand
United Kingdom Central Authority
Home Office
3rd Floor, Seacole Building
2 Marsham Street
London, England SW1P 4DF

Re: Supplemental Request for Assistance in the Investigation of Autonomy Corporation; OIA Reference Number: 182-53177 (please use when responding)

Dear Ms. Hand:

Enclosed please find a supplemental request for assistance concerning the above-referenced matter. The original request was dated January 29, 2015. This supplemental request incorporates by reference the original request. Further to the assistance sought in the original request, the prosecutor seeks additional business records.

Please do not hesitate to contact me at (202) 305-1643 or at Erin.Mikita@usdoj.gov or International Affairs Specialist Jason Fischer at (202) 305-1995 or at Jason.Fischer@usdoj.gov if you have any questions.

Sincerely,

Vaughn A. Ary
Director

By: *[signature]*

Erin E. Mikita
Trial Attorney

Enclosure



**U.S. Department of Justice**

Criminal Division

VAA:WHG:JEC:EEM:jf
DOJ No. 182-53177

Office of International Affairs                    Washington, D.C. 20530

TO:        The Central Authority of the United Kingdom

SUBJECT:   Supplemental Request for Assistance in the Investigation of Autonomy Corporation

The Central Authority of the United States of America requests further assistance of the Central Authority of the United Kingdom pursuant to the 1994 Treaty of Mutual Legal Assistance in Criminal Matters between the United States of America and the United Kingdom, as amended by the 16 December 2004 Instrument and exchange of notes (the Treaty).

The United States Attorney's Office for the Northern District of California (the Prosecutor) and the Federal Bureau of Investigation (collectively, the U.S. authorities) have been investigating violations of U.S. criminal law involving a scheme to defraud Hewlett-Packard Company (HP) and others based on Autonomy Corporation plc's (Autonomy) materially misstated financial statements. U.S. authorities are investigating whether Autonomy misstated its financial performance in annual and quarterly reports and made other misstatements as part of a scheme to defraud HP and others.

On January 29, 2016, the United States transmitted a request to the United Kingdom asking for bank, brokerage, and business records (Original Request). The United Kingdom has provided certain records and continues to respond to the Original Request. The Original Request is hereby incorporated by reference in its entirety.

The United States now seeks assistance in obtaining additional business records, specifically: (1) documents related to a "data room" established by Autonomy's U.K. counsel

USAO 00003581

Slaughter and May in connection with HP's due diligence prior to acquisition of Autonomy and (2) documents prepared by Ernst & Young LLP in the United Kingdom in connection with an audit of an Autonomy subsidiary's financial statements. The United States is requesting documents from Slaughter & May because the Prosecutor believes they will help evidence the representations Autonomy made and the information Autonomy provided to HP during due diligence. The United States is requesting documents prepared by Ernst & Young LLP because the Prosecutor believes they will help evidence the falsity of Autonomy's financial statements.

## CONFIDENTIALITY

The details of this criminal investigation are considered sensitive. Accordingly, please keep this request confidential in all respects, and do not share its contents, its subject matter, or the fact that the request has been made with any private persons (including the subjects of the investigation) or any government officials whose knowledge is not absolutely necessary for purposes of executing this request. In addition, please advise all who must be made aware of this request for assistance that the request, its contents, and its subject matter are to be kept confidential and should not be shared. If the request cannot be executed without public disclosure, the United States asks that the authorities of the United Kingdom notify the Central Authority of the United States before any action is taken towards execution.

## ADDITIONAL FACTS

As stated in the Original Request, in late 2010 or early 2011, Michael Richard Lynch (Lynch), co-founder of Autonomy and its Chief Executive Officer from 1996 until May 2012, authorized an investment banker based in California to approach HP and other companies about the possibility of acquiring Autonomy.

USAO 00003582

On or about February 3, 2011, Lynch and Sushovan Tareque Hussain (Hussain), Autonomy's Chief Financial Officer from June 2001 until May 2012, participated in a video conference with HP representatives in Palo Alto, California, to discuss Autonomy's business and performance. On or about March 4, 2011, Lynch and Hussain participated in a second video conference with HP representatives to discuss Autonomy's business and performance. Ultimately, HP decided to conduct due diligence of Autonomy prior to making an offer to acquire Autonomy.

