# EXHIBIT T

NATIONAL REVIEW | NEWS | LAW & THE COURTS

# Former Justice Department Attorney Warns That Prosecutorial Abuses Go Beyond FISA Process



The Justice Department building in Washington, D.C., February 1, 2018 (Jim Bourg/Reuters)

By **JACK CROWE**
February 13, 2020 3:00 PM

> In a memo, Ankush Khardori, who recently left the DOJ, alleges the misuse of another obscure bureaucratic mechanism to skirt statutes of limitations.

Department of Justice prosecutors' penchant for exploiting their information advantage over judges at the expense of defendants' civil liberties may not be limited to the FISA process, according to a striking internal memo obtained by NATIONAL REVIEW.



9/26/23, 10:46 AM   Justice Department Ankush Khardori Memo: Prosecutorial Abuses Go Beyond FISA Process | National Review

Case 3:18-cr-00577-CRB   Document 221-21   Filed 09/29/23   Page 3 of 5

The existence of the memo, which was drafted by then–DOJ prosecutor Ankush Khardori, was first reported by the *Wall Street Journal* earlier this month. In it, Khardori makes the case that another obscure bureaucratic process that relies on transparency and a certain level of trust has been routinely weaponized to circumvent the protections afforded to defendants by statutes of limitation.

Khardori, who was on administrative leave while being investigated for an unrelated, allegedly unauthorized media leak about misconduct among senior officials, submitted the memo to the DOJ inspector general on January 31, just before he resigned from his position. In it, he alleges that senior officials in the DOJ's Fraud Section allowed prosecutors to needlessly file Mutual Legal Assistance Treaty (MLAT) requests to foreign governments for the purpose of buying time to build cases that would otherwise be constrained by statutes of limitation. It can take months or even years for a foreign government to respond to such a request, during which time a case remains open even if the statute of limitations on the charges has passed.

Khardori specifically charges that Fraud Section chief Robert Zink, Market Integrity and Major Fraud (MIMF) Unit chief Brian Kidd, and MIMF assistant chief Henry Van Dyck presided over a culture in which MLAT abuses were routinely overlooked or even encouraged. (The DOJ and the inspector general's office declined to comment on the memo's allegations.) He writes that he witnessed evidence of such abuses in two cases he worked on during his time at the DOJ: the prosecution of Robert Bogucki, the former global head of fixed-income trading at Barclays PLC who was accused but ultimately acquitted of "front-running," and the prosecution of Bank of America Merrill Lynch traders accused of a price-manipulation tactic known as "spoofing."

\* \* \*

The memo alleges that prosecutors sought Bogucki's travel records from the United Kingdom in an MLAT request in August 2016, days before the five-year statute of limitations on the case's central conduct was set to expire. Once he was assigned to the existing case, Khardori writes that he reviewed the MLAT request, which had already been drafted, and determined that it was pretextual. He shared his concerns with fellow prosecutors along with an article by a former national-security prosecutor about how the MLAT statute was vulnerable to abuse. "HAHAHAHAHHAAH!" one colleague wrote back in response. "The National Security Division wouldn't recognize a statute of limitations if it punched them in the face. I give this guy no credit," wrote another.

Undeterred, Khardori writes that he then shared his concerns with his superiors, Zink and Kidd, who also ignored them until the missteps he pointed out threatened to derail Bogucki's prosecution. In a series of emails and conversations, Khardori argued that because Barclays had, up to that point, gone out of its way to cooperate in order ensure a swift resolution to the case, and had actually signed a commitment to continue cooperating with authorities as part of a previous settlement, reliance on the MLAT "made no sense."

Khardori writes that he was also troubled by the appearance that prosecutors assigned to the case had "dragged their feet" when responding to questions about the MLAT request. "In a normal situation, prosecutors respond to those types of questions quickly — that is, if they actually want the evidence," the memo reads.

The section's senior officials only began to pay attention to Khardori's concerns after the MLAT was challenged by Bogucki's attorneys. The government eventually abandoned the MLAT after a district court judge agreed to hear the defense's challenge and ordered the government to provide discovery. That likely would have yielded a number of emails in which Khardori warns his fellow prosecutors — as well Zink and Kidd — that they should not rely on the MLAT.

According to Bogucki's attorney, the entire exercise was clearly pointless, because the prosecutor who filed the MLAT request already had the travel records it sought in her email inbox from a previous round of discovery. And even if that hadn't been the case, the requested documents could probably have been obtained through a subpoena, because the hotel and airline companies at issue have significant footprints in the U.S.

