# EXHIBIT 2

# United States District Court

FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## CRIMINAL DIVISION

VENUE: SAN FRANCISCO

UNITED STATES OF AMERICA,

**V.**

GREGORY L. REYES
and
STEPHANIE JENSEN

# CR 06 0556

**CRB**

DEFENDANT.

# INDICTMENT

18 U.S.C. § 371 - Conspiracy
15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5 - Securities Fraud
18 U.S.C. §§ 1341, 1346 - Mail Fraud
15 U.S.C §§ 78 m (b)(2)(A), 78m(b)(5) and 78ff and 17 C.F.R. §
240.13b2-1 - Falsifying Books, Records and Accounts
18 U.S.C. §2 - Aiding and Abetting

A true bill.

_____
Foreman

Filed in open court this 10th day of
August 2006 .

_____
**KAREN L. HOM**
Clerk

JOSEPH C. SPERO
UNITED STATES MAGISTRATE JUDGE

Bail, $ no proc

**DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT**

BY: ☐ COMPLAINT ☐ INFORMATION ☐ INDICTMENT
☐ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA

**OFFENSE CHARGED**

See Attachment.

☐ Petty
☐ Minor
☐ Misdemeanor
☐ Felony

**DEFENDANT - U.S.**

► GREGORY REYES

FILED
AUG 10 2006
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**DISTRICT COURT NUMBER**

CR 06 0556

CRB

**PENALTY:**

See Attachment.

**PROCEEDING**
**Name of Complainant Agency, or Person (&Title, if any)**

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. Att'y ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

SHOW
DOCKET NO.

MAGISTRATE
CASE NO.

**Name and Office of Person Furnishing Information on THIS FORM**

KEVIN V. RYAN

☐ U.S. Att'y ☐ Other U.S. Agency

**Name of Asst. U.S. Att'y (if assigned)**

CHRISTOPHER J. STESKAL

**DEFENDANT**

**IS NOT IN CUSTODY**

1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

Northern District of California

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

☐ Fed'l ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No
If "Yes" give date filed

**DATE OF ARREST** ►
Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ►
Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☐ WARRANT   Bail Amount:

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address:

Date/Time:

Before Judge:

Comments:

## ATTACHMENT

COUNT ONE: 18 U.S.C. § 371 (Conspiracy to Commit Securities and Mail Fraud)

Five years in prison; $250,000 fine; 3 years supervised release; $100 special assessment.

COUNT TWO: 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. §240.10b-5, 18 U.S.C. § 2 (Fraud in Connection with Brocade Stock; Aiding, Abetting and Willfully Causing)

20 years in prison; $5,000,000 fine; 3 years supervised release; $100 special assessment.

COUNTS THREE AND FOUR: 18 U.S.C. §§ 1341, 1346 and 2 (Mail Fraud; Deprivation Of Right To Honest Services; Aiding, Abetting and Willfully Causing)

20 years in prison; $250,000 fine; 3 years supervised release; $100 special assessment.

COUNT FIVE, SIX, AND SEVEN: 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, 18 U.S.C. § 2 (False SEC Filing; Aiding, Abetting and Willfully Causing)

20 years in prison; $5,000,000 fine; 3 years supervised release; $100 special assessment.

COUNT EIGHT: 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5) and 78ff, 17 C.F.R. § 240.13b2-1, and 18 U.S.C. § 2 (Falsifying Books, Records, and Accounts; Aiding, Abetting and Willfully Causing)

20 years in prison; $5,000,000 fine; 3 years supervised release; $100 special assessment.

COUNTS NINE THROUGH TWELVE: 15 U.S.C. 78ff, 17 C.F.R. § 240.13b2-2, 18 U.S.C. § 2 (False Statement to Accountant; Aiding, Abetting and Willfully Causing)

20 years in prison; $5,000,000 fine; 3 years supervised release; $100 special assessment.

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☐ INDICTMENT
☐ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA

*FILED*

### OFFENSE CHARGED

See Attachment.

☐ Petty
☐ Minor
☐ Misde-meanor
☐ Felony

**DEFENDANT - U.S.**

AUG 10 2006

▶ STEPHANIE JENSEN

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**DISTRICT COURT NUMBER**

PENALTY:

See Attachment.

# CR  06  0556

**CRB**

### PROCEEDING

**Name of Complaintant Agency, or Person (&Title, if any)**

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. Att'y ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under ▶

SHOW DOCKET NO.

MAGISTRATE CASE NO.

