PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States,
Acting Under Authority Conferred by 28 U.S.C. § 515

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA GREEN (NYBN 5226204)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email: Robert.Leach@usdoj.gov
          Adam.Reeves@usdoj.gov
          Kristina.Green@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-577 CRB |
| Plaintiff, | UNITED STATES' MOTION FOR FOREIGN DEPOSITIONS UNDER RULE 15 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE |
| v. | |
| MICHAEL RICHARD LYNCH, and STEPHEN KEITH CHAMBERLAIN, | Date: November 1, 2023<br>Time: 1:30 p.m.<br>Court: Hon. Charles R. Breyer<br>       Courtroom 6, 17th Floor |
| Defendants. | |

U.S.' MOT. FOR RULE 15 DEPOSITIONS
18-CR-577 CRB

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 1, 2023, at 1:30 p.m., or on such other date and time as the Court may order, in Courtroom 6 of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Charles R. Breyer, the United States will and hereby does move the Court to order depositions of the following witnesses located in the United Kingdom: Marc Geall, David Toms, Fernando Lucini, Sean Blanchflower, Christopher Goodfellow, and Ian Black. The Motion is based on the Memorandum of Points below, the record in this case and *United States v. Sushovan Hussain*, CR 16-462 CRB, and any other matters that the Court deems appropriate.

DATED: September 29, 2023

Respectfully submitted,

PATRICK D. ROBBINS
Attorney for the United States,
Acting Under Authority Conferred by
28 U.S.C. § 515

*/s/ Robert S. Leach*
ROBERT S. LEACH
ADAM A. REEVES
KRISTINA GREEN
Assistant United States Attorneys

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The government respectfully seeks the Court's assistance in securing the testimony of six witnesses from a foreign country who, to date, have not accepted service of subpoenas to testify in the trial, beginning March 18, 2024. Five of those witnesses testified in the related case, *United States v. Sushovan Hussain*, CR 16-462 CRB, and are familiar to the Court. One is Autonomy Corporation plc's former head of investor relations, who reported directly to Defendant Michael Lynch, left Autonomy in part because of concerns that Lynch was misleading investors, and who ultimately became an analyst covering Autonomy securities. One is an analyst who directly questioned Lynch about whether Autonomy was selling low-margin hardware (as opposed to high-margin software), only to be falsely told Autonomy had no interest in that. Three are former Autonomy product developers who help establish that certain transactions lacked economic substance and were not accounted for correctly. A final witness, who did not testify in the *Hussain* trial, spoke directly with Lynch on the day of Hewlett-Packard Co.'s $11 billion acquisition of Autonomy and observed the destruction of documents in the final days of Lynch's employment at HP.

Because these witnesses are unavailable and their testimony is material, the Court should order that they be deposed under Federal Rule of Criminal Procedure 15 so their testimony can be used at trial.

### FACTS

On November 29, 2018, the Grand Jury returned an indictment charging Lynch and Chamberlain with one count of conspiracy to commit wire fraud and thirteen counts of wire fraud. ECF No. 1. On March 21, 2019, the Grand Jury returned a superseding indictment, adding a count of securities fraud against Lynch and an additional conspiracy charge against Lynch and Chamberlain. ECF No. 21. The superseding indictment generally alleges Lynch and Chamberlain engaged in a fraudulent scheme to deceive purchasers and sellers of Autonomy securities about the true performance of Autonomy's business, including by artificially inflating revenue figures, and making false and misleading statements to Autonomy's independent auditor, market analysts, and regulators. *Id.* ¶¶ 19, 22. It alleges Lynch and Chamberlain made "false and misleading statements that Autonomy was a 'pure software' company

while concealing the fact that Autonomy was engaged in hidden, loss-making resales of hardware, separate from its disclosed practice of selling 'appliances.'" *Id.* ¶ 22(e). The superseding indictment also alleges Lynch and Chamberlain conspired to commit offenses against the United States, including obstruction. *Id.* ¶ 31-34. Lynch "vigorously contested extradition for nearly four years." ECF No. 146.

