Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437


Reid H. Weingarten
**Steptoe & Johnson LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone:  (202)429-3000


Jonathan Matthew Baum
**Steptoe & Johnson LLP**
One Market Plaza, Steuart Tower, Ste. 1070
San Francisco, CA  94105
Telephone:  (415) 365-6700

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

## NORTHERN  DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No.: 3:18-cr-00577-CRB<br><br>Judge: Hon. Charles Breyer<br><br>**DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR FOREIGN DEPOSITIONS UNDER RULE 15 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**<br><br>Date:   November 1, 2023<br>Court:  Courtroom 6 – 17th Floor<br>Date Filed:  October 13, 2023<br>Trial Date:  March 18, 2024 |

# TABLE OF CONTENTS

Page Nos.

I.   SUMMARY OF ARGUMENT ............................................................................ 1

II.   ARGUMENT ..................................................................................................... 4

   A.   The Government's Request Does Not Meet the Requirements of Rule 15 .................... 4

      1.   Extraordinary Circumstance Do Not Exist, Nor Are the Depositions in the Interest of Justice......................................................................................... 4

      2.   Logistical and Procedural Hurdles Will Undermine the Fairness of the Proceedings.. 9

      3.   Dr. Lynch Has a Right to be Present Under Rule 15 ................................................. 10

   B.   Introduction of Deposition Testimony at Trial Will Raise Serious Fifth and Sixth Amendment Concerns................................................................................................. 13

III.   CONCLUSION ................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

<u>Page Nos.</u>

<u>Cases</u>

*Barber* v. *Page*,
   390 U.S. 719 (1968) .......................................................................................... 13

*Coy* v. *Iowa*,
   487 U.S. 1012 (1988) ........................................................................................ 13

*Don* v. *Nix*,
   886 F.2d 203 (8th Cir. 1989) ............................................................................ 11

*In re Letters of Request from Supreme Court of Hong Kong*,
   821 F. Supp. 204 (S.D.N.Y. 1993) ................................................................... 11

*Maryland* v. *Craig*,
   497 U.S. 836 (1990) .................................................................................... 13, 14

*Perry* v. *Leeke*,
   488 U.S. 272 (1989) .......................................................................................... 12

*United States.* v. *Hernandez-Escarsega*,
   886 F.2d 1560 (9th Cir. 1989) ............................................................................ 5

*United States* v. *Berganza Espina*,
   4:19-CR-00228, 2021 WL 4943651 (E.D. Tex. Oct. 22, 2021) ............................ 7

*United States* v. *Carter*,
   907 F.3d 1199 (9th Cir. 2018) .......................................................................... 13

*United States* v. *Danhong Chen*,
   No. 19-CR-00111-LHK-2, 2020 WL 1322963 (N.D. Ca. Mar. 20, 2020) ............... 5

*United States* v. *Drogoul*,
   1 F.3d 1546 (11th Cir. 1993) ........................................................................ 9, 13

*United States* v. *Mann*,
   590 F.2d 361 (1st Cir. 1978) ............................................................................ 13

*United States* v. *Moalin*,
   No. 10-CR-4246, 2012 WL 3637370 (S.D. Cal. Aug. 22, 2012) .......................... 4

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO THE GOVERNMENT'S
MOTION FOR FOREIGN DEPOSITIONS UNDER
RULE 15 – 3:18-CR-00577-CRB

*United States* v. *Olafson*,
　　213 F.3d 435 (9th Cir. 2000) ........................................................... 4, 8

*United States v. Omene,*
　　143 F.3d 1167 (9th Cir. 1998) ............................................................. 4

*United States v. Reczko,*
　　818 F. App'x 701 (9th Cir. 2020) ........................................................ 8

*United States* v. *Sim,*
　　No. CR07-425JLR, 2008 WL 11391249 (W.D. Wash. July 7, 2008) ........................ 8

*United States* v. *Tao,*
　　No. 19-20052-JAR. 2022 WL 829408 (D. Kan. Mar. 9, 2022) ...................... 5

*United States* v. *Torre-Sanchez*,
　　No. 12-CR-00833, 2014 WL 4370538 (N.D. Cal. Sept. 3, 2014) ..................... 8

