1  PATRICK D. ROBBINS (CABN 152288)
   Attorney for the United States,
2  Acting Under Authority Conferred by 28 U.S.C. § 515

3  THOMAS A. COLTHURST (CABN 99493)
   Chief, Criminal Division
4
   ROBERT S. LEACH (CABN 196191)
5  ADAM A. REEVES (NYBN 2363877)
   KRISTINA GREEN (NYBN 5226204)
6  Assistant United States Attorneys

7       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
8       Telephone: (415) 436-7014
        Fax: (415) 436-7234
9       Email: Robert.Leach@usdoj.gov
               Adam.Reeves@usdoj.gov
10             Kristina.Green@usdoj.gov

11 Attorneys for United States of America

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14              SAN FRANCISCO DIVISION

15 UNITED STATES OF AMERICA,            ) Case No. 18-CR-577 CRB
                                        )
16         Plaintiff,                   ) UNITED STATES' OPPOSITION TO
                                        ) DEFENDANT MICHAEL RICHARD
17      v.                              ) LYNCH'S MOTION TO DISMISS COUNTS
                                        ) ONE THROUGH SIXTEEN OF THE
18 MICHAEL RICHARD LYNCH and            ) SUPERSEDING INDICTMENT [ECF No. 218]
   STEPHEN KEITH CHAMBERLAIN,           )
19                                      ) Date:   November 1, 2023
           Defendants.                  ) Time:   1:30 p.m.
20                                      ) Court:  Hon. Charles R. Breyer
                                        )         Courtroom 6, 17th Floor
21                                      )
_____)
22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2    INTRODUCTION ...........................................................................................................1

3    FACTUAL BACKGROUND ..........................................................................................2

4    ARGUMENT .................................................................................................................3

5    I.      LEGAL STANDARD.........................................................................................3

6    II.     COUNT ONE ALLEGES A SINGLE SCHEME TO DEFRAUD .................3

7    III.    DEFENDANTS PROPERLY CONCEDE THAT THEIR
       EXTRATERRITORIALITY CHALLENGE TO COUNTS 2-15 IS FORECLOSED ............8

8    IV.     COUNT 16 STATES THE OFFENSE OF SECURITIES FRAUD................9

9    CONCLUSION.............................................................................................................12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### Cases

3

*Ciminelli v. United States,*
4
    143. S. Ct. 1121, 1128 (2023) ............................................................................................. 11

*Hamling v. United States,*
5
    418 U.S. 87 (1974) .................................................................................................... 10, 3, 9

6
*Kelly v. United States,*
    140 S. Ct. 1565 (2022) ........................................................................................................ 11
7

*Morissette v. United States,*
8
    342 U.S. 246 (1952) ............................................................................................................ 11

9
*Morrison v. National Australia Bank Ltd.,*
    561 U.S. 247 (2010) .............................................................................................................. 7

10
*RJR Nabisco, Inc. v. European Community,*
    579 U.S. 325 (2016) .............................................................................................................. 7
11

*SEC v. Traffic Monsoon, LLC,*
12
    2017 WL 1166333 (D. Utah Mar. 28, 2017) ....................................................................... 7

13
*United States v. Aguilar,*
    756 F.2d 1418 (9th Cir. 1985) .............................................................................................. 4
14

*United States v. Anderson,*
15
    94 F. App'x 487 (9th Cir. 2004) ........................................................................................... 4

16
*United States v. Arbelaez,*
    719 F.2d 1453, 1457 (9th Cir. 1983) .................................................................................... 4
17

*United States v. Baxter,*
18
    492 F.2d 150, 158 (9th Cir. 1973) ........................................................................................ 4

19
*United States v. Boren,*
    278 F.3d 911 (9th Cir. 2002) ................................................................................................ 9
20

*United States v. Bryan,*
21
    868 F.2d 1032 (9th Cir. 1989) ...................................................................................... 4, 5, 6

22
*United States v. Elbaz,*
    52 F.4th 593 (4th Cir. 2022) ................................................................................................. 8
23

*United States v. Folsom,*
24
    661 F. App'x 495 (9th Cir. 2016) .......................................................................................... 6

25
*United States v. Gordon,*
    844 F.2d 1397 (9th Cir. 1988) .......................................................................................... 4, 6
26

