EXHIBIT 28

## CERTIFICATE OF AUTHENTICITY OF
## BUSINESS RECORDS

1.  I, Stephanie Jago-Warne, attest on penalty of criminal punishment for false statement or false attestation that I am employed by UBS AG London Branch and that my official title is Legal Counsel.

2.  In this capacity I have been involved in the collection and production of material in response to the Notice issued by the Serious Fraud Office ("SFO") to UBS Private Banking Nominees Limited dated 16 February 2017 ("Notice").

3.  I exhibit to this Certificate records produced in answer to the Notice ("Records").

4.  I have no knowledge of or involvement in the creation of the Records, or the individuals or issues the subject of the Notice, other than in relation to production of the Records to the SFO in answer to the Notice.

5.  I understand that the Records were made and kept in the course of the regularly conducted business activity of UBS Private Banking Nominees Limited.

6.  I further state that:

    a.  the Records are in the custody of UBS Private banking Nominees Limited;
    b.  the Records are understood to have been kept in the course of regularly conducted business activity;
    c.  if any such record is not the original, such record is a duplicate of the original or a print out from a computer system.

_____         11 / 8 / 2017
Signature                        Date

Sworn to or affirmed before me, SARAH SHEPPARD (Name), a

SOLICITOR [notary public, judicial officer etc], this 11ᵗʰ

day of AUGUST 2017

Thrings LLP Solicitors

ISIN:                   AUTONOMY CORP ORD

Corp Act No:                                                          Retrieve

Generic | Generic 2 | Benefits | Takeover

Generic Details

Description:

Type:           Status:                  Mandatory or Voluntary: Voluntary

Ex Date:        Special Ex Date:         Transformation Date:

Record Date:    Payment Date:            Activated Date:

Distribution Type:   Election Trans Type:

Withdrawable Elect
Generates Claims
DBV Exclusion
Tax Exempt

Corporate Action Details - AUTONOMY CORP O

ISIN:                   AUTONOMY CORP ORD        ISIN:                   AUTONOMY CORP

Corp Act No:                                     Corp Act No:

Generic | Generic 2 | Benefits | Takeover        Generic | Generic 2 | Benefits | Takeover

Generic Details 2                                Takeover Details

Receiving Agent:                                 First Close Date:

Dividend Type:         Gross or Net:             Extended Close Date:

International                                     First Close Date:

Confirmation Status:   CA Reference:             Lapse Date:

Last Accept Date:      Last Accept Time:         Unconditional Date:

Foreign Tax Override:  Default Option No:        Wholly unconditional Date:

Allow Tax Exempt:                                Compulsory Purchase Start Date:

                                                 Compulsory Purchase End Date:

ISIN:                   AUTONOMY CORP ORD

Corp Act No:

Generic | Generic 2 | Benefits | Takeover

Benefits Details

| Tech Issuer Type Option No | Ccy | Ratio | Percentage | Benefit Security | Db Cr | Escrow Account | Assante Line |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  | Credit |  |  |

MLAT_AU 00016969

1351/11/5

Oct 04 2011 12:41 (GMT)

Situation:        TAKEOVER

THE OFFER HAS BEEN DECLARED WHOLLY UNCONDITIONAL.

THE OFFER WILL REMAIN OPEN FOR ACCEPTANCE UNTIL
FURTHER NOTICE AND AT LEAST 14 DAYS' NOTICE WILL BE
GIVEN OF THE CLOSING OF THE OFFER. AUTONOMY
SHAREHOLDERS WHO HAVE NOT YET ACCEPTED THE OFFER ARE
URGED TO DO SO IMMEDIATELY.

THE BOARD OF AUTONOMY CORPORATION PLC HAS ANNOUNCED THAT
HP VISION HAS CONFIRMED THAT ALL RELEVANT ANTI-TRUST
APPROVALS HAVE BEEN RECEIVED AND WAITING PERIODS HAVE
EXPIRED AND THAT IT IS NOT CURRENTLY AWARE OF ANY IMPEDIMENT
TO THE OFFER BEING DECLARED UNCONDITIONAL IN ALL RESPECTS
OTHER THAN SATISFACTION OF THE ACCEPTANCE CONDITION OF 75
PER CENT. OFFER WILL REMAIN OPEN FOR ACCEPTANCE UNTIL 3
OCTOBER 2011.'

LEVEL OF ACCEPTANCE ADDED AND OFFER EXTENDED TO 3 OCTOBER
2011

ADDITIONAL INFORMATION FOLLOWING RECEIPT OF FORMAL CIRCULAR

THE BOARD OF AUTONOMY CORPORATION PLC AND THE BOARD OF
HEWLETT-PACKARD VISION B.V. HAVE ANNOUNCED THAT THEY HAVE
AGREED THE TERMS OF A RECOMMENDED CASH OFFER FOR THE ENTIRE
ISSUED AND TO BE ISSUED SHARE CAPITAL OF AUTONOMY BY HP
VISION.

Issue Name:      AUTONOMY CORP
Security:        ▓▓▓▓▓▓▓
Terms:           FOR EACH AUTONOMY SHARE GBP25.50 IN CASH

Titles                                                    Settlement
                                                          Type:
▓▓▓▓▓▓▓ AUTONOMY CORP ▓▓▓▓▓▓ (0118271)                   CREST

Relative Details and Dates:

Please see below for expected timetable:

SETTLEMENT  Subject to the Offer becoming, or being declared, unconditional in all
respects, settlement of the consideration to which any Autonomy Shareholder is entitled
under the Offer will be effected(i) in the case of acceptances received, valid and complete
in all respects, on or before 17 October 2011 within 14 days of such date; or (ii) in the
case of acceptances of the Offer received, valid and complete in all respects, after the date
on which the Offer becomes or is declared unconditional in all respects but while it remains
open for acceptance, within 14 days of such receipt, in the following manner:
• SHARES HELD IN CERTIFICATED FORM: Where an acceptance relates to Autonomy
Shares held in certificated form, settlement of any cash consideration which the
accepting Autonomy Shareholder is entitled will be despatched by first class post (or by
such other method as may be approved by the Panel) to accepting Autonomy Shareholders
or their appointed agents (but not into any Restricted Jurisdiction). All such cash payments
will be made in United Kingdom pounds sterling by cheque drawn on a branch of a United
Kingdom clearing bank.
• SHARES HELD IN UNCERTIFICATED FORM: Where an acceptance relates to Autonomy
Shares held in uncertificated form, the cash consideration to which the accepting Autonomy
Shareholder (or the first named Autonomy Shareholder in the case of joint holdings) is
entitled will be paid by means of a CREST payment in favour of the accepting Autonomy
Shareholder's payment bank in respect of the cash consideration due, in accordance with
CREST payment arrangements.

