# EXHIBIT 34

| From: | Yelland, Christopher <chris.yelland@hp.com> |
|-------|---------------------------------------------|
| Sent: | Tuesday, May 7, 2013 8:59 AM |
| To: | Jacqui Hine/33679C/UKI/Luton/ErnstYoung/GB <jhine@uk.ey.com> |
| Subject: | FW: 2010 Tracker -- DOI, USVA, KPMG, Vatican -- 1 of 6 |
| Attach: | Vatican Deal.pdf.pdf; KPMG.pdf.pdf; VA Deal.pdf.pdf; Department of Interior.pdf.pdf |

Hi Jacqui

This is one of a series of emails I am forwarding.

Between then they contain the key email evidence that Morgan Lewis have compiled on the 2010 world wide deals, based on the list of deal >$1m and your first additional sample.

Regards

Chris

DISCLAIMER

This e-mail message is intended only for the personal use

of the recipient(s) named above. This message may be an

attorney-client communication and as such privileged and

confidential and/or it may include attorney work product.

If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

**From:** Stolley, Martha B. [mailto:mstolley@morganlewis.com]

**Sent:** 06 May 2013 21:29

**To:** Yelland, Christopher; Anderson, Antonia

**Subject:** 2010 Tracker -- DOI, USVA, KPMG, Vatican -- 1 of 6

**Martha B. Stolley**

**Morgan, Lewis & Bockius LLP**

101 Park Avenue | New York, NY 10178-0600

Direct: 212.309.6858 | Main: 212.309.6000 | Fax: 212.309.6001

mstolley@morganlewis.com | www.morganlewis.com

Assistant: Cindy Downes | 212.309.6029 | cdownes@morganlewis.com

MLAT_AU 00026206

DISCLAIMER

This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential and/or it may include attorney work product. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

MLAT_AU 00026207

# VATICAN DEAL

MLAT_AU 00026208

| From: | Sushovan Hussain [sushovanh@autonomy.com] |
|---|---|
| Sent: | Monday, March 29, 2010 4:55 PM |
| To: | 'Corrado Broli' |
| Subject: | BAV - the route to closing the deal tomorrow |

Dear Corrado,

Let me go through everything so that there are no misunderstandings between you and I tomorrow :

1.      Ammenti consulting agreement – this is fine and I have asked Julie to send to you, I will sign it as soon as the BAV contract is live
2.      Press release – this is fine again as soon as the BAV contract is live – let me know who should prepare the first draft – I am happy to do this.
3.      Governance conference with BAV on 22nd April for E4,500 – this is fine
4.      Final EULA – this should be in your inbox. Please forward forward to Mr Cuturi as the final executable contract
5.      Partners – I am very happy to involve a partner in the project and I am very happy to pay a normal partner margin of upto 3%. It is a big project and having an Italian partner would be very useful to us. However the partner that we would use would have to be sufficiently strong financially for us to be able to recognize the revenue and only if it the PO and contract is signed this quarter. The partner you mentioned last night I think is too small for revenue recognition purposes. However if that partner was to give us a bank guarantee then it would be fine (or even a Postebank guarantee) – this has to be received with the order. Also if we got the order from either Valueteam or IBM before the end of the quarter then it would be fine and the partner could then be involved later.

I hope this is ok, and good luck for tomorrow.

1

FOIA Confidential Treatment Requested

HP 0000253

MLAT_AU 00026209

MLAT_AU 00026210

**PURCHASE ORDER**
**Under**
**Autonomy Government Reseller Agreement**
**Dated as of June 29, 2006**

PURCHASE ORDER NO. AUT-03-20-001

Purchase Order Date:       March 31, 2010 ("Effective Date")

| | |
|---|---|
| From : | MicroTech, LLC ("Reseller")<br>8330 Boone Blvd., Suite 600<br>Vienna, VA 22182 |
| Ship to: | MicroTech, LLC<br>8330 Boone Blvd., Suite 600<br>Vienna, VA 22182 |
| Shipping Method: Electronic, such as via FTP transfer | |
| To : | Autonomy, Inc.<br>One Market, Spear Tower, 19th Floor<br>San Francisco, CA 94105 |

1.  Software:

**IDOL Server licensed for the following operations:**
   (i)    Retrieval – Advance
   (ii)   Retrieval – Lite
   (iii)  Retrieval – Parametric
   (iv)  Retrieval – Standard
   (v)   Spelling Correction
   (vi)  Summarisation
   (vii) Hyperlinking
   (viii) Script & Icon Recognition
   (ix)  OCR
   (x)   Z39.50 Federation

**Connectors for use with IDOL server:**
   All currently available connectors

**Autonomy LiquidOffice**

**Autonomy FITS Plugin**

**Autonomy SPE**

**Autonomy Mediabin**
   (i) FITS image resampling

**Autonomy Archive Solution with the following operations:**
   (i) Digital Safe Core Appliance
   (ii) Dual-write functionality
   (iii) Compression
   (iv) User Interface Portal
   (v) Object Splitting and Combination

MLAT_AU   00026211

2. Languages : All Autonomy supported languages including Latin, Greek and Hebrew.

3. Platform : All current Autonomy supported platforms

4. Number of Copies : One each of (1) above

5. Number of Instances : Unlimited

6. Number of Production Servers : Unlimited

7. Number of Non-Production Servers : Unlimited

8. Authorized Use : Licensee may use the Software and Hardware for the BAV for the project entitled "Digitalizzazione dell'Archivio della Biblioteca Apostolica Vaticana" for storage, processing and search of scanned manuscript images currently held in the Vatican Library.

9. Authorised Number of Uses : 200 concurrent users

10. Territory of Software installation : Vatican Territory

11. Fees (Software License, Support and Maintenance)

|  | Phase 1 $ |
|---|---|
| Software plus first year Support and Maintenance | 11,550,000 |
|  |  |
|  |  |

17. Payment Terms : Licensee shall pay Autonomy in accordance with the following:

| Amount | Due and Payable |
|---|---|
| $11.55 million | 90 days from the Effective Date |
|  |  |

18. Software Delivery : Shipped ExWorks point of manufacture (per Incoterms

FOIA Confidential Treatment Requested

Address                        2000) via electronic delivery

20. Commencement Date    :   On Effective Date

21. Expiry Date              :   30 March 2013

Signature below represents Reseller's agreement to purchase the products and services referenced above pursuant to terms
of the Autonomy Government Reseller Agreement dated June 29, 2006, and the terms set forth above.

Company signature

Name                         Steven B. Truitt

Title                          COO

Date                          3/31/2010

FOIA Confidential Treatment Requested

HP 0000256

MLAT_AU 00026213

MLAT_AU 00026214

Autonomy Corporation plc

Report to the Audit Committee
on the 2010 Q3 Review

Final Report

FOIA Confidential Treatment Requested

HP 0000257

MLAT_AU 00026215

# Contents

| | | |
|---|---|---|
| Introduction | | 1 |
| 1. | Key risks | 3 |
| 2. | Other matters | 8 |
| 3. | Taxation | 10 |
| 4. | Responsibility statement | 12 |
| Appendix 1: Potential adjustments | | 13 |
| Appendix 2: Draft management representation letter | | 15 |

FOIA Confidential Treatment Requested

HP 0000258

MLAT_AU 00026216

# Introduction

We have pleasure in setting out in this document our report to the Audit Committee of Autonomy Corporation plc and its subsidiaries (together "the Group" or "Autonomy") on our review of the three and nine months ended 30 September 2010 for discussion at the meeting scheduled for 18 October 2010. This report summarises the principal matters that have arisen from our review of the financial information within the financial report for the three and nine months ended 30 September 2010.

This introduction is not intended to be exhaustive but highlights the most significant matters to which we would like to bring to your attention. It should, therefore, be read in conjunction with the entire report and the appendices thereto.

| Key findings on key risks and other matters | We discuss within Section 1 the results of our review work in relation to key risks which have been identified as being significant to the Q3 2010 results and press release. In particular, we will focus at the Audit Committee meeting on: <ul><li>Those sales where we have concerns that all recognition criteria have been met (Poste Italiana, Sky Media); and</li><li>Trade receivables where there is significant exposure (Microtechnologies LLC, Sales Consulting and Latin American debts).</li></ul> |
|---|---|
| Review status | We have substantially completed our review. Certain procedures remain outstanding and need to be finalised before we can issue our review opinion: <ul><li>Completion of our review of detailed analyses supporting the income statement;</li><li>Completion of our internal review procedures;</li><li>Review of your final press release;</li><li>Receipt of tax opinion from PWC to support Interwoven acquisition cost tax provision release; and</li><li>Receipt of management representation letter (See Appendix 2 for suggested draft).</li></ul> We will report to you orally in respect of any modifications to our findings that arise on completion of these matters.  On satisfactory completion of the outstanding matters, we anticipate issuing an unmodified review report. |



