# EXHIBIT 39

BRIAN J. STRETCH (CABN 163973)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7534
   Fax: (415) 436-7234
   Robert.Leach@usdoj.gov
   Adam.Reeves@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GRAND JURY INVESTIGATION NO. 2012R02242, | Case No. CR 14-90491 MISC EMC<br><br>**UNDER SEAL**<br><br>THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE RUNNING OF THE STATUTE OF LIMITATIONS PURSUANT TO 18 U.S.C. § 3292 |

     On January 29, 2016, the Court issued an Order Suspending the Running of the Statute of Limitations Under 18 U.S.C. § 3292 in the above-referenced grand jury investigation. The Court found that an official request for evidence of offenses had been made to the Vatican City State and that it reasonably appeared that such evidence was in the Vatican City State. The Court also found that an official request for evidence of offenses had been made to Italy and that it reasonably appeared that such evidence was in Italy. The Court ordered that the running of the statute of limitations be suspended beginning on August 10, 2015 (the date on which the official request to the Vatican City State was made) and beginning December 23, 2015 (the date on which the official request to Italy was made).[1]

---

[1]    The Court's January 29, 2016 Order Suspending the Running of the Statute of Limitations Under

THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE STATUTE OF LIMITATIONS
PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC

By this application, the United States seeks an additional suspension order, based on an official request for assistance to the United Kingdom on January 29, 2016. This application is supported by the June 7, 2016 Declaration of AUSA Robert S. Leach (concurrently filed) and the legal authorities discussed below. Because an official request has been made for evidence of offenses in the United Kingdom and it reasonably appears that such evidence is in the United Kingdom, the Court should suspend the running of the statute of limitations. In addition, because this application relates to an ongoing grand jury investigation, which is secret pursuant to Federal Rule of Criminal Procedure 6(e), the United States respectfully requests that the Court seal this application, the concurrently filed declaration, and the concurrently submitted [Proposed] Second Order Suspending the Running of the Statute of Limitations Under 18 U.S.C. § 3292. *See* Criminal Local Rule 6-2(b).

## FACTUAL BACKGROUND

### I.  The Investigation

A grand jury in this district is conducting an investigation of former senior officers of Autonomy Corporation plc ("Autonomy"), including former Chief Executive Officer Michael Lynch, former Chief Financial Officer Sushovan Hussain, former Vice President of Finance Stephen Chamberlain, and former Chief Operating Officer and General Counsel Andrew Kanter, for the following possible criminal offenses: 15 U.S.C. §§ 78j(b) & 78ff (securities fraud), 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1348 (securities fraud), and 18 U.S.C. § 1349 (attempt and conspiracy). *See* Declaration of AUSA Robert S. Leach in Support of United States' *Ex Parte* Application for an Order Suspending the Running of the Statute of Limitations Pursuant to 18 U.S.C. § 3292, dated June 7, 2016 ¶ 2 ("Leach Decl."). To date, no indictment has been returned. *Id.*

Autonomy was a software developer with dual headquarters in the United Kingdom and San Francisco, California. *Id.* ¶ 4. Prior to October 2011, Autonomy was a publicly traded company whose

---

18 U.S.C. § 3292 is attached as Exhibit N to the Declaration of AUSA Robert S. Leach in Support of United States' *Ex Parte* Application for an Order Suspending the Statute of Limitations Pursuant to 18 U.S.C. § 3292, dated June 7, 2016.

THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE STATUTE OF LIMITATIONS PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC

2

shares were listed on the London Stock Exchange. *Id.* Autonomy issued quarterly and annual financial statements that were disseminated to the public by means of interstate and foreign wires. *Id.* In or about October 2011, Hewlett-Packard Company, headquartered in Palo Alto, California, bought Autonomy for approximately $11 billion.[2] *Id.* HP acquired Autonomy by means of a cash offer by its wholly owned subsidiary, Hewlett-Packard Vision B.V. ("HP Vision"), to buy the outstanding shares of Autonomy for £25.50 ($42.11) per share. Among other things, the grand jury is investigating whether executives at Autonomy fraudulently inflated Autonomy's revenues in its financial statements and made false and misleading statements to HP to induce it to buy Autonomy. *Id.*

In its publicly disseminated financial statements, Autonomy claimed that its financial statements were prepared in accordance with International Financial Reporting Standards ("IFRS"). *Id.* ¶ 5. Under IFRS, revenue from the sale of Autonomy's software products should have been recognized only if the following conditions were satisfied:

(a) the entity [i.e. Autonomy] has transferred to the buyer the significant risks and rewards of ownership of the goods;

(b) the entity retains neither continuing managerial involvement to the degree usually associated with ownership nor effective control over the goods sold;

(c) the amount of revenue can be measured reliably;

(d) it is probable that the economic benefits associated with the transaction will flow to the entity; and

(e) the costs incurred or to be incurred in respect of the transaction can be measured reliably.

