Jonathan M. Baum (SBN: 303469)
**Steptoe & Johnson LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe & Johnson LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Christopher Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No.: 3:18-cr-00577-CRB<br><br>Judge: Hon. Charles Breyer<br><br>**DEFENDANT MICHAEL RICHARD LYNCH'S REPLY IN SUPPORT OF MOTION 1) TO DISMISS COUNTS ONE THROUGH SIXTEEN, AND CERTAIN OBJECTS OF COUNT SEVENTEEN, OF THE SUPERSEDING INDICTMENT AS TIME-BARRED AND 2) FOR DISCOVERY**<br><br>Date: November 29, 2023<br>Time: 1:30 pm<br>Court: Courtroom 6 – 17th Floor<br>Date Filed: October 24, 2023<br>Trial Date: March 18, 2024 |

# TABLE OF CONTENTS

I.  ARGUMENT ................................................................................................................. 1

   A.  Count Two Is Time-Barred Because the Government Did Not Seek Foreign Evidence Relevant to Count Two ........................................................................................... 1

   B.  Count Sixteen Is Time-Barred Because the Government Did Not Seek Foreign Evidence Relevant to That Count ........................................................................... 3

   C.  None of the Remaining Objects of Count Seventeen Was Timely, and Tolling with Respect to the Count Is Not Proper ........................................................................ 5

      1.  The Books-and-Records Object Was Not Timely ............................................. 6

      2.  The Obstruction Object Was Not Timely .......................................................... 7

      3.  Count 17 Was Not Properly Tolled Under § 3292 ............................................ 8

   D.  Discovery Is Appropriate Where, as Here, the Timing and Contents of the Government's Foreign Evidentiary Requests Suggest the Government May Have Issued Them for Improper Reasons ..................................................................................................... 9

II.  CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*DeGeorge v. United States District Court for Central District of California*,
  219 F.3d 930 (9th Cir. 2000) ................................................................................................9

*SEC v. Nacchio*,
  438 F. Supp. 2d 1266 (D. Colo. 2006) ..................................................................................7

*United States v. Bogucki*,
  316 F. Supp. 3d 1177 (N.D. Cal. 2018) ................................................................................9

*United States v. DeGeorge*,
  380 F.3d 1203 (9th Cir. 2004) ..............................................................................................9

*United States v. Hitt*,
  249 F.3d 1010 (D.C. Cir. 2001) ............................................................................................6

*United States v. Jackson*,
  480 F.3d 1014 (9th Cir. 2007) ..............................................................................................2

*United States v. Laykin*,
  886 F.2d 1534 (9th Cir. 1989) ..............................................................................................6

*United States v. W.R. Grace*,
  504 F.3d 745 (9th Cir. 2007) ................................................................................................5

*Yates v. United States*,
  354 U.S. 298 (1957) ..............................................................................................................5

**Statutes**

15 U.S.C. § 78m ..........................................................................................................................6, 7

18 U.S.C. § 371 ................................................................................................................................8

18 U.S.C. § 3292 ...............................................................................................................1, 2, 8, 9

The government posits that a foreign evidentiary request relevant to one count tolls any other count that the government does not yet wish to charge, even in the absence of any connection between the foreign evidentiary request and those other counts. But this is not the law, and the government's attempt to bring facially stale charges against Dr. Michael Lynch years after substantially the same charges were brought against Sushovan Hussain, in reliance on tolling purportedly triggered by (irrelevant) foreign evidentiary requests, warrants close scrutiny and healthy skepticism. And when subjected to careful review, Counts Two, Sixteen, and the remaining objects of Count Seventeen reveal themselves to have been ineligible for tolling and therefore ripe for dismissal. Moreover, because of the suspicious timing and content of the government's MLAT requests to the U.K., the defense should be granted discovery to ascertain whether the government had a genuine need for the foreign evidence that it requested.

