PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States,
Acting Under Authority Conferred by 28 U.S.C. § 515

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA GREEN (NYBN 5226204)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email: Robert.Leach@usdoj.gov
          Adam.Reeves@usdoj.gov
          Kristina.Green@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL RICHARD LYNCH and<br>STEPHEN KEITH CHAMBERLAIN,<br><br>    Defendants. | Case No. 18-CR-577 CRB<br><br>UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR FOREIGN DEPOSITIONS UNDER FED. R. CRIM. P. 15 AND RESPONSE TO THE COURT'S ORDER FOR SUPPLEMENTAL BRIEFING<br><br>Date: November 3, 2023<br>Time: 10:00 a.m.<br>Court: Hon. Charles R. Breyer<br>       Courtroom 6, 17th Floor |

**INTRODUCTION**

The government respectfully maintains that the extraordinary circumstances outlined in its initial motion, ECF No. 224, meet the standard under Rule 15 to secure the testimony of six witnesses likely unavailable for trial. The government will not rehash all the arguments made in its initial motion but will respond to the specific arguments raised in Defendants' oppositions, *see* ECF Nos. 231 (Chamberlain) & 232 (Lynch), and to the Court's Order for Supplemental Briefing, *see* ECF No. 246.

**ARGUMENT**

**A.    The Witnesses Are Unavailable**

Lynch does not contest that the government has demonstrated unavailability under Rule 15. Chamberlain, however, asserts in passing, and without citation to authority, that the government "does not outline the efforts by which it has attempted to secure the witnesses' presence at trial." ECF No. 231 at 2. To the contrary, the government has submitted a declaration that describes its communications with counsel for each witness, ECF No. 225 at 1–3, and offers additional information below. Moreover, the standard to show unavailability under Rule 15 is lower than to show unavailability at trial: Rule 15 does "not require any conclusive showing of 'unavailability' . . . before a deposition can be taken in a criminal case." *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998); *see also United States v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998) (holding that a witness is unavailable where the witness is "beyond the subpoena power of the United States and refuse[s] voluntarily to attend" the trial). The government has met that standard here. There is no dispute the witnesses are beyond the Court's subpoena power and have not accepted service of a subpoena. Nothing more is required.

**B.    The Witnesses' Testimony Is Material**

Defendants argue that the witnesses' testimony is not material principally on the ground that the testimony is cumulative. ECF No. 232 at 5–6. The government will address the allegedly cumulative nature of the testimony below, in response to the Court's Order for Supplemental Briefing. It bears emphasis, however, that while the Court should consider whether proposed deposition testimony would be cumulative of other evidence, a party should be allowed to present testimony from multiple witnesses on issues likely to be disputed at trial.

In *United States v. Korolkov*, 870 F. Supp. 60, 61 (S.D.N.Y. 1994), for example, the defendant was charged with conspiracy to commit bank and wire fraud based on a series of fraudulent transfers. The government moved for Rule 15 depositions of seven witnesses, without the defendant's presence, in Jakarta and Buenos Aires. *Id.* at 65. The court recognized that the witnesses would present cumulative testimony. *Id.* Two were employees of Bank Artha Graha in Jakarta who would testify about one unauthorized transfer; two were employees of Banco Del Sud in Argentina who would testify about another unauthorized transfer; and three were employees of Invest Capital in Argentina who would testify about unauthorized transfers made on the same day. *Id.* Nevertheless, the court granted the government's motion, holding that the government had "demonstrated that the testimony of these witnesses [was] material." *Id.*

Here, too, the government has demonstrated that the witnesses will offer material testimony on issues likely to be disputed at trial. *See* ECF No. 224. Indeed, all but one of the witnesses testified to material topics in the related *Hussain* trial. The Court should not preclude the government from securing these witnesses' testimony just because it may cover overlapping topics the Defendants are certain to dispute. *See, e.g.*, *United States v. Hayat*, No. 2:05-CR-0240 GEB DB, 2017 WL 6539610, at *5 (E.D. Cal. Dec. 20, 2017) (granting defendant's motion to depose four alibi witnesses in Pakistan whose credibility might be attacked at trial despite "cumulative" nature of testimony).

