# EXHIBIT 40

1 KEKER, VAN NEST & PETERS LLP
  JOHN W. KEKER - # 49092
2 jkeker@keker.com
  JAN NIELSEN LITTLE - # 100029
3 jlittle@keker.com
  BROOK DOOLEY - # 230423
4 bdooley@keker.com
  KATE E. LAZARUS - # 268242
5 klazarus@keker.com
  NICHOLAS D. MARAIS - # 277846
6 nmarais@keker.com
  IAN KANIG - # 295623
7 ikanig@keker.com
  633 Battery Street
8 San Francisco, CA 94111-1809
  Telephone:    415 391 5400
9 Facsimile:    415 397 7188

10 Attorneys for Defendant
   SUSHOVAN HUSSAIN

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                        SAN FRANCISCO DIVISION

15 UNITED STATES OF AMERICA,              Case No. 3:16-cr-00462-CRB

16               Plaintiff,               **DECLARATION OF BROOK DOOLEY IN
                                          SUPPORT OF DEFENDANT'S MOTIONS
17        v.                              FOR A "*BRADY*" ORDER" DIRECTING
                                          THE GOVERNMENT TO COMPLY
18 SUSHOVAN HUSSAIN,                      WITH ITS DISCLOSURE OBLIGATIONS
                                          AND FOR AN ORDER DIRECTING THE
19               Defendant.               GOVERNMENT TO REVIEW THE FILES
                                          OF HEWLETT-PACKARD AND
20                                        MORGAN, LEWIS & BOCKIUS LLP**

21                                        Date:      May 10, 2017
                                          Time:      1:30 p.m.
22                                        Dept.:     Courtroom 6, 17th Floor
                                          Judge:     Hon. Charles R. Breyer
23
                                          Case Filed: November 10, 2016
24
                                          Trial Date: TBD
25

26

27

28

1161436

**OMNIBUS DECLARATION OF BROOK DOOLEY**

I, BROOK DOOLEY, declare and state as follows:

1.     I am duly licensed to practice law in the State of California and am a partner at Keker, Van Nest & Peters LLP, counsel of record for Defendant Sushovan Hussain in the above-entitled action.  I have knowledge of the facts set forth herein, and if called upon to testify as a witness thereto, I could and would competently do so under oath.

2.     Throughout this declaration, I have included Bates-numbers of documents that the United States has produced to Mr. Hussain that I have personally reviewed.

**DEFENDANT'S MOTION FOR A "*BRADY* ORDER" DIRECTING THE GOVERNMENT TO COMPLY WITH ITS DISCLOSURE OBLIGATIONS**

3.     On December 19, 2016, the parties held a meet-and-confer call.  During the call, I inquired whether the United States would stipulate to the entry of a standing "*Brady* order" in this case.  Counsel for the United States responded that he was "okay" with the suggestion, but also suggested that any order should not set a deadline for the complete production of *Brady* materials until about the time of the final pre-trial conference.

4.     On January 2, 2017, I sent counsel for the United States the proposed *Brady* order filed contemporaneously herewith.

5.     On January 3, 2017, the parties held another meet-and-confer call to discuss the proposed "*Brady* order."  Counsel for the United States again stated that he was "not opposed to the substance" of the proposed *Brady* order, but that he disagreed as to the appropriate form and timing of such an order.  The government took the position that a standing *Brady* order is not necessary, and that it should be required only to make a representation, at the time of the final pretrial conference, that it has fulfilled its *Brady* obligations.

6.     On January 6, 2017, in response to a request from counsel for the United States, I sent the government a copy of Judge Sullivan's standing order and two standing orders issued by district judges in the Central District of California.  Counsel for the United States did not respond to my email.

1161436

7. On January 9, 2017, the parties held another meet-and-confer call to discuss Mr. Hussain's proposed *Brady* order. Counsel for the government repeated its previous position.

8. The parties held a final meet-and-confer call on this issue on April 6, 2017. Counsel for the United States stated that he would not agree to Mr. Hussain's proposed *Brady* order, and that Mr. Hussain should "go ahead" and file a motion with the Court.

## DEFENDANT'S MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO REVIEW THE FILES OF HEWLETT-PACKARD AND MORGAN, LEWIS & BOCKIUS

9. On November 20, 2012, the Hewlett-Packard Company ("HP") announced an $8.8 billion write-down associated with its acquisition of Autonomy, more than $5 billion of which it attributed to "serious accounting improprieties, misrepresentations and disclosure failures" by former Autonomy management. HP also announced that it had referred the matter for criminal investigation. HP's press release is available at: http://www8.hp.com/us/en/hp-news/press-release.html?id=1334263#.WP_nqfnyvRY (last accessed April 25, 2017).

