1
2
3
4
5

IN THE UNITED STATES DISTRICT COURT

6

FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8
USA,

9
                    Plaintiff,

10
            v.

11
MICHAEL RICHARD LYNCH,

12
                    Defendant.

Case No.   18-cr-00577-CRB-1

**ORDER GRANTING RULE 15 DEPOSITIONS**

13        There are two motions before the Court.  First, Defendant Chamberlain moves to

14  compel the trial attendance of Rob Knight, or, in the alternative, to compel his foreign

15  deposition under Federal Rule of Criminal Procedure 15.  See Chamberlain Mot. (dkt.

16  220).  The Court disagrees that it should compel Knight's trial attendance, however,

17  because Chamberlain satisfies the Rule 15 standard to compel Knight's deposition, the

18  Court GRANTS Chamberlain's motion on that basis.

19        Second, the Government moves to compel foreign depositions of its own under

20  Rule 15.  See Gov't. Mot. (dkt. 224).  The Government similarly meets the Rule 15

21  standard as to the six witnesses it seeks to depose—Marc Geall, Fernando Lucini, Ian

22  Black, Christopher Goodfellow, David Toms and Sean Blanchflower.  Accordingly, the

23  Court GRANTS the Government's motion.

24  **I.     BACKGROUND**

25        In 2011, Hewlett-Packard, Co. ("HP") acquired U.K.-based Autonomy Corporation,

26  plc ("Autonomy") for $11 billion.  See Superseding Indictment (dkt. 21) ¶¶ 8–10.  At the

27  time of the acquisition, Defendant Michael Lynch was Autonomy's Chief Executive

28  Officer, and Defendant Stephen Chamberlain was Autonomy's Vice President of Finance.

United States District Court
Northern District of California

Id. ¶¶ 4–5.

The superseding indictment alleges that Lynch and Chamberlain "engaged in a fraudulent scheme to deceive purchasers and sellers of Autonomy securities about the true performance of Autonomy's business." Id. ¶ 19.  In furtherance of this scheme, Lynch and Chamberlain allegedly artificially inflated revenues and made false and misleading statements to Autonomy's independent auditor, market analysts, and regulators.  See id. ¶ 22.  Lynch and Chamberlain are charged with Conspiracy to Commit Wire Fraud under 18 U.S.C. § 1349 (Count One); Wire Fraud under 18 U.S.C. §§ 1343 and 2 (Counts Two through Fifteen); and Conspiracy under 18 U.S.C. § 371 (Count Seventeen).  Id. ¶¶ 25–28, 31–32.  Lynch is also charged with Securities Fraud under 18 U.S.C. § 1348 and 2 (Count Sixteen).  Id. ¶¶ 29–30.  Trial for both Defendants is scheduled for March 2024.

## II.    LEGAL STANDARD

Under Federal Rule of Criminal Procedure 15(a), a party may "move that a prospective witness be deposed in order to preserve testimony for trial."  Fed. R. Crim. Proc. 15.  The Court may grant the Rule 15 motion "because of exceptional circumstances and in the interest of justice."  Id.

"Rule 15(a) allows the district court broad discretion in deciding whether to order depositions in a criminal case."  United States v. Olafson, 213 F.3d 435, 442 (9th Cir. 2000).  To determine whether "exceptional circumstances" exist for a particular witness, Courts generally consider whether (1) the witness is unavailable; and (2) the testimony is material.  See United States v. Zuno-Arce, 44 F.3d 1420, 1425 (9th Cir. 1995).  Most cases applying Rule 15 conclude that testimony is material if it is "highly relevant to a central issue in the case."  See United States v. Jinian, No. CR-09-1103-JSW EDL, 2010 WL 3910138, at *3 (N.D. Cal. Oct. 5, 2010) (quoting United States v. Drogoul, 1 F.3d 1546, 1556 (11th Cir. 1993)).  However, a conclusive showing of "unavailability" or "material testimony" is not required.  United States v. Omene, 143 F.3d 1167, 1170 (9th Cir. 1998); see also United States v. Rodriguez-Sifuentes, 637 F. App'x 1016, 1017 (9th Cir. 2016) ("[A] conclusive showing of unavailability is required only to use a deposition in a

1    criminal trial, not to allow the deposition to be taken so that the testimony can be preserved

2    for possible eventual use."); id. ("[A] defendant is not required to show materiality

3    conclusively in order to obtain and preserve testimony.").

4        "In deciding whether to grant a Rule 15(a) motion, the district court must consider,

5    among other factors, whether the deponent would be available at the proposed location for

6    deposition and would be willing to testify." Olafson, 213 F.3d at 442.  Courts can also

7    consider whether the proposed deposition testimony would be cumulative of testimony

8    from available witnesses.  See, e.g., United States. v. Hernandez-Escarsega, 886 F.2d

9    1560, 1569–70 (9th Cir. 1989).  Even where testimony would be overlapping, a court may

10   still find a Rule 15 motion to be warranted if that testimony is relevant to a critical and

11   disputed issue in the case.  See United States v. Hayat, No. 2:05-CR-0240 GEB DB, 2017

12   WL 6539610, at *5 (E.D. Cal. Dec. 20, 2017).

### III.    DEFENDANT'S MOTION

13       Defendant Chamberlain moves to compel the trial attendance of Rob Knight, or, in

14   the alternative, to compel his deposition testimony under Rule 15.  See Chamberlain Mot.

