PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email:  Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 18-577 CRB |
| Plaintiff, | UNITED STATES' RESPONSE TO DEFENDANT MICHAEL LYNCH'S MOTION FOR RULE 17 SUBPOENAS AND MOTION TO COMPEL |
| v. | |
| MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN, | Date:  November 29, 2023 |
| Defendants. | Time:  1:30 p.m.<br>Court:  Hon. Charles R. Breyer<br>    Courtroom 6, 17th Floor |

## I.    INTRODUCTION

The government does not object to the issuance of the four Rule 17 subpoenas that defendant Michael Lynch requests—so long as they do not jeopardize the March 18, 2024 trial date.  As this Court made clear on the record earlier this month, the Court has cleared ample time from its busy spring calendar to accommodate a substantial trial.  Lynch has known for years that some or all of these third parties may have information related to his charges (and have much if not all the requested material from parallel litigation)—yet his Rule 17 request arrives only now, barely four months out from trial and

on the eve of stop-and-go holiday calendars.  If Lynch can obtain these materials in time to facilitate evidentiary rulings and trial preparation, then the government will not stand in his way.  But the trial date should stick.

As for Lynch's second request—an almost-forgotten *Brady* motion to compel the government to produce files held by Hewlett-Packard ("HP")[1] and the U.K. firm Deloitte LLP ("Deloitte")—the government objects: The Court heard virtually identical requests from former Autonomy Chief Financial Officer ("CFO") Sushovan Hussain three times over the course of his trial and related proceedings and properly rejected those requests each time.  Lynch adds nothing that would alter that settled conclusion: He recycles Hussain's evidence and argument on HP and simply asserts without authority that Deloitte's entry into a cooperation agreement renders the company an arm of the prosecution.  Not so: Numerous courts, including a district court in the Ninth Circuit, have rejected the proposition that *Brady* and Rule 16 obligations attach when a private party agrees to cooperate.  The Court should therefore deny Lynch's *Brady* motion to compel production of files held by HP and Deloitte.

## II.    FACTUAL BACKGROUND

Because Lynch's motion seeks relief that Hussain sought and was denied before his trial in 2018, the government briefly reviews the Court's experience with the instant request.

Seven years ago, as the government and Hussain were preparing his fraud case for trial, the former Autonomy CFO asked the Court to order the government to review files held by HP and its outside lawyers.  *See generally* Def.'s Mot. for an Order Directing the Government to Review the Files of Hewlett-Packard and Morgan, Lewis & Bockius, *United States v. Hussain*, No. 3:16-cr-462-CRB, ECF No. 45 (N.D. Cal. Apr. 26, 2017).  HP and the lawyers, Hussain argued, had "conducted an extensive investigation for the government's benefit."  *Id*. at 1:12–13.  Pointing to HP's provision of witness interview summaries, presentations, and documentary materials, *see id*. at 3–4, Hussain argued

---

[1]    Lynch's motion and proposed subpoena is directed to "Hewlett-Packard ('HP')."  As alleged in the indictment, Hewlett-Packard Company was a public company in the United States in 2011.  ECF No. 21 ¶¶ 6-8.  It acquired Autonomy Corporation plc through a subsidiary Hewlett-Packard Vision B.V.  *Id*.  In 2014, Hewlett-Packard Company announced plans to split into two new company, Hewlett Packard Enterprise Company and HP Inc.  Lynch's motion appears to purposely blur these lines.

that the government's *Brady* obligations should extend to "private entities who have acted on behalf of the government in the furtherance of a criminal prosecution." *Id.* at 7:4–5.

The government opposed Hussain's request. *See generally* U.S.' Opp. to Def.'s Mot. for an Order Directing the Government to Review Hewlett-Packard's Files, *United States v. Hussain*, No. 3:16-cr-462-CRB, ECF No. 50 (N.D. Cal. May 3, 2017). The United States had conducted an extensive independent investigation into the Autonomy fraud, the government noted, interviewing scores of witnesses and gathering some 4.4 million pages of documents. *Id.* at 3. And federal courts, the government explained, had "routinely rejected the relief the defendants now seek." Gov't Hussain Opp. at 5 (citing cases).

