Jonathan Matthew Baum (SBN: 303469)
**Steptoe & Johnson LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Dwight J. Draughton
Drew C. Harris
**Steptoe & Johnson LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN, <br><br> Defendants. | Case No.: 3:18-cr-00577-CRB <br><br> Judge: Hon. Charles Breyer <br><br> **DEFENDANT MICHAEL RICHARD LYNCH'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR ISSUANCE OF SUBPOENAS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 17(c) AND TO COMPEL THE GOVERNMENT TO PRODUCE *BRADY* MATERIAL** <br><br> Date: November 29, 2023 <br> Court: Courtroom 6 – 17th Floor <br> Date Filed: November 27, 2023 <br> Trial Date: March 18, 2024 |

# TABLE OF AUTHORITIES

**Page Nos.**

**Cases**

*United States* v. *Carson*,
    No. 09-cr-00077-JVS (N.D. Cal.) .................................................................................... 5

*United States* v. *Hussain*,
    No. 3:16-cr-462-CRB (N.D. Cal.) ..................................................................................... 3

*United States* v. *Josleyn*,
    206 F.3d 144 (1st Cir. 2000) ........................................................................................ 4, 5

*United States* v. *Ng*,
    No. 18-CR-538 (MKB), 2021 WL 11723583 (E.D.N.Y. Sept. 3, 2021) ..................................... 5

*United States* v. *Risha*,
    445 F.3d 298 (3rd Cir. 2006) ........................................................................................... 4

**Rules**

Fed. R. Crim. P. 17(c) ................................................................................................... 1, 6

The government does not oppose that aspect of Dr. Lynch's motion seeking Rule 17(c) subpoenas to Hewlett-Packard ("HP"), Deloitte LLP ("Deloitte"), Ernst & Young ("EY"), and PricewaterhouseCoopers ("PwC") for documents relating to the post-acquisition period. This makes sense, as the government has placed these events squarely at issue by charging Dr. Lynch with a conspiracy "to conceal from HP . . . the truth of Autonomy's financial performance before and after the 2011 acquisition" and stating that it intends to prove "false and misleading statements" by Dr. Lynch "to HP and to the public" regarding Autonomy's financial performance made during a five-year period following the acquisition. *See* Voluntary Bill of Particulars ("VBOP") at 5 (ECF No. 230). The government's consent, however, is coupled with the contention that Dr. Lynch should have sought these materials sooner and the concern that compliance with these subpoenas may imperil the March 2024 trial date. Simultaneously, however, the government also chafes at the suggestion that it has a *Brady* obligation to obtain these materials. This brief reply explains why both of the government's claims miss the mark.

First, raising the specter of delay, the government insinuates that Dr. Lynch's request is untimely, asserting that Dr. Lynch "has known for years" that this information may exist and claiming that Dr. Lynch should have made this request sooner. *See* Government Opposition ("Opp"), at 1–2 (ECF No. 260). However, the government conveniently neglects to mention that it did not *begin* to produce discovery to Dr. Lynch until late May 2023, after his first appearance in the case. Thus, it was not until very recently—once the defense was able to ingest, process and analyze the ocean of almost 16.5 million documents received (so far)—that Dr. Lynch was in any position to discern the significant discovery lapses relating to the post-acquisition period and seek subpoenas to rectify these deficiencies. Given the nature of its novel post-acquisition allegations, it is the government's conspicuous failure to obtain and produce these materials that has led us here, not any dilatory tactics by Dr. Lynch. The government's implication that it might have supported Dr. Lynch's pursuit of these materials *prior* to his initial appearance in this case and *before* he had received, processed, and identified the post-acquisition gaps in the voluminous discovery rings hollow.

DEFENDANT MICHAEL RICHARD LYNCH'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR ISSUANCE OF SUBPOENAS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 17(c) – 3:18-CR-00577-CRB

1

Contrary to the government's characterization, Dr. Lynch has moved expeditiously to process and assess the enormous amount of discovery produced by the government over the last few months and to identify gaps in that material. On May 19, 2023 and June 16, 2023, following Dr. Lynch's arraignment, the government produced over 6.5 terabytes of data to the defense, equivalent to almost 16.5 million documents. Needless to say, reviewing this volume of material is a herculean task. Moreover, technical defects in the production sets—affecting millions of pages of documents—have hampered Dr. Lynch's ability to review the materials.

