# EXHIBIT 1

Reid H. Weingarten
202 429 6238
rweingarten@steptoe.com



1330 Connecticut Avenue NW
Washington, DC 20036
202 429 3000 main
www.steptoe.com

July 13, 2023

<u>By Electronic Mail</u>

Robert Leach
Adam Reeves
Assistant United States Attorneys
U.S. Attorney's Office for the Northern District of California
450 Golden Gate Avenue, 11th Floor
San Francisco, CA 94102

      Re:    ***United States v. Michael R. Lynch et al.*, No. 3:18-cr-577 (CRB)**
            **<u>Request for Discovery</u>**

Dear Counsel:

      On behalf of defendant Dr. Michael R. Lynch, we request that the government provide the discovery of documents and information required by the Fifth and Sixth Amendments to the U.S. Constitution; Rules 16(a)(1) and 26.2 of the Federal Rules of Criminal Procedure; *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their respective progeny; the Department of Justice's "Guidance for Prosecutors Regarding Criminal Discovery"; and the California Rules of Professional Conduct. This request is continuing in nature and requires supplementation in accordance with Fed. R. Crim. P. 16(c).

      Dr. Lynch requests that you produce and permit him to inspect and copy or photograph the materials specified below. This request encompasses not only documents and information in the possession, custody, or control of, or that have been reviewed by, the U.S. Attorney's Office for the Northern District of California and the Federal Bureau of Investigation, but also documents and information in the possession, custody, and control of, or that have been reviewed by, the Department of Justice Criminal Division, the Securities and Exchange Commission, the Department of the Air Force, the U.K. Serious Fraud Office, the U.K. Financial Reporting Council, HP Inc. and any of its inside or outside counsel, advisors, agents, auditors, subsidiaries, affiliates, predecessors, or successors (collectively, "HP"),[1] and any other public or

---

    [1] For the avoidance of doubt, as used herein, "HP" includes, but is not limited to, HP Inc., Hewlett-Packard Company, Hewlett Packard Enterprise Company, and any subsidiaries, affiliates, predecessors, or successors, whether or not such entity is listed in any SEC filing of any of those entities, as well as Autonomy Corporation plc and any subsidiaries, affiliates, predecessors, successors, or "Principal Group Companies" listed in Autonomy Corporation plc's annual reports.

July 13, 2023
Page 2



private entity allied with the prosecution or involved in any way in investigating or prosecuting the activities alleged in the indictments, including all relevant conduct. As used in this letter, the words "prosecution team," "government," and "you" include your office and the above-referenced entities. The prosecutors are obligated to search for responsive documents and information in the files, records, and knowledge of all members of the prosecution team including but not limited to the above-referenced entities.

Dr. Lynch's requests include production of certain communications. As used in this letter, the word "communications" is defined as any manner of oral, written, visual, or other message whether or not memorialized. This includes emails, letters, notes, voicemail messages, text messages, instant messages (e.g., Skype; Microsoft Teams; Slack; and internal government messaging applications), phone calls, video conferences, presentations, and in-person discussions and interviews, whether by the government or a third party, including HP. If the communication was not memorialized, Dr. Lynch requests that the government produce a summary of the communication including its content and all documents reflecting the communication's existence (such as meeting invitations, phone records, or entry logs). Each request for communications with a person or entity includes all communications with that person or entity's attorneys, representatives, or other agents.[2]

The government has produced discovery to Dr. Lynch on May 19, 2023, consisting of 1.5 TB of data, and on June 16, 2023, consisting of over 5 TB of data. The government has represented that an additional production of password protected documents will be forthcoming. ECF 179 at 2. We are still in the process of processing these materials. We submit the discovery and *Brady* requests in this letter to ensure that Dr. Lynch's requests and views on the scope of discovery and *Brady* are clear, in an effort to avoid discovery disputes and motions practice.

Dr. Lynch requests that the government comply with all of its discovery obligations under the aforementioned law, including, but not limited to, the production of the following:

**I.       Correspondence**

       A.      All communications between the government and HP. To the extent those communications were oral, please produce a summary of the communication and all documents related to that communication.

