Jonathan Matthew Baum (SBN: 303469)
**Steptoe & Johnson LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA  94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Dwight J. Draughton
Drew C. Harris
**Steptoe & Johnson LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

## NORTHERN  DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>        vs.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>             Defendants. | Case No.: 3:18-cr-00577-CRB<br><br>Judge: Hon. Charles Breyer<br><br>**DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO COMPEL AND FOR RELATED RELIEF**<br><br>Date:  January 10, 2024<br>Court:  Courtroom 6 – 17th Floor<br>Date Filed:  December 21, 2023<br>Trial Date:  March 18, 2024 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:

PLEASE TAKE NOTICE that on January 10, 2024 at 10:00 am, or as soon thereafter as counsel may be heard, in Courtroom 6, 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Michael Richard Lynch will and hereby does move the Court to (i) order the government to comply with its pretrial obligations, including production of all missing discovery and exhibits, and to produce real witness and exhibit lists reflecting what the government intends to present to the jury; (ii) strike the "supplementary" bill of particulars and either direct the government to produce a properly particularized bill of particulars or, alternatively, limit the government's proof to the transactions and events defined in the original "voluntary" bill of particulars; (iii) preclude the government from taking any depositions in January 2024; and (iv) provide other appropriate relief, as requested and specified below pursuant to Federal Rule of Criminal Procedure 16(d) and Local Rule 16-2.

This motion is based upon the Memorandum of Points and Authorities, the Declaration of Christopher J. Morvillo filed contemporaneously herewith ("Morvillo Decl."), oral argument, and the pleadings and exhibits on file with the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

The trial of this case is currently scheduled to begin in less than three months, on March 18, 2024.  Unfortunately, however, a cascade of government actions in recent weeks has materially altered the complexion of this case.  These actions place Dr. Lynch's right to a fair trial in serious jeopardy and imperil the pretrial schedule, including Dr. Lynch's ability to properly prepare for Rule 15 depositions scheduled to commence the week of January 22, 2024. Specifically, within the last two weeks, the government:  (1) filed a "supplementary" bill of particulars ("SBOP"), ECF No. 271, that dramatically expands the scope of the indictment; (2) produced an exhibit list containing nearly *12,000* trial exhibits (of which more than 2,500 appear to be missing from discovery provided to the defense);[1] and (3) produced a new witness list that contains 70 witnesses—nearly twice the number called in the *Hussain* trial.[2]  To make matters worse, twenty percent of the discovery produced by the government—totaling more than 3 million documents—was produced in an unreviewable format and likely will not be reproduced and then uploaded and processed for review by the defense until late January 2024, *after* currently scheduled Rule 15 depositions.[3]

In combination and absent urgent relief, the problems created by the government's recent disclosures are insurmountable on the current schedule.  Thus, if there is any hope to preserve the trial date and also ensure Dr. Lynch receives a fair trial, the Court should promptly:  (i) order the government to comply with its pretrial obligations, including production of all missing discovery and exhibits, and to produce real witness and exhibit lists reflecting what the government intends to present to the jury; (ii) strike the SBOP and either direct the government to produce a properly particularized bill of particulars or, alternatively, limit the government's proof to the transactions

---

[1] Morvillo Decl. Ex. 1 (Government Exhibit List, received December 8, 2023).

[2] Morvillo Decl. Ex. 2 (Government Witness List, dated December 15, 2023).

[3] The government and the defense have conferred about these issues and will continue to do so. Nevertheless, despite efforts to avoid this motion, the parties' positions sufficiently diverge such that the Court's involvement is necessary, particularly considering the impending schedule.

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION TO COMPEL AND FOR RELATED RELIEF – 3:18-CR-00577-CRB

and events defined in the original "voluntary" bill of particulars ("VBOP"), ECF No. 230, filed on October 8, 2023; (iii) preclude the government from taking any depositions in January 2024; and (iv) provide other appropriate relief, as requested and specified below.  Dr. Lynch requests expedited consideration of this motion given the rapidly approaching trial date and other important pretrial deadlines in January 2024.

