Jonathan Matthew Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Dwight J. Draughon
Drew C. Harris
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No.: 3:18-cr-00577-CRB<br>Judge: Hon. Charles Breyer<br>**DEFENDANT MICHAEL RICHARD LYNCH'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN CATEGORIES OF EVIDENCE**<br><br>(**Lynch MIL No. 5**)<br><br>Date: February 21, 2024 at 2 p.m.<br>Court: Courtroom 6 – 17th Floor<br>Date Filed: January 17, 2024<br>Trial Date: March 18, 2024 |

# TABLE OF CONTENTS

**Page Nos.**

I. MOTION TO EXCLUDE EVIDENCE OF OTHER ALLEGED WRONGS OR BAD ACTS ............................................................................................................. 1

    A. Introduction ................................................................................................................ 1

    B. Legal Standard .......................................................................................................... 1

    C. Evidence Regarding Autonomy Analyst Daud Khan Should be Excluded ............ 2

        1. Factual Background ............................................................................................. 2

        2. Discussion ............................................................................................................ 3

            a. The evidence is not admissible under Rule 404(b) ..................................... 3

            b. The evidence is not admissible under Rule 403 ......................................... 5

    D. Evidence Regarding the Terminations of Hogenson, Tejada, and Prasad and the Settlements of Their Lawsuits Should be Precluded ............................................... 6

        1. Factual Background ............................................................................................. 6

        2. Discussion ............................................................................................................ 7

II. MOTION TO EXCLUDE EVIDENCE OF TRANSACTIONS THAT PREDATE THE ALLEGED CONSPIRACY ................................................................... 9

III. MOTION TO EXCLUDE IRRELEVANT AND PREJUDICIAL EVIDENCE OF BEHAVIOR ................................................................................................................ 10

IV. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

**Page Nos.**

*Huddleston v. United States*,
   485 U.S. 681 (1988) .................................................................................................. 4, 7

*Hudspeth v. Comm'r*,
   914 F.2d 1207 (9th Cir. 1990) ........................................................................................ 8

*Rhoades v. Avon. Prod., Inc.*,
   504 F.3d 1151 (9th Cir. 2007) ........................................................................................ 8

*United States v. Bailleaux*,
   685 F.2d 1105 (9th Cir. 1982) ........................................................................................ 1

*United States v. Berckmann*,
   971 F.3d 999 (9th Cir. 2020) ..................................................................................... 1, 4

*United States v. Charley*,
   1 F.4th 637 (9th Cir. 2021) ........................................................................................ 1, 4

*United States v. Hussain*,
   16-cr-462-CRB-1, ECF No. 245 (N.D. Cal. Feb 9, 2018) .......................................... 11

*United States v. Miller*,
   874 F. 2d 1255 (9th Cir. 1989) ....................................................................................... 2

*United States v. Preston*,
   873 F.3d 829 (9th Cir. 2017) .......................................................................................... 1

**Statutes and Rules**

Fed. R. Evid. 401 ................................................................................................................. 1

Fed. R. Evid. 402 ................................................................................................................. 1

Fed. R. Evid. 403 ..................................................................................................... 1, 5, 8, 9

Fed. R. Evid. 404 ..................................................................................................... 1, 2, 3, 4

Fed. R. Evid. 408 ................................................................................................................. 8

## NOTICE OF MOTION AND MOTIONS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:

PLEASE TAKE NOTICE that on February 21, 2024, at 2:00 pm or as soon thereafter as counsel may be heard, in Courtroom 6, 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Michael Richard Lynch will and hereby does move the Court to exclude certain categories of evidence, including evidence relating to Daud Khan, an Autonomy analyst; evidence pertaining to the terminations of three Autonomy finance employees; evidence predating the alleged scheme; and irrelevant and prejudicial evidence of behavior.

This motion is based upon the following Memorandum of Points and Authorities, the Declaration of Celeste L.M. Koeleveld, any oral argument, and the pleadings and exhibits on file with the Court.

