Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Christopher Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 3:18-cr-00577-CRB |
| Plaintiff, | Judge: Hon. Charles Breyer |
| vs. | **DEFENDANT MICHAEL RICHARD LYNCH'S MOTION IN LIMINE TO EXCLUDE THE 2014 FILING OF AUTONOMY SYSTEMS LTD.'S 2011 ANNUAL REPORT** |
| MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN, | |
| Defendants. | **(Lynch MIL No. 2)** |
| | Date: February 21, 2024 |
| | Time: 2:00 pm |
| | Court: Courtroom 6 – 17th Floor |
| | Date Filed: January 17, 2024 |
| | Trial Date: March 18, 2024 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

SUMMARY OF ARGUMENT ................................................................................................. vii

MEMORANDUM OF POINTS AND AUTHORITIES.................................................... 1

I.   Background ....................................................................................................................... 2

II.  The Court Should Exclude the ASL Restatement Under Fed. R. Evid. 802 Because It Is Hearsay ........................................................................................................................ 7

A.   The ASL Restatement Was Not Made "At or Near the Time" of the 2009-2011 Transactions It Describes................................................................................... 8

B.   Reexamining Previous Years Was Not a "Regular Practice" of Autonomy's "Regularly Conducted Activity" of Drafting and Filing Annual Financial Statements.................. 10

C.   The ASL Restatement Lacks Indicia of Reliability and Trustworthiness...................... 11

1.   The 2014 ASL Restatement Was Filed to Support Ongoing Litigation Efforts ......... 12

2.   The ASL Restatement's Methodology Was Unreliable.............................................. 14

III. If the Court Permits the ASL Restatement then It Should Grant Dr. Lynch's Motion for an Early Return Subpoena to HP ......................................................................... 15

CONCLUSION ..................................................................................................................... 15

Defendant Lynch's Motion In Limine to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ADT Sec. Servs. v. Sec. One Int'l, Inc.*,
   No. 11-cv-5149, 2013 WL 4766401 (N.D. Cal. Sept. 5, 2013)..............................................15

*Carrie Contractors, Inc. v. Blount Constr. Grp.*,
   968 F. Supp. 662 (M.D. Ala. 1997) ............................................................................................9

*Cincinnatus Partners I, LP v. Farm Bureau Prop. & Cas. Ins. Co.*,
   No. 1:11-cv-427, 2014 WL 12748898 (S.D. Ohio May 27, 2014)............................................11

*Clark v. City of Los Angeles*,
   650 F.2d 1033 (9th Cir. 1981) .......................................................................................12, 15

*Goldsmith v. Commissioner*,
   86 T.C. 1134 (1986).....................................................................................................................9

*Hook v. Regents of Univ. of Cal.*,
   394 F. App'x 522 (10th Cir. 2010) ..........................................................................................11

*In re Imperial Credit Indus., Inc. Secs. Litig.*,
   252 F. Supp. 2d 1005 (C.D. Cal. 2003) ....................................................................................9

*Melendez-Diaz v. Massachusetts*,
   557 U.S. 305 (2009)............................................................................................................12, 13

*Paddack v. Dave Christensen, Inc.*,
   745 F.2d 1254 (9th Cir. 1984) ............................................................................................11, 12

*Palmer v. Hoffman*,
   318 U.S. 109 (1943)....................................................................................................11, 12, 13

*SEC v. Jasper*,
   678 F.3d 1116 (9th Cir. 2012) ....................................................................................... *passim*

*Standard Oil Co. v. Moore*,
   251 F.2d 188 (9th Cir. 1957) ...................................................................................................14

*United States v. Hussain*,
   818 F. App'x 765 (9th Cir. 2020) .................................................................................. *passim*

*United States v. Hussain*,
   No. 16-cr-462-CRB, Dkt. 351-5, 6, 7, 8 (N.D. Cal. April 18, 2018)........................................2

*United States v. Kim,*
    595 F.2d 755 (D.C. Cir. 1979) .......................................................................9

*United States v. Lemire,*
    720 F.2d 1327 (D.C. Cir. 1983) ....................................................................9

*United States v. Reyes,*
    239 F.R.D. 591 (N.D. Cal. 2006) ............................................................11, 14

*Waddell v. Commissioner,*
    841 F.2d 264 (9th Cir. 1988) .......................................................................1

**Other Authorities**

Fed. R. Crim. P. 17 ..........................................................................................9

Fed. R. Crim. 16(a)(1)(G) ................................................................................9

Fed. R. Evid. 402 ............................................................................................9

Fed. R. Evid. 403 .......................................................................................1, 10

Fed. R. Evid. 702 ............................................................................................9

Fed. R. Evid. 802 ............................................................................................7

Fed. R. Evid. 803(6) ...............................................................................*passim*

Defendant Lynch's Motion In Limine to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:

PLEASE TAKE NOTICE that on February 21, 2024, at 2:00 pm or as soon thereafter as counsel may be heard, in Courtroom 6, 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Michael Richard Lynch will and hereby does move the Court to exclude the 2014 filing of Autonomy Systems Ltd., which contained HP's 2014 opinions of Autonomy System Ltd.'s 2011 financial accounts and restated 2009-2010 financial accounts.  Alternatively, if the Court does not exclude the 2014 filing, it should grant Dr. Lynch's discovery motion (Dkt. 255).

This motion is based upon the following Memorandum of Points and Authorities, the Declaration of Nicholas Silverman, any oral argument, and the pleadings and exhibits on file with the Court.

