# EXHIBIT 6

| | |
|---|---|
| **From** | Yelland, Christopher |
| **To** | Anderson, Antonia <antonia.anderson@hp.com> |
| **Date** | 03 Apr 2013 at 10:02 |
| **Subject** | FW: AU Investigations and UK Stats next steps |

FYI only

Chris

_____
**From:** Yelland, Christopher
**Sent:** 03 April 2013 10:58
**To:** Drew, Josh; Particelli, Robert; Roeder, Paul; dhales@uk.ey.com; 'john.f.tracey@uk.pwc.com'
**Cc:** Putland, Roberto; Letelier, Sergio; Levine, Marc A (Controllership Organization); Fieler, Steven J.; Lewthwaite, Mark
**Subject:** AU Investigations and UK Stats next steps


Privileged and Confidential


Hi Josh/Bob


As the preparation of the UK financial statements and EY's audit move to the next phase I would align the next steps to ensure alignment between the various parties and their findings.


Over the past weeks we have reviewed the interim report jointly with PWC and EY. My team has also documented our formal conclusions on the larger UK deals from FY10/FY11 and are in the process of documenting our conclusions on the key US deals (which do impact the UK stats through the transfer pricing processes).


As we begin to draw final conclusions we need to ensure

- We have no misalignment in findings and conclusions between the various parties (HP legal, PWC, Finance and EY). I am concerned to ensure that any issues the legal team have found, and may bring forward to the relevant authorities, are correctly represented in the financial statements we publish, as any mistakes could impact our position. In parallel there is a need to ensure the financial statements include all relevant information we have.

- The Directors of UK entities are required to form a view as to the completeness of the reviews done by ML/PWC/HP. This is to determine whether in combination we have taken reasonable steps to detect frauds which have material impact on the financial statements. This is a statutory requirement on the directors. EY as auditors also need to form a similar opinion.


The next steps to arrange are:

1. A presentation of the total scope of HP Legal/Morgan Lewis investigations to EY and certain UK directors (eg me , Rob Putland, Sergio)

2. A review of the deal specific conclusions, drawn by yourselves and Morgan Lewis from your review of the email and interview evidence, and alignment with my teams conclusions by deal. Some specific examples of evidence would be helpful but I would not expect us to reperform the email reviews. Obviously for the 28 deals in PWC's scope some evidence is apparent from the report, but our total sample from FY10 and FY11 is much broader covering 145 deals. EY will need to perform some audit validation of this exercise and it may be most practical to work through it all together.

3. We should also align on our accounting policy approach and conclusions to ensure they are consistent with the legal position being taken. Although the scope of the investigation is not primarily focused on accounting policies it is important that you are aligned with key revenue policies and our application of them in the financial statements.

- In particular I have asked PWC to conclude an opinion on the revenue recognition of the License+hosting deals. It is important to understand if the upfront license rev rec is considered clearly wrong or whether it is judgmental and a matter of policy (where we may consider it more appropriate to recognize all revenue rateably going forwards but the previously published financials in the US and transfer pricing are not required to be restated). As the engagement owner please confirm you support this request.

I will set a call to discuss how we can arrange the above most efficiently. It may most efficient to perform this review F2F in the US either in w/c 15th or 22nd of April.

In the meantime there are some specific immediate requests below from EY following the review with PWC. I have also attached their email. Please confirm you approve for this information to be shared between PWC and EY and in what form.

- The list of specific transactions which were reviewed by PWC;
- The list of individuals who were interviewed as part of the PWC review;
- A list of the side letters which PWC obtained as part of their work and copies of any side letters entered into by a UK subsidiary;
- Details of the specific revenue sale which was linked to the software purchase made by ASL from Microtech in August 2011;
- A list of any hardware sales which were identified as having been contracted by any of the UK subsidiary companies.

Thanks

Chris