# EXHIBIT 10

# Deloitte.

Deloitte LLP
Hill House
1 Little New Street
London EC4A 3TR

Tel: +44 (0) 20 7936 3000
Fax: +44 (0) 20 7583 1198
LDE: DX 599
www.deloitte.co.uk

Mr Ronan Duff
SFO
2-4 Cockspur Street
London
SW1Y 5BS

Direct: 020 7007 0306
Direct fax: 020 7007 0158
njosling@deloitte.co.uk

28 February 2014

Dear Mr Duff

## HP/Autonomy

I refer to your letter of 10 February requesting Nigel Mercer's comments regarding the recently filed Autonomy Systems Limited (ASL) and Autonomy Corporation Ltd (ACL) 31 October 2011 accounts (the 2011 accounts), which included restated 31 December 2010 figures.

Mr Mercer does not believe that the contents of these accounts have any bearing on the accounting issues in relation to the 2010 Autonomy Group financial statements he discussed with you, despite the apparently dramatic differences between the original UK subsidiary 2010 financial statements and the re-stated numbers. It is important that the reader understands that the bulk of these differences (as far as we understand them) represent decisions by Hewlett Packard to adopt a different approach to the numbers and does not demonstrate that the 2010 financial statements were misstated.

We have not been consulted by Hewlett Packard or EY regarding the restatement of the 2010 comparative figures in the 2011 UK statutory accounts. Accordingly our comments below can be no more than our and Mr Mercer's high level observations. We do not have any detailed knowledge of the underlying adjustments which the directors have made to the 2010 numbers.

### The status of the re-stated UK statutory accounts

1. The 31 December 2010 numbers which we audited have been restated by a new management team appointed by HP, a team which was not involved with the management of the entities at the time the underlying transactions were entered into.

Deloitte LLP is a limited liability partnership registered in England and Wales with registered number OC303675 and its registered office at 2 New Street Square, London EC4A 3BZ, United Kingdom.

Deloitte LLP is the United Kingdom member firm of Deloitte Touche Tohmatsu Limited ("DTTL"), a UK private company limited by guarantee, whose member firms are legally separate and independent entities. Please see www.deloitte.co.uk/about for a detailed description of the legal structure of DTTL and its member firms.

US-SFO 00000926

US-SFO-00000926.1
EXH 6443-0001

# Deloitte

2. The new auditor, EY, states that it has been unable to obtain sufficient audit evidence to provide a basis for expressing an opinion and hence provides no opinion, and therefore gives no assurance whatsoever, as to the truth and fairness of the accounts, including the 2010 restated numbers. This is despite what has clearly been a lengthy examination of those numbers – the accounts were issued a year after EY were appointed, and according to the ASL accounts, EY were paid £1.1m for their audit work. It seems to us, therefore, that EY, which is of course HP's Group Auditor, has effectively disassociated itself from the numbers by issuing a disclaimer. Such disclaimers are very unusual and suggest that the restated 2010 numbers should be treated with great caution.

3. We note that the cash balance in the main UK trading company, ASL, is materially unchanged, suggesting that HP's adjustments reflect a different approach to revenue recognition and timing rather than suggesting that transactions should not have been recognised at all.

**Main effects of the re-statements**

4. ASL is the main UK trading entity. ACL was the Autonomy group holding company. Prior to the acquisition, the accounts for ACL consolidated the results of the various UK and US entities. The re-stated accounts by contrast relate only to ACL's trading as a standalone company and will inevitably look very different to the consolidated accounts of the whole group. We understand that the US business has been 'absorbed' into HP so there is no equivalent standalone restatement of the US numbers and no consolidation of those numbers into ACL. It is impossible to see the overall group net effect of the adjustments, but it is clear from the nature of the adjustments, in particular those relating to "transfer pricing" (see below), that there must have been corresponding and opposing adjustments in the US numbers.

5. Note 19 to the ASL 2011 accounts sets out a breakdown of the adjustments to the 2010 results. In summary:

|  | Para ref below | 31.12.2010 £m | £m |
|---|---|---|---|
| **Profit for the year previously reported** |  |  | 105.7 |
| *Correction of fundamental errors* |  |  |  |
| - *Revenue* | 7 |  |  |
|   Impact via transfer pricing |  | -50.9 |  |
|   Impact via direct sales |  | -19.6 |  |
| - Cost recognition | 10 | -2.6 |  |
| - Revaluation of foreign currency balances |  | 0.3 |  |
|  |  |  | -72.8 |

US-SFO 00000927

US-SFO-00000926.2
EXH 6443-0002

# Deloitte.

| | | |
|---|---|---|
| *Accounting policy changes*<br>- Research & Development (net of deferred tax impact) | 11 | -13.5 |
| **As restated - 31 December 2010** | | 19.4 |

6. The significant variances are attributed in the accounts to (1) the correction of alleged 'fundamental errors' in revenue and costs recognition, and (2) changes in accounting policies. The main effects can be summarised as:
   - moving revenues previously reported by ASL to other parts of the group via transfer pricing changes;
   - deferring some revenue recognition into the future; and
   - reversing out certain revenues e.g. the elimination of so-called barter transactions.

### (1) Correction of alleged "fundamental errors"

#### (i) Revenue

7. The 2011 accounts refer to the correction of alleged errors in the application of transfer pricing agreements (included in the line "impact via transfer pricing"). As noted above there must have been corresponding and opposing adjustments in the US numbers.

8. The alleged errors are stated to relate to the sale of software and the recognition of associated costs – in particular the reversal or deferral of revenue to a later period. HP now assert, several years after the event that the risks and rewards of ownership had not passed at the date revenue was originally recognised. The causes of these 'errors' (and, therefore, the corrections) are asserted to include: a) issues over collectability, b) barter transactions, c) service transactions where customisation was required or costs to complete could not be reliably estimated and d) managed service arrangements where elements were accounted for differently and should not have been. This revenue adjustment is split between inter group sales (included in the line "impact via transfer pricing") and sales to third parties (included in the line "impact via direct sales").

9. The directors provide no reasoning or evidence to justify these changes so we cannot form a view as to whether the changes are appropriate or whether such changes simply reflect changes of accounting policies, in particular in relation to transfer pricing. EY has not of course issued an opinion and, therefore, has not provided any comfort whatsoever, that the errors reported in the accounts in fact existed or that the directors have applied appropriate accounting treatments.

US-SFO 00000928

US-SFO-00000926.3
EXH 6443-0003

# Deloitte

*(ii) Cost Recognition*

10. The 2011 accounts refer to adjustments relating to trade expenses and employee related costs, principally commissions, bonuses, employee expenses and vacation accruals presumably relating to the adjustments to sales above.

**(2) Changes in Accounting Policies**

11. HP has chosen to change Autonomy's accounting policies for:

    (a) research and development (this is to conform with HP's policy of writing off these costs as incurred and not an indication that the previous treatment was inappropriate ); and

    (b) the cost classification between cost of sales, administration expenses and distribution expenses, although clearly this has no impact on profit.

12. We understand that these changes were made to align Autonomy's accounting policies to HP's existing policies and as such may be acceptable. It is not appropriate however to present these changes as "corrections" to the 2010 numbers.

**Revenue recognition accounting policies**

13. The directors assert that the accounting policies regarding revenue recognition have been 'reviewed and clarified' but not 'changed'. In fact:

    (a) The 2011 policies exclude a previous reference to recognising sales providing the customer passes defined credit worthiness checks. The 2011 accounts refer to the retrospective reversal of sales due to concerns over the credit worthiness of the customer. Even on the basis of the limited information available to us the appropriateness of the application of hindsight in recognising revenue is, as a matter of accounting, highly questionable. It would seem that in making these adjustments by reversing sales, the directors, who were not in office during 2010, with the benefit of hindsight have reconsidered the credit-worthiness of customers as at the original date of the relevant transaction.

    (b) The 2011 policy wording has been shortened regarding sales to OEM and resellers, but the impact is unclear.

    (c) The 2011 accounts include a new policy for managed service turnover which may have been used to defer licence revenue. This type of arrangement is generally transacted with other group entities (e.g. Digital Safe) and the effect is likely to defer revenue

US-SFO 00000929

US-SFO-00000926.4
EXH 6443-0004

# Deloitte

through the intercompany account. However, as standalone US accounts are not required to be produced, this effect is not known.

**Transfer pricing**

14. The largest single element of the adjustment for "fundamental errors", £50.9m, relates to "transfer pricing". We would surmise that the major effect of this change is to move revenues previously reported by ASL via transfer pricing changes to other parts (in particular the US) of the former Autonomy group. This would involve moving profits from the UK entities into the US entities or losses from the US entities into the UK entities. However, we have no visibility of the actual effect due to the lack of comparative US accounts.

15. The ASL accounts disclose that ASL has submitted a claim for £38.4m for the overpayment of corporation tax. We are not, of course, in a position to say whether the possibility of achieving a tax advantage in any way influenced the company in making the "transfer pricing" adjustments that were made. We do note, however, that the accounts record that this claim has not been agreed by HMRC.

**Deloitte audit fee**

16. Note 3 of the ASL accounts discloses our audit fee for the year ended 31 December 2010 as being £647,000. We are very surprised at this disclosure, given that we know that our fee, as disclosed in the original 31 December 2010 ASL accounts, was only £42,000. We are also surprised to see that the accounts show that we were paid £512,000 for our audit work on the 2011 accounts which we commenced but did not complete. We are aware that we were paid a total fee of £255,000 for our partly complete work for seven UK statutory entities.

**Valuation report**

17. EY's Auditors' Report in the ACL accounts states that the directors recorded an impairment charge of £237m relating to a reduction in the value of investments in subsidiaries, and that this charge was based on an external valuation prepared in July 2012. We are surprised at this statement, since in July 2012 we were still in office as ACL's auditors (EY were not appointed until February 2013) and actively working on the audit of ASL, ACL and other UK subsidiaries. The directors were therefore obliged to provide us, as auditors, with all relevant information and documentation, yet none of them chose to provide us with a copy of that report.

18. Further, in January 2012, only 6 months earlier, and at a time when HP had access to and control over all of Autonomy's financial records, the directors provided us with a valuation report prepared by an independent third party valuing the Autonomy business at US$11billion. This earlier valuation would have included the US business, whereas we presume (but cannot know)

US-SFO 00000930

US-SFO-00000926.5
EXH 6443-0005

# Deloitte

that the later valuation excluded the US business (that business having been absorbed into HP). Even so the two valuations are difficult to reconcile.

**Application of hindsight**

19. The ASL and ACL directors were not directors of the companies for the period covered by the accounts and it is clear that they have applied a large degree of hindsight in preparing these accounts. EY in their ASL auditors' report note that "*the directors have made certain judgements related to underlying transactions, including those relating to the timing and classification of the amounts recorded, the application of appropriate foreign exchange rates and the impact of the resulting retranslation of balances at period ends*". In the ACL accounts, EY further note: "*Although the impairment charge is based on an external valuation prepared in July 2012, at that time the directors had to make a number of judgements and estimates relating to the future performance of the relevant business which might reflect facts that would not have been available to the Directors at 31 October 2011.*"

20. Likewise, the ACL and ASL accounts appear to have been adjusted to include re-allocated costs, the basis of which is not known or stated, but would seem to be no more than a reallocation based upon the directors' assumption as to conditions that may have existed in 2010.

**Hardware sales**

21. Recent press coverage has continued to report HP's statements that hardware sales were used by Autonomy to inflate its reported results causing HP to overpay in its purchase of Autonomy.

22. Mr Mercer has asked me to reiterate that the sales of hardware were actual sales and it has not been suggested that they were not properly recorded in the Group Income Statement. HP's complaint, as recycled in the Press, is that hardware sales served to misrepresent the performance of Autonomy. In fact they were properly recorded within reported turnover, but actually served to reduce profit and cash flow and adversely impacted almost all other reported performance measures or indicators. Not only were these sales known about by HP but they served to depress the reported performance of the company rather than to flatter it.

**EY review of our working papers in 2011**

23. Shortly following HP's acquisition of Autonomy in 2011, and therefore at a time when HP had full access to and control over Autonomy's financial records, for example including our audit committee reports, a team from EY, comprising two partners and two senior managers, inspected our Autonomy audit files over nearly three days to assist with their audit of HP's 31 October 2011 group accounts, which EY signed on 14 December 2011. We answered their questions during

US-SFO 00000931

US-SFO-00000926.6
EXH 6443-0006

# Deloitte

the course of that review. EY did not make any reference to any of the matters now subject to restatement nor indeed did they raise any concerns with us.

**KPMG and HP review of revenue recognition in 2011**

24. Shortly following HP's acquisition of Autonomy in 2011, and therefore at a time when HP had full access to and control over Autonomy's financial records, for example including our audit committee reports, a team from KPMG and HP's world-wide Director of Software Revenue Recognition conducted a review of Autonomy's revenue recognition for the purposes of establishing the differences between IFRS and US GAAP. As part of that review the HP/KPMG team met with our audit team. Neither HP nor KPMG made any reference to any of the matters now subject to restatement or indeed raised any concerns with us.

If you would like to discuss any of the issues raised above further please contact me.

Yours sincerely

*[signature]*

Ian Joslin

US-SFO 00000932

US-SFO-00000926.7
EXH 6443-0007