# EXHIBIT 18

| | |
|---|---|
| **From:** | Yelland, Christopher |
| **Sent:** | Friday, January 31, 2014 7:54 AM |
| **To:** | Anderson, Antonia |
| **Subject:** | FW: Project Viscount: comments on draft statutory accounts for ACL and ASL |
| **Attach:** | Autonomy Corporation Ltd 2011 E7 V3 - commentss.doc; ASL 2011 E7 V4 - comments.docx |

---

**From:** john.f.tracey@uk.pwc.com [mailto:john.f.tracey@uk.pwc.com]
**Sent:** 30 January 2014 23:40
**To:** jerichman@proskauer.com
**Cc:** nigel.curl@uk.pwc.com; rebecca.j.rossiter@uk.pwc.com; john.c.archibald@uk.pwc.com; ben.spiers@freshfields.com; Yelland, Christopher; dave.walters@uk.pwc.com; Lewthwaite, Mark; Particelli, Robert; Letelier, Sergio; helen.archbold@freshfields.com; david.l.marston@us.pwc.com; Ferrara, Ralph C.
**Subject:** Project Viscount: comments on draft statutory accounts for ACL and ASL

Dear Jonathan,

Further to our call earlier this evening, here are our comments on the draft statutory accounts.  Comments that may have relevance to the future litigation are highlighted in yellow.

Some of the more important issues that we noted are:

1.  The absence of any disclosure re hardware

2.  The wording of the EY audit opinion and the possible need to strengthen the wording regarding management's investigation

3.  The reference to errors rather than misstatements

4.  The use of the term "pervasive"

5.  The comments regarding the timing of the impairment

6.  The wording of the revenue recognition note to the ASL accounts

Some of these issues were covered briefly with you and Chris but in the time available  we have not amended our comments.  We have not reviewed the draft accounts to assess compliance with UK GAAP and the content of the statutory accounts remains a matter for HP, ACL and ASL alone. We can be available tomorrow to discuss if that would be helpful.

**Ben, Helen**
As with my previous note, while we are happy to share this response with you, please bear in mind that we are not retained by Freshfields in this matter and owe your firm no duty of care..

Kind regards,
John

**John F. Tracey**

**EXH 6952.0001**

PwC | Partner
Office: +44 (0) 121 265 5783 | Mobile: +44 (0) 7764 903061
Email: john.f.tracey@uk.pwc.com
PricewaterhouseCoopers LLP
Cornwall Court, 19 Cornwall Street, Birmingham B3 2DT

http://www.pwc.com/

PRIVILEGED AND CONFIDENTIAL
ATTORNEY-CLIENT COMMUNICATION

ATTORNEY WORK PRODUCT

---

-------------------- End of message text --------------------
We're proud to sponsor the PwC Under 25s Club at the Old Vic: Opening up the arts to the under 25s, because support for the arts benefits business and society as a whole. Find out more about the PwC Under 25s Club.
-------------------------------------------------------------------------
This email is confidential and is intended for the addressee only. If you are not the addressee, please delete the email and do not use it in any way. PricewaterhouseCoopers LLP does not accept or assume responsibility for any use of or reliance on this email by anyone, other than the intended addressee to the extent agreed in the relevant contract for the matter to which this email relates (if any). PricewaterhouseCoopers LLP is a limited liability partnership registered in England under registered number OC303525, with its registered address at 1 Embankment Place, London WC2N 6RH. It is authorised and regulated by the Financial Conduct Authority for designated investment business. PwC may monitor outgoing and incoming emails and other telecommunications on its email and telecommunications systems; by replying to this email you give your consent to such monitoring.
-----------------------------------------------------------------
Visit our website http://www.pwc.com/uk

EXH 6952.0002

Company Registration No. 03175909

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**Report and Financial Statements**

**10 months ended 31 October 2011**

**EXH 6952A.0001**

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**


**REPORT AND FINANCIAL STATEMENTS 2011**


**CONTENTS**         **Page**

Officers and professional advisers     1

Directors' report     2

Directors' responsibilities statement     13

Independent auditor's report     14

Income statement     16

Statement of comprehensive income     16

Balance sheet     17

Statement of changes in equity     18

Cash flow statement     19

Notes to the financial statements     20

**EXH 6952A.0002**

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**REPORT AND FINANCIAL STATEMENTS 2011**

**OFFICERS AND PROFESSIONAL ADVISERS**

**DIRECTORS**

S E Letelier (Appointed 30 November 2011)
J Shaikhali (Appointed 30 November 2011)

**COMPANY SECRETARY**

R A Putland

**REGISTERED OFFICE**

Amen Corner
Cain Road
Bracknell
Berkshire
RG12 1HN

**INDEPENDENT AUDITORS**

Ernst and Young LLP
Apex Plaza
Forbury Road
Reading
Berkshire
RG1 1YE

EXH 6952A.0003

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**DIRECTORS' REPORT**

The directors present their annual report on the affairs of the Company, together with the financial statements and auditor's report, for the 10 months ended 31 October 2011.

PRINCIPAL ACTIVITY

On 3 October 2011 the Company was acquired by the Hewlett-Packard group ("Hewlett-Packard") as part of its acquisition of the Autonomy Group. Prior to this date the Company was named Autonomy Corporation plc and it served as the ultimate parent and registered public Company for the Autonomy Corporation group. In this role the Company had overall responsibility for the affairs of the Autonomy Group.

Subsequent to the acquisition the Company de-registered as a public Company under the Companies Act 2006 and re-registered as a private Company, limited by shares. Accordingly the Company changed its name from Autonomy Corporation plc to Autonomy Corporation Limited. The principal activity of the Company is that of the principal holding Company for the Autonomy Corporation group which trades in software development and distribution.

The directors as of the date of this report were appointed subsequent to the periods being reported on and subsequent to the acquisition by Hewlett-Packard.

BUSINESS REVIEW

During the period the Company acted as an investment holding Company.  As previously noted, on 3 October 2011 the Company was acquired by Hewlett-Packard as part of its acquisition of the Autonomy Group. These financial statements do not reflect any matters related to the acquisition by Hewlett-Packard, including any accounting for the purchase consideration paid or the subsequent impairment of goodwill and purchased intangible assets as reported by Hewlett-Packard in its financial statements included in Form 10-K for the year ended October 31, 2012 filed with the U.S. Securities and Exchange Commission.

As a result of the findings of an on-going internal investigation, Hewlett-Packard, the Company's ultimate parent, has provided information to the U.K. Serious Fraud Office, the U.S. Department of Justice and the SEC related to accounting improprieties, disclosure failures and misrepresentations in the wider Autonomy group, of which the Company is a subsidiary, that occurred prior to and in connection with Hewlett-Packard's acquisition of Autonomy. On 21 November 2012, representatives of the U.S. Department of Justice advised Hewlett-Packard that they had opened an investigation relating to Autonomy. On 6 February 2013, representatives of the U.K. Serious Fraud Office advised Hewlett-Packard that they had also opened an investigation relating to Autonomy. Hewlett-Packard and the Company are cooperating with the three investigating agencies.

The extensive investigations undertaken by Hewlett-Packard, and by the Directors, into the past accounting practices of the group, have revealed pervasive errors in the previously issued financial statements.  These have required all aspects of the accounting to be re-assessed.  The errors found as a result of these investigations have led to restatements to the previously issued financial statements of the Company for the year ending 31 December 2010, principally relating to the revaluation of balances denominated in foreign currencies, to correct the historic cost of a subsidiary, to correct for costs not recorded in the appropriate financial period, to record the impairment of an associate in the current period, to include appropriate accounting entries for share based payments and to adjust deferred tax balances.

Given the volume and magnitude of the above errors, it is possible that further errors may remain undetected. The investigations, including those of the U.K. Serious Fraud Office, the U.S. Department of Justice and the SEC, are on-going and it is possible that further matters may be identified that could impact the reported financial performance and position of the Company, including previously reported financial statements. As a result of the investigations by Hewlett-Packard the earnings of fellow group undertakings have themselves been subject to substantial corrections for the current and prior periods compared to any previously prepared financial statements, principally relating to the overstatement of revenues in Autonomy's U.S. operations.

The outcome of ongoing investigations cannot be determined and it should be noted that the investigations could result in fines, other penalties or claims being imposed on or asserted against the Company. It is not possible at this time to estimate the outcome of any such actions taken against the Company.

In addition to the uncertainties discussed above, the work that the Directors were able to undertake on closing the books and preparing the financial statements was limited in certain cases by the information that was available to them, specifically in the areas of intercompany opening balances at 1 January 2010 and analysis supporting the period in which the investment impairment first arose (see note 1).

2

**Commented [NC1]:** This reads as though the change of name took place on 3 October 2011.

**Commented [NC2]:** Consider standardising the references to "Autonomy Corporation Group", "Autonomy Group", "Autonomy group", "Autonomy" and "group"?  Also applies below but not repeated.

**Commented [NC3]:** Is this reference needed here?  It does not seem correct to refer to the group (see the definition above) as the ultimate parent – presumably that should be an entity?

**Commented [34]:** Define as £the Group"?

**Commented [NC5]:** Is it a subsidiary – it is described as the ultimate parent above?

**Commented [36]:** Is pervasive the right term (see comment in ASL for more detail).

**Commented [NC7]:** Would "misstatements" be a better term?  "Errors" would indicate they were mistakes rather than deliberate.  Also applies below but not always repeated.

Or refer to both?

**Commented [NC8]:** All?

**Commented [NC9]:** Could include a comment that restated consolidated group financial statements are not being prepared as the directors consider they are not required (i.e. not because no restatements would be necessary if they were prepared)?

**Commented [NC10]:** financial statements?

**Commented [NC11]:** We recall some concern in HP regarding this form of comment – is it now accepted?
Is this intended to cover the potential claim from the acquiring HP entity?

EXH 6952A.0004

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**DIRECTORS' REPORT (continued)**

**BUSINESS REVIEW (continued)**

The Directors have completed all the work that they can reasonably undertake, are not aware of any matters significant to the financial statements they have not addressed at the time of preparing these financial statements and have made such reasonable judgements and estimate that are necessary for them to close the books and prepare these financial statements. Accordingly the Directors are satisfied that the financial statements reflect a true and fair view of the state of affairs of the Company and of its financial performance for the period.

> **Commented [NC12]:** estimates?

The aggregate impact of all of these restatements on the profit for the year ending 31 December 2010 is to increase the net loss after tax from £12.2m to £22.1m, and to reduce opening reserves at 1 January 2010 from £699.4m to £690.9m. The nature of the restatements, and the impact on the financial position of the Company, is described in more detail in note 22 to the accounts.

The internal and external investigations findings, regarding the accounting improprieties, incomplete disclosures and misrepresentations at Autonomy with respect to Autonomy's pre-acquisition business, identified the need for an impairment assessment to be performed by the current directors, on the investments and as a result of this assessment an impairment charge of £308.5m was recognised in the period (2010: £nil). The impairment assessment used a combination of the income method of valuation based on a revised forecast as well as the absolute book value method based on the carrying value of debt. Under the income method of valuation, the revised forecast reflected the current directors' assessment of organic revenue growth rates, market trends, business mix, cost structure and other expectations about the anticipated short-term and long-term operating results of the Autonomy business.

> **Commented [313]:** The timing of this impairment may be a factor in the SEC's consideration of the timing of the HP impairment.

Exceptional legal and professional fees of £42.2 million (year ended 31 December 2010: £nil) were incurred by the company in the period as a result of Hewlett-Packard acquiring the share capital of the company on 3 October 2011.

> **Commented [NC14]:** Presumably this relates mainly to the costs incurred by former management in selling the business to HP? If so perhaps the wording could better reflect this?

As of 31 October 2011 the company held a 14% (2010: 14%) share in Blinkx plc. which is carried at its fair value at each reporting date, based on the market price of its shares. During the period, the share price increased from 83.25p to 150.00p, resulting in an increase in the carrying value of the investment from £38.5 million to £69.3 million, which was recorded in other comprehensive income through a revaluation reserve. On 25 June 2013 the Company disposed of its holding of 45.7m shares in Blinkx Plc for £54,840,000 at a share price of 120.00p through an accelerated offering to institutional investors.

**CHANGE IN OWNERSHIP**

On 3 October 2011 the share capital of the Company was acquired by Hewlett-Packard Vision B.V., a Company incorporated in the Netherlands. The ultimate controlling party of the company is Hewlett-Packard Company, a Company incorporated in the United States of America.

The Company de-listed its shares from the London Stock Exchange on 14 November 2011

On 10 January 2012 the Company de-registered as a public company under the Companies Act 2006 and re-registered as a private Company, limited by shares. Accordingly the Company changed its name from Autonomy Corporation plc to Autonomy Corporation Limited.

On the basis that the Company was not listed as at the date of signing of these accounts, the disclosures required by the UK Corporate Governance Code, DTR 7.1, DTR 7.2 and DTR 4.1 have not been given.

**ENVIRONMENTAL MATTERS**

It is the Company's policy to ensure, by encouraging environmental best practice, that operations have as little environmental impact as is consistent with the Company's business needs. As a holding Company the Company has no manufacturing facilities and operations do not include the production of hazardous substances or complex waste emissions.

**EMPLOYEES**

As a holding Company, the Company has no employees other than the Directors of the Company.

**SOCIAL AND COMMUNITY MATTERS**

During the period to 31 October 2011 the Company maintained a number of charitable giving policies indirectly through its wholly owned subsidiaries.

3

EXH 6952A.0005

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**


**DIRECTORS' REPORT (continued)**


**FUTURE DEVELOPMENTS**

The directors expect the Company to maintain its operations as an investment holding Company.

**CAPITAL STRUCTURE**

At 31 October 2011, the structure of the Company's capital consisted solely of ordinary shares, nominal value 1/3p per share, and convertible bonds. There are no restrictions imposed by the Company on the transfer of securities in the Company or limitations on the holding of securities or requirements to obtain approval for a transfer of securities. At 31 October 2011 100% of the ordinary shares were owned by Hewlett-Packard Group.

There are no restrictions on voting rights on the Company's ordinary shares, including any limitations on voting rights of holders of a given percentage or number of votes, deadlines for exercising voting rights, or arrangement by which with the Company's co-operation financial rights carried by securities are held by a person other than the holder of the securities. The Company is not aware of any agreements by the holder of its securities which may result in restrictions on the transfer of securities or voting rights. The Company does not have any rules regarding the appointment and replacement of directors and amendment of the Articles of Association other than those set forth in the Articles of Association. The powers of the directors are as set forth in the Company's Articles of Association and as permitted by shareholders pursuant to the Company's Annual General Meeting.

There are no essential contractual relationships.

**CHANGE OF REPORTING DATE**

After the period end the Company changed its financial reporting date to 31 October (previously 31 December) to align with its parent Company.

**DIVIDENDS**

The directors do not recommend the payment of any other dividends for the current financial period (2010: £nil).

**PRINCIPAL RISKS AND UNCERTAINTIES**

The major risks impacting the business and the Company's policies to mitigate those risks are set out in note 19 to the financial statements.

**FINANCIAL INSTRUMENTS AND TREASURY POLICY**

Details of the financial risk management objectives and policies of the Company and its exposures to risks from financial instruments are in note 19.

**KEY PERFORMANCE INDICATORS**

The key performance indicators for the Company are:

|  | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 Restated |
|---|---|---|
| Investments in subsidiary undertakings | 331,946 | 624,261 |
| Net assets | 516,280 | 776,314 |
| Loss before tax | (387,001) | (22,080) |

The reduction in the investment value in subsidiary undertakings is principally driven by the impairment charge of £308.5m recorded in the period to 31 October 2011. The increase in the loss before tax and reduction in net assets is principally driven by the impairment charge of £308.5m and exceptional disposal costs of £42.2m recorded in the period to 31 October 2011. See notes 10 and 21 for further details.

**Commented [NC15]:** Is this wording correct?

**Commented [NC16]:** This is the loss for the period (i.e. after tax)?

**Commented [NC17]:** Is this the correct term – costs relating to the sale of the group to HP?

4

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**DIRECTORS' REPORT (continued)**

**DIRECTORS**

The directors who served during the period and to the date of this report were as follows:

| | |
|---|---|
| S E Letelier – executive director | (Appointed 30 November 2011) |
| J Shaikhali – executive director | (Appointed 30 November 2011) |
| J Bloomer – non executive director | (Resigned 14 November 2011) |
| R Gaunt – non executive director | (Resigned 14 November 2011) |
| F Kelly – non executive director | (Resigned 14 November 2011) |
| J McMonigall – non executive director | (Resigned 14 November 2011) |
| R Webb – non executive director | (Resigned 14 November 2011) |
| S Hussain – executive director | (Resigned 30 November 2011) |
| M Lynch – executive director | (Resigned 30 November 2011) |

**DIRECTORS' INDEMNITIES**

At the Company's Annual General Meeting in May 2006 shareholders approved an amendment to the Company's Articles of Association providing for third party indemnification of directors, which was in place throughout the period. A copy of the Company's Memorandum and Articles of Association are available for inspection at the Company's office and from Companies House.

> **Commented [AM18]:** Legal action to confirm this is correct as stated, or to amend.

**SUPPLIER PAYMENT POLICY**

The Company's policy is to settle payment terms with all suppliers when agreeing a transaction, to ensure that suppliers are aware of the terms and to abide by such terms. Generally the Company pays suppliers at the end of the month following that in which the supplier's invoice is received. Creditor days outstanding as at 31 October 2011 for the Company was 36 days (31 December 2010: 27 days).

**CHARITABLE AND POLITICAL CONTRIBUTIONS**

The Company did not make any political or charitable contributions during the period (year ended 31 December 2010: £nil).

**DIRECTORS' STATEMENT AS TO DISCLOSURE OF INFORMATION TO AUDITORS**

The directors in office at the date of signature of these accounts were not directors of the Company for the period covered by the accounts. The directors consider that there remains a risk that not all information relevant to the production of these accounts is available to the current directors and consequently therefore not available to the auditors. In making this determination the current directors have considered the findings from the previously discussed investigation into financial misrepresentations announced by Hewlett-Packard Company, the identified errors in previously reported financial statements as well as the quality and completeness of the accounting records maintained by the previous management team. The current directors have executed all reasonable efforts to mitigate these circumstances and, not-withstanding these limitations, each of the persons who is a director at the date of the approval of this report confirms that:

> **Commented [NC19]:** See previous comment.

- so far as the directors are aware, there is no relevant audit information of which the Company's auditor is unaware; and
- the directors have taken all the steps that they ought to have taken as a director to make themselves aware of any relevant audit information and to establish that the Company's auditor is aware of that information.

This confirmation is given and should be interpreted in accordance with the provisions of s418 of the Companies Act 2006.

**GOING CONCERN**

> **Commented [AM20]:** Update for final conclusion

The Company continues to receive the support [specify] to allow it to meet its liabilities as they fall due and for the next 12 months from the date of this report. As a consequence, the directors believe that the Company is well placed to manage its business risks successfully despite the current uncertain economic outlook.

> **Commented [NC21]:** Is this wording an issue in the context of a potential claim from the HP acquiring company?

After making enquiries, the directors have a reasonable expectation that the Company has adequate resources to continue in operational existence for the foreseeable future. Accordingly, they continue to adopt the going concern basis in preparing the annual report and accounts.

5

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**


**DIRECTORS' REPORT (continued)**


**REMUNERATION REPORT**

On 3 October 2011 the Autonomy group was acquired Hewlett-Packard Company. The Remuneration Report covers the period to 31 October 2011 in full as transitional arrangements following the Company's incorporation in to the Hewlett-Packard group did not take effect until after the period end. On 14 November 2011 all the non-executive directors resigned. On 30 November 2011 both executive directors resigned as directors.

*Remuneration Elements*
The main elements of executive packages for the accounting period ended 31 October 2011 are:

*Base Salary*
The Remuneration Committee considered the level of base salary for each executive director annually, taking into account the performance of the individual and the Company's strategies. The Remuneration Committee also took into account salaries in relevant comparable companies, specific factors relating to the individual, internal relatives and overall affordability. The appropriate market rate was defined as the rate in the market place from which the individual would most likely to be recruited.

In establishing individual salary levels, the Remuneration Committee was conscious that it should pay no more than was necessary to retain and motivate the executive, while ensuring business objectives were fulfilled. There was no automatic adjustment in respect of inflation. Executive directors' base salaries remained low relative to similarly situated companies, with performance-based incentive compensation forming the most important factor in overall compensation.

2011 salaries and benefits for the CEO and CFO were approved by the Board in early 2011 based on forecast performance during 2011. Base salary raises for 2012 were approved as follows:

|  | Salary for 2012 | Increase |
|---|---|---|
| Dr Michael Lynch | £348,916 | 14% |
| Sushovan Hussain | £372,435 | 15% |

*Benefits*
Limited employment-related benefits were provided, consisting only of company car or car allowance and basic private medical insurance.

*Pensions*
During 2006 the Company established a matching pension scheme available to all UK employees with more than three years' service. The scheme provides for the Company to make a matching contribution to an individual employee's pension, up to 3% of the individual's base salary (only) per annum. Other than this generally available benefit, the directors did not have pension, retirement or similar entitlements.

*Bonuses*
In accordance with common practice amongst the Company's peers, the Company had performance-related bonus remuneration for certain executive directors. Bonuses were intended to encourage the achievement of pre-defined annual financial objectives and to focus on the most important measures of business success, while rewarding individuals for outstanding performance. In this way executive bonuses sought to align the interests of shareholders and those eligible.

The targets for the annual element of bonuses were related to the goals of the Company set by the Board. Generally, bonuses started to be earned at performance levels on target and then increased until they reach capped levels, which were generally significantly above targets.

Cash Bonus: Executive directors were eligible for a bonus of 50% of base salary for basic achievement and up to an additional 50% of base salary for over performance against pre-agreed financial targets (awarded on a straight-line between the two targets). The policy remained in place for 2011 under the same guidelines.

6

**Commented [AM22]:** Legal action to review. Plus AU finance to consider

**Commented [NC23]:** Is this disclosure all still required as this is no longer a public company?

**Commented [NC24]:** As noted above, this section requires review. Consider in the context of likely claims against Lynch and Hussain – i.e. suggest do not to refer to their performance (or if necessary to do so add a comment that performance was assessed on the basis of the misstated results), do not say their salaries "remained low" etc.

**Commented [NC25]:** As above, need to review the following text - consider references to performance etc in the context of the likely claims against Lynch and Hussain.

**Commented [326]:** Were bonuses paid before the issues under examination came to light?

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**


**DIRECTORS' REPORT (continued)**


REMUNERATION REPORT (continued)

Deferred Bonus: From 2010 the Board adopted a new deferred bonus policy for executive directors. The Board believed that share ownership by directors and staff aligned their personal interests with those of shareholders. The policy remained in place for 2011 under the same guidelines.

Under the policy executive directors were granted share options following achievement of pre- financial targets, with vesting over subsequent years. Executive directors were eligible for a single annual grant of up to 150,000 share options if performance levels were achieved. Grants vested from the date of award over the subsequent three years, with the maximum number set as approximately one and a half times base salary based on a Black Scholes valuation.

> **Commented [NC27]:** Aside from considering this from a litigation perspective, would the text below require update as a result of the acquisition, the resignations of Lynch and Hussain etc?

Share options were always issued at market value. The maximum number of share options the Company was permitted to grant was up to 10% of the outstanding shares. There was no departure from this policy during 2011.

Deferred Shares Bonus: In 2010 the Board approved a new performance share policy as part of the remuneration arrangements. The policy remained in place for 2011 under the same guidelines.

The purpose of the Deferred Shares Bonus was to align the interests of shareholders and management in growing the value of the business over the long term. It did this by granting shares which vest depending on the extent to which the business meets targets over a three-year period; the value of the incentive to an executive was also heavily dependent on the level of share-price appreciation over the period, which also helped to align the interest of executive and shareholder.

The maximum annual award level for executive directors for 2010 and 2011 was 100% of base salary. Vesting of awards was based on meeting stretching performance targets over a three year performance period and, subject to meeting all relevant conditions, shares would normally be released to participants as soon as possible following the third anniversary of the award. Any ordinary shares granted under the policy would be satisfied from the Company's Employee Benefit Trust, and thus was non-dilutive to shareholders.

Performance was measured against total shareholder return versus the constituents of the FTSE 100 at the date of grant. The FTSE 100 was chosen as most relevant given the relative lack of comparable technology companies in the UK. As a result any benchmark of other companies would be overwhelmingly dominated by foreign companies who do not operate under similar corporate governance guidelines. Thus the main broad index of which the Company is a member was deemed the most relevant reference point.

> **Commented [NC28]:** Need to remove any suggestion that there was good corporate governance.

The Remuneration Committee in all cases retained discretion to ensure that, as a condition for the vesting of shares, the underlying overall performance of the Company had been satisfactory. Vested awards included adjustments for any dividends, share splits or similar corporate actions throughout the vesting period.

If a participant resigned or was dismissed before shares were released, they would be forfeited. The Remuneration Committee had discretion to accelerate vesting in compassionate circumstances including in the event of a change of control during the performance period where performance was measured at the latest possible date before the change of control to assess the proportion vesting based on performance. The proportion of the award that would be released would then be time prorated. The Remuneration Committee had the discretion to disapply the impact of time pro rating and to permit up to 100% of awards to vest on a change of control where, due to exceptional business circumstances, returns to shareholders were considered to be at a superior level.

*Non-Executive Director Remuneration*
Fees for non-executive directors were determined taking into account expected time commitments and responsibilities, together with comparative market rates and benchmarking data.

Non-executive directors were entitled to basic fees only. During 2010 basic fees were set at £60,000 per annum for all non-executive directors and they remained at this level for 2011. An additional fee of £60,000 was paid to the Chairman of the Audit Committee. The Chairman of the Board earned a fee of £120,000 per annum in 2011.

EXH 6952A.0009

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**DIRECTORS' REPORT (continued)**

**REMUNERATION REPORT (continued)**

Non-executive directors did not participate in any bonus or performance related plans or any of the group's share incentive, option or pension schemes.

*Staff Incentive Schemes*
Options formed the core element of the Company's equity program for the broader employee base, and were granted in small amounts from time-to time to a very broad set of the Company's employees after achievement of performance targets. After grant share option awards were then subject to vesting periods, with initial vesting after six or 12 months and the remainder vesting over a total of 2.5 to 3.5 years. Executive Directors participated in this scheme in prior years but no longer do so.

*Service Contracts*
*Policy*
The UK Corporate Governance Code and guidelines issued by institutional investors recommended that notice periods of no more than one year be set as an objective for executive directors and that any payments to a departing executive director should be determined having full regard to the duty of mitigation. The Company achieved these objectives in all respects.

The Company's policies prohibited long-fixed contracts and contractual termination payments. The Company required mutual notice periods for directors, but never in excess of 12 months. All executive directors had service contracts and all non-executive directors had appointment letters. All agreements provided for notice of 12 months or less, although did not have a specified fixed term, and all permitted garden leave up to the length of the notice period. No other amounts were payable on termination. All terms of appointment were subject to the provisions of the Companies Act 2006 and the requirement to retire by rotation on the third anniversary of the previous election.

*Executive Directors' Contracts*
No director was entitled to any automatic payment by virtue of early termination of their contract or a change in control of the Company.

Each executive director was entitled to benefits generally made available to all employees and any fees or remuneration he was entitled to as a director of Autonomy. Payment of salary in lieu of notice was permitted on termination. For a fixed period following the termination of employment, each of Dr. Lynch and Mr. Hussain were prohibited from soliciting the Company's clients, customers and employees and from competing with the Company in a similar geographic area.

*Non-Executive Directors' Contracts*
The non-executive directors served under appointment letters with the Company. All non-executive directors (including the Chairman) were appointed under the Company's Articles of Association, which required that one third of all directors (including executive directors) should retire at each AGM and that all directors must seek re-election at least every three years. They were also subject to review by the Nominating Committee prior to being considered for election or re-election by shareholders.

Non-executive directors were entitled to be reimbursed for their reasonable out-of-pocket expenses incurred in attending Board meetings and committees thereof. No directors were entitled to reimbursement of non-business expenses, and all directors were subject to the Company's global expense policies.

8

EXH 6952A.0010

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**DIRECTORS' REPORT (continued)**

**REMUNERATION REPORT (continued)**

*Audited Remuneration Information*
Directors' Remuneration
Remuneration for Directors who served during the period ending 31 October 2011 was as follows:

| | Salary | Fees | Benefits | Matching Pension Contributions | Bonuses | Total 2011 | Total 2010 |
|---|---|---|---|---|---|---|---|
| | £ | £ | £ | £ | £ | £ | £ |
| **Executive Directors** | | | | | | | |
| Dr Michael Lynch | 306,398 | - | (3,852) | 9,322 | 181,289 | 493,157 | 528,534 |
| Sushovan Hussain | 325,229 | - | 7,991 | 8,389 | 238,840 | 580,449 | 479,603 |
| | | | | | | | |
| **Non-Executive Directors** | | | | | | | |
| Robert Webb, Chairman | 101,818 | - | - | - | - | 101,818 | 120,000 |
| Barry Anko (to 8 September 2010) | - | - | - | - | - | - | 42,510 |
| Jonathan Bloomer (from 1 August 2010) | 66,667 | - | - | - | - | 66,667 | 33,333 |
| Richard Gaunt | 50,000 | - | 563 | - | - | 50,563 | 58,301 |
| Frank Kelly (from 1 May 2010) | 50,000 | - | - | - | - | 50,000 | 40,000 |
| John McMonigall | - | 50,000 | - | - | - | 50,000 | 60,000 |
| Richard Perle (to 8 September 2010) | - | - | - | - | - | - | 42,510 |

9

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**


**DIRECTORS' REPORT (continued)**


**REMUNERATION REPORT (continued)**

*Share Options*
Details of share options granted to executive directors, all granted based on performance, are set out below. No directors' share options were cancelled or lapsed, or changed, during the period.

**Commented [NC29]:** Is this correct given their exercise?

Michael Lynch

| At 1 Jan 2011 | Granted during 2011 | Exercised during 2011 | At 31 October 2011 | Exercise Price | Market Price at Exercise | Vesting Schedule | First Exercise | Expiry Date |
|---|---|---|---|---|---|---|---|---|
| 50,000 | - | 50,000 | - | £3.05 | £25.50 | 3 year/6 month | 22 Mar 2006 | 21 Sep 2012 |
| 30,000 | - | 30,000 | - | £4.25 | £25.50 | 3 year/6 month | 15 Nov 2006 | 14 May 2013 |
| 25,000 | - | 25,000 | - | £3.835 | £25.50 | 3 year/6 month | 11 Mar 2007 | 10 Sep 2013 |
| 12,000 | - | 12,000 | - | £6.455 | £25.50 | 3 year/6 month | 29 Sep 2007 | 28 Mar 2014 |
| 38,000 | - | 38,000 | - | £8.19 | £25.50 | 3 year/6 month | 01 Feb 2008 | 31 Jul 2014 |
| 45,000 | - | 45,000 | - | £8.61 | £25.50 | 3 year/6 month | 19 Jun 2008 | 18 Dec 2014 |
| 4,000 | - | 4,000 | - | £nil | £25.50 | 3 year/6 month | 19 Jun 2008 | - |
| 35,000 | - | 35,000 | - | £8.765 | £25.50 | 3 year/6 month | 07 Sep 2008 | 06 Mar 2015 |
| 35,000 | - | 35,000 | - | £8.75 | £25.50 | 3 year/6 month | 24 Dec 2008 | 23 Jun 2015 |
| 25,000 | - | 25,000 | - | £10.30 | £25.50 | 3 year/6 month | 08 Feb 2010 | 07 Aug 2015 |
| 30,000 | - | 30,000 | - | £11.92 | £25.50 | 3 year/6 month | 26 Aug 2010 | 25 Feb 2016 |
| 5,000 | - | 5,000 | - | £11.92 | £25.50 | 3 year/6 month | 26 Aug 2010 | 25 Feb 2016 |
| 30,000 | - | 30,000 | - | £11.84 | £25.50 | 3 year/6 month | 29 Jan 2010 | 28 Jul 2016 |
| - | 75,000 | 75,000 | - | £16.00 | £25.50 | 3 year/6 month | 11 Jul 2011 | 11 Jan 2017 |
| - | 42,582 | 42,582 | - | £nil | £25.50 | 3 year/6 month | 03 Oct 2011 | 03 Oct 2011 |
| **364,000** | **117,582** | **481,582** | | | | | | |

Sushovan Hussain

| At 1 Jan 2011 | Granted during 2011 | Exercised during 2011 | At 31 October 2011 | Exercise Price | Market Price at Exercise | Vesting Schedule | First Exercise | Expiry Date |
|---|---|---|---|---|---|---|---|---|
| 6,334 | - | 6,334 | - | £8.19 | £25.50 | 3 year/6 month | 01 Feb 2008 | 31 Jul 2014 |
| 38,666 | - | 38,666 | - | £8.61 | £25.50 | 3 year/6 month | 19 Jun 2008 | 18 Dec 2014 |
| 4,000 | - | 4,000 | - | £nil | £25.50 | 3 year/6 month | 19 Jun 2008 | - |
| 35,000 | - | 35,000 | - | £8.765 | £25.50 | 3 year/6 month | 07 Sep 2008 | 06 Mar 2015 |
| 35,000 | - | 35,000 | - | £8.75 | £25.50 | 3 year/6 month | 24 Dec 2008 | 23 Jun 2015 |
| 35,000 | - | 35,000 | - | £10.3 | £25.50 | 3 year/6 month | 08 Feb 2010 | 07 Aug 2015 |
| 30,000 | - | 30,000 | - | £11.92 | £25.50 | 3 year/6 month | 26 Aug 2010 | 25 Feb 2016 |
| 5,000 | - | 5,000 | - | £11.92 | £25.50 | 3 year/6 month | 26 Aug 2010 | 25 Feb 2016 |
| 35,000 | - | 35,000 | - | £11.84 | £25.50 | 3 year/6 month | 29 Jan 2010 | 28 Jul 2016 |
| 50,000 | - | 50,000 | - | £15.67 | £25.50 | 3 year/6 month | 01 Aug 2010 | 31 Jul 2017 |
| - | 75,000 | 75,000 | - | £16.00 | £25.50 | 3 year/6 month | 11 Jul 2011 | 11 Jan 2017 |
| - | 40,296 | 40,296 | - | £nil | £25.50 | 3 year/6 month | 03 Oct 2011 | 03 Oct 2011 |
| **274,000** | **115,296** | **389,296** | | | | | | |

EXH 6952A.0012

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**


**DIRECTORS' REPORT (continued)**


**REMUNERATION REPORT (continued)**

No non-executive directors held share options, and the Board had no intention to grant any such options. The options granted to executive directors made under prior Board policies remained available for exercise and vesting in accordance with the rules of the relevant grants. They were subject to performance conditions prior to grant and vested over a three year period from grant. All share options vested and the resulting shares sold to Hewlett-Packard Company upon its acquisition of the Autonomy group.

*Directors and their Interests*
The beneficial interests of directors who served during 2011 and their connected persons in the ordinary shares of the Company at the start and end of the period were as follows:

|                              | 1 Jan 2011  | 31 Oct 2011 |
| ---------------------------- | ----------- | ----------- |
| **Executive Directors**      |             |             |
| Dr Michael Lynch             | 19,798,546  | -           |
| Sushovan Hussain             | 9,978       | -           |
| **Non-Executive Directors**  |             |             |
| Robert Webb, Chairman        | 8,109       | -           |
| Jonathon Bloomer             | -           | -           |
| Richard Gaunt                | 2,372,601   | -           |
| Frank Kelly                  | -           | -           |
| John McMonigall              | -           | -           |


**POST BALANCE SHEET EVENTS**

On 4 November 2011 Hewlett-Packard Vision B.V. received the final acceptance to acquire all convertible loans.

On 10 January 2012 the Company de-registered as a public Company under the Companies Act 2006 and re-registered as a private Company, limited by shares. Accordingly the Company changed its name from Autonomy Corporation plc to Autonomy Corporation Limited. The Company de-listed its shares from the London Stock Exchange on 14 November 2011.

On 20 January 2012 Hewlett-Packard Vision B.V. transferred all of its holding in the convertible loans to Hewlett-Packard Leman B.V., a fellow subsidiary undertaking.

On 29 February 2012 the Company filed a written resolution modifying the terms of the convertible loan notes in issue. The modification allowed for the redemption of the convertible loan notes by the Company on 5 March 2012 for their par value, plus accrued interest not yet paid.

On 5 March 2012 the Company redeemed the convertible loan notes for the total consideration of £504,974,625, being the par value plus interest accrued and not paid.

On 22 March 2012 the Company filed a solvency statement under s643 of the Companies Act 2006 stating that the directors believe there to be no grounds on which the Company could not settle its existing commitments as they fall due, and that the Company will be able to settle its on-going liabilities as they fall due for 12 months following signing of the solvency statement.

On 22 March 2012 written resolutions were filed with Companies House to reduce the equity capital of the Company under s644(1) of the Companies Act 2006. Accordingly, the share premium of the Company was reduced resulting in £600,000,000 being released to retained earnings.

EXH 6952A.0013

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**


**DIRECTORS' REPORT (continued)**


**POST BALANCE SHEET EVENTS (continued)**

On 28 March 2012 the Company sold 100% of the share capital of Autonomy Europe Holdings Limited to a fellow group Company Hewlett-Packard Leman B.V. for $1.68 billion (£1.05 billion). Immediately following this, the Company remitted these funds by way of a dividend payment of $1.68 billion (£1.05 billion) to Hewlett-Packard Vision Limited, its immediate parent Company.

On 25 June 2013 the Company disposed of its holding of 45.7m shares in Blinkx Plc for £54,840,000 at a share price of 120.00p through an accelerated offering to institutional investors.

On 17 December 2013 the Company disposed of its holding in Realise Limited for £2,607,000 through a sale of its shares to Realise Holdings Limited.

As discussed in note 22, the Company booked a number of prior year adjustments in respect of the years ended 31 December 2009 and 31 December 2010.  As a result of this the Company has submitted a claim for overpayment of tax of £835,500 in December 2013 in respect of the tax return for the year ended 31 December 2009.  At the date of signing the financial statements HMRC have not agreed the claim and therefore no benefit has been recognised due to the uncertainty regarding the final value of the claim.


**AUDITORS**

On 15 February 2013, Ernst and Young LLP were appointed as auditors of the Company.


Approved by the Board of Directors and signed on behalf of the Board


J Shaikhali
Director
[Date]

12

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**DIRECTORS' RESPONSIBILITIES STATEMENT**

The directors are responsible for preparing the Annual Report and the financial statements in accordance with applicable United Kingdom law and regulations.

Company law requires the directors to prepare such financial statements for each financial year.  Under that law, the directors have elected to prepare the financial statements in accordance with International Financial Reporting Standards (IFRSs) as adopted by the European Union.

Under Company law the directors must not approve the financial statements unless they are satisfied that they give a true and fair view of the state of affairs of the Company and of the profit or loss of the Company for that period. In preparing these financial statements the directors are required to:

- present fairly the financial position, financial performance and cash flows of the Company;
- select suitable accounting policies in accordance with IAS 8: *Accounting Policies, Changes in Accounting Estimates and Errors* and then apply them consistently;
- make judgements that are reasonable;
- provide additional disclosures when compliance with the specific requirements in IFRSs as adopted by the European Union is insufficient to enable users to understand the impact of particular transactions, other events and conditions on the Company's financial position and financial performance; and
- state whether the Company's financial statements have been prepared in accordance with IFRSs as adopted by the European Union, subject to any material departures disclosed and explained in the financial statements..

The directors are responsible for keeping adequate accounting records that are sufficient to show and explain the Company's transactions and disclose with reasonable accuracy at any time the financial position of the Company and enable them to ensure that the financial statements comply with the Companies Act 2006. They are also responsible for safeguarding the assets of the Company and hence for taking reasonable steps for the prevention and detection of fraud and other irregularities.

EXH 6952A.0015

**INDEPENDENT AUDITOR'S REPORT TO THE MEMBERS OF AUTONOMY CORPORATION LIMITED**

We have audited the financial statements of Autonomy Corporation Limited for the period ended 31 October 2011 which comprise the Income Statement, Statement of Comprehensive Expense/Income, the Balance Sheet, the Statement of Changes in Equity, the Cashflow Statement and the related notes 1 to 25.  The financial reporting framework that has been applied in their preparation is applicable law and International Financial Reporting Standards (IFRSs) as adopted by the European Union.

This report is made solely to the company's members, as a body, in accordance with Chapter 3 of Part 16 of the Companies Act 2006.  Our audit work has been undertaken so that we might state to the company's members those matters we are required to state to them in an auditor's report and for no other purpose.  To the fullest extent permitted by law, we do not accept or assume responsibility to anyone other than the company and the company's members as a body, for our audit work, for this report, or for the opinions we have formed.

**Respective responsibilities of directors and auditor**

As explained more fully in the Directors' Responsibilities Statement set out **[on page ...]**, the directors are responsible for the preparation of the financial statements and for being satisfied that they give a true and fair view.
Our responsibility is to audit and express an opinion on the financial statements in accordance with applicable law and International Standards on Auditing (UK and Ireland). Those standards require us to comply with the Auditing Practices Board's Ethical Standards for Auditors.

**Scope of the audit of the financial statements**

An audit involves obtaining evidence about the amounts and disclosures in the financial statements sufficient to give reasonable assurance that the financial statements are free from material misstatement, whether caused by fraud or error. This includes an assessment of: whether the accounting policies are appropriate to the company's circumstances and have been consistently applied and adequately disclosed; the reasonableness of significant accounting estimates made by the directors; and the overall presentation of the financial statements. In addition, we read all the financial and non-financial information in the **[describe the annual report]** to identify material inconsistencies with the audited financial statements. If we become aware of any apparent material misstatements or inconsistencies we consider the implications for our report.

**Basis for disclaimer of opinion**

As disclosed in the Directors' Report and note 1 the work that the Directors were able to undertake in closing the books and preparing the financial statements was limited in certain cases by the information that was available to them.  The Directors have made certain judgements related to the completeness, timing and classification of transactions relating to expenses.  The Directors have been unable to provide to us sufficient and appropriate audit evidence to enable us to form an opinion as to the timing and classification of expenses and the completeness of liabilities as at [1 January 2010], 31 December 2010 and 31 October 2011. If additional evidence was available to the Directors, including further information from the ongoing investigations further adjustments might be required to the operating expenses and related tax amounts reported in the income statements and to the liabilities and the retained earnings positions

Further, as also disclosed in note 1 to the financial statements there are limitations over the quality and completeness of the documentation available to support intercompany transactions and balances reported in the financial statements.  The Directors have made certain judgements related to underlying transactions, including those relating to the timing and classification of transactions, the application of appropriate foreign exchange rates and the resulting retranslation of balances at period ends.  The Directors have been unable to provide to us sufficient and appropriate audit evidence to enable us to form an opinion as the whether the opening balances and the measurement of related income statement transactions are appropriately recorded.  If different judgements were applied the income statement effect of the transactions including the taxation and any foreign exchange impact would be different and would lead to a consequential change in the opening intercompany balances and retained earnings positions.

14

**Commented [NC30]:** It would seem to be preferable to have the least qualification possible.

**Commented [NC31]:** Does this mean note 2?

**Commented [NC32]:** Is this still the case after the additional email review work conducted at EY's request that identified no further issues of concern?

EXH 6952A.0016

**INDEPENDENT AUDITOR'S REPORT TO THE MEMBERS OF AUTONOMY CORPORATION LIMITED**

As disclosed in note [xx] to the financial statements the Directors have recorded an impairment charge of £[200m] relating to a reduction in the value of investments in subsidiaries.  The Directors have been unable to identify whether there were indicators of impairment at prior period ends and whether some or all of the charge should have been allocated to earlier periods.  The Directors have based the impairment charge on an external valuation prepared in July 2012 at which time the Directors had to make a number of judgements and estimates relating to the future performance of the relevant businesses.  The valuation was based on the information available to the Directors at that time, which may have reflected facts that would not have been available to the Directors at 31 October 2013.  The Directors have been unable to provide to us sufficient and appropriate audit evidence to enable us to form an opinion as to the period in which some or all of the impairment charge should have been recorded and as to whether the assumptions applied reflected any information that would not have be known at 31 October 2011, although the evidence is sufficient to determine that there was impairment in the recorded cost of the invetsment.  If additional evidence was available to the Directors further adjustment might be required to the period in which the impairment charge is recorded and to the amount of the impairment.

> **Commented [NC33]:** 2011?

**Disclaimer of opinion**

Because of the significance of the matters described in the Basis for disclaimer of opinion paragraph, we have not been able to obtain sufficient appropriate audit evidence to provide a basis for an audit opinion. Accordingly, we do not express an opinion on the financial statements.

**Emphasis of matter**

*Investigation*                                                                                                          *progress*
In forming our opinion on the financial statements, which is not modified in this respect, we have considered the adequacy of the disclosures made in the Basis of preparation note related to the ongoing investigations and potential actions, and any penalties or claims that may arise. It is not possible at this time to estimate the quantum of such penalties or claims were the company to be subject to them and accordingly no provision has been made for them in these accounts.

**Opinion on other matters prescribed by the Companies Act 2006**

In our opinion the information given in the Directors' Report for the financial year for which the financial statements are prepared is consistent with the financial statements.

**Matters on which we are required to report by exception**

In respect of the limitations on our work relating to the matters referred to in the Disclaimer of opinion paragraph above:

- we have not obtained all the information and explanations that we considered necessary for the purpose of our audit, and

- we were unable to determine whether adequate accounting records had been kept.

> **Commented [MB34]:** To determine final appropriate wording.

We have nothing to report in respect of the following matters where the Companies Act 2006 requires us to report to you if, in our opinion:

- returns adequate for our audit have not been received from branches not visited by us; or

- the financial statements are not in agreement with the accounting records and returns; or

> **Commented [BF35]:** Subject to a number of the open matters being resolved.

- certain disclosures of directors' remuneration specified by law are not made

Dave Hales (Senior statutory auditor)
for and on behalf of Ernst & Young LLP, Statutory Auditor
Reading
31 January 2014

15

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**INCOME STATEMENT**
**10 months ended 31 October 2011**

| | Note | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|---|
| Administrative expenses: | | | |
|   Foreign exchange (loss)/gain | | (10,763) | 7,281 |
|   Other administrative expenses | | (4,896) | (4,716) |
| Distribution expenses | | (32) | (114) |
| Impairment of investments in subsidiaries | 10 | (308,510) | - |
| Impairment of investment in associate | 11 | - | (7,083) |
| Disposal costs associated with sale of Autonomy | 21 | (42,208) | - |
| Other operating income | | 619 | 869 |
| **Operating loss** | 3 | (365,790) | (3,763) |
| Analysed between: | | | |
| Profit from operations before exceptional items | | (15,072) | 3,320 |
| Exceptional items *(impairments of investments and disposal costs)* | | (350,718) | (7,083) |
| Finance income | 6 | 4,783 | 4,968 |
| Finance costs | 7 | (23,896) | (23,164) |
| **Loss before tax** | | (384,903) | (21,959) |
| Tax expense | 8 | (2,098) | (121) |
| **Loss for the period** | | (387,001) | (22,080) |

All activities derive from continuing operations.

**STATEMENT OF COMPREHENSIVE (EXPENSE)/INCOME**
**10 months ended 31 October 2011**

| | Note | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|---|
| Net loss for the period | | (387,001) | (22,080) |
| Gains on revaluation of available for sale financial assets | 12 | 30,826 | 28,335 |
| Total comprehensive (expense)/income | | (356,175) | 6,255 |

16

EXH 6952A.0018

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**


**BALANCE SHEET**
**31 October 2011**

| | Note | 31 October 2011 £'000 | 31 December 2010 £'000 (restated) | 1 January 2010 £'000 (restated) |
|---|---|---|---|---|
| **Non-current assets** | | | | |
| Intangible assets | 9 | - | 79 | 47 |
| Investments | 10 | 331,946 | 624,261 | 617,778 |
| Investments in associate | 11 | - | - | 5,514 |
| Other non-current financial assets | 12 | 69,291 | 38,465 | 7,453 |
| | | 401,237 | 662,805 | 630,792 |
| **Current assets** | | | | |
| Other receivables | 13 | 230,441 | 44,889 | 11,750 |
| Cash and cash equivalents (including restricted cash of £8,211,000 (31 December 2010: £999,000) | | 339,876 | 512,947 | 49,510 |
| | | 570,317 | 557,836 | 61,260 |
| **Total assets** | | 971,554 | 1,220,641 | 692,052 |
| **Current liabilities** | | | | |
| Trade and other payables | 14 | (4,734) | (2,801) | (560) |
| Corporation tax | | (2,169) | (836) | (633) |
| **Net current assets** | | 563,414 | 554,199 | 60,067 |
| **Non-current liabilities** | | | | |
| Convertible loan notes | 15 | (448,371) | (440,690) | - |
| **Total non-current liabilities** | | (448,371) | (440,690) | - |
| **Total liabilities** | | (455,274) | (444,327) | (1,193) |
| **Net assets** | | 516,280 | 776,314 | 690,859 |
| **Shareholders' equity** | | | | |
| Share capital | 16 | 831 | 809 | 803 |
| Share premium account | 17 | 753,188 | 680,636 | 668,057 |
| Other reserves | 17 | 62,702 | 62,702 | - |
| Capital redemption reserve | 17 | 70 | 70 | 70 |
| Own shares | 17 | - | (500) | (537) |
| Merger reserve | 17 | 13,207 | 13,207 | 13,207 |
| Revaluation reserve | 17 | 61,241 | 30,415 | 2,080 |
| Stock compensation reserve | 17 | 32,653 | 16,458 | 12,582 |
| Retained earnings | 17 | (407,612) | (27,483) | (5,403) |
| **Total equity** | | 516,280 | 776,314 | 690,859 |

The financial statements on pages 16 to 51 were approved by the board of directors on ………………..…….. and signed on its behalf by:


J Shaikhali, Director
Company registration number: 03175909

17

EXH 6952A.0019

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**STATEMENT OF CHANGES IN EQUITY**
**10 months ended 31 October 2011**

| | Share capital (number) | Share capital £'000 | Share premium £'000 | Other reserves £'000 | Capital redemption reserve £'000 | Own shares £'000 | Merger reserve £'000 | Revaluation reserve £'000 | Stock-compensation reserve £'000 | Retained earnings £'000 | Total £'000 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Note: | | 16 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 |
| At 1 January 2010 (as previously reported) | 240,574,304 | 803 | 668,057 | - | 70 | (537) | 13,207 | 2,080 | - | 15,756 | 699,436 |
| Prior year adjustment – note 22 | - | - | - | - | - | - | - | - | 12,582 | (21,159) | (8,577) |
| At 1 January 2010 (restated) | 240,574,304 | 803 | 668,057 | - | 70 | (537) | 13,207 | 2,080 | 12,582 | (5,403) | 690,859 |
| Net loss | - | - | - | - | - | - | - | - | - | (22,080) | (22,080) |
| Other comprehensive income | - | - | - | - | - | - | - | 28,335 | - | - | 28,335 |
| Total comprehensive income | - | - | - | - | - | - | - | 28,335 | - | (22,080) | 6,255 |
| Share options exercised | 1,988,280 | 6 | 12,579 | - | - | - | - | - | - | - | 12,585 |
| Credit in respect of share-based payment | - | - | - | - | - | - | - | - | 3,876 | - | 3,876 |
| EBT options exercised | - | - | - | - | - | 37 | - | - | - | - | 37 |
| Equity element of convertible loan notes | - | - | - | 62,702 | - | - | - | - | - | - | 62,702 |
| At 31 December 2010 (restated) | 242,562,584 | 809 | 680,636 | 62,702 | 70 | (500) | 13,207 | 30,415 | 16,458 | (27,483) | 776,314 |
| Net loss | - | - | - | - | - | - | - | - | - | (387,001) | (387,001) |
| Other comprehensive income | - | - | - | - | - | - | - | 30,826 | - | - | 30,826 |
| Total comprehensive income | - | - | - | - | - | - | - | 30,826 | - | (387,001) | (356,175) |
| Share options exercised | 6,734,365 | 22 | 72,552 | - | - | - | - | - | - | 6,872 | 79,446 |
| Credit in respect of share-based payment | - | - | - | - | - | - | - | - | 16,195 | - | 16,195 |
| EBT options exercised | - | - | - | - | - | 500 | - | - | - | - | 500 |
| At 31 October 2011 | 249,296,949 | 831 | 753,188 | 62,702 | 70 | - | 13,207 | 61,241 | 32,653 | (407,612) | 516,280 |

18

EXH 6952A.0020

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**CASH FLOW STATEMENT**
**10 months ended 31 October 2011**

| | Note | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|---|
| **Operating activities** | | | |
| **Loss for the period** | | (387,001) | (22,080) |
| Adjustments to reconcile loss for the period to net cash flow from operating activities | | | |
| Tax charge for the period | 8 | 2,098 | 121 |
| Net finance costs | | 19,113 | 18,196 |
| Amortisation of intangible assets | 9 | 370 | 18 |
| Impairment of investments | 10 | 308,510 | 7,083 |
| Working capital adjustments: | | | |
| Increase in other receivables | | (185,781) | (36,949) |
| Increase in trade and other payables | | 1,933 | 2,241 |
| **Cash generated from operations** | | (240,758) | (31,167) |
| Income taxes paid | | - | - |
| **Net cash flow from operating activities** | | (240,758) | (31,167) |
| **Investing activities** | | | |
| Interest received | 6 | 4,783 | 4,518 |
| Purchases to acquire intangible assets | 9 | (327) | (50) |
| Investment in associate and equity investments | | - | (2,677) |
| **Net cash flow from investing activities** | | 4,456 | 1,791 |
| *Financing activities* | | | |
| Proceeds from issuance of shares, net of issuance costs | | 79,446 | 12,585 |
| Proceeds from convertible loan notes, net of issuance costs | 15 | - | 488,303 |
| Interest paid on convertible loan notes | 15 | (16,150) | (8,075) |
| Other interest | 7 | (65) | - |
| **Net cash flow from financing activities** | | 63,231 | 492,813 |
| **Net (decrease)/increase in cash and cash equivalents** | | (173,071) | 463,437 |
| Cash and cash equivalents at beginning of period | | 512,947 | 49,510 |
| **Cash and cash equivalents at end of period** | | 339,876 | 512,947 |

Cash and cash equivalents represent cash and short-term deposits with an original maturity of three months or less. The carrying amount of these assets approximates their fair value.

EXH 6952A.0021

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

1.     **GENERAL INFORMATION**

Autonomy Corporation Limited is a Company incorporated in England and Wales under the Companies Act 2006. The registered office is at Amen Corner, Cain Road, Bracknell, Berkshire, RG12 1HN, UK. Autonomy Corporation Limited is the holding Company of the Autonomy group of companies (the "group").

2.     **SIGNIFICANT ACCOUNTING POLICIES**

The following accounting policies have been applied consistently in dealing with the items which are considered material in relation to the financial statements.

**Basis of preparation**

These financial statements have been prepared in accordance with International Financial Reporting Standards as adopted by the European Union (IFRSs as adopted by EU) and with those parts of the Companies Act 2006 applicable to companies reporting under IFRS as adopted by the EU.

The financial statements have been prepared on the historical cost basis, except for the revaluation of equity investments and financial instruments. The going concern basis has been adopted in preparing the financial statements, as described in more detail below.

These financial statements are presented in sterling as that is the currency of the primary economic environment in which the Company operates and are rounded to thousands.

During the period the Company changed its financial reporting date to 31 October (previously 31 December) to align with its parent Company, consequently the comparative figures for FY11 and FY10 are not wholly comparable.

> **Commented [NC36]:** Should this just be FY10?

The comparative financial data has been restated relating to the revaluation of balances denominated in foreign currencies, to correct the historic cost of a subsidiary, to correct for costs not recorded in the appropriate financial period, to record the impairment of an associate in the correct period, to include appropriate accounting entries for share based payments and to adjust deferred tax balances. The comparative financial data has also been restated to correct the legal ownership of an investment previously recorded within the balance sheet of Autonomy Systems Limited. Explanation for the prior year restatement and the impact of the restatement on the opening balance sheet and retained earnings has been provided in note 22. In line with the requirements of IAS 1 para 10(f) the Company has disclosed an additional balance sheet with selected related notes.

> **Commented [NC37]:** Is this correct?

**Going concern**

At 31 October 2011 the Company had cash balances of £339.9 million and net assets of £516.3 million.

The Company became part of the Hewlett-Packard group following its acquisition on 3 October 2011. The Hewlett-Packard group has considerable financial resources together with a significant number of customers across different geographic areas and industries.

> **Commented [RJ38]:** Has HP group issued a guarantee to Autonomy – this wording makes it sound as though it has.

The principal risks and uncertainties facing the business, which are likely to affect its future development, performance and position, are described in note 19 to the financial statements, along with the Company's objectives, policies and processes for managing its capital and risk management and details of exposures to liquidity risk.

> **Commented [NC39]:** Does that note address all the principal risks and uncertainties facing the business - eg that it receives a claim from HP?

Having considered these risks and the capital structure of the Company, the directors believe that the Company is well placed to manage business risks successfully despite the current uncertain economic outlook.

> **Commented [NC40]:** Emphasis on economic outlook looks odd given the issues faced by the group?

20

EXH 6952A.0022

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

2.   SIGNIFICANT ACCOUNTING POLICIES (continued)

Standards and interpretations issued but not yet applied

The following standards and interpretations have an effective date after the date of these financial statements but the Company has not early adopted them and plans to adopt them from the effective dates adopted by EU.

*IAS 1 Financial Statement Presentation – Presentation of Items of Other Comprehensive Income (effective 1 July 2012)*

The amendments to IAS 1 change the grouping of items presented in OCI. Items that could be reclassified (or 'recycled') to profit or loss at a future point in time would be presented separately from items that will never be reclassified. The amendment will affect presentation only and has no impact on the Company's financial position or performance.

*IAS 12 Income Taxes – Recovery of Underlying Assets (effective 1 January 2012)*

The amendment clarified the determination of deferred tax on investment property measured at fair value. The amendment introduces a rebuttable presumption that deferred tax on investment property measured using the fair value model in IAS 40 should be determined on the basis that its carrying amount will be recovered through sale. Further, it introduces the requirement that deferred tax on non-depreciable assets that are measured using the revaluation model in IAS 16 should always be measured on a sale basis. The Company does not believe adoption will impact the Company's financial position or performance.

*IAS 19 Employee Benefits (Amendment) (effective 1 January 2013)*

The IASB has issued numerous amendments to IAS 19. These range from fundamental changes such as removing the corridor mechanism and the concept of expected returns on plan assets to simple clarifications and re-wording. The Company does not believe adoption will impact the Company's financial position or performance.

*IAS 27 Separate Financial Statements (as revised in 2011) (effective 1 January 2013)*

As a consequence of the new IFRS 10 and IFRS 12, what remains in IAS 27 is limited to accounting for subsidiaries, jointly controlled entities, and associates in separate financial statements.

*IAS 28 Investments in Associates and Joint Ventures (as revised in 2011) (effective 1 January 2013)*

As a consequence of the new IFRS 11 and IFRS 12, IAS 28 has been renamed IAS 28 Investments in Associates and Joint Ventures, and describes the application of the equity method to investments in joint ventures in addition to associates. The Company does not believe adoption will impact the Company's financial position or performance.

*IFRS 7 Financial Instruments: Disclosures - Enhanced Derecognition Disclosure Requirements (effective 1 July 2011)*

> **Commented [NC41]:** Is this the correct date?  If so do it fit in this section?

The amendment requires additional disclosure about financial assets that have been transferred but not derecognised to enable the user of the Company's financial statements to understand the relationship with those assets that have not been derecognised and their associated liabilities. In addition, the amendment requires disclosures about continuing involvement in derecognised assets to enable the user to evaluate the nature of, and risks associated with, the entity's continuing involvement in those derecognised assets. The amendment affects disclosure only and has no impact on the Company's financial position or performance.

*IFRS 9 Financial Instruments: Classification and Measurement (effective 1 January 2013)*

IFRS 9 as issued reflects the first phase of the IASBs work on the replacement of IAS 39 and applies to classification and measurement of financial assets as defined in IAS 39. In subsequent phases, the IASB will address classification and measurement of financial liabilities, hedge accounting and derecognition. The Company does not believe adoption will impact the Company's financial position or performance.

EXH 6952A.0023

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

2.    SIGNIFICANT ACCOUNTING POLICIES (continued)

   **Standards and interpretations issued but not yet applied (continued)**

   *IFRS 10 Consolidated Financial Statements (effective 1 January 2013)*

   IFRS 10 replaces the portion of IAS 27 Consolidated and Separate Financial Statements that addresses the accounting for consolidated financial statements. It also includes the issues raised in SIC-12 Consolidation — Special Purpose Entities.

   IFRS 10 establishes a single control model that applies to all entities including _special purpose entities. The changes introduced by IFRS 10 will require management to exercise significant judgement to determine which entities are controlled, and therefore are required to be consolidated by a parent, compared with the requirements that were in IAS 27. The Company does not believe adoption will impact the Company's financial position or performance.

   *IFRS 11 Joint Arrangements (effective 1 January 2013)*

   IFRS 11 replaces IAS 31 Interests in Joint Ventures and SIC-13 Jointly-controlled Entities — Non-monetary Contributions by Venturers.

   IFRS 11 removes the option to account for jointly controlled entities (JCEs) using proportionate consolidation. Instead, JCEs that meet the definition of a joint venture must be accounted for using the equity method. JCEs under current IAS 31 that will be classified as joint ventures under IFRS 11, will transition from proportionate consolidation to the equity method by aggregating the carrying values previously recorded, testing that amount for impairment and then using that amount as deemed cost for applying the equity method going forward. The Company does not believe adoption will impact the Company's financial position or performance.

   *IFRS 12 Disclosure of Involvement with Other Entities (effective 1 January 2013)*

   IFRS 12 includes all of the disclosures that were previously in IAS 27 related to consolidated financial statements, as well as all of the disclosures that were previously included in IAS 31 and IAS 28. These disclosures relate to an entity's interests in subsidiaries, joint arrangements, associates and structured entities. A number of new disclosures are also required.

   *IFRS 13 Fair Value measurement (effective 1 January 2013)*

   IFRS 13 establishes a single source of guidance under IFRS for all fair value measurements. IFRS 13 does not change when an entity is required to use fair value, but rather provides guidance on how to measure fair value under IFRS when fair value is required or permitted. The Company is currently assessing the impact that this standard will have on the financial position and performance.

   *IFRS 7 & IAS 32 Offsetting of Financial Instruments*

   The amendments to IAS 32 and IFRS 7 on offsetting of financial instruments are intended to clarify existing application issues relating to the offsetting rules and reduce the level of diversity in current practice. The clarifying amendments to IAS 32 are effective for the annual periods beginning on or after 1 January 2014. The new disclosures in IFRS 7 are required for annual periods beginning on or after 1 January 2013. The Company does not believe adoption will impact the Company's financial position or performance.

   **Judgements and key sources of estimate uncertainty**

   Critical judgements in applying the Company's accounting policies:

   The preparation of financial statements requires management to make judgements, estimates and assumptions that affect the amounts reported for assets and liabilities as at the balance sheet date and the amounts reported for revenues and expenses during the period. However the estimation means that actual outcomes could differ from those estimates.

22

EXH 6952A.0024

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

2.   SIGNIFICANT ACCOUNTING POLICIES (continued)

   **Judgements and key sources of estimate uncertainty (continued)**

   Key sources of estimation uncertainty:

   The following estimates are dependent upon assumptions which could change in the next financial period and have a material impact on the carrying value of assets and liabilities recognised at the balance sheet date:

   *On-going investigations*

   The Company remains subject to the on-going internal and external investigations as described in the Directors' Report.

   The extensive investigations undertaken by Hewlett-Packard, and by the Directors, into the past accounting practices of the group, have revealed pervasive errors in the previously issued financial statements. These have required all aspects of the accounting to be re-assessed. The errors found as a result of these investigations have led to restatements to the previously issued financial statements of the Company for the year ending 31 December 2010, principally relating to the revaluation of balances denominated in foreign currencies, to correct the historic cost of a subsidiary, to correct for costs not recorded in the appropriate financial period, to record the impairment of an associate in the correct period, to include appropriate accounting entries for share based payments and to include associated corporation tax impacts.

**Commented [NC42]:** "misstatements" (errors indicates they were mistakes, not deliberate)? Also applies below but not repeated.

**Commented [NC43]:** Literally "all"?

   Given the volume and magnitude of the above errors, it is possible that further errors may remain undetected. The investigations, including those of the U.K. Serious Fraud Office, the U.S. Department of Justice and the SEC, are on-going and it is possible that further matters may be identified that could impact the reported financial performance and position of the Company, including previously reported financial statements. As a result of the investigations by Hewlett-Packard the earnings of fellow group undertakings have themselves been subject to substantial corrections for the current and prior periods compared to any previously prepared financial statements, principally relating to the overstatement of revenues in Autonomy's U.S. operations.

**Commented [NC44]:** Financial statements?

   The outcome of ongoing investigations cannot be determined and it should be noted that the investigations could result in fines, other penalties or claims being imposed on or asserted against the Company. It is not possible at this time to estimate the outcome of any such actions taken against the Company.

**Commented [NC45]:** HP was at one stage uncomfortable with the reference to penalties – is it now accepted? Does this cover the potential claim from HP?

   *Intercompany*

   Although the intercompany balances at 1 January 2010 reconcile to their counterparties, it has not been possible to validate all underlying transactions within these balances which originated from prior accounting periods. There is therefore a risk that further undetected errors remain present in the balances at 1 January 2010. This represents an uncertainty over the accuracy of the opening intercompany balances and any impacts that such inaccuracies may have on the reported financials in subsequent years. The Directors have undertaken work to ensure that the balances with other Autonomy entities are agreed by the relevant counterparty at 31 October 2011, the balance sheet date.

   *Impairment of investments and other non-current financial assets*

   Determining whether investments are impaired requires an estimation of the value in use of the investment or the associated cash generating unit (CGU) to which the investments have been allocated. The value in use calculation requires the entity to estimate the future cash flows of the asset or CGU and a suitable discount rate in order to calculate present value. The carrying amount of investments in subsidiaries and other non-current financial assets at the balance sheet date was £331.9 million (31 December 2010: £624.3 million) and £69.3 million (31 December 2010: £38.5 million) respectively.

   *Convertible loan notes*

   The liability and equity components of the convertible loan notes are calculated on the date of issue based on market interest rates of similar nonconvertible loan notes. The market interest rate used in the calculation was based on information provided by independent financial institutions. See note 15 for the carrying values of the equity and loan components at each balance sheet date.

23

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

2.    SIGNIFICANT ACCOUNTING POLICIES (continued)

**Basis of consolidation**

The Company is exempt from the obligation to prepare and deliver group accounts under section 401 of the Companies Act 2006, as its ultimate parent undertaking Hewlett-Packard Company, a Company incorporated in the United States of America, prepared group accounts which incorporate the results of the Company and are publicly available. The financial statements have therefore been presented for the individual Company and not the group.

**Exceptional items**

Exceptional items are those items that in the Directors' view are required to be separately disclosed by virtue of their size or incidence to enable a full understanding of the Company's financial performance. Additional details in relation to the exceptional items in the period are provided in note 21.

**Investments in subsidiaries**

A subsidiary is an entity over which the Company is in a position to exercise control. Control is achieved where the Company has the power to govern the financial and operating policies of an investee entity so as to obtain benefits from its activities.

Investments in subsidiaries are stated at cost less, where appropriate, provisions for impairment.

The carrying value of investments is reviewed for impairment when events or changes in circumstances indicate the carrying value may not be recoverable.

**Investments in associates**

An associate is an entity over which the Company is in a position to exercise significant influence, but not control or joint control, through participation in the financial and operating policy decisions of the investee. Significant influence is the power to participate in the financial and operating policy decisions of the investee but is not control or joint control over those policies.

Investments in associate are stated at cost, less any impairment in the value of individual investments. Losses may provide evidence of an impairment of the asset transferred in which case appropriate provision is made for impairment.

**Interest receivable**

Interest income is accrued on a time basis, by reference to the principal outstanding and at the effective interest rate applicable.

**Share capital**

Ordinary shares are classified as equity.

Where the Company purchases the Company's equity share capital (own shares), the consideration paid, including any directly attributable incremental costs (net of income taxes) is deducted from equity attributable to the Company's equity holders until the shares are cancelled or reissued. Where such ordinary shares are subsequently reissued, any consideration received, net of any directly attributable incremental transaction costs and the related income tax effects, is included in equity attributable to the Company's equity holders.

24

EXH 6952A.0026

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

2.    SIGNIFICANT ACCOUNTING POLICIES (continued)

**Income taxes**

Current tax assets and liabilities are measured at the amount expected to be recovered from or paid to the taxation authorities, based on tax rates and laws that are enacted or substantively enacted by the balance sheet date.

Deferred income tax is recognised on all temporary differences arising between the tax bases of assets and liabilities and their carrying amount in the financial statements only where it is probable that taxable profit will be available against which the deductible temporary differences, carried forward tax credits or tax losses can be utilised.

Deferred income tax assets and liabilities are measured on an undiscounted basis at the tax rates that are expected to apply when the related asset is realised or liability is settled, based on tax rates and laws enacted or substantively enacted at the balance sheet date.

The carrying amount of deferred income tax assets is reviewed at each balance sheet date. Deferred income tax assets and liabilities are offset, only if a legally enforceable right exists to set off current tax assets against current tax liabilities, the deferred income taxes relate to the same taxation authority and that authority permits the group to make a single net payment.

Income tax is charged or credited to other comprehensive income if it relates to items that are charged or credited to other comprehensive income. Similarly, income tax is charged or credited directly to equity if it relates to items that are credited or charged directly to equity. Other income tax is recognised in the income statement.

**Foreign exchange**

Monetary assets and liabilities denominated in foreign currencies are translated into sterling at the rates of exchange ruling at the balance sheet date. Transactions in foreign currencies are translated into sterling at the rate of exchange ruling at the date of the transaction. Exchange differences are taken into account in arriving at operating profit.

**Impairment of intangible assets**

At each balance sheet date, the Company reviews the carrying amounts of its tangible and intangible assets to determine whether there is any indication that those assets have suffered an impairment loss. If any such indication exists, the recoverable amount of the asset is estimated in order to determine the extent of the impairment loss (if any). Where the asset does not generate cash flows that are independent from other assets, the Company estimates the recoverable amount of the cash-generating unit to which the asset belongs.

Recoverable amount is the higher of fair value less costs to sell and value in use. In assessing value in use, the estimated future cash flows are discounted to their present value using a pre-tax discount rate that reflects current market assessments of the time value of money and the risks specific to the asset for which the estimates of future cash flows have not been adjusted.

If the recoverable amount of an asset (or cash-generating unit) is estimated to be less than its carrying amount, the carrying amount of the asset (cash-generating unit) is reduced to its recoverable amount. An impairment loss is recognised as an expense immediately, unless the relevant asset is carried at a revalued amount, in which case the impairment loss is treated as a revaluation decrease.

Where an impairment loss subsequently reverses, the carrying amount of the asset (cash-generating unit) is increased to the revised estimate of its recoverable amount, but so that the increased carrying amount does not exceed the carrying amount that would have been determined had no impairment loss been recognised for the asset (cash-generating unit) in prior years. A reversal of an impairment loss is recognised as income immediately, unless the relevant asset is carried at a revalued amount, in which case the reversal of the impairment loss is treated as a revaluation increase.

25

EXH 6952A.0027

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

2.    SIGNIFICANT ACCOUNTING POLICIES (continued)

**Intangible assets**

Intangible assets are capitalised at cost.

Amortisation is calculated to write off the cost of an asset, less its estimated residual value, on a straight line basis, over the useful economic life of that asset as follows:

Patents and licences                    1 - 3 years

**Financial instruments**

Financial assets and financial liabilities are recognised in the Company's balance sheet when the Company becomes a party to the contractual provisions of the instrument.

*Financial assets*

Investments are recognised and derecognised on a trade date where the purchase or sale of an investment is under a contract whose terms require delivery of the investment within the timeframe established by the market concerned, and are initially measured at fair value, plus transaction costs, except for those financial assets classified as at fair value through profit or loss, which are initially measured at fair value.

Financial assets are classified into the following specified categories: financial assets 'at fair value through profit or loss' (FVTPL), 'held-to-maturity' investments, 'available-for-sale' (AFS) financial assets and 'loans and receivables'. The classification depends on the nature and purpose of the financial assets and is determined at the time of initial recognition.

*Effective interest method*

The effective interest method is a method of calculating the amortized cost of a financial asset and of allocating interest income over the relevant period. The effective interest rate is the rate that exactly discounts estimated future cash receipts (including all fees on points paid or received that form an integral part of the effective interest rate, transaction costs and other premiums or discounts) through the expected life of the financial asset, or, where appropriate, a shorter period.

Income is recognised on an effective interest basis for debt instruments other than those financial assets designated as at FVTPL.

*Financial assets at FVTPL*

Financial assets are classified as at FVTPL where the financial asset is either held for trading or it is designated as at FVTPL

A financial asset is classified as held for trading if:

- it has been acquired principally for the purpose of selling in the near future; or

- it is a part of an identified portfolio of financial instruments that the Company manages together and has a recent actual pattern of short-term profit taking; or

- it is a derivative that is not designated and effective as a hedging instrument.

A financial asset other than a financial asset held for trading may be designated as at FVTPL upon initial recognition if:

- such designation eliminates or significantly reduces a measurement or recognition inconsistency that would otherwise arise; or

- the financial asset forms part of a Company of financial assets or financial liabilities or both, which is managed and its performance is evaluated on a fair value basis, in accordance with the Company's documented risk management or investment strategy, and information about the Company is provided internally on that basis; or

- it forms part of a contract containing one or more embedded derivatives, and IAS 39 Financial Instruments: Recognition and Measurement permits the entire combined contract (asset or liability) to be designated as at FVTPL.

26

EXH 6952A.0028

**AUTONOMY CORPORATION LIMITED**
(formerly Autonomy Corporation Plc)

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

2.     SIGNIFICANT ACCOUNTING POLICIES (continued)

**Financial instruments (continued)**

Financial assets at FVTPL are stated at fair value, with any resultant gain or loss recognised in profit or loss. The net gain or loss recognised in profit or loss incorporates any dividend or interest earned on the financial asset. Fair value is determined in the manner described in note 20.

*Available for sale financial assets ("AFS")*

Unlisted shares and listed redeemable notes held by the Company that are traded in an active market are classified as being AFS and are stated at fair value. Fair value is determined in the manner described in note 20. Gains and losses arising from changes in fair value are recognised directly in other comprehensive income and shown as a movement in the investments revaluation reserve with the exception of impairment losses, interest calculated using the effective interest method and foreign exchange gains and losses on monetary assets, which are recognised directly in profit or loss.

Where the investment is disposed of or is determined to be impaired, the cumulative gain or loss previously recognised in the investments revaluation reserve is included in profit or loss for the period.

Dividends on AFS equity instruments are recognised in profit or loss when the Company's right to receive the dividends is established.

The fair value of AFS monetary assets denominated in a foreign currency is determined in that foreign currency and translated at the spot rate at the balance sheet date. The change in fair value attributable to translation differences that result from a change in amortized cost of the asset is recognised in profit or loss, and other changes are recognised in equity.

*Loans and receivables*

Trade receivables, loans, and other receivables that have fixed or determinable payments that are not quoted in an active market are classified as loans and receivables. Loans and receivables are measured at amortized cost using the effective interest method, less any impairment. Interest income is recognised by applying the effective interest rate, except for short-term receivables when the recognition of interest would be immaterial.

*Impairment of financial assets*

Financial assets, other than those at FVTPL, are assessed for indicators of impairment at each balance sheet date. Financial assets are impaired where there is objective evidence that, as a result of one or more events that occurred after the initial recognition of the financial asset, the estimated future cash flows of the investment have been impacted.

For shares classified as AFS, a significant or prolonged decline in the fair value of the security below its cost is considered to be objective evidence of impairment. For all other financial assets, including redeemable notes classified as AFS, objective evidence of impairment could include:

- significant financial difficulty of the issuer or counterparty; or
- default or delinquency in interest or principal payments; or
- it becoming probable that the borrower will enter bankruptcy or financial re-organisation.

For certain categories of financial asset, such as trade receivables, assets that are assessed not to be impaired individually are subsequently assessed for impairment on a collective basis. Objective evidence of impairment for a portfolio of receivables could include the Company's past experience of collecting payments, an increase in the number of delayed payments in the portfolio past the average credit period of 90 days, as well as observable changes in national or local economic conditions that correlate with default on receivables.

EXH 6952A.0029

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

2.    SIGNIFICANT ACCOUNTING POLICIES (continued)

**Financial instruments (continued)**

The carrying amount of the financial asset is reduced by the impairment loss directly for all financial assets with the exception of trade receivables, where the carrying amount is reduced through the use of an allowance account. When a trade receivable is considered uncollectable, it is written off against the allowance account. Subsequent recoveries of amounts previously written off are credited against the allowance account. Changes in the carrying amount of the allowance account are recognised in profit or loss.

With the exception of AFS equity instruments, if, in a subsequent period, the amount of the impairment loss decreases and the decrease can be related objectively to an event occurring after the impairment was recognised, the previously recognised impairment loss is reversed through profit or loss to the extent that the carrying amount of the investment at the date the impairment is reversed does not exceed what the amortized cost would have been had the impairment not been recognised.

In respect of AFS equity securities, impairment losses previously recognised through profit or loss are not reversed through profit or loss. Any increase in fair value subsequent to an impairment loss is recognised directly in equity.

*Cash and cash equivalents*

Cash and cash equivalents comprise cash on hand and demand deposits, and other short-term highly liquid investments that are readily convertible to a known amount of cash and are subject to an insignificant risk of changes in value.

*De-recognition of financial assets*

The Company derecognises a financial asset only when the contractual rights to the cash flows from the asset expire; or it transfers the financial asset and substantially all the risks and rewards of ownership of the asset to another entity. If the Company neither transfers nor retains substantially all the risks and rewards of ownership and continues to control the transferred asset, the Company recognises its retained interest in the asset and an associated liability for amounts it may have to pay. If the Company retains substantially all the risks and rewards of ownership of a transferred financial asset, the Company continues to recognise the financial asset and also recognises a collateralised borrowing for the proceeds received.

*Financial liabilities and equity*

Financial liabilities and equity instruments are classified according to the substance of the contractual arrangements entered into.

*Equity instruments*

An equity instrument is any contract that evidences a residual interest in the assets of the Company after deducting all of its liabilities. Equity instruments issued by the Company are recorded at the proceeds received, net of direct issue costs.

*Financial liabilities*

All financial liabilities are classified as 'other financial liabilities'.

*Compound instruments*

The component parts of compound instruments (convertible loan notes) issued by the Company are classified separately as financial liabilities and equity in accordance with the substance of the contractual arrangement. At the date of issue, the fair value of the liability component is estimated using the prevailing market interest rate for a similar non-convertible instrument. This amount is recorded as a liability on an amortized cost basis using the effective interest method until extinguished upon conversion or at the instruments maturity date. The equity component is determined by deducting the amount of the liability component from the fair value of the compound instrument as a whole. This is recognised and included in equity, net of income tax effects, and is not subsequently re-measured.

EXH 6952A.0030

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

2.    SIGNIFICANT ACCOUNTING POLICIES (continued)

**Financial instruments (continued)**

*Other financial liabilities*

Other financial liabilities, including borrowings, are initially measured at fair value, net of transaction costs. Other financial liabilities are subsequently measured at amortized cost using the effective interest method, with interest expense recognised on an effective yield basis. The effective interest method is a method of calculating the amortized cost of a financial liability and of allocating interest expense over the relevant period. The effective interest rate is the rate that exactly discounts estimated future cash payments through the expected life of the financial liability, or, where appropriate, a shorter period.

*De-recognition of financial liabilities*

The Company derecognises financial liabilities when, and only when, the Company's obligations are discharged, cancelled or they expire.

**Share-based payment**

The cost of equity-settled transactions with employees is measured by reference to the fair value at the date on which they are granted and is recognised as an expense over the vesting period, which ends on the date on which the relevant employees become fully entitled to the award.

Fair value is determined by an external valuer using the Black-Scholes pricing model. In valuing equity-settled transactions, no account is taken of any service and performance (vesting conditions), other than performance conditions linked to the price of the shares of the Company (market conditions). Any other conditions which are required to be met in order for an employee to become fully entitled to an award are considered to be non-vesting conditions. Like market performance conditions, non-vesting conditions are taken into account in determining the grant date fair value.

No expense is recognised for awards that do not ultimately vest, except for awards where vesting is conditional upon a market vesting condition or a non-vesting condition, which are treated as vesting irrespective of whether or not the market vesting condition or non-vesting condition is satisfied, provided that all other non-market vesting conditions are satisfied.

At each balance sheet date before vesting, the cumulative expense is calculated, representing the extent to which the vesting period has expired and management's best estimate of the achievement or otherwise of non-market vesting conditions and of the number of equity instruments that will ultimately vest or, in the case of an instrument subject to a market condition or a non-vesting condition, be treated as vesting as described above. The movement in cumulative expense since the previous balance sheet date is recognised in the income statement, with a corresponding entry in equity. Where the terms of an equity-settled award are modified or a new award is designated as replacing a cancelled or settled award, the cost based on the original award terms continues to be recognised over the original vesting period. In addition, an expense is recognised over the remainder of the new vesting period for the incremental fair value of any modification, based on the difference between the fair value of the original award and the fair value of the modified award, both as measured on the date of the modification. No reduction is recognised if this difference is negative.

Where an equity-settled award is cancelled (including when a non-vesting condition within the control of the entity or employee is not met), it is treated as if it had vested on the date of cancellation, and any cost not yet recognised in the income statement for the award is expensed immediately. Any compensation paid up to the fair value of the award at the cancellation or settlement date is deducted from equity, with any excess over fair value being treated as an expense in the income statement.

On transition to IFRS, the Group did not apply the measurement rules of IFRS 2 to equity settled awards granted before 7 November 2002 or granted after that date and vested before 1 January 2005. However later modifications of such equity instruments are measured under IFRS 2.

The grant by the Company of options over its equity instruments to the employees of subsidiary undertakings in the group is treated as a capital contribution. The fair value of employee services received, measured by reference to the grant date fair value, is recognised over the vesting period as an increase to investment in subsidiary undertakings, with a corresponding credit to equity.

29

EXH 6952A.0031

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

2.  **SIGNIFICANT ACCOUNTING POLICIES (continued)**

   **Restricted cash**
   The Company includes restricted cash within cash at bank and in hand. The restricted cash stems from cash held in the Autonomy Corporation Limited employee share trust and is considered restricted as it can only be used to satisfy future obligations to employees.

3.  **OPERATING LOSS FOR THE PERIOD**

   The loss for the period has been arrived at after charging/(crediting):

   |  | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
   |---|---|---|
   | Foreign exchange loss/(gain) | 10,763 | (7,281) |
   | Amortisation of intangible assets | 370 | 18 |
   | Exceptional group disposal costs (note 21) | 42,208 | - |
   | Exceptional impairment of investment in subsidiaries (note 10) | 308,510 | - |
   | Exceptional impairment of investment in associate (note 10) | - | 7,083 |

4.  **AUDITOR'S REMUNERATION**

   Current auditor's remuneration:

   |  | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 |
   |---|---|---|
   | Current auditor: |  |  |
   | Fees payable to the company's auditor for the audit of the company's financial statements | 300 | - |
   | Fees payable to the company's auditor for the audit of the company's subsidiaries' financial statements | 1,700 | - |
   | *Total audit fees* | 2,000 | - |
   | Other services pursuant to legislation: |  |  |
   | -  Other services | 166 | - |
   | *Total non-audit fees* | 166 | - |

   Deloitte LLP resigned as auditor of the Autonomy group in December 2012, prior to the issuance of the financial statements for the year ended 31 October, 2011. During the period non audit fees amounted to £323,000 related to other assurance services of £239,000 and other services of £84,000. The analysis of the previous auditor's remuneration for the completed audits for the period ended 31 December, 2010 is as follows:

   **Commented [NC46]:**
   Would this be better under the "previous auditors remuneration" heading below?

   30

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

4.    AUDITOR'S REMUNERATION (continued)

Previous auditor's remuneration:

| | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 |
|---|---|---|
| Previous auditor: | | |
| Fees payable to the company's auditor for the audit of the company's financial statements | 140 | 294 |
| Fees payable to the company's auditor for the audit of the company's subsidiaries' financial statements | 790 | 882 |
| *Total audit fees* | 930 | |
| Other services pursuant to legislation: | | |
| -  Corporate finance services | - | 450 |
| -  Other assurance services | 239 | - |
| -  Other services | 84 | 61 |
| *Total non-audit fees* | 323 | 511 |

Commented [NC47]: How do these amounts compare to the (US$) amounts in note 7 of the Annual Report and Accounts for 2010?

Commented [NC48]: We understood fees paid to Deloitte for 2011 to be £257,510 – should this be £930,000?  This is significant as they represent a potential claim.

Commented [NC49]: Total?

Total auditor's remuneration:

| | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 |
|---|---|---|
| Fees payable to the company's auditor for the audit of the company's financial statements | 440 | 294 |
| Fees payable to the company's auditor for the audit of the company's subsidiaries' financial statements | 2,490 | 882 |
| *Total audit fees* | 2,930 | |
| Other services pursuant to legislation: | | |
| -  Corporate finance services | - | 450 |
| -  Due diligence | 239 | - |
| -  Other services | 250 | 61 |
| *Total non-audit fees* | 489 | 511 |

Commented [NC50]: Total?

5.    STAFF COSTS AND DIRECTORS' REMUNERATION

At 31 October 2011 the Company had no employees other than the two executive directors (year ended 31 December 2010: three executive directors and four non-executive directors).

Full details of directors' remuneration in the period are included in the Remuneration Report within the Directors' Report.

31

**AUTONOMY CORPORATION LIMITED**
(formerly Autonomy Corporation Plc)

**NOTES TO THE FINANCIAL STATEMENTS**
10 months ended 31 October 2011

6.   FINANCE INCOME

|  | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 |
|---|---|---|
| Interest income on bank deposits | 4,783 | 4,968 |

7.   FINANCE COSTS

|  | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 |
|---|---|---|
| Interest on convertible loan notes | 23,831 | 23,164 |
| Other interest | 65 | - |
| Total interest expense | 23,896 | 23,164 |

8.   TAX ON LOSS ON ORDINARY ACTIVITIES

|  | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 |
|---|---|---|
| **Corporation tax** | | |
| United Kingdom corporation tax | 2,086 | - |
| Adjustment in respect of prior years | - | 121 |
| Total current tax charge | 2,086 | 121 |
| **Deferred tax** | | |
| Origination and reversal of timing difference | - | - |
| Tax charge on loss on ordinary activities | 2,086 | 121 |

32

**EXH 6952A.0034**

**AUTONOMY CORPORATION LIMITED**
(formerly Autonomy Corporation Plc)

**NOTES TO THE FINANCIAL STATEMENTS**
10 months ended 31 October 2011

8.    TAX ON LOSS ON ORDINARY ACTIVITIES (continued)

The tax assessed on the loss on ordinary activities for the period is higher than (2010: higher) the standard rate of corporation tax in the UK of 26.6% (2010: 28%). The differences are reconciled below:

|  | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|
| Loss before tax: | (384,902) | (21,959) |
| | | |
| Loss multiplied by the standard rate of corporation tax in the UK of 26.6% (year ended 31 December 2010 - 28%) | (102,384) | (6,149) |
| Factors affecting charge for the period: | | |
| Expenses disallowed and non-taxable income | 275 | 188 |
| Impairment of investments | 82,064 | 1,983 |
| Imputed interest on intercompany balances | 8,196 | - |
| Exceptional group restructuring costs disallowed | 11,227 | - |
| Capital allowances in excess of depreciation | (8) | (12) |
| Unrecognised tax losses carried forward | 552 | - |
| Group relief surrendered for nil payment | 78 | 3,990 |
| Adjustment in respect of prior years | - | 121 |
| Provision for tax penalties in respect of prior years | 2,086 | - |
| Tax (credit)/charge for the period | 2,086 | 121 |

**Factors affecting prior tax charges**

As discussed in note 22, the Company booked a number of prior year adjustments in respect of the years ended 31 December 2009 and 31 December 2010. As a result of this the Company has submitted a claim for overpayment of tax of £835,500 in December 2013 in respect of the tax return for the year ended 31 December 2009. At the date of signing the financial statements HMRC have not agreed the claim and therefore no benefit has been recognised due to the uncertainty regarding the final value of the claim.

The restated 2010 group relief surrender is based on the best available information at the date of signing the financial statements, this reflects a reduction in group relief of £2,698,000 compared to the surrender indicated in the original tax return to HMRC.

EXH 6952A.0035

**AUTONOMY CORPORATION LIMITED**
(formerly Autonomy Corporation Plc)

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

8.      TAX ON LOSS ON ORDINARY ACTIVITIES (continued)

**Factors affecting current and future tax charges**

In March 2011, the UK Government announced a reduction in the standard rate of UK corporation tax to 26% effective 1 April 2011. This rate reduction was substantively enacted in March 2011. Accordingly, the Company's loss for this accounting period is taxed at an effective rate of 26.6%. The 2011 budget also proposed a further reduction in the standard rate of corporation tax to 25% from 1 April 2012 and this was substantively enacted in July 2011.

In March 2012, the UK Government announced a reduction in the standard rate of UK corporation tax to 24% effective 1 April 2012 and to 23% effective 1 April 2013. These rate reductions became substantively enacted in March 2012 and July 2012 respectively. Further reductions in the main rate of corporation tax in the UK to 21% effective from 1 April 2014 and to 20% from 1 April 2015 were substantively enacted on 2 July 2013. These changes were not substantively enacted at the balance sheet date and therefore are not recognised in these financial statements.

**Deferred tax**

The unprovided deferred tax asset in the current period is £555,000 (2010: £47,000).  This comprises:

|  | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|
| Losses | 519 | - |
| Accelerated capital allowances | 36 | 47 |
|  | 555 | 47 |

Deferred tax has not been recognised on the grounds that it is not considered likely that the Company will make taxable profits in the future against which these carried forward non trade losses and timing differences could be reversed.  The tax losses are not expected to expire.

The impact of the rate reduction to 20% would be to reduce the unrecognised deferred tax asset by £111,000 to £444,000.

No deferred tax has been provided on the revaluation of the Blinkx Plc shares as any gain on future sale should not be chargeable to tax under the substantial shareholding exemption.

34

**EXH 6952A.0036**

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

9.   INTANGIBLE FIXED ASSETS

| | Software licences £'000 | Patents £'000 | Total £'000 |
|---|---|---|---|
| **Cost** | | | |
| At 1 January 2010 | 3,147 | 151 | 3,298 |
| Additions | - | 50 | 50 |
| At 31 December 2010 | 3,147 | 201 | 3,348 |
| Additions | - | 327 | 327 |
| Disposals | (3,147) | (528) | (3,675) |
| At 31 October 2011 | - | - | - |
| **Accumulated amortisation** | | | |
| At 1 January 2010 | 3,147 | 104 | 3,251 |
| Charge for the year | - | 18 | 18 |
| At 31 December 2010 | 3,147 | 122 | 3,269 |
| Charge for the period | - | 370 | 370 |
| Disposals | (3,147) | (492) | (3,639) |
| At 31 October 2011 | - | - | - |
| **Net book value** | | | |
| At 31 October 2011 | - | - | - |
| At 31 December 2010 | - | 79 | 79 |
| At 31 December 2009 | - | 47 | 47 |

> **Commented [NC51]:** Are these "disposals" not write offs?

> **Commented [NC52]:** As above.

35

**AUTONOMY CORPORATION LIMITED**
(formerly Autonomy Corporation Plc)

**NOTES TO THE FINANCIAL STATEMENTS**
10 months ended 31 October 2011

10.   INVESTMENTS

| | 31 October 2011 £'000 | 31 December 2010 £'000 (restated) | 1 January 2010 £'000 (restated) |
|---|---|---|---|
| Investments in subsidiary undertakings | 329,339 | 621,654 | 617,778 |
| Other investments | 2,607 | 2,607 | - |
| | 331,946 | 624,261 | 617,778 |

a) Investments in subsidiary undertakings

| | 31 October 2011 £'000 | 31 December 2010 £'000 (restated) | 1 January 2010 £'000 (restated) |
|---|---|---|---|
| **Cost** | | | |
| At beginning of period, as originally reported | 621,654 | 617,778 | 634,596 |
| Prior period adjustment to opening balance originally reported | - | - | (21,402) |
| Prior period adjustment relating to share-based payment (see note 22) | - | 3,876 | 4,584 |
| Capital contribution relating to share-based payment | 16,195 | - | - |
| Impairment of investments | (308,510) | - | - |
| Disposal of investment in subsidiary undertaking | - | - | - |
| At end of period | 329,339 | 621,654 | 617,778 |

The comparative information has been restated in line with the additional information provided in note 22.

The grant by the Company of options over its equity instruments to the employees of subsidiary undertakings in the group is treated as a capital contribution. The fair value of employee services received, measured by reference to the grant date fair value, is recognised over the vesting period as an increase to investment in subsidiary undertakings, with a corresponding credit to equity.

On 28 September 2011, the Company transferred for £1 one of its wholly-owned subsidiary companies, Longsand Limited, to another wholly-owned subsidiary Company, Autonomy Systems Limited.

EXH 6952A.0038

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

10.    FIXED ASSET INVESTMENTS (continued)

The investments in subsidiary undertakings reflect prior acquisitions made by the legacy Autonomy Group. In accordance with applicable accounting standards, an impairment assessment has been performed, by the current directors, on the investments held by the Company. This assessment compared the recoverable amounts for the respective investments, as determined from value in use calculations, with their carrying values. This exercise has resulted in an impairment charge of £308,510,000 being recognised in the period (2010: £nil) which has been disclosed as an exceptional item. The impairment assessment used a combination of discounted cash flows under the income method of valuation based on a revised forecast as well as the absolute book value based on the carrying value of debt. The forecast reflected the organic revenue growth rates, current market trends, business mix, cost structure and other expectations about the anticipated short-term and long-term operating results of the Autonomy business. These assumptions incorporate Hewlett-Packard's analysis of what it believes were accounting improprieties, incomplete disclosures and misrepresentations at the wider Autonomy group that occurred prior to the Autonomy acquisition with respect to Autonomy's pre-acquisition business and related operating results.

The directors have recorded the impairment charge during the period ended 31 October 2011. In determining the period to record the impairment, the Directors believe that impairment indicators may well have existed at a previous balance sheet date, but have concluded that it is not possible to identify what, if any, impairment charge relates to an earlier period.

As previously noted in the Directors' Report, on 3 October 2011 the Company was acquired by Hewlett-Packard as part of its acquisition of the Autonomy Group. These financial statements do not reflect any matters related to the acquisition by Hewlett-Packard, including any accounting for the purchase consideration paid or the subsequent impairment of goodwill and purchased intangible assets as reported by Hewlett-Packard in its financial statements included in Form 10-K for the year ended October 31, 2012 filed with the U.S. Securities and Exchange Commission.

**Principal group companies**

The principal companies within the group's operations are set forth below.

| Company | Country of Incorporation | Activity | Percentage ownership |
|---|---|---|---|
| Autonomy, Inc. * | USA | Software development and distribution | 100% |
| Autonomy Systems Ltd | England | Software development and distribution | 100% |
| etalk Corporation * | USA | Software development and distribution | 100% |
| Interwoven, Inc. * | USA | Software development and distribution | 100% |
| Meridio Holdings Ltd * | Northern Ireland | Software development and distribution | 100% |
| Virage, Inc. * | USA | Software development and distribution | 100% |
| ZANTAZ, Inc. * | USA | Software development and distribution | 100% |
| Autonomy Europe Holdings Ltd | England | Holding company | 100% |

*Company owned indirectly through wholly owned intermediate holding Company.

37

**Commented [NC53]:** Are these words needed – suggests Autonomy doesn't believe it – "the accounting improprieties…"?

**Commented [354]:** Would it be appropriate to state that those responsible for addressing the potential impairment were also responsible for the accounting errors / mis-statements and no impairment has been possible until this time?

EXH 6952A.0039

**AUTONOMY CORPORATION LIMITED**
(formerly Autonomy Corporation Plc)

**NOTES TO THE FINANCIAL STATEMENTS**
10 months ended 31 October 2011

10. FIXED ASSET INVESTMENTS (continued)

b) Other investments - unlisted trade investments

| | 31 October 2011 £'000 | 31 December 2010 £'000 (restated) | 1 January 2010 £'000 (restated) |
|---|---|---|---|
| **Cost at the beginning of the period** | | | |
| At 1 January | 2,607 | - | - |
| Additions | - | 2,607 | - |
| At end of period | 2,607 | 2,607 | - |

The prior year adjustment relates to the correction of an error. In preparing the current year financial management identified that the addition of an investment in the previously issued financial statements had been erroneously recorded in the financial statements of Autonomy Systems Limited. The restatement of the prior period balance correctly reflects that the Company holds a 19.99% holding in Realise Limited, a Company incorporated in the UK.

11. INVESTMENTS IN ASSOCIATES

| | 31 October 2011 £'000 | 31 December 2010 £'000 (restated) | 1 January 2010 £'000 |
|---|---|---|---|
| **Cost** | | | |
| At beginning of period | - | 5,514 | 4,107 |
| Additional investment during the period | - | 1,569 | 1,407 |
| Impairment of investment | - | (7,083) | - |
| At end of period | - | - | 5,514 |

| Company | Country of Operation | Activity | Percentage ownership |
|---|---|---|---|
| OpenV China Holdings company | Cayman Islands | Holding company | 35% |

The prior year comparatives have been restated to fully impair the investment in OpenV China Holdings Company as the directors do not consider it likely that future profits will be generated from the business and the directors have concludes that the impairment indicators existed at 31 December 2010. For additional information, see note 22.

38

**Commented [NC55]:** Should there be a PYA shown by the note?

**Commented [NC56]:** financial statements?

**AUTONOMY CORPORATION LIMITED**
(formerly Autonomy Corporation Plc)

**NOTES TO THE FINANCIAL STATEMENTS**
10 months ended 31 October 2011

12.     OTHER NON-CURRENT FINANCIAL ASSETS

|  | 31 October 2011 £'000 | 31 December 2010 £'000 | 1 January 2010 £'000 |
|---|---|---|---|
| At beginning of period | 38,465 | 7,453 | 6,358 |
| Additions | - | 2,677 | - |
| Net gains recognised in other comprehensive income | 30,826 | 28,335 | 1,095 |
| At end of period | 69,291 | 38,465 | 7,453 |

The investment above represents the Company's 14% interest in Blinkx Plc following the demerger in May 2007. This available for sale financial asset therefore consists solely of listed UK equity securities denominated in pound sterling.

During 2010 the Company participated in a placing completed by Blinkx Plc, acquiring a further 3,187,250 shares for £2.7 million. At 31 October 2011 the Company's interest in Blinkx Plc remained 14% (2010: 14%). The remaining increase in value is attributable to the movement in the Blinkx Plc share price to 150.00p (2010: 83.25p). After the period the Company disposed of its interest in Blinkx Plc, see note 25 for further details.

Quoted investments are subject to market risk and can increase or decrease in value depending on the share price of the relevant instruments. This investment has been classified as available for sale under IAS 39, and all changes in fair value have been recognised directly in equity during the period.

No amounts (31 December 2010: £nil) have been transferred from other comprehensive income and recognised in the income statement for the period.

At 31 October 2011 the share price of Blinkx plc of 150.00p resulted in a valuation of £69,291,000 (see note 12). On 25 June 2013 the Company disposed of its holding of 45.7m shares in Blinkx plc for £54,840,000 at a share price of 120.00p through an accelerated offering to institutional investors. As this is a non-adjusting post balance sheet event this reduction in value has not been included within these financial statements.

13.     OTHER RECEIVABLES

|  | 31 October 2011 £'000 | 31 December 2010 £'000 (restated) | 1 January 2010 £'000 (restated) |
|---|---|---|---|
| Amounts owed by subsidiary undertakings | 228,920 | 43,897 | 11,513 |
| Promissory note | 424 | - | - |
| VAT receivable | 264 | 200 | - |
| Prepayments and other receivables | 833 | 792 | 237 |
|  | 230,441 | 44,889 | 11,750 |

EXH 6952A.0041

**AUTONOMY CORPORATION LIMITED**
(formerly Autonomy Corporation Plc)

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

**13.   OTHER RECEIVABLES (continued)**

At the balance sheet date amounts receivable from the fellow group companies were £228.9 million (31 December 2010: £43.9 million). The carrying amount of these assets approximates their fair value. There are no past due or impaired receivable balances (31 December 2010: nil).

A promissory note was issued by a fellow group undertaking, Longsand Limited, to Autonomy Corporation Limited in return for assigning to Longsand Limited all of the Company's rights, title and interest in its intellectual property rights, which resulted in a gain on disposal of £388,000 which has been recorded through the Income Statement. The promissory note bears no interest and was settled in full on 25 April 2012 (see note 25 for further details).

**14.   TRADE AND OTHER PAYABLES**

|  | 31 October 2011 £'000 | 31 December 2010 £'000 (restated) | 1 January 2010 £'000 (restated) |
|---|---|---|---|
| Trade payables | 529 | 1,449 | 560 |
| Accrued expenses | 3,935 | 1,082 | - |
| Other payables | 270 | 270 | - |
|  | 4,734 | 2,801 | 560 |

The directors consider that the carrying amount of trade and other payables approximates to their fair value.

**15.   CONVERTIBLE LOAN NOTES**

On 4 March 2010 the Company raised £496,900,000 through the issuance of convertible loan notes. The convertible loan notes were issued at an issue price of £50,000 per loan note and were convertible into ordinary shares of the Company based on a share price of £20.6334 at the option of the bondholder, which is a 25% premium to the share price of the ordinary shares at the date the convertible loan notes were issued.

The loan notes carry an interest rate of 3.25% to be settled in cash semi-annually. The loan notes are payable in full on 4 March 2015 if not redeemed, converted or cancelled before that date.

The net proceeds received from the issue of the convertible loan notes have been split between the financial liability element and an equity component, representing the fair value of the embedded option to convert the financial liability into equity of the Company as follows:

|  | £'000 |
|---|---|
| **Net proceeds on issue of convertible loan notes** |  |
| Net proceeds | 488,303 |
| Equity component | (62,702) |
| Liability component at date of issue | 425,601 |
| Interest charged | 23,164 |
| Interest paid | (8,075) |
| Liability component at 31 December 2010 | 440,690 |
| Interest charged | 23,831 |
| Interest paid | (16,150) |
| Liability component at 31 October 2011 | 448,371 |

The equity component of £62,702,000 (2010: £62,702,000) has been credited to other reserves. In the prior year the equity component was recorded to the share premium account, and this has been corrected by way of a prior year adjustment (see note 22).

40

EXH 6952A.0042

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

16.   CALLED UP SHARE CAPITAL

|  | 31 October 2011 £'000 | 31 December 2010 £'000 | 1 January 2010 £'000 |
|---|---|---|---|
| **Authorised, called up, allotted and fully paid** | | | |
| 249,296,949 ordinary shares of 1/3p each | | | |
| (2010: 242,562,584 ordinary shares of 1/3p each) | 831 | 809 | 803 |

The Company has one class of ordinary shares which carry no rights to fixed income. The movement in 2011 relates to employee stock option exercises, during the period 6,734,365 ordinary shares were issued for a consideration of £79,446,000.

17.   RESERVES

*Share capital, Share premium, Merger reserve*

The balances classified as share capital, share premium and merger reserve include the total net proceeds (nominal value, share premium and any merger reserve in lieu of premium, where merger relief is applied) on issue of the Company's equity share capital, comprising 1/3p ordinary shares.

*Capital redemption reserve*

The capital redemption reserve is a reserve created when the Company buys it owns shares, reducing its share capital.

*Own shares reserve*

The own shares reserve represented the cost of shares the Company purchased in the market, held by the Autonomy Corporation Limited Employee Benefit Trust to satisfy options under the group's UK share option scheme. All options held within the scheme were exercised during the period. At 31 October 2011 the Trust held nil shares (31 December 2010: 389,699). As a result of the exercise the reserve at 31 October 2011 is £nil.

*Revaluation reserve*

This reserve records fair value changes on AFS financial assets.

*Stock compensation reserve*

The stock compensation reserve arises when the Company issues shares to settle obligations arising under its stock compensation plan for employees of the Company's subsidiaries.

*Other reserves*

The other reserves were created to record the equity component arising on the issue of convertible loan notes (see note 15).

EXH 6952A.0043

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

18.    RELATED PARTY TRANSACTIONS

During the period the Company provided funding to subsidiary undertakings of £185,023,000 (2010: £32,384,000). These funding balances were unsecured, and no interest was charged.

On 28 September 2011, the Company transferred one of its wholly-owned subsidiary companies, Longsand Limited, to another wholly-owned subsidiary Company, Autonomy Systems Limited. Additional detail is provided in note 10.

A promissory note for £424,000 was issued by a subsidiary undertaking, Longsand Limited, to Autonomy Corporation Limited in return for assigning to Longsand Limited all of the Company's rights, title and interest in its intellectual property rights. The promissory note bears no interest.

Autonomy Corporation Limited issued shares during the period on behalf of employees of subsidiary companies. Additional detail in relation to share options is disclosed in note 23.

The amounts owed by subsidiary undertakings are disclosed in note 13.

The Company held a 14% (2010: 14%) share in Blinkx plc., during the period, the share price increased from 83.25p to 150.00p, resulting in an increase in the carrying value of the investment from £38.5 million to £69.3 million. The investment in Blinkx is identified as a related party transaction due to the ownership interest of a former executive director of the Company.  See note 12 for additional details.

EXH 6952A.0044

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

19.   FINANCIAL INSTRUMENTS

*Capital risk management*

The Company manages its capital to ensure that it will be able to continue as a going concern. The capital structure of the group consists of debt (convertible loan notes disclosed in note 15), cash and cash equivalents and equity attributable to the Company's equity holder, comprising issued capital, reserves and retained earnings as shown in the Statement of Comprehensive Income.

*Classes of financial instruments*

For the purposes of risk management, the Company has identified the following classes of financial assets and liabilities:

| | | Carrying value | |
| | Note | 31 October 2011 £'000 | 31 December 2010 £'000 (restated) |
|---|---|---|---|
| **Financial assets** | | | |
| Cash and cash equivalents | | 339,876 | 512,947 |
| Other non-current financial assets | 12 | 69,291 | 38,465 |
| Amounts owed by subsidiary undertakings | 13 | 228,920 | 43,897 |
| Promissory note | 13 | 424 | - |
| | | | |
| **Financial liabilities** | | | |
| Convertible loan notes | 15 | (448,371) | (440,690) |
| Trade payables | 14 | (529) | (1,449) |
| Accrued expenses | 14 | (3,935) | (1,082) |
| Other payables | 14 | (270) | (270) |

There is no difference between the carrying value and fair value of the above financial assets and liabilities in either period with the exception of the convertible loan notes at 31 October 2011: the directors consider the fair value of the convertible loan notes at 31 October 2011 to be £761,271,000 which is based on the redemption value at the date of conversion.

*Financial risk objectives*

The Company is subject to market risk (including price risk and foreign currency risk) and liquidity and interest risk

The Company does not use derivative financial instruments to hedge foreign currency exposures as the foreign currency exposures across the Autonomy Group as a whole are limited. Liquidity risk is considered low as the Company has no net debt.

*Price Risk*

The Company is exposed to equity price risks arising from equity investments. The shares included above represent investments in listed equity securities that present the Company with opportunity for return through dividend income and trading gains. Equity investments designated as available for sale are held for strategic rather than trading purposes. The Company does not actively trade these investments.

EXH 6952A.0045

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

19.   **FINANCIAL INSTRUMENTS (continued)**

*Equity price sensitivity analysis*

The sensitivity analysis below has been determined based on the exposure to equity price risks at the reporting date. If equity prices had been 25% higher/lower other equity reserves would increase/decrease by £17.3 million (31 December 2010: £9.6 million) for the Company as a result of the changes in fair value of available-for-sale shares.

On 25 June 2013 the Company disposed of its holding of 45.7m shares in Blinkx plc for £54,840,000 at a share price of 120.00p through an accelerated offering to institutional investors.

*Foreign currency risk management*

The carrying amounts of the Company's foreign currency denominated monetary assets and monetary liabilities at the reporting date are as follows:

|  | Liabilities (restated) | | Assets (restated) | |
|---|---|---|---|---|
|  | 31 October 2011 £'000 | 31 December 2010 £'000 | 31 October 2011 £'000 | 31 December 2010 £'000 |
| US Dollar | (145,406) | (111,344) | 352,754 | 242,929 |
| Euro | (1,759) | (4) | 73,282 | 32,201 |
| Pound Sterling | (606,939) | (537,919) | 517,067 | 526,974 |

*Foreign currency sensitivity analysis*

The Company is mainly exposed to movements in US dollar. The following table details the Company's sensitivity to a 10% increase and decrease in the functional currency of the entity concerned against the relevant foreign currencies. 10% is the sensitivity rate used when reporting foreign currency risk internally to key management personnel and represents management's assessment of the reasonably possible change in foreign exchange rates. The sensitivity analysis includes only outstanding foreign currency denominated monetary items and adjusts their translation at the period end for a 10% change in foreign currency rates. The sensitivity analysis includes external loans as well as loans to group entities where the denomination of the loan is in a currency other than the currency of the lender or the borrower. A positive number below indicates an increase in profit and other equity where the Sterling strengthens 10% against the relevant currency. For a 10% weakening of the functional currency against the relevant currency, there would be an equal and opposite impact on the profit and other equity, and the balances below would be negative.

|  | US Dollar Currency Impact | |
|---|---|---|
|  | 31 October 2011 £'000 | 31 December 2010 £'000 |
| **Profit or loss** | | |
| Cash and cash equivalents | 213 | 2,425 |
| Trade payables | 222 | 409 |
| Amounts owed by subsidiary undertakings | 14,518 | 11,093 |

The movements above arise where the Company has financial assets or liabilities in currencies other than Sterling. There has not been any significant change in the Company's sensitivity to foreign currency during the period.

44

EXH 6952A.0046

**AUTONOMY CORPORATION LIMITED**
(formerly Autonomy Corporation Plc)

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

19.   **FINANCIAL INSTRUMENTS (continued)**

*Liquidity and interest risk tables*

The following tables detail the Company's remaining contractual maturity for its non-derivative financial liabilities. The tables have been drawn up based on the undiscounted cash flows of financial liabilities based on the earliest date on which the Company can be required to pay. The table includes both interest and principal cash flows:

| | Weighted average interest rate % | Less than 6 months £'000 | 6 months to 1 year £'000 | 1 to 5 years £'000 | Total £'000 |
|---|---|---|---|---|---|
| **31 October 2011** | | | | | |
| Non interest bearing | | | | | |
| Trade payables | - | 529 | - | - | 529 |
| Other payables | - | 270 | - | - | 270 |
| Fixed interest rate instruments | | | | | |
| Convertible loan notes | 3.25% | 8,075 | 8,075 | 432,221 | 448,371 |
| | 3.25% | 8,874 | 8,075 | 432,221 | 449,170 |
| **31 December 2010** | | | | | |
| Non interest bearing | | | | | |
| Trade payables | - | 1,449 | - | - | 1,449 |
| Other payables | - | 270 | - | - | 270 |
| Fixed interest rate instruments | | | | | |
| Convertible loan notes | 3.25% | 8,075 | 8,075 | 424,540 | 440,690 |
| | 3.25% | 9,794 | 8,075 | 424,540 | 442,409 |

*Fair value of financial instruments*

The fair values of financial assets and financial liabilities are determined as follows.

The fair value of non-derivative financial assets and financial liabilities with standard terms and conditions and traded on active liquid markets are determined with reference to quoted market prices. Financial assets in this category include the quoted shares held in Blinkx Plc.

The fair values of other financial assets and financial liabilities are determined in accordance with generally accepted pricing models based on discounted cash flow analysis using prices from observable current market transactions and dealer quotes for similar instruments.

*Fair value measurements recognised in the balance sheet*

The following table provides an analysis of financial instruments that are measured subsequent to initial recognition at fair value, grouped into Levels 1 to 3 based on the degree to which the fair value is observable:

- Level 1 fair value measurements are those derived from quoted prices (unadjusted) in active markets for identical assets or liabilities;

- Level 2 fair value measurements are those derived from inputs other than quoted prices included within Level 1 that are observable for the asset or liability, either directly (i.e. as prices) or indirectly (i.e. derived from prices); and

- Level 3 fair value measurements are those derived from valuation techniques that include inputs for the asset or liability that are not based on observable market data (unobservable inputs)

45

EXH 6952A.0047

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

19.   FINANCIAL INSTRUMENTS (continued)

| | Level 1 £'000 | Level 2 £'000 | Level 3 £'000 | Total £'000 |
|---|---|---|---|---|
| **31 October 2011** | | | | |
| Available for sale financial assets | | | | |
| Investments in shares | 69,291 | - | - | 69,291 |
| | | | | |
| Financial liabilities | | | | |
| Convertible loan notes | (448,371) | - | - | (448,371) |
| | | | | |
| **31 December 2010** | | | | |
| Available for sale financial assets | | | | |
| Investments in shares | 38,465 | - | - | 38,465 |
| | | | | |
| Financial liabilities | | | | |
| Convertible loan notes | (448,371) | - | - | (448,371) |

The fair value of the liability component of convertible loan notes is determined assuming redemption on 4 March 2015 and using a 6% interest rate based on market rates for similar term instruments without the convertible element.

20.   ULTIMATE CONTROLLING PARTY

On 3 October 2011 the share capital of the Company was acquired by Hewlett-Packard Vision B.V., the parent Company, a company incorporated in the Netherlands. Prior to this, the Company was listed on the London Stock Exchange.

Hewlett-Packard Company, a corporation registered in the United States of America, is the ultimate parent Company, ultimate controlling party and is the parent Company of the largest and smallest group into which the results of the Company are consolidated.

Copies of the group financial statements of Hewlett-Packard Company can be obtained from 3000 Hanover Street, Palo Alto, California, USA.

21.   EXCEPTIONAL ITEMS

Exceptional items are those items that in the directors' view are required to be separately disclosed by virtue of their size or incidence to enable a full understanding of the Company's financial performance.

During the period exceptional costs of £42.2m where incurred relating to the sale of the Autonomy Group to Hewlett-Packard Corporation on 3 October 2011.

| | £'000 |
|---|---|
| Disposal costs associated with sale of Autonomy | |
| Group to Hewlett-Packard Corporation.: | |
| Arrangement fees | 35,550 |
| Legal & professional fees | 4,945 |
| Bank fees | 1,713 |
| | |
| Total disposal costs | 42,208 |

46

EXH 6952A.0048

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

22.   PRIOR PERIOD RESTATEMENT

*Material errors*

As described in the Director's Report, and as a result of the findings of an on-going internal investigation, Hewlett-Packard, the Company's ultimate parent, has provided information to the U.K. Serious Fraud Office, the U.S. Department of Justice and the SEC related to accounting improprieties, disclosure failures and misrepresentations in the wider Autonomy group, of which the Company is a subsidiary, that occurred prior to and in connection with Hewlett-Packard's acquisition of Autonomy.

The extensive investigations undertaken by Hewlett-Packard, and by the Directors, into the past accounting practices of the group, have revealed pervasive errors in the previously issued financial statements.  These have required all aspects of the accounting to be re-assessed. The errors found as a result of these investigations have led to restatements to the previously issued financial statements of the Company for the year ending 31 December 2010, principally relating to the revaluation of balances denominated in foreign currencies, to correct the historic cost of a subsidiary, to correct for costs not recorded in the appropriate financial period, to record the impairment of an associate in the correct period, to include appropriate accounting entries for share based payments and to include associated corporation tax impacts.

Given the volume and magnitude of the above errors, it is possible that further errors may remain undetected. The investigations, including those of the U.K. Serious Fraud Office, the U.S. Department of Justice and the SEC, are on-going and it is possible that further matters may be identified that could impact the reported financial performance and position of the Company, including previously reported financial statements. As a result of the investigations by Hewlett-Packard the earnings of fellow group undertakings have themselves been subject to substantial corrections for the current and prior periods compared to any previously prepared financial statements, principally relating to the overstatement of revenues in Autonomy's U.S. operations.

Summary impact on the 2010 Income Statement and Balance Sheet:

|  | Loss for the year £'000 | Shareholder funds / net assets £'000 |
|---|---|---|
| As previously reported – 31 December 2010 | (12,153) | 790,942 |
| Impact of 2009 restatements (as above) | - | (8,577) |
| Correction of material errors: |  |  |
| Revaluation of balances denominated in foreign currencies (note i) | 2,961 | 2,961 |
| Cost recognition errors (note iii) | (958) | (958) |
| Impairment of associate (note iv) | (7,083) | (7,083) |
| Share based payments (note v) | - | 3,876 |
| Deferred tax impact (note vi) | (4,847) | (4,847) |
| As restated – 31 December 2010 | (22,080) | 776,314 |

47

**Commented [357]:** Right term?

**Commented [NC58]:** Misstatements?  (Also applies below but not repeated).

**Commented [NC59]:** All?

**Commented [NC60]:** historical

**Commented [NC61]:** financial statements?

**Commented [NC62]:** Should "as above" be "below", or is this a reference to a previous note?

**Commented [NC63]:** Misstatements?

EXH 6952A.0049

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

22.   PRIOR PERIOD RESTATEMENT

Impact on the opening balances brought forward at 1 January 2010:

|  | Retained earnings | Shareholder funds / net assets |
|---|---|---|
|  | £'000 | £'000 |
| As previously reported – 31 December 2009 | 15,756 | 699,436 |
| Correction of material errors: |  |  |
| Revaluation of balances denominated in foreign currencies (note i) | 8,241 | 8,241 |
| Investment in subsidiaries (note ii) | (29,400) | (29,400) |
| Share based payments (note v) | - | 12,582 |
| As restated – 31 December 2009 | (5,403) | 690,859 |

Notes:

(i)      Monetary assets and liabilities denominated in foreign currencies had not been correctly re-valued at the balance sheet date in previous financial statements. The prior year adjustment reflects the retranslation of the balances into sterling at the rates of exchange at 31 December 2009 and 31 December 2010.

> **Commented [NC64]:** Is this inter-company balances only or also other balances?

(ii)     The current Directors have identified that the Company's investment in its subsidiary Autonomy Europe Holdings Limited was overstated as a result of the capitalisation of a foreign exchange loss within the balance. Consequently a prior year adjustment is included to correct this error, and to record the investment at its appropriate historic cost.

(iii)    Cost recognition adjustments relating to trade expenses resulting in restatements at 31 December 2010 and 31 December 2009 to reflect correct expense recognition at the appropriate balance sheet date.

(iv)    The current Directors have identified that the Company's investment in its associate OpenV was impaired at 31 December 2010 and that the impairment should have been recorded at this date. Consequently a prior year adjustment is included to reflect this impairment and to reduce the carrying value of the investment to nil.

(v)     No accounting entries relating to the share based payments had been reflected in the financial statements in previous financial periods. The adjustment reflects the issuing of Company shares on behalf of its subsidiaries to their employees and is reflected through an increase in reserves and the carrying value of investments in subsidiaries.

(vi)    The deferred tax balances have been corrected as a result of uncertainty arising in the Company's future forecasts against which to realise the balances.

(vii)   In preparing the current year financial statements management identified that the addition of an investment in the previously issued financial statements had been erroneously recorded in the financial statements of Autonomy Systems Limited. The restatement of the prior period balance correctly reflects that the Company holds a 19.99% holding in Realise Limited, a Company incorporated in the UK. This adjustment has no impact on previously reported net assets

(viii)  In preparing the current year financial statements management identified that the equity component arising on the issue of convertible loan notes had incorrectly been credited to the share premium account. The restatement of the prior period restates this to other reserves. This adjustment has no impact on previously reported net assets.

48

**EXH 6952A.0050**

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

23.    **SHARE BASED PAYMENTS**

The Group's employees participated in two unapproved option plans, the UK Discretionary Option Scheme 1996 and the 2008 US Share Option Plan providing employees and executives with the opportunity to acquire a proprietary interest in Autonomy Corporation Limited (formerly Autonomy Corporation plc) as an incentive to attract and retain the services of employees.  Under the terms of the plan, options were granted with exercise prices not less than the fair market value of Autonomy Corporation Limited shares, became exercisable over vesting periods as established by the Board of Directors (generally three to four years), and generally expired seven years from the date of grant.  Vested options are forfeited following termination of employment. Options were valued using the Black-Scholes model. No performance conditions were included in the fair value calculations. The options were all exercised upon acquisition of the Company by the Hewlett-Packard Company.

The following tables summarize options outstanding as at 31 October 2011 and 31 December 2010.

| | 31 October 2011 | | 31 December 2010 | |
| --- | --- | --- | --- | --- |
| | Number | Weighted average exercise price (£) | Number | Weighted average exercise price (£) |
| Outstanding at beginning of period | 7,648,668 | 10.70 | 7,547,315 | 8.14 |
| Granted during the period | 3,359,628 | 16.65 | 2,600,500 | 14.97 |
| Exercised during the period | (6,840,317) | 10.61 | (1,988,280) | 6.33 |
| Expired during the period | (4,167,979) | 10.47 | (510,867) | 10.47 |
| Outstanding at end of period | 0 | | 7,648,668 | 10.70 |
| Exercisable at the end of the period | 0 | | 4,033,913 | 8.17 |

The weighted average share price at the date of exercise for share options exercised during the period was £24.31 (2010:£16.96). There were no remaining options outstanding at 31 October 2011. The options outstanding at 31 December 2010 had a weighted average exercise price of £8.17 and a weighted average remaining contractual life of 5.1 years.

The weighted average fair value of options granted in the period was £6.29 per option (2010: £4.99 per option). The assumptions for the Black-Scholes model are as follows:

| | 31 October 2011 | 31 December 2010 |
| --- | --- | --- |
| Weighted average share price | £15.08 | £14.97 |
| Weighted average exercise price | £15.08 | £14.97 |
| Expected volatility | 51% | 46% |
| Expected life | 3 years | 3 years |
| Risk-free rate | 2.5% | 2.5% |
| Expected dividends | - | - |

Expected volatility was determined by calculating the historical volatility of the group's share price over the previous three years.  The expected life used in the model has been adjusted, based on management's best estimate, for the effects of non-transferability, exercise restrictions and behavioural considerations.

Share option exercise prices were automatically adjusted to reflect the changes in Autonomy Corporation Limited's share capital structure arising in connection with the Company's December 2006 rights issue.  The effect of the adjustment was to ensure that employees were not unfairly discriminated against as stakeholders following the dilution of Autonomy Corporation Limited's share price as a result of the rights issue.  No fair value adjustments arose as a result of this transaction.

**Commented [365]:** Would some acknowledgement that bonuses were paid / awarded prior to the issues under investigation coming to light?

49

**AUTONOMY CORPORATION LIMITED**
(formerly Autonomy Corporation Plc)

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

24.    **CONTINGENT LIABILITIES**

In relation to accounting improprieties, disclosure failures and misrepresentations at the wider Autonomy group that occurred prior to and in connection with Hewlett-Packard's acquisition of Autonomy, Autonomy is subject to on-going internal and external investigations in the United States and United Kingdom, as described in the Directors Report. Autonomy is co-operating with the various investigations. The outcome of these investigations cannot be determined and it should be noted that the investigations could result in fines, other penalties or claims being imposed on or asserted against the Company. It is not possible at this time to estimate the outcome of any such actions taken against the Company.

**Commented [NC66]:** As noted above, HP was at one stage concerned about whether this form of note was unhelpful – has it been concluded that it is necessary / appropriate? Does this cover the potential claim from HP?

25.    **POST BALANCE SHEET EVENTS**

On 10 January 2012 the Company de-registered as a public Company under the Companies Act 2006 and re-registered as a private Company, limited by shares. Accordingly the Company changed its name from Autonomy Corporation plc to Autonomy Corporation Limited.

On 4 November 2011 Hewlett-Packard Vision B.V. received the final acceptance to acquire all convertible loans.

**Commented [NC67]:** Not chronological?

On 20 January 2012 Hewlett-Packard Vision B.V. transferred all the convertible loans to HP Leman, a fellow subsidiary undertaking.

On 29 February 2012 the Company filed a written resolution modifying the terms of the convertible loan notes in issue. The modification allowed for the redemption of the convertible loan notes by the Company on 5 March 2012 for their par value, plus accrued interest not yet paid.

On 5 March 2012 the Company redeemed the convertible loan notes for the total consideration of £504,974,625, being the par value plus interest accrued and not paid.

On 22 March 2012 the Company filed a solvency statement under s643 of the Companies Act 2006 stating that the directors believe there to be no grounds on which the Company could not settle its existing commitments as they fall due, and that the Company will be able to settle its on-going liabilities as they fall due for 12 months following signing of the solvency statement.

On 22 March 2012 written resolutions were filed with Companies House to reduce the equity capital of the Company under s644(1) of the Companies Act 2006. Accordingly, the share premium of the Company was reduced resulting in £600,000,000 being released to retained earnings.

On 28 March 2012 the Company sold 100% of the share capital of Autonomy Europe Holdings Limited to fellow group Company Hewlett-Packard Leman BV for $1.68 billion (£1.05 billion). Immediately following this, the Company remitted these funds by way of a dividend payment of $1.68 billion (£1.05 billion) to Hewlett-Packard Vision Limited, its immediate parent Company.

On 25 April 2012, Autonomy Corporation Limited (formerly Autonomy Corporation plc) subscribed to 1 ordinary share in Autonomy Systems Limited at a premium equal to the face value of a promissory note between Autonomy Corporation Limited and Longsand Limited in return for transferring the promissory note to Autonomy Systems Limited.

Also on 25 April 2012, Autonomy Systems Limited subscribed to 1 ordinary share in Longsand Limited at a premium equal to the face value of the promissory note to settle the promissory note in full.

At 31 October 2011 the share price of Blinkx plc of 150.00p resulted in a valuation of £69,291,000 (see note 12). On 25 June 2013 the Company disposed of its holding of 45.7m shares in Blinkx plc for £54,840,000 at a share price of 120.00p through an accelerated offering to institutional investors. As this is a non-adjusting post balance sheet event this reduction in value has not been included within these financial statements.

On 17 December 2013 the Company disposed of its holding in Realise Limited for £2,607,000 through a sale of its shares to Realise Holdings Limited.

**AUTONOMY CORPORATION LIMITED**
**(formerly Autonomy Corporation Plc)**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

25.   POST BALANCE SHEET EVENTS (continued)

As discussed in note 22, the Company booked a number of prior year adjustments in respect of the years ended 31 December 2009 and 31 December 2010.  As a result of this the Company has submitted a claim for overpayment of tax of £835,500 in December 2013 in respect of the tax return for the year ended 31 December 2009. At the date of signing the financial statements HMRC have not agreed the claim and therefore no benefit has been recognised due to the uncertainty regarding the final value of the claim.

The restated 2010 group relief surrender is based on the best available information at the date of signing the financial statements, this reflects a reduction in group relief of £2,698,000 compared to the surrender indicated in the original tax return to HMRC.

51

**EXH 6952A.0053**

Company Registration No. 03063054

**AUTONOMY SYSTEMS LIMITED**

**Report and Financial Statements**

**10 months ended 31 October 2011**

EXH 6952B.0001

| | |
|---|---|
| Officers and professional advisers | 1 |
| Directors' report | 2 |
| Directors' responsibilities statement | 8 |
| Independent auditor's report | 9 |
| Profit and loss account | 11 |
| Statement of total recognised gains and losses | 12 |
| Balance sheet | 13 |
| Notes to the financial statements | 14 |

EXH 6952B.0002

**AUTONOMY SYSTEMS LIMITED**

**REPORT AND FINANCIAL STATEMENTS 2011**
**OFFICERS AND PROFESSIONAL ADVISERS**

**DIRECTORS**

Sergio Letelier (appointed on 25 May 2012)
Christopher Yelland (appointed on 5 July 2012)

**COMPANY SECRETARY**

Roberto Putland

**REGISTERED OFFICE**

Cain Road
Amen Corner
Bracknell
Berkshire
RG12 1HN

**BANKERS**

Barclays Bank plc
St Andrews Street
Cambridge
CB2 3AA

**INDEPENDENT AUDITORS**

Ernst and Young LLP
Apex Plaza
Forbury Road
Reading
Berkshire
RG1 1YE

EXH 6952B.0003

**AUTONOMY SYSTEMS LIMITED**

**DIRECTORS' REPORT**
**FOR THE PERIOD ENDED 31 OCTOBER 2011**

The directors present their annual report and the audited financial statements for the 10 months ended 31 October 2011.

PRINCIPAL ACTIVITY

The Company's principal activity continues to be software development and distribution.

On 3 October 2011 the Company was acquired by the Hewlett-Packard group ("Hewlett-Packard") as part of its acquisition of the Autonomy Group ("Autonomy" or "the Group"). The directors as of the date of this report were appointed subsequent to the periods being reported on and subsequent to the acquisition by Hewlett-Packard.

BUSINESS REVIEW AND FUTURE DEVELOPMENTS

Revenue for the period has increased from £81,293,000 (restated) to £88,178,000 (annualised) and profit before tax has decreased from £43,110,000 (restated) to £13,895,000 (annualised). At the balance sheet date Autonomy Systems Limited had net assets of £146,781,000 (year ended 31 December 2010: £129,515,000 (restated)).

The Company has continued to endeavour to establish its technology as the infrastructure standard for automating operations on all forms of unstructured information. This involved signing licence agreements with new customers and establishing relationships with third party value added resellers, services providers and original equipment manufacturers (OEMs) until 1 June 2013 whereon the Company sold its trade and assets to Hewlett-Packard Limited, a fellow group undertaking, retaining only its research and development function.

As a result of the findings of an on-going internal investigation, Hewlett-Packard, the Company's ultimate parent, has provided information to the U.K. Serious Fraud Office, the U.S. Department of Justice and the SEC related to accounting improprieties, disclosure failures and misrepresentations in the wider Autonomy group, of which the Company is a subsidiary, that occurred prior to and in connection with Hewlett-Packard's acquisition of Autonomy. On 21 November 2012, representatives of the U.S. Department of Justice advised Hewlett-Packard that they had opened an investigation relating to Autonomy. On 6 February 2013, representatives of the U.K. Serious Fraud Office advised Hewlett-Packard that they had also opened an investigation relating to Autonomy. Hewlett-Packard and the Company are cooperating with the three investigating agencies.

The extensive investigations undertaken by Hewlett-Packard, and by the Directors, into the past accounting practices of the group, have revealed pervasive errors in the previously issued financial statements. These have required all aspects of the accounting to be re-assessed. The errors found as a result of these investigations have led to restatements to the previously issued financial statements of the Company for the year ending 31 December 2010, principally relating to the recognition of revenue and costs, and to the accounting for investments and to correct the balance sheet for balances denominated in foreign currency not re-valued at the year end.

Given the volume and magnitude of the above errors, it is possible that further errors may remain undetected. The investigations, including those of the U.K. Serious Fraud Office, the U.S. Department of Justice and the SEC, are on-going and it is possible that further matters may be identified that could impact the reported financial performance and position of the Company, including previously reported financial statements. The Company's earnings and financial position may be further impacted by any such additional errors found in the accounting of fellow group undertakings including in intragroup transactions, especially as the Company earns a significant element of revenue from the earnings of fellow group undertakings. As a result of the investigations by Hewlett-Packard the earnings of fellow group undertakings have themselves been subject to substantial corrections for the current and prior periods compared to any previously prepared financial statements. These restatements are for similar reasons to the Company, principally relating to the overstatement of revenues in Autonomy's U.S. operations.

The outcome of ongoing investigations cannot be determined and it should be noted that the investigations could result in fines, other penalties or claims being imposed on or asserted against the Company. It is not possible at this time to estimate the outcome of any such actions taken against the Company.

In addition to the uncertainties discussed above, the work that the Directors were able to undertake on closing the books and preparing the financial statements was limited in certain cases by the information that was available to them, specifically in the area of intercompany opening balances at 1 January 2010 (see note 1).

2

**Commented [31]:** Do hardware sales in Au Inc feed into ASL via transfer pricing?

If so, to what degree?

Is this statement adequate, bearing this in mind.

**Commented [NC2]:** This looks to be the reported £73.482m x 12/10? Is this valid (and necessary to do), given seasonality / increase at end of quarter?

**Commented [NC3]:** As above.

**Commented [34]:** The U.S Securities & Exchange Commission?

**Commented [35]:** And the Financial Reporting Council?

**Commented [36]:** Why "in connection with"? Would some of the issues have arisen long before the deal with HP was contemplated?

**Commented [37]:** What is meant by "pervasive"?

Arguably, the issues identified to date involve a relatively small number of very senior people and focuses on higher value transactions.

Will there be implications for a claim against Deloitte where the accounting issues are described in this way? Could it be argued that many people must have been aware of the pervasive issues and, as such, it would be difficult or impossible for an auditor to have identified the issues?

**Commented [NC8]:** "misstatements" rather than "errors" (errors indicating mistakes)? Also applies below but not repeated.

Should it be "misstatements and errors"?

**Commented [NC9]:** Literally "all"?

**Commented [310]:** See comment above re "pervasive".

**Commented [311]:** Whose investigations are being referred to here? Is it all of the following:
(a) the directors of ASL
(b) HP
(c) the named regulators

?

Should this be made clear? Also the time period over which these investigations may conclude?

**Commented [NC12]:** financial statements?

**Commented [313]:** Needed?

**Commented [314]:** Odd phrasing. Is the intention to state:

1. Revenue has been misstated in ACL
2. Revenue has been misstated in other group companies
3. The misstatements are similar in nature.
4. The financial results of ACL are affected by both 1 and 2 as a consequence of the transfer pricing arrangements that apply to certain aspects of group revenues.
?
Comments arises in note to accounts also.

**AUTONOMY SYSTEMS LIMITED**

**DIRECTORS' REPORT**
**FOR THE PERIOD ENDED 31 OCTOBER 2011 (continued)**

BUSINESS REVIEW AND FUTURE DEVELOPMENTS (continued)

The Directors have completed all the work that they can reasonably undertake, are not aware of any matters significant to the financial statements they have not addressed at the time of preparing these financial statements and have made such reasonable judgements and estimate that are necessary for them to close the books and prepare these financial statements. Accordingly the Directors are satisfied that the financial statements reflect a true and fair view of the state of affairs of the Company and of its financial performance for the period.

Separate to the above mentioned corrections of the previously issued financial statements, as a result of Hewlett-Packard Company's acquisition of the Autonomy group on 3 October 2011, the Company has adopted certain accounting policies used by other Hewlett-Packard group entities reporting under UK GAAP that are considered to be more appropriate, principally related to the expensing of research and development costs as incurred. Consistent with Financial Reporting Standard No. 3 these changes have been reflected as a prior period adjustment.

The impact of the fundamental errors is to reduce profit by £72.7m in the year ending 31 December 2010, and reduces opening reserves at 1 January 2010 by £80.1m. The impact of the changes in accounting policy is to reduce profit by £13.4m in the year ending 31 December 2010, and reduces opening reserves at 1 January 2010 by £2.4m. The aggregate impact of all of these restatements on the profit for the year ending 31 December 2010 is to reduce the net profit from £105.7m to £19.6m, and to reduce opening reserves at 1 January 2010 from £191.4m to £108.9m. The nature of the restatements, and the impact on the financial position of the Company, is described in more detail in note 19 to the accounts.

CHANGE OF REPORTING DATE

On 25 November 2011 the Company changed its financial reporting date to 31 October (previously 31 December) to align with its new ultimate parent Company.

DIVIDENDS

The directors do not recommend the payment of a dividend for the current financial period (year ended 31 December 2010 - £nil).

PRINCIPAL RISKS AND UNCERTAINTIES

The key risks to which the business is exposed are summarised as follows:

- Our business depends on our core technology, currently marketed under the brand IDOL Server, and our strategy has been, and for the foreseeable future will continue to be, to concentrate our efforts on developing and marketing software based on our proprietary technology. Technology which significantly competes with the Company's technology, or material legal claims against our technology, would present a material risk to the Company.
- Expenditures increasing without a commensurate increase in revenues, and rapid changes in market conditions, could result in poor operating results.
- The average selling prices of our products could decrease rapidly, which may negatively impact revenues and gross margins.
- Our reliance on sales of our products by third parties such as value added resellers makes it difficult to predict our revenues, cash flow and operating results.
- Errors or defects in our products could negatively affect our revenues and the market acceptance of our products and increase our costs.
- Potential actions against the Company as a result of ongoing investigations as discussed above [this is where Legal can add more specific information if they wish to].

Commented [315]: Is it the case that they have completed the work they needed to in order to file the accounts? The text gives the impression that no further work on accounting misstatements can be reasonably undertaken.

Commented [316]: Are the other policy changes specified later?

Commented [317]: Subject to the relevance of hardware to this entity, should a statement be made to the effect that the financial results contain hardware revenue but it is not part of the company's strategy to sell significant volumes of hardware in the future?

Commented [AM18]: Placeholder should legal wish to add to this comment.

EXH 6952B.0005

**AUTONOMY SYSTEMS LIMITED**

**DIRECTORS' REPORT**
**FOR THE PERIOD ENDED 31 OCTOBER 2011 (continued)**

KEY PERFORMANCE INDICATORS

The Company has several key performance measures used internally to monitor and challenge performance and to assist investment decisions.  The most important indicators are:

- Revenue
- Profit before tax
- Research and development expenditure
- Headcount

Financial performance and position in the current and prior periods is summarized as follows:

|  | 2011 £'000 | 2010 £'000 (restated) | % Change |
|---|---|---|---|
| Revenue (2011 annualised) | 88,178 | 81,293 | 8% |
| Profit before tax (2011 annualised) | 13,895 | 43,110 | (68%) |
| Research and development expenditure (2011 annualised) | 7,576 | 6,118 | 24% |
| Headcount | 312 | 226 | 38% |

The Company continues to invest in research and development. The directors regard investment in this area as a prerequisite for success in the medium to long-term future. Profit before tax has fallen as a result of higher marketing support costs and salary costs.

FINANCIAL RISK MANAGEMENT

The Company's activities expose it to a number of financial risks including credit risk, foreign exchange risk and liquidity risk.

*Foreign exchange risk*

The Company's activities expose it primarily to the financial risks of changes in foreign currency exchange rates. These are naturally hedged with similar levels of income and expenditure in foreign currencies.

*Credit risk*

The Company's principal financial assets are bank balances and cash, trade and other receivables and investments.

The Company's credit risk is primarily attributable to its trade receivables. The amounts presented in the balance sheet are net of allowances for doubtful receivables. An allowance for impairment is made where there is an identified loss event which, based on previous experience, is evidence of a reduction in the recoverability of the cash flows.

The credit risk on liquid funds is limited because the counterparties are banks with high credit-ratings assigned by international credit-rating agencies.

The Company has no significant concentration of credit risk, with exposure spread over a large number of counterparties and customers.

*Liquidity risk*

In order to maintain liquidity to ensure that sufficient funds are available for ongoing operations and future developments, the Company uses funds from related group undertakings. The Autonomy group has significant cash balances.

**Commented [319]:** Is this a reasonable statement to make? Were there some doubts about the amount of R&D activity compared to statements made by the prior directors?

**Commented [NC20]:** What are the "marketing support costs" (given the known issues in terms of hardware costs being included in sales and marketing expenses in Autonomy Inc)?
Should be careful not to describe anything that may not be marketing as such.
Are these in cost of sales?

EXH 6952B.0006

**AUTONOMY SYSTEMS LIMITED**

**DIRECTORS' REPORT**
**FOR THE PERIOD ENDED 31 OCTOBER 2011 (continued)**

DIRECTORS

The directors who served during the period and to the date of this report were as follows:

Sushovan Hussain (resigned on 27 September 2011)
Andrew Kanter (resigned on 30 May 2012)
Sergio Letelier (appointed on 25 May 2012)
Christopher Yelland (appointed on 5 July 2012)
Nicholas Wilson (appointed on 31 August 2012 and resigned on 29 November 2012)
Roberto Putland (appointed on 25 May 2012 and resigned on 24 April 2013)
Joel Scott (appointed on 12 June 2012 and resigned on 31 August 2012)

During the period, and up to the date of approval of the financial statements, the Company had in place a third party indemnity provision for the benefit of all directors of the Company.

**Commented [AM21]:** Action for legal to check, and amend if necessary, in accordance with Proskauer's comments.

RESEARCH AND DEVELOPMENT

The Company continues to develop new software products and expects further product developments.  The total amount written off to the profit and loss account for research and development expenditure during the period was £6,313,000 (year ended 31 December 2010: £6,118,000 (restated)).

**Commented [NC22]:** Does this mean expensed?  Written off seems to imply first capitalised?

SUPPLIER PAYMENT POLICY

The Company's policy is generally to pay suppliers at the end of the month following that in which the supplier's invoice is received.  The number of creditor days outstanding at 31 October 2011 was 73 days (year ended 31 December 2010: 62 days).

CHARITABLE AND POLITICAL CONTRIBUTIONS

During the period the Company made charitable donations of £17,000 (year ended 31 December 2010: £3,000) principally to local charities serving the community in which the Company operates. No political donations were made.

EMPLOYEES

Details of the number of employees and related costs can be found in note 6 to the financial statements.

EMPLOYMENT OF DISABLED EMPLOYEES

All applications from disabled employees are fully considered. Should an employee become disabled, it is the Company's practice to continue their current employment where possible or offer suitable alternatives. It is the policy of the Company that the training, career development and promotion of disabled persons should, as far as possible, be identical with that of other employees.

EMPLOYEE INVOLVEMENT

The Company continues to place importance on the education and development of its people. There is a well-developed employee involvement programme within the Company. Employee representatives are consulted regularly on a wide range of matters affecting their interests and receive regular newsletters.

The Company's goal is to create health and safety practices and work environments that enable employees to work injury-free. This is accomplished by continually reducing occupational injury and illness risks while promoting employee health and well-being.

The Company believes that a diverse workforce encourages creativity and innovation and helps build an exciting, stimulating work environment. A diverse workforce, reflecting the demographics of the many different markets where the Company operates, also provides a competitive advantage and helps acquire new business.

EXH 6952B.0007

**AUTONOMY SYSTEMS LIMITED**

**DIRECTORS' REPORT**
**FOR THE PERIOD ENDED 31 OCTOBER 2011 (continued)**

DIRECTORS' STATEMENT AS TO DISCLOSURE OF INFORMATION TO AUDITORS

The directors in office at the date of signature of these accounts were not directors of the Company for the period covered by the accounts. The directors consider that there remains a risk that not all information relevant to the production of these accounts is available to the current directors and consequently therefore not available to the auditors. In making this determination the current directors have considered the findings from the previously discussed investigation into financial misrepresentations announced by Hewlett-Packard Company, the identified errors in previously reported financial statements as well as the quality and completeness of the accounting records maintained by the previous management team. The current directors have executed all reasonable efforts to mitigate these circumstances and, not-withstanding these limitations, each of the persons who is a director at the date of the approval of this report confirms that:

- so far as the directors are aware, there is no relevant audit information of which the Company's auditor is unaware; and
- the directors have taken all the steps that they ought to have taken as a director to make themselves aware of any relevant audit information and to establish that the Company's auditor is aware of that information.

This confirmation is given and should be interpreted in accordance with the provisions of s418 of the Companies Act 2006.

GOING CONCERN

The Company continues to receive the support of [update based on support letter] to allow it to meet its liabilities as they fall due and for the next 12 months from the date of this report. As a consequence, the directors believe that the company is well placed to manage its business risks successfully despite the current uncertain economic outlook.

After making enquiries, the directors have a reasonable expectation that the Company has adequate resources to continue in operational existence for the foreseeable future. Accordingly, they continue to adopt the going concern basis in preparing the annual report and accounts.

Commented [NC23]: misstatements?

*6*

**EXH 6952B.0008**

**AUTONOMY SYSTEMS LIMITED**

**DIRECTORS' REPORT**
**FOR THE PERIOD ENDED 31 OCTOBER 2011 (continued)**

POST BALANCE SHEET EVENTS

On 28 March 2012, the Directors of Autonomy Systems Limited declared an interim dividend of £191,508,000 (paid in USD at a rate of £1:USD1.5874) to Autonomy Corporation Limited.

**Commented [AM24]:** Confirm, and validate dividend comment.

On 25 April 2012, Autonomy Corporation Limited (formerly Autonomy Corporation plc) subscribed to 1 ordinary share in Autonomy Systems Limited at a premium equal to the face value of a promissory note between Autonomy Corporation Limited and Longsand Limited in return for transferring the promissory note to Autonomy Systems Limited.

Also on 25 April 2012, Autonomy Systems Limited subscribed to 1 ordinary share in Longsand Limited at a premium equal to the face value of the promissory note to settle the promissory note in full.

On 1 June 2013 the Company sold its trade and assets to Hewlett-Packard Limited, a fellow group undertaking, retaining only its research and development function.

As discussed in note 19, the Company booked a number of prior year adjustments in respect of the years ended 31 December 2009 and 31 December 2010. As a result of this the Company has submitted a total claim for overpayment of tax of £37,385,000 in December 2013 (£17,791,000 in respect of the tax return for the year ended 31 December 2009 and £19,594,000 in respect of the tax return for the year ended 31 December 2010). Based on further adjustments to the financial statements after the claim was submitted to HMRC the current best estimate of the revised claim that will be submitted to HMRC for over payment of tax is £38,435,000 (£18,696,000 in respect of the tax return for the year ended 31 December 2009 and £19,739,000 in respect of the tax return for the year ended 31 December 2010). At the date of signing the financial statements HMRC have not agreed the claim and therefore no benefit has been recognised due to the uncertainty regarding the final value of the claim.

AUDITORS

On 15 February 2013, Ernst and Young LLP were appointed as auditors of the Company.

Approved by the Board of Directors and signed on behalf of the Board

Christopher Yelland
Director

7

EXH 6952B.0009

**INDEPENDENT AUDITOR'S REPORT TO THE MEMBERS OF AUTONOMY SYSTEMS LIMITED**

The directors are responsible for preparing the Annual Report and the financial statements in accordance with applicable law and regulations.

> **Commented [NC25]:** Should this section be headed "Directors' responsibilities statement"?

Company law requires the directors to prepare financial statements for each financial year. Under that law the directors have elected to prepare the financial statements in accordance with United Kingdom Generally Accepted Accounting Practice (United Kingdom Accounting Standards and applicable law). Under Company law the directors must not approve the financial statements unless they are satisfied that they give a true and fair view of the state of affairs of the Company and of the profit or loss of the Company for that period. In preparing these financial statements, the directors are required to:

- select suitable accounting policies and then apply them consistently;

- make judgments and accounting estimates that are reasonable and prudent;

- state whether applicable UK Accounting Standards have been followed, subject to any material departures disclosed and explained in the financial statements; and

- prepare the financial statements on the going concern basis unless it is inappropriate to presume that the Company will continue in business.

The directors are responsible for keeping adequate accounting records that are sufficient to show and explain the Company's transactions and disclose with reasonable accuracy at any time the financial position of the Company and enable them to ensure that the financial statements comply with the Companies Act 2006. They are also responsible for safeguarding the assets of the Company and hence for taking reasonable steps for the prevention and detection of fraud and other irregularities.

EXH 6952B.0010

## INDEPENDENT AUDITOR'S REPORT TO THE MEMBERS OF AUTONOMY SYSTEMS LIMITED

We have audited the financial statements of Autonomy Systems Limited for the period ended 31 October 2011 which comprise the Profit and Loss Account, the Balance Sheet, the Statement of Total Recognised Gains and Losses, and the related notes 1 to 23. The financial reporting framework that has been applied in their preparation is applicable law and United Kingdom Accounting Standards (United Kingdom Generally Accepted Accounting Practice).

This report is made solely to the company's members, as a body, in accordance with Chapter 3 of Part 16 of the Companies Act 2006. Our audit work has been undertaken so that we might state to the company's members those matters we are required to state to them in an auditor's report and for no other purpose. To the fullest extent permitted by law, we do not accept or assume responsibility to anyone other than the company and the company's members as a body, for our audit work, for this report, or for the opinions we have formed.

### Respective responsibilities of directors and auditor

As explained more fully in the Directors' Responsibilities Statement set out *[on page ...]*, the directors are responsible for the preparation of the financial statements and for being satisfied that they give a true and fair view.
Our responsibility is to audit and express an opinion on the financial statements in accordance with applicable law and International Standards on Auditing (UK and Ireland). Those standards require us to comply with the Auditing Practices Board's Ethical Standards for Auditors.

### Scope of the audit of the financial statements

An audit involves obtaining evidence about the amounts and disclosures in the financial statements sufficient to give reasonable assurance that the financial statements are free from material misstatement, whether caused by fraud or error. This includes an assessment of: whether the accounting policies are appropriate to the company's circumstances and have been consistently applied and adequately disclosed; the reasonableness of significant accounting estimates made by the directors; and the overall presentation of the financial statements. In addition, we read all the financial and non-financial information in the **Directors' Report** to identify material inconsistencies with the audited financial statements. If we become aware of any apparent material misstatements or inconsistencies we consider the implications for our report.

### Basis for disclaimer of opinion

As disclosed in the Directors' Report and note 1 the work that the Directors were able to undertake in closing the books and preparing the financial statements was limited in certain cases by the information that was available to them. The Directors have made certain judgements related to the completeness, timing and classification of transactions relating to expenses. The Directors have been unable to provide to us sufficient and appropriate audit evidence to enable us to form an opinion as to the timing and classification of expenses and the completeness of liabilities as at [1 January 2010], 31 December 2010 and 31 October 2011. If additional evidence was available to the Directors, including further information from the ongoing investigations further adjustments might be required to the operating expenses and related tax amounts reported in the income statements and to the liabilities and the retained earnings positions.

Further, as also disclosed in note 1 to the financial statements there are limitations over the quality and completeness of the documentation available to support intercompany transactions and balances reported in the financial statements. The Directors have made certain judgements related to underlying transactions, including those relating to the timing and classification of transactions, the application of appropriate foreign exchange rates and the impact of the resulting retranslation of balances at period ends. The Directors have been unable to provide to us sufficient and appropriate audit evidence to enable us to form an opinion as the whether the opening balances and the classification and measurement of [non-revenue related] income statement transactions are appropriately recorded. If different judgements were applied the income statement effect of the transactions and any foreign exchange impact would be different and would lead to a consequential change in the opening intercompany balances taxation and retained earnings positions.

*9*

**Commented [DH26]:** Wording to be checked for alignment with the latest draft accounts.

**Commented [NC27]:** Is this still the case after the additional email review work conducted at EY's request?

## INDEPENDENT AUDITOR'S REPORT TO THE MEMBERS OF AUTONOMY SYSTEMS LIMITED

As disclosed in the Directors' Report and note 1 to the financial statements as a result of the issues identified in the investigations the Directors have adjusted the results of fellow subsidiaries which impacts [the royalty and profits sharing] income earned by the Company. These adjustments relate to the timing of revenues recognised and costs expensed in those fellow subsidiaries. The Directors have been unable to provide to us sufficient and appropriate audit evidence to enable us to form an opinion as to whether [the royalty and profits sharing] amounts [of £xx,xxx,xxx are complete and recorded in the correct periods. If further information was available [the royalty and profits sharing] amounts might be different and would lead to a consequential change in the opening intercompany balances, taxation and retained earnings positions.

**Disclaimer of opinion**

Because of the significance of the matters described in the basis for disclaimer of opinion paragraph, we have not been able to obtain sufficient appropriate audit evidence to provide a basis for an audit opinion. Accordingly, we do not express an opinion on the financial statements.

**Emphasis of matter**

*Investigation progress*
In forming our opinion on the financial statements, which is not modified in this respect, we have considered the adequacy of the disclosures made in the Basis of preparation note related to the ongoing investigations and potential actions, and any fines, penalties or claims that may arise. It is not possible at this time to determine either whether any actions will be taken against the company or to estimate the quantum of any fines, penalties or claims were the company to be subject to such actions and accordingly no provision has been made for them in these accounts.

**Opinion on other matters prescribed by the Companies Act 2006**

In our opinion the information given in the Directors' Report for the financial year for which the financial statements are prepared is consistent with the financial statements.

**Matters on which we are required to report by exception**

In respect of the limitations on our work relating to the matters referred to in the Disclaimer of opinion paragraph above:

- we have not obtained all the information and explanations that we considered necessary for the purpose of our audit, and

- we were unable to determine whether adequate accounting records had been kept.

We have nothing to report in respect of the following matters where the Companies Act 2006 requires us to report to you if, in our opinion:

- returns adequate for our audit have not been received from branches not visited by us; or

- the financial statements are not in agreement with the accounting records and returns; or

- certain disclosures of directors' remuneration specified by law are not made

for and on behalf of Ernst & Young LLP, Statutory Auditor
Reading

*10*

**Commented [NC28]:** Are EY not comfortable in respect of the revenue adjustments?  It would be helpful if they were when describing the rebasing exercise.

Could the narrative earlier in the report state that all identified revenue misstatements have been disclosed to EY and there is no difference of view as to the accounting treatment?

**Commented [NC29]:** EY are proposing to give a disclaimer of opinion – i.e. to give no opinion on the financial statements. Given that the financial statements reflect (subject to this being only one entity and to factors including the effect of different periods etc) the adjustments in the rebasing exercise, and hence the quantification of loss, it would seem preferable to have had the least qualification possible.
This may not be something on which there is scope for movement given the significance of the issues, but it is noted as we are not clear on the extent to which it has been explored.  A disclaimer that is in part in relation to uncertainties regarding revenue is particularly unhelpful.

**Commented [DH30]:** Check against revised note wording in the accounts

**Commented [331]:** What explanations have not been obtained?

**Commented [MB32]:** To determine final appropriate wording.

EXH 6952B.0012

**AUTONOMY SYSTEMS LIMITED**

**PROFIT AND LOSS ACCOUNT**
**10 months ended 31 October 2011**

| | Note | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|---|
| **TURNOVER** | 2 | 73,482 | 81,293 |
| Cost of sales | | (19,582) | (5,349) |
| **GROSS PROFIT** | | 53,900 | 75,944 |
| Distribution expenses | | (23,496) | (20,893) |
| Administrative expenses | | (18,699) | (12,071) |
| Amounts written off investments | | - | (200) |
| **OPERATING PROFIT** | 3 | 11,705 | 42,780 |
| Other income | | 209 | 277 |
| Interest receivable and similar income | 4 | 95 | 121 |
| Interest payable and similar charges | 5 | (430) | (68) |
| **PROFIT ON ORDINARY ACTIVITIES BEFORE TAXATION** | | 11,579 | 43,110 |
| Tax on profit on ordinary activities | 7 | 576 | (23,484) |
| **PROFIT FOR THE FINANCIAL PERIOD** | 16 | 12,155 | 19,626 |

All results are derived from continuing activities.

There are no material differences between the profit on ordinary activities before taxation and the retained profit for the financial periods stated above and their historical cost equivalents.

EXH 6952B.0013

**AUTONOMY SYSTEMS LIMITED**

**STATEMENT OF TOTAL RECOGNISED GAINS AND LOSSES**
**10 months ended 31 October 2011**

| | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|
| Profit for the financial period | 12,155 | 19,626 |
| TOTAL RECOGNISED PROFIT RELATING TO THE PERIOD | 12,155 | 19,626 |
| Prior period adjustment (as explained in note 19) | (168,673) | |
| TOTAL LOSSES RECOGNISED SINCE LAST REPORT | (156,518) | |

EXH 6952B.0014

**AUTONOMY SYSTEMS LIMITED**

**BALANCE SHEET**
**31 October 2011**

| | Note | 31 October 2011 £'000 | 31 December 2010 £'000 (restated) |
|---|---|---|---|
| **FIXED ASSETS** | | | |
| Software licenses | 9 | 8 | - |
| Goodwill | 10 | 15,480 | 19,160 |
| Intangible assets | | 15,488 | 19,160 |
| Tangible assets | 11 | 3,575 | 1,613 |
| Investments | 12 | 1,573 | 46 |
| | | 20,636 | 20,819 |
| **CURRENT ASSETS** | | | |
| Stocks | | - | 38 |
| Debtors | 13 | 215,310 | 148,241 |
| Cash at bank and in hand and short term deposits (including restricted cash of £1,920,000 at 31 October 2011 (31 December 2010: £nil)). | | 4,353 | 24,775 |
| | | 219,663 | 173,054 |
| **CREDITORS: amounts falling due within one year** | 14 | (93,518) | (64,358) |
| **NET CURRENT ASSETS** | | 126,145 | 108,696 |
| **NET ASSETS** | | 146,781 | 129,515 |
| **CAPITAL AND RESERVES** | | | |
| Called up share capital | 15 | - | - |
| Profit and loss account | 16 | 146,781 | 129,515 |
| **TOTAL SHAREHOLDER'S FUNDS** | 16 | 146,781 | 129,515 |

The financial statements on pages 11 to 37 were approved by the board of directors on …………………..…….  and signed on its behalf by:


Christopher Yelland
Director
Company registration number: 03063054

EXH 6952B.0015

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

1. **ACCOUNTING POLICIES**

The following accounting policies have been applied consistently in relation to the financial statements, except as noted below.

**Basis of preparation**
The financial statements have been prepared under the historical cost convention and in accordance with the Companies Act 2006 and applicable UK accounting standards.

The Company is exempt by virtue of s400 of the Companies Act 2006 from the requirement to prepare group financial statements. These financial statements present information about the Company as an individual undertaking and not about its group.

In preparing the financial statements for the current period, the Company has restated the comparative figures for the following:

- the correction of fundamental errors. Adjustments have been made to correct revenue recognition errors as well as cost recognition errors. In addition corrections have been recorded for the revaluation of balances denominated in foreign currency and to correct the legal ownership of an investment.

> **Commented [NC33]:** See previous comments concerning whether at least some of these descriptions should be "misstatements" or similar rather than errors.

- a change in accounting policy in relation to research and development. The Company has historically capitalised development costs on the balance sheet and amortised these costs through the profit and loss account over the life of the product to which they related. During 2011, after the Company became a subsidiary of Hewlett-Packard, this policy was amended to expense all research and development expenditure as incurred to the profit and loss account to align the accounting policies of Autonomy Systems Limited with those of other entities in the Hewlett-Packard Group reporting under UK GAAP.

- a change in accounting policy with regard to cost classification, between cost of sales, administration expenses and distribution expenses. This change has been made in order to present financial statements that more accurately reflect the definitions of these costs.

> **Commented [334]:** Is this in any way related to hardware? It would be unhelpful if it could be argued that hardware costs have been dealt with by a change of policy.
>
> Is it the case that the prior accounting policy allowed an accounting treatment that was inconsistent with UK GAAP and the wording has therefore been amended?

The impact of these changes is described in note 19.

*On-going investigations*

The Company remains subject to the on-going internal and external investigations as described in the Directors' Report.

The extensive investigations undertaken by Hewlett-Packard, and by the Directors, into the past accounting practices of the group, have revealed pervasive errors in the previously issued financial statements. These have required all aspects of the accounting to be re-assessed. The errors found as a result of these investigations have led to restatements to the previously issued financial statements of the Company for the year ending 31 December 2010, principally relating to the recognition of revenue and costs, as well as to the accounting for investments and to correct the balance sheet for balances denominated in foreign currency not re-valued at the year end.

> **Commented [NC35]:** "misstatements" rather than "errors" (also applies below but not repeated)?
>
> **Commented [NC36]:** All?

Given the volume and magnitude of the above errors, it is possible that further errors may remain undetected. The investigations, including those of the U.K. Serious Fraud Office, the U.S. Department of Justice and the SEC, are on-going and it is possible that further matters may be identified that could impact the reported financial performance and position of the Company, including previously reported financial statements. The Company's earnings and financial position may be further impacted by any such additional errors found in the accounting of fellow group undertakings including in intragroup transactions, especially as the Company earns a significant element of revenue from the earnings of fellow group undertakings. As a result of the investigations by Hewlett-Packard the earnings of fellow group undertakings have themselves been subject to substantial corrections for the current and prior periods compared to any previously prepared financial statements. These restatements are for similar reasons to the Company, principally relating to the overstatement of revenues in Autonomy's U.S. operations.

> **Commented [NC37]:** "financial statements" not "earnings"?
>
> **Commented [338]:** See comment above

EXH 6952B.0016

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

1.    **ACCOUNTING POLICIES (continued)**

*On-going investigations (continued)*

The outcome of ongoing investigations cannot be determined and it should be noted that the investigations could result in fines, other penalties or claims being imposed on or asserted against the Company. It is not possible at this time to estimate the outcome of any such actions taken against the Company.

*Intercompany balances*

Although the intercompany balances at 1 January 2010 reconcile to their counterparties, it has not been possible to validate all underlying transactions within these balances which originated from prior accounting periods. There is therefore a risk that further undetected errors remain present in the balances at 1 January 2010. This represents an uncertainty over the accuracy of the opening intercompany balances and any impacts that such inaccuracies may have on the reported financials in subsequent years. The Directors have undertaken work to ensure that the balances with other Autonomy entities are agreed by the relevant counterparty at 31 October 2011, the balance sheet date.

**Going concern**
The financial statements are prepared on a going concern basis which the directors believe to be appropriate for the reasons set out in the Directors' Report.

**Cash flow statement**
In accordance with Financial Reporting Standard 1 (revised), Autonomy Systems Limited has not published a cash flow statement as its ultimate parent Company, Hewlett-Packard Company, which is incorporated in the United States of America, has published consolidated financial statements.

**Turnover**
The Company earns revenue from the sale of software and related services. This revenue can be earned through direct sales or indirectly through sales via fellow sales subsidiaries. During 2011 there has been no change to the company's turnover recognition policies in any respect. To assist the reader in understanding the company's business the accounting policy set forth below has been reviewed and clarified, but does not represent any change in the company's accounting policy for the recognition or measurement of turnover.

Turnover is measured at the fair value of the consideration received or receivable and represents amounts receivable for goods in the normal course of business, net of discounts and sales taxes.

i) Sale of goods

The company sells its products as licenses to resellers, OEMs and direct to end-users together with associated support and maintenance. In addition, the company also sells some of its products on a subscription basis.

Turnover from software license agreements is recognised where there is persuasive evidence of an agreement with a customer (contract and/or binding purchase order), delivery of the software has taken place, collectability is probable and the fee has been contractually agreed and is not subject to adjustment or refund (i.e is fixed and determinable). If an acceptance period is required, turnover is recognised upon the earlier of customer acceptance or the expiration of the acceptance period. If significant post-delivery obligations exist or if a sale is subject to customer acceptance, turnover is deferred until no significant obligations remain or acceptance has occurred.

The company enters into OEM and reseller arrangements that typically provide for fees payable to the company based on licensing of the company's software to third party customers. Sales are generally recognised as reported by the OEM or reseller and is based on the amount of product sold. Sales are recognised if all products subject to resale are delivered in the current period, no right of return policy exists, collection is probable and the fee is fixed and determinable.

> **Commented [NC39]:** HP was at one stage uncomfortable with the reference to penalties – is it now accepted?

> **Commented [AM40]:** Consider reverting to prior year wording.

> **Commented [NC41]:** Points to consider:
>
> Should there be a revenue recognition policy in respect of hardware sales?  I understand the level of such sales is small in ASL but is it worth including a policy irrespective of this given the background?  Also is there transfer pricing income in respect of hardware sales in Autonomy Inc?

> **Commented [NC42]:** The wording on sale of goods looks very similar to that in the 2010 group accounts – is it adequate / accurate?  If in future it becomes an issue that the wording in the 2010 accounts was not appropriate it will be unhelpful to have repeated it.  A couple of specific queries are noted below.

> **Commented [NC43]:** Is this true?  Clearly it was not on the reseller transactions which were adjusted, but is it generally so on other reseller transactions?  It did not appear to be the case on the OEM transactions reviewed.

> **Commented [NC44]:** Delivered to the reseller?

> **Commented [345]:** In isolation, this sentence appears to replicate the prior paragraph.

EXH 6952B.0017

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

1.    ACCOUNTING POLICIES (continued)

Turnover (continued)
ii) Support and Maintenance

Turnover from customer support and maintenance is recognised rateably over the term of the support period. If customer support and maintenance is included free or at a discount in a multiple element arrangement, these amounts are allocated out of the license fee at their fair market value based on the value established by independent sale of the customer support and maintenance to customers. Support and maintenance consists primarily of the supply of products, such as patches and updates, to the standard software.

iii) Rendering of services

Consulting and training turnover is included within rendering of services.

Turnover from consulting and training services is recognised as services are performed. If a transaction includes both license and service elements, license fee turnover is recognised upon shipment of the software, provided services do not include significant customisation or modification of the base product and the payment terms for licenses are not subject to acceptance criteria and the fair value of the service element can be determined. In cases where license fee payments are contingent upon the acceptance of services, turnover from both the license and the service elements is deferred until the acceptance criteria are met.

If services include significant customisation or modification, then revenue is recognised as the services are performed and stage of completion is determined by reference to the costs incurred as a proportion of the total estimated costs of the service project. If a contract cannot be reliably estimated, revenue is recognised only to the extent that costs have been incurred. Provision is made as soon as a loss is foreseen.

*Managed Service Turnover*

Turnover for managed services is recognised as the services are delivered. The services may comprise of a combination of hosted services and software as part of a multiple element arrangement, as described below, and where applicable an assessment is performed to determine whether software elements can be separated from on-going service elements. In the situation where the elements cannot be separated, the license turnover is recognised rateably over the service period.

*Multiple element arrangements*

The Company evaluates the elements of a transaction to identify the appropriate accounting elements so that revenue recognition criteria may be applied to separately identifiable elements of a single transaction, and when appropriate, the recognition criteria may be applied to two or more transactions when their economic substance cannot be understood individually.

For those transactions with multiple elements, if the Company has determined that the undelivered elements of that contract have fair value, the Company records the revenue associated with the delivered elements (generally the software license) at an amount that represents the fee for the transaction less the fair value of any undelivered element and defers the fair value of undelivered elements of the transaction (generally the support and maintenance and services).

*Revenues from fellow group undertakings*

The Company earns income from fellow group undertakings where these entities' earnings are derived from sales incorporating intellectual property owned or licensed by the Company. This income is recognised as revenue when earned by the fellow group undertaking.

**Commented [AM46]:** Consider reverting to prior year wording.

**Commented [NC47]:** Would it be useful to add something specifically on support carve outs?

**Commented [NC48]:** Is this known to be the case, compared to telephone support for example?

**Commented [NC49]:** Would it be useful to have a policy specifically on hosting arrangements (even if the income is via transfer pricing)?
Not sure for example whether the inability of a customer to implement Digital Safe independently is covered by the references to "significant customisation or modification"?
There is a reference to fair value which may cover e-discovery, but its significance is not apparent from the note.

**Commented [NC50]:** Contract outcome?

**Commented [351]:** ?

**Commented [352]:** Separated in what sense?

**Commented [NC53]:** Is this consistent with the treatment of Digital Safe on premise, where I understand the license revenue is taken up front but there is a managed services element? Can the elements be said to be capable of being separated there?

**Commented [NC54]:** Does this income include hardware sales? If so that does not seem to fit with the reference to intellectual property – suggest a specific reference to hardware sales is added.

EXH 6952B.0018

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

1.    ACCOUNTING POLICIES (continued)

**Intangible fixed assets – Software Licenses**
Intangible fixed assets are capitalised at cost.

Amortisation is calculated to write off the cost of an asset on a straight line basis, less its estimated residual value, over the useful economic life of that asset as follows:

Software licenses           - 3 years

The carrying value of intangible fixed assets is reviewed for impairment when events or changes in circumstances indicate the carrying value may not be recoverable.

**Intangible fixed assets - Goodwill**
Purchased goodwill (representing the excess of the fair value of the consideration given over the fair value of the separable net assets acquired) arising on business combinations is capitalised and amortised over its useful economic life on a straight-line basis. The directors estimate the useful economic life of the goodwill relating to each business combination on an individual basis.

Amortisation is calculated to write off the cost of an asset, less its estimated residual value, over the useful economic life of that asset as determined by the Directors.

During the period the estimated useful life of the asset was reduced from 15 to 5 years as the Directors consider this a better estimate of the period over which the Company will derive economic benefit. This has been accounted for as a change in accounting estimate and resulted in an additional £2,305,000 amortisation expense being recorded in the current period.

**Tangible fixed assets**
All tangible fixed assets are originally recorded at cost. Cost includes the original purchase price of the asset and the costs attributable to bringing the asset to its working condition for its intended use.

Depreciation is calculated to write off the cost of an asset on a straight line basis, less its estimated residual value, over the useful economic life of that asset as follows:

| | |
|---|---|
| Leasehold improvements | - period of lease |
| Motor vehicles | - 3 years |
| Computer equipment | - 3 years |
| Fixtures, fittings and equipment | - 5 years |

The carrying value of tangible fixed assets is reviewed for impairment when events or changes in circumstances indicate the carrying value may not be recoverable.

**Fixed asset investments**
Investments are included at cost, less any provision for impairment.

The carrying value of investments is reviewed for impairment when events or changes in circumstances indicate the carrying value may not be recoverable.

**Stocks**
Stocks are stated at the lower of cost and net realisable value.

**EXH 6952B.0019**

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

1.   **ACCOUNTING POLICIES (continued)**

**Taxation**
The charge for taxation is based on the profit for the period and takes into account taxation deferred because of timing differences between the treatment of certain items for taxation and accounting purposes.

Deferred tax is recognised without discounting in respect of all timing differences that have originated but not reversed at the balance sheet date where transactions or events that result in an obligation to pay more tax in future or a right to pay less tax in future have occurred at the balance sheet date. Timing differences are differences between the Company's taxable profits and its results as stated in the financial statements that arise from the inclusion of gains and losses in taxable profits in the periods different from those in which they are recognised in the financial statements.

A deferred tax asset is regarded as recoverable and therefore recognised only when, on the basis of all available evidence, it can be regarded as more likely than not that there will be suitable taxable profits from which the future reversal of the underlying timing differences can be deducted.

**Research and development**
Research and development expenditure is written off to the profit and loss account in the period in which it is incurred. This is a change in accounting policy from the prior year, for additional information see note 19.

**Leases**
Rentals payable on operating leases are charged to the profit and loss account on a straight line basis over the term of the lease.

**Foreign exchange**
Monetary assets and liabilities denominated in foreign currencies are translated into sterling at the rates of exchange ruling at the balance sheet date. Transactions in foreign currencies are translated into sterling at the rate of exchange ruling at the date of the transaction. Exchange differences are taken into account in arriving at operating profit.

**Pension costs**
The Company operates a defined contribution pension scheme.

The amount charged to the profit and loss account represents the contributions payable to the scheme in respect of the accounting period. Differences between contributions payable in the period and contributions actually paid are shown either as accruals or prepayments in the balance sheet.

**Share-based payments**
The Company's intermediate parent Company, Autonomy Corporation Ltd (formerly plc), issued equity-settled share-based payment awards to certain employees. The Company complies with FRS 20, "Share-based Payment", in these financial statements. In accordance with FRS 20, equity-settled share-based payments are measured at fair value at the date of grant. Fair value is measured by use of the Black-Scholes pricing model. The fair value determined at the grant date of the equity-settled share-based payments is expensed on a straight-line basis over the vesting period, based on an estimate of the number of shares that will eventually vest.

Where the terms of an equity-settled award are modified or a new award is designated as replacing a cancelled or settled award, the cost based on the original award terms continues to be recognised over the original vesting period. In addition, an expense is recognised over the remainder of the new vesting period for the incremental fair value of any modification, based on the difference between the fair value of the original award and the fair value of the modified award, both as measured on the date of the modification. No reduction is recognised if this difference is negative.

**EXH 6952B.0020**

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

1.    **ACCOUNTING POLICIES (continued)**

**Share-based payments (continued)**

Where an equity-settled award is cancelled, it is treated as if it had vested on the date of cancellation, and any cost not yet recognised in the profit and loss account for the award is expensed immediately. Any compensation paid up to the fair value of the award at the cancellation or settlement date is deducted from equity, with any excess over fair value expensed in the profit and loss account.

The Company has taken advantage of the transitional provisions of FRS 20 in respect of equity-settled awards so as to apply FRS 20 only to those equity-settled awards granted after 7 November 2002 that had not vested before 1 January 2006.

**Restricted cash**

The Company includes restricted cash within cash at bank and in hand. The restricted cash stems from obligations to hold monies in escrow as a result of it entering debt financing agreements on a number of specific trade receivable balances.

2.    **TURNOVER**

All turnover relates to one business segment, being the sale of software and related services, and originates in the United Kingdom. The split of turnover by geographical destination was as follows:

|  | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|
| United Kingdom | 59,646 | 34,143 |
| Rest of Europe | 6,963 | 38,452 |
| Rest of World | 6,873 | 8,698 |
|  | 73,482 | 81,293 |

**Commented [NC55]:** Isn't there a small amount of hardware revenue in ASL, and also transfer pricing income on hardware revenue in Autonomy Inc?  If so:

(1) Should that not be disclosed?

(2) Avoid descriptions that suggest all the revenue was from software sales (given the issue regarding prior "pure software" model descriptions).

**Commented [NC56]:** Is this correct in the case of transfer pricing income?

*19*

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

3.  OPERATING PROFIT

| | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|
| **Operating profit is stated after charging** | | |
| Depreciation of owned tangible fixed assets | 636 | 572 |
| Research and development | 6,313 | 6,118 |
| Amortisation of intangible fixed assets | 3,680 | 829 |
| Foreign exchange loss | 339 | 1,331 |
| Operating lease rentals (land and buildings) | 1,574 | 1,255 |
| Operating lease rentals (other) | 65 | 52 |

The auditor's remuneration for the period in respect of the Company was £1,612,000 (current auditor: £1,100,000, previous auditor £512,000). The auditor's remuneration for the year ended 31 December 2010 was £647,000 (current auditor £nil, previous auditor £647,000).

Non-audit fees for the period for tax compliance support and other compliance support were £147,000 (current auditor: £77,000, previous auditor £70,000). Non-audit fees for the year ended 31 December 2010 were £49,000 (current auditor: £nil, previous auditor £49,000).

Both auditor's remuneration and non-audit fees were borne by Autonomy Corporation Limited with no right of reimbursement.

4.  INTEREST RECEIVABLE AND SIMILAR INCOME

| | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 |
|---|---|---|
| Bank interest receivable and similar income | 95 | 121 |

5.  INTEREST PAYABLE AND SIMILAR CHARGES

| | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 |
|---|---|---|
| Bank interest payable and similar charges | 430 | 68 |

EXH 6952B.0022

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

6.     INFORMATION REGARDING DIRECTORS AND EMPLOYEES

The directors of the Company at the period end were also directors of other Autonomy Group companies and ceased being directors after the period end (new directors being appointed subsequent to period end). The total remuneration for the period paid to the directors prior to the acquisition by Hewlett-Packard was £10,981,000 and, pension contributions £14,000 (2010: remuneration £2,815,000 (restated), pensions £15,000), all of which was paid by Autonomy Systems Limited.

The number of directors to whom retirement benefits are accruing at the end of the period was 2 (2010: 2).

The number of directors who exercised share options during the period was 2 (2010: 2). No directors received shares in respect of qualifying services during this or the prior year. Share options were exercised through Autonomy Corporation Limited, the Company's immediate parent.

The current directors have concluded it is not practicable to apportion this amount between their services as directors of the Company and services as directors of the Autonomy Group companies.

The highest paid director received total remuneration for the period of £6,548,000 and, pension contributions of £8,000 (2010: remuneration £1,969,000 (restated), pensions £7,000).

> **Commented [NC57]:** Who were these amounts due to?
> Are the disclosures in the ACL accounts (and in the plc accounts in 2010) for the company not the group (as they are not of this scale)?

In respect of the highest paid director, pension contributions of £nil and bonuses of £127,000 were accrued at the period end (2010: pensions £7,000, bonuses £96,000).

The highest paid director exercised share options with a value of £5,583,000 (2010: £1,640,000) during the period.

|  | No. | No. |
|---|---|---|
| **The average monthly number of persons employed (including directors) by the Company during the period was as follows:** | | |
| Administrative | 67 | 47 |
| Software development | 81 | 120 |
| Sales and marketing | 106 | 60 |
| Customer delivery and support services | 58 | - |
| | 312 | 226 |

|  | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|
| **The costs incurred in respect of these employees were as follows:** | | |
| Wages and salaries | 17,264 | 13,215 |
| Social security costs | 1,846 | 1,405 |
| Pension costs | 118 | 124 |
| | 19,228 | 14,744 |
| Stock compensation charge (note 8) | 5,111 | 1,007 |
| | 24,339 | 15,751 |

EXH 6952B.0023

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
10 months ended 31 October 2011

7.    TAX ON PROFIT ON ORDINARY ACTIVITIES

|  | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|
| **Corporation tax** | | |
| United Kingdom corporation tax | (2,635) | 23,332 |
| Overseas Taxation | - | 87 |
| Adjustment in respect of prior years | 696 | 413 |
| Total current tax charge | (1,939) | 23,832 |
| **Deferred taxation** | | |
| Origination and reversal of timing differences | 1,308 | (200) |
| Derecognised during the period | 33 | - |
| Effect of changes in tax rates | 22 | - |
| Tax (credit)/charge on profit on ordinary activities | (576) | 23,632 |

The tax assessed on the profit on ordinary activities for the period is lower (2010: higher) than the standard rate of corporation tax in the UK of 26.6% (2010: 28%). The differences are reconciled below:

EXH 6952B.0024

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
10 months ended 31 October 2011

7.    TAX ON PROFIT ON ORDINARY ACTIVITIES (continued)

|  | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|
| Profit on ordinary activities before tax | 11,579 | 43,110 |
| | | |
| Tax on profit on ordinary activities at standard rate of corporation tax of 26.6% (year ended 31 December 2010: 28%) | 3,080 | 12,071 |
| | | |
| Factors affecting charge for the period: | | |
| Expenses disallowed and non-taxable income | 102 | (131) |
| Capital allowances in excess of depreciation | (21) | 68 |
| Other short term timing differences | 15 | - |
| Imputed interest on intercompany balances | 3,331 | - |
| Research and development tax credits | (1,711) | (2,225) |
| Gain on disposal of patents | 1,669 | - |
| Share option deduction in excess of P&L charge | (9,353) | (1,469) |
| Utilisation of brought forward tax losses | - | (78) |
| Unrelieved foreign tax credit carried forward | 36 | - |
| Group relief surrendered/(claimed) for nil payment | 349 | (4,037) |
| Impact of rate change on loss carry back claim | (132) | - |
| Adjustment in respect of prior years | 696 | 413 |
| Overseas Taxation | - | 87 |
| Tax benefit not recognised for prior year restatement | - | 19,133 |
| | | |
| Tax (credit)/charge for the period | (1,939) | 23,832 |

**Factors affecting prior tax charges**

As discussed in note 19, the Company booked a number of prior year adjustments in respect of the years ended 31 December 2009 and 31 December 2010. As a result of this the Company has submitted a total claim for overpayment of tax of £37,385,000 in December 2013 (£17,791,000 in respect of the tax return for the year ended 31 December 2009 and £19,594,000 in respect of the tax return for the year ended 31 December 2010). Based on further adjustments to the financial statements after the claim was submitted to HMRC the current best estimate of the revised claim that will be submitted to HMRC for over payment of tax is £38,435,000 (£18,696,000 in respect of the tax return for the year ended 31 December 2009 and £19,739,000 in respect of the tax return for the year ended 31 December 2010). At the date of signing the financial statements HMRC have not agreed the claim and therefore no benefit has been recognised due to the uncertainty regarding the final value of the claim.

The over payment of tax claim made in December 2013 includes additional group relief claims of £12,113,000 in respect of the year ended 31 December 2009 compared to the original tax return submitted and a £2,364,000 decrease for the year ended 31 December 2010. However, no tax benefit has been recognized for the additional group relief claim or prior year restatement. This is disclosed as the "tax benefit not recognised for prior year restatement" in the tax reconciliation above.

**Commented [CL58]:** Also in note 19

EXH 6952B.0025

AUTONOMY SYSTEMS LIMITED

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

7.    TAX ON PROFIT ON ORDINARY ACTIVITIES (continued)

**Factors affecting current and future tax charges**

In March 2011, the UK Government announced a reduction in the standard rate of UK corporation tax to 26% effective 1 April 2011. This rate reduction was substantively enacted in March 2011. Accordingly, the Company's loss for this accounting period is taxed at an effective rate of 26.6%. The 2011 budget also proposed a further reduction in the standard rate of corporation tax to 25% from 1 April 2012 and this was substantively enacted in July 2011.

In March 2012, the UK Government announced a reduction in the standard rate of UK corporation tax to 24% effective 1 April 2012 and to 23% effective 1 April 2013. These rate reductions became substantively enacted in March 2012 and July 2012 respectively. Further reductions in the main rate of corporation tax in the UK to 21% effective from 1 April 2014 and to 20% from 1 April 2015 were substantively enacted on 2 July 2013. These changes were not substantively enacted at the balance sheet date and therefore are not recognised in these financial statements.

**Deferred Tax**

The deferred tax provided for is £nil (2010: £1,363,000).  This comprises:

|  | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|
| Fixed asset timing differences | - | 192 |
| Other short term timing differences | - | 3 |
| Share based payments | - | 1,168 |
| At end of period | - | 1,363 |

EXH 6952B.0026

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
10 months ended 31 October 2011

7.    TAX ON PROFIT ON ORDINARY ACTIVITIES (continued)

The movement in the deferred tax asset comprises:

| | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|
| At beginning of period | 1,363 | 1,163 |
| Origination and reversal of timing differences | (1,308) | 200 |
| Derecognised during the period | (33) | - |
| Effect of changes in tax rates | (22) | - |
| At end of period | - | 1,363 |

The unrecognised deferred tax asset in the current period is £33,000 (2010: £nil (restated)).  This comprises:

| | 10 months ended 31 October 2011 £'000 | Year ended 31 December 2010 £'000 (restated) |
|---|---|---|
| Accelerated capital allowances | 16 | - |
| Other short term timing differences | 17 | - |
| | 33 | - |

Deferred tax has not been recognised on the grounds that it is not considered likely that the Company will make taxable profits in the future against which these timing differences could be reversed.

The impact of the rate reduction to 20% would be to reduce the unrecognised deferred tax asset by £7,000 to £26,000

**EXH 6952B.0027**

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

8.   SHARE BASED PAYMENTS

The Company's employees participated in an unapproved option plan, UK Discretionary Option Scheme 1996 (the "Autonomy Scheme") providing employees and executives with the opportunity to acquire a proprietary interest in Autonomy Corporation Limited (formerly Autonomy Corporation plc) as an incentive to attract and retain the services of employees.  Under the terms of the plan, options were granted with exercise prices not less than the fair market value of Autonomy Corporation Limited shares, became exercisable over vesting periods as established by the Board of Directors (generally three to four years), and generally expired seven years from the date of grant.  Vested options are forfeited following termination of employment. Options were valued using the Black-Scholes model. No performance conditions were included in the fair value calculations. The Autonomy Scheme options were all exercised upon acquisition of the Company by the Hewlett-Packard Company, resulting in an acceleration of the share based payment charge.

The following tables summarize options outstanding as at 31 October 2011 and 31 December 2010.

| | 31 October 2011 | | 31 December 2010 (restated) | |
|---|---|---|---|---|
| | Number | Weighted average exercise price (£) | Number | Weighted average exercise price (£) |
| Outstanding at beginning of period | 2,219,614 | 10.29 | 2,368,162 | 8.10 |
| Granted during the period | 848,878 | 15.08 | 548,824 | 14.94 |
| Exercised during the period | (3,009,950) | 11.49 | (658,079) | 6.49 |
| Transferred during period | (553) | 13.16 | (3,382) | 8.16 |
| Expired during the period | (57,989) | 14.22 | (35,911) | 12.61 |
| Outstanding at the end of the period | 0 | | 2,219,614 | 10.29 |
| Exercisable at the end of the period | 0 | | 1,328,045 | 8.19 |

The weighted average share price at the date of exercise for share options exercised during the period was £25.00 (2010:£17.01). There were no remaining options outstanding at 31 October 2011. The options outstanding at 31 December 2010 had a weighted average exercise price of £10.29 and a weighted average remaining contractual life of 4.8 years. The number of shares outstanding at the beginning of 2010 has been restated to include options which had previously been disclosed in other group entities.

The weighted average fair value of options granted in the period was £6.16 per option (2010: £5.02 per option). The assumptions for the Black-Scholes model are as follows:

| | 31 October 2011 | 31 December 2010 |
|---|---|---|
| Weighted average share price | £16.88 | £14.96 |
| Weighted average exercise price | £16.88 | £14.96 |
| Expected volatility | 51% | 46% |
| Expected life | 3 years | 3 years |
| Risk-free rate | 2.5% | 2.5% |
| Expected dividends | - | - |

Expected volatility was determined by calculating the historical volatility of the group's share price over the previous three years.  The expected life used in the model has been adjusted, based on management's best estimate, for the effects of non-transferability, exercise restrictions and behavioural considerations.

EXH 6952B.0028

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

8.   **SHARE BASED PAYMENTS (continued)**

Share option exercise prices were automatically adjusted to reflect the changes in Autonomy Corporation Limited's share capital structure arising in connection with the Company's December 2006 rights issue. The effect of the adjustment was to ensure that employees were not unfairly discriminated against as stakeholders following the dilution of Autonomy Corporation Limited's share price as a result of the rights issue. No fair value adjustments arose as a result of this transaction.

The Company recognised total expense of £5,111,000 (2010: £1,007,000) related to equity-settled share based payments in 2011.

9.   **INTANGIBLE FIXED ASSETS – SOFTWARE LICENSES**

| | Software licenses £'000 |
|---|---|
| **Cost** | |
| At 1 January 201 | 1,021 |
| Additions | 8 |
| Disposals | (1,021) |
| | |
| At 31 October 2011 | 8 |
| | |
| **Accumulated amortisation** | |
| At 1 January 2011 | 1,021 |
| Disposal | (1,021) |
| | |
| At 31 October 2011 | - |
| | |
| **Net book value** | |
| At 31 October 2011 | 8 |
| | |
| At 31 December 2010 | - |

The comparative information has been restated for a retrospective change in accounting policy to expense research and development expenditure to the profit and loss account as incurred. For additional information see note 19.

EXH 6952B.0029

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

10.   INTANGIBLE FIXED ASSETS - GOODWILL

|  | £'000 (restated) |
|---|---|
| **Cost** | |
| At 1 January 2011 and 31 October 2011 | 19,989 |
| **Accumulated amortisation** | |
| At 1 January 2011 | 829 |
| Charge for the period | 3,680 |
| At 31 October 2011 | 4,509 |
| **Net book value** | |
| At 31 October 2011 | 15,480 |
| At 31 December 2010 | 19,160 |

As per Note 1 the useful life of the goodwill has been amended from 15 to 5 years.

11.   TANGIBLE FIXED ASSETS

|  | Leasehold improvements £'000 | Motor vehicles £'000 | Computer equipment £'000 | Fixtures, fittings and equipment £'000 | Total £'000 |
|---|---|---|---|---|---|
| **Cost** | | | | | |
| At 1 January 2011 (restated) | - | 5 | 3,027 | 1,356 | 4,388 |
| Additions | 11 | - | 2,361 | 226 | 2,598 |
| Disposals | - | (5) | (1,866) | (104) | (1,975) |
| At 31 October 2011 | 11 | - | 3,522 | 1,478 | 5,011 |
| **Accumulated depreciation** | | | | | |
| At 1 January 2011 (restated) | - | 5 | 2,055 | 715 | 2,775 |
| Charge for the period | 1 | - | 487 | 148 | 636 |
| Disposals | - | (5) | (1,866) | (104) | (1,975) |
| At 31 October 2011 | 1 | - | 676 | 759 | 1,436 |
| **Net book value** | | | | | |
| At 31 October 2011 | 10 | - | 2,846 | 719 | 3,575 |
| At 31 December 2010 (restated) | - | - | 972 | 641 | 1,613 |

The brought forward cost and accumulated depreciation have been restated to correct for errors identified by the current directors during the accounting period ending 31 October 2011.

Commented [NC59]: "misstatements"? rather than errors?

*28*

**EXH 6952B.0030**

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

12.   FIXED ASSET INVESTMENTS

|  | 31 October 2011 £'000 | 31 December 2010 £'000 (restated) |
|---|---|---|
| Subsidiary undertakings | 1,573 | 43 |
| Other investments | - | 3 |
|  | 1,573 | 46 |

a) Investments in subsidiary undertakings

|  | 2011 £'000 | 2010 £'000 |
|---|---|---|
| Cost |  |  |
| At beginning of period | 43 | 43 |
| Additions | 1,530 | - |
| At end of period. | 1,573 | 43 |

On 28 September 2011, the Company sold intellectual property to Longsand Limited in exchange for the issue of 999 ordinary shares in Longsand Limited.

EXH 6952B.0031

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

12.   **FIXED ASSET INVESTMENTS (continued)**

On 15 May 2011 the Company acquired a 100% shareholding in the following Iron Mountain companies
- Iron Mountain GmbH (name changed to Autonomy Digital GmbH)
- Iron Mountain SARL (name changed to Autonomy Digital SARL)
- Iron Mountain Digital Limited (name changed to Autonomy Digital Limited)
- Iron Mountain Digital KK

The Company has direct investments in the following subsidiary undertakings:

| Name | Principal activity | Class of holding | Country of incorporation | Holding % |
|---|---|---|---|---|
| Autonomy Australia Pty | Software distribution | Ordinary | Australia | 100% |
| Autonomy Belgium BVBA | Software distribution | Ordinary | Belgium | 99% |
| Autonomy France Sarl | Software distribution | Ordinary | France | 100% |
| Autonomy Germany GmbH | Software distribution | Ordinary | Germany | 100% |
| Autonomy Italy SRL | Software distribution | Ordinary | Italy | 100% |
| Autonomy Netherlands BV | Software distribution | Ordinary | Netherlands | 100% |
| Autonomy Spain SL | Software distribution | Ordinary | Spain | 100% |
| Autonomy Systems Singapore Pte Ltd | Software distribution | Ordinary | Singapore | 100% |
| Autonomy Beijing | Software distribution | Ordinary | China | 100% |
| Iron Mountain Digital KK | Software archiving | Ordinary | Japan | 100% |
| Autonomy Digital GmbH | Software archiving | Ordinary | Germany | 100% |
| Autonomy Digital SARL | Software archiving | Ordinary | France | 100% |
| Autonomy Digital Limited | Software archiving | Ordinary | United Kingdom | 100% |
| Longsand Limited | Software development | Ordinary | United Kingdom | 100% |

**EXH 6952B.0032**

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

12.    FIXED ASSET INVESTMENTS (continued)

| | £'000 (restated) |
|---|---|
| b) Other investments - unlisted trade investments | |
| **Cost** | |
| At 1 January 2011 | 203 |
| Disposals | (203) |
| At 31 October 2011 | - |
| **Impairment** | |
| At 1 January 2011 | 200 |
| Written off | 3 |
| Disposals | (203) |
| At 31 October 2011 | - |
| **Net book value** | |
| At 31 October 2011 | - |
| At 31 December 2010 | 3 |

The disposal in the period to 31 October 2011 relates to an investment in Isabel Healthcare.

Prior year numbers have been restated to remove an investment of £2,607,000 in Realise Limited which had been recognised in the Company balance sheet. The current directors identified that this investment is actually owned by Autonomy Corporation Limited (the parent Company of Autonomy Systems Limited) and hence the investment has been recorded in the financial statements of Autonomy Corporation Limited.

13.    DEBTORS

| | 31 October 2011 £'000 | 31 December 2010 £'000 (restated) |
|---|---|---|
| Trade debtors | 36,020 | 24,701 |
| Amounts due from group companies | 159,599 | 108,356 |
| Corporation tax | 13,699 | - |
| Other debtors | 2,338 | 6,717 |
| Prepayments and accrued income | 3,654 | 7,104 |
| Deferred tax (note 7) | - | 1,363 |
| | 215,310 | 148,241 |

All debtors are due within one year at 31 October 2011 and 31 December 2010.

EXH 6952B.0033

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

14.   CREDITORS: AMOUNTS FALLING DUE WITHIN ONE YEAR

|  | 31 October 2011 £'000 | 31 December 2010 £'000 (restated) |
|---|---|---|
| Trade creditors | 5,461 | 4,141 |
| Amounts owed to group companies | 13,927 | 16,433 |
| Corporation tax | - | 5,924 |
| Taxation and social security | 22,493 | 1,232 |
| Other liabilities | 4,860 | 5,301 |
| Accruals and deferred income | 46,777 | 31,327 |
|  | 93,518 | 64,358 |

Included within other liabilities at 31 October 2011 are liabilities associated with debt financing arrangements of £4,690,000 (31 December 2010: £5,169,000).

**Commented [NC60]:** Were these previously on balance sheet?

15.   CALLED UP SHARE CAPITAL

|  | 31 October 2011 £ | 31 December 2010 £ |
|---|---|---|
| **Authorised, allotted, called up and fully paid** | | |
| 100 (2010:100) ordinary shares of £1 each | 100 | 100 |

16.   RECONCILIATION OF MOVEMENT IN SHAREHOLDER'S FUNDS

|  | Called up share capital £'000 | Profit and loss account £'000 | Total 2011 £'000 | Total 2010 £'000 |
|---|---|---|---|---|
| At beginning of period (restated – note 19) | - | 129,515 | 129,515 | 108,882 |
| Retained profit for the period | - | 12,155 | 12,155 | 19,626 |
| Stock compensation charge for the period | - | 5,111 | 5,111 | 1,007 |
| At end of period | - | 146,781 | 146,781 | 129,515 |

**EXH 6952B.0034**

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

17.   OPERATING LEASE COMMITMENTS

The Company had annual commitments under non-cancellable operating leases as follows:

| | Land and buildings | | Other | |
| | 31 October 2011 £'000 | 31 December 2010 £'000 (restated) | 31 October 2011 £'000 | 31 December 2010 £'000 (restated) |
|---|---|---|---|---|
| Leases which expire: | | | | |
| Within one year | 47 | 256 | 11 | 12 |
| Between two to five years | 1753 | 1,753 | 49 | 40 |
| After five years | - | - | - | 1 |
| | 1,800 | 2,009 | 60 | 53 |

18.   PENSION ARRANGEMENTS

The Company operates a defined contribution pension scheme for which the pension cost charge for the period amounted to £118,000 (year ended 31 December 2010: £124,000). At 31 October 2011 the Company had £59,000 accrued in respect of pension contributions (year ended 31 December 2010 £28,000).

19.   PRIOR PERIOD RESTATEMENT

*Fundamental errors*

As described in the Director's Report and as a result of the findings of an on-going internal investigation, Hewlett-Packard, the Company's ultimate parent, has provided information to the U.K. Serious Fraud Office, the U.S. Department of Justice and the SEC related to accounting improprieties, disclosure failures and misrepresentations in the wider Autonomy group, of which the Company is a subsidiary, that occurred prior to and in connection with Hewlett-Packard's acquisition of Autonomy. On 21 November 2012, representatives of the U.S. Department of Justice advised Hewlett-Packard that they had opened an investigation relating to Autonomy. On 6 February 2013, representatives of the U.K. Serious Fraud Office advised HP that they had also opened an investigation relating to Autonomy. Hewlett-Packard and the Company are cooperating with the three investigating agencies.

The extensive investigations undertaken by Hewlett-Packard, and by the Directors, into the past accounting practices of the group, have revealed pervasive errors in the previously issued financial statements.  These have required all aspects of the accounting to be re-assessed. The errors found as a result of these investigations have led to restatements to the previously issued financial statements of the Company for the year ending 31 December 2010, principally relating to the recognition of revenue and costs, as well as to the accounting for investments and to correct the balance sheet for balances denominated in foreign currency not re-valued at the year end.

Given the volume and magnitude of the above errors, it is possible that further errors may remain undetected. The investigations, including those of the U.K. Serious Fraud Office, the U.S. Department of Justice and the SEC, are on-going and it is possible that further matters may be identified that could impact the reported financial performance and position of the Company, including previously reported financial statements. The Company's earnings and financial position may be further impacted by any such additional errors found in the accounting of fellow group undertakings including in intragroup transactions, especially as the Company earns a significant element of revenue from the earnings of fellow group undertakings.

**Commented [NC61]:** "misstatements"? (also applies below)

**Commented [NC62]:** "all"?

EXH 6952B.0035

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

19.   **PRIOR PERIOD RESTATEMENT (continued)**

*Accounting policy changes*

During the period the Company changed its accounting policy in relation to research and development expenditure. The Company has historically capitalised development costs on the balance sheet and amortised these costs through the profit and loss account over the life of the product to which they related. During 2011, after the Company became a subsidiary of Hewlett-Packard, this policy was amended to expense all research and development expenditure as incurred to the profit and loss account to align the accounting policies of Autonomy Systems Limited with that of other Hewlett-Packard Companies reporting under UK GAAP. This is considered to be a change in accounting policy to a more appropriate methodology and therefore the comparatives have been restated.

Current period profit before tax is reduced by £13,897,000 as a result of the accounting policy change.

The Company has also restated prior period costs due to a change in accounting policy with regard to cost classification, between cost of sales, administration expenses and distribution expenses. This change has been made in order to present financial statements that more accurately reflect the definitions of these costs. This change has no impact on previously reported net profit or reserves.

The company also conformed the presentation of the stock compensation reserve to reclassify the amount against retained earnings. This change has no impact on previously reported net profit or reserves.

Summary impact on the 2010 Profit & Loss account and Balance Sheet:

| | Profit for the year £'000 | Shareholder funds / net assets £'000 |
|---|---|---|
| As previously reported – 31 December 2010 | 105,747 | 298,188 |
| Impact of 2009 restatements (per table below) | - | (82,552) |
| | | |
| Correction of fundamental errors: | | |
| Revenue related errors (Note i) | | |
| - Impact via direct sales | (19,698) | (19,698) |
| - Impact via transfer pricing revenue | (50,945) | (50,945) |
| Cost recognition errors (Note ii) | (2,369) | (2,369) |
| Transfer of investments incorrectly recorded in balance sheet (Note iii) | - | - |
| Revaluation of balances denominated in foreign currencies (Note iv) | 344 | 344 |
| | (72,668) | (72,668) |
| | | |
| Accounting policy changes: | | |
| Change in research and development accounting policy | (19,806) | (19,806) |
| Deferred tax impact of change in research and development accounting policy (note v) | 6,353 | 6,353 |
| | (13,453) | (13,453) |
| | | |
| As restated – 31 December 2010 | 19,626 | 129,515 |

**Commented [NC63]:** How is cost of sales defined for these purposes?  Is there a definition of sales and marketing costs?  Are those definitions consistent with the inclusion of all hardware cost (including in other entities i.e. Autonomy Inc) in cost of sales?

**Commented [NC64]:** Misstatements? (also applies below)

34

EXH 6952B.0036

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

19.   **PRIOR PERIOD RESTATEMENT (continued)**

Summary impact on brought forward reserves at 1 January 2010:

|  | Retained earnings £'000 | Shareholder funds / net assets £'000 |
|---|---|---|
| As previously reported – 31 December 2009 | 188,010 | 191,434 |
| | | |
| Correction of fundamental errors: | | |
| Revenue related errors (Note i) | | |
|   -  Impact via direct sales | (7,893) | (7,893) |
|   -  Impact via transfer pricing revenue | (72,366) | (72,366) |
| Cost recognition errors (Note ii) | (6,234) | (6,234) |
| Revaluation of balances denominated in foreign currencies (Note iv) | 6,360 | 6,360 |
| | | |
| | (80,133) | (80,133) |
| | | |
| Accounting policy changes: | | |
| Impact of change in research and development accounting policy | (2,419) | (2,419) |
| Stock compensation reserve reclassified to retained earnings | 3,424 | - |
| | 1,005 | (2,419) |
| | | |
| As restated – 31 December 2009 | 108,882 | 108,882 |

EXH 6952B.0037

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

19.   PRIOR PERIOD RESTATEMENT (continued)

*Notes:*

(i) Pervasive errors have been identified and corrected related to the sale of software and the recognition of associated costs.

Revenue has been reversed or deferred to a later period where review of the transactions indicated that the risks and rewards of ownership had not transferred at the point when revenue had previously been recognised. The causes of these adjustments to previously recorded revenue include: sales where other collectability issues existed at the time of initial recognition of revenue: barter type transactions where an element of the transaction did not have economic substance or for which a fair value could not be reliably determined: services transactions where the arrangement required significant customisation or for which costs to complete could not be reliably estimated: and managed services arrangements where multiple element accounting was applied despite the resultant elements either having no separate economic substance or for which a reliable fair value was not determined for the undelivered elements.

These adjustments impact the financial statements both though direct sales made by the Company to third parties and via similar mis-statements in fellow group undertakings which resulted in erroneous transfer pricing revenue recorded by the Company. Errors in the proper application of the transfer pricing agreements between the Company and its fellow group undertakings have also been corrected.

(ii) Cost recognition adjustments relating to trade expenses and employee related expenses, principally commissions, bonuses, employee expenses and vacation accruals have been identified, resulting in restatements at 31 December 2010 and 31 December 2009 to reflect correct expense recognition at the appropriate balance sheet date.

(iii) As per Note 12, prior year numbers have been restated to remove the investment of £2,607,000 in Realise Limited which had been recognised on the Company balance sheet. The current directors identified that this investment is actually owned by Autonomy Corporation Limited (the parent Company of Autonomy Systems Limited) and an adjustment has been included to correctly record the investment within the financial statements of Autonomy Corporation Limited.

(iv) Monetary assets and liabilities denominated in foreign currencies had not been correctly re-valued at the balance sheet date in previous financial statements. The prior year adjustment reflects the retranslation of the balances into sterling at the rates of exchange at 31 December 2010.

(v) As a result of the change in accounting policy in relation to capitalising research and development costs, the Company has de-recognised an associated deferred tax liability. Furthermore, as a result of the fundamental errors identified, the Company has submitted a total claim for overpayment of tax of £37,385,000 in December 2013 (£17,791,000 in respect of the tax return for the year ended 31 December 2009 and £19,594,000 in respect of the tax return for the year ended 31 December 2010). Based on further adjustments to the financial statements after the claim was submitted to HMRC the current best estimate of the revised claim that will be submitted to HMRC for over payment of tax is £38,435,000 (£18,696,000 in respect of the tax return for the year ended 31 December 2009 and £19,739,000 in respect of the tax return for the year ended 31 December 2010). At the date of signing the financial statements HMRC have not agreed the claim and therefore no benefit has been recognised due to the uncertainty regarding the final value of the claim.

20.   RELATED PARTY TRANSACTIONS

The Company has taken advantage of the exemption available to wholly owned subsidiary undertakings under Financial Reporting Standard 8 ("Related Party Transactions"), and accordingly has not provided details of its transactions with other wholly owned entities forming part of the Hewlett-Packard Company group. There are no further related party transactions requiring disclosure.

**Commented [365]:** Is this a reference to ASL or to the Group? Do all of the following categories apply to ASL?

**Commented [NC66]:** Does "sale of software" cover all the categories? Could broaden to "recognition of revenue". Eg for solution deliverables the issue is delivery of the solution (although the error was typically booking the sale of software up front)?

**Commented [NC67]:** This is only one of the rev rec criteria – others were also not met – managerial involvement / effective control, amount can be measured reliably, probable that economic benefits will flow to the entity.

**Commented [NC68]:** Does this adequately cover (although it says "include" so does not need to be comprehensive):
- accelerated VAR deals
- round trip transactions (which I think are different to "barter type transactions", although the line between the two may be clear)?
- non standard warranty
- support carve out

**Commented [NC69]:** "delete "other"?

**Commented [NC70]:** "an element", or just the transaction?

**Commented [371]:** Had not been and could not now be?

**Commented [NC72]:** Would something like 'delivery of solutions' work better – services implies more of an ongoing service?

**Commented [NC73]:** And cannot now be determined, or is the point only that it was not determined at the time and that alone requires adjustment?

**Commented [NC74]:** Does this relate to inter-company balances only or more generally? If the latter has it been adequately considered for rebasing purposes?

**EXH 6952B.0038**

**AUTONOMY SYSTEMS LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**10 months ended 31 October 2011**

21. **CONTINGENT LIABILITIES**

In relation to accounting improprieties, disclosure failures and misrepresentations at the wider Autonomy group that occurred prior to and in connection with Hewlett-Packard's acquisition of Autonomy, Autonomy is subject to on-going internal and external investigations in the United States and United Kingdom, as described in the Directors Report. Autonomy is co-operating with the various investigations. The outcome of these investigations cannot be determined and it should be noted that the investigations could result in fines, other penalties or claims being imposed on or asserted against the Company. It is not possible at this time to estimate the outcome of any such actions taken against the Company.

> **Commented [NC75]:** As noted above, HP was at one stage concerned about whether this form of note was unhelpful – has it been concluded that it is necessary / appropriate?

22. **ULTIMATE PARENT COMPANY**

The directors regard Hewlett-Packard Company, a corporation registered in the United States of America, as the ultimate parent Company and controlling party of the Company as at the balance sheet date.  The directors regard Autonomy Corporation Limited (formerly Autonomy Corporation plc) as the ultimate parent Company and controlling party of the Company until 3 October 2011 when the Autonomy Group was acquired by Hewlett-Packard Company. Autonomy Corporation Limited (formerly Autonomy Corporation plc) is the immediate parent Company as of period end.

Hewlett-Packard Company is the parent Company of the largest and smallest group for which the group accounts are drawn up. Copies of the group financial statements of Hewlett-Packard Company can be obtained from 3000 Hanover Street, Palo Alto, California, USA.

23. **POST BALANCE SHEET EVENTS**

On 28 March 2012, the Directors of Autonomy Systems Limited declared an interim dividend of £191,508,000 (paid in USD at a rate of £1:USD1.5874) to Autonomy Corporation Limited.

> **Commented [AM76]:** Confirm, and validate dividend comment.

On 25 April 2012, Autonomy Corporation Limited (formerly Autonomy Corporation plc) subscribed to 1 ordinary share in Autonomy Systems Limited at a premium equal to the face value of a promissory note between Autonomy Corporation Limited and Longsand Limited in return for transferring the promissory note to Autonomy Systems Limited.

Also on 25 April 2012, Autonomy Systems Limited subscribed to 1 ordinary share in Longsand Limited at a premium equal to the face value of the promissory note to settle the promissory note in full.

On 1 June 2013 the Company sold its trade and assets to Hewlett-Packard Limited, a fellow group undertaking, retaining only its research and development function, transferring net liabilities with a book value of £5,748,000. The Company also retained balances due and from fellow group undertakings.

As discussed in note 19, the Company booked a number of prior year adjustments in respect of the years ended 31 December 2009 and 31 December 2010. As a result of this the Company has submitted a total claim for overpayment of tax of £37,385,000 in December 2013 (£17,791,000 in respect of the tax return for the year ended 31 December 2009 and £19,594,000 in respect of the tax return for the year ended 31 December 2010).  Based on further adjustments to the financial statements after the claim was submitted to HMRC the current best estimate of the revised claim that will be submitted to HMRC for over payment of tax is £38,435,000 (£18,696,000 in respect of the tax return for the year ended 31 December 2009 and £19,739,000 in respect of the tax return for the year ended 31 December 2010). At the date of signing the financial statements HMRC have not agreed the claim and therefore no benefit has been recognised due to the uncertainty regarding the final value of the claim.

EXH 6952B.0039