Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Christopher Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No.: 3:18-cr-00577-CRB<br><br>Judge: Hon. Charles Breyer<br><br>**DEFENDANT MICHAEL RICHARD LYNCH'S MOTION IN LIMINE TO EXCLUDE OPINION TESTIMONY OF CHRISTOPHER YELLAND**<br><br>**(Lynch MIL No. 3)**<br><br>Date: February 21, 2024<br>Time: 2:00 pm<br>Court: Courtroom 6 – 17th Floor<br>Date Filed: January 17, 2024<br>Trial Date: March 18, 2024 |

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.   Background .................................................................................................................. 2

   A.   Underlying Facts .................................................................................................... 2

   B.   Yelland's Testimony in *Hussain* .......................................................................... 3

II.  The Court Should Exclude Yelland's Opinions and Multi-Layered Hearsay About the Underlying Transactions ......................................................................................... 4

   A.   Yelland's Opinions Are Inadmissible Expert Opinion Testimony ................................ 5

   B.   Yelland's Testimony Was Not Disclosed Under Rule 16(a)(1)(G) ............................... 7

   C.   Yelland's Testimony Is Inadmissible Under Fed. R. Evid. 702 ................................... 7

   D.   Yelland's Testimony Is Inadmissible Under Fed. R. Evid. 403 ................................... 9

   E.   Yelland's Recitation of Hearsay Is Inadmissible Under Fed. R. Evid. 802 and 703 and the Confrontation Clause .......................................................................... 10

CONCLUSION ................................................................................................................ 14

1
2

## TABLE OF AUTHORITIES

**Page(s)**

3

**Cases**

4
5

*Beard v. USPS,*
  No. 17-cv-3218, 2019 WL 257978 (N.D. Cal. Jan. 18, 2019)................................12

6
7

*Crawford v. Washington,*
  541 U.S. 36 (2004)................................................................13, 14

8

*Deere & Co. v. FIMCO Inc.,*
  239 F. Supp. 3d 964 (W.D. Ky. 2017)................................................12

9
10

*Everest Stables, Inc. v. Canani,*
  No. 09-cv-9446, 2011 WL 13213657 (C.D. Cal. Oct. 6, 2011) ...................6

11
12

*Flecker v. Hollywood Enter. Corp.,*
  1997 WL 269488 (D. Or. Feb. 12, 1997)............................................6

13
14

*Gallagher v. Holt,*
  No. 08-cv-3071, 2012 WL 3205175 (E.D. Cal. Aug. 3, 2012).....................5, 7

15

*Giles v. California,*
  554 U.S. 353 (2008)................................................................14

16
17

*Gottlieb v. Convergent Techs.,*
  942 F.2d 791 (9th Cir. 1991) .......................................................6

18
19

*Greene v. Bros. Steel Erectors, LLC,*
  No. 18-cv-484, 2019 WL 1848558 (W.D. Okla. Apr. 24, 2019)..................11

20
21

*Homeland Housewares, LLC v. Sharkninja Operating LLC,*
  No. 14-cv-3954, 2016 WL 1698254 (C.D. Cal. Apr. 27, 2016)....................6

22

*In re Homestore.com, Inc.,*
  No. 01-cv-11115, 2011 WL 291176 (C.D. Cal. Jan. 25, 2011)...................11

23
24

*Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC,*
  No. 08-cv-1559, 2010 WL 3894966 (S.D. Cal. Sept. 29, 2010)....................5

25
26

*Humboldt Baykeeper v. Union Pac. R.R. Co.,*
  No. 06-cv-2560, 2010 WL 2179900 (N.D. Cal. May 27, 2010)...................5

27

*Maley v. Del Glob. Techs. Corp.,*
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................6

28

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

*Neal-Lomax v. Las Vegas Metro. Police Dep't*,
  574 F. Supp. 2d 1170 (D. Nev. 2008), *aff'd*, 371 F. App'x 752 (9th Cir. 2010) .................. 11

*Neuberger v. Shapiro*,
  110 F. Supp. 2d 373 (E.D. Pa. 2000) ........................................................................................ 6

*Oki Am., Inc. v. Microtech Int'l, Inc.*,
  872 F.2d 312 (9th Cir. 1989) .................................................................................................. 11

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
  20 F. 4th 466 (9th Cir. 2021) .................................................................................................... 8

*In re Oracle Secs. Litig.*,
  829 F. Supp. 1176 (N.D. Cal. 1993) .......................................................................................... 6

*SEC v. Guenthner*,
  395 F. Supp. 2d 835 (D. Neb. 2005) .......................................................................................... 6

*SEC v. Jasper*,
  678 F.3d 1116 (9th Cir. 2012) ................................................................................................... 1

*In re SRAM Antitrust Litig.*,
  257 F.R.D. 580 (N.D. Cal. 2009) ............................................................................................... 7

*United States v. 242.93 Acres of Land*,
  No. 10-cv-1133, 2012 WL 579503 (S.D. Cal. Feb. 22, 2012) ................................................... 7

*United States v. Figueroa-Lopez*,
  125 F.3d 1241 (9th Cir. 1997) ................................................................................................... 5

*United States v. Hussain*,
  No. 16-cr-462 (N.D. Cal.) .......................................................................................................... 4

*United States v. Hussain*,
  No. 16-cr-462-CRB, Dkt. 351-5, 6, 7, 8 (N.D. Cal. April 18, 2018) ............................... *passim*

*United States v. Janati*,
  374 F.3d 263 (4th Cir. 2004) ..................................................................................................... 9

*United States v. Lawson*,
  653 F.2d 299 (7th Cir. 1981) ................................................................................................... 13

*United States v. Mrabet*,
  ___ F. Supp. 3d ____, 2023 WL 8179685 (S.D.N.Y. Nov. 27, 2023) ....................................... 7

*United States v. Reyes*,
  239 F.R.D. 591 (N.D. Cal. 2006) ............................................................................................. 11

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

*United States v. Ruvalcaba-Garcia*,
   923 F.3d 1183 (9th Cir. 2019) ...................................................................9

*United States v. Smith*,
   83 M.J. 350 (2023) (noting that the trial judge sustained objection to witness
   reading from exhibit that was not in evidence)...........................................10

*United States v. Torralba-Mendia*,
   784 F.3d 652 (9th Cir. 2015) .....................................................................13

*United States v. Vera*,
   770 F.3d 1232 (9th Cir. 2014) ..............................................................10, 12

*United States v. VonWillie*,
   59 F.3d 922 (9th Cir. 1995) .........................................................................5

*United States v. White*,
   492 F.3d 380 (6th Cir. 2007) .....................................................................10

*United States v. Williams*,
   No. 3:13-cr-00764, 2017 WL 3498694 (N.D. Cal. Aug. 15, 2017)...............8

*Wagner Equip. Co. v. Wood*,
   No. 11-cv-466, 2014 WL 12492000 (D.N.M. Jan. 27, 2014)......................11

**Other Authorities**

Fed. R. Evid. 403 ...........................................................................................9

Fed. R. Evid. 701 ...........................................................................................5

Fed. R. Evid. 702 ...........................................................................................8

Fed. R. Evid. 703 .............................................................................1,2, 6, 12, 13

Fed. R. Evid. 802 ....................................................................................1,10

Federal Rule of Criminal Procedure 16 ...........................................1, 6, 7, 14

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:

PLEASE TAKE NOTICE that on February 21, 2024 at 2:00 p.m. or as soon thereafter as counsel may be heard, in Courtroom 6, 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Michael Richard Lynch will and hereby does move the Court to exclude the opinion testimony of Christopher Yelland including (1) why revenue should or should not have been recognized, and (2) what adjustments to Autonomy Group's financial statements were necessary to comply with the IFRS.  To the extent the Court does not do so, it should compel the government to disclose a proper expert witness summary under Rule 16(a)(1)(G), including the underlying bases and reasons for Yelland's opinions.  Dr. Lynch reserves the right to seek a *Daubert* hearing depending on the content of the disclosure.

This motion is based upon the following Memorandum of Points and Authorities, any oral argument, and the pleadings and exhibits on file with the Court.

Dated: January 17, 2024

Respectfully submitted,

*/s/ Brian M. Heberlig*
Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Christopher J. Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

1

## SUMMARY OF ARGUMENT

2      The Court should exclude Yelland's testimony about the hypothetical impact of the

3   Autonomy Systems Ltd.'s 2014 Annual Report and Financial Statement for January to October

4   2011 ("ASL Restatement") on ASL's parent company, Autonomy Group.  In *Hussain*, Yelland

5   opined on what adjustments should have been made to Autonomy Group's financial statements

6   to comply with IFRS accounting rules even though Autonomy Group's financial statements were

7   never restated, and the ASL Restatement does not specify adjustments to Autonomy Group's

8   financial statements.  Yelland has repeatedly said that Autonomy Group's financials were not

9   restated because there was no legal obligation to do so and it is unlikely that HP could have

10  restated them in a sufficiently reliable manner to obtain the approval of outside auditors.  Despite

11  this limitation, Yelland did not confine his testimony in *Hussain* to the four corners of the ASL

12  Restatement.  Instead, Yelland opined on how that restatement *would have* impacted the

13  Autonomy Group accounts had they been restated, including his views on how dozens of

14  transactions failed to comply with IFRS.  Even if the Court chooses to admit the ASL

15  Restatement itself, it should exclude Yelland's opinion testimony about why transactions were

16  restated and what impact those adjustments would have made on Autonomy Group's financial

17  statements.

18      Testimony about which hypothetical adjustments Yelland would have considered proper

19  under the IFRS is rank speculation and expert testimony.  Unlike in *Hussain*, the government

20  chose not to notice Yelland as an expert here, and his testimony does not come close to meeting

21  the requirements of Rule 16(a)(1)(G) or Rule 702, both of which have become stricter in the

22  interim.  In *Hussain*, the government used this opinion testimony as a conduit for Yelland to feed

23  the jury highly prejudicial evidence that was plainly inadmissible.  Yelland testified to opinions

24  that Autonomy purchases from VARs had no business purpose based on out-of-court comments,

25  including arguments we now know came directly from HP's litigation counsel.  Moreover,

26  Yelland relied on subsequent events with no bearing on IFRS accounting, which prohibits

27  hindsight when re-examining past transactions.  That testimony is inadmissible under Rule 802,

28  Rule 703, and the Confrontation Clause.  It should be excluded.

## MEMORANDUM OF POINTS AND AUTHORITIES

If the Court admits the ASL Restatement, the admissible evidence would be the restatement itself, as in *SEC v. Jasper*, 678 F.3d 1116 (9th Cir. 2012).  The ASL Restatement contains financial statements for ASL that reflect before and after totals for ASL's revenue, expenses, and profit.[1]  The ASL Restatement does not identify any specific transactions that were restated, nor does it contain any details as to the basis for the restatement.  Yet, in *Hussain*, the government used admission of the restatement as a launching pad to introduce prejudicial hearsay prepared for litigation, in the form of Yelland's hypothetical opinion testimony about why he believed certain transactions would have needed to be restated for the Autonomy Group's accounts to comply with IFRS, and Yelland's summary charts[2] that purported to show what transactions were "restated" when in fact no restatement of the Autonomy Group financial statements ever occurred.  The Court should exclude this evidence because it has no proper evidentiary basis.

Autonomy Group's financial statements were never restated because—as Yelland has conceded—no such restatement was required or could be reliably completed.  Although Autonomy Group's financial statements were not restated, Yelland nonetheless prepared TX 2749 (Ex. 1 to Declaration of Nicholas Silverman in support of this motion) as a purported summary of Autonomy Group's restatement.  TX 2749 is a laundry list of transactions identified as "restated transactions," even though they are no such thing.  Even worse, the summary charts in TX 2749 characterize hardware revenue as restated—including them in summary rows entitled "Percentage restated (including hardware revenue)"—even though hardware revenue was not restated in the ASL Restatement.  This opinion testimony and the summary charts in TX 2749 originated from the prosecutors' request, nearly two years after the ASL Restatement, that Yelland's or HP's lawyers prepare a summary of adjustments that "Yelland believes should have been [made] to Autonomy's accounts to conform with IFRS," as well as the amount of hardware

---

[1] Declaration of Nicholas P. Silverman In Support of Motion In Limine to Exclude Opinion Testimony of Christopher Yelland ("Silverman Decl.") Ex. 9 (Hussain Trial Exhibit ("TX") 2445).

[2] Silverman Decl. Ex. 1 (TX 2749)).

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

revenue that Yelland believed should have been disclosed:

**From:** Leach, Robert (USACAN) [mailto:Robert.Leach@usdoj.gov]
**Sent:** Thursday, December 03, 2015 2:29 PM
**To:** Luskey, Randy
**Cc:** sresley@morganlewis.com; Reeves, Adam (USACAN)
**Subject:** FW: Autonomy quarterly summaries template

Randy,

As I mentioned, in advance of our meeting with Mr. Yelland, we would appreciate it if you and/or the company could prepare quarterly summaries showing the adjustments in respect of improper transactions that Mr. Yelland believes should have been to Autonomy's accounts to conform with IFRS, as well as the amount of undisclosed hardware revenue. I'm attaching a version that Morgan Lewis put together, although I think it could easily take the format of Schedule 10 to the Particulars of Claim. Within the appropriate category (VAR transaction/reciprocal transaction/hosting arrangement/other transaction), we would like the summary to reflect the adjustment for the particular transactions listed below. Happy to discuss this further.

Thanks,
Bob

****************************

Silverman Decl. Ex. 2 (providing a list of transactions that the government asked Yelland to opine should have been adjusted under IFRS).

This was not percipient testimony of what Yelland heard, saw, or did or of the contents of the ASL Restatement, which did not analyze Autonomy Group's IFRS financials or identify any specific transactions. Instead of percipient testimony, Yelland's opinions about what adjustments should have been made to Autonomy Group's accounts under IFRS was rank speculation; unnoticed, unqualified expert testimony; and the repetition of unsourced hearsay without a Rule 703 balancing analysis. It should be excluded from Dr. Lynch's trial.

## I.  Background

### A.  Underlying Facts

Dr. Lynch incorporates by reference the background regarding the creation of the ASL Restatement contained within his contemporaneously filed Motion In Limine to Exclude the 2014 Filing of Autonomy Systems Ltd.'s 2011 Annual Report.

The ASL Restatement did not make any representations about the financial filings of Autonomy Group. According to Yelland, there was no legal obligation to restate Autonomy Group's financial filings. Moreover, attempting to translate the determinations made about

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

transfer pricing in ASL's UK GAAP financial statements to Autonomy Group's IFRS financial statements would have required significant new transfer pricing analysis involving comparative accounting for different entities under UK GAAP and IFRS.  As Yelland stated in real time, "it is unlikely we could produce sufficiently reliable consolidated financial statements upon which EY could express a valid audit opinion."[3]  After the ASL Restatement, Deloitte conveyed the views of Autonomy's lead audit partner Nigel Mercer to UK authorities that even if the ASL Restatement was merited, it had no bearing on Autonomy Group's financial statements.[4]  This appears to have been in large part because "the bulk of these differences (as far as [Deloitte understood] them [from the ASL Restatement]) represent decisions by Hewlett Packard to adopt a different approach to the numbers and does not demonstrate that the 2010 financial statements were misstated."[5]

B.     **Yelland's Testimony in *Hussain***

Yelland's improper testimony about the changes that he "believes should have been [made] to Autonomy's accounts to conform with IFRS" had three parts.  *First*, Yelland would identify a transaction and opine that Autonomy Group should not have recognized revenue from the transaction.  *Second*, Yelland would allude to a typically undisclosed basis for that conclusion.  Although Yelland had no first-hand knowledge of the transactions—his knowledge came third-hand as a result of lawyers or other employees interviewing Autonomy witnesses or reviewing emails[6]—he offered factual conclusions about transactions' "economic substance" and

---

[3] *See* Silverman Decl. Ex. 5 at 3 (2013.06.07 email).

[4] TX 6463, *United States v. Hussain*, No. 16-cr-462-CRB, Dkt. 351-5, 6, 7, 8 (N.D. Cal. April 18, 2018) ("Mr Mercer does believe that the contents of [the ASL Restatement] have any bearing on the accounting issues in relation to the 2010 Autonomy Group financial statements he discussed with you….").

[5] *Id.*

[6] *See* Silverman Decl. Ex. 6, at 22-24 (UK Day 38 Tr.) (explaining receipt and review of materials from Morgan Lewis and PwC); Silverman Decl. Ex. 7 (POS00424252) (Apr. 2013 email from Yelland to Morgan Lewis/PwC making plans to engage in numerous steps "to ensure alignment between … their findings" and to align their "findings and conclusions" because "any mistakes could impact our position."); Silverman Ex. 4 (May 2013 email from PwC and Morgan Lewis to Anderson providing example of how Anderson gathered facts from PwC and Morgan Lewis); Silverman Ex. 8 (June 6, 2013 Morgan Lewis transmittal of witness interview summaries on Autonomy transactions).

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

1    customers' credit worthiness and assured the jury that this was corroborated by out-of-court

2    interviews and after-the-fact evaluations.  *Third*, Yelland would characterize the effect of

3    removing the transaction from Autonomy Group, even though Autonomy Group's financial

4    statements were never restated.  Ultimately, Yelland opined on how multiple transactions should

5    have been adjusted in Autonomy Group's financial statements.  For example:[7]

6        1.  Q3 2009 Revenues: Yelland opined that 24.6% of Autonomy Group's $191.6 million in

7            revenue was restated, despite only testifying to hardware transactions that were never

8            restated.  Trial Tr. at 5098-99, *United States v. Hussain*, No. 16-cr-462 (N.D. Cal.)

9            ("*Hussain* Tr.").

10       2.  FileTek (Q4 2009): Yelland opined that revenue from FileTek's purchase should not have

11           been recognized because Autonomy purchased software from FileTek in a deal that "did

12           not have real economic substance" according to "our inquiries."  *Id.* at 5100.  He later

13           revealed that "our inquiries" meant interviews of unknown research and development

14           employees by unknown accounting employees.  *See id.* at 5106.

15       3.  Video Monitoring Services (VMS) (Q4 2010): Yelland opined that revenue from VMS's

16           purchase should not have been recognized because Autonomy purchased goods from

17           VMS that "were not really used by Autonomy," although even Yelland conceded that

18           they may have been used for demos, and because VMS was ultimately unable to pay for

19           the software.  *Id.* at 5115-16.

20   Yelland gave much of this testimony using a misleading demonstrative: TX 2749 (Silverman

21   Decl. Ex. 1).  This demonstrative, as noted in the email cited above, was drafted by the

22   prosecutors and Morgan Lewis lawyers.  *See* Silverman Decl. Ex. 2.

23   **II.    The Court Should Exclude Yelland's Opinions and Multi-Layered Hearsay About
            the Underlying Transactions**

---

[7] A complete summary of all of the transactions that Yelland improperly opined on is set forth in Appendix A filed herewith.

### A.  Yelland's Opinions Are Inadmissible Expert Opinion Testimony

Yelland's speculation about what Autonomy Group's revenue "should have been … to conform with IFRS" is unqualified, unnoticed expert testimony that is inadmissible.  Where opinion testimony extends beyond "the perception of the witness" and "concern[s] 'specialized knowledge,'" it is governed by Rule 702, not Rule 701.  *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997) ("The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702."); *accord Humboldt Baykeeper v. Union Pac. R.R. Co.*, No. 06-cv-2560, 2010 WL 2179900, at *1 (N.D. Cal. May 27, 2010) (excluding witnesses due to lack of expert disclosure because "Defendants seek to have each of these three witnesses testify on matters based on their expertise and not merely their percipient observations").[8]

In similar circumstances, courts have held that accountants with percipient knowledge must be qualified as expert witnesses before testifying about issues like the defendant's adherence to accounting rules.  *Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*, No. 08-cv-1559, 2010 WL 3894966, at *2 (S.D. Cal. Sept. 29, 2010); *Gallagher v. Holt*, No. 08-cv-3071, 2012 WL 3205175, at *14 (E.D. Cal. Aug. 3, 2012) (accountant hired to conduct forensic accounting of related entities must be qualified as expert due to use of specialized knowledge).  In *Hoot Winc*, the plaintiff company appointed a team led by accountant Hansen to audit accounting decisions made by the defendant, and sought to have Hansen testify about her findings and prescribed changes.  2012 WL 3205175, at *1-2.  The court held that Rule 702 applied because "[t]he only reason Hansen's testimony would be relevant is that her specialized knowledge, training and expertise allow her to identify accounting

---

[8] Even if Yelland's testimony were lay opinion, it would be inadmissible.  Lay opinions must be "based on the perception of the witness."  *Figueroa-Lopez*, 125 F.3d at 1246.  To constitute lay testimony, a witness with specialized knowledge must provide "observations [that] are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion." *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995).  Evaluations of creditworthiness and revenue recognition required demonstrable expertise and did not result from a process of reasoning familiar in everyday life.  *Figueroa-Lopez*, 125 F.3d at 1246.  Indeed, similar evaluations were hotly contested by litigants and multiple experts for months in the UK civil trial.

1   'errors' Defendants allegedly made and explain those errors to the trier of fact." *Id.* at *2.  That

2   is precisely the same testimony that the government proposes to elicit from Yelland, and his

3   testimony is equally subject to Rule 702.

4           Indeed, as the Court observed in *Hussain*, testimony as to whether Autonomy's

5   statements complied with the IFRS would constitute "an expert opinion."  *Hussain* Tr. 89-90.[9]

6   To the extent the Court now disagrees, however, and holds that Yelland's testimony is lay

7   opinion, it is inadmissible both for the reasons stated *supra* in footnote 8 and because it is based

8   on inadmissible hearsay.  *See* Fed. R. Evid. 703 (permitting only experts to base opinions on

9   limited types of hearsay); *Everest Stables, Inc. v. Canani*, No. 09-cv-9446, 2011 WL 13213657,

10  at *4 (C.D. Cal. Oct. 6, 2011) (explaining that lay opinion is inadmissible to the extent it is based

11  on hearsay and collecting cases).

12          Here, Yelland's opinion testimony relied upon interview memoranda from Morgan Lewis

13  attorneys, attorney work product emailed by PwC, select contemporaneous email traffic,

14  newspaper articles, and testimonial interview statements from unnamed witnesses.  As described

15  in the Motion to Exclude the 2014 Filing of Autonomy Systems Ltd., Yelland and his team's

16  conclusions were based on multilevel hearsay shaped by litigation counsel.  Experts can rely on a

17  limited subset of hearsay to reach their opinions, but lay witnesses cannot.  If the government

18  wishes for Yelland to testify then he must be noticed and qualified as an expert.

19

20  [9] *Accord Homeland Housewares, LLC v. Sharkninja Operating LLC*, No. 14-cv-3954, 2016 WL 1698254,
21  at *5 (C.D. Cal. Apr. 27, 2016) (holding that noticed testimony regarding profits and the underlying
    accounting principles justifying those calculations was "within the scope of FRE 702"); *SEC v.*
22  *Guenthner*, 395 F. Supp. 2d 835, 846 (D. Neb. 2005) ("Establishing that an accounting practice or method
    is inconsistent with GAAP requires expert testimony"); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d
23  358, 362 (S.D.N.Y. 2002) (recognizing need for expert testimony to resolve "complex accounting
    questions relating to revenue recognition and inventory"); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373,
24  378 (E.D. Pa. 2000) ("[E]xpert testimony would certainly be required on the nature of the accounting
    practices, the significance of various decisions in relation to GAAP, and the effect that those practices
25  ultimately had on plaintiffs' certificates."); *see also Gottlieb v. Convergent Techs.*, 942 F.2d 791, at *2
    (9th Cir. 1991) (table opinion) (citing expert testimony regarding whether revenue recognition practices
26  complied with GAAP); *In re Oracle Secs. Litig.*, 829 F. Supp. 1176, 1182 (N.D. Cal. 1993) (describing
    accounting expert testimony on proper revenue recognition); *Flecker v. Hollywood Enter. Corp.*, 1997
27  WL 269488, at *3 & n.2 (D. Or. Feb. 12, 1997) (describing competing expert testimony regarding correct
    accounting treatment).

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.   Yelland's Testimony Was Not Disclosed Under Rule 16(a)(1)(G)

Unlike in *Hussain*, the government did not disclose Yelland as an expert witness against Dr. Lynch.  Because the government did not notice any expert opinions, bases, or reasons from Yelland, it cannot elicit any expert opinions from Yelland at trial.  *See, e.g.*, *United States v. 242.93 Acres of Land*, No. 10-cv-1133, 2012 WL 579503, at *3 (S.D. Cal. Feb. 22, 2012) (holding that failure of party to notice expert opinions of percipient witness precluded their admission); *Gallagher*, 2012 WL 3205175, at *14 (same).

Even if the government had reissued its *Hussain* notice, that notice and Yelland's testimony come nowhere near satisfying the requirements of Rule 16(a)(1)(G), which was made substantially more stringent in 2022.  Rule 16(a)(1)(G) now requires that "'[t]he disclosure for each expert witness must contain,' inter alia, 'a complete statement of all opinions that the government will elicit from the witness in its case-in-chief' and 'the bases and reasons for' each of those opinions."  *United States v. Mrabet*, ___ F. Supp. 3d ____, 2023 WL 8179685, at *1 (S.D.N.Y. Nov. 27, 2023) (quoting Fed. R. Crim. P. 16(a)(1)(G)); *see also In re SRAM Antitrust Litig.*, 257 F.R.D. 580, 584 (N.D. Cal. 2009) (holding that litigant violated expert disclosure requirements by failing to specifically identify materials reviewed by experts).  "[D]etailed specificity is required as to bases for those opinions before a court can adequately assess their admissibility or a defendant can contest their weight and meaning before a judge or jury."  *Id.* at *2.  In addition, a proposed expert witness must now approve and sign the disclosure.  Fed. R. Crim. P. 16(a)(1)(G)(v).  Yelland has never disclosed the bases and reasons for each of his opinions in large part because those bases and reasons involved his coordination with HP's lawyers and investigative auditors—much of which is still shielded by HP's privilege assertion. The Court should therefore preclude Yelland from testifying to his opinions about the proper accounting of Autonomy Group or the bases for them.

### C.   Yelland's Testimony Is Inadmissible Under Fed. R. Evid. 702

Setting aside the lack of notice, Yelland's opinion testimony is inadmissible under Rule 702.  The proponent of expert testimony bears the burden of demonstrating that the expert is qualified to give each proposed opinion, that the expert's specialized qualifications will be

helpful to the trier of fact, that the testimony is based on sufficient facts or data, that the testimony is "the product of reliable principles and methods," and that the opinion "reflects a reliable application of the principles and methods" to the case.  Fed. R. Evid. 702.  While Dr. Lynch reserves the right to object or seek a *Daubert* hearing should the government issue a notice attempting to satisfy these criteria, it is already clear that Yelland's testimony about the correct IFRS accounting for Autonomy Group cannot clear Rule 702's hurdles for three reasons.

*First*, Yelland is not qualified as an expert on IFRS accounting.  Yelland has no prior experience with IFRS accounting.  As Yelland has stated both contemporaneously and under oath: "**I'm not an IFRS expert** and really look for [the internal investigation accountants'] views."  Silverman Ex. 3 (UK civil trial testimony Day 37 at 142-43); *accord id.* at 145 (noting that he lacked IFRS expertise); *Hussain* Tr. 5223 (agreeing that he is "not an expert on IFRS accounting").  Because Yelland is not an expert on IFRS, his opinion about how the Autonomy Group should have accounted for transactions to comply with IFRS must be excluded.  *See, e.g.*, *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F. 4th 466, 478 (9th Cir. 2021) (affirming exclusion of rebuttal expert due in part to his lack of experience and admission that the relevant model was "out of [his] area of expertise").

*Second*, although Yelland has not disclosed the bases and methodology used to reach each opinion, it is apparent that the opinions suffer from flaws precluding admission under Rule 702.  Many of the opinions relate to whether purportedly linked transactions with the purchaser had a commercial rationale or whether debts were collectable.  *See, e.g.*, Opinions 1, 8, 10, 15, 16, 20, 25, 32, 33, 35, 38 in Appendix A.  Yelland is not qualified to second-guess the commercial rationale of Autonomy purchases that occurred before he joined the company or the credit-worthiness of various counterparties approved by Autonomy's auditor Deloitte in real time.  Even if he was qualified, Yelland does not explain the rules or methodology that must be applied in order to reach an opinion on commercial rationale or credit worthiness.

*Third*, even if the methodology or rules were reliable, Yelland's application of that methodology is unreliable.  To present expert testimony, the government must demonstrate not just that Yelland's "methodology itself is generally accepted," but *also* that he has "employed"

that methodology in a reliable manner.  *United States v. Williams*, No. 3:13-cr-00764, 2017 WL 3498694, at *12 n.25 (N.D. Cal. Aug. 15, 2017); Fed. R. Evid. 702(c), (d).  Here, Yelland appears to base his determinations on one-line assurances from unidentified witnesses, arguments from litigation counsel, hindsight information about payment or product use instead of examination of the information available at the time, and even consideration of newspaper articles.  This is an unreliable application of any methodology and directly violates IFRS rules against hindsight.  *See* IAS 8.53 (forbidding the use of hindsight when considering whether to restate prior period financials).

The government bears the burden of justifying its expert's qualifications and the reliability of his testimony before the jury is exposed to untested opinions.  *See United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189-90 (9th Cir. 2019).  Rule 702's factors go to admissibility and not merely to weight, as emphasized by its amendments effective December 1, 2023.  Jud. Conf., Comm. on Rules of Practice and Procedure, Comm. Note to Rule 702 at 228 (Oct. 19, 2022), https://www.uscourts.gov/sites/default/files/2022_scotus_package_0.pdf (explaining that the 2023 amendments were meant to remedy courts' tendency to treat the Rule 702's factors as "questions of weight and not admissibility").  Now is the time for the Court to police Yelland's lack of proper qualifications and the unreliability of his opinions.  Because the government has failed to carry its burden to prove admissibility, Yelland's opinion testimony must be excluded.

### D.  Yelland's Testimony Is Inadmissible Under Fed. R. Evid. 403

The probative value of Yelland's testimony is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.  ASL's UK GAAP accounts were restated, but they were not reviewed by HP during due diligence and were irrelevant to the acquisition.  That is a difficult distinction for the jury to draw, one that became impossible in *Hussain* with the government's use of an inaccurate demonstrative[10] and testimony by Yelland

---

[10] The government has not yet noticed its demonstratives and Dr. Lynch would object to any use of TX 2749.  In *Hussain*, Yelland read from TX 2749 like a script, opining that Autonomy Group's financials should have been adjusted by specific percentages that were not based on evidence that had already been

9

about revenue restatements that never occurred.

This is not like *Hussain* where the defendant had an in-depth knowledge of accounting rules and signed previous statements himself as a Director of ASL.  Yelland is opining on both "facts" and "rules"[11] with no foundation laid that Dr. Lynch was aware of either the same facts or the same rules.  Dr. Lynch was neither an accountant nor a Director of ASL responsible for endorsing its financial statements, which he never signed.  Dr. Lynch will be unfairly prejudiced by the jury's resulting misimpression that Yelland reviewed the same information as Dr. Lynch and reached a different conclusion.  *See United States v. White*, 492 F.3d 380, 404 (6th Cir. 2007) (holding it was error to permit auditors to testify as lay witnesses because an average lay person would have been "incapable of making sense" on the facts linked together through the "reasoning process" employed by the auditors).  Moreover, by portraying Yelland's charts and testimony regarding TX 2749 as summarizing a non-existent restatement of the Autonomy Group, the government will mislead and confuse the jury into believing that the information has authoritative weight it does not deserve.  These risks far outweigh any probative value of the testimony, which is based on second- or third-hand hearsay, lacks detail, and comes from a lay witness unqualified to render any meaningful opinions.

### E.    Yelland's Recitation of Hearsay Is Inadmissible Under Fed. R. Evid. 802 and 703 and the Confrontation Clause

To the extent Yelland has described the sources for a limited number of his opinions, those sources are multi-level hearsay involving witness interviews in anticipation of litigation; non-business record emails; and even newspaper articles accusing Autonomy of misconduct.  For example, Yelland's "inquiries" into the VMS deal included reliance on and citation to a Wall

---

admitted, effectively reading a lawyer-prepared document into evidence.  *See United States v. Janati*, 374 F.3d 263, 273 (4th Cir. 2004) (noting that demonstratives are supposed to depict "evidence that has already been admitted"); *United States v. Smith*, 83 M.J. 350, 356 n.2 (2023) (noting that the trial judge sustained objection to witness reading from exhibit that was not in evidence).

[11] As a dual fact/expert witness, Yelland would complicate an already complex trial.  Specific dual role instructions are necessary and the jury must be guided to avoid "the risk that the jury [will give the witness's] testimony undue deference."  *United States v. Vera*, 770 F.3d 1232, 1242, 1246 (9th Cir. 2014) (holding that it is plain error not to provide such instructions).

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

Street Journal article attacking Autonomy, which, in turn, purported to include comments from the counterparty's CEO and three unknown ex-Autonomy employees.[12]  In court, Yelland testified to (1) out-of-court statements from his subordinates or from attorneys conducting HP's internal investigation, which relayed (2) an out of court statement from their own supervisees conducting interviews or writing interview memoranda, which relayed (3) what they learned from out-of-court statements from witness interviews, emails, or articles.  *See, e.g.*, *Hussain* Tr. 5106 (citing information learned from interviews of "R&D colleagues").  Similarly, Yelland's "inquiries" into whether FileTek transactions had economic substance were actually informed by ex parte interviews of unidentified R&D personnel by PwC and Morgan Lewis and undisclosed comments from undisclosed personnel.  *See* Silverman Decl. Ex. 4 (May 2013 email from PwC and Morgan Lewis to Anderson providing example of how Anderson gathered facts from PwC and Morgan Lewis).

The proponent of evidence containing multiple levels of hearsay bears the burden of proving that "each link in the hearsay chain falls within a hearsay exception."  *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1182 (D. Nev. 2008), *aff'd*, 371 F. App'x 752 (9th Cir. 2010); *see, e.g.*, *Oki Am., Inc. v. Microtech Int'l, Inc.*, 872 F.2d 312, 314 (9th Cir. 1989) (holding that witness's testimony that a sales manager told him one party had no intention to adhere to the contract was hearsay); *Greene v. Bros. Steel Erectors, LLC*, No. 18-cv-484, 2019 WL 1848558, at *2 (W.D. Okla. Apr. 24, 2019) (holding that statements relied upon by incident report were multi-level hearsay); *Wagner Equip. Co. v. Wood*, No. 11-cv-466, 2014 WL 12492000, at *5 (D.N.M. Jan. 27, 2014) (holding that proponent "failed to establish the admissibility of each link in the chain" because the original declarant was unknown).  Even if the ASL Restatement is a business record, the statements relied upon by Yelland remain inadmissible hearsay.  *See, e.g.*, *In re Homestore.com, Inc.*, No. 01-cv-11115, 2011 WL 291176, at *6 (C.D. Cal. Jan. 25, 2011) (admitting restatement as a business record but excluding report

---

[12] Ben Worthen et al, *Long Before HP Deal, Autonomy's Red Flags*, W.S.J., Nov. 26, 2012 wsj.com/articles/SB10001424127887324784404578141462744040072

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

explaining the need for the restatement as hearsay); *United States v. Reyes*, 239 F.R.D. 591, 600 (N.D. Cal. 2006) (explaining that summaries of what witnesses said during an internal investigation "would be hearsay upon hearsay").

Yelland cannot disclose hearsay about the business motivation or justification of transactions. Under Rule 703, an expert cannot disclose inadmissible hearsay to the jury unless (a) the expert relied upon it in reaching an opinion; (b) experts in the particular field would reasonably rely on that type of hearsay in forming their opinions; and (c) the hearsay's "probative value in helping the jury evaluate the opinion *substantially outweighs* their prejudicial effect." Fed. R. Evid. 703 (emphasis added). For example, in *United States v. Liew*, the court held that the expert had failed to lay the required foundation that an ex parte interview of a non-testifying witness was typical and that even if an expert could testify to his opinion, the court would have prohibited him from discussing that basis. No. 11-cr-573, 2014 WL 554491, at *2-3 (N.D. Cal. Feb. 7, 2014) (reasoning in part that the government had not had the opportunity to interview the same witness); *see Beard v. USPS*, No. 17-cv-3218, 2019 WL 257978, at *3 (N.D. Cal. Jan. 18, 2019) (excluding expert opinion because expert did not demonstrate that his internet source was "generally relied upon in his field"). Here, Yelland has similarly failed to lay any foundation. Even if he did, Yelland's reliance on hearsay is particularly problematic because the falsity or truth of the hearsay statements (e.g., that the purchased software had no purpose) is hotly disputed. Yelland's testimony could not be considered for the "truth" of those statements "but only to assess the strength of his opinions." *Vera*, 770 F.3d at 1246. Under the posture of this case, those two uses are inseparable. Dr. Lynch will inevitably suffer unfair prejudice as a result.

The government made no Rule 703 showing in *Hussain* because it cannot make the required showing—Yelland's ASL restatement and his testimony about its purported relationship with Autonomy Group lacks any record of details such as "the individuals he interviewed, the dates on which he conducted the conversations, the questions asked, the interviewees' responses, and the opinions he formed as a result." *Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964, 977 (W.D. Ky. 2017). It is plain error not to require adequately specific foundation for an expert

witness's opinions. *Vera*, 770 F.3d at 1243. The baseless claims of unknown employees would seriously prejudice Dr. Lynch, particularly where former Autonomy employees have changed their position since the preparation of the ASL Restatement about the commercial rationale for the software products Autonomy purchased. Indeed, during the UK civil trial, former Autonomy software engineers who initially claimed in their pretrial witness statements that Autonomy had no use for the products it purchased (claims presumably forwarded to Yelland), acknowledged on cross-examination that there was in fact a rationale for those purchases and that the products were in fact used. In short, the time-honored crucible of cross-examination of actual percipient witnesses exposed the unreliability of the information upon which Yelland relied in concluding that transactions lacked commercial rationale. Allowing Yelland nonetheless to advance such information under the guise of an expert opinion would give Yelland's conclusory assertions undue credibility despite being incorrect. A limiting instruction would be insufficient to protect Dr. Lynch's right to proof beyond a reasonable doubt that there was no commercial rationale for the transactions in question.

Finally, to the extent that Yelland discloses testimonial hearsay as a basis for his opinions, it would violate the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36, 49 (2004) ("[It] is a rule of the common law, founded on natural justice, that no man shall be prejudiced by evidence which he had not the liberty to cross examine."); *see also United States v. Lawson*, 653 F.2d 299, 302 (7th Cir. 1981) ("An expert's testimony that was based entirely on hearsay reports, while it might satisfy Rule 703, would nevertheless violate a defendant's constitutional right to confront adverse witnesses."). The witness interviews were conducted after the impairment announcement when it was obvious to all involved that HP intended to initiate litigation, and they are therefore testimonial. *See United States v. Torralba-Mendia*, 784 F.3d 652, 655 (9th Cir. 2015) (statements made under circumstances leading an objective witness to believe they may be available for litigation use fall within "core" of testimonial statements). Dr. Lynch has a right to cross-examine the purported employee(s) who told HP's attorneys and investigators, who in turn passed information on to Yelland that he relied on for his opinion testimony, particularly because such cross-examination here would expose that the employee—

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

to the extent they exist—is unreliable.  Indeed, the government is fond of mislabeling the ASL Restatement an "autopsy," under which Yelland's explanations are "statements taken by a coroner"—a category of testimony the Supreme Court has held is subject to Confrontation Clause protections.  *Crawford*, 541 U.S. at 47 n.2; *see also Giles v. California*, 554 U.S. 353, 370 (2008) (noting that statements made at "coroner's inquests" are inadmissible unless there was a prior opportunity for cross-examination or wrongful procurement).  Yelland cannot testify to testimonial hearsay he heard from non-testifying witnesses.

## CONCLUSION

For the reasons stated herein, the Court should exclude the opinion testimony of Christopher Yelland.  To the extent the Court declines not to do so, it should compel the government to disclose a proper expert witness summary signed by Yelland under Rule 16(a)(1)(G), including the underlying bases and reasons for Yelland's opinions.  Dr. Lynch reserves the right to seek a *Daubert* hearing depending on the content of the disclosure.

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

Dated: January 17, 2024

Respectfully submitted,

*/s/ Brian M. Heberlig*
Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Christopher J. Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB