# APPENDIX A

## To Defendant Michael Richard Lynch's Motion In Limine To Exclude Opinion Testimony of Christopher Yelland

1. <u>Capax EDD (Q1 2009)</u>: Yelland opined that revenue from Capax's purchase should not have been recognized because—in Yelland's opinion with no stated basis—Autonomy's contemporaneous purchase from Capax Discovery "didn't really have economic substance," and therefore had to be considered on a net basis.  Tr. 5094.

2. <u>Q1 2009 Revenues</u>: Yelland opined that Autonomy Group's $129.8 million in revenue should have been restated to $115.5 million, despite only testifying to a single $7.5 million transaction.  Tr. 5094.

3. <u>Morgan Stanley (Q2 2009)</u>: Yelland stated that he included Autonomy's revenue from this transaction in his "Revenue Adjustments" but did not explain any basis except that the sale included hardware.  Tr. 5097.

4. <u>Q2 2009 Revenues</u>: Yelland opined that 15.5% of Autonomy Group's $195.2 million in revenue should have been restated, despite only testifying to a single $6 million transaction.  Tr. 5097.

5. <u>Discover Technologies/MicroTech/MicroLink (Q4 2009)</u>: Yelland opined that revenue from Discover Tech's purchase should not have recognized because "[o]ur findings were that that deal was connected to the acquisition of [MicroLink] … and was wrapped up into the price MicroLink.  … [T]he price of the software sold to Discover … via MicroTech … was inflated."  Tr. 5099-5100.

6. <u>Capax Discovery/Eli Lilly & Co. (Q4 2009)</u>: Yelland opined that revenue from Capax's purchase should not have been recognized because "from our inquiries, we concluded that Capax were not actually really involved in th[e] deal with [end user Eli Lilly] and

were not really required to pay for that deal until the end user deal had been done ….." Tr. 5100-01.

7. Capax Discovery EDD (Q4 2009): Yelland opined that revenue from Capax's purchase should not have been recognized because a contemporaneous purchase by Autonomy was for services that Autonomy "hadn't actually … used" by the time of Yelland's interviews. Tr. 5101-02.

8. MicroLink/Discover Technologies (Q4 2009): Yelland opined that revenue from MicroLink's purchase should not have been recognized because the VAR "ultimately" defaulted on the resulting debt.  Tr. 5102.

9. Sales Consulting/Poste Italiane (Q4 2009): Yelland opined that revenue from Sales Consulting's purchase should not have been recognized because he disagreed with Autonomy's opinion that the VAR could pay the sales price.  Tr. 5102-03 (noting that his reasoning was based on the VAR's location "in Italy [or] South America" and Yelland's impression that VARs "in those territories" had a pattern of not paying).

10. Hosting Transactions (Q4 2009): Yelland opined that revenue from transactions with hosting customers that were structured as "an upfront license followed by a hosting service" should not have recognized any portion as "license [revenue] separate[] from the ongoing service…."  Tr. 5103.

11. Q4 2009 Revenues: Yelland opined that 31.3% of Autonomy Group's $223.1 million in revenue should have been restated, despite not testifying to all of the underlying transactions.  Tr. 5104.

3

12. <u>MicroTech/Vatican (Q1 2010)</u>: Yelland opined that revenue from MicroTech's purchase should not have been recognized because Autonomy facilitated MicroTech's payment by making a purchase from MicroTech "that didn't really have substance because we couldn't find … evidence" of how the facility was used.  Tr. 5105-06.

13. <u>Q1 2010 Revenues</u>: Yelland opined that 24% of Autonomy Group's $194.2 million in revenue should have been restated, despite testifying to only two transactions totaling 10%.  Tr. 5107.

14. <u>Auxilum Tech/Vatican (Q2 2010)</u>: Yelland opined that revenue from Auxilium's purchase should not have been recognized in Q1 2010 because he did not see communications between Auxilium and potential end user, the Vatican, and Auxilium was ultimately unable to pay its invoice.  Tr. 5107-08.

15. <u>Q2 2010 Revenues</u>: Yelland opined that 28.2% of Autonomy Group's $221.1 million in revenue should have been restated, despite testifying to only one transaction totaling less than 1%.  Tr. 5109.

16. <u>Capax Discovery/Bank of America (Q3 2010)</u>: Yelland opined that revenue from Capax's purchase should not have been recognized because the end user changed from Amgen to Bank of America.  Tr. 5112.

17. <u>Q3 2010 Revenues</u>: Yelland opined that 27.4% of Autonomy Group's $210.6 million in revenue should have been restated, despite testifying to only two transactions totaling 9%.  Tr. 5113.

18. <u>Discover Technologies/Bank of America (Q4 2010)</u>: Yelland opined that revenue from Discover Tech's purchase should not have been recognized until 2011 because the deal with end user Bank of America was not closed until then.  Tr. 5113-14.

19. <u>Tikit/KPMG (Q4 2010)</u>: Yelland opined that revenue from Tikit's purchase should not have been recognized because of a side agreement that if potential end-user KPMG backed out, then Autonomy would purchase services from Tikit and credit the purchase price towards future transactions between Tikit and Autonomy related to the purchased software.  Tr. 5114-15.

20. <u>MicroTech/ U.S. D.O.I. (Q4 2010)</u>: Yelland opined that revenue from MicroTech's purchase should not have been recognized because a potential end user fell through and "[u]ltimately," MicroTech did not pay its invoice.  Tr. 5116.

21. <u>Discover Technologies/Bank of America (Q4 2010)</u>: Yelland opined that revenue from Discover Tech's purchase should not have been recognized until the invoice was belatedly sent in Q1 2011.  Tr. 5117.

22. <u>Capax Discovery/Merrill Lynch (Q4 2010)</u>: Yelland opined that revenue from Capax's purchase should not have been recognized because a potential end user, Merrill, elected to make a purchase from Autonomy instead of Capax, and Capax was unable to pay for the software.  Tr. 5117-18.

23. <u>Q4 2010 Revenues</u>: Yelland opined that 36.2% of Autonomy Group's $244.5 million in revenue should have been restated, despite testifying to only six transactions totaling 13.5%.  Tr. 5118.

24. <u>Capax Discovery/McAfee (Q1 2011)</u>: Yelland opined that revenue from Capax's purchase should not have been recognized because Capax was unable to pay for the software.  Tr. 5119.

25. <u>MicroTech LLC (Q1 2011)</u>: Yelland opined that revenue from MicroTech's purchase should not have been recognized because he did not see any evidence of MicroTech providing contracted-for support services to a potential end user, and the deal was later written off.  Tr. 5119-20.

26. <u>Discover Technologies/Prisa (Q1 2011)</u>: Yelland opined that revenue from Discover Tech's purchase should not have been recognized because Discover Tech "paid for the majority of this deal" using the proceeds from Autonomy purchasing software that "from our inquiries, Autonomy didn't use or resell."  Tr. 5120-21.

27. <u>Discover Technologies/ThinkTech (Q1 2011)</u>: Yelland opined that revenue from Discover's purchase should not have been recognized because it had "[v]ery similar circumstances to Prisa."  Tr. 5121.

28. <u>MicroTech/Bank of Montreal (Q1 2011)</u>: Yelland opined that revenue from MicroTech's purchase should not have been recognized because the invoice to MicroTech was later written off or credited.  Tr. 5121-22.

29. <u>Capax Discovery EDD (Q1 2011)</u>: Yelland opined revenue from Capax's purchase should not have been recognized because Capax sold EDD services to Autonomy and a witness said that they did not end up using the services.  Tr. 5122.

30. Q1 2011 Revenues: Yelland opined that 30.7% of Autonomy Group's $219.8 million in revenue should have been restated, despite testifying to only six transactions totaling 9%. Tr. 5122.

31. Discover Technologies/Abbott Labs (Q2 2011): Yelland opined that revenue from Discover Tech's purchase should not have been recognized because the sale to potential end user Abbott was not completed. Tr. 5123.

32. MicroTech/HP (Q2 2011): Yelland opined that revenue from MicroTech's purchase should not have been recognized because the sale to potential end user HP was not completed. Autonomy later purchased cloud software from MicroTech, and Yelland "saw no evidence" of the cloud software itself, leading to his conclusion that the two sales required net accounting. Tr. 5123-24.

33. Discover Technologies/Hyatt/Dell (Q2 2011): Yelland opined that revenue from Discover Tech's purchase should not have been recognized because Discover Tech did not ultimately pay the invoice. Tr. 5124.

34. Q2 2011 Revenues: Yelland opined that 20.5% of Autonomy Group's $256.3 million in revenue should have been restated, despite testifying to only three transactions totaling 8%. Tr. 5125.