PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7014
Fax: (415) 436-7234
Email: Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No. CR 18-577 CRB<br><br>UNITED STATES' MOTION *IN LIMINE* NO. 1: TO ADMIT EVIDENCE OF AUTONOMY SYSTEMS LIMITED'S RESTATEMENT AND RELATED SUMMARY CHARTS<br><br>Pretrial Conference: February 21, 2024<br>Trial Date: March 18, 2024 |

**INTRODUCTION**

In *United States v. Hussain*, the Court admitted evidence of Autonomy Systems Limited's restatement of its financial statements. *See* Order Denying Motions for New Trial and Judgment of Acquittal, *United States v. Hussain*, CR 16-462 CRB (N.D. Cal. Jul. 30, 2018), ECF No. 419 at 57-59. The Court found that the restatement was relevant to whether Autonomy Corporation plc misrepresented its finances, not excludable hearsay because it fit within the business-records exception, and not excludable under Federal Rule of Evidence 403. *Id.* On appeal, the Ninth Circuit affirmed the Court's decision in full. *See United States v. Hussain*, 818 Fed. Appx. 765, 766 (9th Cir. 2018) (memorandum

disposition).

The Court should do the same here. The restatement is relevant to showing the falsity of Defendants' statements to the market and Hewlett-Packard Co. ("HP") and the magnitude of the necessary corrections. The restatement falls within the business-records exception to the hearsay rule under well-settled Ninth Circuit authority. *See SEC v. Jasper*, 678 F.3d 1116, 1123-24 (9th Cir. 2012); *Hussain*, 818 Fed. Appx. at 766. There are no other bases for exclusion. For these reasons, as described below, the evidence should be admitted.

The Court should also admit summary charts prepared by the restatement's signatory (Chris Yelland). *See* Trial Ex. 2749. Federal Rule of Evidence 1006 permits the use of summary charts "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." FED. R. EVID. 1006. Here, Yelland's summary charts summarize the restatement and its voluminous and complex constituent financial records and will enable the trier of fact to assess and identify individual components of the restatement and correlate them to the trial evidence. Without summary charts, the Court risks unfairly leaving the jury to sort through on its own the complex evidence proving the scale of the fraud at Autonomy.

**FACTUAL BACKGROUND**

Autonomy Corporation plc was a holding company for a group of related companies engaged in the business of software development and distribution, including U.S.-based companies Autonomy, Inc. and ZANTAZ, Inc. and a U.K.-based company, Autonomy Systems Limited ("ASL"). *See* Trial Ex. 1352 at 88 (2010 Autonomy Corporation plc Annual Report and Accounts).[1] ASL licensed Autonomy software to other entities in the Autonomy group and participated in the earnings of its fellow group companies.[2] *See* Trial Ex. 2445 at 17-18 (ASL Report and Financial Statements for the 10 months ended October 31, 2011). In other words, as Antonia Anderson testified in the *Hussain* trial, when transactions by certain Autonomy group companies generated revenue, that generated revenue for ASL.

---

[1] Proposed trial exhibits are attached to the 1/17/2024 Declaration of AUSA Robert S. Leach in Support of United States' Motion *in Limine* No. 1: To Admit Evidence of Autonomy Systems Limited's Restatement and Related Summary Charts ("Leach Decl.").

[2] Specifically, ASL had "transfer pricing" and other arrangements with other Autonomy group companies. Pursuant to those arrangements, amounts equal to, typically, 96.5% of the revenues of other Autonomy group companies were transferred to ASL.

*Hussain* Tr. at 3131-32. During the relevant time period, Autonomy Corporation plc issued press releases to the market announcing earnings for the group as a whole, and ASL publicly filed financial statements reporting revenue earned in part through its licensing agreements with Autonomy group companies. *See, e.g.*, Trial Ex. 1373 (ASL Report and Financial Statements for the year ended December 31, 2010); Trial Ex. 2027 (Autonomy Corporation plc press release for 2Q 2011).

ASL was subject to the Companies Act of 2006 in the U.K. ASL's directors were required to prepare financial statements for each financial year that provided a true and fair view of the state of affairs of the company at year end and the profit and loss. *See* Trial Ex. 2445 at 10; Companies Act §§ 393 & 396. Its directors were forbidden from approving financial statements unless they were satisfied that the financial statements gave a true and fair view of the assets, liabilities, financial position, and profit or loss of the company. *See* Trial Ex. 2445 at 10; Companies Act § 393. ASL also was required to keep adequate accounting records that were sufficient to show and explain the company's transactions and disclose with reasonable accuracy at any time the financial position of the company and enable the directors to ensure that the financial statements comply with the Companies Act. *See* Trial Ex. 2445 at 10; Companies Act § 386. In addition, ASL's directors were required to publicly file ASL's financial statements with the Registrar of Companies (Companies House). *See* Companies Act §§ 441, 1060. Criminal penalties attached to each of these obligations. *See* Companies Act §§ 387 (duty to keep accounting records: offence); 414 (approval and signing of accounts); 451 (default in filing accounts and reports: offences).

ASL's financial statements were prepared in accordance with United Kingdom Generally Accepted Accounting Practice (United Kingdom Accounting Standards and applicable law). In preparing these financial statements, ASL's directors were required to (1) select suitable accounting policies and then apply them consistently; (2) make reasonable and prudent judgments and accounting estimates; (3) state whether applicable U.K. Accounting Standards have been followed; and (4) prepare the financial statements on the going concern basis. *See* Trial Ex. 2445 at 10.

On or about September 30, 2011, ASL filed a Report and Financial Statements for the year ended December 31, 2010, as required by the Companies Act. *See* Trial Ex. 1373. It was executed by Hussain, who was one of ASL's two directors at the time. After two disastrous quarters of missed

expectations, Hussain and Dr. Lynch announced they were leaving Autonomy Corporation plc and ASL. Thereafter, Chris Yelland, whom Hussain hired, became a director of ASL and CFO of the Autonomy group. Yelland is a Chartered Accountant in the U.K. with more than 15 years of accounting and finance experience in the information technology industry. *Hussain* Tr. at 5019-21; Leach Decl. Ex A (Yelland UK witness statement ¶¶ 5-11). Yelland, with others, undertook an accounting review of Autonomy Corporation plc and ASL's historical financial statements and ultimately concluded that a restatement was required. Among those working with Yelland was Anderson, a Chartered Accountant and a former Deloitte manager who audited Autonomy Corporation plc before joining the company just before the HP acquisition. *Hussain* Tr. at 2902-08; 5129-30 (Yelland testifying to year's long work on Restatement with Anderson).

On or about January 31, 2014, ASL filed with the Registrar of Companies its Report and Financial Statements for the 10 months ended October 31, 2011 (the "Restatement"). *See* Trial Ex. 2445. Yelland signed the Restatement on behalf of the Board, subject to his duties under U.K. law and all of the criminal penalties described above. *See id.* at 9 & 15. In the *Hussain* trial, Anderson authenticated the Restatement and described its preparation. *Hussain* Tr. at 3132-37. In the Restatement, ASL reduced its publicly reported revenue (or turnover) from £175,632,000 to £81,293,000. *Compare* Trial Ex. 1373 at 10 *to* Trial Ex. 2445 at 13. ASL also reduced its retained earnings balance (profit and loss account) at December 31, 2009, from £188,010,000 to £108,882,000, which reflects a substantial decrease in 2009 revenue. *Compare* Trial Ex. 1373 at 11 *to* Trial Ex. 2445 at 37. The Restatement further reflects that ASL engaged Ernst & Young LLP ("E&Y") as its statutory auditor, but that E&Y disclaimed an opinion because (1) "further adjustments might have been required" if additional information evidence had been available, including information that might be identified from ongoing investigations; (2) "further adjustments might be required to the intercompany balances" if additional information and evidence were available; and (3) the Company's earnings and financial position may be further impacted by additional errors found in the accounting of fellow group undertakings." *See* Trial Ex. 2445 at 11-12.

Yelland and Anderson are expected to testify that the Restatement reflects adjustments for numerous transactions that impacted both ASL's financial statements and Autonomy Corporation plc's

financial statements, and that the adjustments were required both under United Kingdom Accounting Standards and International Financial Reporting Standards, with which Autonomy Corporation plc's financial statements purported to comply.

To illustrate the impact of the ASL Restatement on Autonomy Corporation plc's publicly reported results, Yelland prepared summary charts based on Autonomy business records. *Hussain* Tr. at 5057-62. The summary charts itemize how individual transactions or groups of transactions comprise the Restatement and their annual and quarterly impacts both on ASL's accounts and Autonomy Corporation plc's accounts. For example, for the first quarter of 2010, Yelland's summary chart lists Autonomy Corporation plc's originally stated revenue ($194.18 million), the total amount of restated transactions ($34.82 million), amounts for individual restated transactions or groups of transactions, and the restated revenue ($159.36 million). Trial Ex. 2749 at 8. The summary also breaks out hardware revenue, which the government will prove was concealed from HP and investors, and expresses the restated revenue and restated revenue with hardware revenue as percentage. *Id.* Finally, the exhibit includes an itemized list of the trial exhibits on which it is based. Trial Ex. 2749 at 14-35. In *Hussain*, the Court permitted Yelland to testify to the substance of the summary charts but declined to admit the documents themselves. *See e.g.*, *Hussain* Tr. at 5057-67; 5096-130.

## ARGUMENT

### A. THE COURT SHOULD ADMIT THE RESTATEMENT AND TESTIMONY FROM YELLAND AND ANDERSON ABOUT THE RESTATEMENT

The Court should admit the Restatement because it is relevant, it falls within the business records exception to the hearsay rule under Ninth Circuit authority (including the Ninth Circuit's *Hussain* decision), and it is not excludable under other grounds.

The Restatement is probative of the falsity of Defendants' statements and the magnitude of the correction. At bottom, it is an admission by ASL that its revenues (and therefore Autonomy Corporation plc's revenues) were misstated. For these reasons and others, the Restatement is relevant.

The Restatement may not be excluded on hearsay grounds because it falls within the business records exception, in that it is a record of an act, event, condition, or opinion; it was made at or near the time by – or from information transmitted by – someone with knowledge; it was kept in the course of

regularly conducted activity of ASL; it was regular practice of ASL to make the record; and Defendants cannot show the source or information or the method or circumstances of preparation indicate a lack of trustworthiness. *See* FED. R. EVID. 803(6). Indeed, the Ninth Circuit, under similar circumstances, has held that a restatement of financial statements, in the form of an annual report on Form 10-K filed with the Securities and Exchange Commission, is admissible as a business record so long as it is properly authenticated. *See SEC v. Jasper*, 678 F.3d 1116, 1122-23 (9th Cir. 2012); *see also Hussain*, 818 Fed. Appx at 765-66. In *Jasper*, the Ninth Circuit affirmed the district court's admission of a public company's Form 10-K, filed after an internal investigation into stock options backdating. *Id.* at 1123-24. The court concluded that the restatement was a report made at or near the time of the accounting review by those with knowledge of the company's books and that it was the company's regular practice and duty to file financial statements that conformed with applicable accounting standards. *Id.* at 1123. The court rejected Jasper's argument that the annual report was unreliable because it was prepared with an eye toward pending litigation, noting that the filing of an accurate annual report was and continues to be a requirement for U.S. public companies. *Id.* at 1123-24.

In addition, the Ninth Circuit observed that "the vast majority of district courts to have considered this issue have found restated financial reports to be admissible [as business records]." *Id.* at 1123 (citing as examples *In re Homestore.com, Inc.*, 2011 WL 291176, at *5 (C.D. Cal. Jan. 25, 2011); *In re WorldCom, Inc. Sec. Litig*., 2005 WL 375313, at *6 (S.D.N.Y. Feb. 17, 2005)). In *Homestore*, the district court admitted a restatement of financial reports following an internal investigation, noting that the company had a duty to file restated financial statements with the SEC. 2011 WL 291176, at *5. In *WorldCom*, the district court likewise admitted a restatement filed by new management which had a duty to issue restated financials and to file restated financial statements with the SEC. 2005 WL 375313, at *5-6; *see also United States v. Clay*, 832 F.3d 1259, 1315-1317 (11th Cir. 2016) (stating "[a]s in *Jasper*, the restatement is generally admissible under Rule 803(6)"). The Ninth Circuit expressly relied on *Jasper* to affirm admission of *this* Restatement in a related case under virtually identical circumstances. *Hussain*, 818 Fed. Appx at 765-66.

Here, like the 10-K in *Jasper*, ASL was required to file the Restatement. The Restatement was prepared at or near the time of the accounting review by those with knowledge of the company's books

and it was the company's regular practice and duty to file financial statements that conformed with applicable accounting standards. Although Defendants may argue ASL, under new management, filed the Restatement with an eye toward litigation against them, the same was true of the restatement in *Jasper* and it is true of most if not all restatements. This argument was expressly rejected in *Hussain*. 818 Fed. Appx. at 766 (holding that possibility restatement was prepared with an eye toward litigation does not render it inadmissible and that such arguments go to the weight of the evidence, not its admissibility). Such arguments also fail because U.K. corporations have an obligation to file accurate financial statements and restate prior periods when it is necessary to do so, as it was here. As in *Jasper*, the filing of an accurate annual report was and continues to be a requirement for U.K. companies like ASL.

Defendants, like Hussain, may suggest the Restatement lacks trustworthiness because E&Y did not render an opinion on the financial statements. This argument too was expressly rejected by the Court and the Ninth Circuit. 818 Fed. Appx. at 766 ("That the restatement was not approved by an auditor . . . does not render the restatement inadmissible."); Order Denying Motions for New Trial and Judgment of Acquittal, *United States v. Hussain*, CR 16-462 CRB (N.D. Cal. Jul. 30, 2018), ECF No. 419 at 59. And it is wrong for several reasons. First, a careful review of the reasons laid out by E&Y suggest that its disclaimer was based on the possibility additional information would require even *further adjustments* to the financial statements. That is, additional information gathered through investigation could have shown the Restatement did not go far enough. Second, the provisions of the Companies Act – its obligation for accurate books and records, its prohibition on director approval of financial statements without satisfaction that the financial statements give a true and fair view, its obligation that the financial statements be publicly filed, all enforceable on criminal penalties – ensure that the Restatement is trustworthy for purposes of the business-records exception. In any event, as the Court and the Ninth Circuit observed in *Hussain*, these points more appropriately go to the weight that should be afforded the Restatement, which Defendants will be free to make through cross-examination of Mr. Yelland, Ms. Anderson, and their process.[3] 818 Fed. Appx. at 766.

---

[3] Yelland's and Anderson's testimony about the Restatement is also admissible under Rules 702 and 703 governing testimony by expert witnesses, but the Court need not deem Yelland or Anderson is qualified as an expert in order to determine the Restatement is admissible as a business record. *See* FED.

For similar reasons, Defendants are unable to identify any basis under Rule 403 for exclusion. The relevance of the Restatement is high, and the danger that an accounting review performed under the rigor of the obligations of the Companies Act will cause unfair prejudice is low.

## II. THE COURT SHOULD ADMIT SUMMARY CHARTS PREPARED BY CHRIS YELLAND

Federal Rule of Evidence 1006 permits the use of summaries to prove the contents of voluminous writings: "The proponent may use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court." *See* FED R. EVID. 1006. A proponent of a Rule 1006 summary must demonstrate the underlying materials upon which the summary is based (1) are admissible in evidence and (2) were made available to the opposing party for inspection. *See United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011). The underlying materials need not themselves be admitted into evidence. *Id.*

Here, Yelland's summaries (Trial Exhibit 2479) are admissible. They summarize and itemize individual components of the Restatement, demonstrating to the trier of fact how individual transactions and categories of transactions comprise the Restatement. They are based on business records that Yelland and Anderson used to do their work. Admission of the summaries will enable the jury to synthesize and analyze complex evidence and avoid wasting time. Defendants are of course free to cross-exam.

Without summary charts, the Court risks unfairly leaving the jury to sort through on its own the complex evidence proving the scale of the fraud at Autonomy. With properly authenticated summary charts, anchored firmly in the business record evidence from which they have been derived, the jury may effectively assess the evidence that, in 2009 for example, Autonomy falsely inflated its reported revenues by approximately 42%. And, for example in 2010, Autonomy falsely inflated its reported revenues by approximately 53%. Trial Ex. 2749 at 1.

Federal judges in this district in recent criminal trials involving complex frauds, like this one, have admitted summary charts, like the ones proposed herein, to assist the jury in evaluating complex and voluminous bank and trading record evidence. *See e.g. United States v. Cutting*, Case Nos. 14-CR-

---

R. EVID. 702 & 703.

139 and 17-CR-139 (Hon. Susan Illston) (on or about November 29, 2017, during the testimony of the last government witness, admitting multiple summary charts based on bank records and other financial evidence relating to Sonoma Valley Bank); *United States v. Shabudin*, Case No. 11-CR-664 (Hon. Jeffrey S. White) (senior officers of the failed United Commercial Bank convicted for falsifying bank records and publicly-filed financial statements) at Documents 225 (United States Motion *in Limine* to Admit Summary Charts) and 297 (Judge White's ruling admitting Exhibits 1322-1315, summary charts about key loans at issue in the trial) (conviction affirmed by Ninth Circuit); and *United States v. Salman*, Case No. 11-CR-625 (Hon. Edward M. Chen) at Documents 70 (United States' Motion *in Limine* to Admit Summary Charts) and 188 (Final Pretrial Conference Order) at 8-12 (Judge Chen's Order admitting summaries listing relevant stock purchases and tracing cash flows from relevant securities accounts) (conviction affirmed by the United States Supreme Court). The Court should do so here.

**CONCLUSION**

For these reasons, the Court should grant the government's motion *in limine* and admit evidence of the Restatement by Autonomy Systems Limited and Yelland's summary charts.

DATED: January 17, 2024

Respectfully submitted,

PATRICK D. ROBBINS
Attorney for the United States Attorney
Acting Under Authority Conferrred by
28 U.S.C. § 515

________________________________

ROBERT S. LEACH
ADAM A. REEVES
KRISTINA N. GREEN
ZACHARY G.F. ABRAHAMSON
Assistant United States Attorneys