PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email:  Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CR 18-577 CRB |
|    Plaintiff, | ) |
|   v. | ) UNITED STATES' MOTION *IN LIMINE* NO. 2: TO ADMIT CERTAIN EVIDENCE OF DR. LYNCH'S CONTROL, KNOWLEDGE, AND INTENT |
| MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN, | ) Pretrial Conference:  February 21, 2024 |
|    Defendants. | ) Trial Date:  March 18, 2024 |

## INTRODUCTION

Michael Lynch domineered over Autonomy. He was the "eminence grise" of a "cabal" that ran the company. *See* Judgment ¶ 101, *ACL Netherlands BV v. Lynch*, [2002] EWHC 1178 (Ch) (May 17, 2022), 2022 WL 01557021. The nature and extent of Dr. Lynch's control will be significant in any assessment of whether he knew of Autonomy's accounting and disclosure misstatements, or whether his subordinates acted without his knowledge, as he may now claim.

Dr. Lynch repeatedly invoked organized crime when exercising control over subordinates. Dr. Lynch's chief legal officer in the United States (Joel Scott) is expected to testify that Dr. Lynch said

Autonomy "was like the Mafia." Another witness (Alex Marshall) will testify that Dr. Lynch said he ran "Autonomy like the Mafia." Evidence also shows that, to motivate his sales force, Dr. Lynch dressed up like a Mafia Don for a video of a mock sales call, where, knife in hand, he lorded over his subordinates as they made excuses for not hitting quarterly targets and joked about real threats Dr. Lynch had made to an analyst that dared to be critical of Autonomy. These references were not isolated: Dr. Lynch also publicly compared Autonomy to a piranha unable to show weakness and, through naming conference rooms after the likes of Goldfinger, cultivated an image of master of the universe to whom the rules do not apply.

The Court should admit such testimony by Scott and Marshall, evidence of the mock sales video, and evidence relating to Dr. Lynch's marketing of his image (an image that helped bamboozle HP). These statements and conduct are relevant to showing the extent of Dr. Lynch's control over Autonomy and his knowledge of Autonomy's struggles to meet sales quotas. They also evidence his intent and state of mind. While references to organized crime are unflattering, they are the Defendant's own words and are reflective of his knowledge of the pressures Autonomy was facing and desire to project dominance. There is no prejudice within the meaning of Federal Rule of Evidence 403, and the evidence will not prolong the trial, but will demonstrate with specificity and clarity that Dr. Lynch, above all, was in charge and wanted to be perceived as in charge.

## FACTUAL BACKGROUND

Dr. Lynch "exercised very personal overall control [at Autonomy]. He was very definitely and insistently at the apex of an unusual management structure . . . . He was a very dominant personality. He expected to get his way, and did so. He was resourceful and determined; and he did not expect or tolerate doubts from others as to his chosen strategy, and he expected his strategies to be implemented." *See* Judgment ¶ 98, *ACL Netherlands BV v. Lynch*, [2002] EWHC 1178 (Ch) (May 17, 2022), 2022 WL 01557021. He ran Autonomy through "small cliques of loyal lieutenants" "namely [Sushovan] Hussain, [General Counsel Andrew] Kanter and [Stephen] Chamberlain, with lesser input from [Chief Technology Officer Pete] Menell and [Chief Marketing Officer Nicole] Eagan, implementing decisions at the sales level, and through [CEO of the Americas, Stouffer] Egan, [US General Counsel] Joel Scott and [Michael] Sullivan in the US." *Id.* ¶ 101.

Autonomy's outside auditors (Deloitte) observed that Dr. Lynch had "a very unusual level of control" over the company, so much so that Dr. Lynch's approval was required for any purchase over $30,000.  *See* Trial Ex. 4422 at p.2 & 3.[1]  Deloitte found it "very clear that [Dr. Lynch] is actively involved in all areas of the business, making key strategic decisions on areas such as procurement, recruitment, acquisitions and communications with the market and financiers."  *Id.* at p.4.

Autonomy's U.S. General Counsel, Joel Scott, who testified in the *Hussain* case, is expected to testify about his interactions with Dr. Lynch.  Among other things, Scott will describe a conversation he had with Dr. Lynch at Autonomy's annual sales kickoff in Miami, Florida, in 2011.  When Scott questioned Dr. Lynch about why Scott's title was being changed in a negative way, Dr. Lynch said in substance "[d]on't you get that I'm the pilot.  Don't try to ask the pilot to fly the plane when I am in charge of the plane."  Leach Decl. Ex. A at US_FBI_E_00003520 (Scott 2/5/2014 FBI 302 excerpt).  Dr. Lynch also said in substance "don't you get it, think acquisition."  And Dr. Lynch admonished Scott: "you can never leave, we are like the Mafia, we are like family."  *Id.*

A second witness, Alex Marshall, who is expected to testify to false statements by Dr. Lynch about Autonomy's "original equipment manufacturer" ("OEM") sales, also recalls Dr. Lynch invoking organized crime.  Marshall is expected to testify that after negotiating a pay raise from Dr. Lynch, Dr. Lynch stated in substance that he "ran Autonomy like the Mafia" and that Dr. Lynch expected "skin off Marshall's back."  Leach Decl. Ex. B at US_FBI_E-00027987 (Marshall 10/22/2018 FBI 302 excerpt).

Dr. Lynch again drew analogies to organized crime in a mock sales video presented at a sales kick-off meeting in Miami in or about early 2009, after the events involving Autonomy analyst Daud Khan arose in 2008.  The video was excluded in the *Hussain* trial.  *See* Order Granting Defendant's Motion *in Limine* No. 6, *United States v. Hussain*, CR 16-462 (N.D. Cal. Feb. 9, 2018), ECF No. 245.

The video depicts an "SMS Call" presided over by Dr. Lynch, with Hussain, "Consigliere" Kanter, and Menell donning Fedoras as the score from *The Godfather* plays.

---

[1] Proposed trial exhibits are attached to the 1/17/2024 Declaration of AUSA Robert S. Leach in Support of United States' Motion in Limine No. 2: To Admit Certain Evidence of Dr. Lynch's Knowledge, Control, and Intent ("Leach Decl.").

Witnesses such as Stouffer Egan will establish that "SMS" (sales management system) refers to Autonomy's method of tracking possible transactions, and that Autonomy senior management convened weekly calls where sales personnel were required to report on the status of deals and "pressed to complete deals by the end of the then-current quarter." *See* Leach Decl. Ex. C (Egan U.K. witness Statement ¶ 17); *Hussain* Tr. at 1939-41 (Egan describing same); *Hussain* Tr. at 1847 (Autonomy employee stating "the SMS calls were tough . . . . [S]alespeople would fear getting on those calls. The accountability levels were high. You know, occasionally I've heard of people being fired on those calls."); *id.* at 1909 ("you don't wake up in the morning wanting to be on SMS calls"); *see also* Trial Ex. 1274 (Hussain to Dr. Lynch: "Really don't know what to do, Mike. As I guessed revenue fell away completely, yet SMS report shows massive activity. . . . [R]adical action is required, really radical.").

In the video, Lynch wields and sharpens a knife as he waits for sales personnel to call in.



As the meeting begins, a salesperson complains his "number one job" is plagued by collection problems and an inability to get a meeting with a customer – problems that also plagued Autonomy's real sales process.

A second salesperson refers to the "Cazanova job." Cazanova appears to be reference to an analyst, Daud Khan, who worked for an investment bank called Cazenove while covering Autonomy. The salesperson complains of a "technical problem" – that he could not get "the guy's wife in the trunk of the car" because "the broad's legs was too long." Dr. Menell responds by saying he will send someone else to solve the technical problem because he is "good with the ladies."

The reference to Cazanova appears to make light of genuine threats Dr. Lynch made to Khan. Frustrated with Khan's negative coverage of Autonomy, Dr. Lynch warned Khan of consequences if Khan published a negative research note, prompting Khan's boss to inquire if "that was a threat to either Khan or [Cazenove]." *Hussain* Tr. at 2987. Next, Lynch barred Khan from quarterly analyst meetings, under the false pretext that the U.K. authorities suspected Khan of wrongdoing. *Hussain* Tr. at 2993-94. Unsuccessful, Lynch pressured Cazenove by offering its investment banking team business if the bank removed Khan from covering Autonomy. *See* Leach Decl. Ex. D (Khan U.K. witness statement ¶ 16).[2]

On the mock SMS video, a third salesperson refers to a "bank job" – an apparent reference to many of Autonomy's financial services customers, such as Bank of America, JP Morgan, and Morgan Stanley. Lynch's Consigliere asks "why has the deal not been signed?" – another recurring problem.

A final salesperson – referred to as "our last hope" – bemoans that Autonomy's technical team somehow was not ready. Lynch's Consigliere notes with frustration "did you do a demo?" He adds that management had been hearing about the deal for weeks and had not heard of any problems.

Eventually Hussain, who has expressed frustration to Dr. Lynch throughout the video with the failing sales team, takes a baseball bat to the phone. Near the conclusion of the video, Dr. Lynch states: "Well chaps, I think that went rather well, didn't you?"

---

[2] Another analyst, Marc Geall, who testified in *Hussain* and will be deposed in advance of trial, told the government Dr. Lynch, according to Autonomy's investor relations head Derek Brown, was angry and upset after Geall wrote a critical report. Lynch told Brown "how important he [Dr. Lynch] was and that he could get Geall killed." Leach Decl. Ex. E.

Evidence of Dr. Lynch's control of Autonomy – and his desire to project an image of dominance – can also be seen in small details such as office names and décor. The government anticipates evidence that Dr. Lynch kept piranhas in the reception area of Autonomy's Cambridge headquarters and named conference rooms after James Bond villains like Dr. No, Goldfinger, and Scaramanga. *See* Trial Ex. 11408.[3] One month before he started engaging with Frank Quattrone to sell Autonomy, Dr. Lynch posed in front of the piranha tank to cultivate his carefully-crafted image as a master of the universe (an image that ultimately attracted HP):



Trial Ex. 11189. In the article, Lynch compared himself to Tony Montana in the final scene of *Scarface*. *Compare* Trial Ex. 11402 (Dr. Lynch invoking *The Untouchables*: "Always take a gun to a knife fight"). Dr. Lynch also said that "the fate of the predatory fish makes for a good analogy of the UK tech sector. 'It's a horrible life being a piranha. As soon as one shows any sign of weakness, it won't be there in the morning. And as they get bigger, you end up with the one-piranha problem.' It is lesson Dr. Lynch is keen to remember." Trial Ex. 11189. The Court sustained an objection to such evidence during the testimony of Chris Yelland in the *Hussain* trial. *Hussain* Tr. at 5138.

---

[3] To be clear, the government anticipates percipient witnesses will describe Dr. Lynch's invocation of Bond villains and piranhas and is not offering hearsay from news articles.

## ARGUMENT

Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. *See* FED. R. EVID. 401. Relevant evidence is admissible unless another rule provides otherwise. *See* FED. R. EVID. 402. The basic standard of relevance is a liberal one. *See Crawford v. City of Bakersfield*, 944. F.3d 1070, 1077 (9th Cir. 2019). Under Rule 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* FED. R. EVID. 403. Statements by a defendant when offered against the defendant are not hearsay. *See* FED. R. EVID. 801(d)(2)(A).

Applying these principles, Dr. Lynch's statements to Scott and Marshall are admissible. The statement to Scott – that Autonomy was like the Mafia – was made in the context of Dr. Lynch's explaining his "pilot[ing]" of Autonomy. His exhortation to Scott that he "think acquisition" explicitly ties Dr. Lynch's comments to his state of mind about selling the company. His reference to "the Mafia" underscores his power, tight control, and enforcement of discipline within the organization. In the context it does not suggest genuine ties to organized crime but organizational attributes of organized crime – power, control, toughness, loyalty, and knowledge – that are deeply relevant to Dr. Lynch's state of mind here.

Marshall's comments are even more probative. Dr. Lynch's claim that he ran Autonomy like the Mafia is highly probative of his state of mind, desire to brand an image of toughness, control of his subordinates, and knowledge of their activities.

Rule 403 is no barrier. First, these are statements by the Defendant and thus are highly probative. *See, e.g.*, *United States v. Fernandez*, 172 F. Supp. 2d 1265, 1273 (C.D. Cal. 2001) (statements by defendant that he was a member of the Mexican Mafia are admissible to show he is a member of the Mexican Mafia). Second, here the statements are offered not to show actual membership in organized crime, but Dr. Lynch's view that he ran Autonomy with the control, knowledge, and discipline akin to organized crime, and that he demanded loyalty and wanted to project dominance.

With respect to the SMS video, the government recognizes the Court previously excluded this evidence in the *Hussain* trial. *See* Order Granting Defendant's Motion in Limine No. 6, *United States v.*

*Hussain*, CR 16-462 (N.D. Cal. Feb. 9, 2018), ECF No. 245.  But the video is particularly probative with respect to *Dr. Lynch* – who may disclaim knowledge of the issues brought to bear on the SMS calls and Hussain's last-minute scrambling for reseller deals.  More fundamentally, his reference, if crass, to Cazanova belies a genuine intent to intimidate and silence Khan and is therefore deeply probative.  Beyond references to organized crime – which are probative of power, intent, and control – it is unclear what prejudice Dr. Lynch will suffer.

For similar reasons, references to Dr. Lynch's affinity for Bond villains, piranhas, and related evidence is probative of Dr. Lynch's state of mind, his control, and his attention to minute details.  For years, Dr. Lynch crafted an image of a master of the universe – an image that he ultimately sold to HP.  Accepting that the jury can weigh the obvious retort that his affinity for Bond villains was in jest, Dr. Lynch's choice to equate piranhas with Autonomy and to name conference rooms "Dr. No," "Goldfinger," and "Scaramanga" is probative of his state of mind, his desire to exert total control, his view that rules that apply to others do not apply to Autonomy, and his efforts to brand his image as an all-powerful master of the universe.  Dr. Lynch *chose* to describe Autonomy in these terms and relished the cutthroat reputation they inspired.  Especially with an appropriate limiting instruction focused on Dr. Lynch's state of mind, the jury should be permitted to evaluate what Dr. Lynch meant and decide what, if any, weight it should give this evidence.  In the end, admission of this evidence paints a more detailed and complete picture of the Defendant using the words, images, and actions he chose to describe himself and project to the world.  In this light, they are far more probative than prejudicial and should be admitted.

## CONCLUSION

For these reasons, the Court should grant the government's motion *in limine* and admit the evidence described above of Dr. Lynch's control, knowledge, and intent.

| | | |
|---|---|---|
| DATED: January 17, 2024 | | PATRICK D. ROBBINS<br>Attorney for the United States Attorney<br>Acting Under Authority Conferrred by<br>28 U.S.C. § 515 |
| | By: | *Robert S. Leach*<br>_____<br>ROBERT S. LEACH<br>ADAM A. REEVES<br>KRISTINA N. GREEN<br>ZACHARY G.F. ABRAHAMSON<br>Assistant United States Attorneys |