Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Christopher Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No.: 3:18-cr-00577-CRB<br><br>Judge: Hon. Charles Breyer<br><br>**DEFENDANT MICHAEL RICHARD LYNCH'S MOTION IN LIMINE TO LIMIT PROPOSED EXPERT TESTIMONY OF STEVEN BRICE**<br><br>**(Lynch MIL No. 4)**<br><br>Date: February 21, 2024<br>Time: 2:00 pm<br>Court: Courtroom 6 – 17th Floor<br>Date Filed: January 17, 2024<br>Trial Date: March 18, 2024 |

# **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ................................................................................................ vii

MEMORANDUM OF POINTS AND AUTHORITIES............................................................. 1

**I.    The Court Should Exclude Brice's Opinions Regarding Whether Autonomy's Non-IFRS Descriptions Were Accurate (Brice Report § 4) Because They Are Inadmissible Under Fed. R. Evid. 702** ........................................................................................................ 1

    A.    Brice Has No Special Qualifications to Testify About the Accuracy of Non-IFRS Categorization by Autonomy ............................................................................... 1

    B.    Brice's Opinions Are Not the Product of Reliable Application of Principles and Methods Under Rule 702(d) ................................................................................. 2

    C.    Brice's Opinions Are Not Helpful to the Finder of Fact ...................................... 4

**II.    The Court Should Exclude Brice's Opinions In Sections 2.7-2.10 Because They Are Not Helpful to the Jury, a Waste of Time, Confusing, and Unfairly Prejudicial.................... 5**

    A.    Sections 2.7-2.10 of the Brice Report Amount to Disagreements with Deloitte's Conclusions Based on the Same Information Provided to Deloitte................................ 6

    B.    Disagreements with Autonomy's Outside Auditor Are Not Helpful to the Jury, a Waste of Time, Confusing, and Unfairly Prejudicial .............................................. 8

**III.   The Court Should Prohibit References to Foreign Legal Proceedings in Brice's Opinions** ............................................................................................................................. 9

    A.    References to the Foreign Proceedings in Brice's Report............................................ 10

    B.    Under Fed. R. Evid. 703, the Court Should Preclude Brice from Relying on the Foreign Proceedings at Trial Because Such Proceedings Are Not Relied Upon By Experts In His Field ........................................................................................................ 11

    C.    Under Fed. R. Evid. 703 and 403, the Court Should Preclude Brice from Testifying About Findings or the Outcome of Foreign Proceedings Because the Prejudicial Effect Substantially Outweighs Any Probative Value ................................................ 12

**IV.   The Court Should Limit Brice's Case-in-Chief Testimony to the Opinions Expressed in His Case-in-Chief Report, and Preclude Opinions Not Timely Disclosed ....................... 13**

    A.    Brice's Case-In-Chief Testimony Should Be Limited to the November 8, 2023 Case-In-Chief Report.............................................................................................. 13

    B.    Brice's Rebuttal Testimony Should Be Limited to Responding to the Defense's Expert Testimony ............................................................................................................ 14

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Christiansen v. Syverson*,
   516 F. Supp. 3d 1151 (D. Idaho 2021) ................................................................12

5

6

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ...........................................................................3, 4, 8, 9

7

8

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) .......................................................................8

9

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   618 F.3d 1025 (9th Cir. 2010) ....................................................................5

10

11

*Generations at Pinnacle Peak LLC v. Whitestone Pinnacle of Scottsdale*,
   No. 17-cv-4597, 2021 WL 9597885 (D. Ariz. Feb. 22, 2021) .........................9

12

13

*In re Incretin-Based Therapies Prods. Liab. Litig.*,
   No. 21-55342, 2022 WL 898595 (9th Cir. Mar. 28, 2022) ..............................4

14

15

*Johnson v. Wyeth LLC*,
   No. 10-cv-2690, 2012 WL 1150857 (D. Ariz. Apr. 5, 2012) ...........................8

16

17

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ...............................................................................3, 4

18

19

*Munoz v. PHH Mortg. Corp.*,
   No. 108CV00759MMBBAM, 2022 WL 138670 (E.D. Cal. Jan. 14, 2022) ...........12

20

*NetAirus Techs., LLC v. Apple, Inc.*,
   No. LACV1003257JAKEX, 2013 WL 12322092 (C.D. Cal. Oct. 23, 2013) ...........12

21

22

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ......................................................................3

23

24

*S.E.C. v. Daifotis*,
   No. C 11-00137 WHA, 2012 WL 2051193 (N.D. Cal. June 7, 2012) .................4

25

*Turner v. Burlington N. Santa Fe R. Co.*,
   338 F.3d 1058 (9th Cir. 2003) ...............................................................12, 13

26

27

*United States v. Cruz-Escoto*,
   476 F.3d 1081 (9th Cir. 2007) .....................................................................4

28

Defendant Lynch's Motion In Limine to Limit Proposed Expert Testimony (Lynch MIL No. 4)
Case No. 3:18-cr-00577-CRB

*United States v. Hussain*,
  No. 3:16-cr-462-CRB (N.D. Cal. filed Dec. 22, 2017), ECF No. 160-1 ............................5, 15

*United States v. Rincon*,
  28 F.3d 921 (9th Cir. 1994) ..........................................................................................9

*United States v. Tamman*,
  782 F.3d 543 (9th Cir. 2015) ........................................................................................2

*United States v. Urena*,
  659 F.3d 903 (9th Cir. 2011) ......................................................................................13

*United States v. W.R. Grace*,
  526 F.3d 499 (9th Cir. 2008) ................................................................................13, 14

*United States v. W.R. Grace*,
  597 F. Supp. 2d 1143 (D. Mont. 2009).....................................................................11

*United States v. Waste Mgmt. of Haw. Inc.*,
  No. 14-cr-468, 2015 WL 3725345 (D. Haw. June 12, 2015) ...................................15

*White v. Ford Motor Co.*,
  312 F.3d 998 (9th Cir. 2002), *as amended*, 335 F.3d 833 (9th Cir. 2003) ..............1

**Other Authorities**

Fed. R. Crim. P. 16 .............................................................................................13, 14

Fed. R. Evid. 702 ............................................................................................... *passim*

Fed. R. Evid. 703 ......................................................................................10, 11, 12

Fed. R. Evid. Rule 403.........................................................................................9, 12

Hon. Thomas D. Schroeder, *Toward a More Apparent Approach to Considering
  the Admission of Expert Testimony*, 95 Notre Dame L. Rev. 2039, 2050-51
  (2020).............................................................................................................................3

Defendant Lynch's Motion In Limine to Limit Proposed Expert Testimony (Lynch MIL No. 4)
Case No. 3:18-cr-00577-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:

PLEASE TAKE NOTICE that on February 21, 2024, at 2:00 pm or as soon thereafter as counsel may be heard, in Courtroom 6, 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Michael Richard Lynch will and hereby does move the Court to exclude the opinions of Steven Brice regarding non-IFRS classification of revenue (Brice Report § 4); disagreements with Deloitte on accounting decisions based on the same information Deloitte considered (Brice Report §§ 2.7-2.10); and references to the foreign legal proceedings against Dr. Lynch, Deloitte, and others.  Dr. Lynch also moves the Court to limit Brice's case-in-chief opinion testimony to the opinions disclosed in his case-in-chief report, and limit his rebuttal testimony to opinions that both respond to the defense's experts and were disclosed in his rebuttal report.

This motion is based upon the following Memorandum of Points and Authorities, the Declaration of Nicholas Silverman, any oral argument, and the pleadings and exhibits on file with the Court.

Dated: January 17, 2024                    Respectfully submitted,

*/s/ Brian M. Heberlig*
Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Christopher J. Morvillo (Admitted Pro Hac Vice)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

Defendant Lynch's Motion In Limine to Limit Proposed Expert Testimony (Lynch MIL No. 4)
Case No. 3:18-cr-00577-CRB

## SUMMARY OF ARGUMENT

The government proposes to have Steven Brice testify to a wide range of topics spanning 79 pages and 14 appendices totaling hundreds of pages.  Although he believes Brice's opinions are entirely without basis, Dr. Lynch has no objection under the Federal Rules of Evidence to the government eliciting the majority of proposed opinions subject to the appropriate foundation being laid.  Four discreet categories of opinion, however, are inadmissible and should be excluded.

First, Brice has experience in IFRS accounting.  In section 4 of his report, however, he proposes opinions on a series of non-IFRS topics related to whether Autonomy correctly classified revenue among Autonomy-defined product categories unrelated to IFRS accounting. Brice points to no applicable education or expertise that qualifies him to opine on whether Autonomy correctly implemented its own definitions for these non-IFRS categories.  Nor does Brice point to a reliable application of a reliable principle or methodology, both requirements under Fed. R. Evid. 702.  Instead, Brice appears to argue that Autonomy's implementation of its revenue stream categories was misleading because Brice found it to be misleading.  Such ipse dixit "expert" testimony is prohibited by the rules and requires the Court to exercise its gatekeeper role to prevent jury confusion.  This is an issue the jury is fully capable of resolving without expert testimony.

Second, in sections 2.7-2.10 of his report—relating to dozens of "hosting" transactions, OEM transactions, transactions with alleged "timing" errors, and a transaction with an alleged error of valuation—Brice proposes to testify about his disagreements with accounting decisions that Deloitte approved in real time based on the very same information that Brice uses to reach his opinions: typically, no more than the face of the contracts at issue.  This criminal fraud case is not about whether Deloitte's confirmation of Autonomy's accounting decisions was correct. Deloitte is not on trial and no Deloitte auditor is identified as a co-conspirator.  If Deloitte approved Autonomy's accounting decisions with access to the relevant information, those decisions cannot possibly be part of a scheme to defraud.  Brice's opinions on these topics would be fundamentally unhelpful and confusing to the jury.  Even if Brice could establish that

Autonomy and Deloitte made mistakes in their accounting decisions (which Dr. Lynch disputes), expanding an already lengthy and complex case to cover four topics related to good-faith accounting disagreements is unnecessary, and the Court should exclude these proposed opinions.

Third, Brice cites to factual findings from Dr. Lynch's UK civil trial and Deloitte's UK disciplinary proceeding to corroborate many of his opinions. Fed. R. Evid. 703 prohibits relying on inadmissible evidence—like these foreign adjudications—as a basis for expert testimony unless the government demonstrates that experts in his field commonly rely upon such adjudications in reaching their conclusions. They do not. But even if accountants did commonly rely on such adjudications to render opinions, Brice still could not disclose the existence of the otherwise inadmissible foreign adjudications to the jury unless the probative value of those adjudications "substantially outweighs their prejudicial effect." Fed. R. Evid. 703. Brice's proposed testimony fails both prongs of Fed. R. Evid. 703, and Brice should be precluded from referencing any findings in the foreign adjudications in his trial testimony.

Fourth, the government gave notice of Brice's case-in-chief testimony on November 8, 2023 as required by the Court's scheduling Order. When the government noticed Brice's rebuttal testimony on January 3, 2024, however, his report included several, expansive new areas of testimony that were not referenced by the defense experts and are not proper areas for rebuttal testimony. The government's untimely disclosure in violation of the Court's order prevented Dr. Lynch from securing responsive expert testimony on these topics. Given the limited time left before trial, the Court should exclude all new topics of proposed expert opinion in Brice's second report that are not responsive to Dr. Lynch's expert notices.

Defendant Lynch's Motion In Limine to Limit Proposed Expert Testimony (Lynch MIL No. 4)
Case No. 3:18-cr-00577-CRB

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.     The Court Should Exclude Brice's Opinions Regarding Whether Autonomy's Non-IFRS Descriptions Were Accurate (Brice Report § 4) Because They Are Inadmissible Under Fed. R. Evid. 702**

3

4

Starting in Q1 2010, Autonomy classified its revenue streams into five categories:

5

(i) "IDOL Cloud," (ii) "IDOL Product," (iii) "IDOL OEM," (iv) "Deferred revenue release," and

6

(v) "Services."  These categories were not defined by the IFRS.  Instead, they were Autonomy-

7

defined terms.  In section 4 of his report, Brice proposes to testify that Autonomy did not

8

correctly categorize revenue among its own non-IFRS categories.  Brice's proposed opinion

9

testimony is inadmissible under Fed. R. Evid. 702.

10

The proponent of expert testimony bears the burden of demonstrating that the expert is

11

qualified to give each proposed opinion, that the expert's specialized qualifications will be

12

helpful to the trier of fact, that the testimony is based on sufficient facts or data, that the

13

testimony is "the product of reliable principles and methods," and that the opinion "reflects a

14

reliable application of the principles and methods" to the case.  Fed. R. Evid. 702.  The proposed

15

opinions regarding Autonomy's use of non-IFRS categories are inadmissible because Brice is not

16

qualified to render the proposed opinions, he has not reliably applied a qualifying methodology

17

to reach his opinions, and his opinions would not be helpful to the jury.

18

**A.     Brice Has No Special Qualifications to Testify About the Accuracy of Non-IFRS Categorization by Autonomy**

19

20

An expert witness may not opine on topics outside of their areas of expertise.  *See White*

21

*v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002), *as amended*, 335 F.3d 833 (9th Cir.

22

2003).  Brice is not qualified to opine on Autonomy's **non-IFRS** terms, which by definition do

23

not fall within Brice's IFRS accounting expertise.  Brice's analysis of Autonomy's non-IFRS

24

terms relies on two sources, neither of which relate to the IFRS: the Disclosure and Transparency

25

Rule ("DTR") of the London Stock Exchange and the Companies Act of 2006.  Brice Report §§

26

4.3.2, 4.3.5 (Nov. 8, 2023) (attached as Silverman Decl. Ex. 1).  Brice lists no experience,

27

knowledge, or training in these areas that would qualify him to testify on these legal

28

requirements.

While Brice makes a passing reference to the IFRS Preface and the Conceptual Framework of Financial Reporting, Brice Report § 4.3, neither document provides a standard or methodology for evaluating Autonomy's non-IFRS terms.  As the IFRS Preface explains, it is not a standard in itself, but an "expla[nation] of the scope, authority, and timing of the application of IFRS Standards."  IFRS Preface ¶ 1.  Similarly, the Conceptual Framework is "*not* a Standard*,*" but instead a description of "the objective of, and the concepts for," financial statements.  *Id.* ¶ 3 (emphasis added).  Brice relies on the general portion of the Conceptual Framework that states that financial information must be "complete, neutral, and free from error," which plainly involves no accounting standard nor requires expertise to apply.  Brice Report § 4.3.4.  Brice does not apply any IFRS standard that would require expertise.

Whether revenue stream disclosures comply with Autonomy's own definitions is not an issue requiring accounting expertise.  In Section 4, Brice acknowledges that non-IFRS terms such as "IDOL OEM" are not defined in IFRS.  Brice Report § 4.5.1.  He nevertheless purports to use "principles" such as the DTR and the UK Companies Act to opine that Autonomy's disclosures "did not faithfully represent" Autonomy's revenues and were not a "fair and balanced" summary.  Brice Report § 4.4.1.  While the cited portions of the DTR and the UK Companies Act embody generic principles, they lose reliability when interpreted by someone who has no purported expertise on the topic.  Brice does not have any legal expertise, but even if he did, he would be prohibited from using it.  *See United States v. Tamman*, 782 F.3d 543, 553 (9th Cir. 2015) (affirming district court's decision to exclude opinion that defendant acted in conformity with unidentified SEC rules and regulations as an improper opinion because it amounted to a legal conclusion).  Because Brice's opinions are not based on any special expertise, they are inadmissible.

## B.    Brice's Opinions Are Not the Product of Reliable Application of Principles and Methods Under Rule 702(d)

Federal Rule of Evidence 702 limits expert testimony to opinions based on the application of reliable principles and methods.  Reliability is based on whether (1) the reasoning or methodology underlying the testimony is scientifically valid; and (2) the reasoning or

methodology can properly be applied to the facts in issue. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993) ("*Daubert I*"); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (holding that *Daubert* framework applies not only to scientific testimony but to all expert testimony). Although cases in the Ninth Circuit previously noted that "shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion," *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), the December 1, 2023 amendment to Fed. R. Evid. 702 clarified that whether an expert's basis and methodology are sufficiently reliable are each questions of admissibility and not of weight. *See* Fed. R. Evid. 702, 2023 adv. comm. note; Hon. Thomas D. Schroeder, Chair of the Advisory Committee's Subcommittee on Rule 702, *Toward a More Apparent Approach to Considering the Admission of Expert Testimony*, 95 Notre Dame L. Rev. 2039, 2050-51 (2020) (explaining the intent to overrule *Primiano*'s standard as the impetus for the amendment). The government bears the burden of proving that Brice's testimony about non-IFRS categorization is the product of reliable principles and methods, and reflects a reliable application of those principles and methods.

Brice does not explain his method for applying the Companies Act and DTR to Autonomy's disclosures. Instead, he opines that Autonomy's categorization is not accurate because certain transactions reported as generating revenue in the non-IFRS categories at issue "[do] not match[] Autonomy's depiction of [the relevant category]," Brice Report § 4.4.1(a)-(c). He then opines on the types of "key characteristics" he believes transactions should have to match Autonomy's description. Having defined his own characteristics, he opines that Autonomy reported transactions in the non-IFRS categories despite those transactions lacking Brice's characteristics, which in his view rendered them inconsistent with Autonomy's "depiction of the [non-IFRS] revenue stream." *See, e.g.*, Brice Report §§ 4.5.2-4.5.4 (opinions on IDOL OEM revenue). At no time in this "analysis" does Brice apply any reliable methodology or principle; he simply provides his subjective beliefs. *Id.* § 4.5-4.8. Brice opines that Autonomy's non-IFRS revenue categorization was misleading (despite making no showing and laying no foundation as to how the market understood the terms). Brice does not evaluate

Defendant Lynch's Motion In Limine to Limit Proposed Expert Testimony (Lynch MIL No. 4)
Case No. 3:18-cr-00577-CRB

information that a market participant would have known, either directly or indirectly, about Autonomy's revenue stream definitions, such as commentary about Autonomy's non-IFRS categories.  Instead of applying a methodology, Brice provides his singular subjective opinion.

Brice's methodology is the epitome of ipse dixit and has not been shown to be reliable. *Kumho Tire Co.*, 526 U.S. at 157 (noting that expert testimony need not be admitted if the opinion is connected to the underlying data only through the ipse dixit of the expert); *In re Incretin-Based Therapies Prods. Liab. Litig.*, No. 21-55342, 2022 WL 898595, at *1 (9th Cir. Mar. 28, 2022) (table opinion) ("To demonstrate testability under *Daubert*, an expert must provide sufficient explanation for their methodology such that '[s]omeone else using the same data and methods [would] be able to replicate the result[s].'" (quoting *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1047 (9th Cir. 2014)).  The only method that Brice provides for his conclusion that Autonomy's categorization is misleading is his subjective belief to that effect. That is not enough.  *Incretin*, 2022 WL 898595 (affirming exclusion due to lack of proof that conclusions were based on more than "subjective beliefs").  Brice's conclusions are unreliable and should be excluded.

### C.    Brice's Opinions Are Not Helpful to the Finder of Fact

Expert testimony is only admissible to the extent it is necessary and helpful to the jury. Rule 702's requirement that testimony "assist the trier of fact to understand the evidence or to determine a fact in issue" goes primarily to relevance.  *Daubert I*, 509 U.S. at 591–92; s*ee United States v. Cruz-Escoto*, 476 F.3d 1081, 1088 (9th Cir. 2007) (holding that it was not an abuse of discretion to exclude irrelevant expert testimony that it is difficult to look in one direction when your vehicle is pointed in the opposite because that is "*within the understanding of a common juror*") (emphasis added).

Brice's opinion that Autonomy did not follow its own definitions when reporting the non-IFRS revenue categories is well within the ken of a lay juror.  No specialized understanding is necessary to assess whether the transactions that Autonomy reported in the non-IFRS categories matched Autonomy's definitions.  The jury can compare the characteristics of the transactions at issue with Autonomy's published definitions and draw its own conclusions.  *See S.E.C. v.*

*Daifotis*, No. C 11-00137 WHA, 2012 WL 2051193, at *3, 5 (N.D. Cal. June 7, 2012) (precluding expert testimony that made conclusions as to whether actual conduct complied with industry standards or whether the defendant's statements were approved pursuant to that practice because it was a factual issue for the jury's consideration).  On this issue, Brice's opinions are no more probative than those of the prosecutors.  Expert testimony is not helpful when the factfinder is "well equipped" to determine the issue "without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1040-41 (9th Cir. 2010) (quoting Fed. R. Evid. 702 adv. comm. note).  Brice's testimony on these topics is unhelpful, unnecessary and inadmissible.[1]

## II.  The Court Should Exclude Brice's Opinions In Sections 2.7-2.10 Because They Are Not Helpful to the Jury, a Waste of Time, Confusing, and Unfairly Prejudicial

Autonomy's accounting decisions for all transactions over $1 million in value were reviewed by outside auditors from Deloitte, one of the Big Four accounting firms.  The government's theory of fraud is not that Deloitte was a co-conspirator, but rather that Deloitte was misled by Autonomy into approving various accounting decisions.  In sections 2.7-2.10 of his report, however, Brice proposes to opine on four categories of transactions where there is no such allegation.  Brice relies on the same information that Deloitte reviewed in real time, but comes to a different conclusion on the proper accounting treatment.  Brice's transaction summaries do not allege that Autonomy withheld key information from Deloitte or rely on information unknown to Deloitte; instead, he just disagrees with Deloitte's opinion as to the proper accounting treatment, typically based solely on the face of the contract.

Brice's proposed opinions should be excluded.  It is irrelevant which expert—Brice or

---

[1] Notably, Brice did not opine on the classification of non-IFRS revenue streams in his expert report in *Hussain*.  *See* Expert Report of Steven Brice, Ex. 11660, *United States v. Hussain*, No. 3:16-cr-462-CRB (N.D. Cal. filed Dec. 22, 2017), ECF No. 160-1.  Allowing "junk" expert testimony on the topic of revenue streams will extend the trial unnecessarily and expand the realm of dense information to be considered by the jury.

Deloitte—is correct; an incorrect accounting decision without deceit is not fraud.

    **A.**    **Sections 2.7-2.10 of the Brice Report Amount to Disagreements with Deloitte's Conclusions Based on the Same Information Provided to Deloitte**

Section 2.7 of the Brice Report relates to hybrid data hosting transactions in which Autonomy sold its customers both a good—a license to use Autonomy software—and a service—ongoing data hosting in Autonomy's storage space.  Autonomy accounted for these sales by recognizing the license portion of the revenue upfront upon contract execution as sale of goods and the storage service portion of the revenue over time as rendering of services, which it disclosed in its 2010 Annual Reports.  *See* Silverman Decl. Ex. 2 § 51 n.2(i), (ii) (describing treatment of transactions that include license and service elements).  Brice concluded, based on the contract language, that the license and storage components of the transactions should have been treated together as the rendering of services and recognized rateably over the life of the contract.  Brice Report §§ 2.7.4-2.7.7.[2]

Section 2.8 of the Brice Report relates to Autonomy's sales to Original Equipment Manufacturers (OEMs).  Autonomy typically sold licenses to OEMs in exchange for "an upfront non-refundable fee," followed by "license payments of around three percent of product sales" once the OEM used Autonomy's software to develop and sell its own product.  *See* Silverman Decl. Ex. 3 (2009 Annual Report and Accounts) at 9.  These sales were recognized up-front upon contract execution as the sale of goods and disclosed in that category on Autonomy's financial statements; Autonomy did not report any royalty revenue.  *See id.* § 41 n.2(e).  Based on his interpretation of the contracts, Brice opines that the "upfront non-refundable payments" constituted "prepayment of royalty fees," not sale of goods, and should have been recognized as

---

[2] A representative example of Brice's opinions relating to these "hosting" services involves a transaction between Autonomy and Bank of America in Q1 2009.  Brice's opinions are based entirely on the contract language.  *See* Silverman Decl. Ex. 8 (Appendix F, Software Focus Transaction SW-09-013).  Deloitte, on the other hand, reviewed the same contract and came to a different accounting conclusion.  *See* Silverman Decl. Ex. 9 (Deloitte workpaper for Bank of America agreement).

such over the life of the contract.  Brice Report §§ 2.8.3- 2.8.4.[3]

Section 2.9 of the Brice Report relates to whether revenue from contracts involving post-sale installation of Autonomy's software could be recognized at the time of contract execution or only after the installation period.  Autonomy recognized revenue either when "no significant obligations remain," or when "[customer] acceptance has occurred," and disclosed that policy in its annual reports.  2010 Annual Report at 51 (Silverman Decl. Ex. 2).  Brice cites five transactions in which he concludes from the contract language that installation was a "significant" part of the contract, which he opines prevented the recognition of revenue until installation was complete.  Brice Report §§ 2.9.1-2.9.2.  Deloitte reviewed the same contracts in real time and agreed with Autonomy that no significant post-delivery obligations existed, which allowed revenue to be recognized upon execution of the contract.[4]

Section 2.10 of the Brice Report relates to Autonomy's software transactions with Iron Mountain around the time that Autonomy acquired Iron Mountain.  Because the software transactions were in close proximity to the acquisition, the accounting rules required a determination of whether the transactions were effectively part of the business combination and, if so, whether they were conducted at fair value.  Deloitte devoted substantial attention to this issue and concluded, based on a fair value study, that one of the transactions should be revalued and the other need not be.  Deloitte reported its findings to Autonomy's Audit Committee.[5] Brice's opinions are based on a critique of Deloitte's fair value study in which he disagrees with the comparable sales that Deloitte chose and reaches his own valuation, expressly second-

---

[3] A representative example of Brice's opinions related to these OEM transactions involves a transaction between Autonomy and Verdasys in Q1 2009.  Brice's opinions are based entirely on the contract language.  *See* Silverman Decl. Ex. 10 (Appendix F, Software Focus Transaction SW-09-012).  Deloitte, on the other hand, reviewed the same contract and came to a different accounting conclusion.  *See* Silverman Decl. Ex. 11 (Deloitte workpaper for Verdays agreement).

[4] A representative example of Brice's opinions related to these "installation" contracts involves a transaction between Autonomy and Pfizer in Q3 2009.  Brice's opinions are based entirely on the contract language.  *See* Appendix F, Software Focus Transaction SW-09-027 (attached as Silverman Decl. Ex. 12).  Deloitte, on the other hand, reviewed the same contract and came to a different accounting conclusion.  *See* Silverman Decl. Ex. 13 (Deloitte workpaper for Pfizer agreement).

[5] Silverman Decl. Ex. 14 (Deloitte Q2 2011 Report to the Audit Committee).

7

1   guessing Deloitte's analysis.[6]

2       In each of these instances, Brice opines that Deloitte reached the wrong accounting

3   determination, based almost entirely on the same information considered by Deloitte in real time.

4   **B.   Disagreements with Autonomy's Outside Auditor Are Not Helpful to the**
        **Jury, a Waste of Time, Confusing, and Unfairly Prejudicial**

5       In order to satisfy Fed. R. Evid. 702, the proponent of expert testimony must demonstrate

6   that the proposed expert testimony "logically advances a material aspect of the proposing party's

7   case." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert*

8   *II*"). Because expert testimony "carries special dangers to the fact-finding process," the Ninth

9   Circuit instructed that "judges must . . . exclude proffered scientific evidence under Rules 702

10  and 403 unless they are convinced that it **speaks clearly and directly to an issue in dispute** in

11  the case, and that it will not mislead the jury." *Id.* at 1321 n.17, 1322 (explaining that expert

12  testimony "can be both powerful and quite misleading because of the difficulty in evaluating it")

13  (emphasis added). The Supreme Court has characterized this as the "fit" between the testimony

14  and a disputed issue in the case, instructing that an expert cannot testify to "valid scientific

15  'knowledge' about whether a certain night was dark" unless there are "creditable grounds

16  supporting … a link" between darkness and a fact in issue in the case. *Daubert I*, 509 U.S. at

17  591-92 (noting that fit "requires a valid scientific connection to the pertinent inquiry as a

18  precondition to admissibility").

19      Because Brice's opinions do not speak clearly and directly to the issue in dispute, they

20  are inadmissible. *See, e.g.*, *Johnson v. Wyeth LLC*, No. 10-cv-2690, 2012 WL 1150857, at *3

21  (D. Ariz. Apr. 5, 2012) (excluding opinions about defendant's marketing strategy because

22  "[w]ithout a link between Wyeth's marketing and plaintiff's prescribing doctor, [the expert]'s

23

24

25  [6] *See* Silverman Decl. Ex. 15 (Appendix F, Software Focus Transaction SW-11-096). Brice also opines
    that one of the Iron Mountain transactions should have been accounted for as a royalty arrangement based

26  on the face of the contract, whereas Deloitte concluded that the prepaid, nonrefundable payment in the
    same contract should be accounted for up-front as the sale of a good. *Compare* Silverman Decl. Ex. 16

27  (Deloitte's workpapers for the Iron Mountain reseller contract), *with* Silverman Decl. Ex. 15 (Appendix F,
    SW-11-096).

28

Defendant Lynch's Motion In Limine to Limit Proposed Expert Testimony (Lynch MIL No. 4)
Case No. 3:18-cr-00577-CRB

opinions about the subtle effects of marketing on prescribing practices are irrelevant");

*Generations at Pinnacle Peak LLC v. Whitestone Pinnacle of Scottsdale*, No. 17-cv-4597, 2021

WL 9597885, at *7 (D. Ariz. Feb. 22, 2021) (excluding an expert opinion on a topic that had not

been advanced as a basis of the claimed wrongdoing).  This is not a civil case about whether

Autonomy's accounting decisions approved by Deloitte were correct or incorrect.  In the absence

of a nexus between Brice's opinions and intentional fraud, they are irrelevant and inadmissible.

 Even if Brice's opinions bore some marginal relevance, the risk of unfair prejudice,

confusion, and waste of time would render those opinions inadmissible.  *See Daubert I*, 509 U.S.

at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in

evaluating it.  Because of that risk, the judge in weighing possible prejudice against probative

force under Rule 403 of the present rules exercises more control over experts than over lay

witnesses.") (citation omitted); *United States v. Rincon*, 28 F.3d 921, 926 (9th Cir. 1994) ("Given

the powerful nature of expert testimony, coupled with its potential to mislead the jury, we cannot

say that the district court erred in concluding that the proffered evidence would not assist the trier

of fact and that it was likely to mislead the jury.").  Expanding on the already-lengthy list of

disputed accounting topics would unnecessarily extend the trial and risk jurors getting confused

about which topics involved alleged misrepresentations and which topics are mere differences in

accounting treatment judgments.  The Court should therefore exercise its discretion to exclude

the opinions summarized by sections 2.7-2.10 of the Brice Report.

**III.     The Court Should Prohibit References to Foreign Legal Proceedings in Brice's Opinions**

 The government has agreed that it will not seek to introduce evidence of the outcomes or

findings in the various legal proceedings that occurred prior to this trial, including the criminal

trial of Mr. Hussain, the UK High Court civil trial against Dr. Lynch and Mr. Hussain, and the

Financial Reporting Council ("FRC") proceedings against Deloitte and Messrs. Knights and

Mercer.  The defense anticipates entering a stipulation with the government on this issue.

 The government should also be precluded from eliciting evidence from Mr. Brice on the

same topics.  At several points in his report and repeatedly in the numerous accompanying

appendices, Brice references findings from the FRC proceedings and the UK civil proceedings that he claims corroborate, confirm, or are consistent with his opinions. *See, e.g.*, Silverman Decl. Ex. 15 (Brice Report App. F SW-09-026 at 4 (quoting the UK trial court)); Silverman Decl. Ex. 7 (Rebuttal Report App. H at 14, 16 (quoting FRC)). Such testimony is inadmissible because the government cannot demonstrate that "experts in [Brice's] field would reasonably rely on those kinds of facts . . . in forming an opinion[.]" Fed. R. Evid. 703. Even if experts did rely on those kind of facts, Brice should also be precluded from referencing information from the foreign proceedings because any minimal probative value does not "substantially outweigh[] the[] prejudicial effect" of the references. *See id.*

### A. References to the Foreign Proceedings in Brice's Report

Brice discusses his reliance on two sets of foreign proceedings.

First, Brice states that he relied upon the FRC report. Brice Report § 1.5.2(b). Indeed, the FRC proceedings are referenced close to 100 times in Brice's individual analyses of software transactions in Appendix F. A representative example of such a reference, regarding a Q3 2009 transaction with reseller MicroLink, is Brice's opinion:

> The speed at which the PO was finalized, alongside the fact that the PO was raised on the last day of Autonomy's reporting period, calls into question the economic substance of the PO. Indeed, the Executive Counsel of the FRC noted Autonomy having "sold the software to a VAR on the last day of the period and produced [m]anagement accounts which recognized the whole of the revenue on that sale in that period" was a factor which "should have raised serious concerns about the commercial substance of the sales."

Silverman Decl. Ex. 4 (Appendix F, Software Focus Transaction SW-09-028, at 5).

Notably, the FRC report explicitly states that the Tribunal did not consider evidence, or make any findings, as to other individuals who were not parties to those proceedings. Silverman Decl. Ex. 5 at 1 ("The Tribunal has not made, and should not be taken to have made, any finding against any individual or entity other than Deloitte, Mr. Knights and Mr. Mercer (including Autonomy, or any individual who was a director, member of management or employee at Autonomy."). The report emphasizes, therefore, that "it would not be fair to treat any part of the

10

1    Tribunal's findings, including any part(s) of the Tribunal Report, as constituting or evidencing

2    findings against anyone other than Deloitte, Mr. Knights and/or Mr. Mercer." *Id*.

3         Second, Brice also states his reliance upon "the pleadings, disclosure, witness

4    testimonies, expert reports and transcripts" in the UK High Court proceedings.  Brice Report at

5    1.5.2(d).  It appears, however, that Brice principally relied on the opinion of Justice Hildyard,

6    which Brice references dozens of times in support of his opinions on the majority of his

7    Appendix F transaction summaries.  For example, with respect to a Q1 2009 transaction with

8    reseller Capax, Brice opines that his opinion is "consistent with the findings of the Honourable

9    Mr. Justice Hildyard."  Appendix F, Software Focus Transaction SW-09-011 at 8 (quoting

10   Justice Hildyard's opinion).  Brice repeats this "consistent with" refrain in many other

11   summaries.

12        **B.       Under Fed. R. Evid. 703, the Court Should Preclude Brice from Relying on
                     the Foreign Proceedings at Trial Because Such Proceedings Are Not Relied
13                   Upon By Experts In His Field**

14        Rule 703 permits an expert to rely on inadmissible evidence in forming opinions for trial

15   testimony only where such "facts and data" is the type that "experts in the particular field would

16   reasonably rely on . . . in forming an opinion on the subject."  Fed. R. Evid. 703; *see also* Fed. R.

17   Evid. 703 adv. comm. note (Rule 703 "would not warrant admitting in evidence the opinion of

18   an 'accidentologist' as to the point of impact in an automobile collision based on statements of

19   bystanders," because that is not something experts in that field reasonably rely on).  IFRS

20   accounting experts do not rely on outside legal proceedings as a material source in reaching their

21   accounting conclusions.  Nor has the government made any contrary showing in attempting to

22   carry its burden of proof.  *See United States v. W.R. Grace*, 597 F. Supp. 2d 1143, 1149 (D.

23   Mont. 2009) (prohibiting government's experts from offering opinions based on certain data

24   where the government failed "to show that an expert in any field would rely upon the data in

25   question").  Thus, Brice should be precluded from referencing any information from the foreign

26   proceedings in trial testimony.

27

28

Defendant Lynch's Motion In Limine to Limit Proposed Expert Testimony (Lynch MIL No. 4)
Case No. 3:18-cr-00577-CRB

1

2

### C. Under Fed. R. Evid. 703 and 403, the Court Should Preclude Brice from Testifying About Findings or the Outcome of Foreign Proceedings Because the Prejudicial Effect Substantially Outweighs Any Probative Value

3

Brice should be precluded from testifying about the outcome of or findings from the

4

foreign proceedings.  An expert may disclose inadmissible evidence to the jury in order to

5

explain his opinion "only if [its] probative value in helping the jury evaluate the opinion

6

substantially outweighs [its] prejudicial effect."  Fed. R. Evid. 703; *see* Fed. R. Evid. 703 adv.

7

comm. note ("[W]hen an expert reasonably relies on inadmissible information to form an opinion

8

or inference, the underlying information is not admissible simply because the opinion or

9

inference is admitted.").  Rule 703 creates a "presumption against disclosure to the jury of

10

information used as the basis of an expert's opinion and not admissible for any substantive

11

purpose, when that information is offered by the proponent of the expert."  *Turner v. Burlington*

12

*N. Santa Fe R. Co.*, 338 F.3d 1058, 1061-62 (9th Cir. 2003) (excluding lab report because the

13

expert was using the report "as substantive evidence of his ultimate conclusion").[7]

14

Whatever probative value may exist in Brice's impressions of observations about foreign

15

proceedings involving different parties does not come close to "substantially outweighing" the

16

significant prejudicial effect of hearing that other fact finders have reached negative conclusions

17

about the transactions that the jury is being asked to consider.  In other words, even if it was

18

reasonable for Brice to rely on outside legal proceedings in reaching his conclusions (which Dr.

19

Lynch disputes), the government should not be permitted to bring in hearsay through the

20

backdoor—in the form of analyses and opinions from the outside proceedings—under the guise

21

22

---

23

[7] *See also Munoz v. PHH Mortg. Corp.*, No. 108CV00759MMBBAM, 2022 WL 138670, at *4 (E.D. Cal.

24

Jan. 14, 2022) (recognizing that "Rule 703 inverts the burden on the 'prejudice versus probativity'" compared to the traditional Rule 403 test, such that under Rule 703 test "the proponent of the

25

opinion . . . may disclose those facts or data to the jury only if that party can demonstrate that their probative value 'substantially' outweighs their prejudicial effect"); *Christiansen v. Syverson*, 516 F. Supp.

26

3d 1151, 1157 (D. Idaho 2021) ("Rule 703 presents a balancing test that puts a thumb on the scale against the disclosure of inadmissible evidence[.]"); *NetAirus Techs., LLC v. Apple, Inc.*, No.

27

LACV1003257JAKEX, 2013 WL 12322092, at *6 (C.D. Cal. Oct. 23, 2013) (precluding government's expert from testifying about facts and data underlying two surveys under Rule 703 where the evidence

28

was otherwise inadmissible).

Defendant Lynch's Motion In Limine to Limit Proposed Expert Testimony (Lynch MIL No. 4)
Case No. 3:18-cr-00577-CRB

of an expert relying on data.  As in *Turner*, the true intent—or, at the very least, the true impact—here is "to use it as substantive evidence of his ultimate conclusions."  *Turner*, 338 F.3d at 1062.  Accordingly, the Court should preclude Brice from referencing or discussing information related to the outside proceedings.

## IV.  The Court Should Limit Brice's Case-in-Chief Testimony to the Opinions Expressed in His Case-in-Chief Report, and Preclude Opinions Not Timely Disclosed

In accordance with the Court's Scheduling Order (Dkt. 192), the government produced a report of Brice's case-in-chief testimony on November 8, 2023, and produced a purported rebuttal report with additional appendices on January 3, 2024.  The January 3 revised report goes beyond merely responding to the defense experts and adds new arguments and areas of opinion testimony that were neither present in Brice's case-in-chief disclosure nor addressed by the defense experts.  The Court should limit Brice's case-in-chief testimony to the opinions that were contained in Brice's case-in-chief report disclosed on November 8, 2023.  Moreover, the new opinions in Brice's second report that go beyond rebuttal of defense expert disclosures should be excluded entirely as untimely.

### A.  Brice's Case-In-Chief Testimony Should Be Limited to the November 8, 2023 Case-In-Chief Report

Rule 16 provides, in part, that an expert disclosure "must contain a complete statement of all opinions that the government will elicit from the witness" and "the bases and reasons for them."  Fed. R. Crim. P. 16(a)(1)(G)(iii).  If a party fails to comply, the court may properly exclude testimony.  *See* Fed. R. Crim. P. 16(d)(2)(c); *see also United States v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011) (holding that district courts have "unquestioned discretionary power to exclude evidence that should have been produced" including expert testimony); *United States v. W.R. Grace*, 526 F.3d 499, 516 (9th Cir. 2008) (holding that "the government would violate Rule 16 if it were to call expert witnesses who were not timely disclosed," and affirming district court's authority to reject supplemental disclosures of expert testimony).  Here, pursuant to the Court's Scheduling Order, the deadline for the Rule 16 disclosure of the government's case-in-chief Rule 16 expert was November 8, 2023.  Scheduling Order, Dkt. 192.  That Rule 16

Defendant Lynch's Motion In Limine to Limit Proposed Expert Testimony (Lynch MIL No. 4)
Case No. 3:18-cr-00577-CRB

1   disclosure had to "contain a complete statement of all opinions that the government will elicit

2   from the witness" at trial.  Fed. R. Crim. P. 16(a)(1)(G)(iii).[8]  The deadline for disclosure of

3   expert witnesses who would be called in rebuttal to defense expert testimony was January 3,

4   2024.  Dkt. 192.  Brice was not free to disclose new opinions two months later that were not

5   responsive to the defense expert reports.  Indeed, even Brice's true rebuttal opinions, added in

6   the expanded report on January 3, are inadmissible until and unless the defense adduces expert

7   testimony to be rebutted.

8        **B.**    **Brice's Rebuttal Testimony Should Be Limited to Responding to the**

9                **Defense's Expert Testimony**

9          Brice's expanded report contains a new eleven-page section and five appendices that

10  respond to the defense's expert disclosures.  *See* Silverman Decl. Ex. 6 §§ 5-5.3 (rebuttal report)

11  (noting that "In [section 5] of my report I provide a summary of my opinions on the Taylor

12  Report and the Levitske Report."); (Silverman Decl. Ex. 7 (Appendices H-L to rebuttal report)).

13  Although he believes Brice's opinions are again without basis, Dr. Lynch has no objection under

14  the Federal Rules of Evidence to the government eliciting the rebuttal opinions in that section

15  and those appendices, subject to the appropriate foundation being laid.

16         However, Brice's expanded report *also* attempts to add an entire expert report's worth of

17  new material that does not rebut or respond to the defense disclosures.  *See id.* § 2.2.4 (new

18  section on Autonomy revenues vs. market consensus[9]; *id.* §§ 3.3.3(a), 3.4, 3.4.2, 3.4.4, 3.4.7,

---

[8] The government purported that "Mr. Brice respectfully reserve[d] his right to revise his report if further evidence becomes available to him."  DOJ Letter to Defendants (Nov. 8, 2023) (Silverman Decl. Ex. 17). No such right existed to be reserved.  Rule 16 does not permit the government and its experts to reserve the ability to change or supplement expert opinion before or during trial.  *See W.R. Grace*, 526 F.3d at 516 (holding that "[t]he district court had the authority under Rule 16(d)(2) to reject this unilateral reservation of rights" by the government to "supplement its [expert] disclosures" after the deadline in the court's scheduling order).  Moreover, no "new" evidence became available to Brice that was unavailable during the preceding six years during which Brice has been retained by the government.

[9] Brice's initial report included a graph showing that Autonomy's quarterly revenue was generally consistent with the consensus of analysts' expectations, but stated: "I am therefore evaluating this matter further in terms of whether similarly situated companies report revenues which are at or very close to market analysts' expectations."  Brice Report § 2.2.4.  Such supplementation after the deadline is improper.  In any event, Brice's rebuttal report says nothing about the practices of other companies; it opines that meeting analysts' expectations is "surprising" given certain cherry-picked internal

14

3.4.8, 3.4.13-3.4.23 and Appendix G (adding opinion that Autonomy recognized revenue for certain hardware sales too early); *id.* Table 4.4 (adding Dell-Morgan Stanley to existing opinion); *id.* §§ 6.1.7-6.1.19, Figures 6.2-6.5, Tables 6.1-6.3, and Appendix M (addition of five financial quarters of analysis regarding whether Autonomy properly disclosed revenue in its non-IFRS categories[10]); *see also id.* Appendix B (adding new sources).  None of this mass of new opinions and arguments constitutes rebuttal, and it should be excluded as untimely.[11]

There is no excuse for Brice's failure to include all opinions in November when the defense would have had time to prepare and to rebut the opinions with its own experts.  The government retained Brice approximately five years ago and produced a report in connection with the *Hussain* case that involved a virtually identical indictment (except for severed Count 17 on which Brice does not opine).  There is no excuse for the government's and Brice's failure to complete the expert disclosures by the deadline imposed by the Court, and the government should be precluded from offering the untimely expert opinions at trial.

## CONCLUSION

For the reasons stated herein, the Court should exclude the opinions contained in Brice Report §§ 2.7-2.10, 4; prohibit reference to the foreign legal proceedings; and limit Brice's case-in-chief opinion testimony to the opinions disclosed in his case-in-chief report, and limit his rebuttal testimony to opinions that respond to the defense's expert testimony.

---

spreadsheets shortly before quarter end in which Autonomy had not yet achieved its revenue target. Rebuttal Report at 2.2.4.  In addition to being untimely, Brice's "opinion" has nothing to do with accounting expertise and should also be excluded for the reasons stated in Section I above.

[10] The new opinions and analyses in Appendix M are also covered by Section I above and are not the proper subject of expert accounting testimony because (a) they involve non-IFRS metrics outside Brice's area of expertise, and (b) the jury does not need expert testimony to resolve these issues.  However, even if the Court declines to exclude the testimony on these grounds, Appendix M and Brice's related opinions must be excluded because they were not timely disclosed.

[11] *United States v. Waste Mgmt. of Haw. Inc.*, No. 14-cr-468, 2015 WL 3725345 at *2-3 (D. Haw. June 12, 2015) (excluding expert testimony because it was not timely, and rejecting the government's rebuttal testimony claim because "allowing such a sleight of hand would make a nullity of expert witness disclosure deadlines." (citing *United States v. Hodges*, 480 F.2d 229, 232 (10th Cir. 1973) ("The Government cannot introduce what should have been the direct testimony of these experts under the 'guise of rebuttal'.")).

1

Dated: January 17, 2024                    Respectfully submitted,

2

3                                          */s/ Brian M. Heberlig*
                                           Reid H. Weingarten (Admitted Pro Hac Vice)
4                                          Brian M. Heberlig (Admitted Pro Hac Vice)
                                           Michelle L. Levin (Admitted Pro Hac Vice)
5                                          Nicholas P. Silverman (Admitted Pro Hac Vice)
                                           Dwight J. Draughon (Admitted Pro Hac Vice)
6                                          Drew C. Harris (Admitted Pro Hac Vice)
7                                          **Steptoe LLP**
                                           1114 Avenue of the Americas
8                                          New York, NY 10036
                                           Telephone: (212) 506-3900
9

10                                         Jonathan M. Baum (SBN: 303469)
                                           **Steptoe LLP**
11                                         One Market Street
                                           Steuart Tower, Suite 1070
12                                         San Francisco, CA 94105
                                           Telephone: (510) 735-4558
13                                         jbaum@steptoe.com

14

15                                         Christopher J. Morvillo (Admitted Pro Hac Vice)
                                           Celeste L. Koeleveld (Admitted Pro Hac Vice)
16                                         Daniel S. Silver (Admitted Pro Hac Vice)
                                           **Clifford Chance US LLP**
17                                         31 West 52nd Street
                                           New York, NY 10019
18                                         Telephone: (212) 878-3437
                                           christopher.morvillo@cliffordchance.com
19

20                                         *Attorneys for Defendant*
                                           *Michael Richard Lynch*
21

22

23

24

25

26

27

28

Defendant Lynch's Motion In Limine to Limit Proposed Expert Testimony (Lynch MIL No. 4)
Case No. 3:18-cr-00577-CRB