# EXHIBIT 12

**mazars**  Software Focus Transaction SW-09-027

| **SW-09-027 – Pfizer, Inc ("Pfizer")** | |
|---|---|
| **Amount of sample item:** | $4.500 million |
| **Period initially recognised:** | Quarter 3 2009 |
| **Date of contract:** | 23 September 2009 |
| **Total contracted amount:** | $4.775 million |

**Summary of the transaction**

This transaction relates to a "*Software License*" agreement between Pfizer Inc. ("**Pfizer**") and Autonomy, dated 23 September 2009[1] (the "**Software License Agreement**").

The software sold pursuant to the Pfizer Software License Agreement included, *inter alia*, the "*Autonomy IDOL Server*", "*Aungate Legal Hold*" and "*Meridio EDRM Software*".

The "*License Fee*" set out in the Pfizer Software License Agreement was $4,500,000.  The Pfizer Software License Agreement also included a "*Maintenance Fee (first year)*" in the amount of "*5% of License Fee per annum*".

On 30 September 2009, Autonomy recognised software licence revenue of $4,500,000 in relation to the Pfizer Software License Agreement.  On the same day Autonomy recorded a debtor $4,750,000, reflecting the two invoices it raised on that date in respect of the "*Software License Fee*" and the "*Maintenance Fee (1st year)*".

Autonomy's ledgers record that Pfizer paid Autonomy $4,750,000 on 30 November 2009.

Section 3.1 of the Pfizer Software License Agreement relates to "*Deliverables*", and reads "*Upon execution of this Agreement, Licensor shall deliver the Licensee (i) the Software and any associated Documentation; and (ii) any installation and training services set forth in Exhibit C.  The Licensed Products may be delivered electronically, such as via FTP transfer.  Delivery of the Software shall be ExWorks point of manufacturer (per Incoterms 2000)*".

On 2 October 2009 Autonomy and Pfizer entered into the agreement "*Autonomy Statement of Work; Pfizer Inc. – Phase 1 – ALH Onboarding*"[2] (the "**First Pfizer SOW**").  The "*Engagement Summary*" for the Pfizer SOW read "*Customer recently licensed Autonomy's IDOL, Aungate Legal Hold (ALH_, Aungate Investigator & ECA, and Meridio EDRM software to automate eDiscovery processes such as legal hold administration, collection and preservation of data, analysis and review of data, and management/disposition of unstructured records/data.  Customer has requested Autonomy to implement the above-referenced software in a phased approach, with the first phase ("Phase 1" under this Professional Services arrangement) to cover onboarding (installation and configuration) of base Aungate Legal Hold (ALH) and Investigator/ECA components.  Autonomy will install and*

---

[1] HP-SEC-01906390
[2] HP-SEC-01906353

| SW-09-027 – Pfizer, Inc ("Pfizer") |
|---|
| *configure the technology at the Customer Site and remotely*".  The estimated number of man hours required to fulfil the implementation tasks set out in the First Pfizer SOW was 644. <br><br> On 30 October 2009, Autonomy and Pfizer entered into the agreement "*Autonomy Statement of Work; PA Office of Attorney General-MERIDIO Implementation*"[3] (the "**Second Pfizer SOW**").  The Second Pfizer SOW set out various tasks related to the implementation of the "Meridio" software sold pursuant to the Pfizer Software License Agreement.  The estimated number of man hours required to fulfil the implementation tasks set out in the Second Pfizer SOW was 360. |

**Issues identified by Mazars**

**A. Autonomy recognised revenue in relation to the transaction before the risks and rewards of ownership had transferred to the customer**

In my view, Autonomy recognised the revenue associated with the Pfizer Software License Agreement before the risks and rewards of ownership of the software set out therein had transferred to Pfizer, and as such the transaction did not meet the revenue recognition requirements of IAS 18.14(a).  I have reached this conclusion because:

a) the Pfizer Software License Agreement defined its "*Deliverables*" as including "*installation and training services*"; and

b) the First Pfizer SOW and the Second Pfizer SOW set out a number of tasks required for the successful installation, configuration and implementation of the software set out in the Pfizer Software License Agreement.  Both the First Pfizer SOW and the Second Pfizer SOW were agreed in October 2010, after the Pfizer Software License Agreement; and

c) the implementation tasks set out in the First Pfizer SOW and the Second Pfizer SOW were not insignificant, requiring an estimated 1,004 man hours to complete in total.

IAS 18.16(c) explains that scenarios in which "*goods are shipped subject to installation and the installation is a significant part of the contract which has not yet been completed by the entity*" are examples of scenarios where the seller retains the risks and rewards of ownership, even after goods have been delivered.  Based on the factors set out above, it is my opinion that SW-09-027 is analogous with the scenario cited in IAS 18.16(c).

Moreover, it was Autonomy's stated accounting policy that:

"*If an acceptance period is required, revenues are recognised upon the earlier of customer acceptance or the expiration of the acceptance period.  […]  If significant post-delivery obligations exist or if a sale is subject to customer acceptance, revenues are deferred until no significant obligations remain or acceptance has occurred*".

---

[3] SEC-AUSA5-EPROD-000290539

**mazars**  Software Focus Transaction SW-09-027

### SW-09-027 – Pfizer, Inc ("Pfizer")

In my view, because the Software License Agreement listed the "*installation*" of the software set out therein as a "*Deliverable*", the implementation tasks set out in the First Pfizer SOW and the Second Pfizer SOW constituted "*significant post-delivery obligations*". As such, Autonomy's stated accounting policy required that revenue from the Pfizer Software Agreement be deferred until "*no significant obligations remain or acceptance has occurred*". In my opinion, this occurred upon completion of the implementation tasks set out in the First Pfizer SOW and the Second Pfizer SOW.

### Conclusion and proposed adjustment

In my opinion SW-09-027 did not satisfy the revenue recognition criteria of IAS 18 and the revenue recognised in Quarter 2 2009 in relation to SW-09-027 should be reversed.

In my opinion the revenue recognition criteria of IAS 18 were met when Autonomy completed the implementation tasks set out in the First Pfizer SOW and the Second Pfizer SOW. I have not seen anything to confirm when this happened, but for the purposes of my adjustment I have assumed that the implementation tasks were completed in Q4 2009.

My adjustment is set out in the table below:

| SW-09-027 – Pfizer, Inc ("Pfizer") | Q1 2009 $000 | Q2 2009 $000 | Q3 2009 $000 | Q4 2009 $000 | Q1 2010 $000 | Q2 2010 $000 | Q3 2010 $000 | Q4 2010 $000 | Q1 2011 $000 | Q2 2011 $000 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Original accounting** | | | | | | | | | | |
| Revenue | - | - | 4,500 | - | - | - | - | - | - | - |
| **Proposed adjustment** | | | | | | | | | | |
| Revenue | - | - | (4,500) | 4,500 | - | - | - | - | - | - |
| **Adjusted accounting** | | | | | | | | | | |
| Revenue | - | - | - | 4,500 | - | - | - | - | - | - |