PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email:  Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-577 CRB |
| Plaintiff, | UNITED STATES' MOTION *IN LIMINE* NO. 4: TO EXCLUDE POST-ACQUISITION EVIDENCE AND ADMIT CERTAIN POST-ACQUISITION STATEMENTS |
| v. | |
| MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN, | Pretrial Conference: February 21, 2024 |
| Defendant. | Trial Date: March 18, 2024 |

**INTRODUCTION**

In compliance with the Court's November 29, 2023 ruling severing Count 17, the government moves to exclude evidence of facts and events occurring after the October 2011 acquisition except upon notice and this Court's prior approval. That approval, as this Court observed during *United States v. Hussain* and again in these proceedings, should follow only where the evidence constitutes an appropriate and competent lookback or assessment of what happened before the acquisition prior to October 2011. Respectfully, establishing a bright line cut-off to relevant evidence at or around the October 2011 acquisition will aid the Court and the parties in complying with the Court's severance

U.S. MOT. IN LIMINE RE: POST-ACQ EVIDENCE    1
CR-18-577 CRB

order and managing a complex trial record.

With notice and an advanced ruling, however, certain post-acquisition evidence may be properly admitted because it describes, assesses, or looks back on relevant events prior to the October 2011 acquisition. To that end, the government hereby gives notice of four examples of such evidence and, for the reasons set forth below, hereby seeks leave to adduce it in the government's case-in-chief. To ensure fairness, the government also moves for a ruling from the Court requiring the defense, if it puts on a case, to provide the same notice and obtain prior approval before adducing evidence occurring after the October 2011 acquisition.

## FACTUAL BACKGROUND

This Court considered during the trial of Sushovan Hussain whether to admit evidence of events that occurred after HP closed its acquisition of Autonomy in October 2011. Before the trial, the Court advised the parties that "[the defense] can't say or they shouldn't say: Well, look, Hewlett-Packard was negligent. . . . I don't know that that's relevant." Order Denying Motions for New Trial and Judgment of Acquittal at 69:10-12, *United States v. Hussain*, Case No. CR 16-462 CRB, (N.D. Cal. July 30, 2018), ECF No. 419 (quoting transcript of pretrial conference). Later, during the defense case in *Hussain*, the Court said that it "generally did not find HP's actions to be relevant, apart from the questions it asked during due diligence." *Id.* at 70:5-9.

The Court did not bar all post-acquisition evidence, however: Where events after the deal's close proved relevant facts about Hussain and Autonomy's pre-acquisition conduct, the Court let the jury learn about those events. For example, the Court admitted a revenue restatement prepared after the close because it "spoke to whether Autonomy misrepresented its finances in its audited financial statements." *Id.* at 57:12-14; *id.* at 60 ("The restatement went directly to the question of falsity."). And the Court permitted the jury to hear a stipulation that HP received Autonomy's books and records after the acquisition—a fact that, the Court explained, bore on defendant Hussain's intent. *Id.* at 64:17-22.

On appeal, the Ninth Circuit upheld the Court's exclusion of certain post-acquisition evidence. *See United States v. Hussain*, 818 Fed. Appx. 765, 766 (9th Cir. 2020). Such evidence included "post-acquisition valuation reports and evidence suggesting that HP was aware of Autonomy's hardware sales." *Id*. This Court did not abuse its discretion in excluding this evidence from Hussain's trial, the

appeals court ruled, on the basis that it "would have been 'collateral and confusing' or of little probative value to whether Hussain defrauded the company before the deal closed." *Id*. And Hussain, the appeals court continued, had "other ways" to present that evidence. *Id*.

As the parties prepared for trial in Lynch and Chamberlain's case, the Court confronted these issues again. At a November 2023 hearing on—among other items—the Defendants' requests for subpoenas to various third parties for post-acquisition evidence, the Court *sua sponte* severed Count 17 from the superseding indictment. The Court made clear in response to defense arguments that it viewed the lion's share of evidence relevant to the remaining counts as dating to the pre-acquisition period ending October 2011 and would expect motions related to any evidence that parties sought to admit after that date.

Consistent with this history and the concerns animating the Court's rulings, the government moves to exclude any *unnoticed* evidence about events post-dating the October 2011 acquisition of Autonomy by HP. And the government hereby notices and moves the Court to admit post-acquisition evidence associated with four witnesses: Joel Scott, John Schultz, Antonia Anderson, and Christopher Yelland. The government addresses the witnesses' testimony below, ordered chronologically in the sequence they occurred after HP's acquisition.

## ARGUMENT

**I.   THE COURT SHOULD ADMIT TESTIMONY BY JOEL SCOTT ABOUT MAY 2012 WHISTLEBLOWER DISCLOSURES.**

Joel Scott served as the Chief Operating Officer of Autonomy's Americas unit in the years leading up to HP's acquisition. A lawyer by training, Scott remained with HP after the departure of Autonomy's core management team—including defendant Lynch —in the spring of 2012. At that point, the government anticipates that Scott will testify, he became a whistleblower. In brief, and as he testified in *Hussain*, Scott became unsettled after learning from HP's general counsel about certain actions taken by Lynch and other Autonomy leaders upon their exit from HP. *See Hussain* Trial Tr. at 2743-44. Scott then asked HP's general counsel—John Schultz, the subject of further discussion below—if he knew of Autonomy's hardware resale practices (Scott expected that Schultz would). When Scott learned that Schultz had no knowledge of the resales, Scott asked for a meeting. *See*

*Hussain* Trial Tr. at 2744.

During that May 2012 meeting, and in meetings and calls with Schultz that followed, Scott made a series of disclosures about Autonomy business practices that now lie at the center of the government's fraud allegations. For example, according to Schultz, Scott described Autonomy's resort to hardware resale deals for topline revenue, and how those revenues had fallen away after HP acquired the company. *See* Declaration of Zachary G.F. Abrahamson in Support of United States' Motion *in Limine* No. 4, Exhibit A (filed herewith). Scott also discussed the topic of value-added resellers ("VARs") and how Autonomy's revenue declined when it stopped relying on VAR deals.

Mr. Scott's spring 2012 disclosures to HP are relevant for several reasons. For example, the government expects that Scott's spring 2012 disclosures will corroborate other aspects of Scott's testimony relating to his understanding of pre-acquisition events. The fact that Scott was hesitant to come forward earlier is evidence of Dr. Lynch's control and intimidation over Autonomy. In addition, that testimony will suggest that—as a result of the closeness with which Defendants held information regarding various Autonomy practices—Scott and others had incomplete understandings of the mechanisms for and purposes behind conduct at the center of the government's fraud case.

## II. THE COURT SHOULD ADMIT TESTIMONY BY JOHN SCHULTZ ABOUT JULY 2012 STATEMENTS BY DEFENDANT LYNCH.

John Schultz is the Chief Operating & Legal Officer of Hewlett Packard Enterprise, one of the two companies born from Hewlett-Packard's split in 2015. In the spring of 2012, months after the close of HP's Autonomy acquisition, Schultz became HP's general counsel. That summer, Schultz became involved in HP's efforts to learn more about Autonomy's accounting irregularities and ultimately met with Lynch in London in late July 2012.

At trial, the government anticipates that Schultz will testify as to Lynch's statements during that July 2012 meeting. Schultz recalls Lynch discussing several topics, including: (1) modifications to Autonomy executive employment agreements effected around the time of Lynch's departure; (2) hardware resale deals executed with third parties in the years leading up to HP's acquisition; (3) deals between Autonomy and certain VARs in the years leading up to HP's acquisition; (4) Autonomy's financial performance following its acquisition by HP; and (5) Autonomy's restructuring of certain

hosting deals in the years leading up to HP's acquisition. The government briefly proffers additional information about the hardware resale and VAR topics below.

As for hardware resale deals, the government expects that Schultz will testify that Lynch initially evaded answering questions about the nature of Autonomy's hardware resales, before claiming that the sales formed part of strategic partnerships with certain customers. Schultz will also testify that Lynch expressed surprise when confronted with the fact that Autonomy's 2010 hardware sales may have exceeded $100 million. On the subject of the "value-added reseller" MicroLink, the government expects Schultz to testify that Lynch denied that Autonomy had written off MicroLink's debt to Autonomy after acquiring the company in late 2009. (In fact, just months after the MicroLink acquisition, Autonomy wrote off some $16 million that MicroLink owed Autonomy, primarily stemming from at-risk deals at the center of the government's fraud allegations.) Finally, the government expects that Schultz will testify that, near the meeting's end, Lynch leaned across the table and said that he knew the British press and that HP did not want a public relations battle with Lynch – echoing threats Lynch made to others including Daud Khan and Brent Hogenson.

These July 2012 statements by Lynch to Schultz are relevant to Lynch's intent and to his credibility. Especially with regard to Autonomy's hardware resales, the evidence will show that Lynch in 2012 misrepresented his knowledge about the scale of those resales. Put simply, the government will prove that Lynch, prior to HP's acquisition of Autonomy, knew that Autonomy made tens of millions of dollars selling hardware. But when confronted by Schultz about those sales, Lynch lied. Those lies show Lynch's consciousness of guilt and should be considered by the jury.

### III. THE COURT SHOULD ADMIT TESTIMONY BY CHRISTOPHER YELLAND ABOUT A JANUARY 2014 RESTATEMENT OF AUTONOMY SYSTEMS LIMITED'S FINANCIAL ACCOUNTS.

The Court may recall Christopher Yelland, an accountant who joined HP years before the Autonomy acquisition and served as a European finance director for HP's software business around 2011. The main post-acquisition topic on which Yelland will testify—an accounting restatement prepared by Yelland and filed in January 2014—was the subject of substantial litigation in *Hussain* and is the subject of a separate motion *in limine* filed herewith. *See* United States' Motion *in Limine* No. 1:

To Admit Evidence of Autonomy Systems Limited's Restatement and Related Summary Charts (filed herewith). That separate motion *in limine* contains a fulsome recitation of the rulings admitting Yelland's restatement and the reasoning underlying those rulings. *See*, *e.g.*, Order Denying Motions for New Trial and Judgment of Acquittal at 57, *United States v. Hussain*, Case No. 16-462 CRB (N.D. Cal. July 30, 2018), ECF No. 419 ("The restatement was relevant under Rule 401 because it spoke to whether Autonomy misrepresented its finances in its audited financial statements.").

For completeness, the government notes here that Yelland's restatement falls within the category of post-acquisition evidence that the Court should admit for its tendency to make relevant facts—here, the truth or falsity of Autonomy's pre-acquisition representations—more probable. *See* FED. R. EVID. 401 (Test for Relevant Evidence), *and* Order Denying Motions for New Trial and Judgment of Acquittal, *supra*, at 60 ("The restatement went directly to the question of falsity."). Yelland's restatement, and his testimony related thereto, should be admitted.

### IV. THE COURT SHOULD ADMIT TESTIMONY BY ANTONIA ANDERSON ABOUT A JANUARY 2014 RESTATEMENT OF AUTONOMY SYSTEMS LIMITED'S FINANCIAL ACCOUNTS.

Among those who worked with Yelland on the Autonomy Systems restatement was Antonia Anderson, a former Deloitte manager who audited Autonomy before joining the company just before the HP acquisition. During the *Hussain* trial, Anderson testified that she worked on the restatement after the HP acquisition, including by reviewing transactions and supporting materials. That testimony necessarily included Anderson's reactions to various discoveries about Autonomy deals and her understanding of the reasons underlying the restatement's ultimate findings. *See*, *e.g.*, *Hussain* Trial Tr. at 3133:15-3134:14 (describing Anderson's review of Bank of America contract). But more importantly, that testimony served to explain for the jury how to interpret the restatement itself. *See id*. at 3135-36 (explaining the meaning of various headers and language used in the restatement exhibit). The government expects to elicit similar testimony from Anderson in Lynch and Chamberlain's trial; that testimony should be admitted.

### CONCLUSION

For these reasons, the Court should admit testimony about the facts and events described above and otherwise exclude unnoticed evidence of facts and events that post-date the October 2011

1  acquisition of Autonomy by Hewlett-Packard.

3  DATED: January 17, 2024

PATRICK D. ROBBINS
Attorney for the United States Attorney
Acting Under Authority Conferrred by
28 U.S.C. § 515

By:     /s/ Zack Abrahamson
ROBERT S. LEACH
ADAM A. REEVES
KRISTINA N. GREEN
ZACHARY G.F. ABRAHAMSON
Assistant United States Attorneys