PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email: Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 18-577 CRB |
| Plaintiff, | UNITED STATES' MOTION *IN LIMINE* NO. 5: TO ENFORCE DEFENDANTS' RECIPROCAL DISCOVERY OBLIGATIONS |
| v. | |
| MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN, | Pretrial Conference: February 21, 2024<br>Trial Date: March 18, 2024 |
| Defendant. | |

## INTRODUCTION

The United States moves to enforce Defendants' reciprocal discovery obligations. The United States has complied with its discovery obligations pursuant to Rule 16 of the Federal Rules of Criminal Procedure. In addition, the government confirms that it is in compliance with its *Brady* obligations and will continue to comply with those obligations. The United States has produced voluminous discovery and will continue to meet its obligations by sending out any additional relevant discovery as it becomes available. For the reasons set forth below, it appears that the Defendants have not.

## FACTUAL BACKGROUND

The United States brings this motion to enforce Defendants' reciprocal discovery obligations. There are three bodies of evidence of particular concern that motivate this motion: First, evidence from the government's investigation suggests that Defendants or their conspirators took documents and other evidence from Hewlett-Packard at the time of their respective departures. Second, the public record of related civil proceedings in the United Kingdom shows that those proceedings featured a discovery corpus comprising millions of documents—none of which has been produced to the United States. Third, the United States learned this month that Defendant Lynch has met with a potential witness—Poppy Gustaffson—roughly 20 times in preparation for this trial. But the government has received no *Jencks* material associated with those meetings. In fact, on January 3, 2024, both Defendants certified through counsel that they had *no* Rule 16 discovery whatsoever to produce. *See* Declaration of Zachrary Abrahamson in Support of United States' Motion *in Limine* No. 5 at ¶ 2 ("Abrahamson Decl.") (filed herewith). As made clear in the factual descriptions below, the record calls into question the accuracy of those representations.

### A.      Documents or Other Evidence That Defendants or Their Conspirators Took With Them Upon Leaving Hewlett-Packard.

The government's investigation has revealed at multiple points that Defendants and their conspirators took documents and other evidence from Hewlett-Packard at the time of their departures. For example, HP's general counsel during the Autonomy investigation told the government that he questioned Lynch about a "mini notebook" assigned to Dr. Lynch—a notebook that HP had not received following Dr. Lynch's departure. *See* Abrahamson Decl., Exhibit A at 2. As for Defendant Chamberlain, the government in May 2016 interviewed Chris Chan, a former Autonomy IT manager based in the United Kingdom. Chan told the government that upon Chamberlain's spring 2012 departure from the company, Chan received Chamberlain's Autonomy laptop and made a back-up copy of the device, per the company's policies at the time. *See* Abrahamson Decl., Exhibit B at 4. Shortly thereafter, Chan told the government that he had a meeting with Andy Kanter, formerly Autonomy's chief operating officer. Kanter told Chan that he had a separate copy of Chamberlain's laptop—and that Chan should wipe both the remaining physical device and the copy that Chan had prepared. Chan

complied.

In another example, an associate of Defendant Lynch told the government that she used to provide Hewlett-Packard documents to Hussain well after his exit from the company. Those remarks came from Vanessa Colomar, initially a friend of Dr. Lynch's wife who went on to join Autonomy's communications team around the time of HP's acquisition. In a 2022 meeting with government investigators, Colomar described interactions with Defendant Lynch after the HP acquisition. Defendant Lynch, Colomar said, kept a cupboard in his office for Autonomy-related documents that he retained after departing HP. Colomar told the government that she witnessed Dr. Lynch retrieve documents from the cupboard on multiple occasions in or around 2014. Relatedly, in another meeting with the government, Colomar said that defense witness and former Autonomy finance staffer Lisa Harris would send Colomar spreadsheets for her to print for Lynch's co-conspirator Hussain. *See* Abrahamson Decl., Exhibit C at 9.

Defendants have produced none of these materials.

B.   **Evidence That Defendants May Have Obtained Through Civil Proceedings in the United Kingdom.**

In addition to evidence that may reside on Chamberlain's laptop, the United States has particular concerns regarding evidence that Defendants may have received through civil proceedings in the United Kingdom. As this Court well knows, successors to Hewlett-Packard brought civil fraud claims against Defendant Lynch and Sushovan Hussain in the United Kingdom that reached resolution in May 2022. Those multi-year proceedings generated a discovery corpus comprising millions of electronic documents (36,000 of which made their way into the "trial bundle" for the 93-day English proceeding).[1] Yet not one of those documents has been produced to the United States pursuant to Defendants' Rule 16 obligations.

C.   ***Jencks*** **Material Associated With Defense Witness Poppy Gustaffson.**

In addition to the categories described above, the government has concerns about statements by defense witness Poppy Gustaffson. Gustaffson serves as Chief Executive Officer of Darktrace, a British cybersecurity company seed-funded by Defendant Lynch's venture capital fund. Last fall, Defendant

---

[1]   *ACL Netherlands BV v. Lynch*, [2002] EWHC 1178 (Ch) (May 17, 2022), 2022 WL 01557021.

U.S. MOT. IN LIMINE RE: RECIPROCAL DISC.      3
CR 18-577 CRB

Chamberlain sought this Court's permission to conduct a pretrial deposition of Gustaffson in London. That deposition is presently scheduled for January 25, 2024.

In anticipation of Gustaffson's deposition, the government learned from Gustaffson's lawyer that lawyers for Defendant Lynch had spoken with Gustaffson on close to *20* occasions. *See* Abrahamson Decl. at ¶ 3. What's more, just yesterday, Gustaffson's counsel produced to the government a log of communications involving Gustaffson and Defendant Lynch's lawyers from the time of the U.K. fraud trial. *See* Abrahamson Decl., Ex. D. That log shows that Defendant Lynch's lawyers exchanged more than a dozen e-mails with Gustaffson in connection with her witness statement in that matter. Indeed, the log suggests that Lynch's agents to a significant degree drafted Gustaffson's statement, attaching "revised draft witness statement[s]" dated November 12, November 14, and November 15, 2018. *Id*. But notwithstanding that extensive history of communications and meetings, the government has received no records of prior witness statements consistent with defense obligations under Rule 16.

## LEGAL STANDARD

Rule 16 of the Federal Rules of Criminal Procedure sets forth discovery obligations of both the government and of the defendant. The defense's reciprocal obligations are identified in Rule 16(b), which provides that, if a defendant requests disclosure under a different part of Rule 16, then the defense must make available evidence it controls and intends to use "in the defendant's case-in-chief at trial." FED. R. CRIM. P. 16(b)(A)(1)(ii). Moreover, it is well-settled that this Court may *exclude* evidence that a defendant failed to produce pursuant to his discovery obligations. FED. R. CRIM. P.16(d)(2) ("the court may . . . prohibit the party from introducing the undisclosed evidence"); *see also Taylor v. Illinois*, 484 U.S. 400, 414-15 (1988) (upholding trial court's exclusion of witness testimony for defendant's failure to comply with discovery request); *United States v. Scholl*, 166 F.3d 964, 972 (9th Cir. 1999) (court's exclusion of checks that defendant failed to produce during discovery was not an abuse of discretion). This Court should exercise its discretion to order this remedy here if Defendants attempt to introduce any evidence that they have failed to produce in violation of Rule 16(b).

As for witness statements, Rule 26.2 makes clear that defendants have obligations paralleling those of the government under the *Jencks* Act. Specifically, the rule provides that a party calling a witness must, upon the government's request and after that witness testifies, produce "any statement of

the witness that is in their possession and that relates to the subject matter of the witness's testimony." FED. R. CRIM. P. 26.2(a). Generally, parties and courts strive for pre-testimonial disclosure in order to avoid trial continuances that would waste the jury's time.

## ARGUMENT

As described above, information obtained during the Autonomy investigation suggests that evidence relevant to Defendants' cases-in-chief may have reached them through various channels. Indeed, by virtue of the related U.K. proceedings and devices retained following Defendants Lynch and Chamberlain's exits from HP, the defense may be sitting on voluminous materials whose contents are unknown to the government. Yet the government has received no reciprocal discovery productions from the defense to date. At this late stage, permitting the defense to spring undisclosed evidence on the government at trial would prejudice the government and disrupt the trial presentation with tiresome evidentiary disputes. Therefore, the government submits this motion to exclude any evidence offered by the Defendants at trial that they failed to produce prior to trial in violation of their reciprocal discovery obligations.

Finally, any defense attempt to evade its discovery obligations (or its obligation to disclose witnesses and exhibits) on the grounds that the defendant would be "rebutting" the government's case is inappropriate. Only the government has the right to a rebuttal case, not the Defendants. The defense's case-in-chief is its "rebuttal" opportunity. Lying-in-wait to spring discovery (or witnesses, and/or exhibits) until after the government rests, based on the assertion of a "rebuttal" argument, is improper, prejudicial, and risks delaying the trial. In the interest of judicial economy and efficiency, the Court should require the Defendants to provide the appropriate discovery well in advance of trial. If a Defendant attempts to introduce as evidence items that should have been produced pursuant to the Defendant's discovery obligation, the government will object to the admission of such evidence.

## CONCLUSION

For these reasons, the Court should grant the government's motion *in limine*.

DATED: January 17, 2024

By: /s/ Zack Abrahamson

PATRICK D. ROBBINS
Attorney for the United States Attorney
Acting Under Authority Conferrred by
28 U.S.C. § 515

ROBERT S. LEACH
ADAM A. REEVES
KRISTINA N. GREEN
ZACHARY G.F. ABRAHAMSON
Assistant United States Attorneys