# EXHIBIT 18

| **SW-09-026 – Capax Discovery, LLC ("Kraft")** | |
|---|---|
| **Amount of sample item:** | $4.000 million |
| **Period initially recognised:** | Q3 2009 |
| **Date of contract:** | 30 September 2009 |
| **Total contracted amount:** | $4.200 million |

**Summary of the transaction**

This transaction is respect of a Purchase Order ("**PO**") raised by Capax Discovery, LLC ("**Capax Discovery**") on 30 September 2009[1]. The PO was issued under the "*Value Added Reseller Agreement*" dated May 2009[2].

The software set out in the PO was "*Licensor Archiving Solution*", which included, *inter alia*, "*Digital Safe*" and "*Autonomy IDOL Server Connectors*". The "*Authorized Use*" of the software was that "*Kraft shall use the Software in connection with archiving, searching indexing, and culling documents, data, and communications generated by up to 55,200 internal Kraft Users, and for no other purpose.* […]"[3].

The "*License Fee*" set out in the Capax Discovery PO was $4,000,000. The PO also included a "*Maintenance Fee (first year)*" in the amount of 5% of the licence fee (i.e. $200,000)[4].

On 30 September 2009 Autonomy recognised licence revenue of $4,000,000 in relation to the Capax Discovery PO. On the same day, Autonomy recognised a debtor of $4,200,000, reflecting the invoices raised in relation to the "*License Fee*" and the "*Maintenance Fee (first year)*".

At the date of the Capax Discovery PO, Kraft Foods Global, Inc ("**Kraft**") was already a customer of Autonomy, the parties having entered into the "*Master License Agreement*" on 10 December 2007[5]. In Q3 2009, Autonomy and Kraft had been in discussions regarding a potential transaction in which Kraft would purchase, *inter alia*, "*Digital Safe Archiving Services*" from Autonomy[6]. However, no deal with Kraft eventuated in Q3 2009, with Mr Sushovan Hussain commenting in an email to Dr Michael Lynch on 24 September 2009 "*Kraft – they are saying it's a struggle – bad news*"[7].

After the Capax Discovery PO, Autonomy and Kraft continued to negotiate a transaction, culminating in a deal between the two being reached on 22 December 2009[8]. The direct transaction between Autonomy and Kraft was in respect of, *inter alia*, "*Digital Safe Archiving Services*"[9] and a "*Licensor Archiving Solution*" and the total consideration due was $4,200,000[10] (the "**Direct Kraft**

---

[1] HP-SEC-01945242
[2] HP-SEC-01949663
[3] HP-SEC-01945242, page 2
[4] HP-SEC-01945242, page 2
[5] HP-SEC-01949675, page 3
[6] HP-SEC-01944703; HP-SEC-01944725
[7] HP-SEC-01944882
[8] HP-SEC-01945278
[9] HP-SEC-01945311
[10] HP-SEC-01945110

| SW-09-026 – Capax Discovery, LLC ("Kraft") |
|---|

Transaction"). Autonomy did not recognise any licence revenue in relation to the Direct Kraft Transaction.

Kraft did not agree to remit funds to Capax Discovery[11], and Autonomy's general ledgers record that Kraft settled the amounts due to Autonomy via two tranches on 31 March 2010 and 30 April 2010.

The following payments and credits were made in relation to the Capax Discovery PO:

- on 30 September 2009, Capax Discovery paid Autonomy $400,000 in relation to the PO[12];

- on 29 December 2009, following the completion of a direct deal with Kraft, Autonomy paid Capax Discovery $400,000 in relation to the Capax Discovery PO. This reason for this payment was described in the document "*Revised Payment Arrangement*" entered into between Autonomy and Kraft on 29 December 2009 (the "**Revised Payment Arrangement**")[13] in the following terms: "*Upon execution* [of the Revised Payment Arrangement] *Autonomy shall pay to Capax a one-time fee of Four Hundred Thousand Dollars (US $400,000.00)*"[14];

- the Revised Payment Arrangement also explains that "*Further, upon receipt by Autonomy of all license fees due from Kraft for software licenses granted in connection with the* [Capax Discovery PO]*, Autonomy shall refund to Capax any license fees paid by Capax and received and acknowledged by Autonomy under the PO prior to the date hereof; the parties acknowledge that such amount to be refund totals Four Hundred Thousand Dollars (US$400,000.00)*"[15]. The general ledgers of Autonomy record that on 31 December 2010, this amount was reallocated to reduce the debt payable by Capax Discovery in relation to SW-09-040b (Eli Lilly)[16].

The Revised Payment Arrangement stated that "*In accordance with the terms of the* [Capax Discovery PO]*, Capax is obligated to pay to Autonomy license fees in the amount Four Million Dollars (US$4,000,000.00). However, Kraft has indicated to Autonomy that it shall pay to Autonomy directly the license fees due for the software to be licensed to Kraft in connection with the* [Capax Discovery PO]*. Accordingly, Autonomy shall cancel the license fees due from Capax pursuant to the* [Capax Discovery PO]*, subject to the terms of this letter*"[17].

**Issues identified by Mazars**

**A. The transaction did not meet the revenue recognition requirements of IAS 18.14**

---

[11] HP-SEC-01945257
[12] HP-SEC-01945255
[13] HP-SEC-01945267
[14] HP-SEC-01945267
[15] HP-SEC-01945267
[16] General ledger reference 5974/6405-ANA
[17] HP-SEC-01945267

mazars

Software Focus Transaction SW-09-026

| **SW-09-026 – Capax Discovery, LLC ("Kraft")** |
|---|

In my view the transaction did not meet the revenue recognition requirements of IAS 18.14 for the following reasons:

a) at 30 September 2010 the risks and rewards of ownership of the software set out in the Capax Discovery PO had transferred to Capax Discovery, thereby failing to satisfy the criterion of IAS 18.14(a).  I have reached this conclusion because as noted below, it was Autonomy, not Capax Discovery, who negotiated a sale of the software set out in the Capax Discovery PO, even after the Capax Discovery PO was executed.  In my opinion this is inconsistent with Capax having assumed the rewards of ownership of the software set out in the Capax Discovery PO.  Conversely, I have seen no evidence that Capax sought to complete a sale of the software set out in the Capax PO, which is in my opinion inconsistent with Capax having assumed the risks of ownership of the software set out in the Capax Discovery PO;

b) at 30 September 2009 Autonomy retained managerial involvement of the software set out in the Capax Discovery PO, thereby failing to satisfy the criterion of IAS 18.14(b).  I have reached this conclusion because, notwithstanding the Capax Discovery PO, Autonomy and Kraft continued to directly negotiate a sale of the software set out in the Capax Discovery PO, culminating in the Direct Kraft Transaction on 22 December 2009; and

c) at 30 September 2009 it was not reasonable to conclude that Autonomy would receive an inflow of economic benefit from Capax Discovery in relation to the Capax Discovery PO and as such the transaction did not satisfy the criterion in IAS 18.14(d).  I have reached this conclusion because:

   i. Capax Discovery set up specifically to enter into the License and Distribution Agreement in Q1 2009[18] and only had a short time to generate the resources required to settle a $4,200,000 purchase commitment;

   ii. in an email on 9 October 2009, Mr Matt Stephan of Autonomy noted that "[a request from Autonomy's auditor was] *necessary because Capax is not a big company and it would probably be difficult for Capax to prove that they could pay us if they did not get paid by Kraft*"[19].  In an email on 14 October 2009 Mr Stephen Chamberlain similarly noted that he needed "*a bit of visibility to closure* [of a deal with Kraft] *as Capax are not the largest reseller in world and auditors would like to see this as the final piece of audit evidence*"[20]; and

   iii. on 15 December 2009 Mr Stephen Chamberlain chased Mr John Baiocco (Managing Partner of Capax Discovery) for an update on the status of overdue invoices raised

---

[18] Ex 455(CW)
[19] HP-SEC-01945300
[20] HP-SEC-01944918

| SW-09-026 – Capax Discovery, LLC ("Kraft") |
|---|
| pursuant to the Capax Discovery PO.  Rather than providing a response to Mr Stephen Chamberlain, Mr John Baiocco instead forwarded the email on to Mr Robert Sass of Autonomy with the message "*SOS Thoughts?*"[21] and separately forwarded the email on to Mr Sushovan Hussain of Autonomy with the message "*Any chance we can discuss this?*"[22]. In my view these messages suggest:<br><br>- that Capax Discovery was not able to pay the outstanding invoices; and / or<br>- Capax Discovery had reached a separate with Autonomy that it would not have to pay the invoices until such time as a deal with Kraft eventuated.<br><br>In my opinion, if either of these are the case then it suggests that, as at 30 September 2009 it was not probable that Autonomy would have received an inflow of economic benefit from the Capax Discovery PO; and<br><br>iv.  as it happens, Autonomy did not receive an inflow of economic benefit from the Capax Discovery PO, with the amounts owed by Capax Discovery being cancelled following the Direct Kraft Transaction.  Indeed, the Revised Payment Agreement suggests the net effect of the Capax Discovery PO was actually a net economic outflow to Autonomy in the amount of $400,000.<br><br>My opinion that no revenue should have been recognised on SW-09-026 in Q3 2009 is consistent with the findings of the Honourable Mr Justice Hildyard, who concluded in relation to this transaction and "*it does not seem to me that revenue recognition on the VAR sale in* [SW-09-26] *can be justified*"[23]. |

---

[21] HP-SEC-01949395
[22] HP-SEC-01949423
[23] Civil Judgment; VAR schedules, paragraph 122(5)

mazars

Software Focus Transaction SW-09-026

### SW-09-026 – Capax Discovery, LLC ("Kraft")

**Conclusion and proposed adjustment**

In my opinion SW-09-026 did not satisfy the revenue recognition criteria of IAS 18 and the revenue recognised in Quarter 3 2009 in relation to SW-09-026 should be reversed.

Autonomy did not recognise any licence revenue in relation to the Direct Kraft Transaction. In proposing my adjustment, I have assumed that the Direct Kraft Transaction met the revenue recognition criteria of IAS 18 regarding the recognition of revenue for a sale of goods, but I note that I have not separately reviewed the Direct Kraft Transaction to independently confirm that, in my opinion, that is an appropriate assumption.

My adjustment is set out in the table below:

| SW-09-026 – Capax Discovery, LLC ("Kraft") | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Q1 2009 $000 | Q2 2009 $000 | Q3 2009 $000 | Q4 2009 $000 | Q1 2010 $000 | Q2 2010 $000 | Q3 2010 $000 | Q4 2010 $000 | Q1 2011 $000 | Q2 2011 $000 |
| **Original accounting** | | | | | | | | | |
| Revenue  - | - | 4,000 | - | - | - | - | - | - | - |
| **Proposed adjustment** | | | | | | | | | |
| Revenue  - | - | (4,000) | 4,000 | - | - | - | - | - | - |
| **Adjusted accounting** | | | | | | | | | |
| Revenue  - | - | - | 4,000 | - | - | - | - | - | - |