Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Christopher Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No.: 3:18-cr-00577-CRB<br><br>Judge: Hon. Charles Breyer<br><br>**DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE NO. 1 (ASL RESTATEMENT AND SUMMARY CHART)**<br><br>**(Government MIL No. 1)**<br><br>Date: February 21, 2024<br>Time: 2:00 pm<br>Court: Courtroom 6 – 17th Floor<br>Date Filed: January 31, 2024<br>Trial Date: March 18, 2024 |

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................................................. v

MEMORANDUM OF POINTS AND AUTHORITIES........................................................... 1

I.   The Court Should Not Admit the ASL Restatement ...................................................... 1
   A.   The ASL Restatement Is Inadmissible Under Fed. R. Evid. 402 and 403 ...................... 1
   B.   The ASL Restatement Is Inadmissible Hearsay............................................................... 2

II.  Even if the ASL Restatement Is Admissible, the Proposed Testimony of Yelland and Anderson Is Inadmissible ........................................................................................... 4

III. The Summary Chart (TX 2749) Is Inadmissible............................................................ 6
   A.   TX 2749 Is Inadmissible Under Fed. R. Evid. 1006 and Fed. R. Evid. 403 .................... 6
      1.   TX 2749 Is Not Based on Disclosed, Admissible Evidence......................................... 7
      2.   TX 2749 Does Not Fairly Represent the Underlying Materials and Instead Engages in Inferences, Advocacy, and Pedagogy ............................................................. 9
      3.   The Unfair Prejudice and Waste of Time Caused by TX 2749 Substantially Outweighs Its Probative Value .................................................................................. 10
   B.   TX 2749 Should Not Be Permitted as a Demonstrative During Testimony ................. 11

CONCLUSION ........................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abascal v. Fleckenstein*,
    820 F.3d 561 (2d Cir. 2016)...........................................................................................3

*Ake v. GM Corp.*,
    942 F. Supp. 869 (W.D.N.Y. 1996) ................................................................................2

*Campbell v. Nordco Prods.*,
    629 F.2d 1258 (7th Cir. 1980) .......................................................................................4

*Davis & Cox v. Summa Corp.*,
    751 F. 2d 1507 (9th Cir. 1985) ...................................................................................7, 9

*EEOC v. UMB Bank Fin. Corp.*,
    558 F.3d 784 (8th Cir. 2009) .........................................................................................2

*Grant v. Lockett*,
    No. 19-469, 2021 WL 5816245 (2d Cir. Dec. 8, 2021)..................................................2

*In re Homestore.com, Inc.*,
    No. 01-cv-11115, 2011 WL 291176 (C.D. Cal. Jan. 25, 2011)...................................4, 5

*Icon Enters. Int'l, Inc. v. Am. Prod. Co.*,
    No. 04-cv-1240, 2004 WL 5644805 (C.D. Cal. Oct. 7, 2004) .......................................8

*Millenkamp v. Davisco Foods Int'l, Inc.*,
    562 F.3d 971 (9th Cir. 2009) .........................................................................................3

*MSP Recovery Claims Series LLC v. Farmers Ins. Exchange*,
    Nos. 22-55610, 22-55613, 2023 WL 6633838 (9th Cir. Oct. 12, 2023) ........................3

*Northrop Corp. v. Triad Int'l Marketing, S.A.*,
    842 F.2d 1154 (9th Cir. 1988) .......................................................................................7

*In re Taco Bell Wage & Hour Actions*,
    No. 07-cv-1314, 2016 WL (E.D. Cal. Apr. 8, 2016) .....................................................7

*United States v. Graham*,
    No. 13-cr-37, 2013 WL 6383169 (D. Mont. Dec. 5, 2013).....................................9, 10

*United States v. Hussain*,
    No. 16-cr-462, Dkt. 340 (N.D. Cal. Apr. 16, 2018)............................................. passim

*United States v. Hussain*,
  No. 19-10168, 2019 WL 6248137 (9th Cir. Nov. 15, 2019) ...................................................... 1

*United States v. Johnson*,
  594 F.2d 1253 (9th Cir. 1979) ............................................................................................... 7, 9

*United States v. Rizk*,
  660 F.3d 1125 (9th Cir. 2011) .................................................................................................. 7

*United States v. Salman*,
  No. 11-cr-625 (N.D. Cal. Sept. 3, 2013), Dkt. 188 .................................................................. 9

*United States v. Wood*,
  943 F.2d 1048 (9th Cir. 1991) .................................................................................................. 9

**Other Authorities**

Fed. R. Evid. 402 ............................................................................................................... *passim*

Fed. R. Evid. 403 ............................................................................................................... *passim*

Fed. R. Evid. 702 ................................................................................................................ iii, iv, 6

Fed. R. Evid. 703 ...................................................................................................................... iv, 5

Fed. R. Evid. 802 .......................................................................................................................... iii

Fed. R. Evid. 803 ....................................................................................................................... 2, 3

Fed. R. Evid. 1006 ............................................................................................................ *passim*

3 Wharton's Criminal Evidence (15th ed.) ............................................................................... 9

# SUMMARY OF ARGUMENT

In November 2012, HP publicly accused Dr. Lynch and others of accounting fraud and referred them to numerous agencies for prosecution. Over one year later in January 2014, HP restated subsidiary Autonomy Systems Ltd.'s (ASL) 2009-2010 financial statements. As part of a carefully orchestrated plan, HP used the ASL Restatement to claim that HP's November 2012 accounting fraud accusations had been proven correct.

On January 17, 2024, Dr. Lynch moved to exclude the ASL Restatement and hypothetical opinion testimony about what a restatement of ASL's parent company (the Autonomy Group) would or should have looked like. Simultaneously, the government moved to admit the ASL Restatement and opinion testimony from two witnesses, Christopher Yelland and Antonia Anderson, neither of whom it has noticed as an expert. The government further moved to admit TX 2749, an exhibit it previously described as a summary of "the adjustments. . . of improper transactions that Mr. Yelland believes should have been [made] to Autonomy's accounts to conform with IFRS, as well as the amount of undisclosed hardware revenue," based on (1) a similar document "that Morgan Lewis put together," and (2) a list of "particular transactions" that the U.S. Attorney's Office "would like the summary to reflect [an] adjustment for."[1] The government's motion lacks merit and should be denied.

The Court should exclude the ASL Restatement under Fed. R. Evid. 402, 403 and under Fed. R. Evid. 802, 702, and the Confrontation Clause. As to Fed. R. Evid. 402, 403, the ASL Restatement is fundamentally irrelevant and will confuse and mislead the jury, creating the risk of unfair prejudice. The ASL Restatement is HP's opinion of what ASL's financial statements should have said, but HP did not receive or review those ASL financial statements when deciding whether to purchase Autonomy. As to Fed. R. Evid. 802, 702, and the Confrontation Clause, the ASL Restatement is classic hearsay created in anticipation of litigation. It was based

---

[1] *Compare* Def. Lynch's Mot. to Excl. the 2014 Filing of ASL's 2011 Annual Report (Dkt. 293) (Lynch MIL No. 2); Def. Lynch's Mot. to Excl. Opinion Test. of Christopher Yelland (Dkt. 294) (Lynch MIL No. 3), *with* Gov't Mot to Admit Evidence of ASL's Restatement and Related Summary Charts (Gov't MIL No. 1); Ex. 2 to Decl. of Nicholas Silverman in Supp. Lynch MIL No. 3 (Dkt. 294-4), at 2.

not on routine, reliable audit work by experts but instead on the out-of-court investigation of Morgan Lewis and PwC. Rather than record and disclose that investigation, HP has suppressed it and even invoked privileges that concede the investigation's nexus to anticipated litigation, leaving Dr. Lynch unable to cross-examine the sources of the allegations contained in the ASL Restatement.

Even if the Court found that the ASL Restatement was an admissible business record, the proposed testimony of Yelland and Anderson would be inadmissible hearsay and opinion testimony. The government does not explain under what theory Yelland and Anderson would be allowed to testify to their opinions that (1) IFRS and UK accounting standards required adjustments to the revenue recognition for *individual transactions*—when no individual transactions are identified in the ASL Restatement itself; (2) many of the underlying transactions lacked a commercial purpose—when that opinion is based on Morgan Lewis and PwC's unrecorded interviews of third-party witnesses and similar unconfronted hearsay; and (3) the same adjustments should have been made to the financial statements of Autonomy Group, even though Yelland and HP have repeatedly argued no such adjustments were required, and that it would be impossible to reliably calculate the adjustments because of competing accounting standards and transfer pricing ambiguities. The government provides no argument for why these opinions would be admissible, and they are not. The opinions are not contained in the ASL Restatement, and neither Yelland nor Anderson has been noticed as an expert to testify to opinions. Any noticed opinions would undoubtedly be inadmissible under Fed. R. Evid. 702, and the hearsay repeated by Yelland or Anderson would be inadmissible under Fed. R. Evid. 703 and the Confrontation Clause.

Finally, the chart drafted by HP lawyers at the instructions of the government prosecutors is inadmissible, as the Court held in *United States v. Hussain*. Order ¶ 3, No. 16-cr-462, Dkt. 340 (N.D. Cal. Apr. 16, 2018). The government cites Fed. R. Evid. 1006, a rule that permits introduction of summaries that fairly represent admissible writings so voluminous they cannot be examined in court. Rule 1006 has no application here. As its title states, the chart does not summarize documents but instead summarizes "Revenue Adjustments – 2009 to October 2011."

Dkt. 295-1 at 4, 17.  The government has not disclosed the documents containing those "Revenue Adjustments"; the underlying materials cited by the government do not explain the bases for adjustments.  That is because HP has invoked privilege and refused to disclose the materials that underlie ASL's revenue adjustments.  Even if the government's citation were correct, many of the cited materials are not admissible—they include newspaper articles, a memorandum evaluating MicroLink transactions citing a Morgan Lewis interview and PwC, and non-business record email exchanges among lawyers—and that alone precludes admission under Fed. R. Evid. 1006.  Setting aside the failure to meet any other of Rule 1006's elements, the proffered chart is inadmissible because it is a pedagogical aid that advocates for the government's preferred inferences instead of neutrally setting forth the contents of the underlying documents.  Even if the government remedied all of these Rule 1006 failings, the chart would be inadmissible due to its capacity to waste time and cause unfair prejudice.  The government will be able to argue for some of these inferences during its closing argument; it is not entitled to offer an exhibit that does so.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. The Court Should Not Admit the ASL Restatement

For the reasons explained in Section II of Lynch MIL No. 2, the ASL Restatement is inadmissible. The ASL Restatement relates to financial statements that were never reviewed during the acquisition of Autonomy and is nothing more than a litigant's accusation for the purposes of supporting litigation. It is irrelevant, confusing, misleading, and inadmissible under Fed. R. Evid. 402 and 403. Moreover, the ASL Restatement is inadmissible hearsay.

### A. The ASL Restatement Is Inadmissible Under Fed. R. Evid. 402 and 403

The government argues that the ASL Restatement (1) "is an admission by ASL that its revenues (and therefore Autonomy Corporation plc's revenues) were misstated"; (2) is "probative of the falsity of Defendants' statements"; and (3) is "probative of. . . the magnitude of the correction." Gov't MIL No. 1 at 5. The government is wrong on each argument.

First, the ASL Restatement is not an admission; it is a litigant's accusation. The government's inability to understand the distinction between admission and accusation demonstrates that a jury would be confused and misled by the ASL Restatement and that it is therefore inadmissible under Fed. R. Evid. 403.

Second, Dr. Lynch made no statements about ASL's financials and the ASL Restatement does not contradict any statements made by Dr. Lynch. It has no bearing on the truth or falsity of his statements.

Third, the ASL Restatement contains only evidence of the magnitude of the correction of ASL's profit and revenue, not the magnitude of any hypothetical corrections to other statements that were never calculated or made. To the contrary, HP and Yelland asserted that no such corrections were necessary and that they could not be calculated reliably.

At bottom, the ASL Restatement is a sideshow. The restatement was not a material part of the government's proof in *United States v. Hussain*. *See* Br. for the United States as Appellee, *United States v. Hussain*, No. 19-10168, 2019 WL 6248137, at *56-58 (9th Cir. Nov. 15, 2019) (arguing that any error in admitting the ASL Restatement was harmless beyond a reasonable doubt based on the Court's comment that the jury would have convicted "no matter the Court's

evidentiary rulings"). The ASL Restatement risks significant prejudice and wrongful conviction based on confusion between ASL and Autonomy Group, misrepresentations of the document as an admission, and the suppression of the source information for the ASL Restatement through HP's repeated claims that such information is privileged work product prepared in anticipation of litigation. It should be excluded.

### B.  The ASL Restatement Is Inadmissible Hearsay

On each element of Fed. R. Evid. 803(6), the government's argument lacks merit for the reasons stated in Lynch MIL No. 2, which Dr. Lynch hereby incorporates herein and does not repeat. The government's argument to the contrary is wrong on each of the three key prongs of Fed. R. Evid. 803(6).

First, *Jasper* applies only to restatements offered as business records of post-transaction accounting reviews, not to business records of transactions. Here, the ASL Restatement is a record of transactions, not a record of an accounting review. *See, e.g.*, *Grant v. Lockett*, No. 19-469, 2021 WL 5816245, at *2 (2d Cir. Dec. 8, 2021) (Summary Order) (holding that Citizen Review Board's findings were not a business record because the "investigation" did not occur at or near the time of the underlying events that it described); *EEOC v. UMB Bank Fin. Corp.*, 558 F.3d 784, 792-93 (8th Cir. 2009) ("Although Johnson created the notes contemporaneously with her 2004 interview of Hawkins, she did not create the notes at or near the time Hawkins interacted with Graves in 2002. … we have difficulty finding that [those notes] fit[] within the Rule 803(6) exception."). If the ASL Restatement was a record of an accounting review, it would describe that review, its processes, and how it reached conclusions. *See e.g.*, *Abascal v. Fleckenstein*, 820 F.3d 561, 565 (2d Cir. 2016) (holding that report based on interviews failed contemporaneity requirement because the interviews did not take place near the time of the "underlying events" and report occurred six months late); *Ake v. GM Corp.*, 942 F. Supp. 869, 877-78 (W.D.N.Y. 1996) (holding that report submitted to federal agency evaluating defendant's auto design culpability was not a business record because it was not a record made "at or near the time of the event" at issue); Michael H. Graham, 7 Handbook of Fed. Evid. § 803:6 (9th ed.) (phrasing the relevant question before the court as "Was this record made at or near the time of

1  the matter recorded?"). The ASL Restatement does none of that. Instead, it summarizes
2  financial metrics derived from transactions that occurred years earlier and in which the preparer
3  of the ASL Restatement was uninvolved. The ASL Restatement was not prepared at or near the
4  time of the transactions by those with knowledge, but rather prepared years later by people
5  relying on Morgan Lewis and PwC descriptions of interviews of Autonomy employees. Lynch
6  MIL No. 2 § II.A.

7       Second, the government has also failed to lay the foundation that the accounting review
8  was a "regularly conducted activity" of Autonomy as required by Fed. R. Evid. 803(6)(B) or that
9  the process of restating previous years' results was "a regular practice of that activity" as
10 required by Fed. R. Evid. 803(6)(C). The regularity requirement has been described as requiring
11 a "routine, attended by some notion of 'standard operating procedures'. . . that are followed
12 frequently in recurrent situations." 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal
13 Evidence § 8:78 (4th ed.). It is not satisfied by a one-time investigation relying on arguments
14 from litigation counsel crafted to support a party's legal position. *See id.* ("Records made for
15 purposes of pending litigation should usually be excluded [because] the very fact that they are
16 prepared for litigation means that they are not the product of business routine."); *MSP Recovery*
17 *Claims Series LLC v. Farmers Ins. Exchange*, Nos. 22-55610, 22-55613 , 2023 WL 6633838, at
18 *1 (9th Cir. Oct. 12, 2023) (documents created for purposes of litigation incorporating third-
19 party data and discovery are "not records 'kept in the course of a regularly conducted activity'")
20 (citation omitted); *see also Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 980 (9th Cir.
21 2009) (holding that a nutritionist's letter was not a business record because it was "generated in
22 anticipation of litigation, rather than as part of a regular business practice"); *Abascal*, 820 F.3d at
23 565-66 ("[I]nterpreting survey results and. . . interviews and then creating a summary of the
24 findings. . . is a far cry from the simple act of recording observable information—the type of
25 regularly conducted activity envisioned by this exception."). The investigation that led to the
26 ASL Restatement was a novel response to a unique problem and was not a "regular practice" of a
27 "regularly conducted activity" as required by Fed. R. Evid. 803(6).
28       Third, the government relies on a false narrative to argue the ASL Restatement's

"trustworthiness," completely ignoring that Morgan Lewis, PwC, and litigation considerations drove the ASL Restatement's contents. Regardless of whether ASL was required to file an annual financial statement, the circumstances explained in Lynch MIL No. 2 § II.C (Dkt. 392)[2] render the ASL Restatement—a document that voluntarily levies attacks at former management and leverages litigation arguments to restate transaction contrary to contemporaneous evidence—untrustworthy. *See Campbell v. Nordco Prods.*, 629 F.2d 1258, 1264-65 (7th Cir. 1980) (affirming ruling that a company's post-accident submission to the FAA lacked trustworthiness because of the company's motive to blame the defendant instead of itself). HP was motivated to blame Autonomy, and using the work of Morgan Lewis and PwC, that is precisely what HP did. That accusation is not sufficiently trustworthy to meet the business records exception and should be excluded.

## II. Even if the ASL Restatement Is Admissible, the Proposed Testimony of Yelland and Anderson Is Inadmissible

Even if the ASL Restatement is a business record, the proposed testimony of Yelland and Anderson is inadmissible. *See In re Homestore.com, Inc.*, No. 01-cv-11115, 2011 WL 291176, at *6 (C.D. Cal. Jan. 25, 2011) (admitting restatement as a business record but excluding report explaining the need for the restatement as hearsay). The government proposes to have Yelland and Anderson describe their opinions that IFRS and UK accounting standards required adjusting the revenue recognition on numerous individual transactions. Gov't MIL No. 1 at 4-5. Based on their testimony in *Hussain*, this will likely include hearsay about the opinions of Morgan Lewis and PwC investigators that the relevant transactions lacked a commercial purpose. Then, the government proposes to have Yelland and Anderson describe their opinions that these

---

[2] The government addresses only one of those circumstances, ignoring the ongoing litigation efforts that drove the ASL Restatement, HP's need to back up its 2012 accusations or face potential securities fraud liability from the SEC, Yelland and Anderson's reliance on arguments from litigation counsel, and the use of hindsight to contradict contemporaneous evidence. Lynch MIL No. 2 § II.C. Instead, the government focuses on the refusal of any auditor to sign off on the ASL Restatement's accuracy. Gov't MIL No. 1 at 7. But the government ignores the disagreement of Deloitte, and ignores EY's core objection that it had not obtained "the information" or "explanations" it considered necessary to substantiate the accuracy of the ASL Restatement. Regardless of EY's position, the auditor in the best position to consider contemporaneous evidence disputed the methodology and opinions in the ASL Restatement emphasizing that it was improperly substituting hindsight analysis for contemporaneous evidence. Dkt. 293-11.

1  adjustments "impacted. . . Autonomy Corporation plc's financial statements" prepared under
2  IFRS.  *Id.*  Neither set of testimony is contained within the ASL Restatement and each is
3  inadmissible.
4      In *Homestore* (a case relied upon by the government), the court admitted the restatement
5  as a business record of an accounting investigation because the SEC imposes a duty to restate
6  incorrect financial statements.  *Id.* at *5.  However, the court then granted a motion to exclude
7  the underlying counsel-drafted report with contents nearly identical to the proposed
8  Yelland/Anderson testimony.  The report described interviews of Homestore employees,
9  summarized Homestore transactions, and summarized the reasons for Homestore's restatement
10 of revenues associated with specific transactions.  *Id.* at *6.  Even though the report was offered
11 to explain the reasoning of business record (the restatement), the Court held that it was not itself
12 a business record.  *Id.*  The court opined that the compilation of documents, interviews, and
13 rationales was "not just a regular audit report"; was not made in the normal, regular course of
14 business; and was not trustworthy.  *Id.* at *6-7.  The facts here present an even clearer case: the
15 government is not offering a contemporaneous explanation of out-of-court statements and
16 opinions that can be reviewed by all parties.  Instead it is offering unconfronted third-hand
17 hearsay received from litigation counsel and their agents arguing factual conclusions that would
18 support litigation efforts.
19     The government barely addresses the testimony it proposes to admit.  The bulk of the
20 government's argument is spent on the ASL Restatement itself, and the argument for admitting
21 the proposed testimony is relegated to a footnote arguing that Yelland's and Anderson's
22 proposed testimony is "also admissible under Rules 702 and 703 governing testimony by expert
23 witnesses."  Gov't MIL No. 1 at 7 n.3.  But the government has not disclosed either witness as an
24 expert as required by Rule 16, and the proposed opinion testimony is therefore inadmissible.
25 Lynch MIL No. 3 § II.B (Dkt. 294).  Even if the government did comply with Rule 16, the
26 proposed opinions are inadmissible under Fed. R. Evid. 702, 403, 802, 703, and the
27 Confrontation Clause.  *Id.* § II.C-.E.
28     As Yelland stated in real time, he is not an expert on IFRS and relied on others for that

Case 3:18-cr-00577-CRB   Document 308   Filed 01/31/24   Page 13 of 19

analysis. Lynch MIL No. 3 § II.C (collecting instances in which Yelland disclaimed expertise and noted his reliance on PwC or others). HP and Yelland used the Morgan Lewis/PwC investigation and their resulting arguments placing blame on Dr. Lynch and others. Beginning in 2012, Morgan Lewis and PwC interviewed witnesses in unrecorded sessions, built narratives, and ultimately fed those narratives to Anderson and Yelland. Defendant Lynch's motion to exclude the ASL Restatement (Lynch MIL No. 2) provides a particularly on-point example in which Morgan Lewis and PwC developed an argument that a sale to FileTek should not have been recognized. *Id.* § I (citing Dkt. 293-8). This argument was based on hindsight and unrecorded interviews, and PwC conceded that it was contrary to contemporaneous documentary evidence. *Id.* Anderson nonetheless adopted that argument wholesale, pasting it into a memorandum authored by a team led by Yelland. *Id.* (citing Dkt. 293-9). At trial, Yelland then testified that "our inquiries" revealed that the FileTek revenue should not have been recognized. *Id.* (citing *Hussain* Tr.). In effect, he smuggled in hearsay collected by lawyers without attribution—giving Hussain no opportunity to cross examine the hearsay's source or test the veracity of the assertions. That is the evidence that the government seeks to admit, and the Court should deny that request.

The proposed expert and hearsay testimony not contained within the ASL Restatement's text should be excluded regardless of whether the ASL Restatement is received into evidence.

### III.     The Summary Chart (TX 2749) Is Inadmissible

In *Hussain*, the Court held that the summary charts proffered by the government are inadmissible. Order re: Various Trial Motions ¶ 3, *Hussain*, Dkt. 340 (granting defense motion to exclude the summary chart as substantive evidence but permitting use as a demonstrative). The Court was correct. The charts plainly fail to meet the requirements of Fed. R. Evid. 1006 and are inadmissible. Moreover, because the charts are misleading and were used as a script by the witness, they should not be used as a demonstrative in this trial.

####     A.     TX 2749 Is Inadmissible Under Fed. R. Evid. 1006 and Fed. R. Evid. 403

A litigant may offer a summary chart of writings that are so voluminous, that a chart is the "only practicable means of making their contents available to judge and jury." Fed. R. Evid.

Defendant Lynch's Opp. to Government MIL No. 1 (ASL Restatement and Summary Chart)
3:18-cr-00577-CRB

1006 adv. comm. note (1972) (citing 4 Wigmore on Evidence § 1230); *accord United States v. Johnson*, 594 F.2d 1253, 1255 (9th Cir. 1979)).  There are two key requirements for summary charts.  First, the proponent must identify the underlying materials, make them available for inspection, and they must be admissible.  *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011).  Second, summary charts must "fairly represent" the underlying materials, and cannot extend to pedagogical advocacy.  *Davis & Cox v. Summa Corp.*, 751 F. 2d 1507, 1516 (9th Cir. 1985) (affirming exclusion on this basis); *In re Taco Bell Wage & Hour Actions*, No. 07-cv-1314, 2016 WL at *10 (E.D. Cal. Apr. 8, 2016) (explaining that Fed. R. Evid. 1006 requires that summaries "must … be accurate and nonprejudicial" and "must not make arguments about the inferences the jury should draw from the documents").  Trial Exhibit 2479 fails both requirements and is inadmissible.  Even if TX 2479 met those requirements, it would be inadmissible under Fed. R. Evid. 403.

### 1. TX 2749 Is Not Based on Disclosed, Admissible Evidence

The government has failed to lay a foundation for its improper exhibit.  The government argues that the chart is a summary of "business records," but the documents cited by the chart do not form the basis of the chart and, in many cases, are not business records.

TX 2749—entitled "Summary of Revenue Adjustments – 2009 to October 2011"—does not summarize the cited exhibits but instead summarizes "revenue adjustments" in response to the government's request for HP lawyers and Yelland to "prepare quarterly summaries showing the adjustments . . . of improper transactions that Mr. Yelland believes should have been [made] to Autonomy's accounts to conform with IFRS, as well as the amount of undisclosed hardware revenue," based on "a version that Morgan Lewis put together," and a list of "particular transactions" that the U.S. Attorney's Office "would like the summary to reflect [an] adjustment for."  Dkt. 294-4 at 2.  The exhibits cited as the supposed "underlying business records" consist of  contracts, invoices, payment records, a smattering of emails, and other materials (including inadmissible non-business records, as discussed below).

Yelland's opinions were not based on the exhibits cited, but instead on competing inferences from out-of-court interviews and investigations conducted by Morgan Lewis and

PwC.  Lynch MIL No. 2 § I.  This is illustrated by the basis for restating the Filetek transactions. Yelland based those decisions on purported evidence provided by Morgan Lewis and PwC, Dkt. 293-8, not on any business records.  The index of records cited in relation to the Filetek transaction (TX 2749-0022 to 23) appear to contain records related to Autonomy's original decision to recognize revenue but lack documents supporting the decision to restate revenue, such as the PwC email to Anderson or any summaries of witness statements or counsel's analysis contradicting the contemporaneous documentation.  (Of course, summaries of the Morgan Lewis and PwC interviews would not be Autonomy business records even if they had been cited.)  The documents supposedly underlying the other transactions summarized in the chart are similar: they contain no records summarizing Yelland's "inquiries" that he testified were the basis for the restatement decisions.  The chart does not accurately disclose the basis of its contents and is therefore inadmissible.[3]

TX 2749 is also inadmissible because many of the contents it *does* disclose are inadmissible.  For example, the chart cites as bases: (1) an October 2014 settlement agreement between HP and PRISA;[4] (2) an October 2015 Wall Street Journal article;[5] (3) an anonymous post-acquisition memo arguing that the MicroLink acquisition accounting was improper citing a Morgan Lewis witness interview and PwC draft report as support;[6] (4) a news article about digitizing Vatican library records dated August 10, 2012;[7] (5) an October 2013 email chain in which several HP finance employees question Autonomy employees about software acquired from MicroLink in an allegedly linked transaction;[8] and (6) a series of emails between

---

[3] The chart is also inadmissible because many of these underlying communications have been withheld by HP and/or the government.  *See Icon Enters. Int'l, Inc. v. Am. Prod. Co.*, No. 04-cv-1240, 2004 WL 5644805, at *2 (C.D. Cal. Oct. 7, 2004) ("[W]ithout access to the underlying documents, neither Defendants nor this Court can determine whether the summaries 'fairly represent' the underlying documents. Thus, the Court must deny Plaintiff's motion to allow summaries of Keystone's business records.").

[4] Dkt. 294-3 (TX 2749) at 27.

[5] Silverman Decl. Ex. C (TX 2894 at 55-62).

[6] Silverman Decl. Ex. D (TX 2856 at 2-10).

[7] Silverman Decl. Ex. E (TX 2808 at 113-14).

[8] Silverman Decl. Ex. F (TX 2894 at 171-72).

8
Defendant Lynch's Opp. to Government MIL No. 1 (ASL Restatement and Summary Chart)
3:18-cr-00577-CRB

Autonomy lawyers—neither of whom is an alleged co-conspirator—regarding a Capax/Defense Knowledge Online deal.[9]  Summary charts based on materials including inadmissible evidence are themselves inadmissible.  *United States v. Johnson*, 594 F.2d 1253, 1256 (9th Cir. 1979).[10]  Because TX 2749 is based on materials containing inadmissible evidence it is inadmissible.

### 2. TX 2749 Does Not Fairly Represent the Underlying Materials and Instead Engages in Inferences, Advocacy, and Pedagogy

Summary charts must "fairly represent" the underlying materials.  *Davis*, 751 F. 2d at 1516.  They must be "a neutral summary," not a set of the government's preferred inferences.  Order at 11, *United States v. Salman*, No. 11-cr-625 (N.D. Cal. Sept. 3, 2013), Dkt. 188 ("The Court concludes that these charts go beyond a neutral summary of voluminous underlying documents and present as fact conclusions that require an inferential leap from the underlying documents. As such, they are not admissible evidence under F.R.E. 1006.") (attached hereto as Silverman Decl. Ex. B).  The Ninth Circuit has emphasized that "it is critical to distinguish between charts or summaries as *evidence* and charts or summaries as *pedagogical devices*." *United States v. Wood*, 943 F.2d 1048, 1053 (9th Cir. 1991) ("We have long held that such pedagogical devices should be used only as a testimonial aid, and should not be admitted into evidence or otherwise be used by the jury during deliberations.").  Documents using "inferences" to "clarify and simplify complex . . . evidence . . . to assist counsel in the presentation of argument to the jury" are inadmissible pedagogical devices, not summaries.  *United States v. Graham*, No. 13-cr-37, 2013 WL 6383169, at *2-3 (D. Mont. Dec. 5, 2013) (citation and alteration omitted).  While "editorializing may help provide context for the underlying data, it does not arise from that data"; therefore, editorializing means that "admission . . . as a summary under Rule 1006 is not proper."  *Id.*

TX 2749 engages in argument and pedagogy on the proper inferences to draw from the materials it supposedly summarizes.  The government concedes that TX 2749 advocates to the

---

[9] Silverman Decl. Ex. A (TX 2815 at 19, 26-29, 49).

[10] In addition to being admissible, the evidence must also comply with the Confrontation Clause.  *See* 3 Wharton's Criminal Evidence § 15:15 (15th ed.).  Summary charts based even in part on testimonial statements of non-witnesses are inadmissible and unconstitutional.

9

Defendant Lynch's Opp. to Government MIL No. 1 (ASL Restatement and Summary Chart)
3:18-cr-00577-CRB

jury that "in 2010, Autonomy falsely inflated its reported revenues by approximately 53%." Gov't MIL No. 1 at 8 (citing TX 2749 at 1). The contracts, invoices, and receipts cited as some of the underlying business records do not say that. Nor do the contracts, invoices, or receipts contain the statement that these transactions were "revenue adjustments" in either the "ASL Statutory Accounts" (TX 2749 at 1) or "Autonomy Group['s] Consolidated Revenue" (TX 2749 at 4, 5, 6, 7, 8, 9, 10, 11, 12, 13) or that any transactions were "reciprocal" (*id.* at 1, 2, 3)—prejudicial accounting slang not defined in IFRS, *see* Defs.' Joint Mot. to Preclude Use of Misleading Accounting-Related Terminology & Improper Hypothetical Questions § III.B.1 (Lynch MIL No. 6) (Dkt. 292)—or many of the other evaluations made by the government. TX 2749 is pure argument on some of the ultimate issues in the case, and plainly inadmissible under Fed. R. Evid. 1006.

### 3. The Unfair Prejudice and Waste of Time Caused by TX 2749 Substantially Outweighs Its Probative Value

TX 2749 is inadmissible under Fed. R. Evid. 403. The government will spend days going through the same transactions described in TX 2749 with multiple witnesses and exhibits. At the conclusion of trial, the government will be given a chance to argue for its preferred inferences from that testimony and those exhibits. TX 2749 would unfairly purport to claim that a neutral evaluation of "business records" leads to the conclusion that the government prefers. Moreover, it would unfairly and inaccurately claim that Autonomy Group's financial statements were adjusted. They were not. The "adjustments" were a fiction reflected only in the ASL Restatement and not made to Autonomy Group's consolidated accounts or even in the general ledger. The entries in TX 2749 are litigation arguments, not evidence, and they are nothing but a waste of time until closing argument.[11]

---

[11] Nor does Dr. Lynch concede that they would be appropriate for closing argument. The government seeks to admit TX 2749 to prove the "scale of the fraud at Autonomy." Gov't MIL No. 1 at 8. "Scale" is not an element of fraud, and unless jury instructions require a finding regarding the "scale," such an argument would impermissibly ask the jury to convict Dr. Lynch because HP was harmed, rather than based on the elements of the offense charged. If the government intends to argue that HP was subjected to substantial harm, then Dr. Lynch has a right to argue that HP was not harmed.

**B.     TX 2749 Should Not Be Permitted as a Demonstrative During Testimony**

In *Hussain*, the Court permitted the government to use TX 2479 as a demonstrative, consistent with its status as an intended pedagogical tool. Order re: Various Trial Motions ¶ 3, *Hussain*, Dkt. 340. The government makes no such request here, and has not provided notice of any such intent.

The unfair prejudice from displaying such an inaccurate chart would greatly exceed any helpfulness to the jury, and the Court should exercise its discretion to deny any request to use TX 2749 as a demonstrative. As explained further in Lynch MIL No. 3 § II.D, TX 2749 misinforms the jury of adjustments that never took place. Regardless of whether that was appropriate against a defendant who approved and signed the financial statements that were adjusted, it is wholly inappropriate against Dr. Lynch who did not review the same information as Yelland and did not sign the contrary financial statements. Moreover, in *Hussain*, Yelland inappropriately read directly from TX 2749, effectively testifying to the attorney-provided advocacy document's truth. These risks of confusion, misleading the jury, and improper testimony far outweigh any benefit from permitting a demonstrative.

## CONCLUSION

For the reasons stated herein, the Court should deny Government Motion in Limine No. 1.

Dated: January 31, 2024

Respectfully submitted,

*/s/ Brian M. Heberlig*
Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Christopher J. Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*