Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Christopher Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

MICHAEL RICHARD LYNCH and
STEPHEN KEITH CHAMBERLAIN,

Defendants.

Case No.: 3:18-cr-00577-CRB

Judge: Hon. Charles Breyer

**DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE NO. 3 TO EXCLUDE EXPERT TESTIMONY**

**(Government MIL No. 3)**

Date: February 21, 2024
Time: 2:00 pm
Court: Courtroom 6 – 17th Floor
Date Filed: January 31, 2024
Trial Date: March 18, 2024

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................................................. v

MEMORANDUM OF POINTS AND AUTHORITIES.................................................... 1

I.     BACKGROUND ...................................................................................................... 1

    A.   Philippe Cerf – UK Takeover Process ............................................................... 1

    B.   Greig Taylor – Financial Statements, Auditing, and Accounting ..................... 1

    C.   John Levitske – Valuation................................................................................... 3

    D.   Rebuttal Report of Steven Brice ......................................................................... 4

II.    LEGAL STANDARD .............................................................................................. 4

    A.   Expert Testimony Under Federal Rule of Evidence 702 and the Sixth Amendment ...... 4

    B.   Expert Disclosures under Federal Rule of Criminal Procedure 16 ................... 5

III.   ARGUMENT ............................................................................................................ 5

    A.   All Three Experts Are Qualified to Testify to the Proposed Opinions ........................... 5

    B.   Cerf's and Taylor's Opinions Are Admissible.................................................. 6

        1.   Expert Testimony on Industry Standards and Practices Is Proper and Routinely Admitted Under Fed. R. Evid. 702 ........... 6

        2.   The Proposed Expert Testimony Is Admissible Under Fed. R. Evid. 401, 402, 403 ... 8

    C.   Levitske's Expert Disclosure Complied with Fed. R. Crim. P. 16 ............................... 10

    D.   Levitske's Opinions on Valuation Impact Are Admissible Under Rule 702................. 11

        1.   Levitske's Opinions Are Relevant and Helpful to the Fact Finder In Evaluating the Defendants' Lack of Motive and the Lack of Materiality ......... 11

        2.   Levitske's Opinions Are Based on a Reliable Methodology..................... 12

IV.    CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
738 F.3d 960 (9th Cir. 2013) .................................................14

*In re Apollo Grp. Inc. Secs. Litig.*,
527 F. Supp. 2d 957 (D. Ariz. 2007) ..........................................6

*City of Seattle v. Monsanto Company*,
No. C16-107-RAJ-MLP, 2023 WL 5420247 (W.D. Wash. Aug. 18, 2023) ...........12

*Comet Techs. USA Inc. v. XP Power LLC*,
No. 20-CV-06408-NC, 2022 WL 2442810 (N.D. Cal. Mar. 2, 2022)...............7, 13

*Crane v. Kentucky*,
476 U.S. 683 (1986).........................................................5

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993).........................................................4

*Emblaze Ltd. v. Apple Inc.*,
52 F. Supp. 3d 949 (N.D. Cal. 2014) ........................................7

*Empire Health Found. v. CHS/Cmty. Health Sys. Inc.*,
No. 2:17-CV-00209-SMJ, 2019 WL 13202016 (E.D. Wash. July 9, 2019)...........7

*Hangarter v. Provident Life & Acc. Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ...............................................14

*Humetrix Inc. v. Gemplus S.C.A.*,
268 F.3d 910 (9th Cir. 2001) ...............................................11

*Kanellakopoulos v. Unimerica Life Ins. Co.*,
15-cv-04674-BLF, 2018 WL 984826 (N.D. Cal. Feb. 20, 2018) .................14

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999).........................................................4

*Manpower, Inc. v. Ins. Co. of Pennsylvania*,
732 F.3d 796 (7th Cir. 2013) ...............................................14

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
No. 11-cv-5341 YGR, 2014 WL 971765, at *2 (N.D. Cal. Mar. 5, 2014) .........13

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
    No. 11-cv-05341 YGR, 2014 WL 2854890 (N.D. Cal. June 20, 2014) ................................14

*Messick v. Novartis Pharms. Corp.*,
    747 F.3d 1193 (9th Cir. 2014) ....................................................................................................5

*Morris v. Goodyear Tire & Rubber Co.*,
    No. 03-cv-655, 2004 WL 5522851 (W.D. Okla. Dec. 17, 2004) ..............................................7

*SDU Med. Corp. v. JMS Co., Ltd.*,
    296 F. Supp. 2d 1140 (N.D. Cal. 2003), *aff'd*, 471 F.3d 1293 (Fed. Cir. 2006)......................4

*SEC v. Daifotis*,
    No. C 11-00137 WHA, 2012 WL 2051193 (N.D. Cal. June 7, 2012).................................7, 9

*In re Twitter, Inc. Sec. Litig.*,
    No. 16-CV-05314-JST, 2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) ..............................7, 9

*United States v. Baldon*,
    956 F.3d 1115 (9th Cir. 2020) ....................................................................................................5

*United States v. Gan*,
    54 F.4th 467 (7th Cir. 2022) .......................................................................................................5

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) ....................................................................................................5

*United States v. Hernandez*
    780 F.2d 113, 118 (D.C. Cir. 1986) ..........................................................................................8

*United States v. Vasquez-Gonzalez*,
    No. 14-cr-291 (EJD), 2015 WL 106679 (N.D. Cal. Jan. 7, 2015)............................................5

*United States v. Yandell*,
    No. 2:19-CR-00107-KJM, 2023 WL 8948267 (E.D. Cal. Dec. 28, 2023) ........................5, 10

**Other Authorities**

Fed. R. Evid. 401, 402, 403 ................................................................................................................8

Fed. R. Evid. 702 ....................................................................................................... *passim*

Federal Rule of Criminal Procedure 16 ...............................................................................5, 10, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SUMMARY OF ARGUMENT

In response to the government's allegations, Dr. Lynch provided timely notice of three expert witnesses: (1) Philippe Cerf, an expert on the UK takeover process, who will provide the jury with necessary context to evaluate whether information not discussed during the due diligence process was withheld as part of a scheme to defraud or as part of typical industry practice; (2) Greig Taylor, an expert on financial statements, auditing, and International Financial Reporting Standards (IFRS) accounting, testify about industry standards and practices applicable to Autonomy's accounting and auditing in order to help the jury evaluate whether accounting decisions were part of a scheme to defraud or made in good faith; and (3) John Levitske, an expert on valuation, who will analyze the effect of the disputed transactions on Autonomy's value, demonstrating that Dr. Lynch had no motive to engage in the transactions because they did not materially impact Autonomy's value.  The government does not dispute that each of the three experts is qualified to testify to each of the noticed opinions.  Instead, the government lodges three objections, none of which has merit.

First, the government argues that Cerf and Taylor cannot testify to industry standards and practices because they do not apply those industry standards and practices to Autonomy to reach ultimate conclusions as to whether Autonomy omitted material information or incorrectly accounted for transactions.  The government cites no precedent for its argument because there is none.  Courts in this district (and elsewhere) have repeatedly held that expert testimony on general principles like the industry standards and practices discussed by Cerf and Taylor is admissible expert testimony.  Indeed, the commentary to Fed. R. Evid. 702 expressly permits such testimony.  Contrary to the government's argument, it is the expert opinions that intrude too far into the facts of the case that courts have excluded.

Second, the government argues that Levitske's expert disclosure is insufficient.  Levitske's disclosure, however, is more than sufficient—as confirmed by the government's expert (Steven Brice) producing nineteen pages and three appendices responding to Levitske's proposed opinions.  The government's claim that Levitske does not disclose the factual basis on which he opines is a red herring.  Levitske methodically and clearly discloses that he is relying

on the factual allegations contained within the government's own Voluntary Bill of Particulars (VBOP) (Dkt. 230) and the government expert's case-in-chief report.  The government cites no precedent establishing that any more disclosure is required.

Third, the government faults Levitske for opining that Autonomy's value without allegedly fraudulent transactions would not have been materially different from Autonomy's value with those transactions, because "[i]t is undisputed that these transactions occurred." Gov't Mot. to Excl. Expert Testimony (Gov't MIL No. 3) (Dkt. 298) at 16.  That misses the point.  Dr. Lynch disputes the government's allegation that the transactions occurred in order to fraudulently boost Autonomy's value.  Levitske's analysis demonstrates that Dr. Lynch had no motive to commit fraud because the transactions at issue had no material effect on Autonomy's value.  Finally, the government argues that Levitske should have assumed several factual allegations in Brice's rebuttal report, but that report (and those allegations) came one month *after* Levitske's analysis, and the allegations are disputed.  In any event, these alternative minor assumptions merely go to weight and not admissibility.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   BACKGROUND

#### A.   Philippe Cerf – UK Takeover Process

Philippe Cerf has over thirty years of experience in the investment banking industry, having worked as an investment banker in New York, in Mergers & Acquisitions at Lehman Brothers in Paris, as Managing Director of the M&A Group at Credit Suisse in London, and as the co-Head of TMT EMEA Group.  Expert Report of Philippe Cerf  (Cerf Report) §§ 3, 4, 5, App. A (Dec. 7, 2023) (attached as Silverman Decl. Ex. A).  In addition, Cerf served as the co-Chairman of the Credit Suisse Investment Banking Committee Advisory Panel, which reviewed all public M&A transactions, fairness opinions, and valuation presentations undertaken by Credit Suisse in the EMEA region.  Cerf currently acts an independent advisor and board member to Credit Suisse.  *See Id.* §§ 4, 5, Appendix A.  Based on his extensive experience in the industry, Cerf offers expert opinions on the acquisition process in the UK, including insight into the bidding process generally, the due diligence period, confidentiality, interloper risks with competing bids, and deal negotiations and executions.

Among other things, Dr. Lynch and the alleged co-conspirators are accused of withholding information during the due diligence process in furtherance of a scheme to defraud. Cerf will testify to the common concerns in UK takeovers leading both acquirers and target companies to carefully limit disclosures due to UK Takeover Rules and interloper risk, among other common practices in UK Takeovers.  On December 7, 2023, Dr. Lynch produced ten pages and one appendix disclosing Cerf's anticipated opinion testimony.

#### B.   Greig Taylor – Financial Statements, Auditing, and Accounting

Greig Taylor is a financial and accounting expert with more than twenty years of experience in resolving accounting disputes, valuation, and economic damages in both the United States and in the UK.  Currently a Partner and Managing Director at Alix Partners, Taylor is a Fellow of the Institute of Chartered Accountants in England and Wales with experience applying IFRS and has served as an auditor at two Big Four accounting firms and as a forensic accountant at FTI Consulting.  Taylor has served as a technical accounting expert in ten cases

during the last four years and conducted forensic accounting investigations and assignments internationally and domestically under various accounting and legal protocols.  *See* Expert Report of Greig Taylor ("Taylor Report"), Appendix 1 (attached as Silverman Decl. Ex. B). Based on his extensive experience and materials provided in this case, Taylor provides expert opinions on various principles and standards under IFRS, including revenue recognition metrics, adjusting or restating the accounting treatment of transactions, financial disclosures, and capitalization of expenses.  These opinions are a review and commentary on industry standards and foundations, and best practices for each topic.  For example, Taylor explains that there are five conditions that must be satisfied before revenue can be recognized, along with additional guidance for their application.  Silverman Decl. Ex. B, Taylor Report §§ 3.2.1, 3.2.4.

Taylor also reviewed and opined on the conclusions made by the government's accounting expert, Steven Brice, in his November 8, 2023 summary report.  *See* Dkt. 297-2. Specifically, Taylor reviewed Brice's conclusions regarding the accounting treatment of software and hardware sales transactions and reported revenue streams under IFRS.  *See* Silverman Decl. Ex. B, Taylor Report at Appendix C.  Taylor identifies eighteen opinions from the Brice Report where he disagrees with Brice's interpretation of IFRS metrics and corresponding conclusions. *Id.*  For example, Taylor finds it unreasonable under applicable standards for Brice to consider the materials that he relied upon to reach hindsight accounting judgments because it is not reasonably expected for a company to obtain this information contemporaneously: e.g., the ASL Restatement, internal counterparty correspondence, or post-transaction payment performance. *Id.*  As another example, Taylor disagrees with Brice's interpretation of the circumstances under which the significant risks and rewards of ownership of the goods transfer from seller to buyer in a VAR transaction.  *Id.*  As a third example, Taylor disagrees with Brice's application of additional revenue recognition requirements that are not contained in IAS 18 (Revenue); once the requirements of IAS 18 are met, revenue recognition is mandatory.  *Id.*

On December 7, 2023, Dr. Lynch produced forty-four pages and three appendices disclosing Taylor's anticipated opinion testimony.

### C.   John Levitske – Valuation

John Levitske offers expert testimony on the valuation process and opines on relevant considerations in the process related to acquisition.  Levitske is a business appraiser, financial analyst, and forensic accountant with more than thirty-five years of experience, particularly in the area of valuation of companies and stakeholder interests.  *See* Expert Report of John Levitske (Levitske Report) (Dec. 7, 2023) §§ 1.2.2-1.2.11 (attached as Silverman Decl. Ex. C).  In addition, Levitske holds several credentials in business valuation, finance, and forensic accounting and founded a business valuation dispute analysis practice, among other things.  *Id.* § 1.2.6.

The government alleges that Dr. Lynch artificially inflated Autonomy's value by causing Autonomy to engage in several allegedly objectionable transaction types to improve Autonomy's financial metrics through improper accounting, all as part of a scheme to defraud.  Levitske analyzed whether those allegedly objectionable transactions in fact boosted Autonomy's value, by comparing Autonomy's financial metrics in the final two reported fiscal quarters in 2011 before the acquisition against the same fiscal quarters in 2010, with and without the allegedly improper (i) hardware transactions, (ii) linked transactions, (iii) reseller transactions, and (iv) hosting transactions.  *Id.* §§ 1.3.2-1.3.4.  Levitske's analysis assumes the accuracy of allegations in the Brice Report and the VBOP.

Based on Levitske's knowledge of financial statement analysis in the context of business valuation, Levitske considered whether the asserted adjustments were an issue of (i) a reclassification to a different line in the financial statement, (ii) timing, or (iii) a corresponding counter-transaction.  *Id.* § 2.1.6.  Next, based on information in the Brice Report and its Appendices, as well as the VBOP, Levitske applied the revenue adjustments asserted in those materials and made corresponding reclassifications, timing adjustments, or counter-transaction adjustments.  *Id.* § 2.1.7.  Levitske then evaluated these adjusted financial statements in the context of valuation, based on his extensive experience and training.  *Id.* § 2.1.8.  As part of his analysis, Levitske prepared summary comparisons to the historical income statements of Autonomy for each of the four categories of adjustments in the Brice Report.  *See id.*

Attachments A-D, §§ 1.1.10-11, 2.1.13, 2.1.18, 2.1.19, 2.1.20.  Levitske also considered whether the asserted revenue and expense adjustments had a significant impact on cash flow during the relevant period. *Id.* § 2.1.24.  Finally, Levitske used the discounted cash flow method of valuation to conclude that the adjustments discussed in his Report would not be likely to materially change the valuation of a company like Autonomy, as of the August 18, 2011 acquisition announcement.  *Id.* §§ 2.2, 3.1.11.

On December 7, 2023, Dr. Lynch provided a detailed disclosure for Levitske totalling thirty-six pages and including two appendices and seven attachments.

### D.    Rebuttal Report of Steven Brice

On January 3, 2024, the government disclosed Brice's rebuttal testimony—providing lengthy substantive responses to Taylor and Levitske's opinions and simultaneously attempting to expand into several entirely new areas of testimony unrelated to Dr. Lynch's experts.  *See* Def. Lynch's Mot. to Limit Proposed Expert Test. of Steven Brice at 13-15 (Lynch MIL No. 4) (Dkt. 297) (describing new areas of testimony); Dkt. 297-7 (rebuttal report).

## II.    LEGAL STANDARD

### A.    Expert Testimony Under Federal Rule of Evidence 702 and the Sixth Amendment

Federal Rule of Evidence 702 limits expert testimony to opinions based on the application of reliable principles and methods.  Reliability is based on whether (1) the reasoning or methodology underlying the testimony is scientifically valid; and (2) the reasoning or methodology can properly be applied to the facts in issue.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (holding that *Daubert* framework applies not only to scientific testimony but all expert testimony).  When considering motions to exclude expert testimony, courts are not "to make ultimate conclusions as to the persuasiveness of the proffered evidence. . . nor. . . transform a *Daubert* hearing into a trial on the merits."  *SDU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1147 (N.D. Cal. 2003) (citations omitted), *aff'd*, 471 F.3d 1293 (Fed. Cir. 2006).  "Whether an expert's testimony is permissible under Rule 702 depends upon whether it would be

helpful to the jurors who lack the expert's knowledge of and experience with [a subject matter.]" *United States v. Gan*, 54 F.4th 467, 475 (7th Cir. 2022). "Rule 702 should be applied with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting *Daubert*, 509 U.S. at 588). Under the Sixth Amendment, a defendant is guaranteed a "meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted).

### B.    Expert Disclosures under Federal Rule of Criminal Procedure 16

Federal Rule of Criminal Procedure 16(b)(1)(C)(iii) requires defendants to provide a written expert disclosure parallel to that of the government. Both parties must disclose "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" and "the bases and reasons for them.'" Fed. R. Crim. P. 16(b)(1)(C)(iii). Rule 16, as amended, does not require a recitation of proposed testimony and is sufficient if it "allows opposing counsel to prepare a pretrial motion to exclude the expert's opinion." *United States v. Yandell*, No. 2:19-CR-00107-KJM, 2023 WL 8948267, at *3 (E.D. Cal. Dec. 28, 2023) (denying motion to exclude expert testimony for failure to comply with Rule 16's disclosure requirements and concluding that the disclosure did not need to include "what reports or debriefs the expert reviewed" to inform his general background knowledge on the topic).

## III.    ARGUMENT

### A.    All Three Experts Are Qualified to Testify to the Proposed Opinions

Cerf, Taylor, and Levitske have exemplary credentials. *See supra* § II. "[T]he government does not contest, . . . and thus concedes," that each expert is qualified to testify to each of the opinions contained in the December 7, 2023 notice. *See United States v. Baldon*, 956 F.3d 1115, 1126 (9th Cir. 2020); *United States v. Vasquez-Gonzalez*, No. 14-cr-291 (EJD), 2015 WL 106679, at *2 (N.D. Cal. Jan. 7. 2015). Although the government appears at times to denigrate the fact that the defense experts' qualified analysis rests in part on experience (rather than some sort of factual test or experiment), the Ninth Circuit has long held that analysis may properly rest upon such knowledge and experience of the expert. *E.g.*, *United States v. Hankey*,

1    203 F.3d 1160, 1169 (9th Cir. 2000); Fed. R. Evid. 702 adv. comm. note on 2000 amend. ("Rule

2    702 expressly contemplates that an expert may be qualified on the basis of experience.").  Each

3    of the three defense experts are qualified "such that the [expert]'s proposed testimony will be of

4    assistance to the trier of fact."  *In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d 957, 960 (D.

5    Ariz. 2007) (internal citations omitted).

6         **B.**    **Cerf's and Taylor's Opinions Are Admissible**

7              **1.**     **Expert Testimony on Industry Standards and Practices Is Proper**

8                      **and Routinely Admitted Under Fed. R. Evid. 702**

9           The government spends the bulk of its motion arguing that Cerf's and Taylor's opinions

10   should be excluded or limited because their proposed testimony will speak to "applicable

11   accounting standards" and acquisition practices.  Gov't MIL No. 3 at 9-10.  The government's

12   argument boils down to the contention—**with no citation to precedent, and directly contrary**

13   **to established authority**—that opinion testimony is irrelevant and inadmissible unless it will

14   involve "application to the specific facts underlying Autonomy's transactions."  *Id.* at 10; *see*

15   *also id.* at 9 (arguing that expert testimony relating to acquisition practices is not relevant where

16   it is "not tied to specific facts of this case").  In other words, the government argues that experts

17   can only testify about whether the actions by Autonomy were correct or incorrect rather than

18   testifying about the bases upon which such a determination can even be made.  *Id.* at 9.  The

19   government's argument is borderline frivolous.

20          The government cites no cases, and instead relies solely on Rule 702 and the 2000

21   Advisory Committee note that addresses the extent to which experts may testify about such

22   "general principles."  *Id.*  But the government omits the Advisory Committee's actual instruction

23   on this topic because that instruction expressly contradicts the government's argument. The

24   Advisory Committee not only contemplated, but **approved** of the type of testimony that the

25   government now seeks to exclude:

26              If the expert purports to apply principles and methods to the facts of

27              the case, it is important that this application be conducted reliably.

28              *Yet it might also be important in some cases for an expert **to educate***
           ***the factfinder about general principles, without ever attempting to***
           ***apply these principles to the specific facts of the case.***  For example,

experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, ***without ever knowing about or trying to tie their testimony into the facts of the case. The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles.***

Fed. R. Evid. 702, adv. comm. notes on 2000 amend. (emphases added) ("For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony 'fit' the facts of the case."). This conclusively rebuts the government's contention that an expert's testimony is only relevant if it includes "application of principles and methods to the facts of the case." Gov't MIL No. 3 at 10.

Courts routinely admit expert testimony regarding general industry standards and practices like that provided by the defense experts. *See, e.g.*, *Comet Techs. USA Inc. v. XP Power LLC*, No. 20-CV-06408-NC, 2022 WL 2442810, at *2-3 (N.D. Cal. Mar. 2, 2022) (admitting expert testimony regarding industry standards, and recognizing that "courts within the Ninth Circuit have commonly allowed 'industry standards' testimony when supported by relevant experience"); *SEC v. Daifotis*, No. 11-cv-00137 WHA, 2012 WL 2051193, at *1-4 (N.D. Cal. June 7, 2012) (recognizing that "it is usually proper for an expert to explain custom and practice to a jury," and holding that "opinion regarding the industry practice and regulatory framework for a mutual funds' communications with the public . . . is the proper subject of expert testimony and may be helpful to the jury in understanding the technical regulatory process and industry practice").[1] Testimony regarding industry standards and practices based on the expert's experience assists the jury in rendering a decision where—like here—the case involves

---

[1] *See also, e.g.*, *Empire Health Found. v. CHS/Cmty. Health Sys. Inc.*, No. 2:17-CV-00209-SMJ, 2019 WL 13202016, at *3 (E.D. Wash. July 9, 2019) (admitting background, contextual expert testimony regarding options for hospitals wishing to increase charity care under the PPACA because "[b]ackground information and general principles on particular topics can be helpful, even if that information is not specifically tied to the facts of a case") (citing Fed. R. Evid. 702 adv. comm. Note on 2000 amend.); *Morris v. Goodyear Tire & Rubber Co.*, No. 03-cv-655, 2004 WL 5522851, at *2 (W.D. Okla. Dec. 17, 2004)); *Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949, 960-61 (N.D. Cal. 2014) (holding that high-level opinions of even "limited use" are admissible because "Rule 702 permits general principles testimony without substantive connection to the facts of a case").

Defendant Lynch's Opp. to Government's Motion in Limine No. 3 to Exclude Expert Testimony
3:18-cr-00577-CRB

specialized areas and complex topics foreign to most lay jurors. *In re Twitter, Inc. Sec. Litig.*, No. 16-CV-05314-JST, 2020 WL 9073168, at *10-11 (N.D. Cal. Apr. 20, 2020) (admitting expert testimony "regarding customs and practices among large public companies with respect to the preparation of public disclosures" without requiring application of that testimony to Twitter's facts). The government's objection has been soundly rejected by both the advisory committee on the Rules of Evidence and by district court judges in this circuit.[2]

### 2.    The Proposed Expert Testimony Is Admissible Under Fed. R. Evid. 401, 402, 403

The government cites no authority and applies no analysis on Fed. R. Evid. 401, 402, or 403, and the Court should therefore reject its motion with respect to these rules based on the same precedents listed in the previous section. Industry standard and practice testimony is admissible under Fed. R. Evid. 702 in part because it "help[s] the trier of fact to understand the evidence" and "to determine a fact in issue." Fed. R. Evid. 702(a). It is therefore relevant and the government makes no serious argument that there is any unfair prejudice, capacity to mislead, or waste of time inherent in such testimony (much less enough to substantially outweigh that relevance).

The government's argument stems from its fundamental misunderstanding of the question posed to the jury: "Without . . . rendering opinions as to whether Autonomy appropriately applied relevant accounting standards to those facts, Mr. Taylor's report lacks any value to the trier of fact." Gov't MIL No. 3 at 13. The government is wrong. The question put to the jury is not whether Autonomy reached the correct accounting conclusions based on all of the purported hindsight "facts" that Brice relies upon[3]; instead, the question is whether Dr. Lynch

---

[2] While the government argues that Taylor's declination to mirror Brice's methodology (the acceptance of all factual allegations of one party) renders his objections to Brice's analysis irrelevant, Gov't MIL No. 3 at 10-12, the government is wrong. Taylor disagrees with Brice's application of accounting principles to the alleged facts. His testimony helps the jury by demonstrating that as they attempt to apply the principles to disputed facts, they should not make the same errors made by Brice.

[3] As noted, Dr. Lynch has reserved the right to object to Brice's testimony on this topic if the government fails to lay a sufficient foundation. Testimony about whether accounting decisions were right or wrong based on purported facts is not relevant until a foundation is laid establishing Dr. Lynch's knowledge. *See United States v. Hernandez*, 780 F.2d 113, 118 (D.C. Cir. 1986*)* (holding that it was error to admit bad act of others based on defendant's mere

conspired to defraud HP by intentionally and willfully causing Autonomy to engage in fraudulent accounting practices.  That question turns on the evidence the government adduces regarding Dr. Lynch's contemporaneous knowledge, whether Dr. Lynch was involved with accounting classification decisions, and whether those accounting classification decisions were intended to defraud.  In order for the jury to make this determination, it needs to hear evidence regarding the rules of accounting classification.

Similarly, Cerf's testimony regarding the acquisition process in the UK provides the necessary context from which the jury must evaluate whether information disclosures in due diligence were consistent with ordinary practice or consistent with willful intent and intent to defraud.  Cerf will testify to the common concerns in UK takeovers including acquirers' and target companies' concerns about the potential competitors acquiring confidential information due to UK Takeover Rules and interloper risk.  Cerf will testify to industry practice including the consequent efforts to carefully limit disclosures.  It is up to the jury to determine whether the government has proven beyond a reasonable doubt that Dr. Lynch intended not to comply with ordinary, default practices and instead willfully conspired to defraud HP.

Courts in this district have repeatedly held that testimony like that of Taylor and Cerf—testimony that provides the building blocks from which jurors must evaluate the evidence—is proper and admissible, as long as it does not stray into the very opinions that the government demands of Taylor and Cerf.  *See Twitter*, 2020 WL 9073168, at *10-11 (admitting opinion testimony regarding industry standards and practices for preparing public disclosures was admissible but prohibiting testimony evaluating whether Twitter's efforts were "consistent or inconsistent" with those standards and practices as a "factual determination [that] is reserved for the jury"); *Daifotis*, 2012 WL 2051193, at *1-3 (admitting "opinion regarding the industry practice and regulatory framework for a mutual funds' communications with the public" but excluding opinion evaluating how the defendant's "process for communications with the public

---

presence and "involvement of the most attenuated type").  As explained in Dr. Lynch's Motion to Limit Proposed Expert Testimony of Steven Brice (Lynch MIL No. 4) (Dkt. 297), "This is not a civil case about whether Autonomy's accounting decisions approved by Deloitte were correct or incorrect. In the absence of a nexus between Brice's opinions and intentional fraud, they are irrelevant and inadmissible."  *Id.* § II.B.

Defendant Lynch's Opp. to Government's Motion in Limine No. 3 to Exclude Expert Testimony
3:18-cr-00577-CRB

measured up against industry standards"). The noticed testimony of Cerf and Taylor is *more* relevant, helpful, and admissible than the opinions that the government claims they should have provided.

### C.     Levitske's Expert Disclosure Complied with Fed. R. Crim. P. 16

Dr. Lynch provided expert disclosures on December 7, 2023. The government provided its rebuttal disclosures on January 3, 2024. Those rebuttal disclosures included nineteen pages and three appendices from Brice responding to Levitske's proposed opinions. Nonetheless, the government complains that Levitske's disclosure did not comply with Rule 16 and did not provide proper notice of his opinions. The government's objection is baseless and should be denied.

Rule 16(b)(1)(C)(iii) requires that a disclosure of the "bases and reasons" of expert opinions "must be sufficient to allow counsel to prepare a pretrial motion to exclude the expert's opinion." *Yandell*, 2023 WL 8948267, at *3; *see also* Fed. R. Crim. P. 16 adv. comm. notes to 2022 amends. (the parties' obligations under Rule 16 are intended to "facilitate trial preparation. . . [and] prepare to cross-examine expert witnesses"). Here, Levitske has cited to the Appendices and tables in the Brice Report with specificity to show the sources for his opinion on revenue adjustments.

To the extent that Levitske and Brice used different inputs, it may be because Brice changed the amounts in some of his transaction summaries after Levitske was noticed as an expert. Where Brice has changed his assumptions in his rebuttal disclosure, it is true that Levitske's assumptions made before that rebuttal disclosure will not match Brice's changed assumptions. The government's argument, however, that it must "speculate" as to the bases for Levitske's adjustments strains credulity: Levitske plainly states that the basis is the description provided by the government's own expert and explains the methodology he applies to that basis. Moreover, Brice's lengthy response proves that the government is on sufficient notice. *See* Dkt. 297-7, Rebuttal Report of Steven Brice, Jan. 3, 2024, § 5.3, Silverman Decl. Ex. D  (Rebuttal Appendices J, K, L). In any event, the government's argument is at odds with its own expert, who also references "broad statements outlining [] revenue and expense adjustments." *See* Gov't

MIL No. 3 at 14; *e.g.*, Dkt. 397-2 §§ 2.5.9, 3.4.4.  To the extent the government merely disagrees with the "correctness of [Levitske's] testimony, its recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of its own expert witness[']s [conclusions]."  *Humetrix Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001). Levitske's disclosure is more than sufficient under Rule 16's requirements and further supplementation is not required.

### D.    Levitske's Opinions on Valuation Impact Are Admissible Under Rule 702

The government also asks the Court to exclude Levitske's proposed testimony on the impact of revenue adjustments because it (i) lacks relevance, in part, and (ii) relies on flawed assumptions and methodologies.  Both arguments are without merit.  Levitske's testimony is relevant to the jury's assessment of Dr. Lynch's motive (or lack thereof) to engage in the alleged fraud and the lack of materiality of any misrepresentation of the transactions' existence. Levitske's testimony is further admissible under Rule 702 because it is the result of a reliable methodology that is described in detail in Levitske's Expert Report.  The government's disagreement as to whether Levitske's methodology or opinion is *correct* is a matter for cross-examination, not exclusion.

#### 1.    Levitske's Opinions Are Relevant and Helpful to the Fact Finder In Evaluating the Defendants' Lack of Motive and the Lack of Materiality

Dr. Lynch is accused of misrepresenting Autonomy's financial metrics by causing Autonomy to engage in certain transactions including hardware sales, so-called "channel stuffing" via VARs, and "roundtrip transactions" in order to create the appearance that Autonomy was growing when it was not.  *See, e.g.*, Gov't Opp'n to Def. Mot. to Dismiss Count 17 at 2-3 (Dkt. 233); *Hussain* Tr. 39:10-12, Opening Statement of Robert Leach ("In Autonomy's third quarter of 2009, Hussain and Lynch came up with a new means to hit their revenue targets.  They decided to sell substantial amounts of stand-alone hardware without any Autonomy software.").

Levitske will undermine the government's theory that Dr. Lynch engaged in and misrepresented those transactions in order to pump up Autonomy's value by explaining to the

jury that the allegedly misrepresented transactions would not materially affect the value of a company like Autonomy under the relevant valuation method.[4]  In other words, there was no incentive for Dr. Lynch to risk criminal liability by engaging in these suspect transactions and misrepresenting them: the value of Autonomy would have been the same had the transactions never occurred.  Moreover, any such transactions would ultimately be immaterial.  Expert testimony is relevant if it logically advances a party's position on a material aspect of the case, *City of Seattle v. Monsanto Co.*, No. 16-cv-107, 2023 WL 5420247, at *7 (W.D. Wash. Aug. 18, 2023) (holding that testimony on reasonableness was relevant under Rule 702 because it addressed a disputed element of the plaintiff's public nuisance claims), and Levitske's testimony logically advances Dr. Lynch's position that he had no motive to use the allegedly fraudulent transactions and reporting to boost Autonomy's value and that any such transactions were immaterial.

The government wants Levitske to engage in a different analysis, and so it claims that is the only analysis that could possibly be relevant.  Specifically, the government complains that Levitske has not analyzed a hypothetical scenario that Brice believes is proper.  That is beside the point.  The alleged conspiracy began with the decision to engage in the transactions at all, and Dr. Lynch is entitled to analyze the impact if Autonomy had never entered into those transactions.

### 2.  Levitske's Opinions Are Based on a Reliable Methodology

The government's final objection about Levitske is that the numbers in his conclusion are not precisely correct because he fails to adjust his assumptions to reflect two assumptions (via

---

[4] Levitske opines that after removing the alleged hardware-related and VAR/Linked revenue adjustments indicated in the Voluntary Bill of Particulars, and removing related costs that were included in the costs of goods sold and expenses where applicable, there is a primarily positive or unchanged effect on profit from operations, profit from operation margins and rate of year-over-year change in revenue in the Subject Period.  Silverman Decl. Ex. D, Levitske Report §§ 2.1.10, 2.1.11, 2.1.13, 2.1.18.  The government argues that this lacks relevance because the only question at issue is "whether the accounting of these transactions and how Autonomy recognized revenue was appropriate," Gov't MIL No. 3 at 16, and that it is "undisputed" that hardware sales and VAR/linked transactions took place.  *Id.* at 15-16.  The government is incorrect.  The question before the jury is *why* the hardware sales and allegedly improper VAR/linked transactions took place.  Were they part of a scheme to defraud or were they ordinary business practices that Autonomy accounted for in good faith?

the four examples in the table spanning pages 16-18)[5] that the government views as necessary to reach the correct opinions.

The government's objection confuses "correctness" of the resulting opinion with reliability of the methodology applied the facts. *See Comet Techs.*, 2022 WL 2442810, at *1, 2 ("Importantly, the Court's duty is to evaluate the soundness of the expert's methodology, not the correctness of the expert's conclusions."). Levitske's methodology was to take the assumptions stated in the November 8, 2023 report on Brice's case-in-chief testimony and the VBOP, and apply the asserted revenue adjustments and then make corresponding reclassifications, timing adjustments or counter-transaction adjustments. Levitske performed a reasonable, explained, and evidence-based analysis to reach his conclusions, and the government does not provide any legal support for its proposition that Levitske was required to do more.

In its page 16-18 table, the government faults Levitske for not making two sets of assumptions ***that were absent from Brice's case-in-chief report***. *See* Gov't MIL No. 3 at 16-18 (citing appendices only present in Brice's rebuttal report, which post-dated Levitske's report). The disputed assumptions relate to (1) the timing as to which quarter(s) should have removed the costs of several amortized Linked and VAR sales in order to back out those sales, and (2) the government's position on whether license revenue would be recorded at the time of accrual or at the time of payment. The government's assumptions are disputed and need not be accepted by Dr. Lynch's expert. For example, regardless of when "the full cash amount was . . . received by Au[tonomy]," Gov't MIL No. 3 at 18, revenue is recognized at the time of the license purchase under accrual-based accounting like that involved in this case.

In any event, such factual disputes at best go to the weight of Levitske's testimony, and not its admissibility. *See MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 WL 971765, at *2 (N.D. Cal. Mar. 5, 2014) ("Lawton appropriately disclosed, in advance, the factual basis and assumptions for her opinions. If at trial those are found to be inaccurate or

---

[5] Although the government claims its table is "not intended to be exhaustive," Gov't MIL No. 3 at 16 n.4, it is the only objection lodged with the Court. To the extent that Brice testifies to unobjected-to disputes about Levitske's assumptions, Levitske reserves the right to address that testimony in the defense case.

ill-founded, then the jury may afford the opinion less weight, if any.  However, it is not grounds for striking that portion of the anticipated testimony."); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004) (criticism on the expert's selection of documents to review did not go to the reliability of methodology, but to the "weight of his testimony—an issue properly explored during direct and cross-examination.") (internal citations and quotations omitted).  Attacks on factual underpinnings go to the weight of the testimony and not the admissibility.  *See MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-05341 YGR, 2014 WL 2854890, at *4  (N.D. Cal. June 20, 2014) ("Though Freescale disagrees with Lawton's conclusions, and has raised some questions [to] their factual underpinnings, those issues bear on the weight to be accorded the testimony [rather] than its reliability or probative value.").

The government is free to pursue this line of advocacy through cross-examination testing whether Levitske's opinions would remain the same under the government's assumed facts.  But it is not proper to ask the Court to bless that version of the facts as the only one that can be analyzed.  *See also Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) ("[T]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."); *Kanellakopoulos v. Unimerica Life Ins. Co.*, 15-cv-04674-BLF, 2018 WL 984826, at *6 (N.D. Cal. Feb. 20, 2018) ("The fact that the parties' experts disagree as to the most appropriate methodology does not render Mr. Fitzpatrick's opinions inadmissible.  Rather, the disagreement presents a classic battle of the experts which must be resolved by the jury."); *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013) ("Reliability . . . is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced.").  The government's disagreement with the assumed facts is not a valid reason to exclude evidence and should be rejected.

## IV.    CONCLUSION

For the reasons stated herein, the Court should deny the government's motion in limine to exclude the expert testimony of Philippe Cerf, Greig Taylor, and John Levitske and deny the government's request for a supplementary disclosure under Fed. R. Crim. P. 16.

1    Dated: January 31, 2024                  Respectfully submitted,

2

3                                             */s/ Brian M. Heberlig*
                                              Reid H. Weingarten (Admitted Pro Hac Vice)
4                                             Brian M. Heberlig (Admitted Pro Hac Vice)
                                              Michelle L. Levin (Admitted Pro Hac Vice)
5                                             Nicholas P. Silverman (Admitted Pro Hac Vice)
                                              Dwight J. Draughon (Admitted Pro Hac Vice)
6                                             Drew C. Harris (Admitted Pro Hac Vice)
                                              **Steptoe LLP**
7                                             1114 Avenue of the Americas
                                              New York, NY 10036
8                                             Telephone: (212) 506-3900

9

10                                            Jonathan M. Baum (SBN: 303469)
                                              **Steptoe LLP**
11                                            One Market Street
                                              Steuart Tower, Suite 1070
12                                            San Francisco, CA 94105
                                              Telephone: (510) 735-4558
13                                            jbaum@steptoe.com

14

15                                            Christopher J. Morvillo (Admitted Pro Hac Vice)
                                              Celeste L. Koeleveld (Admitted Pro Hac Vice)
16                                            Daniel S. Silver (Admitted Pro Hac Vice)
                                              **Clifford Chance US LLP**
17                                            31 West 52nd Street
                                              New York, NY 10019
18                                            Telephone: (212) 878-3437
                                              christopher.morvillo@cliffordchance.com
19

20                                            *Attorneys for Defendant*
                                              *Michael Richard Lynch*
21

22

23

24

25

26

27

28

Defendant Lynch's Opp. to Government's Motion in Limine No. 3 to Exclude Expert Testimony
3:18-cr-00577-CRB