PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email:  Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 18-577 CRB |
| Plaintiff, | |
| v. | UNITED STATES' OPPOSITION TO DEFENDANT MICHAEL RICHARD LYNCH'S MOTION *IN LIMINE* NO. 3: TO EXCLUDE OPINION TESTIMONY OF CHRISTOPHER YELLAND [ECF No. 294] |
| MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN, | |
| Defendants. | Pretrial Conference: February 21, 2024, 2 p.m.<br>Trial Date:  March 18, 2024 |

## INTRODUCTION

In *United States v. Sushovan Hussain*, the Court admitted testimony from Christopher Yelland, the U.K. Chartered Accountant who succeeded Hussain as Autonomy's Chief Financial Officer in May 2012. *See generally Hussain* Tr. Vol. 24 (4/16/2018) & 25 (4/17/2018).  Yelland testified about a financial Restatement for a key Autonomy subsidiary that he was *required* to file and duty-bound to prepare correctly, the constituent components of that Restatement, and how those components impacted the financial statements of the parent company, Autonomy Corporation plc.  The Ninth Circuit affirmed

admission of the Restatement. *See United States v. Hussain*, 818 Fed. Appx. 765, 766 (9th Cir. 2018) (memorandum disposition). Yelland should be permitted to testify about it again.

Excluding Yelland's testimony about the causes for restating Autonomy Systems Limited's ("ASL") financial statements in this fraud case would be like excluding a medical examiner's testimony about the victim's cause of death in a homicide case. Yelland's Restatement was the equivalent of the autopsy. While he has special skills as an accountant, Yelland will testify as a percipient witness about what he found in Autonomy's business records after the defendants resigned; why his findings caused Yelland to feel obligated under law to restate ASL's statutory accounts (the English term for publicly filed financial statements); how he concluded what the proper accounting should be; and how the required adjustments impacted the Autonomy group as a whole. Needless to say, this is highly relevant, non-expert testimony about the scope of the defendants' falsification of Autonomy's alleged revenues.

Dr. Lynch's myriad of objections fails. Because Yelland is testifying as a percipient witness, Federal Rule of Evidence 702 does not apply, and even if it did, Yelland would easily qualify as an expert and Dr. Lynch has had ample notice about the substance of Yelland's testimony under Federal Rule of Criminal Procedure 16. Rule 403 is likewise no barrier – the defense is free to cross-examine Yelland about his bias, method, and experience. Finally, the defense's hearsay and Confrontation Clause objections are misplaced. Yelland *was* the preparer of the Restatement and can competently testify to its constituent parts. The Confrontation Clause applies to *testimonial* statements, not ordinary business records. For these reasons, Dr, Lynch's motion to exclude should be denied.

## FACTUAL BACKGROUND

Autonomy Corporation plc was a holding company for a group of related companies engaged in the business of software development and distribution, including U.S.-based companies Autonomy, Inc. and ZANTAZ, Inc. and ASL, a U.K.-based company. ASL licensed Autonomy software to other entities in the Autonomy group and participated in the earnings of its fellow group companies. In other words, when transactions by certain Autonomy group companies (such as Autonomy, Inc. or ZANTAZ) generated revenue, those transactions also generated revenue for ASL. During the relevant time period, Autonomy Corporation plc issued press releases to the market announcing earnings for the group as a

whole, and ASL publicly filed financial statements reporting revenue earned in part through its licensing agreements with Autonomy group companies.

ASL was subject to the Companies Act of 2006 in the U.K. ASL's directors were required to prepare financial statements for each financial year that provided a true and fair view of the state of affairs of the company at year end and the profit and loss. *See* Trial Ex. 2445 at 10; Companies Act §§ 393 & 396. Its directors were forbidden from approving financial statements unless they were satisfied that the financial statements gave a true and fair view of the assets, liabilities, financial position, and profit or loss of the company. *See* Trial Ex. 2445 at 10; Companies Act § 393. ASL also was required to keep adequate accounting records that were sufficient to show and explain the company's transactions and disclose with reasonable accuracy at any time the financial position of the company and enable the directors to ensure that the financial statements comply with the Companies Act. *See* Trial Ex. 2445 at 10; Companies Act § 386. In addition, ASL's directors were required to publicly file ASL's financial statements with the Registrar of Companies (Companies House). *See* Companies Act §§ 441, 1060. Criminal penalties attached to each of these obligations. *See* Companies Act §§ 387 (duty to keep accounting records: offence); 414 (approval and signing of accounts); 451 (default in filing accounts and reports: offences).

ASL's financial statements were prepared in accordance with United Kingdom Generally Accepted Accounting Practice (United Kingdom Accounting Standards and applicable law). In preparing these financial statements, ASL's directors were required to (1) select suitable accounting policies and then apply them consistently; (2) make reasonable and prudent judgments and accounting estimates; (3) state whether applicable U.K. Accounting Standards have been followed; and (4) prepare the financial statements on the going concern basis. *See* Trial Ex. 2445 at 10.

On or about September 30, 2011, Lynch caused the filing of ASL's Report and Financial Statements for the year ended December 31, 2010, as required by the Companies Act. *See* Trial Ex. 1373. In May 2012, after two disastrous quarters of missed expectations, Dr. Lynch and others announced they were leaving Autonomy Corporation plc and ASL. At that time, Chris Yelland became a director of ASL and CFO of the Autonomy group. Yelland is a Chartered Accountant in the U.K. with more than 15 years of accounting and finance experience in the information technology industry.

1  Yelland, with others, undertook an accounting review of Autonomy Corporation plc and ASL's
2  historical financial statements and ultimately concluded that a restatement was required.
3        On or about January 31, 2014, ASL filed with the Registrar of Companies its Report and
4  Financial Statements for the 10 months ended October 31, 2011 (the "Restatement").  *See* Trial Ex.
5  2445.  Yelland signed the Restatement on behalf of the Board, subject to his duties under U.K. law and
6  all of the criminal penalties described above.  *See id*. at 9 &15.  In the Restatement, ASL reduced its
7  publicly reported revenue (or turnover).  *Compare* Trial Ex. 1373 at 10 to Trial Ex. 2445 at 13.  ASL
8  also reduced its retained earnings balance at December 31, 2009, which reflects a substantial decrease in
9  2009 revenue.  *Compare* Trial Ex. 1373 at 11 *to* Trial Ex. 2445 at 37.
10       Yelland is expected to testify that (1) the Restatement reflected adjustments for numerous
11 transactions that impacted both ASL's financial statements and Autonomy Corporation plc's financial
12 statements; (2) the adjustments were required both under United Kingdom Accounting Standards and
13 International Financial Reporting Standards, with which Autonomy Corporation plc's financial
14 statements were required to comply; and (3) based upon his review of Autonomy business records and
15 acting under the statutory obligations of the UK Companies Act, he concluded that Autonomy's reported
16 revenue of $870 million in 2010 was improperly inflated by approximately $156 million.
17       In the end, Yelland should be permitted to testify about what he saw, heard, and did to straighten
18 out the correct accounting treatment for ASL's statutory accounts (and why).  It is relevant to how the
19 defendants falsified documents in order to falsely inflate the revenue.  Although he is a fact witness,
20 Yelland's special skills as a Chartered Accountant are based on well-recognized accounting principles.
21 The defense claims about divergent accounting opinions should be tested at trial, in cross-examination,
22 not used to suppress otherwise highly relevant evidence.

23                                 **ARGUMENT**
24 **I.    LEGAL STANDARDS**
25       Under Federal Rule of Evidence 701, a witness not testifying as an expert may offer testimony in
26 the form of an opinion if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly
27 understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific,
28 technical, or other specialized knowledge within the scope of Rule 702."  FED. R. EVID. 701.  Under

Rule 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify" if a district court determines his testimony to be "both relevant and reliable." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citation omitted); FED. R. EVID. 702.

Federal Rule of Evidence 701(c) thus limits a lay witness's testimony "in the form of opinions or inferences" to those "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702" concerning the admissibility of expert opinion testimony. FED. R. EVID. 701(c). Subsection (c) was added in 2000 "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." FED. R. EVID. 701 advisory committee's note. The advisory committee's note explains that the amendment "does not purport to change" the prevailing view that a witness could testify regarding "the particularized knowledge that the witness has by virtue of his or her position," but only to prohibit testimony based on "experience, training or specialized knowledge within the realm of an expert." *Id.*

Courts have recognized that the line between admissible lay opinion based upon "particularized knowledge" and inadmissible expert opinion based upon "experience, training or specialized knowledge" is "not easy to draw." *E.g., United States v. Ayala-Pizarro*, 407 F.3d 25, 28 (1st Cir. 2005); *United States v. Perkins*, 470 F.3d 150, 155 (4th Cir. 2006). "[W]hether evidence is more properly offered by an expert or a lay witness depends on the basis of the opinion, not its subject matter." *United States v. Perez*, 962 F.3d 420, 436 (9th Cir. 2020) (quotation omitted); *see, e.g., United States v. Lopez*, 762 F.3d 852, 863-65 (9th Cir. 2014) (testimony violated Rule 701 because agent did not personally witness deportation); *United States v. Durham*, 464 F.3d 976, 982-83 (9th Cir. 2006) (witness familiar with marijuana could testify substance appeared to be marijuana). "The gatekeeping inquiry [as to whether opinion is expert or lay] is always case-specific." *United States v. Holguin*, 51 F.4th 841, 857 (9th Cir. 2022); s*ee also United States v. Simas*, 937 F.2d 459, 464 (9th Cir. 1991) ("The admission of lay opinion testimony is within the broad discretion of the trial judge [and] not to be disturbed unless it is manifestly erroneous.") (citation omitted).

Nonetheless, courts, including the Ninth Circuit, have found that lay opinion is admissible where based upon the witness's particularized knowledge, even if formed over time, applied to the witness's

percipient observations. *See, e.g., Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1192 (9th Cir. 2005) (holding that district court erred in excluding investigating officer's testimony regarding the angle of a tire mark, reasoning that his "perception . . . would not constitute the opinion of an expert, but the observation of a percipient witness . . . or a permissible opinion by a lay witness"); *United States v. Beckman*, 298 F.3d 788, 795 (9th Cir. 2002) (finding that testimony of government's cooperating witness with extensive knowledge of internal drug operations was properly admitted under Rule 701(c) because he testified regarding his observations and conclusions at the time of the conspiracy). Indeed, the Ninth Circuit – under substantially similar identical circumstances – has affirmed the admission of testimony under Rule 701(c) by "witnesses with personal roles in reviewing the company's finances and applicable reporting obligations for purposes other than . . . litigation." *SEC v. Sabhlok*, 495 Fed. Appx. 786, 787 (9th Cir. 2012) (unpublished).

The Second Circuit's *Bank of China v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004), is particularly instructive. There, the court held that the district court properly admitted some of the testimony of a witness who had conducted an investigation into the propriety of certain bank transactions, while other portions of that testimony were found to have violated Rule 701(c). *Id.* at 181-82. The court emphasized that "[t]he fact that [the witness] has specialized knowledge, or that he carried out the investigation because of that knowledge, does not preclude him from testifying pursuant to Rule 701," since he could properly give testimony that "was based on the investigation and reflected his investigatory findings and conclusions," so long as it was not "rooted exclusively in his expertise in international banking." *Id.* at 181. Thus, "to the extent [the witness's] testimony was grounded in the investigation he undertook in his role as a Bank of China employee, it was admissible . . . because it was based on his *perceptions*"; on the other hand, the witness's "explanations regarding typical international banking transactions or definitions of banking terms, and any conclusions that he made that were not a result of his investigation, were improperly admitted." *Id.* at 181, 182. *See also United States v. Oriedo*, 498 F.3d 593, 602-03 (7th Cir. 2007) (holding that a witness's "specialized knowledge" may "inform his mental state" or his percipient observations); *United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (court properly admitted accounting employee's testimony regarding his observations of effect of fraudulent transactions on company's books and records).

Similarly, the Ninth Circuit has observed that Rule 701 encompasses the principle that "[a] lay witness's opinion testimony necessarily draws on the witness's own understanding, including a wealth of personal information, experience, and education, that cannot be placed before the jury." *United States v. Gadson*, 763 F.3d 1189, 1208 (9th Cir. 2014). In *Gadson*, this Court "examine[d] the scope of Rule 701" and noted that the promulgators rejected the notion that witnesses should be required "to limit their testimony just to the facts they perceived and avoid opinions or inferences based on those facts"—in part because that distinction "proved to be unworkable in practice." *Id.* at 1206 (quotations omitted). Furthermore, the promulgators rejected the notion that lay opinion would mislead juries given that "the natural characteristics of the adversarial system will generally lead to an acceptable result, and any weaknesses in the lay witness's testimony can be emphasized through cross-examination and argument." *Id.* (quotation omitted).

## II. YELLAND'S TESTIMONY IS NOT INADMINISSIBLE EXPERT OPINION

Applying these standards here, Yelland's testimony is not inadmissible expert opinion. To the contrary, Yelland is testifying to what he saw, heard, and did (and why) as the chief accountant for Autonomy and to a Restatement he was required by law to get right. While Yelland has specialized knowledge as a Chartered Accountant, he was applying it to his own percipient observations at the time. His testimony fits well within the Ninth Circuit's holding in *Dorn* and *Sabhlok* and the Second Circuit's guidance in *Bank of China*.

The fact that Dr. Lynch's company was required to file financial statements conforming to professional standards should not mean that insiders who worked for the company need to qualify as experts before they can testify about what they contemporaneously observed and did. To hold otherwise would preclude direct contemporaneous observations of criminal conduct or business decisions absent every insider's qualification under *Daubert*. The rules and cases do not require that result. *See SEC v. Jasper*, 678 F.3d 1116, 1124 (9th Cir. 2012) (admission of annual financial statement was not error simply because allegedly expert accounting judgments were involved). Accountants, engineers, and doctors prepare business records all the time to contemporaneously describe their decisions, reasons, and actions – Dr. Lynch's proposed reading of the case law would turn *Daubert* into a sword to exclude knowledgeable witnesses in professional settings.

### III. NO RULE 16(A)(1)(G) DISCLOSURE WAS REQUIRED, AND IN ANY EVENT THE DEFENSE HAS AMPLE NOTICE

Rule 16(A)(1)(G) of the Federal Rules of Criminal Procedure provides that, upon a defendant's request, the government must disclose "a complete statement of all opinions that the government will elicit from the witness in its case- in-chief, . . . the bases and reasons for them; the witness's qualifications" and a summary of recent prior expert testimony offered by the witness. FED. R. CRIM. P. 16(a)(1)(G)(i)-(iii). As the Ninth Circuit recently noted, the rule was "not intended to create unreasonable procedural hurdles." *United States v. Alahmedalabdaloklah*, 76 F.4th 1183, 1239 (9th Cir. Aug. 9, 2023) (notice requirement merely provides "fair opportunity" to prepare cross-examination).

Here, the government was not required to provide notice of Yelland's testimony under the expert disclosure rules. But the disclosures it did make – including Yelland's testimony in *Hussain* and the parallel U.K. civil case, as well as memoranda of government interviews of him, and his summary charts – amply discharge any obligation. Dr. Lynch has had a fair opportunity to prepare for cross-examination – indeed, he has cross-examined Yelland previously with the benefit of Yelland's *Hussain* testimony.

### IV. THE COURT SHOULD NOT EXCLUDE YELLAND'S TESTIMOMY BASED ON RULES 403, 802, 703, OR THE CONFRONTATION CLAUSE

Defendant's Rule 403 arguments all go the weight accorded Yelland's testimony. Defendant wishes to present Yelland as a hopelessly biased, untrained lackey for HP – he is free to do that cross-examination. Dr. Lynch also criticizes Yelland's qualifications, yet the Court addressed this in *Hussain*:

> The defendant also argued that Yelland's testimony should have been excluded because he was not qualified to opine on international accounting standards. But Hussain failed to explain why the distinction among accounting rules mattered in terms of revenue recognition; the restatement indicated that the change principally affected the expensing of research and development costs. See Restatement at 3, 14. In any event, this argument similarly goes to the weight of Yelland's testimony, not its admissibility.

ECF No. 419 at 59.

Dr. Lynch's hearsay and Confrontation Clause claims also fail. Yelland should be able to explain why he took actions and what information formed the basis for his decisions, and limiting instructions may appropriately guide the jury. None of Dr. Lynch's cases (which are all non-binding) are to the contrary. Further, with respect to the Confrontation Clause, it applies only to *testimonial*

statements. *Crawford v. Washington*, 541 U.S. 36, 49 (2004). None of the cases suggest that accountants cannot explain what records they relied on to reach decisions or to the contents of business records, which are almost by definition non-testimonial.

## CONCLUSION

For these reasons, the Court should deny the motion.

DATED: January 31, 2024          Respectfully submitted,

PATRICK D. ROBBINS
Attorney for the United States Attorney
Acting Under Authority Conferrred by
28 U.S.C. § 515

*Robert S. Leach*
_____
ROBERT S. LEACH
ADAM A. REEVES
KRISTINA N. GREEN
ZACHARY G.F. ABRAHAMSON
Assistant United States Attorneys