PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email:  Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN,<br><br>    Defendants. | CASE NO. 3:18-cr-00577-CRB<br><br>UNITED STATES' OPPOSITION TO DEFENDANT CHAMBERLAIN'S MOTION *IN LIMINE* RE: LYNCH'S PRIOR STATEMENTS AND THE CONFRONTATION CLAUSE<br><br>Pretrial Conference: February 21, 2024, 2 p.m.<br>Trial Date: March 18, 2024 |

**INTRODUCTION**

The odds of a true *Bruton* problem here are low: Mike Lynch appears to have avoided "facially incriminating" Stephen Chamberlain during his civil testimony in the United Kingdom. The Court may therefore address any potential Confrontation Clause issues through instructions limiting the jury's consideration of Lynch's past statements. The government will provide notice of those statements sufficiently in advance of their introduction to permit the parties and Court to determine whether such instructions are necessary. Exclusion of Lynch's prior statements would be unjustified, and a 30-day

U.S. OPP. TO CHAMBERLAIN MIL RE
LYNCH STATEMENTS AND CONFR. CLAUSE  1

pretrial designation deadline is unreasonable in view of upcoming pretrial deadlines and the notice that the government intends to provide. Chamberlain's request for designations by February 18 or alternatively exclusion should be denied.

## I.     FACTUAL BACKGROUND

The facts relevant to this motion are straightforward: Defendant Lynch testified at the UK civil fraud trial over the course of 21 days. That testimony spans a few thousand pages of reported question-and-answer spanning the topics at issue in Hewlett-Packard's ("HP") litigation, including for example Autonomy's products, accounting practices, hardware resales, use of value-added resellers, and ultimate acquisition by HP.

Defendant Chamberlain's name appears in the transcript of Lynch's testimony about 400 times. But many of those appearances are simply acknowledgments of the fact that Chamberlain sent or received a certain document, followed by the document's contents. *See*, *e.g.*, Declaration of Zachary G.F. Abrahamson in Support of United States' Opposition to Defendant Chamberlain's Motion *in Limine* re: Lynch's Prior Statements and the Confrontation Clause (hereinafter "Abrahamson Decl."), Decl., Ex A at 6 (*ACL Netherlands BV v. Lynch* Trial Tr., July 2, 2019 at 159:9-160:20) (noting Chamberlain's authorship of an April 8, 2010 e-mail and reviewing its contents), and at 9 (July 3, 2019 at 125:4-17) (noting that Lee Welham sent an e-mail to Hussain, copying Chamberlain). Elsewhere, Chamberlain's name appears in the transcript as prefatory material. For example, HP's lawyers read Lynch a July 2009 e-mail from Phil Smolek about the reseller Capax that also sought "CEO authorisation per *Steve Chamberlain*." *Id*. at 10 (July 8, 2019 at 88:24-89:22). (The subsequent line of questioning had nothing to do with Chamberlain himself.) Lynch does comment on actions that Chamberlain took or statements that he made, but—as explained further below—those comments generally exculpate Chamberlain.

//

//

//

U.S. OPP. TO CHAMBERLAIN MIL RE
LYNCH STATEMENTS AND CONFR. CLAUSE  2

## II. ARGUMENT

### a. Defendant Chamberlain overstates the risk of a Confrontation Clause violation here.

A *Bruton* problem is not a given each time two co-defendants are jointly tried. As the Supreme Court recently observed in *Samia v. United States*, 599 U.S. 635, 639 (2023), "when prosecutors seek to introduce a nontestifying defendant's confession implicating his codefendants, a constitutional concern *may* arise." (emphasis added). That's because "[o]rdinarily, a witness whose testimony is introduced at a joint trial *is not considered to be a witness 'against' a defendant if the jury is instructed* to consider that testimony only against a codefendant." *Samia*, 599 U.S. at 649-50 (quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)) (emphasis added).[1] *Bruton* represents a "narrow exception to that principle," *Samia*, 599 U.S. at 650, applicable to confessions that "directly implicate a defendant." *Id*. at 652; *see also Richardson*, 481 U.S. at 207 (describing *Bruton* as excepting "the facially incriminating confession of a nontestifying codefendant"). For a confession that "[is] not incriminating on its face, and [becomes] so only when linked with evidence introduced later at trial," *Richardson*, 481 U.S. at 208, proper limiting instructions avoid a Confrontation Clause violation. *Samia*, 599 U.S. at 652 (2023).

Perhaps because trials of fraud conspiracies inevitably involve asynchronous events, multiple witnesses, and interdependent motives, Confrontation Clause issues are frequently resolved by instruction in white collar settings. *See*, *e.g.*, *United States v. Johnson*, 297 F.3d 845, 852 (9th Cir. 2002) (in multidefendant conspiracy trial for wire fraud, district court properly refused to sever trial where one co-defendant's out-of-court confessions did not "involve[g] a confession of guilt implicating [another co-defendant]" and limiting instructions issued), *United States v. Olano*, 62 F.3d 1180, 1186 (9th Cir. 1995) (in multidefendant conspiracy trial for bank fraud, district court properly refused to sever where co-defendants' prior testimony "did not have a sufficiently 'devastating' or 'powerful' inculpatory impact to be incriminatory on its face"). As explained further below, it is likely that the Lynch statements at issue here will be appropriate subjects for limiting instructions.

---

[1] This result, *Samia* noted, flowed from the "almost invariable assumption of the law that jurors follow their instructions." *Samia*, 599 U.S. at 650 (quoting *Richardson*, 481 U.S. at 206).

### b. The Posture and Contents of Lynch's Civil Testimony Suggest that a Confrontation Clause Violation is Unlikely Here.

Measured against the standards above, a Confrontation Clause violation is unlikely here. Lynch's UK testimony was hardly an exercise in finger-pointing. Instead, Lynch spent most of his time on the stand putting forth his own exculpatory version of events and quibbling with the framing of questions posed by HP. Critically for purposes of this motion, that resistance extended to matters involving Chamberlain. For example, when questioned about an e-mail from Chamberlain about the accounting treatment of hardware sales, Lynch pushed back against the inference that Chamberlain sought to mischaracterize them:

> Q: What Mr Chamberlain proposed should be said by EMC involved treating only $20 million as the cost of goods sold, with 11 million being allocated as a sales and marketing expense, correct? That's what it says there?
>
> [Lynch]: I see the line that says $11m commission for resale and marketing fee, if that's what you're referring to.
>
> Q: What Mr Chamberlain had in mind was that if some of these costs could be treated as a sales and marketing expense, then the transaction (a) would not look like it was a loss-making transaction and (b) it would therefore have less of an impact on gross profit than would be the case if all the costs were simply treated as cost of goods sold; correct?
>
> [Lynch]: I can't see the front part of your email, but I don't see why this would make it look like it wasn't loss-making.

Abrahamson Decl., Ex. A at 3 (July 1, 2019, at 189:2-18).

Later, HP's lawyers walked Lynch through a Chamberlain e-mail that tried to juice Autonomy's marketing expenses attributable to EMC. HP's lawyers then asked Lynch to admit that Autonomy (through Chamberlain) "was trying . . . to maximise the amounts that could be allocated to sales and marketing[.]" *Id*. at 3 (July 1, 2019 at 192:3-15). Again, Lynch pushed back: "[Lynch]: No, I think [Autonomy] was trying to get the right accounting." *Id.* This back-and-forth continued, with Lynch ultimately offering his view that "at this time . . . a combination of Mr Chamberlain, Mr Sullivan, EMC and ultimately Deloitte are trying to get the right answer." *Id*. at 3-4 (July 1, 2019 at 192:23-193:5).[2]

---

[2] The transcript of Lynch's UK trial testimony is replete with such dodges. At one point, HP's lawyer asked Lynch about a Chamberlain e-mail regarding significant hardware revenue in the second quarter of 2010 where Chamberlain wrote, "Disaster." Lynch's response: "I don't know what Mr

1  Self-serving assertions like these are not the inculpating confessions that *Bruton* fears.

2  Even where Lynch appears to distance himself from Chamberlain's conspiratorial conduct,
3  Lynch declines to adopt an inculpating frame of that conduct. For example, HP's lawyers asked Lynch
4  about a Chamberlain e-mail forwarded by Brent Hogenson wherein Chamberlain suggested that the
5  reseller Capax would pay Autonomy only after Capax itself got paid. Asked if he "bother[ed] to contact
6  Mr Chamberlain," Lynch said simply that he "did not investigate the fact basis of this letter; that was not
7  what I was asked to do." *Id*. at 14 (July 10, 2019 at 31:22-32:11).

8  Other descriptions of Chamberlain's role at Autonomy stop far short of a "facially incriminating"
9  confession implicating Chamberlain in fraud. For example, asked to identify who told Lynch that EMC
10 planned to invest certain Autonomy discounts, Lynch said, "I don't remember specifically who it was,
11 but I would expect it to be a combination of Dr Menell, Mr Hussain, Mr Chamberlain, those sort of
12 people." *Id*. at 5 (July 2, 2019 at 39:21-40:1). Later, in discussion of whether Autonomy's auditors at
13 Deloitte could fairly be characterized in 2011 as "independent," Lynch affirmed that "one of Mr Kanter,
14 Mr Hussain or Mr Chamberlain" would have approved a final letter to the UK's Financial Reporting
15 Review Panel. *See id*. at 15 (July 11, 2019 at 17:4-10). And in the midst of an exchange about the
16 reseller FileTek, Lynch agreed that "Mr Chamberlain, Mr Egan, Mr Hussain and Mr Scott [were] all
17 aware by [February 2011] that FileTek [was] overdue on its debt of $10 million." *Id*. at 16 (July 15,
18 2019 at 151:24-152:9). These fragmented references to Chamberlain's role in certain events are
19 inculpating—if at all—"only when linked with evidence introduced later at trial." *Richardson*, 481 U.S.
20 at 208. They are therefore properly addressed through limiting instructions.

21 As for Lynch's testimony about e-mails that Chamberlain's sent, Lynch's responses often add
22 little beyond Chamberlain's own words—which will come into this trial as party admissions or through

---

Hussain and Mr Chamberlain are discussing." Abrahamson Decl., Ex. A at 7 (July 3, 2019 at 60:16-22). Later, asked if a reference to Arcpliance sales that Chamberlain suggested in an Autonomy release was "misleading," Lynch said, "I don't think it's a misleading statement. It might not be the best one and Deloitte and Mr Chamberlain worked on it." *Id*. at 8 (July 3, 2019 at 121:20-122:19). At one point, HP's lawyers asked Lynch about notes made by Chamberlain that suggested that Chamberlain viewed a transaction with Capax as "circular." Lynch disagreed, testifying that "you'll find throughout the correspondence among the accountants that they will talk about things being . . . circular, but what they are meaning is they have a set of processes they have to do for them." *Id*. at 12-13 (July 8, 2019 at 108:19-109:10).

U.S. OPP. TO CHAMBERLAIN MIL RE
LYNCH STATEMENTS AND CONFR. CLAUSE   5

another hearsay exclusion. For example, during questioning about a reciprocal transaction involving VMS, HP's lawyer asked Lynch about an e-mail where Chamberlain wrote that "[t]he tricky bit on this from a rev[enue] rec[ognition] perspective will be demonstrating fair value." Abrahamson Decl., Ex. A at 17-18 (July 16, 2019 at 24:13-25:8). HP's lawyer then asked Lynch the uncontroversial follow-up: "Mr Chamberlain's concern from a revenue recognition point is demonstrating that the transactions are being carried out at fair value, correct?" Lynch answered, "That's correct," and the questioning moved on. *Id*.

The fact that Lynch's transcript contains few "gotcha" moments for Chamberlain should surprise no one: At the time of the UK trial, Lynch was well-represented by at least seven lawyers who doubtless prepared him extensively for the testimony he offered. The point of that testimony was to exonerate Lynch—and, by association, the Autonomy agents who reported to him. Plus, at the time of the UK trial in the summer of 2019, Lynch and Chamberlain had *already been indicted* on the conspiracy charges here. So Lynch's team knew that testimony at the London civil trial could create admissions against him at the later California criminal trial—a trial wherein the government would claim that he and Chamberlain conspired. Against that backdrop, offering "facially incriminating" statements about Chamberlain during Lynch's civil testimony would seem an unlikely strategy.

      **c. In view of the unlikelihood of significant Confrontation Clause risks, Chamberlain's request for a 30-day designation deadline is unreasonable.**

In view of the authorities and the record set forth above, the government submits that demanding designations 30 days in advance of trial is unreasonable. The government has complied with its *Brady* and Rule 16 obligations and will continue to do so, including by providing sufficient advance notice of statements from Lynch's civil testimony that the government intends to admit. Realistically, the government will not introduce such statements until—at the earliest—the last week of March. (April is more likely.) Moreover, the analytical exercise of reviewing Lynch's statements to determine if they merit limiting instructions will not be unduly burdensome. The Court should therefore reject Chamberlain's request for a February 18 designation deadline.

//

//

### III. CONCLUSION

The Court should deny Chamberlain's motion to preclude admission of evidence in violation of the Confrontation Clause.

DATED: January 31, 2024

PATRICK D. ROBBINS
Attorney for the United States Attorney
Acting Under Authority Conferrred by
28 U.S.C. § 515

By:   /s/ Zack Abrahamson
ROBERT S. LEACH
ADAM A. REEVES
KRISTINA N. GREEN
ZACHARY G.F. ABRAHAMSON
Assistant United States Attorneys