1  Gary S. Lincenberg - State Bar No. 123058
    glincenberg@birdmarella.com
2  Ray S. Seilie - State Bar No. 277747
    rseilie@birdmarella.com
3  Michael C. Landman – State Bar No. 343327
    mlandman@birdmarella.com
4  BIRD, MARELLA, RHOW,
  LINCENBERG, DROOKS & NESSIM, LLP
5  1875 Century Park East, 23rd Floor
  Los Angeles, California 90067-2561
6  Telephone: (310) 201-2100
  Facsimile: (310) 201-2110
7
  Attorneys for Defendant Stephen Keith
8  Chamberlain

9

10  **UNITED STATES DISTRICT COURT**

11  **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

12

| | |
|---|---|
| 13  UNITED STATES OF AMERICA, | CASE NO. 3:18-cr-00577-CRB |
| 14       Plaintiff, | **Defendant Stephen Chamberlain's Reply in Support of Motion in Limine to Preclude Admission of Evidence in Violation of Confrontation Clause** |
| 15      vs. | |
| 16  MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN | |
| 17       Defendants. | Date:    February 21, 2024<br>Time:    2:00 p.m.<br>Place:   Courtroom 6 |
| 18 | |
| 19 | Assigned to Hon. Charles R. Breyer |

20       The Government states that the "odds of a true *Bruton* problem here are low." However,

21  the examples provided by the Government themselves present a *Bruton* problem. Without

22  knowing which of the "few thousand pages" of Dr. Lynch's prior testimony the Government

23  intends to use, it is impossible for Defendant Stephan Chamberlain or the Court to know whether

24  additional *Bruton* problems exist. Given the mountain of work that needs to be done between now

25  and March 18, it is unreasonable to expect Mr. Chamberlain to review *all* of Dr. Lynch's prior

26  testimony with an eye towards whether the spillover prejudice caused by the admission of such

27  statements—or a portion thereof—would implicate his Confrontation Clause rights.

28       Requiring the Government to provide notice of specific testimony it intends to use is

1  reasonable. Defendant Michael Lynch concluded his testimony in the related UK proceeding on

2  August 1, 2019. Transcripts of Dr. Lynch's testimony were made available to the Government no

3  later than January 2020. Declaration of Gary Lincenberg ¶ 2. Yet the Government's opposition

4  indicates that it is still unwilling to identify which portions of these 21 days of trial testimony and

5  multiple sworn witness statements of Dr. Lynch it seeks to introduce in its case-in-chief. The

6  Court has previously indicated that this should not be a trial by surprise. There is no justification

7  for the Government resisting the pretrial disclosure of the potential *Bruton* statements it intends to

8  offer in its case-in-chief.

9  **I.     THE GOVERNMENT'S EXAMPLES ARE A PROBLEM**

10           The Government's own examples highlight Mr. Chamberlain's concern that the

11  Government will introduce statements in violation of his Confrontation Clause rights. One of the

12  Government's allegations against Mr. Chamberlain is that he was involved in providing false

13  information to Autonomy's external auditors regarding the extent to which a hardware company,

14  EMC, had agreed to invest money in furtherance of its relationship with Autonomy. Lincenberg

15  Decl. ¶ 3. When asked to identify who told Lynch of EMC's intended investment, Lynch said, "I

16  would expect it to be a combination of Dr. Menell, Mr. Hussain, and Mr. Chamberlain[.]" Opp. at

17  5:9-11. Here, Dr. Lynch is pointing the finger directly at Mr. Chamberlain.

18           If given the opportunity to cross-examine Dr. Lynch, Mr. Chamberlain would confront him

19  on the fact that, of the individuals identified by Dr. Lynch, Mr. Chamberlain was the least likely to

20  have first-hand knowledge of what EMC had or had not agreed to do. Mr. Chamberlain would

21  confront Dr. Lynch on the fact that, as a finance team member, he was not a party to negotiations

22  with EMC. Rather, he relied on information transmitted to him from others at Autonomy. Mr.

23  Chamberlain would also cross-examine Dr. Lynch on the infrequency of their communications,

24  which would undermine any suggestion that he was the individual who spoke with Dr. Lynch on

25  this issue. But Mr. Chamberlain may not have this opportunity and would only be "protected" by

26  the Court's limiting instruction that would only serve to highlight Dr. Lynch's inculpatory

27  statement.

28           The Government's proffered introduction of this statement raises an additional concern

Chamberlain's Reply ISO MIL to Preclude Admission of Evidence in Violation of Confrontation Clause

1   that the Government may use Dr. Lynch's prior testimony to inculpate Mr. Chamberlain. ***This is***

2   ***plainly impermissible under the Confrontation Clause***. *Crawford v. Washington*, 541 U.S. 36, 61

3   (2004). Dr. Lynch's testimony that he received allegedly false information from Mr. Chamberlain

4   has no inculpatory effect as to Dr. Lynch. Rather, it tends to exculpate Dr. Lynch from being the

5   source of the false information. The only reason the Government would want to introduce this

6   statement is to inculpate Mr. Chamberlain as the source of the false information.

7         The same is true for the Government's proffered introduction of Dr. Lynch's testimony

8   that Mr. Chamberlain approved a letter to the UK's Financial Reporting Review Panel ("FRRP").

9   Opp. at 5:13-15. The Government alleges in its Rule 404(b) notice that certain letters to the FRRP

10  were false. Decl. of Lincenberg ¶ 4, Ex. 1. The only purpose of the Government introducing Dr.

11  Lynch's testimony that Mr. Chamberlain approved one of these letters would be to inculpate Mr.

12  Chamberlain. Had Mr. Chamberlain been able to examine Dr. Lynch on this, he would have been

13  able to clarify that another Autonomy employee was responsible for the letters to the FRRP. These

14  examples highlight the concern that the Government may violate Mr. Chamberlain's

15  Confrontation Clause right by introducing Dr. Lynch's prior testimony for the purpose of

16  inculpating Mr. Chamberlain.

17        Make no mistake, these statements are "directly accusatory" under *Bruton* as they refer

18  "directly to the defendant." *Samia v. United States*, 599 U.S. 635, 653 (2023) (quoting *Gray v.*

19  *Maryland*, 523 U.S. 185, 194, 196 (1998). As explained in *Gray*, "certain powerfully

20  incriminating extrajudicial statements of a codefendant—those naming another defendant—

21  considered as a class, are so prejudicial that limiting instructions cannot work." *Gray*, 523 U.S. at

22  192 (internal citations and quotation marks omitted).[1] In a joint trial, the only way the Government

23  can use this inculpatory statement and statements like it is to redact it to remove references to Mr.

24  Chamberlain. *Id.* That is the only way to avoid the "special prejudice" identified in *Bruton*. *Id.*

25

26  _____

27  [1]   In addition to the directly incriminating nature of at least a portion of Dr. Lynch's prior testimony, the sheer volume of such testimony will make it harder for the jury to follow any potential limiting instruction not to consider it in assessing Mr. Chamberlain's guilt. *See United*

28  *States v. Addonizio*, 405 U.S. 936 (1972) (Douglas, J., dissenting in denial of certiorari).

1    The Government is wrong to rely on *Richardson* to suggest that these statements are not

2 incriminating on their face. Opp. at 3:12-13. *Richardson* involved a statement that was redacted to

3 omit "all reference to [the defendant]—indeed, to omit all indication that *anyone* other than [the

4 other co-defendants] participated in the crime." *Richardson*, 481 U.S. 200, 203 (1987). Mr.

5 Chamberlain would likely agree that if Dr. Lynch's statements are redacted to remove all

6 references to Mr. Chamberlain then they would be consistent with the reasoning in *Richardson*

7 and *Gray* and would no longer pose a Confrontation Clause concern. But Mr. Chamberlain cannot

8 understand the overall prejudicial effect of the admission of Dr. Lynch's statements in a joint trial

9 without knowing what statements the Government intends to use.

10    There is a need to address these issues as soon as possible.[2] In order to evaluate the

11 Government's use Dr. Lynch's prior testimony, including the purpose for which it is being

12 admitted and the potential direct or spillover prejudicial effect to Mr. Chamberlain, the Court must

13 evaluate *all* of the testimonial statements of Dr. Lynch that the Government intends to introduce.

14 This is not something that can be addressed mid-trial on a piecemeal basis.[3]

15 **II.      PRETRIAL IDENTIFICATION IS REASONABLE**

16    The Government appears to have been in possession of Dr. Lynch's prior testimony for

17 over three years. Lincenberg Decl. ¶ 2. Government counsel are no strangers to the fact pattern

18

19

20 [2]   In reply to the Government's opposition, Mr. Chamberlain focuses on the Government's proffered examples. He does not concede that these are the only examples of Dr. Lynch providing directly incriminating testimony as to Mr. Chamberlain. It is not in Mr. Chamberlain's interest to

21 comb through Dr. Lynch's prior testimony to identify for the Government what he believes is inculpatory as to him. Nevertheless, it is likely that there are prior statements of Dr. Lynch that are

22 more incriminating as to Mr. Chamberlain than selected by the Government. We will not know

23 until the Government identifies the statements it seeks to introduce.

24 [3]   The examples cited by the Government highlight an additional concern not previously raised by Mr. Chamberlain. From the Government's proffer, it appears that the Government seeks to

25 introduce the questions posed by HP's lawyers and Dr. Lynch's response to such questions. For example, the Government cites to a portion of Dr. Lynch's testimony where HP's lawyers "asked

26 Lynch to admit that Autonomy (through Chamberlain) 'was trying . . . to maximise the amounts that could be collected to sales and marketing[.]'" Opp. at 4:21-24. The prejudicial manner in

27 which HP attorneys cross-examined Dr. Lynch should itself be excluded as hearsay, irrelevant, and in violation of Rule 403. Allowing such statements will have the effect of admitting HP's

28 version of events into evidence based on out-of-court statements of its attorneys.

1  surrounding this case. Surely the Government has reviewed this testimony and identified portions

2  that it believes will be helpful to proving its case.

3       From the first time the parties discussed a trial date, the Court indicated that it would

4  require the Government to preview its case-in-chief in order to facilitate a trial date that was

5  earlier than that which was proposed by the parties. ECF No. 191 at 10:21-11:5 (Transcript of

6  June 27, 2023 hearing). Now, the Government claims it is unreasonable to provide pretrial notice

7  in the manner requested by Mr. Chamberlain. The Court should require more from the

8  Government. *See United States v. Blackwell*, 2007 WL 9698055, at *1 (D. Alaska June 22, 2007)

9  (ordering Government to provide pretrial notice of any co-defendant's statements that inculpated

10  his co-defendant).

11  **III.    CONCLUSION**

12       For the foregoing reasons, Mr. Chamberlain respectfully requests that the Court preclude

13  the admission of Dr. Lynch's testimonial statements in this joint trial unless the Government

14  provides pretrial notice of the specific statements it intends to introduce in its case-in-chief

15  forthwith.[4]

16

17  DATED:  February 7, 2024          Gary S. Lincenberg
                                       Ray S. Seilie
18                                     Michael C. Landman
                                       Bird, Marella, Rhow,
19                                     Lincenberg, Drooks & Nessim, LLP

20

21

                                       By:        /s/ *Gary S. Lincenberg*
22                                                   Gary S. Lincenberg
                                            Attorneys for Defendant Stephen Keith
23                                          Chamberlain

24

25

26  [4]   Mr. Chamberlain's original motion requests at least 30-days' pretrial notice, which would require notice be provided on or before February 17, 2024. Given the Court will be hearing argument on this motion on February 21, 2024, Mr. Chamberlain seeks an order that the

27  Government provide the requested pretrial notice on or before February 28, 2024. This will provide Mr. Chamberlain with sufficient time to raise any issues with the Court prior to opening

28  statements on March 18, 2024.