Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA  94105
Telephone:  (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Dwight J. Draughon
Drew C. Harris
(Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 506-3900

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone:  (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

Gary S. Lincenberg (SBN: 123058)
Ray S. Seilie (SBN:  277747)
Michael C. Landman (SBN:  343327)
**Bird, Marella, Rhow, Lincenberg**,
**Drooks & Nessim LLP**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067
Telephone:  (310) 201-2100
glincenberg@birdmarella.com

*Attorneys for Defendant*
*Stephen Keith Chamberlain*

## UNITED STATES DISTRICT COURT

## NORTHERN  DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No.: 3:18-cr-00577-CRB<br>Judge: Hon. Charles Breyer<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR JOINT MOTION *IN LIMINE* TO PRECLUDE USE OF MISLEADING ACCOUNTING-RELATED TERMINOLOGY AND IMPROPER HYPOTHETICAL QUESTIONS**<br><br>**(Lynch MIL No. 6)**<br><br>Date:  February 21, 2024 at 2 p.m.<br>Court:  Courtroom 6 – 17th Floor<br>Date Filed:  February 7, 2024<br>Trial Date:  March 18, 2024 |

I.      INTRODUCTION

Defendants Michael Richard Lynch and Stephen Keith Chamberlain respectfully submit this reply memorandum in further support of their motion *in limine* to preclude the use of improper lay testimony, misleading accounting terminology, and improper speculative testimony.  In its opposition to the motion, the government fails to engage in any meaningful way with the defendants' legitimate and substantial concerns about the misuse of accounting terminology and trivializes the defendants' argument as a mere semantic dispute.  ECF No. 315 (G. Opp. to D. MIL 6) at 1.  Nor does the government offer any assurance that it will not ask hypothetical questions that elicit speculative testimony.  The defendants' motion to preclude the government from misusing accounting terminology and eliciting speculative testimony should be granted.

II.     ARGUMENT

A.      The Use of Unfairly Prejudicial Terminology Should be Prohibited

The government accuses the defense of seeking to exclude terminology which it "do[es] not like."  *Id*.  In so doing, the government misses the point entirely that the improper use of accounting terminology—indeed, its *misuse*—in both witness testimony and the government's openings and closings must be policed and, where improper, excluded because it is unfairly prejudicial and pejorative.  The government's "response" to the motion—in particular, its rote recitation of instances where witnesses in the *Hussain* trial used a disputed accounting term—is no response at all as it does not address the central concern motivating the defendants' request.  The problem is not that witnesses *used* a certain accounting term, but rather that they *misused* or *misdefined* a certain term, and that the government followed suit.  It is unremarkable to contend that an accounting fraud case must be litigated using correctly defined accounting terms to prevent confusion and prejudice, yet the government resists the defense's effort to obtain a fair trial at every turn.

Leaving the defense to try and correct misleading uses of terminology on cross-examination is no answer where an unregulated record will be replete with imprecise and conflicting terms and the jury may well conclude—incorrectly—that there must be some fire

1    amidst all of that smoke and mirrors.  Moreover, permitting the government to elicit testimony

2    from non-accountants who carelessly use or misdefine a particular accounting term in a manner

3    that implies wrongdoing where there is none will lead to undue delay as the defense will be

4    forced to undo and rectify each incorrect definition.  At that point, however, with multiple

5    "definitions" of an accounting term of art in the ether, the damage will already have been done,

6    leading to inevitable jury confusion and prejudice to the defendants.  And given the substantial

7    number of misleading and problematic misuses of terminology the defense has identified, this

8    scenario will repeat itself again and again, to the detriment of the defense.

9        Courts may prohibit the use of terms "when such characterizations [are] inflammatory

10   and unnecessary to prove a claim." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,

11   No. 04-civ-10014-PKL, 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009); *see also Highland*

12   *Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 192–93 (S.D.N.Y. 2008).  If a term is

13   irrelevant or "inflammatory on its face," it must be precluded. *Aristocrat Leisure*, 2009 WL

14   3111766, at *7 (precluding the use of "tax haven" because it is "irrelevant and inflammatory,"

15   and "caution[ing] the parties against using inflammatory terms").  Where there is a factual

16   dispute concerning the application of certain terminology, pejorative terms should be precluded

17   because "such term[s] [are] more likely to mislead a jury than other more neutral and factual

18   terms." *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 WL 4129193, at *2 n.1

19   (N.D. Cal. July 8, 2015) (precluding the use of "patent troll" and "patent assertion entity" in

20   favor of "other more neutral and factual terms" because of factual dispute as to whether plaintiff

21   was a "patent assertion entity").

22       The government does not address the potential prejudicial impact of the inappropriate or

23   pejorative use of accounting terms against the defendants, or otherwise attempts to evade the

24   issue of prejudice by referencing inapposite evidentiary rules.  First, the government recites

25   testimony from the *Hussain* trial where a witness uttered a disputed accounting term and

26   contends that as long as a witness testifies to her "understanding" of an accounting term, this

27   necessarily cures any prejudice.  ECF No. 315 at 1–3.  Not so.  The fact that a witness might be

28   "familiar" with a term does not mean that the term is used or defined correctly or that its usage is

1  not misleading.  For example, the government cites testimony by Stouffer Egan in which Mr.

2  Egan defines "quid pro quo," "reciprocal," and "round-trip."  *Id*. at 1.  Mr. Egan is not an

3  accountant and is not qualified to offer definitions of accounting terms, much less of pejorative

4  terms such as these.[1]  Similarly, the government lists examples of when Sushovan Hussain,

5  Brent Hogenson, and others uttered the words "side letter," without addressing the defense's

6  concern that "side letter" be appropriately defined.  Merely citing to testimony that mentions a

7  "side letter" is unresponsive.  The defense does not contest the existence of "side letters," but

8  does dispute when the term is used expansively and improperly to encapsulate all

9  communications following a contract.  As a side letter is an agreement that alters the terms of a

10  contract, *see Hussain* Tr. at 1857:22–24; 1868:5–18, it must not be used to describe verbal

11  communications from a salesperson that merely amount to "words of comfort" that a reseller will

12  not be left "holding the bag" if a deal with an end-user does not close.  Thus, merely listing

13  examples where witnesses used an accounting term such as "side letter" does not ameliorate the

14  potential prejudice that arises when the term is misused.

15       Second, the government cites Federal Rule of Evidence 602 for the proposition that

16  witnesses are entitled to testify "using terms they deem appropriate and with which they are

17  familiar."  ECF No. 315 at 3.  There is nothing in Rule 602 that permits a witness to use a term

18  she "deem[s] appropriate," and it is the Court's province, not the witness's, to determine whether

19  a potentially pejorative term may be used at trial.  Moreover, the rules of evidence are designed

20  to limit unfairly prejudicial evidence, *see, e.g.*, Fed. R. Evid. 403, so the mere fact that a witness

21  perceived something does not mean that the perception is admissible evidence.

22       Third, the government argues that lay witness testimony that misuses accounting terms is

23  admissible under Federal Rule of Evidence 701.  ECF No. 315 at 3–4.  The government fails to

24

25

26

27

28

---

[1] The government notes that the term "circular transactions" appears in a page from one of Mr. Chamberlain's notebooks, but the government incorrectly and misleadingly ties that term to separate references to "bad" business and "early rev rec."  ECF No. 315 at 3.  In fact, there is no indication in the notebook page of any reason to be concerned about the "circular" transactions listed on the page.

1   explain, however, how the witnesses here satisfy the requirements of Rule 701. The misuse of

2   an accounting term and the pejorative nature of a term such as "quid pro quo," "barter," and

3   "round-trip" will not help the jury determine a fact in issue; on the contrary, the incorrect use of

4   accounting terms will taint the testimony and unnecessarily confuse the jury in an already

5   complicated case.[2] Moreover, defining a technical accounting term is the province of an

6   accountant who has the necessary specialized knowledge to testify. Such testimony is subject to

7   Federal Rule of Evidence 702. Therefore, the proffered evidence is inadmissible under Rule

8   701, and the government offers no meaningful argument to the contrary.

9        Finally, the government attempts to defend its use of pejorative terms and

10  characterizations in its opening and closing arguments by asserting that its usage of such terms

11  "fairly describe[s]" the evidence. *Id*. at 4. It is telling that the government's defense of its own

12  misleading characterizations of accounting terms is mentioned only in passing. Throughout the

13  *Hussain* trial, the government used distinct accounting terms such as "reciprocal" and "barter"

14  interchangeably, or incorrectly defined accounting terms. *See Hussain* Tr. at 31:19–22 (defining

15  a "reciprocal transaction" as "a deal where one party buys something and sells something to

16  another at or around the same time *at an inflated price*") (emphasis added). In its closing, the

17  government used the term "dark period," a benign financial term to reflect the period in which

18  Autonomy's results were not published, to suggest that something about its "dark" nature allowed

19  "all the bodies [to be] buried in order to cover up what has actually happened." *Hussain* Tr. at

20  5839:18–25. The government's use of pejorative terms or its careless definitions of accounting

21  terms of art is highly prejudicial and would cause undue confusion and delay. Testimony that is

22

23  _____

24  [2] In a pretrial deposition of Marc Geall conducted in London in January 2024, the government's
    questions perpetuated the confusion surrounding "barter" deals, defining such transactions
25  broadly to be synonymous with any transactions where entities purchase and sell goods from
    each other. The government made no effort to confine Mr. Geall to the definition of "barter"
26  transactions that was actually used by Autonomy in answering questions from analysts about
    whether it engaged in such transactions. While the questions and answers were therefore
27  irrelevant and should be deemed inadmissible, the potential for jury confusion and prejudice to
    the defense from such questioning is self-evident.
28

1    clouded by loaded terminology will inevitably distract the jury from focusing on the key factual

2    issues in the case.  Here, the government argues that the accounting terms at issue are "all

3    commonly used and easily understood terms" but later admits that the defense may elicit

4    "alternative meanings of the terms" on cross-examination.  ECF No. 315 at 4, 6.  In a case that is

5    already incredibly complex, the probative value of introducing conflicting definitions of

6    accounting terms is outweighed by the significant prejudicial impact on the defendants, who will

7    need to counter each inappropriate usage of accounting terminology, and the potential for jury

8    confusion and delay.

9         In sum, the government's misuse of accounting terminology is highly prejudicial,

10   confusing, and inappropriate when elicited from lay witnesses with no expertise in accounting

11   and should be prohibited.

12        **B.     The Use of Improper and Prejudicial Hypothetical Questions Should be**

13               **Prohibited**

14        In response to the defense's request that the Court bar hypothetical questions and

15   speculative testimony, the government contends that such hypothetical questions have

16   "tremendous probative value."  *Id*. at 6.  The government cites authorities that it argues affirms

17   the use of hypothetical questions in fraud cases, but it fails to engage with the hypothetical

18   questions that are likely to be elicited here and the specialized nature of the subject matter.  More

19   specifically, hypothetical questions and testimony are unhelpful and prejudicial when they are

20   posed to a lay witness and pertain to accounting or disclosure decisions.  Especially problematic

21   is the notion that a witness may "have liked to know" something, which does not bear on whether

22   the information was actually material to an accounting decision.  Far from providing insight into

23   whether the defendants' representations "were capable of influencing[] a person to part with

24   money or property," *id*. at 7, speculative answers to hypothetical questions relating to accounting

25   decisions carry minimal probative value while risking high prejudicial effect.

26        The government asserts that a case cited by the defense regarding hypothetical questions,

27   *Active Sports Lifestyle USA LLC v. Old Navy, LLC*, No. SACV 12-00572, 2013 WL 11239385,

28   at *9 (C.D. Cal. Nov. 21, 2013), supports the government and that the speculative testimony was

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR JOINT MOTION *IN LIMINE* TO PRECLUDE
USE OF MISLEADING ACCOUNTING-RELATED TERMINOLOGY AND IMPROPER HYPOTHETICAL
QUESTIONS (LYNCH MIL NO. 6) – 3:18-CR-00577-CRB

"limit[ed] . . . on other grounds."  ECF No. 315 at 9.  It is precisely those "other grounds" that support the defense position.  Those "other grounds" included the same Rule 403 concerns the defense had raised here:  the court, citing Rule 403, precluded the speculative testimony because it would "distract[] from the core issues of the case" and constitute an "unproductive use of time," thus "outweigh[ing] any benefit of using the[] hypothetical."  *Active Sports Lifestyle*, 2013 WL 11239385, at *9.  Like in *Active Sports Lifestyle*, the hypothetical questions and speculative testimony at issue here should be precluded under Rule 403.

**III.    CONCLUSION**

For the foregoing reasons, the Court should grant the defendants' joint motion *in limine* to preclude the use of misleading accounting terminology and improper hypothetical questions.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR JOINT MOTION *IN LIMINE* TO PRECLUDE USE OF MISLEADING ACCOUNTING-RELATED TERMINOLOGY AND IMPROPER HYPOTHETICAL QUESTIONS (LYNCH MIL NO. 6) – 3:18-CR-00577-CRB

6

Dated: February 7, 2024

Respectfully submitted,
By:  _/s/ Christopher J. Morvillo_
Christopher J. Morvillo

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**CLIFFORD CHANCE US LLP**
31 West 52nd Street
New York, NY 10019
Telephone:  (212) 878-3437
christopher.morvillo@cliffordchance.com

Jonathan Matthew Baum (SBN: 303469)
**STEPTOE LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA  94105
Telephone:  (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Dwight J. Draughon
Drew C. Harris
(Admitted Pro Hac Vice)
**STEPTOE LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 506-3900

*Attorneys for Defendant*
*Michael Richard Lynch*

By:  _/s/ Gary S. Lincenberg_
Gary S. Lincenberg
Gary S. Lincenberg
Ray S. Seilie
Michael C. Landman
**BIRD, MARELLA, RHOW, LINCENBERG,
DROOKS & NESSIM, LLP**

*Attorneys for Defendant*
*Stephen Keith Chamberlain*

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR JOINT MOTION *IN LIMINE* TO PRECLUDE
USE OF MISLEADING ACCOUNTING-RELATED TERMINOLOGY AND IMPROPER HYPOTHETICAL
QUESTIONS (LYNCH MIL NO. 6) – 3:18-CR-00577-CRB

7