Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Christopher Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

　　　　Plaintiff,

　　vs.

MICHAEL RICHARD LYNCH and
STEPHEN KEITH CHAMBERLAIN,

　　　　Defendants.

Case No.: 3:18-cr-00577-CRB

Judge: Hon. Charles Breyer

**DEFENDANT MICHAEL RICHARD LYNCH'S REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE THE 2014 FILING OF AUTONOMY SYSTEMS LTD.'S 2011 ANNUAL REPORT**

**(Lynch MIL No. 2)**

Date: February 21, 2024
Time: 2:00 pm
Court: Courtroom 6 – 17th Floor
Date Filed: February 7, 2024
Trial Date: March 18, 2024

1

2

## <u>TABLE OF CONTENTS</u>

**Page**

SUMMARY OF THE ARGUMENT ........................................................................................... iii

I.     **New Evidence Dictates a Different Result From *Hussain*** ............................................1

II.    **The Court Should Exclude the ASL Restatement Under Fed. R. Evid. 802 Because It Is Hearsay**..........................................................................................................2

      A.     The ASL Restatement Was Not Made "At or Near the Time" of the 2009-2011 Transactions It Describes..................................................................................2

      B.     If the ASL Restatement Is a Record of the Accounting Review, then It Is Not a Business Record Under Fed. R. Evid. 803(6)(B) & 803(6)(C)............................4

      C.     The ASL Restatement Lacks Indicia of Reliability and Trustworthiness...............6

III.   **If the Court Permits the ASL Restatement then It Should Grant Dr. Lynch's Motion for an Early Return Subpoena to HP** ...............................................................7

i

Defendant Lynch's Reply Supp. MIL to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Cincinnatus Partners I, LP v. Farm Bureau Prop. & Cas. Ins. Co.*,
5    No. 1:11-cv-427, 2014 WL 12748898 (S.D. Ohio May 27, 2014)............................................5

6    *Clark v. Los Angeles*,
7    650 F.2d 1033 (9th Cir. 1981) ........................................................................................5, 6

8    *Hook v. Regents of Univ. of Cal.*,
     394 F. App'x 522 (10th Cir. 2010) ...................................................................................4
9

10   *United States ex rel. Landis v. Tailwind Sports*,
     292 F. Supp. 3d 211 (D.D.C. 2017) ...............................................................................5

11   *Melendez-Diaz v. Massachusetts*,
12   557 U.S. 305 (2009)...........................................................................................................6

13   *Paddack v. Dave Christensen, Inc.*,
14   745 F.2d 1254 (9th Cir. 1984) ......................................................................................4, 6

15   *Palmer v. Hoffman*,
     318 U.S. 109 (1943)...........................................................................................................6
16

17   *SEC v. Jasper*,
     678 F.3d 116 (9th Cir. 2012) ..............................................................................2, 3, 4, 5
18

19   *United States v. Miller*,
     953 F.3d 1095 (9th Cir. 2020) .........................................................................................3

20   *United States v. Reyes*,
21   239 F.R.D. 591 (N.D. Cal. 2006)..............................................................................1, 4, 6

22   *United States v. Weber*,
     574 F. Supp. 3d 791 (D. Mont. 2021)...............................................................................5
23

**Other Authorities**

24

25   Fed. R. Evid. 403 ...............................................................................................................3

26   Fed. R. Evid. 702 ...............................................................................................................3

27   Fed. R. Evid. 802 ...............................................................................................................2

28   Fed. R. Evid. 803 ................................................................................................iii, 2, 4, 7

Defendant Lynch's Reply Supp. MIL to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

## SUMMARY OF THE ARGUMENT

The Court's decision whether to admit the ASL Restatement is a fact-intensive inquiry requiring findings as to each element of Fed. R. Evid. 803(6).  Dr. Lynch has provided evidence and testimony demonstrating that the ASL Restatement relied heavily upon argument and interview summaries from Morgan Lewis and PwC, and was drafted to buttress HP's litigation efforts.  The government nonetheless asks the Court to follow its *Hussain* ruling without further analysis.  But these facts were not available to the Court in *Hussain* and would require reconsideration even if *Hussain* was law of this case, which it is not.  A fresh evaluation of this new evidence demonstrates that the ASL Restatement is inadmissible.

The government argues that the ASL Restatement was prepared as part of Autonomy's business practice of "stat[ing] its financial statements."  Gov't's Opp. to Lynch MIL No. 2 at 3 ("Opp."), Dkt. 312.  While drafting financial statements may have been a "regularly conducted activity of [Autonomy]," reviewing previous years' statements was not "a regular practice of that activity" as required by Fed. R. Evid. 803(6)(C).  It was instead a one-time effort to support the November 2012 criminal referral of Dr. Lynch and others.

The resulting ASL Restatement is untrustworthy.  Many of the underlying communications remain cloaked with privilege, but the few that have been disclosed show Morgan Lewis and PwC providing Yelland's team with "brief" style arguments that concededly conflict with contemporaneous evidence.  Deloitte correctly argued that Yelland's proposed revisions to ASL's accounts were unnecessary and that Yelland's reliance on hindsight evidence was contrary to accounting rules and practices.  The ASL Restatement is a made-for-litigation tool devoid of the characteristics that make business records and accounting opinions reliable.

If the Court disagrees and admits the Restatement, then Dr. Lynch must subpoena third parties in order to prepare his defense.  The government does not oppose that request and it should be granted.

## I.     New Evidence Dictates a Different Result From *Hussain*

HP has withheld many of the documents and communications underlying the ASL Restatement, but the few documents that slipped through reveal that the ASL Restatement and Yelland's revenue recognition opinions were based not on business records but on litigation arguments provided by counsel and investigative accountants.  In Dr. Lynch's opening motion, he traced opinions about transactions from Morgan Lewis and PwC through Antonia Anderson to Yelland to the jury in *United States v. Hussain*.  He relied on documents and sworn testimony that were not cited in the *Hussain* briefs and of which the Court was apparently unaware.  That evidence proves that the ASL Restatement was not the product of HP's ordinary financial statement preparation process.  Morgan Lewis and PwC were hired to conduct the investigation that supported the criminal referral of Dr. Lynch and Autonomy's former leadership, and a follow-on civil lawsuit.  Their arguments—published via the ASL Restatement and testified to by Yelland—were driven by HP's desire to substantiate previous claims that a $5 billion write-down was due to revenue recognition fraud.[1]

The government does not contest the examples found by Dr. Lynch.  It does not contest, for example, that Anderson reviewed the documentation of the FileTek transaction and found that contemporaneous evidence indicated Autonomy had properly recognized revenue.  Anderson therefore asked the litigation team for guidance.  In an email[2]—PwC agreed that contemporaneous evidence supported Autonomy's original revenue recognition decision.  To rebut that evidence, PwC provided Anderson with an attorney-drafted argument: that newly obtained, unspecified comments in interviews of unidentified R&D personnel by Morgan Lewis

---

[1] Indeed, as explained *infra* in § II.C, Yelland's initial contemporaneous opinion was that any errors in prior year accounts was "not fundamental" and did not require a full restatement.  In early November 2012, he believed that the statement of ASL's 2011 accounts was broadly complete and would be filed in 2012.  Less than one week later, on November 20, 2012, HP accused Dr. Lynch of a multi-billion dollar accounting fraud and referred him for criminal prosecution.  Yelland, Morgan Lewis, and PwC thereafter collected arguments for restating revenue and incorporated those arguments into the ASL Restatement to buttress HP's accusations.

[2] It bears noting that the email was identified as privileged work product implying that it would not have been created but for the prospect of litigation.  *See United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006) (explaining that work product doctrine applies to materials that would not be "generated . . . 'but for' the prospect of litigation").

1

Defendant Lynch's Reply Supp. MIL to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

cast doubt on the commercial rationale for the software purchases.  Anderson and Yelland used it to justify restating revenue from several FileTek transactions.  At Hussain's trial, lacking this evidence, the defense was unable to rebut Yelland's testimony that his team had determined based on its own review that Autonomy improperly recognized the revenue.

Nor does the government contest the other examples: that this was just one of many transactions where the ASL Restatement and Yelland's opinion were based not on business records, but imported multiple layers of hearsay from litigation counsel and their investigators. *See* Lynch MIL No. 2 § I.  From Dr. Lynch's review of the *Hussain* briefs, it appears that Hussain suspected this was the case but did not—or could not—provide conclusive supporting evidence.  The government argues that Dr. Lynch's new information "is a variation on a theme" presented by Hussain.  Opp. at 1.  That is a red herring.  The evidence—both documents and testimony—is new.  Even if the Court was bound by *Hussain*, which it is not, the new evidence mandates reconsideration of the decision in that case and a different outcome.

## II.   The Court Should Exclude the ASL Restatement Under Fed. R. Evid. 802 Because It Is Hearsay

### A.   The ASL Restatement Was Not Made "At or Near the Time" of the 2009-2011 Transactions It Describes

To apply the business records exception, the government must demonstrate that the ASL Restatement is a "record of an act, event, condition [or] opinion . . . made at or near the time by—or from information transmitted by—someone with knowledge [of the act, event, or opinion]." Fed. R. Evid. 803(6).  If the ASL Restatement is a record of Autonomy's transactions, then the analysis ends and the ASL Restatement is inadmissible.  *See* Lynch MIL No. 2 § II.A (explaining with citations to authority that the 2014 filing was not prepared at or near the time of the transactions and that Yelland lacked knowledge of the transactions); *see* Opp. (not contesting this explanation).

If the ASL Restatement is a record of Autonomy's "accounting review," however, then it arguably satisfies the first element of Fed. R. Evid. 803(6) under *Jasper*.  The government disputes that this was *Jasper*'s premise, but the Ninth Circuit's text is clear.  The *only* reason that the restatement in *Jasper* satisfied the first element was because of the factual assumption that it

was "introduced as . . . a business record *of the accounting review itself . . . .*"  *SEC v. Jasper*,

678 F.3d 116, 123 (9th Cir. 2012) (emphasis added).  Neither *Jasper* nor the government

articulates any rationale under which a filing prepared years after the financial performance it

describes could otherwise come into evidence.[3]

> But the necessary implication of the fact that the ASL Restatement is only admissible as
mere record of the 2012-2014 accounting review is that, for the reasons stated in Dr. Lynch's
opening motion, the ASL Restatement is not admissible under Fed. R. Evid. 702 and Fed. R.
Evid. 403.  Yelland did not draft the ASL Restatement during the underlying events, and instead
relied upon the claims of others to draft the document.  His opinion carries no weight and is not
probative because even if he was correct, the original ASL accounts were not reviewed during
the underlying events and were not signed by Dr. Lynch.  Lynch MIL No. 2.[4]

> Moreover, introducing the accounting review and subsequent ASL Restatement would be
a tremendous waste of time.  The government has sought to keep the events that caused and
biased the accounting review—HP's leadership change and consequent destruction of Autonomy
followed by premature and unfounded accusations against Dr. Lynch—out of this case.  Opp. to
Lynch MIL No. 1 § II.C (arguing such would "lengthen the trial and confuse the jury"); *id.* § II.D
(calling this evidence "a Pandora's box").[5]  If the Court admits the ASL Restatement, HP's post-
acquisition failure to achieve the synergies HP projected from the acquisition and the need to

---

[3] *See* Def't Lynch's Opp. to Gov't MIL No. 1 § I.B, Dkt. 308 (citing examples of cases applying Fed. R. Evid. 803(6)'s elements to the events described in a document, not the act of describing those events).

[4] The government responds that the ASL Restatement could nonetheless be considered a material misrepresentation even if it was not made by Dr. Lynch or to HP.  Opp. at 2 (accusing Dr. Lynch of "blur[ring] the lines between falsity and reliance").  But the government's argument proves too much.  "[T]o be guilty of wire fraud, a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property *by means of those deceptions*."  *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020) (emphasis added).  If a false statement is made in a vacuum with no relevant audience, then it cannot possibly be fraudulent.  The government need not prove that HP actually relied upon a false statement from Dr. Lynch, but it does bear the burden of proving that Dr. Lynch made a false statement to HP, and the government has conceded that the ASL Restatement is not such a statement.

[5] The government perplexingly argues against admitting evidence of HP's November 2012 write-down and its size. *Id.* at 12.  Attributing more than $5 billion of the write-down drove Morgan Lewis, PwC, and Yelland to advocate for extensive restatements.  HP tasked them with substantiating the write-down, and as reflected in the FileTek email exchange, they obliged by pushing for restatement of transactions even where the original accounting was supported by contemporaneous evidence.

---

3

Defendant Lynch's Reply Supp. MIL to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

1    find a scapegoat for the resulting drop in revenue forecasts becomes necessary context and

2    motive evidence.  Def't Lynch Mot. to Admit Post-Acquisition Evid. (Lynch MIL No. 1), Dkt.

3    288.  If the government is permitted to introduce the 2012-2014 accounting review, the Court

4    must in fairness grant Dr. Lynch's subpoenas for information and communications that drove

5    that accounting review.

6        **B.    If the ASL Restatement Is a Record of the Accounting Review, then It Is Not
          a Business Record Under Fed. R. Evid. 803(6)(B) & 803(6)(C)**

7

8        To satisfy Fed. R. Evid. 803(6), the proponent must demonstrate that the record was

9    made in the course of a business's "regularly conducted activity," and that "making the record

10   was a regular practice of that activity."  The government fails to make this showing for two

11   reasons.

12       First, as discussed above, the only way for the government to clear 803(6)'s previous

13   element—that the ASL Restatement was prepared "at or near the time" of the events being

14   reported on— was to claim that the ASL Restatement was a record of a one-off activity: the

15   review performed by Morgan Lewis, PwC, and HP.  Because that activity was not "regularly

16   conducted," but in fact was driven by HP's litigation efforts, *Jasper* is inapplicable.  *Accord.*

17   *Reyes*, 239 F.R.D. at 600 ("Documents produced in a full-fledged, one-time internal

18   investigation into alleged corporate malfeasance do not fall under [Fed. R. Evid. 803(6)].  And

19   for good reason: they lack the hallmarks of reliability that justify the admission of run-of-the-mill

20   business records."); *see Hook v. Regents of Univ. of Cal.*, 394 F. App'x 522, 531 (10th Cir. 2010)

21   (holding that transcripts and notes taken as part of an internal investigation are inadmissible

22   because the investigation was not in the regular course of business).

23       Second, in an attempt to evade that straightforward analysis, the government pivots to

24   arguing that "stat[ing] its financial statements" is a regularly conducted activity.  Opp. at 3.  But

25   Fed. R. Evid. 803(6) has two regularity requirements, not one.  Fed. R. Evid. 803(6) (requiring

26   proof that a document was prepared in the course "regularly conducted activity," *and* that

27   "making the record was a regular practice of that activity").  The government cannot meet the

28

Defendant Lynch's Reply Supp. MIL to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

second regularity requirement.

In *Paddack v. Dave Christensen, Inc.*, an employer submitted monthly reports to its employees' unions summarizing transactions in which the employer contributed to benefits for the employees. 745 F.2d 1254, 1256-57 (9th Cir. 1984). While making those monthly reports was a regular activity of the employer, the employer did not regularly audit past reports; instead, it performed an audit only upon "susp[icion] that a deficiency existed." *Id.* at 1258. The Ninth Circuit held that because looking back at previously submitted reports was not "conducted with any regularity," the records of that look back were not business records. *Id.*; *accord Cincinnatus Partners I, LP v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 1:11-cv-427, 2014 WL 12748898, at *3 (S.D. Ohio May 27, 2014) (excluding audit report because there were no previous similar audits of the plaintiff firm evidencing a lack of business purpose).

That reasoning applies here. Just as the monthly reports were a regular activity in *Paddack*, submitting annual financial statements is a regular activity here. But just as preparing those monthly reports did not usually involve reexamining previous reports in *Paddack*, Autonomy did not usually reexamine previous financial statements. Thus just as the audit in *Paddack* was not a regular practice of the activity of preparing reports, the accounting review here is not a regular practice of preparing financial statements and is not a business record.

The government's final argument is that "[f]ew, if any, businesses are in the regular practice of restating financial statements. If the fact that financial statements were restated was a disqualifying factor *Jasper* would have come out the other way." Opp. at 4. Not so. A document is not a business record unless its making is "systematic" or "routine." *United States v. Weber*, 574 F. Supp. 3d 791, 794 (D. Mont. 2021) (quoting *Clark v. Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981)); *United States ex rel. Landis v. Tailwind Sports*, 292 F. Supp. 3d 211, 220 (D.D.C. 2017) ("[C]ommissioned studies generated for clients are not sufficiently 'systematic' or 'routine' to fall within the business-records exception."). In *Jasper*, that requirement was satisfied by the court's finding that reexamining the previous years was in fact routine: "the restated 10–K assuredly was 'prepared by people with personal knowledge, at or near the time of the events, who were just doing their ordinary jobs.'" 678 F.3d 1123 (citation

5

Defendant Lynch's Reply Supp. MIL to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

omitted).  That is not the case here.  Yelland was not doing his "ordinary job[]" by reexamining prior financial statements.  He was stepping far outside of the norm at Autonomy and the business records exception therefore does not apply.

### C.      The ASL Restatement Lacks Indicia of Reliability and Trustworthiness

The government does not contest Dr. Lynch's argument that the ASL Restatement is untrustworthy because the decision to re-examine and restate previous filings was motivated by intent to support HP's affirmative litigation efforts.  *See* Lynch MIL No. 2 § II.C.1 (citing *Palmer v. Hoffman*, 318 U.S. 109, 113-14 (1943) (holding that a business's accident report intended to fend off liability was untrustworthy); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321 (2009) (holding that lab report intended to establish liability was not a business record)); *accord Paddack*, 745 F.2d at 1259 ("[A] document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness.") (quoting *Clark*, 650 F.2d at 1037) (alteration in original)).  Nor does the government contest Dr. Lynch's argument that the ASL Restatement is untrustworthy because the methodology of Morgan Lewis, PwC, and HP's re-examination and restatement was unreliable.  Lynch MIL No. 2 § II.C.2 (citing *Reyes*, 239 F.R.D. at 600 (holding that documents produced as the result of an internal investigation by outside counsel were inadmissible as business records because they were untrustworthy).  As Dr. Lynch explained, Deloitte correctly rejected the ASL Restatement's efforts to impermissibly substitute attorney work product and hindsight evaluation for contemporaneous findings.  *Id.*

Instead, the government raises three arguments to meet Dr. Lynch's showing regarding lack of reliability and trustworthiness, none of which has merit.

First, the government argues that "the legal compulsion" imposed by the Companies Act makes every adjustment of prior year transactions trustworthy despite the contrary indications of untrustworthiness. Opp. at 4.  The government misses the point.  Regardless of whether the Companies Act requires filing annual financial statements, the Companies Act did not compel the contents of the ASL Restatement; HP's litigation interests did.  As of November 16, 2012, Yelland had concluded that "a full restatement of the prior year's results" was unnecessary because any errors in those previous years' accounts were "not fundament[al]."  Silverman Decl.

Defendant Lynch's Reply Supp. MIL to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB

Ex. A.  With respect to the preparation of the financial statements now referenced as the ASL Restatement, Yelland said the work was "broadly complete" and he had prepared draft accounts.  Silverman Decl. Ex. B ¶ 2.3.3.  But four days later, on November 20, 2012 HP accused Dr. Lynch of fraud.  After HP's write-down announcement Yelland's opinion transformed from "not fundament[al] error" (Ex. A) and "broadly complete" financial statements to "fundamental errors" and the need for "all aspects of the accounting to be re-assessed."  Dkt. 293-10 at 2445-0004, 0005.  Morgan Lewis, PwC, and HP (including HP Legal and Yelland's team) engaged in that re-assessment in order to support HP's accusation and litigation efforts, not because the Companies Act compelled that re-assessment.

Second, the government claims without citation that "all of the arguments raised by Dr. Lynch were raised and rejected in *Hussain*."  Opp. at 5.  This claim is both wrong and irrelevant.  As explained *supra* in § I, *Hussain* did not feature the unrebutted evidence presented in Dr. Lynch's opening motion.  The Court received a false narrative suggesting that the ASL Restatement was based on independent work performed by Yelland's team, when the evidence now demonstrates it was based instead on arguments from and interviews conducted by litigation counsel and PwC.

Third, the government perplexingly argues that the Restatement's untrustworthiness is a matter to be explored on cross-examination of Yelland and Anderson.  Trustworthiness is a preliminary requirement of admissibility under Fed. R. Evid. 803(6)(E); it is not an issue delegated to the jury.  If there remains a question as to the ASL Restatement's trustworthiness, then the Court should hold a Rule 104 hearing, not delegate the determination required by Fed. R. Evid. 803(6)(E) to the jury.

## III.    If the Court Permits the ASL Restatement then It Should Grant Dr. Lynch's Motion for an Early Return Subpoena to HP

The government does not contest that if the ASL Restatement is admitted, Dr. Lynch is entitled to compelled production of evidence in order to prepare a defense.  The Court should therefore grant Dr. Lynch's motion for related discovery (Dkt. 255).

1   Dated: February 7, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

*/s/ Brian M. Heberlig*
Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Christopher J. Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

Defendant Lynch's Reply Supp. MIL to Exclude the 2014 ASL Filing (Lynch MIL No. 2)
Case No. 3:18-cr-00577-CRB