1   Jonathan M. Baum (SBN: 303469)                   Christopher Morvillo (Admitted Pro Hac Vice)
    **Steptoe LLP**                                  Celeste L. Koeleveld (Admitted Pro Hac Vice)
2   One Market Street                                Daniel S. Silver (Admitted Pro Hac Vice)
    Steuart Tower, Suite 1070                        **Clifford Chance US LLP**
3   San Francisco, CA 94105                          31 West 52nd Street
    Telephone: (510) 735-4558                        New York, NY 10019
4   jbaum@steptoe.com                                Telephone: (212) 878-3437
                                                     christopher.morvillo@cliffordchance.com
5
6   Reid H. Weingarten (Admitted Pro Hac Vice)
    Brian M. Heberlig (Admitted Pro Hac Vice)        *Attorneys for Defendant*
7   Michelle L. Levin (Admitted Pro Hac Vice)        *Michael Richard Lynch*
8   Nicholas P. Silverman (Admitted Pro Hac Vice)
    Dwight J. Draughon (Admitted Pro Hac Vice)
9   Drew C. Harris (Admitted Pro Hac Vice)
    **Steptoe LLP**
10  1114 Avenue of the Americas
    New York, NY 10036
11  Telephone: (212) 506-3900

12

13                      **UNITED STATES DISTRICT COURT**

14                    **NORTHERN DISTRICT OF CALIFORNIA**

15

16

17  UNITED STATES OF AMERICA,                Case No.: 3:18-cr-00577-CRB

18            Plaintiff,                      Judge: Hon. Charles Breyer

19        vs.                                 **DEFENDANT MICHAEL RICHARD
                                              LYNCH'S REPLY IN SUPPORT OF
20                                            MOTION IN LIMINE TO EXCLUDE
    MICHAEL RICHARD LYNCH and                 OPINION TESTIMONY OF
21  STEPHEN KEITH CHAMBERLAIN,                CHRISTOPHER YELLAND**

22            Defendants.                     **(Lynch MIL No. 3)**

23

24                                            Date: February 21, 2024
                                              Time: 2:00 pm
25                                            Court: Courtroom 6 – 17th Floor
                                              Date Filed: February 7, 2024
26                                            Trial Date: March 18, 2024

27

28

## <u>TABLE OF CONTENTS</u>

Page

**SUMMARY OF THE ARGUMENT** ........................................................................1

**I.     Yelland's Opinion Is Not Based On or Contained Within Business Records** ..............2

**II.    The Court Should Exclude Yelland's Opinions and Multi-Layered Hearsay About the Underlying Transactions** ........................................................................3

      A.     Yelland's Opinions Constitute Expert Testimony ....................................3

          1.     Testimony Utilizing Specialized Accounting Principles and Opining on the Propriety of Accounting Treatment Are Expert Testimony..............3

          2.     If Yelland's Testimony Is Lay Testimony, Then It Is Inadmissible Because It Is Based In Part on Hearsay and Second-Hand Information......7

      B.     Yelland's Testimony Was Not Disclosed Under Rule 16(a)(1)(G)........................8

      C.     The Government Concedes that Yelland's Testimony Is Inadmissible Under Fed. R. Evid. 702 ........................................................................10

      D.     The Government Does Not Meaningfully Contest that Yelland's Testimony Is Inadmissible Under Fed. R. Evid. 403 ................................................................11

      E.     Yelland's Recitation of Hearsay Is Inadmissible Under Fed. R. Evid. 802 and 703 and the Confrontation Clause........................................................................13

**CONCLUSION** ........................................................................14

i

Defendant Lynch's Reply Supp. MIL to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bank of China v. NBM LLC*,
   359 F.3d 171 (2d Cir. 2004)................................................................................6, 7

*Claar v. Burlington N. R.R. Co.*,
   29 F.3d 499 (9th Cir. 1994) ...................................................................................9

*Dorn v. Burlington N. Santa Fe R.R. Co.*,
   397 F.3d 1183 (9th Cir. 2005) ................................................................................6

*Everest Stables, Inc. v. Canani*,
   No. 09-cv-9446, 2011 WL 13213657 (C.D. Cal. Oct. 6, 2011) ...........................5, 7

*Gallagher v. Holt*,
   No. 08-cv-3071, 2012 WL 3205175 (E.D. Cal. Aug. 3, 2012)...............................10

*James River Insurance Co. v. Rapid Funding LLC*,
   658 F.3d 1207 (10th Cir. 2011) ..............................................................................8

*LifeWise Master Funding v. Telebank*,
   374 F.3d 917 (10th Cir. 2004) ................................................................................5

*LN Mgm't v. JPMorgan Chase Bank*,
   947 F.3d 943 (9th Cir. 2020) ................................................................................10

*Ramirez v. Ghilotti Bros. Inc.*,
   941 F. Supp. 2d 1197 (N.D. Cal. 2013) ................................................................10

*SEC v. Sablok*,
   495 F. App'x 786 (9th Cir. 2012) ........................................................................6, 7

*In re SRAM Antitrust Litig.*,
   257 F.R.D. 580 (N.D. Cal. 2009)............................................................................9

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   No. 04-cv-02123, 2008 WL 2323856 (N.D. Cal. May 22, 2008).................9, 11, 13

*United States v. 242.93 Acres of Land*,
   No. 10-cv-1133, 2012 WL 579503 (S.D. Cal. Feb. 22, 2012)...............................10

*United States v. Alahmedalabdaloklah*,
   76 F.4th 1183 (9th Cir. 2023) ...............................................................................10

ii

Defendant Lynch's Reply Supp. MIL to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

*United States v. Ayala-Pizarro*,
  407 F.3d 25, 29 (1st Cir. 2005)................................................................6

*United States v. Beckman*,
  298 F.3d 788 (9th Cir. 2002) ..................................................................6

*United States v. Cervantes*,
  No. CR 12-792 YGR, 2016 WL 491599 (N.D. Cal. Feb. 9, 2016) ..........9

*United States v. Davis*,
  514 F.3d 596 (6th Cir. 2008) ..................................................................9

*United States v. Dillon*,
  No. 07-cv-1215, 2008 WL 11357991 (C.D. Cal. Nov. 18, 2008) ............8

*United States v. Figueroa-Lopez*,
  125 F.3d 1241 (9th Cir. 1997) ................................................................6

*United States v. Freeman*,
  498 F.3d 893 (9th Cir. 2007) ..................................................................7

*United States v. Garcia*,
  413 F.3d 201 (2d Cir. 2005)....................................................................7

*United States v. Lloyd*,
  807 F.3d 1128 (9th Cir. 2015) ................................................................8

*United States v. Oriedo*,
  498 F.3d 593 (7th Cir. 2007) ..................................................................6

*United States v. Ornelas*,
  906 F.3d 1138 (9th Cir. 2018) ..............................................................10

*United States v. Pattison*,
  Tr. 18, No. 08-cv-4238, Dkt. 173 (N.D. Cal. Feb. 4, 2010) (Breyer, J.) .................................4

*United States v. Rigas*,
  490 F.3d 208 (2d Cir. 2007)....................................................................6

*United States v. Roybal*,
  566 F.2d 1109 (9th Cir. 1977) ..............................................................10

*United States v. Saget*,
  377 F.3d 223 (2d Cir. 2004)..................................................................13

*United States v. Valdez*,
  No. 18-cr-608, 2019 WL 539074 (N.D. Cal. Feb. 11, 2019)..........8, 10

1

2

*United States v. Vega*,
    813 F.3d 386 (1st Cir. 2016) ..................................................................5

*United States v. W.R. Grace*,
    526 F.3d 499 (9th Cir. 2008) (en banc) ..............................................10

*United States v. White*,
    492 F.3d 380 (6th Cir. 2007) ................................................................4

*United States v. Williams*,
    No. 05-cr-920, 2010 WL 11474588 (C.D. Cal. Aug. 13, 2010) ...........13

3

4

5

6

7

8

**Other Authorities**

9

Fed. R. Crim. P. 16 ............................................................................ *passim*

Fed. R. Evid. 403 .............................................................................2, 11

Fed. R. Evid. 701 ..........................................................................1, 5, 7

Fed. R. Evid. 702 .............................................................................. *passim*

Fed. R. Evid. 703 ....................................................................................8

Fed. R. Evid. 802 .............................................................................2, 13

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Lynch's Reply Supp. MIL to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SUMMARY OF THE ARGUMENT

The Court should preclude Christopher Yelland from providing opinion testimony regarding the accounting treatment of historical Autonomy transactions, including whether certain purchases by Autonomy were shams or had a commercial purpose, whether Autonomy's customers were creditworthy, whether transactions were linked; whether ASL or Autonomy Group should have recognized revenue on the previously referenced transactions; how transfer pricing rules applied to the ASL Restatement; and ultimately, "the adjustments in respect of improper transactions that Mr. Yelland believes should have been [made] to Autonomy [Group]'s accounts to conform with IFRS."  Lynch MIL No. 3, Ex. 2 (Dkt. 294-4) at 2.

Yelland's opinions are expert testimony governed by Fed. R. Evid. 702.  The government concedes that the opinions require the application of specialized knowledge, but argues that Yelland reached most (but not all) of these opinions during the post-acquisition accounting review, and that they are therefore admissible under Fed. R. Evid. 701.  As Fed. R. Evid. 701 and precedent make clear, however, the application of specialized knowledge—a fact conceded by the government, Gov't Opp. Lynch MIL No. 3 (Opp) at 7, Dkt. 313, requires compliance with Fed. R. Evid. 702 and Fed. R. Crim. P. 16, which the government has not done and cannot do. Moreover, because Yelland's opinions are based on hearsay, they would not be admissible under Fed. R. Evid. 701.

The government's argument that it has sufficiently disclosed Yelland's expert testimony in compliance with Rule 16 is baseless.  When moving to exclude Dr. Lynch's expert testimony (which was accompanied by far more fulsome disclosures), the government hailed the post-*Hussain* amendments to Rule 16 as transformative.  Now the government claims—without citation to supporting precedent—that conclusory testimony in which Yelland refused to disclose his methodology is somehow sufficient to carry that Rule 16 burden.  The government is wrong and has not complied with Rule 16.

Even if it had been properly disclosed, Yelland's testimony is inadmissible under Fed. R. Evid. 702.  He has conceded (repeatedly) that he is not an expert in the applicable International Financial Reporting Standards (IFRS) and therefore cannot testify as an expert on those

Defendant Lynch's Motion In Limine to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

1    standards.  In addition, while he has failed to disclose his methodology, what little is known

2    demonstrates that his methodology fails to clear the reliability bar imposed by *Daubert* and Fed.

3    R. Evid. 702.  The government does not dispute this argument and therefore concedes that

4    Yelland's testimony is inadmissible under Fed. R. Evid. 702.

5           Finally, even if Yelland's testimony was properly disclosed and passed the requirements

6    of Fed. R. Evid. 702, it would be inadmissible because it is based on hearsay and is far more

7    prejudicial, misleading, and confusing than probative.  At bottom, Yelland would be principally

8    summarizing hearsay from undisclosed Morgan Lewis and PwC interviews to the jury.  For

9    example, where the issue in dispute is whether Autonomy Group properly accounted for software

10   purchases from customers separately from sales, Yelland does nothing but transmit Morgan

11   Lewis' and PwC's argument from undisclosed interviews.  Because the underlying statements

12   are hearsay, they are inadmissible under Fed. R. Evid. 703 and 802, and because they were

13   testimonial, reliance upon them violates the Confrontation Clause.  Moreover, in light of the

14   minimal probative value of ASL's financial statements, the grossly prejudicial nature of the

15   testimony renders it inadmissible under Fed. R. Evid. 403.

16   **I.      Yelland's Opinion Is Not Based On or Contained Within Business Records**

17          The government proposes to elicit several types of opinion testimony from Yelland

18   ultimately leading to Yelland's opinion as to how Autonomy Group's financial statements would

19   have been impacted had they been restated—even though they were never restated and the

20   exercise is entirely hypothetical.

21          Yelland's opinion testimony relies upon, incorporates, and often repeats third-hand

22   statements from Morgan Lewis lawyers, PwC investigators, and Autonomy employees that do

23   not fit within any exception to the hearsay rule.  Neither the government nor Yelland has

24   disclosed all of the relied-upon communications or Yelland's methodology for developing the

25   resulting opinions.  However, as demonstrated by Dr. Lynch's opening motion, several emails

26   slipped through HP's attempts to claim that those communications were privileged work product

27   prepared in anticipation of litigation, a tacit admission of the ASL Restatement's role in HP's

28   litigation strategy.  The government does not address or dispute the significance of those

communications, most of which were not before the Court during *Hussain*.[1]

In addition to Yelland's ultimate opinion about Autonomy Group's financial statements, the government proposes to have him repeat three of his opinions from his *Hussain* testimony: (1) that certain transactions did not have "economic substance"—an opinion formed through undisclosed "inquiries" and the subsequent application of an undisclosed methodology; (2) revenue from those transactions should not have been recognized under the IFRS and UK GAAP—it is unclear whether this opinion was formed through unqualified analysis by Yelland or pursuant to analysis by PwC, HP, or another person, and Yelland has not disclosed how he applied applicable accounting standards to such revenue recognition determinations (as required by Rule 16); and (3) some sort of transfer pricing analysis justifies extrapolating ASL adjustments to Autonomy Group, even though Yelland steadfastly refused (over the objections of HP's auditors) to let HP perform such an analysis in real time.

Those opinions are not based on or contained within business records. Dr. Lynch's unrebutted opening motion proves that they are instead based on litigation arguments and hearsay from Morgan Lewis and PwC that has not been fully disclosed. Dr. Lynch has been able to piece together Yelland's reliance on Morgan Lewis and PwC to restate several of the transactions based on MLAT document productions of HP's auditors EY, which appear to have occurred after the *Hussain* trial.

## II.   The Court Should Exclude Yelland's Opinions and Multi-Layered Hearsay About the Underlying Transactions

### A.   Yelland's Opinions Constitute Expert Testimony

#### 1.   Testimony Utilizing Specialized Accounting Principles and Opining on the Propriety of Accounting Treatment Are Expert Testimony

As this Court recognized in *Hussain*, whether financial reporting complied with IFRS would constitute "an expert opinion." *Hussain* Tr. 89-90 (observing that a percipient witness's

---

[1] Although he was noticed as an expert in *Hussain*, Rule 16 did not then contain its current requirement to specify the bases and methodology for each opinion in a signed disclosure. As a result, Yelland neither disclosed nor testified to the bases and methodology for each opinion. Unlike *Hussain*, the government has not noticed Yelland as an expert here.

3

1   explanation that he changed accounting "because it [wa]s not in compliance [with accounting

2   standards]" would be "an expert opinion" requiring compliance with Rule 16).  This is not a

3   controversial issue.  *See* Lynch MIL No. 3 at 6 n.9 (collecting seven cases recognizing that

4   opinions about the propriety of accounting treatments constitute expert testimony).  Indeed, in

5   *United States v. Pattison*, this Court held that the opinions of percipient witness auditors about

6   whether a company properly accounted for stock options was expert testimony.  Tr. 18, No. 08-

7   cv-4238 (N.D. Cal. Feb. 4, 2010) (Breyer, J.), Dkt. 173.  The Court considered the same

8   "autopsy" analogy advocated by the government here.  Opp. at 2 ("Yelland's Restatement was

9   the equivalent of [an] autopsy.").  The Court did not, however, hold that such evidence was

10  admissible, instead concluding that if an auditor who participated in a restatement wished "to

11  say, 'I came in . . . as the autopsy surgeon, and looked at the cadaver and found that it had this

12  problem and that problem . . . .' **That's expert opinion**." *Id.* at 19-20 (emphasis added); *accord*

13  *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007) ("[L]ay testimony is improper where it

14  encompasses opinions that 'call for specialized skill or expertise'—such as a paramedic's

15  testimony that skull trauma caused the bruises on a victim's face.").  It does not matter whether

16  the auditor engaged in the review and reached the opinion "at the time."  Tr. At 19-20, *Pattison*,

17  Dkt. 173.  Instead, determining the applicability of Fed. R. Evid. 702 turns on the knowledge

18  being applied.  If a witness interprets their perceptions "by virtue of any expertise," then they are

19  an expert, *id.* at 18-19 (repeating that if a witness utilizes expertise in opining on his or her

20  perceptions, "that's expert opinion"), and must comply with Fed. R. Crim. P. 16 and Fed. R.

21  Evid. 702.

22          The government concedes that Yelland had "specialized knowledge as a Chartered

23  Accountant, [and that] he was applying it to his . . . percipient observations. . . ."  Opp. at 7.  That

24  is the epitome of expert opinion.  The distinction between expert opinion and lay opinion turns

25  on whether "specialized knowledge" is being applied, not whether it is being applied to assumed

26  facts or percipient observations.  "[L]ay testimony 'results from a process of reasoning familiar

27  in everyday life,' while expert testimony 'results from a process of reasoning which can be

28  mastered only by specialists in the field.'"  Fed. R. Evid. 701, advisory comm. note (citation

4

Defendant Lynch's Reply Supp. MIL to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

1    omitted).  Because the government concedes that Yelland is "applying" "specialized

2    knowledge," it concedes that he is offering expert testimony.

3            The government invokes cases discussing "particularized knowledge," but it concedes

4    Yelland is applying his "specialized knowledge," not particularized knowledge.  The

5    "particularized knowledge" exception permits percipient witnesses to testify about topics

6    ordinarily requiring specialized knowledge as long as they base their opinions solely on

7    percipient facts, without applying specialized knowledge.  Fed. R. Evid. 701, advisory comm.

8    note.  But even a witness who possesses particularized knowledge "may not offer lay testimony

9    that is based on specialized knowledge."  *Everest Stables*, *Inc. v. Canani*, No. 09-cv-9446, 2011

10   WL 13213657, at *3 (C.D. Cal. Oct. 6, 2011) (collecting cases); Fed. R. Evid. 701(c); *see, e.g.*,

11   Fed. R. Evid. 701 adv. comm. note (explaining that a lay witness could testify that he saw a

12   substance that looked like blood but would have to be qualified as an expert to testify that

13   bruising he saw was indicative of skull trauma); *United States v. Vega*, 813 F.3d 386, 393-94 (1st

14   Cir. 2016) (holding that lay witnesses could not testify to opinions formed about Medicare rules

15   even though the witnesses gained familiarity with the rules through their jobs); *LifeWise Master*

16   *Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (citation omitted) (holding that a CEO

17   could not testify to his opinion about his business's lost profits as a lay witness because "a

18   person may testify as a lay witness only if his opinions or inferences do not require any

19   specialized knowledge and could be reached by any ordinary person").

20           In other words, where the factual basis of a witness's opinion is particularized

21   knowledge, but the methodology applied to that basis requires specialized knowledge, the

22   resulting opinion is governed by Rule 702.   *United States v. Figueroa-Lopez*, 125 F.3d 1241,

23   1247 (9th Cir. 1997) ("The mere percipience of a witness to the facts on which he wishes to

24   tender an opinion does not trump Rule 702.").  A substantially similar circumstance arose in

25   *Rodriguez v. Gen. Dynamics Armament & Tech Prods.*, 510 F. App'x 675 (9th Cir. 2013), where

26   an army employee investigated the cause of a mortar accident and wrote a report summarizing

27   his findings as part of his job.  Appellee's Br. at *15-16 (noting that he had conducted many such

28   investigations during his 29-year army career).  In addition to collecting data, taking

5

Defendant Lynch's Reply Supp. MIL to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

1   photographs, and examining the mortar tube, the employee also "attended soldier interviews"

2   and reviewed documents including other mortar accident investigations. *Id.* at *17-18.  The

3   employee wrote a report contemporaneously memorializing his opinions, and that report was

4   submitted to the Army. *Id.* at *19.  The district court allowed him to testify to his opinions under

5   Fed. R. Evid. 701 "on the basis that [the employee] was describing the job he had done outside

6   the litigation process." *Id.* at *19-20.  The Ninth Circuit reversed.  The Ninth Circuit held that

7   even though the specialized knowledge was gained as part of his job, an opinion "based upon

8   scientific and technical knowledge" is governed by Fed. R. Evid. 702, even what that knowledge

9   is applied as part of the witness's job. 510 F. App'x at 676 (holding that opinion testimony of

10  percipient investigator witness could not be admitted under Fed. R. Evid. 701 because he applied

11  specialized knowledge).

12         The government does not address the case law cited by Dr. Lynch and instead states

13  conclusorily that Yelland's testimony "fits well" within three cases, but each is inapposite.  *See*

14  Opp. at 7 (relying on *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183 (9th Cir. 2005),

15  *SEC v. Sabhlok*, 495 F. App'x 786 (9th Cir. 2012), and *Bank of China v. NBM LLC*, 359 F.3d

16  171 (2d Cir. 2004)).[2]  In *Dorn*, a witness was permitted to estimate the angle of a tire mark that

17  he saw on the ground, describing his visual perception without application of specialized

18  knowledge. 397 F.3d at 1187, 1192.  In contrast to *Dorn*, the government concedes that Yelland

19  is applying specialized knowledge.  In *Bank of China*, the court held that it was an "abuse of

20  discretion" to admit opinion testimony of a bank examiner "because [the testimony] was not

21  based entirely on [his] perceptions" but instead included opinions based on his application of

22  specialized experience and knowledge.  359 F.3d at 181, 183.  Although the government

23  extensively relies upon dicta stating that the witness could rely in part on his specialized

24

25  _____

    [2] The other cases cited by the government in passing are even further afield.  *See United States v. Rigas*, 490 F.3d
26  208, 222 (2d Cir. 2007) (witness testified only to the contents of documents and did not opine "regarding the
    appropriateness of [the] accounting treatment" and "opinion . . . was 'not based on specialized knowledge'"); *United*
27  *States v. Ayala-Pizarro*, 407 F.3d 25, 29 (1st Cir. 2005) ("While the 2000 amendments subject testimony falling
    within the scope of Rule 702 to heightened reliability requirements and rules governing pre-trial disclosure, Officer
    Mulero's testimony does not trigger these additional safeguards. It required no special expertise . . . ."); *United*
28  *States v. Beckman*, 298 F.3d 788 (9th Cir. 2002) (drug smuggler testified to events he witnessed); *see also United*
    *States v. Oriedo*. 498 F.3d 593, 602–04 (7th Cir. 2007) (approving testimony about officer's suspicions during drug
    buy, but excluding testimony about consistency with narcotics trafficking practices).

1   knowledge, the Second Circuit clarified that dicta the next year, holding that if a percipient lay

2   witness's opinion rests "in any way" upon specialized knowledge, "its admissibility must be

3   determined by reference to Rule 702, not Rule 701." *United States v. Garcia*, 413 F.3d 201, 215

4   (2d Cir. 2005) .  The portion cited by the government is not good law.

5       Finally, *Sabhlok* is the same case as *Pattison*, discussed above.  There, the Court

6   prohibited auditor witnesses with percipient knowledge from opining on whether financial

7   reporting was correct.  *Pattison* Tr. 18-19; *accord Garcia*, 413 F.3d at 216 (holding that a

8   percipient witness could not testify to opinions reached during his investigation based in part on

9   specialized knowledge absent compliance with Rule 702).  After the case was reassigned the

10  auditors were allowed to testify to "their role" in the audit and "their personal interactions with

11  [the] Defendant."  No. 08-cv-4238, 2010 WL 2944255, at *5 (N.D. Cal. July 23, 2010).  The

12  Ninth Circuit observed that Rule 701 forbids lay opinion based on specialized knowledge, but

13  held that the relevant testimony did not cross into that realm.  495 F. App'x at 787.

14      None of the government's cited authorities change the basic analysis: the government

15  proposes to have Yelland apply his specialized knowledge to provide opinion testimony.  That

16  testimony must be disclosed in accord with Rule 16 and satisfy Fed. R. Evid. 702.

17
18          **2.      If Yelland's Testimony Is Lay Testimony, Then It Is Inadmissible
                      Because It Is Based In Part on Hearsay and Second-Hand
19                     Information**

20      A lay witness offering opinion testimony cannot "rely upon" or "convey" in any part

21  hearsay.  *United States v. Freeman*, 498 F.3d 893, 904 (9th Cir. 2007); *Everest Stables*, 2011 WL

22  13213657, at *3-4 (explaining that lay opinion is inadmissible to the extent it is based on hearsay

23  and collecting cases); *United States v. Dillon*, No. 07-cv-1215, 2008 WL 11357991, at *3 (C.D.

24  Cal. Nov. 18, 2008).  Although the government proposes to have Yelland testify to what he

25  "heard" (or read), Opp. at 4, he cannot do so without providing an expert notice and complying

26  with Fed. R. Evid. 702 and 703.  For example, in *United States v. Lloyd*, the Ninth Circuit

27  vacated a conviction because a lay witness testified to opinions based on "statements he heard"

28  rather than first-hand knowledge.  807 F.3d 1128, 1155-57 (9th Cir. 2015).  Similarly, in *James*

*River Insurance Co. v. Rapid Funding LLC*, the Tenth Circuit vacated a jury verdict because the district court permitted a percipient witness to testify to his opinions that were based in part an outside consultant's report.  658 F.3d 1207, 1215 (10th Cir. 2011) (emphasizing that only expert witnesses may rely on third-party statements under Fed. R. Evid. 703).

In *Hussain*, Yelland's opinion testimony repeatedly conveyed hearsay to the jury by referencing what he had learned from unspecified "inquiries."  Dkt. 294-1.  We now know that Yelland's "inquiries" relied upon interview memoranda from Morgan Lewis attorneys, attorney work product emailed by PwC, select contemporaneous email traffic, and testimonial interview statements from unnamed witnesses.  Among other things, Yelland testified to hearsay statements of third-party witnesses about whether purchases had "economic substance" or purchased software was used or marketed by Autonomy, and whether resellers were involved in oral negotiations with end users.  *See* Dkt. 294-1.  If the government wishes for Yelland to provide such testimony here, then he must be noticed and qualified as an expert and all such testimony must satisfy Fed. R. Evid. 703.

### B.    Yelland's Testimony Was Not Disclosed Under Rule 16(a)(1)(G)

The government has not provided a Rule 16(a)(1)(G) disclosure of Yelland's testimony.  The government argues that discovery has been sufficient to discharge its notice obligation.  Not so.  *See, e.g.*, *United States v. Valdez*, No. 18-cr-608, 2019 WL 539074, at *2-3 (N.D. Cal. Feb. 11, 2019) (holding that pointing to discovery is insufficient to discharge Rule 16 obligations to describe the bases and reasons for each opinion); *see also Rodriguez*, 510 F. App'x at 676 (holding that expert notice requirements were not fulfilled by lay witness deposition and subpoena).

As stated in the government's motion to exclude Dr. Lynch's experts, the December 2022 amendments to Rule 16 "significantly enhanced" expert disclosure requirements.  Dkt. 298 at 6.  Under the new rule, the government must disclose a "complete statement of all opinions" that Yelland will testify to, and the "bases and reasons" for each of those opinions.  *Id.*; *accord id.* at 14.  A Rule 16(a)(1)(G) notice must be signed by the witness and disclose the basis and methodology underlying "each" opinion to which the witness will testify.  *See id.* (emphasizing

that all of the bases of "each" adjustment must be disclosed in a timely fashion); Lynch MIL No. 3 § II.B.

The disclosure must be sufficiently specific to allow counsel "to frame a *Daubert* motion (or other motion in limine), to prepare for cross examination, and to allow a possible counter-expert to meet the purport of the case-in-chief testimony." *United States v. Cervantes*, No. CR 12-792 YGR, 2016 WL 491599, at *1 (N.D. Cal. Feb. 9, 2016); *see e.g.*, *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (affirming district court's exclusion of plaintiff's experts because the repeated failure to "explain the reasoning and methods underlying their conclusions" precluded the district court from determining reliability under Fed. R. Evid. 702).

The current specificity requirement did not exist at the time of *Hussain* case. Yelland's testimony that his opinions were based on his team's "inquiries" was not sufficiently specific to satisfy Rule 16. Neither Yelland's testimony nor his summary charts disclosed with respect to each opinion what those inquiries were, with whom he inquired, what factual basis resulted, or what methodology he applied to the basis. *Compare United States v. Davis*, 514 F.3d 596, 613 (6th Cir. 2008) (finding that expert summary failed to adequately indicate bases of opinion because "if Davis had hired a chemist, he or she would not have been able to analyze the steps that led the government's chemists to their conclusions").[3] In the UK civil proceedings, HP invoked work product privilege to withhold documents. There was no Fed. R. Crim. P. 16 obligation to disclose (and Yelland did not voluntarily disclose) the basis and methodology for each of his opinions from the U.S. case. The government's argument that Dr. Lynch will be "free to cross-examine" Yelland to learn the bases and methodologies he applied would entirely

---

[3] Yelland has not disclosed the materials he relied upon, but the key materials were communications from HP's lawyers and investigative auditors—much of which is still shielded by HP's privilege assertion. If Yelland testifies to any opinions, the Court must compel discovery of those materials. *See, e.g.*, *In re SRAM Antitrust Litig.*, 257 F.R.D. 580, 584 (N.D. Cal. 2009) (holding that litigant violated expert disclosure requirements by failing to specifically identify materials reviewed by experts); Tr. 3, *United States v. Pattison*, No. 08-cv-4238, Dkt. 173 (N.D. Cal. Feb. 4, 2010) (Breyer, J.) ("[T]o the extent that any expert's opinion is based upon undisclosed sources, it's out. Gone. . . .It just seems to me basically unfair to say, 'Well, I have these opinions. Here are my reasons, but you can't really cross-examine me on my reasons because I won't tell you where I got them from.' Now, that's a nonstarter . . . . That's an insurmountable problem."). HP cannot utilize privilege as both a sword and a shield.

1   defeat the purpose of Rule 16.[4]

2          The Court should enforce its order and Rule 16.  *See United States v. W.R. Grace*, 526

3   F.3d 499, 514 (9th Cir. 2008) (en banc) (upholding exclusion of government expert testimony

4   disclosed after discovery deadline); *United States v. Roybal*, 566 F.2d 1109, 1110-11 (9th Cir.

5   1977) (reversing conviction, emphasizing that disclosing testimony after discovery order resulted

6   in "unfairness and potential prejudice to the defendant" as well as "unfairness and discourtesy to

7   the trial judge").  Rule 16 entitles Dr. Lynch to *pretrial* notice of the basis and methodology for

8   each of Yelland's opinions, and the Court set a deadline for that notice of November 8, 2023.

9   Dkt. 192 at 2.  The government knew that deadline applied.  It was well aware of the fact that

10  opinions applying accounting expertise are expert opinions, which is why it disclosed both Brice

11  and Yelland as experts in *Hussain*.  In order to evade the heightened requirements of Rule 16

12  promulgated since *Hussain*, the government tried to evade notice in this case.  The Court should

13  respond to the lack of timely notice by excluding Yelland's testimony.

14          **C.     The Government Concedes that Yelland's Testimony Is Inadmissible Under**
                   **Fed. R. Evid. 702**
15

16          The government does not respond to Dr. Lynch's argument that Yelland's testimony fails

17  to satisfy the requirements of Rule 702.  Lynch MIL No. 3 § II.C.  It therefore concedes the

18  argument.  *LN Mgm't v. JPMorgan Chase Bank*, 957 F.3d 943, 950 (9th Cir. 2020) ("Failure to

19  respond meaningfully in an answering brief . . . waives any point to the contrary."); *Ramirez v.*

20  *Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (deeming argument was

21  conceded because the defendant failed to address it in its opposition). With good reason.

22  Yelland has repeatedly conceded that he is not an expert on the accounting rules being applied,

23

24  _____

    [4] It is also contrary to precedent, which consistently rejects the government's argument that discovery is sufficient to
25  excuse a lack of compliance with pre-trial notice requirements.  *See, e.g.*, *Valdez*, 2019 WL 539074, at *2-3; *United
    States v. 242.93 Acres of Land*, No. 10-cv-1133, 2012 WL 579503, at *3 (S.D. Cal. Feb. 22, 2012) (holding that
26  failure of party to notice expert opinions of percipient witness precluded their admission); *Gallagher v. Holt*, No.
    08-cv-3071, 2012 WL 3205175, at *14 (E.D. Cal. Aug. 3, 2012) (same); *see also United States v. Ornelas*, 906 F.3d
27  1138, 1150-51 (9th Cir. 2018) (affirming exclusion of expert testimony due to lack of timely disclosure required by
    scheduling order).  The lone authority cited by the government, *United States v. Alahmedalabdaloklah*, does not
    support the government's position.  First, that case involved notice under the previous Rule 16, and explicitly limits
28  its analysis to "the operative version of Rule 16."  76 F.4th 1183, 1239 (9th Cir. 2023).  Second, the government
    provided three expert notices in that case disclosing the witness's "opinions and the bases for them."  *Id.*  No such
    notice or disclosures have occurred here.

Defendant Lynch's Reply Supp. MIL to Exclude Opinion Testimony (Lynch MIL No. 3)
Case No. 3:18-cr-00577-CRB

and his methodology of relying on litigation arguments from counsel and investigators and hindsight rationalization violate industry norms that demand neutrality and a focus on contemporaneous documentation.  *See Therasense, Inc. v. Becton, Dickinson & Co.*, No. 04-cv-02123, 2008 WL 2323856, at *2 (N.D. Cal. May 22, 2008) (Alsup, J.) (holding that expert's opinion based on hearsay from lawyers was inadmissible because "any opinion based on such untested and partisan foundation is not based on sufficient facts and data within the meaning of Rule 702").  Because the government bears the burden of proving that Yelland's opinion testimony satisfies Rule 702 and it has concededly failed to carry that burden, Yelland's testimony is inadmissible.

> **D.      The Government Does Not Meaningfully Contest that Yelland's Testimony Is Inadmissible Under Fed. R. Evid. 403**

The government raises a two-sentence Rule 403 argument, but it fails to engage with the law or rebut any point raised by Dr. Lynch in Lynch MIL No. 3 § II.D.  The government argues that Dr. Lynch's arguments "all go [to] weight" and therefore can be raised on cross-examination.  Opp. at 8.  The government's argument is nonsense.  Of course, Dr. Lynch's arguments go to weight; they would not be Rule 403 arguments if they did not do so.  Rule 403 is a balancing test, and *every* Rule 403 argument goes to weight.  The Court's responsibility is to weigh probative value against the risk of unfair prejudice, confusing the issues, and misleading the jury.

Dr. Lynch's opening motion explained how Yelland's testimony will be unfairly prejudicial, confusing, and potentially misleading.  ASL and Autonomy Group utilized different accounting systems (only one of which Yelland had ever used before) with different revenue recognition rules.  There is no guarantee that ASL applying UK GAAP and Autonomy Group applying IFRS must treat a transaction the same way.[5]  Even if one does reach the same

---

[5] For instance, the hosting transactions, which involved separate components (a software license and data hosting services), were arguably subject to different standards and potentially different accounting treatment.  Under IFRS, it was easier and more subjective to estimate fair value of the different components of the transactions, which allowed up front recognition of the software license revenue.  Under UK GAAP, more objective evidence of vendor specific objective evidence (VSOE) was required, which potentially made it harder to recognize separate components and could have led to ratable revenue recognition over the term of the hosting contract.

1    determination, it is not a "one-for-one" pass through analysis.  Complex transfer pricing rules

2    vary for each entity consolidated into the Autonomy Group.  In real time, Yelland opined that it

3    would be impossible to reliably calculate the effect of the ASL Restatement on Autonomy

4    Group's finances.  Lynch MIL No. 3 § I.A, Ex. 5, Dkt. 294-7.  It is unrealistic to expect the jury

5    understand the aforementioned distinctions that prevent the conclusion that the government

6    erroneously invites.  And regardless of whether the jury could understand such distinctions, the

7    ASL Restatement is a waste of time in a trial that already features abundant government

8    witnesses and exhibits.

9            The government objects only to Dr. Lynch's position that Yelland is "unqualified," Opp.

10   at 8, and therefore concedes the remainder of Dr. Lynch's arguments.  But the government does

11   not claim Yelland is qualified—it cannot do so because Yelland has repeatedly conceded that he

12   is not qualified to opine on the IFRS revenue recognition rules applicable to Autonomy Group.

13   Lynch MIL No. 3 § II.C.  Instead, the government cites the Court's previous note that Defendant

14   Hussain did not explain why the distinction among accounting rules mattered in terms of revenue

15   recognition.  Opp. at 8.  That argument is inapposite here for four reasons.  First, the government

16   proposes to have Yelland testify to expert opinions about what IFRS required.  It therefore bears

17   the burden of proving he is an expert; it is not Dr. Lynch's burden to prove why his expertise

18   would or would not be relevant.  Second, IAS 18.14 (the standard discussed by Brice and Taylor)

19   applies only to IFRS, not UK GAAP.  A proper methodology for determining revenue

20   recognition would examine IAS 18.14, and Yelland has conceded that he is unqualified to do so.

21   Third, Rule 702 was amended after the Court's opinion in *Hussain* to abrogate the relied-upon

22   precedent regarding qualifications being a matter of weight.  The government has not proven that

23   Yelland is qualified, and he in fact is not.  Fourth, the government and Dr. Lynch have each

24   provided witnesses who, unlike Yelland, have IFRS experience: Steven Brice and Greig Taylor.

25   It is cumulative and a waste of time to have Yelland testify.

26           The government does not otherwise contest Dr. Lynch's reasoned argument, and the

27

28

---

12

1    Court should therefore grant the motion to exclude.

2        **E.**      **Yelland's Recitation of Hearsay Is Inadmissible Under Fed. R. Evid. 802 and**
                  **703 and the Confrontation Clause**

3

4            The government does not contest Dr. Lynch's argument that the Federal Rules of

5    Evidence bar Yelland from testifying based upon hearsay.  It says only that Yelland "should be

6    able to explain why he took actions and what information formed the basis for his decisions," but

7    it does not claim that this can extend to relying upon hearsay or inadmissible evidence.  Opp. at

8    8.  Moreover, the government does not cite a law, rule, or precedent that would render such

9    evidence admissible.  The government does not contest the laws, rules, and precedents cited by

10   Dr. Lynch in Dkt. 294, and those arguments should be deemed accepted.

11           The government concedes that Yelland cannot testify based upon testimonial statements,

12   without providing the defendant with notice and the opportunity to cross-examine the source of

13   those testimonial statements.  Opp. at 8-9.  The government argues that the Confrontation Clause

14   is nonetheless satisfied because Yelland has relied on "business records," not testimonial

15   statements, in reaching his opinions.  Opp. at 9.  Yelland's opinions are not based on business

16   records.  Instead, Yelland's opinions are based on third-hand versions of testimonial statements

17   from interviewees adapted to support litigation.  *See United States v. Williams*, No. 05-cr-920,

18   2010 WL 11474588, at *5 (C.D. Cal. Aug. 13, 2010) ("Testimonial statements have been

19   described as those made 'in response to structured questioning in an investigative environment . .

20   . where the declarant would reasonably expect [the] . . . responses might be used in future

21   judicial proceedings.'" (quoting *United States v. Saget*, 377 F.3d 223, 228 (2d Cir. 2004), *suppl.*

22   *op.* at 108 F. App'x 667 (2d Cir. 2004) (alterations in original); *Therasense*, 2008 WL 2323856,

23   at *2 (noting that the "correct way" to offer opinions based on similar hearsay from lawyers is

24   for the foundational witness to testify first and be cross-examined).  Worse than merely relying

25   upon testimonial hearsay, Yelland conveyed those purported testimonial statements to the jury in

26   *Hussain* without identifying the speaker or permitting cross-examination.  *See* Dkt. 294-1.  That

27   testimony violated the Confrontation Clause and should not be admitted against Dr. Lynch.

28

## <u>CONCLUSION</u>

For the reasons stated herein, the Court should exclude the opinion testimony of Christopher Yelland.  To the extent the Court declines not to do so, it should compel the government to disclose a proper expert witness summary signed by Yelland under Rule 16(a)(1)(G), including the underlying bases and reasons for Yelland's opinions.  Dr. Lynch reserves the right to seek a *Daubert* hearing depending on the content of the disclosure.


Dated: February 7, 2024                             Respectfully submitted,


                                                    */s/ Brian M. Heberlig*
                                                    Reid H. Weingarten (Admitted Pro Hac Vice)
                                                    Brian M. Heberlig (Admitted Pro Hac Vice)
                                                    Michelle L. Levin (Admitted Pro Hac Vice)
                                                    Nicholas P. Silverman (Admitted Pro Hac Vice)
                                                    Dwight J. Draughon (Admitted Pro Hac Vice)
                                                    Drew C. Harris (Admitted Pro Hac Vice)
                                                    **Steptoe LLP**
                                                    1114 Avenue of the Americas
                                                    New York, NY 10036
                                                    Telephone: (212) 506-3900

                                                    Jonathan M. Baum (SBN: 303469)
                                                    **Steptoe LLP**
                                                    One Market Street
                                                    Steuart Tower, Suite 1070
                                                    San Francisco, CA 94105
                                                    Telephone: (510) 735-4558
                                                    jbaum@steptoe.com

                                                    Christopher J. Morvillo (Admitted Pro Hac Vice)
                                                    Celeste L. Koeleveld (Admitted Pro Hac Vice)
                                                    Daniel S. Silver (Admitted Pro Hac Vice)
                                                    **Clifford Chance US LLP**
                                                    31 West 52nd Street
                                                    New York, NY 10019
                                                    Telephone: (212) 878-3437
                                                    christopher.morvillo@cliffordchance.com

                                                    *Attorneys for Defendant*
                                                    *Michael Richard Lynch*