Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Christopher Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RICHARD LYNCH and<br>STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No.: 3:18-cr-00577-CRB<br><br>Judge: Hon. Charles Breyer<br><br>**DEFENDANT MICHAEL RICHARD LYNCH'S REPLY IN SUPPORT OF MOTION IN LIMINE TO LIMIT PROPOSED EXPERT TESTIMONY OF STEVEN BRICE**<br><br>**(Lynch MIL No. 4)**<br><br>Date: February 21, 2024<br>Time: 2:00 pm<br>Court: Courtroom 6 – 17th Floor<br>Date Filed: February 7, 2024<br>Trial Date: March 18, 2024 |

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................................................ iv

I.   The Court Should Exclude Brice's Opinions Regarding Whether Autonomy's Non-IFRS Descriptions Were Accurate (Brice Report § 4) Because They Are Inadmissible Under Fed. R. Evid. 702 .......................................................................... 1

    A.   Brice Is Not Qualified to Opine on Whether Non-IFRS Categorizations Comply with Disclosure Requirements ................................................................ 2

    B.   Brice's Opinions Are Not the Product of Reliable Application of Principles and Methods Under Rule 702(d) ........................................................................... 3

    C.   Brice's Opinions Are Not Helpful to the Finder of Fact ....................................... 5

II.  The Court Should Exclude Brice's Opinions in Sections 2.7-2.10 Because They Are Not Helpful to the Jury, a Waste of Time, Confusing, and Unfairly Prejudicial .................................................................................................................... 7

III. The Court Should Prohibit References to Foreign Legal Proceedings in Brice's Opinions ................................................................................................................... 10

IV.  The Court Should Limit Brice's Case-in-Chief Testimony to the Opinions Expressed in His Case-in-Chief Report, and Preclude Opinions Not Timely Disclosed .................................................................................................................. 11

CONCLUSION ............................................................................................................................ 13

i

Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.* .................................................................5
    738 F.3d 960 (9th Cir. 2013)

*Christidis v. First Penn. Mort. Trust*,
    717 F.2d 96 (3d Cir. 1983)........................................................................................8, 10

*Cleaver v. Transnation Title & Escrow, Inc.*,
    No. 21-cv-00031, 2024 WL 326848 (D. Idaho Jan. 29, 2024) ..................................5

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997).....................................................................................................4

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ................................................................................10,11

*Hooper v. Lockheed Martin Corp.*,
    688 F.3d 1037 (9th Cir. 2012) ....................................................................................2

*In re Incretin-Based Therapies Prods. Liab. Litig.*,
    No. 21-cv-55332, 2022 WL 898595 (9th Cir. Mar. 28, 2022) ...................................5

*LN Mgm't v. JPMorgan Chase Bank*,
    947 F.3d 943 (9th Cir. 2020) ....................................................................................11

*United States ex rel. Miller v. ManPow, LLC*,
    No. 2:21-cv-05418, 2023 WL 9005796 (C.D. Cal. Nov. 22, 2023) ..........................7

*Mullins v. Premier Nutrition Corp.*,
    178 F. Supp. 3d 867 (N.D. Cal. 2016) .......................................................................2

*In re Novatel Wireless Sec. Litig.*,
    No. 08-cv-1689 AJB RBB, 2011 WL 5827198 (S.D. Cal. Nov. 17, 2011)...............6

*Ramirez v. Ghilotti Bros. Inc.*,
    941 F. Supp. 2d 1197 (N.D. Cal. 2013) ...................................................................11

*SEC v. Daifotis*,
    No. 11-cv-00137 WHA, 2012 WL 2051193 (N.D. Cal. June 7, 2012) ...................6

*SEC v. Leslie*,
    No. 07-cv-3444, 2010 WL 2991038 (N.D. Cal. July 29, 2010) ...............................7

*United States v. Davis*,
    244 F.3d 666 (8th Cir. 2001) ..........................................................................................12

*United States v. Hermanek*,
    289 F.3d 1076 (9th Cir. 2002) ..........................................................................................5

*United States v. Holguin*,
    51 F.4th 841 (9th Cir. 2022) .............................................................................................3

*United States v. Mason*,
    No. 06-cr-80, 2008 WL 281970 (S.D.N.Y. Jan. 25, 2008).........................................12

*United States v. Miller*,
    953 F.3d 1095 (9th Cir. 2020) ..........................................................................................7

*United States v. Ornelas*,
    906 F.3d 1138 (9th Cir. 2018) ........................................................................................11

*United States v. Roybal*,
    566 F.2d 1109 (9th Cir. 1977) ........................................................................................11

*United States v. Sherman*,
    821 F.2d 1337 (9th Cir. 1987) ........................................................................................10

*United States v. Valencia-Lopez*,
    971 F.3d 891 (9th Cir. 2020) .......................................................................................3, 5

*United States v. Vera*,
    770 F.3d 1232 (9th Cir. 2014) ..........................................................................................3

*United States v. W.R. Grace*,
    526 F.3d 499 (9th Cir. 2008) ......................................................................................v, 11

**Other Authorities**

Fed. R. Evid. 403 ................................................................................................................ iv, 9

Fed. R. Evid. 702 ........................................................................................................ iv, 1, 3, 5

# SUMMARY OF ARGUMENT

In response to a lengthy expert notice with appendices totaling hundreds of pages, Dr. Lynch made a targeted motion to exclude four discreet categories of inadmissible testimony. The government's opposition confirms that each of the four should be excluded.

First, Brice should not be allowed to opine on whether Autonomy's application of its own non-IFRS categories was correct, incorrect, or misleading under UK law. Brice does not explain how he applied his knowledge of UK law to interpret Autonomy's categories and determined that the categorization did not match those Brice-created interpretations. Brice does not identify a specific principle or methodology much less reliably apply it in a way that could be checked and responded to by another expert. Instead, he merely provides a conclusory opinion and states that he reached it by applying unspecified "accounting principles." Moreover, Brice's opinion is that Autonomy's categorization was misleading in violation of UK legal regulations, which is improper legal testimony that invades the province of the jury and is *per se* unhelpful. The jury will determine whether Autonomy's categorization of transactions in evidence were misleading; it does not need Brice's *ipse dixit* opinion on the same evidence. Unable to show that Brice is qualified, or that his opinion is both reliable and helpful to the jury, the government cannot offer Brice's testimony under Fed. R. Evid. 702.

Second, the opinions in Sections 2.7-2.10 of the Brice Report are fundamentally unhelpful, confusing, and a waste of time. Brice proposes to testify about more than 27 transactions in which Autonomy disclosed all of the relevant information to Deloitte and Deloitte agreed that Autonomy's accounting was correct. Brice and Deloitte may disagree on accounting principles, but that disagreement is not enough to make Autonomy's expert-approved reporting fraudulent. Each transaction will require substantial time, with only tenuous relevance to the allegations against Dr. Lynch. These opinions are also inadmissible under Fed. R. Evid. 403 because Dr. Lynch will be unfairly prejudiced by the introduction of four more categories of purported mistaken accounting treatments. Faced with an expert telling them that Autonomy got it wrong over and over again, jurors will improperly conclude that at least one of those allegations must be true. Any probative value of Sections 2.7-2.10 is substantially outweighed

iv

Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB

by the risk of unfair prejudice and should be excluded.

Third, Brice's references to Dr. Lynch's UK civil trial and Deloitte's UK disciplinary proceedings are inadmissible, which the government apparently concedes. The government does not argue that such testimony could be proper. Instead, it purports to disclaim such testimony unless Dr. Lynch challenges Brice's opinions or references Deloitte's unqualified agreement with Autonomy's accounting—two categories of evidence it knows will be adduced at trial. The government does not advance an argument as to how that evidence would make the foreign proceedings admissible and it has forfeited any such argument by failing to raise it.

Lastly, the government's untimely disclosure of new areas of testimony in Brice's should be excluded. Under controlling Ninth Circuit precedent, no prejudice is necessary to justify the Court's enforcement of its Scheduling Order against the government. *United States v. W.R. Grace*, 526 F.3d 499, 514 (9th Cir. 2008) (en banc). Regardless, admitting the Rebuttal opinions in the government's case-in-chief would prejudice Dr. Lynch, who has been spending every moment working to prepare for the massive expansion of the government's case discussed during the January 10, 2024 hearing. The government downplays the Rebuttal-noticed evidence as insignificant, but if that is so, then the government will not be prejudiced by its exclusion. In truth, Brice's Rebuttal Report improperly seeks to expand into new subject matter and new allegations that would take weeks or months to investigate—a task that cannot be done before trial—and that would unduly prolong the trial if admitted into evidence. None of this subject matter or these allegations is responsive to the defense experts and it is therefore two months too late. The Court should follow Ninth Circuit precedent and enforce its Scheduling Order by excluding the evidence.

v

Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB

I. **The Court Should Exclude Brice's Opinions Regarding Whether Autonomy's Non-IFRS Descriptions Were Accurate (Brice Report § 4) Because They Are Inadmissible Under Fed. R. Evid. 702**

Brice proposes to testify that Autonomy's classification of revenue streams did not faithfully represent its revenues and did not constitute a "fair and balanced analysis" of Autonomy's financial performance under the UK's Disclosure and Transparency Rule (DTR) and the Companies Act of 2006.[1] In Brice's opinion, Autonomy fell short of the DTR's mandate that a company's disclosure to the market not contain any information that is "misleading, false, or deceptive."[2] Though the government concedes that Autonomy's revenue classifications did not apply IFRS terms or rules, Brice purports to use his accounting expertise and apply undisclosed "relevant accounting principles" to reach his conclusions. The government admits, however, that Brice's methodology amounts to nothing more than "comparing the characteristics of those transactions with Autonomy's descriptions and definitions of its own revenue streams to the market in its public documents."[3]

This proposed testimony is inadmissible under Fed. R. Evid. 702. Brice lacks any specialized qualifications to interpret UK financial regulations (i.e., the DTR and the Companies Act). Even if he was qualified, Brice has not articulated a reliable methodology explaining *how* he applied "applicable accounting principles" from the DTR to Autonomy's revenue stream classifications. Lastly, Brice's testimony is unhelpful. The jury will spend weeks hearing testimony about the transactions on which Brice opines. The jury will then be asked whether the same revenue classifications were misleading. The determination of whether revenue classifications were misleading is well within the ken of the average juror and may be assessed by the jury without expert testimony.

---

[1] Expert Report of Steven Brice (Nov. 8, 2023) (Brice Report) at §§ 4.3.2, 4.4.1, Dkt. 297-2.

[2] *Id.* § 4.3.2(c) (citing DTR ¶ 1.3.4).

[3] See Gov't Opp. to Lynch MIL No. 4 (Opp.) at 11, Dkt. 318.

1

Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB

### A. Brice Is Not Qualified to Opine on Whether Non-IFRS Categorizations Comply with Disclosure Requirements

"The court must decide any preliminary question about whether a witness is qualified . . . or evidence is admissible" by a preponderance of the evidence. Gov't MIL No. 3 at 6, Dkt. 298 (citing Fed. R. Evid. 104(a)). Even a qualified expert can only opine as to the topics on which they have specialized training or experience. *See Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 900 (N.D. Cal. 2016) (quoting Fed. R. Evid. 702). Though Brice was initially offered as an accounting expert, the government argues that Brice is also an expert on UK law, specifically the Companies Act and the DTR.[4] *See* Brice Report § 1.1; Opp. at 9-10. According to the government, Brice's accounting expertise necessarily requires that Brice also have "knowledge and experience" of the Companies Act and the DTR to properly provide an audit opinion for a company's financial statements or serve on a panel. Opp. at 9. This does not move the needle. General knowledge of legal regulations does not qualify an expert to offer an opinion. Even if Brice did "apply the DTR" to a company's financial statements as part of an audit, this experience does not translate to competence in internal revenue classifications. As further proof of his legal acumen, the government claims that Brice has offered opinions "on the application of and compliance with the DTR." Opp. at 9-10. Brice did no such thing. Brice opined on impairment under IFRS, not legal compliance with the DTR, a topic on which he is no expert.[5] Brice has no training as a lawyer on how to interpret the DTR or the Companies Act, and no experience providing such a legal opinion.

Finally, even if Brice had legal expertise, he would be prohibited from using that legal expertise. *See Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1052 (9th Cir. 2012) (affirming exclusion of expert testimony that analyzed defendant's performance under a standard governed by software requirements in government contracts because "matters of law are

---

[4] The Disclosure and Transparency Rules are regulations which apply to most larger companies on the London Stock Exchange and are administered by the UK Financial Conduct Authority, a financial regulator established by the 2012 Financial Services Act.

[5] *See* Brice Expert Report, *SEC v. Rio Tinto*, No. 1:17-cv-07994-AT (S.D.N.Y. Apr. 12, 2021), Dkt. 224-1. The court in *SEC v. Rio Tinto* made no findings on the admissibility of Brice's testimony.

2

Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB

inappropriate subjects for expert testimony.").[6]

### B. Brice's Opinions Are Not the Product of Reliable Application of Principles and Methods Under Rule 702(d)

To comply with its gatekeeping role, "a district court must find that an expert's testimony is reliable—an inquiry that focuses not on 'what the experts say,' or their qualifications, 'but what basis they have for saying it.'" *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (citations omitted). Expert testimony based on inadequate explanation or circular logic is insufficient under Rule 702. *See e.g.*, *United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020); *United States v. Vera*, 770 F.3d 1232, 1247-48 (9th Cir. 2014). And as the government notes in its motion to exclude Dr. Lynch's experts, "in the Ninth Circuit, 'reliability becomes more, not less, important when the 'experience-based' expert opinion is perhaps not subject to routine testing, error rate, or peer review type analysis, like science-based testimony.'" Gov't MIL No. 3 (citing *Valencia-Lopez*, 971 F.3d at 898).

Brice's proposed testimony is unreliable because he does not explain a process in which he reliably applies principles and methods to the facts of the case. *See* Fed. R. Evid. 702(d). The government's attempt at crafting a methodology in fact reveals that his testimony does not satisfy the reliable application of reliable methods element. According to the government, Brice used a six-step methodology to conclude that Autonomy did not classify its revenue streams in compliance with "applicable accounting requirements," but those six steps are no methodology at all.[7] *See* Opp. at 12-14. Steps 1 through 4 are merely a list of the data that the jury will review on its own, i.e., "the five revenue streams reported by Autonomy," and Autonomy's definitions

---

[6] The government's caselaw does not advance its argument. Instead of addressing Dr. Lynch's argument that Brice does not have the knowledge and experience *specific to his testimony*, the government's caselaw goes to whether an expert is qualified to testify based on the breadth of an expert's knowledge and experience. Opp. at 10-11. The government's caselaw is likewise outdated and incorporates abrogated standards on admissibility that the December 2023 amendment to Rule 702 was intended to correct. *See* Lynch MIL No. 4 at 3.

[7] The "applicable accounting requirements" are the DTR and the Companies Act, as well as general comments from the Conceptual Framework that financial information must be "complete, neutral, and free from error." Brice Report § 4.4.1, 4.3.4. As discussed in Lynch MIL No. 4, the Conceptual Framework is "not a Standard" and in fact clarifies that it does not define standards for any recognition, measurement, or disclosure issue. *Id.* at 2 (quoting the Conceptual Framework); *see also* Dkt. 309-3 § 2.5.4 (Taylor report providing additional background on the frameworks).

of revenue streams that it provided in public communications.  *Id.* at 12.  At step five, the government states that Brice's methodology involves "using his knowledge, training, experience, and the publicly disclosed descriptions of Autonomy's revenue streams" to determine what characteristics transactions should have to fall within a certain revenue stream.[8]  Critically, the government fails to explain how Brice applies expert knowledge to Autonomy's disclosed definitions to determine the characteristics of transactions that Autonomy intended to be included in each category.  Step six is equally conclusory and equally lacking in methodology:

> "[Brice's] conclusions rest on a "solid foundation that is detailed in Mr. Brice's Report.  Mr. Brice ***provides the bases for his opinions that Autonomy did not properly account for transactions*** and reported certain transactions in revenue streams that were inconsistent with the underlying characteristics of the transactions, thus failing to comply with applicable accounting requirements."

*Id.* at 13-14 (emphasis added).

The government is wrong.  The Brice Report does *not* provide the purported bases or methodology applied to those bases to reach opinions about Autonomy's revenue classification definitions.  For example, Brice opines that an "IDOL OEM sale should 'relate to a sale in which Autonomy's software was embedded into the customer's product for the customer to sell on to third parties . . . I do not consider that transactions to non-software companies are consistent with Autonomy's depiction of IDOL OEM revenue . . . .'"  *Id.* at 13 (citing Brice Report § 4.5.2(a) (omission in original)).  Brice does not explain which principles from the Companies Act or the DTR demands this interpretation or why it demands this interpretation.  In other words, Brice has failed to provide the "how" and "why" of how he reached his conclusion, and his testimony is inadmissible.[9]  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144, 146 (1997) (holding that it was an abuse of discretion to admit evidence "that is connected to existing data only by the *ipse dixit*

---

[8] At Step Five, the government does not include a cite to the Brice Report for this "methodology," unlike the previous four "steps."

[9] The same is equally true of opinions provided by Brice with respect to IDOL OEM revenue that also met the definition of IDOL Cloud or deferred revenue.  *See* Brice Report §§ 4.7.1-4.7.4; Rebuttal Report of Steven Brice (Jan. 3, 2024) §§ 4.8.1-4.8.5, Dkt. 297-07; Opp. at 14.

4

Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB

of the expert"); *In re Incretin-Based Therapies Prods. Liab. Litig.*, No. 21-cv-55332, 2022 WL 898595, at *1 (9th Cir. Mar. 28, 2022) (table opinion) (affirming exclusion due to lack of proof that conclusions were based on more than "subjective beliefs").[10]

The government attempts to further misdirect the Court by framing challenges to Brice's testimony as a disagreement between parties on the correctness of Brice's conclusions. *See* Opp. at 12, 16 (citing *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019); *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969-70 (9th Cir. 2013)). This is not at issue here. Dr. Lynch objects to the lack of a "reliable methodology" used to reach the conclusions. Lynch MIL No. 4 at 2-4. Brice's opinions are subjective because there is "simply too great an analytical gap" between the sources he cites and his conclusion. *Valencia-Lopez*, 971 F.3d at 900 (citation omitted). Notably, the December 1, 2023 amendment to Rule 702 "emphasizes that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Cleaver v. Transnation Title & Escrow, Inc.*, No. 21-cv-00031, 2024 WL 326848, at *2, *3 (D. Idaho Jan. 29, 2024) (excluding expert testimony that did not explain basis for conclusory opinion and noting heighted standard under the December 2023 amendments). Even under earlier versions of Rule 702, however, Brice's expert testimony in Section 4 would have been inadmissible. *See United States v. Hermanek*, 289 F.3d 1076, 1093-94 (9th Cir. 2002) ("As a prerequisite to making the Rule 702 determination of reliability, the court must assure that the methods are adequately explained.").

**C.     Brice's Opinions Are Not Helpful to the Finder of Fact**

In addition to reliability, expert testimony must "assist the trier of fact to understand the

---

[10] Though the government cites to several revenue analyses from Section 2 of the Brice Report to demonstrate Brice's purported "methodology," these analyses do not show how Brice reached his conclusions using "applicable accounting requirements." *See* Opp. at 14 (citing Brice Report § 2, Appendix F). Tellingly, these analyses are not cited in Section 4 of the Brice Report because they are not relevant to Brice's opinions on Autonomy's revenue classifications. For example, in SW-11-91, Brice opines that the software transaction "did not involve Autonomy embedding its software onto a customer's product for sale on to a third party (i.e. not OEM sales)." Opp. at 14 (citing Brice Report, Appendix F, SW-11-91, Dkt. 318-1). Whether Autonomy embedded its software onto a customer's product is not relevant to how Brice arrived at the conclusion that Autonomy's revenue classifications were inconsistent with the requirements of the DTR and the Companies Act.

5

Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB

evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 571, 591-92 (1993) (citation omitted). As revealed by the purported methodology described above, Brice's opinion does not require any specialized knowledge which would help the jury understand whether Autonomy's revenue classifications were consistent with its drafted definitions. The government inexplicably argues that "[t]he crux of Brice's analysis involved closely reviewing the details of numerous software and hardware transactions, as well as, Autonomy's financial reports and statements, then deciding whether or not the specific features of those transactions aligned with how Autonomy defined its own revenue streams such that Autonomy appropriately and accurately disclosed its revenue streams." Opp. at 14-15. This is precisely what the jury will be asked to do at trial.

The jury will receive weeks of evidence addressing each underlying transaction, including witness testimony, documents, and attorney argument about proper inferences. The jury will be tasked with deciding whether Autonomy categorized its revenue consistent with its own definitions of revenue streams. No special knowledge of "relevant accounting principles" is required to decide whether a non-accounting description is misleading. *See In re Novatel Wireless Sec. Litig.*, No. 08-cv-1689 AJB RBB, 2011 WL 5827198, at *4 (S.D. Cal. Nov. 17, 2011) (excluding expert opinion that company management exerted undue pressure to manage its earnings because no specialized knowledge was required to read and draw conclusions from expert's cited documents); *SEC v. Daifotis*, No. 11-cv-00137, 2012 WL 2051193, at *3, *5 (N.D. Cal. June 7, 2012) (precluding expert testimony that made conclusions as to whether actual conduct complied with industry standards or whether the defendant's statements were approved pursuant to that practice because it was a factual issue for the jury's consideration).[11]

The only specialized knowledge that Brice purports to provide is his familiarity with the DTR and the Companies Act, which "form the foundation for his opinions that Autonomy was

---

[11] In an attempt to distinguish a case directly on point, the government argues in a conclusory fashion that *Daifotis* is inapposite because Brice is rendering opinions as to whether Autonomy's disclosures "complied with relevant … requirements" that prohibit misleading reporting. Opp. at 15 n.4. That is the same opinion that the *Daifotis* court excluded. There is no daylight between *Daifotis*' prohibition on the opinions that defendant's filings "met the applicable regulatory standards . . . designed to ensure that communications with the public were fair and balanced,"

6

Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB

not providing a fair and accurate depiction of its revenue streams." *See, e.g.*, Opp. at 7, 9, 13. As discussed above, *supra* at I.A, Brice is not qualified to testify on whether Autonomy complied with applicable legal requirements. And even if Brice had the requisite legal acumen, his opinion that Autonomy's revenue streams did not satisfy the law's requirement of a "fair and balanced analysis" goes directly to whether Dr. Lynch made a materially false statement in violation of the law. *See United States ex rel. Miller v. ManPow, LLC,* No. 2:21-cv-05418, 2023 WL 9005796, at *8 (C.D. Cal. Nov. 22, 2023) (excluding expert testimony that defendant was eligible to apply for and receive PPP loans because it directly answered the question of whether "Defendant is liable for the pending FCA claims in this action, i.e. whether Defendant knowingly . . . presented and caused to be presented false or fraudulent claims.") (omission in original) (citation omitted); *see also SEC v. Leslie*, No. 07-cv-3444, 2010 WL 2991038 at *8, *9 (N.D. Cal. July 29, 2010) (excluding references in expert report to whether auditors were "misled" or whether certain statements were "misleading" because "the auditors may testify as to whether they were misled, and it is for the jury to determine whether Defendant's statements in fact were misleading.").

**II.   The Court Should Exclude Brice's Opinions in Sections 2.7-2.10 Because They Are Not Helpful to the Jury, a Waste of Time, Confusing, and Unfairly Prejudicial**

An incorrect statement of fact is not fraudulent unless the speaker intends to deceive and harm the listener "by means of those deceptions." *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020).[12] Under IFRS, "there are circumstances where two different accountants, faced with the same transactions, would record the transaction in different ways." Expert Report of Greig Taylor § 2.3.2, Dkt. 309-3. Selecting either of those two accounting treatments is a

---

or "clearly disclosed" facts, and Brice's testimony that facts were not "fairly depicted" and violated regulatory requirements.

[12] The government's contrary argument is based on its erroneous assertion (without citation) that intent to defraud requires proof only of "intent to deceive or cheat." Opp. at 19. "[T]o be guilty of wire fraud, a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat." *Miller*, 953 F.3d at 1101. The government's argument is foreclosed by controlling precedent.

7

Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB

disagreement of opinion, not actionable fraud. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1550 (9th Cir. 1994) (en banc) ("[B]oth [accounting treatments] are based on flexible accounting concepts, which, when applied, do not always (or perhaps ever) yield a single correct figure. In order to allege the circumstances constituting fraud, plaintiff must set forth facts explaining why the difference between . . . statements is not merely the difference between two permissible judgments, but rather the result of a falsehood.") (citing *Christidis v. First Penn. Mort. Trust*, 717 F.2d 96, 100 (3d Cir. 1983) (accounting treatment "could be fraudulent only if, when established, the responsible parties knew or should have known that they were derived in a manner inconsistent with reasonable accounting practices")). Accounting treatments can qualify as fraudulent statements only where they do not fall within the range of "different, but valid, accounting results," and are intended to defraud the recipients of financial statements. The government has not laid a foundation that the four categories of transactions in §§ 2.7-2.10 meet the definition.

The government instead raises three arguments, each of which lacks merit. First, the government argues that it "will not make general assumptions in the abstract about what Deloitte did and did not review." Opp. at 17. Dr. Lynch agrees; the government bears the burden of proving that statements were intended to defraud under a theory such as "Deloitte was misled." It cannot meet that burden by "mak[ing] general assumptions in the abstract," but instead must lay a foundation of proof. The government has not laid such a foundation here.

Second, the government argues that its theory of fraud is "much broader" than allegations that Deloitte was misled. *Id.* at 17-18. The government, however, fails to articulate any allegation (whether or not actually made in the Superseding Indictment) that Autonomy knew its accounting treatment was incorrect *despite being assured in an unqualified audit opinion by an expert that the accounting treatment was correct.* Why would a company question Deloitte's judgment under such circumstances? How could an accounting treatment defraud readers of financial statements if it could not defraud an expert with access to all of the relevant documents? The government's reliance on a concededly "broad[]" theory makes clear its failure to lay the basic foundation of relevance. It throws as many conclusory statements as possible at

8

Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB

the Court without descending to particulars and articulating the requisite allegations that would make any one theory relevant to the jury.

Third, the government inexplicably relies on the UK Financial Reporting Council's conclusion that Deloitte was not sufficiently skeptical in reviewing the accounting for *two unrelated categories of transactions.* Opp. at 19. The UK FRC reached *no such conclusion* with respect to the four transaction categories in Brice Report §§ 2.7-2.10. Even if it had, the UK FRC did not accuse Dr. Lynch of misleading Deloitte. To the contrary, the UK FRC warned readers that "[t]he Tribunal has not made, and should not be taken to have made, any finding against . . . Autonomy, or any [Autonomy directors]." Dkt. 297-6 at 1. The FRC warned that its work could not fairly be treated as evidence against Autonomy or its directors. *Id.*[13] The FRC's conclusion is irrelevant and does not support the government's position.

The opinions in §§ 2.7-2.10 are inadmissible under Fed. R. Evid. 403 in large part because they are a confusing and prejudicial waste of time. *See* Lynch MIL No. 4 at 8-9. The government does not contest this argument because it cannot credibly do so. Opp. at 20 (stating only that "additional testimony may take additional time"). Brice proposes to testify about topics covering 9 pages of his report and over 27 transactions. To use the government's own argument, each of these sections "is its own can of worms" that will eat up tremendous amounts of time with only limited connection to the allegations against Dr. Lynch. Gov't Opp. to Def. Lynch's Mot. to Admit Post-Acquisition Evid. (Lynch MIL No. 1) at 7, Dkt. 314. The government has not articulated a theory of guilt consistent with these opinions, and they should be excluded under Fed. R. Evid. 403.

The opinions are also inadmissible under Fed. R. Evid. 403 because Dr. Lynch will be unfairly prejudiced by the introduction of four more categories of purportedly mistaken accounting treatments. The additional accusations will improperly create the risk of jurors concluding that if Brice disagrees with Autonomy's accounting treatment of this many

---

[13] The government's misuse of the UK FRC opinion to make arguments that the opinion does not support and in fact categorically prohibits further supports Dr. Lynch's request for relief in § III. The jury should not be exposed to such unfairly prejudicial and misleading arguments.

9

Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB

transaction categories, then Autonomy must have been intentionally deceptive in at least one of the categories without requiring proof beyond a reasonable doubt as to anyone. *See United States v. Sherman*, 821 F.2d 1337, 1340 (9th Cir. 1987) (recognizing that multiple charges may be prejudicial because there is "a risk the jury may return a verdict of guilty on counts as to which it may have otherwise formed a reasonable doubt, solely because of the strength of the evidence on the remaining counts."). The government makes only the broadest and most conclusory of relevance arguments, failing again to specifically explain why this evidence is so probative that it justifies a risk of an improper verdict against a defendant. The risk of unfair prejudice substantially overweighs the non-existent probative value and therefore merits exclusion.

### III. The Court Should Prohibit References to Foreign Legal Proceedings in Brice's Opinions

The government pledges not to elicit testimony from Brice about the UK legal proceedings *unless* "Defendants try to suggest that Mr. Brice's analysis was flawed" or that Brice's "conclusions [are] wrong because Deloitte reached different conclusions." Opp. at 21 ("In answering [the government's] questions [on redirect], Mr. Brice may refer to the relevant findings from U.K. legal proceedings, such as the FRC's findings."). Those arguments do not make the foreign legal proceeding evidence admissible, and Dr. Lynch's Motion should be granted.

Brice's analysis is flawed, and Dr. Lynch will challenge that analysis. The experts best positioned to provide guidance on how Autonomy should report its transactions were the Deloitte auditors who reviewed the accounts in real time. Based on contemporaneously available evidence, those experts opined that Autonomy's reporting was correct. Dr. Lynch had no way of knowing that the FRC would later question Deloitte's expert judgment or that an expert witness would use hindsight analysis to attack its conclusions a decade later. *See Christidis*, 717 F.2d at 100 (requiring proof that at the moment of the accounting decision, "the responsible parties knew or should have known that [the accounting treatment was] derived in a manner inconsistent with reasonable accounting practices") (cited with approval by Ninth Circuit en banc in *Glenfed*, 42

10
Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB

F.3d at 1550 & n.10). Deloitte's contemporaneous opinions are admissible. The FRC's January 2021 report—which disclaims any applicability to Dr. Lynch and argues that it "would not be fair to treat any part of the Tribunal's findings . . . [or] any part(s) of the Tribunal Report" as evidence against persons in Dr. Lynch's position—is inadmissible based on the reasons and precedents cited in Dr. Lynch's Motion in Limine to Exclude Brice's Testimony. *See* Lynch MIL No. 4 at 9-12. The government does not contest these arguments and therefore concedes their correctness. *LN Mgm't v. JPMorgan Chase Bank*, 957 F.3d 943, 950 (9th Cir. 2020) ("Failure to respond meaningfully in an answering brief . . . waives any point to the contrary."); *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (deeming argument was conceded because the defendant failed to address it in its opposition). The Court should grant Dr. Lynch's motion to preclude any references to foreign proceedings in Brice's testimony.

### IV.  The Court Should Limit Brice's Case-in-Chief Testimony to the Opinions Expressed in His Case-in-Chief Report, and Preclude Opinions Not Timely Disclosed

The government does not dispute that the Court set a clear (agreed-upon) deadline for disclosure of its case-in-chief expert opinions: November 8, 2023. The government understood that deadline and produced a case-in-chief report on that date. The Court has discretion to enforce its Order and exclude the improper opinions. *See W.R. Grace*, 526 F.3d at 514 (upholding exclusion of government evidence not disclosed by discovery deadline); *United States v. Ornelas*, 906 F.3d 1138, 1150-51 (9th Cir. 2018) (affirming exclusion of testimony disclosed shortly before trial as enforcement of discovery order); *United States v. Roybal*, 566 F.2d 1109, 1110-11 (9th Cir. 1977) (reversing conviction, emphasizing that the provision of late discovery in violation of a specific order resulted in "unfairness and potential prejudice to the defendant" as well as "unfairness and discourtesy to the trial judge").

Although no showing of prejudice is necessary, *see W.R. Grace*, 526 F.3d at 515, the government's failure to provide timely disclosure has caused prejudice. In response to Dr. Lynch's motion to preclude untimely case-in-chief testimony in its January 3, 2024 Rebuttal Report of Steven Brice, the government's strategy is to mischaracterize the nature of Brice's

additional testimony as "typographical errors," "a few additional examples," and "some supplementary charts." *See* Opp. at 21-22. This is a clear distortion. The Rebuttal Report contains not only material responsive to Dr. Lynch's expert disclosures, but 25 pages of material that adds new opinions and analyses. *See* Rebuttal Report of Steven Brice (Jan. 3, 2024) §§ 2.2.4, 3.3.3(a), 3.4, 3.4.2, 3.4.4, 3.4.7., 3.4.8, 3.4.13-3.4.23, Appendix G (adding opinion that Autonomy recognized revenue for certain hardware sales too early); *id.* Table 4.4 (adding Dell-Morgan Stanley to existing opinion); *id.* §§ 6.1.7-6.1.19, Figures 6.2-6.5, Tables 6.1-6.3, and Appendix M (addition of five financial quarters of analysis regarding whether Autonomy properly disclosed revenue in its non-IFRS categories). This warrants exclusion because Dr. Lynch has been prejudiced by the government's failure to complete expert disclosures by the deadline imposed by the Court.

In cases like this, courts frequently look to the reason for the delay. *See, e.g.*, *United States v. Davis*, 244 F.3d 666, 671 (8th Cir. 2001) (chastising the government for not seeking a continuance or otherwise challenging the discovery deadline and affirming exclusion of evidence); *United States v. Mason*, No. 06-cr-80, 2008 WL 281970, at *3, *4 (S.D.N.Y. Jan. 25, 2008) ("Here, the government concedes that 'there were shortfalls . . . ,' but offers no excuse or explanation, acceptable or otherwise, for the failure to timely disclose evidence" that defendant had specifically sought for eleven months). Here, there is no good reason for the government's delay. It offers no excuse for delayed disclosure of opinions by an expert who has worked on this case for over five years and who has already prepared to testify at a co-defendant's trial. The government prioritized its efforts to expand the case over providing notice to the Defendant and adhering to the Court's Order. That alone merits exclusion.

The government claims that any untimely disclosure of its testimony can be resolved by Dr. Lynch's request for leave to file supplemental reports at the January 10, 2024 hearing. Opp. at 23. Not so. That request related to preparation for "a new theory of fraud based on something called 'organic growth.'" Jan. 10, 2024 Tr. at 18. It did not relate to the untimely expert disclosures of the government. Given the government's enormous expansion of the bill of particulars and the scope of trial, Dr. Lynch has needed to devote all of his resources to preparing

12

Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB

a defense to the dozens of additional transactions and topics added by the government. On top of those demands, Dr. Lynch cannot meaningfully prepare by March 18, 2024 to rebut the new categories of expert testimony.

## **CONCLUSION**

For the reasons stated herein, the Court should exclude the opinions contained in the Brice Report §§ 2.7-2.10, 4; prohibit references to the foreign legal proceedings; and limit Brice's case-in-chief opinion testimony to the opinions disclosed in his case-in-chief report, and limit his rebuttal testimony to opinions that respond to the defense's expert testimony.

13

Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB

Dated: February 7, 2024

Respectfully submitted,

*/s/ Brian M. Heberlig*
Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Dwight J. Draughon (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Christopher J. Morvillo (Admitted Pro Hac Vice)
Celeste L. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

14

Defendant Lynch's Reply Supp. MIL to Limit Expert Testimony of Brice (Lynch MIL No. 4)
3:18-cr-00577-CRB