Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA  94105
Telephone:  (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Dwight J. Draughon
Drew C. Harris
(Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 506-3900

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone:  (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

UNITED STATES DISTRICT COURT

NORTHERN  DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No.: 3:18-cr-00577-CRB<br><br>Judge: Hon. Charles Breyer<br><br>**DEFENDANT MICHAEL RICHARD LYNCH'S REPLY IN FURTHER SUPPORT OF HIS MOTION *IN LIMINE* TO EXCLUDE CERTAIN CATEGORIES OF EVIDENCE**<br><br>**(Lynch MIL No. 5)**<br><br>Date:  February 21, 2024 at 2 p.m.<br>Court:  Courtroom 6 – 17th Floor<br>Date Filed:  February 7, 2024<br>Trial Date:  March 18, 2024 |

## I. INTRODUCTION

Dr. Lynch respectfully submits this reply in further support of his motion *in limine* to exclude evidence of other alleged wrongs or bad acts, transactions that predate the alleged conspiracy, and irrelevant and prejudicial evidence. ECF No. 291 (D. MIL No. 5).

## II. EVIDENCE OF OTHER ALLEGED WRONGS OR BAD ACTS IS IRRELEVANT AND PREJUDICIAL AND SHOULD BE EXCLUDED

### A. Evidence Regarding Autonomy Analyst Daud Khan

The government's proffer of evidence regarding allegedly intimidating behavior towards analyst Daud Khan proceeds from the assumption that Autonomy had no basis for disagreeing with Mr. Khan's "unfavorable note" or for referring Mr. Khan to the U.K.'s Financial Services Authority ("FSA"). ECF No. 311 (G. Opp. to D. MIL No. 5) at 5. As Dr. Lynch explained in his opening brief, however, Autonomy questioned Mr. Khan's factual representations while making clear that Mr. Khan was free to express his own opinions and draw his own conclusions as long as his factual assertions were accurate, and Autonomy had good reason to refer Mr. Khan to the FSA on not just one but two occasions. ECF No. 291 at 2–3.[1] Admitting equivocal evidence with limited probative value will unfairly prejudice Dr. Lynch and create a sideshow about the nature of Mr. Khan's behavior and the basis for Autonomy's actions. The evidence should be excluded.

#### 1. The Evidence is Not Admissible Under Rule 404(b)

Contrary to the government's conclusory assertions about probative value, the evidence does not pertain to the allegations in the indictment. The government insists that Dr. Lynch's allegedly intimidating and threatening behavior is "specifically alleged in the indictment," "overlap[s] with the time frame" of the alleged scheme, and "touch[es] on the accuracy of Autonomy's financial reporting." ECF No. 311 at 5. In fact, the meeting with Mr. Khan,

---

[1] Autonomy did not "exclude[d] [Mr. Khan] from analyst calls under the false pretense that regulatory authorities believed he committed securities violations," as the government asserts, ECF No. 311 at 2, but simply advised Mr. Khan's boss that exclusion was prudent in light of the FSA referral. ECF No. 291 at 3.

Andrew Kanter's report to the FSA, and Mr. Khan's subsequent exclusion from in-person attendance at earnings presentations are not specifically alleged in the indictment and all occurred prior to the alleged scheme.[2]  The evidence also has no bearing whatsoever on the accuracy of Autonomy's financial reporting as it concerns Dr. Lynch's fair-minded disagreement with an analyst's draft opinion regarding a pre-scheme research note and in no way "touches" or otherwise implicates Autonomy's challenged financial disclosures.  Finally, the government asserts that Dr. Lynch "cared too much" and "paid a lot of attention" to analysts like Mr. Khan.  *Id*.  It is unclear how this irrelevant assertion bears on the requirements necessary to admit evidence under Rule 404(b).[3]

### 2. The Evidence is Not "Inextricably Intertwined" with the Charged Offenses

Nor is the evidence "inextricably intertwined" with the charged wire fraud offenses.  In this regard, the government's reliance on *United States v. Ripinsky*, 109 F.3d 1436 (9th Cir. 1997), *as amended*, 129 F.3d 518 (9th Cir. 1997), *overruled on other grounds by United States v. Sablan*, 114 F.3d 913 (9th Cir. 1997) (en banc), is misplaced.  *See* ECF No. 311 at 4.  In *Ripinsky*, a bank fraud case, the court held that evidence that the defendants had diverted funds

---

[2] Even if the alleged behavior toward Mr. Khan were alleged in the indictment, that would not justify admitting the evidence.  The government concedes as much by withdrawing its Rule 404(b) notice as to settlement payments to Brent Hogenson, Percy Tejada, and Reena Prasad, *see* ECF No. 311 at 9 n.1, even though the indictment alleges that "paying-off persons who raised complaints about or openly criticized Autonomy's financial practices and performance" was a means and method of the alleged conspiracy, ECF No. 21 at 7, and the government's theory of admissibility in the *Hussain* trial was that the settlement payment to Mr. Hogenson was "hush money", ECF No. 291 at 8 n.4.  Plainly, the mere fact that something is alleged in an indictment does not automatically mean that evidence in support of that allegation is admissible, nor does the mere fact that evidence was admitted in the *Hussain* trial mean that it should be admitted here.

[3] The government also makes a vague reference to Stouffer Egan's anticipated testimony that Dr. Lynch dangled "lucrative investment banking business to induce Autonomy customers into transactions," ECF No. 311 at 5, to which the government then tries to bootstrap Mr. Khan's assertion that "Autonomy pressured JPMC to take him off of Autonomy coverage in order to win business." *Id.*  Mr. Egan's evidence—which is untethered to any allegation in the indictment and irrelevant—cannot give a leg up to Mr. Khan's evidence.

was admissible not as other crimes evidence under Rule 404(b), but as "part of the ongoing scheme to defraud the banks," "part of the same transaction . . . to which some of the counts of the indictment related," and "direct evidence of the ongoing conspiracy." *Ripinsky*, 109 F.3d at 1442.  Indeed, the only reason the defendants in *Ripinsky* were not indicted for those acts was because "the government learned about them too late." *Id*.  The evidence regarding Dr. Lynch's disagreement with Mr. Khan's research note bears no resemblance to the evidence in *Ripinsky*: (i) it concerns issues that are not part of the alleged scheme;  (ii) it predates any of the transactions in the alleged scheme;  and (iii) it does not constitute direct evidence of the alleged conspiracy.  Accordingly, the evidence is not "inextricably linked" to the alleged scheme and remains subject to Rule 404(b), as to which the government has failed to meet its burden.

### 3. The Evidence is Not Admissible Under Rule 403

Finally, even if the government could satisfy its burden under Rule 404(b) (and it cannot), the evidence should be excluded because it is of minimal probative value, highly prejudicial, amounts to improper propensity evidence, and would create an unnecessary side show.  The government maintains that the evidence is relevant to support the allegation that the defendants engaged in threatening behavior in furtherance of the alleged scheme, ECF No. 311 at 1–2, but as discussed, the evidence of Mr. Khan does not relate to the alleged scheme.  Instead, all the evidence does is portray Dr. Lynch in a negative light and impugn his character.  The negligible probative value of the evidence is outweighed by its prejudicial effect.  It should be excluded.

### B. Evidence Regarding the Terminations of Mr. Hogenson, Mr. Tejada, and Ms. Prasad and the Settlements of Their Lawsuits

The government similarly fails to meet its burden under Rule 404(b) to admit evidence relating to Brent Hogenson, Percy Tejada, and Reena Prasad's terminations.[4]  The evidence should also be excluded because it would cause undue prejudice and is irrelevant to the charged allegations.

---

[4] As noted earlier, the government has withdrawn its Rule 404(b) notice as to payments of settlements to Mr. Hogenson, Mr. Tejada, and Ms. Prasad.  ECF No. 311 at 9, n.1.

1. **The Evidence is Not Admissible under Rule 404(b)**

As a threshold matter, the evidence is inadmissible under Rule 404(b) because the government has not even attempted to make the requisite showing of materiality, similarity, sufficiency, and remoteness. *See United States v. Charley*, 1 F.4th 637, 653 (9th Cir. 2021) ("Rule 404(b) requires a case-by-case assessment of materiality, similarity, sufficiency of proof, and remoteness.") (Bumatay, *J.*, concurring). The government contends that the evidence is "deeply probative of [Dr. Lynch's] state of mind, intent, and consciousness of guilt" but then pointedly fails to discuss *any* of the requirements to admit evidence under Rule 404(b). ECF No. 311 at 9. Instead, it regurgitates almost three pages of testimony from the *Hussain* trial and broadly asserts that Dr. Lynch's interactions with Mr. Hogenson are "central to this case." *Id.* at 6. These broad platitudes are insufficient to prove that the evidence is admissible under Rule 404(b).

The government repeatedly mischaracterizes the evidence to bolster its probative value. For example, the government claims that Dr. Lynch "induced" Joel Scott "to fire . . . Hogenson, as well as two of his subordinates," Mr. Tejada and Ms. Prasad, ECF No. 311 at 2, but Mr. Scott made clear in his testimony in the *Hussain* trial that it was his decision to fire Mr. Hogenson and that he had ample to reason to do so. ECF No. 291 at 7. That decision stemmed not just from the payroll fraud, as the government claims, but from Mr. Scott's own investigation, aided by investigative consulting firms, of separate misconduct by Mr. Hogenson in violation of numerous company policies, including paying reseller fees without approval, returning funds to customers without approval, and submitting false expense reports. *Id.* at 6–7. The investigation led Mr. Scott to find Mr. Hogenson "untrustworthy." *Id.* at 7. While Dr. Lynch agreed with the decision to fire Mr. Hogenson, it simply cannot be said—no matter how many times the government tries—that Dr. Lynch caused Mr. Hogenson to be terminated. Moreover, Autonomy ensured that Mr. Hogenson was *not* retaliated against for making his report to Dr. Lynch questioning Autonomy's accounting practices by not telling Mr. Scott about that report. Under the circumstances, alleging that Dr. Lynch improperly retaliated against Mr. Hogenson by firing

him—whether or not such retaliation is contained in the indictment—is grossly unfair to Dr. Lynch and distorts the record of Mr. Scott's own testimony.

Even more unfair is to tag Dr. Lynch with Mr. Scott's decision to terminate Mr. Tejada and Ms. Prasad. The government provides no basis for concluding that Dr. Lynch had anything to do with that decision, and any suggestion to the contrary should be precluded. There is likewise no evidence that Mr. Tejada and Ms. Prasad suffered any retaliation from Dr. Lynch for any of their actions.

### 2. The Evidence is Not Inextricably Intertwined with the Alleged Scheme

The government summarily asserts that the evidence relating to Mr. Hogenson, Mr. Tejada, and Ms. Prasad is "inextricably intertwined with the wire fraud offenses." ECF No. 311 at 9. Thus, the government again attempts to evade its Rule 404(b) burden by suggesting that the evidence does not constitute other act evidence but is rather part of the alleged scheme. *See Ripinsky*, 109 F.3d at 1442 ("Evidence should not be treated as 'other crimes' evidence . . . when the evidence concerning the other act and the evidence concerning the crime charged are 'inextricably intertwined.'") (quoting *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987)). But the evidence relating to improprieties within the U.S. finance team—including widespread payroll fraud and extensive evidence of Mr. Hogenson's misconduct—is not part of the ongoing alleged wire fraud, does not relate to any of the transactions in the indictment, and does not constitute direct evidence of the ongoing conspiracy. *See id.* The proffered evidence is not so intertwined with the alleged scheme that the requirements of Rule 404(b) do not apply.

### 3. The Evidence is Not Admissible Under Rule 403

Finally, the evidence of Ms. Hogenson's, Mr. Tejada's, and Ms. Prasad's terminations is not admissible because it is irrelevant, has minimal probative value, and is highly prejudicial. The evidence at trial will show that Dr. Lynch did not "cause" the terminations to occur, but rather that Mr. Hogenson, Mr. Tejada, and Ms. Prasad were fired by Mr. Scott following extensive investigations into the U.S. finance team that unearthed myriad instances of misconduct. Not only is the proffered evidence of minimal probative value because it does not

involve Dr. Lynch and does not bear on any of the charged allegations, but there is substantial risk that the jury will use the evidence to assess Dr. Lynch's character, which would unfairly prejudice Dr. Lynch.  Moreover, introduction of this evidence would require Dr. Lynch to rebut the false accusations of retaliation by providing evidence about the investigations into the U.S. finance team, Mr. Hogenson's misconduct, and Mr. Scott's ultimate decision to fire the employees.  Such a diversion would undoubtedly confuse the jury and unnecessarily prolong the trial.  The evidence should be precluded.

### III. MOTION TO EXCLUDE EVIDENCE OF ACQUISITIONS THAT PREDATE THE ALLEGED CONSPIRACY

The government's response to Dr. Lynch's motion to exclude evidence of acquisitions that predate the alleged conspiracy misconstrues that request as one for "a blanket order excluding events prior to 2009," ECF No. 311 at 9, and blithely asserts that "[e]vidence suggesting that, prior to 2009, growth [of Autonomy's IDOL software] was slowing or difficult to achieve is not a bad act, nor is it irrelevant." *Id.*  The government thus completely misses the point of Dr. Lynch's motion.  As Dr. Lynch explained, the issue is the government's allegation in the Supplementary Bill of Particulars ("SBOP"), ECF No. 271 at 5, that Autonomy made misleading disclosures about "organic growth" based on "misleading" claims that "historical growth in total revenue reflected growth in sales of Autonomy's principal product, IDOL, when, in fact, the total revenue grew mostly from revenue acquired by Autonomy through corporate acquisitions between 2000 and 2011 that was mischaracterized as revenue from sales of IDOL."  ECF No. 291 at 9.  That allegation, as Dr. Lynch further explained, raised the specter of having to examine Autonomy's acquisitions from 2000 to 2008, before the alleged conspiracy, and to defend Autonomy's claims about its organic growth year by year, i.e., in years prior to the conspiracy.  *Id*. at 9–10.

The government's single-paragraph response to Dr. Lynch's motion is wholly inadequate to satisfy its burden under Rule 404(b) to establish why evidence of "other acts"—namely, claims about organic growth from acquisitions that predate the conspiracy—is relevant, admissible, probative, and not unduly prejudicial.  Indeed, the government does not identify any

such "other acts" and explicitly disclaims any intent to rely on such "other acts." The government should accordingly be precluded from presenting any evidence of Autonomy's acquisitions before the time period of the alleged conspiracy and how Autonomy calculated its organic growth after each of those acquisitions.

That preclusion should extend, for example, to any claims by analysts that Autonomy misrepresented its organic growth in the wake of its acquisition of Verity in 2005 and of Zantaz and Meridio in 2007. Dr. Lynch should not have to rebut such claims—which present complex questions about how organic growth was calculated in the year following each acquisition. Indeed, calculating organic growth is a complicated process involving the assessment of how and when an acquired entity was integrated and of what businesses of the acquired entity have been discontinued or disposed of. Moreover, determining organic growth—which is not consistently defined—is a matter of judgment that can lead to differing conclusions. Yet the government's vague allegations about organic growth in the SBOP and in its opposition to Dr. Lynch's motion raise precisely the concern that Dr. Lynch will have to explain and defend Autonomy's organic growth calculations in connection with each of its acquisitions from 2000 through 2008. The Court should preclude the government's proposed sideshow about "organic growth" and "IDOL growth rates" in the years leading up to the charged conspiracy and confine the government to whatever evidence it has about Autonomy's financial performance and disclosures during the time period of the alleged conspiracy.

Dr. Lynch is on trial to defend against allegations of wire fraud relating to allegedly incorrect financial disclosures beginning in 2009. He is not on trial to defend each acquisition Autonomy made prior to 2009 and how it accounted for "organic growth" following each of those acquisitions. As neither the indictment nor the SBOP allege that Dr. Lynch misstated organic growth from 2000 to 2008, evidence of such transactions is wholly unrelated to the charged scheme and would undoubtedly confuse the jury and prolong the trial. Moreover, Dr. Lynch would be forced to present evidence assessing Autonomy's calculations of organic growth each year and to defend Autonomy's decisions underlying each acquisition. The government can furnish all the necessary context for the alleged scheme from the time period of that scheme, as

defined in the indictment. It should not be permitted to expand the temporal and substantive limits of the case by admitting evidence of transactions prior to 2009 to substantiate an entirely new theory of fraud not alleged in the indictment.

### IV. MOTION TO EXCLUDE IRRELEVANT AND PREJUDICIAL EVIDENCE OF BEHAVIOR

In response to Dr. Lynch's request to exclude irrelevant and prejudicial evidence, the government focuses on evidence of the use of expletives in emails and on evidence of Dr. Lynch's family's wealth.[5] This evidence should be excluded because it constitutes plain character assassination and is irrelevant.

Contrary to the government's assertions, the email regarding the possible transaction with the U.S. Department of Veteran's Affairs is not "highly probative of Dr. Lynch's knowledge" of the details of the transaction and his "disdain for excuses" as it in fact provides no details whatsoever about the deal. ECF No. 311 at 10. Instead, Dr. Lynch observes that responsibilities have been delegated to various members of Autonomy's management and expresses his desire that he be immediately appraised of any problems that arise. Far from being probative of Dr. Lynch's "knowledge of the sales pipeline" and "pressure on subordinates," the email indicates only that Dr. Lynch took an interest in seeing that transactions were completed, an unremarkable characteristic in a founder and CEO. *Id*. Moreover, the minimal probative value of the email is greatly outweighed by the use of an expletive, which overshadows the otherwise innocuous subject of the email. Dr. Lynch is not on trial for (rarely) using harsh language in emails with subordinates. As this email would only serve to impugn Dr. Lynch's character, would necessitate the defense offering evidence of instances in which Dr. Lynch was courteous with colleagues to rebut the government's implications, and would provide no insight into the allegations, it should be excluded.

---

[5] The government presumably does not address evidence of attempts at humor at Autonomy, such as references to the mafia or the keeping of piranhas at the Autonomy offices, as it is the subject of its own motion *in limine* and the defense's opposition to that motion. *See* ECF No. 296 (G. MIL No. 2); ECF No. 304 (D. Opp. to G. MIL No. 2).

The government also rejects the notion that it "seek[s] to introduce evidence of 'Lynch's family's wealth'" while simultaneously arguing that evidence of Dr. Lynch's country home and boat, and the fact that Dr. Lynch's wife received proceeds from the HP acquisition, are admissible. ECF No. 311 at 11–12. It is no secret that Dr. Lynch, as the founder and CEO of Autonomy, profited when HP acquired Autonomy. Under the circumstances, evidence that Dr. Lynch's wife, like other shareholders, also profited from the HP acquisition, is more prejudicial than probative. And evidence that Dr. Lynch's family owns a country home or a boat is irrelevant. The government's desire to admit evidence of Dr. Lynch's country home and boat, in particular, amounts to no more than an "appeal[] to class prejudice," which is "highly improper." *United States v. Holmes*, No. 5:18-CR-00258-EJD-1, 2021 WL 2044470 at *5 (N.D. Cal. May 22, 2021) (citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239–40 (1940)). The government's contention that showing pictures to the jury of "where events took place during the indictment [is] helpful for the jury in consuming complex evidence and assessing Dr. Lynch's authority," ECF No. 311 at 3, does not pass the straight-face test. This is not a case in which locations of meetings make any difference, and the government does not suggest otherwise. The evidence should be excluded.

## V. CONCLUSION

For the foregoing reasons, the Court should exclude evidence relating to alleged intimidating behavior against Daud Khan, the terminations of employees in Autonomy's U.S. finance department, and evidence of Dr. Lynch's family's wealth. The Court should also preclude the government from expanding—on the eve of trial—the substantive and temporal framework of the government's allegations by allowing evidence of transactions before the indictment period in support of a vague and ill-defined brand new theory of fraud relating to organic growth.

| | |
|---|---|
| Dated: February 7, 2024 | Respectfully submitted, |
| | By: _/s/ Christopher J. Morvillo_<br>Christopher J. Morvillo |
| | Christopher J. Morvillo<br>Celeste L.M. Koeleveld<br>Daniel S. Silver<br>(Admitted Pro Hac Vice)<br>**CLIFFORD CHANCE US LLP**<br>31 West 52nd Street<br>New York, NY 10019<br>Telephone:  (212) 878-3437<br>christopher.morvillo@cliffordchance.com |
| | Jonathan M. Baum (SBN: 303469)<br>**STEPTOE LLP**<br>One Market Street<br>Steuart Tower, Suite 1070<br>San Francisco, CA  94105<br>Telephone:  (510) 735-4558<br>jbaum@steptoe.com |
| | Reid H. Weingarten<br>Brian M. Heberlig<br>Michelle L. Levin<br>Nicholas P. Silverman<br>Dwight J. Draughon<br>Drew C. Harris<br>(Admitted Pro Hac Vice)<br>**STEPTOE LLP**<br>1114 Avenue of the Americas<br>New York, NY 10036<br>Telephone:  (212) 506-3900 |
| | *Attorneys for Defendant*<br>*Michael Richard Lynch* |