PATRICK D. ROBBINS (CABN 152288))
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

       450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
       Telephone: (415) 436-6912
       Fax: (415) 436-7234
       Email: Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL RICHARD LYNCH AND<br>STEPHEN KEITH CHAMBERLAIN,<br><br>    Defendants. | Case No. CR-18-577 CRB<br><br>UNITED STATES' REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 3: TO EXCLUDE EXPERT TESTIMONY<br><br>Pretrial Conference:  February 21, 2024, 2 p.m.<br>Trial Date:  March 18, 2024 |

## I.       INTRODUCTION

Defendant Michael Richard Lynch fails to meet the threshold requirements of relevance and reliability necessary to admit the expert opinions of Mr. Cerf, Mr. Taylor, and Mr. Levitske.  *See* Defendant Michael Richard Lynch's Opposition to the Government's Motion *in Limine* No. 3 To Exclude Expert Testimony ("Def. Opp."), ECF No. 309.  Defendant cannot reframe and misstate the allegations in this case merely to establish the purported relevance of his experts' opinions. Furthermore, Defendant fails to provide any meritorious response addressing the flawed and unreliable methods used by Mr. Taylor and Mr. Levitske to draw their conclusions.  Defendant's expert testimony should be excluded under FED. R. EVID. 401, 402, and 702.  Any minimal probative value of the expert opinions is far outweighed by the risks of unfair prejudice, confusing and misleading the jury with irrelevant and unreliable testimony couched in the form of expert opinions, and wasting time.

## II.      ARGUMENT

### A.       Testimony from Mr. Cerf and Mr. Taylor Pertaining to Industry Standards is Inadmissible under Fed. R. Evid. 401, 402, 702 and 403

Defendant states that Mr. Cerf will testify "to the common concerns in UK takeovers leading both acquirers and target companies to carefully limit disclosures due to UK Takeover Rules and interloper risk, among other common practices in UK Takeovers."  Def. Opp. 1.  Defendant states that Mr. Taylor will provide: "[E]xpert opinions on various principles and standards under IFRS, including revenue recognition metrics, adjusting or restating the accounting treatment of transactions, financial disclosures, and capitalization of expenses.  These opinions are a review and commentary on industry standards and foundations, and best practices for each topic."  Def. Opp. 2.  Defendant argues that "Courts routinely admit expert testimony regarding general industry standards and practices like that provided by the defense experts" and urges the Court to do the same here.  Def. Opp. 7.  Defendant strives to establish the purported relevance of Mr. Cerf and Mr. Taylor's opinions by reframing the allegations in the case and then arguing that Mr. Cerf's and Mr. Taylor's testimony is relevant to those manufactured allegations.  This effort is not adequate to establish relevance.

### 1. Mr. Cerf's Opinions

Defendant fails to articulate how Mr. Cerf's general views about U.K. acquisitions will be relevant other than to assert that his opinions will provide the "necessary context from which the jury must evaluate whether information disclosures in due diligence were consistent with ordinary practice or consistent with willful intent to defraud." Def. Opp. 9. Thus, as a threshold matter, Defendant appears to concede the lack of relevance of any proposed testimony of Mr. Cerf that falls outside his views as to general considerations of targets and bidders concerning disclosures during the due diligence process. The government disagrees that even Mr. Cerf's limited testimony on this topic is relevant.

This is not a negligence case where the jury will be asked to determine whether Autonomy's disclosures to HP during due diligence complied with general industry standards. As the Court instructed in *Hussain*, evidence related to HP's due diligence process is relevant only to the extent that it helps the jury "determine whether the defendant made false or fraudulent pretenses, representations, or promises as part of a scheme or plan to defraud" or determine "whether the statements made or facts omitted as part of the alleged scheme were material; that is whether they had a natural tendency to influence, or were capable of influencing, a person to part with money or property." *United States v. Hussain*, 16-CR-462 CRB, ECF No. 374 (Jury Instructions) at 24. If these elements are met, "then whether there were additional things Hewlett Packard could have done to avoid being impacted by the alleged misstatements and/or omissions is irrelevant to [the] verdict." *Id.* Mr. Cerf's opinions on how due diligence processes unrelated to the HP/Autonomy acquisition may proceed is irrelevant particularly given that, as even Mr. Cerf recognizes, the due diligence process is unique for each acquisition. *See* Def. Opp. Ex. A ("Cerf Report") ¶ 16, ECF No. 309-2 ("The due diligence process to confirm a bid for a UK publicly listed company is a bespoke process. There are no general rules, and each due diligence process has its own unique characteristics.").

The relevant issue in this case is not whether HP should have engaged in more aggressive due diligence, but rather whether Defendants intentionally made false statements and whether those false statements were material. Mr. Cerf's proposed testimony based on his experience with other due diligence processes will not assist the jury with this determination. Instead, Mr. Cerf's proffered

U.S.' REPLY RE: MOT. *IN LIMINE* NO. 3 TO
EXCLUDE EXPERT TESTIMONY

2

testimony appears to be a back door cover through which Defendant is attempting to admit irrelevant expert testimony about unrelated acquisitions so it can suggest that HP is to blame for failing to conduct more adequate due diligence—precisely what the Court disallowed in *Hussain.*

Furthermore, although Defendant claims that Mr. Cerf will testify as to common concerns and industry standards in the U.K. acquisition process, some of Mr. Cerf's proffered opinions with respect to the due diligence process go beyond that and instead constitute categorical assertions about what does and does not happen in a diligence process—conclusory opinions for which Mr. Cerf has provided no reliable basis.  For example, Mr. Cerf states the following: "[T]he length and scope of the due diligence will predominantly be determined by the Bidder, who can decide when they are satisfied with the scope of disclosure.  If information is important to a Bidder, then the Bidder will not conclude a deal unless, and until it is provided," Cerf Report ¶ 20; "Bidders have a strong negotiation position and are generally able to secure what they believe to be a reasonable time frame and scope of investigations to access the required information," Cerf Report ¶ 21; "The CEO would be excepted to engage in high-level discussions about financial prospects but would typically delegate more detailed discussions about the Target's operations and financials to other executives. The CFO will be involved in the more detailed discussions regarding the Target's financials and may ask other executives . . . ." Cerf Report ¶¶ 22–23; "In my experience, auditor access or making a data room available are not normal practice and indicate a cooperative stance by a Target, Cerf Report ¶ 24; "Accordingly, the most confidential competitive information is disclosed, if at all, late in the process when a deal is almost certain", Cerf Report ¶ 36; "Accordingly, the risk of an interloper entering the negotiations and usurping the original Bidder is significant and this will influence both Target and, in particular, Bidder behavior", Cerf Report ¶ 37. Mr. Cerf provides no reliable basis for such conclusory assertions regarding what a CEO involves himself in versus delegates, the bargaining position of a bidder, who determines the scope of diligence, and what risks motivate a bidder and target and, should he be allowed to testify, he should be prohibited from providing such conclusory assertions.  *See* FED. R. EVID. 702, ad. comm. notes 2000 ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the

1   conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is

2   reliably applied to the facts.").

3       Even if Mr. Cerf's general opinions with respect to disclosures in the due diligence process had

4   marginal relevance, that is vastly outweighed by the risks of confusing and misleading the jury, causing

5   unfair prejudice, and wasting time.  *See* FED. R. EVID. 403; Gov. Mot. *in Limine* No. 3 to Exclude Expert

6   Testimony ("Gov. Mot."), ECF No. 298, at 9.  "Unfair prejudice" means an "undue tendency to suggest

7   decision on an improper basis."  FED. R. EVID. 403, ad. comm. notes.  Defendant seeks to admit evidence

8   of U.K. acquisition due diligence processes under the guise of an expert opinion from an "expert"

9   purportedly opining on industry standards.   In doing so, Defendant attempts to do exactly what the

10   Court disallowed in *Hussain*, which is cause the jury to decide this case based on the adequacy of HP's

11   diligence process.  Moreover, testimony from an "expert" on the diligence process of unrelated

12   acquisitions based purely on that expert's purported personal experience with an (undisclosed) number

13   of U.K. acquisitions will confuse and mislead the jury and waste time.

14                 **2.**       **Mr. Taylor's Opinions**

15       The only theory of relevance articulated by Defendant with respect to Mr. Taylor's report is that,

16   in order to make a determination as to "whether Dr. Lynch was involved with accounting classification

17   decisions, and whether those accounting classification decisions were intended to defraud," the jury

18   "needs to hear evidence regarding the rules of accounting classification."  Def. Opp. 8–9.  Defendant's

19   conclusory assertion fails to provide the link necessary to establish relevance here.  Specifically,

20   Defendant does not explain how Mr. Taylor's general statements about accounting rules will be of any

21   assistance to the jury in deciding the issues Defendant claims it needs to decide; nor could he.  General

22   statements about accounting rules are not relevant to questions of whether Dr. Lynch was involved in

23   accounting decisions or whether he acted with intent to defraud.  As the government stated in its motion,

24   Mr. Taylor's recitation of accounting standards untethered to the facts of this case are irrelevant, will

25   waste time, and should be excluded.  *See* Gov. Mot. 10.  Defendant's opposition brief fails to refute this

26   point.

27

28   U.S.' REPLY RE: MOT. *IN LIMINE* NO. 3 TO
    EXCLUDE EXPERT TESTIMONY

1    Interestingly, Defendant devotes just one five-line footnote to responding to the government's

2    arguments that Mr. Taylor's opinions addressing, and disagreeing with, Mr. Brice's conclusions

3    (Appendix 3 of the Taylor Report) should be excluded because they are irrelevant and unreliable.  *See*

4    Def. Opp 8 n.2.  The government will not repeat its arguments here and instead refers the Court to its

5    prior motion.  *See* Gov. Mot. 10–14.  In summary, the government argued that Mr. Taylor's conclusory

6    assertions that he disagreed with Mr. Brice's opinions should be excluded because they were not the

7    result of a reliable methodology applied to facts of the case.  Indeed, Mr. Taylor did not engage with the

8    facts at all, let alone demonstrate that his disagreements with Mr. Brice's opinions rested upon a solid

9    foundation in which he applied a reliable methodology or principles to the facts.

10    Defendant responds to the government's arguments as follows: "While the government argues

11    that Taylor's declination to mirror Brice's methodology (the acceptance of all factual allegations of one

12    party) renders his objections to Brice's analysis irrelevant, the government is wrong.  Taylor disagrees

13    with Brice's application of accounting principles to the alleged facts.  His testimony helps the jury by

14    demonstrating that as they attempt to apply the principles to disputed facts, they should not make the

15    same errors made by Brice."  Def. Opp 8 n.2.  Defendant's footnote fails to undermine the government's

16    arguments.  Either intentionally or inadvertently Defendant misses the point.  The government does not

17    critique Mr. Taylor for failing to mirror Mr. Brice's methodology; the government critiques Mr. Taylor

18    for *not having a reliable methodology*.  Mr. Taylor does nothing more than point to a conclusion of Mr.

19    Brice, assert that he disagrees with that conclusion, and cite a general accounting principle.  Mr.

20    Taylor's "disagreements" are not the product of any reliable *method* tied to the *facts of the case*.  He

21    does not, for example, explain *how or why* Mr. Brice's opinions run afoul of relevant accounting

22    principles based on the facts at hand.  Nor are his disagreements supported by any alternative facts that

23    undercut Mr. Brice's conclusions.  Moreover, despite Defendant's argument to the contrary, Mr.

24    Taylor's unfounded statements are not relevant and admissible merely because they assert  a

25    disagreement with Mr. Brice or because Defendant claims *ipse dixit* that Mr. Brice made errors.  In order

26    to be admissible, Mr. Taylor's criticisms of Mr. Brice must be based on sufficient facts and be the

27    product of a reliable method applied those facts.  FED. R. EVID. 702.  Mr. Taylor fails to meet this

28    U.S.' REPLY RE: MOT. *IN LIMINE* NO. 3 TO
EXCLUDE EXPERT TESTIMONY

1   standard, and the Court must exercise its gatekeeping function to ensure his irrelevant and unreliable

2   opinions with respect to Mr. Brice's conclusions are excluded.

3          Defendant has failed to establish the relevance and reliability of Mr. Taylor's opinions.  In any

4   case, even if they did have minimal probative value, that is vastly outweighed by the risk of confusing

5   and misleading the Jury, wasting time, and causing unfair prejudice.  FED. R. EVID. 403.  Allowing

6   testimony from a purported "expert" who does nothing more than recite accounting standards and make

7   conclusory assertions that Mr. Brice made "errors" will confuse and mislead the jury, waste time, and

8   risk unfair prejudice.  Defendant is hoping to sway the jury by presenting a paid advocate dressed up

9   like a sworn expert but who in fact did not engage in any rigorous analysis of the type an expert would

10  typically rely upon in the field.

11          **B.      Defendant Fails to Cure the Insufficiency of Mr. Levitske's Expert Disclosure**

12          The government argued that the expert disclosure pertaining to Mr. Levitske failed to comply

13  with Rule 16 in that it did not provide all bases and reasons for his opinions.  FED. R. CRIM. P.

14  16(b)(1)(C)(iii).  Specifically, the government pointed out that Mr. Levitske did not disclose the

15  underlying transactions supporting each of the adjustments made in Attachments A–F of his report and

16  his methodology for calculating certain line items in these Attachments, such as "VAR transactions

17  allegedly recognized too early–outs."  *See* Gov. Mot. 14–15.  Defendant responds with the barebones

18  assertion that Mr. Levitske has cited to the Appendices and tables in the Brice Report "with specificity

19  to show the sources for his opinion on revenue adjustments," Def. Opp. 10, but that is not the case.  In

20  its motion, the government pointed to specific examples in Attachment C where neither the government

21  nor Mr. Brice could determine the underlying transactions driving Mr. Levitske's adjustments.  *See* Gov.

22  Mot. 14–15.

23          This should not be a guessing game, and the government struggles to understand why Defendant

24  is attempting to make it so.  Rule 16's disclosure requirements were revised precisely to prevent this

25  type of issue arising and to ensure that expert disclosures are made in a manner sufficient to ensure the

26  bases for all opinions are disclosed with sufficient particularity such that the reliability of the expert's

27  opinions may be analyzed and the expert may be effectively cross-examined.  Defendant's refusal to

28  U.S.' REPLY RE: MOT. *IN LIMINE* NO. 3 TO
    EXCLUDE EXPERT TESTIMONY

supplement its disclosure is a blatant attempt to block the government from being able to rigorously assess the foundation for Mr. Levitske's conclusions.  The government and Mr. Brice used best efforts to reconcile all of the aggregate adjustments in Mr. Levitske's attachments but, as indicated in the government's motion, they were unable to do so.  The government thus made a good faith and reasonable request that Mr. Levitske supplement his disclosure to state with specificity the transactions underlying each of his adjustments in his attachments.  Assuming that Mr. Levitske's aggregate assumptions are reliably and accurately based on underlying software or hardware transactions, it is hard to fathom why Defendant would refuse to comply with this simple request.  Defendant suggests that to "the extent that Levitske and Brice used different inputs, it may be because Brice changed the amounts in some of his transactions summaries after Levitske was noticed as an expert." Def. Opp. 10.  This unfounded accusation is speculative and unfounded.  As explained in the Government's Opposition to Defendant's Motion *In Limine* #4 to limit Mr. Brice's testimony, Mr. Brice made minor typographical revisions and provided some supplementary examples in his revised report but he did not "change amounts" with respect to any specific transaction.  *See* ECF No. 318 at 2–4.  Indeed, Mr. Brice did not change the software transactions he focused on at all.  Mr. Brice reviewed Mr. Levitske's attachments, made a good faith effort to understand each of his inputs, but could not do so.  Indeed, Defendant's claim betrays precisely the issue here—the government cannot determine how Mr. Levitske's inputs have differed from those of Mr. Brice *because Mr. Levitske has not disclosed all of his inputs.*

The government requests a supplementary disclosure providing each of the inputs supporting Mr. Levitske's adjustments in his attachments.  Such a disclosure is mandated by Rule 16 and Defendant provides no good reason for failing to satisfy this requirement.

### C. Defendant Fails to Adequately Address the Relevancy And Reliability Concerns Raised with Respect to Mr. Levitske's Analysis

Mr. Levitske's analysis involved backing out hardware, VAR, linked, and hosting transactions that, based on the government's theory of the case, were improperly accounted for and/or not disclosed. The government argued that such an analysis lacked relevance because there is no allegation that these transactions should not have happened.  Gov. Mot. 15–16.  The issue in dispute is whether Defendants

have engaged in a scheme to defraud by making material misrepresentations.  The government's theory of fraud is not that the transactions occurred, but that they were either fraudulently accounted for and/or not disclosed in Autonomy's financial reports.  Mr. Brice's analysis focused on one aspect of this inquiry, namely whether there were material misrepresentations in Autonomy's financial reports.  Defendant's theory of relevance for Mr. Levitske's analysis is based on an inaccurate assertion about the allegations in this case.  *See* Def. Opp. 12 ("The alleged conspiracy began with the decision to engage in the transactions at all, and Dr. Lynch is entitled to analyze the impact if Autonomy had never entered into those transactions.").  As Defendant is no doubt going to emphasize during the trial, there is nothing fraudulent about engaging in transactions with resellers or making hardware sales.  The government agrees.  The allegations of fraud here concern the material misrepresentations made with respect to the accounting and disclosures of the software and hardware transactions in Autonomy's financial reports.  Defendant's attempt to articulate an alternative theory of fraud, and one not alleged in the Indictment, merely to make Mr. Levitske's analysis seem relevant lacks merit and fails to satisfy the relevancy threshold.

Defendant's response to the reliability concerns raised in the government's motion are similarly ineffective and amount to nothing more than an attempt to distract the Court from the flaws in Mr. Levitske's methodology.  First, Defendant blatantly misstates the government's argument, claiming that the government takes issue with the *correctness* of Mr. Levitske's opinions.  That is not the case, as is obvious from a plain reading of the government's motion.  *See* Gov. Mot. 16–19.  The government's motion centers upon Mr. Levitske's *unreliable methodology*, specifically that he based his analysis on flawed assumptions that are inconsistent with the facts of the case.

Second, Defendant falsely asserts the "government faults Levitske for not making two sets of assumptions that were absent from Brice's case-in-chief report."  Def. Opp. 13.  This is a red herring meant to distract the Court from the real problems concerning Mr. Levitske's methodology, which Defendant would rather sidestep by rendering a false narrative as to the government's argument than address head on.  Despite Defendant's claim, the government did not fault Mr. Levitske for failing to make certain "assumptions."  Def. Opp. 13.  The government faults Mr. Levitske for rendering an

analysis in which the assumptions he *did make* with respect to backing out costs and revenues were inconsistent with how those revenues and costs were recognized by Autonomy in the first place.  The government's point is quite simple.  If Defendant wants to use Mr. Levitske's analysis to show "the impact if Autonomy had never entered into those transactions," Def. Opp. 12, then Mr. Levitske should be required to use a reliable method applied to the facts of the case to perform that analysis and draw his conclusions.  A reliable method would involve removing the transactions at issue in a manner that aligns and mirrors the facts of the transactions and how Autonomy accounted for the transactions.  To take just a simple example, if Autonomy did not receive the cash from a hosting transaction upfront in a lump sum and instead received it at different points in the life of the contract, Mr. Levitske, in drawing conclusions as to how Autonomy's books would have looked without this transaction, should have removed the cash from this transaction in the quarters and in the amounts that accurately reflect the facts as to how and when that cash came in.  *See* Gov. Mot. 18.  Instead, Defendant asked Mr. Levitske to assume that the full amount of the cash was received and recorded upfront, and so he adjusted for this cash accordingly.  *Id.*  The same is true for the assumptions Mr. Levitske made with respect to the linked and VAR transactions.  Mr. Levitske assumed that the costs for these transactions were incurred in full in a particular quarter, when in fact some of those costs were amortized and capitalized over a period of time.  *See* Gov. Mot. 17–18.  Similarly, with respect to VAR transactions, Defendant asked Mr. Levitske to assume that the expense related to a VAR revenue transaction was recorded in the same period when the revenue from the VAR transaction was recognized, when in fact that expense sometimes occurred in a later quarter.  *Id.*  In sum, the government is not faulting Mr. Levitske for not making certain assumptions.  The government's concern is that Mr. Levitske's conclusions as to how Autonomy's cash, profit and valuation would have looked assuming the transactions at issue never existed are not the product of a reliable method applied to the facts of the case because Mr. Levitske made flawed assumptions that do not accurately reflect the underlying facts.

Finally, the government's arguments with respect to Mr. Levitske's methodology do not stem from any new assumptions or conclusions that were in Mr. Brice's January report.  *See* Def. Opp. 13 (claiming government cited appendices present in Brice's rebuttal report).  The government's arguments

U.S.' REPLY RE: MOT. *IN LIMINE* NO. 3 TO
EXCLUDE EXPERT TESTIMONY

9

1    are based on *the facts of the transactions and how Autonomy accounted for them*.  These facts did not

2    change between Mr. Brice's November and January report and all of the examples cited by the

3    government in its motion pertained to software transactions that were covered in Mr. Brice's first report

4    and included in Appendix F of that report.  The two appendices that were cited in the government's

5    motion (Appendix K and L) were appendices of Mr. Brice's rebuttal report that specifically focused on

6    rebutting Mr. Levitske's report and provided more detail regarding the same flaws the government

7    identified in its motion.

8         Opinions based upon a methodology that makes flawed assumptions inconsistent with the facts

9    are inadmissible under Fed. R. Evid. 702 and *Daubert*.  Even if there was any probative value to Mr.

10   Levitske's purported analysis, that is substantially outweighed by the danger of unfair prejudice,

11   confusing and misleading the jury, and wasting time.  FED. R. EVID. 403.  Rule 702 imposes a

12   gatekeeping function to prohibit the admission of unreliable expert opinions like Mr. Levitske's

13   precisely for this reason.  Mr. Levitske's opinions are flawed and unreliable.  They were engineered by

14   the Defendant who asked Mr. Levitske to make assumptions that did not align with the facts of the case

15   solely so Defendant could obtain valuation conclusions that served his theory of the case.  Admitting

16   such an unreliable and misleading "expert opinion" would be highly prejudicial and confuse the issues.

17   Defendant has failed to establish that Mr. Levitske's opinions meet the relevancy and reliability

18   thresholds demanded of expert opinions and, as such, the Court should exclude Mr. Levitske's testimony

19   under FED. R. EVID. 401, 402, 702, and 403.

20   **III.    CONCLUSION**

21        For the foregoing reasons, the government respectfully requests that the Court grant the

22   government's motion *in limine* to exclude the expert testimony of Mr. Cerf, Mr. Taylor, and Mr.

23   Levitske.

24   //

25   //

26   //

27   //

28   U.S.' REPLY RE: MOT. *IN LIMINE* NO. 3 TO
     EXCLUDE EXPERT TESTIMONY

1    DATED:  February 7, 2024                              Respectfully submitted,

2                                                          PATRICK D. ROBBINS
                                                           Attorney for the United States
3                                                          Acting under Authority Conferred by 28
                                                           U.S.C. § 515.
4

5                                                          /s/ *Kristina Green*
6                                                          ROBERT S. LEACH
                                                           ADAM A. REEVES
7                                                          KRISTINA GREEN
                                                           ZACHARY G.F. ABRAHAMSON
8                                                          Assistant United States Attorneys

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   U.S.' REPLY RE: MOT. *IN LIMINE* NO. 3 TO
     EXCLUDE EXPERT TESTIMONY
                                              11