PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6912
    FAX: (415) 436-7234
    Email: Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR-18-577 CRB |
| Plaintiff, | UNITED STATES' MOTION *IN LIMINE* TO ADMIT SETTLEMENT AGREEMENT WITH BRENT HOGENSON |
| v. | |
| MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN, | |
| Defendant. | |

**INTRODUCTION**

Defendant Michael Richard Lynch and Autonomy spent $750,000 to silence a whistleblower, Brent Hogenson, two months after learning that he told American and British regulators about accounting fraud at Autonomy. They conditioned that payment—then more than twice the whistleblower's annual compensation—on Hogenson's submission of a statement designed to neutralize Hogenson as a witness. And they extracted a promise that Hogenson cooperate with Autonomy to quash any process seeking information about Hogenson's time at Autonomy. Reasonable jurors could infer from those facts that defendant Dr. Lynch and Autonomy sought to obstruct investigations into

Autonomy by paying off Brent Hogenson. The government requests that the Court admit Hogenson's settlement for that permissible purpose under Rule 408(b).

## FACTUAL BACKGROUND

Brent Hogenson came to Autonomy through its 2009 acquisition of Interwoven, a California software company. By year-end, Hogenson held the title of Chief Financial Officer, Americas. The following spring, Hogenson and the legacy Interwoven finance team undertook a review of the combined entities' accounting. On June 22, 2010, Hogenson wrote an e-mail directly to defendant Dr. Lynch. *See* Abrahamson Declaration in Support of Hogenson MIL (filed herewith), Ex. A at 2 (Trial Exhibit 13037). "Dear Mike," Hogenson wrote, "During [my accounting] review I became concerned that Autonomy may have engaged in multiple material transactions with resellers of our software where the available information suggests that we may have materially misstated revenue and income[.]" *Id*. Hogenson went on to identify "seven and eight figure transactions with resellers where 1) there was no end user . . . 2) there appear to be resellers with related party relationships . . . ; and 3) there appear to be barter transactions where the economic benefit on both sides of the transaction appears to be materially overstated." *Id*.

A month later, Hogenson took his disclosures to the authorities. On July 26, 2010, he wrote an e-mail to the United Kingdom's Financial Services Authority. *See* Abrahamson Decl., Ex. B (Trial Exhibit 1012). Hogenson explained his position and flagged for the FSA issues regarding Capax, MicroLink, MicroTech, Discover Technologies, and FileTek. Two days later, Autonomy learned of Hogenson's disclosure and fired him. That day—July 28—Sushovan Hussain circulated a draft "fsa memo" to defendant Dr. Lynch and COO Andrew Kanter. *See* Abrahamson Decl., Ex. C (Trial Exhibit 10350) ("Mr. Hogenson has told us twice that he has sent you [the FSA] a list of accounting questions[.]"). Dr. Lynch received a copy of Hogenson's original FSA disclosure in the first week of August. *See* Abrahamson Decl., Ex. D (Trial Exhibit 10479).

A few weeks later, on August 20, Hogenson disclosed Autonomy's accounting fraud to the Securities and Exchange Commission. *See* Abrahamson Decl., Ex. E (Trial Exhibit 6256). Hogenson attached his July whistleblower disclosure to the FSA, various documents regarding reseller transactions, and an e-mail from Percy Tejeda with accounting concerns. *Id*. Autonomy found out

quickly: By September 2010, Hogenson had sent Autonomy a draft wrongful termination lawsuit that highlighted his SEC whistleblower disclosure as a basis to avoid arbitration. *See* Abrahamson Decl., Ex. F at 9 (Trial Exhibit 4150). It was against this backdrop—Hogenson's disclosures of accounting improprieties to regulators and Autonomy's knowledge of those whistleblower disclosures—that the parties negotiated Hogenson's settlement agreement.

Hogenson and Autonomy entered into a settlement agreement in mid-November 2010. *See generally* Abrahamson Decl., Ex. G (Ex. 13059). Autonomy agreed to pay Hogenson $750,000[1] in exchange for Hogenson's release of claims, a declaration about Hogenson's knowledge of Autonomy's accounting, and a promise that Hogenson would not "disparage, defame, or slander[] Autonomy or its businesses, directors, [or] officers[.]" ¶ 6. If Hogenson were ever required "by law or court order" to disclose "internal information related to Interwoven and/or Autonomy," then Hogenson's agreement required that he "cooperate in any effort by [Autonomy] to object to or quash" the relevant demand. ¶ 7.

The declaration that Autonomy extracted plainly sought to neutralize Hogenson's value as a witness in later proceedings. *See* Abrahamson Decl., Ex. H (Ex. 13058). For example, the declaration included the following statements:

- ¶ 7: "I have not taken any training courses on IFRS and do not consider myself an expert in IFRS accounting, nor do I have experience or expertise in the differences between US GAAP and IFRS accounting rules."

- ¶ 8: "I never claimed to be an expert in IFRS accounting, nor claimed to have a complete understanding of IFRS accounting. I did not reach or disclose conclusions under IFRS on the matters that I raised, nor would I be in a position to do so at the time."

- ¶ 9: "In addition I understand that in my position as a regional finance executive I would not have had access to the complete books and records of the company. As a result I would not have known if Autonomy's independent auditors had been provided with additional information not within my control."

For these admissions[2]—and for Hogenson's silence—Autonomy paid $750,000.

---

[1] As of November 2009, Hogenson's compensation comprised a base salary of $250,000 and target bonus of $75,000. *See* Abrahamson Decl., Ex. F at 7.

[2] The settlement agreement provided that receipt of Hogenson's declaration would be a "condition precedent" to Hogenson's payment, and that "failure to deliver [the declaration containing these statements] shall be a material breach of this Agreement by Hogenson." Abrahamson Decl., Ex. G at 1(b).

Autonomy continued to obstruct inquiries into Hogenson's allegations by lying to U.K. regulators. *See* Order Denying Motions for New Trial and Judgment of Acquittal at 74, *United States v. Hussain*, CR 16-462 CRB (N.D. Cal. Jul. 30, 2018), ECF No. 419 (holding evidence of misrepresentations to the UK Financial Reporting Review Panel was properly admitted).

Hogenson's firing—and its connection to scrutiny of Autonomy—has featured prominently in this trial. In defendant Dr. Lynch's opening, counsel described as "bunk" the argument that "a CFO in the United States came forward, made allegations about the accounting, and Mike fired him because he didn't want those allegations to get out in the open and blow the lid off Autonomy." *See* Tr. 367:23-368:20. Dr. Lynch then suggested that "*it's all going to be before you*, and you can use [Hogenson] as a litmus test." *Id*. (emphasis added). With those remarks,[3] defendant Dr. Lynch promised the full Hogenson story—a story that, Dr. Lynch claimed, would defy an obstructionist read. The government should be permitted to respond.

## ARGUMENT

**I.    Federal Rule of Evidence 408 Permits Admission of the Hogenson Settlement to Prove Obstruction of an Administrative Investigation into Autonomy.**

Federal Rule of Evidence 408 prohibits the admission of compromise offers *only* "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). The rule is one "of *limited* applicability," *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007), and Rule 408(b) goes on to state "[e]xceptions" that include "proving an effort to obstruct a criminal investigation or prosecution." FED. R. EVID. 408(b). As the rule's original advisory comments explained, "[a]n effort to 'buy off' the prosecution or a prosecuting witness in a criminal case is not within the policy of the rule of exclusion." *See* FED. R. EVID. 408, adv. comm. note. The exceptions clause is capacious: "The use of the phrase 'such as' [in Rule 408] implies that the ensuing list is *not exhaustive*, but is only illustrative."

---

[3] Dr. Lynch's opening introduced Hogenson thus: "Hogenson, the whistleblower. You heard a story that a CFO in the United States came forward, made allegations about the accounting, and Mike fired him because he didn't want those allegations to get out in the open and blow the lid off Autonomy. That's the implication of what you heard this morning. We say bunk. This guy Hogenson was presiding over the largest accounting fraud in the history of Autonomy. People under him for about a year were stealing. He never caught it. An investigation started, and then, lo and behold, Hogenson files a whistleblower complaint. In the course of the original investigation, allegations surface about Hogenson himself. And he's going -- he's on the witness list, and I'm looking forward to this. We're going to settle this one in court. Who is right here?" Tr. 367:23-368:12.

*United States v. Technic Servs., Inc.*, 314 F.3d 1031, 1045 (9th Cir. 2002) (emphasis added), *overruled on other grounds by United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010).

The government offers Hogenson's settlement to prove Autonomy's efforts to obstruct administrative investigations into Autonomy.[4] That proof ties to Count One of the Superseding Indictment, which charged that defendants' conspiracy included "intimidating, pressuring, *and paying-off* persons who raised complaints about or openly criticized Autonomy's financial practices[.]" ECF No. 21 (Superseding Indictment), ¶ 22(i) (emphasis added). Hogenson's settlement proves those methods and complements other obstruction evidence, including defendant Dr. Lynch's attempts to push out skeptical analyst Daud Khan. In this way, the settlement's admission compares comfortably with courts that have admitted compromise offers to prove "course of conduct" or lack of mistake. *See, e.g., Am. Gen. Life Ins. Co. v. James*, No. C-14-04242 DMR, 2015 WL 730010, at *6 (N.D. Cal. Feb. 19, 2015) (settlement communications admissible "for another purpose . . . as evidence of AGLIC's course of conduct."), *Orr v. City of Albuquerque*, 531 F.3d 1210, 1218-19 (10th Cir. 2008) (Gorsuch, J.) (admitting settlements concerning pregnancy discrimination claims to "show not liability *per se* but the absence of mistake"). But for Autonomy's pay-off to Hogenson, regulators may have prevented the fraudulent sale to Hewlett-Packard that defendant Dr. Lynch accomplished barely a year later.

The fact that no *criminal* prosecution began by November 2010 does not preclude the settlement's admission. Here, Ninth Circuit law is clear: In *Technic Services*, 314 F.3d at 1045, the Ninth Circuit allowed under Rule 408 the admission of a settlement communication to prove the obstruction of an Environmental Protection Agency investigation.[5] In that case, an Alaska company undertook an asbestos remediation project that the EPA subsequently investigated. *Id*. at 1036-37. In response to the administrative investigation, the company sent the EPA a letter under Rule 408 asserting the company's compliance with regulatory requirements. *Id*. Years later, the government initiated a

---

[4] To the extent the Court wishes to admit Hogenson's settlement amount subject to a limiting instruction consistent with the prohibitions of Rule 408(a), the government would not object.

[5] In *Technic Services*, the Ninth Circuit noted that the defense had initially stipulated to the settlement communication's admission. *See Technic Svcs.*, 314 F.3d at 1045. But the appeals court went on to analyze the document's admission under what's now Rule 408(b), describing that rule's exceptions clause as an "independently sufficient reason[]" supporting admission. *Id*.

criminal prosecution and introduced the letter against the company president as evidence of obstruction.[6] *Id*. at 1045.  The Ninth Circuit affirmed the letter's admission, holding that "[p]roving the criminal obstruction *of an administrative investigation* is a purpose 'such as,' or similar to, proving the obstruction of a criminal investigation. For that reason, Rule 408 does not render it inadmissible." *Technic Servs., Inc.*, 314 F.3d at 1045 (emphasis added).

The only authority in defendant Dr. Lynch's previous briefing on this topic is inapposite: In *United States v. Davis*, 596 F.3d 852, 859-60 (D.C. Cir. 2010), the appeals court found abuse of discretion in the admission of testimony about a compromise offer by the defendant.  *Id*. at 854.  But at the time of the offer in *Davis*, "there was no evidence indicating that [the defendant] knew of any criminal investigation."  *Id*. at 860.  Moreover, the *Davis* court had little evidence that the compromise offer amounted to obstruction: The defendant simply offered a sum to "make this situation just go away."  *Id*. at 854.  *Davis* mentions none of the extracted admissions and gag orders that characterize Hogenson's settlement.  Perhaps for these reasons, *Davis* expressly left *open* the possibility that "an offer of settlement, excessive in amount, could be seen as an attempt to 'buy off' a complaining party."  *Id*. at 861.  In sum, *Davis* does not foreclose the admission of payments in exchange for silence, where the payor knows of regulatory disclosures made by a whistleblower.

## CONCLUSION

Autonomy's response to Hogenson's whistleblower disclosures proves the charged means and methods of defendants' conspiracy.  On the facts here, admitting the settlement is proper under Rule 408(b).  And defendant Dr. Lynch has opened the door to the settlement's admission by promising the jury that they will hear Hogenson's story in full: "[I]t's all going to be before you."  The Court should admit Hogenson's settlement agreement to prove Autonomy's obstruction of administrative investigations.

---

[6] The government in *Technic Services* charged the defendants with obstruction under 18 U.S.C. § 1505.  *See* 314 F.3d at 1044.  But that charging decision *per se* played no role in the Ninth Circuit's analysis of the compromise offer's admission.  *Id*. at 1045.  The government knows of no case requiring an obstruction *charge* to support admission under Rule 408(b).

| | | |
|---|---|---|
| 1 | DATED:    March 30, 2024 | Respectfully submitted, |
| 2 | | PATRICK D. ROBBINS (CABN 152288) |
| 3 | | Attorney for the United States |
| | | Acting Under Authority Conferred by 28 |
| 4 | | U.S.C. § 515 |

DATED: March 30, 2024

Respectfully submitted,

PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515


/s/ Zack Abrahamson

ROBERT S. LEACH
ADAM A. REEVES
KRISTINA GREEN
ZACHARY G.F. ABRAHAMSON
Assistant United States Attorneys