1   Jonathan M. Baum (SBN: 303469)
   **Steptoe LLP**
2   One Market Street
   Steuart Tower, Suite 1070
3   San Francisco, CA 94105
   Telephone: (510) 735-4558
4   jbaum@steptoe.com
5
   Reid H. Weingarten
6   Brian M. Heberlig
   Michelle L. Levin
7   Nicholas P. Silverman
   Drew C. Harris
8   (Admitted Pro Hac Vice)
   **Steptoe LLP**
9
10   1114 Avenue of the Americas
   New York, NY 10036
11   Telephone: (212) 506-3900

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

12

13                    **UNITED STATES DISTRICT COURT**

14                  **NORTHERN DISTRICT OF CALIFORNIA**

15

16   UNITED STATES OF AMERICA,                 Case No.: 3:18-cr-00577-CRB
                                                Judge: Hon. Charles Breyer
17                   Plaintiff,
                                                **DEFENDANT MICHAEL RICHARD**
18          vs.                                 **LYNCH'S OPPOSITION TO THE**
                                                **GOVERNMENT'S MOTION *IN LIMINE* TO**
19   MICHAEL RICHARD LYNCH and                  **ADMIT SETTLEMENT AGREEMENT**
                                                **WITH BRENT HOGENSON**
20   STEPHEN KEITH CHAMBERLAIN,
                                                **(Supplement to Lynch MIL No. 5)**
21                   Defendants.
                                                Court: Courtroom 6 – 17th Floor
22                                              Date Filed: March 31, 2024
                                                Trial Date: March 18, 2024
23

24

25

26

27

28

I.      **Introduction**

Defendant Michael Richard Lynch respectfully submits this memorandum in response to the government's motion *in limine* to admit evidence of Autonomy's settlement of Brent Hogenson's wrongful termination claim (the "Hogenson settlement"), *see* ECF No. 405, and in further support of his motion *in limine* to preclude the settlement, *see* ECF No. 291 (D. MIL No. 5) at 6-8.  In response to Dr. Lynch's motion, the government stated that it "does not intend to offer evidence of the settlement agreement[] with Hogenson," reserving the right to do so only "depending on the cross-examination of the witness."  ECF No. 311 at 9 n.1.  That waiver should end of the matter.

On March 20, 2024, following briefing from the parties, the Court held that evidence of a settlement agreement between Autonomy and Reena Prasad was inadmissible under Federal Rule of Evidence 408, *see* Tr. 801-04.  In so ruling, the Court rejected the government's arguments that the settlement was evidence of obstruction of a criminal proceeding under Rule 408(b) and that the defense had opened the door during opening statements when it responded to the government's description of the events leading to Mr. Hogenson's termination.  Undeterred, the government now argues that the Hogenson settlement is evidence of obstruction of a criminal proceeding and that the defense opening opened the door to its admission.  The Court's ruling as to the Prasad settlement applies equally to the Hogenson settlement, and evidence of the Hogenson settlement should accordingly be precluded under Rule 408.  Even if the Court's ruling somehow did not apply to the Hogenson settlement, evidence of that settlement should be precluded under Rules 408 and 403.

II.     **Factual and Procedural Background**

A.      **Mr. Hogenson's Termination and Settlement**

In July 2010, Mr. Hogenson was terminated from Autonomy after an internal investigation conducted by Joel Scott, then Autonomy General Counsel for the Americas, uncovered serious misconduct by Mr. Hogenson.  Mr. Scott's investigation and his decision to fire Mr. Hogenson were separate from Mr. Hogenson's purported whistleblower allegations concerning Autonomy's accounting practices.

After Mr. Hogenson was terminated, he threatened to sue Autonomy for wrongful termination.[1]  Rather than litigate the claim, Autonomy (not to be confused with Dr. Lynch, who opposed any payout) mitigated its litigation risk by negotiating a settlement with Mr. Hogenson, *see* ECF No. 405-8, Declaration of Zachary Abrahamson, Ex. 13059, and Mr. Hogenson received a sum of $750,000.  That sum took into account the potential cost of litigating a multi-million-dollar federal lawsuit and was roughly calculated based on 18 months of salary plus bonus and unvested stock options Mr. Hogenson held at the time of his termination.  *See* Koeleveld Declaration in Support of Opposition to Government MIL ("Koeleveld Decl."), Ex. 1 (Trial Exhibit 7994).  Notably, Dr. Lynch argued against settlement, but was ultimately overruled by Autonomy's Board.  *See* Koeleveld Decl., Ex. 2 (Witness Statement of Robert Webb), ¶ 18.

The Settlement Agreement includes standard terms regarding releases of claims by both parties and confidentiality, and both parties "denie[d] the other's allegations that they engaged in any improper or illegal conduct."  *See* ECF No. 405-8 at 1.  Indeed, the very same language the government identifies as obstructive—including a requirement that Mr. Hogenson notify Autonomy if he is required "by law or court order" to disclose "internal information related to Interwoven and/or Autonomy" and a requirement that he "cooperate in any effort [by Autonomy] to object to or quash" the relevant demand—is included in HP settlements of employment claims.  *See* Koeleveld Decl., Ex. 3.  The notice requirement is a custom in the industry, not proof of obstructive intent, and any argument to the contrary would be grossly misleading.

Notably, the Hogenson settlement, which was entered into *after* Mr. Hogenson had reached out to the FSA and the SEC, does not require Mr. Hogenson to withdraw or amend his claims.  Nor does the requirement that Mr. Hogenson not "disparage, defame or slander[]" Autonomy prevent Mr. Hogenson from telling the truth about Autonomy's accounting practices.  ECF No. 405-8 at 4.  Mr. Hogenson was also required to sign a declaration as part of the

---

[1] Apparently positioning himself for a payout from the start, Mr. Hogenson closed his very first email to Dr. Lynch by saying, "I consider this a qualifying disclosure made in good faith based upon the evidence currently available to me."  ECF 405-2 at 3.

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO GOVERNMENT MOTION *IN LIMINE* TO ADMIT HOGENSON SETTLEMENT AGREEMENT – 3:18-CR-00577-CRB

2

settlement, *see* ECF No. 405-9, but the statements in that document were true, and the government does not deny their truth.  Specifically, Mr. Hogenson affirmed in the declaration that he was not schooled in IFRS and that he did not have visibility, from his position as a regional finance executive, into the complete books and records of the entire company or the review conducted by Deloitte of those books and records.  There is no indication that Mr. Hogenson would say, if asked today, that he perjured himself by signing the declaration.

**B.      The Court's Ruling that Ms. Prasad's Settlement Agreement Was Inadmissible**

At the beginning of the trial day on March 20, 2024, the Court ruled that Autonomy's settlement with Ms. Prasad was "inadmissible under [Rule] 408.  It's prohibited." Tr. at 801:14–15.  In reaching this conclusion, the Court rejected the government's argument that the settlement constituted evidence of "an effort to obstruct a criminal investigation or prosecution," finding that the government had not met its burden to establish obstructive behavior and that the provisions in the settlement agreement about responding to process did not amount to an attempt to obstruct justice.  *Id*. at 801:20–802:9.  The Court further ruled that evidence of the agreement was "collateral." *Id*. at 802:11.  While the fact that Ms. Prasad "was fired is relevant," *id*. at 802:16, the fact "that she was paid money in exchange for a release of claims . . . falls within 408(a)" and is therefore "a prohibitive use."  *Id*. at 803:4–5.  The Court left open the extent to which challenging Ms. Prasad's belief that she was wrongfully terminated would open the door to evidence of her threat to sue for wrongful termination and the settlement of that claim, *id*. at 803:21–804:15, but the settlement agreement was otherwise not admissible.

**III.    Evidence of Mr. Hogenson's Settlement Should be Precluded**

As it did with evidence of Ms. Prasad's settlement agreement, the Court should preclude evidence of Mr. Hogenson's settlement agreement.  Evidence of Mr. Hogenson's threat to sue for wrongful termination and the settlement of that claim is inadmissible under Federal Rule of Evidence 408.  Moreover, the settlement is not subject to the exception under Rule 408 for attempts to obstruct a criminal investigation or prosecution.  Finally, even if it were admissible,

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO GOVERNMENT MOTION *IN LIMINE* TO ADMIT HOGENSON SETTLEMENT AGREEMENT – 3:18-CR-00577-CRB

3

1   and it is not, evidence of the threatened lawsuit and settlement is more prejudicial than probative

2   and should be precluded under Rule 403.

3          Under Federal Rule of Evidence 408, evidence of "furnishing, promising, or offering—or

4   accepting, promising to accept, or offering to accept—a valuable consideration in compromising

5   or attempting to compromise the claim" "is not admissible—on behalf of any party—either to

6   prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408.  Rule 408 thus

7   bars evidence from settlement negotiations "when offered to prove liability for, invalidity of, or

8   amount of a claim that was disputed." *Rhoades v. Avon. Prod., Inc*., 504 F.3d 1151, 1160 (9th

9   Cir. 2007) (citing Fed. R. Evid. 408); *see also Cassino v. Reichhold Chem., Inc*., 817 F.2d 1338,

10  1342 (9th Cir. 1987).

11         Admitting evidence that Autonomy entered into a settlement agreement with Mr.

12  Hogenson after he threatened legal action in response to his allegedly wrongful termination is

13  clearly barred by Rule 408.  The implication that Autonomy essentially admitted that it had

14  retaliated against Mr. Hogenson for being a whistleblower by entering into a settlement

15  agreement falls directly within the ambit of evidence that Rule 408 is intended to preclude. *See*,

16  *e.g*., *Cassino*, 817 F.2d at 1342 (offers to settle employment rights disputes after an adverse

17  employment action are generally "inadmissible to prove liability pursuant to Rule 408"); *Sterling*

18  *Sav. Bank v. Citadel Dev. Co., Inc.*, 656 F. Supp. 2d 1248, 1256 (D. Or. 2009) (purpose of Rule

19  408 is to "encourage the settlement of disputes").

20         That Mr. Hogenson received a seemingly large settlement amount compared to his base

21  salary does not change the Rule 408 analysis.  Indeed, evaluating the settlement amount as a

22  proxy for liability is precisely the kind of consideration that is prohibited by Rule 408. *See*

23  *Green v. Baca*, 226 F.R.D. 624, 641 (C.D. Cal. 2005) (excluding evidence of prior settlement

24  amounts because plaintiff sought to use them to prove the defendant's deliberate indifference and

25  was therefore "offering the evidence to prove liability"); *Quad/Graphics, Inc. v. Fass*, 724 F.2d

26  1230 (7th Cir. 1983) (affirming exclusion of settlement evidence and holding that an Advisory

27  Committee Note about the "amount of [an] offer" was "not intended to create an exception to the

28  rule").  Yet the government encourages this improper use of a settlement sum to imply

---

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO GOVERNMENT MOTION *IN LIMINE* TO
ADMIT HOGENSON SETTLEMENT AGREEMENT – 3:18-CR-00577-CRB

4

wrongdoing, as evidenced by its emphasis on the fact that the settlement payment was "more than twice [Mr. Hogenson's] annual compensation."  ECF No. 405 at 1.  Repeatedly highlighting the amount of the settlement sum does not exempt the Hogenson settlement from the strictures of Rule 408.

Moreover, comparing the amount with Mr. Hogenson's $250,000 annual salary ignores the fact that Mr. Hogenson—who demanded over $1.1 million to settle his claim—was also entitled to a bonus and that he had unvested stock options at the time of his termination worth approximately $250,000.  And it ignores that the settlement amount was calculated based on 18-months of employment.  *See* Koeleveld Decl., Ex. 1.  In addition, continued litigation risked not only Autonomy's own attorney's fees but also Mr. Hogenson's, not to mention other types of damages, making a potential loss far more expensive than the settlement amount.  For these reasons, Rule 408 does not have an exception for the size of a settlement amount; compromise offers and negotiations are precluded, full stop.  Accordingly, evidence of the Hogenson settlement—like Ms. Prasad's settlement agreement—is squarely subject to Rule 408, and therefore must be precluded.

Nor is the Hogenson settlement admissible under the exception to Rule 408 to prove "an effort to obstruct a criminal investigation or prosecution."  *See* Fed. R. Evid. 408(b).  Heeding the Court's determination in the context of the Prasad ruling that the settlement terms governing process do not support admitting the settlement under this exception, the government now frames the Hogenson settlement as an attempt by Autonomy to neutralize the claims that Mr. Hogenson raised to the FSA and SEC regarding alleged accounting improprieties, asserting that "reasonable jurors could infer" that "Dr. Lynch and Autonomy sought to obstruct investigations into Autonomy by paying off Brent Hogenson."  ECF No. 405 at 1-2.  No such inference should be permitted.

First and foremost, the government conflates Autonomy with Dr. Lynch.  Dr. Lynch was opposed to the settlement with Mr. Hogenson, but Dr. Lynch was overruled by the Board of Directors, and Autonomy ultimately determined to settle Mr. Hogenson's claim.  *See* Koeleveld

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO GOVERNMENT MOTION *IN LIMINE* TO ADMIT HOGENSON SETTLEMENT AGREEMENT – 3:18-CR-00577-CRB

5

Decl., Ex. 2 at ¶ 18.  It accordingly cannot be said that Dr. Lynch sought to obstruct the
investigation into Autonomy by paying off Mr. Hogenson.

Furthermore, the government's argument rests on a mischaracterization of the settlement,
as is evident from the terms of the settlement itself.  The settlement states that the agreement
concerns a "dispute" between Autonomy and Mr. Hogenson "in that Hogenson alleges that
Interwoven wrongfully terminated the employment of Hogenson, and in that Interwoven alleges
that Hogenson breached his employment agreement and violated Company policies."  ECF No.
405-8 at 2.  The settlement does not contain any restraints on Mr. Hogenson's communications
with the FSA or the SEC, and the settlement's use of standard non-disparagement and
confidentiality clauses cannot be construed as obstructing a criminal investigation or prosecution.
As with the notice clause, HP uses similar language in its own settlement agreements.  *See*
Koeleveld Decl., Ex. 3, at ¶ 7 ("7. No Disparagement; No Return to Employment.  I will not at
any time disparage HP or its products, services, or business practices or make any unfair or
misleading statements regarding same."); *id*. at ¶ 8 ("8. Cooperation.  I agree to cooperate with
and assist HP and its legal counsel in connection with any current or future litigation,
investigation or other legal matters involving HP. . . .").

The declaration serves no obstructive purpose, either:  it merely requires Mr. Hogenson
to affirm what is undeniably true, that he is not an expert in IFRS accounting principles and that
he did not have full insight into Autonomy's financial records or Deloitte's review of those
records.  The declaration can only have served a "neutralizing" function, as the government
suggests, if Mr. Hogenson were determined to overstate—falsely—his knowledge of IFRS,
Autonomy's financials, or Deloitte's role.  But there is no such indication that the declaration is
inconsistent with the truth, and it is difficult to see how a statement of truth would obstruct any
criminal investigation.[2]

---

[2] The indictment's allegation that "paying off persons who raised complaints about or openly
criticized Autonomy's financial practices" was a means and method of the conspiracy, ECF No.
21 (Superseding Indictment), ¶ 22(i), does not alter the analysis.  The rules of evidence control
the admissibility of evidence, not the indictment's allegations.

The government's reliance on *United States v. Technic Servs., Inc.*, 314 F.3d 1031 (9th Cir. 2002), is misplaced.  In that case, the Ninth Circuit affirmed the admission of a letter sent by an asbestos company—then the target of an active investigation by the Environmental Protection Agency ("EPA")—to the EPA, asserting that the company was in compliance with regulatory requirements.  *Id*. at 1036.  The Ninth Circuit held that the letter was admissible in a later proceeding against the asbestos company because it was offered to "prov[e] [the asbestos company's] obstruction of the EPA investigation."  *Id*. at 1045.  Here, the settlement agreement between Mr. Hogenson and Autonomy to resolve an employment dispute is distinguishable from a letter sent by a target of an active investigation to the investigatory body itself, falsely asserting that it is in compliance with regulations.  Not only was there no criminal investigation at the time of the Hogenson settlement, but, unlike the letter in *Technic Servs*., the settlement occurred *after* Mr. Hogenson had written to the FSA and SEC and did nothing to block investigations by those regulatory bodies.  Accordingly, Rule 408(b) does not apply.

Finally, even if the settlement were admissible under Rule 408 (and it is not), admitting evidence of Mr. Hogenson's threatened lawsuit and Autonomy's decision to settle would lead to a sideshow around the amount of the payout and its justifications, while ignoring the myriad reasons that inform a settlement agreement, such as an effort to mitigate damages in response to potential litigation risk.  That litigation risk was obviously far higher with Mr. Hogenson, whose $250,000 salary, not including his bonus, was substantially higher than Ms. Prasad's salary, and whose stock options created another area of substantial damages exposure.  Accordingly, admitting evidence of the settlement sum—$750,000—would provide minimal probative value while unduly prejudicing Dr. Lynch, as the jury would likely infer that a large payout reflects a large degree of liability.[3]

---

[3] Indeed, the government encouraged the jury to draw this conclusion—which is prohibited by Rule 408—in the *Hussain* trial.  *See Hussain* Tr. at 5782:13–16 ("Ladies and gentlemen, you do not pay that kind of money to someone who has made false accusations.  Okay?  You know that that didn't happen.  This $750,000 was hush money to Brent Hogenson.").

1      Because Mr. Hogenson's settlement is precluded by Rule 408 and is unduly prejudicial

2 under Rule 403, this Court should preclude evidence of Mr. Hogenson's settlement.

3 **IV.     The Fact that Evidence of Mr. Hogenson's Termination and the Circumstances**

4 **Surrounding It Will Be Admitted Does Not Open the Door to Evidence of the Settlement**

5 **Agreement**

6      While Dr. Lynch recognizes the Court has ruled over his objection that evidence of Mr.

7 Hogenson's termination is admissible, questioning Mr. Hogenson about the events leading up to

8 his termination, including the internal investigation that uncovered evidence of his misconduct

9 and violations of internal Autonomy policies, does not open the door to evidence of Mr.

10 Hogenson's threatened lawsuit and the settlement of that lawsuit.  Mr. Hogenson will testify that

11 he believes he was fired in retaliation for being a whistleblower.  In response, Dr. Lynch should

12 be permitted to ask Mr. Hogenson about instances of misconduct and violations of company

13 policies that were uncovered by Mr. Scott's investigation and that Mr. Scott identified as reasons

14 to fire Mr. Hogenson.  Those questions do not open the door to a separate topic:  Mr. Hogenson's

15 threatened wrongful termination lawsuit and the settlement of that lawsuit.  Questions about the

16 reasons for Mr. Hogenson's termination—a backwards-looking inquiry—are separate and

17 distinct from his subsequent litigation threats, and the former does not invite questions about the

18 latter.  Pointing out reasons for Mr. Hogenson's termination other than retaliation, in defense to

19 the government's claim that Mr. Hogenson was retaliated against because he blew the whistle on

20 Autonomy's accounting practices, is a logical and necessary response to that allegation.  But Mr.

21 Hogenson's later decision to bring a wrongful termination claim is a distinct issue.

22      The government also asserts that the defense's remark during its opening statement, that

23 the jury would be presented with all the evidence necessary to evaluate Mr. Hogenson's

24 retaliation claim—i.e., "it's all going to be before you"—opens the door to evidence of the

25 Hogenson settlement.  ECF No. 405 at 4, 6.  This claim strains credulity.  "It's all going to be

26 before you" plainly referred to the events surrounding (i) Mr. Hogenson's purported

27 whistleblowing activities, including the substance of those activities and how Autonomy

28 responded to them, and (ii) the payroll fraud in Mr. Hogenson's finance division at Interwoven,

---

DEFENDANT MICHAEL RICHARD LYNCH'S OPPOSITION TO GOVERNMENT MOTION *IN LIMINE* TO
ADMIT HOGENSON SETTLEMENT AGREEMENT – 3:18-CR-00577-CRB

the investigation of which led to the discovery of serious misconduct by Mr. Hogenson himself. The defense should be permitted to establish that it was the latter misconduct by Hogenson—and not Hogenson's purported whistleblowing activities—that led to his termination, as Mr. Scott has previously made clear.  Indeed, Mr. Scott was not privy to the details of the purported whistleblowing activities when he conducted the investigation of the finance division and discovered Mr. Hogenson's misconduct.  Mr. Weingarten's general reference to these matters, suggesting that there is another side to the story told by the government in its opening, did not open the door to evidence of Mr. Hogenson's wrongful termination lawsuit.  Dr. Lynch does not intend to suggest that Mr. Hogenson did not believe he was wrongfully terminated because the jury is not hearing evidence of his pursuit of a wrongful termination claim.  Absent that argument, merely asserting a defense to the claim here that Mr. Hogenson was fired for improper reasons does not make the settlement agreement admissible.

## V.    Conclusion

The Court correctly precluded evidence of Ms. Prasad's settlement under Rule 408.  That ruling applies with equal force to evidence of Mr. Hogenson's settlement agreement. Accordingly, the government's motion to admit evidence of the Hogenson settlement agreement should be denied.

1    Dated: March 31, 2024

2                                          Respectfully submitted,

3

4                                          By:  _/s/ Celeste L.M. Koeleveld__
                                           Celeste L.M. Koeleveld

5

6                                          Christopher J. Morvillo
                                           Celeste L.M. Koeleveld

7                                          Daniel S. Silver
                                           (Admitted Pro Hac Vice)

8                                          **CLIFFORD CHANCE US LLP**
                                           31 West 52nd Street

9                                          New York, NY 10019
                                           Telephone:  (212) 878-3437

10

11                                         Jonathan M. Baum (SBN: 303469)
                                           **STEPTOE LLP**

12                                         One Market Street
                                           Steuart Tower, Suite 1070

13                                         San Francisco, CA  94105
                                           Telephone:  (510) 735-4558

14

15                                         Reid H. Weingarten
                                           Brian M. Heberlig

16                                         Michelle L. Levin
                                           Nicholas P. Silverman

17                                         Drew C. Harris
                                           (Admitted Pro Hac Vice)

18                                         **STEPTOE LLP**
                                           1114 Avenue of the Americas

19                                         New York, NY 10036
                                           Telephone:  (212) 506-3900

20

21                                         *Attorneys for Defendant*
                                           *Michael Richard Lynch*

22

23

24

25

26

27

28