**MORGAN LEWIS & BOCKIUS LLP**
SUSAN D. RESLEY, Bar No. 161808
MADELEINE AYER, Bar No. 353257
susan.resley@morganlewis.com
madeleine.ayer@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:   (415) 442-1000
Fax:   (415) 442-1001

**MORGAN LEWIS & BOCKIUS LLP**
MARTHA B. STOLLEY, *Admitted Pro Hac Vice*
martha.stolley@morganlewis.com
101 Park Avenue
New York, NY 10178
Tel:   (212) 309-6858
Fax:   (212) 309-6001

**WILLKIE FARR & GALLAGHER LLP**
MICHAEL LI-MING WONG, Bar No. 194130
mlwong@willkie.com
333 Bush Street
San Francisco, CA 94104
Tel:   (415) 858-7400
Fax:   (415) 858-7599

*Attorneys for Hewlett Packard, Inc. and Hewlett Packard Enterprise*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>　　　　　Defendants. | Case No. 3:18-cr-577-CRB<br><br>NON-PARTIES HEWLETT PACKARD, INC. AND HEWLETT PACKARD ENTERPRISE'S REPLY IN FURTHER SUPPORT OF MOTION TO QUASH SUBPOENA ISSUED PURSUANT TO RULE 17(c)<br><br>Date:　　April 8, 2024<br>Time:　　4 p.m.<br>Place:　　Courtroom 6, 17th Floor<br>Judge:　　Hon. Charles R. Breyer |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN FURTHER SUPPORT OF MOTION TO
QUASH SUBPOENA
Case No. 3:18-cr-577 (CRB)

# **TABLE OF CONTENTS**

Page

I. SUMMARY OF ARGUMENT ................................................................................................ 1

II. ARGUMENT .......................................................................................................................... 2

    A. Lynch Seeks To Use The Rule 17 Subpoena Process For An Improper Purpose ......... 2

    B. Lynch Fails To Establish the *Nixon* Factors. ................................................................ 4

        1. The Subpoena Is Not Sufficiently Specific. ............................................................ 4

        2. The Requested Documents Are Not Admissible. ................................................... 6

        3. The Requested Documents Are Not Relevant. ....................................................... 7

    C. The Subpoena Improperly Requests Privileged Documents ......................................... 8

        1. The Requested Documents Are Privileged. ............................................................ 8

        2. HP Did Not Waive Privilege ................................................................................... 9

            a. HP Did Not Waive Privilege By Disclosing Documents To EY. .................... 10

            b. Yelland's Testimony In *Hussain* Trial Did Not Waive Privilege. .................. 11

            c. There Was No Waiver Through General References In Documents .............. 12

III. CONCLUSION ................................................................................................................... 12

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

i

REPLY IN FURTHER SUPPORT OF MOTION TO
QUASH SUBPOENA
Case No. 3:18-cr-577 (CRB)

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Genentech, Inc. v. Insmed Inc.*,
   234 F.R.D. 667 (N.D. Cal. 2006) .................................................................................................. 11

*In re Grand Jury Investigation*,
   974 F.2d 1068 (9th Cir. 1992) ....................................................................................................... 9

*In re Oracle Sec. Litig.*,
   No. C-01-0988 MJJ JCS, 2005 WL 6768164 (N.D. Cal. Aug. 5, 2005) ................................... 11

*Laub v. Horbaczewski*,
   No. CV 17-6210-JAK (KSX), 2020 WL 7978227 (C.D. Cal. Nov. 17, 2020) ........................... 4

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
   229 F.R.D. 441 (S.D.N.Y. 2004) ................................................................................................ 11

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
   No. CV066863DOCRNBX, 2009 WL 10673943 (C.D. Cal. July 8, 2009) ............................. 10

*Pac. Gas & Elec. Co.*,
   2016 U.S. Dist. LEXIS 40587 ....................................................................................................... 1

*S.E.C. v. Roberts*,
   254 F.R.D. 371 (N.D. Cal. 2008) ................................................................................................ 11

*S.E.C. v. Schroeder*,
   No. C07-03798 JW HRL, 2009 WL 1125579 (N.D. Cal. Apr. 27, 2009), *objections overruled*,
   No. C 07-03798 JW, 2009 WL 1635202 (N.D. Cal. June 10, 2009) ................................. 10, 11

*Samuels v. Mitchell*,
   155 F.R.D. 195 (N.D. Cal. 1994) ................................................................................................ 11

*Todd v. STAAR Surgical Co.*,
   No. CV-14-05263 MWF (RZX), 2015 WL 13388227 (C.D. Cal. Aug. 21, 2015) ................... 9

*Transamerica Computer Co., Inc. v. Int'l Bus. Machs. Corp.*,
   573 F.2d 646 (9th Cir.1978) ....................................................................................................... 10

*United States v. Aguilar*,
   No. CR 07-00030 SBA, 2008 WL 3182029 (N.D. Cal. Aug. 4, 2008) ..................................... 6

*United States v. Chevron Corp.*,
   1996 WL 264769 (N.D. Cal. Mar. 13,1996) ............................................................................... 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

REPLY IN FURTHER SUPPORT OF MOTION TO
QUASH SUBPOENA
Case No. 3:18-cr-577 (CRB)

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015) ................................................................................................ 9

*United States v. Collins*,
  No. 11-CR-00471-DLJ PSG, 2013 WL 1089908 (N.D. Cal. Mar. 15, 2013) ........................ 5

*United States v. Hussain*,
  No. 16-cr-462, 2018 WL 1091083 (N.D. Cal. Feb. 28, 2018) ....................................... passim

*United States v. Johnson*,
  No. CR 94-0048 SBA, 2008 WL 62281 (N.D. Cal. Jan. 4, 2008) ........................................... 6

*United States v. Lee*,
  No. 5:06 CR 0424 JW, 2009 WL 724042 (N.D. Cal. Mar. 18, 2009) ..................................... 6

*United States v. Nixon*
  418 U.S. 683 (1974) ................................................................................................... passim

*United States v. Nosal*,
  No. CR-08-0237 EMC, 2013 WL 11327121 (N.D. Cal. Mar. 29, 2013) ............................... 5

*United States v. Reed*,
  726 F.2d 570 (9th Cir. 1984) ................................................................................................ 5

*United States v. Reyes*,
  239 F.R.D. 591 (N.D. Cal. 2006) ................................................................................. 5, 6, 9

*United States v. Sager*,
  227 F.3d 1138 (9th Cir. 2000) ........................................................................................... 7, 8

*United States v. Salsedo*,
  607 F.2d 318 (9th Cir. 1979) .............................................................................................. 11

*United States v. Skylar Ariel Phoenix*,
  No. 5:14-CR-00318-LHK, 2015 WL 6094882 (N.D. Cal. Oct. 16, 2015) .............................. 6

*United States v. Villa*,
  503 F. App'x. 487 (9th Cir. 2012) ........................................................................................ 2

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

NOTICE OF MOTION AND MOTION TO QUASH
SUBPOENA; MPA ISO MOTION
Case No. 3:18-cr-577 (CRB)

## I.  SUMMARY OF ARGUMENT

Defendant Michael Lynch's Opposition demonstrates exactly why his Rule 17(c) subpoena (the "Subpoena"), issued to non-parties Hewlett-Packard, Inc. and Hewlett-Packard Enterprise (collectively, "HP"), should be quashed. His sweeping demand for "*all* records and communications…relating to the bases for the restatement of Autonomy Systems Limited's ("ASL") accounts and the filing of ASL's 2011 accounts (collectively, the "ASL Restatement")" is a textbook fishing expedition. *See Pac. Gas & Elec. Co.*, 2016 U.S. Dist. LEXIS 40587, at *16 (quashing requests for "complete personnel files" of named employees, "all payments to" those employees, and "all records and communications" regarding the retention of counsel for those employees). Recognizing his failure to meet the well-settled requirements of specificity, admissibility, and relevance prescribed by *United States v. Nixon* 418 U.S. 683 (1974), Lynch chooses another path in his Opposition: deflection.

First, he suggests that the Subpoena is not as broad as expressly written, which is inaccurate and essentially a concession that the Subpoena is overly expansive. He also claims that it seeks limited information regarding one discrete "corporate event." That argument is disingenuous at best. Indeed, the "one corporate event"—a massive restatement—took years and significant resources to fully investigate and accurately calculate. Further, at no time has Lynch offered to narrow or modify the Subpoena's sweeping demand for "all" records and communications.

Second, and far worse, Lynch baselessly disparages Christopher Yelland ("Yelland") by mischaracterizing his prior testimony. In the *Hussain* criminal action and in the UK civil proceeding, Yelland testified truthfully that Morgan, Lewis & Bockius' ("Morgan Lewis") and PricewaterhouseCoopers' ("PwC") investigation materials were relevant to the ASL Restatement. Those investigation materials—namely, the PwC Interim Report and counsel's investigative interviews (many of which post-date the January 30, 2014 ASL Restatement)—have been produced in redacted form to the government, who presumably then produced them to Lynch (and his co-defendant, Stephen Chamberlain). Supplemental Declaration of Susan D. Resley ("Supp. Resley Decl.") ¶ 2, Exh. A (transmittal letters).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN FURTHER SUPPORT OF MOTION TO QUASH SUBPOENA
Case No. 3:18-cr-577 (CRB)

Third, he omits a key sentence in his excerpting of the March 12, 2024 FBI Form 302 regarding Yelland, which Lynch cites in support of his insinuation that Yelland was "fed" PwC's and Morgan Lewis' opinions while preparing the ASL Restatement. Opp. at 3. In quoting a paragraph from the Form 302, Lynch left out the first sentence, which states, "When YELLAND reviewed transactions for the *rebasing* exercise he started in the subsidiary books of sales to look at the initial transaction." Dkt. 407-2 (emphasis added). The rebasing exercise (*not* the restatement process) began in June of 2012, 18 months before the January 2014 ASL Restatement.

In any event, with the exception of the "summary reports prepared by PwC about certain transactions" referenced in the Form 302 (privileged documents that were created *after* the ASL Restatement), HP has produced all non-privileged documents on which Yelland relied in preparing the ASL Restatement—in connection with both the US criminal investigation and the UK civil proceeding. Supp. Resley Decl. ¶ 2. Not a single document that Lynch cites in his Opposition suggests that HP or Yelland presented a "false narrative;" nor do those materials demonstrate any privilege waiver.

Lynch seeks far more than the "latitude" that the Court referenced in the *Hussain* case. He demands carte blanche access to the records and files of HP, including privileged communications with its lawyers and its consultants on the remote chance of finding *something* that *may* be of *some* relevance. But Rule 17(c) was "not intended as a discovery device, or to allow a blind fishing expedition seeking unknown evidence." *See United States v. Villa,* 503 F. App'x. 487, 489 (9th Cir. 2012) (internal quotations omitted). That is precisely why the Subpoena should be quashed.

## II.   ARGUMENT

### A. Lynch Seeks To Use The Rule 17 Subpoena Process For An Improper Purpose

It is undisputed that, prior to commencing the lengthy and comprehensive restatement, Yelland led the "rebasing process" beginning in June 2012, shortly after HP learned of Lynch's and Autonomy's fraudulent accounting practices. During the *Hussain* trial, Yelland explained that the purpose of the "rebasing" was to "take a preliminary view on the large deals [in 2010 and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

REPLY IN FURTHER SUPPORT OF MOTION TO
QUASH SUBPOENA
Case No. 3:18-cr-577 (CRB)

2011]…[and] to understand … the real economic substance of the Autonomy business…" *Hussain* Tr. at 5037:15-23 (Apr. 16, 2018). Months into that process, he and his team recognized that, "because of the volume of issues we'd found in the rebasing exercise, which at that point not all had been fully investigated, but some of the deals that had been investigated further had confirmed to me that there were errors in previous years." *Id.* at 5042:4-8. Yelland and his team worked through myriad documents to complete and file the ASL Restatement on January 30, 2014. By this point, HP has provided thousands of *non-privileged* documents supporting the ASL Restatement to EY, the government, and Lynch (including the so-called "Trolley Documents"). Those productions included financial, accounting and deal-related documents, internal HP workpapers, interview memoranda, and PwC's Interim Report setting out its investigative findings. Dkt. 407-6; Suppl. Resley Decl. ¶ 2, Exh. A. The record also is clear that Yelland has testified consistently as to the roles of his team, counsel, and PwC.

Lynch believes he is entitled to "all" materials based on two documents that he assumes show that the ASL Restatement was lawyer-driven and the result of HP personnel copying and pasting part of a privileged document into a document provided to EY, which produced it pursuant to an MLAT request. *See* Tr. 18:10–22 (Feb. 21, 2024); Dkt. 293-8; Dkt. 293-9.[1] According to Lynch, this "cut and paste" privileged communication and an excerpt from the Yelland Form 302 entitle him to trawl through HP's privileged documents. His apparent hope is to find something—anything—to support his baseless theory that Yelland's opinions were shaped by Morgan Lewis' and PwC's investigation to "justify HP's 2012 accusations and support civil and criminal investigation." Opp. at 3–4. That argument is flawed for two reasons (1) the ASL Restatement occurred nearly 15 months after HP's November 2012 announcement of its write-down; and (2) the Form 302 (in its entirety here) underscores that Yelland relied on non-privileged documents that have already been produced.

> When YELLAND reviewed transactions for the rebasing exercise he started in the subsidiary books of sales to look at the initial transaction. Then, YELLAND looked at the

---

[1] HP does not know how Lynch obtained the privileged document at Dkt. 293-8. It does not bear the Bates numbering format that HP utilized in either the government investigation or the UK civil proceeding. Indeed, that document bears no Bates number at all.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

REPLY IN FURTHER SUPPORT OF MOTION TO
QUASH SUBPOENA
Case No. 3:18-cr-577 (CRB)

impact of the transaction via the transfer pricing on AUTONOMY systems limited [sic]. When looking at individual transactions YELLAND looked at a number of evidence sources including *contracts, invoices, cash tracing, PWC's forensic accounting investigation, and the summaries of interviews conducted by legal investigators* with certain members of the AUTONOMY staff and some of the resellers. Within PWC's forensic accounting investigation support YELLAND reviewed evidence the PWC team had found in addition to summary reports prepared by PWC about certain transactions. Dkt. 407-2 (emphasis added).[2]

Lynch's assertions that Yelland "conceded" that he "relied on PwC and Morgan Lewis' investigation, the arguments and opinions of which were fed to him and Anderson while preparing the ASL Restatement," Opp. at 3, are therefore unfounded. Actually, Yelland stated that he "looked at a number of evidence sources," including interview summaries and some documents from PwC's investigation. Dkt. 407-2. HP already has produced those interview summaries to Lynch. And certainly the fact that Yelland "looked at" the interview summaries and one of several sources of information is a far cry from "rel[ying]" on documents that "were fed to him." *Compare* Dkt. 407-2 *with* Opp. at 3. This is merely another attempt by Lynch to play fast and loose with the facts of this case.

More importantly, Lynch's assertions defy the purpose of a Rule 17 subpoena. *See Laub v. Horbaczewski*, No. CV 17-6210-JAK (KSX), 2020 WL 7978227, at *8 (C.D. Cal. Nov. 17, 2020) (ruling it "patently disproportional" to compel production of all Series C documents based on the slim possibility that one Series C document was relevant). If Lynch wants to impeach Yelland with supposedly inconsistent statements made in various proceedings and interviews, he can do so on cross examination without forcing HP to undertake a burdensome search for thousands of additional documents. Lynch's purported basis for his unduly broad requests—to attack Yelland—are, therefore, subterfuge and an effort to side-step the *Nixon* factors.

**B. Lynch Fails To Establish the *Nixon* Factors.**

In his Opposition, notwithstanding his repeated unfounded declarations, Lynch does not establish that the Subpoena (1) is sufficiently *specific*; (2) requests *admissible* evidence; and (3) seeks documents that are *relevant* to the crimes charged. *United States v. Nixon*, 418 U.S. 683,

---

[2] The "summary reports prepared by PwC" were prepared following the ASL restatement and pursuant to attorney-client privilege. Suppl. Resley Decl. ¶ 3.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

REPLY IN FURTHER SUPPORT OF MOTION TO
QUASH SUBPOENA
Case No. 3:18-cr-577 (CRB)

1 | 700 (1974). Accordingly, the Subpoena should be quashed.

### 1. The Subpoena Is Not Sufficiently Specific.

Lynch argues that he meets the specificity factor because the subpoena merely seeks "documents relevant to the bases of one single corporate decision," Opp. at 7, or "one discrete issue," and does not "seek all communications from hundreds of custodians or all documents authored by an employee." Opp. at 9–10. In so doing, he analogizes the Subpoena to certain requests sought in *United States v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006). However, he ignores the plain language of his overly broad Subpoena, which seeks *"[a]ll* records and communications between October 1, 2011 and January 31, 2014 relating to the bases of the restatement of Autonomy Systems Limited's ("ASL") 2010 accounts and the filing of ASL's 2011 accounts," including *all* documents and communications by Christopher Yelland, Antonia Anderson, and *all other HP employees, affiliates, advisors, and consultants*. Dkt. 391-1. His reliance on *Reyes* is, therefore, misplaced because the Court there found that requests for "all documents" relating to an investigation and a specified employee's involvement with the subject of that investigation were "enormous in scope" and not sufficiently specific, in that they sought "any and all information related" to the investigation "by a multi-million dollar company with thousands of employees." *Reyes*, 239 F.R.D. at 605–06. *See also United States v. Collins*, No. 11-CR-00471-DLJ PSG, 2013 WL 1089908, at *4 (N.D. Cal. Mar. 15, 2013) (quashing subpoena requesting "all documents and communications relating to [an event] that took place over several weeks at a company with thousands of employees in dozens if not hundreds of locations" and explaining that, "[w]hile the court is sympathetic that the defense may have no other means of accessing such information, this would appear to be exactly the type of fishing expedition that [the case law] require[s] this court to prevent") (internal quotations omitted).

The liberal rules of civil discovery do not apply here: Rule 17(c) subpoenas are "not intended to provide a means of discovery for criminal cases." *Nixon* , 418 U.S. at 698; *United States v. Nosal*, No. CR-08-0237 EMC, 2013 WL 11327121, at *11 (N.D. Cal. Mar. 29, 2013) ("[A] request of 'any and all' documents smacks of a discovery-type fishing expedition, not a request for evidentiary documents."); *United States v. Reed*, 726 F.2d 570 (9th Cir. 1984)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

REPLY IN FURTHER SUPPORT OF MOTION TO
QUASH SUBPOENA
Case No. 3:18-cr-577 (CRB)

1  (upholding quashal of subpoena that "did not request specific documents, but sought
2  entire…investigation files" because "Rule 17(c) was not intended as a discovery device, or to
3  allow a blind fishing expedition seeking unknown evidence") (internal quotation omitted).
4  Similarly unavailing is Lynch's claim that HP is demanding in its Motion that he have "precise
5  knowledge of the responsive documents' contents." Opp. at 8. HP is not demanding precision.
6  Rather, HP expects no more from Lynch than what the law requires from any Rule 17(c)
7  subpoena proponent—*i.e.*, some detail besides just the title of the document and speculation as to
8  its contents. *See, e.g.*, *United States v. Skylar Ariel Phoenix*, No. 5:14-CR-00318-LHK, 2015 WL
9  6094882, at *3 (N.D. Cal. Oct. 16, 2015) (quashing subpoena because it failed to identify "the
10 particular documents from particular custodians" defendant requested and instead sought "broad
11 categories of documents"); *United States v. Lee*, No. 5:06 CR 0424 JW, 2009 WL 724042, at *2-4
12 (N.D. Cal. Mar. 18, 2009) ("The mere hope that the documents sought will produce favorable
13 evidence is not sufficient. . . . A subpoena duces tecum should not require the recipient to
14 determine at his own peril what he is to do, without clear guidelines for compliance.") (internal
15 quotation omitted); *United States v. Aguilar*, No. CR 07-00030 SBA, 2008 WL 3182029, at *7
16 (N.D. Cal. Aug. 4, 2008) (concluding defendants' subpoena was a fishing expedition because,
17 although they "hope to undercover information…they are uncertain this will occur"); *United*
18 *States v. Johnson*, No. CR 94-0048 SBA, 2008 WL 62281 (N.D. Cal. Jan. 4, 2008) ("The
19 requirement of 'specificity' under Rule 17 is not satisfied if the defendant does not know what the
20 evidence consists of or what it will show."). Lynch has not met this mandate and the subpoena
21 should be quashed on this basis alone.

       **2.   The Requested Documents Are Not Admissible.**

23     The Subpoena fails the admissibility factor because it seeks documents that are
24 inadmissible hearsay. However, rather than address this fatal flaw, Lynch's Opposition focuses
25 exclusively on his argument that "trial subpoenas can seek impeachment evidence." Opp. at 7.
26 This misses the point and is premature. Asking a non-party to search its files for thousands of
27 documents so that they can be held *in camera* in the event they may or may not be used as
28 impeachment evidence places an undue burden on the Court and HP. This is very different from

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

REPLY IN FURTHER SUPPORT OF MOTION TO
QUASH SUBPOENA
Case No. 3:18-cr-577 (CRB)

*Reyes* (on which Lynch relies), where a limited number of interview memoranda for witnesses who were expected to testify were produced for *in camera* review. *Reyes,* 239 F.R.D. at 601. The *Reyes* Court ruled that it would provide a document to the defendant only if it became admissible as impeachment evidence during the trial, explaining that "[a] contrary rule would turn *Nixon* on its head—the Supreme Court requires the proponent of a subpoena to identify a basis for admitting evidence **before he receives them, not after**." *Id.* at *601 (emphasis added).

The materials sought in the Subpoena are presumptively hearsay, a fact that Lynch does not refute in his Opposition and, in fact, conceded to this Court on February 21, 2024. During the hearing that day, Lynch argued that the materials on which Yelland relied—"interviews of employees, work product, and other reports he got from counsel who were conducting the legal investigation"—were "pure hearsay." Tr. 11:8–12 (Feb. 21, 2024). He cannot have it both ways.

Moreover, based on the Court's prior rulings regarding Yelland's and Anderson's direct testimony, the hearsay evidence sought by the Subpoena likely will not be implicated at all; and Lynch's claimed desire to use these extrinsic materials on cross-examination is not sufficient to support their admission into evidence. Consequently, the Subpoena should be quashed.

### 3. The Requested Documents Are Not Relevant.

Lynch contends that, because the ASL Restatement is admissible, every single document relating to it must also be admissible. This simply is not so. As this Court has ruled—but apparently Lynch fails to appreciate—Yelland may testify only to "vanilla" statements regarding the existence of the ASL Restatement, such as "'I did a restatement. I looked at the figures. I came to a different conclusion.'" Tr. 13:13; 9:19-20 (Feb. 28, 2024). He may not testify about what he relied on to formulate his opinion or otherwise disclose inadmissible hearsay that formed the basis of his opinion. Therefore, while the ASL Restatement itself is admissible, the related documents the Subpoena seeks are not admissible because Yelland is not permitted to testify about them. Furthermore, summaries purportedly prepared by PwC are wholly irrelevant as they were created after Yelland issued the Restatement.

Lynch's reliance on *United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000), therefore, is misplaced. In that case, the district court limited defendant's cross-examination of

the federal agent who investigated the case against him, instructing the jury that only the result, and not the quality, of the federal investigation was relevant. *Id.* at 1144. On appeal, the Ninth Circuit reversed and explained that, if the result of the federal investigation was the United States' decision to criminally prosecute defendant, then the quality of that investigation was relevant and defendant had the right to challenge it. *Id.* at 1145. That is not even remotely the situation here, where a non-party—indeed, a victim of Lynch's fraud—is being forced to address an overly broad and unduly burdensome subpoena, which seeks documents that are not relevant. Accordingly, the Subpoena should be quashed.

### C. The Subpoena Improperly Requests Privileged Documents.

Lynch's failure to satisfy any of the multiple *Nixon* factors ends the inquiry, obviating the need to address the numerous privilege issues at play. Even if the Court were to address the privilege issues, which it need not do, Lynch's demands for certain privileged material are completely meritless, and his arguments concerning waiver (or lack) of privilege are unfounded.

#### 1. The Requested Documents Are Privileged.

Lynch has requested (1) attorney-client communications between or among HP, Morgan Lewis, and PwC (which Morgan Lewis retained to assist in advising HP), and (2) work product created by, or at the request of, counsel (collectively "the Privileged Documents"). The Privileged Documents are fully privileged and Lynch is not entitled to them, even if he met all the *Nixon* factors, which he has not.

Lynch contends that the Privileged Documents are not privileged because they were created for the purpose of preparing and filing the ASL Restatement. This argument is nonsensical. Yelland relied primarily on *non-privileged documents* to prepare the ASL Restatement. Months or years ago, HP produced all of these non-privileged documents to the government, who, in turn, presumably disclosed them to the defense. The Subpoena, however, is not limited to non-privileged materials, calling for, among other things, *all* communications between and among Yelland, Anderson, and *anyone* at HP, its affiliates, and its advisors, and consultants, in *unredacted form*. Included within the broad sweep of this request are documents that *are* privileged and/or protected work product. Contrary to Lynch's assertion, that protection

remains intact. To the extent a document slipped through the cracks, it was inadvertent and not produced by HP (as demonstrated by the Bates number, which indicates production by a different third party in connection with the government's MLAT process, or no Bates number at all).

Lynch asserts that HP must invoke privilege as to *each individual record* it intends to withhold. This is not supported by case law. Rather, HP can satisfy its burden as the party asserting privilege by, for instance, demonstrating that the privilege applies to "*a given set* of documents or communications." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070–71 (9th Cir. 1992) (emphasis added); *see also United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) (citing *United States v. Chevron Corp.*, 1996 WL 264769, *5 (N.D. Cal. Mar. 13,1996) (finding that an *entire set of documents* is privileged where privileged portions are "inextricably intertwined with" and cannot be separated from the rest). HP has fulfilled that requirement.

Here, HP identified two types of documents that are inherently privileged or protected as work product: (i) communications between HP personnel and HP's in-house legal department and outside counsel, Morgan Lewis, as well as confidential communications between HP and PwC, which Morgan Lewis retained to assist in advising HP (*Reyes*, 239 F.R.D. at 598; *Todd v. STAAR Surgical Co.*, No. CV-14-05263 MWF (RZX), 2015 WL 13388227, at *5 (C.D. Cal. Aug. 21, 2015)); and (ii) documents generated by HP, its affiliates, its advisors, and its consultants—all done under the direction of counsel—that explain the bases for restating each of the transactions at issue in the ASL Restatement (*i.e.*, attorney work product).[3] HP has thus met its burden of claiming privilege over these documents. Based on the applicable cases, there is no legal need for HP to go through the burdensome and wasteful process of invoking privilege over *each* of the thousands of records it seeks to withhold—especially not when the Subpoena is improper to begin with. Nor does Lynch offer a remotely reasonable justification for imposing such a burdensome and costly undertaking on a non-party to (and victim in) this matter.

---

[3] Many of the documents in both categories (i) and (ii) have been produced in redacted form and included in a privilege log. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1070–71 (9th Cir. 1992) ("We have previously recognized a number of means of sufficiently establishing the privilege, one of which is the privilege log approach.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

REPLY IN FURTHER SUPPORT OF MOTION TO
QUASH SUBPOENA
Case No. 3:18-cr-577 (CRB)

### 2. HP Did Not Waive Privilege.

Lynch argues that HP waived privilege in any of three ways: (1) by disclosing certain privileged documents to EY; (2) through Yelland's testimony during the *Hussain* trial; and (3) through general references to privileged documents. Lynch is incorrect. At no time did HP waive privilege.

### a. HP Did Not Waive Privilege By Disclosing Documents To EY.

Lynch claims that HP's disclosure of documents to outside auditor Ernst & Young ("EY") effects a wholesale waiver of both work product protection and attorney-client privilege. Opp. at 12. Lynch also claims that this disclosure was "deliberate" and that HP did not try to claw back the documents disclosed. Lynch is wrong on both fronts.

The documents at issue were produced by EY in connection with a government MLAT request. HP had no say in EY's MLAT disclosure process and no knowledge of the disclosure until Lynch referenced the documents shortly before this trial began in March 2024. Inadvertent disclosure of a document containing privileged communications does *not* effect wholesale waiver. *See Transamerica Computer Co., Inc. v. Int'l Bus. Machs.* Corp., 573 F.2d 646 (9th Cir.1978). In the *Hussain* trial, for example, this Court barred admission of an arguably privileged document that HP had inadvertently produced because it contained legal advice. Hussain Trial Tr. 5201:12–5207:5 (Apr. 17, 2018). This Court held that its inadvertent production did not constitute waiver. *Id* at 5205:19. So, too, should this Court hold here as well.

Similarly, any disclosure to EY did *not* waive HP's work-product privilege, as the disclosure did not "substantially increase the opportunity for potential adversaries . . . to obtain that work product." *Middlesex Ret. Sys. v. Quest Software, Inc.*, No. CV066863DOCRNBX, 2009 WL 10673943, at *5, 6 (C.D. Cal. July 8, 2009). Courts have discussed the need for encouraging "limited alliance[s]" between businesses and their independent auditors, and they have repeatedly held that outside auditors do not have the requisite adversarial relationship to establish waiver:

> [A]ny tension between an auditor and a corporation that arises from an auditor's need to scrutinize and investigate a corporation's records and book-keeping practices simply is not the equivalent of an adversarial relationship contemplated by the work product doctrine. Nor should it be. A business and its auditor can and should be

aligned insofar as they both seek to prevent, detect, and root out corporate fraud. Indeed, this is precisely the type of limited alliance that courts should encourage. *S.E.C. v. Schroeder*, No. C07-03798 JW HRL, 2009 WL 1125579, at *9 (N.D. Cal. Apr. 27, 2009), *objections overruled*, No. C 07-03798 JW, 2009 WL 1635202 (N.D. Cal. June 10, 2009) (quoting *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441 (S.D.N.Y. 2004)).[4]

Here, there is no dispute that EY and HP were not in an adversarial relationship, and they were both aligned in their efforts to "prevent, detect, and root out corporate fraud," within the meaning of *S.E.C. v. Schroeder*. HP's disclosure of one or more work-product documents to EY did *not* waive HP's work-product privilege.

### b. Yelland's Testimony In *Hussain* Trial Did Not Waive Privilege.

Lynch argues that HP waived privilege when Yelland "testified over and over to the information that he received from PwC and Morgan Lewis" during the *Hussain* trial. Opp. at 14. Lynch, however, concedes (as he must) that Yelland only "refer[ed] to that information generally" during his testimony. *Id.* Courts are loathe to "find waiver when the statements alleged to constitute waiver do not purport to disclose the contents of a specific communication." *Genentech, Inc. v. Insmed Inc.*, 234 F.R.D. 667, 671 (N.D. Cal. 2006) (internal citations omitted). Tellingly, Lynch fails to point to a single line of testimony by Yelland purporting to disclose the substance or content of a specific communication with counsel.

Lynch's reliance on *United States v. Salsedo*, 607 F.2d 318, 320–21 (9th Cir. 1979) and *In re Oracle Sec. Litig.*, No. C-01-0988 MJJ JCS, 2005 WL 6768164, at *10 (N.D. Cal. Aug. 5, 2005) is erroneous as both cases refer to testimonial waiver of a *single* document during trial. In *Salcedo*, defense counsel referenced his own work product in his cross examination of two government witnesses; and, in *Oracle*, the company waived attorney-client and work product privileges over an SLC report by allowing plaintiffs "*to repeatedly refer to the contents of the*

---

[4] This rule "furthers the strong public policy of encouraging critical self-policing by corporations. Indeed, sanctioning a broad waiver here would have a chilling effect on the corporation's efforts to root out and prevent corporate fraud and disclose the results as necessary to its auditors." *S.E.C. v. Roberts*, 254 F.R.D. 371, 382 (N.D. Cal. 2008). *See also Samuels v. Mitchell*, 155 F.R.D. 195, 200 (N.D. Cal. 1994) (holding that the work product protection was not waived with respect to documents disclosed to outside auditor acting as a consultant where there was not a substantial danger that the documents would be disclosed to an adversary, and the company kept all communications with the auditor confidential and took steps to guarantee that the documents would not be given to an adversary).

*report in open court*" without objecting or moving to seal the report. *Id.* That is vastly different from any "general" statements Yelland made during the *Hussain* trial. Opp. at 14. Furthermore, in no way can those cases be read to suggest that testimonial waiver allows unfettered access to all privileged documents.

### c. There Was No Waiver Through General References In Documents.

Lynch asserts that HP "has disclosed and repeatedly referenced" portions of privileged communications, including the interview memoranda and work product regarding the ASL Restatement, as well as "numerous documents quoting and referring to the purportedly privileged communications." Opp. at 13-14. He adds that, "[w]hen HP disclosed interview memoranda and work product regarding the bases of the ASL Restatement, it acknowledged that it was disclosing privileged documents." *Id.* at 13. He then accuses HP of selective disclosure and asserts that "[t]he possibility of this type of selective disclosure is exactly why specific waivers of the protection act as complete waivers with respect to 'all other communications on the same subject.'" Opp. at 13 (quoting *United States v. Hussain*, No. 16-cr-462, 2018 WL 1091083, at *2 (N.D. Cal. Feb. 28, 2018)). But Lynch leaves out the fact that, in *Hussain*, this Court was referring to HP's redactions of some attorney-conducted interviews, but not others. The present case presents an entirely different scenario. As Lynch's counsel revealed on February 21, 2024, and again at the meet-and-confer with HP counsel on March 11, 2024, the Lynch Subpoena is based solely on assumptions made from a *single* document that EY inadvertently produced pursuant to an MLAT request. Tr. 17:9–18:11 (Feb. 21, 2024). There has been no "selective disclosure" of only certain documents, and *Hussain* has no application here.

### CONCLUSION

For the foregoing reasons, HP respectfully requests that the Court quash the Subpoena in its entirety.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

REPLY IN FURTHER SUPPORT OF MOTION TO
QUASH SUBPOENA
Case No. 3:18-cr-577 (CRB)

| | |
|---|---|
| Dated: April 5, 2024 | Respectfully submitted,<br><br>By: _/s/ Susan Resley_<br>SUSAN D. RESLEY<br>MADELEINE AYER<br>MORGAN, LEWIS & BOCKIUS LLP<br>One Market, Spear Street Tower<br>San Francisco, CA 94105<br>Telephone: (415) 442-1000<br>Facsimile: (415) 442-1001<br>susan.resley@morganlewis.com<br><br>MARTHA B. STOLLEY, admitted *pro hac vice*<br>MORGAN, LEWIS & BOCKIUS LLP<br>101 Park Avenue<br>New York, NY 10178-0060<br>Telephone: (212) 309-6000<br>Facsimile: (212) 309-6001<br>martha.stolley@morganlewis.com<br><br>MICHAEL LI-MING WONG<br>WILLKIE FARR & GALLAGHER LLP<br>333 Bush Street<br>San Francisco, CA 94104<br>Telephone: (415) 858-7400<br>Facsimile: (415) 858-7599<br>mlwong@willkie.com<br><br>*Attorneys for Hewlett Packard, Inc. and Hewlett Packard Enterprise* |