# EXHIBIT F

**mazars**

| SW-09-012 - Verdasys, Inc ("Verdasys") | |
|---|---|
| **Amount of sample item:** | $5.046 million |
| **Period initially recognised:** | Q1 2009 |
| **Date of contract:** | 31 March 2009 |
| **Total contracted amount:** | $5.250 million |

### Summary of the transaction

This transaction relates to the "*Fourth Amendment to Verity Master OEM Agreement*" between Verdasys Inc. ("**Verdasys**") and Autonomy, dated 31 March 2009 (the "**Amended OEM Agreement**")[1]. The OEM Agreement amended the terms of the "*Verity Master OEM Agreement*", dated 28 September 2006 (the "**Master OEM Agreement**")[2].

The Verdasys Master Agreement gave Verdasys the right to embed Autonomy's "*K2 Developer, with Profiler and Extractor*" and "*Autonomy IDOL Server*" software in its "*Digital Guardian Adaptive Content Inspection*" software ("**Digital Guardian**").  The "*License Term*" of the Master Agreement was 30 months from 28 September 2006 (i.e. to March 2009).

The Verdasys Master Agreement stipulated that Verdasys would pay Autonomy a quarterly "*Sublicense Fee*" based on the "*Net Revenues*" earned by Verdasys in relation to the licensing of Digital Guardian, as embedded with the Autonomy software[3].  The "*Sublicense Fee*" payable would be set off against a "*Prepaid Sublicense Fee*" of $100,000, until such time as the "*Prepaid Sublicense Fee*" was exhausted. The "*Prepaid Sublicense Fee*" was "*nonrefundable*".

The Amended OEM Agreement extended the Master OEM Agreement for a further 39 months.

Like the OEM Master Agreement, the Amended OEM Agreement stipulated that Verdasys would pay Autonomy a "*Sublicense Fee*" based on a proportion of the "*Net Revenues*" earned by Verdasys in relation to licensing of Digital Guardian.  These fees would offset against a "*Prepaid Sublicense Fee*" of $5,000,000, until such time as the "*Prepaid Sublicense Fee*" was exhausted.

The "*Prepaid Sublicense Fee*" was payable in 12 quarterly instalments, starting on 30 September 2009 and ending on 30 June 2012[4] and was "*nonrefundable*".

The Amended OEM Agreement also included a "*Second Line Support Fee*" of $250,000, which was also payable in 12 quarterly instalments, starting on 30 September 2009 and ending on 30 June 2012.

---

[1] HP-SEC-01928942

[2] HP-SEC-01928710

[3] The proportion of "*Net Revenues*" payable as a "Sublicense Fee" tapered downwards as the "*Net Revenues*" increased.  For example, the "*Sublicense Fee*" payable on accumulated "Net Revenues" up to $200,000 was the greater of $6.60 per "*Seat licensed*" or 33% of total "Net Revenues", however once accumulated "Net Revenues" reached $10,000,000, the "*Sublicense Fee*" payable was the greater of $3.00 per "*Seat Licensed*" or 10% of "*Net Revenues*"

[4] The first four instalments were for $300,000, the second four instalments were for $350,000 and the final four instalments were for $600,000

| **SW-09-012 - Verdasys, Inc ("Verdasys")** |
|---|

Autonomy's ledgers record that Autonomy recognised OEM licence revenue of $5,000,000 in relation to the Amended OEM Agreement on 31 March 2009.

**Issues identified by Mazars**

**A. The Amended OEM Agreement was not the sale of a good but was instead a royalty arrangement**

In my view, the "*Prepaid Sublicense Fee*" set out in the Amended OEM Agreement was, in substance, a prepayment of amounts that would otherwise be due to Autonomy from Verdasys, following the completion of sales by Verdasys to end-users.  I consider that this type of revenue meets the definition of royalties, which are defined in IAS 18.5(b) as "*charges for the use of long-term assets of the entity, for example, patents, trademarks, copyrights and computer software*".  I have reached this view because:

a) the "*Software*" set out in the Amended OEM Agreement was subject to restrictions to its use such that Verdasys as the licensee, was not able to exploit those rights freely; and

b) clause 8.1 of the Verdasys Master OEM Agreement obliged Verdasys to submit a "*a written sales report containing information detailing each Application distributed for the applicable reporting quarter, including (i) the number of copies of the Application sold during the reporting period, (ii) name of customer and location of distributions (country or state), broken down by month and on a cumulative basis; (iii) an accounting of the sublicense fees associated with such copies, including net revenues associated with the Applications; and (iv) second-line support fees due to* [Autonomy] *associated with such copies*"[5]; and

c) the "*Sublicense Fee*" earned by Autonomy pursuant to the Verdasys Amended OEM Agreement was calculated as a portion of the sales that Verdasys made of its Digital Guardian software.  In my opinion this is clearly a description of a royalty, and as such the "*Prepaid Sublicense Fee*" should therefore be considered a prepaid royalty.

IAS 18.33 requires royalties to be accrued "*in accordance with the terms of the relevant agreement and are usually recognised on that basis unless, having regard to the substance of the agreement, it is more appropriate to recognise revenue on some other systematic and rational basis*".  As such it is my view that the $5,000,000 "*Prepaid Sublicense Fee*" set out in the Verdasys Amended OEM Agreement should not have been recognised as revenue as at the date of the Amended OEM Agreement, but should instead have been recognised as revenue systematically in proportion with when the "*prepaid sublicense fee*" was utilised, that is, based on Verdasys sale of its Digital Guardian software, as set out in each quarterly report.

---

[5] This clause was not amended by the Amended OEM Agreement

**mazars**

## SW-09-012 - Verdasys, Inc ("Verdasys")

### Conclusion and proposed adjustment

In my opinion SW-09-012 did not satisfy the revenue recognition criteria of IAS 18 in relation to the sale of a good and the revenue recognised in Quarter 1 2009 in relation to SW-09-012 should be reversed.

In my opinion SW-09-012 was a royalty agreement.  As such, revenue associated with SW-09-012 should have been recognised as revenue systematically in proportion with when the "*Prepaid Sublicense Fee*" was utilised, that is, based on Verdasys sale of its Digital Guardian software, as set out in each quarterly report.  I have not seen any quarterly report submitted by Verdasys in relation to the Amended OEM Agreement, and in the absence of this information I have assumed that the revenue recognition for a royalty would have been met on a straight line basis over the 39 month duration of the Amended OEM Agreement.  This equates to a royalty fee of $128,205 per month[6], or $384,615 per quarter[7].

Moreover, it is mandatory under IAS 18.35 for revenue arising from the sale of goods and revenue arising from royalties to be disclosed separately.  In my view, revenue from SW-09-012 should have been disclosed as a revenue arising from royalties.

My adjustment is summarised in the table below:

| SW-09-012 – Verdasys, Inc ("Verdasys") | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Q1 2009 $000 | Q2 2009 $000 | Q3 2009 $000 | Q4 2009 $000 | Q1 2010 $000 | Q2 2010 $000 | Q3 2010 $000 | Q4 2010 $000 | Q1 2011 $000 | Q2 2011 $000 |
| **Original accounting** | | | | | | | | | |
| Revenue 5,000 | - | - | - | - | - | - | - | - | - |
| **Proposed adjustment** | | | | | | | | | |
| Revenue (5,000) | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 |
| **Adjusted accounting** | | | | | | | | | |
| Revenue - | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 |

---

[6] $5,000,000 / 39 months = $128,205 per month
[7] $128,205 * 3 = $384,615 per quarter