PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email: Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 18-577 CRB |
| Plaintiff, | |
| v. | UNITED STATES' MOTION TO ADMIT OTHERWISE PRECLUDED EVIDENCE BECAUSE THE DEFENDANT "OPENED THE DOOR" IN CROSS-EXAMINATION |
| MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN, | Trial Date: April 29, 2021 |
| Defendants. | |

**INTRODUCTION**

On April 24, 2024, during the cross-examination of Joel Scott, counsel for the defendant "opened the door" regarding at least three subjects that had been the subject of the Court's pretrial and trial rulings precluding certain evidence. Having "opened the door," the government moves to rebut the defendant's assertions based on some of the evidence the Court had previously excluded.

Counsel for defendant Lynch first opened the door to post-acquisition evidence with questions about how HP paid Mr. Scott during the investigation and has been paying his counsel fees which allegedly makes Mr. Scott biased in favor of HP. April 24, 2024 Trial Transcript, Volume 24 ("Trial

Transcript") at 5737.  This fairly opens the door to evidence about why HP may have been required to pay Mr. Scott's salary during the investigation and whether Dr. Lynch has been voluntarily paying the counsel fees for other interested persons including the co-defendant, Stephen Chamberlain.

Counsel for defendant Lynch then opened a second door into previously litigated post-acquisition conduct with questions about meetings Mr. Scott had in January 2013 with outside counsel for HP who allegedly pressured him to "change[] his story."  Trial Transcript at 5743.  This inquiry fairly opens the door to questions about Mr. Scott's voluntary statements to in-house HP counsel (John Schultz) *eight months earlier* in May 2012 to rebut the allegation of fabrication.

Finally, counsel for defendant Lynch then opened a third door when he inquired about Mr. Scott's ethical "duty" as an in-house lawyer "to say something" to the organization client "if you think something is wrong."  *Id*. at 5754.  Counsel's questions implied that Mr. Scott had failed to carry out this duty with regard to his concerns about reseller transactions.  *Id*. at 5756.  Earlier, following a defense motion, the Court precluded the government from eliciting the fact that Mr. Scott advised Dr. Lynch that recording calls – as Dr. Lynch asked Mr. Scott to do in the call with Brent Hogenson – may have been illegal.  Document 438 and Trial Transcript, Vol. 20, at 5030 (excluding the evidence because "introduc[ing] evidence that someone was indifferent to the law is highly prejudicial").  The defendant having called into question Mr. Scott's compliance with his ethical responsibilities, the government should now be permitted to allow Mr. Scott to testify about his recollection of the advice he gave to Dr. Lynch about the need to comply with relevant law around the recording telephone calls and Dr. Lynch's disregard for that legal advice.

With the Court's permission, the government intends to adduce evidence – including limited evidence during the post-acquisition period -- to rebut the assertions that Mr. Scott is biased in favor of HP because of the payment of counsel fees; "changed" his testimony to help HP; and failed to comply with his ethical responsibilities to advise Autonomy as its in-house counsel.

**RELEVANT FACTS**

In compliance with the Court's Order severing Count Seventeen and the post-acquisition crime alleged therein, the government has sought to limit evidence in the current trial of events occurring after HP's acquisition of Autonomy closed in October 2011.

All the same, the government moved pretrial in Motion *in Limine* No. 4 for the admission of a limited number of "look back" exceptions to any bright-line rule excluding post-acquisition evidence. Document 299. On February 21, 2024, the Court granted this motion with respect to the proffered testimony of Joel Scott about meeting with HP's in-house general counsel John Schultz in or about May 2012. Document 358 ("Government MIL 4: Testimony from Joel Scott … admissible").

On April 16, 2024, immediately in advance of Mr. Scott's testimony, the defendants sought to "clarify" the Court's ruling with respect to Motion *in Limine* No. 4. Document 439. On April 17, 2024, notwithstanding the Court's order permitting it to do so, counsel for the government stated that it would forego Mr. Scott's testimony about making whistleblower allegations about Autonomy's historical practices because of the Court's several rulings precluding evidence of events after the acquisition closed in October 2011. Trial Transcript , Vol. 20 at 5028, lines 1-8 ("[G]iven the way the Court has received evidence [during the trial precluding post-acquisition events] … I do not anticipate that the Government will ask questions of Mr. Scott after the acquisition closed in the 2012 period.").

On cross-examination, however, the defense asked a series of questions about Mr. Scott's career at HP after the acquisition including the fact that while "on administrative leave" at HP he was paid "more than a million dollars" and did not "have to do any work" for the period 2013-2016. Trial Transcript at 5736-5737. Counsel then asked "who paid the bill for [Mr. Scott's] lawyers" to which he responded "HP." *Id*. at 5738.

At this point, the government requested a side bar. *Id*. At the side bar, counsel for the government gave notice that "counsel has opened the door on Mr. Scott's meeting with John Schultz with regard to being a whistleblower about the fraud that he observed at Autonomy" and that "the Government is [also] entitled to ask the same thing of who's paying for Mr. Chamberlain's and other people's lawyers in this case." *Id*. at 5739. At side bar, the Court said to counsel for defendant Lynch that "you have to be careful opening areas of inquiry … there's tradeoffs." *Id*. Whereupon counsel for defendant Lynch said, "I'm going to close that door back up." *Id*. at 5740.

After the side bar, in reliance on this record, the government moved to strike the preceding testimony. The Court then asked counsel for defendant Lynch "what's your position?" *Id*. Counsel, in a change of position from the side bar, said "I don't agree." *Id*. Whereupon the Court denied the motion

to strike. *Id*. Counsel for defendant Lynch then proceeded to ask a series of questions about Mr. Scott's meetings with HP outside counsel in 2013 including a meeting on January 17, 2013, with Leslie Caldwell. *Id*. at 5741-5742. This prompted the Court to hold a second side bar at which the Court asked counsel "what a lawyer told this witness in an interview, what is it going to establish?" *Id*. at 5743. To which counsel for defendant Lynch responded, "It's classic impeachment. It's going to show that he was threatened and that he then changed his story." *Id*. Whereupon the Court permitted the questions. Counsel continued with a series of questions suggesting that Mr. Scott had been pressured by HP culminating in a question about the "crimes [Mr. Scott] could be facing" which included "mail fraud or wire fraud." *Id*. at 5747.

Finally, counsel for defendant Lynch cross-examined Mr. Scott about whether he complied with his ethical responsibilities to his organizational client to advise them that certain acts imputable to the organization may violate the law. *Id*. at 5753-5754. Interestingly, the transcript reflects the following questions and answers:

> **Q.** Just to be clear, though, Mr. Scott, did you ever raise any of the concerns that you've talked about today and last week to Dr. Lynch?
> **A.** Yes.
> **Q.** Which ones?
> **A.** Well, for example, *I remember before I fired Brent I had a conversation with Dr. Lynch*.
> **Q.** We'll get it that. But I'm talking about the reseller deals and the various other things that we're talking about.
> **A.** I don't specifically remember talking with Dr. Lynch about a given transaction, but I do very much remember raising questions about multiple transactions to my boss, who is a U.S. lawyer, and to the CFO.
> **Q.** Okay. Well, we'll get into some of that.

*Id*. at 5755-5756 (emphasis added). In response to counsel's questions, Mr. Scott alluded to his conversation with Dr. Lynch about the appropriateness of recording the call with Brent Hogenson. Prior to his testimony, counsel for the government advised Mr. Scott about the Court's ruling precluding any discussion of the advice he gave to Dr. Lynch about the legality of recording the call with Mr. Hogenson. Dutifully, Mr. Scott avoided that detail. Having now put the matter squarely at issue, the defense should not be allowed to preclude Mr. Scott from giving a complete answer about how he tried to advise Dr. Lynch about not violating the law.

**ARGUMENT**

The government should be allowed to fairly rebut the assertions made by the defense that Joel Scott was pressured by HP, is biased in favor of HP, or failed to fulfill his ethical responsibilities as a lawyer. To do that fairly, the government will need to inquire about (1) Mr. Scott's statements to HP's in-house general counsel, John Schultz, eight months earlier starting in or about May 2012; (2) the reasons Mr. Scott was placed on administrative leave for nearly three years during the period 2013-2016 and why HP has paid Mr. Scott's counsel fees; and (3) how Mr. Scott advised Dr. Lynch that recording the call with Brent Hogenson may be a violation of the law. To do otherwise risks a fair trial because it may leave the jury with a skewed understanding of whether Mr. Scott was pressured, paid off by HP, or failed to comply with his professional responsibilities.

Evidence about the payment of counsel fees is a sensitive issue that requires careful consideration. That is why counsel for the government sought a side bar before the defense plunged into it. With notice, the Court gave counsel for defendant Lynch an opportunity to close the door on the counsel fees issue. Having thought about it, counsel for defendant Lynch decided to plunge in. Having done so, it would be unfair to suggest that HP is somehow trying to confer benefits on a witness when Dr. Lynch is charged with doing the same thing. Superseding Indictment at ¶ 33(c) ("paying hush money and other benefits to influence, delay, and prevent the testimony of persons in official proceedings"). For this reason, the government should be permitted to prove whether Dr. Lynch is paying counsel fees for relevant persons precisely as the defendant seems to be accusing HP of doing.

**CONCLUSION**

Counsel for defendant Lynch has opened the door to at least three consequential matters – whether Mr. Scott was pressured by HP; whether he is biased in favor of HP; and whether he failed to comply with his ethical obligations. The defense having opened the door to all these areas, it would be unfair and prejudicial the government's case to leave these assertions unrebutted and allow the jury to hear some – but not all – the relevant facts. For these reasons, the government seeks the Court's advanced permission to use otherwise precluded evidence to properly rebut the defense assertions that Mr. Scott fabricated his testimony, is biased, and failed to comply with his duties as a lawyer.

//

DATED: April 28, 2024

Respectfully submitted,

PATRICK D. ROBBINS
Attorney for the United States Attorney
Acting Under Authority Conferrred by
28 U.S.C. § 515

*/s/ Adam A. Reeves*

_____
ADAM A. REEVES
ROBERT S. LEACH
KRISTINA N. GREEN
ZACHARY G.F. ABRAHAMSON
Assistant United States Attorneys