1   Jonathan M. Baum (SBN: 303469)
    **Steptoe LLP**
2   One Market Street
    Steuart Tower, Suite 1070
3   San Francisco, CA 94105
    Telephone: (510) 735-4558
4   jbaum@steptoe.com

5   Reid H. Weingarten
    Brian M. Heberlig
6   Michelle L. Levin
    Nicholas P. Silverman
7   Drew C. Harris
    (Admitted Pro Hac Vice)
8   **Steptoe LLP**
    1114 Avenue of the Americas
9   New York, NY 10036
    Telephone: (212) 506-3900

    Christopher Morvillo
    Celeste L. Koeleveld
    Daniel S. Silver
    (Admitted Pro Hac Vice)
    **Clifford Chance US LLP**
    31 West 52nd Street
    New York, NY 10019
    Telephone: (212) 878-3437
    christopher.morvillo@cliffordchance.com

    *Attorneys for Defendant*
    *Michael Richard Lynch*

10

11                  **UNITED STATES DISTRICT COURT**

12                 **NORTHERN DISTRICT OF CALIFORNIA**

13

14   UNITED STATES OF AMERICA,          Case No.: 3:18-cr-00577-CRB

15          Plaintiff,                   Judge: Hon. Charles Breyer

16      vs.                              **DEFENDANT MICHAEL RICHARD
                                         LYNCH'S OPPOSITION TO
17                                       GOVERNMENT'S MOTION *IN LIMINE*
     MICHAEL RICHARD LYNCH and          TO EXCLUDE EXPERT TESTIMONY OF
18   STEPHEN KEITH CHAMBERLAIN,         JOHN LEVITSKE**

19          Defendants.                  Court:   Courtroom 6 – 17th Floor
                                         Date Filed:   May 3, 2024
20                                       Trial Date:   March 18, 2024

21

22

23

24

# **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 3

I.    BACKGROUND ........................................................................................................ 3

II.   LEGAL STANDARD................................................................................................. 4

III.  ARGUMENT ............................................................................................................. 5

    A.    Levitske's Expert Disclosure Complied with Fed. R. Crim. P. 16 ................. 5

    B.    Levitske's Opinions on Valuation Impact Are Admissible Under Rule 702 .................. 9

    C.    Levitske's Opinions are Relevant and Helpful to the Fact Finder in Evaluating the Defendants' Lack of Motive and Lack of Materiality ................. 9

        1.    Levitske's Opinions are Based on a Reliable Methodology ....................... 10

        2.    The Proposed Expert Testimony Is Admissible Under Fed. R. Evid. 401, 402, 403 . 14

IV.  CONCLUSION............................................................................................................ 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*City of Seattle v. Monsanto Co.*,
   No. 16-cv-107, 2023 WL 5320247 (W.D. Wash. Aug. 18, 2023)..........................10

*Crane v. Kentucky*,
   476  U.S. 683 (1986)...........................................................................................5

*Comet Techs. v. XP Power LLC*,
   No. 20-cv-06408, 2022 WL 2442810 (N.D. Cal. March 2, 2022) .........................11

*DSU Med. Corp. v. JMS Co., Ltd.*,
   296 F. Supp. 2d 1140 (N.D. Cal. 2003), *aff'd,* 471 F.3d 1293 (Fed. Cir. 2006).......................5

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993).............................................................................................5

*Hangarter v. Provident Life & Acc. Ins.,*
   3 *Co.,* 373 F.3d 998 (9th Cir. 2004)......................................................................14

*Humetrix Inc. v. Gemplus S.C.A.*,
   268 F.3d 910 (9th Cir. 2001) ...............................................................................9

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)..............................................................................................5

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
   No. 11-cv-5341 YGR, 2014 WL 971765 (N.D. Cal. Mar. 5, 2014)......................14

*Messick v. Novartis Pharms. Corp.*,
   747 F.3d 1193 (9th Cir. 2014) ..............................................................................5

*United States v. Gan*,
   54 F.4th 467 (7th Cir. 2022) .................................................................................5

*United States v. Milheiser*,
   98 F.4th 935(9th Cir. 2024) ..................................................................................2

*United States v. Yandell*,
   No. 2:19-CR-00107-KJM, 2023 WL 8948267 (E.D. 15 Cal. Dec. 28, 2023) .........................6

**Other Authorities**

Fed. R. Crim. P. 16 ......................................................................................... *passim*

Federal Rule of Evidence 702........................................................................... *passim*

iii

DEFENDANT LYNCH'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE*
TO EXCLUDE EXPERT TESTIMONY OF JOHN LEVITSKE
3:18-cr-00577-CRB

## SUMMARY OF ARGUMENT

In response to the government's allegations, Dr. Lynch provided timely notice of several expert witnesses, including John Levitske, an expert on valuation. The government argues that the expert disclosure pertaining to Levitske (i) fails to comply with Federal Rule of Criminal Procedure 16 because new analyses and opinions contained therein were not timely noticed; (ii) fails to comport with Federal Rule of Evidence 702 because it lacks relevance and is not the product of reliable principles and methods; and (iii) is inadmissible under Federal Rules of Evidence 401, 402, and 403 because any minimal probative value of his testimony is far outweighed by the risks of confusing the issues, misleading the jury, and wasting time. The government's objections lack merit.

First, the government argues that Levitske's second expert disclosure contains a "plethora" of new opinions and analyses related to cash flow and the value-added reseller ("VAR") transactions that were not timely noticed under Rule 16. Gov't Mot. to Excl. Expert Testimony of John Levitske at 6 (ECF No. 453). Levitske's second expert disclosure, however, is based on an analysis of the adjustments asserted by Brice and the government. To the extent any of Levitske's conclusions are "new," there is no way the government could have expected Levitske merely to provide a few "clarifications" given the extensive additional new information, analysis, and explanations the government's own expert (Steven Brice) provided in his second expert disclosure, after Levitske's first disclosure. Especially where Levitske is relying on assumptions that have been made by Brice, he properly considered, as an independent expert, any new information provided by Brice and updated and revised his disclosures accordingly. That Levitske's expert disclosure is sufficient is confirmed by the fact that the government's expert has produced a 20-page supplementary rebuttal report replying to Levitske's proposed opinions. Moreover, any changes Levitske has made between his first and second expert disclosures merely go to weight and not admissibility.

Second, the government asks the Court to exclude Levitske's proposed testimony on the impact of the asserted adjustments on the grounds that it lacks relevance and that it "changed so significantly following critiques pointed out by the government," which the government claims

indicates a purportedly inherent lack of reliable principles and methods.  ECF No. 453 at 6.
Levitske's testimony goes to the heart of the defense, namely, that no investor (including HP)
was defrauded or cheated by the alleged fraud because the allegedly inflated revenue figures do
not materially affect the value of Autonomy.  *See United States v. Milheiser*, 98 F.4th 935, 944
(9th Cir. 2024) (holding that fraud-in-the-inducement does not constitute fraud, and making clear
that "misrepresentations about collateral matters [that] may have led to the transaction" cannot
support a fraud conviction where "the buyer still got the product that she expected at the price
she expected").  Levitske's testimony is also critical to the jury's assessment of Dr. Lynch's
motive (or lack thereof) to engage in the alleged fraud and the lack of materiality of any
misrepresentation related to financial reporting.

 Furthermore, Levitske's testimony is admissible under Rule 702 because it is the result of
a reliable methodology that is described in his expert disclosures.  Levitske's methodology
remained unchanged between his first and second expert disclosures.  His methodology has
consistently rested on assessing the impact of the asserted revenue adjustments in the context of
how companies are generally valued and using the assumptions and factual allegations stated in
the government's expert's disclosures and contained within the government's own Voluntary
Bill of Particulars ("VBOP") (ECF No. 230) to make corresponding reclassifications, timing
adjustments, and/or counter-transactions adjustments.  At bottom, the government's criticisms of
Levitske's methodology amount to no more than a disagreement with Levitske's assumptions and
conclusions, but that disagreement does not mean that Levitske's methodology is not sound or is
unreliable.

 Finally, the government summarily claims that Levitske's proposed testimony is not
admissible under Federal Rules of Evidence 401, 402, and 403, but cites no authority and applies
no analysis.  The Court should therefore reject the government's motion with respect to these
rules.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   BACKGROUND

3

On November 8, 2023, the government served the expert report of its proposed expert,

4

Mr. Steven Brice.  *See* Expert Report of Steven Brice, Silverman Decl. Ex. A ("Brice Report 1").

5

In Brice Report 1, Mr. Brice analyzed numerous software and hardware sales transactions and

6

rendered opinions as to whether Autonomy appropriately recognized revenue and made adequate

disclosures in accordance with the applicable accounting standards with respect to these

7

transactions.

8

On December 7, Dr. Lynch served an expert report for his valuation expert, John

9

Levitske.  *See* Declaration of Kristina Green in Support of Government's Motion *in Limine* to

10

Exclude Expert Testimony of John Levitske, ECF No. 453-1, Ex. A. (Levitske Report 1).

11

Levitske offered expert testimony on the valuation process and opined on relevant considerations

in the process related to acquisition.  The government alleges that Dr. Lynch artificially inflated

12

Autonomy's value by causing Autonomy to engage in several allegedly objectionable transaction

13

types to improve Autonomy's financial metrics through improper accounting, all as part of a

14

scheme to defraud.  Levitske analyzed whether those allegedly objectionable transactions in fact

artificially boosted Autonomy's value, by comparing Autonomy's financial metrics in the final

15

two reported fiscal quarters in 2011 (immediately before the acquisition) against the same fiscal

16

quarters in 2010, and taking into consideration the allegedly improper (i) hardware transactions,

17

(ii) linked transactions, (iii) reseller transactions, and (iv) hosting transactions.  *Id.* ¶¶ 1.3.2-

18

1.3.4.  Whereas Brice's reports do little more than remove revenue that Brice asserts was

improperly recognized, Levitske's valuation analysis seeks to determine the impact of Brice's

19

revenue adjustments—such as they are—on other valuation metrics.   In other words, the

20

question is whether Autonomy is more or less valuable with the revenue adjustments, or whether

21

those adjustments have no material impact on Autonomy's value.  Levitske's analysis assumed

the accuracy of allegations in the Brice's expert disclosures and the VBOP.

22

23

24

On January 3, 2024, the government served its rebuttal disclosures.  *See* Rebuttal Report of Stephen Brice, Silverman Decl. Ex. B ("Brice Report 2").  Brice Report 2 provided lengthy substantive responses attempting to rebut Levitske's opinions, added substantial new information, and expanded into several entirely new areas of testimony.  *See* Def. Lynch's Mot. to Limit Proposed Expert Test. of Steven Brice at 13-15 (Lynch MIL No. 4) (ECF No. 297) (describing new areas of testimony).

On January 17, 2014, the government moved to exclude Levitske's testimony, *see* Gov't Mot. to Excl. Expert Testimony (ECF No. 298), and then the Court ordered that Dr. Lynch could provide a supplemental disclosure.  Tr. 40:24 to 41:2.

On March 13, 2024, Dr. Lynch served a revised report of Levitske.  *See* Expert Report of John Levitske ("Levitske Report 2"), ECF No. 453-1, Exhibit B. In this second expert disclosure, Levitske clarified the foundation for adjustments related to the VAR transactions and, unsurprisingly, also considered the extensive additional new information, analysis, and explanations provided in Brice Report 2 – but not in Brice Report 1 – that impacted the calculations,  observations and conclusions in Levitske's first expert disclosure.  *See generally* ECF No. 453-1, Ex. B.

Finally, on April 24, 2014 the government served a supplementary rebuttal report of Brice ("Brice Report 3"), which replied to Levitske's opinions in his second expert disclosure. *See* Supplementary Rebuttal Report of Steven Brice FCA ("Brice Report 3"), ECF No. 453-1, Ex. G.

## II.    LEGAL STANDARD

### A.    Expert Testimony Under Federal Rule of Evidence 702

Federal Rule of Evidence 702 limits expert testimony to opinions based on the application of reliable principles and methods.  Reliability is based on whether (1) the reasoning or methodology underlying the testimony is scientifically valid; and (2) the reasoning or methodology can properly be applied to the facts in issue.  *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592-93 (1993); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999)

4

DEFENDANT LYNCH'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE*
TO EXCLUDE EXPERT TESTIMONY OF JOHN LEVITSKE
3:18-cr-00577-CRB

(holding that *Daubert* framework applies not only to scientific testimony but all expert testimony).  When considering motions to exclude expert testimony, courts are not "to make ultimate conclusions as to the persuasiveness of the proffered evidence . . . nor . . . transform a *Daubert* hearing into a trial on the merits." *SDU Med. Corp. v. JMS Co., Ltd.,* 296 F. Supp. 2d 1140, 1147 (N.D. Cal. 2003) (citations omitted), *aff'd,* 471 F.3d 1293 (Fed. Cir. 2006).  Whether an expert's testimony is permissible under Rule 702 depends upon whether it would be helpful to the jurors who lack the expert's knowledge of and experience with [a subject matter.]" *United States v. Gan*, 54 F.4th 467, 475 (7th Cir. 2022).  "Rule 702 should be applied with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196  (9th Cir. 2014) (quoting *Daubert*, 509 U.S. at 588).  Under the Sixth Amendment, a defendant is guaranteed a "meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted).

**B.**    **Expert Disclosures under Federal Rule of Criminal Procedure 16**

Federal Rule of Criminal Procedure 16(b)(1)(C)(iii) requires defendants to provide a written expert disclosure parallel to that of the government.  Both parties must disclose "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief and the bases and reasons for them." Fed. R. Crim. P.  16(b)(l)(C)(iii).  Rule 16, as amended, does not require a recitation of proposed testimony and is satisfied if it "allows opposing counsel to prepare a pretrial motion to exclude the expert's opinion." *United States v. Yandell*, No. 2:19-CR-00107-KJM, 2023 WL 8948267, at *3 (E.D. Cal. Dec. 28, 2023) (denying motion to exclude expert testimony for failure to comply with Rule 16's disclosure requirements and concluding that the disclosure did not need to include "what reports or debriefs the expert reviewed" to inform his general background knowledge on the topic).

**III.   ARGUMENT**

**A.**    **Levitske's Expert Disclosure Complied with Fed. R. Crim. P. 16**

The government argues that the Court should "exclude all new opinions and analyses that were not timely noticed under Rule 16, including (1) the unsubstantiated assertion that 'cash

flow is the most important valuation metric'; (2) any opinions related to Mr. Levitske's new calculated metric of cash flow as a percentage of revenue; (3) the analysis that excludes VAR transactions in their entirety and any related conclusions; (4) the 'normalization' analysis and any related conclusions." ECF No. 453 at 19-20. The government's objections are should be rejected.

Rule 16(b)(1)(C)(iii) requires that a disclosure of the "bases and reasons" of expert opinions "must be sufficient to allow counsel to prepare a pretrial motion to exclude the expert's opinion." Yandell, 2023 WL 8948267, at *3; see also Fed. R. Crim. P. 16 adv. comm. notes to 2022 amends. (the parties' obligations under Rule 16 are intended to "facilitate trial preparation . . . .[and] prepare to cross-examine expert witnesses"). Here, Levitske Report 2 incorporates new information from Brice Report 2, further clarifies concepts already included in Levitske Report 1, and cites to the Appendices and Tables in Brice Report 1 and Brice Report 2 with specificity to show the sources for his opinion on the asserted revenue and cost and expense adjustments. Indeed, neither Brice Report 3 nor the government's motion in limine betrays any confusion whatsoever about Levitske's methodology or conclusions. Instead, the government's constant refrain is a complaint that some of Levitske's calculations and conclusions have changed, but those changes reflect new information provided by Brice, not changes or flaws in methodology.

Next, the government argues that Levitske's statement that cash flow is the most important driver in a valuation analysis is new. See ECF No. 453 at 14. The government is wrong. Levitske is repeating in Levitske Report 2 what he said in Levitske Report 1, where he explained that "[e]xpected free cash flow, or expected earnings as a key component of and translated into expected free cash flow, is generally the most important variable [in valuation]." Compare ECF No. 453-1, Ex. A (Levitske Report 1) ¶¶ 2.2.4 and 3.1.11 with ECF No. 453-1, Ex. B (Levitske Report 2) ¶¶ 2.2.4 and 3.1.13. Notably, the government did not move to preclude this opinion in its first attack on Levitske's expert disclosure. Additionally, to the extent the government complains that Levitske's disclosure did not provide adequate notice of his opinions related to aggregated changes to cash flows, revenues, expenses, and costs, see ECF

No. 453 at 14, this argument also fails.  Levitske's analysis and conclusions on this point were included in his first expert disclosure.  See ECF No. 453-1, Ex. A (Levitske Report 1, Att. G). The basis for these opinions, Brice Report 1, was updated in Brice Report 2.  As a result, Levitske's analyses and conclusions related to linked, VAR, and hosting transactions were also updated and were combined.  See ECF No. 453-1, Ex. B (Levitske Report 2, Att. G.1 (citing B.1, C.1, and F.1); Att. G.2 (citing B.1 and F.1); Att. G.3 (citing B.1, C.2, and F.1).

Second, the government claims that Levitske failed to provide timely notice for his "new" conclusions pertaining to cash flow as a percentage of revenue with respect to the impact of asserted revenue and cost and expense adjustments on the categories of hardware transactions, alleged linked transactions, VAR transactions, multi-period hosting transactions.  ECF No. 453 at 8.  Contrary to the government's assertion, Levitske did not add new concepts pertaining to cash flow as a percentage of revenue.  In his first expert disclosure, Levitske explained that he considered the impact of the adjustments between H1 2010 and H1 2011 in respect of profit, profit margin, and revenue growth and concluded whether cash flow would have been higher or lower.  *See* ECF No. 453-1, Ex. A (Levitske Report 1) ¶¶ 2.1.5, 3.1.1 and Att. G.  Having already introduced the concepts of cash flow and revenue in his first expert disclosure, he then simply divided cash flow by revenue in his second expert disclosure.  *See* ECF No. 453-1, Ex. B, Levitske Report 2, Att. A.1, B.1, C.1, C.2, F.1, G.1, G.2, G.3.  Accordingly, there is no basis to exclude conclusions pertaining to cash flow as a percentage of revenue on the basis that they are new and not timely noticed.

Likewise, the government's assertion that it was not provided timely notice of Levitske's allegedly "new" analysis that entirely excluded any adjustments related to the VAR transactions, *see* ECF No. 453 at 16, is flatly incorrect.  Levitske's second expert disclosure included an analysis that excluded the impact of the VAR transactions ***in addition to*** the analysis that included the impact of the VAR transactions.  *See* ECF No. 453-1, Ex. B.  Said differently, the analysis that excludes the impact of the VAR transactions is simply a filtered presentation of the analysis that does include the impact of the VAR transactions – both of which are part of

7

Levitske's second expert disclosure.  The analysis that includes the impact of the VAR transactions in his second expert disclosure is simply an updated version of the same analysis from his first expert disclosure.  *Compare* ECF No. 453-1, Ex. B (Levitske Report 2, Att. G.1 *with* ECF No. 453-1, Ex. A (Levitske Report 1, Att. G).  The changes prompting the updated version in Levitske's second expert disclosure stem from new information provided in Brice Report 2.  *See* ECF No. 453-1, Ex. B (Levitske Report 2, Att. B.1, C.1, C.2, and F.1 (combined in G.1, G.2, and G.3)).

The government's final assertion, that the normalization adjustment included in Levitske's second expert disclosure was not timely noticed under Rule 16, *see* ECF No. 453 at 14, is also meritless.  The asserted adjustments in Brice Report 1 concerning the VAR transactions did not lead to the same degree of "episodic and sporadic" impacts on the subject periods in Levitske's first expert disclosure and thus no normalization adjustment was applied. In Brice Report 2, Brice included additional information that concerned the capitalization and amortization of costs and expenses related to VAR transactions.  Silverman Decl. Ex. B (Brice Report 2, ¶ 5.3.13(b); Appendix K ¶¶ 1.1.7(a), 1.1.8 (a) (b), Appendix L).  This information was considered alongside existing information and incorporated into Levitske's analysis in his second expert disclosure, leading the VAR transactions and their impacts on the subject periods to appear more "episodic and sporadic" and necessitating a normalization adjustment.  *Compare* ECF No. 453-1, Ex. A (Levitske Report 1, Att. C.1, C.2) *with* ECF No. 453-1, Ex. B (Levitske Report 2, Att. ¶ 2.1.20).  Accordingly, Levitske's disclosure is sufficient because he cited to both of Brice's expert disclosures as the sources for his opinion on revenue and cost and expense adjustments as well as the VBOP.

In any event, to the extent the government disagrees with the "correctness of [Levitske's] testimony, its recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of its own expert witness[] ."  *Humetrix Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001).  Levitske's disclosure is more than sufficient under Rule 16's requirements.

**B.      Levitske's Opinions on Valuation Impact Are Admissible Under Rule 702**

The government also asks the Court to exclude Levitske's proposed testimony on the impact of revenue adjustments because it: (i) lacks relevance, in part, and (ii) relies on unreliable methodologies.  Both arguments are without merit.   Levitske's testimony is relevant to the jury's assessment of Dr. Lynch's motive (or lack thereof) to engage in the alleged fraud and the lack of materiality of any alleged misrepresentations in the financial statements.  Levitske's testimony is further admissible under Rule 702 because it is the result of a reliable methodology that is described in detail in his second expert disclosure.  The government's disagreement as to whether Levitske's methodology or opinion is correct is a matter for cross-examination, not exclusion.

**C.      Levitske's Opinions are Relevant and Helpful to the Fact Finder in Evaluating the Defendants' Lack of Motive and Lack of Materiality**

Dr. Lynch is accused of misrepresenting Autonomy's financial metrics by causing Autonomy to engage in certain transactions in order to create the appearance that Autonomy was more valuable than it actually was.  Levitske will undermine the government's theory by demonstrating that the revenue adjustments urged by the government and Brice do not materially impact Autonomy's value, and that Autonomy was just as valuable, and in some respects more valuable, if the transactions about which the government complains are eliminated.  Evidence of the impact of the revenue adjustments on Autonomy's value is relevant for several reasons.  It supports the defense theory that even if investors and buyers of Autonomy shares like HP were induced by flattered revenue figures, they were not defrauded because they got the benefit of their bargain:  the highly valuable, cash-laden company with the magical software product they thought they were buying.  Ninth Circuit law is clear that fraud-in-the-inducement does not constitute fraud, *see Milheiser*, 98 F.4th at 944, and Levitske's anticipated testimony goes directly to whether HP and others were merely deceived, if anything, but not cheated.  They got the benefit of their bargain.  Levitske's testimony also demonstrates that Dr. Lynch had no incentive to risk criminal liability by engaging in these suspect transactions and misrepresenting

9

them:  the value of Autonomy would have been the same had the transactions never occurred. Moreover, any such transactions would ultimately be immaterial.  Expert testimony is relevant if it logically advances a party's position on a material aspect of the case, *City of Seattle v. Monsanto Co.*, No. 16-cv-107, 2023 WL 5320247, at *7 (W.D. Wash. Aug. 18, 2023) (holding that testimony on reasonableness was relevant under Rule 702 because it addressed a disputed element of the plaintiff's public nuisance claims), and Levitske's testimony logically advances Dr. Lynch's position that he had no motive to use the allegedly fraudulent transactions and reporting to inflate Autonomy's value and that any such transactions were immaterial.

Specifically, the government complains that Levitske failed to explain the relevance of the cash flow as a percent of revenue metric.  ECF No. 453 at 8.  That argument is nonsense because Levitske stated the relevance of this specific metric seven times in his second expert disclosure.  *See* ECF No. 453-1, Ex. B (Levitske Report 2, p. 10 fn. 4, p. 30 fn. 36, p. 36 fn. 46, ¶¶ 2.1.29(h)(i) and (iii), 3.1.12(g)(i), and 3.1.12(g)(iii)).  Additionally, the government characterizes the portion of Levitske's analysis that excluded the impact of the VAR transactions as irrelevant.  ECF No. 453 at 16.  However, Levitske's testimony concerning the comparisons of the impact to cash flows based on the inclusion and exclusion of VAR transactions is relevant to his opinion that the misrepresented transactions would not materially affect the value of a company like Autonomy.

       1.    **Levitske's Opinions are Based on a Reliable Methodology**

The government asserts that Levitske's opinions are not the product of reliable principles and methods.  However, the government's objection confuses "correctness" of the resulting opinion with reliability of the methodology applied to the facts.  *See Comet Techs. v. XP Power LLC*, No. 20-cv-06408, 2022 WL 2442810, at *1 (N.D. Cal March 2, 2022) ("Importantly, the Court's duty is to evaluate the soundness of the expert's methodology, not the correctness of the expert's conclusions.").  Levitske's methodology was to take the assumptions stated in Brice Report 1, Brice Report 2, and the VBOP; apply the asserted revenue adjustments; and then make corresponding reclassifications, timing adjustments or counter-transaction adjustments.

Levitske's methodology remained unchanged between his first and second expert disclosures. His methodology has consistently been to assess the impact of the asserted revenue adjustments in the context of how companies generally are valued. *See* ECF No. 453-1, Ex. A (Levitske Report 1, ¶¶ 2.1.6  (a) and 2.1.7); ECF No. 453-1, Ex. B (Levitske Report 2, ¶¶ 2.1.5 (a) and 2.1.6.).  Levitske performed a reasonable, explained, and evidence-based analysis to reach his conclusions.

The government first faults Levitske for backing out the hardware transactions, despite the fact that the government's own VBOP suggests that all hardware transactions should be removed from Autonomy's financial statements.  Given the government's argument, the logical question to ask—and one that is critical to Dr. Lynch's defense—is what impact the hardware sales had on the value of the company and whether removing those sales affects that value and if so, how.  Levitske's analysis thus segregates the impact of the hardware sales for purposes of his valuation analysis. *See* ECF No. 453-1, Ex. B (Levitske Report 2, Att. A.1).  The government fails to show how this approach was improper, and it is plainly relevant.

Second, the government argues that Levitske changed his methodology in his second expert disclosure with respect to how he backed out the revenue and expenses related to the allegedly linked transactions.  That argument is without merit.  Levitske's methodology did not change between his first and second expert disclosure; rather, his revisions stemmed from assessing how the new information provided in Brice Report 2 impacted costs and expenses. *Compare* ECF No. 453-1, Ex. B (Levitske Report 2, Att. B.1) *with* Silverman Decl. Ex. B ("Brice Report 2"), ¶ 2 5.3.13 (b), Appendix K 1.1.4, Appendix K fn. 3, Appendix L fns. 1, 2, 3.

Third, the government faults Levitske for not making in his first expert disclosure an assumption that was absent from Brice's first expert disclosure, namely that the costs and expenses of the Linked VAR transactions were in some cases capitalized or amortized. *See* ECF No. 453 at 11.  As Levitske's reports have consistently made clear, he has relied on assumptions made by Brice and the government in its VBOP.  Only after assumptions about capitalization and amortization were included in Brice's second expert disclosure could Levitske work these

assumptions into his second expert disclosure, as was consistent with his methodology.  *See* Silverman Decl. Ex. B, Brice Report 2, ¶ 5.3.13 (b).  Likewise, any changes to Levitske's observation regarding the impact of applying the VAR adjustments on his valuation metrics between Levitske Report 1 and Levitske Report 2 are due to new information provided in Brice Report 2.  *See* XXXX Decl. Ex. B, Brice Report 2, Appendix K ¶¶ 1.1.7 (a) and 1.1.8 (a) (b), Appendix L section "VAR Transactions."

Fourth, the government again faults Levitske for not making an assumption that was absent from Brice Report 1, namely that not all cash was received and recorded up-front related to multi-period hosting transactions.  *See* ECF No. 453 at 10.  As before, changes to Levitske's adjustments and observations with respect to multi-period hosting transactions are the result of new information provided in Brice Report 2, not the result of a change in his methodology.  *Compare* ECF No. 453-1, Ex. B (Levitske Report 2, Att. F.1) *with* Silverman Decl. Ex. B, Brice Report 2, ¶ 5.3.16.

Fifth, the government attacks Levitske's "conclusory assertion that '[c]ash flow is the most important driver in a valuation analysis'" on the basis that it does not rest upon a reliable foundation.  ECF No. 453 at 11.  The government's argument is not well-founded because Levitske provides an entire section on valuation methods that demonstrates that cash flow is the most important driver in a valuation analysis.  *See* ECF No. 453-1, Ex. A (Levitske Report 1, ¶¶ 2.2.1-2.2.11); ECF No. 453-1, Ex. B (Levitske Report 2, ¶¶ 2.2.1-2.2.12).  That section, in turn, is based on Levitske's extensive experience as an expert conducting valuation analysis.

Sixth, the government "alleges that Levitske's normalization analysis is not based upon a reliable methodology" but fails to specify the reason why.  *See* ECF No. 453 at 17.  Because the government apparently wants Levitske to engage in a different analysis, it engages in a factual debate regarding how to define an outlier.  *See* ECF No. 453 at 18.  Similarly, the government attacks the inputs used in the calculation of Levitske's average percentage of revenue realized in two ways, both of which lack merit.  To support its position, the government argues that four of the Direct VAR transactions should not have been incorporated into Levitske's calculation of the

average percentage of revenue realized because the transactions were ultimately cancelled.  *Id.* at 18-19.  The government's assertion that the transactions should not have been included in Levitske's calculation is disputed and need not be accepted by Dr. Lynch's expert.  Such factual disputes at best go to the weight of Levitske's testimony, and not its admissibility.  *See MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341, 2014 WL 971765, at *2 (N.D. Cal. Mar. 5, 2014) ("Lawton appropriately disclosed, in advance, the factual basis and assumptions for her opinions.  If at trial those are found to be inaccurate or ill-founded, then the jury may afford the opinion less weight, if any.  However, it is not grounds for striking that portion of the anticipated testimony."); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004) (criticism on the expert's selection of documents to review did not go to the reliability of methodology, but to the "weight of his testimony-an issue properly explored during direct and cross-examination.") (internal citations and quotations omitted).  Attacks on factual underpinnings go to the weight of the testimony and not the admissibility.  *See MediaTek Inc.*, 2014 WL 2854890, at *4 ("Though Freescale disagrees with Lawton's conclusions, and has raised some questions [to] their factual underpinnings, those issues bear on the weight to be accorded the testimony [rather] than its reliability or probative value.").

Additionally, the government complains that two of the four Direct VAR transactions should not have been considered in his calculation due to the timing of the revenue recognition. ECF No. 453 at 19.  The government takes issue with the two Direct VAR transactions as inputs to the calculation with respect to the facts, and not the methodology Levitske applied – *i.e.*, the calculation of the average percentage of revenue realized.  However, the government once again faults Levitske for not considering facts that were absent from Brice Report 1 and Brice Report 2.  *See* ECF No. 453 at 19 (citing only Brice's supplemental rebuttal report, which post-dated Levitske Report 2).  Rather than questioning Levitske's methodology, the government merely points out over and over again that some of Levitske's numbers and conclusions have changed, but those changes have nothing to do with methodology and everything to do with new

assumptions from Brice that only  revealed themselves *after* Levitske's first expert disclosure. Levitske's methodology is sound and consistent.

>     **2.**     **The Proposed Expert Testimony Is Admissible Under Fed. R. Evid. 401, 402, 403**

Finally, the government summarily claims that Levitske's proposed testimony is not admissible under Federal Rules of Evidence 401, 402, and 403, but cites no authority and applies no analysis.  *See* ECF No. 453 at 6, 16, 17, 20, 22.  The Court should therefore reject the government's motion with respect to these rules.

## IV.     CONCLUSION

For the reasons stated herein, the Court should deny the government's motion *in limine* to exclude the expert testimony of John Levitske.

Dated: May 3, 2024                          Respectfully submitted,


                                            */s/ Brian M. Heberlig*
                                            Reid H. Weingarten
                                            Brian M. Heberlig
                                            Michelle L. Levin
                                            Nicholas P. Silverman
                                            Drew C. Harris
                                            (Admitted Pro Hac Vice)
                                            **Steptoe LLP**
                                            1114 Avenue of the Americas
                                            New York, NY 10036
                                            Telephone: (212) 506-3900

                                            Jonathan M. Baum (SBN: 303469)
                                            **Steptoe LLP**
                                            One Market Street
                                            Steuart Tower, Suite 1070
                                            San Francisco, CA 94105
                                            Telephone: (510) 735-4558
                                            jbaum@steptoe.com

                                            Christopher J. Morvillo
                                            Celeste L. Koeleveld
                                            Daniel S. Silver
                                            (Admitted Pro Hac Vice)
                                            **Clifford Chance US LLP**
                                            31 West 52nd Street
                                            New York, NY 10019
                                            Telephone: (212) 878-3437
                                            christopher.morvillo@cliffordchance.com

                                            *Attorneys for Defendant*
                                            *Michael Richard Lynch*

---

15

DEFENDANT LYNCH'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE*
TO EXCLUDE EXPERT TESTIMONY OF JOHN LEVITSKE
3:18-cr-00577-CRB