Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA  94105
Telephone:  (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Drew C. Harris
(Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 506-3900

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone:  (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

# NORTHERN  DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No.: 3:18-cr-00577-CRB<br>Judge: Hon. Charles Breyer<br><br>**DEFENDANT MICHAEL RICHARD LYNCH'S MOTION *IN LIMINE* TO EXCLUDE GOVERNMENT DEMONSTRATIVES**<br><br>Court:  Courtroom 6 – 17th Floor<br>Date Filed:  May 13, 2024<br>Trial Date:  March 18, 2024 |

## I. INTRODUCTION

Last Thursday, May 9, 2024, the government provided to the defense a 246-page packet of slides that it apparently intends to use as demonstratives during the testimony of its expert, Steven Brice. The packet now consists of 240 slides after multiple additional disclosures, with the latest revisions provided late last night. As further explained below, including in a chart appended to this motion, the slides are objectionable for the following general reasons:

1. **Slides 237-240** which comprise a section called "The Restatement" and purport to compare Brice's findings with "Restatement" introduce a topic that the Court has precluded evidence about at this trial: Christopher Yelland's Restatement. Even more problematic, however, is the fact that the slides rely on Exhibit 2641, which is not the ASL Restatement at all, but the summary charts that Morgan Lewis and Yelland prepared at the government's request and that summarized Yelland's revenue adjustments and applied transfer pricing analysis to estimate how those ASL revenue adjustments would have impacted the Autonomy Group as a whole. The ASL Restatement and the summary charts have been precluded because they are infected with litigation bias and because HP, despite waiving privilege, has withheld documents subpoenaed by the defense that the defense sought to impeach the Restatement and summary charts. Because both Yelland's ASL Restatement and Yelland's summary charts are inadmissible, Brice should not be permitted to rely upon them or refer to them in explaining his opinions.

2. **Slides** that reflect mere differences of accounting judgment with Deloitte. As the Court has already ruled, this trial is not a battle of the experts, and where Brice and Deloitte disagree about the appropriate accounting treatment applicable to the same essential set of facts, that mere disagreement is irrelevant.

3. **Slides** that rely on and quote from documents that are not in evidence. As a general matter, the government should not be permitted to backdoor documents in through Brice that have not been admitted into evidence and as to which the defense has not had an opportunity to cross-examine witnesses familiar with the documents. In many instances, witnesses were called who could have been asked about the documents, but the

government chose not to question those witnesses or attempt to introduce the documents through them.  Now is not the time to admit such documents through an expert who cannot establish that the records are business records and who is speculating about their meaning.

4. **Slides** that are argumentative or misleading.

II. **ARGUMENT**

  A. **Slides 237-240 Purporting to Compare Brice's Findings with the ASL Restatement and Yelland's Summary Charts Should be Precluded**

Brice's slide deck concludes with three slides arguing that the ASL Restatement corroborates his foregoing opinions.  While the slides refer to the Restatement, the source provided on the slides—Exhibit 2641—is in fact the summary charts that Morgan Lewis and Yelland prepared at the government's request to attempt to quantify the impact of the ASL Restatement on Autonomy Group financials using a complicated transfer pricing analysis.  Regardless of whether Brice is referring to the ASL Restatement or Yelland's summary charts, Brice's corroboration argument is inadmissible and should be excluded.

First, the government has argued that the ASL Restatement is admissible because "it's corroborative of [Brice]," Apr. 10, 2024 Tr. at 4038; *id.* at 4040 ("[T]he jury should be able to see that two independent professionals looking at the same body of evidence came to substantially the same conclusions. It corroborates the expert ...."), but the Federal Rules of Evidence prohibit experts from testifying that other opinions corroborate their testimony.  An expert witness cannot testify that other experts, not present in the courtroom, "corroborate his views."  *United States v. Grey Bear*, 883 F.2d 1382, 1392-93 (8th Cir. 1989); *see, e.g.*, *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994) (finding that district court had erred by allowing expert to "bolster his opinion evidence" by testifying that his conclusions were "essentially the same" as those of a non-testifying expert and finding that the corroborating opinion was "clearly hearsay and prejudicial to the defendant"); *The New Wigmore* § 4.7.1(b)(1) (2d ed. 2011) ("Using Rule 703 to introduce evidence of corroboration by other experts is

generally inappropriate.").[1]  As the government has conceded, Brice did not rely on the ASL Restatement in reaching his opinions, *see* ECF No. 476 at 6; instead he wishes to use it as corroboration—as reflected by slides 244-246, which summarize how the ASL Restatement reached a similar conclusion.  That use is not permitted and merits exclusion.

Second, even if Brice properly relied on the ASL Restatement in reaching an opinion—which he did not—it would be inadmissible under Fed. R. Evid. 703.  The Court has already held that the ASL Restatement is inadmissible because the evidence necessary to explain its meaning—Yelland's description of what transactions underlie the ASL Restatement and why he concluded the accounting for each transaction was improper—is inadmissible.  *See United States v. Bonds*, 608 F.3d 495, 508 (9th Cir. 2010) (holding that a business record was inadmissible because the context necessary to establish relevance was inadmissible).[2]  The numbers and categories that Brice uses come from Yelland's inadmissible opinion—not the ASL Restatement itself.  Both that opinion and the ASL Restatement are inadmissible, so Brice cannot testify based on them unless the government satisfies Fed. R. Evid. 703.

The government has not and cannot satisfy Fed. R. Evid. 703, which creates a "presumption against disclosure" of such inadmissible bases, permitting disclosure "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial

---

[1] *See also In re Intuniv Antitrust Litig.*, No. 16-cv-12653, 2020 WL 5995326, at *10 (D. Mass. Oct. 9, 2020) ("Although experts may testify as to the things on which they rely, experts cannot bolster or corroborate their opinions with the opinions of other experts who do not testify because such testimony improperly permits one expert to become a conduit for the opinion of another expert, who is not subject to cross-examination." (quoting Handbook of Fed. Evid. § 703:1 (Nov. 2019))); *Merck Eprova AG v. Gnosis SPA*, No. 07-cv-5898, 2011 WL 10818492, at *2 (S.D.N.Y. June 8, 2011) (excluding testimony regarding third-party opinions offered "as a confirmation of the opinions of [testifying expert]" because "courts have routinely refused to allow experts to testify as to the agreement of colleagues with their opinions under Rule 703").

[2] The Court previously explained that the ASL Restatement is "a business record which is only made meaningful by a description of what is on it and why things were included and why things weren't included."  Apr. 10, 2024 Tr. at 4034.  That description of "what went in [the ASL Restatement" is "a reflection of [Yelland]'s expertise," and inadmissible.  *Id.* at 4035.  The Court therefore held that Yelland's testimony about the ASL Restatement was inadmissible.  *Id.* at 4036.

1  effect" and witnesses in the field would reasonably rely on such evidence. *Turner v. Burlington*
2  *N. Santa Fe R. Co.*, 338 F.3d 1058, 1061-62 (9th Cir. 2003) (excluding lab report because the
3  expert was using the report "as substantive evidence of his ultimate conclusion"). The
4  government cannot satisfy either prong here. *See, e.g.*, *Christiansen v. Syverson*, 516 F. Supp. 3d
5  1151, 1157 (D. Idaho 2021) (holding that expert's references to a non-testifying expert's opinion
6  were inadmissible under Fed. R. Evid. 703 because they were "corroborative in nature," and
7  "[t]hus, their probative value is limited"); *NetAirus Techs., LLC v. Apple, Inc.*, No. 10-cv-3257,
8  2013 WL 12322092, at *6 (C.D. Cal. Oct. 23, 2013) (precluding government's expert from
9  testifying about facts and data underlying two surveys under Rule 703 where the evidence was
10 otherwise inadmissible).

11       Third, any testimony about the ASL Restatement is inadmissible under Fed. R. Evid. 403
12 and would open the door to post-acquisition evidence, or violate Dr. Lynch's right to present a
13 full and fair defense. *See* Apr. 29, 2024 Tr. at 5918 ("I've kept out the restatement [and] the
14 valuations . . . for the very reason, as you well pointed out, it would introduce -- it would make
15 relevant the post-acquisition conduct."); Apr. 10, 2024 Tr. at 4035, 4042 (asking how it would be
16 possible to cross-examine Yelland's opinions without post-acquisition information, and noting
17 that the post-acquisition impeachment was "pretty persuasive"). If Brice testifies that the ASL
18 Restatement yields similar results, then the defendants need to explain how the ASL Restatement
19 was formed by Morgan Lewis and Yelland in an attempt to serve HP's litigation interests—just
20 as Brice's opinions were formed in an attempt to serve the government's litigation interests.
21 Their results corroborate each other because they suffer from the same bias. Establishing that
22 fact will require explaining how the ASL Restatement was based on arguments crafted by
23 litigation counsel and their accountants (Morgan Lewis and PwC); how those arguments were
24 crafted in order to corroborate false accusations of fraud in November 2012 contemporaneous
25 with internal valuations that showed Autonomy was worth its purchase price; and how those
26 false accusations were caused by HP's own mismanagement of Autonomy. Without such
27 context, Dr. Lynch will be unable to present a full and fair defense. But given the Court's ruling
28

that post-acquisition evidence is inadmissible under Fed. R. Evid. 403, so too is Brice's reference to the post-acquisition ASL Restatement.

## B. Slides that Reflect Mere Differences in Accounting Judgment with Deloitte Should be Eliminated from Brice's Presentation

The Court has ruled that the jury will "not . . . be given those transactions" that come down to mere differences of judgment between Deloitte and government expert Steven Brice. Apr. 10, 2024 Tr. at 3911-12 ("I won't let a jury listen to whose judgment was right and whose judgment was wrong[.] [T]hey're not going to hear that case."). The government agreed. *Id.* at 3912 ("Your Honor, broadly I agree with you."); *id.* at 3911 ("We agree [that this should not be a battle of experts]"). Dr. Lynch moved to exclude the transactions that come down to mere differences of judgment—transactions where Deloitte and Brice had access to the same documents and reached different judgments about the proper accounting treatment—and the Court ruled that Brice would not be permitted to testify about so-called timing differences where those differences stem purely from a difference in accounting judgment about how installation requirements should be treated.

That ruling makes sense. This is not a civil corporate case in which the jury is tasked with deciding whether Autonomy's accounting was correct. The only question presented is whether Dr. Lynch willfully misrepresented material facts by intentionally causing Autonomy to employ the wrong accounting treatment. Transactions in which an expert entity blessed Autonomy's accounting do not answer that question and therefore are not relevant. No one is suggesting, nor could anyone suggest, that Deloitte's accounting judgments were so obviously misguided and wrong that no one could have relied upon them, much less that reliance upon Deloitte's judgments establishes criminal intent. Due process and fundamental fairness do not permit the conviction of a defendant based on the contention that he should have hired Mazars instead of Deloitte.

Indeed, fraud demands proof of knowing misrepresentations that are intended to deprive the victim of property. *See, e.g.*, *United States v. Miller*, 953 F.3d 1095, 1102–03 (9th Cir. 2020) ("[W]ire fraud requires the intent to deceive *and* cheat—in other words, to deprive the victim of

money or property by means of deception."). There must be a convergence "between the intent to defraud and the harm suffered," such that the material misrepresentation must be that which causes the victim to part with money or property. *United States v. Holmes*, No. 5:18-CR-258-EJD, 2020 WL 666563, at *18 (N.D. Cal. Feb. 11, 2020); *see also United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989) ("[T]he intent must be to obtain money or property from the one who is deceived[.]"). False statements only satisfy the wire fraud statute if the defendant "knew the[] representations were false." *United States v. Balwani*, No. 18-cr-258, 2022 WL 16835680, at *5 (N.D. Cal. Nov. 7, 2022). But where the government's expert merely disagrees with Deloitte and Autonomy, there is no subjective knowing and intentional misrepresentation; there is only a battle of the experts over which accounting judgment is objectively correct. "[This is not] a trial over a battle of experts. This is a criminal case . . . in which the defendant is accused of committing fraud," not incorrect accounting judgments. Apr. 10, 2024 Tr. at 3911.

Accordingly, slides that show no more than a difference in accounting judgment should be eliminated from Brice's slide deck, and Brice should not be permitted to offer testimony related to the topics on those slides.

### C. Brice's Slides Must Not be Used as a Backdoor to Present Evidence that has Not Been Admitted and is Inadmissible to the Jury

As detailed further in the chart attached, *see* Koeleveld Decl., Exh. 1, Brice's slides are replete with references to, and quotations from, documents that are not in evidence. While it is true that an expert may rely on inadmissible evidence in forming his opinions, that does not give the expert free rein to put unadmitted and inadmissible evidence before the jury. Nor should Brice be permitted to present documents that he reviewed but that are typically not available—and were not available to Deloitte—at the time accounting judgments are being made in real time.

Fed. R. Evid. 703 permits an expert to rely upon inadmissible hearsay only under specific circumstances. In order to disclose inadmissible evidence to the jury under Rule 703, (1) Brice must have "base[d] an opinion" on the evidence; (2) "experts in the particular field" must "reasonably rely on" such evidence; and (3) the "probative value" of the evidence "in helping the

jury evaluate [Brice's] opinion" must "substantially outweigh[] the[] prejudicial effect" of the FRC Report.  Fed. R. Evid. 703.  The hearsay evidence included in the slides does not meet this test.

First, IFRS accounting experts do not typically obtain internal emails and documents from the companies they are auditing, much less from the business partners of the companies being audited, yet Brice cites repeatedly to internal documents from companies like FileTek, MicroTech, and MicroLink that that have not been admitted into evidence and that were not available to Deloitte at the time of Deloitte's audit work.  Nor has the government made any contrary showing in attempting to carry its burden of proof.  *See United States v. W.R. Grace*, 597 F. Supp. 2d 1143, 1149 (D. Mont. 2009) (prohibiting government's experts from offering opinions based on certain data where the government failed "to show that an expert in any field would rely upon the data in question"); *see also* Fed. R. Evid. 703 adv. comm. note (Rule 703 would not permit an opinion about "the point of impact in an automobile collision based on statements of bystanders" because bystander statements are not typical source material in the relevant field).  Accountants rely on contemporaneously available information, not evidence made available by subpoena during an investigation long after the fact.  Tr. at 3556:8-11 (testimony of Lee Welham agreeing that "hindsight should not be used when applying an accounting policy" and "[y]ou have to use the information available at that point in time."); *see Rash v. J.V. Intermediate, Ltd.*, No. 04-cv-681, 2006 WL 5230074, at *5 (N.D. Okla. Jan. 5, 2006) (ordering accounting expert not to rely on information that was not available at the time of the financial statement because that would be "improper accounting methodology").  It is inconsistent with IFRS accounting's focus on contemporaneity to rely on evidence from an after-the-fact inquiry.

Second, even if the previous element were satisfied, only the resulting opinion would be admissible—not references to the underlying evidence.  "[W]hen an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is **not** admissible simply because the opinion or inference is admitted." Fed. R. Evid. 703 adv. comm. note (emphasis added).  Rule 703 creates a "presumption against disclosure" of such

inadmissible bases, permitting disclosure "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Turner*, 338 F.3d at 1061-62 (excluding lab report because the expert was using the report "as substantive evidence of his ultimate conclusions"). Rule 703's standard "inverts the burden"[3] of persuasion from Rule 403 and eliminates the requirement that prejudice be unfair. "Rule 703 presents a balancing test that puts a thumb on the scale *against* the disclosure of inadmissible evidence[.]" *Christiansen v. Syverson*, 516 F. Supp. 3d 1151, 1157 (D. Idaho 2021) (emphasis in original); *accord United States v. Velasquez*, 745 F. App'x 283, 284 (9th Cir. 2018) (affirming exclusion of hearsay considered by an expert based on 703 balancing test).

Here, the lack of probative value and the prejudice stems from the fact that Brice speculates about what exchanges in emails mean without having the full context for those emails and that Brice takes emails entirely out of context. For example, as detailed further in the attached chart, *see* Koeleveld Decl., Exh. 1, Brice relies on internal FileTek documents to draw conclusions about FileTek's transactions with Autonomy. But Loomis was not questioned about those documents, despite being called by the government as a witness, and FileTek's accounting decisions, which are personal to FileTek and which apply US GAAP, not IFRS, obviously have nothing to do with Autonomy. The prejudice from Brice's use of the internal FileTek documents is thus manifest. Another example is Brice's opinions about hosting transactions as to which no witness testified. Brice cannot say what the companies involved in those transactions—such as IBM Ameriprise, Citadel, Charles Schwab, and Metlife—intended to do with their licenses, and he is therefore in no position to opine on those transactions.

In sum, Brice should not be permitted to present such evidence to the jury via his slides or otherwise.

---

[3] *Munoz v. PHH Mortg. Corp.*, No. 08-cv-759, 2022 WL 138670, at *4 (E.D. Cal. Jan. 14, 2022) (recognizing that "Rule 703 inverts the burden on the 'prejudice versus probativity'" compared to the traditional Rule 403 test, such that under Rule 703 test "the proponent of the opinion . . . may disclose those facts or data to the jury only if that party can demonstrate that their probative value 'substantially' outweighs their prejudicial effect").

**D.     Slides that are Argumentative and Misleading Should be Eliminated from the Brice's Slide Deck**

Finally, it goes without saying that slides that are argumentative or misleading should not be presented to the jury. For example, Brice's slides repeatedly refer to "evidence of backdating" and present "backdating" of certain transactions as fact, whereas it is heavily disputed whether transactions were in fact improperly backdated. Additional examples are provided in the chart attached, *see* Koeleveld Decl., Exh. 1. The time for argument is in a closing argument, not during a presentation by an expert.

**III.    CONCLUSION**

For the foregoing reasons, Dr. Lynch's motion to objections to certain slides in Brice's slide deck should be sustained.

Dated: May 13, 2024

Respectfully submitted,

By: _/s/ Celeste L.M. Koeleveld_
Celeste L.M. Koeleveld

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**CLIFFORD CHANCE US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437

Jonathan M. Baum (SBN: 303469)
**STEPTOE LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Drew C. Harris
(Admitted Pro Hac Vice)
**STEPTOE LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

*Attorneys for Defendant*
*Michael Richard Lynch*