Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA  94105
Telephone:  (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Drew C. Harris
(Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 506-3900

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone:  (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

# NORTHERN  DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 3:18-cr-00577-CRB |
| Plaintiff, | Judge: Hon. Charles Breyer |
| vs. | **DEFENDANT MICHAEL RICHARD LYNCH'S MOTION *IN LIMINE* TO EXCLUDE IMPROPER SUMMARY WITNESS TESTIMONY** |
| MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN, | |
| Defendants. | Court:  Courtroom 6 – 17th Floor<br>Date Filed:  May 14, 2024<br>Trial Date:  March 18, 2024 |

# I.    INTRODUCTION

Following the Court's comments Monday afternoon about the proper scope of the testimony of the government's summary witness, the government at 9:10 pm Monday evening circulated two new PowerPoint presentations that the government said it may use with its summary witness.  Far from eliminating improper argument and objectionable content from the slides, the government doubled down, adding extra slides to its original slide deck to impose its own narrative on the events in question that will serve as an extended preview of its closing argument.  At the same time, the government made no changes to any of its existing slides, keeping argumentative and complex bar graphs in place that do not serve as neutral summaries of voluminous evidence before the jury but instead cherry-pick select transactions and events and present those events in a complicated and misleading manner.  The government's proposed summary witness testimony is therefore objectionable because it:  (1) consists of improper quasi-expert testimony involving complex judgment and analysis beyond what is permitted from a lay witness under Rule 701(c); (2) presents a closing argument-type narrative outside the scope of permissible demonstrative evidence and summary charts permitted under Rule 1006; and (3) relies on documents that have not been admitted in evidence, including the spreadsheets maintained personally by Sushovan Hussain.

For these reasons, Dr. Lynch asks the Court to limit the scope of the testimony from the government's summary witness.

# II.    ARGUMENT

## A.    The Government Should Not be Permitted to Offer Quasi-Expert Testimony Through its Summary Witness

Rather than summarizing voluminous data for the jury, the presentations prepared by the government (*see* Exhs. A and B, for example, which are inserted below and appended to this motion) reveal that it intends to use its summary witness as a kind of "quasi expert" to introduce demonstrative charts containing complex accounting analysis and conclusions beyond the scope of a non-expert witness.  Rule 701 provides that opinion testimony from a non-expert must be limited to opinions that are:  "(a) rationally based on the witness's perception; (b) helpful to

clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.

While described as a straightforward analysis of a hand-picked selection from Mr. Hussain's 255 spreadsheets—which are themselves complex, multi-faceted, and color-coded documents that were prepared and maintained by Mr. Hussain personally (*see* Exhibit C attached hereto, which is one of the government's proposed slides that shows snippets from one of the spreadsheets) and notably are not in evidence—the government's demonstratives go far beyond the type of analysis permitted by a summary witness.  Below is one of the government's slides containing its analysis of certain of Mr. Hussain's spreadsheets in Q4 2009.



Exhibit A.

This demonstrative would be a stretch for a qualified and properly noticed expert witness, and is wholly inappropriate for a non-expert summary witness.  Rather than "summarizing" Mr.

Hussain's spreadsheets, the chart makes several highly contested and argumentative conclusions, starting with classifying a set of transactions (represented in white) as "failed deals."  The witness has no basis for classifying deals as "failed"—the vast majority of the deals described as "failed" ultimately closed with the end user—and she has no personal knowledge as a fact witness upon which to base the conclusions reflected in the chart.  Additionally, several of the deals in the charts, such as the Poste Italiane deal identified in the top of the left-hand portion of the chart, have not been the subject of any testimony to date in this trial.

After identifying "failed deals," the charts then purport to show that certain transactions were "adjusted" into reseller transactions after the end of the quarter (identified in the chart as the "Cut-off").  The "cut-off" line is highly misleading and argumentative, in that it suggests that everything to the right of the line occurred *after* the quarter ended, apparently based solely on whether something appeared in a spreadsheet before a point in time, before the spreadsheet was updated to incorporate events that occurred *before quarter-end and before the update*.  Not surprisingly, given that Mr. Hussain was in London and events continued to occur in the United States after he signed-off for the night, his spreadsheets were sometimes not updated until the following day, after the end of a quarter.  Even though the spreadsheets therefore cannot serve as a basis for an argument that a transaction occurred "after" a cut-off or has been back-dated, the government's slides give the misleading impression that many deals were closed *after* quarter-end.

Furthermore, the determination of whether revenue can be fairly recognized after quarter-end is a fact-specific inquiry into whether the parties have reached an agreement *in principle* before the close of the quarter, and then reduced it to writing after quarter-end.  As Mr. Welham testified, revenue is recognized on the agreement in principle.  Yet the summary witness has no independent knowledge of when an agreement was reached, and does not purport to reflect this in the chart.  Lastly, rather than "summarizing" the spreadsheets, the charts cherry-pick specific transactions the government has impugned, grouping them together to look like unbiased data.  These slides are pure argument, not summaries.  The Q1 2010 "analysis" suffers from the same deficiencies:

Exhibit B.

**B.    The Summary Witness Should Not be Permitted to Use Argumentative Slides to Give a Mini Closing Argument**

The government's determination to give a mini-closing argument through its summary witness is apparent from the way it has interspersed select emails and other documents—plucked out of context and selected for maximum argumentative effect—into its slide deck.  This is improper, and it has nothing to do with summarizing voluminous evidence for the jury.  And mixing in slides with emails among the other improper summary slides like those discussed above does not make those slides any easier to comprehend; it just serves to create an improper closing-type narrative.

Rule 1006 provides that a party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  Fed. R. Evid. 1006.  Summary charts are supposed to help the jury by simplifying complicated evidence.  The government's charts do the opposite.  Rather than summarizing complicated evidence, the government's charts simply pluck numbers relating to

the deals the government has chosen to impugn, and then presents that information in a way designed to showcase the government's argument.  Nothing about the charts involves simplifying complex data.  It just takes the data the government thinks is important and presents it in a way designed to be compelling.

Apart from charts, many of the government's slides present specific emails involving Dr. Lynch and his colleagues.  These slides do not "summarize" anything.  They are intended to provide an opportunity for the government to preview its closing argument by having its summary witness give a narrative account of the government's version of the case.  There is no evidentiary value in having the government's summary witness present these emails in this way at this time.  The government can make its argument during closing.

### C. The Court Should Not Permit the Summary Witness to Base Conclusions on Evidence that Has Not Been Admitted

Lastly, much of the evidence the summary witness would offer is based on evidence that is not admitted in this case.  The majority of the charts "summarize" Mr. Hussain's spreadsheets, but there are 255 of those spreadsheets and the vast majority have not been admitted into evidence.  As demonstrated by Exhibit C, attached, the spreadsheets are complex, and they essentially reflect Mr. Hussain's personal notes as he was tracking literally hundreds of transactions each quarter at various points in time.  It is improper to permit a non-expert summary witness to provide her own gloss on those spreadsheets and present her own conclusions based on documents that have not been admitted or been the subject of percipient witness testimony in the case.

## III. CONCLUSION

For the foregoing reasons, Dr. Lynch asks the Court to limit the scope of the testimony from the government's summary witness.

1 | Dated: May 14, 2024

2 | Respectfully submitted,

3 |

4 | By:  _/s/ Celeste L.M. Koeleveld_
Celeste L.M. Koeleveld

5 |

6 | Christopher J. Morvillo
Celeste L.M. Koeleveld

7 | Daniel S. Silver
(Admitted Pro Hac Vice)

8 | **CLIFFORD CHANCE US LLP**
31 West 52nd Street

9 | New York, NY 10019
Telephone:  (212) 878-3437

10 |

11 | Jonathan M. Baum (SBN: 303469)
**STEPTOE LLP**

12 | One Market Street
Steuart Tower, Suite 1070

13 | San Francisco, CA  94105
Telephone:  (510) 735-4558

14 |

15 | Reid H. Weingarten
Brian M. Heberlig

16 | Michelle L. Levin
Nicholas P. Silverman

17 | Drew C. Harris
(Admitted Pro Hac Vice)

18 | **STEPTOE LLP**
1114 Avenue of the Americas

19 | New York, NY 10036
Telephone:  (212) 506-3900

20 |

21 | *Attorneys for Defendant*
*Michael Richard Lynch*

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# Exhibit A



**Exhibit B**



# Exhibit C

## EXHIBIT 10104

