PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email:  Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 18-577 CRB |
| Plaintiff, | UNITED STATES' BRIEF REGARDING HARRIET SLACK TESTIMONY |
| v. | Trial Date: March 18, 2024 |
| MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN, | |
| Defendants. | |

The government respectfully submits this brief to address matters raised by the defense and discussed with the Court at the conclusion of Harriet Slack's testimony.

**INTRODUCTION**

Defendant Michael Richard Lynch elected to call one of his own defense attorneys, Harriet Slack, to testify on his behalf. In doing so, Dr. Lynch put Ms. Slack's competence as a witness and credibility at issue. Many facts touched on those matters: her background, her long-time work for Dr. Lynch, her professional obligations to him, her repeated reference to the "team" that assisted her work, and her financial and professional interest in the case. At the outset of cross-examination, the

government asked her the following questions about her background:

> Q. Okay. And I understand you specialize in large scale commercial litigation, including fraud litigation, M&A disputes, accounting disputes and tech disputes, and that you have experience in white collar crime cases both in the U.S. and the U.K., and extradition proceedings; is that right?[1]
>
> A. Correct.
>
> Q. Okay. And what are M&A disputes?
>
> A. M&A stands for mergers and acquisitions, so it's any disputes arising out of mergers and acquisitions.
>
> Q. Okay. And fraud litigation, that would be where one party is accusing another of fraud in some context?
>
> A. Yes.
>
> Q. And extradition proceedings, what are those?
>
> A. It's if an individual is being extradited from one country to another.
>
> Q. And that's all areas where you specialize?
>
> A. Yes.

Tr. at 9643.  The government followed up with the questions:

> Q. Okay.  And I saw on your bio that you list your representation of Dr. Lynch on your bio; is that right?
>
> A. Yes.
>
> Q. And you've been representing him for ten years?
>
> A. Yes.

Tr. at 9644.

These questions were analogous to questions asked of numerous witnesses in this case.  They were relevant, among other reasons, to her qualifications as a witness and to illustrate the incongruity of asking a highly-paid, sophisticated professional, trained in legal matters, to comb through Excel files to

---

[1] The basis for the government's question was the first paragraph of Ms. Slack's publicly available bio available here: https://www.cliffordchance.com/people_and_places/people/lawyers/gb/harriet-slack.html and attached.

U.S.' BRIEF RE HARRIET SLACK TESTIMONY
CASE NO. CR 18-577 CRB                                           2

establish Dr. Lynch's whereabouts in 2010 (rather than assess more direct evidence), do "math" on certain accounting metrics outside her expertise, and catalog a list of OEM disclosures for partial periods. There was no contemporaneous objection. The questions breached no Court order or pretrial limitation. And fundamentally, there is no prejudice. At no point did the government ask (1) whether Dr. Lynch was subject to an extradition proceeding, (2) whether Ms. Slack represented him in an extradition proceeding, or (3) what happened in any extradition proceeding. Nor has the government ever suggested there is something nefarious about an extradition proceeding. Defendant's claim of prejudice is based on a chain of inferences the government has never asked the jury to draw, and an erroneous assumption that "extradition" implies guilt or is a word so tainted with prejudice that it cannot be spoken.

Misconduct refers to improper behavior by prosecutors that is inconsistent with the due process requirements for a fair trial. *United States v. Alcantara-Castillo*, 788 F.3d 1186, 1190 n.1 (9th Cir. 2015). There was nothing improper here, and certainly nothing approaching a due process violation. To the extent the Court concludes the specific answers and questions above are not admissible or another remedy is required, it need do no more than strike the questions and answers.

## ARGUMENT

Federal Rule of Evidence 611(b) permits cross-examination relating to "matters affecting the witness's credibility." FED. R. EVID. 611(b). Among other things, the jury is entitled to consider Ms. Slack's "interest in the outcome of the case" and "bias or prejudice." NINTH CIRCUIT MANUAL OF MODEL CRIMINAL JURY INSTRUCTIONS 1.7. Further, a "summary witness's professional background and computational experience [is] relevant to the jury's ability to assess the reliability of the summaries prepared by that witness." *United States v. Happ*, 2008 WL 510214, at *11 (S.D. Ohio Nov. 25, 2008); *see also United States v. Olano*, 62 F.3d 1180, 1204 (9th Cir. 1995).

Misconduct refers to improper behavior by prosecutors that is inconsistent with the due process requirements for a fair trial. *United States v. Alcantara-Castillo*, 788 F.3d 1186, 1190 n.1 (9th Cir. 2015). Due process violations may include asking defendants on cross-examination to comment on the truthfulness of other witnesses (which impinges on the jury's province as sole determiner of credibility)

or vouching (which induces the jury to trust the government's judgment instead of its own view of the evidence). *Id.* at 1191.

No misconduct, and nothing approaching a due process violation, occurred here. To the contrary, the government's examination was proper under Federal Rule of Evidence 611(b) as it went to the witness's credibility and qualifications, to show that she was a highly experienced attorney, with a duty of loyalty to her client, asked to perform tasks outside her professional experience. The questions likewise did not violate any pretrial limitations. *See United States v. Scholl*, 166 F.3d 964, 974–75 (9th Cir. 1999) (finding no misconduct in the "cross-examination of Judge Lacagnina [a character witness] regarding charges brought by the Arizona Commission on Judicial Conduct" because "the inquiry was relevant because the judge had testified to Scholl's truthfulness, honesty, and integrity, and the government had a good faith basis for asking the questions," and "the question did not assume Scholl's guilt on any of the counts in the indictment"). *Compare United States v. Zimmelman*, 634 F.2d 1273, 1238 (9th Cir. 1980) (per curiam) (holding the "government's cross-examination of [a witness] at [the defendant's] trial arguably exceeded the spirit of an earlier court order in limine," but "[t]he transgression was not . . . intentional and in bad faith" and so "[t]he trial court did not abuse its discretion in denying the motion to dismiss").

Further, the government's questioning about Ms. Slack's experience caused no prejudice. The Court observed: "The only thing of concern to me is . . . the mention of the extradition." Tr. at 9677. The Court added: "The fact that she's an expert in extradition or she's not an expert in extradition, she is an attorney who works on extradition matters, and she's labeled -- and she puts that in her resumé along with other things. So the question really is whether it was sort of just in there and is harmless or not." Tr. at 9678; *see also* Tr. at 9680 ("I am concerned about the word 'extradition,' and I am concerned about how the Government -- what a jury could conclude from that.").

But the term "extradition" is not prejudicial, certainly not more so than reference to the fact that a defendant was arrested or charged. There is nothing in the record suggesting "extradition" is nefarious or implies guilt. Moreover, at no point did the government ask (1) whether Dr. Lynch was involved in an extradition proceeding, (2) whether Ms. Slack represented him in an extradition proceeding, or (3) what happened in any extradition proceeding. In sum, there has been no suggestion Dr. Lynch was

involved in an extradition proceeding, let alone a suggestion that would be incriminating. The government will make no argument making any such suggestions. The defendant's claim of prejudice is based on a strained inferential chain that the government has not advanced, and the unsupported assertion that "extradition" implies guilt or is otherwise prejudicial.

Because the government's examination was proper and not prejudicial, and because there was no contemporaneous objection, the Court should take no further action. Certainly mistrial is an inappropriate remedy. Mistrial should only be granted where it is manifestly necessary and failure to discontinue would defeat the ends of justice, as when the impartiality of one or more jurors was likely affected by improper comment, in part because of the double jeopardy implications. *Arizona v. Washington*, 434 U.S. 497, 510–16 (1978). That is not the case here. Any prejudice—and there is none—is cured by a jury instruction either striking the testimony quoted above with respect to Ms. Slack's experience or modification of Model Instruction 1.2 that extradition and other legal process, like the fact that a defendant was charged, is not evidence and does not prove anything.

DATED: May 22, 2024

Respectfully submitted,

PATRICK D. ROBBINS
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

*Robert S. Leach*

ROBERT S. LEACH
ADAM A. REEVES
KRISTINA GREEN
ZACHARY G.F. ABRAHAMSON
Assistant United States Attorneys