Autonomy engaged Slaughter and May, a U.K. law firm located at One Bunhill Row, London, EC1Y 8YY, to advise it in connection with the potential HP acquisition. On or about August 1, 2011, Slaughter and May established a virtual "data room," referred to as Project Daniel 1Room, to enable Autonomy to share documents with HP and its advisors. The data room, available at https://1room.slaughterandmay.com/eRoom/fac1/ProjectDaniel, provided a web-based environment where users could share and view files. Data room users were given a password and the ability to log onto the website to review available information. Between August 1, 2011, and the date of the acquisition (approximately October 3, 2011), Autonomy officers forwarded documents to Slaughter and May to be uploaded into the data room. After Slaughter and May uploaded documents into the data room, data room users received an e-mail indicating that new documents had been added.

For example, on or about August 4, 2011, Anthony Hartley, a trainee solicitor with Slaughter and May, e-mailed HP's advisers alerting them that documents had been added to the data room. These documents included files titled "I.D-01-Copy of Top 40 contracts 2010-11 FINAL-r.pdf" and "I.D-02-Copy of Top 40 Customer Analysis 2010-2011 FINAL-r.pdf" as well as redacted versions of customer contracts. On or about August 5, 2011, an Autonomy officer

3

represented to HP that lists of Autonomy's top 40 customers by revenue and top 40 contracts by revenue had been placed in the data room.

U.S. authorities' investigation has revealed that the lists of top 40 customers and top 40 contracts by revenue provided by Autonomy and uploaded to the data room did not accurately represent Autonomy's top 40 customers and top 40 contracts by revenue. The list of Autonomy's top 40 customers omitted customers that purchased exclusively hardware, as well as hardware revenue from Autonomy customers who purchased both hardware and software. The list of Autonomy's top 40 contracts by revenue omitted at least two contracts involving only the sale of hardware, as well as other contracts that might have alerted HP to questionable accounting practices by Autonomy. U.S. authorities believe that the omissions from the lists of top 40 customers and top 40 contracts were intended to conceal Autonomy's questionable accounting practices. Moreover, U.S. authorities believe the omissions were intended to conceal the significance of its hardware sales. U.S. authorities believe Autonomy failed to disclose that it engaged in substantial sales of third-party computer hardware, without modification and unaccompanied by any Autonomy software, because omitting this information made Autonomy look like a quickly growing software company rather than a more slowly growing hardware company.

In or after 2012, after the acquisition, HP commenced an internal investigation into accounting improprieties, disclosure failures, and misrepresentations by Autonomy, including one of its subsidiaries, Autonomy Systems Limited (ASL), with a registered office in Berkshire, England. The internal investigation revealed extensive errors in ASL's previously-issued financial statements.

4

USAO 00003584

On or about February 15, 2013, ASL hired Ernst & Young LLP, a U.K. accounting firm with offices at Apex Plaza, Forbury Road, Reading, Berkshire RGI IYE (+44 118 928 1100) and 1 More London Place, London, SE1 2AF (+44 20 7951 2000), to audit the financial statements of ASL, as ASL is required to file accurate audited financial statements in the United Kingdom. Ernst & Young LLP performed extensive audit work, and by December 2013, it had incurred approximately £1.6 million in fees.

On or about January 31, 2014, ASL issued its Report and Financial Statements for the 10 month-period ending October 31, 2011, which restated ASL's previously-issued financial statements for the year ending December 31, 2010, principally relating to the recognition of revenue and costs (the ASL Report).[1] As a result, ASL's revenue for the year ending December 31, 2010, was substantially reduced. The financial results in the ASL Report reflected adjustments for transactions by other Autonomy subsidiaries, which contributed to Autonomy's overall revenue in 2010 and the first two quarters of 2011. The ASL Report thus quantified the magnitude by which Autonomy's published annual and quarterly reports had been misstated.

The ASL Report included a report by Ernst & Young LLP, signed by one of its partners, David Hales, in which Ernest & Young LLP stated that it could not express an opinion on the financial statements. Ernst & Young LLP listed various reasons for its disclaimer of opinion, stating that "[i]f additional information and evidence had been available to the [Board of Directors of ASL], including information that might be identified from the ongoing investigations, further adjustments might have been required to the reported results." Ernst & Young LLP also stated that, regardless of its disclaimer of an opinion on the financial statements,

---

[1] After it became an HP subsidiary, ASL delayed filing the restatement as it investigated possible irregularities.

5

it held the opinion that the information given in the ASL Report for the financial year for which the financial statements were prepared were consistent with the financial statements.

The United States anticipates Ernst & Young's audit work papers will help establish the falsity of the Autonomy financial statements upon which HP relied in making its decision to proceed with the acquisition.

## THE OFFENSES

There are no new offenses under investigation since the transmission of the Original Request.

## PERSONS AND ENTITIES INVOLVED

There are no new persons and entities involved since the transmission of the Original Request.

## ASSISTANCE REQUESTED

### Business Records

A. For the period July 1, 2011, to October 31, 2011, please provide complete certified copies of non-privileged records from Slaughter and May relating to the data room known as Project Daniel 1Room, including:

1. Documents placed in the Project Daniel 1Room;

2. E-mails to users of the Project Daniel 1Room;

3. Documents provided by Autonomy for placement in the Project Daniel 1Room;

4. Documents that show the location of the servers where the Project Daniel 1Room was maintained; and

5. Documents that show the location of the servers where from which e-mails to users of the Project Daniel 1Room were sent.

6

To the extent the documents requested in (4) and (5) are not available, please provide a sworn statement from a person at Slaughter and May with knowledge as to the location of the servers.

B.  For the period 2013 to 2014, please provide complete certified copies of records from Ernst & Young LLP relating to its engagement to audit the financial statements of ASL and/or any Autonomy affiliate, including:

1. All work papers relating to the engagement;
2. All documents provided by ASL and/or Autonomy in the audit;
3. All permanent files;
4. All billing records; and
5. All communications between ASL, Autonomy, and Ernst & Young LLP.

## PROCEDURES TO BE FOLLOWED

### Business Records

Under United States law, foreign business records are usually admitted into evidence in a proceeding in the United States after the party offering them proves, through the testimony at trial of a qualified witness, that:

1. The records produced are true and accurate copies of original records in the custody of the business;
2. The business made or kept the originals in the ordinary course of business and as a regular business practice; and
3. The originals were made, at or near the time of the occurrence of the transactions they record, by a person who either had knowledge of those transactions or received the information from a person with such knowledge.

The testimony of a qualified witness may be unnecessary at trial in the United States where that witness makes or provides a written declaration in a foreign jurisdiction (*i.e.*, the United

USAO 00003587

Kingdom) that (1) contains essentially the same information noted in items one through three above and (2) subjects the witness to criminal penalties under the laws of the foreign jurisdiction if the declaration is false.

In accordance with Article 8(5) of the Treaty, please have the appropriate authorities in the United Kingdom do the following:

1. Require each bank/business official producing records to complete, and sign the attached Certificate of Authenticity of Business Records (Appendix A).

2. Attach the completed certificate to the corresponding records produced by the bank/business official and transmit the records with certificate, through or as directed by the Central Authority for the United Kingdom, to the U.S. Department of Justice, Criminal Division, Office of International Affairs.

In accordance with Article 10(2) of the Treaty, please invite each bank/business official producing records to appear, if it should become necessary, at a date to be determined, in San Francisco, California, at the expense of the United States government, to testify at trial.

### CONTACT

Please contact Trial Attorney Erin Mikita at the Office of International Affairs at +1-202-305-1643 or Erin.Mikita@usdoj.gov should you have any questions concerning this request. We thank you for your continued assistance in this matter concerning Autonomy Corporation.

28 April 2017
Date

Jason E. Carter
Acting Deputy Director
Office of International Affairs
Criminal Division
U.S. Department of Justice

8

**APPENDIX A**
**CERTIFICATE OF AUTHENTICITY OF BUSINESS RECORDS**

I, _____ (Name), attest on penalty of criminal punishment for false statement or false attestation that I am employed by _____ (Name of Business from which documents are produced) and that my official title is _____ (Official Title). I further state that each of the records attached hereto is the original or a duplicate of the original of records in the custody of _____ (Name of Business from which documents are produced). I further state that:

    A) such records were made at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;

    B) such records were kept in the course of a regularly conducted business activity;

    C) the business activity made the records as a regular practice; and

    D) if any of such records is not the original, such record is a duplicate of the original.

_____ (Signature)

_____ (Date)

Sworn to or affirmed before me, _____ (Name), a ____ (notary public, judicial officer, etc.), this _____ day of _____, 20_____.

USAO 00003589