\* \* \*

After losing the Bogucki case, rather than reforming the MLAT process to avoid further issues, Kidd held a meeting with "dozens of other prosecutors present" in which he admitted that the MLAT that had derailed the case was pretextual, Khardori writes. According to his memo, however, Kidd "suggested such conduct would be tolerated if it was not memorialized 'in writing.'"

9/26/23, 10:46 AM  Justice Department Ankush Khardori Memo: Prosecutorial Abuses Go Beyond FISA Process | National Review

Case 3:18-cr-00577-CRB Document 221-21 Filed 08/29/23 Page 4 of 5

Following the case, Khardori was assigned in 2018 to work on a case involving "spoofing," which in the context of financial transactions refers to making an offer only to intentionally withdraw it in order to manipulate the price of the desired asset. The case involved two former Bank of America Merrill Lynch traders. It would have been closed due to the statute of limitation before Khardori was assigned to it if not for an MLAT request. Khardori writes that he intended to rely on the MLAT to defend the timeliness of the charges, until a colleague warned him that he should first review internal emails from the time the request was filed. When he did so, he discovered that a prosecutor on the case had explicitly referred to the time limit imposed by the statute of limitation in an email reminding colleagues that the MLAT request needed to be filed urgently. Kidd was copied on that email and remained "expressionless" when Khardori told him it was cause for concern.

While Khardori worked directly on only two cases that allegedly relied on fraudulent MLAT requests to circumvent statutes of limitation, the response he received from senior officials when he raised concerns led him to believe it is common practice in the section.

"The participation in and tolerance of this conduct by senior, veteran Department personnel in the Section — particularly Mr. Zink and Mr. Kidd, both of whom have worked in the Department for approximately 10 years — suggests that they may have engaged in such conduct in their own careers and cases," the memo reads. "It also suggests that they may have advised or instructed others to engage in such conduct in their cases, or otherwise tolerated such behavior." The number of MLAT requests filed also suggests the DOJ has come to rely more heavily on the process, for whatever reason. There were 1,178 such requests filed in 2016 compared to just 497 in 2014.

\* \* \*

These seemingly arcane legal matters raise important questions about prosecutorial misconduct and defendants' rights, some legal experts say. Even if they aren't ultimately charged, prolonging an investigation past the applicable statute of limitation can do substantial harm to defendants. In many cases, it empowers the government to seize an accused's private communications and other documents when a search warrant is issued and, if the individual is charged, it exposes them to immense reputational harm.

"Statutes of limitation are there for a reason: Evidence grows cold, memory grows cold. People shouldn't be placed in a situation of having to defend themselves from allegations that are years old," said John Eastman, a professor at the Chapman University Law School. He added that in cases involving opaque financial transactions, circumventing the statute of limitations can also have dire consequences for a person's ability to exonerate himself: "Even the IRS only requires you to keep tax records for a certain number of years, so you've now discarded the evidence that would allow you to vindicate yourself."

The conduct Khardori describes in the memo mirrors the misconduct detailed in the FISA warrant filed to surveil Carter Page as part of the DOJ's investigation of the 2016 Trump campaign. In both cases, prosecutors selectively withheld information that could have made the presiding judges skeptical. Both FISA and MLAT applications are filed with judges who make rulings without hearing from the defense. The defendants in both cases were not entitled to review the applications, which made the judges' expectation of total transparency all the more vital. And the prosecutors in both cases not only selectively withheld information but also eliminated any potential evidence of their abuse: In the case of the Page FISA application, this was accomplished by substantively doctoring an email, and in the case of the MLAT requests discussed in Khardori's memo, it was allegedly done by consciously avoiding the creation of a paper trail.

In the memo, Khardori argues that the responsible parties, specifically Kidd and Zink, violated both ethical rules and criminal statutes by intentionally misleading federal judges: "In the two episodes described earlier, the circumstantial evidence indicates that there was a deliberate effort to deceive the relevant judges into believing that the Section had, in fact, made its requests for foreign evidence because of a legitimate interest in obtaining that evidence."

When the IG exposed the abuses Carter Page was subjected to, his defenders surmised that his treatment resulted from the institution's animus toward President Trump, but no such motive exists in the cases that Khardori's memo refers to, which suggests that the practices exposed by the IG in the Page case are not confined to the prosecution of political targets. And *that* should be cause for broad, bipartisan concern.

*Send a tip to the news team at* NR.

➜ **BACK TO NEWS**

📋 5 Comments      ↩ Share

Case 3:18-cr-00577-CRB   Document 221-21   Filed 09/29/23   Page 5 of 5