**DEFENDANT**

**IS *NOT* IN CUSTODY**

1) ☐ Has not been arrested, pending outcome this proceeding.
If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

Northern District of California

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

☐ Fed'l ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No

If "Yes" give date filed

**DATE OF ARREST**

Month/Day/Year

Or... if Arresting Agency & Warrant were not

**Name and Office of Person Furnishing Information on THIS FORM**

KEVIN V. RYAN

☐ U.S. Att'y ☐ Other U.S. Agency

**DATE TRANSFERRED TO U.S. CUSTODY** ▶

Month/Day/Year

**Name of Asst. U.S. Att'y (if assigned)**

CHRISTOPHER J. STESKAL

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:

☐ SUMMONS ☐ NO PROCESS* ☐ WARRANT  Bail Amount:

If Summons, complete following:

☐ Arraignment ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:

Before Judge:

Comments:

## ATTACHMENT

<u>COUNT ONE</u>: 18 U.S.C. § 371 (Conspiracy to Commit Securities and Mail Fraud)

Five years in prison; $250,000 fine; 3 years supervised release; $100 special assessment.

<u>COUNT TWO</u>: 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. §240.10b-5, 18 U.S.C. § 2 (Fraud in Connection with Brocade Stock; Aiding, Abetting and Willfully Causing)

20 years in prison; $5,000,000 fine; 3 years supervised release; $100 special assessment.

<u>COUNTS THREE AND FOUR</u>: 18 U.S.C. §§ 1341, 1346 and 2 (Mail Fraud; Deprivation Of Right To Honest Services; Aiding, Abetting and Willfully Causing)

20 years in prison; $250,000 fine; 3 years supervised release; $100 special assessment.

<u>COUNT FIVE, SIX, AND SEVEN</u>: 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, 18 U.S.C. § 2 (False SEC Filing; Aiding, Abetting and Willfully Causing)

20 years in prison; $5,000,000 fine; 3 years supervised release; $100 special assessment.

<u>COUNT EIGHT</u>: 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5) and 78ff, 17 C.F.R. § 240.13b2-1, and 18 U.S.C. § 2 (Falsifying Books, Records, and Accounts; Aiding, Abetting and Willfully Causing)

20 years in prison; $5,000,000 fine; 3 years supervised release; $100 special assessment.

KEVIN V. RYAN (CSBN 118321)
United States Attorney

FILED
AUG 10 PM 4: 41
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**CRB**

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | CR No. **06 0556** |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | VIOLATIONS: 18 U.S.C. § 371 – Conspiracy; 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5 – Securities Fraud; 18 U.S.C. §§ 1341, 1346 – Mail Fraud; 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5) and 78ff and 17 C.F.R. § 240.13b2-1 – Falsifying Books, Records, and Accounts; 18 U.S.C. § 2 – Aiding and Abetting |
| GREGORY L. REYES and STEPHANIE JENSEN, | ) | |
| Defendants. | ) | |
| | ) | SAN FRANCISCO VENUE |

INDICTMENT

The Grand Jury charges:

I. BACKGROUND

At all times relevant to this Indictment:

A. The Company

1.     Brocade Communications Systems, Inc. ("Brocade") was a Delaware corporation with its headquarters in San Jose, California. Brocade developed, marketed, sold, and supported data storage networking products and services.

2.     Brocade was a publicly held corporation whose shares were registered with and traded under the symbol "BRCD" on the National Association of Securities Dealers Automated Quotation system ("NASDAQ"), a national securities exchange that uses the means and

1  instrumentalities of interstate commerce and the mails.

2  3.  As a public company, Brocade was required to comply with regulations of the

3  United States Securities and Exchange Commission (the "SEC"). Those regulations are designed

4  to protect members of the investing public by, among other things, ensuring that a company's

5  financial information is accurately recorded and disclosed to the public.

6  4.  Under SEC regulations, Brocade and its officers also had a duty to: (a) make and

7  keep books, records and accounts that fairly and accurately reflected the company's business

8  transactions; (b) devise and maintain a system of internal accounting controls sufficient to

9  provide reasonable assurances that the company's transactions were recorded as necessary to

10  permit preparation of reliable financial statements; and (c) file quarterly reports (on Form 10-Q)

11  and annual reports (on Form 10-K) with the SEC. Brocade's Forms 10-Q and 10-K included

12  audited financial statements, which purported to reflect any charges associated with

13  compensating employees.

14  5.  Between May 1999 and June 2002, Arthur Andersen LLP, a public accounting

15  firm, acted as the outside auditors of Brocade's financial statements. Between June 2002 to the

16  present, KPMG LLP ("KPMG"), a public accounting firm, acted as the outside auditors of

17  Brocade's financial statements.

18  6.  Brocade's fiscal year ended on the last Saturday in the month of October.

19  B.  The Defendants.

20  7.  The Defendant GREGORY L. REYES served as Chief Executive Officer

21  ("CEO") of Brocade from July 1998 until January 2005. REYES was also President and a

22  member of Brocade's Board of Directors from July 1998 to May 2001. From May 2001 until

23  January 2005, REYES served as Chairman of the Board of Directors of Brocade. From January

24  2005 to July 2005, REYES continued as a member of the Board of Directors of Brocade and

25  acted as a consultant to the company. He left the company in July 2005.

26  8.  The Defendant STEPHANIE JENSEN served as Vice President of Human

27  Resources for Brocade from October 1999 until February 2004. Beginning in 2000, JENSEN

28  reported directly to REYES. JENSEN worked as a consultant to Brocade from February 2004

INDICTMENT                                    -2-

1     until August 2004, when she retired from Brocade.

2     C. Brocade's Purported Stock Option Granting Practices And Procedures.

3     9.     Beginning in May 1999, Brocade became a public company and its business
4 quickly experienced substantial growth. Like other technology companies in Silicon Valley,
5 Brocade faced significant competition to hire and retain qualified personnel. Brocade's
6 management believed that Brocade's success depended in part on Brocade's ability to hire and
7 retain qualified personnel.

8     10.     Brocade used stock options to recruit and retain qualified personnel. Those stock
9 options gave employees the right to purchase Brocade stock in the future at a set exercise or
10 "strike" price. Through stock options, Brocade's management and Board hoped to create an
11 incentive for Brocade's employees to contribute to Brocade's success by sharing in the potential
12 future appreciation of Brocade's stock.

13     11.     As CEO and a member of Brocade's Board, REYES was granted sole authority
14 from Brocade's Board to grant stock options to all Brocade employees except for certain officers
15 and directors. As such, REYES was the Compensation Committee for the Board of Directors –
16 in effect, a "committee of one" – for purposes of granting stock options to such employees.

17     D. Relevant Accounting Rules.

18     12.     As REYES and JENSEN knew, Brocade did not record any compensation
19 expenses in its publicly filed financial statements for the millions of stock options it granted to
20 employees because it purported to grant the options at a price equal to the market price of
21 Brocade's stock on the dates of the grants and because it claimed that the recipients of the stock
22 options were employees on the dates of the grants.

23     13.     Brocade's public filings represented that Brocade accounted for its stock option
24 grants in accordance with generally accepted accounting principles ("GAAP"), including
25 Accounting Principles Board Opinion No. 25, "Accounting for Stock Issued to Employees"
26 ("APB 25"). Under GAAP, a company was not required to record any compensation expenses
27 for an employee stock option grant where, among other things, the exercise price of the grant was
28 equal to the market price of the company's stock on the date of the grant. Such stock option

INDICTMENT                   -3-

1 grants are "at-the-money" because they have no intrinsic value on the date of the grant. In
2 contrast, a company was required to record a compensation expense for a stock option grant
3 where the exercise price of the grant was less than the market price of the company's stock on the
4 date of the grant. Such stock option grants are "in-the-money" because they have intrinsic value
5 on the date of the grant. In addition, under GAAP, a company that granted stock options to a
6 non-employee was required to recognize a compensation expense. Likewise, a company was
7 required to recognize a compensation expense if it cancelled an existing stock option grant and
8 reissued the stock options to an employee at a more favorable price.

9 14. REYES and JENSEN knew that Brocade would incur a compensation expense if
10 it granted in-the-money stock options, granted stock options to a non-employee, repriced an
11 existing stock option grant, or canceled an existing stock option grant and regranted the stock
12 options with a more favorable exercise price.

13 15. In Brocade's Forms 10-K for its fiscal years 2000, 2001, 2002, and 2003, signed
14 by REYES, Brocade stated that it followed GAAP, including APB 25, and except in a few minor
15 instances, it did not disclose any compensation expenses in connection with its stock option
16 grants.

17 ## II. THE SCHEME TO DEFRAUD

18 16. Beginning in or about 2000 and continuing to in or about 2004, within the
19 Northern District of California, and elsewhere, the defendants GREGORY L. REYES,
20 STEPHANIE JENSEN, and others knowingly and intentionally devised, and intended to devise,
21 a scheme and artifice to defraud Brocade, its Board, its shareholders, its auditors, the public, and
22 the SEC as to a material matter, to obtain money and property for themselves and others by
23 means of materially false and fraudulent pretenses, representations, and promises, and to deprive
24 Brocade of its intangible right to their and other employees' honest services.

25 17. It was part of the scheme and artifice to defraud that REYES, JENSEN, and
26 others, directly and indirectly:

27     a. backdated Committee meeting minutes of the Board of Directors and
28 similar documents so that it appeared that the Committee met and stock options were granted and

INDICTMENT -4-

1  priced at the market value of Brocade's stock on dates when the value of Brocade's stock was

2  relatively low, when in fact no such meetings occurred and the options were not granted on those

3  dates;

4              b.     backdated employment offer letters and other personnel records for certain

5  employees so that those employees could be placed on stock option grants that were purportedly

6  made and priced when the market value of Brocade's stock was relatively low and so that it

7  appeared that those employees were actually employed by Brocade on the grant dates, when in

8  fact they were not;

9              c.     cancelled or altered existing stock option grants so that certain employees

10  who had already been granted stock options could be moved to later grants with a lower exercise

11  price;

12              d.     made and caused to be made fraudulent entries into Brocade's financial

13  books and records;

14              e.     made and caused to be made materially false and misleading statements

15  and material omissions to outside auditors; and

16              f.     filed and caused to be filed materially false and misleading financial

17  statements with the SEC.

18         18.     The object and purpose of the scheme to defraud were to grant Brocade employees

19  valuable in-the-money stock options while hiding the true nature and value of the stock option

20  grants from Brocade, its Board, its shareholders, its auditors, the public, and the SEC and while

21  avoiding the recognition of a compensation expense in Brocade's financial statements.

22      A.  The Backdating Of The Committee Meeting Minutes Of The Board Of Directors And
        Similar Documents.

23

24         19.     It was part of the scheme and artifice to defraud that, beginning in or about 2000,

    REYES and JENSEN systematically granted extra compensation to Brocade employees by

25  granting in-the-money stock options while making it appear that the stock options were granted

26  at-the-money and had no intrinsic value on the date of grant.

27         20.     REYES and JENSEN picked the exercise price for stock option grants by using

28  the following procedure. REYES and JENSEN reviewed the historical closing prices for

INDICTMENT                        -5-

1  Brocade's stock since the last stock option grant and choose the date that corresponded with a
2  relatively low closing price for Brocade's stock. REYES and JENSEN then backdated the
3  Committee meeting minutes of the Board of Directors and similar documents so that it appeared
4  that the Committee meeting occurred and the stock options were approved on the historical date
5  when the closing price of Brocade's stock was relatively low and that REYES granted the
6  options at the market value of Brocade's stock on that date.

7  B. The Backdating Of Employment Offer Letters And Personnel Records.

8  21.  It was a further part of the scheme and artifice to defraud that REYES and
9  JENSEN caused employment offer letters and similar records to be backdated so that certain
10  employees could be placed on earlier stock option grants that were purportedly made and priced
11  when the market value of Brocade's stock was relatively low and so that it appeared that those
12  employees were actually employed by Brocade on the dates of the grants.

13  22.  To assure certain employees favorable stock option prices, REYES and JENSEN
14  added those employees to backdated Committee meeting minutes for the Board of Directors that
15  purported to grant the employees stock options on dates when Brocade's stock price was
16  relatively low.  Because the employees were not in fact employed by Brocade on the purported
17  grant dates, REYES and JENSEN caused offer letters and other records to be backdated so that
18  the records falsely represented that the employees began their employment at Brocade on the
19  dates that they were granted stock options.  In addition, for certain employees, REYES and
20  JENSEN also altered Committee meeting minutes for the Board of Directors and altered
21  employment records so that those employees who had already been granted stock options could
22  be removed from earlier stock option grants and placed on later stock option grants that had a
23  more favorable exercise price.

24  C. False Statements To Brocade's Auditors And Others.

25  23.  It was a further part of the scheme and artifice to defraud that REYES and
26  JENSEN made and caused to be made materially false and misleading statements to Brocade's
27  auditors and others in connection with the filing of the company's SEC Form 10-Qs and 10-Ks.

28  24.  The backdated and altered Committee meeting minutes, employment offer letters,

INDICTMENT                    -6-

1. and similar documents described above were provided to Brocade's finance department.

2. Brocade's finance department and outside auditors relied on the dates and prices entered on those

3. documents to prepare Brocade's financial statements. REYES and JENSEN never disclosed to

4. Brocade's finance department, its outside auditors, its Board, or the investing public that the

5. Committee meeting minutes, employment offer letters, and similar documents were backdated

6. and altered and that Brocade was granting valuable in-the-money stock options to both

7. employees and non-employees. Moreover, because the documents were backdated and altered,

8. Brocade did not record compensation expenses for its stock option grants and the investing

9. public was unaware of the true nature of Brocade's stock option grants and stock option granting

10. process.

11. 25. In addition, in a letter dated November 18, 2002, for the fiscal year ended October

12. 26, 2002, REYES made false and misleading representations to Brocade's outside auditor,

13. KPMG, including the following false and misleading representations:

14. a. "The consolidated financial statements [for the fiscal year 2002] are fairly

15. presented in conformity with accounting principles generally accepted in the United States of

16. America."

17. b. "We have made available to you [a]ll financial records and related data

18. [and] [a]ll minutes of meetings of . . . committees of directors . . . ."

19. c. "There have been no . . . [i]nstances of fraud [footnote omitted], whether

20. or not material, involving management or other employees who have a significant role in internal

21. controls" or "[i]nstances of fraud involving others that could have a material effect on the

22. consolidated financial statements."

23. d. "There are no significant deficiencies in the design or operation of internal

24. controls which could adversely affect the Company's ability to record, process, summarize and

25. report financial data, and we have identified no material weakness in internal controls [footnote

26. omitted]."

27. e. "There are no . . . [m]aterial transactions that have not been properly

28. recorded in the accounting records underlying the consolidated financial statements."

INDICTMENT                                    -7-

f. "Stock-related awards to employees have been accounted for in accordance with the provisions of APB Opinion No. 25, 'Accounting for Stock Issued to Employees.'"

26. In a certification dated January 22, 2003 and filed with Brocade's Form 10K for the fiscal year ended October 26, 2002, REYES made false and misleading representations to Brocade's outside auditor, KPMG, and others, including the following false and misleading representations:

a. "Based on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report";

b. "Based on my knowledge, the financial statements, and other financial information included in this annual report, fairly present in all material respects the financial condition, results of operations and cash flows of [Brocade] as of, and for, the periods presented in this annual report";

c. "[Brocade's] other certifying officer and I have disclosed, based on our most recent evaluation, to [Brocade's] auditors and the audit committee of [Brocade's] board of directors (or persons performing the equivalent functions): a. all significant deficiencies in the design or operation of internal controls which could adversely affect [Brocade's] ability to record, process, summarize and report financial data and have identified for [Brocade's] auditors any material weakness in internal controls; and b. any fraud, whether or not material, that involves management or other employees who have a significant role in [Brocade's] internal controls".

27. In a letter dated November 14, 2003, for the fiscal years ended October 25, 2003 and October 26, 2002, REYES made false and misleading representations to Brocade's outside auditor, KPMG, including the following false and misleading representations:

a. "The consolidated financial statements [for the fiscal years 2002 and 2003] are fairly presented in conformity with accounting principles generally accepted in the United

INDICTMENT                                    -8-

1   States of America."

2           b.    "We have made available to you [a]ll financial records and related data
3   [and] [a]ll minutes of meetings of . . . committees of directors . . . ."

4           c.    "There are no . . . [m]aterial transactions that have not been properly
5   recorded in the accounting records underlying the consolidated financial statements."

6           d.    "There are no significant deficiencies in the design or operation of internal
7   controls, which could adversely affect the Company's ability to record, process, summarize and
8   report financial data and we have identified no material weakness in internal controls."

9           e.    "We have no knowledge of any fraud or suspected fraud affecting
10  [Brocade] involving [m]anagement [or] [e]mployees who have significant roles in internal
11  control . . . ."

12          f.    "Stock-related awards to employees have been accounted for in
13  accordance with the provisions of APB Opinion No. 25, 'Accounting for Stock Issued to
14  Employees.'"

15      28.    In a certification dated January 20, 2004 and filed with Brocade's Form 10K for
16  the fiscal year ended October 25, 2003, REYES made false and misleading representations to
17  Brocade's outside auditor, KPMG, and others, including the following false and misleading
18  representations:

19          a.    "Based on my knowledge, this report does not contain any untrue
20  statement of a material fact or omit to state a material fact necessary to make the statements
21  made, in light of the circumstances under which such statements were made, not misleading with
22  respect to the period covered by this report";

23          b.    "Based on my knowledge, the financial statements, and other financial
24  information included in this report, fairly present in all material respects the financial condition,
25  results of operations and cash flows of [Brocade] as of, and for, the periods presented in this
26  report";

27          c.    "[Brocade's] other certifying officer(s) and I have disclosed, based on our
28  most recent evaluation of internal control over financial reporting, to [Brocade's] auditors and

INDICTMENT          -9-

1  the audit committee of [Brocade's] board of directors (or persons performing the equivalent
2  functions): a. All significant deficiencies and material weaknesses in the design or operation of
3  internal control over financial reporting which are reasonably likely to adversely affect
4  [Brocade's] ability to record, process, summarize and report financial information; and b. Any
5  fraud, whether or not material, that involves management or other employees who have a
6  significant role in [Brocade's] internal control over financial reporting".

## III. THE RESTATEMENT.

8      29.    In or about January 2005, the Audit Committee of Brocade's Board made a
9  preliminary determination that Brocade and its auditors could not rely on the accuracy of the
10 Committee meeting minutes and similar documents signed by REYES. To calculate the stock-
11 based compensation expenses for its stock option grants using the "fixed" accounting method
12 disclosed in its previous financial statements, Brocade was required to determine the actual grant
13 date for each stock option grant. However, REYES's and JENSEN's backdating scheme
14 prevented Brocade from determining the dates when the stock option grants were actually made.
15 Thus, Brocade could not calculate the appropriate stock-based compensation expense using
16 "fixed" accounting under APB 25.

17     30.    Because REYES's and JENSEN's backdating scheme prevented Brocade from
18 determining the actual dates when REYES granted stock options, Brocade decided to restate its
19 financials to record stock-based compensation expenses using an alternate accounting method
20 called "variable" accounting under APB 25. Under "variable" accounting, the value of each
21 stock option grant is calculated at the end of each reporting period and results in either a
22 compensation expense or credit depending on whether the exercise price of the stock option grant
23 is below or above the market value of Brocade's stock.

24     31.    On January 24, 2005, Brocade announced that the Audit Committee had
25 completed the internal investigation and that it would restate its financial statements with the
26 following impact: (1) net loss from the 2004 fiscal year increased from $2 million to $32 million;
27 (2) net loss for the fiscal year 2003 increased from $136 million to $147 million; (3) income
28 from fiscal year 2002 increased from $60 million to $126 million; and (4) income for fiscal years

INDICTMENT                       -10-

1   | 1999 through 2001 declined by a total of \$304 million.

2   | 32.   On May 16, 2005, Brocade announced that the Audit Committee had determined

3   | that Brocade must extend the restatement of its financial statements to account for additional

4   | stock-based compensation expenses for stock options granted from August 2003 through

5   | November 2004.  The additional charges resulted in a cumulative increase in stock-based

6   | compensation expenses of \$0.8 million over fiscal year 2003 and 2004.

7   | COUNT ONE: 18 U.S.C. § 371 (Conspiracy to Commit Securities and Mail Fraud)

8   | 33.   Paragraphs 1 through 32 are realleged as if fully set forth here.

9   | 34.   Beginning in or about 2000, and continuing up to in or about 2004, in the

10  | Northern District of California and elsewhere, the defendants

11  |
12  |
GREGORY L. REYES and
STEPHANIE JENSEN

13  | did knowingly and willfully conspire to commit offenses against the United States, namely, (a)

14  | fraud in connection with the purchase and sale of securities issued by Brocade, in violation of

15  | Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal

16  | Regulations, Section 240.10b-5; (b) mail fraud, in violation of United States Code, Sections 1341

17  | and 1346; (c) falsified books, records, and accounts of Brocade, in violation of Title 15, United

18  | States Code, Sections 78m(b)(2)(A), 78m(b)(5) and 78ff, and Title 17, Code of Federal

19  | Regulations, Section 240.13b2-1; and (d) false and misleading statements and omissions of

20  | material fact in reports and documents required to be filed under the Securities Exchange Act of

21  | 1934 and the rules and regulations thereunder, in violation of Title 15, United States Code,

22  | Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

23  | OVERT ACTS

24  | 35.   In furtherance of the conspiracy and to effect the objects thereof, in the Northern

25  | District of California and elsewhere, the defendants and others committed the acts described in

26  | paragraphs 17 through 28 of this Indictment, which are hereby realleged as if fully set forth here,

27  | and the following additional overt acts:

28  | a.   REYES and JENSEN backdated Committee meeting minutes of the Board

INDICTMENT                    -11-

1 of Directors so that the minutes falsely reported that a meeting occurred on October 30, 2001 and

2 that stock options were granted on that day and priced at the market value of Brocade's stock on

3 that day.

4           b.      REYES and JENSEN backdated Committee meeting minutes of the Board

5 of Directors so that the minutes falsely reported that a meeting occurred on November 28, 2001

6 and that stock options were granted on that day and priced at the market value of Brocade's stock

7 on that day.

8           c.      REYES and JENSEN backdated Committee meeting minutes of the Board

9 of Directors so that the minutes falsely reported that a meeting occurred on January 22, 2002 and

10 that stock options were granted on that day and priced at the market value of Brocade's stock on

11 that day.

12           d.      REYES and JENSEN backdated Committee meeting minutes of the Board

13 of Directors so that the minutes falsely reported that a meeting occurred on February 28, 2002

14 and that stock options were granted on that day and priced at the market value of Brocade's stock

15 on that day.

16       All in violation of Title 18, United States Code, Section 371.

17 COUNT TWO: 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. §240.10b-5, 18 U.S.C. § 2 (Fraud in

18 Connection with Brocade Stock; Aiding, Abetting and Willfully Causing)

19       36.      Paragraphs 1 through 32 are realleged as if fully set forth here.

20       37.      Beginning in or about 2000, and continuing up to in or about 2004, in the

21 Northern District of California and elsewhere, the defendants

22 GREGORY L. REYES and<br>STEPHANIE JENSEN

23

24 did knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities

25 of interstate commerce, the mails, and the facilities of national securities exchanges, use and

26 employ manipulative and deceptive devices and contrivances in connection with the purchase

27 and sale of securities issued by Brocade, in violation of Title 17, Code of Federal Regulations,

28 Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud as to a material

INDICTMENT           -12-

1  matter; (b) making and causing Brocade to make untrue statements of material fact and omitting

2  to state facts necessary in order to make the statements made, in light of the circumstances under

3  which they were made, not misleading; and (c) engaging in acts, practices, and courses of

4  business which operated and would operate as a fraud and deceit upon purchasers of Brocade

5  securities.

6  All in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code

7  of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

8  COUNTS THREE AND FOUR: 18 U.S.C. §§ 1341, 1346 and 2 (Mail Fraud; Deprivation Of

9  Right To Honest Services; Aiding, Abetting and Willfully Causing)

10  38.  Paragraphs 1 through 32 are incorporated here by reference.

11  39.  Beginning in or about 2000, and continuing up to in or about 2004, within the

12  Northern District of California and elsewhere, for the purpose of executing a scheme and artifice

13  to defraud as to a material matter, to obtain money and property for themselves and others by

14  means of materially false and fraudulent pretenses, representations, and promises, and the

15  concealment of material facts, and to deprive their employer Brocade of its intangible right to

16  their and other employees' honest services, defendants

17  GREGORY L. REYES and
STEPHANIE JENSEN

18

19  did knowingly cause the following items to be delivered by a private and commercial interstate

20  carrier according to the direction thereon:

| Count | Approximate Date | Form of Communication | Description |
|-------|------------------|-----------------------|-------------|
| THREE | January 2002 | Commercial Carrier (Federal Express) | Employment offer letter to Employee One dated October 30, 2001 offering stock option grant for 500,000 shares of Brocade stock; sent to Employee One from Brocade's headquarters in San Jose, California. |
| FOUR | April 2002 | Commercial Carrier (Federal Express) | Employment offer letter to Employee Two dated January 28, 2002 and offering stock option grant for 500,000 shares of Brocade stock; sent to Employee Two from |

INDICTMENT                    -13-

1  Brocade's headquarters in San Jose, California.

All in violation of Title 18, United States Code, Sections 1341, 1346 and 2.

COUNT FIVE: 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, 18 U.S.C. § 2 (False SEC Filing; Aiding, Abetting and Willfully Causing)

40.     Paragraphs 1 through 32 are realleged as if fully set forth here.

41.     On or about January 24, 2002, in the Northern District of California and elsewhere, the defendants

GREGORY L. REYES and
STEPHANIE JENSEN,

in a Form 10-K filed with the SEC for the fiscal year ended October 27, 2001, did knowingly and willfully make and cause Brocade to (a) make untrue statements of material fact and (b) omit to state material facts necessary to make the statements made not misleading.

42.     Specifically, the Form 10-K:

        a.      Falsely represented that Brocade did not incur compensation expenses in connection with its stock option grants made during fiscal year 2001.

        b.      Omitted to disclose that Brocade granted stock options during fiscal year 2001 with exercise prices that were below the market value of Brocade's stock on the grant dates and that Brocade incurred compensation expenses in connection with such stock option grants.

        c.      Falsely represented that Brocade accounted for its stock option grants in accordance with the provisions of APB 25 whereby the difference between the exercise price and the fair market value at the date of grant is recognized as compensation expense.

        d.      Omitted to disclose that fraudulent entries relating to stock option grants were made in the books and records of the company.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

///

///

///

INDICTMENT                          -14-

**COUNT SIX:** 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, 18 U.S.C. § 2 (False SEC Filing; Aiding, Abetting and Willfully Causing)

43.     Paragraphs 1 through 32 are realleged as if fully set forth here.

44.     On or about January 22, 2003, in the Northern District of California and elsewhere, the defendants

GREGORY L. REYES and
STEPHANIE JENSEN,

in a Form 10-K filed with the SEC for the fiscal year ended October 26, 2002, did knowingly and willfully make and cause Brocade to (a) make untrue statements of material fact and (b) omit to state material facts necessary to make the statements made not misleading.

45.     Specifically, the Form 10-K:

a.      Falsely represented that Brocade did not incur compensation expenses in connection with its stock option grants made during fiscal year 2002.

b.      Omitted to disclose that Brocade granted stock options during fiscal year 2002 with exercise prices that were below the market value of Brocade's stock on the grant dates and that Brocade incurred compensation expenses in connection with such stock option grants.

c.      Falsely represented that Brocade accounted for its stock option grants in accordance with the provisions of APB 25 whereby the difference between the exercise price and the fair market value at the date of grant is recognized as compensation expense.

d.      Omitted to disclose that fraudulent entries relating to stock option grants were made in the books and records of the company.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

///

///

///

///

///

INDICTMENT                                        -15-

COUNT SEVEN: 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, 18 U.S.C. § 2 (False SEC Filing; Aiding, Abetting and Willfully Causing)

46.     Paragraphs 1 through 32 are realleged as if fully set forth here.

47.     On or about January 20, 2004, in the Northern District of California and elsewhere, the defendants

GREGORY L. REYES and
STEPHANIE JENSEN,

in a Form 10-K filed with the SEC for the fiscal year ended October 25, 2003, did knowingly and willfully make and cause Brocade to (a) make untrue statements of material fact and (b) omit to state material facts necessary to make the statements made not misleading.

48.     Specifically, the Form 10-K:

a.     Falsely represented that Brocade did not incur compensation expenses in connection with its stock option grants made during fiscal year 2003.

b.     Omitted to disclose that Brocade granted stock options during fiscal year 2003 with exercise prices that were below the market value of Brocade's stock on the grant dates and that Brocade incurred compensation expenses in connection with such stock option grants.

c.     Falsely represented that Brocade accounted for its stock option grants in accordance with the provisions of APB 25 whereby the difference between the exercise price and the fair market value at the date of grant is recognized as compensation expense.

d.     Omitted to disclose that fraudulent entries relating to stock option grants were made in the books and records of the company.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

///
///
///
///
///

INDICTMENT                                    -16-

1. COUNT EIGHT: 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5) and 78ff, 17 C.F.R. § 240.13b2-1, and

2 18 U.S.C. § 2 (Falsifying Books, Records, and Accounts; Aiding, Abetting and Willfully

3 Causing)

4      49.    Paragraphs 1 through 32 are realleged as if fully set forth here.

5      50.    Beginning in or about 2000, and continuing up to in or about 2004, in the

6 Northern District of California and elsewhere, the defendants

7 <br>
GREGORY L. REYES and
STEPHANIE JENSEN

8

9 did knowingly and willfully, directly and indirectly, falsify and cause to be falsified books,

10 records, and accounts of Brocade as to a material matter.

11     All in violation of Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(5) and

12 78ff; Title 17, Code of Federal Regulations, Section 240.13b2-1; and Title 18, United States

13 Code, Section 2.

14 COUNTS NINE THROUGH TWELVE: 15 U.S.C. 78ff, 17 C.F.R. § 240.13b2-2, 18 U.S.C. § 2

15 (False Statement to Accountant; Aiding, Abetting and Willfully Causing)

16      51.    Paragraphs 1 through 32 are realleged as if fully set forth here.

17      52.    On or about the following dates, in the Northern District of California and

18 elsewhere, the defendant

19 <br>
GREGORY L. REYES

20 did knowingly and willfully make and cause to be made materially false and misleading

21 statements and omissions to Brocade's auditors in connection with the audit and examination of

22 Brocade's financial statements for the fiscal years indicated, and in connection with the

23 preparation of documents and reports required to be filed with the SEC, and did knowingly and

24 willfully omit to state material facts necessary in order to make statements made, in light of the

25 ///

26 ///

27 ///

28 ///

INDICTMENT                   -17-

circumstances under which such statements were made, not misleading.

| Counts | Approximate Date | Description |
|--------|------------------|-------------|
| NINE | November 18, 2002 | Management representation letter to KPMG for fiscal year ended October 26, 2002. |
| TEN | January 22, 2003 | Certification filed with Brocade's Form 10-K for the fiscal year ended October 26, 2002. |
| ELEVEN | November 14, 2003 | Management representation letter to KPMG for the fiscal years ended October 25, 2003 and October 26, 2002. |
| TWELVE | January 20, 2004 | Certification filed with Brocade's Form 10-K for the fiscal year ended October 25, 2003. |

All in violation of Title 15, United States Code, Section 78ff; Title 17, Code of Federal

Regulations, Section 240.13b2-2; and Title 18, United States Code, Section 2.

DATED: July 20, 2006                                A TRUE BILL.

FOREPERSON

KEVIN V. RYAN
United States Attorney

MARK L. KROTOSKI
Chief, Criminal Division

(Approved as to form:

AUSA Christopher J. Steskal

INDICTMENT                                -18-