The government disclosed in its preliminary witness list and seeks to call at trial six foreign witnesses who have not agreed to accept service of a subpoena: Marc Geall, David Toms, Fernando Lucini, Sean Blanchflower, Christopher Goodfellow, and Ian Black. The following summarizes their anticipated testimony:

**Marc Geall.** Lynch recruited Geall to Autonomy in 2008. *Hussain* Trial Transcript (Tr.) at 815-16.[1] Geall shared an office with Hussain next to Lynch's. *Id.* at 816. Over time Lynch asked Geall to take a more active role in investor relations. *Id.* at 819. Geall recalled Lynch's displeasure when Geall was unable to manage the consensus earnings of analysts following Autonomy. *Id.* at 828-831 ("Mike was pretty vocal in his displeasure . . . he was swearing at me across the boardroom table"). Autonomy management paid close attention to gross margins because its "equity story" was built around its high gross margins. *Id.* at 833-34 (the "purity of the business model" was "the foundation of the growth story and the business model"). He reviewed with Chamberlain, Hussain, and Lynch frequent investor questions and Autonomy's answers to a public investor bulletin board – answers which proved to be false. *Id.* at 841-42 ("we do not do barter deals . . . I would have discussed [this] . . . with Sushovan and Steve Chamberlain"), 845-846 (similar re Lynch), & 897-902 (Lynch and Hussain caused false post to board stating "there were no Q4/09 revenues from Microlink" to try to allay concerns Autonomy's purchase of Microlink was a means to conceal earlier "channel stuffing").

In the third quarter of 2009, Geall expressed to Lynch concerns that a new product Autonomy was touting (SPE) was similar to an older technology (NCorp), and that Autonomy's claims that SPE would spur Autonomy's growth rates would be challenged. *Id.* at 851, 857 ("SPE to me didn't feel like a new product"). Lynch dismissed the idea "as stupid." *Id.* at 851.

---

[1] The Geall transcript is available at ECF Nos. 283 & 282.

U.S.' MOT. FOR RULE 15 DEPOSITIONS
18-CR-577 CRB                                2

1    Geall accidentally learned of a potential, large hardware contract in the third quarter of 2009. *Id.*
2    at 855. It caused him concern because of its unusually high amount and the possible impact it had on
3    the "equity story" and the "purity" of the "software-based business model." *Id.* at 856-57. When Geall
4    correlated the size of the hardware contract to high marketing costs in the third quarter of 2009 passed
5    off as SPE marketing, he grew concerned SPE was being used to hide hardware sales. *Id.* at 857-864,
6    873-874; *id.* at 904-905. Lynch and Hussain gave Geall false and misleading answers relating to SPE to
7    pass on to investors. *Id.* at 875, 891-92.

8    Geall also introduced Lynch to investment banker Frank Quattrone, whom Lynch ultimately
9    retained to sell Autonomy. *Id.* at 852-53. Geall attended a meeting where Lynch pressured JP Morgan
10   investment bankers (eager to do more business with Autonomy) to induce a JP Morgan analyst (Daud
11   Khan) to soften his negative research of Autonomy. *Id.* at 902-03.

12   Geall ultimately left Autonomy because he was "uncomfortable in terms of . . . some of the
13   questions that we've obviously discussed today [in his *Hussain* testimony]." *Id.* at 904-906; *id.* at 905
14   ("I was coming to" the "conclusion" "SPE was being used to mask hardware sales"); *id.* at 907
15   (describing concerns about Autonomy's OEM business).

16   Geall became an analyst at Deutsche Bank. He started covering Autonomy. Even with his
17   experience at Autonomy, he was unable to discern from Autonomy's public reports that it was selling
18   millions of dollars in hardware, which he would have found relevant to his assessment of Autonomy's
19   securities because it would have indicated Autonomy was not a pure software business. *Id.* at 921-923.

20   Geall testified in the *Hussain* case. He is represented by Swanson & McNamara LLP.
21   9/29/2023 Declaration of Robert S. Leach in Support of United States' Motion for Foreign Depositions
22   Under Rule 15 of the Federal Rules of Criminal Procedure ("Leach Decl.") ¶ 2. To date, counsel for Mr.
23   Geall has not agreed to accept service of a subpoena. *Id.* The government understands Mr. Geall
24   resides in or near London and would not contest being deposed in London. *Id.*

25   **David Toms.** Toms worked as an analyst covering Autonomy. *Hussain* Trial Tr. at 5251.[2]
26   During a conference call with analysts announcing Autonomy's first quarter of 2010 results, Toms noted

---

[2]   The Toms transcript is available at ECF No. 382.

U.S.' MOT. FOR RULE 15 DEPOSITIONS
18-CR-577 CRB                                         3

in Autonomy's balance sheet approximately $10 million in "stock" (inventory) that was "unusual." *Id.* at 5253-5259; *id.* at 5254 ("Seeing stock in software companies is quite unusual. Stock is something more associated with companies that are selling physical items . . . ."). During the call, Lynch and Hussain lied and attributed it to an appliance (hardware and software combined) rather than hardware alone. *Id.* at 5254-55; *see also* Leach Decl. Ex. A (*Hussain* Trial Ex. 766 at 6, 9). And in response to a direct question by Toms, Lynch gave the following false and misleading statement:

> David, I think you may have misunderstood what that revenue is. It's not hardware revenue. What it is the selling of an appliance. So you may be familiar with Google appliances or the Barracuda appliances. We have very little interest in just selling hardware . . . So what we are not doing here is acting as a generic company that resells hardware, like Morse or something like that. Obviously those people do that business and we have no interest in it.

Leach Decl. Ex. A (*Hussain* Trial Ex. 766 at 13); *Hussain* Trial Tr. at 5258 ("[Lynch] said, 'We're not in that business.'"); *see also* ECF No. 21 (superseding indictment alleging Lynch told the market "we have no interest" in selling hardware).

In subsequent quarters, Toms wrote an analyst report indicating Autonomy's revenue was "potentially flattered by hardware sales" but emphasized that was just an inference. *Hussain* Trial Tr. at 5267. He affirmed that he had no idea that Autonomy had sold hardware acquired from other manufacturers that was not an appliance, devoid of software, in an amount approximating $99 million. *Id.* at 5268-69. He confirmed that fact would have been relevant because of its impact on margins. *Id.*; *see also id.* at 5270-71.

Toms testified in the *Hussain* trial. After unsuccessful efforts to contact Toms through his prior counsel, the government recently connected with Mr. Toms at his new employer. The government understands Mr. Toms is in the process of possibly retaining new counsel. He has yet to indicate whether he will agree to accept service of a subpoena. Leach Decl. ¶ 4.

**Fernando Lucini Gonzalez-Parado.** Lucini testified in the *Hussain* case. He was cited 11 times in the Court's Order Denying Motions for New Trial and Judgment of Acquittal in the *Hussain* case. *See* CR 16-462 CRB, ECF No. 419 at p.21, 41, 44, and 45 & n.14, 43, 51, 100, 138, 285 ("Rule 29 Order").

In the *Hussain* trial, Lucini helped establish that Autonomy lacked excess electronic-data discovery ("EDD") work, and thus had no economic need to purchase EDD services from a reseller (Capax) who owed for Autonomy software it could not resell. Rule 29 Order at 7; *Hussain* Trial Tr. at 1468-71.[3] He helped establish that multi-million-dollar transactions with a reseller, FileTek, were "merely paying FileTek to enable it to recognize revenue." Rule 29 Order at 10; *Hussain* Trial Tr. at 1440-46. Lucini testified about Autonomy's failed efforts to license software directly to the Vatican – leading Autonomy to ink a backdated $11 million deal with MicroTech (a U.S. reseller focused on federal government work) even though "the parties understood MicroTech was not actually on the hook for paying." Rule 29 Order at 11. Lucini also testified about a failed transaction with a Spanish media company (Prisa) – which led Autonomy to ink a backdated $3.6 million transaction with DiscoverTech (another U.S. reseller, with no Spanish presence) which lacked economic substance. *Id.* at 16. Lucini "said that very little work [was] being done to develop and market SPE when Lynch said it was." *Id.* at 21.

Lucini submitted three separate witness statements in parallel civil case in the United Kingdom against Lynch raising similar allegations. Leach Decl. ¶¶ 5-7, Exs. B, C, & D. The witness statements covered topics overlapping his *Hussain* trial testimony and included senior Autonomy personnel (¶¶ 5-11), SMS (sales) calls (¶¶ 12-13), SPE (¶¶ 14-23), research and development costs in Q32009 (¶¶ 24-30), third party software (¶¶ 36-37), FileTek (¶¶ 38-46), DiscoverTech software (¶¶ 51-56), and the Vatican (¶¶ 57-70). *Id.*

Lucini is represented by Swanson & McNamara LLP. To date, counsel for Lucini has not agreed to accept service of a subpoena. The government understands Lucini resides in or near Cambridge. Leach Decl. ¶ 8.

**Christopher Goodfellow.** Goodfellow testified in the *Hussain* case.[4] He was cited 7 times in the Court's Rule 29 Order. Rule 29 Order at p.21, 41, 44, and 45 & n.10.

---

[3] The Lucini transcript is available at ECF No. 285.

[4] The Goodfellow transcript is available at ECF No. 286.

1    In the *Hussain* trial, Goodfellow helped establish that "Autonomy had no use for [FileTek]
2    software." Rule 29 Order at 10 n.42 (citing *Hussain* Trial Tr. at 1691-1715, 1783-84). He described
3    Autonomy's failed efforts to sell software to the Vatican. *Id.* at 11 at n.51 (citing *Hussain* Trial Tr. at
4    1738). He testified to a transaction in the fourth quarter of 2010, where Autonomy claimed to sell
5    hardware that Autonomy was using in its own data centers but never actually delivered. Rule 29 Order
6    at 15 n.89 (citing *Hussain* Trial Tr. at 1722-33). Goodfellow also testified about the failed transaction
7    with Prisa, the Spanish media company. *Id.* at 16.

8    Goodfellow submitted three separate witness statements in the parallel UK case against Lynch.
9    Leach Decl. ¶¶ 9-11, Exs. E, F, G. The witness statements covered topics overlapping his *Hussain* trial
10   testimony and included transactions with VMS (¶¶ 42-65), FileTek (¶¶ 66-79 and supplemental
11   statement ¶¶ 21-22), a reciprocal transaction with MicroTech (¶¶ 86-90), hardware (supplemental
12   statement ¶¶ 5-9), and a transaction with DiscoverTech (supplemental statement ¶¶ 10-20). Leach Decl.
13   *Id.*

14   Goodfellow is represented by Swanson & McNamara LLP. To date, counsel for Goodfellow has
15   not agreed to accept service of a subpoena. The government understands he resides in the United
16   Kingdom. Leach Decl. ¶ 12.

17   **Sean Blanchflower.** Blanchflower testified in the *Hussain* case.[5] He was cited 4 times in the
18   Court's Rule 29 Order. Rule 29 Order at n.42, 52 & p.44-45.

19   In the *Hussain* trial, Blanchflower helped establish that "Autonomy had no use for [FileTek]
20   software." *Id.* at 10 at n.42 (citing *Hussain* Trial Tr. at 1123-29). He also described Autonomy's failed
21   efforts to sell software to the Vatican. *Id.* at 11 at n.52 (citing *Hussain* Trial Tr. at 1135-37). He
22   described how Autonomy acquired software from NCorp in the early 2000s and then, in 2009, was
23   asked to "showcase . . . some new technology that we would create to demonstrate effectively the same
24   kind of functionality that the NCorp had." *Hussain* Trial Tr. at 1105-1106. SPE was not "a radical
25   technology" as touted by Lynch. *Id.* at 1122. Blanchflower also testified that the costs attributed to SPE
26   did match what he observed. *Id.* at 1117-1120.

---

[5] The Blanchflower transcript is available at ECF No. 282.

Blanchflower is represented by Swanson & McNamara LLP.  To date, counsel for Blanchflower has not agreed to accept service of a subpoena.  The government understands Blanchflower resides in or near Cambridge and would not contest being deposed in London.  Leach Decl. ¶ 13.

**Ian Black**.  Black was Autonomy's Head of Global Operations.  He was interviewed by the government on January 25, 2019.  Leach Decl. ¶ 14 Ex. H.  According to the FBI's memorandum of interview, Black was with Lynch on the day HP acquired Autonomy.  "Lynch was a little unusual that day and was not his confident self. . . . Lynch was convinced the deal would not go through and voiced concerns to [Andy] Kanter [Autonomy's General Counsel]."  *Id.* at p.4.  Lynch, according to Black, expressed relief at "never going to have to close another quarter."  *Id.*  Black added that Lynch "had previously had huge anxiety around quarters" and he had "never seen this sense of relief before from LYNCH."  *Id*.

Lynch also made statements to Black about his control of the limited due diligence provided to HP: "LYNCH . . . motioned to a small stack of papers and said boasting 'That's all they are fucking getting.'"  *Id.*

Black also recalled an instance where Autonomy destroyed documents.  *Id.* at 6.  "BLACK recalled two lorries in the back of the Autonomy building in Cambridge that were there shredding hard drives.  This was before LYNCH left. . . . BLACK asked [Peter Menell, another Lynch confidant] about it and MENELL did not give a real answer."  *Id.*

Black is represented by Swanson & McNamara LLP.  To date, Black's counsel has not agreed to accept service of a subpoena.  The government understands Black resides in or near London and would not contest being deposed in London.  Leach Decl. Ex. 15.

## ARGUMENT

I.  **LEGAL STANDARD**

Federal Rule of Criminal Procedure Rule 15(a)(1) provides: "A party may move that prospective witness be deposed in order to preserve testimony for trial.  The court may grant the motion because of exceptional circumstances and in the interest of justice."  FED. R. CRIM. P. 15(a)(1).

A district court has broad discretion to grant a Rule 15 motion to take depositions. *See United States v. Olafson*, 213 F.3d 435, 442 (9th Cir. 2000); *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998). Such a motion should be granted where the moving party shows that "exceptional circumstances" exist to justify the deposition. *United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993); *United States v. Kelley*, 36 F.3d 1118, 1124-25 (D.C. Cir. 1994). Although district courts should consider the particular circumstances of each case to determine whether the "exceptional circumstances" requirement has been satisfied, courts generally consider whether the witness is unavailable and the testimony is material. *See Kelley*, 36 F.3d at 1125; *Omene*, 143 F.3d at 1170; *United States v. Rodriguez-Sifuentes*, 637 Fed. Appx. 1016 (9th Cir. 2016); *United States v. Thomas*, 62 F.3d 1332, 1340-41 (11th Cir. 1995). "When a prospective witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness requires permitting the moving party to preserve that testimony – by deposing the witness – absent significant countervailing factors which would render the taking of the deposition unjust." *Drogoul*, 1 F.3d at 1552; *see also United States v. Ismaili*, 828 F.2d 153, 159 (3d Cir. 1987).

"Exceptional circumstances" justifying a Rule 15 deposition include the possible unavailability of a foreign witness who is unable or refuses to travel to the United States. *See Rodriguez-Sifuentes*, 637 Fed. Appx. at 1017; *Drogoul*, 1 F.3d at 1552-53; *United States v. Sindona*, 636 F.2d 792, 803 (2d Cir. 1980). "'It would be unreasonable and undesirable to require the government to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition.'" *Drogoul*, 1 F.3d at 1553 (quoting *United States v. Sines*, 761 F.2d 1434, 1439 (9th Cir. 1993)). In addition, a moving party is not required to show materiality conclusively in order to obtain and preserve testimony for possible later use at trial. *See Rodriguez-Sifuentes*, 637 Fed. Appx. at 1017; *Omene*, 143 F.3d at 1170.

Once Rule 15 depositions are taken, the moving party may introduce them only as provided by the Federal Rules of Evidence. *See* Fed. R. Crim. P. 15(f).

## II. THE WITNESSES ARE UNAVAILABLE AND THEIR TESTIMONY IS MATERIAL

Here, the standards for a Rule 15 deposition are satisfied for Geall, Toms, Lucini, Goodfellow, Blanchflower, and Black. Each resides outside the United States and thus is beyond the subpoena power of the Court. Each has yet to agree to accept service of a subpoena, despite the government's diligent efforts to secure an agreement. Thus, the witnesses are unavailable. *See United States v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998) ("Here, the Canadian witnesses were unavailable for trial because they were beyond the subpoena power of the United States and refused voluntarily to attend.").

Additionally, the testimony of each witness is material. The indictment alleges one of the means and methods of the scheme to defraud was "[m]aking false and misleading statements to market analysts covering Autonomy." ECF No. 21 ¶ 22(c). Geall and Toms were two such analysts. Toms attributes false and misleading statements to the market about Autonomy's hardware practices directly to Lynch. Moreover, Geall will help establish that false and misleading statements on Autonomy's investor relations board are attributable to Lynch and Chamberlain; that Lynch used strong-arm tactics with analysts indicative of consciousness of guilt; and that Lynch's public statements about SPE were a ruse to conceal hardware expenses.

Testimony from Lucini, Goodfellow, and Blanchflower is also material. The indictment alleges one of the means and methods of the scheme to defraud was artificially inflating revenue through reciprocal or roundtrip transactions and recording revenue where the elements of the relevant accounting standards were not satisfied. ECF No. 21 ¶ 22(a). Lucini, Goodfellow, and Blanchflower each provide testimony about a transaction with a VAR, FileTek, when "Autonomy had no use for [FileTek] software." Rule 29 Order at 10 at n.42. Lucini provided testimony on no fewer than eight topics that were a subject of evidence in the *Hussain* trial on a similar indictment. *See* Leach Decl. Exs. B, C, & D (senior autonomy personnel, SMS calls, SPE, research and development costs in Q32009, third party software, FileTek, DiscoverTech software, the Vatican). Goodfellow has provided testimony on five such topics. *See* Leach Decl. Exs. E, F, & G. And Blanchflower provides relevant testimony on multiple topics. *See, e.g.*, Rule 29 Order at n.42, *Hussain* Trial Tr. at 1105-1106, 1122, & 1117-1120.

U.S.' MOT. FOR RULE 15 DEPOSITIONS
18-CR-577 CRB                                          9

Finally, Black, as demonstrated by the FBI memorandum of his interview, is expected to testify that Lynch made statements bearing significantly on Lynch's mental state on the day of the HP acquisition. Black also helps to establish the conspiracy alleged in Count 17 through his statements about destruction of evidence.

### III. THE COURT SHOULD ORDER THE DEPOSITIONS TO BE TAKEN IN THE UNITED KINGDOM WITHOUT LYNCH'S PRESENCE, AS SET FORTH IN RULE 15(c)

Federal Rule of Criminal Procedure 15(c)(3) provides:

> The deposition of a witness who is outside the United States may be taken without the defendant's presence if the court makes case-specific findings of all the following:
>
>     (A) the witness's testimony could provide substantial proof of a material fact in a felony prosecution;
>
>     (B) there is a substantial likelihood that the witness's attendance at trial cannot be obtained;
>
>     (C) the witness's presence for a deposition in the United States cannot be obtained;
>
>     (D) the defendant cannot be present because:
>
>     . . . .
>
>         (iii) for an out-of-custody defendant, no reasonable conditions will assure an appearance at the deposition or at trial or sentencing; and
>
>     (E) the defendant can meaningfully participate in the deposition through reasonable means.

The Court should make these case-findings with respect to Lynch.[6] For the reasons set forth above, each of the witnesses' testimony provides substantial proof of a material fact in this felony prosecution. Because the witnesses are outside the United States and have yet to accept service of a subpoena despite diligent efforts, there is a substantial likelihood that the witness's attendance at trial cannot be obtained. For those same reasons, the witnesses' presence for a deposition in the United

---

[6] The Ninth Circuit in *Medjuck* held that unavailability and a similar opportunity for the defendant to participate remotely satisfied the Confrontation Clause. *Accord, e.g., United States v. Benson*, No. 21CR3086-GPC-MDD, 2022 WL 538947, at *2 (S.D. Cal. Feb. 23, 2022); *United States v. Mothafar*, No. 3:20-CR-00506-HZ, 2021 WL 5605185, at *2 (D. Or. Nov. 29, 2021).

States cannot be obtained. Finally, the Court has found Lynch's "flight from prosecution appears to this Court to be almost a certainty." ECF No. 146 at 2. Lynch currently is confined to an address in San Francisco, guarded by a private security company, having surrendered his travel documents, and subject to strict supervision by Pretrial Services. *Id.* at 8-9. He has deposited a significant part of his net worth with the Court. It does not appear that there are reasonable conditions that would permit Dr. Lynch to attend a deposition in the United Kingdom in person, and thus the provisions of Rule 15(c)(3)(D)(iii) are satisfied.

Finally, Lynch can meaningfully participate in the deposition through remote video access to the deposition and his counsel. Video will provide Lynch the ability to see and hear the witness and consult with his counsel, who will have no restrictions on whether they can be physically present.[7]

## CONCLUSION

For these reasons, the Court should grant the motion and order depositions of Marc Geall, David Toms, Fernando Lucini, Sean Blanchflower, Christopher Goodfellow, and Ian Black.

DATED: September 29, 2023                    Respectfully submitted,

PATRICK D. ROBBINS
Attorney for the United States,
Acting Under Authority Conferred by
28 U.S.C. § 515

*/s/ Robert S. Leach*
ROBERT S. LEACH
ADAM A. REEVES
KRISTINA GREEN
Assistant United States Attorneys

---

[7] Chamberlain's conditions of release permit him to reside the United Kingdom and thus there is no impediment to his in-person appearance at any deposition.