*United States* v. *Yates*,
　　438 F.3d 1307 (11th Cir. 2006) ......................................................... 11

*United States* v. *Zuno-Arce*,
　　44 F.3d 1420 (9th Cir. 1995) ............................................................. 4

*Williamson* v. *United States*,
　　512 U.S. 594 (1994) ...................................................................... 15

*Winzer* v. *Hall,*
　　494 F.3d 1192 (9th Cir. 2007) .......................................................... 15


**<u>Statutes and Rules</u>**

U.S. Const. Amend. VI .......................................................................... 13

Fed. R. Crim. P. 15 ......................................................................... 4, 12

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     SUMMARY OF ARGUMENT

At a pretrial conference on June 27, 2023, the government made the following statement to the Court when Mr. Chamberlain's attorney raised the prospect of Rule 15 depositions:

> Rule 15 depositions are the exception, they are not the norm. They require a showing of exceptional circumstances, and that it's in the interest of justice.  I hear what the defense is saying in terms of the length of the defense case and the desire to have Rule 15 depositions, but I'm a little skeptical that we are going to have a trial with a lot of video being played for weeks on end. There were no Rule 15 depositions in the *Hussain* case, and obviously none were played in the trial.

Pretrial Conference Tr. 19–20, June 27, 2023 (ECF No. 191).  Just three months later, the government advocates for a staggering *seven* Rule 15 depositions—six in England by this motion, plus one in Australia via a proposed stipulation with Mr. Chamberlain.[1]  While the bar is high for a defendant to get a Rule 15 deposition, it is even higher for the government because the procedure implicates the defendant's confrontation and due process rights.  The Court should deny the government's attempt to normalize the Rule 15 exception.

*First*, the government has failed to demonstrate exceptional circumstances and that it is in the interest of justice to depose six government witnesses in England.  The government's proposed witnesses, who include three engineers, two financial analysts, and a former head of operations at Autonomy and later HP, overlap not only with each other but with other witnesses who are available, including witnesses already on the government's witness list.  And the proposed testimony of the former head of operations is not only irrelevant but also confusing and

---

[1] By stipulation filed on September 29, 2023 (ECF No. 216), the government seeks a Rule 15 deposition of Matt Stephan in Australia, and Mr. Chamberlain seeks to depose Poppy Gustafsson and Lisa Harris in England. Dr. Lynch did not oppose the stipulation but preserved his right to object to other depositions. Mr. Chamberlain also seeks to depose Rob Knight in England, to which Dr. Lynch does not object.

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO THE GOVERNMENT'S
MOTION FOR FOREIGN DEPOSITIONS UNDER
RULE 15 – 3:18-CR-00577-CRB

unfairly prejudicial to Dr. Lynch.  Cumulative and inadmissible evidence does not meet Rule 15's materiality requirement and should be rejected.

*Second*, some of the six proposed government witnesses have not agreed to be deposed, meaning the government will need to resort to time-consuming diplomatic and procedural mechanisms to compel their attendance in a foreign jurisdiction.  These cumbersome procedures—which are outside the ability of the Court or the parties to control—are subject to local challenge and appeal by the deponents and may require the supervision of a foreign court. The inevitable delay flowing from foreign compulsion is a relevant factor weighing squarely against the government's request.

*Third*, such a significant volume of pretrial testimony would create imposing logistical, procedural and practical hurdles contrary to the interests of justice.  To afford proper time for a direct- and two cross-examinations of each of the ten proposed deponents (who will need to answer questions even when objections are lodged), the depositions may take two to three days each and require several weeks to complete.  And, given the significant Confrontation Clause considerations at play, the depositions cannot be double-tracked.  The process will generate weeks of video to be played before the jury at trial.  Before that can happen, however, the Court will need to resolve objections so the parties can then prepare edited videos for playback.  That process will likely also take weeks, if not longer, to complete.  Further, given the current schedule, these ten depositions would take place *before* the submission and resolution of in limine motions, meaning that testimony subject to such motions would need to be preserved pending future rulings by the Court, creating further delay.

*Fourth*, Dr. Lynch's constitutional right to confront witnesses against him face-to-face would be violated by the proposed foreign depositions.  The government suggests that Dr. Lynch

can watch the depositions over video.  Such a process, however, is not only insufficient to vindicate Dr. Lynch's constitutional rights but is also wildly unfair.  Dr. Lynch is hearing impaired and reads lips such that video testimony is difficult for him to follow.  More importantly, most of the government's proposed witnesses are highly technical engineers and financial analysts and Dr. Lynch needs to be physically present to meaningfully consult with his counsel to confront their testimony.  Video testimony would also impede the jury's ability to observe the demeanor of the witnesses and assess their credibility.

*Fifth*, in addition to the denial of Dr. Lynch's confrontation rights, allowing the government to take such a significant volume of testimony before trial would be fundamentally unfair and violate Dr. Lynch's due process rights.  The defense would need to preview for the government defense theories and lines of argument months in advance of opening statements (giving the government an extraordinary opportunity to rebut defense arguments).  Adding to the unfairness, the trial would effectively start months before picking a jury and only shortly after the government provides its final exhibit list to the defense, making adequate preparation a significant challenge.  On top of that, the jury would have to sit through weeks of video testimony on arcane scientific and financial topics.

To be clear, though Dr. Lynch does not object to Mr. Chamberlain taking three depositions to present his defense to serious criminal charges, it is fundamental to Dr. Lynch's confrontation and due process rights that government witnesses should—absent extraordinary circumstances not present here—testify in the courtroom in front of the jury where he stands accused and not in some conference or court room in a foreign country months before trial. Particularly given the number of depositions the government seeks, the cumulative burden on Dr.

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO THE GOVERNMENT'S
MOTION FOR FOREIGN DEPOSITIONS UNDER
RULE 15 – 3:18-CR-00577-CRB

1    Lynch's constitutional and statutory rights is extreme.  For these reasons, as set forth more fully

2    below, the Court should deny the government's motion for Rule 15 depositions.

3    **II.      ARGUMENT**

4         **A.      The Government's Request Does Not Meet the Requirements of Rule 15**

5              **1.      Extraordinary Circumstance Do Not Exist, Nor Are the Depositions in the Interest of Justice**

7         The government's motion to depose six witnesses (in addition to a seventh that it

8    sponsors in its proposed stipulation with Mr. Chamberlain) fails to satisfy the requirements of

9    Rule 15 that "exceptional circumstances" exist and that the depositions are in the "interest of

10   justice."  Fed. R. Crim. P. 15(a).  Whether to grant a Rule 15(a) motion is within the Court's

11   "broad discretion," considering "the particular circumstances of [the] case to determine whether

12   the exceptional circumstances requirement has been satisfied."  *United States* v. *Omene*, 143

13   F.3d 1167, 1170 (9th Cir. 1998) (internal citation and quotation marks omitted).  "The

14   exceptional circumstances requirement of Rule 15 means that 'only in extraordinary cases will

15   depositions be compelled.'"  *United States* v. *Moalin*, No. 10-cr-4246, 2012 WL 3637370, 2012

16   WL 3637370, at *1 (S.D. Cal. Aug. 22, 2012) (citation omitted).  Such circumstances do not

17   exist here.

18        Factors courts consider in deciding whether to grant a Rule 15 deposition include: (1) the

19   unavailability of the witness at trial; (2) the good faith effort by the movant to obtain the

20   witness's presence at trial; and (3) a demonstration by the movant that the expected testimony

21   would be favorable and material.  *United States* v. *Zuno-Arce*, 44 F.3d 1420, 1425 (9th Cir.

22   1995) (outlining factors).  When the proposed deposition would take place in a foreign country,

23   the court also "must consider . . . whether the deponent . . . would be willing to testify."  *United*

24

25

26

27

28

**DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR FOREIGN DEPOSITIONS UNDER RULE 15 – 3:18-CR-00577-CRB**

1   *States* v. *Olafson*, 213 F.3d 435, 442 (9th Cir. 2000).  A witness's unwillingness to appear

2   voluntarily for a deposition may engender protracted foreign litigation and delay.

3                  a.       ***The government has not established that the testimony is***

4                          ***material***

5          The government's showing as to materiality is wholly inadequate.  There is substantial

6   redundancy in the topics the government proposes to cover with the putative deponents, who

7   include three software engineers and two financial analysts, and there are also numerous

8   witnesses on the government's live trial witness list who will cover the same ground.  In

9   addition, some of the testimony the government proffers is irrelevant and prejudicial.  Where

10   deposition testimony is cumulative, irrelevant, and inadmissible, a Rule 15 deposition is properly

11   denied.  *See, e.g.*, *United States.* v. *Hernandez-Escarsega*, 886 F.2d 1560, 1569-70 (9th Cir.

12   1989) (no exceptional circumstances where expected testimony was partially irrelevant,

13   cumulative, and "possibly inadmissible as hearsay"); *United States* v. *Danhong Chen*, No. 19-

14   CR-00111-LHK-2, 2020 WL 1322963, at *4–*6 (N.D. Cal. Mar. 20, 2020) (testimony on

15   marginal issues or issues not alleged in the indictment were not material); *United States* v. *Tao*,

16   No. 19-20052, 2022 WL 829408, at *5 (D. Kan. Mar. 9, 2022) (denying deposition of witness

17   who could confirm defendant worked at a university as cumulative testimony where the

18   government had grant applications establishing the same).

19          Here, the testimony of the engineers, for example, is duplicative.  The government

20   proposes to have all three engineers—Sean Blanchflower, Fernando Lucini and Christopher

21   Goodfellow—testify about transactions involving Filetek and the Vatican, with Goodfellow and

22   Lucini also both expected to testify about deals with Prisa and DiscoverTech.  *See* Gov. Br. (ECF

23   No. 224) 5-6.  Blanchflower and Lucini are also both slated to discuss Autonomy's SPE product.

24   *See id.*  The government does not explain why three engineers are needed to cover the same

5

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO THE GOVERNMENT'S
MOTION FOR FOREIGN DEPOSITIONS UNDER
RULE 15 – 3:18-CR-00577-CRB

material.  Nor does the government explain why these engineers in particular must testify by deposition, when Autonomy employed other engineers during the same time frame, some of whom reside in the U.S. and are within the Court's subpoena power.  In fact, one of these engineers, Roger Wang, is already on the government's witness list and has previously testified about Filetek.  Other witnesses on the government's witness list also cover the same territory: Bill Loomis and Gary Szukalski (Filetek); Dave Truitt (DiscoverTech and Prisa); Steve Truitt (the Vatican); and Stouffer Egan (reseller and reciprocal transactions, including Filetek, among other topics).

The two financial analysts—David Toms and Marc Geall—also covered the same beat. The government plans to ask Toms about the Q1 2010 earnings call, *see* Gov. Br. 3-4, which was of course recorded.  Neither Geall nor Toms is needed to narrate a recorded earnings call. Notably, two other financial analysts who covered Autonomy during the same period—Daud Khan and Paul Morland—are already scheduled to testify, and there is significant overlap between their testimony and that of Geall and Toms.  And while the government suggests that Toms will testify about hardware sales, *id.* at 4, that topic is covered not only by the other analysts but also by numerous other government witnesses, including former Autonomy employees Mike Sullivan and Joel Scott, the Deloitte witnesses, HP witnesses, and many others. Anything Toms has to say about hardware is cumulative.

While such overlap amongst the various witnesses suggests at minimum that denying the depositions would not prejudice the government, some of the evidence the government proposes to obtain via deposition is also irrelevant, misleading, and unfairly prejudicial to Dr. Lynch.  For example, the government proposes to ask both Blanchflower and Geall about NCorp, software Autonomy acquired in the early 2000s that was designed to work with structured data,

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO THE GOVERNMENT'S
MOTION FOR FOREIGN DEPOSITIONS UNDER
RULE 15 – 3:18-CR-00577-CRB

presumably to argue that such software was similar to SPE, a product launched by Autonomy in 2009.  *See* Gov. Br. 2, 6.  While NCorp may have had "the same kind of functionality" as SPE, as Blanchflower vaguely claims, the government fails to mention that Lucini made clear during the *Hussain* trial that NCorp bore no relation to SPE.  *Hussain* Tr. 1421-22 (16-CR-00462, ECF No. 285).  There is no reason to confuse the jury with irrelevant testimony about NCorp.

Ian Black's proposed testimony will also be irrelevant and prejudicial because the few snippets the government pulls from his FBI interview have nothing to do with the allegations against Dr. Lynch.  *See* Gov. Br. 9.  The government apparently intends to ask the jury to leap to the unfounded conclusion that the routine shredding of hard drives in England that Black apparently witnessed was the corrupt destruction of documents, but that allegation is completely unsupported, has nothing to do with Dr. Lynch, and there is no proof that any evidence was lost or destroyed.  Nor should the government be permitted to ask the jury to infer anything about the due diligence process—an area Black knew nothing about and was not involved in—from Black's purported statements about Dr. Lynch's offhand remarks around the time of the acquisition.  Finally, the fact that Dr. Lynch was both stressed and relieved on the day of the acquisition is meaningless, and not worth the taking of a deposition, much less presentation of testimony to the jury.  The government should not be permitted to waste time in a pretrial deposition only to argue unsupported and nefarious inferences from Black's evidence.

For these reasons, the government has not met its burden under Rule 15—a "more stringent" one than the defense burden, *see United States* v. *Berganza Espina*, No. 4:19-CR-00228, 2021 WL 4943651, at *2 (E.D. Tex. Oct. 22, 2021)—of demonstrating "exceptional circumstances."

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO THE GOVERNMENT'S
MOTION FOR FOREIGN DEPOSITIONS UNDER
RULE 15 – 3:18-CR-00577-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### b.    The government has not established that the witnesses are willing to be deposed

As of September 13, 2023, when the government filed its brief, three of its proposed deponents—who are beyond the subpoena power of the Court—had not committed to appearing voluntarily for a foreign deposition.  *See* Gov. Br. 2-7.  In determining whether exceptional circumstances exist, the Court "must consider . . . whether the deponent . . . would be willing to testify."  *See Olafson*, 213 F.3d at 442-43 (affirming denial of Rule 15 motion where "there was no indication that [witnesses] were willing to provide testimony at a deposition, or that they would cooperate in any way"); *United States* v. *Torre-Sanchez*, No. 12-CR-00833, 2014 WL 4370538, at *4 (N.D. Cal. Sept. 3, 2014) ("Defendant has not presented any evidence that [the witness] would be willing to provide testimony at a deposition"); *United States* v. *Sim*, No. CR07-425JLR, 2008 WL 11391249, at *2 (W.D. Wash. July 7, 2008) (permitting depositions of witnesses unwilling to travel to the United States but willing to be deposed, but denying motion where it was "unclear whether [deponents were] available or willing to testify at depositions").

Moreover, because U.S. courts cannot compel foreign nationals located outside of the United States to comply with a deposition request, *United States* v. *Reczko*, 818 F. App'x 701, 705 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1507 (2021), any witness who declines to voluntarily appear for a deposition would have to be compelled to testify by an English court, likely causing protracted litigation and delay.  At the outset, the government would need to make an application via MLAT to the United Kingdom.  The steps that must be taken to compel witnesses to testify in England (and Australia) are complex, subject to local challenge and appeal by the witnesses and will likely impose other procedural hurdles that the government does not grapple with in this motion and that could take many months to resolve, jeopardizing the current trial date.  The

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO THE GOVERNMENT'S
MOTION FOR FOREIGN DEPOSITIONS UNDER
RULE 15 – 3:18-CR-00577-CRB

prospect that the Court's Rule 15 order may not be executable or, at the very least could lead to extensive litigation overseas, weighs against the government's motion.

### 2.   Logistical and Procedural Hurdles Will Undermine the Fairness of the Proceedings

The government's proposed depositions present other substantial logistical and procedural challenges that the government ignores and that impede the "interest of justice."  To accommodate the March trial date, the depositions would have to be completed early next year to allow adequate time for review of videotaped testimony and potential motion practice concerning admissibility and objections to specific questions and topics.  But even that timeline is probably inadequate, with ten potential depositions.  Each witness will need to be examined and cross-examined twice, by each defendant; the process, which cannot be double-tracked, could take four to six weeks (assuming each deposition takes two to three days).  And there is no guarantee the witnesses and their lawyers—not to mention judges and court officers, if necessary—will all be available during the same window in January (particularly since some of the witnesses have not agreed to be deposed).  To complicate matters further, the depositions would take place before motions in limine are decided, meaning questions will need to be asked, and objections preserved, pending the outcome of those rulings.  This risks extending the depositions even further, and it also makes more difficult the task of reviewing and editing the depositions and having the Court rule on objections.

That task promises to be Herculean.  The typical Rule 15 approach involves the taking of each deposition first, after which the Court "will be in a superior position to analyze [issues regarding admissibility], because it will be able to review the actual deposition transcripts, audiotapes, and/or videotapes to determine whether in fact introducing the depositions would be inconsistent with the defendant's constitutional rights." *United States* v. *Drogoul*, 1 F.3d 1546,

9

1555 (11th Cir. 1993).  That may be doable for a couple of depositions.  But it quickly becomes

impracticable when—as here—ten lengthy, factually complex depositions on overlapping topics

are contemplated.  Assuming the Court finds that a deposition is at least in part admissible, the

Court would then need rule on objections so that the video can be edited for the jury.

Videotaped depositions also present significant problems with presenting exhibits and

documentary evidence to the jury.  Any documents used with the witnesses during the

depositions will not be capable of being displayed in the video-recorded testimony without

obscuring the image and demeanor of the witness.  Therefore, the exhibits will need to be

presented to the jury in court during the playing of the videotapes.  The parties will need to agree

upon the relevant portions of exhibits to be displayed.  It will be challenging to ensure that the

jury understands what documentary evidence witnesses are referring to in their testimony and

there will be no opportunity for the witness to clarify during the live court proceedings.  This

process too would require extensive negotiations between the parties and likely more disputes for

the Court to resolve.

Even if all of these tasks could somehow be accomplished and logistical hurdles

overcome, the end result would not comport with the interest of justice.  With witness testimony

effectively starting in January, the defense will be revealing its trial strategy to the government

well in advance of trial, through cross-examination of the government's witnesses.  The

government will have an unprecedented opportunity to adjust its presentation to that strategy,

further undermining the fairness of using depositions in the proceedings.

### 3.     Dr. Lynch Has a Right to be Present Under Rule 15

If any depositions do take place, under Rule 15, "[e]xcept as authorized by Rule 15(c)(3),

a defendant who is not in custody has the right upon request to be present at the deposition,

1   subject to any conditions imposed by the court."  The government gives short shrift to Dr.

2   Lynch's right to be present at Rule 15 depositions, urging the Court to find that the requirements

3   under Rule 15(c)(3) for taking a Rule 15 deposition without the defendant's presence are met.

4   *See* Gov. Br. 10-11.  The government is wrong.

5        Most critically, Dr. Lynch cannot "meaningfully participate in the deposition through

6   reasonable means" without being physically present.  *See* Rule 15(c)(3)(E).  "The rule . . .

7   guarantee[s] the defendant's right to physical face-to-face confrontation by specifically providing

8   for his presence at the deposition."  *United States* v. *Yates*, 438 F.3d 1307, 1307 (11th Cir. 2006);

9   *see also Don* v. *Nix*, 886 F.2d 203, 206 (8th Cir.1989) (holding that the Sixth Amendment

10  guarantees a criminal defendant the opportunity to be present at the deposition of an accuser); *In*

11  *re Letters of Request from Supreme Court of Hong Kong*, 821 F. Supp. 204, 209 (S.D.N.Y.1993)

12  (Rule 15's guarantee of defendant's presence at deposition prevents use of deposition testimony

13  at trial from violating Sixth Amendment right to confrontation).  The government argues that Dr.

14  Lynch can "meaningfully participate . . . through remote video access to the deposition and his

15  counsel," Gov. Br. 11, but a video link—assuming one is even available—is wholly inadequate

16  to protect Dr. Lynch's rights.

17       To begin with, there is no guarantee that Dr. Lynch can participate via video link, which

18  may well depend on where and under what circumstances the depositions take place.  If they take

19  place under the direction of a judge, for example, which may be required to compel appearances

20  and administer oaths, video may not be available or allowed.  Even if video were available,

21  however, it would be very difficult for Dr. Lynch to participate in any meaningful way from a

22  remote location in San Francisco with an eight-hour time difference, unable to communicate with

23  his attorneys except perhaps during breaks.  Indeed, it is difficult under any circumstance to *both*

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO THE GOVERNMENT'S
MOTION FOR FOREIGN DEPOSITIONS UNDER
RULE 15 – 3:18-CR-00577-CRB

follow proceedings via video link *and* participate in cross-examination, but Dr. Lynch is hearing-impaired and relies on reading lips and, if available, closed-captioning, making the situation even more challenging.  It will also be difficult for Dr. Lynch to follow what documents are being discussed.  These logistics will be especially prejudicial to Dr. Lynch given his technical expertise in the complex matters under consideration with the engineers and analysts.  Indeed, "[c]ross-examination often depends for its effectiveness on the ability of counsel to punch holes in a witness' testimony at just the right time, in just the right way," *Perry* v. *Leeke*, 488 U.S. 272, 282 (1989), and counsel's ability to "punch holes" in the testimony of these witnesses will depend heavily on Dr. Lynch's active participation in the cross-examination and his ability to readily review the documents being discussed.

Moreover, should the Court order any depositions, there are reasonable conditions that would assure Dr. Lynch's appearance.  *See* Fed. R. Crim. P. 15(c)(3)(D)(iii).  Dr. Lynch is confined to a home in San Francisco, guarded by a private security company, and he has surrendered his travel documents and posted a substantial and heavily secured bond.  The private security company that is guarding Dr. Lynch also operates in England and Australia and would thus be able to guard Dr. Lynch during depositions and ensure his return to San Francisco.  Dr. Lynch would comply with any conditions the Court imposes to allow his participation.  While Dr. Lynch did assert his rights under the Extradition Treaty, he was a model bailee in England, and, once he was ordered extradited, he complied with that order and surrendered to the authorities for transport to the U.S.  Since his arrival in the U.S., Dr. Lynch has also been a model bailee, including during several bail modifications for family visits.  He is here to fight the charges and intends to continue doing so.  Because "reasonable conditions" would assure Dr. Lynch's appearance at the depositions, he has a right under Rule 15 to be present.

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO THE GOVERNMENT'S
MOTION FOR FOREIGN DEPOSITIONS UNDER
RULE 15 – 3:18-CR-00577-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.      Introduction of Deposition Testimony at Trial Will Raise Serious Fifth and Sixth Amendment Concerns**

The government has made clear that it intends to present videotaped evidence at trial. Thus, while the standard for granting a Rule 15 deposition is different from determining whether the deposition is admissible at trial, *see, e.g.*, *Drogoul*, 1 F.3d at 1554-55 (finding that the "mere *taking* of depositions" did not threaten right to confront witnesses where "confrontation clause rights [are only] truly implicated" "when deposition testimony is sought to be introduced in evidence"), Dr. Lynch's trial rights are also plainly implicated by the government's request.

The Confrontation Clause of the Sixth Amendment gives a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI. "[A]t its core, 'the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses.'" *United States* v. *Carter*, 907 F.3d 1199, 1205 (9th Cir. 2018) (quoting *Coy* v. *Iowa*, 487 U.S. 1012, 1016 (1988)). Because of the constitutional concerns implicated by government requests for Rule 15 depositions, courts should guard against the possibility that the government "would try to use depositions in lieu of live testimony at trial in contravention of the spirit of the Sixth Amendment." *United States* v. *Mann*, 590 F.2d 361, 365 (1st Cir. 1978) (citing *Barber* v. *Page*, 390 U.S. 719, 721 (1968)). Indeed, "[c]riminal defendants have a right to 'physical, face-to-face confrontation at trial,' and that right cannot be compromised by the use of a remote video procedure unless [such procedure] is 'necessary' . . . and 'the reliability of the testimony is otherwise assured.'" *Carter*, 907 F.3d at 1202 (quoting *Maryland v. Craig*, 497 U.S. 836, 850 (1990)). Those requirements would not be met here.

Besides the right to face-to-face examination, the Confrontation Clause also "(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the

13

witness to submit to cross-examination, the greatest legal engine ever invented for the discovery of truth; and (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *Craig*, 497 U.S. at 845–46 (internal citations omitted). "The combined effect of these elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo–American criminal proceedings." *Id.* at 846.

The government's proposed deposition plan contravenes all of these elements.

*First*, as discussed earlier, the government asks the Court to take the extraordinary step of setting aside Dr. Lynch's right to personally confront the witnesses against him, arguing that the Court should overlook Dr. Lynch's Sixth Amendment right based on its prior finding that Dr. Lynch poses a flight risk. *See* Gov. Br. 11. That argument fails for the reasons set forth above.

*Second*, the truth-seeking impact of an oath is potentially diminished by a foreign deposition. The prospect of a prosecution for perjury is a more immediate and meaningful threat—one that "guard[s] against the lie"—for a witness testifying live in a U.S. courtroom. While a witness who lies during a foreign deposition could in theory be prosecuted for perjury, the idea that the government would file charges and initiate cumbersome and lengthy extradition proceedings to go after a perjurer in a foreign country is remote.

*Third*, the government's plan would undermine Dr. Lynch's cross-examination right unless Dr. Lynch were allowed to attend the depositions in person. As discussed earlier, if not physically present at the depositions, Dr. Lynch would have no practical means of communicating with counsel during direct or cross-examination. Given his knowledge and

14

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR FOREIGN DEPOSITIONS UNDER RULE 15 – 3:18-CR-00577-CRB

technical expertise, Dr. Lynch's active participation is crucial to the cross-examination of the witnesses.

And *fourth*, allowing these witnesses to testify by deposition rather than in person would severely curtail the jury's ability to assess their credibility.  The trier of fact's observation of live testimony is one way to guard against various deficiencies of testimony, including that the "declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener." *Winzer* v. *Hall*, 494 F.3d 1192, 1197 (9th Cir. 2007) (quoting *Williamson* v. *United States*, 512 U.S. 594, 598 (1994)).  Dr. Lynch intends through cross-examination to show that the witnesses may have misperceived or misunderstood certain events, or, worse, may be dishonest.  The jury would have to suffer through weeks of videotaped testimony on dense scientific and financial topics, with heavily edited tapes to account for rulings on objections.

On top of these Sixth Amendment concerns, Dr. Lynch's Fifth Amendment due process rights are also undermined by the government's Rule 15 motion.  He will be required to preview defenses to the government—as he cross-examines witnesses—well before the trial begins.  And under the current schedule, he would have to cross-examine witnesses effectively before the ink on the government's exhibit list (which will be disclosed in December) is even dry.  A criminal trial by videotape simply does not comport with due process.

Finally, it is the cumulative effect of the government request that presents the most serious risk to Dr. Lynch's trial right.  If the government has its way, a substantial portion of the trial will be presented via videotaped testimony.  But Dr. Lynch will not have been able to confront or meaningfully cross-examine any of those witnesses against him, nor will the jury have a full opportunity to assess the witnesses' credibility.

III.   **CONCLUSION**

The government's request for Rule 15 depositions should be denied.

Dated: October 13, 2023

Respectfully submitted,

**CLIFFORD CHANCE US LLP**

By:  /s/ Celeste L.M. Koeleveld
        Celeste L.M. Koeleveld

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)

**STEPTOE & JOHNSON LLP**

By:  /s/ Jonathan Matthew Baum
        Jonathan Matthew Baum

Reid Weingarten
Jonathan Matthew Baum

*Attorneys for Defendant*
*Michael Richard Lynch*

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO THE GOVERNMENT'S
MOTION FOR FOREIGN DEPOSITIONS UNDER
RULE 15 – 3:18-CR-00577-CRB