*United States v. Hernandez,*
27
    35 F. App'x 300 (9th Cir. 2002) ........................................................................................ 7-8

*United States v. Hussain,*
28
    CR 16-462 CRB (N.D. Cal.) ....................................................................................... passim

*United States v. Hussain,*
    972 F.3d 1138 (9th Cir. 2020) .................................................................................... passim

*United States v. King,*
  200 F.3d 1207 (9th Cir. 1999) ................................................................. 4

*United States v. Lindholm,*
  24 F.3d 1078 (9th Cir. 1994) ................................................................. 11

*United States v. Lyle,*
  742 F.3d 434 (9th Cir. 2014) ........................................................... 11, 9

*United States v. Mancuso,*
  718 F.3d 780 (9th Cir. 2013) ............................................................. 4, 9

*United States v. Milovanovic,*
  678 F.3d 713 (9th Cir. 2012) ........................................................... 10, 9

*United States v. Moran,*
  759 F.2d 777 (9th Cir. 1985) ............................................................. 4, 5

*United States v. Morse,*
  785 F.2d 771 (9th Cir. 1986) ................................................... 4, 5, 6, 7

*United States v. Nukida,*
  8 F.3d 665 (9th Cir. 1993) ............................................................... 11, 9

*United States v. Ramirez-Martinez,*
  273 F.3d 903 (9th Cir. 2001) ................................................................. 7

*United States v. Sampson,*
  371 U.S. 75 (1962) ................................................................................. 3

*United States v. Schafer,*
  625 F.3d 629 (9th Cir. 2010) ............................................................... 10

*United States v. Shortt Accountancy Corp.,*
  785 F.2d 1448 (9th Cir. 1986) ....................................................... 10, 3

*United States v. Tanke,*
  743 F.3d 1296 (9th Cir. 2014) ............................................................... 6

**Federal Statutes**

15 U.S.C. §§ 77v ................................................................................... 7

18 U.S.C. § 2 ................................................................................... 3, 10

18 U.S.C. § 1348 ....................................................................... 1, 3, 10

**Rules**

Fed. R. Crim. P. 7 ................................................................................. 9

Fed. R. Crim. P. 8 ................................................................................. 4

Fed. R. Crim. P. 12 ............................................................................... 3

**INTRODUCTION**

The United States respectfully opposes Defendants' motions to dismiss Counts 1-16 of the Superseding Indictment.  *See* ECF Nos. 218 (Lynch motion to dismiss), 223 (Chamberlain's joinder). By their motions, Defendants contend that Count 1, conspiracy to commit wire fraud, is duplicitous; that Counts 2-15, wire fraud, are impermissibly extraterritorial; and that Count 16, securities fraud against Lynch, fails to state an offense.

As to Count 1, in *United States v. Hussain*, 972 F.3d 1138, 1145 (9th Cir. 2020), the Ninth Circuit foreclosed Defendants' argument that Count 1 offends the presumption against extraterritoriality. To avoid *Hussain*, Defendants now allege that Count 1 is duplicitous as between a scheme to defraud Autonomy shareholders and a separate scheme to defraud HP.  That argument is unpersuasive.  In *Hussain*, this Court found "dubious" Hussain's insistence the indictment there alleged "two distinct schemes."  Order Denying Motion to Dismiss at 9 n.3, *United States v. Hussain*, CR 16-462 CRB (N.D. Cal., Aug. 25, 2017), ECF No. 129.  Indeed, as described below, the Ninth Circuit has frequently rejected duplicity challenges to indictments alleging far more varied and disconnected schemes to defraud than is alleged here.

Because Count 1 does not allege separate schemes to defraud, there is no reason for the Court to address Defendants' extraterritoriality challenge to the so-called separate scheme standing alone, but in any event they fair and are not a basis to dismiss the Superseding Indictment.

As to Counts 2-15, Defendants acknowledge that *Hussain* foreclosed their extraterritoriality challenge to the identical wire fraud counts alleged in that case.  ECF No. 218 at 12 (conceding that "*Hussain*'s extraterritoriality analysis of the wire fraud statute is controlling").  Defendants renew their argument only to "preserve it for appellate review."  *Id.*

As to Count 16, the charge mirrors the 18 U.S.C. § 1348 offense that was affirmed in *Hussain*, 972 F.3d at 1145-48.  Lynch's claim that that he lacked the requisite intent to commit securities fraud is no different from the arguments raised and rejected by the Ninth Circuit.  In any event, his argument, is a factual defense to be raised at trial and therefore inappropriate to a motion to dismiss.

For these reasons, as discussed below, the Court should deny the motions.

**FACTUAL BACKGROUND**

The Superseding Indictment alleges that Autonomy Corporation was a public company dual-headquartered in San Francisco, California, and Cambridge.  ECF No. 21 ¶ 1.  Autonomy maintained offices and subsidiaries in the Bay Area.  *Id.* ¶ 2.  Lynch, Hussain, and Chamberlain were officers.  *Id.* ¶¶ 4-5, 19.

Beginning in January 2019 and continuing through October 2011, Lynch and Chamberlain, together with others including Hussain, "engaged in a fraudulent scheme to deceive purchasers and sellers of Autonomy securities about the true performance of Autonomy's business, its financial performance and condition, the nature and composition of its products, revenue and expenses, and its prospects for growth."  *Id.* ¶ 19.  The objectives, among others, were to ensure that Autonomy met or exceeded quarterly revenue and margin results, to enrich themselves through bonuses, salaries, and options, and to artificially increase Autonomy's share price to make it attractive to potential purchasers.  *Id.* ¶ 20.  Hewlett-Packard Co. was the ultimate purchaser, and "LYNCH and others used Autonomy's false and misleading financial statements from 2009, 2010, and early 2011 . . . to make Autonomy more attractive to a potential purchaser."  *Id.* ¶ 21.

Lynch and Chamberlain employed a number of means and methods:  improperly recording revenue, making false statements to Autonomy's outside auditor, analysts, and regulators, falsely claiming to be a "pure software" company while secretly selling hardware at a loss outside of its disclosed "appliance" business, making false statements about the pervasiveness of its original manufactured equipment ("OEM") licenses, falsifying books, and intimidating and pressuring analysts and whistleblowers.  *Id.* ¶ 22.  The Superseding Indictment alleges more than 30 overt acts in furtherance of the scheme, including acts tied specifically to the United States.  *Id.* ¶ 23.

In sum, the Superseding Indictment alleges the Defendants used United States wires to deceive potential purchasers and the market about Autonomy's financial condition, all so that they could sell to someone at a premium.  Count One alleges a conspiracy to commit wire fraud during the period 2009 to October 2011.  *Id.* ¶¶ 25-26.  Counts Two through Fifteen allege individual counts of wire fraud based on domestic wires.  *Id.* ¶¶ 27-28.

1    Like the Hussain indictment, the Superseding Indictment also charges securities fraud, in

2    violation of 18 U.S.C. § 1348.  *Id.* ¶¶ 29-30.  "[T]o induce the offer by HP . . . LYNCH executed a letter

3    . . . warranting that all information provided by him for inclusion in any document issued in connection

4    with the offer was true and correct in all respects and not misleading in any respect."  *Id.* ¶ 23(bb).  And

5    "[i]n or about August 2011," Lynch "knowingly and intentionally executed, and attempted to execute a

6    scheme and artifice" to defraud persons in connection with HP securities.  *Id.* ¶¶ 29-30.  The

7    Superseding Indictment also specifically invokes 18 U.S.C. § 2, the aiding and abetting and willfully

8    causing statute.

9                                         **ARGUMENT**

10   **I.    LEGAL STANDARD**

11       Federal Rule of Criminal Procedure 12 allows a defendant to assert a defense in a pretrial motion

12   if the merits of the defense can be determined "without a trial of the general issue."  Fed. R. Crim. P.

13   12(b)(2).  A federal indictment is facially valid and sufficient if it contains the elements of the offense

14   charged, fairly informs the defendant of the charges against which he must defend, and is specific

15   enough for the defendant to plead double jeopardy in bar of further prosecution.  *Hamling v. United*

16   *States*, 418 U.S. 87, 117 (1974).

17       Conversely, if the pretrial motion raises factual questions associated with the validity of the

18   defense, the district court cannot make those determinations.  *United States v. Shortt Accountancy Corp.*,

19   785 F.2d 1448, 1452 (9th Cir. 1986).  Doing so would "invade the province of the ultimate finder of

20   fact."  *Id.* (citation omitted); *see also United States v. Sampson*, 371 U.S. 75, 78-79 (1962) ("Of course,

21   none of these charges have been established by evidence, but at this stage of the proceedings the

22   indictment must be tested by its sufficiency to charge an offense.").

23   **II.   COUNT ONE ALLEGES A SINGLE SCHEME TO DEFRAUD**

24       Defendants argue that Count 1 encompasses two separate schemes to defraud.  ECF No. 218 at 7.

25   The first, in their view, is to defraud "purchasers and sellers of Autonomy securities"; the second, to

26   defraud "Bidco and HP in connection with the 2011 acquisition."  ECF No. 218 at 7-8.  Defendants are

27   wrong.

28

An indictment is duplicitous when it "joins two or more distinct and separate offenses into a single count." *United States v. Mancuso*, 718 F.3d 780, 792 (9th Cir. 2013). A duplicitous indictment violates Federal Rule of Criminal Procedure 8(a), meant to protect a defendant's Fifth and Sixth Amendment rights. *United States v. Aguilar*, 756 F.2d 1418, 1420 n.2 (9th Cir. 1985). In reviewing an indictment for duplicity, the Court's role is limited. The Court does not ask whether the evidence "would support charging several crimes rather than one." *Mancuso*, 718 F.3d at 792. Instead, the Court's task is "solely to assess whether the indictment itself can be read to charge only one violation in each count." *Id.*; *accord United States v. King*, 200 F.3d 1207, 1212 (9th Cir. 1999) (question is whether indictment "may be read to charge a single violation").

For a conspiracy count, an indictment charges a single conspiracy when it describes "one overall agreement" to carry out the conspiracy's objectives. *United States v. Moran*, 759 F.2d 777, 784 (9th Cir. 1985). Whether an overall agreement exists depends on the "nature of the scheme, the identity of the participants, the quality, frequency and duration of each conspirator's transactions, and the commonality of times and goals." *United States v. Gordon*, 844 F.2d 1397, 1401 (9th Cir. 1988) (citing *United States v. Arbelaez*, 719 F.2d 1453, 1457 (9th Cir. 1983)). A single conspiracy exists, for instance, when coconspirators "had reason to believe that their own benefits derived from the operation were probably dependent upon the success of the entire venture." *United States v. Anderson*, 94 F. App'x 487, 491 (9th Cir. 2004) (quoting *United States v. Baxter*, 492 F.2d 150, 158 (9th Cir. 1973)).

Indeed, the Ninth Circuit "takes a broad view of a single scheme: the defrauding of different people over an extended period of time, using different means and representations, may constitute but one scheme." *United States v. Morse*, 785 F.2d 771, 774 (9th Cir. 1986) (citation and internal quotation marks omitted). "As long as the set of fraudulent transactions alleged in a count is within the conceivable contemplation of a greedy mind, no duplicity has occurred." *United States v. Bryan*, 868 F.2d 1032, 1037-38 (9th Cir. 1989) (citation and internal quotation marks omitted).

Here, all of the factors in assessing whether one overall agreement is sufficiently alleged are satisfied. With respect to the nature of the scheme, it centers squarely on Autonomy's false statements about its financial condition and the users of those financial statements. Autonomy was making itself look better than it was, so it could fool the market and potential purchases. The identity of the

1   participants is confined and includes senior officers of Autonomy, not a far-flung drug conspiracy where

2   one courier or mule knows nothing about another.  The quality, frequency, and duration of each

3   conspirator's transactions is also in line with a single scheme:  Lynch, Chamberlain, and Hussain all

4   worked for Autonomy during the period 2009 to 2011, per the indictment, and the false statements

5   center on Autonomy's quarterly and annual press releases.  All were also involved in the HP diligence

6   process.  Finally the commonality of times and goals supports a single scheme:  the conspirators are

7   alleged to have engaged in a number of tactics to make Autonomy look better so they could enrich

8   themselves by selling at a premium.

9        Indeed, the Ninth Circuit has identified a single scheme to defraud in cases involving far more

10  diffuse activities than alleged here.  *See, e.g.*, *United States v. Bryan*, 868 F.2d 1032, 1037-38 (9th Cir.

11  1989) (indictment alleged illegal tax shelter promotion scheme to defraud both taxpayers and the U.S.

12  treasury); *United States v. Moran*, 759 F.2d 777, 784 (9th Cir. 1985) (indictment alleged scheme to

13  "misstate and misrepresent income to the IRS, wherein [the defendant's] function was to set up the

14  laundering of funds to conceal from the IRS the identities of individuals who had realized income from

15  unlawful importation and distribution of narcotics"); *United States v. Morse*, 785 F.2d 771, 774 (9th Cir.

16  1986) (indictment alleged scheme involving activities "in the oil and gas drilling projects, and video,

17  heavy equipment, and secondary oil recovery programs").

18       Nevertheless, Defendants suggest that two separate schemes existed because the schemes

19  "worked at cross purposes."  ECF No. 218 at 9.  As they see it, "Autonomy sought to convince Bidco to

20  purchase Autonomy at a substantial premium over its share price, a goal potentially made more difficult

21  if that share price was already too high."  *Id*.  That is sophistry.  The conspiracy's objective was to

22  fraudulently inflate Autonomy's value so as to drive up the price of its shares and of the company itself.

23  To suggest that the conspirators would prefer to sell Autonomy at a certain premium over its share price

24  at the expense of a lower overall price is nonsensical.

25       Next, Defendants asserts that the "first alleged conspiracy dates back to 2009, while the other

26  arose in earnest in mid-2011."  ECF No. 218 at 9.  But whether or not Defendants envisioned selling

27  Autonomy from the beginning of the scheme makes no difference.  "[S]chemes to defraud are often

28  open-ended, opportunistic enterprises" that may "evolve over time, contemplate no fixed end date or

adapt to changed circumstances." *United States v. Tanke*, 743 F.3d 1296, 1305 (9th Cir. 2014).  It would be "overly restrictive to look only at the scope of the plan as it was *originally* conceived." *Id.*; *see, e.g.*, *United States v. Folsom*, 661 F. App'x 495, 497 (9th Cir. 2016) (affirming bank and wire fraud convictions where "a rational jury could conclude that the fraudulent scheme evolved after [the defendant] learned of the title company's mistake").  Further the Superseding Indictment specifically alleges Lynch and Chamberlain used its 2009 and 2010 financial statements to lure HP.  ECF No. 21 ¶ 21.

Defendants point out that the public and HP both were defrauded.  ECF No. 218 at 9.  But the Ninth Circuit has foreclosed the argument that separate victims or types of victims entail separate schemes to defraud.  *See, e.g.*, *United States v. Bryan*, 868 F.2d 1032, 1037–38 (9th Cir. 1989) "[T]hat the scheme . . . was alleged to have defrauded two sets of victims does not require a finding that two separate 'schemes' existed."); *United States v. Morse*, 785 F.2d 771, 774 (9th Cir. 1986) (holding that indictment alleging single scheme to defraud was not duplicitous even though scheme involved four separate tax shelter ventures involving different victims).  As described above, Defendants defrauded multiple victims as a "natural and intended consequence" of their single fraudulent scheme, a fact that does "not require a finding that two schemes existed." *See Bryan*, 868 F.2d at 1038.[1]

Finally, Defendants argue at length "[l]umping the two conspiracies together conceals that each has fatal deficiencies, including extraterritoriality." ECF No. 218 at 10-17.  The Court rejected similar analysis in *Hussain*.  Like Defendants, Hussain argued the indictment "alleges on omnibus 'scheme to defraud,' but in reality, the government appears to have settled on three different theories or 'schemes.'" Defendant Sushovan Hussain's Motion to Dismiss Indictment at 3, *United States v. Hussain*, CR 16-462 CRB (N.D. Cal., Aug. 25, 2017), ECF No. 113.  In denying Hussain's motion, the Court observed:

> Hussain devotes a significant amount of energy in his briefing to arguing that the alleged fraud here really furthered two distinct schemes: one to artificially inflate the price of Autonomy securities, harming Autonomy shareholders; the other to dupe HP into buying Autonomy.  This contention is dubious, given that artificially inflating share prices tends to injure both current and future shareholders (e.g., HP) by deceiving them about the

---

[1]     *Gordon*, on which Defendants rely, is inapposite because the indictment alleged a scheme both to defraud and to obstruct a subsequent investigation.  844 F.2d at 1401 ("[W]e find that Count I charged two conspiracies—one to defraud the United States in the administration of the Trident Missile Program, and another to obstruct the grand jury investigation.").

company's value.  In any event, given its holding that the transmission of domestic wires is the only conduct relevant to the focus of § 1343, the Court need not decide the issue.

Order Denying Motion to Dismiss at 9 n.3, *United States v. Hussain*, CR 16-462 CRB (N.D. Cal., Aug. 25, 2017), ECF No. 129.

Defendants also suffer no cognizable prejudice from an allegation that they conspired to defraud purchasers before HP became interested and after.  The Supreme Court has recognized that "[i]f the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application *even if other conduct occurred abroad*."  *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 337 (2016) (emphasis added).  Because the focus of the wire fraud statute is the use of the wires in furtherance of a scheme to defraud, and because Lynch and Chamberlain's use of wires in furtherance of the fraud had a sufficient domestic nexus, it is a permissible domestic application and it is not "prejudicial" "even if other conduct occurred abroad."  *Id.*; *Hussain*, 972 F.3d at 1145.[2]

Thus, there is no basis "to conclude that, as a matter of law," Count 1 does not allege a single scheme to defraud.  *See Morse*, 785 F.2d at 774 (rejecting argument that indictment's "description of the four investment programs necessarily embraces more than a single scheme").  The Court therefore should deny Defendants' motion to dismiss Count 1.

If the court finds Count 1 duplicitous, the question becomes the appropriate remedy.  The rules about duplicity are pleading rules, the violation of which is not fatal to an indictment.  *United States v. Ramirez-Martinez*, 273 F.3d 903, 915 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007).  A defendant indicted pursuant to a duplicitous indictment may be properly prosecuted and convicted if either (1) the government elects between the charges in the offending count, or (2) the court provides an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed."  *Id.*; *accord United States v.*

---

[2]     Defendants repeatedly cite *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010) to suggest a scheme to defraud Autonomy shareholders is extraterritorial.  But *Morrison* involved Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder.  In 2010, after *Morrison*, Congress enacted Section 929P(b)(1) & (2) of the Dodd-Frank Act, providing clear, affirmative indication that Section 17(a) of the Securities Act and Section 10(b) of the Securities Exchange Act may be applied extraterritorially in actions by the United States and the SEC.  *See* 15 U.S.C. §§ 77v & 78aa; *SEC v. Traffic Monsoon, LLC*, 2017 WL 1166333, at *9-*13 (D. Utah Mar. 28, 2017).  In any event, the relevant statute is the wire fraud statute, whose extraterritorial application is resolved by *Hussain*.  *Morrison* has no relevance here.

*Hernandez*, 35 F. App'x 300, 304 (9th Cir. 2002).  The government suggests no remedy is needed because the Superseding Indictment is not duplicitous.  But any duplicity here could easily be addressed through jury instructions.

## III.   DEFENDANTS PROPERLY CONCEDE THAT THEIR EXTRATERRITORIALITY CHALLENGE TO COUNTS 2-15 IS FORECLOSED

Defendants' argument that Counts 2-15 must be dismissed as impermissibly extraterritorial was squarely raised and squarely rejected in *Hussain*, as Defendants concede.  Their strained efforts to distinguish *Hussain* fail.

As an initial matter, the Defendants are wrong to suggest that the Ninth Circuit did not consider whether the use of the wires alleged in the indictment was "essential" to or a "core component" of the scheme.  The Court in *Hussain* wrote:

> [*Bascuñán v. Elsaca*, 927 F.3d 108 (2d Cir. 2019)] held that wire fraud "involves sufficient domestic conduct when (1) the defendant used domestic ... wires in furtherance of a scheme to defraud; and (2) the use of the ... wires was a core component of the scheme to defraud."  The First Circuit interpreted this second requirement as relevant where "a foreign defendant is alleged to have committed wire fraud against a foreign victim, and the use of domestic wires was merely 'incidental' to the overall scheme."  That is not the case here because Hussain defrauded a domestic victim.  In all events, under *Bascuñán* Hussain's conduct was sufficiently domestic because the use of wires to defraud HP was a core component of his fraud, and not "merely incidental."

*Hussain*, 972 F.3d at 1144 at n.2 (cleaned up).  To the extent the Defendants suggest the case would come out differently under *Bascuñán*, the Ninth Circuit unequivocally said no.[3]

Defendants ultimately concede that "*Hussain*'s extraterritoriality analysis of the wire fraud statute is controlling" and renew their "argument as to the 'core component' requirement to preserve it for appellate review."  ECF No. 218 at 12; *see also* ECF No. 218 at 20 n.5 (conceding that *Hussain* is "controlling" with regard to adoption and application of "core component" test and "preserving this aspect of his challenge to *Hussain* for later appellate review").

Defendants' concession is correct.  *Hussain* affirmed the defendant's convictions on the identical fourteen counts of wire fraud as charged in the instant case.  *See* 972 F.3d at 1145.  There is no basis for

---

[3]      Defendants also cite *United States v. Elbaz*, 52 F.4th 593 (4th Cir. 2022), where the defendant suggested the Ninth and Second Circuits were divided about the extraterritorial application of the wire fraud statute.  *See* Petition for Certiorari at 17-18, *United States v. Elbaz*, 2023 WL 3234386, No. 22-1055 (S. Ct. Apr. 27, 2023).  On October 10, 2023, the Supreme Court denied review.  *See* https://www.supremecourt.gov/orders/courtorders/101023zor_5i26.pdf.

1  a different outcome here, particularly at the pleading stage.  This Court therefore should deny

2  Defendants' motion to dismiss Counts 2-15.

3  **IV.    COUNT 16 STATES THE OFFENSE OF SECURITIES FRAUD**

4         Lynch argues that Count 16 fails to state an offense "because the SI does not – and cannot –

5  allege that Dr. Lynch had either the intent to defraud HP shareholders or to obtain money or property

6  from HP shareholders." ECF No. 218 at 21-22.  But his argument is inappropriate to a motion to

7  dismiss and otherwise meritless.

8         "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district

9  court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th

10 Cir. 2002).  The Court "must accept the truth of the allegations in the indictment in analyzing whether a

11 cognizable offense has been charged." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014) (citation

12 omitted).[4]  A motion to dismiss "cannot be used as a device for a summary trial of the evidence."

13 *Boren*, 278 F.3d at 914.  The issue is simply whether, if proved beyond a reasonable doubt, a properly

14 instructed jury could convict." *United States v. Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012).  In

15 evaluating whether an indictment states an offense, the Court "recite[s] the facts as the Grand Jury has

16 alleged them and draw[s] all reasonable inferences in favor of the government." *Id.*

17        To state an offense, an indictment need only be a "plain, concise, and definite written statement

18 of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  An indictment that

19 tracks the statutory language is generally sufficient if those words fully, directly, and expressly set forth

20 all the elements necessary to constitute the offense. *Hamling v. United States*, 418 U.S. 87, 117-18

21 (1974); *Mancuso*, 718 F.3d at 790.  Although an indictment must provide the "essential facts necessary

22 to apprise a defendant of the crime charged; it need not specify the theories or evidence upon which the

23 government will rely to prove those facts." *Mancuso*, 718 F.3d at 790 (citation omitted).  Simply put, a

24 motion to dismiss is "not the proper way to raise a factual defense." *United States v. Nukida*, 8 F.3d

25 665, 669 (9th Cir. 1993).

26

27

28 _____

   [4]      "The indictment either states an offense or it doesn't.  There is no reason to conduct an
   evidentiary hearing." *Boren*, 278 F.3d at 914.

In evaluating a pretrial motion to dismiss, the Court must determine whether the issue raised in the motion is "entirely segregable" from the evidence to be presented at trial. *Shortt*, 785 F.2d at 1452. If the claim is "substantially founded upon and intertwined with evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred." *Id.*; *see, e.g.*, *United States v. Schafer*, 625 F.3d 629, 636 (9th Cir. 2010) (upholding denial of evidentiary hearing on pretrial motion to dismiss where "factual disputes were not segregable from the issue that was to be decided at trial").

Applying these principles, Count 16 easily meets the standard to state an offense. First, the indictment tracks the offense in the words of the statute:

> In or about August 2011, in the Northern District California and elsewhere, the defendant,
>
> MICHAEL RICHARD LYNCH,
>
> did knowingly and intentionally execute, and attempted to execute, a scheme and artifice (a) to defraud any person in connection with securities of HPQ, an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of HPQ, an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, and did aid and abet in the same.
>
> In violation of Title 18, United States Code, Sections 1348 and 2.

ECF No. 21 ¶¶ 29-30. Thus, the indictment clearly sets forth all the elements of the securities fraud offense that Lynch is charged with. *See Hamling*, 418 U.S. at 117-18 (explaining that indictment that tracks statutory language is generally sufficient).

Beyond that, Count 16 "reallege[s] and incorporate[s]" all of the Introductory Allegations, ECF No. 21 ¶ 29, which describe many of the specific actions that Lynch took in furtherance of the securities fraud offense, *id.* ¶¶ 1-24. Reviewing the "facts as the Grand Jury has alleged them and draw[ing] all reasonable inferences in favor of the government," there is no question that Count 16 meets the standard to state an offense. *See Milovanovic*, 678 F.3d at 717.

Nor does Lynch seriously contend otherwise. He argues, rather, that the indictment fails to allege that he intended to defraud HP shareholders or obtain money or property from them. ECF No.

218 at 21-22.  To the contrary, the indictment alleges exactly that:  Lynch "knowingly and intentionally" executed a scheme to "defraud any person in connection with securities of HPQ . . . to obtain . . . money and property in connection with the purchase and sale of securities of HPQ."  ECF No. 21 ¶¶ 29-30.

In urging that the indictment fails to allege that he intended to defraud or obtain money or property in connection with HP securities, Lynch raises a "factual defense" to be resolved by the finder of fact at trial.  *See Nukida*, 8 F.3d at 669.  At this stage, however, the Court must accept the truth of the allegations in the indictment.  *Lyle*, 742 F.3d at 436.  That is especially apparent in this case because Lynch challenges the evidence of his intent, a quintessential question of fact to be determined at trial. *See Morissette v. United States*, 342 U.S. 246, 274 (1952) ("Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury."); *accord United States v. Lindholm*, 24 F.3d 1078, 1087 (9th Cir. 1994).

In any event, Lynch's contention that he did "not stand to gain anything by depriving HP shareholders of any property interest," ECF No. 218 at 22, is foreclosed by *Hussain*, 972 F.3d at 1145. There, under a substantially similar indictment, Hussain argued the government failed to prove fraudulent intent.  After observing the matter was not properly preserved, the Ninth Circuit stated that even under *de novo* review "ample evidence would allow a rational jury to find that Hussain had the requisite mens rea. Hussain, a senior executive, knew HP was a publicly traded company and knew HP would publicize its acquisition of Autonomy to investors, including through an important press release containing Autonomy's financial information the accuracy of which Hussain expressly warranted.  A jury was entitled to conclude based on the evidence that Hussain intended to defraud HP and its investors."  *Id.* at 1146.  Lynch's failure to even cite *Hussain* in this portion of his brief speaks volumes.

*Kelly* v. *United States*, 140 S. Ct. 1565, 1571 (2022), and *Ciminelli* v. *United States*, 143. S. Ct. 1121, 1128 (2023), do not change things.  Both involved wire fraud, not securities fraud, which covers frauds "in connection with" the purchase and sale of securities.  Neither dealt with the aiding and abetting/willfully causing statute.  And no Ninth Circuit decision has suggested they overruled *Hussain sub silentio*.

1    Accordingly, Lynch's assertion that he lacked the requisite intent to commit Count 16 is a factual

2  defense disguised as a legal challenge and, to the extent it may be evaluated before trial, meritless.  The

3  Court therefore should deny Lynch's motion to dismiss Count 16.

4                                           **CONCLUSION**

5    For these reasons, the Court should deny Defendants' motions to dismiss Counts 1-16.

6  DATED:  October 13, 2023                             Respectfully submitted,

7                                                       PATRICK D. ROBBINS
                                                         Attorney for the United States,
8                                                        Acting Under Authority Conferred by
                                                         28 U.S.C. § 515
9

10                                                       */s/ Robert S. Leach*
                                                         ROBERT S. LEACH
11                                                       ADAM A. REEVES
                                                         KRISTINA GREEN
12                                                       Assistant United States Attorneys

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28