2011-08-18    Offer Open date with respect to the City Code on Takeovers and Mergers

2011-10-17    Settlement Date (on or before)

MLAT_AU 00016970

Offer Consideration:

SHARES HELD IN CERTIFICATED FORM: If you hold your Autonomy Shares in certificated form (that is, not in CREST), you should return the completed, signed and witnessed (in the case of an individual) Form of Acceptance (together with your valid share certificate(s) and any other document(s) of title), by post or (during normal business hours) by hand, to Capita Registrars, Corporate Actions, The Registry, 34 Beckenham Road, Beckenham, Kent BR3 4TU as soon as possible, but in any event, so as to be received by Capita Registrars as soon as possible.

SHARES HELD IN UNCERTIFICATED FORM (CREST): To accept the Offer in respect of Autonomy Shares held in uncertificated form, you should send (or, if you are a CREST sponsored member, procure that your CREST sponsor sends) to Euroclear a TTE Instruction in relation to such shares. A TTE Instruction to Euroclear must be properly authenticated in accordance with Euroclear's specifications for transfers to escrow and must contain, in addition to any other information that is required for a TTE Instruction to settle in CREST, the following details:
- the ISIN number for the Autonomy Shares (this is GB0039007983);
- the number of Autonomy Shares in respect of which you wish to accept the Offer (i.e. the number of Autonomy Shares to be transferred to escrow);
- your member account ID;
- your participant ID;
- the participant ID of the Escrow Agent in its capacity as CREST receiving agent (this is RA10);
- the member account of the Escrow Agent for the Offer on its basic terms (this is HEWAUTO11);
- the intended settlement date. This should be as soon as possible;
- the corporate action number of the Offer which is allocated by Euroclear and can be found by viewing the relevant corporate action details in CREST;
- input with a standard delivery instruction priority of 80; and
- the contact name and telephone number inserted in the shared note field.

RIGHTS OF WITHDRAWAL: Each ESA instruction must, in order for it to be valid and settle, include the following details:
- the number of Autonomy Shares to be withdrawn, together with their ISIN number (this is ███████████);
- the member account ID of the withdrawing shareholder, together with his participant ID;
- the member account ID of the Escrow Agent included in the relevant Electronic Acceptance (this is HEWAUTO11), together with the Escrow Agent's participant ID (this is RA10);
- the CREST transaction ID of the Electronic Acceptance to be withdrawn;
- the intended settlement date for the withdrawal;
- the corporate action number for the Offer, which is allocated by Euroclear and can be found by viewing the relevant corporate action details in CREST; and
- input with a standard delivery instruction priority of 80.

REVISED OFFER: Each ESA instruction must, in order for it to be valid and settle, include the following details:
- the number of Autonomy Shares in respect of which the changed election is made, together with their ISIN number (this is GB0039007983);
- the member account ID of the Previous Acceptor, together with the participant ID;
- the member account ID of the Escrow Agent included in the relevant Electronic Acceptance (this is HEWAUTO11), together with the Escrow Agent's participant ID (this is RA10);
- the CREST transaction ID of the Electronic Acceptance in respect of which the election is to be changed;
- the intended settlement date for the changed election;
- the corporate action number for the Offer, which is allocated by Euroclear and can be found by viewing the relevant corporate action details in CREST; and, in order that the desired change of election can be effected, must include:
- the member account ID of the Escrow Agent relevant to the new election; and
- input with a standard delivery instruction priority of 80.

RESTRICTED ESCROW TRANSFER: Each Restricted Escrow Transfer must in order for it to be valid and settle, include the following details:
- the ISIN number for the Autonomy Shares (this is GB0039007983);
- the number of Autonomy Shares in respect of which the Offer is to be accepted;
- the member account ID and participant ID of the Autonomy Shareholder;
- the participant ID of the Escrow Agent (this is RA10) and its member account ID specific to a Restricted Escrow Transfer (this is RESTRICT);
- the intended settlement date. This should be as soon as possible;
- the corporate action number for the Offer which is allocated by Euroclear and can be found by viewing the relevant corporate action details in CREST;
- input with a standard delivery instruction priority of 80; and

MLAT_AU 00016971

CAB - Full View

- the contact name and telephone number inserted in the shared note field.

Each Restricted ESA instruction must, in order for it to be valid and settle, include the following details:
- the ISIN number for the Autonomy Shares (this is ▊▊▊▊▊▊ );
- the number of Autonomy Shares relevant to that Restricted ESA instruction;
- the member account ID and participant ID of the accepting Autonomy Shareholder;
- the member account ID and participant ID of the Escrow Agent set out in the Restricted Escrow Transfer;
- the participant ID and the member account ID of the Escrow Agent relevant to the form of consideration required (details of which are set out in this document);
- the CREST transaction ID of the Restricted Escrow Transfer to which the Restricted ESA instruction relates to be inserted at the beginning of the shared note field;
- the intended settlement date. This should be as soon as possible;
- the corporate action number of the Offer which is allocated by Euroclear and can be found by viewing the relevant corporate action details in CREST; and
- input with a standard delivery instruction priority of 80.

Additional Information:

LEVEL OF ACCEPTANCES: As at 10:00 p.m. (London time) on 3 October 2011 (being the second closing date of the Offer), HP Vision had received valid acceptances from Autonomy Shareholders in respect of 213,421,299 Autonomy Shares representing approximately 87.34 per cent. of the existing issued share capital of Autonomy.

OVERSEAS PERSONS: For restrictions placed on overseas persons please refer to the formal Offer document.

RIGHTS OF SHARES: Autonomy Shares to be acquired under the Offer will be acquired by HP Vision fully paid and free from all liens, charges, equitable interests, encumbrances, rights of pre-emption and other third party rights or interests and together with all rights now or hereafter attaching thereto, including, without limitation, the right to receive and retain all dividends and other distributions (if any) announced, declared, made or paid.

OFFER VALUE AND PREMIUM: The Offer values Autonomy's fully diluted share capital at approximately GBP7,091 million. The Offer Price represents:
- a premium of approximately 64 per cent. to the Closing Price of GBP15.50 per Autonomy Share on 17 August 2011, being the last Business Day prior to the commencement of the Offer Period;
- a premium of approximately 58 and 50 per cent. to the average Closing Price of an Autonomy Share of GBP16.18 and GBP17.01 over the one and three months, respectively, preceding the commencement of the Offer Period;
- a premium of approximately 16 per cent. to the fifty two week high price of an Autonomy Share of GBP18.91; and
- a premium of approximately 53 per cent. to the average Closing Price of GBP16.08 per Autonomy Share over the twelve month period to 17 August 2011, being the last Business Day prior to the commencement of the Offer Period and
- a premium of approximately 4 per cent. to the Closing Price of GBP24.52 per Autonomy Share on 15 August 2011 being the last Business Day prior to the publication of the Offer document.

IRREVOCABLE UNDERTAKINGS: The Autonomy Directors have entered into irrevocable undertakings to accept (or procure acceptance of) the Offer in respect of their respective beneficial interests in the issued and to be issued Autonomy Shares, representing in aggregate approximately 0.12 per cent. of the existing issued share capital of Autonomy. Accordingly, HP Vision, in aggregate, holds or has received irrevocable undertakings to accept the Offer in respect of a total of 22,300,886 Autonomy Shares, representing approximately 9.12 per cent of the existing issued share capital of Autonomy.

COMPULSORY ACQUISITION, CANCELLATION AND RE-REGISTRATION: If the Offer becomes or is declared wholly unconditional, and sufficient acceptances under the Offer are received, HP Vision intends to procure that Autonomy will make an application for the cancellation of the listing of Autonomy Shares on the Official List and for the cancellation of trading of Autonomy Shares on the London Stock Exchange's market for listed securities. In addition, Autonomy Shareholders should note that Autonomy may cease to be eligible for listing if less than 25 per cent of Autonomy Shares are in public hands, which for these purposes would exclude interests in more than 5 per cent. In this event, HP Vision intends to request the FSA to cancel Autonomy's listing on the basis that Autonomy no longer satisfies all the continuing obligations for maintaining a listing. If the Offer becomes or is declared unconditional in all respects it is anticipated that cancellation of listing on the Official List and cancellation of trading on the London Stock Exchange will take effect no earlier than 20 Business Days after the earliest of: (i) the date on which HP Vision has obtained) at a general meeting, the prior approval of a resolution for the cancellation ; (ii)

MLAT_AU 00016972

the date on which HP Vision has, by virtue of its shareholdings and acceptances of the Offer, acquired or agreed to acquire 75 per cent of the voting rights attaching to the Autonomy Shares; or (iii) the first date of issue of compulsory acquisition notices under Part 28 of the Companies Act. It should be noted that cancellation of listing on the Official List and cancellation of trading on the London Stock Exchange may occur earlier. If HP Vision receives acceptances of the Offer in respect of, and/or otherwise acquires, 90 per cent or more of the Autonomy Shares to which the Offer relates and 90 per cent or more of the voting rights attaching to such shares and assuming all other conditions of the Offer have been satisfied or waived (if they are capable of being waived), HP Vision intends to exercise its rights pursuant to Sections 974 to 991 of the Companies Act to acquire compulsorily, on the same terms as the Offer, the remaining Autonomy Shares in respect of which the Offer has not been accepted. It is also intended that, following the Offer becoming or being declared unconditional in all respects, Autonomy will seek to re-register as a private company under the relevant provisions of the Companies Act.

REGISTRAR: Computershare Investor Services PLC



Sequence Number:
26025

If you have any queries on the data, or encounter any problems, please contact support.

MLAT_AU 00016973

CAB - Full View

1351/11/2

Aug 24 2011 12:03 (GMT)

Situation:       TAKEOVER

ADDITIONAL INFORMATION FOLLOWING RECEIPT OF FORMAL
CIRCULAR

THE BOARD OF AUTONOMY CORPORATION PLC AND THE BOARD OF
HEWLETT-PACKARD VISION B.V. HAVE ANOUNCED THAT THEY HAVE
AGREED THE TERMS OF A RECOMMENDED CASH OFFER FOR THE ENTIRE
ISSUED AND TO BE ISSUED SHARE CAPITAL OF AUTONOMY BY HP
VISION

Issue Name:     AUTONOMY CORP

Security:

Terms:          FOR EACH AUTONOMY SHARE GBP25.50 IN CASH

Title:                                                          Settlement
                                                                Type:
            AUTONOMY CORP                    (0118271)          CREST

Relative Details and Dates:

Please see below for expected timetable.

SETTLEMENT: Subject to the Offer becoming, or being declared, unconditional in
all respects; settlement of the consideration to which any Autonomy Shareholder
is entitled under the Offer will be effected (i) in the case of acceptances received,
valid and complete in all respects, by the date on which the Offer becomes or is
declared wholly unconditional, within 14 days of such date; or (ii) in the case of
acceptances of the Offer received, valid and complete in all respects, after the
date on which the Offer becomes or is declared unconditional in all respects but
while it remains open for acceptance, within 14 days of such receipt, in the
following manner:
- SHARES HELD IN CERTIFICATED FORM: Where an acceptance relates to
Autonomy Shares held in certificated form, settlement of any cash consideration
to which the accepting Autonomy Shareholder is entitled will be despatched by
first class post (or by such other method as may be approved by the Panel) to
accepting Autonomy Shareholders or their appointed agents (but not into any
Restricted Jurisdiction). All such cash payments will be made in United Kingdom
pounds sterling by cheque drawn on a branch of a United Kingdom clearing bank.
- SHARES HELD IN UNCERTIFICATED FORM: Where an acceptance relates to
Autonomy Shares held in uncertificated form, the cash consideration to which the
accepting Autonomy Shareholder (or the first named Autonomy Shareholder in
the case of joint holders) is entitled will be paid by means of a CREST payment in
favour of the accepting Autonomy Shareholder's payment bank in respect of the
cash consideration due, in accordance with CREST payment arrangements.

2011-08-18    Offer Open date with respect to the City Code on Takeovers and Mergers
2011-09-12    Final day for receipt of Forms of Acceptance (13:00)
2011-09-12    Offer Close: (13:00 London time)

Offer Consideration:

SHARES HELD IN CERTIFICATED FORM: If you hold your Autonomy Shares in
certificated form (that is, not in CREST), you should return the completed, signed
and witnessed (in the case of an individual) Form of Acceptance (together with
your valid share certificate(s) and any other document(s) of title), by post or
(during normal business hours) by hand, to Capita Registrars, Corporate Actions,
The Registry, 34 Beckenham Road, Beckenham, Kent BR3 4TU as soon as
possible, but in any event, so as to be received by Capita Registrars not later than
1.00 p.m. (London time) on 12 September 2011.

SHARES HELD IN UNCERTIFICATED FORM (CREST): To accept the Offer in respect
of Autonomy Shares held in uncertificated form, you should send (or, if you are a

MLAT_AU 00016974

CREST sponsored member, procure that your CREST sponsor sends) to Euroclear a TTE Instruction in relation to such shares. A TTE Instruction to Euroclear must be properly authenticated in accordance with Euroclear's specifications for transfers to escrow and must contain, in addition to any other information that is required for a TTE Instruction to settle in CREST, the following details:
- the ISIN number for the Autonomy Shares (this is                        );
- the number of Autonomy Shares in respect of which you wish to accept the Offer (i.e. the number of Autonomy Shares to be transferred to escrow);
- your member account ID;
- your participant ID;
-               nt ID of the Escrow Agent in its capacity as CREST receiving agent
-               account of the Escrow Agent for the Offer on its basic terms (this is                        
- the intended settlement date. This should be as soon as possible and, in any event, not later than 1.00 p.m. (London time) on 12 September 2011;
- the corporate action number of the Offer which is allocated by Euroclear and can be found by viewing the relevant corporate action details in CREST;
- input with a standard delivery instruction priority of 80; and
- the contact name and telephone number inserted in the shared note field.

RIGHTS OF WITHDRAWAL: Each ESA Instruction must, in order for it to be valid and settle, include the following details:
- the number of Autonomy Shares to be withdrawn, together with their ISIN number (this is                        );
- the member account ID of the withdrawing shareholder, together with his participant ID;
- the member account ID of the Escrow Agent included in the relevant Electronic Acceptance (this is                        , together with the Escrow Agent's participant ID (this is             );
- the CREST transaction ID of the Electronic Acceptance to be withdrawn;
- the intended settlement date for the withdrawal;
- the corporate action number for the Offer, which is allocated by Euroclear and can be found by viewing the relevant corporate action details in CREST; and
- input with a standard delivery instruction priority of 80.

REVISED OFFER: Each ESA Instruction must, in order for it to be valid and settle, include the following details:
- the number of Autonomy Shares in respect of which the changed election is made, together with their ISIN number (this is                        );
- the member account ID of the Previous Acceptor, together with his participant ID;
- the member account ID of the Escrow Agent included in the relevant Electronic Acceptance (this is HEWAUT01), together with the Escrow Agent's participant ID (this is RA10);
- the CREST transaction ID of the Electronic Acceptance in respect of which the election is to be changed;
- the intended settlement date for the changed election;
- the corporate action number for the Offer, which is allocated by Euroclear and can be found by viewing the relevant corporation action details in CREST; and, in order that the desired change of election can be effected, must include:
- the member account ID of the Escrow Agent relevant to the new election; and
- input with a standard delivery instruction priority of 80.

RESTRICTED ESCROW TRANSFER: Each Restricted Escrow Transfer must in order for it to be valid and settle, include the following details:
- the ISIN number for the Autonomy Shares (this is                        );
- the number of Autonomy Shares in respect of which the Offer is to be accepted;
- the member account ID and participant ID of the Autonomy Shareholder;
- the participant ID of the Escrow Agent (this is RA10) and its member account ID specific to a Restricted Escrow Transfer (this is RESTRICT);
- the intended settlement date. This should be as soon as possible and, in any event, not later than 1.00 p.m. (London time) on 12 September 2011;
- the corporate action number for the Offer which is allocated by Euroclear and can be found by viewing the relevant corporate action details in CREST;
- input with a standard delivery instruction priority of 80; and
- the contact name and telephone number inserted in the shared note field.

Each Restricted ESA Instruction must, in order for it to be valid and settle, include the following details:
- the ISIN number for the Autonomy Shares (this is                        );
- the number of Autonomy Shares relevant to that Restricted ESA instruction;
- the member account ID and participant ID of the accepting Autonomy Shareholder;

MLAT_AU 00016975

- the member account ID and participant ID of the Escrow Agent set out in the Restricted Escrow Transfer;
- the participant ID and the member account ID of the Escrow Agent relevant to the form of consideration required (details of which are set out in this document);
- the CREST transaction ID of the Restricted Escrow Transfer to which the Restricted ESA instruction relates to be inserted at the beginning of the shared note field;
- the intended settlement date. This should be as soon as possible and, in any event, not later than 1.00 p.m. (London time) on 12 September 2011;
- the corporate action number of the Offer which is allocated by Euroclear and can be found by viewing the relevant corporate action details in CREST; and
- input with a standard delivery instruction priority of 80.

Additional Information:

OVERSEAS PERSONS: For restrictions placed on overseas persons please refer to the formal Offer document.

RIGHTS OF SHARES: Autonomy Shares to be acquired under the Offer will be acquired by HP Vision fully paid and free from all liens, charges, equitable interests, encumbrances, rights of pre-emption and other third party rights or interests and together with all rights now or hereafter attaching thereto, including, without limitation, the right to receive and retain all dividends and other distributions (if any) announced, declared, made or paid.

OFFER VALUE AND PREMIUM: The Offer values Autonomy's fully diluted share capital at approximately GBP7,091 million. The Offer Price represents:
- a premium of approximately 64 per cent to the Closing Price of GBP15.58 per Autonomy Share on 17 August 2011, being the last Business Day prior to the commencement of the Offer Period;
- a premium of approximately 58 and 50 per cent to the average Closing Price of an Autonomy Share of GBP16.18 and GBP17.02 over the one and three months, respectively, preceding the commencement of the Offer Period;
- a premium of approximately 36 per cent to the fifty two week high price of an Autonomy Share of GBP18.81; and
- a premium of approximately 59 per cent to the average Closing Price of GBP16.00 per Autonomy Share over the twelve month period to 17 August 2011, being the last Business Day prior to the commencement of the Offer Period and
- a premium of approximately 4 per cent to the Closing Price of GBP24.52 per Autonomy Share on 19 August 2011 being the last Business Day prior to the publication of the Offer document.

IRREVOCABLE UNDERTAKINGS: The Autonomy Directors have entered into irrevocable undertakings to accept (or procure acceptance of) the Offer in respect of their respective beneficial interests in the issued and to be issued Autonomy Shares, representing in aggregate approximately 9.12 per cent of the existing issued share capital of Autonomy. Accordingly, HP Vision, in aggregate, holds or has received irrevocable undertakings to accept the Offer in respect of a total of 22,200,060 Autonomy Shares, representing approximately 9.12 per cent of the existing issued share capital of Autonomy.

COMPULSORY ACQUISITION, CANCELLATION AND RE-REGISTRATION: If the Offer becomes or is declared wholly unconditional, and sufficient acceptances under the Offer are received, HP Vision intends to procure that Autonomy will make an application for the cancellation of the listing of Autonomy Shares on the Official List and for the cancellation of trading of Autonomy Shares on the London Stock Exchange's market for listed securities. In addition, Autonomy Shareholders should note that Autonomy may cease to be eligible for listing if less than 25 per cent of Autonomy Shares are in public hands, which for these purposes would exclude interests in more than 5 per cent. In this event, HP Vision intends to request the FSA to cancel Autonomy's listing on the basis that Autonomy no longer satisfies all the continuing obligations for maintaining a listing. If the Offer becomes or is declared unconditional in all respects it is anticipated that cancellation of listing on the Official List and cancellation of trading on the London Stock Exchange will take effect no earlier than 20 Business Days after the earliest of: (i) the date on which HP Vision has obtained, at a general meeting, the prior approval of a resolution for the cancellation ; (ii) the date on which HP Vision has, by virtue of its shareholdings and acceptances of the Offer, acquired or agreed to acquire 75 per cent of the voting rights attaching to the Autonomy Shares; or (iii) the first date of issue of compulsory acquisition notices under Part 28 of the Companies Act. It should be noted that cancellation of listing on the Official List and cancellation of trading on the London Stock Exchange may occur earlier. If HP Vision receives acceptances of the Offer in respect of, and/or otherwise acquires, 90 per cent or more of the Autonomy Shares to which the Offer relates and 90 per cent or more of the voting rights attaching to such shares and assuming all other conditions of the Offer have been satisfied or waived (if they are capable of being waived), HP Vision intends to exercise its rights pursuant to Sections 974 to 991 of the Companies Act to acquire

MLAT_AU 00016976

compulsorily, on the same terms as the Offer, the remaining Autonomy Shares in respect
of which the Offer has not been accepted.It is also intended that, following the Offer
becoming or being declared unconditional in all respects, Autonomy will seek to re-register
as a private company under the relevant provisions of the Companies Act.

REGISTRAR: Computershare Investor Services PLC



Sequence Number:
26297

If you have any queries on the data, or encounter any problems,
please contact support.

MLAT_AU 00016977

1351/11/1
Aug 19 2011 14:53 (GMT)

**Situation:**   TAKEOVER

THE BOARD OF AUTONOMY CORPORATION PLC AND THE BOARD OF
HEWLETT-PACKARD VISION B.V. HAVE ANNOUNCED THAT THEY HAVE
AGREED THE TERMS OF A RECOMMENDED CASH OFFER FOR THE ENTIRE
ISSUED AND TO BE ISSUED SHARE CAPITAL OF AUTONOMY BY HP
VISION.

**Issue Name:**   AUTONOMY CORP

**Security:**

**Terms:**   FOR EACH AUTONOMY SHARE GBP25.50 IN CASH

**Titles**

██████████ AUTONOMY CORP ██████████ (011B271)

**Settlement Type:**

CREST

**Relative Details and Dates:**

A further CAB will be released upon receipt of additional information.

**No Relative Dates available**

**Offer Consideration:**

**Additional Information:**

OFFER VALUE AND PREMIUM: The Offer values Autonomy's fully diluted share capital at
approximately GBP7,091 million. The Offer Price represents:
- a premium of approximately 64 per cent to the Closing Price of GBP15.56 per Autonomy
Share on 17 August 2011, being the last Business Day prior to the commencement of the
Offer Period;
- a premium of approximately 58 and 50 per cent to the average Closing Price of an
Autonomy Share of GBP16.18 and GBP17.02 over the one and three months, respectively,
preceding the commencement of the Offer Period;
- a premium of approximately 36 per cent to the fifty two week high price of an Autonomy
Share of GBP18.93; and
- a premium of approximately 59 per cent to the average Closing Price of GBP16.00 per
Autonomy Share over the twelve month period to 17 August 2011, being the last Business
Day prior to the commencement of the Offer Period.

IRREVOCABLE UNDERTAKINGS: The Autonomy Directors have entered into irrevocable
undertakings to accept (or procure acceptance of) the Offer in respect of their respective
beneficial interests in the issued and to be issued Autonomy Shares, representing in
aggregate approximately 9.12 per cent of the existing issued share capital of Autonomy.
Accordingly, HP Vision, in aggregate, holds or has received irrevocable undertakings to
accept the Offer in respect of a total of 22,200,066 Autonomy Shares, representing
approximately 9.12 per cent of the existing issued share capital of Autonomy.

COMPULSORY ACQUISITION, CANCELLATION AND RE-REGISTRATION: If the Offer
becomes or is declared wholly unconditional, and sufficient acceptances under the Offer are
received, HP Vision intends to procure that Autonomy will make an application for the
cancellation of the listing of Autonomy Shares on the Official List and for the cancellation of
trading of Autonomy Shares on the London Stock Exchange's market for listed securities.
In addition, Autonomy Shareholders should note that Autonomy may cease to be eligible
for listing if less than 25 per cent of Autonomy Shares are in public hands, which for these
purposes would exclude interests in more than 5 per cent. In this event, HP Vision intends
to request the FSA to cancel Autonomy's listing on the basis that Autonomy no longer

MLAT_AU 00016978

satisfies all the continuing obligations for maintaining a listing. If the Offer becomes or is declared unconditional in all respects it is anticipated that cancellation of listing on the Official List and cancellation of trading on the London Stock Exchange will take effect no earlier than 20 Business Days after the earliest of: (i) the date on which HP Vision has obtained, at a point in time, the prior approval of a resolution for the cancellation ; (ii) the date on which HP Vision has, by virtue of its shareholdings and acceptances of the Offer, acquired or agreed to acquire 75 per cent of the voting rights attaching to the Autonomy Shares; or (iii) the first date of issue of compulsory acquisition notices under Part 28 of the Companies Act. It should be noted that cancellation of listing on the Official List and cancellation of trading on the London Stock Exchange may occur earlier. If HP Vision receives acceptances of the Offer in respect of, and/or otherwise acquires, 90 per cent or more of the Autonomy Shares to which the Offer relates and 90 per cent or more of the voting rights attaching to such shares and assenting all other conditions of the Offer have been satisfied or waived (if they are capable of being waived), HP Vision intends to exercise its rights pursuant to Sections 974 to 991 of the Companies Act to acquire compulsorily, on the same terms as the Offer, the remaining Autonomy Shares in respect of which the Offer has not been accepted. It is also intended that, following the Offer becoming or being declared unconditional in all respects, Autonomy will seek to re-register as a private company under the relevant provisions of the Companies Act.

REGISTRAR: Computershare Investor Services PLC



Sequence Number:

If you have any queries on the data, or encounter any problems, please contact support.

MLAT_AU 00016979

CAB - Full View                                                                                 Page 6 of 15

1351/11/3

Sep 13 2011 14:47 (GMT)

Situation:          TAKEOVER

LEVEL OF ACCEPTANCE ADDED AND OFFER EXTENDED TO 3
OCTOBER 2011.

ADDITIONAL INFORMATION FOLLOWING RECEIPT OF FORMAL CIRCULAR

THE BOARD OF AUTONOMY CORPORATION PLC AND THE BOARD OF
HEWLETT-PACKARD VISION B.V. HAVE ANNOUNCED THAT THEY HAVE
AGREED THE TERMS OF A RECOMMENDED CASH OFFER FOR THE ENTIRE
ISSUED AND TO BE ISSUED SHARE CAPITAL OF AUTONOMY BY HP
VISION.

Issue Name:      AUTONOMY CORP

Security:        ████████

Terms:           FOR EACH AUTONOMY SHARE GBP25.50 IN CASH

Title:                                                              Settlement
                                                                    Type:
████████ AUTONOMY CORP ORD ████████ (0118171)                       CREST

Relative Details End Date:

Please see below for expected timetable:

SETTLEMENT: Subject to the Offer becoming, or being declared, unconditional in all
respects, settlement of the consideration to which any Autonomy Shareholder is entitled
under the Offer will be effected (i) in the case of acceptances received, valid and complete
in all respects, by the date on which the Offer becomes or is declared wholly unconditional,
within 14 days of such date; or (ii) in the case of acceptances of the Offer received, valid
and complete in all respects, after the date on which the Offer becomes or is declared
unconditional in all respects but while it remains open for acceptance, within 14 days of
such receipt, in the following manner:
- SHARES HELD IN CERTIFICATED FORM: where an acceptance relates to Autonomy
Shares held in certificated form, settlement of any cash consideration to which the
accepting Autonomy Shareholder is entitled will be despatched by first class post (or by
such other method as may be approved by the Panel) to accepting Autonomy Shareholders
or their appointed agents (but not into any Restricted Jurisdiction). All such cash payments
will be made in United Kingdom pounds sterling by cheque drawn on a branch of a United
Kingdom clearing bank.
- SHARES HELD IN UNCERTIFICATED FORM: where an acceptance relates to Autonomy
Shares held in uncertificated form, the cash consideration to which the accepting Autonomy
Shareholder (or the first named Autonomy Shareholder in the case of joint holders) is
entitled will be paid by means of a CREST payment in favour of the accepting Autonomy
Shareholder's payment bank in respect of the cash consideration due in accordance with
CREST payment arrangements.

2011-08-18    Offer Open date with respect to the City Code on Takeovers and Mergers
2011-10-03    Offer Closes (10:00 London time)

Offer Consideration:

SHARES HELD IN CERTIFICATED FORM: if you hold your Autonomy Shares in certificated
form (that is, not in CREST). You should return the completed, signed and witnessed (in
the case of an individual) Form of Acceptance (together with your valid share certificate(s)
and any other document(s) of title), by post or (during normal business hours) by hand, to
Capita Registrars, Corporate Actions, The Registry, 34 Beckenham Road, Beckenham, Kent
BR3 4TU as soon as possible, but in any event so as to be received by Capita Registrars
not later than 10.00 a.m. (London time) on 3 October 2011.

SHARES HELD IN UNCERTIFICATED FORM (CREST): To accept the Offer in respect of
Autonomy Shares held in uncertificated form, you should send (or, if you are a CREST
sponsored member, procure that your CREST sponsor sends) to Euroclear a TTE instruction
in relation to such shares. A TTE instruction to Euroclear must be properly authenticated in
accordance with EUROclear's specifications for transfers to escrow and must contain, in
addition to any other information that is required for a TTE instruction to settle in CREST,

MLAT_AU 00016980

the following details:

- the ISIN number for the Autonomy Shares (this is ███████████);
- the number of Autonomy Shares in respect of which you wish to accept the Offer (i.e. the number of Autonomy Shares to be transferred to escrow);
- your member account ID;
- your participant ID;
- the participant ID of the Escrow Agent in its capacity as CREST receiving agent (this is RA10);
- the member account of the Escrow Agent for the Offer on its basic terms (this is HEWAUT01);
- the intended settlement date. This should be as soon as possible and, in any event, not later than 10.00 a.m. (London time) on 3 October 2011;
- the corporate action number of the Offer which is allocated by Euroclear and can be found by viewing the relevant corporate action details in CREST;
- input with a standard delivery instruction priority of 80; and
- the contact name and telephone number inserted in the shares note field.

RIGHTS OF WITHDRAWAL: Each ESA instruction must, in order for it to be valid and settle, include the following details:

- the number of Autonomy Shares to be withdrawn, together with their ISIN number (this is ███████████);
- the member account ID of the withdrawing shareholder, together with his participant ID;
- the member account ID of the Escrow Agent included in the relevant Electronic Acceptance (this is HEWAUT01); together with the Escrow Agent's participant ID (this is RA10);
- the CREST transaction ID of the Electronic Acceptance to be withdrawn;
- the intended settlement date for the withdrawal;
- the corporate action number for the Offer, which is allocated by Euroclear and can be found by viewing the relevant corporate action details in CREST; and
- input with a standard delivery instruction priority of 80.

REVISED OFFER: Each ESA instruction must, in order for it to be valid and settle, include the following details:

- the number of Autonomy Shares in respect of which the changed election is made, together with their ISIN number (this is ███████████);
- the member account ID of the Previous Acceptor, together with his participant ID;
- the member account ID of the Escrow Agent included in the relevant Electronic Acceptance (this is HEWAUT01), together with the Escrow Agent's participant ID (this is RA10);
- the CREST transaction ID of the Electronic Acceptance in respect of which the election is to be changed;
- the intended settlement date for the changed election;
- the corporate action number for the Offer, which is allocated by Euroclear and can be found by viewing the relevant corporate action details in CREST; and, in order that the desired change of election can be effected, must include:
- the member account ID of the Escrow Agent relevant to the new election; and
- input with a standard delivery instruction priority of 80.

RESTRICTED ESCROW TRANSFER: Each Restricted Escrow Transfer must, in order for it to be valid and settle, include the following details:

- the ISIN number for the Autonomy Shares (this is ███████████);
- the number of Autonomy Shares in respect of which the Offer is to be accepted;
- the member account ID and participant ID of the Autonomy Shareholder;
- the participant ID of the Escrow Agent (this is RA10) and its member account ID specific to a Restricted Escrow Transfer (this is RESTRICT);
- the intended settlement date. This should be as soon as possible and, in any event, not later than 10.00 a.m. (London time) on 3 October 2011;
- the corporate action number for the Offer which is allocated by Euroclear and can be found by viewing the relevant corporate action details in CREST;
- input with a standard delivery instruction priority of 80; and
- the contact name and telephone number inserted in the shares note field.

Each Restricted ESA instruction must, in order for it to be valid and settle, include the following details:

- the ISIN number for the Autonomy Shares (this is ███████████);
- the number of Autonomy Shares relevant to that Restricted ESA instruction;
- the member account ID and participant ID of the accepting Autonomy Shareholder;
- the member account ID and participant ID of the Escrow Agent set out in the Restricted Escrow Transfer;
- the participant ID and the member account ID of the Escrow Agent relevant to the form of consideration required (details of which are set out in this document);
- the CREST transaction ID of the Restricted Escrow Transfer to which the Restricted ESA instruction relates to be inserted at the beginning of the shared note field;
- the intended settlement date. This should be as soon as possible and, in any event, not

MLAT_AU 00016981

later than 10.00 a.m. (London time) on 3 October 2011;
- the corporate action number of the Offer which is allocated by Euroclear and can be found by viewing the relevant corporate action details in CREST; and
- input with a standard delivery instruction priority of 80.

Additional Information:

LEVEL OF ACCEPTANCES: As at 1:00 p.m. (London time) on 12 September 2011 (being the first closing date of the Offer), HP Vision had received valid acceptances from Autonomy Shareholders in respect of 101,577,809 Autonomy Shares representing approximately 41.62 per cent. of the existing issued share capital of Autonomy.

OVERSEAS PERSONS: For restrictions placed on overseas persons please refer to the formal Offer document.

RIGHTS OF SHARES: Autonomy Shares to be acquired under the Offer will be acquired by HP Vision fully paid and free from all liens, charges, equitable interests, encumbrances, rights of pre-emption and other third party rights of interests and together with all rights now or hereafter attaching thereto, including, without limitation, the right to receive and retain all dividends and other distributions (if any) announced, declared, made or paid.

OFFER VALUE AND PREMIUM: The Offer values Autonomy's fully diluted share capital at approximately GBP7,091 million. The Offer Price represents:
- a premium of approximately 64 per cent to the Closing Price of GBP15.58 per Autonomy Share on 17 August 2011, being the last Business Day prior to the commencement of the Offer Period;
- a premium of approximately 58 and 50 per cent to the average Closing Price of an Autonomy Share of GBP16.18 and GBP17.02 over the one and three months, respectively, preceding the commencement of the Offer Period;
- a premium of approximately 35 per cent to the fifty two week high price of an Autonomy Share of GBP18.91; and
- a premium of approximately 59 per cent to the average Closing Price of GBP16.00 per Autonomy Share over the twelve month period to 17 August 2011, being the last Business Day prior to the commencement of the Offer Period and
- a premium of approximately 4 per cent to the Closing Price of GBP24.52 per Autonomy Share on 19 August 2011 being the last Business Day prior to the publication of the Offer document.

IRREVOCABLE UNDERTAKINGS: The Autonomy Directors have entered into irrevocable undertakings to accept (or procure acceptance of) the Offer in respect of their respective beneficial interests in the issued and to be issued Autonomy Shares, representing in aggregate approximately 0.12 per cent of the existing issued share capital of Autonomy. Accordingly, HP Vision, in aggregate, holds or has received irrevocable undertakings to accept the Offer in respect of a total of 22,200,066 Autonomy Shares, which represents approximately 0.12 per cent of the existing issued share capital of Autonomy.

COMPULSORY ACQUISITION, CANCELLATION AND RE-REGISTRATION: If the Offer becomes or is declared wholly unconditional, and sufficient acceptances under the Offer are received, HP Vision intends to procure that Autonomy will make an application for the cancellation of the listing of Autonomy Shares on the Official List and for the cancellation of trading of Autonomy Shares on the London Stock Exchange's market for listed securities. In addition, Autonomy Shareholders should note that Autonomy may cease to be eligible for listing if less than 25 per cent of Autonomy Shares are in public hands, which for these purposes would exclude interests in more than 5 per cent. In this event, HP Vision intends to request the FSA to cancel Autonomy's listing on the basis that Autonomy no longer satisfies all the continuing obligations for maintaining a listing. If the Offer becomes or is declared unconditional in all respects it is anticipated that cancellation of listing on the Official List and cancellation of trading on the London Stock Exchange will take effect no earlier than 20 Business Days after the earliest of: (i) the date on which HP Vision has obtained, at a general meeting, the prior approval of a resolution for the cancellation ; (ii) the date on which HP Vision has, by virtue of its shareholdings and acceptances of the Offer, acquired or agreed to acquire 75 per cent of the voting rights attaching to the Autonomy Shares; or (iii) the first date of issue of compulsory acquisition notices under Part 28 of the Companies Act. It should be noted that cancellation of listing on the Official List and cancellation of trading on the London Stock Exchange may occur earlier. If HP Vision receives acceptances of the Offer in respect of, and/or otherwise acquires, 90 per cent or more of the Autonomy Shares to which the Offer relates and 90 per cent or more of the voting rights attaching to such shares and assuming all other conditions of the Offer have been satisfied or waived (if they are capable of being waived), HP Vision intends to exercise its rights pursuant to Sections 974 to 991 of the Companies Act to acquire compulsorily, on the same terms as the Offer, the remaining Autonomy Shares in respect of which the Offer has not been accepted. It is also intended that, following the Offer becoming or being declared unconditional in all respects, Autonomy will seek to re-register

MLAT_AU 00016982

as a private company under the relevant provisions of the Companies Act.

REGISTRAR: Computershare Investor Services PLC



Sequence Number:

If you have any queries on the data, or encounter any problems,
please contact support.

MLAT_AU 00016983

HIC                              UBS LONDON BRANCH                      QPADEV002
6
LVF020AR                         Client Entitlements                   8SEP201
1
████████████ TEND Tender                                  Event Ref ███████
45
Type option, press Enter.

E=Edit R=Re-send E-Mail M=Mail Gp W=Wthdrw Ntfy N=Re-inst. Ntfy I=Instr. Sent

  Cl ┌──────────────────────────────────────────────────────────────┐ fy Sts
  34 │            Holdings Totals by Depot                            │ #
  WT │                                                                │ #
     │                                                                │
     │   Depot          Holdings        CREST Hldg(Rx Date)   As At   │ #
  35 │   CREST         ████████████████████████████████████          │ #
  WT │                                                                │ #
     │                                                                │
  36 │                                                                │ #
     │                                                                │ #
     │   ┌──────────────────┐   ┌─────────────────────┐              │ #
  38 │   │  F2=Previous     │   │  F11=Rec Data Posn  │              │ $4.000
     └───┴──────────────────┴───┴─────────────────────┴──────────────┘ #

                                                                      More..

  F2=Prev      F7=Re-calc       F9=Select      F10=App.Dtl   F12=Dep.Tot
  F15=Eld.Tot

MLAT_AU 00016984

RIC                              UBS LONDON BRANCH                        QPADEV002
5
LVE020AR                         Client Entitlements                      8SEP201
        TEND Tender                                              Event Ref:
45

Election Totals

G=Gen Instr, A=Amend, R=Release, C=Cancel, V=View, H=History

   Depot Typ Option      Election Amount Message        Sts
   CREST CRE-001 CASH         33536.0000
   CREST CRE-002 NOAC      21561297.0000

        [   Enter   ]      [  F2=Prev  ]     [ F10=Refresh ]

   F2=Prev         F7=Re-calc.       F9=Select        F10=App Dft        F12=Dep Tot
   F15=Ele Tot

HIC                              UBS LONDON BRANCH                    QPADEV002
M
LVFO20AR                        Client Entitlements                   21AUG201

████████ TEND Tender                                    Event Ref: ███████
20

Election Totals

C=Gen Instr, A=Amend, R=Release, C=Cancel, V=View, H=History

  Depot Typ Option        Election Amount Message      Sta

  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓     ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

  CREST CRE 001 CASH       19188046.0000 000003820055 TTE/B220 CREATED


      Enter        F2=Prev      F10=Refresh

  Event not fully elected


   F2=Prev      F7=Re:calc     F9=Select     F10=App.Dft    F12=Dep.Tot
   F15=Elc.Tot

MLAT_AU 00016986

```
HIC                          UBS LONDON BRANCH                        QPADEV002
M
LVF020AR                     Client Entitlements                      23AUG201
████████  TEND Tender                              Event Ref: ████████
20
Type option, press Enter:

R=Edit R=Re-send E-Mail M=Mail Gp W=Wthdrw Ntfy N=Re-inst. Ntfy I=Instr. Sent

   Client         Holding & Elections      Mgr Dep Depot Elected       Ntfy Sts
      ████  DR MICHAEL LYNCH                NIG NIG CREST HIC 23/06/11
        Orig        19188046.0000
   001 CASH         19188046.0000  Benefit: GBP (Net)        489295173.000
```

```
                                                                       More..

  F3=Prev      F7=Re-calc      F9=Select.     F10=App.Dft.    F12=Dep.Tot
  F15=Elc Tot
```

MLAT_AU 00016987

```
 HIC                          UBS LONDON BRANCH                      QPADEV002
M
 LVF020AR                     Client Entitlements                    23AUG201
 1
███████████  TEND Tender                              Event Ref: ████████
45
Type option, press Enter:

E=Edit R=Re-send E-Mail M=Mail Gp W=Wthdrw Ntfy N=Re-inst. Ntfy I=Instr. Sent

   Client           Holding & Elections         Mgr Dep Depot Elected      Ntfy Sts

   ███████████  DR MICHAEL LYNCH . . . . . . . . HIG NIG CREST . . . 00/00/00 . . . .

        Orig          19188046.0000
```

```
                                                                     More..


 F2=Prev        F7=Re-calc       F9=Select      F10=App.Dtl    F12=Dep.Tot
 F15=Elc.Tot
```

MLAT_AU 00016988

```
 HIC                      UBS LONDON BRANCH                    QPADEV002
M
 LVF020AE                 Client Entitlements                 23AUG201
1
5          TEND Tender                          Event Ref:  ████████
Type option, press Enter:

E=Edit R=Re-send E-Mail M=Mail Gp W=Wthdrw Ntfy N=Re-inst. Ntfy I=Instr. Sent

   Client           Holding & Elections     Mgr Dep Depot Elected     Ntfy Sts
        ████    DR MICHAEL LYNCH . . . .     NIG NIG CREST PAT 22/08/11 . . . .
          Orig           19188046.0000
     001 CASH           19188046.0000  Benefit: GBP (Net)        489295173.000
O
```

█████████████████████████████████████████████████████████████

████████████           ███████████████

█████████████████████████████████████████████████████████████

  █████           █████████

████████████████████████████████████████████████████████████

  █████           ██████████

███████████████████████████████████████████████████████████████

  █████           █████████

███████████████████████████████████████████████████████████████

  █████           █████████

██████████████████████████████████████████████████████████████

                                                           More..

```
 F3=Prev      F7=Re-calc     F9=Select     F10=App.Dtl     F12=Dep.Tot
 F15=Elc.Tot
```

**trafic**

## Stock Balances on Balance Date 28/09/2011

Report run at - 29/09/2011 10:12:34

| Isin Security Description | Balance Date | CREST Participant Member Account | Balance Balance Type |
|---|---|---|---|
| AUTONOMY CORP ORD | 28/09/2011 | MOMAY MAINPOOL | 600.00 Available |
| AUTONOMY CORP ORD | 28/09/2011 | MOMAY MAINPOOL | 21,584,183.00 Escrow |
| | | Totals | 31,584,833.00 |

MLAT_AU 00016990



MLAT_AU 00016991



550,413,241.50

MLAT_AU 00016992

```
REPORT NO. TCC020                     UBS LONDON BRANCH                              PAGE    1
                                  CAPITAL CHANGE ENTITLEMENTS           PRODUCED AT 11.37.50 ON ███████

Cap. change ref.   ██████
Issue type          TC     TAKEOVER FOR CASH                     'Ex' date  7 OCTOBER 2011
% of holding       100.000 %

Original asset  ████████    AUTONOMY CORP PLC   ORD 0.00333
Cash per unit        GBP     25.500000  GBP1 = GBP     1.000000

Due settlement date         7 OCTOBER 2011
Settlement type    X        Assumed settlement
Settlement Authority CRE    CREST

Comment                     TAKEOVER - GBP25.50 PER SHARE

Portfolio                   Account              Holding           Base currency      Rep. currency  D/R
                            Officer                                    Cost              Cost

Registration CREST   CREST MAIN POOL

3499955000 DR MICHAEL LYNCH   NIG Original asset    19168546       GBP  169635136.05  GBP  169635136.05  R
Settlement Ledger GBPCLNR01       Cash      GBP   489295173.00     GBP  489295173.00  CRE  489295173.00

Accumulated for dagos CREST      Original asset
                                 New asset (A)                .0000
                                 New asset (B)                .0000
                                 New asset (C)                .0000
                                 Cash       GBP
```

MLAT_AU 00016993

                      CAPITAL CHANGE ENTITLEMENTS              PRODUCED AT 11.57.58 ON  7OCT2011
Cap change ref.
Issue type     ██   TAKEOVER FOR CASH                   'EX' date  7 OCTOBER 2011

Accumulated for depot CREST          Original asset      21560647.0000
                                     New asset (A)            .0000
                                     New asset (B)            .0000
                                     New asset (C)            .0000
                                     Cash       GBP     519756435.50

Accumulated for overall holding      Original asset      21560647
                                     Cash       GBP     519796598.50

                          END OF REPORT: ICC020

MLAT_AU 00016994



REPORT NO   █████████       UBS LONDON BRANCH                  PAGE   1

                              CAPITAL CHANGE ENTITLEMENTS               PRODUCED AT 10.32.10 ON █████████

Cap. change ref.       █████████
Issue type        10    TAKEOVER FOR CASH                  'Ex' date   7 OCTOBER 2011
% of holding     100.000 %

Original asset 931992GBP   ADIORONY CORP PLC    ORD 0.00/33
Cash per unit      GBP     25.500000   GBP1 = GBP     1.000000

Due settlement date      7 OCTOBER 2011
Settlement type       A    Assured settlement
Settlement Authority CHE    CREST

Comment               TAKEOVER - GBP25.50 PER SHARE

| Portfolio | Account Officer | Holding | Base currency Cost | Rep. currency Cost | B/U |
|---|---|---|---|---|---|
| Registration CREST   CREST MAIN POOL | | | | | |
| 2453055000 DR MICHAEL LYNCH | NTG Original asset | 19189046 | GBP  169635136.05 | GBP  169635136.05 | B |
| Settlement ledger GBPCUR201 | Cash       GBP | 489255173.00 | GBP  489255173.00 | GBP  489255173.00 | |
| ████████████████████████ | ███████████ | █████████ | ██ | ██████ | ██████ |
| Accumulated for depot CREST | Original asset | ██████████ | | | |
| | New asset (A) | .0000 | | | |
| | New asset (B) | .0000 | | | |
| | New asset (C) | ████████ | | | |
| | Cash       GBP | ██████████ | | | |

MLAT_AU 00016995

```
REPORT NO.  ████                      UBS LONDON BRANCH                                    PAGE    2
                                CAPITAL CHANGE ENTITLEMENTS              PRODUCED AT 10.33.30 ON  7OCT2011

Cap. change ref.   ████
Issue type    19      TAKEOVER FOR CASH                   'Ex' date   7 OCTOBER 2011


Accumulated for depot CREST           Original asset      21560647.0000
                                      New asset (A)              .0000
                                      New asset (B)              .0000
                                      New asset (C)              .0000
                                      Cash       GBP     549796498.50


Accumulated for overall holding       Original asset      21560647
                                      Cash       GBP     549796498.50


                                END OF REPORT  ICC020
                                -----------------------
```

MLAT_AU 00016996

Date: 4-Aug-2016                          DBS LONDON BRANCH                              Department: Rece...

Time: 10:13:19                     Capital Change By Trustees Report                   Ref:   111032100AA

Capital Change Ref :   11474139L
Issue Type :   110                   PASSWORD FOR CASE
Original Issuer :   52104209AP        AUTOCARD CORP PLC ORD 0.40011          ZN 2106...                1A1 1...2021
New Issuer 2/:                        25 15:00:40                            Settlement Date :           Vs-Aug-2011
Cash per unit :    GBP                25 15:00:40

Settlement Currency     Amount in Settlement Currency   Amount in Payment Currency   Amount in Payment Currency

                              *** No Details in Report ***

                                *** End of Report ***

MLAT_AU 00016997