Report to the Audit Committee on the 2010 Interim Review Final Report   1

HP 0000259

MLAT_AU 00026217

# Introduction



| **Identified misstatements** | We have used materiality of $4.3 million (Q3 2009: $3.6 million, full year $20.0 million) for the quarterly income statement and $14.2 million (2009: $12.6 million) for the income statement for the nine months ended 30 September 2010 and the Balance Sheet. Both measures are based on profit before tax. This is consistent with the basis used to determine materiality for the previous year-end audit. |
| --- | --- |
| | Identified uncorrected misstatements reduce profit before tax for Q3 2010 by $3.6 million and have no net impact profit after tax. Details of our potential adjustments for Q3 2010, together with those for the nine months ending 30 September 2010, are included in Appendix 1. Management has concluded that the total impact of the uncorrected misstatements, both individually and in aggregate, is not material in the context of the financial statements taken as a whole, and we concur with their view |
| **Accounting policies and financial reporting** | As part of our review, we consider the quality and acceptability of the Group's accounting policies and financial reporting and their consistency with the 2009 annual report. We have nothing to report in these areas. |
| **Accounting and internal control systems** | As part of our review we have made enquiries of management regarding the control environment and the reliability of the management reporting process. We note that following the fraud identified in Q2 2010, management has restructured the finance team across the Group in order to transfer a number of internal control processes previously operated in the US into the UK so that key controls are now operated, monitored and reviewed by senior members of the Group finance team based in Cambridge. |
| | This change in internal control has had no direct impact on our work for the purposes of our Q3 2010 review other than the more accurate allocation of cost of goods sold and operating expenses described on 8 below. We shall perform our audit work on the design and implementation of controls as part of our pre-year end work in the UK and US in November 2010. |
| **Independence** | In our professional judgement we are independent within the meaning of APB Ethical Standards for Auditors and the objectivity of the audit engagement partner and audit staff is not impaired. We are currently in the early stages of financial due diligence on Project Dynamo and have been asked to provide a proposal to provide tax advice on the structuring of the transaction. We have considered the threats to our audit independence and are satisfied that the safeguards in place are adequate. |

2   **Report to the Audit Committee on the 2010 Interim Review Final Report**

# 1. Key risks

The results of our review procedures on key risks are set out below:

| Revenue Recognition | |
| --- | --- |
| Assumed risk of fraud in relation to revenue recognition | Revenues for the quarter were $211 million (Q3 2009: $192 million) and for the 9 month period ended 30 September 2010 were $626 million (9M 2009: $517 million). |

Management continues to apply a consistent approach which is compliant with IFRS to recognising revenues which includes performing credit checks, evaluating any ongoing managerial involvement and discharging obligations thereby ensuring that all of the provisions of International Accounting Standard 18, *Revenue*, ("IAS 18") have been satisfied.

The most significant licence revenues recognised in Q3 2010 were with the US Department of Veteran Affairs (through FileTek Inc) ($10.0 million), Amgen Inc (through Capax Discovery LLC) ($9.0 million) and EMC Corporation ($5.0 million).

Management has confirmed that no revenue deals contained side letters or ongoing Autonomy performance requirements that were excluded from the signed sales contracts.

**US Department of Veteran Affairs ("VA")**

This is a $10 million licence deal for EAS and Digital Safe software which has been sold via the value added reseller FileTek Inc ("FileTek"). Management has considered the recoverability of the debt from the reseller in order to meet the recognition requirements of IAS 18 and has deemed that the payment history of this reseller and the $0.5 million upfront payment received is sufficient to recognise the revenue. Historically Autonomy has purchased software from FileTek but no purchases have been made by Autonomy from this reseller during this quarter (Q2 2010: $11.5 million).

**Amgen Inc ("Amgen")**

This is a $9.0 million Digital Safe licence deal sold to this end user via the value added reseller Capax Discovery LLC ("Capax"). Autonomy have introduced this customer to the value added reseller in order for them to carry out the professional services implementation work required to migrate Amgen from EAS mail to DS mail. On the basis that Capax are up-to-date with their payments on the majority of the Eli Lilly sale discussed in Q2 2010, management has concluded there are no concerns over recoverability that would impact revenue recognition.

**EMC Corporation ("EMC")**

This is a £5.0 million extension to the previous OEM Licence agreement signed with this customer.

VA, Amgen and EMC are all significant organisations and there is not debt overdue and so management are confident of the ultimate recoverability of the revenues earned.

FOIA Confidential Treatment Requested

HP 0000261

MLAT_AU   00026219

# 1. Key risks

**Revenue Recognition (continued)**

**Deloitte response**

Our review of revenue contracts was designed to select large contracts, those containing non-standard terms, as well as a sample of all other contracts. Our review work noted that revenue recognition continues to be consistently applied in comparison with previous periods and in accordance with Group accounting policies and IFRS.

For all deals over $1 million we issued revenue confirmation requests direct to the customer. These were received in all cases except on the rare occasions where the legal department of certain large blue chip customers do not respond as a matter of policy.

For each contract selected, we examined the terms and conditions of the contract to ensure that no unusual circumstances existed which might impact the recognition of revenue. We ensured that amounts recognised could reasonably be expected to be recoverable by inspecting payment history or credit checks where relevant. Furthermore, where ongoing managerial involvement is necessary, the carve out rate for revenues deferred were recalculated to ensure they were in line with Autonomy's standard carve out rates for support and maintenance and support services, where relevant.

We concur with management's treatment of the above deals.

We note that no value added reseller deals have been reversed this quarter and resigned directly with the end user and this supports management's policy of revenue recognition at the point of sale to the value added reseller.

We have included two licence revenue amounts of $2.7 million with Red Ventures S.r.l (to the end user Poste Italiana) and $0.3 million with Sky Media as judgemental adjustments in Appendix 1. Based on the information provided and the previous history with Sky Media and Poste Italiana, we believe that there is currently insufficient evidence of recoverability and therefore that it is not appropriate to recognise revenue at this stage.

FOIA Confidential Treatment Requested

HP 0000262

MLAT_AU 00026220

# 1. Key risks

## Recoverability of accounts receivable

### Provision for doubtful debts

The net accounts receivable balance at 30 September 2010 is $222.5 million (30 June 2010: $208.3 million). The actual bad debt expense on the income statement in the quarter amounted to $3.1 million (Q2 2010: $3.8 million). The bad debt provision at 30 September 2010 stands at $26.4 million (30 June 2010: $23.5 million).

Cash collection this quarter has been $190.1 million (including cash from factored debts), which has decreased from $227.0 million in Q2 2010. At the quarter end, $20.0 million was received from the Royal Bank of Scotland as part of a non-recourse financing agreement. This is an increase in factored debts of $14 million compared to Q2 2010. Under this agreement Autonomy retains no credit risk and the amounts have been removed from the accounts receivable balance at 30 September 2010.

As at close of business on 15 October 2010, total cash received since the period end was $11.9 million. DSOs have increased at Q2 2010 from 82 days (which was unusually low) to 90 days, but are in line with normal levels and ahead of the 97 days at the end of Q3 2009. Management continues to apply a detailed approach to credit control with increased scrutiny around the quarter end over potential exposure and the need to make a provision.

### Microtechnologies LLC

We reported in Q2 2010 that an amount of $11.5 million was due from Microtechnologies LLC ("Microtech") relating to a licence deal where the end user is the Vatican. As at the date of this report, $11.0 million of this amount remains outstanding and is now overdue. Microtech is a substantial business which has a long history of buying from Autonomy and a good track record of payments. Management is in discussion with Microtech management to arrange a payment plan and is confident that payment will be received in due course. We understand that Microtech has yet to receive the amounts due from its end user and as such is delaying payment to Autonomy. As a result, this amount remains unprovided at this time. We highlight that this is a significant balance which management will need to re-assess for the purposes of the 2010 year-end financial statements. Should a substantial proportion of this balance not be recovered by year end, provisioning will need to be considered.

### Latin American debts

Management continues to work with the Latin American overdue accounts previously reported to the Audit Committee to ensure that these balances are provided for where appropriate. A further $2.6 million has been provided for on amounts receivable from Allotech, Integracion de Negocios, Informese and Digital Data, resulting in a net exposure on these accounts of $3.4 million. Management has secured a promissory note from Integracion de Negocios confirming their intention to settle $1 million of their debt on 30 December 2010. No further amount has been provided against the amount due from Telematica Lefic as management continues to work with the customer to resolve their technical issues and receive payment. There is a net exposure on this account of $0.8 million.

### Sales Consulting SRL

In Q4 2009, as previously reported to you, Autonomy entered into a licence agreement with Sales Consulting SRL for $2.5 million. At the time we concluded that there was insufficient persuasive evidence that the amount was recoverable and as such we proposed a judgemental adjustment to defer the revenue. This amount is currently more than over 90 days overdue and the judgemental adjustment for the toal unprovided debt of $2.4 million continues to be proposed at Appendix 1.

The level of provision represents management's best estimate of the likely outcome of recoverability at this stage.

FOIA Confidential Treatment Requested

HP 0000263

MLAT_AU  00026221

# 1. Key risks

**Recoverability of accounts receivable**

**Deloitte response**

We have reviewed customer correspondence and payment histories which support the conclusions reached by management.
Where we required further clarification, we have reviewed customer correspondence.

We note that an amount due from Verdasys Inc ($0.6 million out of total balance of $4.6 million) which has historically been a good payer, has become overdue. We understand that management is actively talking to Verdasys management and that a successful funding round has recently been completed and therefore concur with management's treatment.

We accept the approach adopted by management with regards to Microtech at this stage but we will expect to see substantial cash receipts in Q4 2010 if provisioning is to be avoided.

6   Report to the Audit Committee on the 2010 Interim Review Final Report

FOIA Confidential Treatment Requested

HP 0000264

MLAT_AU  00026222

# 1. Key risks

## Hardware sales

| | |
|---|---|
| Presentation of costs associated with hardware sales | Included in revenues for the quarter is $26.0 million of hardware sales. Q2 2010 sales were $27.5 million. Q1 2010 sales were $12.2 million. In aggregate these sales represent approximately 10% of the Group's revenues for the nine months to 30 September 2010. |
| | The revenue in the quarter is primarily made up of sales of Dell hardware to Zones Inc (end user H&R Block for $11.9 million) Morgan Stanley for $5.6 million, SHI International (end user Bank of America for $3.8 million), Metro Business Systems Inc (end user UBS for $2.2 million) and Insight (end user Citi Group for $2.3 million). |
| | Consistent with the hardware sales discussed in previous quarters' reports to the Audit Committee, these strategic sales to major purchasers of software in the future have been made at a loss. Management has taken all of the costs associated with the Dell hardware sales to cost of sales with the exception of the loss of approximately $4.8 million (of which $3.0m relates to the deferred revenue release element) which has been allocated to sales and marketing expenses on the basis that these sales are only made at a loss in order to procure future, profitable software sales. $7.8 million relates to deliveries of hardware contracted in previous quarters. |
| | Management has extended its analysis demonstrating the strong linkage between the loss making hardware sales and subsequent highly profitable software sales which indicates that for the $118 million of hardware sales made over the course of 2009 and 2010 to date (at a total loss of approximately $15 million), approximately $75 million of major software deals have taken place with these customers over the same period and $28 million of hosted revenues have been generated for which there is a recurring revenue stream.. All of these subsequent amounts have been transacted at Autonomy's normal high gross profit margin. |
| Deloitte response | We have reviewed management's analysis of the linkage between the loss making strategic hardware sales and subsequent profit making software sales and given the scale and consistency in allocation with the prior quarter, accept the decision taken by management to allocate the loss of $4.8 million to sales and marketing. |
| | Given the increasing significance of hardware sales to the Group's revenues, and the resultant impact on the gross and operating margin in the quarter and half year results we would expect appropriate explanation to be given in the Q3 2010 press release. |
| | It is likely that the questions raised at the Q2 2010 press conference are raised again at the Q3 2010 press conference and therefore suggest that it would be helpful to include narrative regarding the nature of these revenues in the quarterly report. |

FOIA Confidential Treatment Requested

HP 0000265

MLAT_AU  00026223

# 2. Other matters

| Other matter | Deloitte response |
|---|---|
| **Depreciation refinement** | The accounting policy for depreciation of fixtures and equipment is between three and five years on a straight line basis. Previously hardware at data centres has been depreciated over three years but management considers that a seven year period more accurately represents the useful economic life of the hardware. As the accounting policy range is between three and five years management have chosen to restrict this to five years. A credit of $1.7 million has therefore been recognised in the income statement and represents the cumulative effect of moving to a five year UEL for Q1-Q3 2010.<br><br>IAS 16 *Property, Plant and Equipment* requires that changes to the estimate of the UEL should be accounted for as a change in accounting estimate in accordance with IAS 8 *Accounting Policies, Changes in Accounting Estimates and Errors* i.e. prospectively by including it in profit or loss in the period of the change and future periods. IAS 34 *Interim reporting* clarifies that if such items are recognised and measured in one quarter of a financial year and the estimate changes in the next quarter of the year, the original estimate is adjusted in the second interim period, by catching up in the current period. The results of previous interim periods of the current year are not retrospectively restated. This is the treatment adopted by management. |
| **Opex refinement in Q2 and Q1** | During Q2 management restructured its group finance function in order to bring more internal control processes into the UK from the US. As a result of this process management identified a number of inconsistencies in the manner in which costs were being allocated between cost of good sold ("COGS") and the various operating expenses categories. This was adjusted on a prospective basis for the 2010 financial year.  Management has now completed this exercise during the course of Q3 2010 resulting in a further adjustment to cost allocation for Q1-Q3 2010. Management is now confident that all allocations are consistent and appropriate, and is satisfied that these reallocations do not represent restatements, nor require restatements of prior year comparatives. Management did however include a comment in the Q2 release that certain reclassifications between cost categories to ensure consistency across the Group had been made and we encourage them to repeat this in the Q3 release.<br><br>We have reviewed management's calculations in both Q2 and Q3 2010 and are comfortable that the revised approach is more representative of the substance of the costs incurred in the period and that no restatements of prior quarters are required. |
| **Sponsorship deals** | As reported in Q2 2010 the costs of the Mercedes sponsorship is being spread evenly over the two years of the agreement. In our view the higher costs of sponsorship in year one should be spread across the first year, resulting in a slightly higher charge – an adjustment increasing the changes in Q3 2010 by $0.6 million has been proposed at Appendix 1.<br><br>A deal with Tottenham Hotspur was signed in Q3 2010 to cover at least the next two years. The $13.7 million costs of the 2010/11 football season appropriately spread by reference to the number of Premier League home games played.<br><br>Management has assumed that Tottenham will not earn the bonus payment for winning the Premier League title this season. |

8   Report to the Audit Committee on the 2010 Interim Review Final Report

FOIA Confidential Treatment Requested

HP 0000266

MLAT_AU 00026224

# 2. Other matters

| Other matter | Deloitte response |
| --- | --- |
| Vacation accrual | As reported in Q2 2010, management reduced the vacation accrual by $1.4 million on the basis of their intention to change the practice of paying out such amounts where possible, ensuring that leaving employees use up any outstanding vacation during their notice period. As we have not yet seen evidence of the feasibility of achieving such a reduction in the vacation accrual we are not yet in a position to agree with management's judgement. We have therefore continued to propose a judgemental adjustment in Appendix 1 to reinstate the $1.4 million vacation accrual. |
| Acquisition accounting | Management continues to monitor its provisional fair values attributed to the assets and liabilities acquired as part of the acquisitions of Microlink in Q1 2010 and the trade and assets of the information governance business of CA Technologies Inc in Q2 2010. There have been no adjustments required to the fair values in Q3 2010. The values attributed to separately identifiable intangibles remain a management estimate at this stage before being professionally valued by Duff & Phelps.

Management is currently aware of an issue whereby CA Technologies Inc are invoicing amounts in respect of unbilled contracts that Autonomy purchased from them. This is currently being investigated by management and as a result no receivable has been recorded to reflect amounts that will be recovered from them and the assets and liabilities acquired remain on a provisional basis.

Following approval from Microlink's Proxy Board we have been able to engage Deloitte US to perform agreed upon review procedures to gain assurance over the Microlink results for Q3 2010. We are not able to do this from the UK due to restrictions on access to their records. The results of these limited procedures have not raised any significant issues. |
| Payroll fraud | An insurance claim has been made in respect of the amounts fraudulently paid out in the US. The claim was for approximately $2.6 million, but the maximum coverage under the policy is $1 million hence only this amount has been recognised as a receivable. We have reviewed the terms of the insurance cover and concur that this is sufficiently certain to be paid out based on our understanding of the US payroll issue, which has resulted in the payroll and cash clerks being imprisoned. We have proposed an adjustment to reclassify the receivable from trade debtors to other debtors. |

FOIA Confidential Treatment Requested

HP 0000267

MLAT_AU  00026225

# 3. Taxation

## Taxation

James Ferguson has acted as tax audit partner. James is independent of any tax related non-audit services provided and will be subject to rotation as a key audit partner in accordance with APB Revised Ethical Standards for Auditors. In particular, James is independent of the Deloitte transfer pricing team providing assistance with documenting Autonomy's transfer pricing position.

We have reviewed the tax workings and discussed key matters with management regarding the tax position of the key entities and major transactions in the year.

### Effective tax rate

The Income Statement taxation charge for the 9 month period is $46.9 million which corresponds to a full year effective rate of 24.2% (year ended 31 December 2009: 28.0%). The expected effective tax rate at Q2 was 25.1% and the Q3 only effective tax rate is therefore 22.0% such that the effective tax rate for the nine months is consistent with the full year effective tax rate of 24.2%.

During the quarter the forecast profit for the full year was reduced by circa $60 million. As a consequence of this reduction in the forecast, the effective tax rate has reduced by approximately 1%. To understand the impact on the effective tax rate of the changes in profit forecast the drivers on the effective tax rate need to be considered. Whilst the principal mechanism for allocating profits between the UK and US is the transfer pricing policy it uses a profit split methodology, and hence the effective tax rate is not impacted by the lower forecast profits in this regard.

The relative effect of other tax adjustments, specifically, the UK R&D relief, the benefit of the US financing structure and the recognition of US losses, all of which lower the effective tax rate, becomes more pronounced with the lower forecast full year profit.

The expected 2010 effective tax rate of 24.2% includes a number of items that would not be expected to be repeated in future years, primarily the additional recognition of US tax losses. Excluding these one-off adjustments, the effective tax rate would be approximately 28.1% and is expected to be approximately this level in 2011 and future years.

### Deferred taxes

The net deferred tax liability relating to US purchased intangibles offset by US tax losses expected to be recognised in the balance sheet is $87.0 million ($82.4 million at 31 December 2009.) This is consistent with previous periods factoring in further amortisation of the intangibles, recognition of additional US tax losses and utilisation of US tax losses against US profit. The net deferred tax liability has increased during the period as there is a greater rate of utilisation of available US losses against US taxable profit than amortisation of the purchased intangibles even when including the additional US tax losses recognised as a result of the completion of the s382 study.

FOIA Confidential Treatment Requested

HP 0000268

MLAT_AU 00026226

# 3. Taxation

| Key audit risk | |
| --- | --- |
| Transfer pricing | As previously communicated to the Audit Committee the Group's documentation to support the US transfer pricing position is not compatible with US transfer pricing rules.

At the end of Q2 2010, Deloitte were engaged to prepare more extensive transfer pricing documentation, to support the internal transfer pricing methodology being applied by management.

A significant amount of the underlying work on the transfer pricing project has been completed during Q3 2010 and management is comfortable that the interim conclusions of this work assist in supporting the position which the Group has taken in the tax returns filed by its US entities for the 2009 financial year.

Preparation of the final transfer pricing documentation report, consistent with US regulations and transfer pricing compliance requirements, is still in progress. This work is expected to be completed by management and Deloitte during Q4 2010. |
| Tax provision | The total tax provision expected at 31 December 2010 is $9.8 million, comprising as follows:

- $7.2m in respect of potential historic transfer pricing exposures already identified as at Q2 2010; and

- $2.6m additional provision in the quarter in respect of some Interwoven acquisition costs, included as deductible expenses in the 2009 US tax return filing.

Management should ensure that a consistent provisioning policy is followed in respect of the creation, and eventual release, of the Group's tax provisions. We do not consider this presents any unprovided exposure risks.

Shortly before issuance of this report, we were informed that PWC have opined on the $2.6 million of Interwoven acquisition costs and as such we have included this as an adjustment to tax in Appendix 1. |

FOIA Confidential Treatment Requested

# 4. Responsibility statement

This report has been prepared for the Board of Directors in that capacity and we therefore accept responsibility to you alone for its contents. We accept no duty, responsibility or liability to any other parties, since this report has not been prepared, and is not intended, for any other purpose. It should not be made available to any other parties without our prior written consent.

**Deloitte LLP**
Chartered Accountants
Cambridge
17 October 2010

12   Report to the Audit Committee on the 2010 Interim Review Final Report

FOIA Confidential Treatment Requested

HP 0000270

MLAT_AU 00026228

# Appendix 1: Potential adjustments

The following uncorrected misstatements were identified during the course of our review:

| | Page | Quarter | Q3 2010 | | 9m 2010 | |
|---|---|---|---|---|---|---|
| | | | Credit/(charge) to current year income statement $'m | Increase/(decrease) in net assets $'m | Credit/(charge) to current year income statement $'m | Increase/(decrease) in net assets $'m |
| Adjustment to Mercedes sponsorship costs | 8 | Q2/Q3 | (0.6) | (0.6) | (1.2) | (1.2) |
| Discounting of Capax Global deal with extended payment terms | | Q2 | - | - | (0.3) | (0.3) |
| Amortisation of acquired intangibles | | Q2 | - | - | (0.3) | (0.3) |
| Additional carve out on THFC deal | | Q2 | - | - | (0.3) | (0.3) |
| Discounting for extended payment terms JPMC | | Q2 | - | - | (0.4) | (0.4) |
| IFRS 2 charge correction for use of incorrect rate | | Q2 | - | - | 0.3 | - |
| IFRS 2 charge correction for revised model opening position | | Q1 | - | - | 1.5 | - |
| **Total factual misstatements** | | | (0.6) | (0.6) | (0.7) | (2.5) |
| Reversal of Red Ventures Srl (Poste Italiana) licence deal | 4 | Q3 | (2.7) | (2.7) | (2.7) | (2.7) |
| Reversal of Sky Media revenue as previous debts have not been recovered | 4 | Q3 | (0.3) | (0.3) | (0.3) | (0.3) |
| Reversal of adjustment to vacation accrual | | Q2 | - | - | (1.4) | (1.4) |
| Reversal of revenue on Italian resellers (Auxilium and Computer Trading Srl) | | Q2 | - | - | (2.2) | (2.2) |
| Provision against recoverability of Sales Consulting Srl* | 5 | 2009 | - | - | (2.4) | (2.4) |
| **Total judgemental misstatements** | | | (3.0) | (3.0) | (9.0) | (9.0) |
| **Total (pre-tax)** | | | (3.6) | (3.6) | (9.7) | (11.5) |
| Tax provision adjustments | | Q2/Q3 | 2.9 | 2.9 | 3.3 | 3.3 |
| Tax effect (22% / 24%) | | | 0.7 | 0.7 | 2.3 | 2.7 |
| **Total (post-tax)** | | | - | - | (4.1) | (5.5) |

FOIA Confidential Treatment Requested

HP 0000271

MLAT_AU  00026229

# Appendix 1: Adjustments

We identified balance sheet reclassifications which reduce deferred revenue and increase other creditors by $4.5 million and reduce trade receivables and increase other receivables by $1.0 million.

* Management expects to be able to satisfy us that amounts due from Sales Consulting Srl are recoverable and therefore that this additional provision of $2.4 million is not required.

We will obtain written representations from the Board of Directors confirming that after considering all these uncorrected items, both individually and in aggregate, in the context of the consolidated financial information taken as a whole, they do not believe that any adjustments are required.

**14  Report to the Audit Committee on the 2010 Interim Review Final Report**

FOIA Confidential Treatment Requested

HP 0000272

MLAT_AU  00026230

# Appendix 2: Draft management representation letter

(Autonomy Letterhead)

21 October 2010

Deloitte LLP
City House
126-130 Hills Road
Cambridge
CB2 1RY

Dear Sirs

**Review of Interim financial Information of Autonomy Corporation plc**

This representation letter is provided in connection with your review of the balance sheet of Autonomy Corporation plc as of 30 September 2010 and the related statements of income, changes in equity and cash flows for the three and nine month periods then ended and a summary of the significant accounting policies and other explanatory notes for the purposes of expressing a conclusion whether anything has come to your attention that causes you to believe that the interim financial information does not give a true and fair view of the financial position of Autonomy Corporation plc as at 30 September 2010, and of its financial performance and its cash flows in accordance with the recognition and measurement criteria of IFRSs as adopted for use in the European Union and the basis set out in note 1 to the quarterly press release. We acknowledge our responsibility for the fair presentation of the interim financial information in accordance with the recognition and measurement criteria of IFRSs as adopted for use in the European Union and the basis set out in note 1 to the quarterly press release.

We confirm, to the best of our knowledge and belief, the following representations:

- The interim financial information referred to above has been prepared and presented in accordance with the recognition and measurement criteria of IFRSs as adopted for use in the European Union and the basis set out in note 1 to the quarterly press release.
- We have made available to you all books of account and supporting documentation, and all minutes of meetings of shareholders and the board of directors.
- There are no material transactions that have not been properly recorded in the accounting records underlying the interim financial information.
- There has been no known actual or possible non-compliance with laws and regulations whose effects required consideration when preparing the interim financial information or that could have a material effect on the interim financial information in the event of non-compliance.
- We acknowledge responsibility for the design and implementation of internal control to prevent and detect fraud and error.
- We have disclosed to you all significant facts relating to any known frauds or suspected frauds or suspected frauds that may have affected the entity.

Report to the Audit Committee on the 2010 Interim Review Final Report   15

FOIA Confidential Treatment Requested

HP 0000273

MLAT_AU 00026231

MLAT_AU 00026232

| | |
|---|---|
| **From:** | Joel Scott [joels@autonomy.com] |
| **Sent:** | Thursday, December 23, 2010 11:58 PM |
| **To:** | 'Sushovan Hussain - Autonomy'; 'Peter Menell'; 'Steve Chamberlain - Autonomy' |
| **Subject:** | RE: MT |
| **Attachments:** | MicroTech Proposal Autonomy ATIC.DOCX; MicroTech ATIC - 23-12-2010.doc |

As discussed, the proposal, as currently contemplated, carries with it the inherent 1-year limitation (i.e., though the investment in the ATIC should help us grow our federal business, most government projects span more than 1 year from inception to award, with larger projects spanning 2 and 3+ years in many cases).  In an effort to address upfront the limitations of an initial short-term investment, MicroTech has provided us with "best and final" out-year pricing through 5 years.  I've also negotiated with them to get access to their training facilities, which we can use upon request subject to availability for federal or commercial training (or otherwise) if we go with an extended term model.  Based on the pricing we've negotiated, the best discount rate is achievable with a 3 year commit at 9.6M, which amounts to a 17% discount off the total cumulative price.  Details are in attached.

Please let me know your thoughts and/or please pass along to Andy/Mike for input/signoff.

**From:** Joel Scott [mailto:joels@autonomy.com]
**Sent:** Wednesday, December 22, 2010 9:18 AM
**To:** 'Sushovan Hussain'; 'Peter Menell'; 'Stephen Chamberlain'
**Subject:** RE: MT

I've managed to negotiate the price down to 3.3M (again contingent upon payment in full by 12/31), which is 450K down from the 3.75M and down 150K from their last offer of 3.45M.   I believe that this is the best we will do.  Summary has been updated to reflect the new price.  Let me know what else I can do to help make this happen.

**From:** Joel Scott [mailto:joels@autonomy.com]
**Sent:** Wednesday, December 22, 2010 7:46 AM
**To:** 'Sushovan Hussain'; 'Peter Menell'; 'Stephen Chamberlain'
**Subject:** RE: MT

Attached.  Spoke to Dave.  Trying to get pricing down with our commit to pay by 12/31.  Hoping to shave off another 100-200k.  Will update if/when I get that.

**From:** Sushovan Hussain [mailto:sushovanh@autonomy.com]
**Sent:** Wednesday, December 22, 2010 7:19 AM
**To:** 'Joel Scott'; 'Peter Menell'; 'Stephen Chamberlain'
**Subject:** RE: MT

So please send the deal summary to us, we can comment then send to mrl and andy for approval.

**From:** Joel Scott [mailto:joels@autonomy.com]
**Sent:** 22 December 2010 15:13
**To:** 'Peter Menell'; 'Sushovan Hussain'; 'Stephen Chamberlain'
**Subject:** RE: MT

To review the deal summary and revise/add from a tech perspective so that we can bundle this up for exec/board approval.

1

FOIA Confidential Treatment Requested

HP 0000274

MLAT_AU 00026233

**From:** Peter Menell [mailto:peterm@autonomy.com]
**Sent:** Wednesday, December 22, 2010 7:10 AM
**To:** 'Sushovan Hussain'; 'Joel Scott'; 'Stephen Chamberlain'
**Subject:** RE: MT

I said yes on Thursday last week so I'm not sure what you need me to now

**From:** Sushovan Hussain [mailto:sushovanh@autonomy.com]
**Sent:** 22 December 2010 09:34
**To:** 'Joel Scott'; 'Stephen Chamberlain'
**Cc:** 'Peter Menell'
**Subject:** RE: MT

Joel - I believe you need to chase pete

**From:** Joel Scott [mailto:joels@autonomy.com]
**Sent:** 21 December 2010 15:19
**To:** 'Stephen Chamberlain'; 'Sushovan Hussain'
**Subject:** RE: MT

I've sent a deal summary to Pete Sunday and yesterday.  Nothing back yet.  What else do I need to do here?

**From:** Stephen Chamberlain [mailto:stephenc@autonomy.com]
**Sent:** Friday, December 17, 2010 3:19 AM
**To:** 'Sushovan Hussain'; 'Joel Scott'
**Subject:** MT

How close are we to agreeing? Need to collect their overdue balances.

**Steve Chamberlain**
**VP, Finance**
**Autonomy**

Cambridge Business Park
Cowley Road
Cambridge
CB4 0WZ

Direct tel: 01223 448017
Mobile tel: 07795 601794
Fax: 01223 448040

E-mail: stephenc@autonomy.com
Web: www.autonomy.com

The information contained in this message is for the intended addressee only and may contain confidential and/or privileged information. If you are not the intended addressee, please delete this message and notify the sender, and do not copy or distribute this message or disclose its contents to anyone. Any views or opinions expressed in this message are those of the author and do not necessarily represent those of Autonomy Systems Limited or of any of its associated companies. No reliance may be placed on this message without written confirmation from an authorised representative of the company. Autonomy Systems Limited, Registered Office: Cambridge Business Park, Cowley Road, Cambridge CB4 0WZ, Registered Number 03063054.

2

HP 0000275

MLAT_AU  00026234

MLAT_AU 00026235

**From:**      Stouffer Egan [stouffere@autonomy.com]
**Sent:**      Saturday, January 01, 2011 5:59 PM
**To:**        Sushovan Hussain
**Cc:**        Joel Scott - Autonomy
**Subject:**   Re: cash

We should have gotten the MT cash. dT will come mon or ties dated correctly.

On Jan 1, 2011, at 2:58 AM, "Sushovan Hussain" <sushovanh@autonomy.com> wrote:

> Pls make sure we get the cheques from DT, MT and Capax dated appropriately


> Also MT should pay us $6m against Vatican

1

FOIA Confidential Treatment Requested                HP 0000276

MLAT_AU 00026236

MLAT_AU 00026237

| | |
|---|---|
| **From:** | Sushovan Hussain [sushovanh@autonomy.com] |
| **Sent:** | Sunday, March 25, 2012 5:06 PM |
| **To:** | Rugginenti, Gianni |
| **Cc:** | Lesmo, Marco Maria; corradob@autonomy.com; Anelli, Loris Massimo; Aquilani, Laura; 'Julie Dolan' |
| **Subject:** | RE: Vaticano BAV |

Dear all - This is not a good commercial deal for us as I am sure you all know.

BAV will not pay for 3 years and after that only over a long period of time. They have no incentive to make this successful because they are getting free hardware and software for 3 years. Please make sure they have to pay for ALL services as they will always ask for our help. Corrado – if we have to provide services for free then I do not want to sign the deal. Please be clear on this and please do not ask me for any more concessions.

Why BAV will go with EMC who have not done any extended POC i do not know and i really do not believe EMC are the competition. However BAV seem to want to agree with EMC so I have said ok to our financial proposal. I did this last week.

I have said ok on the basis that this is more of a charitable event. If BAV want to go with EMC with unproven software that doesn't do what they need it to do then let them please. Also we have no visibility on the detailed project plan so make sure we are covered on BAV just unilaterally extending the scope.

Regards
sushovan

---

**From:** Rugginenti, Gianni [mailto:Gianni.Rugginenti@hp.com]
**Sent:** 25 March 2012 16:52
**To:** Sushovan Hussain
**Cc:** Lesmo, Marco Maria; corradob@autonomy.com; Anelli, Loris Massimo; Aquilani, Laura
**Subject:** Vaticano BAV
**Importance:** High

Dear Sushovan,

I'm sorry to disturb you, I know that Corrado sent you the proposal that BAV can accept and that he's waiting for your authorization.

We have just a short time to close the loop with BAV, because they already received the EMC contract to be signed.

Please could you kindly support us evaluating the Corrado's request and giving back to us your decision?

Thank you very much and best regards.


Gianni Rugginenti
Enterprise Server Storage and Network
Commercial Sales Manager
Via Di Vittorio 9
Cernusco sul Naviglio MI
Mobile +39 335 463576

1

FOIA Confidential Treatment Requested

HP 0000277

MLAT_AU 00026238



**KPMG**

MLAT_AU 00026239

| | |
|---|---|
| **From:** | Joel Scott [joels@autonomy.com] |
| **Sent:** | Sunday, November 07, 2010 1:51 PM |
| **To:** | 'James Crumbacher'; 'Alex Paul' |
| **Subject:** | KPMG |

We're working a significant deal at KPMG for the quarter. Alex, can you take this deal on? Best person for you to speak with first would be Rob Sass. He can help you get up to speed on what we need to get done. Jim can help you navigate the contracts, players, etc. Worth putting in a call to Rob Monday to see how we can get ahead of this.

1

FOIA Confidential Treatment Requested

HP 0000357

MLAT_AU 00026240

MLAT_AU 00026241

**To:**      'Mike Lynch'[mrl@autonomy.com];
**Subject:**     FW: KPMG said no
**Sent:**     Mon 12/13/2010 3:46:03 PM
**From:**     Sushovan Hussain

---

**From:** Mike Mooney [mailto:mmooney@autonomy.com]
**Sent:** 13 December 2010 15:50
**To:** sushovanh@autonomy.com
**Subject:** KPMG said no

Can't get done this year.  Will consider in Q1.

Can pay maintenance.

May consider "search", but probable Q1.

MDM

FOIA Confidential Treatment Requested

HP 0000365

MLAT_AU 00026242

MLAT_AU 00026243

| | |
|---|---|
| **From:** | Sushovan Hussain [sushovanh@autonomy.com] |
| **Sent:** | Wednesday, December 29, 2010 2:55 PM |
| **To:** | 'julied@autonomy.com'; 'andrewk-autonomy.com'; 'jon.coy@autonomy.com' |
| **Cc:** | 'Neil Araujo' |
| **Subject:** | Tikit and kpmg |

Neil is flying overnight to be in London tomorrow to close this deal out. I need a lawyer to be on hand. Suggest either jon or andy.

I also need a side letter (which will be disclosed) that has that in the highly unlikely event that kpmg do not extend then tikit can resell similar software, part of partnership etc. start with the fact that tikit has been an autonomy partner for many years, many customers. Please can I have this done tonight so that neil and I can review and submit in person tomorrow.

Separately I want a heads of agreement that says we will negotiate and buy 500 man days at £550 to be used over 18 months.

1

FOIA Confidential Treatment Requested

HP 0000374

MLAT_AU 00026244

MLAT_AU 00026245

Autonomy

31 December 2010

Tikit Limited
12 Gough Square
London EC4V 3DW

Dear Sirs,

**Re:  Letter Confirming Certain Details Regarding KMPG International Cooperative –**
**Tikit Purchase Order**

The parties hereby confirm the following relating to Tikit Limited's ("Tikit") purchase of
Autonomy's ("Autonomy") WorkSite technology for resale to KPMG International Cooperative
("KPMG") pursuant to that certain Purchase Order dated 31 December 2010 (the "PO").

Notwithstanding the terms of the WorkSite Alliance Program Agreement iResell Partner
dated 27 October 2005 between Tikit and Interwoven, Inc., an Autonomy group company
(the "Agreement"), Autonomy and Tikit hereby agree as follows and the terms of this letter
shall take precedence over any other agreements between the parties.  In the event that Tikit
does not consummate the original transaction to at least the value set forth in the PO by
30 March 2011 then such PO shall be deemed a binding pre-purchase obligation, and Tikit
shall be permitted to utilize pre-purchased software under the PO and offset amounts due to
Autonomy (to a maximum of £3.1 million) under other orders placed by Tikit related to such
software and maintenance under the Agreement for the period between 1 January 2011 and
30 June 2012.

The right to resell and/or transfer the Autonomy Items shall be considered "engagement
specific commercials" for the purposes of clause 11 of the Agreement notwithstanding that it
has not been endorsed on the PO.

Further in the event that Tikit does not consummate the original transaction to at least the
value set forth in the PO by 30 March 2011 then Autonomy and Tikit shall enter into an
arrangement whereby Tikit shall be appointed as the second line support and maintenance
provider to KPMG under the existing maintenance agreement between KPMG and
Interwoven for three quarters from 1 January 2011 for a fee of up to £320,000 per quarter.

This letter represents a modification to the Agreement for the purposes of the PO only.  It is
acknowledged and agreed that this letter shall be binding on Autonomy Systems Limited and
Interwoven, Inc.   The Autonomy signatory below is an authorised signatory for these
companies.

Page 1

FOIA Confidential Treatment Requested

HP 0000378

MLAT_AU 00026246



We look forward to a successful completion of the WorkSite projects with Tikit as a most valued partner. Please do not hesitate to contact me with any questions or for any additional assistance.

Signed by an authorised representative on behalf of Autonomy Systems Limited:

Sushovan Hussain
CFO

Accepted and agreed by an authorised signatory of Tikit Limited:

Name:
Title: David Lumsden
CFO

Page 2

Autonomy Systems Limited, Cambridge Business Park, Cowley Road, Cambridge CB4 0WZ, U.K.
Phone: +44 (0) 1223 448 000, Fax: +44 (0) 1223 448 001, Email: autonomy@autonomy.com

FOIA Confidential Treatment Requested

HP 0000379

MLAT_AU 00026247

# VA DEAL

MLAT_AU 00026248

| | |
|---|---|
| **From:** | Sushovan Hussain [sushovanh@autonomy.com] |
| **Sent:** | Wednesday, August 18, 2010 7:41 AM |
| **To:** | 'Mike Lynch'; 'Stouffer Egan' |
| **Subject:** | RE: FW: VA |

**From:** Mike Lynch [mailto:mrl@autonomy.com]
**Sent:** 13 August 2010 22:15
**To:** Sushovan Hussain; 'Stouffer Egan'
**Subject:** Re: FW: VA

so how sure are we will win? [SH view not yet because EAS issues and I've not seen any proposals only an RFI, question for Stouff – how come we don't submit well written proposals in Federal? Does anyone ever go through what Federal are doing? Am concerned VA will want references, POCs, site visits for DS Mail onsite. This deal looks like a Corrado'esque deal to me i.e. good relationships but none of the usual process and end of quarter desperation ensues, so it's a low probability]

how sure are we it will be q3 [SH – I can't see it unless they have to spend the funds]

At 19:11 13/08/2010, Sushovan Hussain wrote:

fyi

**From:** Jim Still [ mailto:jstill@zantaz.com ]
**Sent:** 13 August 2010 18:11
**To:** Sushovan Hussain - Autonomy
**Subject:** Re: VA

To your point, in Federal there are so many damn excuses to delay, or "slow roll it" (the saying drives me bloody nuts) that we have to get the deals in as quickly as we can. This mentality is is rampant in Federal. Its one of the toughest challenges I've ever dealt with.

Phil and I realize our jobs depend on this so Q4 is not even an option. But in the case of the VA, I believe if it did not come in Q3, it would happen in Q4 for sure. The CIO has his foot up everyones ass right now over the delays. I saw more scrambling and sense of urgency this week.

Will update in a few hrs.

----- Original Message -----
From: Sushovan Hussain <sushovanh@autonomy.com>
To: Jim Still
Sent: Fri Aug 13 08:04:28 2010
Subject: RE: VA

Thanks

Really important to keep pushing for a q3 deal as I have a feeling it will get delayed beyond xmas if not closed by end of their fiscal year

1

FOIA Confidential Treatment Requested                HP 0000283

From: Jim Still [mailto:jstill@zantaz.com]
Sent: 13 August 2010 15:52
To: Sushovan Hussain - Autonomy
Subject: VA

I will have my VA update after speaking with Phil this afternoon. He is having con calls with some of the partners whose teams we're working with.

Dr Mike Lynch OBE FREng

CEO Autonomy

www.autonomy.com

The information contained in this message is for the intended addressee only and may contain confidential and/or privileged information. If you are not the intended addressee, please delete this message and notify the sender, and do not copy or distribute this message or disclose its contents to anyone. Any views or opinions expressed in this message are those of the author and do not necessarily represent those of Autonomy Systems Limited or of any of its associated companies. No reliance may be placed on this message without written confirmation from an authorised representative of the company. Autonomy Systems Limited, Registered Office: Cambridge Business Park, Cowley Road, Cambridge CB4 0WZ, Registered Number 03063054.

2

FOIA Confidential Treatment Requested

HP 0000284

MLAT_AU 00026250

MLAT_AU 00026251

| From: | Peter Menell [peterm@autonomy.com] |
|---|---|
| Sent: | Wednesday, August 25, 2010 1:17 PM |
| To: | sushovanh@autonomy.com; 'Stouffer Egan' |
| Subject: | VA - Am I something? |

Am I missing something on VA? why is it even being considered for Q3? After the tech cock up we now know every tech chair squeak within the account but it's the commercials that look opaque.

In a nut shell we are waiting for an $150m RFP with no set publication date (hearsay has it as 'September' not August) in which 6 potential consortiums are bidding (4 we know about and are included in and up to 2 that we don't know about and thus can assume we are not included).

Once each consortium gets the RFP and each responds (time as with RFP publication date yet to be determined but RFI allowed 10 days) each answer is then to be scored. The scores may then trigger POC but only after the analysis passes through 4 known management layers. The CIO being layer 5+ won't see it until the others have iterated through. Further in this case the fed budget for the project does not disappear at the end of the Q but rather at the end of calendar year. This set against the background of the CIO Roger Baker (newish Obama appointee) announcing in a press conference last week that the priority VistA tech refresh (not related to MS) would not be decided until the end of the year as he now felt it important VA should consider as a matter of course 'open source' alongside traditional vendor responses.

Now all this aside it's "hoped" that our piece will be broken away from the main RFP process without further tech and passed through as a SEWP procurement but hope is based on past purchase practise for much much smaller deals and with no real idea as to who would or could actually make
such a decision in VA.


Dr Peter Menell

CTO Autonomy Systems

Web: http://www.autonomy.com

The information contained in this message is for the intended addressee only and may contain confidential and/or privileged information. If you are not the intended addressee, please delete this message and notify the sender, and do not copy or distribute this message or disclose its contents to anyone. Any views or opinions expressed in this message are those of the author and do not necessarily represent those of Autonomy Systems Limited or of any of its associated companies. No reliance may be placed on this message without written confirmation from an authorised representative of the company. Autonomy Systems Limited, Registered Office: Cambridge Business Park, Cowley Road, Cambridge CB4 0WZ, Registered Number 03063054.

1

HP 0000285

MLAT_AU 00026252

MLAT_AU 00026253

| From: | Sushovan Hussain [sushovanh@autonomy.com] |
| Sent: | Wednesday, September 08, 2010 4:28 PM |
| To: | 'Stouffer Egan - Autonomy' |
| Subject: | VA |

Which partner – would be through a SEWP partner -- other than MT and ML. Immix?

1

FOIA Confidential Treatment Requested

HP 0000287

MLAT_AU 00026254

MLAT_AU 00026255

**From:**      James Crumbacher [jamesc@autonomy.com]
**Sent:**      Thursday, September 30, 2010 11:25 AM
**To:**        'Stouffer Egan'
**Subject:**   FW: 2010-09-29 Filetek One Off Reseller (VA).doc

Can we get any $ today?

**Jim Crumbacher**
Associate General Counsel
Autonomy, Inc.
One Market
Spear Tower, 19th Floor
San Francisco, CA 94105
Phone: (415) 625-1447
Mobile: (415) 439-9434
Email: jamesc@autonomy.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review,
retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If
you received this in error, please contact the sender and delete the material from any computer.

**From:** Stephen Chamberlain [mailto:stephenc@autonomy.com]
**Sent:** Thursday, September 30, 2010 2:41 AM
**To:** 'James Crumbacher'; 'Matt Stephan'
**Subject:** RE: 2010-09-29 Filetek One Off Reseller (VA).doc

Try and get $500k today.

Agreement looks ok.

**Steve Chamberlain**
**VP, Finance**
**Autonomy**

Cambridge Business Park
Cowley Road
Cambridge
CB4 0WZ

Direct tel: 01223 448017
Mobile tel: 07795 601794
Fax: 01223 448040

E-mail: stephenc@autonomy.com
Web: www.autonomy.com

The information contained in this message is for the intended addressee only and may contain confidential and/or privileged information.  If you are not the
intended addressee, please delete this message and notify the sender, and do not copy or distribute this message or disclose its contents to anyone.  Any views or
opinions expressed in this message are those of the author and do not necessarily represent those of Autonomy Systems Limited or of any of its associated
companies.  No reliance may be placed on this message without written confirmation from an authorised representative of the company.  Autonomy Systems
Limited, Registered Office:  Cambridge Business Park, Cowley Road, Cambridge CB4 0WZ, Registered Number 03063054.

**From:** James Crumbacher [mailto:jamesc@autonomy.com]
**Sent:** Thursday, September 30, 2010 12:41 AM
**To:** 'Matt Stephan'; 'Stephen Chamberlain'
**Subject:** 2010-09-29 Filetek One Off Reseller (VA).doc

1

FOIA Confidential Treatment Requested

HP 0000290

MLAT_AU  00026256

Please review.

FOIA Confidential Treatment Requested

HP 0000291

MLAT_AU 00026257

MLAT_AU 00026258

| | |
|---|---|
| **From:** | Stephen Chamberlain [stephenc@autonomy.com] |
| **Sent:** | Thursday, October 14, 2010 6:59 AM |
| **To:** | 'Stouffer Egan' |
| **Cc:** | 'Sushovan Hussain' |
| **Subject:** | RE: FileTek Balance Sheet June 30th |
| **Attachments:** | image001.jpg |

Stouffer – need to get some P&L information as well. Can you request from Bill please.

The BS shows they have some $7m of cash as of 30 June 2010 but the total indebtedness to us is $10m. I need to demonstrate they can pay us even if they do not get paid which they currently do not appear to have the financial capacity for.

If they are cash generative then clearly their balances will be increasing and they should be able to pay us as the amounts fall due. $3m 90 days and $7m 120 days. Alternatively, if they have closed end user deal that will be good evidence that we will get paid.

Give me a buzz to discuss as soon as you are available.

Thanks

**Steve Chamberlain**
**VP, Finance**
**Autonomy**

Cambridge Business Park
Cowley Road
Cambridge
CB4 0WZ

Direct tel: 01223 448017
Mobile tel: 07795 601794
Fax: 01223 448040

E-mail: stephenc@autonomy.com
Web: www.autonomy.com

The information contained in this message is for the intended addressee only and may contain confidential and/or privileged information. If you are not the intended addressee, please delete this message and notify the sender, and do not copy or distribute this message or disclose its contents to anyone. Any views or opinions expressed in this message are those of the author and do not necessarily represent those of Autonomy Systems Limited or of any of its associated companies. No reliance may be placed on this message without written confirmation from an authorised representative of the company. Autonomy Systems Limited, Registered Office: Cambridge Business Park, Cowley Road, Cambridge CB4 0WZ, Registered Number 03063054.

**From:** Stouffer Egan [mailto:stouffere@autonomy.com]
**Sent:** Friday, October 01, 2010 7:50 PM
**To:** Steve Chamberlain
**Subject:** FW: FileTek Balance Sheet June 30th

**From:** Loomis, Bill [mailto:Bill.Loomis@filetek.com]
**Sent:** Thursday, September 30, 2010 1:52 PM
**To:** 'Stouffer Egan'
**Subject:** FileTek Balance Sheet June 30th

1

FOIA Confidential Treatment Requested

HP 0000298

MLAT_AU  00026259

Stouffer,
Attached please find FileTek's June 30, 2010 balance sheet.  Please treat as confidential.
Regards,
Bill

**William P. Loomis**
CEO/CFO

 Information Peace of Mind

phone: 301.251.0600 | fax: 301.251.1990
http://www.filetek.com | bill.loomis@filetek.com

2

FOIA Confidential Treatment Requested

HP 0000299

MLAT_AU  00026260

MLAT_AU 00026261

| | |
|---|---|
| **From:** | Sameer Kalbag [sameerk@autonomy.com] |
| **Sent:** | Wednesday, April 20, 2011 3:43 PM |
| **To:** | Stouffer Egan |
| **Cc:** | Mike Mooney; Eloy Avila; Sushovan Hussain |
| **Subject:** | RE: VA |

Stouffer,

Will do on getting Mike a meeting with customer at the first opportunity.
Eloy, let me know a time/phone-number we can talk to bring you up to speed.

Sam

**From:** Stouffer Egan [mailto:stouffere@autonomy.com]
**Sent:** Wednesday, April 20, 2011 12:18 PM
**To:** Sameer Kalbag
**Cc:** Mike Mooney; 'Eloy Avila'; Sushovan Hussain
**Subject:** RE: VA

Sam,
Mike is going to be in Federal later this week. I want you to get him in a meeting with the customer.

Mike, I would then like your take on "whatever it takes" to fix the perception problem below. Eloy, can you take a look as well.

Sam, never let something run this far amuck and only involve support. You go straight to Eloy when important.
SE

**From:** Sameer Kalbag [mailto:sameerk@autonomy.com]
**Sent:** Friday, April 15, 2011 10:04 PM
**To:** Stouffer Egan
**Cc:** Mike Mooney
**Subject:** Re: VA

Stouffer,

RFI was released for national archiving purchase. We responded directly as well as with several partners.

Waiting for release of RFP and full procurement. Expected later this year. Some talk of VA releasing just the archiving part separately.

Implementation team has been onsite at VACO implementing Digital Safe. As of today, end users getting errors retrieving email. We have PS on the ground working the issue, but VA informed us (today) this issue has been escalating internally (up to Rodger Baker CTO of VA). We are tracking with PS.

Sales has been meeting over several months regularly with all VISNs to make sure customers are satisfied and we are in position to win national purchase.

Biggest remaining issue remains perception of Autonomy support. We have escalated this issue to Kevin Hicks, Rizwan Khan, and M. Sullivan to make sure VA gets full attention. Seems there has been some effort to better coordinate response between operations, ps, and support. When we escalate, response gets better temporarily. However customer

1

FOIA Confidential Treatment Requested

HP 0000300

MLAT_AU 00026262

just today reported ticket was filed but it took several days for someone to get back.

I have attempted several times to fix this issue within the current support structure. However at this stage I think we need an internal reset + with the customer to ensure they understand we take their concerns seriously and they get the level of support they expect for a project of this scope. Otherwise we are opening the door needlessly to the competition.

Any help at your level to get this fixed in a systematic way would be appreciated.

Please let me know if you want details forwarded.

Sam

---

**From:** Stouffer Egan <stouffere@autonomy.com>
**To:** Sameer Kalbag
**Cc:** Mike Mooney
**Sent:** Fri Apr 15 18:48:47 2011
**Subject:** VA
Sam,
Can i please get a summary of where we stand with VA?
SE

2

HP 0000301

MLAT_AU 00026263

# DEPARTMENT OF INTERIOR

MLAT_AU 00026264

| | |
|---|---|
| **From:** | Sushovan Hussain - Autonomy |
| **Sent:** | Wednesday, December 01, 2010 7:46 AM |
| **To:** | Jim Still; Mike Sullivan |
| **Cc:** | Poppy Prentis; Steve Chamberlain - Autonomy |
| **Subject:** | RE: DOI Update |

ACTIONS:

- Get the existing contract, find out how the $15.3m is worked out.
- How much exactly have we charged them the $4.5m or so
- If say the data is limited to 100lb then we can offer them more and restructure for upfront licence
- Payment terms – I hear from Jim they can pay $2m now. I could do a lease on the rest so you can be aggressive. I need the restructure plus the EDD to be worked out first

---

**From:** Jim Still [mailto:jstill@zantaz.com]
**Sent:** 30 November 2010 23:17
**To:** Mike Sullivan; Sushovan Hussain - Autonomy
**Subject:** DOI Update

Here are some details on where we're at with DOI after the meeting today...

Met with the COTR (Contract Officers Technical Representative - Eric), the CO (Contract Officer), and Contract Specialist.

After seeing the numbers they understand and remain enthusiastic about trying to get something done. Their focus would be on the option where they would restructure the existing contract to a License, add in the other Agencies, and buy into e-Discovery at $1.8M.

We do face some challenges...

- CO stated they absolutely cannot extend the Contract Term beyond June 30, 2013 without having to re-compete the award. They informed us at that point they are looking at Symantec and Proof Point.

- FAR Clauses prevent them from making an up front payment for anything that is associated with a multiple-year Term. They can only do this for a perpetual license. They have sent us the FAR clauses around this. They can do a payment structure around the Term however, like equal annual payments or something thereof. The challenge here would be that they need to do everything in Option Years so while its very highly unlikely they would not pick up each of the remaining Option Years, they can't commit to it.

- Based on whatever the initial dollar amount is that they would have to come up with, there may be a financing requirement for at least part of it. They will be seeking incremental dollars within the Agency however. (Its my feeling they have around $2M available to spend now.)

- Eric was not happy about how the e-Discovery piece is boxed in. Said he at the least would require "more". The push back was that we would need to deal with the above 3 issues, and perhaps others before we got around to this.

1

FOIA Confidential Treatment Requested

HP 0000342

MLAT_AU  00026265

On a positive note...

- They do want to get something done if they can in the Quarter but would need to settle things fast.

- For a deal within the existing contract term, it appears they could do something to the effect of three annual payments. They are also open to financing.

- They suggested we focus on the Contract Ceiling, or what is referred to as the Total Contract Dollar Amount on page 9 of their current contract (attached). The amount is $15,321,464.58 but we would need to confirm how much we have invoiced, (and they have paid) against the Cieling since October of 2008. My calculations tell me $4,466,272. but that's based off Poppy's original sheet so that needs to be verified appropriately. If we can verify this amount, it would tell us how much they can work with on a deal for the remainder of the term.

At this stage, I believe it would be best to include you two in on the discussions if we want to get something done. Not sure how you feel about that but we sense they are willing to do anything within federal guidelines that they can do to work with us, its just that we would need your expertise and authority to close it.

We are checking into their availability tomorrow and will communicate back.

**Autonomy Inc.**

**Jim Still, VP Federal Sales**
**3120 Fairview Park Drive**
**Second Floor**
**Falls Church VA, 22042**

**++ 917-747-2670 mobile**
**++ 703-289-8800 office**
**jstill@autonomy.com**
**www.autonomy.com**

FOIA Confidential Treatment Requested

HP 0000343

MLAT_AU 00026266

MLAT_AU 00026267

| | |
|---|---|
| **From:** | Sushovan Hussain [sushovanh@autonomy.com] |
| **Sent:** | Friday, December 10, 2010 1:19 AM |
| **To:** | Mike Lynch |
| **Subject:** | Us idol |

Really don't know what to do mike. As I guessed revenue fell away completely yet SMS report shows massive activity. But I speak with the vp's who are far more accurate. Also stouff, Joel and mike I think keep separate sheets and unless I am v wrong don't discuss the sheets hence plane crashes and they don't know. We've covered up with bofa and hopefully db and Doi but if latter 2 don't happen it's totally bad. There are swathes of reps with nothing to do maybe chase imaginary deals.

So radical action is required, really radical, we can't wait any more.

Everywhere I look at us idol it's bad.

Sent from my iPhone

1

FOIA Confidential Treatment Requested                                      HP 0000344

MLAT_AU 00026268

MLAT_AU 00026269

| | |
|---|---|
| **From:** | Mike Sullivan |
| **Sent:** | Monday, December 13, 2010 11:04 AM |
| **To:** | Jim Still |
| **Subject:** | FW: DOI said no |

What happened?

**From:** Sushovan Hussain - Autonomy
**Sent:** Monday, December 13, 2010 10:43 AM
**To:** Stouffer Egan - Autonomy; Mike Mooney - Autonomy; Joel Scott - Autonomy; Mike Sullivan
**Subject:** DOI said no

1

FOIA Confidential Treatment Requested

HP 0000345

MLAT_AU 00026270

MLAT_AU 00026271

| | |
|---|---|
| **From:** | Mike Sullivan [msullivan@autonomy.com] |
| **Sent:** | Monday, December 13, 2010 12:07 PM |
| **To:** | Sushovan Hussain - Autonomy; Jim Still; Rajan Srivatsan |
| **Subject:** | DOI |

I just spoke with Bill Corrington, Chief Technology Officer, DOI.    He confirmed the decision to pass on our offer.   He said the offer was compelling, but the decision was a strategic decision – not a financial one.    Apparently they want to do a full procurement and "evaluate all options".    I probed as to whether we could put something together that involved a shorter commitment – thus allowing him to get benefits in short term and not prevent a strategic review.    He said they would not consider at this point and the decisions were final.

We also know that our key procurement contacts left for vacation on Friday and are not returning calls.

1

FOIA Confidential Treatment Requested

HP 0000346

MLAT_AU 00026272

MLAT_AU 00026273



**PURCHASE ORDER**
**UnderAutonomy Government Reseller Agreement**
**Dated as of June 29, 2006**

PURCHASE ORDER NO.   **AUT201014**
Purchase Order Date:                    December 31, 2010 ("Effective Date")

| From : | MicroTech, LLC ("Reseller")<br>8330 Boone Blvd., Suite 600<br>Vienna, VA 22182 |
|---|---|
| Ship to: | MicroTech, LLC<br>8330 Boone Blvd., Suite 600<br>Vienna, VA 22182 |
| | Shipping Method: Electronic, such as via FTP transfer |
| To: | Autonomy, Inc.<br>One Market, Spear Tower, 19th Floor<br>San Francisco, CA 94105 |

| | | | |
|---|---|---|---|
| 1. | End-user | : | Department of Interior ("End-User") |
| 2. | Software | : | Digital Safe<br>Audit Center |
| 3. | Authorized Use | : | End-User is licensed to use the Software in Section 2 above solely for purposes of archiving up to 110 TB of End-User's internal data in End-User's own internal environment, or in an environment hosted by Autonomy. |
| 4. | Languages | : | English |
| 5. | Platform | : | Windows |
| 6. | Term of Licenses | : | Perpetual, subject to termination in accordance with terms of the Agreement |
| 7. | Software License Fee | : | US $4,000,000.00, invoiced immediately |
| 8. | Support Fee (1st year) | : | US $ 200,000, invoiced immediately |
| 9. | Payment terms | : | 25% due 90 days from date of invoice<br>25% due 180 days<br>25% due 270 days<br>25% due 365 days<br>All fees due hereunder are nonrefundable and noncancellable. |
| 10. | Delivery | : | Shipped F.O.B. point of manufacture via electronic delivery, such as FTP transfer. |

Signature below represents Reseller's agreement to purchase the products and services referenced above pursuant to terms of the Autonomy Government Reseller Agreement dated June 29, 2006, and the terms set forth above.

VAR shall distribute the above Software to the above-referenced End User upon VAR's receipt of a purchase order or written agreement from End User under which End User, consistent with the terms of the Agreement, agrees to license from VAR the Software and pay to VAR a corresponding license and support fee therefor.  Although End User and VAR currently anticipate entering into such a license transaction, in the unlikely event End User, instead, enters into a direct agreement with Autonomy or its affiliate to license the Software, then VAR shall distribute the Software to End User upon receipt of written notice (which may be via email) from Autonomy ("Distribution Notice") of such direct license transaction.  In the event distribution is accomplished by reason of a Distribution Notice, upon such time as Autonomy has received payment in full for such license fee and support fee, Autonomy shall pay to VAR an amount equal to the license fee paid by End User to Autonomy less the License fee described in Item 7 above, but in no event more than $400,000.00, as full compensation in connection with VAR's efforts in securing End User's procurement of a license of Autonomy software.

VAR signature
Name            Steven B. Truitt
Title            COO
Date:            12/31/2010

FOIA Confidential Treatment Requested                    HP 0000350

MLAT_AU 00026274

MLAT_AU 00026275

| | |
|---|---|
| **From:** | Sushovan Hussain [sushovanh@autonomy.com] |
| **Sent:** | Friday, April 08, 2011 8:45 AM |
| **To:** | 'Stouffer Egan' |
| **Subject:** | MT and DT |

Overdue is BAV $6.7m and DOI $1m. May I suggest a payment of $2m - $1m for the DOI and $1m for BAV?

DT – a small amount say $0.5m would be very helpful.

1

FOIA Confidential Treatment Requested

HP 0000351

MLAT_AU 00026276

MLAT_AU 00026277

| From: | commissions@autonomy.com on behalf of Stephen Chamberlain [stephenc@autonomy.com] |
|-------|-----------------------------------------------------------------------------------|
| Sent: | Saturday, August 20, 2011 10:09 AM |
| To: | Lisa Harris |
| Cc: | commissions@autonomy.com |
| Subject: | [commissions] DOI, DKO |

Check with Mooney and then it needs SH approval.

**Steve Chamberlain**
**VP, Finance**
**Autonomy**

Cambridge Business Park
Cowley Road
Cambridge
CB4 0WZ

Direct tel: 01223 448017
Mobile tel: 07795 601794
Fax: 01223 448040

E-mail: stephenc@autonomy.com
Web: www.autonomy.com

The information contained in this message is for the intended addressee only and may contain confidential and/or privileged information. If you are not the intended addressee, please delete this message and notify the sender, and do not copy or distribute this message or disclose its contents to anyone. Any views or opinions expressed in this message are those of the author and do not necessarily represent those of Autonomy Systems Limited or of any of its associated companies. No reliance may be placed on this message without written confirmation from an authorised representative of the company. Autonomy Systems Limited, Registered Office: Cambridge Business Park, Cowley Road, Cambridge CB4 0WZ, Registered Number 03063054.

**From:** Poppy Prentis [mailto:poppy.prentis@autonomy.com]
**Sent:** Friday, August 19, 2011 9:33 PM
**To:** 'Stephen Chamberlain'; 'Joel Scott'
**Cc:** commissions@autonomy.com
**Subject:** RE: DOI, DKO

Steve, Joel,

Sameer is stating that he should receive commission for DOI for the reasons he lays out in the attached. Should we follow up with Mike Mooney? Please advise on how you would like the commissions team to proceed.

Thanks,

**Poppy Prentis**

Corporate Controller
☎ +44 (0) 1223 488550
☎ +44 (0) 7824 425319
✉ poppy.prentis@autonomy.com

1

FOIA Confidential Treatment Requested

HP 0000354

MLAT_AU 00026278

The information contained in this message is for the intended addressee only and may contain confidential and/or privileged information.  If you are not the intended addressee, please delete this message and notify the sender, and do not copy or distribute this message or disclose its contents to anyone.  Any views or opinions expressed in this message are those of the author and do not necessarily represent those of Autonomy Systems Limited or of any of its associated companies.  No reliance may be placed on this message without written confirmation from an authorised representative of the company.  Autonomy Systems Limited, Registered Office:  Cambridge Business Park, Cowley Road, Cambridge CB4 0WZ, Registered Number 03063054.

**From:** Stephen Chamberlain [mailto:stephenc@autonomy.com]
**Sent:** 10 August 2011 09:52
**To:** 'Joel Scott'; 'Poppy Prentis'
**Cc:** 'Mickie Lee'
**Subject:** RE: DOI, DKO

Very useful insight on DKO. No commission payable.

**Steve Chamberlain**
**VP, Finance**
**Autonomy**

Cambridge Business Park
Cowley Road
Cambridge
CB4 0WZ

Direct tel: 01223 448017
Mobile tel: 07795 601794
Fax: 01223 448040

E-mail: stephenc@autonomy.com
Web: www.autonomy.com

The information contained in this message is for the intended addressee only and may contain confidential and/or privileged information.  If you are not the intended addressee, please delete this message and notify the sender, and do not copy or distribute this message or disclose its contents to anyone.  Any views or opinions expressed in this message are those of the author and do not necessarily represent those of Autonomy Systems Limited or of any of its associated companies.  No reliance may be placed on this message without written confirmation from an authorised representative of the company.  Autonomy Systems Limited, Registered Office:  Cambridge Business Park, Cowley Road, Cambridge CB4 0WZ, Registered Number 03063054.

**From:** Joel Scott [mailto:joels@autonomy.com]
**Sent:** Tuesday, August 09, 2011 5:18 PM
**To:** 'Poppy Prentis'; 'Stephen Chamberlain'
**Cc:** 'Mickie Lee'
**Subject:** RE: DOI, DKO

As of now, we are invoicing DOI.  I believe we invoice on a monthly basis.  We are working with DOI to get their consent such that MicroTech can invoice them but that discussion is still in process.

As for comp, I don't know what was agreed or communicated to the reps.  I only flag because this is the same as was the situation with Terry – that is, they already have our system in use and the 'renewal' as I understand it is simply a byproduct of the fact that DOI cannot commit any funds without government budget approval, which is done annually – so this is not your typical sales cycle in the true sense of the word.

**From:** Poppy Prentis [mailto:poppy.prentis@autonomy.com]
**Sent:** Tuesday, August 09, 2011 3:59 AM
**To:** 'Joel Scott'; 'Stephen Chamberlain'
**Subject:** RE: DOI, DKO

2

FOIA Confidential Treatment Requested

HP 0000355

MLAT_AU  00026279

Who will invoice DOI?

My initial thoughts are that we will comp on the $2m as hosted as part of July commission statements (effective date is 1 July). This would go to Sameer and Srivatsan. Please let me know if you disagree.

Thanks,

**Poppy Prentis**

Corporate Controller
☎ +44 (0) 1223 488550
☎ +44 (0) 7824 425319
✉ poppy.prentis@autonomy.com

The information contained in this message is for the intended addressee only and may contain confidential and/or privileged information. If you are not the intended addressee, please delete this message and notify the sender, and do not copy or distribute this message or disclose its contents to anyone. Any views or opinions expressed in this message are those of the author and do not necessarily represent those of Autonomy Systems Limited or of any of its associated companies. No reliance may be placed on this message without written confirmation from an authorised representative of the company. Autonomy Systems Limited, Registered Office: Cambridge Business Park, Cowley Road, Cambridge CB4 0WZ, Registered Number 03063054.

3

MLAT_AU 00026280