*Id.* ¶ 5 (attaching Exhibit A at 3). Failure to comply with any of these five criteria would have required that revenue on the transaction be deferred until all criteria were satisfied. Among other things, the grand jury is investigating whether executives at Autonomy fraudulently inflated Autonomy's alleged revenue by improperly recording revenue on software sales in violation of certain of the above-quoted

---

[2] In or around 2015, HP changed its name to "HP Inc." and spun out "Hewlett Packard Enterprise Company" as a new company. For ease of reference, this application refers to all three entities as "HP."

THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE STATUTE OF LIMITATIONS PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC

3

criteria in IFRS. The grand jury is also investigating whether executives at Autonomy concealed from HP substantial sales of third-party computer hardware. *Id.* ¶ 5.

## II. The Official Request for Evidence in the United Kingdom

On January 29, 2016, the Office of International Affairs of the Department of Justice ("OIA") submitted a Request for Assistance in the Investigation of Autonomy Corporation to the Central Authority of the United Kingdom (the "UK MLAT"). *See* Leach Decl. ¶ 19 & Ex. M. The UK MLAT indicates the request was made pursuant to the 1994 Treaty of Mutual Legal Assistance in Criminal Matters between the United States of America and the United Kingdom, as amended. *Id.*

The UK MLAT seeks the production of (1) business records from Capita Registrars Limited ("Capita"), a company in the United Kingdom that was engaged to act as a "receiving agent" in connection with the HP acquisition and handle payment of acquisition funds to Autonomy shareholders; (2) bank and business records from the Royal Bank of Scotland plc ("RBS"), the bank investigators believe Capita used to establish accounts for the HP acquisition; (3) telephone records relating to phone numbers investigators believe Hussain used during the time period of the alleged fraud scheme; and (4) bank and brokerage records from various financial institutions and investment firms in the United Kingdom, which investigators believe the subjects used to receive money and property. *Id.* at 9-14. Specifically, the UK MLAT seeks the following:

### A. Capita Registrars Limited

The UK MLAT seeks, for the period January 1, 2011, to May 2012, records from Capita relating to (1) services performed by Capita in connection with HP's acquisition of Autonomy; (2) payments to Autonomy shareholders in connection with the HP acquisition; (3) Lynch, Hussain, Chamberlain, and/or Kanter, including communications with any of them, payments to any of them, and documents relating to their acceptance of the offer; and (4) acceptances of HP and HP Vision's offer by certain major institutions. *See* Leach Decl. ¶ 19 & Ex. M at 13. Documents produced by HP reflect that Capita acted as the "receiving agent" on the transaction – receiving tenders from Autonomy shareholders and directing payments to them. *Id.* ¶ 6 & Ex. B. Additional documents produced by HP reflect that Lynch, Hussain, Chamberlain, and Kanter were among those who tendered shares in the offer. *Id.* ¶ 7 & Ex. C.

THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE STATUTE OF LIMITATIONS PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC
4

USAO 00002446

1  B.  Royal Bank of Scotland plc

2  The UK MLAT seeks, for the period from January 1, 2011, to May 2012, records from RBS relating to Account number ▇▇▇ held in the name of "Capita Registrars Limited CREST Clearing Account"; Account number 2▇▇▇ held in the name of "Capita Registrars Limited Re: Hewlett-Packard Vision B.V. / Autonomy Corporation plc – Takeover Case Consideration A/C"; RBS's services in connection with HP's acquisition of Autonomy; and Capita's services in connection with HP's acquisition of Autonomy. *See* Leach Decl. ¶ 19 & Ex. M at 11-14. Documents produced by HP reflect that these accounts were used in connection with the HP acquisition. *Id.* ¶ 8 & Ex. D.

C.  Vodaphone & Telefonica UK Limited

The UK MLAT seeks, for the period from January 1, 2009, to May 31, 2012, records from Vodaphone relating to phone number ▇▇▇7012 and records from Telefonica relating to phone number ▇▇▇9540. *See* Leach Decl. ¶ 19 & Ex. M at 14. Documents produced by HP and others demonstrate that Hussain used these phone numbers during the alleged scheme to defraud. *Id.* ¶¶ 9-10 & Exs. E & F.

D.  Barclays plc

The UK MLAT seeks, for the period from January 1, 2009, to the present, records from Barclays plc relating to Account ▇▇▇4105 held by Lynch and Account ▇▇▇4103 held by Chamberlain, and any and all any accounts traceable to these accounts. *See* Leach Decl. ¶ 19 & Ex. M at 9-10. Information provided by HP reflects that, during the alleged scheme to defraud, Autonomy made payments to Lynch and Chamberlain at such accounts. *Id.* ¶ 11 & Ex. G.

E.  Credit Suisse AG

The UK MLAT seeks, for the period from January 1, 2009, to the present, records from Credit Suisse AG relating to any accounts held by or for the benefit of Lynch. *See* Leach Decl. ¶ 19 & Ex. M at 10. During the investigation, the United States received information from authorities in the United Kingdom that, as of March 2013, Lynch held an account at Credit Suisse in London. *Id.* ¶ 17.

---

THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE STATUTE OF LIMITATIONS PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC

5

F. <u>HSBC Bank plc</u>

The UK MLAT seeks, for the period from January 1, 2009, to the present, records from HSBC Bank plc relating to Account Number ▮▮▮496 held by Angela Bacares[3]; Account number 5▮▮▮627 held by Hussain; and any accounts traceable to these accounts. *See* Leach Decl. ¶ 19 & Ex. M at 10. Information provided by HP reflects that, during the alleged scheme to defraud, Autonomy made payments to Hussain at account 5▮▮▮627. *Id.* ¶ 11 & Ex. G. During the investigation, the United States also received information from authorities in the United Kingdom that Bacares held Account number ▮▮▮496 at HSBC. *Id.* ¶ 17.

G. <u>JP Morgan International Bank Limited</u>

The UK MLAT seeks, for the period from January 1, 2009, to the present, records from J.P. Morgan International Bank Limited relating to the following accounts held by or for the benefit of Lynch: Account number ▮▮▮; Account number 9▮▮▮; Account number 9▮▮▮; and Account number ▮▮▮, as well as any and all any accounts traceable to these accounts. *See* Leach Decl. ¶ 19 & Ex. M at 10-11. During the investigation, the United States received information from authorities in the United Kingdom that Lynch held the aforementioned accounts in the United Kingdom. *Id.* ¶ 17.

H. <u>Julius Baer International Limited and Julius Baer Portfolio Managers Limited</u>

The UK MLAT seeks, for the period from January 1, 2013, to the present, records from Julius Baer International Limited and Julius Baer Portfolio Managers Limited relating to account number ▮▮▮ held by Lynch and account number 4▮▮▮ held by Bacares. *See* Leach Decl. ¶ 19 & Ex. M at 11. During the investigation, the United States received information from authorities in the Bailiwick of Guernsey ("Guernsey") and the United Kingdom that, in 2008, Lynch and Bacares each established accounts with Merrill Lynch Portfolio Managers Limited, which was acquired by the Julius Baer group of companies in or around July 2013.[4] *Id.* ¶ 18.

---

[3] Bacares is Lynch's wife and was at times an Autonomy employee.

[4] OIA also requested these documents from Guernsey, based on information that custody of the assets was transferred to Guernsey in or around July 2013 and that the assets were held by Julius Baer entities. Guernsey has produced documents in response to OIA's request. The government is in the process of reviewing the production.

THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE STATUTE OF LIMITATIONS PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC

USAO 00002448

I. <u>Merrill Lynch International</u>

The UK MLAT seeks, for the period from January 1, 2009, to the present, records from Merrill Lynch International relating to any accounts held by or for the benefit of Lynch and/or Bacares. *See* Leach Decl. ¶ 19 & Ex. M at 11. As noted above, during the investigation, the United States received information from authorities in the United Kingdom and Guernsey that Lynch and Bacares established accounts with Merrill Lynch Portfolio Managers Limited in the United Kingdom. *Id.* ¶ 18.

J. <u>UBS AG</u>

Finally, the UK MLAT seeks, for the period from January 1, 2009, to the present, records from UBS AG relating to trading in Autonomy securities (including options) by Lynch, Hussain, Kanter, and/or Chamberlain; any accounts traceable to these accounts; and communications with Lynch, Hussain, Kanter, and Chamberlain. *See* Leach Decl. ¶ 19 & Ex. M at 12. Documents produced by HP reflect that at the time of the HP acquisition Lynch held Autonomy shares at UBS and that Hussain, Chamberlain, and Kanter exercised options through UBS in the United Kingdom. *Id.* ¶¶ 13-16 & Exs. H-L.

The United Kingdom has not yet produced documents in response to the UK MLAT. *Id.* ¶ 19.

## LEGAL ANALYSIS

Title 18, United States Code, Section 3292 provides:

> (a)(1) Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is empaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.
>
> (2) The court shall rule upon such application not later than thirty days after the filing of the application.
>
> (b) Except as provided in subsection (c) of this section, a period of suspension under this section shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request.

THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE STATUTE OF LIMITATIONS PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC

7

(c) The total of all periods of suspension under this section with respect to an offense—

    (1) shall not exceed three years; and

    (2) shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section.

(d) As used in this section, the term "official request" means a letter rogatory, a request under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law enforcement responsibility, to a court or other authority of a foreign country.

A suspension of the running of the statute of limitations is appropriate when the district court finds, by a preponderance of the evidence, "that (1) an official request has been made for the evidence and (2) it reasonably appears or appeared at the time the request was made that the evidence of the crime is or was in a foreign country." *United States v. Jenkins*, 633 F.3d 788, 797 (9th Cir. 2011). The Section 3292 preponderance standard is quite broad and may be satisfied by "'something of evidentiary value . . . tending to prove it reasonably likely that evidence of the charged offenses is in a foreign country.'" *Id.* at 798 (alteration in original) (quoting *United States v. Trainor*, 376 F.3d 1325, 1332-34 (11th Cir. 2004)). For example, in *Jenkins*, the Ninth Circuit held that a suspension order was adequately supported by the sworn declaration of a person knowledgeable about the grand jury investigation and the evidence already recovered "tending to indicate that further evidence of the offenses was abroad." *Id.*

An application under Section 3292 must be made prior to the return of an indictment. *See United States v. Miller*, 830 F.2d 1073, 1076 (9th Cir. 1987) ("The statute itself specifies the only relevant time the application must be made: 'before return of an indictment.'"). The period of suspension begins on the date on which the official request was made. *See* 18 U.S.C. § 3292(b). "The statute plainly contemplates that the starting point for tolling the limitations period is the official request for evidence, not the date the § 3292 motion is made or granted." *United States v. Bischel*, 61 F.3d 1429, 1434 (9th

THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE STATUTE OF LIMITATIONS PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC

8

USAO 00002450

Cir. 1995); *see also Jenkins*, 633 F.3d at 799 ("[T]he only temporal requirements of a § 3292 application are (1) that the official request for evidence in a foreign country be made before the statute of limitations expires and (2) that the application for suspension be submitted to the district court before the indictment is filed.").

The period of suspension ends on "the date on which the foreign court or authority takes final action on the request." 18 U.S.C. § 3292(b). A foreign country is not deemed to have taken "final action" on an official request until it has made a "dispositive response" – that is, "disposition, up or down, of each of the items" in the official request. *Bischel*, 61 F.3d at 1434; *see Jenkins*, 633 F.3d at 800; *United States v. Hagege*, 437 F.3d 943, 955-56 (9th Cir. 2006).

Here, the statutory elements for issuance of an order under Section 3292 are satisfied, based on the UK MLAT. The UK MLAT is an official request because it is "a request under a treaty or convention" and a "request for evidence made by . . . an authority of the United States having criminal law enforcement responsibility, to . . . [an] authority of a foreign country." In addition, it reasonably appears that evidence of the offenses – documents from the receiving agent that received tenders of Autonomy shares and directed payments to Autonomy shareholders; bank records showing Autonomy executives received money or property through the HP acquisition; records relating to the phone numbers used by the CFO during the alleged scheme; and bank and brokerage records showing the subjects' receipt of money or property from Autonomy or by selling shares of Autonomy – is located in the United Kingdom. For these reasons, the Court should find that an official request has been made to the United Kingdom for evidence of the offenses under investigation and that it reasonably appears that such evidence is in the United Kingdom. The Court should further suspend the statute of limitations for such offenses beginning January 29, 2016, the date of the official request.

## CONCLUSION

Based on the foregoing, the United States respectfully requests that the Court grant the application and enter the proposed order suspending the statute of limitations under 18 U.S.C. § 3292 beginning on January 29, 2016, based on UK MLAT. Further, because the grand jury investigation is ongoing, and premature disclosure of its existence, nature, and focus could have an adverse impact on it,

THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE STATUTE OF LIMITATIONS PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC
9

USAO 00002451

the United States requests that the Court file this application, the accompanying declaration, and any order under seal until further order of the Court.

Dated: June 7, 2016

Respectfully Submitted,

BRIAN J. STRETCH
United States Attorney

*/s/ Robert Leach*

ROBERT S. LEACH
ADAM A. REEVES
Assistant United States Attorneys

THE UNITED STATES' *EX PARTE* APPLICATION FOR AN ORDER SUSPENDING THE STATUTE OF LIMITATIONS PURSUANT TO 18 U.S.C. § 3292, CASE NO. CR-14-90491 MISC EMC

USAO 00002452