## I.   ARGUMENT

### A.   Count Two Is Time-Barred Because the Government Did Not Seek Foreign Evidence Relevant to Count Two

The Italy and Vatican Requests were not related to any of the elements of Count Two, which alleges wire fraud based on an email related to two U.S.-based entities, DiscoverTech and Bank of America. And, since the government had made no relevant "official request" for evidence of the alleged conduct charged in Count Two to a foreign jurisdiction when the statute of limitations period expired, 18 U.S.C. § 3292 is inapplicable and Count Two must be dismissed.

The government appears to concede that the Italy and Vatican Requests are not directly related to the alleged email that forms the basis for the wire fraud charged in Count Two, but notes that wire transmission is only one of the elements for wire fraud. ECF No. 236 ("Opp.") at 13. The government ultimately argues that the Italy and Vatican Requests' relation to DiscoverTech and Bank of America is irrelevant because the Italy and Vatican Requests relate to the accuracy of Autonomy's financial statements. *Id.* at 14. The government does not cite to any case law for this broad reading of the statute's relevancy requirement and does not appear to refute Dr. Lynch's argument that an MLAT request for one offense cannot be used to toll the

statute of limitations period for an offense that is unrelated to the evidence sought in the request. And, the government does not contest that the Italy and Vatican Requests were the only requests that preceded Count Two.

In its correspondence to officials in Italy and the Vatican, the government did not represent that they thought the Requests to Italy or the Vatican would produce evidence associated with Count Two. The Italy Request provided a list of entities related to the transactions in question, and did not include DiscoverTech or Bank of America. ECF No. 237-2 at 6–8 (Ex. 4). Indeed, none of the "official requests," including a list of questions and documents of interest, *id.* at 8–10; ECF No. 236-2 at 137–40, have any indicia of a connection to the DiscoverTech email charged in Count Two.

Even in its representations to the Court when applying for an order to suspend tolling, the government did not represent that there was any evidence related to Count Two in a foreign country. Instead, the government stated: "At least four [ ] VAR transactions involve evidence located in foreign countries. Those four transactions involved the following entities: (1) Sale Consulting S.R.L. ("Sales Consulting"); (2) Microtechnologies, LLC ("MicroTech"); (3) Auxilium Tech S.R.L. ("Auxilium"); and (4) Red Ventures S.R.L. ("Red Ventures")." ECF No. 236-2 at 4 (Declaration of AUSA Robert S. Leach in Support of the United States' *Ex Parte* Application for an Order Suspending the Statute of Limitations Pursuant to 18 U.S.C. § 3292). As with the correspondence to officials in Italy and the Vatican, DiscoverTech and Bank of America are not mentioned. Given that DiscoverTech and Bank of America are both U.S.-based entities, the omission is logical and consistent with the government not expecting evidence related to Count Two to be in Italy or the Vatican.

The government cannot toll the statute of limitations for a count that is unrelated to the evidence sought in an MLAT request. Pursuant to 18 U.S.C. § 3292(a)(1), a district court "shall suspend the running of the statute of limitations for *the offense* if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country." *Id.* (emphasis added); *see also United States v.*

1  *Jackson*, 480 F.3d 1014, 1021 (9th Cir. 2007) (explaining that when the language of a statute is "clear," a court should "look no further than that language in determining the statute's meaning"). Based on the plain language of the statute, a foreign-evidence request cannot toll the statute of limitations of another offense not covered by evidence sought in the request.

Count Two pertains entirely to a domestic transaction unrelated to Italy, the Vatican, or any of the non-U.S. deals referenced in the Vatican Request or the Italy Request. Based on the government's official requests and representations to the Court, it did not reasonably appear at the time that the requests were made that evidence for Count Two was in a foreign country. The broader scheme, is charged as Count One. Count Two is its own count alleging its own instance of wire fraud, and that alleged fraud is not dependent on the accuracy of Autonomy's financial statements. Accordingly, Count Two must be dismissed because no MLAT requests tolled Count Two's statute of limitations period before its expiration.

### B. Count Sixteen Is Time-Barred Because the Government Did Not Seek Foreign Evidence Relevant to That Count

In his motion to dismiss, Dr. Lynch argued that Count Sixteen, a securities fraud charge alleging false statements to HPQ shareholders, must be dismissed as time-barred because (1) the statute of limitations ran in August 2017, over a year and a half before Count Sixteen was charged in March 2019, and (2) tolling was unwarranted, given that none of the government's foreign evidentiary requests sought information relating to the August 18, 2011 HP press release that the Count concerns, to Dr. Lynch's role (if any) in preparing it, or to any other statements to HPQ shareholders. ECF No. 221 at 9–10.

In its opposition brief, the government makes no attempt to explain how any of the foreign evidentiary requests relate to Count Sixteen. Instead, the government discusses the purported relevance of certain requests to *other* counts. As the government's discussion makes plain, none of the requested evidence relates to Count Sixteen, which is a securities fraud charge centered on statements that Dr. Lynch allegedly caused to be made to HPQ shareholders (not to HP itself):

- **Evidence of Receipt of Sale Proceeds.**  Dr. Lynch's receipt of funds from HP as a result of alleged false statements to HP, Opp. at 15–16, is not evidence of the accuracy of Dr. Lynch's statements nor his motive to make false statements to HPQ shareholders, who are not alleged to have paid any funds to Dr. Lynch.  Moreover, the fact that information about Dr. Lynch's and Mr. Hussain's Autonomy shareholdings was published in Autonomy's Offer Document, and that the government charged Mr. Hussain on November 10, 2016, before receiving the requested information from the U.K.,[1] belies the government's argument that "responsible prosecutors" would seek that evidence, and instead suggests both that the evidence was unnecessary and that the government sought it for an improper purpose, as discussed *infra*.  Indeed, evidence of proceeds that Dr. Lynch received *after* the events relevant to Count Sixteen had ended is not probative of Dr. Lynch's state of mind; if anything, one would expect the government to introduce evidence of Dr. Lynch's contemporaneous expectations, such as the information in the Offer Document about the agreed-upon price per share and about Dr. Lynch's shareholdings at the time.
- **Hussain Phone Records.**  The government fails to explain how Mr. Hussain's phone records could be relevant to the allegation that Dr. Lynch made false statements to HPQ shareholders, and instead focuses on their purported relevance to the wire fraud counts.
- **E&Y Workpapers.**  The government sets forth no basis for inferring that the E&Y workpapers from the audit of an Autonomy subsidiary's restated financial statements, Opp. at 19, were relevant to the allegedly false statements in the HP press release.  Moreover, E&Y never signed off, or gave an audit opinion, on the restated financial statements of the Autonomy subsidiary.  Even if the subsidiary's restated financial statements were somehow relevant to Dr. Lynch's alleged false statements to HPQ shareholders, the requested E&Y workpapers could not be.
- **Slaughter and May Data Room.**  The nature of the documents that were "made available to HP for diligence" in the Slaughter and May data room is not evidence of false statements to

---

[1] The information was received between November 23, 2016 and December 4, 2018.  *See* Opp. at 6–8 & n.1.

HPQ shareholders. And the government concedes that inasmuch as "the evidence requested would establish that access to the data room by HP advisers in the United States involved the use of interstate wires," it would support not a securities fraud charge but rather, if anything, "additional wire fraud charges." Opp. at 19.

- **Italy and Vatican Requests.** The government makes no argument, and cannot show, that the evidence sought in the Italy and Vatican Requests was relevant to Count Sixteen. This evidence related to specific VAR transactions, which were immaterially small, and the government has not explained how that evidence was relevant to the securities fraud charge in Count Sixteen.

Because the government's foreign evidentiary requests did not toll Count Sixteen, that Count is time-barred.

### C. None of the Remaining Objects of Count Seventeen Was Timely, and Tolling with Respect to the Count Is Not Proper

Dr. Lynch's motion to dismiss presented binding authority holding that the statute of limitations for each object of a multi-object conspiracy begins to run on the date of the last overt act taken in furtherance of that object. ECF No. 221 at 10 (citing, *e.g.*, *Yates v. United States*, 354 U.S. 298, 311–12 (1957); *Griffin v. United States*, 502 U.S. 46, 51–52 (1991)). In its opposition brief, the government cites no contrary case law, and instead asserts that the entirety of "Count 17 . . . is timely on the face of the indictment" for two reasons: First, the SI states that the entire conspiracy ended "in or about November 2018," and second, "the [SI] alleges Lynch continued to circumvent HP controls and obstruct proceedings through his unlawful retention of HP records throughout the time period alleged in Count 17." Opp. at 20.

Neither of these arguments holds up under scrutiny. The date on which the entire alleged conspiracy ended is not relevant to determining when each object accrued. Instead, under *Yates* and its progeny, the government must allege a timely overt act in furtherance of each object of the conspiracy. *See, e.g., United States v. W.R. Grace*, 504 F.3d 745, 751–52 (9th Cir. 2007) (indictment that "failed to allege an overt act within the statute of limitations" for one object of a multi-object conspiracy was "structurally flawed"). The date that the SI alleges the entire

conspiracy ended is of particular irrelevance here, given that (1) the government concedes that it has "narrowed" Count Seventeen to exclude the money-laundering object and the witness-tampering object (*see* ECF No. 233 (Response to Motion to Dismiss Count Seventeen) at 5 n.1, 7 & n.2, 8; ECF No. 230 (Voluntary Bill of Particulars) at 6) and (2) the only overt acts alleged to have occurred after 2013 were in furtherance of the witness-tampering object.  In light of that concession, it is unclear on what basis the government continues to assert that the conspiracy ended "in or about November 2018."  Here, the government has failed to allege a timely overt act with respect to either of the two remaining Count Seventeen conspiracy objects.[2]

### 1. The Books-and-Records Object Was Not Timely

The government maintains that Dr. Lynch's "retention of HP records" was in furtherance of a violation of 15 U.S.C. § 78m, the FCPA's "internal controls" provision, extending the books-and-records object's end from May 2012 until December 2014, *see* SI ¶ 34.f; SI ¶ 34.m, Opp. 20, bringing it within five years of the return of the SI in March 2019.  The government's attempt to extend the books-and-records object's end from May 2012 to December 2014 through overt act (m) fails, for multiple reasons.

First, the government lacks support for its argument that overt act (m)'s inclusion of the phrase "and thereafter" operates to extend the statute of limitations for the offense indefinitely. The government can satisfy the statute of limitations only by relying on the overt acts alleged within the indictment.  *United States v. Laykin*, 886 F.2d 1534, 1542 (9th Cir. 1989) ("The indictment contains a list of 18 overt acts that serve as a basis for limiting the time frame covered by the indictment and giving the defendants notice of the scope of the charges against them."); *United States v. Hitt*, 249 F.3d 1010, 1017 (D.C. Cir. 2001) ("The indictment's references to subsequent events do not point to acts in furtherance of the alleged conspirators' common goal and therefore may not be relied upon to extend the conspiracy to a period within the statute of

---

[2] Moreover, it is uncontested that the money-laundering object of Count Seventeen was untimely, absent tolling; Count Seventeen was first brought in the March 21, 2019 SI, yet this object accrued on June 1, 2012, *see* SI ¶ 34.j, meaning the statute of limitations expired on June 1, 2017.

limitations."). "And thereafter" are not magic words that prevent the accrual of the statute of limitations indefinitely.

Second, and regardless, 15 U.S.C. § 78m(b)(5), the provision at issue, does not encompass the mere retention of records, stating only, "No person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account described in paragraph (2)." 15 U.S.C. § 78m(b)(5); *see also SEC v. Nacchio*, 438 F. Supp. 2d 1266, 1283 (D. Colo. 2006) (describing the "three different ways in which [the statute] may be violated: (i) a defendant knowingly circumvents an existing system of accounting controls; (ii) a defendant knowingly fails to implement a system of accounting controls; or (iii) a defendant knowingly falsifies a relevant corporate book or record").[3]

Here, the government fails to explain how Dr. Lynch's alleged "refus[al] to return books and records and other property" to HP could constitute "circumvent[ion of] . . . a system of [the listed] internal accounting controls," and the government's attempt to shoehorn an alleged failure to return documents and electronic devices into the FCPA's internal accounting controls provision to save a conspiracy object from dismissal on statute of limitations grounds should be rejected. The two overt acts that were plausibly in furtherance of 15 U.S.C. 78m allegedly took place in February 2012, *see* SI ¶ 34.e, and May 2012, *see* SI ¶ 34.f, and the statute of limitations for the books-and-records object therefore expired in May 2017, well before the SI was obtained.

### 2. The Obstruction Object Was Not Timely

With respect to the obstruction object, the government attempts to extend overt act (m), which is alleged to have taken place "[i]n or around January 2013, and thereafter," into December 2014, again to bring it within five years of the return of the SI, by arguing that a December 2014 post on autonomyaccounts.org is "evidence Lynch continued to use stolen documents from HP to obstruct proceedings through a website he maintained." Opp. 20. But for reasons discussed in I.C.1, *supra*, the autonomyaccounts.org post, which is not pleaded as an

---

[3] Perhaps unsurprisingly, counsel has been unable to identify any case law applying § 78m(b)(5) to an alleged refusal to return company property.

overt act, cannot prevent the accrual of the statute of limitations.[4]  Rather, the latest date provided by the SI in connection with an overt act in furtherance of the obstruction object is January 2013, *see* SI ¶ 34.m, meaning that the statute of limitations for that object expired in January 2018—over a year before the SI was returned on March 21, 2019.

### 3. Count 17 Was Not Properly Tolled Under § 3292

Nor can the government salvage the untimely conspiracy objects with § 3292 tolling. The government concedes that its foreign evidentiary requests sought evidence of the underlying fraud, and not evidence of the conduct alleged in Count Seventeen.  Opp. at 20.  In that context, the tolling orders' citations to 18 U.S.C. § 371 are irrelevant; requests to foreign governments seeking evidence of some *other* § 371 conspiracy cannot serve as the basis for tolling the conspiracy that the government did charge, which relates to distinct, post-acquisition conduct. Because the government issued no request seeking evidence supporting Count Seventeen, tolling of that Count is not permitted under § 3292.[5]

---

[4] Moreover, the autonomyaccounts.org post could not possibly have furthered a conspiracy to commit obstruction.  Neither HP nor the government was ever deprived of the documents referenced by the Financial Times article or the autonomyaccounts.org post, and a discussion of a copy of a document in a blog post could not constitute obstruction under § 1505.  Promptly after Dr. Lynch became aware of these documents, and well before this blog post was published, he voluntarily disclosed that he had come into the possession of documents from a former HP/Autonomy employee, and even provided a number of the documents to the U.K. Serious Fraud Office, and then to the U.S. DOJ and SEC, through his counsel.  Dr. Lynch's disclosures further undermine the government's assertion that he stole the documents or that they were in some way hidden from the authorities, and renders implausible the notion that their use was an act of obstruction.

[5] Counts One, Three through Fifteen, and Seventeen were also untimely for the reasons stated in Section IV.A of Mr. Chamberlain's motion to dismiss (ECF No. 217) and Section I of Mr. Chamberlain's reply brief in further support of his motion to dismiss, which Dr. Lynch fully joins in and incorporates by reference.  *See also* ECF No. 229 (Dr. Lynch's Joinder in Defendant Stephen Chamberlain's Motion to Dismiss Counts One through Fifteen and Count Seventeen as Time-Barred and for Pre-Indictment Delay).

**D.     Discovery Is Appropriate Where, as Here, the Timing and Contents of the Government's Foreign Evidentiary Requests Suggest the Government May Have Issued Them for Improper Reasons**

Additional discovery relating to the government's motives for issuing the MLAT Requests is warranted. The government cites to only out of circuit caselaw to support its contention that there are only two requirements for MLAT tolling, and that neither of these encompasses the government's motivations behind filing its MLAT Requests. That is not the law in this circuit. As this Court has held, additional discovery may be warranted when there is reason to doubt the propriety of the government's "true motivations." *United States v. Bogucki*, 316 F. Supp. 3d 1177, 1183 (N.D. Cal. 2018).

The Government's argument that its motives for issuing MLATs and applying for tolling orders are irrelevant is contrary to Ninth Circuit precedent. In *DeGeorge v. United States District Court for Central District of California*, 219 F.3d 930, 937 (9th Cir. 2000) ("*DeGeorge I*"), the Ninth Circuit suggested that when the government uses § 3292 as an "abusive stalling tactic to allow the government more time to investigate" by filing requests for evidence readily available in the U.S., the government may be denied the benefits of tolling. *Id.* at 939; *see also United States v. DeGeorge*, 380 F.3d 1203, 1215 (9th Cir. 2004) ("*DeGeorge II*") (stating that district courts should "hold the government to its burden" and not "simply rubber-stamp the government's request").

Here, the government argues that the fact that records were sought informally prior to the issuance of the Second UK Request means that no improper motivations for issuing the request could have been present. To the contrary, that the government issued a second request to the UK authorities only further supports the view that the first one was pushed out the door for an improper motive. And the timing and contents of the First UK Request suggest that the government may have issued it upon realizing that the statute of limitations for Count Two had just expired (given the irrelevance of the Vatican Request and Italy Request to that Count) and that the statute of limitations for most of the rest of the Counts would begin to expire within a few days. That Request sought a combination of evidence that the government already had (such as information about Dr. Lynch's Autonomy shareholdings) and evidence obtainable from

domestic sources. But rather than seek the requested evidence directly from the U.S. offices of the major multinational institutions that were subjects of the request—J.P. Morgan, Barclays, Credit Suisse, HSBC, RBS, UBS, Vodafone,[6] Telefonica[7]—the government opted to use the slow machinery of international diplomacy, obtaining years of additional time to charge Dr. Lynch. Because the government's motivations are in question, additional discovery should be ordered.

## II.   CONCLUSION

For the reasons stated herein, Dr. Lynch respectfully requests that the Court dismiss Counts One through Sixteen, and the books and records violation, money laundering, and obstruction objects of Count Seventeen of the SI as time-barred, or allow the defense discovery to ascertain whether the government had a genuine need for the foreign evidence that it requested.

Dated: October 24, 2023

Respectfully submitted,

<u>/s/ Reid Weingarten</u>
Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe & Johnson LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

---

[6] *See* Vodafone in the Americas, https://www.vodafone.com/about-vodafone/where-we-operate/vodafone-markets/vodafone-in-the-americas (listing three United States offices, including in San Mateo, California) (last visited Oct. 24, 2023).

[7] *See* Solutions USA: Telefonica Global Solutions, https://www.globalsolutions.telefonica.com/en/solutions/usa/ ("Geographically distributed across the USA with sales representatives and commercial offices in Miami, San Francisco and Puerto Rico . . . .") (last visited Oct. 24, 2023).

Jonathan M. Baum (SBN: 303469)
**Steptoe & Johnson LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Christopher J. Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

DEFENDANT LYNCH'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS ONE THROUGH SIXTEEN, AND CERTAIN OBJECTS OF COUNT SEVENTEEN, OF THE SUPERSEDING INDICTMENT AS TIME-BARRED AND FOR DISCOVERY