After all, the Court can assess whether the testimony is unduly cumulative at the time of trial. *See Korolkov*, 870 F. Supp. at 65 ("Any problems that arise at the taking of these depositions can be raised at a later date. For the moment, the Government has demonstrated that the testimony of these witnesses is material and will only be available at trial if taken in Jakarta and Buenos Aires."); *see also United States v. Tao*, No. 19-20052-JAR, 2021 WL 5205446, at *4 (D. Kan. Nov. 9, 2021) (granting defendant's motion to depose four witnesses in China: "The Court will not prevent Defendant from preserving testimony that is material to his case merely because it is possible that, in the end, the depositions will be inadmissible.").[1]

---

[1] Although Defendants suggest, too, that the witnesses' testimony would be irrelevant and prejudicial, ECF No. 232 at 6–7, these objections are based on the defense interpretation of the evidence and theory of the case. Defendants have offered topics for cross-examination or arguments for the jury, not bases to preclude the government from taking depositions in the first place. *See United States v.*

U.S.' REPLY RE MOTION FOR RULE 15 DEPOSITIONS
18-CR-577 CRB                                              2

**C.      The Depositions Do Not Pose Unusual Logistical Problems**

Defendants make much of the logistical challenges involved in taking the proposed depositions. ECF No. 232 at 9–10. But their argument is grounded in hyperbole more than reality. The proposed schedule was set with a view toward "a significant amount of foreign deposition testimony." ECF No. 191 at 16 (counsel for Mr. Chamberlain). While Defendants complain of the so-called "Herculean" task of taking "ten lengthy, factually complex depositions on overlapping topics," ECF No. 232 at 9–10, there are several problems with that argument. For one, overlapping topics would make cross-examination easier, not harder. Second, Defendants raise issues common to most foreign depositions, such as allotting sufficient time to examine each witness, coordinating schedules, showing the jury exhibits used in the depositions, and taking the depositions before motions *in limine* are decided. ECF No. 232 at 9. Generic concerns common to most foreign deposition cannot be grounds for denying a Rule 15 motion, particularly when the parties negotiated for a scheduling order contemplating foreign depositions.

Third, while Defendants argue that *ten* depositions are too many, the government has requested only seven. In Defendants' view, the government should be punished for having stipulated to Chamberlain's depositions, which Lynch did not oppose.[2] Trying to capitalize on the government's effort to facilitate a fair trial is hardly "in the interest of justice." *See* FED. R. CRIM. P. 15(a)(1). Defendants have not cited any authority for the Court to consider one party's depositions in evaluating whether the opposing party has met the standard under Rule 15.[3] The defense argument amounts to they

---

*Drogoul*, 1 F.3d 1546, 1554–55 (11th Cir. 1993) (explaining that issues surrounding the adequacy of cross-examination during a deposition should be addressed at the time of trial).

[2]      In trying to square his position on Chamberlain's and the government's requests for depositions, Lynch cites a single district court case from the Eastern District of Texas for the proposition that the government "has a more stringent burden than the defendant to establish the need for a foreign deposition." *See United States v. Berganza Espina*, No. 4:19-CR-00228, 2021 WL 4943651, at *2 (E.D. Tex. Oct. 22, 2021). However, it is not clear that the court meant to compare the government's burden under Rule 15 with the defendant's burden under Rule 15, especially because the text of Rule 15 does not draw any such distinction. Although a deposition admitted against a defendant may implicate constitutional rights, there is no reason to believe that Rule 15 imposes a higher burden on the government to show materiality or unavailability. Certainly, *Berganza Espina* did not explain what it meant and ultimately granted the government's motion even though the deposition appeared to constitute most or all of the evidence admitted against the defendant. *Id.* at *4–5. Research has not revealed any other case to distinguish between the parties' burdens in the way that Lynch suggests.

[3]      Similarly, Defendants have not cited any authority for the notion that the possibility of

U.S.' REPLY RE MOTION FOR RULE 15 DEPOSITIONS
18-CR-577 CRB                                                   3

1   get all the depositions they want but the government gets none.

2         In some ways, moreover, the government's proposed depositions present fewer logistical challenges than foreign depositions in other cases.  Generally speaking, Defendants should know what to expect from the five witnesses who testified in *Hussain*, a factor that should expedite direct- and cross-examination.  In that regard, too, Defendants' warning of "lengthy, factually complex" depositions is inconsistent with the *Hussain* trial in which some of the witnesses testified rather briefly.  *See, e.g.*, Hussain Trial Tr. at 1686-1785 (Goodfellow testifying for less than 2.5 hours); *id.* at 1100-1156 (Blanchflower testifying for even less time); *id.* at 5250-5272 (Toms testifying for less than two hours).  Rule 15 depositions are not discovery devices; "[t]he scope and manner . . . must be the same as would be allowed during trial."  FED. R. CRIM P. 15(e)(3).  Lastly, the fact that all six witnesses are located in the same country is another reason that "judicial economy weighs in favor of allowing the government to depose them at the same time."  *See Drogoul*, 1 F.3d at 1557.  In *Drogoul*, for example, the Eleventh Circuit allowed the government to depose 13 witnesses located in Italy:  seven who refused to attend trial and six whose position was unclear.  *Id.*  With regard to the latter group, the court reasoned that because all of the witnesses were in the same country, "allowing the depositions of the six additional witnesses would involve the expenditure of only marginally more time, money, and effort."  *Id.*

**D.      The Depositions Should Be Taken Without Lynch's Presence**

        As discussed in the government's initial motion, Rule 15(c)(3) contemplates foreign depositions without the defendant's presence if the Court makes certain case-specific findings.  ECF No. 224 at 10–11.  Lynch argues, however, that there are "reasonable conditions that would assure Dr. Lynch's appearance" at the depositions.  ECF No. 232 at 12.  The "reasonable conditions" that Lynch proposes are for the private security company guarding him in the United States also to guard him "during depositions and ensure his return to San Francisco."  *Id.*  Lynch's argument is a red herring; the issue is whether the government can maintain legal custody of him in the United Kingdom.  It cannot.  "[T]he Federal Bureau of Investigation, which would have custody of Defendants, has no authority outside of

---

"revealing [their] trial strategy to the government" before trial, ECF No. 232 at 10, 15, is a proper consideration for a Rule 15 motion, where there is no suggestion that the government seeks depositions for that purpose.

U.S.' REPLY RE MOTION FOR RULE 15 DEPOSITIONS
18-CR-577 CRB                                             4

the United States to detain and transport an individual." *See United States v. Suzuki*, No. 215CR00198GMNNJK, 2021 WL 4245354, at *5 (D. Nev. Sept. 17, 2021).

Moreover, the Court has found Lynch's flight from prosecution to be "almost a certainty." ECF No. 146 at 2. Lynch currently is confined to an address in San Francisco, guarded by a private security company, having surrendered his travel documents, and subject to strict supervision by Pretrial Services. *Id.* at 8–9. Under similar circumstances, courts have found that no reasonable conditions would ensure the defendant's return to the United States. *See, e.g.*, *Suzuki*, 2021 WL 4245354, at *5 (granting Rule 15 motion without defendant's presence where court "conditioned his [pretrial] release from custody in part on his surrender of his passport and other travel documents due to concerns about his risk of flight"); *United States v. Tao*, No. 19-20052-JAR, 2021 WL 5205446, at *8 (D. Kan. Nov. 9, 2021) (granting Rule 15 motion without defendant's presence where court "required defendant to surrender his passport, issued by the PRC, as a condition of pretrial release").

Lastly, Lynch asserts that depositions without his presence would violate his Sixth Amendment right to confrontation. ECF No. 232 at 11, 13–15. The Ninth Circuit, however, has held that a deposition that complies with Rule 15(c)(3), does not offend a defendant's Sixth Amendment rights. As the Court has explained, the "major purposes of the confrontation clause as: (1) ensuring that witnesses will testify under oath; (2) forcing witnesses to undergo cross-examination; and (3) permitting the jury to observe the demeanor of witnesses." *United States v. Sines*, 761 F.2d 1434, 1441 (9th Cir. 1985) (citing *California v. Green*, 399 U.S. 149, 158 (1970)). "All three of these purposes [are] fulfilled when [a witness's] videotaped deposition [is] taken with [the defendant's] attorney present." *Id.*; *accord United States v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998) ("Rule 15 is not violated by the admission of videotaped testimony so long as the government makes diligent efforts to secure the defendant's physical presence at the deposition and, failing this, employs procedures that are adequate to allow the defendant to take an active role in the deposition proceedings.").

In any event, Lynch's Sixth Amendment concerns are "premature." *See Drogoul*, 1 F.3d at 1554–55. That is because the "mere taking of depositions" does not threaten his Sixth Amendment rights. *Id.* "Only when deposition testimony is sought to be introduced in evidence are the defendant's

confrontation rights truly implicated.  Before then the process is simply one of preserving testimony for possible subsequent use." *Id.*; *accord Sines*, 761 F.2d at 1439 ("[The defendant's] argument confuses the prerequisites for *taking* a deposition under Rule 15 and section 3503 with the prerequisites for *admitting* a deposition into evidence under those provisions.").

### E. Lynch Can Meaningfully Participate in the Depositions Remotely

Lynch contends that no procedures exist that would allow him to meaningfully participate in depositions remotely.  ECF No. 232 at 11–12.  To support so extreme a position, he asserts that he is "hearing-impaired and relies on reading lips," and that his "technical expertise" are such that cross-examination would be impossible unless he could consult in person with his attorneys.  *Id.*  First, while the government will do whatever it can to accommodate Lynch's hearing impairment, he should be required to offer evidence that he cannot hear without reading lips.  His attorneys, for instance, might aver to the Court that they have never spoken to Lynch on the phone.

Second, it is unlikely that defense counsel cannot cross-examine witnesses without Lynch attending the depositions in person.  The financial transactions underlying this case were clearly presented to the jury in the related *Hussain* trial, and in any event, counsel can consult with Lynch remotely during the depositions.  Lynch is not entitled to special consideration because his case involves sophisticated financial fraud.

Lastly, Lynch can have counsel present both at the deposition and with him to view the deposition remotely.  Courts have found that depositions conducted by two-way videoconference under these circumstances satisfy Rule 15 and the Constitution.  *See, e.g.*, *Tao*, 2021 WL 5205446, at *9 (holding that defendant's "participat[ion] in the remote depositions via videoconference . . . [would] allow defendant to meaningfully participate in the remote depositions"); *Suzuki*, 2021 WL 4245354, at *5 (same); *United States v. Mothafar*, No. 3:20-CR-00506-HZ, 2021 WL 5605185, at *3 (D. Or. Nov. 29, 2021) ("And the Court finds that Defendant will be able to meaningfully participate with his attorney in the United States by conducting the deposition by live video."); *Hayat*, 2017 WL 6539610, at *6 ("Because this court will hold that these depositions be conducted by video-conferencing, many of the logistical problems are no longer a concern."); *Sapse*, No. 2:10-CR-0370-KJD-GWF, 2011 WL

1576898, at *5 (D. Nev. Apr. 26, 2011) ("Courts of Appeal have upheld the taking of depositions of witnesses in foreign countries with the defendant participating by video-conferencing or telephonic means from the United States." (citing examples)); *see also Sines*, 761 F.2d at 1441 (rejecting ineffective assistance claim where defendant's attorney attended foreign deposition and had opportunity to contact defendant by telephone during breaks).

Indeed, courts have found these procedures constitutionally sufficient even where, unlike in this case, the depositions required the use of an interpreter. *See, e.g.*, *Drogoul*, 1 F.3d at 1554; *Korolkov*, 870 F. Supp. at 65. Tellingly, Lynch fails to cite any contrary authority. *See* ECF No. 232 at 11–12.

**F.     The Number of Depositions Is Appropriate**

Finally, Defendants argue that the "cumulative effect" of the number of depositions presents the most serious risk to their trial rights. ECF No. 232 at 15. As discussed above, however, Defendants repeatedly inflate the number of depositions for which the government is responsible. *See* ECF No. 232 at 2 ("each of the ten proposed deponents"); *id.* ("these ten depositions"); *id.* at 9 ("with ten potential depositions"); *id.* at 10 ("ten lengthy, factually complex depositions"). The government has requested seven depositions, not ten. To punish the government for stipulating to a codefendant's depositions would only create perverse incentives. Moreover, the number of depositions requested by the government is not out of the ordinary. *See, e.g.*, *Drogoul*, 1 F.3d at 1557 (granting government's motion to depose 13 witnesses in Italy without defendant's presence); *United States v. Gifford*, 892 F.2d 263, 265 (3d Cir. 1989) (upholding district court's order granting government's motion to depose 10 witnesses in Belgium without defendant's presence); *Korolkov*, 870 F. Supp. at 65 (granting government's motion to depose seven witnesses in Jakarta and Buenos Aires).

In *Gifford*, for example, most of the trial evidence "came through the deposition testimony of ten foreign witnesses." 892 F.2d at 264. Although the defendant could not attend the depositions in person, he could "listen to the testimony by virtue of an open telephone line" and "confer with his attorney through the use of a private line." *Id.* On appeal, the Third Circuit held that the depositions' admission did not offend due process: "In these circumstances, Gifford's right to a fair trial was not violated by the use of the deposition testimony." *Id.* The same result should obtain here.

**G.      Response to the Court's Order for Supplemental Briefing**

The government assesses the relative importance of the six witnesses as follows: (1) Marc Geall, (2) Fernando Lucini, (3) Ian Black, (4) Christopher Goodfellow, (5) David Toms, and (6) Sean Blanchflower.  Following receipt of the Court's Order for Supplemental Briefing, counsel for the government inquired further of counsel for the witnesses to ascertain whether each witness would voluntarily appear for a deposition.  The following summarizes counsel's responses:

| Witness (in order of importance) | Response |
|---|---|
| Marc Geall | Mr. Geall would not commit to a course of action; that is, he would neither agree to appear voluntarily nor did he indicate he would require further process. |
| Fernando Lucini | Mr. Lucini indicated he would require process for a deposition. |
| Ian Black | Mr. Black will voluntarily appear for a deposition. |
| Christopher Goodfellow | Mr. Goodfellow indicated he would require process for a deposition. |
| David Toms | Mr. Toms will voluntarily appear for a deposition. |
| Sean Blanchflower | Mr. Blanchflower would not commit to a course of action. |

For government witnesses who have not agreed to voluntarily appear, the Court does not need to issue a letter of request through the Hague Convention.  The government has the ability to submit a request for mutual legal assistance to the United Kingdom.  *See* Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters ("MLA") (attached).  Specifically, Article 8 of the MLA provides that "a person in the territory of the Requested Party from whom evidence is requested pursuant to this Treaty may be compelled, if necessary, to appear in order to testify . . . by subpoena or such other method as may be permitted under the law of the Requested Party."  *Id.* at p.10.

Mr. Geall's anticipated testimony is not cumulative of testimony from other witnesses who have accepted service of a subpoena or within the subpoena power of the Court.  As set forth in the motion, unlike other available witnesses, Mr. Geall worked in the same room with Hussain and close to Lynch.  After being advised of a large hardware contract in the fall of 2009, Mr. Geall *alone* deduced the fraud

Lynch was committing – concealing hardware expenses through the contrived launch of a new product (Structured Probablistic Engine ("SPE")). Defendants can point to no other available witness who provides the first-hand account Mr. Geall does, which directly and damningly implicates Lynch.

Testimony by Mr. Lucini, Autonomy's Chief Architect, is not cumulative of testimony from other witnesses who have accepted service of a subpoena or within the subpoena power of the Court.[4] His witness statement in the UK action provides the clearest indication of the subjects to which he uniquely can testify. He was in "regular contact with Dr. Lynch." 9/29/2023 Leach Decl. Ex. B ¶ 6. Unlike any witness who has accepted or can be compelled to accept a subpoena, he has knowledge about the capabilities and limits of the SPE product launched in the third quarter of 2009 amid Autonomy's increased hardware sales. *Id.* ¶¶ 14-16. He will testify to the development and launch of SPE in the UK, *id.* ¶¶ 17-23, as well as the costs, or lack thereof, that were incurred, *id.* ¶ 24-34, that (unknown to him or the market) were used to mask the costs associated with hardware sales. He will testify that he was tasked with assessing the value of software ultimately purchased from a value-added reseller, DiscoverTech, and "can think of no legitimate reason for Autonomy purchasing DiscoverEngine software" or knowledge of its use. *Id.* ¶¶ 51-56. The government is unaware of any other witness who can provide such information, and the Defendants have identified none. Finally, as one of the primary Autonomy employees involved in attempting to sell software to the Vatican, Mr. Lucini is expected to testify that a subsequent "reseller transaction [with MicroTech] makes no sense to me." *Id.* ¶¶ 57-70. No one else will provide such testimony. In sum, Mr. Lucini is important in demonstrating the falsity of the accounting for many of Autonomy's transactions.

Mr. Black's account of destruction of documents in May 2012, as Lynch was departing, is not replicated by others and is the support for one of the overt acts underlying Count 17. He is not cumulative.

Mr. Goodfellow's testimony likewise is not cumulative of others. His importance is best

---

[4] Testimony by Messrs. Lucini, Goodfellow, and Blanchflower generally overlaps with respect to one reseller, FileTek. In addition, one United States-based witness who has been subpoenaed, Roger Wang, can be expected to testify as to Autonomy's lack of use or need for FileTek software. However, Mr. Wang did not work in proximity to Lynch or Autonomy's Chief Technology Officer, Peter Menell, and the government anticipates the defense will attempt to undermine his testimony as a result.

demonstrated by his testimony in the *Hussain* trial and his UK witness statement about a fourth quarter 2010 transaction with a company called VMS, which generated more than $6 million in revenue. Hussain Trial Tr. at 1715-1736; Leach Decl. Ex. E, 49-65. Autonomy claimed to have sold more than $6 million in hardware to VMS. But when Autonomy was unable to deliver the hardware in time to recognize revenue, it duped its auditors into believing that it had "repurposed" used hardware that Autonomy was using to support its own data centers and delivered it to VMS. Because Mr. Goodfellow is the only person with significant knowledge about the "repurposed" hardware Autonomy claimed to have delivered to VMS, a significant transaction that helped Autonomy achieve its year-end 2010 results, his testimony is not cumulative.

With respect to Mr. Toms, the government anticipates testimony from additional analysts who were unaware of and surprised by Autonomy's hardware sales and who were present for the first quarter 2010 analyst call where Mr. Toms inquired about Autonomy's results and was falsely told "what we are not doing here is acting as a generic company that resells hardware." However, because Mr. Toms in 2011 authored an analyst report indicating that Autonomy's revenue in a later period was "potentially flattered by hardware sales," the defense is expected to use that report to argue HP and the market knew Autonomy was selling hardware. Only Mr. Toms can explain what he meant – he affirmed in *Hussain* it was an inference and that he had no idea that Autonomy had sold hardware acquired from other manufacturers that was not an appliance, devoid of software, in an amount approximating $99 million – and dispel the false notion that the market and HP knew what Lynch was doing.

Finally, testimony from Mr. Blanchflower is not cumulative of available testimony because he is expected to testify "Autonomy had no use for [FileTek] software." He also is in a position because of his European presence to describe Autonomy's failed efforts to sell software to the Vatican. He also will debunk that SPE was "a radical technology" different from software Autonomy had acquired long ago and costing the millions Autonomy claimed it took to develop. Particularly given the defense's efforts to obtain a deposition from Puppy Gustaffson, Mr. Blanchflower's testimony is important and not cumulative.

**CONCLUSION**

For these reasons, the Court should grant the motion and order depositions of Marc Geall, David Toms, Fernando Lucini, Sean Blanchflower, Christopher Goodfellow, and Ian Black.

DATED: October 26, 2023                                      Respectfully submitted,

PATRICK D. ROBBINS
Attorney for the United States,
Acting Under Authority Conferred by
28 U.S.C. § 515

*/s/ Robert S. Leach*
ROBERT S. LEACH
ADAM A. REEVES
KRISTINA GREEN
Assistant United States Attorneys