10. I have reviewed materials that the United States produced to Mr. Hussain indicating that HP and its lawyers at Morgan, Lewis & Bockius LLP ("Morgan Lewis") presented to the Securities and Exchange Commission ("SEC") on November 16, 2012. US-SEC 00000001. Further materials that the United States produced to Mr. Hussain that I have reviewed indicate that Morgan Lewis held calls with the SEC on November 26 and December 5, 2012. FBI 100007645. Those same materials also indicate that the SEC requested that HP and Morgan Lewis provide a list of key Autonomy witnesses, which they did on December 11, 2012.

11. Attached hereto as **Exhibit A** is a true and correct copy of the January 16, 2013 cooperation agreement between HP, on the one hand, and the United States Attorneys' Office for the Northern District of California ("USAO") and the SEC, on the other. USAO 00002280.

12. I have reviewed materials that the United States produced to Mr. Hussain indicating that HP and Morgan Lewis presented to the USAO and the SEC on January 16, 2013, and on March 6, 2013. HP 0000682; US-SEC 00000032.

13. I have reviewed materials that the United States produced to Mr. Hussain indicating that from November 2012 through March 2013, HP and Morgan Lewis conducted 50

interviews of 39 witnesses, including many former Autonomy employees.

14.     I have reviewed materials that the United States produced to Mr. Hussain indicating that, in July 2013, HP and Morgan Lewis produced to the USAO summaries of all of the aforementioned witness interviews they conducted.  COVERLETTER029_001.

15.     I have reviewed materials that the United States produced to Mr. Hussain indicating that HP and Morgan Lewis made further presentations to the United States on February 26, 2014, September 9, 2014, April 17, 2015, April 21, 2015, June 5, 2015, and July 9 and 10, 2015.  HP-SEC-00772563; HP-SEC-01425271; FBI 200000815; HP-SEC-01574445; USAO 00001130; HP-SEC-01580216.  Respectively, these presentations focused on: (a) one of Autonomy's reseller customers; (b) allegations that Autonomy concealed accounting improprieties from HP in the lead up to HP's acquisition of Autonomy; (c) HP's analysis of Autonomy's accounting determinations; (d) HP's damages case; (e) U.K. financial reports; and (f) allegations about Autonomy's disclosures of hardware sales and revenue recognition regarding sales to value-added resellers, among other things.

16.     Attached hereto as **Exhibit B** is a true and correct copy of an email dated July 15, 2015 from the USAO to Morgan Lewis, requesting that HP and Morgan Lewis prepare witness binders for 43 different witnesses related to its investigation of Autonomy.  FBI 200000084.

17.     I have reviewed materials that the United States produced to Mr. Hussain indicating that HP and Morgan Lewis voluntarily produced dozens of witness binders to the United States, including one for HP's former Chief Technology Officer Shane Robison on July 15, 2015, and former Autonomy employee Brent Hogenson on August 26, 2015.  FBI 2000002830 (partial list); FBI 200000068 (Robison); FBI 200000142 (Hogenson).  The United States interviewed Mr. Robison on July 22, 2015, and Mr. Hogenson on September 10, 2015.  *See* US_FBI_E-00020797.

18.     Attached hereto as **Exhibit C** is a true and correct copy of an email chain that includes an email dated February 11, 2016, in which FBI agent Keigan Park referred to Morgan Lewis attorneys as the "Morgan Lewis All-Stars."  This email chain also includes Morgan

1161436

Lewis's response, "Flattery will get you everywhere . . ."[1]

19.     I have reviewed materials that the United States produced to Mr. Hussain indicating that HP and Morgan Lewis created interview materials for the USAO in advance of the USAO and the FBI's trip to England to interview witnesses in May 2016.  FBI 2000003151.

20.     I have reviewed materials that the United States produced to Mr. Hussain indicating that the USAO or the FBI tasked HP and its lawyers at Morgan Lewis with compiling documents and summaries regarding key topics in this case.  For example, on June 16, 2016, the USAO requested that HP perform a forensic analysis of the list of Autonomy's top contracts that was provided to HP during the due diligence period in August 2011.  *See* FBI 200003200.  HP responded on June 29, 2016 with a spreadsheet created by HP's finance team in England.  On May 20, 2015, Morgan Lewis provided responses to questions raised by the USAO during HP and Morgan Lewis's April 2015 presentation on reseller transactions.  COVERLETTER_MLB-20150520.001.  Similarly, on November 6, 2015, the USAO asked Morgan Lewis to provide a revenue analysis for nearly three dozen reseller transactions.  FBI 200000815.

21.     I have reviewed materials that the United States produced to Mr. Hussain indicating that, on November 5, 2015, the USAO asked HP and Morgan Lewis to produce evidence that HP received Autonomy's press releases for 2010 and 2011 "as a result of an interstate wire."  FBI 200000818.  The USAO also asked for all bank records relating to HP's payment for Autonomy's shares that "originated from, passed through, or was received in ND Cal."  *Id.*

22.     At an August 29, 2016 meeting with the USAO, defense counsel, including myself, argued that HP must have known that Autonomy was selling hardware because Autonomy sourced some of the hardware it sold from HP itself.  I have reviewed materials that the United States produced to Mr. Hussain indicating that the United States then asked HP, through its counsel at Morgan Lewis, to produce all documents relating to these sales.  FBI

---

[1] Mr. Hussain notes that he has redacted the personal contact information of several non-party witnesses that appear in Exhibit C.  *See* Fed. R. Crim. P. 49.1(a) (permitting the redaction of certain personal information); Fed. R. Crim. P. 49.1(e) (authorizing the Court to authorize the redaction of additional personal information for good cause).

1161436

100008498.  In response, HP provided the United States with several productions relating to hardware.  *See* COVERLETTER_MLB-20160922.001; COVERLETTER_MLB-20160928; FBI 200003646; FBI 200000096.

23.     Attached hereto as **Exhibit D** is a true and correct copy of the minutes drafted by the FBI of the November 4, 2015 meeting between the USAO and HP (through its lawyers at Morgan Lewis) regarding Deloitte's lawyers.

24.     Attached hereto as **Exhibit E** is a true and correct copy of the minutes drafted by the FBI for the March 17, 2016 meeting between the USAO, HP (through its lawyers at Morgan Lewis), and Deloitte.

25.     Attached hereto as **Exhibit F** is a true and correct copy of the cooperation agreement between the USAO and Deloitte, signed on April 28, 2016.

26.     On January 6, 2017, counsel for Mr. Hussain sent the United States a letter requesting that it produce all *Brady* materials, including those "within the possession, custody, or control of entities or persons who conducted an investigation in contemplation of, or in furtherance of, cooperating with, or producing information to the government, including the Hewlett-Packard Company or its agents."

27.     On March 9, 2017, during a telephone conference, defense counsel asked counsel for the United States to confirm that it would search not only its own files, but the files of HP and HP's agents, including Morgan Lewis, for *Brady*/*Giglio* material.  Counsel for the government responded that those entities were not participating in the investigation and that it did not intend to conduct any search other than asking HP for relevant materials.

28.     The parties had a further telephone conference on April 6, 2017.  During this call, counsel for the government reiterated its position and stated that Mr. Hussain would have to file a "prosecution team" motion.

//

//

//

//

DECLARATION OF BROOK DOOLEY
Case No. 3:16-cr-00462-CRB

1161436

1       I declare under penalty of perjury that the foregoing is true and correct and that this

2 declaration was executed on April 26, 2017 in San Francisco, California.

 

 

_____

BROOK DOOLEY

DECLARATION OF BROOK DOOLEY
Case No. 3:16-cr-00462-CRB

1161436

# EXHIBIT A

Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Tel. 212.309.6000
Fax: 212.309.6001
www.morganlewis.com



# Morgan Lewis
### COUNSELORS AT LAW

January 16, 2013

**By Hand Delivery**

Jason M. Habermeyer, Esq.                     Robert Leach, Esq.
U.S. Securities and Exchange Commission       Assistant United States Attorney
44 Montgomery Street, Suite 2600              450 Golden Gate Avenue
San Francisco, CA 94104                       San Francisco, CA 94102

Re:     Hewlett-Packard Company

Dear Messrs. Habermeyer and Leach:

My firm represents Hewlett-Packard Company ("H-P"). H-P is conducting an investigation of the historical revenue recognition and accounting practices of Autonomy, Inc. prior to and following H-P's October 2011 acquisition of Autonomy ("Autonomy"). H-P has prepared a PowerPoint presentation and compilation of pre-existing documents in connection with an oral report of its investigation. In light of the interest of the Staff of the U.S. Securities and Exchange Commission (the "Staff") and the United States Attorney's Office ("USAO") in determining whether there have been any violations of the federal securities or other laws, and H-P's interests in investigating and analyzing the circumstances and people involved in the events at issue, H-P will provide to the Staff an oral briefing and the compilation of pre-existing documents ("Confidential Materials").

Please be advised that by presenting the Confidential Materials pursuant to this agreement, H-P does not intend to waive the protection of the attorney work product doctrine, attorney-client privilege, or any other privilege applicable as to third parties. H-P believes that the Confidential Materials are protected by, at a minimum, the attorney work product doctrine and the attorney-client privilege. Accordingly, H-P believes that the Confidential Materials warrant protection from disclosure.

The Staff and USAO will maintain the confidentiality of the Confidential Materials pursuant to this agreement and will not disclose them to any third party, except to the extent that the Staff and USAO determines that disclosure is otherwise required by law or would be in furtherance of their agencies' discharge of their duties and responsibilities.

DB1/ 72822397.1

USAO 00002280


Morgan Lewis
COUNSELORS AT LAW

Jason M. Habermeyer, Esq.
Robert Leach, Esq.
January 16, 2013
Page 2

The Staff and USAO will not assert that H-P's production of the Confidential Materials to the Commission constitutes a waiver of the protection of the attorney work product doctrine, the attorney-client privilege, or any other privilege applicable as to any third party. The Staff and USAO agree that production of the Confidential Materials provides the Staff with no additional grounds to subpoena testimony, documents or other privileged materials from H-P, although any such grounds that may exist apart from such production shall remain unaffected by this agreement.

The Staff's and USAO's agreement to the terms of this letter is signified by your signature on the line provided below.[1]

Sincerely,

Leslie Caldwell

LC/yka

AGREED AND ACCEPTED:
United States Securities and Exchange Commission
By: _____
Attorney, San Francisco Regional Office

AGREED AND ACCEPTED:
United States Attorney's Office
By: _____
Assistant United States Attorney

---

[1] H-P requests confidential treatment under the Freedom of Information Act ("F.O.I.A.") for this letter. Pursuant to 17 C.F.R. § 200.83 and other applicable laws and regulations, H-P hereby requests that the confidential information provided herein be maintained by the Staff and Commission in confidence, not be made part of any public record and not be disclosed to any person in response to a request under the F.O.I.A. or otherwise. The confidential information contained herein remains the property of H-P.

USAO 00002281

# EXHIBIT B

| From: | Leach, Robert (USACAN) <Robert.Leach@usdoj.gov> |
|---|---|
| Sent: | Tuesday, July 14, 2015 11:21 AM |
| To: | Resley, Susan D. (sresley@morganlewis.com) |
| Cc: | Stolley, Martha B. (mstolley@morganlewis.com); Reeves, Adam (USACAN) <Adam.Reeves@usdoj.gov>; Mallory, Mary (USACAN) [Contractor] <Mary.Mallory@usdoj.gov>; Park, Keigan M. (SF) (FBI) <Keigan.Park@ic.fbi.gov>; Castro, Leland G. (SF) (FBI) <Leland.Castro@ic.fbi.gov>; Smith, Marlene (SF) (FBI) <Marlene.Smith@ic.fbi.gov> |
| Subject: | Autonomy |
| Attach: | Witness Binders.docx |

Susan,

As the team raised with you on Friday, we request that HP voluntarily prepare and produce to us witness binders for various individuals on the attached list.  The list includes the date by which we need the binder for particular witnesses.  Please note there are some witnesses on the list for whom you have already produced a binder.  Please call me to discuss this further.  I'm in Oakland today.  The best number to reach me at is 510-788-3508.  If you don't reach me, just let me know when a good time to call is.

Thanks,

Bob

*******************************************
Robert S. Leach
Assistant United States Attorney
United States Attorney's Office
Northern District of California
450 Golden Gate Avenue, 11th Floor
San Francisco, CA  94102-3495
(415) 436-7534 -- Phone
(415) 436-7234 -- Fax

FBI 200000084

**Request for Witness Binders**

| Name | Company | Date Needed |
|------|---------|-------------|
| Apotheker, Leo | HP | 8/18/2015 |
| Ariko, Barry | Autonomy | 10/15/2015 |
| Blanchflower, Sean | Autonomy | 10/15/2015 |
| Broli, Corrado | Autonomy | 8/25/2015 |
| Brown, Derek | Autonomy | 8/25/2015 |
| Chamberlain, Steve | Autonomy | 9/15/2015 |
| Chang, Michael | Autonomy | 7/31/2015 |
| Cornelius, Jeff | Autonomy | 7/31/2015 |
| Corrado, Broli | Autonomy | 8/25/2015 |
| Cronin, John | Autonomy | 7/24/2015 |
| Culine, Chris | Autonomy | 7/31/2015 |
| Egan, Stouffer | Autonomy | 7/31/2015 |
| Gallagher, Darren | Autonomy | 10/15/2015 |
| Goodman, Peter | Autonomy | 8/25/2015 |
| Harris, Lisa | Autonomy | 8/25/2015 |
| Hogenson, Brent | Autonomy | 8/4/2015 |
| Hussain | Autonomy | 9/15/2015 |
| Kantor, Andrew | Autonomy | 9/15/2015 |
| Kelley, Frank | Autonomy | 8/25/2015 |
| Krakoski, Jime | Autonomy | 7/31/2015 |
| Lane, Ray | HP | 8/11/2015 |
| Lesjak, Cathy | HP | 7/31/2015 |
| Lucini, Fernando | Autonomy | 10/15/2015 |
| Lynch, Michael | Autonomy | 9/15/2015 |
| Mark, Robert | Autonomy | 7/31/2015 |
| Manish, Sarin | HP | 10/15/2015 |
| Menell, Peter | Autonomy | 9/15/2015 |
| Mooney, Mike | Autonomy | 7/31/2015 |
| Robison, Shane | HP | 10/15/2015 |
| Ryan, Patrick | Autonomy | 7/31/2015 |
| Sass, Rob | Autonomy | 8/4/2015 |
| Schultz, John | HP | 9/1/2015 |
| Scott, Joel | Autonomy | 10/15/2015 |
| Smith, Alan | Autonomy | 7/31/2015 |
| Snyder, Jane | Autonomy | 7/31/2015 |
| Stephan, Matt | Autonomy | 10/15/2015 |
| Still, Jim | Autonomy | 7/31/2015 |
| Sullivan, Mike | Autonomy | 10/15/2015 |
| Sunderwala, Meeta | HP | 8/11/2015 |
| Vaidyanathan, Ganesh | Autonomy | 8/11/2015 |
| Wang, Roger | Autonomy | 10/15/2015 |
| Whitman, Meg | HP | 10/15/2015 |

FBI 200000085

| Yelland, Chris | Autonomy | 9/22/2015 |

FBI 200000086

EXHIBIT C

| From: | Stolley, Martha B. <martha.stolley@morganlewis.com> |
|---|---|
| Sent: | Sunday, March 6, 2016 8:13 AM |
| To: | Park, Keigan M. (SF) (FBI) <Keigan.Park@ic.fbi.gov> |
| Cc: | Resley, Susan D. <sresley@morganlewis.com> |
| Subject: | RE: Prior HP Employees |

Hi Keigan—
In response to your request, please find below inredlast known contact information for the following:

Alvaro Etcheverry Cotelo – Prior Autonomy Sales – Departed HP in April of 2015, worked in HP's office in Madrid, Spain.

Address: ██████████████████████████
Telephone: ████████████

James Murray – Prior Autonomy Sales – Departed HP in March of 2012, worked in HP's London, England office.

Address: ████████████████████████████████
Telephone: We do not have this information.

Chris Hartley – Prior Autonomy Sales – Departed HP in October of 2013, worked in the Cambridge office of Autonomy and the London Office of HP.

Hartley will be represented by counsel, whose name and contact information we will provide as soon as we have it.

Take care-
Martha

**Martha B. Stolley**
**Morgan, Lewis & Bockius LLP**
101 Park Avenue | New York, NY 10178-0060
Direct: +1.212.309.6858 | Main: +1.212.309.6000 | Fax: +1.212.309.6001
mstolley@morganlewis.com | www.morganlewis.com
Assistant: Patricia V. Miller | +1.212.309.6379 | pmiller@morganlewis.com

**From:** Park, Keigan M. (SF) (FBI) [mailto:Keigan.Park@ic.fbi.gov]
**Sent:** Thursday, February 11, 2016 7:20 PM
**To:** Stolley, Martha B.; Harrison, Jenny; Resley, Susan D.
**Subject:** RE: Prior HP Employees

Yes, sorry. I should have added: as part of the investigation into alleged accounting improprieties at Autonomy. We would like to contact the following prior HP employees.


--


-------- Original message --------
From: "Stolley, Martha B." <mstolley@morganlewis.com>
Date: 02/11/2016 4:17 PM (GMT-08:00)
To: "Park, Keigan M. (SF) (FBI)" <Keigan.Park@ic.fbi.gov>, "Harrison, Jenny" <jenny.harrison@morganlewis.com>,
"Resley, Susan D." <sresley@morganlewis.com>
Subject: RE: Prior HP Employees

FBI 200001510

Flattery will get you everywhere . . .
Can you confirm that you need this information for the government's investigation?

Thanks-
Martha

**Martha B. Stolley**
**Morgan, Lewis & Bockius LLP**
101 Park Avenue | New York, NY 10178-0060
Direct: +1.212.309.6858 | Main: +1.212.309.6000 | Fax: +1.212.309.6001
mstolley@morganlewis.com | www.morganlewis.com
Assistant: Patricia V. Miller | +1.212.309.6379 | pmiller@morganlewis.com

**From:** Park, Keigan M. (SF) (FBI) [mailto:Keigan.Park@ic.fbi.gov]
**Sent:** Thursday, February 11, 2016 6:59 PM
**To:** Harrison, Jenny; Stolley, Martha B.; Resley, Susan D.
**Subject:** Prior HP Employees

Morgan Lewis All-Stars,

I have a request to HP for information on some prior employees.  I am hoping you will pass it on for me.

    Alvaro Etcheverry Cotelo – Prior Autonomy Sales – Departed HP in April of 2015, worked in HP's office in Madrid, Spain.
    James Murray – Prior Autonomy Sales – Departed HP in March of 2012, worked in HP's London, England office.
    Chris Hartley – Prior Autonomy Sales – Departed HP in October of 2013, worked in the Cambridge office of Autonomy and the London Office of HP.

I am looking for the last available contact information (does not need to be current, but current is preferred if you know it).

Thank you,

Keigan

```
SA Keigan Park
San Francisco Division
Federal Bureau of Investigation
(415)553-7400
```

DISCLAIMER
This e-mail message is intended only for the personal use
of the recipient(s) named above. This message may be an
attorney-client communication and as such privileged and
confidential and/or it may include attorney work product.
If you are not an intended recipient, you may not review,
copy or distribute this message. If you have received this
communication in error, please notify us immediately by
e-mail and delete the original message.

**FBI 200001511**

# EXHIBIT D

On November 4, 2015, representatives from the United States Attorney's Office (Assistant United States Attorney Robert Leach, AUSA Adam Reeves) and from the Federal Bureau of Investigation (Special Agent Keigan Park) met with representatives from Hewlett Packard.  In attendance were Susan Resley and Martha Stoley (Morgan Lewis), Michael Wong (Gibson Dunn), and Robert Particelli and Eric Schweiker (Hewlett Packard). The following is an overview of that meeting:

The Government indicated to those present that the United States was investigating Hewlett Packard's (HP) allegations of an accounting fraud at Autonomy PLC and had spent significant resources investigating those allegations. The Government indicated it observed clear evidence of fraud and of Autonomy misleading their auditors. The Government emphasized the importance of making a wise charging decision, based on both the evidence and the ability of the government to meet its burden at trial.  It is the Government's view, based on the available information to date, that Deloitte was one of the first victims of the fraud and was lied to in several ways. The Government observed that in an accounting fraud case, the auditor's testimony is often highly relevant.  The Government noted that HP's claim against Deloitte is chilling Deloitte's desire to cooperate.  AUSA Reeves outlined the purpose of the meeting which was to explain that the Government has met with representatives from Deloitte and that they have expressed a willingness to cooperate; however, the representatives to date have not agreed to come to the US to testify. From the Government's perspective, HP is also a victim in this case. The Government wished to have a meeting to express its openness to listening to and its willingness to take into consideration HP's concerns about Deloitte's conduct and the basis for any claim.  The Government also wanted to discuss with HP the effects of their civil claims on the Government's ability to meet its burden at trial.

At this point in the meeting, the Government outlined categories of misrepresentations by Autonomy to Deloitte, including the backdating of documents, false and misleading statements provided by Autonomy management in response to allegations raised by Brent Hogenson, false and misleading statements to the FRRP (Financial Reporting Review Panel), and false and misleading statements regarding the commercial rationale for involving resellers. The Government also outlined steps Deloitte took after Brent Hogenson raised allegations.

HP representatives expressed HP's goal of seeing the true wrongdoers being brought to justice. In HP's view this was primarily Michael Lynch and Sushovan Hussain.  Mr. Particelli also indicated that the decision to file claims was made by HP's Board of Directors and that the HP legal representatives present at the meeting could only take

the information back to HP's management.  It was HP's view, that
despite some outstanding issues, that Deloitte had been materially
deceived. Mr. Particelli also indicated that he was unsure how
Deloitte's cooperation would hurt Deloitte. If Deloitte's testimony
included misrepresentations Autonomy made to Deloitte, it would make
HP's case against Deloitte weaker. The Government indicated that the
size of the claim and the associated risk may be the important factor
to Deloitte.  Mr. Particelli expressed HP's concerns that Deloitte
wanted a complete release from liability and indicated that HP wanted
Deloitte's cooperation in the investigation.  This led to a brief
discussion of Deloitte's cooperation to date, which included voluntary
interviews and their expression of a willingness to cooperate with the
Government's investigation.  It was HP's view that they could not give
up a $5 billion legal claim without Deloitte being fully cooperative
and the HP representatives expressed they were pleased to hear that
Deloitte had so far been cooperative. Michael Wong added that HP had
not previously had any insight into Deloitte's cooperation and due to
HP's lack of proffering ability had little insight into Deloitte's
actions. An HP representative further indicated that HP was still
concerned that if they pulled their claim Deloitte could also pull
back on their cooperation and decide to no longer cooperate with the
Government's investigation.  HP expressed that they were grateful for
gaining insight into Deloitte's current cooperation and wished to
refine their views before meeting again at the end of November.

FBI 100005502

# EXHIBIT E

On March 17, 2016, representatives from the United States Attorney's
Office (Assistant United States Attorney Robert Leach, AUSA Adam
Reeves) and from the Federal Bureau of Investigation (Special Agent
Keigan Park and SA Lester Kwok) met with representatives from Hewlett
Packard (John Schultz and Michael Wong) and Deloitte (Steve Ward and
James Farrell - Latham and Watkins). The following is an overview of
that meeting:

The Government indicated to those present that there was clear
evidence that a crime was committed which had the effect of defrauding
Hewlett Packard (HP). However, the Government also has an obligation
to be able to prove that beyond a reasonable doubt during a trial.
The purpose of the meeting was to discuss the Government's concerns
about its access to evidence, particularly access to Deloitte's UK
auditors. Thus far, Deloitte has engaged with the Government in
substantive ways, including speaking with the US Government despite
not having to do so. The Government wished to have the meeting to
ensure that the Deloitte witnesses could make statements without being
intimidated by ongoing civil litigation. The Government wanted to
ensure that it arrives at a where it can make the correct judgment and
ensure their superiors that the Government will have access to the
evidence needed to put on a solid trial. The Government was nearing a
point where it needed to finalize its decision about whether to go
forward, so it was in its best interest to make sure all of the issues
between Deloitte and HP were resolved, if possible. The Government
expressed its desire to stay out of a civil dispute between two
entities; however, it wanted to encourage the two sides to try to come
together for this meeting to see if a resolution regarding cooperation
from the Deloitte auditors was possible. The Government further
explained that it was only seeking the ability of witnesses to testify
truthfully, whether good, bad, or indifferent, without the pressure of
outside influences. The Government expressed its gratefulness that
both Deloitte and HP agreed to meet again.

Deloitte indicated that HP had sent over an agreement the night prior
to the meeting which had removed a lot of conditions placed on
Deloitte's cooperation. The agreement was now more in line with what
Deloitte had expected and believed the principle of the agreement was
based on Deloitte's good faith cooperation. The "fundamental divide"
which occurred due to a prior concept in the agreement was not in the
new version of the agreement.

HP expressed its gratefulness for the time and effort the Government
had spent investigating HP's allegations. From their perspective, it
was good to have the various issues looked at by responsible agencies
and if in fact something illegal occurred, it was HP's hope that those
responsible would be brought to justice. HP also understood the
importance of auditors' testimony in these types of cases. Since
Deloitte's cooperation was critical to any agreement, it was important
to HP that their cooperation could either be assessed or was
enforceable. Due to the timing, HP wished for access to Deloitte's

proffer to the Government, so that it could examine Deloitte's
cooperation with the investigation.
The Government indicated that it was willing, with Deloitte's
blessing, to share the "302s" (FBI's interview reports)from both of
the two prior meetings the Government had with the Deloitte witnesses.
This would provide an overview of the process and would allow HP to
understand what information the auditors were unaware of at the time
of their audit.  It would also illustrate the potential substance of
any future testimony and would serve the purpose of demonstrating
Deloitte's cooperation.

HP viewed this as a significant step forward and would help them find
a middle ground between trust and verification.  However, HP indicated
they would also like access to the content of a future meeting between
Deloitte and the Government.  After verifying Deloitte's cooperation
with the government, HP hoped that Deloitte and HP would sign a
settlement in their civil suit at the same time Deloitte signed a
cooperation agreement with the Government.  HP added that they
believed both themselves and Deloitte had been guarded due to the
civil litigation between the two companies.

Deloitte responded that there had been no "gamesmanship" on their
part.  Both HP and the Government had access to information which had
not been shared with Deloitte.  There was information which was not
shown to the auditors and therefore there were people at Deloitte who
may still think they got it right.  Deloitte added that they did not
know what they did not know.

HP indicated that if Deloitte needed more time to understand the facts
that HP could wait for a future attorney proffer regarding Deloitte's
cooperation with the Government.  HP was mindful that this was a
process.

Deloitte expressed that they never said they would not cooperate;
however, they found it easier to cooperate with the Government rather
than with a third party, like HP, who was involved with a civil
litigation against them.  Deloitte also needed to feel comfortable
with the cooperation agreement and its timing.

HP realized that it could not wait until seeing Deloitte's full
cooperation before an agreement was signed.

Deloitte indicated they wished to help the Government and thought they
could help HP as well.

HP indicated they were comfortable making a judgment on Deloitte's
willingness to cooperate based on access to the FBI's reports and with
a Deloitte attorney proffer.

At this point in the meeting, the Government stopped the discussion
and clearly expressed to both Deloitte and HP that there should be no
bargaining for the substance of any testimony.  It was important to

the Government that any agreement between HP and Deloitte rested on
Deloitte's good faith cooperation.  HP was entitled to judge that
cooperation based on Deloitte's willingness to meet with HP and the
Government.  The Government's focus was on the possible falsification
of financial statements and therefore was very much focused on the
audit process.  The questions that the auditors asked during the audit
were an essential part of the process; however, the case did not
involve how the auditor's opinion may or may not change given more
information.  The focus was more on if there was intent by Autonomy
management to deceive the auditors.

HP responded that it was not looking for Deloitte to change its
answers to the Government's questions.  HP simply wanted to verify
that the Government was getting answers which were consistent with
what HP would expect given the documents they had seen.  HP wanted to
ensure that Deloitte was cooperating in good faith.

The government agreed to show HP the Deloitte interview reports and
provide HP with the associated documents.

Deloitte wanted to make it clear that they were not resisting an
attorney proffer to HP.  They believed an agreement with HP was a deal
that should get done and indicated that regardless Deloitte was going
to cooperate with the Government's investigation.  Deloitte asked HP
to look to the Government to ensure their cooperation undertaken in
good faith.

The Government added that there was a need for both sides to eliminate
the burden on the witnesses.

Deloitte was comfortable with where HP and Deloitte were going in
terms of an agreement; however, they also needed to verify HP's
intentions and trust that an agreement would be done.

HP believed they would be able to tell quickly based on the reports
and the attorney proffer if Deloitte was acting in good faith.

Deloitte would not do anything different.  They would act in good
faith as always.

The Government added that they would appreciate finalizing any
resolution between Deloitte and HP prior to meeting with the Deloitte
witnesses so they were not burdened by the civil proceedings.

Deloitte reiterated that they were the least informed.  They did not
have access to any of the statements made by other witnesses and did
not have access to the information HP possessed.

HP reiterated that they were looking for Deloitte's good faith
efforts.  Their desire for an attorney proffer was simply a way in
which they could assess that Deloitte was going along in good faith
with the process.  They added that they envisioned a process similar

FBI 100005499

to a closing where the same time they signed a resolution with
Deloitte, Deloitte would sign a cooperation agreement with the
government.
[At this point in the meeting, a break was taken by Deloitte and HP so
that they could discuss amongst themselves that idea. ]

The Government asked if it was possible that Deloitte would proffer to
HP.  If the answer was yes, was it also possible to pick a date for a
"closing."

Deloitte indicated it do an attorney proffer to HP, but wanted to do
it in a way that HP found meaningful.  Deloitte believed it would be
able to do this sometime in the beginning of April.

The Government indicated it would attend if both of the parties wished
them to be present and added it would be best if everything could be
completed by April 18th.

# EXHIBIT F

Protected Materials subject to the January, 11, 2017 Protective Order in United States v. Hussain, Case No. CR 16-462 CRB

Case 3:18-cr-00577-CRB Document 252-6 Filed 01/26/23 Page 28 of 29

James J Farrell
Direct Dial +1 212 906 1215
james.farrell@lw.com

# LATHAM&WATKINS LLP

53rd at Third
885 Third Avenue
New York, New York 10022-4834
Tel +1 212 906 1200 Fax +1 212 751 4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | Moscow |
| Beijing | Munich |
| Boston | New Jersey |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Dusseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D C |
| Milan | |

April 28, 2016

Adam A. Reeves,
Assistant United States Attorney
Deputy Chief, Economic Crimes Section
United States Attorney's Office
Northern District of California
450 Golden Gate Avenue, 11th Floor
San Francisco, California 94102-3495

Re:     *In re Autonomy Investigation*

Dear Mr. Reeves:

Given the international scope of this matter, you, on behalf of the United States Attorney's Office for the Northern District of California (the "Office"), have requested a written assurance that my clients, Deloitte LLP, Richard Knights, Nigel Mercer, Lee Welham, and Thomas Murray, will continue to cooperate fully, and in good faith, with the Office in any prosecution that may result from its investigation into the facts and circumstances surrounding the financial reporting of Autonomy Corporation plc and its affiliates and subsidiaries (collectively "Autonomy") and Autonomy's acquisition by Hewlett-Packard Company in 2011. We are pleased to provide the assurance your Office has requested.

Deloitte LLP, and Messrs. Knights, Mercer, Welham, and Murray, agree to cooperate fully and in good faith with the Office, and with the Federal Bureau of Investigation, regarding all of the facts and circumstances of this case, including, without limitation, the facts and circumstances surrounding the financial reporting of Autonomy; Deloitte LLP's provision of auditing, review, and other services to Autonomy; and Autonomy's acquisition by Hewlett-Packard Company. In particular, Deloitte LLP, and Messrs. Knights, Mercer, Welham, and Murray, each agree that cooperation shall include, but is not limited to, the following:

a.     Meeting with the Office, in London, when requested to do so, and responding truthfully and completely to any and all questions with respect to the facts and circumstances of the case;

b.     Providing all documents, records, or other evidence in Deloitte LLP's or the individuals' possession, custody, or control concerning these subject matters when requested to do so by the Office;

US_FBI_E-00020625

April 28, 2016
Page 2

**LATHAM&WATKINS**LLP

    c.    As to the individuals, Messrs. Knights, Mercer, Welham, and Murray, appearing in person at any trial or other proceeding as requested by the Office and testifying truthfully and completely;

    d.    As to Deloitte LLP, producing a custodian of records to authenticate its business records at any trial or other proceeding as requested by the Office; and

    e.    Continuing to cooperate in good faith, in the manner described herein, even if Messrs. Knights, Mercer, Welham, or Murray decide to leave Deloitte LLP.

Deloitte LLP, Messrs. Knights, Mercer, Welham, and Murray, each hereby authorize their counsel, Latham & Watkins, to accept service by e-mail of any grand jury subpoena or trial subpoena compelling his appearance and testimony in the United States in connection with the Office's investigation of Autonomy and, in so doing, waives any right to be served with any such subpoena in compliance with the mutual legal assistances treaties between the United States and the United Kingdom. Messrs. Knights, Mercer, Welham, and Murray, each further agrees that, if subpoenaed in the manner set forth above, he will travel voluntarily to the United States to appear and testify at any proceeding, hearing or trial that may result from this investigation.

Nothing in this letter is a waiver by my clients of any applicable attorney-client privilege or other privilege.

Sincerely,

James J. Farrell
of LATHAM & WATKINS LLP

cc: Deloitte LLP
    Richard Knights
    Nigel Mercer
    Lee Welham
    Thomas Murray

NY\7658015 1