15   (dkt. 220).  The Government opposes Chamberlain's motion on both fronts, see Opp'n to

16   Chamberlain Mot. (dkt. 234), while Defendant Lynch does not oppose the motion at all,

17   see Lynch Opp'n (dkt. 232) at 1.

### A.    Motion to Compel Trial Attendance

18       Chamberlain first moves to compel the trial attendance of Rob Knight, a U.K.

19   resident who is currently employed by Deloitte LLP ("Deloitte"), citing a cooperation

20   agreement that the Government has with Deloitte and certain individual Deloitte

21   employees.  See Chamberlain Mot. at 1–3.  The Government argues that this cooperation

22   agreement does not apply to Rob Knight because he is not a party to the agreement.  See

23   Gov't Opp. at 1–2.  So, while the agreement does allow it to compel the attendance of

24   certain Deloitte employees, Rob Knight is not one of them.[1]  Id.

---

[1] That provision in the agreement reads as follows: "As to the individuals, Messrs.
Knights, Mercer, Welham, and Murray, appearing in person at any trial or other

The Court agrees. The cooperation agreement does not extend to or give the Government the authority to compel the attendance of Rob Knight. See Cooperation Agmt. Under the terms of the agreement, the Government can compel the trial attendance of Richard Knights (not to be confused with Rob Knight), Nigel Mercer, Lee Welham, Thomas Murray, and a custodian of records for Deloitte. See Cooperation Agmt. ¶¶ (c), (d). Rob Knight is not included in that list. And no provision in the agreement gives the Government the general authority to compel the trial attendance of any employee of Deloitte. See id.

Chamberlain argues that the Government has this authority based on Deloitte's promise in the agreement to cooperate "fully and in good faith" with the Government "regarding all of the facts and circumstances of this case." See Chamberlain Mot. at 9–10. However, Chamberlain's reading would make subsections (c) and (d) of the agreement— which specify which individual employees the Government can compel the attendance of—meaningless. The Court does not interpret Deloitte's promise to "cooperate fully and in good faith" with the Government's investigation as a far-reaching promise to compel the in-person trial attendance of any of its hundreds of thousands of employees. Nor does Deloitte attest in the agreement that it has the ability to make Knight (or any other employee not listed) appear in person at trial. For these reasons, the Court denies Chamberlain's motion to compel the in-person trial attendance of Rob Knight.

**B.    Motion to Compel Rule 15 Deposition**

Chamberlain moves in the alternative to compel Knight's deposition under Federal Rule of Criminal Procedure 15. Chamberlain contends that Knight is both unavailable and that his testimony is material, which the Court will address in turn.

**1.    Unavailability**

Showing that a witness is beyond the subpoena power of the Court and unwilling to voluntarily appear at trial is sufficient to establish unavailability under Rule 15. See

---

proceeding as requested by the [Government] and testifying truthfully and completely." See Cooperation Agmt. (dkt. 220-2).

United States District Court
Northern District of California

Rodriguez-Sifuentes, 637 F. App'x at 1017 (citing United States v. Medjuck, 156 F.3d 916, 920 (9th Cir. 1998)).  Knight, a citizen and resident of the United Kingdom, is beyond the subpoena power of the Court, and Knight's counsel has not agreed to make his client available for trial, stating that he does not "see justification for Knight's testimony."  See Chamberlain Mot. at 11–12.  The Government does not dispute that this meets the standard for unavailability.

### 2.  Materiality

Knight was a senior audit manager at Deloitte, who was "responsible for auditing Autonomy through at least the end of 2009."  Id. at 1–2.  Chamberlain argues that Knight's testimony is material to show that Chamberlain did not knowingly hold back information from auditors.  He points to three specific instances.

First, Chamberlain contends that Knight's testimony refutes the Government's allegation that he acted with criminal intent—and supports his defense that he acted in good faith—in attributing a portion of the costs associated with Autonomy's hardware resales as Sales and Marketing expenses.  Id. at 6–8.  Specifically, Chamberlain asserts:

- Knight's testimony will show that he reviewed audit evidence from EMC, a company from which Autonomy purchased hardware.  See Chamberlain Mot., Exs. 4, 5.

- Knight previously testified that he was "happy with" the way Autonomy allocated costs of hardware sales.  Id. Ex. 3 at 32.

- Knight previously testified that the hardware sales did not need to be disclosed as a separate operating segment.  Id. Ex. 3 at 66–67.

Second, Chamberlain contends that Knight's testimony refutes the allegation that he acted with criminal intent "in attempting to capitalize costs of [salaries]" by attributing such costs to the development of Autonomy's Structured Probabilistic Engine ("SPE")—and that Knight's testimony will instead show that Chamberlain was honest with Deloitte and relied on Deloitte's judgment.  Id. 8–9.  Chamberlain points to:

- Knight's email to Richard Knights and Lee Welham regarding development costs of SPE, stating that he was "exploring" the "point on prior period [quarter] capitalisation" with the National Accounting & Audit Technical Team ("NAA"). <u>Id.</u> Ex. 7.

- Knight's report to Lee Welham that "[d]iscussions were held between the audit team and Elizabeth Crispin of NAA," and Knight's explanation of the proper accounting for the issue.  <u>Id.</u> Ex. 6.

Third, and finally, Chamberlain claims that Knight's testimony can cast doubt on the assertion that Chamberlain misled auditors by not disclosing a connection between Microlink (a company Autonomy purchased) and related entities.  <u>See id.</u> at 9. Chamberlain makes this claim based on the following evidence:

- Knight's request for information from Chamberlain regarding the connection between the entities.  <u>See id.</u> Ex. 8.

- Knight's involvement with Deloitte's own investigation into the connection between the entities. <u>See id.</u> Exs. 9, 10

The Court finds that Knight's testimony is certainly material.  As presented, his testimony refutes core allegations in the Government's charges against Chamberlain.  The Government argues that Chamberlain has failed to demonstrate the extraordinary circumstances necessary to compel Knight's deposition because (1) Lynch and Hussain decided not to call Knight in prior proceedings; (2) Knight's testimony is cumulative given five other available Deloitte witnesses; and (3) Knight's statements are not "particularly exculpatory."  <u>See</u> Opp'n to Chamberlain Mot. at 5.

These arguments all fail.  Whether alleged co-conspirators called Knight in prior proceedings has no bearing on whether his testimony is "highly relevant to a central issue" for Chamberlain's particular defense.  Although the Government may call several other Deloitte witnesses, Chamberlain has sufficiently demonstrated that Knight has unique knowledge of events pertinent to his defense, including of important conversations that the other Deloitte witnesses were not part of.  Lastly, the Government's argument that the

statements are not "particularly exculpatory" is wrong on the facts and the law.  If Knight's testimony negates Chamberlain's criminal intent, that could make it exculpatory.  That the evidence could be exculpatory makes it material under Rule 15.  See Omene, 143 F.3d at 1170 (conclusive showing of materiality not required); Jinian, 2010 WL 3910138, at *3 (testimony is material if it "will yield 'what may be crucial exculpatory testimony'" (emphasis added) (citation omitted)).

The Government's assertions mostly boil down to an argument that Knight's testimony is cumulative of other available Deloitte witnesses—yet the Government fails to explain why the specific testimony described above would, in fact, be cumulative.  The Government notes that Richard Knights and Lee Welham received some of Knight's emails, but those witnesses are not similarly situated to speak about the underlying analysis that Knight performed and described in those emails.  See Chamberlain Mot. at 6 (seeking Knight's testimony regarding "the review that he conducted; not the testimony of others who cannot describe th[at] work").  In addition, as Chamberlain explains, Knight is uniquely positioned given his seniority (and thus control over final decision-making), as well as being the most senior auditor at Deloitte who is not "alleged to have committed misconduct in the connection with the audit of Autonomy."  Id.  Accordingly, the Court does not believe that Knight's testimony would be cumulative of available Deloitte witnesses.

The Court finds that Chamberlain has established extraordinary circumstances warranting Rob Knight's deposition.

### 3.     Interest of Justice

The Court also finds that it is in the interest of justice to compel Knight's deposition.  It would be unfair to limit Chamberlain to testimony from Deloitte witnesses who are cooperating with, or who will testify favorably for, the Government, when there is another Deloitte witness who Chamberlain worked with directly and who may support his defense that Deloitte was aware of and validated his accounting judgments.

Therefore, the Court GRANTS Chamberlain's motion to compel the deposition

testimony of Rob Knight under Rule 15(a) of the Federal Rules of Criminal Procedure.

### C.      Letters of Request

Counsel for Knight stated that Knight does not consent to voluntarily providing deposition testimony.  See Decl. of Lincenberg ¶ 2.  Chamberlain acknowledges that, based on this response, the Court will likely need to issue a letter of request to compel Mr. Knight's deposition.

Given the considerations discussed above—including that Knight's testimony is highly material and necessary for Chamberlain's defense—his unwillingness to voluntarily appear for a deposition does not change the outcome of the Court's Rule 15 analysis. However, the Court ORDERS Chamberlain to promptly submit letters of request that will allow this Court to obtain judicial assistance from the U.K. to depose Knight.  During the November 3 hearing, the Government committed to not be an impediment in this process, and the Court expects the Government will remain true to this commitment.

## IV.     GOVERNMENT'S MOTION

The Government moves to compel foreign depositions of six witnesses under Rule 15(a): Marc Geall, David Toms, Fernando Lucini, Sean Blanchflower, Christopher Goodfellow, and Ian Black.  See Gov't Mot. at 1.  The Government contends, and Defendants Lynch and Chamberlain both dispute, that the need for these witnesses is an exceptional circumstance and that their testimony would not be cumulative of other available witnesses.  Id. at 9–10.  Defendants argue that the Court should deny the Government's request regardless due to the logistical and constitutional concerns underlying these depositions.

### A.      Unavailability

Chamberlain (though not Lynch) argues that the Government fails to establish unavailability for these witnesses because the Government does not "outline the efforts by which it has attempted to secure the witnesses' presence at trial."  Chamberlain Opp'n at 2. That is not true: The Government submitted a declaration explaining the communications it had with counsel for each witness.  See Leach Decl. (dkt. 225-1).  With this declaration,

along with the consistent information in its briefing, the Government sufficiently shows that the six foreign witnesses are beyond subpoena power of the court and are unwilling to accept a trial subpoena to come to the United States to testify. "This is sufficient for Rule 15(a) purposes." United States v. Rodriguez-Sifuentes, 637 F. App'x 1016, 1017 (9th Cir. 2016) (citing United States v. Medjuck, 156 F.3d 916, 920 (9th Cir.1998)).

### B.    Materiality

In response to the Court's order for supplemental briefing, the Government put the six witnesses that it seeks to depose in the following order of importance: (1) Marc Geall, (2) Fernando Lucini, (3) Ian Black, (4) Christopher Goodfellow, (5) David Toms, and (6) Sean Blanchflower. See Order for Supp. Br. (dkt. 246); Gov't Reply at 8. The Court discusses whether the Government has established materiality for each witness in that same order.[2]

### 1.    Marc Geall

Marc Geall was an analyst at Autonomy starting in 2008 who shared an office with Hussain, next to Lynch's. See Gov't Mot. at 2. The Government contends that Geall's testimony is material because it will help "establish that false and misleading statements on Autonomy's investor relations board are attributable to Lynch and Chamberlain; that Lynch used strong-arm tactics with analysts indicative of consciousness of guilt; and that Lynch's public statements about SPE were a ruse to conceal hardware expenses." Id. at 9. Specifically, Geall will purportedly testify that:

- He learned of a potential, large hardware contract in the third quarter of 2009, and after correlating the size of the hardware contract to high marketing costs in the third quarter of 2009 passed off as SPE marketing, he grew concerned SPE

---

[2] The parties have submitted no authority indicating that the Court must find the witnesses to have material testimony as to both Lynch and Chamberlain to meet the Rule 15 standard. To the contrary, the Court understands the materiality standard as a broader question of whether the witness's testimony is highly relevant to a central issue at trial— notwithstanding which defendant that central issue relates to.

United States District Court
Northern District of California

was being used to hide hardware sales. <u>Id.</u> <u>Hussain</u> Trial Transcript Tr. (No. 16-cr-462) at 855; <u>id.</u> at 857–864; <u>id.</u> at 873–874; <u>id.</u> at 904–905.

- Lynch and Hussain then gave him false and misleading answers relating to SPE to pass on to investors. <u>Id.</u> at 875, 891–92.

- He attended a meeting where Lynch pressured, and ultimately induced, a JPMorgan analyst to soften his negative research of Autonomy. <u>Id.</u> at 902–03.

- He left Autonomy to become an analyst at Deutsche Bank, and even with his experience at Autonomy, he was unable to discern from Autonomy's public reports that it was selling millions of dollars in hardware. <u>Id.</u> at 921–23.

Lynch does not dispute that the above testimony is highly relevant to a central issue in the case.[3] <u>See</u> Lynch Opp'n at 5–8. Rather, Lynch argues that the Court should deny Geall's deposition because his testimony is cumulative of other financial analysts already available to testify. <u>Id.</u>

The Court disagrees. In the Court's view, Geall provides both a unique perspective and unique, highly relevant information: Geall worked in the same room with Hussain and close to Lynch. After being advised of a large hardware contract in the fall of 2009, Geall alone deduced the alleged fraud, and Lynch allegedly gave Geall the false statements to pass onto investors. Geall is uniquely positioned to speak about what he could glean about the company's financials after leaving Autonomy—where he had access to this first-hand information—and working as analyst with only public reports to rely on. Lynch does not contend that any of this specific testimony is cumulative. <u>Id.</u>

The Court finds that Geall is unavailable, and that his testimony is highly relevant to a central issue in the case and non-cumulative. Accordingly, the Government has established exceptional circumstances warranting his testimony under Rule 15.

_____

[3] Lynch points to one piece of Geall's testimony that he believes to be irrelevant, misleading, and prejudicial. <u>See</u> Lynch Opp'n at 6–7. If he is correct, the Court will not permit that testimony to be admitted at trial. But that single piece of testimony does not erase the highly relevant nature of the rest of Geall's testimony, which Lynch does not dispute and which the Court bases its materiality finding on.

United States District Court
Northern District of California

### 2.     Fernando Lucini

Fernando Lucini was the Chief Architect at Autonomy.  Gov't Reply at 9.  The Government contends that his testimony is material because one of the means and methods of Defendants' alleged scheme to defraud was to "artificially inflat[e] revenue through reciprocal or roundtrip transactions," and Lucini has knowledge regarding some of those reciprocal transactions.  See Gov't Mot. at 9.  Specifically, Lucini may testify about:

- Autonomy's lack of excess e-Discovery work from 2008 to 2011, during which time Autonomy entered into a deal to outsource e-Discovery work.

- Autonomy's transactions with a reseller, FileTek, in which Autonomy allegedly purchased software that it had no use for "merely" to enable FileTek to recognize revenue.

- Autonomy's failed attempts to license software to the Vatican, which led the company to backdate an $11 million contract to license software to reseller MicroTech, which the parties understood MicroTech "was not actually on the hook for paying."

- Autonomy's transactions with reseller DiscoverTech, which involved no economic substance and led Autonomy to backdate another contract.

- Autonomy doing "very little work" to develop and market SPE, even though Lynch said otherwise.

See id. at 5 (citing Rule 29 Order (No. 16-cr-462, dkt. 419) at 7–16, 21).

Again, Lynch disputes materiality not on relevance grounds, but because he asserts that Lucini's testimony is cumulative.  In response, the Government gives several reasons why Lucini's testimony is not cumulative including: (1) unlike other witnesses, Lucini was in regular contact with Lynch, (2) unlike any other witness, he has knowledge about the capabilities and limits of the SPE product launched in the third quarter of 2009, and (3) he was tasked with assessing the value of software ultimately purchased from reseller, DiscoverTech, and could "think of no legitimate reason for Autonomy purchasing DiscoverEngine software."

11

While other engineers are slated to testify, the testimony that the Government alleges Lucini will provide is unique.  He is not just commenting on the transactions that occurred while he worked at Autonomy, rather he is the one who worked closely with Lynch, who has direct knowledge about the capabilities and limits of SPE, and who assessed the value of the software purchased from DiscoverTech.  Lynch has not pointed to any witnesses who will provide this particular testimony.  Moreover, as the Court noted at the November 3 hearing, even if some of Lucini's testimony does overlap with other witnesses, the jury may find Lucini more credible given his direct involvement on these deals, which also suggests to the Court his testimony is not cumulative.

The Court finds that Lucini's testimony is material; his testimony is highly relevant to central issues in the case, and it is non-cumulative.  Thus, because Lucini is also unavailable, the Government has established an extraordinary circumstance warranting his testimony.

### 3.    Ian Black

The scope of Ian Black's testimony is limited, but material.  Black was Autonomy's Head of Global Operations.  Gov't Mot. at 7.  The Government asserts that Black will testify as to statements made by Lynch, and his demeanor, on the day of the HP acquisition, which bear significantly on Lynch's mental state.  Id.  For example, one statement Black heard Lynch make was about the limited due diligence being provided to HP.  Id.  Black will also testify about an instance where he saw Autonomy hard drives being shredded, testimony which is highly relevant to the conspiracy alleged in Count Seventeen.  Id.

Lynch argues that Black's testimony is irrelevant and prejudicial because the shredding he saw was "routine," Black was not involved in due diligence so he could not infer anything from Lynch's statement, and that Lynch's demeanor on the day of the acquisition is "meaningless."  Lynch Opp'n at 7.  These may be proper cross-examination subjects, but in the Court's view they do not make Black's testimony any less relevant.

Finally, Lynch does not assert that Black's testimony is cumulative, and the Court

United States District Court
Northern District of California

12

does not believe it to be.  For example, Black is the only witness listed who can give an account of documents being destroyed in May 2012, as Lynch was departing Autonomy.

Because Black's testimony is both material and non-cumulative, the Court finds that the Government has established exceptional circumstances warranting this witness's deposition.

### 4.    Christopher Goodfellow

Christopher Goodfellow was another engineer at Autonomy who testified in the Hussain trial.  Based on that prior testimony, the Government asserts that he will provide material testimony bearing on the allegation that Defendants carried out a scheme to defraud by artificially inflating Autonomy's revenue through transactions without economic substance.  Specifically:

- Autonomy's lack of use for FileTek software that it purchased for tens of millions of dollars.
- Autonomy's failed efforts to sell software to the Vatican.
- A transaction in the fourth quarter of 2010, where Autonomy recognized a sale of $6 million in hardware to Video Monitoring Services ("VMS") but never delivered much of that hardware.
- Autonomy's transactions with reseller DiscoverTech, which lacked economic substance.

See Gov't Mot. at 6 (citing Rule 29 Order at 10–16).

Again, Lynch does not take issue with the relevance of this information, but rather Goodfellow's purported overlap with other witnesses.  Lynch is correct that many of these subjects may be covered by other witnesses, like Lucini.  But that does not in itself make Goodfellow's testimony on these topics cumulative—after all, the Court permitted both Lucini and Goodfellow to testify on these subjects at the Hussain trial.  Because the events that Goodfellow may testify to are highly material and likely to be disputed by Defendants, having multiple witnesses to rely on may increase credibility with the jury.  Cf. United States v. Hayat, No. 2:05-CR-0240 GEB DB, 2017 WL 6539610, at *5 (E.D. Cal. Dec. 20,

2017) (holding that four witnesses testifying to petitioner's alibi was not cumulative because "the more witnesses" testifying to such "the more weighty that testimony may be").  At the time of trial, Court can reevaluate Goodfellow's testimony on these subjects to determine if it is unduly cumulative.  But at this time, given the high importance of these specific events, the Court finds that Goodfellow's testimony on these subjects, while overlapping, is not obviously cumulative.

Moreover, there is one highly relevant topic that only Goodfellow will testify about. According to the Government (and undisputed by Lynch), Goodfellow is "the only person with significant knowledge about the 'repurposed' hardware Autonomy claimed to have delivered to VMS, a significant transaction that helped Autonomy achieve its year-end 2010 results."  Gov't Reply at 10.  This testimony about a specific instance of Autonomy allegedly improperly recognizing revenue, which Lynch has not attested any other witness can provide, is highly relevant and convinces the Court that Goodfellow's testimony in this regard is non-cumulative.

The Court finds that Goodfellow's testimony will be highly relevant to central issues in the case, and that none of the subjects about which Goodfellow may testify are obviously cumulative at this time.  Because Goodfellow is also unavailable, the Court finds that his deposition is warranted under Rule 15.

### 5.    David Toms

David Toms worked as a market analyst covering Autonomy.  See Hussain Trial Tr. at 5251.  The Government contends that Toms' testimony is material because he will "attribute false and misleading statements to the market about Autonomy's hardware practices directly to Lynch."  See Gov't Mot. at 9.  Specifically, Tom will testify that:

- During an earnings call, Toms noted that Autonomy's balance sheet with $10 million in stock was "unusual," and that Lynch falsely attributed it to an appliance rather than hardware alone.

- Toms wrote an analyst report speculating that Autonomy's revenue was "potentially flattered by hardware sales," which is information that would

14

1    have been relevant in analyzing Autonomy's financials.

2    See Gov't Mot. at 4 (citing Hussain Trial Tr. at 5253–5259, 67–71).

3    Lynch does not dispute that this subject matter is relevant.  Lynch does, however,

4    argue that Toms' testimony is cumulative.  First, because the earnings call was recorded,

5    Lynch claims that deposition testimony narrating it is unnecessary.  See Lynch Opp'n. at 6.

6    Second, Lynch asserts that there are other financial analysts who covered Autonomy

7    during the same period who are already scheduled to testify, including about hardware

8    sales.  Id.

9    As explained prior, that other witnesses may testify about similar events does not

10   necessarily make Toms' testimony cumulative.  See United States v. Hayat, No. 2:05-CR-

11   0240 GEB DB, 2017 WL 6539610, at *5 (E.D. Cal. Dec. 20, 2017).  Rather, given his

12   active role during the earnings call wherein Lynch responded to his observation about

13   Autonomy's balance sheet, Toms may come across as the most credible to the jury if he

14   testifies that he was surprised by Autonomy's hardware sales.  At this time, the Court does

15   not find Toms' testimony in this regard to be cumulative.

16   In addition, Toms' testimony indisputably does not overlap with other witnesses in

17   at least one instance: Only Tom can explain what he meant by his statements in the 2011

18   report he authored, including that Autonomy's revenue was "potentially flattered by

19   hardware sales."  And this testimony may be needed, according to the Government, to

20   refute the Defendants' argument that the report indicates the market knew that Autonomy

21   was selling hardware.  See Gov't Reply at 10.

22   Accordingly, the Court finds that Toms' testimony is not cumulative.  Because

23   Toms' testimony indisputably meets the materiality standard otherwise, and because he is

24   unavailable, the Court concludes that there are extraordinary circumstances warranting his

25   deposition.

26   **6.    Sean Blanchflower**

27   Sean Blanchflower was another engineer at Autonomy.  See Gov't Mot. at 6.  The

28   Government similarly asserts that his testimony is material because, as in the Hussain trial,

United States District Court
Northern District of California

Blanchflower may testify about transactions in which Defendants artificially inflated Autonomy's revenue through reciprocal or roundtrip transactions. See Gov't Mot. at 9. Specifically, that:

- Autonomy had no use for the FileTek software it purchased.
- Autonomy failed to sell software to the Vatican.
- SPE was not "a radical technology" as touted by Lynch.
- Autonomy attributed millions of dollars in costs to SPE development, even though Blanchflower only observed a maximum of $50,000 in costs.

See Hussain Trial Tr. at 1115–29, 35–37.

Lynch does not dispute that the above testimony is highly relevant to central issues in the case. Again, Lynch's primary objection is that Blanchflower's testimony is cumulative of that of other witnesses—specifically, that of Lucini, Goodfellow, and other engineers on the Government's witness list. Lynch Opp'n at 5–6. The Government insists Blanchflower's testimony is not cumulative because he was in a unique position to observe Autonomy's attempts at the Vatican sale, and he can explain why the SPE was not significantly different from software Autonomy already acquired.

The Court's analysis for Blanchflower largely parallels its analysis for Goodfellow. Lynch is right that there is overlap with Goodfellow and Lucini on many of the topics that Blanchflower may testify about, however, that does not automatically make his testimony those topics cumulative. Notably, the Court permitted all three of these engineers (Lucini, Goodfellow, and Blanchflower) to testify on these subjects at the Hussain trial, in addition to many of the other engineers Lynch points to as having overlapping testimony. Which means, at that time, the Court did not find such testimony from Blanchflower to be unduly cumulative of the others—whether that was because of Blanchflower's unique perspective on the events or because Defendants were likely to vigorously dispute the interpretation of these transactions and thus the Court permitted additional testimony for credibility purposes. Cf Hayat, 2017 WL 6539610, at *5. Whatever the exact reason, the Court finds here, too, that Blanchflower's purported testimony—while on similar subjects to other

witnesses—is not necessarily cumulative.[4]

In addition, there are subjects on which Blanchflower appears to be uniquely fit to testify about, including his knowledge of SPE.  Lynch does not point to any available witnesses who will provide similar testimony regarding SPE's novelty (or lack thereof) and the development costs observed for SPE.

Overall, the Court does not find Blanchflower's purported testimony to be cumulative of other witnesses. Therefore, as for the prior five witnesses, the Court finds that the Government has establish an exceptional circumstance warranting Blanchflower's deposition under Rule 15.

### C.     Interest of Justice

Defendants argue that the interest of justice weighs against permitting these depositions, pointing largely to the logistical burdens entailed with fitting in these ten foreign depositions before trial.[5]  See Lynch Opp'n at 10; Chamberlain Opp'n at 4.  They also mention the difficulty of presenting this video evidence to the jury.  Id.

The Government notes that these are concerns common to most foreign depositions—not unique grounds for denying the Rule 15 motion here, "particularly when the parties negotiated for a scheduling order contemplating foreign depositions."  Gov't Reply at 3.  The Government also cites cases where courts have permitted large numbers of foreign depositions under Rule 15, including in situations where—unlike here—the depositions sought would take place in different countries.  See Korolkov, 870 F. Supp. at 65 (granting government's motion to depose seven witnesses in Jakarta and Buenos Aires); see also Drogoul, 1 F.3d at 1557 (thirteen witnesses in Italy); United States v. Gifford, 892 F.2d 263, 265 (3d Cir. 1989) (ten witnesses in Belgium).

Defendants' arguments for why these depositions are not in the interest of justice are, as the Government points out, generalized complaints about the logistics of

---

[4] The Court will, of course, assess whether the testimony is unduly cumulative at the time of trial.
[5] This number includes Rob Knight's deposition and the three foreign depositions the parties have stipulated to.

completing numerous depositions using Rule 15.  See Lynch Opp'n at 10.  Such global arguments about Rule 15 do not present compelling reasons for why the interest of justice weighs against permitting these specific depositions, and neither does the number of depositions at issue, which is well within the range found reasonable by other courts in simpler cases.  By contrast, the importance of these witnesses to central issues in the case—which is also evidenced by the fact that five of the six of them testified in the Hussain trial—tips the interest of justice in favor of granting the depositions to ensure the testimony is available for this trial too.

### D.    Obtaining Testimony

The Court asked the Government whether these six witnesses would voluntarily appear for deposition in the U.K. or whether additional process would be required.  See Order for Supp. Br.  The Government stated that four of the six witnesses have not agreed to voluntarily appear for a deposition: Marc Geall, Fernando Lucini, Christopher Goodfellow, and Sean Blanchflower.  See Gov't Reply at 8.

For the same reason that it did not change the Rule 15 conclusion for Rob Knight, it does not for these four witnesses.  These unavailable witnesses have material testimony that bears on critical issues in the case, which the Court believes warrants the remedy that Rule 15(a) provides despite the additional burden of process.  That is particularly true here because the Court need not go through the Hague Convention to compel the witnesses to provide testimony.  Rather, the Government can submit a request for mutual legal assistance to the United Kingdom. See Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters ("MLAT"), Article 8. The Court ORDERS the Government to submit such requests promptly.

## V.    LYNCH'S PRESENCE AT THE FOREIGN DEPOSITIONS

Lynch, who is currently confined to a home in San Francisco, requests that he be

United States District Court
Northern District of California

18

permitted to physically attend any depositions that the Court compels under Rule 15.[6]  See Lynch Opp'n at 10–12.  An out-of-custody defendant has the right to be present at a deposition for his case, except as authorized by Federal Rule of Criminal Procedure 15(c)(3).  Fed. R. Crim. P. 15(c)(2).  Under Rule 15(c)(3), "the deposition of a witness who is outside the United States may be taken without the defendant's presence if the court makes case-specific findings" of, as relevant here, the following:

> (A) the witness's testimony could provide substantial proof of a material fact in a felony prosecution;
>
> (B) there is a substantial likelihood that the witness's attendance at trial cannot be obtained;
>
> (C) the witness's presence for a deposition in the United States cannot be obtained;
>
> (D) the defendant cannot be present because: . . . . (iii) for an out-of-custody defendant, no reasonable conditions will assure an appearance at the deposition or at trial or sentencing; and
>
> (E) the defendant can meaningfully participate in the deposition through reasonable means.

Fed. R. Crim. P. 15(c)(3).

For the reasons described in the materiality and unavailability analysis, see supra Section IV., the Court finds that (A), (B), and (C) are satisfied with respect to the Government's requested witnesses.  The Court addresses the remaining two factors—whether reasonable conditions will assure Lynch's appearance at trial and whether Lynch can meaningfully participate in the depositions through reasonable means—below.  See Fed. R. Crim. P. 15(c)(3)(D)–(E).

### A.    Assuring Trial Appearance

Lynch claims that there are reasonable conditions to assure that, should he go to the U.K. for these depositions, he will return to face trial in San Francisco.  See Lynch Opp'n at 12.  Specifically, Lynch proposes that the private security company currently guarding

---

[6] This section has no bearing on Chamberlain, who may attend any of the ordered depositions if he so chooses.

United States District Court
Northern District of California

him also guard him "during depositions and ensure his return to San Francisco." Id.  He also says he will comply with any other conditions the Court imposes. Id.  The Government does not think this is sufficient to ensure his presence at trial because it cannot maintain legal custody of him in the United Kingdom. See Gov't Reply at 4 ("[T]he Federal Bureau of Investigation, which would have custody of Defendants, has no authority outside of the United States to detain and transport an individual." (citation omitted)).  In addition, the Government cites the Court's finding that Lynch's flight from prosecution would be "almost a certainty." Id. (citation omitted).

The Court agrees with the Government.  Once Lynch leaves the United States, and the FBI loses its authority to detain him, neither the security company, nor any additional precaution, can ensure that Lynch will return to San Francisco to face trial.  Courts have found the same in instances where a defendant's pretrial release was conditioned on surrender of his passport. See United States v. Suzuki, No. 215CR00198GMNNJK, 2021 WL 4245354, at *5 (D. Nev. Sept. 17, 2021); see United States v. Tao, No. 19-20052-JAR, 2021 WL 5205446, at *8 (D. Kan. Nov. 9, 2021).  Lynch staunchly fought extradition; now that he is here, the Court will not take a gamble on his presence at trial.

**B.     Meaningful Participation**

Lynch contends that he cannot meaningfully participate in the depositions remotely for two main reasons: (1) because he is "hearing-impaired and relies on reading lips,"; and (2) because of his technical expertise, cross-examination would be impossible unless he can consult in person with his attorneys. See Lynch Opp'n at 12.  In response, the Government says it will do whatever it can "to accommodate Lynch's hearing impairment," though it asks Lynch to proffer evidence that he cannot hear without reading lips.  In addition, the Government points to cases in which courts have found that "depositions conducted by two-way videoconference under these circumstances satisfy Rule 15 and the Constitution," including for means of cross-examination. See Gov't Reply at 6 (citing United States v. Tao, No. 19-20052-JAR, 2021 WL 5205446, at *9 (D. Kan. Nov. 9, 2021); Suzuki, 2021 WL 4245354, at *5; United States v. Mothafar, No. 3:20-CR-

1    00506-HZ, 2021 WL 5605185, at *3 (D. Or. Nov. 29, 2021)).

2         The Court finds that Lynch's alleged hearing impairment is not a barrier to his

3    meaningful participation in a video deposition.  First, Lynch has not put forth any evidence

4    beyond bare assertions that he relies solely on lip reading to communicate.  Second, even if

5    he does, the Court believes there are reasonable accommodations to ensure his

6    understanding of the deposition, which do not involve him traveling to attend in person—

7    for example, by adding closed captioning to the video stream, or by ensuring that there are

8    cameras focused on each speaker's face to allow for lip reading.  The Court also notes that

9    Lynch raised no objection regarding his ability to understand the November 3 hearing over

10   Zoom.

11        The Court does not find Lynch's technical expertise to be a barrier to meaningful

12   participation either.  Lynch can communicate remotely with his counsel, who will be

13   physically present at the deposition, both during the deposition—such as through email or

14   instant message—as well as during breaks.  Lynch can also have one of his lawyers

15   physically with him in San Francisco to make this remote communication easier.  The

16   Court does not believe that Lynch's communication with his counsel will be noticeably

17   hampered because it occurs over a laptop or phone, rather than in person.  Courts have

18   found remote, two-way video depositions sufficient to allow defendants to meaningfully

19   participate in cross-examination in other criminal cases, and the same conclusion applies to

20   Lynch.

21        C.    **Constitutional Concerns**

22        Lynch argues that granting the Government's motion would violate both his

23   Confrontation Clause Rights under the Sixth Amendment, and his Due Process Rights

24   under the Fifth Amendment.  Neither of his arguments prevails.

25        Lynch argues that his Sixth Amendment rights will be violated by the Government

26   taking these depositions abroad without him physically present, as well as the

27   Government's presentation of the videotaped testimony to the jury.  See Lynch Opp'n at

28   13–15.  The Supreme Court has explained that the major purposes of the Confrontation

United States District Court
Northern District of California

Clause are: "(1) ensuring that witnesses will testify under oath; (2) forcing witnesses to undergo cross-examination; and (3) permitting the jury to observe the demeanor of witnesses." United States v. Sines, 761 F.2d 1434, 1441 (9th Cir. 1985) (citing California v. Green, 399 U.S. 149, 158 (1970)).  Contrary to Lynch's assertions, "[a]ll three of these purposes [are] fulfilled when [a witness's] videotaped deposition [is] taken with [the defendant's] attorney present."  Id.  Because the Government's requested depositions will comply with that format, as described in the Court's Rule 15(c)(3) analysis—videotaped, with the witness under oath and Lynch's attorney present—the depositions do not offend Lynch's Sixth Amendment rights.  In any event, Lynch's Sixth Amendment concerns are "premature" because the "mere taking of depositions" does not threaten his Sixth Amendment rights.  See Drogoul, 1 F.3d at 1554–55.

On top of these Sixth Amendment concerns, Lynch asserts that his Fifth Amendment due process rights are also undermined by the Government's Rule 15 motion. Lynch Opp'n at 15.  Specifically, Lynch argues that the depositions will require him to "preview defenses to the government" well before trial begins, which would give the government "an extraordinary opportunity to rebut defense arguments."  Id. at 3, 15. Lynch cites no authority for the proposition—and in none of the cases discussed in this order did courts hold—that Rule 15(a) depositions violate due process.  Given that Lynch's argument would stand true for any Rule 15 depositions taken by the Government in advance of trial, the lack of any cites to legal authority in support of his position is fatal. This Court will not create new law that would invalidate a Federal Rule of Criminal Procedure in most instances for its use.  Therefore, the Court rejects Lynch's argument that these depositions violate the Fifth Amendment, too.  There are no valid constitutional concerns with the Government's requested foreign depositions; the Court's conclusion that the depositions are warranted under Rule 15 stands.

## VI.    CONCLUSION

For the foregoing reasons, the Court GRANTS Chamberlain's motion to compel Rob Knight's deposition under Rule 15.  The Court ORDERS Chamberlain to promptly

submit letters of request that will allow this Court to obtain judicial assistance from the United Kingdom to depose Knight.

The Court also GRANTS the Government's motion to compel foreign depositions under Rule 15 for Marc Geall, Fernando Lucini, Ian Black, Christopher Goodfellow, David Toms, and Sean Blanchflower.  The Court ORDERS the Government to promptly submit requests for mutual legal assistance to the United Kingdom for the witnesses who have not agreed to voluntarily appear at a deposition.

Lastly, the Court DENIES Lynch's request to appear at any of these depositions in person.

**IT IS SO ORDERED.**

Dated: November 15, 2023

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California