The Court denied Hussain's request without prejudice. *See United States v. Hussain*, No. 3:16-cr-462-CRB, ECF No. 59 (N.D. Cal. May 10, 2017) (minute order denying motion for reasons stated on the record). At the motion hearing, the Court described its view of the law: "[T]he government is not responsible for conducting an investigation of the existence of *Brady* materials for—of any entity of which either they do not control or, two, they have not retained to act as their investigator in the matter." Transcript of May 10, 2017 Mot. Hr'g at 11:14–18, *United States v. Hussain*, No. 3:16-cr-462-CRB, ECF No. 64 (N.D. Cal. May 19, 2017).

Months after the Court first denied Hussain's motion to compel, he renewed it after claiming to learn new information about the government's interactions with HP. *See generally* Def.'s Notice of Mot. and Renewed Mot. for an Order Directing the Gov't to Review the Files of Hewlett-Packard Company and Morgan, Lewis & Bockius LLP, *United States v. Hussain*, No. 3:16-cr-462-CRB, ECF No. 140 (N.D. Cal. Dec. 8, 2017). Again the government opposed Hussain's motion, noting that "[n]othing ha[d] changed since the Court first considered this issue." *See* United States' Opp. to Def.'s Mot. and Renewed Mot. at 4, *United States v. Hussain*, No. 3:16-cr-462-CRB, ECF No. 161 (N.D. Cal. Dec. 22, 2017). Again, the Court denied the motion. Order Denying Mots. for New Trial and Judgment of Acquittal at 53:8–9, *United States v. Hussain*, No. 3:16-cr-462-CRB, ECF No. 419 (N.D. Cal. July 30, 2018) (hereinafter "Order Denying Hussain's New Trial Motion").

1   After Hussain's trial and conviction, he raised the *Brady* issue a third time—this time in a new

2   trial motion that called the Court's *Brady* ruling one of several "additional errors which support a new

3   trial."  Mot. for New Trial at 2 n.1, *United States v. Hussain*, No. 3:16-cr-462-CRB, ECF No. 409 (N.D.

4   Cal. May 23, 2018).  The Court denied Hussain's request for a new trial and addressed at length

5   Hussain's request that the government review HP's files.  *See* Order Denying Hussain's New Trial

6   Motion at 53–54.  Courts had extended the government's *Brady* obligations to other branches of

7   government, the Court explained, because "(1) those branches' incentives are perfectly aligned with the

8   prosecution's, and (2) the prosecution presumably has access to their files."  *Id*. at 53.  But because

9   "private parties' interests may not be perfectly aligned with the government's . . . ," the Court continued,

10  "charging prosecutors with the knowledge possessed by private parties that are cooperating with them is

11  inconsistent with the logic of [*Kyles v. Whitley*, 514 U.S. 419 (1995)]."  *Id*. at 54.  In addition, the Court

12  wrote, "such a rule would be inconsistent with the private party's Fourth Amendment rights."  *Id*.

13  Hussain abandoned his *Brady* claim on appeal.

14      Now, Lynch makes a virtually identical request: After seeking permission to issue Rule 17

15  subpoenas to HP, "PricewaterhouseCoopers," "Ernst & Young,"[2] and Deloitte, Lynch asks the Court to

16  order the government to "comply with its *Brady* obligations" by obtaining materials from HP and

17  Deloitte.  Mot. at vi.  Lynch's request adds nothing that should alter the Court's rulings on this matter

18  from *Hussain*: Lynch's *Brady* motion should be denied.

19  **III.    LEGAL STANDARD**

20      Under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972),

21  the government has an obligation to produce exculpatory evidence to a criminal defendant.  But that

22  obligation extends only to evidence about which the government knows and to which the government

23  has access.  *See United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (noting that "the fact that the

24  Bureau of Prisons and the United States Attorney's Offices are both branches of the Department of

---

[2]      As with "HP," Lynch makes no effort to clarify the legal entity to whom his subpoenas or
process are directed or where they are located.

1  Justice would facilitate access by federal prosecutors to prison files" and contrasting BOP records with

2  files held by *state* agencies, to which federal prosecutors "are never deemed to have access").

3  **IV.    ARGUMENT**

4  **A.    The government does not object to the issuance of Lynch's requested Rule 17**
   **subpoenas so long as they do not jeopardize the March 2024 trial date.**

5

6          Lynch seeks permission to subpoena four sophisticated, multinational entities or combinations of

7  entities barely four months from trial.  That timing concerns the government because Lynch's subpoenas

8  are hardly narrow: Each requests more than a year's worth of records—some ask for more than two—

9  related to broad topics such as "[t]he write-down of Autonomy" or "Deloitte's termination by HP as

10  Autonomy's external auditor."  Negotiating compliance with these demands, identifying documents for

11  production, and then litigating disputes over materials that Lynch wishes to use at trial could easily spill

12  into March or beyond.  If the Court is inclined to grant Lynch's Rule 17 requests, then some pencil-

13  sharpening may be in order.

14          The government also reserves the right to challenge the admission of any document that Lynch

15  obtains under the Federal Rules of Evidence, including but not limited to Rules 401, 403, or 802.

16  Lynch's reasons for subpoenaing the four entities named above suggest that he views Count 17 of the

17  Superseding Indictment as an effort to "blame Dr. Lynch for Autonomy's struggles under HP's

18  dysfunctional ownership."  Mot. at v:12–13.  It's not: That count plainly charges a conspiracy "to . . .

19  obstruct investigations of the scheme to defraud."  Dkt. 21 at ¶ 33; *see also* Dkt. 230 at 5–6 (United

20  States' Voluntary Bill of Particulars) ("Count Seventeen charges a conspiracy to conceal from HP and

21  eventually the government, and otherwise make false and misleading statements about, the truth of

22  Autonomy's financial performance before and after the 2011 acquisition by HP.").  What matters for

23  this trial is what Lynch and Chamberlain *did*, not what HP *should have done*.  Any side-trial on the latter

24  issue—which seems to be driving Lynch's subpoenas—is beside the point and presents a substantial risk

25  of undue delay or misleading the jury.

26

27

28

**B.      Lynch's motion to compel the government to produce files held by HP and Deloitte should be denied.**

In his motion to compel the government to produce documents held by HP and Deloitte, Lynch essentially offers one argument per firm. As for HP, Lynch claims that the company's "close collaboration" with the United States "rendered HP effectively an arm of the government" for *Brady* purposes. *See* Mot. at 15:8–10. As for Deloitte, Lynch points to a cooperation agreement between the company and the United States. Mot. at 15:12–14. That cooperation agreement, Lynch appears to argue, somehow brings Deloitte's files within the scope of the government's *Brady* obligations. Neither argument has merit—as explained below, the Court correctly rejected a similar request in *Hussain* and should do so again here.

> *1. Any "close collaboration" between HP and the United States in the investigation of Lynch does not extend the government's* Brady *obligations to files held by HP.*

Three times now, the Court has heard and rejected the claim that the government's interactions with HP during the Autonomy investigation bring HP's files within the scope of *Brady*. Lynch's short argument on this point adds almost nothing beyond the facts and authority that this Court considered in *Husain*. And the only *new* authority that Lynch brings to the table—*United States v. Connolly*, 2019 WL 2120523 (S.D.N.Y. May 2, 2019)—should not change the Court's conclusion.

Federal courts in this district and elsewhere routinely reject requests to extend *Brady* obligations to private parties. *See, e.g. United States v. Nosal*, 2013 WL 1352244 at *3 (N.D. Cal. April 3, 2013) (Judge Edward M. Chen rejected the defendant's claim that "Korn/Ferry was effectively a member of the prosecution team" and concluded that there was "no basis for straying from the general consensus that private actors may not 'act[] on the government's behalf' for the purposes of determining the government's *Brady* disclosure obligations"); *United States v. Joslyn*, 206 F.3d 144, 152-54 (1st Cir. 2000) (notwithstanding extensive cooperation between private party (corporation) and government, allegedly favorable information not disclosed to government by corporation was not attributed to government).

When addressing this request in the context of Hussain's new trial motion, the Court observed that Hussain had "cited no case . . . in which a court has extended this duty to a private party[.]"  Order

1    Denying Hussain's New Trial Motion at 54:4–5.  Neither does Lynch here: His motion invokes *United*

2    *States v. Holovacko*, 781 F. App'x 100 (3d Cir. 2019), but that out-of-circuit, unpublished disposition

3    did *not* find that the government's *Brady* obligations extended to a private party.  Quite the contrary: In

4    *Holovacko*, the Third Circuit *rejected* the claim that the government should review investigation files

5    held by Merrill Lynch.  *Holovacko*, 781 Fed. App'x at 105.  Indeed, the appeals court looked to the same

6    First Circuit case—*United States v. Joselyn*, 206 F.3d 144, 154 (1st Cir. 2000)—that this Court invoked

7    when denying Husain's request to bring HP within the government's *Brady* obligations.  *Compare*

8    *Holovacko*, 781 Fed. App'x at 105 ("It would be particularly unusual to find prosecutors in constructive

9    possession of evidence held by Merrill Lynch, a private party, since private parties' interests in this

10   context 'are often far from identical to—or even congruent with—the government's interests.' (citing

11   *Joselyn*, 206 F.3d at 154)), *with* Order Denying Hussain's New Trial Motion at 54 ("For instance, in

12   *United States v. Josleyn*, the First Circuit refused to extend a prosecutor's obligation under *Kyles* to a

13   private party because it reasoned that private parties' interests may not be perfectly aligned with the

14   government's.").

15          Lynch's motion makes no serious attempt to question these principles.  *See generally* Mot. at 15.

16   The only "evidence" that Lynch marshals in support of his request as to HP consists of *the exact same*

17   *lawyer declaration that Hussain submitted* in support of *his* first motion on this issue.  *See* Mot. at 15

18   n.45 (citing the declaration of Brook Dooley from *United States v. Hussain*, No. CR 16-462 CRB, ECF

19   No. 46 (N.D. Cal. Apr. 26, 2017)).

20          Instead, Lynch points to a single, out-of-circuit district court opinion—*United States v. Connolly*,

21   No. 16-cr-00370-CM, 2019 WL 2120523, at *10 (S.D.N.Y. May 2, 2019)—as grounds to revisit the

22   government's *Brady* obligations.  *See* Mot. at 11 n.32 (acknowledging the denial of a similar motion in

23   *Husain* and stating, without elaboration, "However, Hussain's application predated *Connolly*.").  But

24   *Connolly* sheds no light on those obligations.  *Connolly* was a *Kastigar* case, concerned with whether an

25   employer's acts that produced compelled statements were "fairly attributable" to the government.

26   *Connolly*, 2019 WL 2120523 at *10.  It was in that context that *Connolly* made the comments that

27   Lynch now says warrant a reconsideration of this Court's discovery rulings.  *See* Mot. at 11:7–13

28

(quoting *Connolly*, 2019 WL 2120523 at \*10, \*13).  The *Connolly* court simply had no reason to—and, in fact, did not—consider whether the government could be deemed to possess a private party's records. *Connolly* spans 25 pages but doesn't even *mention Brady*.[3]  *See generally Connolly*, 2019 WL 2120523. The Court in *Hussain* got it right the first time (and the second time, and the third time): HP is not the government, and Lynch's proper route to the company's files is through Rule 17—not *Brady*.

### 2. The government's cooperation agreement with Deloitte does not extend the government's Brady obligations to files held by Deloitte.

As for Deloitte, Lynch claims without elaboration that a cooperation agreement between the U.K. firm and the government brings Deloitte within the government's *Brady* obligations.  Lynch cites no authority this proposition.  *See* Mot. at 15.  And in fact, many courts to consider the question have held that the constructive possession such an agreement affords does not, standing alone, trigger the government's *Brady* or Rule 16 obligations.

A district court in the Eastern District of New York considered this question at length in *United States v. Hwa*, No. 18-CR-538 (MKB), 2021 WL 11723583 at \*\*51–62 (E.D.N.Y. Sep. 3, 2021), where the defendant's former employer (Goldman Sachs) had entered into a deferred prosecution agreement with the government.  The agreement required the bank to "truthfully disclose all factual information with respect to its activities . . . about which the [Government] may inquire," which included a specific obligation "to provide to the [Government], upon request, any document, record, or other tangible evidence about which the [Government] may inquire."  *Hwa*, 2021 WL 11723583 at \*10.  Nevertheless, the *Hwa* court was "not persuaded that the Goldman Sachs Group is part of the 'prosecution team' [and so subject to *Brady*] simply because it entered the DPA with the Government."  *Hwa*, 2021 WL 11723583 at \*53; *see also id.* ("The Second Circuit has never held that the 'prosecution team' includes cooperating witnesses.") (internal quotation omitted).  Pointing to the bank's "own interests and motives" and the fact that the government had "conducted an independent investigation," *Hwa* refused

---

[3]      Indeed, one district court in the Eastern District of New York, responding to the argument that Lynch makes now, distinguished *Connolly* on exactly this basis: "*Connolly* did not consider whether these facts evidenced a 'joint investigation' making the bank part of the prosecution team such that knowledge of *Brady* materials in its possession could fairly be attributed to the government."  *United States v. Hwa*, No. 18-CR-538 (MKB), 2021 WL 11723583, at \*55 (E.D.N.Y. Sept. 3, 2021).

1  to find that prosecutors had a *Brady* obligation to produce files held by Goldman Sachs.  *See id*. at *53

2  (collecting cases in accord).

3         Among the cases that *Hwa* relied upon was *United States v. Meregildo*, 920 F. Supp. 2d 434

4  (S.D.N.Y. 2013), where one defendant entered into a cooperation agreement with the government.

5  Before trial, another defendant "moved to compel the Government to produce [the cooperating

6  defendant's] Facebook posts."  *Id*. at 437.  Reviewing the decisions of various courts related to criminal

7  discovery obligations, the *Meregildo* court denied the motion, concluding that "[t]he fact that a

8  cooperating witnesses signs a plea agreement and testifies at trial does not transform him from a

9  criminal into a member of the prosecution team."  *Id*. at 445.

10        In the analogous context of Rule 16 obligations, a district court in the Central District of

11  California reached a similar result.  In *United States v. Carson*, No. 09-cr-00077-JVS, ECF No. 133

12  (C.D. Cal. Dec. 8, 2009), defendants moved to compel the government to produce documents held by

13  their former employer, which had entered into a plea agreement with the government.  Like the Deloitte

14  agreement that Lynch invokes now, the *Carson* plea agreement required the former employer to produce

15  on request "any non-privileged document, record or other tangible evidence relating to such corrupt

16  payments [to foreign officials]."  *Id*. at 3.  But that obligation, the *Carson* court ruled, did not give rise to

17  the "actual possession" that the Ninth Circuit required to invoke Rule 16.  *Id*. at 4–5 (quoting *United*

18  *States v. Fort*, 472 F.3d 1106, 1118 (9th Cir. 2007) ("[T]he triggering requirement under rule

19  16[(a)(1)(E)] is that the papers, documents, and tangible objects be in the actual possession, custody or

20  control of the government.") (citation omitted)).

21        This caselaw is not surprising, given that the existence of a cooperation agreement does not

22  resolve the incentive misalignment that led this Court to deny Hussain's motions for similar relief.  *See*

23  Order Denying Hussain's New Trial Motion at 53–54 (describing the absence of "perfectly aligned"

24  incentives as a reason not to extend *Brady* obligations to private parties).  Such a misalignment may

25  persist even in the face of an agreement such as Deloitte's: As the Court recognized in its order denying

26  Hussain's new trial request, "there is no reason to think that receiving a benefit for turning over some

27

28

1  files makes it any less likely that the private party is withholding access to other files."  Order Denying

2  Hussain's New Trial Motion at 54:19–21.

3       Finally, expanding the sweep of *Brady* to include a cooperator's files would, as the Court

4  previously recognized, "be inconsistent with the private party's Fourth Amendment rights."  Order

5  Denying Hussain's New Trial Mot. at 54:21–22.  Moreover, such a result would be practically

6  unworkable: For example, the United States affiliate of Deloitte employs more than 171,000 people

7  operating from 134 offices around the country.[4]  Accepting Lynch's *Brady* argument would require the

8  government either to undertake a global information extraction of unprecedent scale—with who knows

9  what implications for data privacy or similar considerations of foreign countries—or simply to accept

10 Deloitte's representations about the existence of exculpatory evidence.  Neither outcome is consistent

11 with or required by *Brady*.

12 **V.    CONCLUSION**

13      The Court should deny Lynch's motion insofar as it demands that the government comply with

14 *Brady* obligations by searching materials in the possession of HP and Deloitte.  The government does

15 not object to the issuance of Rule 17 subpoenas to those parties, subject to the preservation of the

16 parties' March 18, 2024 trial date.

17

18 DATED:  November 21, 2023          PATRICK D. ROBBINS
                                      Attorney for the United States Attorney

19                                       Acting Under Authority Conferrred by

20                                       28 U.S.C. § 515

21

22                       By:        /s/ Zachary G.F. Abrahamson
                                      ROBERT S. LEACH

23                                     ADAM A. REEVES

24                                     KRISTINA N. GREEN
                                    ZACHARY G.F. ABRAHAMSON

25                                     Assistant United States Attorneys

26

27 _____

[4] *See 2023 Facts & Figures*, WWW.DELOITTE.COM, https://www2.deloitte.com/us/en/pages/about-
28 deloitte/articles/facts-and-figures.html (last visited Nov. 20, 2023).