On July 13, 2023, while his review of the government's discovery was ongoing, Dr. Lynch sent the government a detailed letter seeking additional discovery on a range of topics.[1] In that letter, Dr. Lynch made several requests directly related to the instant motion, including:

- All documents related to HP's purchase and integration of Autonomy, *id.* at 6;
- All documents related to, and all work done, by HP or its advisors (including KPMG, Ernst & Young, PwC, inside and outside counsel, public relations advisors, and investor relations advisors) regarding any HP internal investigation or the basis for its November 2012 write-down or any other valuation of Autonomy, *id.*;
- All documents related to any post-acquisition analysis, impairment, or write-offs conducted by HP/Autonomy or its internal or external agents, employees, or advisors, *id.*;
- All documents related to meetings with or between HP, KPMG, Ernst & Young, PwC, HP's law firms, HP public relations advisors, and investor relations advisors regarding HP's November 2012 write-down announcement, *id.*;
- All documents related to the preparation, announcement, public relations, or messaging regarding the November 2012 write-down, *id.*;
- All documents related to Deloitte's post-acquisition review and termination, *id.*

The government responded in a conclusory fashion in a brief email approximately two months later and has not produced any materials in response to these requests.

Furthermore, the government's VBOP, filed on October 8, 2023, crystalized that the post-acquisition period would play a central role in the government's case. *See generally* VBOP

---

[1] *See* Silver Decl. Ex. 1 (Letter from defense counsel to the government re Request for Discovery (July 13, 2023)).

(ECF No. 230). For example, in the VBOP, the government states that it will adduce evidence of Autonomy's financial performance in the first two fiscal quarters of 2012 and "false and misleading statements by defendant Lynch to HP and to the public regarding the financial performance of Autonomy and HP made between 2011–2016." *Id*. at 5. These revelations about the breadth of the government's case underscore the importance of the post-acquisition period. As Dr. Lynch explained in his opening brief, the evidence sought is relevant and admissible to (a) defend against the government's claims that criminal conduct lies at the heart of Autonomy's post-acquisition underperformance; (b) corroborate Dr. Lynch's good faith when publicly defending himself against HP's $5 billion fraud allegations between 2011–2016; and (c) impeach the credibility of significant government witnesses at trial. In short, evidence of HP's own integration failures and write-down misconduct is directly relevant to "the underperformance of the Autonomy Division of HP over two quarters in 2011–2012," and "the truth of Autonomy's financial performance before and after the 2011 acquisition by HP," which according to the VBOP are central to the allegations in Count 17. *Id*. at 5–6.

Yet the simple fact remains that the discovery provided by the government tapers off precipitously relating to the post-acquisition period. Specifically, as set forth in Dr. Lynch's opening brief, there are significant gaps in the discovery produced pertaining to, *inter alia*, PwC's post-acquisition investigation of Autonomy on behalf of HP, the analysis underpinning HP's write-down of Autonomy, disagreements between Deloitte and HP regarding Deloitte's accounting judgments that led to Deloitte's termination as Autonomy's auditor by HP, and Christopher Yelland's communications with Deloitte or EY, HP's auditor, regarding his post-acquisition review of Autonomy's accounts. These documents were not produced in the UK civil action and, as such, Dr. Lynch has limited disclosure relating to these now central matters. Indeed, the vast majority of the exhibits cited in Dr. Lynch's opening brief were identified through review of the government's recently produced discovery.

Second, the government opposes Dr. Lynch's motion to compel the government to obtain *Brady* material from HP and Deloitte. In its opposition, the government relies heavily on this Court's prior ruling in *United States* v. *Hussain*, No. 3:16-cr-462-CRB (N.D. Cal.) denying a

DEFENDANT MICHAEL RICHARD LYNCH'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR ISSUANCE OF SUBPOENAS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 17(c) – 3:18-CR-00577-CRB

3

request by defendant Sushovan Hussain to compel the government to obtain *Brady* material possessed by HP and Morgan Lewis. *See* Opp. at 2–4 (seeking to "briefly review[] the Court's experience" with Hussain's request for *Brady* material). However, as this Court has stated, there is no law of the case such that rulings from the *Hussain* trial foreclose this issue. *See* Transcript of Proceedings at 12:11-18, *United States* v. *Lynch*, No. 3:18-cr-577-CRB-1 (June 23, 2023) (ECF No. 191) ("I don't think there's 'a rule of the case.' . . . [T]here's been a preceding case, but [Dr. Lynch] didn't participate in the preceding case."). The government's interests and those of HP's and Deloitte's are sufficiently aligned such that the government's *Brady* obligations extend to those entities. Even if the Court disagrees, it should still direct the government to request the specific materials sought in Dr. Lynch's subpoenas to HP and Deloitte from these entities, so as to avoid any unnecessary delay in obtaining these documents.

In response to Dr. Lynch's motion to compel the government to produce *Brady* material, the government notes that courts have generally declined to extend the government's *Brady* obligation to encompass information held by third parties cooperating with the government. *See* Opp. at 6–8. However, there is no bright line rule that limits the government's *Brady* obligation to specific law enforcement agencies. Rather, courts look to the specific circumstances at issue to assess whether a third party was an "arm" of the state such that the government can be deemed to have possession or control over the information sought. *See United States* v. *Risha*, 445 F.3d 298, 299 (3rd Cir. 2006) (vacating and remanding with instructions for the district court to conduct "factual and credibility determinations" to determine whether the government had "constructive possession of *Brady* material" possessed by a cooperating third party).

A significant factor that bears on constructive possession is the nature of the cooperation between the government and the third party—namely, whether the interests of the third party are aligned with those of the prosecution. The government relies on *United States* v. *Josleyn*, 206 F.3d 144 (1st Cir. 2000), which declined to extend the government's *Brady* obligation to information held by a cooperating corporation. *See* Opp. at 7. Yet in *Josleyn*, the third party— Honda, the defendants' employer—chose to cooperate with the government after it was advised that "it was a subject of the investigation and could become a target." *Josleyn*, 206 F.3d at 154.

As Honda "had an interest in seeing that the government knew some information about the [allegations], but not too much," the First Circuit held that Honda's interests were "far from identical to—or even congruent with—the government's interests," and that this misalignment of interests barred the extension of the *Brady* obligation to information in Honda's possession. *Id*. at 154.  Accordingly, courts have often refrained from extending the *Brady* obligation in cases where a cooperating third party's interests are not aligned with the prosecution's because the third party was actively seeking to avoid criminal or civil liability. *See, e.g., id.* at 153.

Our circumstances are plainly distinguishable.  Here, HP did not cooperate with the government to avoid prosecution.  On the contrary, HP proactively ran to the government, furnished it with reams of information and analyses, and effectively conceived of and facilitated the government's investigation.  Thus, HP's interests are much more closely aligned with the government's than the third parties in the cases upon which the government relies.[2]  In *United States* v. *Carson*, for example, the defendants sought information held by their former employer who had entered into a plea agreement with the government. *See* Motion to Compel Discovery at 4, *United States* v. *Carson*, No. 09-cr-00077-JVS, ECF No. 101 (C.D. Cal. Sept. 4, 2009).  Likewise, in *United States* v. *Ng*, the defendant sought documents in the possession of his former employer, Goldman Sachs, which had entered into a deferred prosecution agreement with the government. *See United States* v. *Ng*, No. 18-CR-538 (MKB), 2021 WL 11723583, at *61 (E.D.N.Y. Sept. 3, 2021).  The court in *Ng* rejected the defendant's contention that the deferred prosecution agreement was sufficient to expand the government's *Brady* obligation to information possessed by Goldman Sachs, noting that, "like a cooperating witness, [Goldman Sachs] is an independent actor with an agenda separate from (and arguably adverse to) the administration of justice." *Id*. (internal quotations and citation omitted).  Unlike the cooperating

---

[2] The cooperation agreement between HP and the government notes that "the interest of the [SEC] and the United States Attorney's Office ("USAO") in determining whether there have been any violations of the federal securities or other laws, and H-P's interests in investigating and analyzing the circumstances and people involved in the events at issue" are aligned. *See* Silver Decl. ISO Motion for 17(c) Subpoenas, Ex. 40 at 10 (ECF No. 255-41).

companies in *Carson* and *Ng*, HP's cooperation with the government was entirely voluntary and did not result from the threat of prosecution. Therefore, the government is wrong to dismiss this argument by rote reliance on this Court's prior ruling in *Hussain* and recitation of holdings from inapposite cases in which a cooperating corporation was itself the target of the government's investigation.

Finally, even if the Court declines to grant Dr. Lynch's request to compel the government to produce *Brady* material from HP and Deloitte, it should nonetheless order the government to request the specific documents referenced in the subpoenas from these entities. If delay of the trial is in fact the government's true concern, it should not hesitate to do everything in its power to expedite the production of the requested materials. No doubt that HP and Deloitte would move quickly to provide these materials if requested to do so by the government—indeed, Deloitte is obligated to provide records, wherever located, whenever the government requests. *See* Silver Decl. ISO Motion for 17(c) Subpoenas, Ex. 41 (Deloitte Cooperation Agreement) at 2 (ECF No. 255-42) ("Deloitte LLP . . . agree[s] that cooperation shall include . . . [p]roviding all documents, records, or other evidence in Deloitte LLP's . . . possession, custody, or control . . . when requested to do so by the [prosecution].").

For the reasons stated herein and in Dr. Lynch's motion, Dr. Lynch respectfully requests that the Court grant his motion for the issuance of Rule 17(c) subpoenas and to compel the government to produce *Brady* material.

Dated: November 27, 2023

Respectfully submitted,

By: ___/s/ Christopher J. Morvillo___
Christopher J. Morvillo

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**CLIFFORD CHANCE US LLP**

Jonathan Matthew Baum (SBN: 303469)
**STEPTOE & JOHNSON LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA  94105
Telephone:  (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Dwight J. Draughton
Drew C. Harris
**STEPTOE & JOHNSON LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 506-3900

*Attorneys for Defendant*
*Michael Richard Lynch*