       B.      All communications between or among current or former HP/Autonomy[3] employees and/or other persons affiliated with HP related to communications with

---

[2] As used in this letter, the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

[3] For the avoidance of doubt, as used herein, "Autonomy" includes, but is not limited to, Autonomy Corporation plc, Autonomy Systems Limited, Autonomy, Inc. and their subsidiaries, affiliates, predecessors, successors, or "Principal Group Companies" listed in Autonomy Corporation plc's annual reports.

July 13, 2023
Page 3



the government.  To the extent those communications were oral, please produce a summary of the communication and all documents related to that communication.

C.    All communications between HP and the Department of the Air Force.  To the extent those communications were oral, please produce a summary of the communication and all documents related to that communication.

D.    All communications between the government and Deloitte.  To the extent those communications were oral, please produce a summary of the communication and all documents related to that communication.

E.    All communications between or among Deloitte employees and/or other persons affiliated with Deloitte related to communications with the government.  To the extent those communications were oral, please produce a summary of the communication and all documents related to that communication.

F.    All communications between the government and KPMG.  To the extent those communications were oral, please produce a summary of the communication and all documents related to that communication.

G.    All communications between the government and Ernst & Young.  To the extent those communications were oral, please produce a summary of the communication and all documents related to that communication.

H.    All communications between the government and PwC.  To the extent those communications were oral, please produce a summary of the communication and all documents related to that communication.

I.    All communications between the government and any foreign authority regarding the investigation, Dr. Lynch, or the above-captioned matter including any communications related to the government's efforts to obtain evidence from foreign persons or entities whether those efforts occurred through MLATs or otherwise, and including any documents, data or other information provided to the government by any foreign authority.  To the extent those communications were oral, please produce a summary of the communication and all documents related to that communication.

J.    All communications between the government and the Court related to the government's efforts to suspend any applicable statutes of limitation, including any ex parte motions filed by the government, hearing transcripts, or court orders.

K.    All communications between the government and any U.S. government agency, official, or instrumentality related to the government's investigation, evidence gathering, or prosecution of this matter.  To the extent those communications were oral, please produce a summary of the communication and all documents related to that communication.

July 13, 2023
Page 4



L.   All communications between the government or HP on the one hand, and analysts who covered HP/Autonomy or those analysts' counsel on the other.  To the extent those communications were oral, please produce a summary of the communication and all documents related to that communication.

M.   All communications between the government and current or former HP/Autonomy employees or those employees' counsel.  To the extent those communications were oral, please produce a summary of the communication and all documents related to that communication.

N.   All communications between the government and any potential witness or that person's counsel.  To the extent those communications were oral, please produce a summary of the communication and all documents related to that communication.

O.   All communications between Autonomy and U.K. authorities including but not limited to the U.K. Financial Reporting Council.

## II.   Statements of the Defendant

A.   Any oral statement made by Dr. Lynch in response to interrogation or any writing reflecting or incorporating such a statement in any part.

B.   Any written or recorded statements made by Dr. Lynch within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the government.  This request includes, without limitation:

   1.   All transcripts and/or recordings of conversations in which Dr. Lynch was a participant.

   2.   All wire and oral communications made by Dr. Lynch that were transmitted to or intercepted by, for or on behalf of any government agent or employee or any agency or entity of the U.S. government, including but not limited to any communications involving Dr. Lynch and any government informant or cooperator.

   1.   All emails and electronic messages to which Dr. Lynch was, at any time, a party.

   2.   All written and recorded statements of witnesses that reflect, relate, or incorporate any statements made by Dr. Lynch.

   3.   All other documents that purport to reflect, relate, or incorporate any statements made by Dr. Lynch.

July 13, 2023
Page 5



> 4.   All written or recorded statements that the government may allege
>      constitute an Opposing Party's Statement under Fed. R. Evid. 801(d).

## III.   Criminal Records

A.   A copy of Dr. Lynch's prior criminal record, if any.

## IV.   Documents, Tangible Objects, and Information

A.   All books, papers, documents, photographs, tangible objects, buildings or places,
or copies or portions thereof, that were obtained from or belong to Dr. Lynch, or
that belonged to Dr. Lynch at the time of the alleged offenses, or that belong or
belonged to any agent of Dr. Lynch or any entity allegedly owned or controlled
by Dr. Lynch. *See* Fed. R. Crim. P. 16(a)(1)(E)(iii). This request includes all
documents as to which the government or any entity assigned Dr. Lynch as a
custodian, whether hard copy or electronic records.

B.   All books, papers, documents, photographs, tangible objects, buildings or places,
or copies or portions thereof, that the government intends to use at trial in its case-
in-chief. *See* Fed. R. Crim. P. 16(a)(1)(E)(ii). We request that any materials in
this category be specifically identified from among the materials produced
pursuant to the defendant's other Rule 16 and *Brady* requests, both to enable
counsel to prepare effectively for trial and to afford Dr. Lynch an opportunity to
move to suppress any evidence the prosecution intends to use in its case-in-chief.
*See* Fed. R. Crim. P. 12(b)(3)(C) and 12(b)(4)(B).

C.   All books, papers, documents, photographs, tangible objects, buildings or places,
or copies or portions thereof, that are material to the preparation of Dr. Lynch's
defense, *see* Fed. R. Crim. P. 16(a)(l)(E)(i); *United States v. Muniz-Jaquez*, 718
F.3d 1180, 1183-84 (9th Cir. 2013) (noting that Rule 16 requires the government
to produce all documents that are "relevant to the development of a possible
defense" whether inculpatory, exculpatory, or impeaching), including, but not
limited to, those items set forth in Requests IV.D and V below.

D.   All documents related to any person, entity, or event referenced or alluded to in
the indictment. This includes but is not limited to:

> 1.   All documents received in response to any Rule 17 subpoena.
>
> 2.   All documents received pursuant to any MLAT, letter rogatory, or other
>      request to a non-US person or entity.
>
> 3.   All documents related to Autonomy.
>
> 4.   All documents related to Dr. Lynch.
>
> 5.   All documents related to Stephen Chamberlain.

July 13, 2023
Page 6



6.  All documents related to any alleged coconspirator.

7.  All documents related to Autonomy's publicly filed financial statements, including, but not limited to, Autonomy Systems Ltd.'s January 31, 2014 restated financials for the period from January 1 to October 31, 2011. This includes documents involving interactions with Ernst & Young.

8.  All documents related to Autonomy's or Dr. Lynch's statements to the market or to investors.

9.  All documents related to Autonomy's investors and traders, including short selling or any short positions of Autonomy.

10. All documents related to HP's purchase and integration of Autonomy.

11. All documents related to, and all work done, by HP or its advisors (including KPMG, Ernst & Young, PwC, inside and outside counsel, public relations advisors, and investor relations advisors) regarding any HP internal investigation or the basis for its November 2012 write-down or any other valuation of Autonomy.

12. All documents related to any post-acquisition analysis, impairment, or write-offs conducted by HP/Autonomy or its internal or external agents, employees, or advisors.

13. All documents related to meetings with or between HP, KPMG, Ernst & Young, PwC, HP's law firms, HP public relations advisors, and investor relations advisors regarding HP's November 2012 write-down announcement.

14. All documents related to HP/Autonomy's November 2012 write-down and impairment analysis.

15. All documents related to the preparation, announcement, public relations, or messaging regarding the November 2012 write-down.

16. All documents related to Ernst & Young's immaterial effect analysis.

17. All documents related to PwC's investigation.

18. All documents related to Deloitte's review of Autonomy's books or proposed 2011 or 2012 audits.

19. All documents related to the termination of Deloitte's engagement with HP/Autonomy.

July 13, 2023
Page 7



20. All documents related to former Deloitte partners who worked with Autonomy including but not limited to Richard Knights or Nigel Mercer.

21. All documents related to HP's settlement with Deloitte or related 2016 payment.

22. All documents related to the August 2011 Offer Agreement and related announcement and press release(s).

23. All documents related to communications with HP/Autonomy investors.

24. All documents related to the review of Autonomy's financial statements by independent auditors hired by the government, HP, or Autonomy or any of their respective agents.

25. All documents related to the International Financial Reporting Standards.

26. All documents related to any Financial Reporting Review Panel inquiry related to Autonomy or Deloitte.

27. All documents related to any purported statement that Autonomy followed the U.S. Generally Accepted Accounting Principles in recognizing revenue.

28. All documents related to revenue, margin, EPS, or cashflow.

29. All documents related to revenue recognition or cost allocation.

30. All documents related to proposed, considered, or actual adjustments to Autonomy's accounting or financial records at any time.

31. All documents related to Autonomy's SMS system used by the sales team, support system used by the customer support team, or code management system and documentation creation system used by engineering.

32. All documents related to classified projects or communications between HP/Autonomy and cleared entities.

33. All documents related to HP/Autonomy's VAR partners, including but not limited to MicroLink, MicroTech, DiscoverTech, Capax Discovery, and FileTek, after the October 2011 acquisition.

34. All documents related to HP's settlement with Microtech or related January 2019 payment.

35. All documents related to Autonomy's alleged statement(s) that it was a "pure software" company.



36. All documents related to HP's knowledge of Autonomy's sales of hardware.

37. All documents related to HP's consideration of whether to buy Autonomy.

38. All documents related to HP's consideration of what price to pay for Autonomy, including regarding any valuation of Autonomy by HP or its advisors.

39. All documents related to the valuation of Autonomy by third parties, whether before or after its acquisition by HP, including but not limited to the rebasing exercise.

40. All documents related to HP's due diligence efforts or decision-making related to Autonomy.

41. All documents related to the due diligence efforts or decision-making typically performed by reasonable market participants considering purchasing a UK-based company similar to Autonomy.

42. All documents related to work done by or communications with Slaughter and May related to the acquisition.

43. All documents related to the decision to terminate Dr. Lynch or other Autonomy employees.

44. All documents related to the alleged whistleblower who made allegations following Dr. Lynch's departure from HP/Autonomy.

45. All documents related to the meeting referenced in Superseding Indictment ¶ 21.

46. All documents related to the allegations in Superseding Indictment ¶ 22.

47. All documents related to the allegations in Superseding Indictment ¶ 23.

48. All documents related to the allegations in Superseding Indictment ¶ 24.

49. All documents related to the allegations in Superseding Indictment Count Seventeen.

50. All documents relating to Autonomy's termination of employees Brent Hogenson, Percy Tejada, and Reena Presad.

51. All documents related to HP/Autonomy's post-acquisition performance including all hosted deals where a license was sold by HP/Autonomy.

July 13, 2023
Page 9



52. All documents related to HP/Autonomy's public relations or investor relations between the acquisition and 2016 including both internal and external communications.

53. All documents relating to government investigations of HP's public statements about Autonomy.

54. All documents relating to the termination of Leo Apotheker's employment by HP.

55. All documents relating to the retirement of Shane Robison from his employment at HP.

56. All documents relating to HP/Autonomy's business strategy with respect to Autonomy following the acquisition.

57. All documents related to the transactions in Superseding Indictment ¶¶ 34.a-.d, .j, .p-.q.

58. All documents related to the deal, correspondence, and financial statements referenced in Superseding Indictment ¶ 34.e.

59. All documents related to revenue forecast referenced in Superseding Indictment ¶ 34.f.

60. All correspondence related to the deals relevant to the revenue forecast referenced in Superseding Indictment ¶ 34.f.

61. All documents related to the alleged destruction of hard drives referenced in Superseding Indictment ¶ 34.g.

62. All documents and data from the laptop computer or its backup referenced in Superseding Indictment ¶ 34.h and all documents related to the alleged instruction.

63. All images of the laptop computer referenced in Superseding Indictment ¶ 34.h, including all images created as part of litigation holds, and all related correspondence and documents.

64. All documents related to HP or Autonomy's policies, practices, or contractual obligations regarding data destruction or deletion.

65. All documents and data from the laptop computer referenced in Superseding Indictment ¶ 34.i.



July 13, 2023
Page 10

66. All documents related to the incorporation of ICP London Limited and alleged use of ICP London Limited referenced in Superseding Indictment ¶ 34.k.

67. All documents related to the interview and statements referenced in Superseding Indictment ¶ 34.l.

68. All documents related to the books, records, or property referenced in Superseding Indictment ¶ 34.m.

69. All documents related to the alleged theft of documents or transfer of said documents referenced in Superseding Indictment ¶ 34.n.

70. All documents related to the hiring of Mr. Chamberlain referenced in Superseding Indictment ¶ 34.o.

71. All documents related to any other allegation in the Superseding Indictment.

## V.   *Brady* and *Giglio* Material

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Agurs*, 427 U.S. 97 (1976), *United States v. Bagley*, 473 U.S. 667 (1985), *Kyles v. Whitney*, 514 U.S. 419 (1995), and California Rule of Professional Conduct 3.8 & cmt. 3, Dr. Lynch requests immediate identification and disclosure of all documents and information (in whatever form) that are favorable to the defense or that would tend to exculpate Dr. Lynch or mitigate his culpability with respect to the charges in the indictment, that would tend to impeach any potential witness against Dr. Lynch, that would tend to cast doubt on the accuracy or admissibility of witness testimony on which the prosecution may rely, or that are relevant to the issue of sentencing, including but not limited to the items below. This letter serves as notice that this information includes but is not limited to the documents and information requested in the other parts of this letter and:

A. Any document or information indicating or tending to establish that any of the allegations in the indictments are not true.

B. Any document or information indicating or tending to establish that any meeting, conversation, use of words, practice, or conduct implicated by the indictments did not violate government laws, regulations, standards or established business or accounting practices.

C. Any document or information indicating or tending to establish that Dr. Lynch believed that any meeting, conversation, use of words, practice, or conduct implicated by the indictments did not constitute a crime.

D. Any document or information indicating or tending to establish that any other person (including but not limited to auditors, analysts, law enforcement officials,



and the alleged co-conspirators) believed that any meeting, conversation, use of words, practice, or conduct implicated by the indictments did not constitute a crime.

E.    Any documents or information indicating or tending to establish that Dr. Lynch did not instigate, control, authorize, approve, or acquiesce in the practices that are the subject of the indictments.

F.    Any documents or information indicating or tending to establish that the alleged false or fraudulent statements, documents, or pretenses were not false.

G.    Any documents or information tending to establish that resellers or their customers were at risk or ultimately made payments to HP/Autonomy at any time.

H.    Any documents or information indicating or tending to establish that HP or any other alleged victim or third party knew or should have known that the alleged false or fraudulent statements, documents, or pretenses were false.

I.    Any documents or information indicating or tending to establish that HP or any other alleged victim or third party knew or should have known any allegedly omitted or withheld information.

J.    Any documents or information indicating or tending to establish that the alleged false or fraudulent statements, documents, or pretenses were not material.

K.    Any documents or information indicating or tending to establish that HP or any other alleged victim or third party did not consider the alleged false or fraudulent statements, documents, or pretenses to be important.

L.    Any documents or information indicating or tending to establish that a third person was responsible for the unlawful acts alleged in any part of the indictments.

M.    Any document or information indicating or tending to establish that Dr. Lynch engaged in any conduct that forms the basis of the indictments in reliance upon advice provided by counsel, auditors, accountants, consultants, or others.

N.    Any document or information (in whatever form) that could be used to impeach any potential government witness, or any person whose statements will be introduced pursuant to Fed. R. Evid. 801(d)(2)(C), (D), or (E), including but not limited to:

   1.    Any document or information relating to any conviction, arrest, or criminal record of, and any criminal charge brought against, any potential government witness.

July 13, 2023
Page 12



2.   Any document or information relating to promises, consideration, or inducements made to any potential government witness, whether directly to the witness or indirectly to the witness's attorney, friends, family, employer, business associates, or other culpable or at risk third-party. "Consideration" means anything of value or use, including immunity grants, whether formal or informal, witness fees, transportation or relocation assistance, money, dropped or reduced charges or suggestions of favorable treatment with respect to any federal, state or local criminal, civil, or administrative matter, expectations of downward departures or motions for reduction of sentence, considerations regarding forfeiture of assets, or stays of deportation or other immigration status considerations.

3.   Any document or information tending to show the bias of a potential government witness, including animosity toward Dr. Lynch, animosity toward any group or entity of which Dr. Lynch is a member or with which Dr. Lynch is affiliated, a relationship with the alleged victim, or known but uncharged criminal conduct that may provide an incentive to curry favor with a prosecutor or against an alleged co-conspirator.  This includes but is not limited to any short investing position held by a potential witness in HP/Autonomy or any company affiliated with Dr. Lynch at any time, and any long investing position held by a potential witness in any competitor of the aforementioned companies at any time.

4.   Any document or information related to the past or future employment of any potential government witness by HP/Autonomy or any of its agents or representatives.

5.   Any document or information affecting the reliability of a potential government witness's testimony, including known alcohol or substance abuse, mental health issues or other issues that could affect the witness's ability to perceive and recall events.

6.   Any document or information relating to any inconsistency in statements given by any potential government witness.

7.   Any document or information relating to any inconsistency between agents' and/or prosecutors' rough notes and FBI 302s or other memoranda of interviews of any potential government witness.

8.   Any document or information bearing adversely on the character or reputation for truthfulness of any potential government witness.

9.   Each specific instance of conduct from which it could be inferred that any potential government witness is untruthful.

July 13, 2023
Page 13



    O.    The date of and participants in each and every interview (including not only interviews conducted by the U.S. Attorney's Office or HP, but also interviews conducted by other agencies or third parties who are part of the government as defined above), debriefing, "queen for a day" session, proffer, deposition, or other statement or description of the alleged facts made by each potential government witness (whether directly or indirectly, such as a proffer made by counsel). In addition, please specify, as to each such witness, the first date on which the witness made any allegation that Dr. Lynch engaged in any allegedly unlawful conduct or any conduct alleged in the indictments.

As you are aware, California has adopted Rule of Professional Conduct 3.8, entitled "Special Responsibilities of a Prosecutor," which provides that a prosecutor "shall make timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows or reasonably should know tends to negate the guilt of the accused, mitigate the offense, or mitigate the sentence …." Rule 3.8(d). These "disclosure obligations in paragraph (d) are not limited to evidence or information that is material under *Brady*" and "include, at a minimum the duty to disclose impeachment evidence or information that a prosecutor knows or reasonably should know casts significant doubt on the accuracy or admissibility of witness testimony on which the prosecution intends to rely." Rule 3.8 cmt. 3; *see also* ABA Standards for Criminal Justice, Prosecution Function and Defense Function 3-3.11(a) (3d ed. 1993) ("A prosecutor should not intentionally fail to make timely disclosure to the defense, at the earliest feasible opportunity, of the existence of all evidence or information which tends to negate the guilt of the accused or mitigate the offense charged or which would tend to reduce the punishment of the accused").

We contend that the foregoing categories of information constitute *Brady*, *Giglio*, and/or Rule 3.8 material, and that disclosure should take place immediately. Dr. Lynch further requests that the government identify with particularity and provide copies of all materials that qualify as *Brady* and Rule 3.8 material, as described above. Please advise us promptly whether the government will be producing *Brady* material immediately even if it is contained in what might otherwise be considered as *Jencks* material, or whether you take the position that you are not obligated to produce such material at this time.

We also request the underlying source material for any *Brady* and Rule 3.8 information, as opposed to any summary letter or paraphrased description of the information. Please advise us promptly whether the government will not be producing underlying source material.

For purposes of the *Brady* doctrine, "the format of the information does not determine whether it is discoverable." Justice Manual § 9-5.002.B.5 (2020). For example, material exculpatory information that is provided "during a conversation with an agent or a witness is no less discoverable than if that same information were contained in an email." *Id.* We therefore request that all such information be memorialized and produced to Dr. Lynch.

July 13, 2023
Page 14



## VI.     Purportedly Privileged Material

To the extent any documents are withheld under a claim of privilege or work-product protection, please provide a log identifying the document with specificity and the claimed protection.

Dr. Lynch specifically requests that the government produce all documents or information (in whatever form) produced to the government—or over which the government otherwise has custody, control, or possession—that are responsive to Dr. Lynch's discovery and *Brady/Giglio* requests contained herein or that the government would otherwise be legally required to produce, over which any individual or entity has asserted the attorney-client privilege and/or the attorney work product doctrine. This request applies to all such documents produced pursuant to (a) a non-waiver agreement between any individual or entity and the government, (b) a court order pursuant to Fed. R. Evid. 502, or (c) a court order concluding that the documents are covered by the crime-fraud exception to the attorney-client privilege.

Dr. Lynch also requests that you identify any person or entity that has asserted any attorney-client privilege, work product privilege, common interest privilege, or any other privilege as the basis for withholding or not producing, in whole or in part, any documents to the government or the grand jury during the investigation. Dr. Lynch further requests that you provide all documents (including all privilege logs) with respect to the assertion of or challenge to any such claimed privileges. This request specifically encompasses all pleadings, court orders, correspondence, and other material related to any grand jury litigation by the government in which it challenged any assertion of any privilege.

## VII.    *Jencks* Material

Pursuant to the Jencks Act, 18 U.S.C. § 3500, and Rule 26.2 of the Federal Rules of Criminal Procedure, Dr. Lynch requests that the government provide a list of the names and addresses of all witnesses that the government intends to call in its case-in-chief and all statements of those witnesses in the possession, custody, or control of the government or any other government entity, including, but not limited to, notes of interviews, FBI 302s, or other summaries prepared by government attorneys or agents, and grand jury transcripts and any other witness statements. We request that the government begin providing this material as soon as possible.

## VIII.   Scientific Evidence

Pursuant to Rule 16(a)(1)(F) of the Federal Rules of Criminal Procedure, Dr. Lynch requests production of documentation relating to all requests for, and the results of, physical or mental examinations, scientific tests, or experiments that were conducted in connection with the investigation of the charges contained in the indictments. This includes, but is not limited to:

A.      all forensic examinations of any computer hard drive, handheld cellular telephone or mobile device.

July 13, 2023
Page 15



  B. all handwriting exemplars, handwriting samples, handwriting or document analyses, and all documents examined or used in or related to such analyses.

  C. all fingerprint and palm print exemplars, fingerprint samples, comparisons, and opinions of fingerprint experts, and all documents examined or used in connection with, or that relate to, those opinions.

  D. all polygraph examinations, psychological stress examinations, hypnotic procedures, or any other scientific procedures devised to determine whether a subject is telling the truth, or to refresh a witness' memory, and all documents that refer or relate to such examinations.

## IX. Expert Evidence

  Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, Dr. Lynch requests production of a complete statement of all opinions that the government will elicit from any witness in its case-in-chief or rebuttal; the bases and reasons for each opinion; each potential expert witness's qualifications; a list of all publication authored in the previous ten years by each potential expert witness; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.  Pursuant to Rule 16(a)(1)(G)(v), Dr. Lynch requests that any such disclosure be approved and signed by the relevant witness(es).

## X. Other Crimes Evidence

  Pursuant to the Fifth and Sixth Amendments to the United States Constitution and Rules 403 and 404(b)(2) of the Federal Rules of Evidence, Dr. Lynch requests that the government disclose all evidence of similar crimes, wrongs, or acts, allegedly committed by Dr. Lynch (or any person alleged to have been acting pursuant to his instructions or in concert with him), upon which the government intends to rely on at trial.

## XI. Suppression Issues

  A. As a predicate to potential motions pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, *see* Rule 12(b)(4)(B), Dr. Lynch requests that he be informed:

    1. Whether the government intends to offer into evidence any statement made by Dr. Lynch or any family member, and the substance of any such statement.

    2. Whether any evidence in the government's possession, custody, or control was obtained by a search and seizure conducted by the government, and a description of such evidence.

    3. Whether any evidence in the government's possession, custody, or control was obtained through electronic or mechanical surveillance, including



without limitation, wiretaps, body wires, pen registers, and/or surveillance of telephone calls, and a description of such evidence.

4.    Whether any evidence in the government's possession, custody, or control was obtained through the use of a beeper or other tracking device, and a description of such evidence.

5.    Whether any evidence in the government's possession, custody, or control was obtained through a mail cover and/or trash cover and a description of such evidence.

6.    The identities of any informant or undercover agent employed by the government during its investigation.

B.    In connection with any tape recording, wiretaps, or other surveillance of the defendant during the investigation, Dr. Lynch seeks:

1.    The names and addresses of all such persons whose personal or business telephones the government tapped or monitored, or whose conversations or actions the government monitored by other means without the person's knowledge.

2.    Transcripts or other records of the statements or conversations monitored.

3.    The original recorded tapes created during such surveillance.

4.    The procedures used to conduct such surveillance.

5.    The authority under which such surveillance was conducted.

## XII.   Hearsay

A.    Dr. Lynch requests notice of any hearsay statement that the government plans to offer at trial under Federal Rule of Evidence 807, including its particulars, the declarant's name and address, and other information giving Dr. Lynch a fair opportunity to meet the statement. Fed. R. Evid. 807(b).

## XIII.   Charts and Summaries

A.    Pursuant to Fed. R. Evid. 1006, Dr. Lynch requests that he be advised whether the government will seek to offer any chart, summary, or calculation in evidence and, if so, (1) that all such charts, summaries, and calculations be produced, and (2) that all writings, recordings, or other information on which such charts, summaries, or calculations are based be made available for inspection and copying.

July 13, 2023
Page 17



## XIV.   Electronically Stored Information

    A.    Dr. Lynch requests that the government comply with the "Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases" issued by the Department of Justice and Administrative Office of the U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System in February 2012.  To that end, Dr. Lynch requests the ability to "meet and confer" with the government as needed to discuss the nature, volume, and mechanics of the government's production of ESI discovery.  Among other things, Dr. Lynch makes the following requests:

        1.    The government should produce ESI received from third parties in the format it was received.  However, if the government has further processed ESI received from third parties, such as by adding load files, converting native files to TIFF images, extracting metadata or other coding, or making electronic files searchable, the government should produce such enhanced ESI in discovery to save Dr. Lynch the expense of replicating this work.  Dr. Lynch does not seek any government attorney work product by this request.

        2.    The government should produce a table of contents describing the general categories of information available as ESI discovery in order to expedite Dr. Lynch's review of discovery and avoid discovery disputes, unnecessary expense, and undue delay.  Further, the government should produce the cover letters that accompanied and described the third-party productions of ESI and other documents to facilitate Dr. Lynch's review.

        3.    For all ESI produced from a seized, searched, or subpoenaed third-party digital device (e.g., computer, hard drive, thumb drive, CD, DVD, cell phone, Blackberry, iPhone, Android, smart phone, smart watch, or personal digital assistant), the government should identify the digital device that held the ESI, identify the device's owner or custodian, and identify the location where the device was seized, searched, or from where it was produced.

        4.    The government should produce any materials received in paper form in converted digital files that can be viewed and searched.  These materials should be produced in multi-page TIFF and OCR format where each document is one file that may have multiple pages.  Alternatively, a less preferable option would be production in multi-page, searchable PDF format.  Under no circumstances should paper materials be converted into single-page TIFF images without document breaks.

        5.    All production of ESI should maintain parent-child relationships between documents, such as where an email (the parent document) has attachments (the child documents).

July 13, 2023
Page 18



      Please let us know promptly whether there are any requests set forth in this letter with which you decline to comply.  We are available to discuss any of the foregoing requests at your convenience.  We reserve the right to supplement these requests as we continue to review the discovery material and prepare for trial.

Regards,

Reid H. Weingarten / NPS

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Jonathan M. Baum
Nicholas P. Silverman
STEPTOE & JOHNSON LLP

Christopher J. Morvillo
Daniel Silver
Celeste Koeleveld
CLIFFORD CHANCE LLP

*Counsel for Defendant*
*Dr. Michael R. Lynch*