When the March 18, 2024, trial date was set, the Court made clear that it chose the date based on an expectation that the government would provide the defense with proper notice of the scope of its case, its evidence, and its witnesses.  To that end, the Court noted:

> I have no problem, none, telling the government, by this date, I want you to outline what witnesses you are going to call, I want to have an idea as to what they are going to testify to.  The ambush is out.  That's not going to work here. . . .  I am going to set a schedule based on an assumption that there is cooperation, and if there isn't, then there are going to be consequences for it.

Transcript of Proc. at 10:21–11:5, June 27, 2023, ECF No. 191.  Unfortunately, with these recent disclosures, the government has done just the opposite and has left the defense largely adrift at sea with no compass as to what it can expect at trial.

First, and most notably, in a complete reimagining of the VBOP, the SBOP filed on December 18, 2023, expanded the number of discrete transactions on which the government intends to adduce evidence from 21 software sales to a staggering 124 transactions.[4]  Adding insult to injury, this fivefold increase of transactions from the VBOP is devoid of any particulars as to why *any* of those transactions is connected to a scheme to defraud.[5]  Likewise, and further roiling the trial preparation waters, the SBOP also added an entirely new theory of fraud—that Autonomy overstated its "organic growth"—adding a highly complex issue to the mix that would require an assessment of acquisitions and calculations that occurred years prior to the

---

[4] *Compare* VBOP at 3–4 *with* SBOP at 2–4.

[5] A similar problem plagues the VBOP, which was tethered to the government's then yet-to-be-produced exhibit list (which Dr. Lynch hoped would narrow the VBOP appropriately). Unfortunately, the gargantuan exhibit list (discussed below) had the opposite effect and a new, proper bill of particulars is entirely justified.

alleged conspiracy.[6]  The whole point of the VBOP filed in October—after extensive negotiations with the defense to avoid motion practice—was to enable the defense to focus its trial preparation efforts on the evidence and allegations that would form the basis of the government's case.  That admirable goal has been unexpectedly thwarted, with Dr. Lynch now confronting more than *100 additional* sales of Autonomy software.

Problematically, it is unclear from the government's new list what, if anything, the government alleges was improper about these sales or why they are part of the alleged conspiracy.  Furthermore, each of these 100 additional sales is effectively a case unto itself and will require investigation by the defense to understand the nature, contours and context of each, the accounting treatment attributed, the relevant witnesses involved, and the myriad documents and other evidence required to make a proper assessment of the available responses and defenses to each deal.  Conducting this analysis for the 21 deals on the government's original VBOP is a monumental task in the time allotted; the prospect of doing this for all 124 transactions less than 90 days before the start of trial—and 30 days before depositions start—is inconceivable.  And that is before consideration of the new allegations about misstated organic growth.  The SBOP is too much too late and should be struck from the case or significantly revised and properly particularized.

Second, on December 8, 2023, the government provided the defense with its exhibit list as required by the Court's scheduling order.  That list contained an astonishing 11,904 exhibits.

---

[6] And still further, the SBOP also states that, notwithstanding the Court's severance of Count 17, the government intends to introduce post-acquisition evidence "for percipient witnesses and other evidence evaluating or discussing Autonomy during the relevant period of 2009-2011 after-the-fact."  SBOP at 5.  While it is not entirely clear from this cryptic disclosure what post-acquisition evidence the government intends to adduce, the government's selective admission of post-acquisition evidence would be fundamentally unfair.  To place the government's proffered evidence in context, the defense must be given a fair opportunity to explain HP's mismanagement, scapegoating, and ultimately fraud in the post-acquisition period.  The Court should either preclude this end-run around its order severing Count 17 or authorize the defense to issue the proposed Rule 17(c) subpoenas seeking evidence of HP's post-acquisition misconduct and write-down misconduct.  While some of these issues can await resolution in the context of in limine motions, subpoenas should be authorized as soon as practicable.

To put this unprecedented number in context, the government "only" introduced approximately 1,000 exhibits during the *Hussain* trial, meaning that the government has now identified more than ten times the number of exhibits it used in the *Hussain* trial.  Given the government's estimate at the last court appearance that its case would be 3–4 weeks (an estimate that is several weeks *shorter* than the *Hussain* trial), it is apparent that the government has no intention of introducing nearly 12,000 exhibits at trial.

That this is so is clear from a review of the exhibit list, which is apparently comprised of all documents on the *Hussain* exhibit list, all documents referenced in the sprawling UK civil litigation, all documents referenced in 302s, grand jury testimony, SEC testimony, HP witness interviews over the course of the last 11 years, and all emails (thousands) during the relevant period on which either defendant appears.  With such a kitchen sink approach, the defense could have created that list, but it serves no real purpose in helping the defense identify what exhibits the government plans to put before the jury.  While perhaps the government's goal was to be over-inclusive to avoid claims of an ambush down the road from its use of an undisclosed document, it is the over-inclusivity that actually creates that threat.  The defense cannot possibly be prepared (in the time remaining) to anticipate, address, and contextualize possible claims, assertions, and arguments that the government might pluck from this endless sea of exhibits. The government should know what exhibits it is likely to use at trial and should identify them promptly.

Rivaling the insurmountable breadth of the exhibit list are the problems created by the haphazard and disorganized nature in which it was produced.  For instance, a simple sorting of the list by Bates number revealed over 1,300 documents on the list that are duplicative (and in some instances triplicate or more) of other exhibits.  The government also includes duplicate documents with different Bates numbers.[7]  Further, the exhibit list includes more than 1,100

---

[7] Defense counsel have conferred with the government relating to the exhibit list and the duplications thereon, and it is expected that the government will endeavor to produce a deduplicated exhibit list in due course.  Even deduplicated, however, the government's list will

documents that appear to relate to the now-severed Count 17 and more than 200 documents that pre-date the beginning of the alleged conspiracy.  How these documents relate to the government's recently-revised Rule 404(b) disclosure,[8] which now excludes reference to Count 17 overt acts and identifies only one pre-conspiracy alleged bad act—the preclusion of an analyst from analyst calls—is unclear.

Perhaps most alarming of all, however, is that after a time-consuming and diligent search of the discovery produced to date, the defense is unable to find more than 2,500 of the exhibits on the government's exhibit list.  Furthermore, a portion of these missing exhibits have Bates prefixes that the government has not produced in discovery, meaning that the defense may be missing thousands, tens of thousands or, perhaps, even millions of documents with these Bates prefixes.  While the government is attempting to address and produce with urgency the missing documents from the exhibit list (which is appreciated), the problem remains that the documents were missing or unidentifiable in the first instance and it is unknown when they will be available to the defense for review.

The government's haphazard exhibit list falls woefully short of any reasonable effort to provide the defense with adequate notice of the allegations it must be prepared to meet at trial, particularly tethered as it is to the VBOP.  The government has simply amassed a collection of nearly 12,000 documents that have come up in the long history of this and related cases to comply with the letter of the Court's order to produce an exhibit list, but, in doing so, defeats the very purpose that the list was intended to serve:  to provide the defense with the exhibits it intends to place before the jury so that the defense has sufficient information to properly prepare for trial and to identify potential defense exhibits.  In a case with more than 16 million documents produced in discovery—drawn from investigations and litigations across a span of eleven years—a focused exhibit list is desperately required in this case.

---

still likely leave the defense sorting through 10,000 potential trial exhibits, which, again, dwarfs the number of exhibits disclosed to the defense pretrial in *Hussain* (around 3,000) and, by orders of magnitude, exceeds the number of exhibits likely to be introduced in evidence at this trial.

[8] Morvillo Decl. Ex. 3 (Government 404(b) disclosure, dated December 15, 2023).

But there is still more:  the defense is missing literally millions of pages of discovery in a reviewable format.  On November 22, 2023, Dr. Lynch notified the government that it had just discovered that more than 3.3 million documents produced in discovery were not produced in a format that allowed them to be viewed, searched, or analyzed.  On November 29, 2023, the defense (at the request of the government) provided the government with a hard drive so that the government could reproduce those 3.3 million documents promptly.  While the process of copying such a large quantity of files is understandably time-consuming, the government informed the defense on December 13, 2023, that it would still take several more weeks for these documents to be produced.

Given the volume of missing documents—which may (hopefully) contain some of the 2,500 missing exhibits—the defense expects that it will take at least another 3–4 weeks after these documents are produced for the data to be uploaded to its database and available for review.  At best, then, these missing documents—which represent approximately twenty percent of the more than 16 million documents produced by the government—will not be ready to review until after the Rule 15 depositions are scheduled to take place, making compliance with that schedule untenable.  While it appears that the problem with these documents is the result of an error in copying the documents for Dr. Lynch, and the government has assured Dr. Lynch that it is working diligently to remedy the situation, the fact remains that Dr. Lynch is unable to review—let alone identify any for use in depositions or in connection with in limine motions— these documents until they are reproduced and uploaded to his review platform.

Third, the government's witness list is likewise deficient and fails to comply with the Court's pretrial directives.  On August 8, 2023, the government produced a preliminary witness list to the defense that contained the names of 65 prospective witnesses (plus 18 custodial witnesses).[9]  Even with Count 17, that list seemed excessive given that the government "only" called 37 witnesses in the *Hussain* trial.  On November 22, 2023, the government provided the defense with a new witness list which rocketed to a total of 80 witnesses (not counting 19

---

[9] Morvillo Decl. Ex. 4 (Government Witness List, dated August 8, 2023).

custodial witnesses).[10]  At the pre-trial conference on November 29, 2023, the Court expressed incredulity at the size of the government's list (the Court:  "What's the next one?  A hundred?"), and ordered the government to "get a new witness list out."  Transcript of Proc. at 33:2–8, June 27, 2023, ECF No. 191.  Particularly in light of the Court's direction and its decision to sever Count 17, the defense was dismayed to see that the government's third attempt at a witness list (produced on December 15, 2023) still contained 70 prospective witnesses (and the 19 custodial witnesses).[11]

Particularly in tandem with its sprawling exhibit list and SBOP, the government's distended witness list inexorably compounds the demands on the defense.  While it is inconceivable that the government will call anywhere near 70 witnesses at this trial—a fact made plain by the government's stated expectation that its case-in-chief will take 3–4 weeks—the defense must still be prepared to cross-examine all 70 witnesses.  Again, though it may be that the government's list is over-inclusive to avoid a claim of foul at trial, placing the burden on the defense to prepare to meet 70 potential witnesses is not the solution to that problem.  Although the Court directed the government to "outline what witnesses you are going to call" and provide "an idea as to what they are going to testify to," the government, instead, has provided a list of witnesses that it is *considering* calling.  Less than three months from trial, the government must know who its witnesses are and its failure to identify them significantly inhibits the ability of the defense to prepare for trial and plan its own case.  The Court should order the government to provide a real witness list.

The upshot of all of this is that, prior to the receipt of the government's exhibit list, witness list and SBOP, the defense was on notice that the government was preparing to try an already unwieldy case involving roughly 20–25 complex software transactions; in the wake of the government's recent filings, it now appears that the government is intending to cram more than *five times* that number of transactions into this trial, through the use of untold thousands of

---

[10] Morvillo Decl. Ex. 5 (Government Witness List, dated November 22, 2023).

[11] Morvillo Decl. Ex. 2 (Government Witness List, dated December 15, 2023).

exhibits and potentially 70 witnesses.  And, despite this already mammoth case, the government is still identifying—five years after indicting Dr. Lynch and Mr. Chamberlain—new theories of fraud that are not referenced in the indictment.

While the government may still be unsure how it can prove its allegations, the government has now buried the defense in a blizzard of exhibits, witnesses, and transactions which make it impossible to meaningfully prepare for trial.  Despite the Court's warnings that trial by ambush is not a proper strategy, the path ahead is shrouded in so much mystery that an ambush is all but inevitable.  In sum, the government's "big bang" approach to its Court-ordered disclosures—reflecting a rapidly evolving and expanding universe of transactions, witnesses, and evidence—gravely threatens Dr. Lynch's right to a fair trial and Dr. Lynch needs consequential relief.

To emphasize the urgency, there are three witnesses scheduled to be deposed in January, when the trial effectively begins.  Additionally, in limine motions are due on January 17, 2024 (not to mention defense Rule 16 disclosures on January 3 and jury questionnaires on January 10).  Given the disclosure issues described above and the fact that the defense is missing twenty percent of the discovery in this case, there is simply no realistic way that any of the January dates can hold.  Indeed, absent prompt relief, the March trial date appears in serious jeopardy.

Based on the forgoing, Dr. Lynch seeks the following relief:

1. An order compelling the government to produce a new witness list within seven days of any Court order, containing the witnesses it actually intends to call at trial.

2. An order compelling the government to produce a final exhibit list within seven days of any Court order that is fully deduplicated and limited to the documents it actually intends to introduce in its case.

3. An order compelling the government to produce all missing discovery including the 3.3 million defective documents and all documents with the Bates ranges previously identified to the government by the defense as missing.

4. An order compelling the government to separately produce numbered copies of all exhibits on its new exhibit list in a searchable and reviewable format.

5. An order striking the government's SBOP and precluding the government from adducing evidence at trial that is outside the scope of the government's VBOP or directing the government to produce a new appropriately particularized BOP (identifying with specificity, among other things, the manner in which any specified transactions advanced the alleged schemes to defraud).

6. An order precluding the government from taking any depositions based on its failure to comply with its disclosure obligations or, alternatively, adjourning all depositions until 30 days after the government complies with all other aspects of this order and after the defense receives and is able to review missing discovery.

7. An order adjourning the defense date for filing in limine motions until 30 days after the government complies with all other aspects of this order and after the defense receives and is able to review missing discovery.

8. An order adjourning the defense date for the disclosure of Rule 16 material until 30 days after the government complies with all other aspects of this order and after the defense receives and is able to review missing discovery.

9. Such other relief as the Court deems just and appropriate under the circumstances.

To be clear, Dr. Lynch does not wish to seek an adjournment of the trial date. Nevertheless, absent prompt and consequential relief from the Court, Dr. Lynch is at grave risk of being denied due process and a fair trial.

**CONCLUSION**

For the reasons set forth above, Dr. Lynch's motion to compel and for related relief should be granted.


Dated: December 21, 2023

        Respectfully submitted,

        By:  _/s/ Christopher J. Morvillo__
        Christopher J. Morvillo

        Christopher J. Morvillo
        Celeste L.M. Koeleveld
        Daniel S. Silver
        (Admitted Pro Hac Vice)
        **CLIFFORD CHANCE US LLP**

        Jonathan Matthew Baum (SBN: 303469)
        **STEPTOE & JOHNSON LLP**
        One Market Street
        Steuart Tower, Suite 1070
        San Francisco, CA  94105
        Telephone:  (510) 735-4558
        jbaum@steptoe.com

        Reid H. Weingarten
        Brian M. Heberlig
        Michelle L. Levin
        Nicholas P. Silverman
        Dwight J. Draughton
        Drew C. Harris
        **STEPTOE & JOHNSON LLP**
        1114 Avenue of the Americas
        New York, NY 10036
        Telephone:  (212) 506-3900

        *Attorneys for Defendant*
        *Michael Richard Lynch*