Dated: January 17, 2024

Respectfully submitted,
*/s/ Christopher J. Morvillo*

Christopher J. Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

*Attorneys for Defendant*
*Michael Richard Lynch*

## SUMMARY OF ARGUMENT

Defendant Michael Richard Lynch moves *in limine* to exclude evidence of uncharged conduct and other acts. Specifically, Dr. Lynch moves to preclude reference to, or introduction of, the following evidence:

(i) evidence that Autonomy's management team allegedly retaliated against Daud Khan, an Autonomy analyst;

(ii) evidence that Dr. Lynch "caused" the terminations of three employees of Autonomy's U.S. finance team and approved of later settlements;

(iii) evidence of innocuous humor within Autonomy;

(iv) evidence of alleged bullying or intimidating behavior on the part of Dr. Lynch; and

(v) evidence of Dr. Lynch and his family's wealth, including references to property the family own and to the proceeds Dr. Lynch's wife—like all Autonomy shareholders who tendered their shares to HP—received following the acquisition.

As explained further in this motion *in limine*, this evidence should be excluded as irrelevant and inadmissible. This evidence is not related to the accounting allegations in this case and would unduly prejudice Dr. Lynch. Moreover, this evidence would create multiple trials within a trial as Dr. Lynch would be required to explain or defend unrelated conduct, which would in turn cause delay and confuse the jury. Dr. Lynch's motion should be granted to ensure that evidence that seeks to distract the jury and impugn Dr. Lynch's character is not admitted.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. MOTION TO EXCLUDE EVIDENCE OF OTHER ALLEGED WRONGS OR BAD ACTS

### A. Introduction

Defendant Michael Richard Lynch moves to preclude evidence of uncharged conduct and other acts. On December 15, 2023, the government advised Dr. Lynch that it intends to offer evidence, pursuant to Federal Rule of Evidence 404(b), about (i) alleged interactions with Daud Khan, a JP Morgan securities analyst, who covered Autonomy, and (ii) the terminations of certain employees of Autonomy's finance department and subsequent settlements of lawsuits filed by those employees against Autonomy. This evidence serves no apparent purpose besides suggesting to the jury that Dr. Lynch and his colleagues were vindictive. The conduct is unrelated to the charges in this case, and to the extent it involves Dr. Lynch at all, it does so only tangentially. The evidence should be excluded as irrelevant under Federal Rules of Evidence 401 and 402, and inadmissible under Rules 403 and 404(b).

### B. Legal Standard

Under Rule 404(b), evidence of bad acts may not be admitted to show criminal propensity, but instead may be admitted only to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *United States v. Berckmann*, 971 F.3d 999, 1002 (9th Cir. 2020). The government bears the burden of proving that the proposed other act evidence satisfies four criteria: "(1) the evidence tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that [the] defendant committed the other act (sufficiency); and (4) . . . the act is similar to the offense charged (similarity)." *United States v. Charley*, 1 F.4th 637, 647 (9th Cir. 2021) (citation omitted). "But even then, '[t]he use of such evidence must be narrowly circumscribed and limited.'" *Id.* (citing *United States v. Bailleaux*, 685 F.2d 1105, 1109 (9th Cir. 1982)). "When seeking to introduce other act 404(b) evidence for the purpose of proving intent, the proposing party must show that the other 'act is similar to the offense charged.'" *United States v. Preston*, 873 F.3d 829, 840 (9th Cir. 2017). Otherwise, the other act

DEFENDANT MICHAEL RICHARD LYNCH'S MOTION IN LIMINE TO EXCLUDE CERTAIN CATEGORIES OF EVIDENCE (LYNCH MIL NO. 5) – 3:18-CR-00577-CRB

1

"does not tell the jury anything about what the defendant intended . . . unless, of course, one argues (impermissibly) that the [other] act establishes that the defendant has criminal propensities." *Id.* (citing *United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir. 1989)).

### C. Evidence Regarding Autonomy Analyst Daud Khan Should be Excluded

Dr. Lynch moves to preclude the government from presenting evidence about, or referring to, alleged retaliation against Mr. Khan by members of Autonomy's management team. In its revised Rule 404(b) notice filed on December 15, 2023, the government states that (i) it intends to introduce evidence that at a meeting with Dr. Lynch and others in 2008, Daud Khan "was threatened that Autonomy would 'take steps' if he published a research note." ECF No. 272-4. The notice continues that (ii) "[a]fter the meeting Autonomy was going to give alleged evidence of wrongdoing by Khan to the United Kingdom's Financial Services Authority ["FSA"] if Khan published a research note." *Id.* The notice further states that (iii) Khan "was prohibited from attending analyst conference calls from Q2 2008 through 2009." *Id.* The government argues that Dr. Lynch's alleged "threats to analysts . . . evidence his intent to deceive and defraud and consciousness of guilt." *Id.* This evidence—which mischaracterizes what actually happened—should be excluded because it is irrelevant, highly prejudicial, and will create an unnecessary side show.

#### 1. Factual Background

The government's notice twists the facts and omits key details about Khan's behavior. In fact, Autonomy reported Khan to the FSA because Autonomy had reason to believe he was engaged in misconduct, not in retaliation for anything Khan sought to publish about Autonomy.

To begin with, the government conflates what happened in regard to Khan's research note with what happened with the FSA, whereas Khan did not connect these two events in the *Hussain* trial. As to the research note, Khan testified that after he shared a copy of the note with Autonomy, as was customary, Dr. Lynch, while making clear that Autonomy "in no way [had] any issue with opinions or conclusions you may draw from the fact of your note," expressed concern about "factual inaccuracies" in the note. *Hussain* Tr. at 3031:20–3032:1. During a meeting among Khan, David Knox, the head of research at Cazenove (where Khan was

employed as an analyst at the time), Dr. Lynch, and Mr. Hussain, Dr. Lynch "objected to [Khan's] calculations of organic growth rates," *Hussain* Tr. at 3036:15–16, and noted that, as a public company, Autonomy "need[ed] to defend ourselves." *Hussain* Tr. at 2987:23–24.  Khan agreed that as a CEO, Dr. Lynch had a duty to correct something he thought was inaccurate. *Hussain* Tr. at 3032:20–23.  Following the meeting, Khan "did make some edits before publishing the note" in May 2008 "[t]o try to make it more accurate." *Hussain* Tr. at 3036:20–25.  That was the end of the matter.  The published note—which discussed Autonomy's acquisition of Verity in 2007—does not concern any transaction in this case.

Separately, Autonomy (but not Dr. Lynch) brought concerns about Khan's conduct to the attention of the FSA.  Specifically, in May 2008, Andrew Kanter, Autonomy's General Counsel and Chief Operating Officer, brought to the attention of Knox, Cazenove's head of research, and to the FSA that Khan was engaging in inappropriate conversations with fund managers that suggested Khan was engaged in illegal behavior, such as frontrunning. *Hussain* Tr. at 3039:9–25.[1]  In his trial testimony, Khan did not tie Kanter's referral to his research note, affirming that "nobody from Autonomy was threatening [him] at this point." *Hussain* Tr. at 3043:15–17.  In light of the referral to the FSA, Kanter advised Khan and Knox that it would be inappropriate for Autonomy to speak directly with Khan, and Khan was excluded from being physically present at Autonomy's earnings calls for a period of time, though he could listen in by phone. *Hussain* Tr. at 2994:10–13.[2]

   **2.   Discussion**

      **a.   The evidence is not admissible under Rule 404(b)**

---

[1] *See also* Koeleveld Decl. Ex. 1 (Email from Andrew Kanter to David Knox (May 2, 2008, 9:54) (Government Exhibit 2658) (Bates JPMC-AU-DOJ-00008769)).

[2] Additionally, in 2009, someone at Autonomy—Khan did not know who—raised concerns that Khan was improperly trying to obtain inside information from the former CFO at Intervowen, which Autonomy acquired in January 2009. *Hussain* Tr. at 3064–69.  Although Khan denied that he was doing anything improper, he conceded that his outreach to the former CFO was "slightly unusual" and appreciated that the CFO might be reluctant to answer Khan's questions. *Id.* at 3066:25, 3069:6–7.  Given the admittedly unusual circumstances, the referral to the FSA was appropriate.

Having to set the record straight about what did and did not happen with Daud Khan would unduly prolong the trial, and the suggestion that Dr. Lynch did anything wrong will be unfairly prejudicial. The evidence of alleged wrongdoing by Dr. Lynch against Mr. Khan should be excluded because it is unrelated to the allegations. As a threshold matter, of the three alleged prior acts relating to Mr. Khan, Dr. Lynch is alleged to have been involved in only one— pointing out inaccuracies in one of Khan's research notes. The evidence that Mr. Kanter reported Mr. Khan to the FSA or that Mr. Khan was excluded from attending earnings presentations in person does not involve Dr. Lynch and should be excluded on that basis alone. *See Huddleston v. United States*, 485 U.S. 681, 689 (1988) ("[S]imilar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor.").

Turning to the evidence of Dr. Lynch's comments to Mr. Khan regarding errors in his note, that evidence should be excluded because it fails several requirements under Rule 404(b). First, Mr. Khan's research note did not pertain to any of the transactions involved in the alleged scheme. Moreover, Dr. Lynch's criticism was apparently justified, as Khan made several changes to his note before it was published in May 2008. Lastly, Mr. Khan does not allege that Dr. Lynch pressured him to write anything that was inaccurate. Therefore, the proffered evidence has no bearing on the offense charged. *See Charley*, 1 F.4th at 647.

Second, the alleged bad acts predate the period of the alleged fraud, which begins in January 2009. According to the government's evidence, the meeting with Mr. Khan, Kanter's report to the FSA, and Mr. Khan's subsequent exclusion from earnings presentations all occurred in 2008. The events are not, therefore, coterminous with the alleged fraud. *See id*.

Attenuated as it is from the alleged scheme, the government's evidence is more akin to "evidence of a person's character or trait of character," which is barred by Rule 404(b). *See Berckmann*, 971 F.3d at 1002. The government intends to offer the evidence to impugn Dr. Lynch's character to imply that he is vindictive or otherwise overbearing. This usage plainly violates Rule 404(b), which provides that evidence is not admissible "to show that on a particular occasion the person acted in accordance with [their] character." Fed. R. Evid. 404(b)(1). Whether or how Dr. Lynch voiced his disagreement with an analyst's ongoing research has no

bearing on the accounting fraud allegations in this case. The proposed evidence relating to Mr. Khan is irrelevant, predates the alleged fraud, and constitutes improper character evidence, and should be excluded.

### b. The evidence is not admissible under Rule 403

Even if the Court were to find that the evidence of interactions between Autonomy management and Mr. Khan is relevant and admissible, the evidence should still be excluded under Rule 403 because it is of minimal probative value, is unduly prejudicial, and would generate a trial within a trial that would cause undue delay.

As noted above, the proffered evidence is unrelated to the allegations in this case. Dr. Lynch's comments to Mr. Khan reflect his good faith disagreement with Mr. Khan's analysis regarding an acquisition that is not part of the alleged scheme. The probative value of the evidence, in other words, is negligible. On the other hand, there is a very real risk that the jury will make improper inferences about Dr. Lynch's character, which would cause him undue prejudice.

Moreover, the proffered evidence runs the risk of creating several distracting sideshows for the jury regarding events that, again, are irrelevant to the allegations. For example, Mr. Khan's 2008 research note sought to analyze Autonomy's acquisition of a smaller company in 2007, which predates and is unrelated to the alleged conduct. If the government is allowed to introduce this evidence, the defense would be forced to point out how Khan's note was inaccurate and why Dr. Lynch brought those errors to his attention—even though the subject matter of that note is not even part of the alleged scheme. Similarly, the evidence about the referral to the FSA would necessarily beg the question whether Mr. Khan in fact engaged in misconduct. Thus, this would open the door to evidence regarding what was reported to the FSA, the basis for that report, and the FSA's ensuing investigation. This would require another detour wholly divorced from the actual allegations in this case. Lastly, evidence of Khan's exclusion from in-person attendance at earnings presentations would lead to testimony regarding who from Khan's firm did attend, whether Khan attended by phone, and the circumstances of his

1   exclusion (*i.e.*, the FSA investigation), which would again create an unwarranted distraction
2   from the actual allegations.
3         Because the admission of evidence regarding interactions between Mr. Khan and
4   Autonomy's management would lack probative value, prejudice Dr. Lynch, and require several
5   distracting trials within a trial, it should be excluded.

      **D.    Evidence Regarding the Terminations of Hogenson, Tejada, and Prasad and the Settlements of Their Lawsuits Should be Precluded**

      The government's 404(b) notice also indicates that it intends to present evidence that Dr. Lynch "caused" the termination of three employees in Autonomy's U.S. finance department—Brent Hogenson, Percy Tejada, and Reena Prasad—and that Dr. Lynch approved "settlements of potential whistleblower claims by them." This evidence should be excluded because it would falsely imply that Autonomy's management engaged in unlawful retaliation against Mr. Hogenson and his team and would cause undue confusion and delay.

      **1.    Factual Background**

      Mr. Hogenson was the Chief Financial Officer of Autonomy in the Americas and worked together with Mr. Tejada and Ms. Prasad. In early 2010, Autonomy uncovered fraud in the U.S. payroll department overseen by Mr. Hogenson. Mr. Kanter appointed Joel Scott, Autonomy's U.S. General Counsel, to conduct an investigation into the fraud. Mr. Scott was authorized to review the finance team's practices and reach appropriate conclusions. Mr. Scott hired two outside forensic firms to assist with investigating and reviewing the finance team's practices.

      The investigations revealed that multiple employees in the finance department had embezzled funds and that Mr. Hogenson had separately violated numerous company policies. For example, Mr. Hogenson was found to have paid reseller fees without approval, returned funds to customers without approval, engaged in questionable travel, submitted false expense reports, and failed to ensure the proper implementation of sufficient controls to detect and prevent payroll fraud. In addition, Mr. Hogenson asked the IT department to wipe his laptop after he fired one of the employees engaged in the fraud, and he involved himself in the payroll fraud investigation even though Mr. Scott asked him not to. After the investigations into the

embezzlement scandal, Autonomy's management consulted with its auditor, Deloitte, and the Audit Committee of the Board and instituted several safeguards within the U.S. finance department, including appointing Mr. Scott to oversee the department, relocating the department to San Francisco, and requiring the department to seek additional authorizations from management in England.

As a result of these safeguards, Mr. Scott was authorized to determine whether any current employees implicated in the investigations should be terminated. Mr. Scott decided to terminate Mr. Hogenson and his team members, Mr. Tejada and Ms. Prasad, based on the violations uncovered by the investigations. Mr. Scott has told the government that he "felt, from day one, that there was something odd and untrustworthy about [Mr.] Hogenson," and that he felt that Mr. Hogenson "acted based on his own agenda."[3]

The three terminated employees later threatened to sue for unlawful retaliation. In response, Mr. Kanter negotiated a settlement with each employee, in which there was no admission of liability. Dr. Lynch did not agree with the decision to settle.

**2.    Discussion**

The evidence of Mr. Hogenson's, Mr. Tejada's, and Ms. Prasad's terminations and later settlements with Autonomy should be excluded for several reasons. First, evidence of the terminations is irrelevant because Dr. Lynch was not involved in the termination decisions. *See Huddleston*, 485 U.S. at 689. Instead, the terminations followed Mr. Scott's extensive investigations, aided by outside forensic firms, into the embezzlement scandal within the finance department and the discovery of other misconduct by Mr. Hogenson. As the head of the investigation, Mr. Scott exercised his discretionary authority, chose to terminate each employee, and personally notified each employee of his decision. Although Autonomy's management (including Dr. Lynch) discussed and was apprised of the investigation, Mr. Scott ultimately made the decisions to terminate. Contrary to the government's assertion—tellingly rendered using passive voice—Dr. Lynch did not "cause" the terminations to occur. Moreover, any approval by

---

[3] Koeleveld Decl. Ex. 2 (Memorandum of an interview with Joel Scott (January 7, 2013) (Bates HP-SEC-00329246)).

Dr. Lynch of the final payouts related to the settlements was not in any way related to Mr. Scott's discretionary decision to terminate Mr. Hogenson, Mr. Tejada, and Ms. Prasad in the first instance. Indeed, Dr. Lynch did not approve of the settlements.

Second, the evidence of the settlements is improper and unfairly prejudicial because it suggests that the settlements are an admission of liability. Federal Rule of Evidence 408 bars evidence from settlement negotiations "when offered to prove liability for, invalidity of, or amount of a claim that was disputed." *Rhoades v. Avon. Prod., Inc.*, 504 F.3d 1151, 1160 (9th Cir. 2007) (citing Fed. R. Evid. 408). The rule also applies to settlements with third parties. *See Hudspeth v. Comm'r*, 914 F.2d 1207, 1213 (9th Cir. 1990). Admitting this evidence to suggest that Dr. Lynch improperly retaliated against the terminated employees and then admitted wrongdoing via Autonomy's decision to settle would plainly violate Rule 408. It would also ignore the myriad reasons that can inform a settlement agreement, such as an effort to mitigate damages in response to potential litigation risk. Moreover, evidence of the settlements will create a sideshow around the amount of each payout and its justifications, as the jury may incorrectly assume that Autonomy did something wrong merely from the size of the payout to each employee.[4] Finally, the prejudicial nature of the settlement evidence would substantially outweigh any probative value, rendering this evidence inadmissible under Rule 403.

The Court should exclude evidence relating to the termination of Mr. Hogenson, Mr. Tejada, and Ms. Prasad and later settlements because the evidence is irrelevant and prejudicial, would improperly suggest that the settlements show a consciousness of guilt, and cause undue delay by requiring unnecessary litigation on collateral matters.

---

[4] Indeed, that is precisely the conclusion the government urged the jury to draw, improperly, in the *Hussain* trial. *See Hussain* Tr. at 5782:13–16 ("Ladies and gentlemen, you do not pay that kind of money to someone who has made false accusations. Okay? You know that that didn't happen. This $750,000 was hush money to Brent Hogenson.").

## II. MOTION TO EXCLUDE EVIDENCE OF TRANSACTIONS THAT PREDATE THE ALLEGED CONSPIRACY

The Court should also preclude evidence of transactions that predate 2009 to 2011, the time period of the alleged conspiracy. Although the government has not explicitly said so in its 404(b) notice, it appears from the Supplementary Bill of Particulars ("SBOP") filed on December 18, 2023, that the government intends to go back all the way to 2000 to determine whether Autonomy has historically provided accurate information about its organic growth. *See* ECF. No. 271. Such evidence is outside the scope of the indictment, irrelevant, prejudicial, and would result in a massive detour to examine the accuracy of Autonomy's organic growth figures for each year from 2000 through 2008, during which Autonomy made a number of acquisitions including Verity, Zantaz, and Meridio. The Court should prevent this sideshow.

### 1. Factual Background

The government gave notice in the SBOP that it intends to "adduce evidence about Autonomy's misleading disclosures about 'organic growth' in 2009-2011." The government further stated that it intends to prove this allegation by establishing that Autonomy made "misleading claims" about its "historical growth in total revenue reflected growth in sales of Autonomy's principal product, IDOL, when in fact the total revenue grew mostly from revenue acquired by Autonomy through corporate acquisitions between 2000 and 2011 that was mischaracterized as revenue from sales of IDOL." A company's organic growth year over year, however, is based on a comparison between its revenues in the current year vs. revenues in the previous year, and a determination of what percentage, if any, of those revenues is attributable to an acquisition (meaning the rest of the growth in revenues would be organic). Any statement by Autonomy about its "organic growth" in 2009, then, would look to its revenues in 2008 and consider any acquisitions that occurred that year. Going back further, in turn, would require a comparison between 2008 and 2007, 2007 and 2006, and so on, considering as to each year whether Autonomy accurately characterized revenues from any acquisitions in those years.

### 2. Discussion

To the extent the government plans to prove its new "organic growth" allegation by suggesting that Autonomy mischaracterized the source of its growth before 2009, that proof should be precluded as irrelevant, lacking in probative value, and unduly prejudicial under Rule 403. Until the SBOP, Dr. Lynch was not accused of misstating "organic growth" at all, and even with the SBOP, he is still not accused of misstating organic growth from 2000 through 2008. The government should be limited to alleged misstatements about "organic growth" within the time period of the conspiracy, and to transactions that would be relevant and material to such statements. Transactions from 2000 to 2008 do not meet that requirement. Moreover, permitting proof about such transactions and whether revenues and growth were accurately characterized would prejudice Dr. Lynch, confuse the issues, and unduly lengthen the trial, as Dr. Lynch would have to present proof as to each pre-2009 transaction that it was properly accounted for.

Evidence of transactions that predate the alleged conspiracy should be excluded.

## III. MOTION TO EXCLUDE IRRELEVANT AND PREJUDICIAL EVIDENCE OF BEHAVIOR

While it has not provided notice of its intent to do so, the government may also try to introduce evidence about innocuous attempts at humor within Autonomy, evidence of alleged bullying or intimidating behavior, and evidence of Dr. Lynch and his family's net worth in an effort to prejudice Dr. Lynch. For example, the government may seek to introduce evidence that conference rooms at Autonomy were named after "villains" in the "James Bond" franchise, that a fish tank at Autonomy contained piranhas, and that a parody video shown at an internal Autonomy event featured Autonomy executives costumed as "mobsters." It may also seek to offer other similar evidence, such as that Dr. Lynch was rumored to fire people abruptly on internal sales team calls, that he made threatening comments about Marc Geall to Derek Brown as a joke, and that he sometimes used expletives in his email correspondence. Finally, the government may seek to introduce evidence of Dr. Lynch's family's wealth, including the proceeds his wife received following HP's acquisition of Autonomy.

This evidence amounts to character assassination and should be excluded.  Dr. Lynch is not on trial for being a difficult boss, cursing, dressing up in costume, or having an affinity for Bond movies.  Evidence of office humor at Autonomy or innocuous banter have no bearing on the fraud allegations in this case.  This Court recognized as much when it excluded evidence of the parody video, *see* Order Granting Defendant's Motion in Limine No. 6, *United States v. Hussain*, No. 16-cr-462, ECF No. 245, and the "James Bond" conference rooms in the *Hussain* trial, *see Hussain* Tr. at 5138:18–22.  Indeed, in response to the government's assertions that the parody video painted a "complete and accessible picture of [Mr. Hussain's] single-handed domination of Autonomy's sales teams and his intolerance of excuses from failing sales subordinates," the Court rejected the government's misplaced attempt to use humor and summarily concluded that the video was only "admissib[le]" as a candidate for the "Worst Live-Action Short Film (Foreign)."  *See* ECF No. 245.

Nor should the government be permitted to assassinate Dr. Lynch's character by highlighting a handful of emails out of the hundreds of thousands he sent in which Dr. Lynch used particularly strong language to get his point across.[5]  Even if using foul language in that email was ill-advised, using strong language is not a crime, nor is it representative of emails Dr. Lynch typically sent.  Highlighting a couple of emails in which Dr. Lynch used an expletive serves no purpose but to impugn Dr. Lynch's character.  Likewise, the nonexistent value of associating Dr. Lynch with villains, the Mafia, or aggressive fish is obviously outweighed by the resulting prejudice to Dr. Lynch.  This and similar evidence should be excluded.

Eliciting testimony based on rumor and speculation is also improper and should be precluded.  In any large organization, there is plenty of rumor and speculation to go around.  Unless a witness has evidence that Dr. Lynch actually fired someone during an internal sales team call or that Dr. Lynch expected to be taken seriously when he said something in jest,

---

[5] Koeleveld Decl. Ex. 3 (Email from Dr. Lynch to Autonomy management in which he asks to be apprised of any problems relating to a deal in a "f***ing millisecond" (July 8, 2010, 12:06) (Bates D002136020)).

testimony about jokes that might have been ill-timed or in bad taste or about rumors that existed only in the rumor mill does not belong in evidence at this trial.

As for evidence pertaining to Dr. Lynch's wealth, this bears no relation to the alleged schemes and only seeks to impugn Dr. Lynch and his family.  This is not a situation involving unexplained wealth; there is no dispute that Dr. Lynch made a large amount of money when HP acquired Autonomy.  Under the circumstances, the only reason to introduce evidence of Dr. Lynch's or his family's wealth is to tap into the bias some jurors might have against wealth.  Thus, there is no reason to introduce evidence of the country home or the boat owned by Dr. Lynch's family, because such evidence has no bearing on any contested issue.  It is especially irrelevant that Dr. Lynch's wife, like other Autonomy shareholders who tendered their shares to HP, earned money from the acquisition.  The jury will learn that Dr. Lynch received over $800 million when he sold his shares to HP.  There is no reason to highlight that Dr. Lynch's wife separately received $16 million when she sold her separately-owned shares, and doing so may suggest that there was something improper about her receipt of that money or that she was somehow complicit in the alleged fraud.  As the government well knows, there is absolutely no basis for impugning Dr. Lynch's wife, and her profits from her sale of Autonomy shares should therefore receive no special mention at the trial.

## IV.   CONCLUSION

For the foregoing reasons, the Court should preclude the government from presenting evidence about, or referring to, alleged retaliation by Autonomy management against Mr. Khan and terminations of employees in Autonomy's U.S. finance department.  The Court should also prevent the government opening the door to a lengthy, distracting and prejudicial detour by introducing evidence of pre-2009 transactions in support of its new "organic growth" allegation.  Finally, the Court should preclude as irrelevant and unduly prejudicial evidence of allegedly intimidating or otherwise threatening behavior, and evidence of Dr. Lynch's family's net worth.

Dated: January 17, 2024

Respectfully submitted,

By: _/s/ Christopher J. Morvillo_
Christopher J. Morvillo

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**CLIFFORD CHANCE US LLP**

Jonathan Matthew Baum (SBN: 303469)
**STEPTOE LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Dwight J. Draughon
Drew C. Harris
**STEPTOE LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

*Attorneys for Defendant*
*Michael Richard Lynch*