Dated: January 17, 2024

Respectfully submitted,

*/s/ Brian M. Heberlig*
Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Christopher J. Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

Defendant Lynch's Motion In Limine to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

1

**SUMMARY OF ARGUMENT**

2      In January 2014, Autonomy Systems Ltd. (ASL) filed its Annual Report and Financial

3  Statement for January to October 2011, which also restated ASL's total revenue and profit for

4  2009 and 2010 ("the ASL Restatement").  The 2014 ASL Restatement was part of a litigation

5  strategy that HP initiated in 2012.  In November 2012, a full year after HP acquired Autonomy,

6  following a disastrous post-acquisition integration, mismanagement, and a change of strategy

7  that pivoted away from Autonomy, HP falsely accused Dr. Lynch and other Autonomy

8  executives of fraud in order to explain a write-down of Autonomy's value.  To support that

9  accusation, in conjunction with an internal investigation by litigation counsel from Morgan

10  Lewis & Bockius LLP, HP directed Autonomy CFO Christopher Yelland to review and restate

11  certain historical Autonomy transactions.  Indeed, without even waiting for the Companies

12  House to publish the ASL Restatement, HP launched an aggressive media campaign arguing that

13  the ASL Restatement proved HP's November 2012 write-down allegations.  Based on *Hussain*,

14  Dr. Lynch anticipates that the government will seek to admit the ASL Restatement.  The Court

15  should exclude it under Fed. R. Evid. 802, 402, and 403.

16      The ASL Restatement states HP's opinion of what ASL's financial metrics should have

17  been in 2009, 2010, and 2011.  That opinion is fundamentally irrelevant.  That is particularly true

18  here because Autonomy made no representations to HP about ASL's financials during the

19  acquisition process.  The ASL Restatement serves only to confuse and mislead the jury.  As an

20  out-of-court statement, the ASL Restatement is also hearsay.  In *Hussain*, the government

21  attempted an end-run around the hearsay problem by offering the ASL Restatement as a business

22  record under *SEC v. Jasper*, 678 F.3d 1116 (9th Cir. 2012).  *Jasper* would only apply if the ASL

23  Restatement was offered as evidence of HP's investigation, not of the underlying transactions.

24  The ASL Restatement does not describe that investigation and merely states an opinion about

25  ASL's bottom-line numbers.  Unlike a business record, the ASL Restatement was not a regular

26  practice of Autonomy's preparation of financial accounts.  Instead, evidence produced since

27  *Hussain* and not before the Court in that litigation demonstrates that the ASL Restatement was

28  drafted in conjunction with preparation for affirmative litigation and therefore lacks indicia of

Defendant Michael Richard Lynch's In Limine to Exclude the 2014 ASL Filing
3:18-cr-00577-CRB

1  trustworthiness.  Finally, before Yelland's accounting opinions contained within the Restatement

2  would be admissible, the government would need to comply with Fed. R. Evid. 16(a)(1)(G) and

3  Rule 702, which it has not and plainly cannot do here.  Should the Court disagree and admit the

4  ASL Restatement, then the Sixth Amendment and Fed. R. Crim. P. 17 entitle Dr. Lynch to

5  discovery from HP into the underlying litigation efforts and investigation that formed the basis of

6  the ASL Restatement.  HP has consistently withheld documents related to the multi-year

7  investigations that led to the ASL Restatement and undermine its probative value as a neutral,

8  independent statement of the proper accounting decisions.  If the government is allowed to offer

9  the ASL Restatement, then Dr. Lynch needs the documents that will undermine its value and

10  reveal that that it was driven by HP's partisan litigation strategy.

11       The ASL Restatement represents a trial within a trial requiring discovery, motions

12  practice, and rebuttal testimony.  The ASL Restatement consists of HP's opinions adopted after

13  HP publicly initiated litigation against Dr. Lynch and other Autonomy executives by referring

14  them for prosecution.  At their core, these opinions are positions adopted for use in affirmative

15  litigation and should be excluded from Dr. Lynch's criminal trial.

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Lynch's Motion In Limine to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

## MEMORANDUM OF POINTS AND AUTHORITIES

The ASL Restatement was HP's opinion that its counterparties in litigation—who it had referred for prosecution over one year earlier—caused an incorrect financial statement to be filed for an Autonomy subsidiary.  That subsidiary's financial statement was utterly irrelevant to HP's acquisition of Autonomy: it was not requested by HP, it was not reviewed by HP, and it was not considered by HP.  The Court should prevent a massive sideshow by precluding the government from introducing the ASL Restatement, an irrelevant, made-for-litigation set of numbers that would unfairly prejudice Dr. Lynch.

Dr. Lynch acknowledges that the Court admitted the ASL Restatement against Sushovan Hussain.  The Ninth Circuit held that the Court's analysis of the business records exception was "not an abuse of discretion," but it did not hold that admission of the ASL Restatement was required or even correct.  *United States v. Hussain*, 818 F. App'x 765, 766 (9th Cir. 2020); *see, e.g.*, *Waddell v. Commissioner*, 841 F.2d 264, 267 (9th Cir. 1988) (affirming exclusion of document containing appraiser's opinion despite admission of similar document in *United States v. Licavoli*, 604 F.2d 613 (9th Cir. 1979) because the affirmance in "*Licavoli* … is hardly authority for the proposition that the court was *required* to admit it").  Particularly in light of new information that has surfaced since the *Hussain* trial, the Court should exclude the ASL Restatement.

The ASL Restatement is hearsay under Fed. R. Evid. 803(6).  It was not prepared at or near the time of the transactions it purports to summarize, and is not offered as a record of HP's investigation—rendering *SEC v. Jasper*, 678 F.3d 1116 (9th Cir. 2012) inapplicable.  Moreover, evidence that was not available or raised in the *Hussain* briefing reveals that the ASL Restatement was prepared for use in litigation (not as a regular practice of Autonomy's preparation of financial accounts) and is therefore untrustworthy.

Even if the ASL Restatement were a business record, however, it would be inadmissible under Fed. R. Evid. 403.  The ASL Restatement may have been admissible against Hussain— who signed the ASL financial statements that were restated as one of ASL's Directors—but the unfair prejudice, confusion, and waste of time substantially outweighs any probative value

Defendant Michael Richard Lynch's In Limine to Exclude the 2014 ASL Filing
3:18-cr-00577-CRB

1   against Dr. Lynch, who was not an ASL director and had nothing to do with the ASL financial

2   statements that were purportedly incorrect.  If the Court disagrees, it should grant Dr. Lynch's

3   request for an early return subpoena to HP for core evidence of how HP engineered the ASL

4   Restatement for use in litigation—information that, to date, HP has steadfastly shielded from

5   discovery and even claimed as attorney work product.

6   **I.    Background**

7          When considering whether to purchase Autonomy, HP reviewed the public financial

8   statements of Autonomy Group, but did not receive, review, or consider ASL's financial

9   statements.  Whether ASL's financial statements were true or false was irrelevant to the

10  transaction.  HP gained full access to Autonomy Group's books and Deloitte's workpapers

11  shortly after October 3, 2011, as any Autonomy executive would have known and expected.  *See,*

12  *e.g.*, TX 6463, *United States v. Hussain*, No. 16-cr-462-CRB, Dkt. 351-5, 6, 7, 8 (N.D. Cal. April

13  18, 2018).[1]  The next month, EY auditors and an HP senior accountant discussed the potential

14  "valuation impact" of Autonomy's hardware revenue, and EY met with HP's CFO Cathie

15  Lesjack to discuss issues including Autonomy's hardware sales.  *See* Silverman Decl. Ex. 1 (HP-

16  SEC-00667950) at 1.  On December 14, 2011, HP filed its consolidated annual report,

17  memorializing EY's conclusion that the financial statements of HP subsidiaries, including

18  Autonomy, were fairly presented in all material respects.  *See* Silverman Decl. Ex. 2 (HP Form

19  10-K) at 1, 75.  Despite HP's senior executives' and outside auditors' understanding of

20  Autonomy's accounting, HP did not decide at that point to change its forecast of Autonomy's

21  earnings, revalue the business, or restate previous financial submissions of Autonomy Group or

22  ASL.

23         In 2012, however, Autonomy missed internal revenue targets, and its management was

24  terminated.  In May 2012, a "whistleblower" came forward with allegations about Autonomy's

25  accounting.  HP Legal and HP's Controller met with Christopher Yelland and enlisted Yelland to

---

[1] "Silverman Decl." refers to the Declaration of Nicholas Silverman filed in support of this motion.

Defendant Lynch's Motion In Limine to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

examine a list of transactions and accounting issues.  Later that summer, negative news about HP's other businesses, including an $8 billion impairment of its Enterprise Services business, caused HP's stock price to decline and led HP to realize that it needed to write down additional assets.  Rather than writing down the value of its other businesses, HP took the opportunity to write down Autonomy's value.  HP needed to justify that write-down to obscure its own failure to integrate and achieve its projected synergies from Autonomy.  To shift the blame for that failure, HP chose to use information about hardware sales—previously determined to be immaterial—to allege fraud by Dr. Lynch and Autonomy's former leadership.  HP referred Dr. Lynch and others for criminal prosecution.

Around the same time, HP retained Morgan Lewis & Bockius LLP (which retained PricewaterhouseCoopers (PwC)) to conduct an internal investigation that supported the criminal referral of Dr. Lynch and Autonomy's former leadership, and a follow-on civil lawsuit.  In conjunction with Morgan Lewis and PwC's internal investigation, HP directed Yelland to restate the 2009-2010 financial results of ASL as part of the filing of ASL's 2011 financial results.  Silverman Decl. Ex. 3 (POS000460632 at 2) ("Morgan Lewis and PwC … identified accounting irregularities and a decision was [made] by HP to reexamine the reported results for FY10 and prior when preparing the statutory accounts for FY11.").

In addition to working with Morgan Lewis and PwC, Yelland was to be supported by ASL's auditor, Deloitte.  Deloitte, however, did not share HP and Yelland's views on revenue recognition.  For example, in October 2012, Deloitte—first orally and then in writing—contested HP's desired restatement of a transaction based on a "side agreement," explaining that HP was interpreting the agreement incorrectly based on hindsight rather than the status when the deal closed.  *See* Silverman Decl. Ex. 4 (2012.10.22 email from Lee Welham to Anderson).  Deloitte maintained that its audit was correct, and that it was not misled.  Deloitte was terminated, and Ernst & Young (EY) took its place to audit the anticipated restatement.

Yelland directly relied on the Morgan Lewis and PwC legal investigation to develop the ASL Restatement.  As summarized by Yelland's testimony during the post-*Hussain* civil trial, Yelland and his team received, among other things, "PwC's work product," "notes of interviews

conducted by Morgan Lewis," "interview summaries," briefings conducted by Morgan Lewis and PwC, "reports prepared by HP for presentation to the SEC and the DOJ and the SFO," a PwC report with supporting exhibits and appendices," "details" related to which "search terms" were used by Morgan Lewis lawyers, "revenue investigation work completed by Morgan Lewis," "investigation work on other financial related matters," and more.  Silverman Decl. Ex. 5, at 22-24 (UK Day 38 Tr.).  EY also reviewed the Morgan Lewis-PwC investigation to ensure that the restatement and investigation findings were "consistent."  *Id.* at 21-22; *accord* Silverman Decl. Ex. 6 (POS00424252) (Apr. 2013 email from Yelland to Morgan Lewis/PwC making plans to engage in numerous steps "to ensure alignment between … their findings" and to align their "findings and conclusions" because "any mistakes could impact our position.").  Yelland's collaboration with Morgan Lewis and PwC went beyond receiving and relying upon their investigation work product.  He also met with them repeatedly to ensure that the ASL Restatement would be completely aligned with the findings of the legal investigation, including what HP had represented to DOJ and SEC.[2]

In sum, as Yelland testified in the UK, the ASL Restatement was "**shaped and affected by having all of this material**" provided to him and his team.  *Id.* at 24 (emphasis added).  Morgan Lewis and PwC's work was "certainly a **valuable input** into the [Restatement]."  *Id.* (same).  This testimony in which Yelland explained the intertwined nature of his work with that of litigation counsel postdated and was not available in *Hussain*.

For an example of how the Morgan Lewis/PwC investigation led to the ASL Restatement's conclusions, the Court can review a May 10, 2013 discussion that arose after Yelland's colleague Antonia Anderson asked PwC for information about Autonomy's recognition of revenue on transactions with a company named FileTek, apparently after

---

[2] *See* Silverman Decl. Ex. 12 (TX 6935) (meeting agenda for March 2013 meeting including PwC's evaluations of different transactions and "next steps"); Silverman Decl. Ex. 13 (TX 6937) (rescheduling an April 2013 meeting between HP, PwC and Morgan Lewis regarding the restatement); Silverman Decl. Ex 14 (TX 6940) (discussion of PwC and EY exchanging information in order to support the restatement, including multiple categories of information from PwC's review); Silverman Decl. Ex. 5 (UK civil testimony Day 38 at 19-20) (discussing collaboration with Morgan Lewis and PwC).

Defendant Lynch's Motion In Limine to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

reviewing contemporaneous evidence that the recognition was proper.  The revenue recognition determination turned on whether Autonomy's purchases of software from FileTek had commercial value or were shams with the sole purpose to enable FileTek to pay for a purchase from Autonomy.  PwC and Morgan Lewis sent Anderson an email—in which it invoked "Attorney Work Product" privilege, signaling that it was prepared in anticipation of litigation— explaining PwC and Morgan Lewis' argument that the FileTek sale should not be recognized because of a contemporaneous purchase of software from FileTek.  Silverman Decl. Ex. 7 (May 2013 email from PwC and Morgan Lewis to Anderson providing example of how Anderson gathered facts from PwC and Morgan Lewis).  PwC acknowledged that Anderson had already seen "evidence from emails that suggests that there may have been value to the purchases of [FileTek] software," and conceded that there was still more "documentary evidence" corroborating that the purchases were commercially justified, and that Autonomy properly recognized the revenue (consistent with Deloitte's contemporaneous audit).  *Id.*  In order to avoid that conclusion, PwC and Morgan Lewis provided Anderson with an attorney-drafted argument: that newly obtained, unspecified comments in confidential, ex parte interviews of unidentified R&D personnel by Morgan Lewis cast doubt on the commercial rationale for the software purchases.  *Id.*

The ASL Restatement was adjusted to restate revenue from multiple FileTek transactions based on that argument.  Anderson memorialized her reliance on the PwC/Morgan Lewis argument, cutting-and-pasting it verbatim into the "Evidence linking the sale and purchase transactions" section of an HP memorandum explaining the basis for restating such transactions.  Silverman Decl. Ex. 8 at 25 (January 20, 2014 revenue memo).

At the *Hussain* trial, despite this obvious reliance on attorney work product, Yelland misleadingly suggested this adjustment came from his own investigation, testifying: "after making *our inquiries, we determined* that the purchase of StorHouse from FileTek did not have real economic substance to Autonomy and that the two transactions should, therefore, be netted against each other." *Hussain* Tr. 5100 (emphasis added).  In truth "our inquiries" and "[our] determin[ation]" were litigation counsel's inquiries and determination.

This was not an isolated occurrence.  The *next* VAR counterparty listed in the HP memorandum was Capax, and HP's "Evidence linking the sale and purchase transactions" with Capax was *also* based on Morgan Lewis and PwC findings (their interview minutes).  Silverman Decl. Ex. 8 at 25 (January 20, 2014 revenue memo sent by Anderson to EY); *accord id.* (citing a "[d]iscussion with Morgan Lewis" and unidentified interviews to justify other conclusions). Yelland testified about the Capax Q1 2009 deal in *Hussain*, opining that restatement was necessary "because it was reciprocal with a purchase from Capax Discovery, which *on examination we found* didn't really have economic substance." *Hussain* Tr. 5094.  In fact, he was relying squarely on litigation counsel's "examination."  Yelland and his team relied on information and arguments fed to them by litigation counsel and their agents whose invocations of work product protection prove that they were already planning for litigation.  As demonstrated by the documents that were not available or presented during *Hussain*, the ASL Restatement was not made merely with an "eye toward litigation," but made *for* litigation by attorneys and forensic accountants.

Coordination with PwC and Morgan Lewis continued right up to the filing of the ASL Restatement on January 31, 2014.  In the months leading up to the statutory accounts filing, Yelland continued to underscore the importance of aligning HP's litigation strategy with statements in the director's report and financial statements, and he received line edits on the restatement from PwC the day before it was filed.[3]  Immediately upon filing the ASL Restatement and before it was even available to the public, HP launched a media campaign claiming that it proved HP's November 2012 allegations.[4]

---

[3] *See e.g.*, Silverman Decl. Ex. 18 (TX 6952) (Jan. 30, 2014 email from PwC following an unrecorded call and providing comments on the draft statutory accounts including litigation considerations); Silverman Decl. Ex. 15 (POS00438489) (Jan. 24, 2014 email from Yelland arguing against EY's desire to make "statements of uncertainty" related to the complex process of transfer pricing and related revenue timing because such statements "may be very unhelpful to the litigation strategy").

[4] *See e.g.*, Silverman Decl. Ex. 16 (Juliette Garside, *Autonomy Made 80% Less UK Profit Than Stated, Hewlett-Packard Finds*, THE GUARDIAN (Feb. 3, 2014), https://bit.ly/3S0M2y3); Silverman Decl. Ex. 17 (Spencer E. Ante, *H-P Says Autonomy Erred Prior to Deal*, WSJ (Feb. 3, 2014), https://on.wsj.com/3U0LWZE).

Defendant Lynch's Motion In Limine to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

Despite working on the ASL Restatement for more than a year, EY refused to sign off on it and disclaimed any opinion as to the truth and fairness of the accounts because EY had "not obtained all the information and explanations that [it] considered necessary" and due to concerns about "limitations over the quality and completeness of the documentation available." Silverman Decl. Ex. 9 at -0011 to -0012 (TX 2445) (concluding that it did not have "sufficient appropriate audit evidence to provide a basis for an audit opinion").

Deloitte challenged the ASL Restatement's findings. Deloitte explained that most of the restatements "represent[ed] decisions by Hewlett Packard to adopt a different approach to the [ASL] numbers and do[] not demonstrate that the 2010 financial statements were misstated." Silverman Decl. Ex. 10 at -0001 (TX 6443). As observed by Deloitte, HP had been incentivized to cancel or defer revenue and overstate liabilities in part because it allowed them to submit a claim to the UK government for a £38.4 million tax refund (approximately $68.2 million). *Id.* at -0005.

## II. The Court Should Exclude the ASL Restatement Under Fed. R. Evid. 802 Because It Is Hearsay

In light of the facts in Section I—many of which came to light in the UK litigation and were not available in *Hussain*—the ASL Restatement is hearsay and should be excluded.

The business records exception applies only if the "record of an act, event, condition, opinion or diagnosis" is "made at or near the time" of the described act, event, or opinion based on information from "someone with knowledge"; "kept in the course of a regularly conducted activity of a business…"; "making the record was a regular practice of that activity"; and the proponent must carry that burden via testimony or certification. Fed. R. Evid. 803(6). Even if the proponent can meet this burden, the evidence remains inadmissible hearsay if the opponent demonstrates that "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *See id.*

The ASL Restatement fails this test because (1) it was made multiple years after the transactions it opines upon and its opinions come from someone who lacks first-hand knowledge; (2) restating prior years' financial statements was not a "regular practice" of any

"regularly conducted activity" at Autonomy; and (3) HP's intent to litigate—which predated and caused the ASL Restatement and influenced the opinions expressed therein—renders the ASL Restatement untrustworthy.

### A. The ASL Restatement Was Not Made "At or Near the Time" of the 2009-2011 Transactions It Describes

The ASL Restatement is a January 2014 written opinion regarding ASL's finances in FY 2011. Collateral to its opinions about FY 2011, the ASL Restatement opined that HP's litigation-driven investigation had revealed "errors" in the FY 2010 and FY 2009 financials leading to the "re-assess[ment]" of "all aspects of the accounting" of FY 2010 and FY 2009. Silverman Decl. Ex. 9 (TX 2445-0016, -0035). The ASL Restatement therefore opined on the correct bottom-line numbers for FY 2011, FY 2010, and FY 2009. The ASL Restatement did not discuss any specific transactions and is evidence only of HP's 2014 opinion of overall revenue, expenses, and profit in FY 2011, FY 2010, and FY 2009.

The ASL Restatement is hearsay because it is offered as evidence of those financial metrics. The government's argument that this 2014 out-of-court opinion about 2009-2011 performance is not hearsay relies on *Jasper*, which—based on an inapplicable premise—held that it was not an abuse of discretion for the district court to admit restated financials in a 10-K filing that were "prepared by people with personal knowledge, at or near the time of the events, who were just doing their ordinary jobs." 678 F.3d at 1123. *Jasper* was wrongly decided, and Dr. Lynch preserves his objection for further review. Even under *Jasper*, however, the ASL Restatement is inadmissible hearsay.

*Jasper*'s premise was that the 10-K filing was admitted as a business record of the two-year "accounting review," not of the underlying transactions described within. *Id.* at 1123 ("[T]he 2006 10-K is a business record of the accounting review itself, not of the misconduct that gave rise to the need for the restatement."). *Jasper*'s premise is absent here: the government does not offer the ASL Restatement as a record of the underlying review; it does not even describe that review except in the most cursory, sweeping sense. Instead, the government offers the ASL Restatement as evidence of "the correct accounting" of the underlying 2009-2011

transactions.  *Hussain* Tr. 3773 ("[The restatement] is evidence of what the correct accounting was in 2009 and what the correct accounting was in 2010 … [I]t's literally a restatement of what the correct number was."); *Hussain*, Dkt. 143, at 4 (offering ASL Restatement as evidence that ASL's "revenues … were misstated").  The 2014 ASL Restatement was not made at or near the time of the 2009-2011 transactions.[5]  It is therefore inadmissible.

To the extent the government shifts course and now argues that the ASL Restatement is proof of Yelland's 2014 opinion, the ASL Restatement is nonetheless inadmissible.  If the government wishes to offer Yelland's post-acquisition opinion about ASL's revenue, it would need to notice him as an expert and comply with Fed. R. Crim. 16(a)(1)(G) and Fed. R. Evid. 702.[6]  But Yelland has conceded that he is not an expert on IFRS accounting, *see* Mot. In Limine to Exclude Opinion Testimony of Christopher Yelland § II.C (collecting instances in which Yelland disclaimed expertise and noted his reliance on PwC or others as the experts), and one non-expert may not transmit the opinion of an expert.  *See, e.g.*, *In re Imperial Credit Indus., Inc. Secs. Litig.*, 252 F. Supp. 2d 1005, 1012 (C.D. Cal. 2003) (excluding valuation opinion of non-valuation expert that was based on opinions of valuation experts).  Yelland cannot testify without the government noticing his opinion, and he cannot testify to the expert opinions of others.

Putting aside his lack of expertise, Yelland's post-acquisition opinion about ASL's pre-acquisition accounting is irrelevant, confusing, misleading, and inadmissible under Fed. R. Evid.

---

[5] *See, e.g.*, *United States v. Lemire*, 720 F.2d 1327, 1350 (D.C. Cir. 1983) (affirming exclusion of an internal memoranda prepared by employees of the Raytheon Company which provided a history and background of an allegedly fraudulent transaction, because it was written one year and ten months after some of the events that it described); *United States v. Kim*, 595 F.2d 755, 760 (D.C. Cir. 1979) (affirming exclusion of a document that summarized bank deposits two years earlier even though it was based on bank records made contemporaneously with the deposits); *Goldsmith v. Commissioner*, 86 T.C. 1134, 1145 (1986) (excluding audit committee report completed at request of SEC the report "sought to reconstruct events which had occurred 2 to 8 years earlier" and the drafters "had to rely on second-hand or hearsay sources of information"); *see also Carrie Contractors, Inc. v. Blount Constr. Grp.*, 968 F. Supp. 662, 666 (M.D. Ala. 1997) (holding that accounting records prepared 17 months after the events they summarize were not made at or near the time of those events).

[6] Given that HP has asserted privilege over the underlying internal investigation upon which Yelland largely based the ASL Restatement, absent a privilege waiver and compliance with Dr. Lynch's proposed Rule 17 subpoenas (*see* Dkt. 255), the government could not satisfy Rule 16(a)(1)(G)(iii)'s requirement that the expert disclosure provide the bases and reasons for the opinions.

9

402 and 403.  First, ASL's financial statements are irrelevant.  The Restatement contains only Yelland's opinion about ASL's financial statements, not those of Autonomy Group.  ASL's financial statements were not reviewed by HP and were irrelevant to the acquisition.  Second, even if ASL's financial statements were at issue, Yelland's post-acquisition opinion has minimal probative value.  Having argued that HP's opinion of Autonomy "more than one year" after the acquisition in November 2012 "is not relevant," *Hussain*, Dkt. 308, at 3, the government cannot argue that HP's opinion in 2014 is somehow relevant.  Either the post-acquisition dispute about Autonomy and its subsidiaries is relevant, or it is not.

The ASL Restatement is also inadmissible under Rule 403 because unlike Sushovan Hussain, who was a Director of ASL and legally required to approve and sign its financial statements, Dr. Lynch did not sign the underlying financial statements that were restated and had no such responsibility.  Nor has the government offered any evidence that Dr. Lynch knew what was disclosed in these statements or played any role in their preparation.  If the ASL Restatement is offered as mere evidence of Yelland's opinion, then its capacity for unfair prejudice—as well as confusing the jury and wasting time with a mini-trial about a subsidiary no one contemporaneously discussed—substantially outweighs that de minimis probative value.

### B.   Reexamining Previous Years Was Not a "Regular Practice" of Autonomy's "Regularly Conducted Activity" of Drafting and Filing Annual Financial Statements

To satisfy Fed. R. Evid. 803(6), the proponent must demonstrate that the record was kept in the course of a business's "regularly conducted activity," and that "making the record was a *regular practice of that activity*."  Even if the first prong is satisfied by ASL's filing of true and correct financial statements, as the Court found in *Hussain,* 2018 WL 3619797, at *25, the proponent must still satisfy the second prong: that restating prior years, relying on an investigation by outside counsel, and filing without auditor approval were "regular practices" of the financial statements filing activity.  The government has not carried that burden.

Restating previous years' accounts was not a "regular practice" of ASL's or HP's financial statements, nor was it a "regular practice" to rely on an investigation by outside

Defendant Lynch's Motion In Limine to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

counsel, nor was it a "regular practice" to file without auditor approval.  *See Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258 (9th Cir. 1984) (given the audit's "irregular frequency and nature," and the fact that the report did not stem from the "regular compliance audit procedure," the court held that the report was "not kept in the course of a regularly conducted business activity"); *Cincinnatus Partners I, LP v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 1:11-cv-427, 2014 WL 12748898, at *3 (S.D. Ohio May 27, 2014) (excluding audit report because there were no previous similar audits of the plaintiff firm evidencing a lack of business purpose).

The government has not provided a single example of another annual Autonomy financial statement that restated previous years, was based on outside counsel's investigation, or was filed without an auditor's approval.  The ASL Restatement diverged from the regular practices of Autonomy's financial statements in all three respects and it is therefore inadmissible under Fed. R. Evid. 803(6).  *See Hook v. Regents of Univ. of Cal.*, 394 F. App'x 522, 531 (10th Cir. 2010) (holding that transcripts and notes taken as part of an internal investigation are inadmissible because the investigation was not in the regular course of business); *United States v. Reyes*, 239 F.R.D. 591, 600 (N.D. Cal. 2006) (excluding documents from an internal investigation as inadmissible under Rule 803(6) because the documents lacked indicia of reliability that characterized regular business records).

### C.    The ASL Restatement Lacks Indicia of Reliability and Trustworthiness

The basis for the business records exception is "[t]he probability of trustworthiness of records because they were routine reflections of the day to day operations of a business," and therefore reliable.  *Palmer v. Hoffman*, 318 U.S. 109, 113-14 (1943) (explaining that this basis would be undermined by admission of accident reports prepared to fend off liability).  While the restatement in *Jasper* may have been trustworthy, this one is not.  First, the ASL Restatement was prepared for use in a litigation effort that *HP had initiated*, retaining counsel and referring its anticipated counterparty for prosecution and investigation by multiple agencies.  Second, the ASL Restatement was based on an unreliable foundation of hearsay and hindsight determinations shaded by litigation, not a competent examination by a dispassionate expert.  Unlike any other

1  financial statements filed by Autonomy or the company in *Jasper*, no auditor agreed with

2  restating the transactions in question.

3       1.    **The 2014 ASL Restatement Was Filed to Support Ongoing Litigation**
4             **Efforts**

5       Material prepared for litigation is untrustworthy and inadmissible as a business record.

6  *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321 (2009) (holding that forensic analysis

7  certificates of seized substances were inadmissible under Rule 803(6) because they were

8  produced for use at trial); *Palmer*, 318 U.S. at 114 (excluding accident report because it was

9  "calculated for use essentially in the court, not in the business"); *Paddack*, 745 F.2d at 1258

10 ("Even if we were to say that the audit reports were Touché Ross' business records, *the district*

11 *court's finding that they were prepared in anticipation of litigation precludes their admission*.")

12 (emphasis added); *Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981) ("[A]

13 document prepared for purposes of litigation is not a business record because it is lacking in

14 trustworthiness.").

15      The ASL Restatement was created *after HP had already initiated litigation by referring*

16 *Dr. Lynch and others for prosecution.*  Information unearthed since Hussain confirms what

17 Hussain's counsel attempted to establish without full information: that the ASL Restatement was

18 closely coordinated and aligned with the investigation by the HP lawyers who referred

19 Autonomy executives to law enforcement and prepared HP's civil lawsuit against Dr. Lynch and

20 others.  HP announced its referral in November 2012, and spent the next fourteen months

21 developing the ASL Restatement to support that referral and consequent civil lawsuit.

22      Since the *Hussain* trial, Yelland has testified to the significant effect of Morgan Lewis'

23 and PwC's work.  Silverman Decl. Ex. 5, at 22-24 (UK Day 38 Tr.).  Yelland and EY received

24 and relied upon extensive work product from Morgan Lewis and PWC including interview

25 memoranda, documents, search terms, and oral and written summaries.  *Id.*  And Yelland and EY

26 implemented these inputs from Morgan Lewis and PWC.  For example, Yelland and his team

27 took Morgan Lewis' and PwC's "attorney work product" based on ex parte internal investigation

28 interviews and incorporated those conclusions and arguments to justify the restatement.

Defendant Lynch's Motion In Limine to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

1   Silverman Decl. Ex. 8 at 25 (January 20, 2014 memo sent by Anderson to EY); Silverman Decl.

2   Ex. 11 (2013.06.25 email) (showing Morgan Lewis transmittal of witness interview summaries

3   on Autonomy transactions); *see supra* § I.  These and other key documents were disclosed by EY

4   in response to MLAT requests and produced after the *Hussain* trial.  Yelland repeatedly

5   emphasized that collaboration with Morgan Lewis was critical in order to support HP's litigation

6   strategy.  *See, e.g.*, Silverman Decl. Ex. 6 (POS00424252) (Apr. 2013 email from Yelland to

7   Morgan Lewis/PwC making plans to engage in numerous steps "to ensure alignment between …

8   their findings" and to align their "findings and conclusions" because "any mistakes could impact

9   our position."); *see also supra* n.2 (collecting documents).

10         In *Jasper*, the court noted in dicta that calling that restatement "created with an eye

11   toward pending litigation" would have "no limiting principle" because all public filings are

12   created with an eye towards the company's potential legal exposure.  678 F.3d at 1123.  This is

13   different.  The ASL Restatement was not created with an eye toward derivative suits against the

14   company; it was designed to support HP's affirmative litigation against Dr. Lynch and others.  It

15   is far more akin to an accident report created by a train company (subject to mandatory reporting

16   under federal regulations) or a lab report prepared for the purpose of establishing or proving a

17   fact at trial—both of which the Supreme Court has held to be inadmissible.  *Palmer*, 318 U.S. at

18   114; *Melendez-Diaz*, 557 U.S. at 321, 324.

19         The key to *Jasper* was that "the Restatement here resulted from a financial statement

20   audit conducted in accordance with regular audit procedures, and it is thus an admissible

21   business record." 883 F. Supp. 2d 915, 924-25 (N.D. Cal. 2010).  The ASL Restatement here did

22   not reflect "regular audit procedures."  It was not Autonomy's "regular" practice to conduct a

23   forensic examination of prior financial transactions to restate financials or to file accounts that

24   were not endorsed by the company's outside auditors.  In *FTC v. AMG Servs., Inc.*, the court

25   deemed inadmissible a financial report derived from a special investigation in lieu of an ordinary

26   "audit report" that "was likely made in anticipation of and preparation for this litigation."  No.

27   12-cv-536, 2017 WL 1704411, at *4 (D. Nev. May 1, 2017) (concluding that the report "was not

28   made in the normal, regular course of business").  Here, EY's refusal to sign off on the ASL

13

Restatement is yet another indication that it is not covered by the business records exception, which is typically characterized by the routine and consistent nature of the documents. *See* Fed. R. Evid. 803, 803(6) adv. comm. note to 1972 amend.

### 2.    The ASL Restatement's Methodology Was Unreliable

Business records are admissible because they are reliable by virtue of the "systematic or routine" application of "established company procedures." *Standard Oil Co. v. Moore*, 251 F.2d 188, 215 (9th Cir. 1957); *see Jasper* at 678 F.3d at 1123 (noting that audits "prepared by people with personal knowledge, at or near the time of the events, who were just doing their ordinary jobs," can be reliable). The methodology here was not systematic, routine, or established.

The ASL Restatement relied extensively on hindsight and subsequent events and was prepared by Yelland, who had only recently joined Autonomy and who had never previously been responsible for signing a company's financial accounts or conducting an investigation to make a restatement. Over two years had passed between HP's acquisition and the filing of the ASL Restatement. A reliable audit by an independent auditor could have conceivably re-examined the information available—for example, without hindsight or bias, an independent auditor could have reviewed contemporaneous information and Deloitte's workpapers to consider whether the original financial statements were correct. That is not what Yelland did. As explained by Deloitte, Yelland applied different "accounting policies" from those contemporaneously applied and relied on hindsight, making his conclusions "as a matter of accounting, highly questionable." Silverman Decl. Ex. 10 at -0001 (TX 6443).

In *Reyes*, this Court explained that documents produced as the result of internal investigation by outside counsel were inadmissible as business records because "they lack the hallmarks of reliability that justify the admission of run-of-the-mill business records." 239 F.R.D. at 600. So too here. Although the ASL Restatement does not disclose its methodology beyond citing to the internal investigation conducted by Morgan Lewis and PwC, the available evidence indicates that there were at least three primary sources: (1) opinions from unknown employees and counterparties taken from the internal investigation, unrecorded interviews, a US

GAAP-related "workshop" with Autonomy employees, and even newspaper articles; (2) records of which counterparties ultimately paid their invoices; and (3) hindsight analysis of whether the counterparties were credit-worthy (informed by whether they later paid).  Yelland then consulted with Morgan Lewis and PwC to make sure that the ASL Restatement was aligned with their findings and consistent with HP's litigation position.  Yelland's process was not reliable.

Nor was Yelland himself reliable.  If an audit contains an opinion, as the ASL Restatement does, then the author must have "the required competence."  *Clark*, 650 F.2d R 1037 (limiting *Licavoli*, 604 F.2d 613); *ADT Sec. Servs. v. Sec. One Int'l, Inc.*, No. 11-cv-5149, 2013 WL 4766401, at *3 (N.D. Cal. Sept. 5, 2013) (holding business record was inadmissible because authors had not been qualified as experts and it was motivated by primary purpose of litigation).  Even though Yelland had experience with UK GAAP accounting, ASL's income was based on whether transactions that occurred at IFRS entities were recognizable.  As noted above, Yelland has repeatedly conceded he is not an expert on IFRS accounting.  He therefore lacks the competence necessary to create a reliable record that turns on IFRS determinations.

**III.    If the Court Permits the ASL Restatement then It Should Grant Dr. Lynch's Motion for an Early Return Subpoena to HP**

If the Court admits the ASL Restatement, then Dr. Lynch is entitled to compelled production of evidence that will enable him to understand the underlying basis for the ASL Restatement in order to prepare a defense.  These materials have not been produced in discovery.  Dr. Lynch understands that HP continues to assert privilege over Yelland's underlying work product, his communications with Morgan Lewis and PwC, and the work product underlying the Morgan Lewis/PwC investigation relied upon by Yelland.  The Court should therefore grant Dr. Lynch's motion for related discovery (Dkt. 255).

## CONCLUSION

For the reasons stated herein, the Court should exclude the ASL Restatement.  To the extent the Court declines to do so, it should grant Dr. Lynch's discovery motion (Dkt. 255).

1    Dated: January 17, 2024

2                                    Respectfully submitted,

3
                                     */s/ Brian M. Heberlig*
4                                    Reid H. Weingarten (Admitted Pro Hac Vice)
5                                    Brian M. Heberlig (Admitted Pro Hac Vice)
                                     Michelle L. Levin (Admitted Pro Hac Vice)
6                                    Nicholas P. Silverman (Admitted Pro Hac Vice)
                                     Dwight J. Draughon (Admitted Pro Hac Vice)
7                                    Drew C. Harris (Admitted Pro Hac Vice)
8                                    **Steptoe LLP**
                                     1114 Avenue of the Americas
9                                    New York, NY 10036
                                     Telephone: (212) 506-3900
10

11                                   Jonathan M. Baum (SBN: 303469)
                                     **Steptoe LLP**
12                                   One Market Street
                                     Steuart Tower, Suite 1070
13                                   San Francisco, CA 94105
                                     Telephone: (510) 735-4558
14                                   jbaum@steptoe.com
15

16                                   Christopher J. Morvillo (Admitted Pro Hac Vice)
                                     Celeste L. Koeleveld (Admitted Pro Hac Vice)
17                                   Daniel S. Silver (Admitted Pro Hac Vice)
                                     **Clifford Chance US LLP**
18                                   31 West 52nd Street
                                     New York, NY 10019
19                                   Telephone: (212) 878-3437
                                     christopher.morvillo@cliffordchance.com
20

21                                   *Attorneys for Defendant*
                                     *Michael Richard Lynch*
22

23

24

25

26

27

28

16

Defendant Lynch's Motion In Limine to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB